COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:      (310) 883-6400
Facsimile:      (310) 883-6500

ANGELA L. DUNNING (212047)
(adunning@cooley.com)
MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:      (650) 843-5000
Facsimile:      (650) 849-7400

LEX LUMINA PLLC
MARK A. LEMLEY (155830)
(mlemley@lex-lumina.com)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055
Facsimile: (646) 906-8657

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KADREY, an individual; SARAH SILVERMAN, an individual; CHRISTOPHER GOLDEN, an individual,<br><br>    Individual and Representative Plaintiffs,<br><br>      v.<br><br>META PLATFORMS, INC., a Delaware corporation;<br><br>               Defendant. | Case No. 3:23-cv-03417-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:      November 16, 2023<br>Time:     10:00 a.m.<br>Dept:    Courtroom 4 – 17th Floor<br>Judge:   Vince Chhabria<br><br>Trial Date: None<br>Date Action Filed: July 7, 2023 |

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.   SUMMARY OF RELEVANT FACTS AND ALLEGATIONS ................................................ 4

    A.    The Parties .................................................................................................. 4

    B.    Plaintiffs' Allegations of Purported Wrongdoing .................................... 4

III.  LEGAL STANDARDS ........................................................................................................ 6

IV.  ARGUMENT ..................................................................................................................... 6

    A.    Plaintiffs Fail to Plead that LLaMA Is an Infringing Derivative Work (Claim 1) ............................................................................................ 6

    B.    Plaintiffs Fail to State a Claim for Vicarious Infringement (Claim 2) ................... 9

        1.    Plaintiffs fail to allege direct infringement ............................... 10

        2.    Plaintiffs fail to plead the requisite control ............................... 11

        3.    Plaintiffs fail to plead the requisite financial interest.............................. 11

    C.    Plaintiffs Fail to State a Claim for Violation of the DMCA (Claim 3)................ 12

        1.    Plaintiffs fail to state a claim under Section 1202(a)(1) .......................... 12

        2.    Plaintiffs fail to state a claim under Section 1202(b)(1) .......................... 14

        3.    Plaintiffs fail to state a claim under Section 1202(b)(3) .......................... 16

    D.    Plaintiffs Fail to State a Claim for Unfair Competition (Claim 4)....................... 17

    E.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Claim 5)........................ 19

    F.    Plaintiffs Fail to State a Claim for Negligence (Claim 6)................................... 19

V.   CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. *passim*

*Authors Guild v. Google, Inc.,*
  804 F.3d 202 (2d Cir. 2015) ........................................................................................ 2, 7, 9

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.,*
  2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ...................................................................... 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................................... 6

*Berk v. Coinbase, Inc.,*
  2019 WL 3561926 (N.D. Cal. Aug. 6, 2019) (Chhabria, J.), *rev'd and
  remanded on other grounds,* 840 F. App'x 914 (9th Cir. 2020) ............................................ 17

*Berkic v. Crichton,*
  761 F.2d 1289 (9th Cir. 1985) .......................................................................................... 8

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.,*
  149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................................................. 10

*Cavalier v. Random House, Inc.,*
  297 F.3d 815 (9th Cir. 2002) ............................................................................................ 8

*Cromwell v. Certified Forensic Loan Auditors,*
  2019 WL 1095837 (N.D. Cal. Jan. 10, 2019) ...................................................................... 19

*Crowley v. Jones,*
  608 F. Supp. 3d 78 (S.D.N.Y. 2022) ................................................................................. 13

*Dahlia v. Rodriguez,*
  735 F.3d 1060 (9th Cir. 2013) .......................................................................................... 6

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) ............................................................................................ 6

*Del Madera Props. v. Rhodes & Gardner, Inc.,*
  820 F.2d 973 (9th Cir.1987), *overruled on other grounds, Fogerty v. Fantasy,
  Inc.,* 510 U.S. 517 (1994) ......................................................................................... 18, 19

*Dielsi v. Falk,*
  916 F. Supp. 985 (C.D. Cal. 1996) ................................................................................... 19

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ....................................................... 15

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) ............................................................................................. 7

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*,
   2018 WL 659105 (N.D. Cal. Feb. 1, 2018) ............................................................ 17

*Falkner v. General Motors LLC*,
   393 F. Supp. 3d 927 (C.D. Cal. 2018) ................................................................... 15

*Feist Publ'n Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................................. 7

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................. 17

*Park v. Skidmore, Owings & Merrill LLP*,
   2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019) ....................................................... 13

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
   315 App'x 603 (9th Cir. 2008) ............................................................................ 20

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999), *aff'd in part, rev'd in part*, 280 F.3d 934
   (9th Cir. 2002) ................................................................................................... 15

*Kilina Am., Inc. v. Bonded Apparel, Inc.*,
   2019 WL 8065854 ............................................................................................. 11

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ....................................................... 13

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ............................................................................ 18

*Krechmer v. Tantaros*,
   747 Fed. App'x. 6 (2d Cir. 2018) ......................................................................... 14

*Laws v. Sony Music Entm't, Inc.*,
   448 F.3d 1134 (9th Cir. 2006) ............................................................................ 18

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ............................................................................. 8

*Locklin v. StriVectin Operating Co., Inc.*,
   2022 WL 867248 (N.D. Cal. Mar. 23, 2022) (Chhabria, J.) ..................................... 19

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 20

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017)............................................................................... 18

*Mayall ex rel. H.C. v. USA Water Polo, Inc.*,
   909 F.3d 1055 (9th Cir. 2018)............................................................................... 20

*Michael Grecco Prods., Inc. v. Time USA, LLC*,
   2021 WL 3192543 (S.D.N.Y. July 27, 2021) ....................................................... 13

*Mills v. Netflix, Inc.*,
   2020 WL 548558 (C.D. Cal. Feb. 3, 2020)........................................................... 16

*Mohanna v. Carrington Mortg. Servs. LLC*,
   2018 WL 3730419 (N.D. Cal. Aug. 6, 2018)........................................................ 17

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
   2017 WL 5664996 (C.D. Cal. Sept. 14, 2017)..................................................... 10

*Nash v. CBS, Inc.*,
   899 F.2d 1537 (7th Cir. 1990)............................................................................ 7, 9

*O'Neal v. Sideshow, Inc.*,
   583 F. Supp. 3d 1282 (C.D. Cal. 2022) ................................................... 13, 16, 17

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   823 F. App'x 516 (9th Cir. 2020) ......................................................................... 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)................................................................... 10, 11, 12

*Perfect 10 v. Giganews, Inc.*,
   847 F.3d 657, 673 (9th Cir. 2017) ....................................................................... 11

*Rabin v. Google LLC*,
   2023 WL 4053804 (N.D. Cal. June 15, 2023) ...................................................... 19

