Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (SBN 243703)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:           jsaveri@saverilawfirm.com
                    czirpoli@saverilawfirm.com
                    cyoung@saverilawfirm.com
                    lkessler@saverilawfirm.com
                    kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:           mb@butericklaw.com

*Counsel for Individual and Representative Plaintiffs*
*and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Richard Kadrey, et al., | **Case No. 3:23-cv-03417-VC** |
|   Individual and Representative Plaintiffs, | **PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS** |
|     v. | |
| Meta Platforms, Inc., et al., | |
|        Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ...................................................................................2

III.    ARGUMENT ..........................................................................................................3

        A.      Meta Does Not Dispute that Plaintiffs Have Adequately Alleged a Direct
                Copyright-Infringement Claim Based on Meta Copying Plaintiffs' Books
                for Training ................................................................................................3

                1.      Copyright infringement does not require a showing of "substantial
                        similarity" in cases that involve direct copying ..............................4

                2.      Plaintiffs have sufficiently alleged a direct-infringement claim
                        based on LLaMA being an infringing derivative work ....................5

                        a.      LLaMA copies the training dataset not to learn "facts or
                                ideas" from it, but to extract and then imitate the
                                copyrighted expression therein ............................................6

                3.      Meta's fair-use defense is premature ...............................................7

                4.      This Court must reject Meta's outrageous argument that its
                        copyright infringements are so vast that Meta cannot be held
                        accountable ......................................................................................8

        B.      Plaintiffs Adequately Allege a Claim for Vicarious Copyright Infringement
                ..................................................................................................................9

        C.      Plaintiffs Adequately Allege a Claim Under the DMCA (17 U.S.C. § 1202)
                ................................................................................................................11

                1.      Plaintiffs have pleaded all the elements of a DMCA § 1202(b)
                        violation ........................................................................................12

        D.      Plaintiffs Allege Valid State Law Claims ................................................15

                1.      Plaintiffs state law claims are not preempted ................................15

                2.      Plaintiffs state a claim under California's Unfair Competition Law
                        (Cal. Bus. & Prof. Code, §§ 17200 *et seq.*) ..................................17

                3.      Plaintiffs state a claim for unjust enrichment ................................18

                4.      Plaintiffs state a claim for negligence ...........................................19

IV.     CONCLUSION.....................................................................................................20

PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ................................................15

*Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith,* 143 S.Ct. 1258 (2023) .....................8

*Authors Guild v. Google*, *Inc.*, 804 F.3d 202 (2d Cir. 2015) ...........................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................................3

*Bravado Int'l Grp. Merch. Servs., Inc. v. Zhao*, No. CV 13-01032 MMM, 2014
    WL 12579810 (C.D. Cal. June 20, 2014) .............................................................................4

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014) ...........................................................4

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ...............................................................8

*Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909 (C.D. Cal.
    2014) .....................................................................................................................................4

*China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM,
    2015 WL 12732432 (C.D. Cal. Dec. 7, 2015) ..................................................................9, 10

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................................3

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ..........................................................................19

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS, 2013
    WL 1249021 (C.D. Cal. Mar. 25, 2013) ..............................................................................19

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ...................................................3

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019
    WL 5842756 (N.D. Tex. Nov. 7, 2019) ...............................................................................12

*Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, No. 22-CV-06823-JST, 2023 WL
    3449131 (N.D. Cal. May 11, 2023) ............................................................................ *passim*

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ...................................................................3, 7

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL
    16961477 (C.D. Cal. Aug. 25, 2022) ...................................................................................13

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ......................................................................18

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ...........................................18, 19

*Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927 (C.D. Cal. 2018)............................................14

*Ferrero S.p.A. v. Imex Leader, Inc.*, No. 817CV02152DOCKESX, 2018 WL
11346538 (C.D. Cal. May 8, 2018) ................................................................................8

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016)...........................11

*Frost-Tsuji Architects v. Highway Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2015
WL 263556 (D. Haw. Jan. 21, 2015) ............................................................13

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL
5798282 (D. Haw. Nov. 7, 2014)........................................................13

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896 (9th
Cir. 1992) ................................................................16

*GC2 v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828
(N.D. Ill. 2019)..................................................................14

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) ...........18, 19

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016)..................................13

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, 2015 WL 12712311 (C.D. Cal. Dec. 16,
2015) ..............................................................5, 6, 9

*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561 (N.D.
Cal. Mar. 26, 2019)........................................................12

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ..............................................5, 6

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 App'x 603, 605 (9th Cir.
2008) ..........................................................20

*KaZee, Inc. v. Callender*, No. 4:19-CV-31-SDJ, 2020 WL 994832 (E.D. Tex.
Mar. 2, 2020)..........................................................4

*Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006).................................15

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984)...........................................6

*Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052 (N.D. Cal. 2022).............11, 12

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017)......................................15

*Mango v. Buzzfeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ..................................12, 13

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ......................11

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa.
Nov. 25, 2003) ..........................................................11

*Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) .................................................................................................................11

*Mollman v. Zoetop Bus. Co.*, No. CV 22-4128 PA, 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022) .............................................................................................................11

*Murphy v. Millennium Radio Grp.*, CIV.A. 08-1743 MAS, 2015 WL 419884 (D.N.J. Jan. 30, 2015) ........................................................................................11

*Nagrampa v. MailCoups Inc.*, No. C03-00208 MJJ, 2007 WL 2221028 (N.D. Cal. July 30, 2007) ....................................................................................................17

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ................................12

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ................................10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) .........................9

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ................... *passim*

*Ross-Nash v. Almond*, No. 2:19-cv-00957-APG-NJK, 2020 WL 6947691 (D. Nev. Oct. 28, 2020) ...............................................................................................4

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943, 2022 WL 1527518 (C.D. Cal. May 13, 2022) .......................................................................16

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) .............................................14

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .......................................................3

