1
2
3
4
5

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:     (310) 883-6400
Facsimile:     (310) 883-6500

6
7
8
9
10

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

11
12
13
14
15

LEX LUMINA PLLC
MARK A. LEMLEY (155830)
(mlemley@lex-lumina.com)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055
Facsimile: (646) 906-8657

16

*Counsel for Defendant Meta Platforms, Inc.*

17

**UNITED STATES DISTRICT COURT**

18

**NORTHERN DISTRICT OF CALIFORNIA**

19

20
21
22

RICHARD KADREY, an individual; SARAH
SILVERMAN, an individual; CHRISTOPHER
GOLDEN, an individual,

Individual and Representative Plaintiffs,

23

v.

24
25

META PLATFORMS, INC., a Delaware
corporation;

Defendant.

Case No. 3:23-cv-03417-VC

**DEFENDANT META PLATFORMS, INC.'S
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' COMPLAINT**

Date:          November 9, 2023
Time:          10:00 a.m.
Dept:          Courtroom 4 – 17th Floor
Judge:         Vince Chhabria

Trial Date: None
Date Action Filed: July 7, 2023

26
27
28

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................ 2

    A. The Claim That LLaMA Is an "Infringing Derivative Work" Fails (Claim 1) ....................................................................................................................... 2

    B. Plaintiffs Fail to Adequately Plead Vicarious Infringement (Claim 2)................... 5

    C. Plaintiffs Fail to Adequately Plead a Violation of the DMCA (Claim 3).............. 7

        1. Plaintiffs' Section 1202(a)(1) claim must be dismissed as conceded ........ 7

        2. Plaintiffs fail to adequately plead a violation of Section 1202(b)(1) .......... 7

        3. Plaintiffs fail to adequately plead a violation of Section 1202(b)(3) .......... 9

    D. Plaintiffs Fail to Adequately Plead Violations of State Law (Claims 4-6) ............ 9

        1. Plaintiffs' state law claims are preempted by the Copyright Act............. 10

        2. Plaintiffs fail to state a claim under the UCL (Claim 4) ......................... 11

        3. Plaintiffs fail to state a claim for unjust enrichment (Claim 5)................ 12

        4. Plaintiffs fail to state a claim for negligence (Claim 6) ........................... 12

III. CONCLUSION .......................................................................................................... 13

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,

5

239 F.3d 1004 (9th Cir. 2001) .................................................................................... 6

6

*Altera Corp. v. Clear Logic, Inc.*,

424 F.3d 1079 (9th Cir. 2005) .................................................................................. 10

7

*Andersen et al. v. Stability AI, Ltd. et al.*,

8

Case No. 3:23-cv-00201-WHO (Dkt. 117) (N.D. Cal. Oct. 30, 2023) ........................... *passim*

9

*Andrews v. Plains All Am. Pipeline, L.P.*,

10

2019 WL 6647930 (C.D. Cal. Nov. 20, 2019) ............................................... 5, 6, 13

11

*Astiana v. Hain Celestial Grp., Inc.*,

783 F.3d 753 (9th Cir. 2015) .................................................................................... 12

12

*Authors Guild v. Google, Inc.*,

13

804 F.3d 202 (2d Cir. 2015) ................................................................................... 4, 5

14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

15

20 Cal. 4th 163 (1999) .............................................................................................. 11

16

*Cromwell v. Certified Forensic Loan Auditors*,

2019 WL 1095837 (N.D. Cal. Jan. 10, 2019) ........................................................ 10

17

*Crowley v. Jones*,

18

608 F. Supp. 3d 78 (S.D.N.Y. 2022) .......................................................................... 8

19

*Dielsi v. Falk*,

20

916 F. Supp. 985 (C.D. Cal. 1996) ........................................................................... 10

21

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,

2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ........................................................ 8

22

*ESG Capital Partners, LP v. Stratos*,

23

828 F.3d 1023 (9th Cir. 2016) .................................................................................. 12

24

*Free Speech Sys., LLC v. Menzel*,

390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..................................................................... 8

25

*Frost-Tsuji Architects v. Highway Inn, Inc.*,

26

CMI. 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ..................................................... 8

27

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc.*,

28

958 F.2d 896 (9th Cir. 1992) .................................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW

META'S REPLY ISO MOTION TO DISMISS
3:23-CV-03417-VC

*ICONICS, Inc. v. Massaro*,
    192 F. Supp. 3d 254 (D. Mass. 2016) ........................................................................... 8

*J. Doe 1 v. GitHub*,
    2023 WL 3449131 (N.D. Cal. May 11, 2023) ......................................................... 10, 11

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................................ 11

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ..................................................... 3

*Locklin v. StriVectin Operating Co.*,
    2022 WL 867248 (N.D. Cal. Mar. 23, 2022) .............................................................. 12

*Mills v. Netflix, Inc.*,
    2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ................................................................... 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................................. 5, 6

