# EXHIBIT D

**Exhibit D - Jointly Agreed-Upon Changes to the Model Order**

Pursuant to the Protective Orders section of Judge Thomas S. Hixson's Discovery Standing Order, the Parties provide an explanation for each substantive change:

Section 3 (SCOPE): The Parties have added language that would ensure that violations of court orders beyond this matter, other breaches of confidentiality obligations, or other unlawful acts do not result in information being deemed "part of the public domain" as they relate to this Protective Order.

Section 5.2(a) (Manner and Timing of Designations for information in documentary form): The Parties have added a modifier of "to the extent it is practical" with respect to designating portions of pages of documents produced, to account for the manner in which documents are generally reviewed, tagged, and produced in discovery. The Parties have also added a procedure for designating documents produced in native format, such as Excel files, to ensure such files are labeled in a manner that demonstrates their confidentiality designation. Finally, the Parties have added a sentence clarifying that the procedure described for making documents available for inspection would not apply to production of material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" prior to being offered for inspection as set forth in Section 9 of this Order, so as to avoid any confusion.

Section 5.2(b) (Manner and Timing of Designations for testimony given in deposition or in other pretrial or trial proceedings): The Parties edited this section to provide that the Parties have 21 days to designate a deposition transcript, regardless whether such right is invoked on the record.

Section 6.3 (Judicial Intervention) and Section 7.4(c): The Parties modified language relating to judicial intervention to ensure the Court's discovery procedures are applied throughout.

Section 7.2 (Disclosure of "CONFIDENTIAL" Information or Items): The Parties proposed modifications that (1) permit employees of Outside Counsel of Record to access CONFIDENTIAL information without signing Exhibit A and (2) permit mock jurors to see CONFIDENTIAL information through the signing of a confidentiality agreement (rather than

Exhibit A), as suggested by Footnote 5 of the Model Order. This permits a more cost-effective and efficient approach to litigation within the Parties' law firms, and avoids confusion by mock jurors regarding the contours of the Protective Order and Exhibit A, and permits them to sign a simpler, binding confidentiality agreement. The Parties have also added a provision that would permit mediators and their staffs to see CONFIDENTIAL information.

Section 7.3 (Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items): The Parties have made similar edits to those set forth for Section 7.2 (permitting employees of Outside Counsel of record to access HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE information without signing Exhibit A, permitting mock jurors to access HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information via a confidentiality agreement, and permitting mediators to view HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE), for the same reasons set forth above. The Parties also propose a limitation whereby mock jurors may not view HIGHLY CONFIDENTIAL – SOURCE CODE material, due to the additional confidentiality and security concerns that govern source code.

Section 8 (Prosecution Bar): The Parties have made edits as follows: (1) to reflect there is not an asserted patent in this matter, (2) to define the scope of the prosecution bar based on the subject matter of the actual highly sensitive technical information received by a given individual, and (3) to include *inter partes* review and post-grant review proceedings in the section listing those proceedings that a person may challenge a patent, and to remove the reference to *inter partes* reexamination, to reflect the current state of patent post-grant practice.

Section 9 (Source Code): The Parties have provided edits in this section to help facilitate the secure review of source code in an efficient and practical manner. These include: (1) defining the term "Source Code Computer", (2) defining business hours; (3) defining the location of the code review; (4) clarifying that Internet-connected devices and recordable media may not be brought into or accessed in the room with the Source Code computer (unless they are mobile

devices such as cell phones that are turned off); (5) setting forth reasonable notice procedures for review to ensure counsel has sufficient time to ensure space and support is available; (6) requiring the signing of a log (in accordance with Footnote 16 of the Model Order) by persons entering the Source Code review room; (7) providing an initial number of copies that can be requested for production and a time frame for providing them; (8) providing for the ability for the Parties to meet and confer regarding additional tools requested for review; and (9) providing reasonable restrictions relating to taking notes regarding the Source Code.

Section 11(c) and (d) (A Non-Party's Protected Material Sought to Be Produced in This Litigation): The Parties proposed edits to (1) permit the Parties to comply with any contractual obligations to third parties relating to confidential materials, (2) clarify that the party producing third party documents in Section 11(c) is the "Producing Party" rather than the "Receiving Party," and (3) in new Section 11(d), require the Parties to provide any non-party who receives discovery requests (e.g., via a subpoena) to provide a copy of the Protective Order with such requests.

Section 13 (Inadvertent Production of Privileged or Otherwise Protected Material): The Parties agreed that they will enter into a separate 502(d) order; the edits reflect this agreement.

Section 14.3 (Export Control): The Parties have edited the last line of this section (as drafted in the Model Order) to clarify that the Receiving Party shall take measures necessary to ensure compliance with applicable export control laws, including confirming that no unauthorized foreign person has access to technical data that is so controlled.