| | |
|---|---|
| 1 | COOLEY LLP |
| | BOBBY GHAJAR (198719) |
| 2 | (bghajar@cooley.com) |
| | COLETTE GHAZARIAN (322235) |
| 3 | (cghazarian@cooley.com) |
| | 1333 2nd Street, Suite 400 |
| 4 | Santa Monica, California 90401 |
| | Telephone:    (310) 883-6400 |
| 5 | |
| | MARK WEINSTEIN (193043) |
| 6 | (mweinstein@cooley.com) |
| | KATHLEEN HARTNETT (314267) |
| 7 | (khartnett@cooley.com) |
| | JUDD LAUTER (290945) |
| 8 | (jlauter@cooley.com) |
| | Elizabeth L. Stameshkin (260865) |
| 9 | (lstameshkin@cooley.com) |
| | 3175 Hanover Street |
| 10 | Palo Alto, CA  94304-1130 |
| | Telephone:    (650) 843-5000 |
| 11 | LEX LUMINA PLLC |
| | MARK A. LEMLEY (155830) |
| 12 | (mlemley@lex-lumina.com) |
| | 745 Fifth Avenue, Suite 500 |
| 13 | New York, NY 10151 |
| | Telephone: (646) 898-2055 |
| 14 | |
| | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| 15 | ANGELA L. DUNNING (212047) |
| | (adunning@cgsh.com) |
| 16 | 1841 Page Mill Road, Suite 250 |
| | Palo Alto, CA 94304 |
| 17 | Telephone: (650) 815-4131 |
| | |
| 18 | *Counsel for Defendant Meta Platforms, Inc.* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| 22 | RICHARD KADREY, *et al.*, | Case No. 3:23-cv-03417-VC-TSH |
| 23 | Individual and Representative Plaintiffs, | **DECLARATION OF KATHLEEN HARTNETT** |
| 24 | v. | |
| 25 | META PLATFORMS, INC., a Delaware corporation; | Trial Date: None<br>Date Action Filed: July 7, 2023 |
| 26 | | |
| 27 | Defendant. | |

**REDACTED VERSION**

I, Kathleen Hartnett, declare:

1. I am a Partner at the law firm of Cooley LLP and counsel to Meta Platforms, Inc. in the above-referenced matter. I have personal knowledge of the facts contained in this Declaration and, if called as a witness, could competently testify to them under oath.

2. On December 11, 2023, Plaintiffs in the above-referenced action filed a First Consolidated Amended Complaint ("FCAC") (ECF 64), which quoted from and paraphrased certain communications from former Meta part-tine employee Tim Dettmers that took place on the Discord platform and that appeared to reflect legal advice.

3. After Meta conducted an initial investigation, on December 20, 2023, I sent a letter to Plaintiffs' counsel notifying them that Meta believed the allegations in the FCAC relating to Mr. Dettmers's Discord communications referred to material that is subject to attorney-client privilege. In that same letter, I asked Plaintiffs to provide complete copies of the Discord communications underlying the allegations at issue in the FCAC ("Subject Communications"), as it was our understanding that the Subject Communications had been taken down from Discord and were no longer publicly accessible. This letter is attached hereto as **Exhibit 1**.

4. On December 21, 2023, Plaintiffs' counsel sent a letter in response, in which Plaintiffs disputed the privilege assertion but consented to the filing of a redacted version of the FCAC pending resolution of the Parties' dispute. Plaintiffs' letter did not address Meta's request that Plaintiffs provide the Subject Communications. This letter is attached hereto as **Exhibit 2**.

5. A redacted FCAC was filed on December 22, 2023 (ECF 69). Separately, the parties took steps to lock the FCAC on ECF and to my knowledge, access to the original, unredacted FCAC remains restricted.

6. On February 2, 2024, Plaintiffs informed Meta by email that they would not produce the Subject Communications underlying their allegations in the FCAC, stating: "We looked into your request for 'copies of the Discord communications underlying the allegations of Paragraphs 52-63 of the FCAC (including screenshots or complete versions of the referenced discussion(s)).' What materials we have uncovered evidencing the Discord communications constitute protected attorney work product." Plaintiffs did not explain the basis for their work product assertion.

7. Meta thereafter sought and, in March 2024, obtained the Subject Communications from EleutherAI.

8. Upon receiving the Subject Communications from EleutherAI, Meta, with the involvement of its outside counsel in this action, conducted a detailed investigation into the circumstances surrounding the Subject Communications. I, along with my colleagues, shared the results of Meta's investigation and the basis for its assertion of privilege on a meet and confer video call with Plaintiffs' counsel on March 27, 2024, which I memorialized in a letter to Plaintiffs' counsel dated April 8, 2024. This letter is attached hereto as **Exhibit 3**.

9. Plaintiffs responded by letter dated April 15, 2024 ("April 15 Letter"), attached hereto as **Exhibit 4**, disputing Meta's position and making several requests for additional information.

10. On April 29, 2024, I sent Plaintiffs' counsel another letter re-asserting Meta's position and providing the additional information that Plaintiffs had requested ("April 29 Letter"). The April 29 Letter is attached hereto as **Exhibit 5**.

11. One of the inquiries in Plaintiffs' April 15 Letter was whether there are any other instances where the Subject Communications were disseminated or otherwise disclosed to a third party. In answering that question, my team learned that sometime in April 2024 there was LinkedIn post made by ███████, who, according to his LinkedIn bio, is "███████ ███████" ("LinkedIn Post"). In the LinkedIn Post, ███████ claims to have been the person who originally provided the Subject Communications to Plaintiffs and attaches screenshots of some of the Subject Communications. Screenshots of the LinkedIn Post (without the screenshots of the Subject Communications) and ███████ LinkedIn profile page are attached hereto as **Exhibit 6** and **Exhibit 7**, respectively.

12. Based on this discovery, my April 29 Letter also asked Plaintiffs to describe the relationship between Plaintiffs (and/or their counsel) and ███████; preserve all communications with ███████; and inform Meta what involvement, if any, Plaintiffs had in the LinkedIn Post. Plaintiffs never responded to this request.

13. Upon learning of the LinkedIn Post, a member of our counsel team contacted an in-house contact at LinkedIn to investigate options for having the post removed. This contact advised that Meta would need to convince ▇▇▇▇ to remove the post from his LinkedIn profile himself; LinkedIn would not remove it. After careful consideration, Meta determined that doing so would have been futile and likely counterproductive. ▇▇▇▇▇▇▇▇▇▇▇▇ and, based on the LinkedIn Post, appears hostile to Meta and its position in this litigation. Meta accordingly took no further action with respect to the LinkedIn Post.

14. Following a further May 13, 2024 meet and confer between the parties, on May 21, 2024, Plaintiffs sent Meta a proposal to resolve the dispute by stipulation. Meta did not accept the proposal for several reasons, including that it would have required a waiver of attorney-client privilege. The parties thereafter exchanged further correspondence, including regarding a counterproposal from Meta. On June 21, 2024, the parties agreed that they had reached an impasse and would need the Court's guidance to resolve their dispute.

15. Based on our discussions with Plaintiffs' counsel in the context of this dispute, we understand that Plaintiffs wish to, at least: use the Subject Communications in this action without restriction; include excerpts from the Subject Communications in their Second Consolidated Amended Complaint; and depose Mr. Dettmers regarding the Subject Communications. My further understanding, based on my discussions with Plaintiffs' counsel over this dispute, is that Plaintiffs are not arguing for a broader waiver beyond the Subject Communications themselves.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of June 2024 at Montgomery, Alabama.

_____
Kathleen Hartnett

305334927