COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone: (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
Elizabeth L. Stameshkin (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000

LEX LUMINA PLLC
MARK A. LEMLEY (155830)
(mlemley@lex-lumina.com)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*, <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., a Delaware corporation; <br><br> Defendant. | Case No. 3:23-cv-03417-VC-TSH <br><br> **DECLARATION OF LUKE ZETTLEMOYER** <br><br> Trial Date: None <br> Date Action Filed: July 7, 2023 |

I, Luke Zettlemoyer, declare:

1. I am a Research Director for the Fundamental AI Research (FAIR) group at Meta Platforms, Inc. I am also a Professor in the Allen School of Computer Science & Engineering at the University of Washington. I declare that the following is true to the best of my knowledge, information, and belief, and that if called upon to testify, I could and would testify to the following.

2. Tim Dettmers was employed part-time by Meta Platforms, Inc. ("Meta") between March 2020 and March 2022. His formal title was Visiting Researcher. At the time, Mr. Dettmers was a Ph.D. student of mine at the University of Washington. I was also a Research Director at FAIR, an organization within Meta focusing on AI research, and oversaw Mr. Dettmers's work.

3. Meta requires all new employees (including part-time employees) to undergo mandatory trainings, which include among other things training on the need to protect confidential information and privileged communications from disclosure to persons outside the company. As a part-time employee, Mr. Dettmers completed these trainings, including trainings titled "Legal." Mr. Dettmers's role as Visiting Researcher did not include managerial responsibilities within Meta, and he was not tasked with communicating with third parties regarding legal issues. He was, by all accounts, a low-level and part-time employee and was not a part of Meta's management.

4. I understand that a dispute has arisen concerning communications made by Mr. Dettmers on two Discord channels operated by EleutherAI, a non-profit AI research lab. These Discord communications, which I reviewed after this dispute arose, directly describe legal advice that Mr. Dettmers and I received from in-house attorneys at Meta between December 2020 and January 2021 relating to data that Meta was considering using for AI research. This legal advice did not pertain to Meta's Llama large language model (LLM), but related to a separate research project with which I was also involved. I have had no involvement with any of Meta's Llama models.

5. The legal advice was sought through Meta's single review tool (SRT), which is a centralized platform used by Meta employees to request and obtain legal review relating to various projects at Meta, among other purposes. My understanding, based on using the SRT tool, is that any Meta employee with an SRT account has access to the SRT tool, but only employees that have

been added to a particular SRT request are able to view the communications from the Meta attorneys assigned to the request. In this case, Mr. Dettmers had access to the SRT request as a member of the research team receiving the specific legal advice. Other than research team members, only Meta's in house and outside counsel and two administrative employees that manage SRT requests had access to the specific request underlying the Subject Communications.

6. I was not aware that Mr. Dettmers had disclosed the legal advice he had received on the Discord platform until after December 2023, when I understand the Plaintiffs in this case filed a "First Consolidated Amended Complaint" (FCAC) that I understand quoted from and made reference to Mr. Dettmers's posts to the Discord platform. I am not aware of anyone at Meta, other than Mr. Dettmers himself, who knew about the content of his Discord communications before the filing of the FCAC. EleutherAI's Discord server is not a part of Meta's business, and there would be no reason for Meta personnel to investigate it for unauthorized disclosures. Additionally, to the best of my knowledge, no one on the team at Meta that received the legal advice, other than Mr. Dettmers, disclosed it to anyone outside the company.

7. Mr. Dettmers and others on his team were not authorized by Meta to disclose the legal advice they received from Meta's in-house lawyers with people outside the company and, in fact, were prohibited from doing so. Nobody at Meta directed Mr. Dettmers to discuss or disclose the legal advice he received with EleutherAI, or anyone else outside the company.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 27th day of June 2024 at Seattle, Washington.

Luke Zettlemoyer