# EXHIBIT 3



Kathleen R. Hartnett
T: +1 415 693 2071
khartnett@cooley.com

VIA EMAIL <jsaveri@saverilawfirm.com>

April 8, 2024

Joseph Saveri
Joseph Saveri Law Firm
601 California Street
Suite 1505
San Francisco, CA 94108

**Re:**   *Kadrey, et al. v. Meta Platforms, Inc.* **– Privileged Discord Communications**

Dear Joe:

We write as a follow-up to our meet and confer on March 27 and prior correspondence concerning Meta's assertion of privilege over certain communications that took place on the Discord platform between then-Meta employee Tim Dettmers and two EleutherAI personnel ("Discord Communications").  During our March 27 videoconference, we discussed the results of Meta's investigation, its review of the Discord Communications, and its position regarding the privileged nature of those communications.  At your request, this letter memorializes that discussion. The information we provided on our call and memorialized here also addresses the questions you posed in Attachment A to Christopher Young's letter dated December 21, 2023.

As we explained on our call, based on our investigation, the material contained in the Discord Communications that Meta seeks to protect and withhold relates to privileged legal advice provided by Meta's in-house attorneys to Mr. Dettmers and there has been no waiver of that privilege.  Below, we first describe our findings from our review of the Discord Communications, and we then discuss why the material at issue is privileged and why there has been no waiver of privilege.

**I.     Review of Discord Communications**

As you know, the Discord Communications have been inaccessible to the public since at least August 2023. Upon learning of the communications when Plaintiffs filed their Amended Complaint in late December 2023, Meta requested copies of those communications from Plaintiffs. On February 2, 2024, Plaintiffs for the first time conveyed to Meta that they would not produce the communications, asserting "attorney work product privilege" over them (an assertion Plaintiffs never explained and with which Meta disagrees).  Meta thus sought and recently obtained the Discord Communications from Eleuther AI.

At the time of our March 27 call, we had been able to format the native data files received from EleutherAI to enable us to review the Discord Communications that EleutherAI withheld based on Meta's claim of privilege.  As we told you then, and as reflected in the "the_pile_meta_privilege_claim" privilege log provided by EleutherAI ("Eleuther Privilege Log"), these communications took place on two of EleutherAI's Discord channels: "#legal" and "#the-pile."

Joseph Saveri
April 8, 2024
Page 2

On the "#the-pile" channel, the withheld communications are from November 26, 2020, December 18, 2020, and between January 12, 2021 to January 21, 2021. They include communications from Mr. Dettmers, Stella Biderman (who we understand is EleutherAI's Executive Director), and Leo Gao (one of EleutherAI's founders). **[The following discussion should be treated as "Confidential" under the Protective Order.]** The withheld communications largely comprise Mr. Dettmers' efforts to describe, paraphrase, or reflect legal advice that Mr. Dettmers received directly from Meta attorneys concerning data that Meta might use for AI research. ***Notably***, the legal advice provided was not related to Llama, but to a separate research project. A couple of the withheld communications are responses from Ms. Biderman that either quote Mr. Dettmers' withheld messages or otherwise reflect the substance of Meta's legal advice. Meta will not be asserting privilege over any communications from Mr. Gao.

On the "#legal" channel, the withheld communications are from December 19, 2020 and were posted by Ms. Biderman. One of the messages simply reproduces a message by Mr. Dettmers' from the "#the-pile" channel in which Mr. Dettmers attempts to describe, paraphrase, and reflect legal advice received directly from Meta attorneys. The other withheld communications from this channel include responses from Ms. Biderman that reflect the substance of Meta's legal advice.

Now that Meta has been able to review the full set of potentially privileged emails, Meta will produce some of the withheld messages as non-privileged and will produce the other messages with redactions for privilege. Meta continues to assert privilege over the communications, or portions of communications, that describe, paraphrase, or reflect legal advice that Mr. Dettmers received at Meta, on grounds that these are protected under attorney-client privilege. Specifically, Meta will continue to withhold the following communications identified by timestamp in EleutherAI's "the_pile_meta_privilege_claim" privilege log:

- 2020-11-26T02:30:41.547+00:00
- 2020-11-26T02:38:39.877+00:00
- 2020-12-18T20:13:20.877+00:00 (redacted)
- 2020-12-18T20:41:19.128+00:00 (redacted)
- 2020-12-18T20:46:30.508+00:00
- 2021-01-12T20:10:35.951+00:00
- 2021-01-12T20:29:12.624+00:00 (redacted)
- 2021-01-12T21:09:20.234+00:00 (redacted)
- 2021-01-14T17:58:27.455+00:00 (redacted)
- 2021-01-21T19:01:44.146+00:00 (redacted)
- 2020-12-19T18:41:55.164+00:00 (redacted)
- 2020-12-19T18:43:24.984+00:00 (redacted)
- 2020-12-19T18:44:29.787+00:00 (redacted)

Joseph Saveri
April 8, 2024
Page 3

As to the following, we are still investigating the substance of the communications and have not yet made a final determination as to privilege and/or appropriate redactions. We did not want to delay sending Plaintiffs this letter or Meta's position as to the communications above. We will provide our position and/or redactions shortly.

