# EXHIBIT 4



601 CALIFORNIA STREET
SUITE 1505
SAN FRANCISCO CA 94108

TEL 415.500.6800
FAX 415.395.9940

April 15, 2024

**Via Electronic Mail**

Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111

Re:  *Kadrey, et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417 (N.D. Cal.)
Allegedly Privileged Discord Communications

Dear Ms. Hartnett:

Plaintiffs write to respond to your April 8, 2024 letter and to seek further clarification of the facts surrounding Meta's claim of privilege.

## I. There Remain Serious Questions as to Whether the Withheld Discord Messages Are Privileged in the First Instance

Although Plaintiffs appreciate the information Meta has provided thus far, there are serious questions surrounding the issue of whether Mr. Dettmers's posts on Discord are privileged in the first instance.

Facially, the Discord posts involving Mr. Dettmers and two EleutherAI employees merely conveyed the underlying facts contained within Mr. Dettmers's communications with Meta's counsel—not the substance of the communications themselves. *See, e.g.*, Discord communication from Tim Dettmers, #the-pile channel (Nov. 26, 2020, 3:09 AM) ("A colleague of mine and I wanted to use the dataset in our research and wondering what would be the best way to build on your research efforts. . . ."); Discord communication from Tim Dettmers, #the-pile channel (Nov. 26, 2020, 3:30 AM) ("One thing we were worried about is if all parts of the dataset are legally okay or if there might be some problems. Do you have a sense if there would be any legal concerns with parts of the data?"); Discord communication from Stella Biderman to Tim Dettmers, #the-pile channel (Nov. 26, 2020, 3:48 AM) (". . . your legal dept is most likely to be worried about books3 which contains the

April 15, 2024
Page 2

text of books with active copyrights. . . .").[1] Notably, no attorney was involved in any of the challenged communications. Nor did the communications contain an attorney's response thereto. As such, the at-issue material appears to be the type of factual statements that are not protected by the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]").

Plaintiffs appreciate that Meta is honoring Plaintiffs' request for an expedited privilege log listing the communications between Mr. Dettmers and Meta's in-house attorneys. To allow Plaintiffs to better understand Defendant's claim of privilege, the privilege log should contain, without limitation, the following:

1. Names and titles of all others who were copied on the logged communications.
2. Log entries for the communication(s) where "legal advice was sought at the direction of Mr. Dettmers' superiors," as stated in your April 8 letter.
3. Log entries for any communications to, from, or copying Mr. Dettmers and Michael Friedrichs, Genevieve Urban, or any other Meta in-house counsel from October 2020 to end of February 2021 related to the Pile, Books3, and/or EleutherAI.
4. For each entry, please indicate whether Meta is claiming attorney-client privilege or work product protection.

Please provide the privilege log by April 22.

As alluded to above, your April 8 letter is helpful in that it provides some information, but it leaves many questions unanswered. To that end, Plaintiffs also request the following information from Meta:

5. Mr. Dettmers's formal title(s) while employed at Meta along with pertinent dates.

---

[1] Plaintiffs note that Meta, of course, has no basis to claim privilege over anything that EleutherAI's employees (or any non-Meta affiliated individual) said in response to Mr. Dettmers. Plaintiffs do not waive any work product protection attached to the screenshots in Plaintiffs' counsel's possession depicting these communications.

April 15, 2024
Page 3

6. The date when Meta or any of its officers, directors, affiliates, agents, lawyers, or consultants first became aware of the at-issue Discord posts.
7. The identity of Mr. Dettmers's "superiors," as stated in your April 8 letter, and the names of the individuals Mr. Dettmers reported to, including their titles.

Please provide answers to the questions contained herein no later than April 29.

## II.     Mr. Dettmers Waived Any Applicable Privilege

Meta's position that Mr. Dettmers did not have the authority to waive attorney-client privilege on Meta's behalf is inconsistent with several district court decisions and defies basic logic. Moreover, Meta's position is untenable—it would mean that companies with many thousands of employees are free to disseminate confidential information without consequence merely because only a select few employees are able to waive the privilege. This makes no sense and is not the law.

