# EXHIBIT 5



Kathleen R. Hartnett
T: +1 415 693 2071
khartnett@cooley.com

VIA EMAIL <jsaveri@saverilawfirm.com>

April 29, 2024

Joseph Saveri
Joseph Saveri Law Firm
601 California Street
Suite 1505
San Francisco, CA 94108

**Re:** *Kadrey, et al. v. Meta Platforms, Inc.* **– Privileged Discord Communications**

Dear Joe:

We write further to our prior correspondence and phone calls, and in response to your April 15 letter ("Letter"), concerning Meta's assertion of privilege over certain Discord communications. In the Letter, you dispute that the Discord communications at issue are privileged; claim that Meta has waived any privilege; and make several requests for additional information, including for a "privilege log listing the communications between Mr. Dettmers and Meta's in-house attorneys" that contains the privileged advice. Letter at 2. Below we respond to each of these issues.

**I.      The Withheld Discord Communications Are Privileged**

The withheld Discord communications are privileged. Nothing in the Letter refutes this point. Plaintiffs argue that the withheld communications merely convey underlying facts, not legal advice, citing three specific Discord communications. *See id.* at 1–2. The Letter mistakenly identifies two of these communications as among those over which Meta is claiming privilege. But only one of the three communications identified in your Letter is being withheld as privileged: the communication you refer to by a date/timestamp of November 26, 2020, 3:30 a.m. (please note that the actual timestamp was 2:30 a.m.). *See* April 8, 2024 Letter from K. Hartnett to J. Saveri, at 1–2 ("April 8 Letter") (listing communications over which Meta continues to assert privilege or is pending a final determination). The communication of November 26, 2020 at 2:30 a.m. is privileged because, as shown by the communication, it reflects the legal advice of Meta's attorneys relating to AI training.

The discussion of privilege in the Letter ignores all of the other Discord communications over which Meta has maintained its claim of privilege. *See* April 8 Letter at 1–2. Those communications are all clearly privileged. As evident from the communications that Meta has identified, the withheld Discord communications do not merely convey underlying facts, but reflect legal advice provided by Meta's in-house attorneys, as described and paraphrased by Mr. Dettmers. Indeed, the Discord messages that Plaintiffs reproduced in the First Consolidated Amended Complaint ("FCAC") and again appear in the draft Second Consolidated Amended Complaint ("SCAC") are prime examples of such privileged communications.

Joseph Saveri
April 29, 2024
Page 2

**II.     Meta's Privilege Was Not Waived By Dettmers' Disclosure**

Your Letter next argues that Mr. Dettmers waived any privilege that Meta had over the Discord communications, citing a number of inapt and distinguishable cases. Mr. Dettmers—a low-level Meta employee who was not authorized to waive Meta's attorney-client privilege—did not waive Meta's privilege by disclosing, without Meta's permission or knowledge, the communications on EleutherAI's Discord channel.

To begin, the Letter is simply incorrect that the 9th Circuit's clear statement in *United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir. 1996)—that "[t]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors"—is dicta. *See* Letter at 4. *Chen* quoted United States Supreme Court authority for that proposition. *See Chen* 99 F.3d at 1502 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). Moreover, in *Chen*, as here, the privilege was not waived because a former employee "lacked authority to waive the corporation's attorney-client privilege," as a "a corporate employee cannot waive the corporation's privilege" absent authorization by its employer to do so. *See Chen*, 99 F.3d at 1502. *Chen* is controlling here: Mr. Dettmers was a low-level corporate employee (a part time researcher simultaneously pursuing his PhD) who lacked authority to waive Meta's privilege.

Unlike here, the *Vans* and *Great American* cases cited in the Letter involved corporate employees who were authorized to communicate with the third-parties to whom allegedly privileged material was disclosed. In *Vans*, the court *recognized* the authority of *Chen*, but determined that privilege had been waived in the circumstances of that case because the disclosing Walmart employee was delegated authority by his superior to work with a third-party to implement legal advice provided by Walmart's counsel and then forwarded privileged communications to the third party based on that direction. *Vans, Inc. v. Walmart, Inc.*, 2023 WL 4291986, *6 (C.D. Cal. June 5, 2023). Similarly, in *Great American*, which fails to acknowledge *Chen*, an insurance claims specialist provided coverage counsel's opinion to an insurance broker in the context of determining insurance coverage. *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1091 (N.D. Cal. 2009).

