UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD KADREY, et al.,

Plaintiffs,

v.

META PLATFORMS, INC., et al.,

Defendants.

Case No. 23-cv-03417-VC   (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 105

The present discovery dispute concerns certain communications made by a former part-time Meta employee, Tim Dettmers, on two Discord channels (the "Subject Communications"). The Court has reviewed the Subject Communications *in camera*. The Court held a hearing on August 22, 2024, and now issues the following order.

**A.     Were the Subject Communications Attorney-Client Privileged in the First Place?**

Plaintiffs weakly contend that the Subject Communications were not privileged in the first place, saying they were not requests for legal advice or responses thereto, and that they are disclosures of facts not entitled to privilege protection. Those arguments are wrong. The Subject Communications contain or reveal legal advice from Meta's attorneys and requests to them for legal advice by Meta employees. This is evident from the Subject Communications themselves, and is further supported by the Dettmers and Zettlemoyer Declarations (ECF Nos. 105-1 & 105-2). It is true that Dettmers was communicating with EleutherAI, but his communications plainly reveal privileged legal advice given to him by Meta's attorneys. Accordingly, the Subject Communications were privileged in the first place.

**B.     Did Meta Waive the Privilege?**

"[T]he power to waive the corporate attorney-client privilege rests with the corporation's

1    management and is normally exercised by its officers and directors." *United States v. Chen*, 99
2    F.3d 1495, 1502 (9th Cir. 1996) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471
3    U.S. 343, 348 (1985)). Plaintiffs say *Chen* is distinguishable because it involved a former
4    employee. However, the Ninth Circuit reasoned as follows: "[W]hen control of a corporation
5    passes to new management, the authority to assert and waive the corporation's attorney-client
6    privilege passes as well. It follows *a fortiori* that since a corporate employee cannot waive the
7    corporation's privilege, that same individual as an ex-employee cannot do so." *Id*. (cleaned up).
8    Thus, the Ninth Circuit's explanation for why a former employee cannot waive the privilege took
9    as its starting assumption that a current employee cannot waive the corporation's privilege, which
10   is the principle Meta seeks to apply here.

11   Still, both *Chen* and the Supreme Court decision it cited say that the power to waive a
12   corporate privilege is "normally" exercised by its officers and directors. As other courts have
13   observed, also after citing *Chen*, "[s]ometimes, however, the privilege can be waived by lower-
14   level employees [who] inadvertently yet voluntarily disclose privileged material while acting
15   within the scope of their authority." *Vans, Inc. v. Walmart, Inc.*, 2023 WL 4291986 (C.D. Cal.
16   June 5, 2023) (cleaned up). *See also Phoenix Ins. Co. v. Diamond Plastics Corp.*, 2020 WL
17   4261419, *4 (W.D. Wash. July 24, 2020) ("The Supreme Court said nothing about what happens
18   if lower-level employees inadvertently yet voluntarily disclose privileged material while acting
19   within the scope of their authority. When faced with such disclosures, many courts have held that
20   the disclosure waives the corporation's attorney-client privilege if the corporation took inadequate
21   steps to prevent the disclosure."). "To exempt corporations from this general rule 'would be
22   unfair' because then 'corporations would have no responsibility to monitor how their low-level
23   employees handle privileged communications even though those employees are covered by
24   modern expansions of the attorney-client privilege.'" *Vans*, 2023 WL 4291986, *6 (quoting
25   *Phoenix Ins.*, 2020 WL 4261419, *4).

26   Here, however, Meta has established that Dettmers did not have authority to waive the
27   privilege over the Subject Communications and that Meta did take adequate steps to prevent the
28   disclosures. Zettlemoyer Decl. ¶¶ 3, 5, 6, 7; Dettmers Decl. ¶¶ 4, 5, 12. Plaintiffs emphasize that

2

1  Dettmers made the disclosures intentionally and held himself out as a representative of Meta. But
2  the relevant inquiry is what Meta did. In *Vans*, relied on heavily by Plaintiffs, the court found a
3  waiver by a lower level employee after finding a delegation of authority over certain types of
4  communications to that employee and knowledge by others at the company that he was having
5  those kinds of communications. 2023 WL 4291986, *6. In *Truckstop.net, L.L.C. v. Sprint*
6  *Corporation*, 2005 WL 8166195 (D. Idaho July 28, 2005), also relied on by Plaintiffs, the court
7  found a waiver by an employee who was an enterprise account executive at the time he disclosed
8  the privileged material, and he served as the "main point of contact" between the recipient
9  company and the company he worked for. *Id*. *6. In this case, by contrast, there is no indication
10 that Meta expressly or impliedly gave Dettmers any authority to conduct any external
11 communications, nor that Meta had any awareness of or reason to be aware of external
12 communications he was having. Plaintiffs essentially ask the Court to infer this delegation of
13 authority from the communications themselves. However, that is not a reasonable inference,
14 particularly in view of Meta's contrary showing that Dettmers did not have this authority.

15       To be clear, the Court is not demanding evidence that Meta (then, Facebook) specifically
16 gave authority to Dettmers to disclose privileged materials. Rather, the relevant inquiry is whether
17 Dettmers acted within the scope of the authority Meta gave him. At oral argument, Plaintiffs used
18 the example of two companies working on a deal, where the lead negotiator for company A asks
19 the lead negotiator for company B why she won't agree to something, and she says "our legal
20 department says we can't do that." That's a voluntary waiver of the privilege by an employee who
21 is acting within the scope of the authority the company gave her, namely, to negotiate a deal. *See*
22 *Jonathan Corp. v. Prime Computer*, 114 F.R.D. 693, 700 (E.D. Va. 1987) ("Prime cannot now
23 disclaim the voluntary disclosure of the document to Jonathan by the very individual Prime had
24 designated to deal with Jonathan on the matter . . . . Prime both intentionally put the individual in a
25 position to make the disclosure as well as gave him the information to disclose."). Plaintiffs argue
26 that Dettmers was similarly charged by Meta to collaborate with EleutherAI, but there is no
27 evidence Meta did that. To be sure, paragraph 8 of Dettmers' declaration says that *he* "sought to
28 communicate (and potentially collaborate) with EleutherAI." ECF No. 15-1. But Dettmers could

United States District Court
Northern District of California

3

1 not give himself authority to waive Meta's privilege. There is nothing to suggest that Meta

2 designated Dettmers to communicate or collaborate with EleutherAI, or was even aware he had

3 any such communications until they showed up in Plaintiffs' First Consolidated Amended

4 Complaint.

In addition, Meta took all reasonable steps to protect the privilege, including following the discovery of this disclosure, and Plaintiffs' arguments that Meta was not diligent enough are unsupported and meritless. ECF Nos. 104-4 (Hartnett Decl.), 105-2 (Zettlemoyer Decl.).

**C.  Conclusion**

Meta's motion for a protective order is **GRANTED**, and Plaintiffs' motion to compel is **DENIED**. The Court finds that the Subject Communications are privileged and that Meta has not waived the privilege. Plaintiffs therefore cannot use the Subject Communications and must return them to Meta or destroy them.

**IT IS SO ORDERED.**

Dated: August 22, 2024

THOMAS S. HIXSON
United States Magistrate Judge