*Roth Greeting Cards v. United Card Co.*,
   429 F.2d 1106 (9th Cir. 1970)................................................................................ 8

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013).................................................................................. 6

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1222 (2019) ...................... 15

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016) ................................................................ 20

*Sugarfina, Inc. v. Sweet Pete's LLC*,
    2017 WL 4271133 (C.D. Cal. Sept. 25, 2017).........................................................................19

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008).............................................................................................18

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
    524 F. Supp. 2d 1184 (C.D. Cal. 2007) .............................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).............................................................................................17

**Statutes**

17 U.S.C.
    § 102 .........................................................................................................................................7
    § 103 .......................................................................................................................................18
    § 106 ........................................................................................................................5, 7, 8, 18
    § 201 .......................................................................................................................................14
    § 301 .................................................................................................................................18, 19
    § 512 .......................................................................................................................................14
    § 1202 ...............................................................................................................................*passim*

Cal. Bus. & Prof. Code § 17200 ............................................................................3, 5, 17, 18, 19

**Other Authorities**

Fed. R. Civ. P.
    8 .......................................................................................................................................16, 17
    9 .............................................................................................................................................16
    12(b)(6) ................................................................................................................................1, 6

4 Patry on Copyright § 12:13 ...........................................................................................................8

U.S. Const., Art. I, § 8, cl. 8............................................................................................................7

S. Rept. 105-190 (1998) ...............................................................................................................13

Please take notice that, on November 16, 2023 at 10:00 a.m., Defendant Meta Platforms, Inc. ("Meta") will and hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Claim 1 (in part) and Claims 2–6 (in full) with prejudice for failure to state a claim on which relief may be granted.  This motion is accompanied by a Request for Consideration of Documents Incorporated by Reference and Judicial Notice ("RJN"), Declaration of Judd Lauter ("Lauter") and exhibits thereto; all papers on file in this action; and such other matters as may be presented at the hearing.

## I.    INTRODUCTION

In February 2023, Meta announced its release of a family of state-of-the-art foundational large language models called LLaMA.  A large language model ("LLM") is an AI software program designed to generate coherent text responses to user queries or "prompts."  Just as a child learns language (words, grammar, syntax, sentence structure) by hearing everyday speech, bedtime stories, songs on the radio, and so on, LLaMA "learned" language by being exposed—through "training"—to "massive amounts of text from various sources," such as code, webpages, and books, in 20 languages.  (¶¶ 2, 18.)[1]  This process involved dissecting text into *trillions* of word snippets or letter combinations (called "tokens") and extracting a vast, complex set of statistical correlations as to how tokens are most likely to be arranged coherently.  Once trained on sufficiently large volumes of data, LLMs, like LLaMA, develop emergent capabilities to use the building blocks of language in extra-ordinary ways, including to "generate creative text, solve mathematical theorems, predict protein structures, answer reading comprehension questions, and more.  They are one of the clearest cases of the substantial potential benefits AI can offer at scale to billions of people."  (Lauter Ex. 1.)

As part of its commitment to open science, Meta released LLaMA on a noncommercial basis to academic researchers, members of governmental organizations, and industry research laboratories around the world.  (¶ 31 (quoting Lauter Ex. 1).)  In doing so, Meta sought to democratize access to state-of-the-art LLMs, and thereby accelerate the development of better models and a broader and more innovative set of use-cases.  (Lauter Ex. 1.)

---

[1] Unless otherwise stated, citations to "¶_" and "Ex. " are to the Complaint's paragraphs and exhibits, all emphases are added, and internal citations and quotation marks are omitted.  Because Plaintiffs erred by including two instances of paragraphs numbered 1–23, Meta includes a page number with any citation to the second instance of those paragraphs (*e.g.*, ¶ 1 at 9).

Named Plaintiffs are authors of copyrighted books comprising a miniscule fraction (less than a millionth) of the material allegedly used to train LLaMA.  Unlike in a traditional copyright case, Plaintiffs do **not** allege that LLaMA or any text generated by its users in response to prompts (called "output") is substantially similar in protectable expression to their books.  They do not identify *any* output that has ever been created using LLaMA.  Instead, they primarily object that Meta did not obtain their consent before extracting "information" from their texts as part of training LLaMA.

Copyright law does not protect facts or the syntactical, structural, and linguistic information that may have been extracted from books like Plaintiffs' during training.  Use of texts to train LLaMA to statistically model language and generate original expression is transformative by nature and quintessential fair use—much like Google's wholesale copying of books to create an internet search tool was found to be fair use in *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015).  That core issue, however, will be for another day, on a more fulsome record.  For now, Meta moves to dismiss the remainder of the Complaint for failure to state a claim.

**Claim 1 (Direct Copyright Infringement):**  Plaintiffs' claim for direct infringement must be dismissed with prejudice to the extent it is premised on a theory that LLaMA is *itself* an infringing "derivative" work.  This theory is supported by a single allegation: that LLaMA "cannot function without the expressive information extracted from Plaintiffs' Works and retained inside [it]." (¶ 41.)  Plaintiffs do not explain what "information" this refers to, but use of "information" from a copyrighted text is not the standard for infringement.  Under well-settled Ninth Circuit law, the only pertinent question is whether the software comprising LLaMA is, itself, substantially similar in protected expression to Plaintiffs' books.  Because Plaintiffs do not and cannot plausibly allege substantial similarity of protected expression, this legal theory fails as a matter of law.

**Claim 2 (Vicarious Copyright Infringement):**  Plaintiffs seek to hold Meta vicariously liable for purportedly infringing outputs generated by others using LLaMA.  But they do not identify a single output ever generated by *anyone* that supposedly infringes their books.  Instead, Plaintiffs advance the fallacy that *every* output generated using LLaMA is "based on expressive information extracted from" Plaintiffs' books and, therefore an "infringing derivative work" of *each* of those books.  (¶ 44.)  The Ninth Circuit has rejected this argument as "frivolous," and it

makes no sense.   The test for infringement is "substantial similarity."   The solution to a mathematical theorem, line of code, or language translation—all outputs LLaMA is capable of generating—are not "substantially" or even remotely similar to *any* of Plaintiffs' books.   Nor is, say, an original poem a user creates with LLaMA.   Plaintiffs cannot plead this most basic element (or any of the others) necessary to state a claim for vicarious copyright infringement.