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intelligence Inc.*, __ F. Supp. 3d __, 2023 WL 6210901 (D. Del. Sep. 25, 2023) ................................................8, 10, 15

*Venegas-Hernandez v. Asociacion de Compositores y Editores De Musica Latinoamericana (ACEMLA)*, 424 F.3d 50 (1st Cir. 2005) .....................................17

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ...............................................................................................11

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .......................................18

*Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ...............................................................................................20

*Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087 (C.D. Cal. Oct. 10, 2017) .......................................................................................18

*YellowCake, Inc. v. DashGo, Inc*, No. 1:21-CV-0803 AWI BAM, 2022 WL 172934 (E.D. Cal. Jan. 19, 2022) ...........................................................................4

**State Cases**

*Ghirardo v. Antonioli*, 14 Cal.4th 39 (1996) ...................................................................19

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979).............................................................20

*Kuciemba v. Victory Woodworks, Inc.*, 14 Cal.5th 993 (2023) ......................................20

*Kwikset Corp. v. Super. Ct*., 51 Cal.4th 310 (2011) .......................................................17

*Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390 (2013).........................................................17

*Social Media Cases*, No. JCCP 5255 (Cal., Super. Ct. L.A. Cnty.2023) ................18, 20

**Federal Statutes**

17 U.S.C. § 101...................................................................................................................5

17 U.S.C. §§ 102-103 .......................................................................................................15

17 U.S.C. § 106............................................................................................................15, 16

17 U.S.C. § 107...................................................................................................................8

17 U.S.C. § 301(a) ............................................................................................................15

17 U.S.C. § 1202..................................................................................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code, §§ 17200 *et seq.* ......................................................................17

**Rules**

Fed. R. Civ. P. 8(a) .............................................................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................................................12

Fed. R. Civ. P. 12(b)(6).................................................................................................3, 4

**Other Authorities**

https://ai.meta.com/llama/.................................................................................................10

## I.      INTRODUCTION

*Generative AI* is the name given to a new category of software products like the LLaMA language models designed by Meta Platforms, Inc. ("Meta") that are at the center of this lawsuit. The most distinctive feature of generative AI products like the LLaMA models is that they derive their value from copyright infringement—and other violations of federal and state law—on a staggering and unprecedented scale. During the phase euphemistically called *training*, Meta copied vast numbers of copyrighted works in their entirety and extracted protected expression to create the LLaMA models. **LLaMA is designed to do one thing: imitate the expression found in the infringed works**.

A generative AI system like LLaMA does not "learn like a human"—or in Meta's tender phrasing, "[j]ust as a child learns language." MTD at 1. This metaphor is deliberately misleading. LLaMA is not human. It is software that Meta has designed to copy the copyrighted works of a class of millions of individual creators—including Plaintiffs—without consent, credit, or compensation. Plaintiffs seek redress for Meta's illegal LLaMA models.

Tellingly, Meta has not moved to dismiss Plaintiffs' direct copyright-infringement claim based on training LLaMA with copyrighted works. Nevertheless, Meta still tries to leverage its motion to pre-litigate future issues. For instance, Meta seeks to rewrite Ninth Circuit copyright law by injecting "substantial similarity" as an element of Plaintiffs' copyright claim. But as Plaintiffs allege, **this case is about direct digital copying of entire works**. As a matter of law, substantial similarity serves as a method of showing copying where evidence of direct copying is unavailable. Meta also telegraphs a future fair-use argument. MTD at 2. But fair use is an affirmative defense. It is improper at this stage.

Where Meta actually contests the sufficiency of Plaintiffs' allegations, its arguments fall short. Meta argues that Plaintiffs' vicarious-infringement claim fails. But Plaintiffs have set forth ample facts supporting each element of the claim: Plaintiffs have alleged infringement by third parties, i.e., LLaMA's users; Meta's right to stop the conduct; and Meta's financial interest in the infringement. This is also true for Plaintiffs' DMCA claim: Plaintiffs have alleged facts demonstrating that Meta

PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS

designed LLaMA to remove and alter CMI with knowledge that the CMI's removal enabled further infringement. And Plaintiffs state valid California law claims that are not preempted. Meta's motion to dismiss should be denied.

## II.    FACTUAL BACKGROUND

Plaintiffs Richard Kadrey, Sarah Silverman, and Christopher Golden are accomplished book authors. ¶¶ 9-11.[1] Each hold registered copyrights in one or more books. Kadrey wrote *Sandman Slim*, *Aloha from Hell*, *The Everything Box*, *Kill the Dead*, *The Perdition Score*, and *The Wrong Dead Guy*, among others. ¶ 9 and Ex. A. Silverman wrote *The Bedwetter*. ¶ 10 and Ex. A. Golden wrote *Ararat*, *Dead Ringers*, *The Pandora Room*, and *Snowblind*, among others. ¶ 11 and Ex. A. Plaintiffs hold copyright registrations for these works. ¶ 12 & Ex. A. Each of Plaintiffs' books include copyright-management information, such as the books' title, ISBN number, their name, and terms of use. ¶ 20.

Meta is a "diversified internet company" that "creates and distributes artificial-intelligence software products." ¶ 16. Certain generative-AI products created and distributed by Meta are known as *large language models* ("LLMs"). ¶ 18. Meta calls its set of large language models "LLaMA." ¶ 18. An LLM is "AI software designed to parse and emit natural language." ¶ 18. An LLM is created or "trained" by "copying massive amounts of text from various sources and feeding these copies into the model." ¶ 18. During training, the LLM "extracts expressive information" from each textual work in the training dataset. ¶ 18. At the end of this process, the LLM can "emit convincing simulations of natural written language as it appears in the training dataset." ¶ 18.