*Perfect 10 v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ................................................................................... 6, 7

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) ............................................................................................... 13

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
    668 F.3d 1148 (9th Cir. 2012) .................................................................................... 3

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) .................................................................................... 3

*Russell v. Walmart, Inc.*,
    2023 WL 4341460 (N.D. Cal. July 5, 2023) ............................................................... 12

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) .................................................................................... 11

*Schneider v. Cal. Dep't. of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ............................................................................... 7, 12

*Schneider v. YouTube, LLC*,
    2023 WL 114226 (N.D. Cal. Jan. 5, 2023) ................................................................... 6

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*,
    2023 WL 6210901 (D. Del. Sep. 25, 2023) ................................................................. 6

*Tyler v. Travelers Com. Ins. Co.*,
    499 F. Supp. 3d 693 (N.D. Cal. 2020) ......................................................................... 7

COOLEY LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)..................................................................................... 11

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019)......................................................................................... 6

*YellowCake, Inc. v. DashGo, Inc.*,
  2022 WL 172934 (E.D. Cal. Jan. 19, 2022).................................................................. 5

**Statutes**

17 U.S.C.
  § 201(a) ........................................................................................................................... 9
  § 1202 ..................................................................................................................... 1, 7, 8
  § 1202(1)(a) ..................................................................................................................... 2
  § 1202(a)(1) ..................................................................................................................... 7
  § 1202(b) .......................................................................................................................... 8
  § 1202(b)(1) ............................................................................................................. 2, 7, 9
  § 1202(b)(3) ............................................................................................................. 2, 7, 9

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2 (2015)................................................................................ 12

2 NIMMER ON COPYRIGHT § 8.09 ......................................................................................... 3

4 PATRY ON COPYRIGHT § 12:13 ......................................................................................... 3

2 PATRY ON COPYRIGHT § 3:59.50 ....................................................................................... 9

**Federal Rules of Civil Procedure**
  8........................................................................................................................................ 11
  9........................................................................................................................................ 11

COOLEY LLP
ATTORNEYS AT LAW

iv

## I.  INTRODUCTION

Meta's LLaMA, like other AI models, uses many billions of data points, including publicly available books, to learn from and interpret human language.  The core claim in this lawsuit pertains to whether that process, called "training," is copyright infringement. (¶¶ 39-40.)  On a fuller record, Meta will demonstrate that it is ***not***. For now, Meta's motion is directed at the remainder of the Complaint—a hodge-podge of untenable theories lacking plausible factual support.  In their Opposition, Plaintiffs invent novel standards for proof of direct and vicarious copyright infringement, advance new, unsupported theories of Section 1202 violations, and attempt to avoid preemption of state law claims with wordplay.  These very same arguments, made by the same law firm representing Plaintiffs, were just rejected by Judge Orrick in *Andersen et al. v. Stability AI, Ltd. et al.,* Case No. 3:23-cv-00201-WHO (Dkt. 117 at 11-13) (N.D. Cal. Oct. 30, 2023).  And as Meta established in its opening brief, those arguments should be rejected here.

**LLaMA as an "Infringing Derivative Work"** **(Claim 1)** – Meta explained that the allegation in Claim 1 that LLaMA is itself an "infringing derivative work" (¶ 41) is not plausible (Mot. 6-9): Plaintiffs have not, and cannot, plead that LLaMA is "substantially similar" to their works.  *Id*.  Although Plaintiffs argue in response that similarity is not required, their position mischaracterizes Meta's motion and is at odds with binding authority, including *Litchfield,* which held that for one work to infringe another, it *must* be substantially similar in protected expression.  Mot. 8.  Plaintiffs cannot sidestep this requirement.

**Vicarious Infringement (Claim 2)** – Plaintiffs' vicarious liability claim relies on labels and conclusions, rather than plausible facts supporting *any* of the three necessary elements.  First, they fail to identify any "output" of LLaMA generated by a third party (much less a plausibly infringing one) that could create secondary liability for Meta.  Without an alleged act of direct infringement by another, there is nothing to be vicariously liable for.  Second, they plead no plausible allegations that Meta has the "right and ability to supervise" and control outputs generated by LLaMA users.  Mot. 11.  Third, Plaintiffs' theory that Meta has a "direct financial interest" in infringement by LLaMA users is not supported, as it must be, by plausible facts supporting an inference that the

(hypothetical) ability to generate outputs that infringe Plaintiffs' works is a "draw" for LLaMA users.

**DMCA (Claim 3) –** As to Section 1202(1)(a), Plaintiffs do not even bother to defend their defective claim that Meta knowingly provides false copyright management information (CMI) in connection with LLaMA. Their Opposition also confirms that their Section 1202(b)(1) is not viable. Section 1202(b)(1) prohibits the *removal* of CMI from *copies* of Plaintiffs' works.  For example, this might occur if one took a book, erased the author's name, and released copies of that book online.  But there is no allegation LLaMA does that.  Plaintiffs allege something entirely different than what is barred by Section 1202(b)(1): that LLaMA *omits* CMI from supposed *derivatives* that are not even alleged to be substantially similar to their works.  As to Section 1202(b)(3), Plaintiffs bizarrely and insufficiently allege that Meta "unlawfully removed" CMI from *LLaMA*, a work owned by *Meta*, to which Plaintiffs have no claim.