- 2021-01-12T20:21:01.741+00:00
- 2021-01-12T21:19:02.169+00:00
- 2021-01-15T17:42:30.899+00:00
- 2021-01-15T18:58:18.084+00:00
- 2021-01-15T18:59:22.736+00:00

Some but not all of the withheld communications are replicated in Plaintiffs' proposed Second Consolidated Amended Complaint ("SCAC"). Specifically, Paragraphs 55, 57, and 60–62 of the proposed SCAC reproduce communications that Meta is continuing to withhold as privileged. Paragraph 63 of the SCAC paraphrases the legal advice contained in the aforementioned communications. As you know, we have asked Plaintiffs to remove these communications altogether from the proposed SCAC. Inclusion of these communications is not necessary to support a claim, and we have confirmed our willingness to answer rather than directing motion practice to the SCAC under Rule 12(b)(3), 12(e) or 12(f).

## II.     The Withheld Discord Communications Are Privileged

The non-released Discord Communications are Meta's privileged material. "The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice. *U.S. v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390–94 (1981)). Here, the communications at issue describe and reflect legal advice that was provided by Meta's in-house attorneys (primarily, Michael Friedrichs) to Mr. Dettmers, a then-Meta employee, and to other Meta employees on the research team of which Mr. Dettmers was a member. The legal advice was sought at the direction of Mr. Dettmers' superiors using an internal tool at Meta that allows researchers to obtain approvals, including legal advice from Meta's in-house counsel. Mr. Dettmers and the research team members in his group understood that the information being conveyed to them was legal advice and that such advice was to be kept confidential.

## III.    Mr. Dettmers Did Not Waive Meta's Attorney-Client Privilege

Mr. Dettmers' disclosure of the legal advice he received on Discord did not result in a waiver of Meta's privilege. "The power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Chen*, 99 F.3d at 1502 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)).

Mr. Dettmers was not part of Meta's management. He was a part-time, lower-level employee, who was simultaneously pursuing a Ph.D. at the University of Washington after completing his masters degree at the University of Lugano (English is Mr. Dettmers' second language). His disclosure was not authorized by management personnel at Meta and, indeed, was not known to Meta until Plaintiffs filed their First Consolidated Amended Complaint ("FCAC") in December 2023.

Joseph Saveri
April 8, 2024
Page 4

Meta has also taken reasonable efforts to protect its privilege. "[W]hen there has been an involuntary disclosure, the privilege will be preserved if the privilege holder has made efforts reasonably designed to protect the privilege." *Gomez v. Vernon*., 255 F.3d 1118, 1131–1132 (9th Cir. 2003). Meta employees, including Mr. Dettmers, were trained to not disclose legal advice or other confidential information to third parties, and it was commonly understood, including by Mr. Dettmers, that legal advice, including the legal advice at issue here, was not to be shared externally. Mr. Dettmers made a mistake both in communicating with EleutherAI personnel on these issues and in believing those communications were private and not (at least technically) publicly accessible.

Meta also took prompt action to protect its privilege after it learned of Mr. Dettmers' disclosure. As stated above, Meta first learned of Mr. Dettmers' communications on Discord when the FCAC was filed last December. The Discord channel was not part of Meta's business, and others at Meta had no reason to know about the channel or investigate it for unauthorized disclosures. Moreover, although technically accessible to the public, the Discord channel was not a widely accessed public outlet. As soon as Meta learned of the disclosure, it sought to seal the relevant portions of the FCAC and to prevent any further disclosure. And, as noted above, the Discord Communications at issue were already inaccessible to the public as of August 2023. Based on our diligence, the legal advice reflected in the Discord Communications has not otherwise been disclosed.

On our March 27 call, Mr. Cera stated that a District of Idaho case supports Plaintiffs' position that privilege was waived. This appears to be a reference to *Walker v. City of Pocatello*, Case No. 4:15-cv-00498-BLW, 2017 WL 1138134 (D. Idaho Mar. 27, 2017). *Walker* is inapposite. It is based on Idaho privilege law, and courts applying California privilege law—which applies here—have declined to adopt *Walker*'s reasoning. *See*, *e.g.*, *Toranto v. Jaffurs*, 2018 WL 3546453, at *5 n.2 (S.D. Cal. Jul. 24, 2018) (declining to adopt *Walker's* conclusion that the application of the privilege and the ability to waive it should coincide in light of subsequent treatment of *Weintraub* in Ninth Circuit cases like *Chen*).

Although Meta is hopeful that the explanation provided in this letter will allow this dispute to conclude without motion practice, we would be happy to discuss further if needed.

### IV.     Privilege Log of Communications To/From Meta Attorneys

Finally, on our March 27 call, Plaintiffs asked whether Meta would be willing to provide a privilege log logging the communications between Mr. Dettmers and Meta's in-house attorneys in which the legal advice that Mr. Dettmers disclosed was originally conveyed. On the call, your team recognized that any such log would not be due until some time after Meta serves its responses to Plaintiffs' Second Set of Requests for Production. Nonetheless, in an effort to resolve the matter expeditiously, Meta will begin to prepare the privilege log and will provide that to you soon.

*          *          *

We trust the above sufficiently addresses Plaintiffs' questions regarding Meta's privilege claim over the Discord Communications. We ask you to confirm whether, notwithstanding the above, Plaintiffs intend to challenge the privilege or Meta's position on this issue.

We are available to discuss if you have any questions.

Joseph Saveri
April 8, 2024
Page 5

Sincerely

Kathleen R. Hartnett

KRH

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000  f: +1 415 693 2222  cooley.com