Assuming *arguendo* that privilege attached to the subject communications, it was waived when Mr. Dettmers communicated with EleutherAI personnel on a *public* Discord server. The public nature of the communications is apparent, and no user of Discord could have a reasonable expectation of privacy in their posts on a public channel. It is well settled that voluntary disclosure to a third-party waives any attorney-client privilege that may have previously attached to the communication. *In re Pac. Pictures Corp.*, 679 F. 3d 1121, 1126-27 (9th Cir. 2012). Indeed, in this Circuit, where low-level corporate employees have disclosed privileged communications to third-parties, those disclosures waive any privilege that may have otherwise attached. *See, e.g.*, *Vans, Inc. v. Walmart, Inc.*, No. 821CV01876DOCKESX, 2023 WL 4291986, at *6 (C.D. Cal. June 5, 2023) (applying federal privilege law and holding that "lower-level employees [who] inadvertently yet voluntarily disclose privileged material while acting within the scope of their authority" can waive attorney-client privilege); *Truckstop.net, L.L.C. v. Sprint Corp.*, No. CV-05-138-S-BLW, 2005 WL 8166195, at *8 (D. Idaho July 28, 2005) ("*Truckstop I*") (finding that defendant's categorization of employee as low-level employee without the authority to waive attorney-client privilege is unpersuasive given that the corporation put the low-level employee in a position to make the disclosure as well as gave him the information to disclose);

April 15, 2024
Page 4

*Truckstop.Net, L.L.C. v. Sprint Commc'ns Co.*, Nos. CV-04-561- & 05-138-S-NRS, 2007 WL 2480001, at *4 (D. Idaho, Aug. 29, 2007) ("*Truckstop II*") (stating that "a representative of the client, capable of waiving the privilege, could be an employee outside of the management group and/or an employee at all levels in the company."); *Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1091-92 (N.D. Cal. 2009) (finding privilege was waived where a claims specialist forwarded legal opinion letter to a third-party).

*United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996) is factually distinguishable and inapplicable here. Unlike Mr. Dettmers, the low-level employee who disclosed privileged information outside of the attorney-client relationship in *Chen* was not an agent of the corporation acting within the scope of her authority as an employee at the time of disclosure, nor was there any dispute over whether disclosure contained privileged information. Mr. Dettmers, on the other hand, was acting well within the clear bounds of his duties and, from all appearances, remains within Meta's control to this day. Moreover, *Chen* addresses the issue of whether a low-level employee may waive the corporate attorney-client privilege in dicta (*id.* at 1502) and that language is therefore not binding.

To clarify, the case Plaintiffs referred to during the March 27 meet and confer was not *Walker v. City of Pocatello*, No. 4:15-cv-00498-BLW, 2017 WL 1138134 (D. Idaho Mar. 27, 2017), as Meta surmises, but *Truckstop I*, 2005 WL 8166195, at *8 (citing *Jonathan Corp. v. Prime Computer, Inc.*, 114 F.R.D. 693, 700 (E.D. Va. 1987)). To the extent the *Truckstop I* court applied Idaho law, that distinction is immaterial here because the court reached the conclusion that low-level employees had the power to waive privilege based on *Jonathon Corp.*, which relies on federal common law in concluding that low-level employees may have the authority to waive corporate attorney-client privilege. 114 F.R.D. at 695. Even so, Meta is incorrect that California privilege law applies here. The instant action arises out of violations of the federal Copyright Act; no state law claims remain. It is well settled that federal law applies to privilege issues that arise in federal question cases. *See F.D.I.C. v. Fid. & Deposit Co. of Maryland*, 196 F.R.D. 375, 379 (S.D. Cal. 2000).

April 15, 2024
Page 5

### III. Meta Failed to Take Reasonable Steps to Prevent Unauthorized Disclosure of the Privileged Material

Meta claims this was an inadvertent disclosure by an employee, and not a knowing waiver by Meta and that Meta made reasonable efforts to protect its privilege. This claim is belied by the facts surrounding the disclosure. As a starting point, the material was publicly available from November 2020 until December 2023—almost three years. This fact alone cuts against Meta's claim that it took reasonable steps to rectify the disclosure. Fed. R. Evid. 502(b)(3). Though Meta avers that individuals "at Meta had no reason to know about the channel or investigate it for unauthorized disclosures," Meta has since made extensive use of the Pile, which is plainly assembled and maintained by the third-party at-issue. Hartnett Letter at 4. It would be remarkable that no Meta employees would have ventured onto EleutherAI's *public* Discord channels when deciding to use the Pile to train its models. *See United States v. SDI Future Health*, 464 F. Supp. 2d 1027, 1041 (D. Nev. 2006) (finding that even when a disclosure was involuntary, if the privilege holder fails to pursue *all reasonable means* of preserving the confidentiality of the privileged matter, there may be a waiver) (emphasis added).

To help Plaintiffs better understand Defendant's position on this point, Plaintiffs request the following additional information:

8. Copies of any non-privileged communications concerning the Discord posts.
9. The step(s), if any, taken by anyone at Meta to remove the Discord posts.
10. Whether there are any other instances where the allegedly privileged material was disseminated or otherwise disclosed to any third-party.

Please provide the requested privilege log by April 22 and responses to the above requests for information by April 29. Plaintiffs intend to raise these issues with the Court in the event that Meta fails to meet these deadlines.

Sincerely,

/s/ *Joseph R. Saveri*
   Joseph R. Saveri