Here, in contrast to the employees in *Vans* and *Great American*, Mr. Dettmers' role at Meta was that of part-time researcher, not someone tasked with communicating with third parties about legal issues. Nobody at Meta directed Mr. Dettmers to reach out to EleutherAI, let alone to discuss, share, or disclose the confidential legal advice of Meta lawyers. To the contrary, Mr. Dettmers reached out to EleutherAI of his own accord, without authorization to discuss Meta's legal advice. Nobody at Meta was aware at the time that Mr. Dettmers was sharing the legal advice conveyed by Meta's lawyers. Rather, as we have explained, Meta learned of Mr. Dettmers' disclosures by reading the FCAC that Plaintiffs filed on the public record. Meta also took steps to maintain the confidentiality of the privileged communications, including by conducting those communications within a centralized internal tool at Meta that allows researchers to seek legal advice (the single review tool, or SRT, discussed below), and by requiring all Meta employees (including Dettmers) to undergo trainings on privilege and confidentiality.

The Letter also clarifies that *Truckstop.net, L.L.C. v. Sprint Corp.*, 2005 WL 8166195 (D. Idaho July 28, 2005) ("*Truckstop I*"), rather than *Walker v. City of Pocatello*, 2017 WL 1138134 (D. Idaho Mar. 27, 2017), is the case that Plaintiffs described but did not identify during the parties' March 27 meet and confer. We have had a chance to review *Truckstop I* and conclude it is inapt for the same reasons as *Walker*, as we explained in our April 8 Letter. Both *Truckstop I* and *Walker* were decided by the same court and apply the same reasoning, which is inconsistent with the Ninth Circuit's decision in *Chen* and the Supreme Court precedent on which *Chen* is based. Moreover, the reasoning of *Truckstop* and *Walker*—both of which applied *Idaho* privilege law—has been rejected by *Toranto v. Jaffurs*, 2018 WL 3546453 (S.D. Cal. Jul. 24,

Joseph Saveri
April 29, 2024
Page 3

2018), which applied federal privilege law. In addition, like the disclosing employees in *Vans* and *Great American*, the employee in *Truckstop I* was the "designated point of contact between Sprint Communications and TSN." *Truckstop I*, 2005 WL 8166195, at *8. Mr. Dettmers, in contrast, was not designated by Meta to be a point of contact with EleutherAI or to share Meta's privileged communications with Eleuther AI or anyone else. In short, *Truckstop I* is not instructive and does not apply here.

### III.  Privilege Log

In both our March 27 meet and confer and our April 8 Letter, we stated that Meta would agree to provide Plaintiffs an expedited privilege log of the communications between Mr. Dettmers and his research team, on the one hand, and Meta's in-house attorneys, on the other hand. That privilege log is enclosed, and addresses Requests 2–4 in the Letter.

Please note that the logged communications were made on Meta's single review tool ("SRT"). The tool is a centralized platform used by Meta employees to, inter alia, request and obtain legal review pertaining to various projects at Meta. Any Meta employee with an SRT account has access to the SRT tool, but only employees that have been added to a particular SRT request are able to view the communications from the Meta attorneys assigned to the request.