**Claim 3 (Digital Millennium Copyright Act ("DMCA")):**   Plaintiffs' DMCA claims are divorced from the language and purpose of the law.   They allege that Meta provided false copyright management information ("CMI") in violation of 17 U.S.C. § 1202(a)(1) by asserting copyright in the LLaMA models.   However, such claims are only actionable where the allegedly false CMI is included in an exact copy of a work, which is not the case here.   Nor can Plaintiffs plausibly plead that Meta's claim of copyright in LLaMA was false or knowingly made with intent to cause or conceal infringement.   Plaintiffs' Section 1202(b)(1) claim fails because they do not and cannot allege "removal" of their CMI in training, much less that Meta intentionally removed it to cause or conceal allegedly infringing outputs, particularly where Plaintiffs have yet to identify any.   And the Section 1202(b)(3) claim—premised on removal of CMI from the LLaMA models, themselves— fails because Plaintiffs are not the authors of LLaMA, they own (and claim) no copyright in it, and their CMI was never included to begin with, much less intentionally removed by Meta with wrongful intent.   As to each theory, Plaintiffs' allegations fail to state a claim under the DMCA.

**Claims 4–6 (Unfair Competition, Unjust Enrichment, Negligence):**   Plaintiffs' UCL claim is based on two alleged predicate violations:  (1) violation of the DMCA, which Plaintiffs cannot establish, and (2) unauthorized use of Plaintiffs works to train LLaMA, which is just a repackaged copyright claim and, thus, expressly preempted by the Copyright Act.   Absent a viable predicate violation, this claim must be dismissed.   So, too, must the unjust enrichment claim, which is likewise preempted, and would require a quasi-contractual relationship between the parties, which has not been pleaded and does not exist.   Finally, Plaintiffs' negligence claim—which is based on a purported duty not to train LLaMA on their copyrighted works—is likewise preempted and barred by the economic loss doctrine in any event.   Each of these claims should be dismissed with prejudice.

## II.   SUMMARY OF RELEVANT FACTS AND ALLEGATIONS

### A.   The Parties

**Named Plaintiffs:**  Named plaintiffs are book authors Richard Kadrey, Sarah Silverman, and Christopher Golden.  (¶¶ 4, 9–12 & Exs. A, B.)  They allegedly own registered copyrights in, respectively, *Sandman Slim*, *The Bedwetter*, and *Ararat* (referred to by Plaintiffs as "Infringed Works"), each of which contains CMI "customarily included in published books, including the name of the author and the year of publication." (¶¶ 9–11.)  Plaintiffs allege that Meta used each of these books, along with others by Kadrey and Golden, to train LLaMA.  (¶¶ 23–30 & Ex. B.)

**Meta and Its LLaMA Models:**  Meta is a technology company that offers popular social media services Facebook and Instagram.  It also has a team called Meta AI that "creates and distributes artificial-intelligence software products" that "algorithmically simulate human reasoning." (¶¶ 16–17.)  In February 2023, Meta released LLaMA, a "set of large language models … designed to parse and emit natural language." (¶ 18.)  Meta announced that LLaMA would be made available on a limited basis to "academic researchers; those affiliated with organizations in government, civil society, and academia; and industry research laboratories around the world" for purposes of study, research and development.  (¶ 31 (quoting Lauter Ex. 1).)  Meta further announced that those seeking access could apply at a web link provided in a research paper describing how LLaMA was created and trained.  (*Id.*)  Plaintiffs allege "on information and belief" that Meta has "benefited financially" from this noncommercial release of LLaMA (¶ 32), but do not describe how.

In March 2023, the "model weights" for LLaMA—the statistical parameters derived from its training—were posted to popular code-sharing platform, GitHub, without Meta's authorization. (¶¶ 33–34.)  Meta promptly submitted a DMCA takedown notice to GitHub, asserting its copyright in LLaMA and requesting removal of a tool posted there by a programmer to help users download the LLaMA models outside of Meta's application process and without Meta's consent.  (¶ 34.) Despite these efforts, unidentified third parties have "continued to circulate" LLaMA.  (¶ 33.)

### B.   Plaintiffs' Allegations of Purported Wrongdoing

According to Plaintiffs, LLMs like LLaMA are "'trained' by copying massive amounts of text from various sources and feeding these copies into the model." (¶ 18.)  During training, an

COOLEY LLP
ATTORNEYS AT LAW

LLM "copies each piece of text in the training dataset and extracts expressive information from it," which then enables the model "to emit convincing simulations of natural written language as it appears in the training dataset." (*Id*.) Plaintiffs further allege that the output of an LLM is "entirely and uniquely reliant on the material in its training dataset. Every time it assembles a text output, the model relies on the information it extracted from its training dataset." (¶ 3.)

Plaintiffs infer that the allegedly Infringed Works were among the many materials on which LLaMA was trained from the research paper Meta published in connection with LLaMA's release, "LLaMA: Open and Efficient Foundation Language Models" ("Research Paper"), which described the models and their training sources. (¶¶ 21, 23–30; *see* Lauter Ex. 2.) According to Plaintiffs, *one* such source is "the Books3 section of ThePile," a corpus of 196,000 books, which was assembled by the research organization EleutherAI for training LLMs and includes the Infringed Works. (¶¶ 23–25.) On that basis, Plaintiffs allege that their books must have been "copied and ingested" by Meta in training LLaMA. (¶¶ 5, 19.) Notably, as detailed in the Research Paper, Books3 comprises an astonishingly small portion of the total text used to train LLaMA. All books from Books3, together with the roughly 70,000 books collected from Project Gutenberg, an "archive of [] books that are out of copyright" (¶ 23), accounted for only 4.5% of training text. (Lauter Ex. 2; ¶ 23.) Even accepting Plaintiffs' allegations, their books comprised less than a millionth of the training data.

Plaintiffs filed this suit on July 7, 2023, asserting claims for: (1, 2) direct and vicarious copyright infringement (17 U.S.C. § 106); (3) removal of CMI and false assertion of copyright in violation of the DMCA (17 U.S.C. §§ 1202(a)(1) and 1202(b)); (4) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL")); (5) unjust enrichment; and (6) negligence. Plaintiffs seek to represent a putative class of "all persons or entities domiciled in the United States that own a [U.S.] copyright in any work that was used as training data" for LLaMA. (¶ 15 at 10.)

Plaintiffs assert that any copies of the allegedly Infringed Works made in the process of training LLaMA infringe the copyrights in those Works (¶ 40), and, further, because LLaMA relies on unspecified "expressive information extracted from" those Works, the LLaMA model, itself— and "every output" therefrom—are infringing derivatives. (¶¶ 41, 44.) Plaintiffs further claim that, "by design," the process of training LLaMA does not preserve CMI, and Meta thereby intentionally

removed CMI from their works, distributed unauthorized derivative works without their CMI, and provided false CMI by claiming "sole copyright" in LLaMA. (¶¶ 49-51.)  These purported acts also form the basis of Plaintiffs' state and common law claims. (¶¶ 54–58; ¶¶ 1–14 at 9–10.)