Books comprise a large part of Meta's training dataset for its LLaMA models. ¶¶ 23–30. Among other sources, Meta has trained LLaMA on a dataset of books called "Books3." ¶ 23. The Books3 dataset "comprises 108 gigabytes of data." ¶ 25. According to "[t]he person who assembled

---

[1] "¶ __," "Ex. __," and "line __" citations are to the Complaint, *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417 (N.D. Cal. July 7, 2023), ECF No. 1 unless otherwise indicated.

the Books3 dataset," the 196,640 books in the dataset were copied from a website called Bibliotik.

¶ 28. Bibliotik is "one of a number of notorious 'shadow library' websites" that are "flagrantly illegal"

repositories of copyrighted material. ¶ 27. At the time Plaintiffs filed their complaint, the Books3

dataset was available for download from multiple websites. ¶¶ 28–29. Plaintiffs are aware that

"[m]any of [their] books appear in the Books3 dataset". ¶ 30 & Ex. B. The works found in the Books3

dataset, including Plaintiffs', were copied in their entirety, without consent. ¶¶ 38–40.

## III.    ARGUMENT

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual

allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short

and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly,* 550 U.S. at 569

n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what

. . . the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545; *see also Swierkiewicz*

*v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleadings that a

recovery is very remote and unlikely but that is not the test."). "The court must construe the complaint

in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable

inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir.

2005). Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal "is proper only where there is

no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (citation omitted).

### A.    Meta Does Not Dispute that Plaintiffs Have Adequately Alleged a Direct Copyright-Infringement Claim Based on Meta Copying Plaintiffs' Books for Training

The core claim in Plaintiffs' complaint is Count 1, for direct copyright infringement. Plaintiffs

allege two theories of direct infringement by Meta: one based on Meta training LLaMA with Plaintiffs'

works, and a second based on LLaMA itself being an infringing derivative work. ¶¶ 37–41. Meta has

**not** moved to dismiss Plaintiff's claim as to training. MTD at 6. But Meta still accuses Plaintiffs of a

"fundamental misunderstanding of copyright law." *Id.* Meta then offers the Court a mini-treatise on

copyright law plainly intended to pre-litigate future arguments. *See* MTD at 6–9.

### 1.  Copyright infringement does not require a showing of "substantial similarity" in cases that involve direct copying

Meta is wrong that "[t]o prove infringement, one must show substantial similarity." MTD at 8.

That is not the law. "'Substantial similarity' is not an element of a claim of copyright infringement.

Rather, it is a doctrine that [allows the finder of fact to determine or] adjudicate whether copying of

the 'constituent elements of the work that are original' actually occurred when an allegedly infringing

work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E.*

*Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). This holding is the law of this Circuit and

binds the Court. District courts throughout this circuit have cited and followed this holding with

approval and followed it. *See*, *e.g.*, *YellowCake, Inc. v. DashGo, Inc*, No. 1:21-CV-0803 AWI BAM,

2022 WL 172934, at *4 (E.D. Cal. Jan. 19, 2022); *Ross-Nash v. Almond*, No. 2:19-cv-00957-APG-

NJK, 2020 WL 6947691, at *2 (D. Nev. Oct. 28, 2020); *Cellular Accessories for Less, Inc. v. Trinitas*

*LLC*, 65 F. Supp. 3d 909, 915-16 (C.D. Cal. 2014); *Bravado Int'l Grp. Merch. Servs., Inc. v. Zhao*, No.

CV 13-01032 MMM (JCGx), 2014 WL 12579810, at *7 (C.D. Cal. June 20, 2014). This principle is

observed with approval in courts outside this Circuit as well. *See*, *e.g.*, *KaZee, Inc. v. Callender*, No.

4:19-CV-31-SDJ, 2020 WL 994832, *7 (E.D. Tex. Mar. 2, 2020) (denying Rule 12(b)(6) challenge in a

"case that involves direct evidence of copying").

Thus, in cases that involve direct, wholesale digital copying of copyrighted works—as

Plaintiffs allege here—the substantial-similarity test is a "red herring" because "the proper question is

whether [infringement] occurred *vel non*." *Range Rd. Music*, 668 F.3d at 1154; *see also Briggs v.*

*Blomkamp*, 70 F. Supp. 3d 1155, 1163-64 (N.D. Cal. 2014) ("Absent evidence of direct copying," a

plaintiff must show access and substantial similarity). Plaintiffs' first theory of direct infringement concerns training. Meta directly copied Plaintiffs' books and fed them to its language models as training data. ¶¶ 37–40. Under this theory, no showing of substantial similarity is necessary, because the works were directly copied in their entirety, without consent of the authors. ¶ 40; *Range Rd. Music*, 668 F.3d at 1154. Meta's insistence on imposing a substantial-similarity test is calculated to distract from its own culpability. *Id*.

> **2.    Plaintiffs have sufficiently alleged a direct-infringement claim based on LLaMA being an infringing derivative work**

Meta's argument that Plaintiffs' second theory of direct infringement is not sufficiently alleged, is equally off base. Plaintiffs adequately allege a claim that Meta's LLaMA language models are themselves infringing derivative works.

Under the Copyright Act, a work qualifies as a derivative work if it has "recast, transformed, or adapted" an existing copyrighted work. 17 U.S.C. § 101; *Jarvis v. K2 Inc.*, 486 F.3d 526, 531 (9th Cir. 2007). Plaintiffs have alleged during training, the LLaMA language model "copies each piece of text in the training dataset" and then "progressively adjusts its output to more closely resemble" expression extracted from the training dataset. ¶ 18. By so doing, the language model can eventually "emit convincing simulations of natural written language as it appears in the training dataset." ¶ 18. Put another way—**the entire purpose of LLaMA is to imitate copyrighted expression**. Because Meta's "LLaMA language models cannot function without the expressive information extracted from Plaintiffs' Infringed Works[2] and retained" inside them, "these LLaMA language models are themselves infringing derivative works." ¶ 41. As discussed above, no showing of substantial similarity is necessary because Plaintiffs have specifically alleged the expressive information from the copyrighted works was directly copied by the LLaMA language models. *Range Rd. Music,* 668 F.3d at 1154. *ITC*

---

[2] "Infringed Works" refers to Plaintiffs' books currently known to exist in the Books3 dataset. ¶ 30 and Exhibit B.

PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS

*Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV122650JFWAJWX, 2015 WL 12712311 (C.D. Cal. Dec. 16, 2015).

Meta mischaracterizes Plaintiffs' allegations when it contends that Plaintiffs assert "that a 'derivative work' encompasses 'any work based on a copyrighted work,' irrespective of substantial similarity." MTD at 8 (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)). That is not what *Litchfield* says, nor what Plaintiffs claim. Indeed, consistent with *Range Road Music*, *Litchfield* says that "[a] work is not derivative **unless it has been substantially copied** from the prior work." *Litchfield*, 736 F.2d at 1357 (emphasis added). Consistent with *Litchfield*, Plaintiffs specifically allege direct digital copying of their entire works, and Meta has not argued otherwise. First, their works were ingested in their entirety during training. ¶ 38–40. Next, Meta created LLaMA that extracted expressive information from the training data. ¶¶ 18–19, 41. LLaMA is therefore itself an infringing derivative work. ¶ 41; *see also Jarvis*, 486 F.3d at 531.

*Litchfield* can be distinguished on other grounds as well: it was an indirect-copying case relying on substantial similarity. Where the evidence shows direct copying, "the fact that the final result of defendant's work differs from plaintiff's work is not exonerating." *ITC Textile Ltd.*, 2015 WL 12712311, at *5. In *ITC Textile*, the plaintiffs created copyrighted images that were directly copied and later altered as part of certain derivative works (namely garments). *Id.* The court rejected the defendant's invitation to apply a substantial-similarity analysis, because the images on the garments had originated from direct copying. *Id.* In fact, a difference between the works "can show infringement of multiple exclusive rights, such as unauthorized reproduction and unauthorized creation of a derivative work." *Id.*

> a.   **LLaMA copies the training dataset not to learn "facts or ideas" from it, but to extract and then imitate the copyrighted expression therein**

The Court should reject Meta's attempt to distract it by relying on the "fact/expression dichotomy," the longstanding principle that copyright protects expression, not facts or ideas, which

can be taken from copyrighted works without contravening the author's exclusive rights. MTD at 7 (citing *Feist Publ'n Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991)). Meta argues "the most plausible read of Plaintiffs' allegations is that" what has been "extracted and analyzed" from Plaintiffs' work is merely "information" that "falls outside the scope of copyright." MTD at 9. First, Meta misstates the Rule 12 standard. "The court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe*, 419 F.3d at 1062. What Meta deems to be the "most plausible read" is not relevant at this stage. Second, Meta's argument ignores Plaintiffs' allegations, Meta's tacit admission that they copied Plaintiffs' copyrighted works in their entirety, and therefore it is not an issue to be decided on the pleadings.

Plaintiffs explicitly allege that their protected, copyrighted expression—not merely unprotected facts and ideas—have been copied from them. Plaintiffs allege that during training, the LLaMA language model "copies each piece of text in the training dataset" and then "progressively adjusts its output to more closely resemble" expression extracted. ¶ 18. By so doing, the language model can "emit convincing simulations of natural written language as it appears in the training dataset." ¶ 18. Because Meta has directly copied Plaintiffs' *entire* copyrighted works, it is certain that Meta has harvested protected expression. Indeed, this is precisely why, in the Ninth Circuit, substantial similarity is not required in direct-copying cases like this one. *Range Rd. Music,* 668 F.3d at 1154. Moreover, **the entire purpose of LLaMA is to imitate copyrighted expression**. Meta's contention that LLaMA merely reports metadata about the expression ignores Plaintiffs' well pleaded allegations, and the reality of how LLaMA actually works.

### 3.     Meta's fair-use defense is premature

Meta tepidly tries to utilize a fair-use argument in its motion by making a very broad and very conclusory claim that "[u]se of texts to train LLaMA . . . is transformative by nature and quintessential fair use". MTD at 2. Though Meta concedes that issue "will be for another day" (MTD at 2), Meta

cannot resist the temptation. Meta repeatedly cites leading fair use decision, *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015). MTD at 7, 9. While the fair use doctrine provides a defense in certain cases, it is nonetheless a limited feature of copyright law. 17 U.S.C. § 107; *Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith,* 143 S.Ct. 1258, 1282 (2023) (rejecting construction of fair use that "would swallow the copyright owner's exclusive right to prepare derivative works"). Importantly, for present purposes, "fair use is an affirmative defense." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). Like other defenses, it is "inappropriate to resolve on a motion to dismiss." *Ferrero S.p.A. v. Imex Leader, Inc.*, No. 817CV02152DOCKESX, 2018 WL 11346538, at *15 (C.D. Cal. May 8, 2018). Contrary to what Meta would like the law to be, no U.S. court has squarely ruled that training an AI model with copyrighted expression is fair use. Indeed, just last month, a district court ruling on dueling summary-judgment motions, held that the question of whether the use of copyrighted material to train a generative AI model is fair use "must go to a jury." *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, __ F. Supp. 3d __, No. 1:20-CV-613-SB, 2023 WL 6210901, at *6 (D. Del. Sep. 25, 2023) (interpreting *Authors Guild v. Google*, among others).

### 4. This Court must reject Meta's outrageous argument that its copyright infringements are so vast that Meta cannot be held accountable

Meta repeatedly argues that Plaintiffs' works represent a small contribution to LLaMA's training data. *See*, *e.g.*, MTD at 2 & 5 (asserting that "[Plaintiffs'] books comprised less than a millionth of the training data"). Meta seems to suggest that having infringed so many copyrights, Meta should not be held accountable for any infringement. Meta is simply wrong.