**UCL; Unjust Enrichment; Negligence (Claims 4-6)** – Plaintiffs' Opposition confirms that their throw-in state law claims are preempted and otherwise inadequately pled.

For all of these reasons, Meta respectfully requests that the Court dismiss with prejudice the portion of Claim 1 alleging that LLaMA is an "infringing derivative work," and all of Claims 2-6, thereby narrowing this case to what Plaintiffs concede is the "core" issue.  Opp. 3.

## II.    ARGUMENT

### A.    The Claim That LLaMA Is an "Infringing Derivative Work" Fails (Claim 1)

Plaintiffs' Claim 1—direct copyright infringement—is based on two independent theories: (1) that Meta created unauthorized copies of Plaintiffs' books to train LLaMA (¶ 40); and (2) that because LLaMA "cannot function without the expressive information extracted from Plaintiffs' Infringed Works and retained inside [LLaMA]," the models "are themselves infringing derivative works." (¶ 41.)  As Meta explained (Mot. 2, 6), Plaintiffs' first theory (copying as part of training) is not at issue here, as Meta's motion explicitly "addresses only the latter theory, which rests on a fundamental misunderstanding of copyright law."  Mot. 6.  Although purporting to recognize this distinction (Opp. 3–4), Plaintiffs' Opposition conflates these theories, arguing, among other things, that because Meta allegedly "copied Plaintiffs' books and fed them to its

language models as training data … no showing of substantial similarity is necessary." Opp. 5. These allegations are not relevant to the subject of Meta's motion.

To maintain a claim that LLaMA is an infringing derivative work, Plaintiffs must allege that the LLaMA model is substantially similar in protected expression to Plaintiffs' works. *See* Mot. 8; *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (holding that "[t]o prove" that an alleged derivative work is infringing, "one must show substantial similarity"); 4 PATRY ON COPYRIGHT § 12:13 ("[i]n order to infringe the derivative right, there must be substantial similarity"); 2 NIMMER ON COPYRIGHT § 8.09 (without substantial similarity, an alleged infringing derivative is "nonactionable"). Plaintiffs' Opposition points to no factual allegations that LLaMA shares protected expression with Plaintiffs' books and essays, and neither does the Complaint.

In response, Plaintiffs intermingle two concepts, and insist that, notwithstanding the overwhelming weight of authority (Mot. 8), substantial similarity "is not the law." Opp. 4. Their argument relies on the inapt case of *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) and its progeny. But *Range Road* was not about derivative works. It addressed a different issue: whether an evaluation of the similarity between two works is always required to prove that an *act* of copying occurred. *Id.* at 1154. The court explained that such evaluation is not necessary in situations where copying is directly observed, or when a work is "reproduce[ed] … *in toto*." *Id.* For example, in *Range Road*, the defendant had publicly performed the plaintiff's exact song.

But to show that a work is a derivative work, plaintiffs must show not just that it owed its origin to plaintiffs' work in some sense. They must also show that the alleged derivative included a substantial amount of protectable expression from the original. As the Ninth Circuit lamented in a later case, the court "[u]nfortunately" has "used the same term—'substantial similarity'—to describe both the degree of similarity relevant to proof of copying [*i.e.*, what was at issue in *Range Road*] and the degree of similarity necessary to establish unlawful appropriation [*i.e.*, the question presented here]." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).[1] The Ninth Circuit has thus clarified that "[t]o prove unlawful appropriation"—the relevant inquiry here— "the

---

[1] Because "[t]he term means different things in those two contexts," some courts now use "probative similarity" to describe the copying-related concept to which Plaintiffs refer in their Opposition. *Rentmeester*, 883 F.3d at 1117 n.1.

1   similarities between the two works must be 'substantial' and they must involve protected elements

2   of the plaintiff's work." *Id.* at 1117.  Applying this principle, Judge Orrick rejected an *identical*

3   argument to that made by Plaintiffs here (*i.e.*, that an AI model is *itself* infringing of training data)

4   because the plaintiffs did not plausibly plead substantial similarity.  *See Andersen*, Dkt. 117 at 13.