In response to Request 1 in the Letter, below are the names and titles of the Meta employees, including in-house attorneys, that are known to have been added to the SRT request, along with their titles at the time of the communications in question:

- Tim Dettmers, Visiting Researcher for Facebook AI Research (FAIR)
- Michael Friedrichs, Lead Counsel, AI Product
- Genevieve Urban, Seconded Counsel (on secondment from Perkins Coie LLP)
- Mike Lewis, Research Scientist
- Luke Zettlemoyer, Research Director, FAIR
- Melissa Alvarez, Program Manager, Global Research Operations
- Adam Woffinden, Counsel, Licensing and Open Source
- Myle Ott, Research Engineer
- Madeline Hepler, Outside Counsel (Dorsey & Whitney LLP)
- Kamila Benzina, Lead Counsel, AI Product

### IV.  Responses to Requests for Additional Information

Finally, the Letter includes Requests 5–10, which seek information and documents relating to Mr. Dettmers' employment at Meta and the discussion, sharing, and removal of the Discord communications at issue. Although, like Requests 1–4 (addressed above), these requests were made outside of formal discovery procedures, in the interests of cooperation and reaching a resolution of this dispute without the need for motion practice, Meta responds to the requests below.

Request No. 5 asks for "Mr. Dettmers's formal title(s) while employed at Meta along with pertinent dates." Mr. Dettmers' formal title was Visiting Researcher, a position he held between March 2020 and March 2022. As further context, Mr. Dettmers was a Ph.D. student at the University of Washington and a student of Luke Zettlemoyer, who was a Research Director at FAIR. Through Mr. Zettlemoyer's relationship with Meta, selected students were able to work part-time for Meta for up to two years. Mr. Dettmers was hired by Meta through this program.

Joseph Saveri
April 29, 2024
Page 4

Request No. 6 asks for "The date when Meta or any of its officers, directors, affiliates, agents, lawyers, or consultants first became aware of the Discord posts." Based on our reasonable investigation, this date was December 11, 2023, the date that the FCAC was filed.

Request No. 7 asks for "The identity of Mr. Dettmers's 'superiors,' as stated in the April 8 letter, and the names of the individuals to which Mr. Dettmers reported to, including their titles." Mr. Dettmers reported to Luke Zettlemoyer, Research Manager, and Mike Lewis, Research Scientist at FAIR.

Request No. 8 asks for "Copies of any non-privileged communications concerning the Discord posts." Based on our reasonable investigation to date, Meta is unaware of any communications in its possession, custody, or control concerning the Discord communications at issue that predate the filing of the FCAC. Meta is completing its review of this issue and should be able to update later this week if there are any updates to provide.

Request No. 9 asks Meta to describe "The step(s), if any, taken by anyone at Meta to remove the Discord posts." Meta was unaware of the Discord posts until the filing of the FCAC—*i.e.*, after they already had been taken down. Because the posts already were taken down by the time Meta became aware of them, Meta did not take any additional steps to remove the communications from the Discord platform. As Plaintiffs know, Meta promptly took steps to seal the portions of the FCAC that quoted from the Discord posts and have continued their efforts to keep such references out of the SCAC.

Finally, Request No. 10 asks "Whether there are any other instances where the allegedly privileged material was disseminated or otherwise disclosed to any third-party." Other than Mr. Dettmers' disclosure of the privileged material on EleutherAI's Discord channel, and Plaintiffs' publication of this privileged material in its FCAC, we are not aware of any additional dissemination of the privileged material, with two exceptions. First, we are aware that the privileged material was disseminated on LinkedIn by a non-U.S. resident who claims that he was the person who originally provided the Discord communications to Plaintiffs. Please describe the relationship between Plaintiffs (and/or their counsel) and this individual; preserve all communications between Plaintiffs and/or their counsel with this individual; and inform us what, if anything, Plaintiffs and/or their counsel had to do with this post. We seek this information so that we can assess further steps, if necessary, to protect Meta's privileged information.

Second, as Plaintiffs are aware, several news outlets reported on the FCAC immediately after it was filed, and as a result of Plaintiffs' reproduction of Meta's privileged communications in the publicly filed FCAC until the information was sealed at Meta's request, quoted or paraphrased some of the Discord communications and allegations in the FCAC.

*     *     *

We trust the above sufficiently addresses Plaintiffs' questions and concerns regarding Meta's privilege claim over the withheld Discord communications.

We are available to discuss if you have any questions.

Joseph Saveri
April 29, 2024
Page 5

Sincerely,

Kathleen R. Hartnett

KRH