## III.  LEGAL STANDARDS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013).  To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court need not "accept as true allegations that contradict … matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (same); *Twombly*, 550 U.S. at 555 (courts need not "accept as true a legal conclusion couched as a factual allegation").  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.  ARGUMENT

Plaintiffs' claims for direct and vicarious copyright infringement rest on legal theories that are incompatible with the Copyright Act and contravene the binding law in this Circuit.  The state law claims, in turn, all improperly invade on the exclusive domain of federal copyright law and must be dismissed with prejudice as preempted, and because they fail to state a claim in any event.

### A.    Plaintiffs Fail to Plead that LLaMA Is an Infringing Derivative Work (Claim 1)

Plaintiffs' claim for direct copyright infringement is based on two theories:  (1) Meta created unauthorized copies of Plaintiffs' books in the process of training LLaMA (¶ 40); and (2) "[b]ecause the LLaMA language models cannot function without the expressive information extracted from Plaintiffs' Infringed Works and retained inside [LLaMA]," the models "are themselves infringing derivative works" (¶ 41).  Both theories are without merit, but this Motion addresses only the latter theory, which rests on a fundamental misunderstanding of copyright law.

The Copyright Act secures to authors six "exclusive" rights enumerated in 17 U.S.C. § 106. These include the right to "reproduce" the copyrighted work in copies," 17 U.S.C. § 106(1), and the right to "prepare derivative works," *id.* § 106(2).

A "fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates." *Feist Publ'n Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344–45 (1991). Even ideas originally conceived by an author cannot be the proper subject of an infringement claim, because copyright does not extend to facts, ideas, or other foundational elements of creativity—it protects only the specific manner in which information is expressed. *Id.*; 17 U.S.C. § 102(b).

"This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship." *Id.* at 350. It dictates that "every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). Only by excluding facts and ideas from copyright protection can the Copyright Act advance the Constitutional imperative of promoting "the Progress of Science and useful Arts." U.S. CONST. Art. 1, § 8, cl. 8. After all, "[e]very work uses scraps of thought from thousands of predecessors"; "Intellectual (and artistic) progress is possible only if each author [is free to] build[] on the work of others." *Nash v. CBS, Inc.*, 899 F.2d 1537, 1540, 1543 (7th Cir. 1990) (affirming summary judgment that defendants "did not appropriate any of the material protected by Nash's copyrights" because they used his work solely "as a source of facts and ideas" and took his "analysis of history but none of his expression").

The fact/expression dichotomy was further elucidated in *Authors Guild*, in which the Second Circuit rejected an argument that the Google Books project—for which Google made digital copies of millions of books without permission to create a tool allowing Internet users to search for certain words or terms within them—constituted an infringing derivative work. 804 F.3d at 227. The court reasoned that plaintiffs had no "supposed derivative right to supply information about their books," such as "word frequencies, syntactic patterns, and thematic markers." *Id.* at 209, 227. This "statistical information," the court found, does not constitute "copyrighted expression," and its use by Google did "not support Plaintiffs' derivative works argument." *Id.*

With these bedrock principles in mind, the argument Plaintiffs seek to advance here—that Meta's LLaMA models must be infringing derivatives of each of Plaintiffs' copyrighted books merely because they were trained on their works (¶ 41)—is legally untenable for multiple reasons.

<u>First</u>, as the Ninth Circuit has definitively held, a derivative work must be *substantially similar* in protected expression to the copyrighted work to be infringing.  In *Litchfield v. Spielberg*, the Ninth Circuit rejected as "frivolous" the exact argument Plaintiffs seek to advance here, namely, that a "derivative work" encompasses "any work based on a copyrighted work," irrespective of substantial similarity.  736 F.2d 1352, 1357 (9th Cir. 1984).  Rather, "[t]o prove infringement, one must show substantial similarity." *Id.*; *see also Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970) ("[I]nfringement [requires] substantial similarity…."); 4 Patry on Copyright § 12:13 (collecting cases) ("In order to infringe the derivative right, *there must be substantial similarity in protectible expression between the parties' works*.").

To assess substantial similarity, the Ninth Circuit applies a two-part test.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  The first part—the "extrinsic test"—is an "objective comparison of specific expressive elements"; the court "disregard[s] the non-protectible elements" like "stock scenes and themes" and "plot ideas" and determines whether the remaining "protectible elements, standing alone, are substantially similar." *Id.* at 822–23; *see also Berkic v. Crichton*, 761 F.2d 1289, 1293–94 (9th Cir. 1985) (excluding ideas and scenes-a-faire).  The second part—the "intrinsic test"—is a subjective comparison focused on "whether the ordinary, reasonable audience would find the works substantially similar" in "total concept and feel." *Id.* at 822.  If, under these tests, the accused work is not "substantially similar" to plaintiff's copyrighted work, it is neither a "copy" nor a "derivative work" for purposes of Section 106.  17 U.S.C. § 106(1)–(3).

Here, Plaintiffs make no attempt to plead substantial similarity as between the LLaMA models and any of their books, and such an allegation would be implausible on its face.  Software code for a neural network is not similar to Plaintiffs' novels and essay collection, and Plaintiffs do not and cannot claim that it is.  Under *Litchfield*, that should end the analysis. 736 F.2d at 1357.

<u>Second</u>, rather than attempt to plead substantial similarity, Plaintiffs allege that "expressive information extracted from Plaintiffs' Infringed Works" is "retained inside the LLaMA language

1  models," and that they "cannot function without [it]." (¶ 41.) This does not help their cause. The

2  test of infringement is not whether one work can "function" without another. In *Authors Guild*, for

3  instance, wholesale copying of books was necessary to enable the search function at issue, but the

4  court still rejected a claim that the search tool was an infringing derivative work. 804 F.3d at 209,

5  227. Equally fatal, Plaintiffs do not identify any "expressive information" LLaMA is supposed to

6  contain, or what it consists of. They do not claim, for instance, that text from their books appears

7  in LLaMA's codebase. Such an allegation would be nonsensical and contrary to the way LLMs

8  function. Instead, the most plausible read of Plaintiffs' allegations is that tokenized, statistical

9  "information" about the words, sentences, and paragraphs in their books has been extracted and

10  analyzed in training LLaMA and developing its code. As amply demonstrated by *Authors Guild*,

11  *Nash* and the other authorities cited above, such information falls outside the scope of copyright

12  protected expression and its use (even if it were alleged) could not support a claim for infringement.