Even what Meta characterizes as a fraction of its training dataset is staggering. The Books3 dataset that Meta used for training contains 196,640 titles, representing 108 gigabytes of data. ¶¶ 25, 28. In its motion, Meta claims that this represents "only 4.5% of training text." MTD at 5. On its face, this means LLaMA training dataset is roughly the size of 4.37 million books ($\approx$ 196,640 / 4.5%).

Nothing in U.S. law precludes Meta from being held to account for every copyrighted work it

has infringed. Meta cites no authority for this argument, nor can it—the argument fails as a matter of law.

### B.      Plaintiffs Adequately Allege a Claim for Vicarious Copyright Infringement

Plaintiffs also assert a claim for vicarious liability for the copyright infringement of others. This requires allegations of "direct infringement" by a third party where the defendant "declin[es] to exercise a right to stop or limit" the infringement and retains "a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

**Direct third-party infringement**. Plaintiffs allege that "every output of the LLaMA language models is an infringing derivative work." ¶ 44. Because these infringing outputs are initiated by third parties—namely, users of Meta's language models—these outputs constitute the predicate direct infringements. *See China Cent. Television v. Create New Tech., (HK) Ltd.*, No. CV 15-01869 MMM (AJWx), 2015 WL 12732432, at *11 (C.D. Cal. Dec. 7, 2015) (claim for vicarious infringement found where "[defendants'] entire business model is based on generating profit from widespread infringement of plaintiffs' programming").

Meta argues that Plaintiffs' output theory of infringement necessarily fails because Plaintiffs must "identify specific examples of directly infringing works . . . for purposes of assessing substantial similarity." MTD at 10 (citing *Becton, Dickinson & Co. v. Cytek Biosci. Inc.*, No. 18-CV-00933-MMC, 2020 WL 1877707, at *6–7 (N.D. Cal. Apr. 15, 2020)). But Meta's persistent preoccupation with substantial similarity is still a "red herring" and remains wrong as a matter of law. *See Range Rd. Music*, 668 F.3d at 1154. Meta does not even mention, let alone grapple with, Ninth Circuit direct-copying cases like *Range Road Music* and *ITC Textile*.

**Meta's right to stop the infringing conduct**. Meta wrongly argues that Plaintiffs have failed to make out this element of the claim. MTD at 10. But Plaintiffs allege that "Meta . . . creates and distributes artificial-intelligence software products." and that "LLaMA is a set of large language models created and maintained by" Meta. ¶¶ 1, 16. Plaintiffs allege in detail various facts—partly

gleaned from a paper published by Meta itself—about Meta's selection of training data for its language models. ¶¶ 21–30. Because Meta created and released the LLaMA language models, and exclusively—and plausibly—controls how all its products work, Meta has the "right to stop" the infringement. For instance, Meta could have ensured its language models were only trained on licensed training data, or simply turned the models off. *See*, *e.g.*, *Range Rd. Music*, 668 F.3d at 1153 (finding that plaintiff "pleaded specific facts to raise a plausible inference" that defendants exercised control.

**Meta's financial interest in the infringing activity**. Plaintiffs have alleged that Meta used their copyrighted works as fodder to train the LLaMA models, which were then commercialized and broadly promoted. ¶¶ 37–41. This is sufficient to allege this element. *See Thomson Reuters*, 2023 WL 6210901, at *6 ("Ross does not contest that it had a financial interest in the alleged copies—it used the Bulk Memos to train AI, its core product."). But Plaintiffs allege more—Plaintiffs allege that "Meta has in fact distributed the LLaMA models . . . and has benefited financially from these acts" (¶ 32) and that LLaMA is being released commercially. ¶ 35. That is enough. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) ("[f]inancial benefit exists where the availability of infringing material acts as a draw for customers."); *China Cent. Television,* 2015 WL 12732432, at *11.

Meta attempts to dodge the fact it has a financial interest in LLaMA by claiming that the initial LLaMA models were released under a noncommercial license. MTD at 12; ¶ 31. Even if true, that does not negate the financial interest and business purpose of the product. Also, this is in the nature of a defense and a proper subject of discovery. In fact, "Meta has not disclosed what criteria" it used to share the LLaMA models, "nor who has actually received them, or whether Meta has in fact adhered to its stated criteria." ¶ 32. Furthermore, Plaintiffs alleged that "Meta plans to make the next version of LLaMA commercially available". ¶ 35. That did turn out to be true: in July 2023, Meta released LLaMA 2 "for research and commercial use." *See* https://ai.meta.com/llama/.

### C.     Plaintiffs Adequately Allege a Claim Under the DMCA (17 U.S.C. § 1202)

Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI"). 17 U.S.C. § 1202(b); *Doe 1 v. GitHub, Inc.*, __ F. Supp. 3d __, No. 22-CV-06823-JST, 2023 WL 3449131, at *11 (N.D. Cal. May 11, 2023). Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]" Section 1202(c), which describes protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015). The pleading burden under the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22-4128 PA (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden is "not as exacting" at the pleading stage).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). Generally, "'direct proof' of one's specific wrongful intent is 'rarely available'" and such intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016). Therefore, for purposes of pleading § 1202(b) scienter, "'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit." *See Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).

A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 950-52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Thus, fair use is not a defense. *See Murphy v. Millennium Radio Grp.*, CIV.A. 08-1743 MAS, 2015

WL 419884, at *5 (D.N.J. Jan. 30, 2015); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019).

A DMCA claim requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022). The plaintiff must also plead scienter, which need not be alleged with specificity. *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4 (N.D. Cal. Mar. 26, 2019); Fed. R. Civ. P. 9(b).

### 1.     Plaintiffs have pleaded all the elements of a DMCA § 1202(b) violation

As set forth below, Plaintiffs have pleaded all the requisite elements of a DMCA violation.