5           Plaintiffs try to rescue their untenable derivative works theory by speculating that because

6   Meta allegedly "copied Plaintiffs' entire copyrighted works" in the process of training LLaMA, "it

7   is certain that Meta has harvested protected expression."  Opp. 7.  To the extent Plaintiffs mean to

8   claim that the LLaMA model retains Plaintiffs' protected expression, that is not what the Complaint

9   alleges.    Rather, Plaintiffs allege that LLaMA cannot "function" without the "expressive

10  information" extracted from copies of their works.[2]  Opp. 5; ¶ 18; ¶ 41.  Due to the vagueness of

11  this assertion, Meta and the Court are left to guess what this "expressive information" consists of,

12  let alone whether it plausibly constitutes ***protected expression***.  Copyright law protects original

13  creative expression, ***not*** just any expressive information about the works. Mot. 8-9 (citing cases).[3]

14  As Meta explained, "information" such as facts or the syntactical, structural, and linguistic

15  relationship between words is not protectable.  Mot. 9.  And whether one work can "function"

16  without the other is irrelevant to a claim of infringement.

17          Finally, Plaintiffs' novel, sweeping conception of the derivative works right mirrors the one

18  correctly rejected by the Second Circuit in *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir.

19  2015), to which the Opposition does not meaningfully respond.  Mot. 9.  *Authors Guild* held that

20  book authors' derivative work right does not reach a software program that relies upon, but does

21  not permit access to, copies of their books to generate information and snippets from the same. *Id.*

22  at 226–27.  Likewise here, Plaintiffs allege that LLaMA is an infringing derivative work because it

23

---

24  [2] Plaintiffs argue in the Opposition (but *not* the Complaint) that "the entire purpose of LLaMA is
    to imitate copyrighted expression" (Opp. 5), but this is untrue and unsupported by the pleadings.

25  Plaintiffs also accuse Meta of arguing that its "[direct] infringements are so vast" that it "cannot be
    held accountable" (Opp. 8), but Meta made no such argument.  *See* Mot. 12.

26  [3] Even if Plaintiffs could specify the "expressive information" allegedly at issue, which they have
    not, the notion that LLaMA itself is substantially similar to Plaintiffs' works is facially implausible.

27  LLaMA is a state-of-the-art neural network which, by having been trained on *trillions* of "tokens"
    (*i.e.*, snippets of text, *see* Lauter Ex. A at 1), possesses a statistical model of human language that

28  enables it to generate new and "convincingly naturalistic text outputs in response to user prompts."
    (¶ 1.)  In stark contrast, Plaintiffs' works are individual books and essays.

purportedly relies on expressive information extracted from copies of their works to "emit convincingly naturalistic text outputs in response to user prompts." (¶¶ 17-18.)  And, as in *Authors Guild*, Plaintiffs do not allege that (1) those "copies" are viewable or otherwise accessible to users of LLaMA, or (2) *any* of the outputs of LLaMA contain their works or substantially borrow from their protected expression.  Mot. 9. As in *Authors Guild*, the derivative works theory fails here.

### B.    Plaintiffs Fail to Adequately Plead Vicarious Infringement (Claim 2)

Meta explained (Mot. 10) that Plaintiffs failed to adequately allege any of the three elements of a vicarious infringement claim.  Plaintiffs barely engage with Meta's arguments or cited cases, relying instead on theories that conflict with settled law and their own allegations.  Each defect is an independent reason to reject the vicarious infringement claim.

**No direct infringement:** Plaintiffs have not pleaded a single act of direct infringement by a LLaMA user (Opp. 9)—an essential element of a vicarious infringement claim.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). A copyright plaintiff must plead at least representative examples of such infringement so that defendants and the court may evaluate the sufficiency of the pleadings, including whether a plaintiff has plausibly alleged substantial similarity. Mot. 10 (citing various cases).  This requirement applies to claims of direct and vicarious infringement alike. *Andersen*, Dkt. 117 at 15; *YellowCake, Inc. v. DashGo, Inc.*, 2022 WL 172934, *7-8 (E.D. Cal. Jan. 19, 2022) (dismissing vicarious infringement claim for failure to plead example of direct infringement).  Nowhere do Plaintiffs allege that anyone, anywhere used LLaMA to recreate or reproduce even a portion of Plaintiffs' works.  (Mot. 10).

Plaintiffs try to sidestep this pleading defect by asserting that they may rely on the conclusory allegation that *all* LLaMA outputs are necessarily "infringing derivative works." Opp. 9.  This conclusory allegation is insufficient, including because "substantial similarity" is a legal requirement to show an infringing derivative work (Mot. 8), not a "red herring."  Opp. 9.  *See supra* Section II.1.  This fails to put Meta on notice of what Plaintiffs consider to be an infringing derivative of their works.  Indeed, Plaintiffs' theory leads to the absurd result that *every* output of a generative AI model infringes *every* one of the billions of works used to train it, despite that a given output (say, a story about penguins having a cocktail party at the beach) bears no similarity

at all to any of Plaintiffs' works.  That is not what copyright is about.  *See Andersen*, Dkt. 177 at 12 (deeming implausible that every Training Image … was copyrighted (as opposed to copyrightable), or that all [] users' Output Images rely upon (theoretically) copyrighted Training Images and therefore *all* Output images are derivative images")