13      <u>Third</u>, even if the Court were to look past the total absence of allegations (plausible or

14  otherwise) of substantial similarity between Plaintiffs' books and the LLaMA language models,

15  *Authors Guild* provides yet another, independent basis for dismissing Plaintiffs' second theory of

16  direct copyright infringement. In *Authors Guild*, it was undisputed that the Google search feature

17  at issue relied on digital scans of plaintiffs' entire books to generate snippets and data about the

18  books as search outputs. 804 F.3d at 225. Nevertheless, because the digital copies created by

19  Google were hidden from view by the public and the tool did not permit access "in any substantial

20  way to a book's expressive content" apart from the snippets, the search tool was beyond the

21  "statutory definition of a derivative work, or of the logic that underlies it." *Id*. at 226–27.

22      Here, Plaintiffs claim that LLaMA "ingested" copies of their books as training material.

23  (¶ 5.) However, they do not allege that those copies are viewable or otherwise accessible to users

24  of LLaMA, and do not point to a single output that substantially reveals or borrows from the

25  protected expression of those works. Accordingly, as in *Authors Guild*, Plaintiff's theory that the

26  LLaMA language model is itself an infringing derivative work fails as a matter of law.

27      **B.**    **Plaintiffs Fail to State a Claim for Vicarious Infringement (Claim 2)**

28      By their claim for vicarious copyright infringement, Plaintiffs seek to hold Meta secondarily

liable for allegedly infringing outputs generated by others using the LLaMA language models.  To state a claim for vicarious infringement, Plaintiffs must allege facts plausibly establishing:  (1) an act of direct infringement undertaken by another party; (2) that Meta exercises control over (i.e., has the "right and ability to supervise") that infringing conduct; and (3) that Meta has a direct financial interest in the infringing activity.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).  Plaintiffs' factual allegations fail to satisfy any of these elements.

### 1.     Plaintiffs fail to allege direct infringement

The first, most basic element of any claim for secondary copyright liability is an act of direct infringement by another.  Plaintiffs do not identify any such act.  Indeed, the Complaint is devoid of a single example of any use of LLaMA to generate output that Plaintiffs might plausibly contend infringes any of their works.  This, alone, is fatal.

To state a claim, Plaintiffs were required to identify specific examples of directly infringing works so that, among other things, they may be compared against the original copyrighted works for purposes of assessing substantial similarity.  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6–7 (N.D. Cal. Apr. 15, 2020) (dismissing copyright claim for failure to plead representative acts of infringement).  Plaintiffs "need not specify each and every instance of infringement at the pleadings stage, but [they] must submit at least a representative sampling of infringed content," including what parts of their works were copied and how and where such copying is manifest.  *Id.* at *6.  Here, Plaintiffs do not allege *any* example of output of the LLaMA language models, what parts (if any) of their books were allegedly reproduced in any output, or any specific act of infringement.  Dismissal is thus required.  *See MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) (dismissing claim and reasoning: "Absent any allegations of even representative infringements, the FAC fails to provide notice as a matter of law."); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (same, dismissing claim).

Rather than satisfy this pleading burden, Plaintiffs seek to circumvent it, asserting: "Because the output of the LLaMA language models is *based on* expressive information extracted from Plaintiffs' Infringed Works, *every* output of the [models] is an infringing derivative work."  (¶ 44.)

This is wrong as a matter of both well-settled law and common sense, as shown in Section IV.A. above.

Plaintiffs make no attempt to plead substantial similarity of the (unspecified) outputs of the models, just as they make no effort to show substantial similarity of the models themselves.  The only description of potential outputs of the LLaMA models is that they are "able to emit convincing simulations of natural written language" (¶ 18), which could theoretically include outputs ranging from a sample cover letter for a job application, to a list of U.S. state capitols, to a dissertation on the Newtonian laws of motion.  Any suggestion that such outputs would be substantially similar to *any* of named Plaintiffs' books is not only implausible, but absurd—which is presumably why Plaintiffs tried to avoid the essential issue of substantial similarity altogether.

### 2.     Plaintiffs fail to plead the requisite control

To plead the second element of vicarious copyright infringement, Plaintiffs were required to allege facts showing that Meta had the "right and ability to supervise" the supposed infringement of their books in output generated by others.  *Perfect 10 v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017).  Instead, the Complaint simply recites this element in conclusory fashion without any supporting facts.  (¶ 45.)  This is insufficient.  Under *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  556 U.S. at 678; *Kilina Am., Inc. v. Bonded Apparel, Inc.*, 2019 WL 8065854, at *2 (C.D. Cal. Nov. 19, 2019 ("Merely alleging that the Defendants had the 'right and ability to supervise the infringing conduct' lacks the requisite detail to sustain a claim...").[2]

### 3.     Plaintiffs fail to plead the requisite financial interest

Plaintiffs also fail to adequately plead the third element for vicarious liability—that Meta has a "direct financial interest" in the supposed infringement.  *Perfect 10*, 847 F.3d at 673.  Once again, the Complaint includes only the conclusory allegation that "Meta has benefited financially from the infringing output of the LLaMA language models" (¶ 45), which falls short.  *Iqbal*, 556

---

[2] In light of Plaintiffs' allegation that unauthorized versions of LLaMA have "continued to circulate" on GitHub despite Meta's takedown efforts (¶¶ 33–34), it is unclear how Plaintiffs could ever plausibly plead that Meta has the ability to supervise uses of LLaMA of which it is not aware and which it has tried to prevent.

U.S. at 678.  At the same time, Plaintiffs acknowledge and affirmatively plead that LLaMA was released on a limited *noncommercial* basis to academic researchers free of charge.  (¶ 31.)

Moreover, Plaintiffs fail to allege any causal link between the allegedly infringing activities and a financial benefit to Meta, as the law requires.  *Perfect 10*, 847 F.3d at 673.  To satisfy the "direct financial interest" element of vicarious copyright infringement, Plaintiffs must show that LLaMA users were "drawn" to the program *because of* the copying of *Plaintiffs' works. Id.* at 674. This is not alleged in the Complaint, nor can it plausibly be.  According to the Complaint, Plaintiffs' books are among hundreds of thousands of books included in LLaMA's training data.  (¶¶ 23, 28.) All 266,000+ books, in turn, comprise only 4.5% of the data used to train LLaMA, and a significant portion of that subset consists of books in the public domain.  (Lauter ¶ 3 & Ex. 2; ¶ 23.)  To claim that the statistical data extracted from any particular work in the dataset acts as a "draw" for users of the models—particularly where Meta is not alleged to have ever identified Plaintiffs' works as among LLaMA's training material (*see* ¶¶ 21–30)—is factually unsupported and untenable.

## C.   Plaintiffs Fail to State a Claim for Violation of the DMCA (Claim 3)

As <u>relevant</u> here, the copyright management provisions of the Digital Millennium Copyright Act ("DCMA") prohibit the knowing dissemination of false CMI "with the intent to induce, enable, facilitate, or conceal infringement" (17 U.S.C. § 1202(a)(1)), and the intentional removal of CMI or knowing distribution of copies of works with CMI removed, with knowledge or "reasonable grounds to know, that it will induce, enable, facilitate, or conceal" infringement (*id.* §§ 1202(b)(1), (3)).  Plaintiffs purport to plead violations of each of these provisions (¶¶ 49–51), but their allegations are untethered from both the language of Section 1202 and its purpose.  As discussed in further detail below, each claim warrants dismissal with prejudice.