**Existence of CMI**. Plaintiffs specifically allege that their works contained several types of CMI. ¶¶ 20, 48. Each is recognized as CMI. *See* 17 U.S.C. § 1202(c)(2), (3), (6); *see also Logan,* 636 F. Supp. 3d at 1063 (giving examples of CMI). Additionally, Plaintiffs' CMI was incorporated into their works, and each includes a copyright notice. ¶¶ 20, 48.

**Distribution of CMI.** Plaintiffs allege that Meta "falsely claim[s] it has sole copyright in the LLaMA language models." ¶ 51. In so doing, it distributes false CMI.

**Distribution of copied works.** Plaintiffs allege Meta distributed copies of the works. ¶ 50 The point of LlaMA is to parse and emit natural language in response to user queries. ¶ 18. If a user asks for a summary of a work, LlaMA will comply, and it does so *without* reproducing Plaintiffs' CMI.

**Knowing removal of CMI**. Plaintiffs allege that Meta knowingly removed or altered CMI from Plaintiffs' Works. Indeed, that was the point, as Plaintiffs allege the training process by design does not preserve any CMI. ¶ 49.

**Knowingly enabling infringement.** Plaintiffs allege Meta knew or had reasonable grounds to know that its distribution would induce, enable, or conceal an infringement, either by itself or its users. "[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement." *Mango v.*

*Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020); *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement' that, upon distribution 'will . . . conceal' the fact of **that infringement**.") (emphasis added). This so-called second scienter element is evidenced by Meta's concealment of "the fact that every output from the LlaMA language models is an infringing derivative work, synthesized entirely from expressive information found in the training data." ¶ 52. Meta raises several challenges to Plaintiffs' well pleaded allegations. Each fail.

**First,** Meta's argument that DMCA §1202 requires copies be identical is wrong. MTD at 14-15. §1202 has no requirement that the copy from which CMI is removed be identical to the original work. *See ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Critically, as revealed by a careful reading of the cases cited by Meta, identicality is only a proxy for cases where copying needed to be inferred.[3] Again, Plaintiffs allege that their Works were directly copied, CMI included.[4] No inference is necessary to conclude that CMI was removed or altered.

**Second**, Meta argues with respect to Plaintiffs' §1202(b)(1) claim, "the process that Plaintiffs describe in the Complaint would, if anything, constitute an omission of CMI, not a 'removal.'" MTD

---

[3] For example, in *Frost-Tsuji Architects v. Highway Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), as revealed by that court's earlier summary judgment opinion, the architectural plans at issue "could have been created by redrawing Frost-Tsuji's plans and not including Frost-Tsuji's copyright management information[.]" *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014). Similarly, in *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022), the court plainly stated that "[t]he differences between the parties' products *undercut any inference* that Defendants removed or altered Plaintiff's CMI." *Id.* at *4.

[4] Similarly, Meta's reliance on cases holding that the DMCA "does not apply to CMI attached to a work other than that of the copyright owner" (MTD at 13) likewise fails. Here, Plaintiffs have alleged that the CMI is attached in the work and copied by Meta as part of the training of LLaMA. ¶ 49. Meta also claims that Plaintiffs' Section 1202 (b)(3) claim fails because Plaintiffs' claim is a "charge that Meta somehow unlawfully removed CMI from LLaMA." MTD at 16. For the same reasons, Meta's arguments fail. The DMCA prohibits Meta from removing the CMI when copied by Meta. As Meta concedes, none of LLaMA's output includes or contains removed CMI.

at 14-15. The law makes no such distinction. Plaintiffs do not merely allege that *parts* of their books were copied. On the contrary, Plaintiffs allege that their works were copied in their entirety—CMI *included*. ¶¶ 18, 38. CMI was not merely omitted as Meta claims. *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927 (C.D. Cal. 2018) is inapplicable here. This is not simply not a case where Plaintiffs allege a "failure to include" but rather, that the CMI was copied as part of the training process and then removed when LLaMA outputs.

**Third**, Meta's argument that Plaintiffs did not adequately allege that Meta acted "with knowledge or reason to know that it would cause or facilitate infringement" must be rejected. MTD at 15; *see also* MTD at 14 (arguing DMCA claim fails due to failure to plead "the requisite scienter"). Meta argues "*specific allegations as to how identifiable infringements 'will be affected are necessary.*" MTD at 15 (italics in original; citing *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018)).

At the motion to dismiss stage, a plaintiff need only "allege sufficient facts to support the *reasonable inference* that the defendant 'knew or had a reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement." *Doe 1*, 2023 WL 3449131, at *12 (quoting *Harrison v. Pinterest, Inc.*, No. 20-cv-05290-EJD, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022)); *see also Stevens,* 899 F.3d at 675 (9th Cir. 2018). Plaintiffs' allegations plainly support the reasonable inference Meta knew that their removal of CMI would aid infringement. Meta chose what to train its models on. Thus, it can be inferred that it had knowledge about the provenance of that material. ¶¶ 49-52. By choosing the materials to input, Meta made an intentional decision, to ensure LLaMA's output was stripped of any relevant CMI. ¶¶ 49-52. Further, absent CMI, users of LLaMA would have no idea that LLaMA's output (and any subsequent use of that output) was infringing. This is precisely the likely infringement the DMCA was aimed to prevent by forbidding removal of CMI. *See GC2 v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019) (explaining jury could reasonably infer knowledge of likely infringement where defendant repeatedly caus[ed] "the

unlawfully removed or manipulated copyright management information to again be distributed to the public.").