**No requisite control:**  The "control" element of vicarious liability is "based on the defendant's failure to cause a third party to stop its directly infringing activities."  *Perfect 10*, 508 F.3d at 1175.  Plaintiffs' argument that Meta has the "right to stop" allegedly infringing outputs generated by LLaMA users because "Meta could have ensured its [LLMs] were only trained on licensed training data, or simply turned the models off" (Opp. 9-10) is not the law.  "A failure to change operations to avoid distribution of infringing content is not the same as declining to exercise a right and ability to stop direct infringement by others," and the former—all that is alleged here— does not support a vicarious infringement claim.  *Schneider v. YouTube, LLC*, 2023 WL 114226, at *2 (N.D. Cal. Jan. 5, 2023) (citing *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019)).  If it did, this element would be satisfied in every case, rendering it superfluous.

**No requisite financial interest:**  Plaintiffs have failed to allege, as they must, that LLaMA users are drawn to LLaMA by outputs that infringe *Plaintiffs'* works, as opposed to hypothetically infringing outputs generally.  *Perfect 10 v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (requiring evidence that customers were drawn to defendant's services specifically "because of the infringing [] material at issue"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).  Plaintiffs have no response to this point, thus effectively conceding it.[4]  Plaintiffs also do not address Meta's arguments (Mot. 12) that any alleged infringement of *Plaintiffs'* works could not plausibly serve as a draw for LLaMA users when (1) any "information" conceivably extracted from Plaintiffs' works is a microscopic fragment of the datasets that might influence potential LLaMA outputs (*e.g.* Lauter ¶ 3 & Ex. 2; ¶ 23); and (2) Plaintiffs do not allege that Meta has identified Plaintiffs' works as among LLaMA's training data. (¶ 21-30.)  Plaintiffs argue they satisfy this element because the Complaint alleges that Meta used Plaintiffs' books to train LLaMA,

[4] Plaintiffs' reliance (Opp. 10) on *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 2023 WL 6210901, at *6 (D. Del. Sep. 25, 2023) is misplaced in view of Ninth Circuit authority and because defendant there "[did] not contest that it had a financial interest in the alleged copies." *Id.*

COOLEY LLP<br>ATTORNEYS AT LAW

that LLaMA has been commercialized, and that Meta has distributed LLaMA, Opp. 10, but these allegations fail to plausibly support the notion that users are *drawn* to LLaMA "because of the infringing [] material at issue." *Perfect 10*, 847 F.3d at 673.

### C.   Plaintiffs Fail to Adequately Plead a Violation of the DMCA (Claim 3)

Plaintiffs allege that Meta violated Sections 1202(b)(1) and (b)(3) by "intentionally remov[ing] CMI" from Plaintiffs' works" (¶ 49), "distributing" infringing works, namely, LLaMA without Plaintiffs' CMI copies of the works" (¶ 50), and thereby knowingly "conceal[ing]… 'the fact that every output from [LLaMA] is an infringing derivative work….'" (¶ 52).  Opp. 12-13. These non-cognizable theories fail to state a plausible claim under either DMCA provision.

#### 1.   Plaintiffs' Section 1202(a)(1) claim must be dismissed as conceded

Meta's motion explained why Plaintiffs' Section 1202(a)(1) claim should be dismissed. Mot. 12-14 (§IV.C.1).  In Opposition, Plaintiffs failed to address these deficiencies (neglecting any mention of § 1202(a)(1) altogether), conceding this claim.  *See Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) (construing silence as a concession).

#### 2.   Plaintiffs fail to adequately plead a violation of Section 1202(b)(1)

**Failure to plead removal of CMI**:  Plaintiffs allege that Meta failed to "preserve" CMI in the "expressive information" that was extracted from copies of their books (¶ 49).[5] As explained in Meta's motion, this is not an alleged "removal" of CMI, but instead an alleged "omission," which cannot give rise to a claim under Section 1202.  Mot. 14-15.  Plaintiffs respond that they pleaded that "CMI was copied as part of the training process and then *removed when LLaMA outputs*." Opp. 14.  However, this characterization of the Complaint cannot be reconciled with Plaintiffs' actual allegations, which make no mention of "outputs" and are focused exclusively on what occurs during the "process" of "training" LLaMA.[6]  (¶ 49.)  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (on 12(b)(6) motion, courts "*may not* look beyond the complaint to … a memorandum in opposition").

---

[5] Plaintiffs' Opposition makes references to having alleged that Meta "altered" Plaintiffs' CMI, Opp. 1-2,12, 13, but the Complaint does not so allege.  *E.g.,* ¶¶ 50, 52-53 (claiming "removal").
[6] It is also a concession that there is no DMCA violation in the training process.  To the contrary, Plaintiffs take the position that the training process copied the entirety of the work, *including the CMI*.  Opp. 14 ("CMI was copied as part of the training process").