### 1.   Plaintiffs fail to state a claim under Section 1202(a)(1)

Plaintiffs allege that Meta knowingly conveyed false CMI with the intent to cause or conceal copyright infringement, in violation of 17 U.S.C. § 1202(a)(1).  Their theory is that because Meta's LLaMA models are infringing derivative works (¶ 41), Meta provides false CMI by asserting copyright ownership in LLaMA. (¶ 51.)  This claim is meritless for multiple reasons.

<u>First</u>, even if the Court were to accept Plaintiffs' allegations as true, provision of false CMI

1   must occur in connection with an *original* or otherwise *identical copy* of a work to be actionable.

2   *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (dismissing DMCA claim

3   because works were not identical); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503,

4   at *6 (C.D. Cal. Aug. 14, 2020) (dismissing DMCA claim because "Defendant did not make

5   *identical* copies of Plaintiff's works and then remove the [] CMI"). This is in keeping with the

6   purpose of the DMCA, which was enacted to help address the "ease with which digital works can

7   be copied and distributed worldwide virtually instantaneously" over the Internet. S. Rep. 105-190,

8   at 8 (1998). CMI was envisioned as "a kind of license plate for a work on the information

9   superhighway," from which the authorship and/or ownership of the work could be readily

10  determined by internet users. *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184,

11  1196 (C.D. Cal. 2007) (citation omitted) (discussing legislative history of Section 1202).

12      Courts interpreting Section 1202 of the DMCA have repeatedly held that it does not apply

13  to CMI attached to a work other than that of the copyright owner, even if it is an unauthorized

14  derivative. *See, e.g.*, *Michael Grecco Prods., Inc. v. Time USA, LLC*, 2021 WL 3192543, at *5

15  (S.D.N.Y. July 27, 2021) ("A party that puts its own CMI on work distinct from work owned by a

16  copyright holder is not liable under Section 1202(a) even if the party's work incorporates the

17  copyright holder's work."); *Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *11

18  (S.D.N.Y. Sept. 30, 2019) ("[Defendant] has not violated [1202(a)] by claiming authorship over 1

19  WTC, even if it is improperly derivative of Cityfront '99."). For example, in *Crowley v. Jones*, the

20  district court dismissed a 1202(a) claim in which the defendant had allegedly used a cropped

21  version of the plaintiffs' photograph in the cover of a hip-hop album, explaining that "a defendant

22  cannot violate the DMCA by associating its name with a derivative work that is unquestionably a

23  distinct work, even if the derivative work infringes a copyright." 608 F. Supp. 3d 78, 90 (S.D.N.Y.

24  2022). This makes sense, because otherwise virtually every claim of copyright infringement would

25  necessarily be a claim for violation of the DMCA. That is not the law.

26      Second, the Complaint does not explain exactly how Meta conveyed "false" CMI. Beyond

27  a passing insinuation (¶ 51), there are no allegations that Meta's assertion of copyright ownership

28  in LLaMA is false. Plaintiffs *acknowledge* that Meta created LLaMA (¶ 50), from which it follows

that Meta could rightfully claim copyright ownership in it.  17 U.S.C. § 201.  Further, as explained above, Plaintiffs do not (and cannot) plausibly allege that LLaMA is an infringing derivative work.

Third, the claim fails because Plaintiffs do not and cannot plausibly plead that Meta acted with the requisite scienter.  There is no allegation at all that Meta knowingly provided false CMI "*with the intent* to induce, enable, facilitate, or conceal infringement."  17 U.S.C. § 1202(a)(1) (emphasis added).  The bald allegation that Meta "knew or had reasonable grounds to know" that "removal of CMI would facilitate copyright infringement" (¶ 52) is insufficient.  Further, any contention that Meta "knew" its claim of rights in LLaMA was false is defeated by the lone allegation Plaintiffs plead to support it, *i.e.*, that Meta submitted a takedown notice to GitHub in which it asserted copyright ownership in LLaMA.  Under 17 U.S.C. § 512(c)(3)(A), a DMCA takedown notice requires, among other things, statements that "the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner … or the law," and "under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed."  Plaintiffs plead no facts from which one could reasonably infer that Meta made these representations knowing that they were false. *See Krechmer v. Tantaros*, 747 Fed. App'x 6, 9 (2d Cir. 2018) (upholding dismissal of 1202(a)(1) claim because plaintiff did not plausibly allege knowledge or intent).  To the contrary, the only plausible inference to be drawn from Plaintiffs' allegations is that Meta actually believes itself to be the copyright owner of the LLaMA models, and for good reason.

### 2.      Plaintiffs fail to state a claim under Section 1202(b)(1)

Plaintiffs' 1202(b)(1) claim is equally defective.  They allege that Meta violated that section by "cop[ying]" Plaintiffs' works and "us[ing] them as training data for the LLaMA language models," a process which, "[b]y design … does not preserve any CMI." (¶ 49.)  What this means is difficult to discern, but Plaintiffs appear to posit that because training LLaMA purportedly "extracted" "expressive information" (¶¶ 41, 44) from their books without preserving or including CMI (¶ 49), this somehow constitutes "removal" of CMI under Section 1202(b)(1).  It does not.

First, the process that Plaintiffs describe in the Complaint would, if anything, constitute an omission of CMI, not a "removal."  Merriam-Webster defines "removal" as occurring when

something is separated or moved from its original position; "omission" occurs when something is excluded or unacknowledged.  (Lauter Exs. 3, 4.)  Thus, as noted above, courts interpret Section 1202(b)(1) to apply only to "removal" of CMI from original, otherwise identical, works.  *See, e.g.*, *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part, rev'd in part*, 280 F.3d 934 (9th Cir. 2002); *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3–4 (C.D. Cal. Aug. 25, 2022).  For example, in *Falkner v. General Motors LLC*, the court rejected a Section 1202(b)(1) claim brought by a mural artist, in which he alleged that a photographer removed CMI from one of his murals by photographing it at an angle from which his signature was not visible. 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018).  The court reasoned that the defendant's "failure to include" CMI could not be regarded as a "removal" under any ordinary definition of that term.  *Id*.

Here, Plaintiffs do not allege that Meta removed CMI from their books by, for example, deleting the author's names or copyright notices from the text files that contain them.  Rather, Plaintiffs contend that Meta designed the LLaMA training process to exclude CMI from the "expressive information" extracted from their books, i.e., not to extract it in the first place.  That is, by definition, an alleged omission akin to the *Falkner* defendant's photo framing, and not a cognizable removal under Section 1202(b).  Dismissal with prejudice is appropriate on this basis.