### D.   Plaintiffs Allege Valid State Law Claims

#### 1.   Plaintiffs state law claims are not preempted

Meta argues that Plaintiffs' negligence and unjust enrichment claims are preempted by Section 301 of the Copyright Act. MTD at 18-19; *see also* 17 U.S.C. § 301(a). Meta is wrong. In the Ninth Circuit state law claims concerning the unauthorized use of software's end-product are not within the rights protected by the federal Copyright Act. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). A court in this very district has reaffirmed that principle regarding AI training specifically. *See Doe 1*, 2023 WL 3449131, at *11 ("Plaintiffs are correct that state law tort claims concerning unauthorized use are not preempted by the Copyright Act."); *see also Thomson Reuters*, 2023 WL 6210901, at *12 ("Restricting a user's use of copyrighted material is different from limiting the user's ability to copy it. The latter is covered, and thus preempted, by the Copyright Act."). As plainly alleged in their Complaint, Plaintiffs' state law claims are **based on use**, which is not an exclusive right under the Copyright Act. *E.g.*, ¶ 4 & lines 9:10, 9:14, 10:9-11. The rights implicated by the unauthorized misuse of Plaintiffs' intellectual property to train AI go well beyond the copying and distribution of their works and involves denying Plaintiffs the ability to control the uses of their intellectual property and their own names.

The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a state law claim. *Maloney v. T3Media, Inc.,* 853 F.3d 1004, 1010 (9th Cir. 2017); *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). Courts must first "[d]ecide 'whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102-103.' Second, assuming it does, [courts] determine 'whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.'" *Maloney*, 853 F.3d at 1010 (citations omitted, quoting *Laws*, 448 F.3d at 1137-

38). "'To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights,' and the 'state claim must have an extra element which changes the nature of the action.'" *Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943, 2022 WL 1527518, at *3 (C.D. Cal. May 13, 2022) (citation omitted).

The gravamen of Plaintiffs' state law claims is the unauthorized use of Plaintiffs' books for training LLaMA. ¶ 4 & lines 9:10, 9:14, 10:9-11. As Plaintiffs allege, Meta has wrongly taken Plaintiffs' books and **used them** to train LLaMA without their consent. *Id.* As Plaintiffs' Complaint alleges, it is that **use** that underlies Plaintiffs' California law claims and violates their rights; not any of the other exclusive rights enumerated in the Copyright Laws. 17 U.S.C. § 106; *see also Doe 1*, 2023 WL 3449131, at *11 ("'The [exclusive] rights protected under the Copyright Act include the rights of reproduction, preparation of derivative works, distribution, and display'") (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015)).

*Doe 1 v. GitHub, Inc.*, 2023 WL 3449131, a case involving generative AI products from this district, is instructive. *Doe 1* concerned programmers who were challenging defendants' AI code-generating models. *Id.* at *1–2. The *Doe 1* defendants argued that state-law claims were preempted by the Copyright Act. *Id.* at *10. The court agreed with the plaintiffs that "state law tort claims concerning unauthorized use are not preempted by the Copyright Act" but found that *Doe 1* plaintiffs' state law claims were preempted because the *Doe 1* plaintiffs "d[id] not allege that Defendants' use of Plaintiffs' code for training purposes violated their rights," but rather "base[d] their unjust enrichment claim on Defendants' reproduction of Plaintiffs' code as output and Defendants' preparation of derivative works, both of which are rights protected under the Copyright Act." *Id.* at 11.

In contrast to copyright claims involving the reproduction and distribution of Plaintiffs' work, Plaintiffs seek redress under state law for the unauthorized use of Plaintiffs' works to train and be incorporated into LLaMA. The rights Plaintiffs seek to vindicate under state law claims differ from those protected by the Copyright Act. *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958

F.2d 896, 904 (9th Cir. 1992) (finding no preemption where "Rasmussen claims a much different interest [than those in the Copyright Act], however: The right to **use** the STC [the work]"); *see also Venegas-Hernandez v. Asociacion de Compositores y Editores De Musica Latinoamericana (ACEMLA)*, 424 F.3d 50, 58 (1st Cir. 2005) (suggesting unjust enrichment as one such cause of action "where there is an unlawful authorization that causes harm without a listed infringing act").

> ### 2.   Plaintiffs state a claim under California's Unfair Competition Law (Cal. Bus. & Prof. Code, §§ 17200 *et seq.*)

Meta's argument that Plaintiffs fail to state a claim under California's Unfair Competition Law fails as well. MTD at 17-18. As Meta acknowledges, a UCL claim can be based on either "unlawful", "unfair", or "fraudulent" business practices. MTD at 17. Under the UCL, a Plaintiff must allege: (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was caused by the unfair business practice. *Kwikset Corp. v. Super. Ct*., 51 Cal.4th 310, 322 (2011). Meta characterizes Plaintiffs' UCL claims as only addressing the unlawful prong and "off hand[edly]" addressing the fraudulent prong. (MTD at 17-18). This misreads Plaintiffs' allegations. ¶¶ 56, 57, 58. Plaintiffs allege each prong with specificity.

**Unlawful prong.** Plaintiffs allege the predicate violation of Plaintiffs' rights under the DMCA, satisfying the UCL's unlawful prong. ¶¶ 34, 55. This well-pled allegation serves to establish an adequate predicate violation of the UCL. *See Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 396 (2013) (explaining the UCL "'borrows' violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable."). Meta bases its argument on the same arguments it makes with respect to the DMCA claim, discussed above. MTD at 17. As shown above, Meta is wrong as to the DMCA violation. ¶¶ 34, 55; *see also Doe 1,* 2023 WL 3449131, at *11.

**Unfair prong.** Plaintiffs also allege a UCL claim under its "unfair" prong. ¶ 57. A plaintiff alleges a claim under the "unfair" prong by alleging "immoral, unethical, oppressive, or unscrupulous [business practice that] causes injury…which outweighs [the utility of the practice]." *Nagrampa v.*

*MailCoups Inc.*, No. C03-00208 MJJ, 2007 WL 2221028, at *2 (N.D. Cal. July 30, 2007). Plaintiffs

allege that Meta used Plaintiffs' works to train LLaMA for Meta's own gain without authorization.