1    But *even if* Plaintiffs had alleged that LLaMA somehow removes CMI when users generate

2    outputs, their pleading would still fail for reasons explained above: nowhere do Plaintiff plead ***any***

3    examples of infringing outputs, much less ones that purportedly lack corresponding CMI.   *See*

4    *Andersen*, Dkt. 117 at 18 (deeming similar arguments "wholly conclusory"); *Free Speech Sys., LLC*

5    *v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing for failure to "identify which

6    photographs had CMI removed").   It would make no sense for the law to require Meta to attach

7    Plaintiffs' CMI to works that are not theirs and are not even alleged to be similar to theirs.

8    Plaintiffs next argue that a Section 1202(b) violation does not require removal or alteration

9    of CMI from copies of their works, but that it is enough if their CMI is not included on infringing

10   derivative works.  Opp. 12-13.  Here, too, Plaintiffs are wrong: courts consistently hold that removal

11   of CMI must occur on an original or near-identical copy of a work.  Mot. 15 (citing cases); *see also*

12   *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) (explaining that "a defendant cannot

13   violate the DMCA by associating its name with a derivative work").   This makes sense, too:

14   "removal" connotes the action of taking away or displacing something from a specific place.   Citing

15   three cases in a footnote, Plaintiffs argue that there is no requirement that a copy from which CMI

16   is removed is identical to the original. Opp. 13, n.3.  However, those cases state the *opposite* and

17   fail to support Plaintiffs' argument.[7]

18   **Failure to plead scienter:**  Plaintiffs plead no facts showing that Meta "removed" CMI from

19   Plaintiffs' works, and thus fail to allege culpable intent.  Mot. 14.  Instead, the Complaint relies on

20   mere conclusory allegations that "Meta knew or had reasonable grounds to know" that removing CMI

21   "would facilitate copyright infringement …." (¶¶ 49, 52.)  Plaintiffs were *required* to plead plausible,

---

[7] The court in *Frost-Tsuji Architects v. Highway Inn, Inc*. held that making a "virtually identical" copy of the plaintiff's work by redrawing it without CMI "would not" qualify as a removal of CMI. 2014 WL 5798282, at *5-6 (D. Haw. Nov. 7, 2014) ("[T]he physical act of removal is not the same as basing a drawing on someone else's work. Reliance on another's work is insufficient to support a claim of removal of copyright management information.") Similarly, in *Dolls Kill,* failure to include plaintiff's CMI on imperfect "knock-offs" of the plaintiff's clothing designs was *not* a removal of CMI because "no DMCA violation exists where the works are not identical." *Dolls Kill, Inc. Zoetop Bus. Co.*, 2022 WL 16961477 at *4 (C.D. Cal. 2022). Finally, *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) did not concern whether Section 1202 requires removal of CMI from a copy of the plaintiff's work; the defendant there "admit[ted]" to making copies of the plaintiff's computer code, and the issue presented was whether computer file headers within the plaintiff's software were properly regarded as CMI at all because they corresponded to segments of the work rather than the "full version." *Id.*

1    non-conclusory allegations "as to how identifiable infringements will be affected by" removal of

2    CMI, or a "pattern of conduct" demonstrating" that Meta knew or had reason to know that such

3    removal "would cause future infringement." *Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal.

4    Feb. 3, 2020)).  Because Plaintiffs have not identified *any* examples of allegedly infringing LLaMA

5    output, let alone output allowing an inference that Meta knew or should have known that removal of

6    CMI would cause infringement (Mot. 16), Plaintiffs have not plausibly alleged scienter.

7              **3.     Plaintiffs fail to adequately plead a violation of Section 1202(b)(3)**

8         Plaintiffs' theory that Meta violates Section 1202(b)(3) by distributing LLaMA itself

9    without Plaintiffs' CMI is incompatible with the statutory language, which prohibits distribution of

10   copies of works with CMI removed "without the authority of the *copyright owner*" of those works.

11   17 U.S.C. § 1202(b)(3).  Pursuant to 17 U.S.C. § 201(a), ownership of LLaMA vests in its author,

12   Meta.   Thus, *Meta* possesses authority over LLaMA CMI under 1202(b)(3) and conversely,

13   Plaintiffs have no claim to CMI in LLaMA.  *See* 2 PATRY ON COPYRIGHT § 3:59.50 (explaining that

14   plaintiffs do not own rights in the [allegedly] infring[ing] work).