Second, even if Plaintiffs had pleaded that Meta removed CMI from their books, they have not adequately pleaded that Meta did so intentionally, with knowledge or reason to know that it would cause or facilitate infringement.  "[T]he mental state requirement in Section 1202(b)" has "a more specific application than the universal possibility of encouraging infringement; *specific allegations as to how identifiable infringements 'will' be affected are necessary*."  *Stevens v. Corelogic, Inc*., 899 F.3d 666, 674 (9th Cir. 2018) (affirming grant of summary judgment to defendant on § 1202(b) claim).  Accordingly, a "plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI."  *Id*. at 675.

Although *Stevens* addressed scienter at the summary judgment stage, pleading a claim under 1202(b) still requires "specific allegations as to how identifiable infringements will be affected by [d]efendants' alleged removing or altering of CMI," a "pattern of conduct demonstrating [that]

1    [d]efendants knew or had reason to know that their actions would cause future infringement," and

2    "non-conclusory" facts demonstrating the requisite scienter. *Mills v. Netflix, Inc.*, 2020 WL

3    548558, at *3 (C.D. Cal. Feb. 3, 2020) (dismissing DMCA claim because scienter was inadequately

4    pleaded); *O'Neal*, 583 F. Supp. 3d at 1287 (same).  Scienter need not be pleaded with particularity,

5    but it still must be plausibly alleged. *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party

6    from pleading [knowledge] under an elevated pleading standard.  It does not give him license to

7    evade the less rigid - though still operative - strictures of Rule 8").

8    　　　　Here, Plaintiffs allege that "Meta knew or had reasonable grounds to know" that removing CMI

9    (or, more accurately, failing to "preserve" it) "would facilitate copyright infringement by concealing

10   the fact that every output from the LLaMA language models is an infringing derivative work." (¶¶ 49,

11   52.)  This fails for the simple reason that, as explained above, Plaintiffs have not plausibly alleged

12   that *any* LLaMA outputs are infringing.  Meta could not have "removed" CMI intending to conceal

13   infringement of which it was not allegedly aware and which Plaintiffs never identify.

14   　　　　　　　　**3.　　　Plaintiffs fail to state a claim under Section 1202(b)(3)**

15   　　　　Plaintiffs also allege that Meta violated Section 1202(b)(3) by "creat[ing] derivative works

16   based on Plaintiffs' Infringed Works" and "distributing [them] without [Plaintiffs'] CMI."  (¶ 50.)

17   Since the only "derivative work" Meta is accused of creating is LLaMA, itself (¶ 41), this allegation

18   distills to a charge that Meta somehow unlawfully removed CMI *from LLaMA*.  This claim is

19   fundamentally incompatible with the language of Section 1202(b)(3), which prohibits distribution

20   of copies of works with CMI removed "without the authority of the copyright owner" of that work.

21   17 U.S.C. § 1202(b).  As Plaintiffs acknowledge, Meta "created" LLaMA.  (¶ 50.)  Thus, Meta is

22   the author of LLaMA and the sole party in whom copyright ownership and authority over LLaMA

23   vests.  17 U.S.C. § 201(a).  By the same token, none of the *Plaintiffs* could legitimately claim to be

24   the author or copyright owner of the LLaMA language models.  Their attempt to hold Meta liable

25   for not including all *Plaintiffs'* CMI on LLaMA—even though Plaintiffs are not LLaMA's authors

26   or copyright owners and such CMI would, by definition, be false—finds no basis in the DMCA.

27   　　　　And if the foregoing was somehow insufficient to justify dismissal with prejudice, Plaintiffs

28   *also* do not allege what CMI was removed from LLaMA or how, let alone how such removal could

conceivably conceal that "every *output* from the LLaMA language models is an infringing derivative work." (¶ 52 (emphasis added).)  Nor could they.  Perhaps Plaintiffs mean to suggest that Meta was obligated to identify Plaintiffs' CMI in connection with distribution of LLaMA.  That is a different claim from the one pleaded, namely, that Meta *removed* CMI *from LLaMA*, and distributed copies of LLaMA with CMI having been removed.  (*See* ¶ 50.)  In any case, such claim would be subject to dismissal on the grounds that (1) it does not describe a "removal" of CMI, and (2) Section 1202(b)(3) applies only to distribution of exact copies of a party's works with CMI removed (*see O'Neal*, 583 F. Supp. 3d at 1287).  Here, Plaintiffs allege that both LLaMA and its outputs are "infringing derivative works"; not identical copies.  (¶¶ 41, 44.)  This claim fails.

### D.    Plaintiffs Fail to State a Claim for Unfair Competition (Claim 4)

Plaintiff's UCL claim also fails as a matter of law.  The UCL prohibits business practices that are (1) unlawful, (2) fraudulent, or (3) unfair.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017).  Plaintiffs plead violation of the "unlawful" prong based on two alleged predicate acts: (1) "violating Plaintiffs' rights under the DMCA"; and (2) "using Plaintiffs' Infringed Works to train LLaMA" without authorization.[3]  (¶ 55.)  Neither supports a claim.

The first basis fails because, as discussed above, Plaintiffs fail to state a DMCA violation.  The UCL unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Id.* (quoting *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011)).  A UCL unlawful claim "cannot survive" where, as here, it is predicated on a defective claim.  *Mohanna v. Carrington Mortg. Servs. LLC*, 2018 WL 3730419, at *8 (N.D. Cal. Aug. 6, 2018) (dismissing UCL claim for lack of predicate violation).

---

[3] Plaintiffs also include an off-hand reference to alleged "fraudulent" conduct.  (¶ 58 (alleging "consumers are likely to be deceived" because unidentified output from LLaMA has been "emitted without any credit to Plaintiffs … whose Infringed Works comprise LLaMA's training dataset").)  A UCL fraud claim requires Plaintiffs to allege *they* were deceived, which Plaintiffs cannot do here.  *See Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, 2018 WL 659105, at *13 (N.D. Cal. Feb. 1, 2018); *Berk v. Coinbase, Inc.*, 2019 WL 3561926, at *4 (N.D. Cal. Aug. 6, 2019) (Chhabria, J.) (dismissing UCL fraud claim for failure to "particularly plead reliance" by plaintiffs), *rev'd and remanded on other grounds*, 840 F. App'x 914 (9th Cir. 2020).  Further, absent identification of specific "deceptive" outputs, this claim fails even to satisfy Rule 8, much less Rule 9's heightened pleading standard.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("fraud must be accompanied by the 'who, what, when, where, and how'").