¶49. Because Meta intentionally removed CMI from copies of Plaintiffs' works for LLaMA, Meta

acted immorally, unscrupulously, and unethically. "Moral blame attaches to a party's conduct when

there are ameliorative steps the party could have taken to avert foreseeable harm and the party failed to

take those steps." Order on Defendants' Demurrer to Master Complaint at 50, *Social Media Cases*, No.

JCCP 5255 (Cal., Super. Ct. L.A. Cnty.2023) ("*Social Media Cases*") (citing *Kuciemba v. Victory*

*Woodworks, Inc.*, 14 Cal.5th 993, 1025 (2023)). Since Plaintiffs' works were distributed without

authorization and no attribution (¶¶ 49, 50), Plaintiffs suffered irreparable harm.

**Fraudulent prong.** Plaintiffs allege a violation of the UCL under the "fraudulent prong." ¶ 58.

Conduct runs afoul of the fraudulent prong when it is "likely to deceive a reasonable consumer."

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The reasonable consumer standard

"requires a probability 'that a significant portion of the general consuming public or of targeted

consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d

958, 965 (9th Cir. 2016). Here, because Meta intentionally developed LLaMA to remove CMI which

would have properly identified the Plaintiffs as owners of copyrighted works, LLaMA's output

deceives its users. ¶ 52. Since the outputs were not properly attributed to Plaintiffs, reasonable

consumers are misled because Meta concealed the fact that output from LLaMA are infringing. *Id*.

Further, Meta has not been forthright about which books they used to train LLaMA. ¶¶ 23-32.

### 3.      Plaintiffs state a claim for unjust enrichment

In the Ninth Circuit, Plaintiffs may pursue a claim for unjust enrichment "as an independent

cause of action or as a quasi-contract claim for restitution." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d

1023, 1038 (9th Cir. 2016). Courts in the Ninth Circuit have routinely allowed unjust enrichment

claims under California law. *See, e.g., Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 605

(N.D. Cal. 2021); *Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087, at *4 (C.D.

Cal. Oct. 10, 2017). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners*, 828 F.3d at 1038 (citing *Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). "A benefit is broadly defined as 'any type of advantage.'" *CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS (AJWx), 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013); *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996) (same) (citing Restatement (First) of Restitution § 1 cmt. B).

Here, Plaintiffs invested substantial time and energy in creating their books which Meta took and used to train its LLaMA model, which Meta plans to make (and now is) commercially available. ¶¶ 35, lines 9:7-15. The taking of Plaintiffs' books without their consent is certainly an advantage— LLaMA's value as a product is derived from the work it is trained on. *Id*. As the Ninth Circuit held in *ESG Capital*, all a plaintiff need allege is that the defendant received and unjustly retained a benefit at the plaintiff's expense. 828 F.3d at 1038. Plaintiffs need not sustain economic losses or other breach of contract damages. *See Hart*, 526 F. Supp. 3d at 605 (permitting unjust enrichment claim even though plaintiffs "suffered no economic loss from the disclosure of [his] information"). Meta's contention that the Plaintiffs "do not and cannot allege the required 'affiliation or connection [with Meta] to invoke a quasi-contract theory of liability'" is wrong. MTD at 19. The fact that Plaintiffs' copyrighted works are used by Meta in LLaMA without attribution or compensation is a sufficient connection. Were there a contract, the parties would have been expected to bargain over these rights, including terms of use and payment. Meta failed to do so. Unjust enrichment provides a remedy for such conduct.

### 4.    Plaintiffs state a claim for negligence

Negligence under California law requires: (1) the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks," (2) defendant's breach of that duty; (3) that breach proximately caused the injuries and, (4) injury. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (citation omitted).

Plaintiffs have alleged Meta knowingly and intentionally took and scraped Plaintiffs'

intellectual property creating a duty of care. *Kuciemba*, 14 Cal.5th at 1016 ("Duty, under the common law, is essentially an expression of policy that the plaintiff's interests are entitled to legal protection against the defendant's conduct"); *see also Social Media Cases* at 43 ("Because all persons are required to use ordinary care to prevent others from being injured as the result of their conduct, Defendants had a duty not to harm the users of Defendants' platforms through the design and/or operation of those platforms."). In so doing, Meta incurred a duty to protect the copyrighted work and not act in derogation of Plaintiffs' rights. Meta stripped Plaintiffs' works of their CMI to include in a commercial product (LLaMA) that will enable subscribers, *inter alia*, to take or adopt Plaintiffs' voices, foreseeably causing them harm and taking away careers and reputations developed over their lives. ¶¶ 48-53; lines 9:24-10:14; *Social Media Cases* at 47 (finding foreseeability adequately pled where "Plaintiffs allege that Defendants were on notice through their own research as well as through independent medical studies"). Meta breached its duty when it failed to safeguard that information by affirmatively removing it in training LLaMA. *Id.* Plaintiffs are injured by Meta's breach and, unless enjoined by this Court, Plaintiffs will continue to suffer injury.

Meta contends that Plaintiffs' claims are "barred by the 'economic loss doctrine.'" MTD at 20. But Plaintiffs do not seek redress only for economic injuries, but also for injuries that "cannot fully be compensated or measured in money." Line 9:18. Plaintiffs have also alleged a special relationship. *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008); *see also J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979). Here, a special relationship exists between Plaintiffs and Meta because Plaintiffs are the authors of books which Meta intentionally acquired, ingested, and removed CMI from when training LLaMA—without Plaintiffs' consent. *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10. 2006).

## IV.    CONCLUSION

For the foregoing reasons, Meta's motion to dismiss should be denied.

Dated: October 18, 2023

By: */s/ Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (SBN 243703)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:            jsaveri@saverilawfirm.com
                       czirpoli@saverilawfirm.com
                       cyoung@saverilawfirm.com
                       lkessler@saverilawfirm.com
                       kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:            mb@butcoicklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*