15        Plaintiffs also fail to allege how Meta supposedly removed their CMI from LLaMA, or how

16   such removal conceals that (according to Plaintiffs) "every *output* from the LLaMA language models

17   is an infringing derivative work." (¶ 52.)  Plaintiffs largely ignore Meta's arguments, choosing instead

18   to restate their unsupported theory of a *Section 1202(b)(1)* violation.  *See* Opp. 13 n.4 (stating that the

19   "DMCA prohibits Meta from removing the CMI when copied by Meta," and that "none of LLaMA's

20   output includes or contains removed CMI").  This is a non sequitur.  If Plaintiffs seek to assert a claim

21   that Meta removes CMI from infringing derivatives generated by LLaMA users, that is *not* what they

22   allege as a violation of Section 1202(b)(3).  (¶ 50, describing "derivative works" created by Meta, *not*

23   Meta users).  Regardless, any such claim would be subject to dismissal because Plaintiffs have not

24   alleged a *removal* of CMI from *copies* of their works.  To the contrary, they allege that training does

25   not "preserve" CMI and that LLaMA outputs are "infringing derivative works."  ¶ 49.

26        **D.     Plaintiffs Fail to Adequately Plead Violations of State Law (Claims 4-6)**

27        Plaintiffs have failed to rebut Meta's arguments for dismissal of their three state law claims

28   as preempted by the Copyright Act and as otherwise inadequately pleaded.

### 1.    Plaintiffs' state law claims are preempted by the Copyright Act

Meta's motion explained that Plaintiffs' state law claims are based entirely on alleged copying of their works and thus are preempted.  Mot. 18 (citing cases); *see Andersen*, Dkt. 117 at 23 ("[P]laintiffs cannot tie their unlawful prong UCL claim to purported copyright violations. Those claims are preempted by the Copyright Act.").  Plaintiffs respond that their state claims are "based on [Meta's] use" of their works to train LLaMA, Opp. 15-16, but the Complaint reveals that the same operative facts underlie both the copyright infringement and state law claims.  (*See* ¶ 55; ¶ 3 at 9; ¶ 11 at 10.)  The *only* alleged "use" of Plaintiffs' works *is* Meta's purported infringement of Plaintiffs' rights under the Copyright Act.  Plaintiffs cannot avoid preemption by simply relabeling their allegations of "copying" as allegations of "use" under state law.  Mot. 18-19 (citing cases); *see also Cromwell v. Certified Forensic Loan Auditors*, 2019 WL 1095837, at *11 (N.D. Cal. Jan. 10, 2019) (negligence and unjust enrichment preempted for failure to plead facts "separate from their copyright infringement claim"); *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) (claim of "wrongful[] use[]" of work was "clearly preempted").

None of the cases cited by Plaintiffs save their state claims from preemption.  Opp. 15.  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005), involved whether the plaintiff's contractual right to control the use of end-product information generated by users of the plaintiff's software was preempted.  *Id*. at 1090-91.  There are no such contractual rights alleged here.  *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896 (9th Cir. 1992), is similarly inapplicable. That case concerned a state law conversion claim regarding unauthorized use of an FAA-issued certificate (itself not subject to copyright protection), which enabled the defendant to obtain airworthiness approval for an aircraft.  *Id*. at 904.  The claims here bear no resemblance to *Rasmussen*.

The other cases cited by Plaintiffs support a finding of preemption here.  In *J. Doe 1 v. GitHub*, 2023 WL 3449131 (N.D. Cal. May 11, 2023), Judge Tigar, citing *Altera,* stated in passing that state law claims based on unauthorized use of a copyrighted work may not be preempted.  But he concluded that the plaintiff's unjust enrichment claim was preempted because it was "based on profit derived from both reproduction and preparation of derivative works."  *Id*. at *11.  This is what Plaintiffs alleged here. (¶ 5 at 9).  And in *Thomson Reuters,* the Delaware district court held preempted

an interference claim based on violation of terms relating to copying copyrighted Westlaw content. In contrast, the non-preempted claims concerned provisions governing how users access Westlaw and sharing of passwords—a far cry from Plaintiffs' allegations here. *Id.* at *12.

### 2.    Plaintiffs fail to state a claim under the UCL (Claim 4)

In addition to being preempted, Plaintiffs' UCL claims are not adequately pled.

**Unlawful Prong**: Plaintiffs' "unlawful" prong UCL claim (¶ 55) is predicated on acts that are coextensive with either (1) Plaintiffs' allegations of copyright infringement (which are preempted), or (2) "violat[ion] of Plaintiffs' rights under the DMCA" (*id.*) (but Plaintiffs fail to state any DMCA claim). *See Andersen*, Dkt. 117 at 23 (dismissing near-identical claims).

**Unfair Prong**: Plaintiffs claim that Meta engaged in unfair conduct under the UCL by "intentionally remov[ing] CMI from copies of Plaintiffs' works for LLaMA." (¶ 57; Opp. 18.) As explained above, Meta did no such thing. Moreover, Plaintiffs cite no authority supporting such a claim under the unfair prong. An "unfair" act under the UCL must be one that either (1) "threatens an incipient violation of an *antitrust law*, or violates the policy … of one of those laws" or (2) "otherwise significantly threatens … competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). Also, such "harm" to competition must be to the competitive market generally, not to Plaintiffs specifically. *Id*. Plaintiffs alleged nothing of the sort.