The second basis, which concerns Meta's use of Plaintiffs' copyrighted works to train LLaMA, is merely a recasting of its claim for copyright infringement and, therefore, preempted by the Copyright Act.  Under the Copyright Act, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 … are governed exclusively by this title," and no person "is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."  17 U.S.C. § 301(a).

The Ninth Circuit uses a two-part test to assess whether a state law claim is preempted by the Copyright Act.  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017)).  First, it asks whether the "subject matter" of the claim falls within the subject matter of copyright described in 17 U.S.C. §§ 102, 103.  If so, the court must "determine whether the rights asserted under state law are equivalent to the rights contained in" Section 106.  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1138 (9th Cir. 2006).  "[T]he state cause of action must protect rights which are qualitatively different from the copyright rights.  The state claim must have an extra element which changes the nature of the action."  *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), *overruled on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

Here, the subject matter of Plaintiffs' UCL claim is their copyrighted books, which plainly falls within the subject matter of copyright.  *See Maloney*, 853 F.3d at 1011.  Further, the purported violation is Meta's unauthorized "use[]" of those books "to train LLaMA." (¶ 57.)  Although Plaintiffs artfully direct their UCL claim to improper "use" as opposed to "copying" (*id.*), the only unauthorized "use" of Plaintiffs works Meta is alleged to have made was to copy them in training LLaMA (*see* ¶ 40), which likewise falls squarely within the ambit of 17 U.S.C. § 106(1) (granting the copyright owner the exclusive right to "reproduce the copyrighted work in copies").  To the extent Plaintiffs' UCL claim is premised on unauthorized use or copying of their books, it must be dismissed with prejudice as preempted.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (affirming dismissal of UCL claim with prejudice as preempted); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 823 F. App'x 516, 519 (9th Cir. 2020) (affirming summary judgment on preemption grounds); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (same).

1

### E.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Claim 5)

Like their UCL claim, Plaintiffs' claim for "unjust enrichment" under California common law is coextensive with their copyright claim and, thus, preempted under Section 301.  Specifically, Plaintiffs allege that Meta "unjustly utilized access to the Infringed Works to train LLaMA." (¶ 3 at 9.)  That is identical to, not "qualitatively different from," Plaintiffs' copyright rights.  *Del Madera Props.*, 820 F.2d at 977 (dismissing unjust enrichment claim based on an implied promise not to use copyrighted work).  The unjust enrichment claim should be dismissed with prejudice.

Even if Plaintiffs' unjust enrichment claim were not preempted (it is), dismissal would still be warranted.  Courts in this Circuit interpret a standalone claim for "unjust enrichment" as a "quasi-contract claim seeking restitution."  *Rabin v. Google LLC*, 2023 WL 4053804, at *12 (N.D. Cal. June 15, 2023) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)); *see also Locklin v. StriVectin Operating Co.*, 2022 WL 867248, at *3 (N.D. Cal. Mar. 23, 2022) (Chhabria, J.).  Because Plaintiffs do not and cannot allege the required "affiliation or connection [with Meta] to invoke a quasi-contract theory of liability," Claim 5 should be dismissed with prejudice for this additional reason.  *Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *8 (C.D. Cal. Sept. 25, 2017) (dismissing unjust enrichment claim in trademark dispute with prejudice).

### F.     Plaintiffs Fail to State a Claim for Negligence (Claim 6)

Plaintiffs theorize that Meta owed them and breached a general duty of care by negligently (1) "collecting, maintaining and controlling Plaintiffs' and Class members' Infringed Works"; and (2) "engineering, designing, maintaining and controlling systems—including LLaMA—which are trained on Plaintiffs' and Class members' Infringed Works without their authorization." (¶ 11 at 10.)  In other words:  Meta allegedly copied Plaintiffs' books in the process of training LLaMA without their consent.  This claim is preempted and fails to state a claim in any event.

First, as to preemption, the "duty" to which Plaintiffs obliquely refer is, in effect, an obligation not to copy their copyrighted books without permission.  Plainly, Plaintiffs have "merely recharacterize[d] a copyright infringement claim as one for negligence."  *See Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) (dismissing claim as preempted); *Cromwell v. Certified Forensic Loan Auditors*, 2019 WL 1095837, at *11 (N.D. Cal. Jan. 10, 2019) (rejecting as preempted a

negligence claim premised on defendant's unauthorized publication of a book online).  Whether cast as an issue of unfair competition, unjust enrichment, or negligence, Plaintiffs' claim that Meta made unauthorized copies of Plaintiffs' books in the process of training LLaMA is a paradigmatic copyright claim governed exclusively by the Copyright Act.  The negligence claim cannot stand.

Second, Plaintiffs plead the elements of negligence in only a threadbare and conclusory manner, which does not suffice.  *Iqbal*, 556 U.S. at 678.  In addition to the "existence of a duty, [and] a breach of that duty," they were also required to allege "damages proximately caused by the breach."  *Mayall ex rel. H.C. v. USA Water Polo, Inc*., 909 F.3d 1055, 1060 (9th Cir. 2018).  Plaintiffs make no attempt to do so.  They do not even allege *that* they suffered damages, let alone what those damages consist of and how Meta supposedly caused them.  (*See* ¶¶ 9–14 at 9–10.)  Dismissal is required.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031–32 (N.D. Cal. 2012) (dismissing negligence claim for failure to allege an "appreciable, nonspeculative, present injury").

Third, even if Plaintiffs had pleaded that they were injured by Meta's alleged "use" of the Infringed Works (they have not), the claim is barred by the "economic loss doctrine."  In actions for negligence in California, recovery of purely economic loss is foreclosed in the absence of "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule."  *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 App'x 603, 605 (9th Cir. 2008) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)); *see also Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035 (N.D. Cal. 2016) (granting motion to dismiss on ground that economic loss doctrine barred plaintiff's claim).  To the extent that the Complaint includes any vague suggestion of injury, that injury is purely economic in nature.  Plaintiffs were therefore required to also plead an exception to the economic loss rule, which they have not attempted to do, warranting dismissal.

## V.   CONCLUSION

Plaintiffs' efforts to contort copyright law to manufacture infringement claims against Meta are as unavailing as their efforts to recast those defective claims under California statutory and common law.  For all of the foregoing reasons, Claim 1, in part, and Claims 2 through 6 should be dismissed with prejudice.

1

2    Dated: September 18, 2023

3

4                                                    COOLEY LLP

5                                                    By: _____
                                                     Bobby Ghajar
6                                                    Angela L. Dunning
                                                     Mark Weinstein
7                                                    Judd Lauter
                                                     Colette Ghazarian
8
                                                     LEX LUMINA PLLC
9                                                    Mark A. Lemley

10                                                   Attorneys for Defendant
                                                     META PLATFORMS, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28