**Fraud Prong**: Plaintiffs assert that Meta deceives LLaMA users by failing to attribute LLaMA outputs to Plaintiffs, and that this is a violation of the fraud prong. (¶ 58; Opp. 18.) Judge Orrick dismissed a similar claim in *Andersen*. Dkt. 117 at 23. Where a UCL claim sounds in fraud, a plaintiff is "required to prove actual reliance on the allegedly deceptive or misleading statements." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012). Furthermore, plaintiffs "must allege their own reliance… rather than the reliance of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015); Mot. 17, n.3. Plaintiffs do not plead their own reliance, nor could they. Plaintiffs also do not plead a single example of any output for which Meta failed to identify "Plaintiffs as owners of copyrighted works." Opp. 18. This falls short of both Rule 8's notice pleading standard and the heightened standard under Rule 9. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

### 3.      Plaintiffs fail to state a claim for unjust enrichment (Claim 5)

The law in this Circuit is clear: "[a]lthough there exists no standalone claim for 'unjust enrichment' in California, courts may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Locklin v. StriVectin Operating Co.*, 2022 WL 867248, at *3 (N.D. Cal. Mar. 23, 2022) (Chhabria, J.) (citation omitted).  Such claims generally require "that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2 (2015)).  It is not enough that a plaintiff allege that the defendant received some benefit at the plaintiff's expense; the plaintiff must also allege that the benefit was obtained through qualifying conduct.  *Russell v. Walmart, Inc.*, 2023 WL 4341460, at *2 (N.D. Cal. July 5, 2023).

Plaintiffs argue that unjust enrichment was sufficiently pled by their allegation that "Plaintiffs' copyrighted works are used by Meta in LLaMA without attribution or compensation." Opp. 19.  Not only is this an effective concession of preemption, but Meta's purported failure to attribute does not qualify as conduct that would warrant treatment as a quasi-contract, such as fraud, duress, or coercion.[8]  This claim should be dismissed.

### 4.      Plaintiffs fail to state a claim for negligence (Claim 6)

Meta's motion explained how Plaintiffs failed to allege plausible facts that Meta (1) owed Plaintiffs a duty, (2) breached that duty, and (3) such breach proximately caused injury to Plaintiffs. Mot. 19-20 (citing cases).  Plaintiffs' Complaint merely recited these elements and pleaded no facts to support them, warranting dismissal.  *Id.*  In response, Plaintiffs attempt to cure these deficiencies by asserting new facts.  Opp. 20.  For example, they now argue that Meta's purported removal of CMI "will enable subscribers, *inter alia*, to take or adopt Plaintiffs' voices, foreseeably causing them harm and taking away careers and reputations developed over their lives." Opp. 20.  The cited paragraphs of the Complaint (*id.*, citing ¶¶ 48-53) provide no support for these unpleaded allegations, and they should be ignored.  *Schneider*, 151 F.3d at 1197 n.1.

As to the economic loss doctrine, which separately bars Plaintiffs' claim (Mot. 20),

---

[8] *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) (Opp. 18-19), has no bearing here.  There, plaintiff alleged dealings with defendant, including a promise and transfer of money, which was sufficient to plead a claim under quasi-contract. *Id*. at 1038-1039.

1   Plaintiffs argue it does not apply because Plaintiffs are seeking redress for injuries that "cannot

2   fully be compensated or measured in money" Opp. 20.  That misses the point: the irreparable harm

3   they assert is economic in nature, and they have not alleged any injury to person or property. *See*

4   *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 57 (1998) (explaining that "[r]ecognition

5   of a duty to ... prevent purely economic loss ... is the exception, not the rule, in negligence law").

6   Nor have they plausibly alleged that a "special relationship"—an exception to the economic loss

7   doctrine—exists between them and Meta.  Opp. 20.  A special relationship entails that "the plaintiff

8   was an intended beneficiary of a particular transaction but was harmed by the defendant's

9   negligence in carrying it out." *See Andrews v. Plains All Am. Pipeline, L.P.*, 2019 WL 6647930, at

10  *4 (C.D. Cal. Nov. 20, 2019).  No such facts are pled here. The negligence claim fails.

11  **III.   CONCLUSION**

12         For all of the foregoing reasons, Claim 1, as to Plaintiffs' claim that LLaMA is an infringing

13  derivative work, and Claims 2-6 should be dismissed with prejudice, without leave to amend.

14

15  Dated: November 1, 2023                    COOLEY LLP

16

17                      By: _____

18                         Bobby Ghajar
                                            Mark Weinstein
                                            Kathleen Hartnett

19                         Judd Lauter
                                            Colette Ghazarian

20                         LEX LUMINA PLLC

21                         Mark A. Lemley

22                         Attorneys for Defendant
                                            META PLATFORMS, INC.

23

24

25

26

27

28