1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Thomas S. Hixson, Magistrate Judge

4

5    KADREY, et al.,                )  No. C 23-03417-VC
                                    )
6             Plaintiffs,           )
                                    )
7    vs.                            )
                                    )
8    META PLATFORMS, INC.,          )
                                    )
9             Defendant.            )
     _____)
10

11                                  San Francisco, California
                                    Monday, September 9, 2024
12

13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 1:00 - 1:53 = 53 MINUTES
14

15   APPEARANCES:

16   For Plaintiffs:
                                    Joseph Saveri Law Firm, LLP
17                                  601 California Street
                                    Suite 1000
18                                  San Francisco, California
                                     94108
19                          BY:  JOSEPH R. SAVERI, ESQ.
                                 HOLDEN J. BENON, ESQ.
20

21                                  Cafferty Clobes Meriwether &
                                     Sprengel LLP
22                                  135 South LaSalle Street
                                    Suite 3210
23                                  Chicago, Illinois 60603
                            BY:  ALEXANDER J. SWEATMAN, ESQ.
24

25            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

```
 1  For Defendant:
 2                              Cooley, LLP
                                1333 2nd Street, Suite 400
                                Santa Monica, California 90401
 3                      BY:  BOBBY A. GHAJAR, ESQ.
 4                              Cooley, LLP
                                3 Embarcadero Center
 5                              20th Floor
                                San Francisco, California
 6                                94111
                        BY:  KATHLEEN R. HARTNETT, ESQ.
 7
                                DiCello Levitt LLP
 8                              10 North Dearborn Street
                                Sixth Floor
 9                              Chicago, Illinois 60602
                        BY:  NADA DJORDJEVIC, ESQ.
10
                                Cleary Gottlieb Steen &
11                                Hamilton LLP
                                1841 Page Mill Road
12                              Suite 250
                                Palo Alto, California 94304
13                      BY:  ANGELA DUNNING, ESQ.
14  Transcribed by:             Echo Reporting, Inc.
                                Contracted Court Reporter/
15                              Transcriber
                                echoreporting@yahoo.com
16
17
18
19
20
21
22
23
24
25
```

3

1  <u>Monday, September 9, 2024</u>                        <u>1:00 p.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                            --oOo--

4         THE CLERK:  We're going to get started.  This is

5  the courtroom deputy.  My name is Rose.  We are here in

6  civil action 23-3417, Kadrey, et al., versus Meta, the

7  Honorable Thomas S. Hixson presiding.

8      Counsel, please state your appearances for the record.

9  Let's start with Plaintiffs' Counsel.

10         MR. BENON:  Holden Benon for the Plaintiffs.

11         THE COURT:  Good afternoon.

12         MR. SAVERI:  Good afternoon, your Honor.  Joseph

13  Saveri for the Plaintiffs.

14         THE COURT:  Good afternoon.

15         MR. SWEATMAN:  Good afternoon, your Honor.  Alex

16  Sweatman, also on behalf of the Plaintiffs.

17         THE COURT:  Good afternoon.

18         MS. DJORDJEVIC:  And good afternoon, your Honor.

19  Nada Djordjevic, also on behalf of Plaintiffs.

20         THE COURT:  Good afternoon.

21         THE CLERK:  And Defendants.

22         MS. HARTNETT:  Good afternoon, your Honor.

23  Kathleen Hartnett for Defendant, Meta.

24         THE COURT:  Good afternoon.

25         MR. GHAJAR:  Good afternoon, your Honor.  Bobby

4

1  Ghajar, also on behalf of Meta.

2           THE COURT:  Good afternoon.

3           MS. DUNNING:  And, finally, your Honor, good

4  afternoon.  This is Angela Dunning on behalf of Meta as

5  well.  Thank you.

6           THE COURT:  Good afternoon.

7      The two sides have filed discovery letter briefs today,

8  so thank you for those.  Both sides' filings were helpful.

9      Let us start, I think, with the first issue.  Meta has

10 an issue it wants to raise concerning the privileged

11 communications.  Why don't you lay out what that is, please.

12          MS. HARTNETT:  Thank you, your Honor.  This is

13 Kathleen Hartnett.  So, as you are aware, after the recent

14 argument we had before you, and briefing on August 22nd, you

15 ordered that Plaintiffs return or destroy Meta's privileged

16 communications.  We requested that Plaintiffs return them to

17 us, rather than destroy, because we wanted to see them, and

18 we had not ever received those from Plaintiffs just by

19 asking for them.

20     When we asked Plaintiffs to return them, we asked for

21 the Plaintiffs to also return or provide us with the e-mail

22 that the -- or the communications with Mr. Heldrip

23 (phonetic) that we understood from the parties' letter

24 briefing and other investigations were the mechanism through

25 which Plaintiffs had obtained the privileged communications.

5

1    At first, the Plaintiffs refused to provide them to us,

2  taking the position that your order was non-final or not

3  operative until they appealed it to Judge Chhabria, and then

4  we explained, based on authority, that was not well taken.

5  So then we submitted additional authority to them.  They

6  still did not provide the subject communications or the

7  Heldrip e-mails, so we sought a conference with the Court.

8    As our letter tries to explain today, they did

9  eventually, after we sought the Court's assistance, provide

10  us with the subject communications, which are screenshots

11  they received from Mr. Heldrip, and they provided us one

12  e-mail between Mr. Heldrip and Plaintiffs' counsel that

13  attached the subject communications.  However, they haven't

14  provided the additional correspondence they had with Mr.

15  Heldrip, which you can -- we can tell from the e-mail they

16  have provided.

17    There's additional correspondence with Mr. Heldrip on

18  the topic, and so we've asked them to provide us that.  It's

19  responsive to our discovery request, which I don't think

20  they deny.  At first they had, earlier in this dispute, said

21  it was work product, but, as we pointed out, that would

22  be -- you know, that's not well taken, particularly now that

23  they've disavowed any attorney-client relationship with Mr.

24  Heldrip.  They've also suggested relevance issues or other

25  problems, but bottom line is that they're not providing us

6

1 with that additional correspondence.

2     We think that this is a straightforward extension of

3 the issue that was before the Court.  They've now asked to

4 brief it up fully as a motion to compel.  As we explain

5 elsewhere in our submission, you know, there's already been

6 delays in getting our motions to compel to your Honor, and

7 this one being so closely related to the subject

8 communications, we were hopeful that your Honor could help

9 us resolve that issue, and make sure that we receive not

10 just the one e-mail they've provided, but the Heldrip

11 correspondence with Plaintiffs.

12         THE COURT:  Thank you.  That's helpful.  In my

13 mind, when I referred to the "subject communications" in my

14 order, I was referring to Detmer's (phonetic) communications

15 on Discord, and it sounds like this is now a step past that,

16 and I think you used the word "extension" to refer to that.

17 So it does seem to not be within the four corners of my

18 order.  Do you agree with that, that this is an extension of

19 that?

20         MS. HARTNETT:  We do, your Honor.  When we

21 initially sought the conference with you, they were refusing

22 to comply with the four corners of your order by not giving

23 us the subject communications.  They have complied with

24 that, but, given that we have the call and we have a couple

25 other issues that are also pending, we thought it was still

7

1 worthwhile to seek your informal guidance on this extension

2 of the original issue.

3          THE COURT:  Thank you.

4     Let me turn to Plaintiffs and have your thoughts on the

5 issue, please.

6          MR. BENON:  Thank you, your Honor.  This is Holden

7 Benon for the Plaintiffs.

8     Just as an initial technical matter, your Honor, the

9 parties did not formally submit a joint letter brief, as

10 your Honor calls for in the standing order.  The letter that

11 was submitted today was just meant to inform the Court of

12 certain developments.  You know, it was sort of an objective

13 letter that was meant to just lay out some developments that

14 have occurred since Defendants requested this hearing.

15     So, just putting that aside, the issue that your Honor

16 raises, which is that these additional documents are not

17 within the four corners of your Honor's order, is spot-on,

18 your Honor.  These requests, these are separate requests.

19 There was a meet-and-confer on them, but there was no

20 opportunity for the parties to file a joint letter brief,

21 and if the Plaintiffs had had an opportunity to submit a

22 joint letter brief, we have much to say on this, your Honor.

23     We have issues with relevance, relevance being the

24 primary issue, but there are other issues as well, and

25 Plaintiffs would appreciate an opportunity to brief these

8

1  for your Honor.

2          THE COURT:  Well, thank you.

3          MR. BENON:  And, your Honor, one further point is

4  that -- about the appeal or the objection under Rule 72

5  that's currently pending before Judge Chhabria, which sort

6  of deals on that central issue about the Tim Detmer's, but

7  we believe it makes sense for that order to be resolved, or

8  for that dispute to be resolved, before turning to these

9  tangential issues.

10          THE COURT:  I see.  Thank you.

11      Under my discovery standing order, there are two ways

12  that disputes can be raised.  First is, if it's a relatively

13  simple one, we can have an informal discovery hearing like

14  we're having now.  Second, if it's more complicated, then

15  the parties should file a joint discovery letter brief.

16      In general, if one side thinks that an issue is

17  complicated enough that it merits a joint discovery letter

18  brief, I tend to defer to that, because I want people to be

19  able to present the legal arguments they want to present.

20      Plaintiffs, it sounds like you think a joint discovery

21  letter brief is the way to go, rather than an informal

22  hearing, at least with respect to this issue.  Is that

23  correct?

24          MR. BENON:  That's correct, your Honor.

25          THE COURT:  Okay.  Well, thank you.

9

1     Then I would like to do that, and to have a joint
2 discovery letter brief.  I would like to get that filed
3 pretty soon.  I recognize, of course, how Judge Chhabria
4 rules on the appeal of my previous discovery order may have
5 an effect, perhaps even a decisive effect, on this new
6 dispute, but, at a minimum, I would like to have this
7 dispute fully briefed.
8     Let me ask Plaintiffs, when do you think the parties
9 can get a joint discovery letter brief on file?
10         MR. BENON:  Thursday or Friday of this week should
11 be doable, your Honor.
12         THE COURT:  And, Meta, do you think you could do
13 it by Thursday or Friday of this week?
14         MR. GHAJAR:  Yes.
15         MS. HARTNETT:  Yes, your Honor.  And I just would
16 add -- this is Kathleen Hartnett again.  You know, one
17 concern is we haven't yet received a request for a response
18 to Judge -- to the motion before Judge Chhabria, but we do
19 actually think this correspondence is relevant, potentially,
20 to the privilege claim, just because it will show the
21 circumstances under which Plaintiffs obtained the
22 information, and so, you know, we appreciate your prompt
23 consideration of the motion.
24         THE COURT:  All right.  Thank you.  Then I am
25 going to set a deadline of Thursday, September 12th, to get

10

1  this joint discovery letter brief on file concerning this

2  issue.  By default, the page limit is five pages, so that's

3  two and a half pages per side, but I can change that if more

4  space is needed.

5      Plaintiffs, do you think you need more than two and a

6  half pages to present your arguments?

7          MR. BENON:  No, your Honor.  We think two and a

8  half pages would be sufficient.

9          THE COURT:  And, Meta, do you need more than two

10 and a half pages, or is that space sufficient?

11         MS. HARTNETT:  We think it's straightforward.

12 That will work.  Thank you.

13         THE COURT:  Thank you.  Then I order the parties

14 to submit a joint discovery letter brief no later than

15 Thursday, September 12th, on this first issue.

16     Then let's turn to the second issue, which looks like

17 depositions, and, Meta, you give me your position there.

18         MS. HARTNETT:  Yes.  So, your Honor, this issue

19 is -- it's twofold, but both involve us getting dates for

20 Plaintiffs' depositions, and, actually, just this morning,

21 we had some additional correspondence, but, at the end of

22 the day, we still are lacking a proper date and time within

23 the discovery period for Plaintiffs' depositions, at least

24 half of them, and then we also are -- so we have -- so far,

25 Plaintiffs have noticed two depositions of Meta witnesses.

1  They've noticed one third-party deposition.  That leaves

2  seven additional Meta witnesses.

3      We have been asking them now for some time to please

4  give us the names of the seven additional Meta witnesses

5  they want to depose, so we can get discovery completed in

6  the time period that's currently scheduled.  They have

7  instead kind of coming back (sic) with 28 people that they

8  would like to, I guess, one day depose, if they get

9  extensions of the schedule, and they said they were going to

10 at some point file a motion with you to expand the number of

11 depositions or impose an hours caps.  That hasn't happened

12 yet.

13     So I think Meta's position is -- and I can be more

14 granular, if needed.  We don't believe that they are

15 cooperating in the provision of depositions, for their own

16 depositions or in identifying Meta witnesses, and,

17 unfortunately, this appears to be in order to partially be

18 able to make a case for extending the schedule, and so we

19 brought this issue to you last week when we were unable to

20 get these dates.

21     I think one other related issue is for the Plaintiffs,

22 and, again, I don't want to stray too far from what's before

23 you.  We just want dates, and we can try to work out the

24 in-person versus Zoom, but, for a lot of the Plaintiffs,

25 there seems to be some sort of a default suggestion, that

12

1  Zoom will be the default, and we can do in-person if it's

2  only convenient for them.

3      And so that's also been a scheduling challenge, but,

4  first and foremost, we just want dates, in-person dates, for

5  their witnesses, and we want them to tell us what the seven

6  Meta witnesses are, so we can schedule the depositions and

7  get the discovery complete.

8          THE COURT:  Okay.  Thank you.

9      Let me hear Plaintiffs' views.

10          MR. BENON:  Okay.  So a number of different

11 points, your Honor.  So, first and foremost, Plaintiffs are

12 providing dates for their Plaintiff witnesses.  Depositions

13 are being scheduled for Plaintiff Kadrey, Plaintiff

14 Silverman, and Plaintiff Golden.  I can let my co-counsel

15 chime in in a moment on the other Plaintiff depositions that

16 are being scheduled for this month.  Meta says that's not

17 enough, and that all 20 depositions should fit into the

18 month of September, before the current fact discovery

19 cutoff.

20      One item, your Honor, that's not in our papers that

21 were submitted today is, you know, your Honor may be

22 wondering, "Well, why aren't Plaintiffs noticing the other

23 seven or eight depositions this month?"  Part of the reason,

24 your Honor, is because Plaintiffs intend to seek additional

25 custodians, additional document custodians, and there's a

13

1 process for that.

2     We think that those custodians should be added, and

3 those additional custodians, your Honor, are actually

4 low-level employees who we believe have relevant

5 information.  We think those custodians should be added.  We

6 think those documents should be produced, and those

7 depositions should go forward before depositions of

8 higher-level folks who are current document custodians.

9     So Meta is looking for us to sort of do things

10 backwards, which is depose a bunch of high-level people who

11 are current custodians, and then maybe get documents from

12 other custodians later, and I think they're open to one-off

13 depositions after the fact discovery cutoff.  Well, your

14 Honor, we don't think that's workable, and, again, this is

15 sort of going to the subject of our fact discovery extension

16 motion, but just to preview that.

17     We do think it would be helpful to get some court

18 guidance, if your Honor is so inclined, on lifting the cap

19 of 10 depositions and extending the limits, your Honor.

20 This is a complex case.  It's one of large magnitude, and we

21 think that some extension on these limits, some enlargement

22 of the 10 depositions, is in order.  We know your Honor did

23 so in Perez v. Indian Harbor, where your Honor imposed an

24 hours-based cap in lieu of the 10-deposition -- the default

25 rule of 10 depositions.

14

1    We think something would be appropriate here.  We have

2  met and conferred with Meta.  We're prepared to submit a

3  joint letter brief on that.  We think a joint letter brief

4  would be appropriate on that item, but we wanted to preview

5  that for your Honor.

6         THE COURT:  Okay.  Thank you.  With respect to

7  having there be a number cap, as opposed to an hours cap,

8  that's not something that I would decide on this phone call.

9  Instead, I would like the parties to submit a joint

10 discovery letter brief.

11   One thing that I would consider, or that would seem to

12 me to be important in resolving that dispute, is that

13 currently the fact discovery cutoff is September 30th, which

14 is 21 days from now, and making a major change in how

15 depositions -- how many depositions there are that close to

16 the end of fact discovery doesn't seem like it would be a

17 good idea, because then both sides would have to redo their

18 whole deposition strategy.  It's now an hours cap, rather

19 than a number cap.

20   So I'll let the parties file a joint discovery letter

21 brief, but, just so the parties are aware, making that kind

22 of big change so close to the end of fact discovery seems to

23 me to be potentially problematic.  Plaintiffs have made a

24 motion to extend the close of fact discovery, and then,

25 obviously, if that motion is granted, then the situation

15

1  would be different, but that's just letting you know some of

2  my thoughts going into that.

3      Would Plaintiffs like to file a joint discovery letter

4  brief on the issue of whether there should be a numbers cap

5  or an hours cap?

6          MR. BENON:  Yes, your Honor.

7          THE COURT:  And when do you think you can get

8  that -- or the parties could get that on file?

9          MR. BENON:  Plaintiffs believe that could also be

10  on file by Thursday.

11          THE COURT:  Does Meta agree it could be on file by

12  Thursday?

13          MS. HARTNETT:  Your Honor, I may need to consult

14  with my -- I mean, in theory, yes, but we don't want to

15  withhold, you know, that from the Court.  It's just that it

16  seems less urgent than some of the other issues.  I mean,

17  they just refused to give us seven deponents, and if we can

18  at least start there, and then go somewhere else, but it's

19  just, from our perspective, leading to ongoing delays in

20  getting the case that currently exists litigated.  So that's

21  our concern.

22          THE COURT:  Okay.

23          MS. HARTNETT:  I mean, that's not to condition one

24  on the other.  We would be -- we, of course, are going to

25  promptly and responsibly respond to any proposed letter

16

1  brief they send to us, as we have been.  It's more just that

2  we want to make sure we're also not holding up getting

3  actually deponents in the case in the meantime.

4          THE COURT:  I understand.  Here's what I'm going

5  to do.  I'm ordering the parties to file a joint discovery

6  letter brief on this issue by Thursday, September 12, but

7  then, in the meantime, Meta, have you told Plaintiffs which

8  10 depositions you want to take?

9          MS. HARTNETT:  Yes, they've known this.  Yes,

10 August 23rd and 28th.  We gave them all the names by the

11 28th.

12          THE COURT:  Okay.  Then, notwithstanding that the

13 parties are going to file this joint discovery, the current

14 state of affairs is that each side is entitled to take 10

15 depositions, and so that's the current state of affairs, and

16 so, unless and until something changes, the parties need to

17 proceed with that, and so I believe Plaintiffs are obligated

18 to promptly provide Meta dates for all of their remaining

19 witnesses.

20     Plaintiffs, when can you provide Meta the dates for all

21 of the remaining witnesses, all of your remaining witnesses

22 that Meta wants to depose?

23          MR. SAVERI:  Your Honor, this is Joseph Saveri, if

24 I might.  I think we could do that in the next couple days,

25 surely by the end of the week.  One issue that we do have in

17

1  connection with that is, we've identified a little over 20

2  deponents, based on our review of the documents so far, and

3  the privilege log, we would put on our list.

4      We have asked Meta to identify which of those are

5  former employees and which are current employees, and with

6  respect to that first category, the former employees, who do

7  they represent?  Those data points are significant in

8  determining who we would put on that list.  We think it's

9  fair for them to apprise us of that before we provide them

10 the list.

11      THE COURT:  I mean --

12      MS. HARTNETT:  Your Honor, if I may, this is

13 Kathleen Hartnett.  We have provided that.

14      THE COURT:  Wait.  So, if I understand Plaintiffs'

15 argument, you want to know who is current employees and who

16 is former employees, and then, of the former employees, who

17 are represented by defense counsel.  Is that correct?

18      MR. SAVERI:  That's correct, because, if they're

19 not represented, we have to go through Rule 45.  Some of the

20 witnesses are, in fact, in France.  So, you know, these are

21 things we would want to know before we come down on the

22 names.

23      THE COURT:  Okay.  And, Meta, what was your

24 response that you were trying to make?

25      MS. HARTNETT:  My apologies for interrupting.  We

18

1  have provided Plaintiffs' counsel, at their request, a list

2  of all of the former and current employees, and our best

3  information about location.  We've told Plaintiffs that we

4  need to know who they're asking to depose, and we can then

5  make a determination about representation.  That's how the

6  process works.  But, you know, candidly, this is just an

7  excuse we've been hearing.  There's no basis for having a

8  list of 28 people to seek information about, to kind of hold

9  up providing names of deponents they actually want now.

10          THE COURT:  Well, let me ask Plaintiffs --

11          MR. SAVERI:  Your Honor --

12          THE COURT:  Hold up.  Hold up.  Plaintiffs'

13  counsel, do you want to depose all 28?

14          MR. SAVERI:  Yes, your Honor, based on what our

15  current information is, that's why we gave them the names.

16  Of course we're willing to meet and confer, but, in response

17  to that, the response was "You don't get any more than 10,"

18  or seven, or in addition to the ones we've identified.  So

19  we do want to take more.  We think the reasonable way to

20  proceed is to have a negotiation about those names and

21  identities.

22      And just on the last point, I think -- regardless of

23  where we are on the number, I do think it's fair, if we've

24  given them the names, for them to confirm whether they

25  represent the witnesses or not, because that affects timing

19

1   and whether we would pursue the depositions in the first

2   place, especially if we're limited by numbers in some

3   fashion.

4           THE COURT:  All right.  Meta, it does seem to make

5   sense that you should tell the Plaintiffs, for all 28

6   people, whether defense counsel represents them or not.

7   Whether Plaintiffs can actually take 28 depositions, it's a

8   separate issue, and may hinge on the outcome of the joint

9   discovery letter brief that's filed on that issue, but

10  that's different from just identifying the ones that defense

11  counsel represents.

12      Can Meta tell Plaintiffs, for the entire list of 28,

13  which former employees are represented by defense counsel by

14  Thursday, September 12?

15          MS. HARTNETT:  Your Honor, I'd need to consult

16  with my client, because we just -- there's a process whereby

17  they go through to, you know, formally give that notice to

18  the former employee.  It's likely they will represent all of

19  them.  This has not been the main point of hangup, I would

20  add.  It was that they first said they needed to know

21  locations, which we provided.

22      So I'm sure we can provide that even more quickly.  I

23  just -- I really would urge the Court to -- the idea that we

24  have to give them information about 28 different people

25  before they pick their next depositions under the current

20

1 schedule is just really holding us up in being able to

2 schedule the depositions, and then they're using that as a

3 reason to not have the current schedule. So I will check

4 with my client, but I think we will provide that

5 immediately, if we can, because we just want these

6 depositions to go forward.

7          THE COURT: Okay. Well, then, I order Meta to

8 provide, no later than September 12, the best information

9 available to it concerning which of the 28 are represented

10 by defense counsel, and I order Plaintiffs, no later than

11 September 12, to provide dates for depositions for all of

12 the remaining Plaintiff witnesses that Meta seeks to depose.

13          MS. HARTNETT: In addition --

14          MR. SAVERI: Your Honor, is --

15          THE COURT: Go head.

16          MR. SAVERI: Excuse me.

17          THE COURT: Go ahead.

18          MR. SAVERI: Your Honor, that last point was on

19 the depositions of Plaintiffs' witness to provide dates to

20 Meta of the dates for Plaintiffs' depositions. I may have

21 missed the antecedent. I'm sorry.

22          THE COURT: Okay. Sure. No problem. What I mean

23 is that Meta has told Plaintiffs' counsel that there are 10

24 depositions Meta wants to take, and Plaintiffs have not

25 provided dates for some of those witnesses, and so, no later

1  than Thursday, September 12, Plaintiffs must provide dates

2  for the depositions that Meta wants to take.

3          MR. SAVERI:  Got it.  Thank you, your Honor.

4          THE COURT:  And, Meta, I understood that you

5  wanted me to tell Plaintiffs to identify the 10 depositions

6  they would like to take.  I'm not going to force one side or

7  the other to take a deposition that they're not ready for or

8  that they don't want to take right away.

9     So, Meta, you've identified the 10 witnesses you want

10 to depose, and I'm ordering the Plaintiffs to provide dates

11 of availability no later than September 12, but it doesn't

12 sound like Plaintiffs are asking for dates for the remaining

13 witnesses they want to take, and the burden is on Plaintiffs

14 to decide which depositions they want to take and to ask for

15 those dates.

16         MR. SAVERI:  Your Honor, if I may.  It's Joseph

17 Saveri again.

18         THE COURT:  Go ahead.

19         MR. SAVERI:  As I requested, it's important for

20 us, with respect to the identification of the depositions

21 that we, as Plaintiffs, do want to take, to get the answer

22 to the information I requested a minute ago from Meta.  So

23 that would be very helpful, about formers and whether Meta

24 is representing them.

25         THE COURT:  And I've ordered them to provide you

22

1   the best information available to them no later than

2   September 12.

3           MR. SAVERI:  Great.  Thank you, your Honor.

4           MS. HARTNETT:  And, your Honor, if I may, just for

5   the record, we have provided all of the information they

6   requested about these deponents, including location, and we

7   said we would -- we can provide counsel information, too,

8   that was not identified as a major hangup until right now,

9   but we'll provide that, as I said, immediately, because we

10  need those dates.

11      And the one other request, if I may, is just for the

12  Plaintiffs' deposition dates.  You know, we also would like

13  those immediately, but no later than -- we appreciate your

14  order of Thursday.  From the Court's -- we would like those

15  dates to be in person and within the discovery period, which

16  is September.  Would the Court be open to adding those,

17  provide those to its order?

18          THE COURT:  Are you talking about depositions you

19  want to take or depositions --

20          MS. HARTNETT:  Yes.  Sorry.  This is -- yes.  For

21  our depositions of Plaintiffs, we would like them to provide

22  us dates in September, which is within the discovery period,

23  and in person, which is not what they've been doing for many

24  of the witnesses.

25          THE COURT:  Well, because the current fact

23

1  discovery cutoff is September 30th, I was assuming that

2  Plaintiffs would provide dates by then, but I guess maybe I

3  should make it explicit, because that's the fact discovery

4  cutoff.  Unless and until the fact discovery cutoff is

5  changed, then dates that are provided for depositions should

6  be within the fact discovery cutoff.

7      Let me turn to Plaintiffs about in person versus

8  remote.  What are your thoughts on that?

9          MR. SAVERI:  Your Honor, this is counsel for

10 Kadrey, Silverman, and Golden.  We're okay with in-person

11 depositions, but I'll defer to my co-counsel, who represents

12 the other clients.

13         MR. SWEATMAN:  Your Honor, this is Alex Sweatman.

14 I'm one of the attorneys that represents eight other

15 Plaintiffs in this case.  Six of their depositions were

16 noticed, again, as defense counsel noted, on August 23rd and

17 August 28th.  Since then, we've worked to provide dates to

18 Meta.  Dates were provided today.  The majority of them are

19 in-person dates, but some do occur after the close of fact

20 discovery.

21     Based on a meet-and-confer that we had with Meta's

22 counsel last week, I thought they were potentially amenable

23 to having some proceed after the close of fact discovery,

24 due to scheduling concerns.  With respect to the Zoom,

25 again, most of these could go in-person, depending on the

24

1 date.  We have two or three Plaintiffs that have various

2 commitments.  One is in Japan through September 23rd.

3     We have previously offered that Plaintiff to go within

4 the close of fact discovery, but Meta insisted on in person.

5 We're working to firm up another date for a Plaintiff that

6 has some serious family issues, with a gravely ill mother

7 that we recently learned about.

8     So we're willing to work with Meta, and we have been,

9 to get as many of these in before the close of fact

10 discovery, but some have -- some are likely to have to occur

11 after that date, your Honor.

12         THE COURT:  Well, no, that's not okay.  The fact

13 discovery cutoff is September 30th.  Meta has noticed these

14 depositions.  You have to provide them within the fact

15 discovery cutoff.  So I am ordering the Plaintiffs to

16 provide deposition dates by the close of fact discovery.  Of

17 course, if your motion to extend the close of fact discovery

18 prevails, then there will be a new close of fact discovery,

19 but right now you have to live within the existing deadline

20 to complete fact discovery, even if it might get changed

21 later.

22     So, Plaintiffs, you do need to provide dates within the

23 fact discovery period, and then the default is going to be

24 that if one side or the other wants to take an in-person

25 deposition, they are entitled to do so.  If both sides are

1  willing to stipulate that a deposition can be done remotely,

2  then you can do that, but I'm going to leave the default

3  that if either side wants it in person, you're entitled to

4  do that.

5      If there's a dispute about whether -- there's

6  circumstances surrounding any one particular witness, due to

7  their unique situation, should be done by Zoom, over the

8  objection of the other party, then please promptly file a

9  joint discovery letter brief.  So the default is going to be

10 that either side can insist on a deposition in person.  If

11 there's a dispute about whether a particular witness'

12 deposition should be by Zoom, then please promptly file a

13 joint discovery letter brief.

14      MR. SAVERI:  Your Honor, this is Joseph Saveri

15 again.  Two points I'd like to make.  If I'm counting right,

16 there are three clients that are represented by my office --

17 this is Joseph Saveri -- and eight by the others.  By simple

18 arithmetic, that's 11, which is over the 10 amount.  So I

19 just note right now that Meta doesn't appear to be bound, or

20 want to be bound, by the same numeric restrictions that they

21 seek to impose on us.  I guess we'll reserve that for

22 another day, but I just want to observe that.

23      Second, if there are witnesses in Japan, by the way --

24 and I know this because I've done a bunch of cartel cases

25 involving deponents in Japan -- the only place that

26

1  depositions can take place in Japan is within the U.S.

2  embassy or consulate, and video depositions are not

3  permitted.  So there may be a wrinkle there that we'll have

4  to sort through.

5           THE COURT:  Well let me --

6           MS. HARTNETT:  Your Honor, if I may?

7           THE COURT:  Meta, I think you were --

8           MS. HARTNETT:  Sorry.

9           THE COURT:  -- Meta was only asking to take 10

10 depositions.  Is that not correct?

11          MS. HARTNETT:  That's correct.  We have the three

12 that are Mr. Saveri's clients.  We've noticed six of the

13 eight clients of the other Plaintiffs' counsel, and then Ms.

14 TerKeurst.  So we have noticed 10, as the rules provide.

15          THE COURT:  Okay.  Thank you.

16          MR. SAVERI:  Okay.

17          MS. HARTNETT:  And on the Japan situation, that

18 person is returning to the United States on September 23rd,

19 so we can find a time to depose that Plaintiff after that.

20          THE COURT:  All right.  Thank you.

21     Plaintiffs, before we move on to the next topic, is

22 there anything more that you would like to address with

23 respect to the scheduling of depositions during this

24 hearing?

25          MR. BENON:  Yes, your Honor.  With respect to the

27

1  joint letter brief on the hours cap versus the number of
2  depositions -- and this is Holden Benon, by the way, for the
3  Plaintiffs -- the Plaintiffs would respectfully request an
4  enlargement of the page limit on that one.  It's likely
5  there will be -- we'll want to add some facts for your Honor
6  to support a request for 28 different depositions.  So we
7  think an enlargement of the page limits would make sense.
8          THE COURT:  And what do you think the new page
9  limit should be?
10         MR. BENON:  Five pages for each side, your Honor,
11 single space.
12         THE COURT:  Does Meta believe that five pages for
13 each side, and 10 pages total, would be sufficient to brief
14 the issue?
15         MS. HARTNETT:  Just to make sure I'm clear, this
16 is on the request for additional deposition number of times?
17         THE COURT:  It's on the request for whether there
18 should be an hours cap versus a numbers cap.
19         MS. HARTNETT:  Right.  We don't -- that's fine
20 with us.  I mean, I just -- perhaps maybe it makes sense to
21 have that brief due on Friday, rather than Thursday, given
22 that it's going to be longer.
23         THE COURT:  What do Plaintiffs think about that?
24         MR. BENON:  Your Honor, no, we'd object to that.
25 We've been discussing our list of deponents for over a week

28

1  now.  Defendant is familiar with our list of 28.  We don't
2  think it should wait until Friday, especially given the
3  circumstances.
4          THE COURT:  Okay.  Thank you.  Then I will keep --
5          MR. GHAJAR:  Your Honor, may I?
6          THE COURT:  Yes, go ahead.
7          MR. GHAJAR:  This is Bobby Ghajar.  Thank you.
8  We've been waiting on the other side for a number of issues,
9  and so we're moving expeditiously and we'll be prepared to
10 brief this issue.  If your Honor would indulge, we don't
11 know how they're going to justify the need or entitlement to
12 28 witnesses this late in the discovery period.  We've seen
13 very little from them regarding that entitlement.
14     It would seem logical to me that, if they can file and
15 serve us with a five-page brief on Thursday, if we could
16 have 24 hours to review it and understand the basis of their
17 argument for the 28 and the hours cap, which I will note
18 first was a proposal of 140 hours.  Then they revised it to
19 120 hours, and then we got a letter over the weekend that
20 suggested they wanted 180 hours.  So we're not even sure
21 what their position is.
22     So my request on behalf of Defendant Meta is that they
23 submit a five-page brief to us at noon on Thursday, and we
24 have at least 24 hours to consider what their argument
25 actually is, to be able to respond to it, as opposed to

29

1  guessing what hours cap and what justification they have,

2  and what witness list they have, because the list of

3  witnesses has changed over the last week as well.

4           THE COURT:  I --

5           MR. SAVERI:  Your Honor, this is --

6           THE COURT:  Hold on.

7           MR. SAVERI:  Excuse me.

8           THE COURT:  I'd prefer not --

9           MR. SAVERI:  Excuse me, your Honor.

10           THE COURT:  -- to micromanage the parties in that

11  way.  What I would like to do is just set a deadline to file

12  the joint discovery letter brief, and in my experience,

13  typically, counsel are professional enough that they can

14  work with each other regarding the exchanging of drafts, but

15  I don't like to get into micromanaging at that level of

16  detail.

17           MR. GHAJAR:  Fair enough, your Honor.  This is

18  bobby Ghajar.  Thank you.  Fair enough.  We would hope that

19  counsel would provide us with their position before the

20  filing deadline, and we'll work with them to effectuate

21  that.

22           MR. SAVERI:  Your Honor, it's Joseph Saveri.

23     Mr. Ghajar, it's 180.  We told you that.  That's our

24  position.

25           THE COURT:  Okay.  Well, I'm going to then keep

30

1   the September 12th deadline for the joint discovery letter
2   brief concerning whether it should be an hours cap versus a
3   numbers cap, but I'll grant Plaintiffs' request to enlarge
4   the briefing.  So the brief will be a total of 10 pages,
5   with five pages for each side.
6        Plaintiffs, before we move to the next issue, is there
7   more you wanted to discuss at this hearing concerning
8   depositions?
9            MR. SAVERI:  That's all for the Plaintiffs, your
10  Honor.
11           THE COURT:  And, Meta, is there more that you
12  wanted to discuss concerning depositions?
13           MS. HARTNETT:  Not at this time, your Honor.
14           THE COURT:  Then let's move to the third issue,
15  which is a letter brief that it looks like the parties will
16  get on file pretty soon.
17       Meta, can you outline for me the issue there?
18           MS. HARTNETT:  Yes, your Honor, and I think it
19  helps inform some of that Mr. Ghajar was just talking about
20  with the current brief.  So we currently are trying to file
21  with your Honor a joint letter brief regarding some
22  deficiencies in our perspective on Plaintiffs' responses.
23  We gave them a section of a joint letter brief on the 29th
24  of August, and we asked them to send their portion last week
25  so we could submit to the Court by September 6th.  We

31

1  thought that was more than reasonable.

2      I think originally they said they would need 14 days to

3  respond to us, and then they agreed -- or sort of proposed

4  doing it by September 10th, which is tomorrow, but only if

5  we agreed there would be no more edits, and that the letter

6  would be filed as is after they provide their response,

7  which, as you know, does not -- well, at least does not in

8  our experience -- the way that parties do that, we usually

9  are able to review and then revise each other's sides to

10  make it fully responsive and helpful to the Court.

11      So, even though -- and now they're arguing it's mooted,

12  because they continue to refuse to give us a timely response

13  to our discovery brief, and, meanwhile, you know, they've

14  asked -- they have their own brief that they want to submit

15  on some other issues that aren't before the Court today, and

16  they've asked us to turn that around in about a day.

17      So I think we're just -- again, this is kind of part of

18  a broader theme, which may or may not be, you know, fully

19  addressable by you, of kind of delaying things that are

20  needed to complete discovery so that there is a basis to say

21  we need more time, and in this case, we just want to get the

22  brief to the Court, and we want to be able to have a -- have

23  our portion be responsive.

24      So I think our main request is to allow us to have time

25  to not have the Plaintiffs file that unilaterally, but allow

32

1  us to revise it after we see what their portion is, and then

2  I also would request that, with respect to the other brief

3  that you ordered this week -- you have two other briefs --

4  that we at least -- I would -- if they're going to want to

5  file those briefs on Thursday, close of business, we would

6  like to get their drafts, you know, tomorrow, Tuesday, close

7  of business, so that we have time to actually respond to it

8  and make sure the parties can make conforming edits.

9         THE COURT:  So, as I indicated, I'm not inclined

10 to micromanage the exchange of drafts.  That shouldn't be

11 necessary.  Counsel should be able to work that out amongst

12 themselves.

13     As to this discovery letter brief, what are Plaintiffs'

14 thoughts about that?

15         MR. SAVERI:  Your Honor, Joseph Saveri.  We're

16 still standing by our agreement or willingness to give the

17 other side our portion of the brief by 5:00 o'clock

18 tomorrow, and if we can have a discussion about subsequent

19 iterations and having the parties whatever opportunity they

20 need to get to feel like they've had a full opportunity to

21 be heard.  We were actually trying to do it more quickly in

22 order to address the time concerns that Meta has.  I think

23 we can work it out, but, at least from our perspective, we

24 stand ready, willing, and able to give them our part of the

25 brief by 5:00 o'clock tomorrow.

33

1          THE COURT:  I see.  Well, then, I think I should
2   set a deadline for when this brief should be filed with the
3   Court.
4       Meta, what are your thoughts about September 11th,
5   Wednesday?
6          MS. HARTNETT:  We would prefer tomorrow, your
7   Honor, because we really believe that the delay so far has
8   been unreasonable, but, you know, tomorrow -- we will submit
9   it tomorrow if that makes more sense from the Court's
10  perspective.  There's really basically no -- especially
11  where they're demanding that we respond to their briefs in a
12  day, and otherwise we're being very responsive, there's just
13  no basis for them to get more delay here.
14         THE COURT:  I'm happy to set the deadline as
15  tomorrow.  However, your opponents have previewed for you
16  that they're going to send you their section at 5:00 p.m.
17         MS. HARTNETT:  Well, your Honor, we would
18  actually -- I know you don't -- it sounds like you don't
19  want to micromanage that, and I can imagine why not, but we
20  believe the briefs should be filed tomorrow, in which case
21  we'd ask for them to submit it to us in the morning, so we
22  have time to respond and get the brief actually filed
23  tomorrow.
24         THE COURT:  How about I order the parties to file
25  this joint discovery letter brief by tomorrow, September

34

1  10th, and instruct counsel to work professionally with each

2  other to effectuate that.  Can Meta live with that?

3          MS. HARTNETT:  We'd appreciate it.  Thank you,

4  your Honor.

5          THE COURT:  And can Plaintiffs all live with that?

6          MR. SAVERI:  Yes, your Honor.

7          THE COURT:  Okay.  Then I order the parties to

8  file this joint discovery letter brief by tomorrow,

9  September 10th, and I instruct counsel to work

10 professionally with each other to carry that out.

11    Meta, are there any other issues that you would like to

12 raise on this call today?

13         MS. HARTNETT:  No, your Honor.

14         MR. GHAJAR:  Yes, your Honor.

15         MS. HARTNETT:  Apparently, yes.  Sorry.  We

16 actually do have an issue, not mine, but Mr. Ghajar will

17 address the deposit materials.

18         MR. GHAJAR:  This is Mr. Ghajar, your Honor.  I

19 think this falls in the category of an issue that should, we

20 hope, be straightforward.  The very first RFP that we served

21 in the case asked Plaintiffs for their copyright materials.

22 Plaintiffs in copyright cases need copyright registrations.

23 To get a registration, you need to file an application.  You

24 need to submit a deposit copy to the Copyright Office.

25 There's correspondence with the Copyright Office.  We've

35

1 asked for that for months.

2     Fast forward to June 30th.  We had a meet-and-confer

3 call.  We have not gotten that information for a majority of

4 the Plaintiffs, and no Plaintiff had produced the entire

5 file history with the Copyright Office for the works at

6 issue in this complaint.

7     On July 30th, excuse me, we were told that Plaintiffs

8 would make a reasonable search of not only Plaintiffs'

9 files, but their agents', and the attorneys who are likely

10 to file copyright applications on their behalf.  It's been

11 well over six, seven weeks.  We have not received that from

12 the Plaintiffs.  We have been unable to get those materials

13 form the Copyright Office.  Much of it is not available.

14 The files are incomplete, and so we need to get it from

15 Plaintiffs.

16     And so we thought this was straightforward, and we

17 thought we were going to get a response, based on counsel's

18 representation, and we haven't, and so we would like the

19 Court's assistance to urge Plaintiffs to provide copyright

20 file histories for each of the asserted works to us right

21 away.

22          THE COURT:  And let me turn to Plaintiffs.  What

23 are your thoughts?

24          MR. BENON:  Your Honor, this is Holden Benon on

25 behalf of Plaintiffs.  As my colleague on the other side

36

1  pointed out, this did seem like a straightforward issue when

2  this was first raised in June.  We thought the material

3  would have been accessible through the Copyright Office.  It

4  turned out through our investigation perhaps they are not.

5  We also thought these materials may be in the possession,

6  custody, or control of our clients, and it turns out they

7  are not.

8      So this has evolved to a more complex dispute of

9  whether -- who -- which of our Plaintiffs' agents or other

10 people in our Plaintiffs' circle possess these materials,

11 and whether those persons are, in fact, within the control

12 of our Plaintiffs.  We're talking about publishers, literary

13 agents, film, TV agents.  So this is a volatile and much

14 more complicated dispute, your Honor, that we think would be

15 appropriately resolved through a joint letter brief.

16          THE COURT:  And when do you believe the parties

17 can get that joint letter brief on file?

18          MR. BENON:  Thursday or Friday, your Honor.

19          MR. GHAJAR:  I'm sorry.  What date did Mr. Benon

20 say?

21          MR. BENON:  Thursday or Friday of this week.

22          MR. GHAJAR:  Yes.  Meta is prepared to move right

23 away, and, just for the record, and you'll read this in our

24 submission, your Honor, Plaintiffs told us they would go and

25 ask the agents and attorneys.  It wasn't whether they would.

37

1  They told us they would, and they'd get back to us.  They

2  never did.

3       And so we'll explain that to the Court, but we're a bit

4  at a loss as to why we don't have those materials from

5  Plaintiff, after many, many, many attempts and

6  representations from them.  We're prepared to brief this by

7  tomorrow.

8            THE COURT:  Okay.  Then I'm going to order the

9  parties to file a joint discovery letter brief concerning

10 these copyright materials by Thursday, September 12.

11      Plaintiffs, are the five-page limits, two and a half

12 pages per side, sufficient, or do you want more space?

13           MR. BENON:  That's sufficient for this dispute,

14 your Honor.

15           THE COURT:  And, Meta, do you think the five pages

16 are sufficient?

17           MR. GHAJAR:  That is sufficient, your Honor.

18           THE COURT:  Okay.  Well, thank you.

19      Then I order the parties to file a joint discovery

20 letter brief, not to exceed five pages, by Thursday,

21 September 12, concerning these copyright issues.

22           MR. GHAJAR:  Thank you, your Honor.

23           THE COURT:  Meta, was there anything else you

24 wanted to raise in this call?

25           MR. GHAJAR:  Nothing from me, your Honor.

38

1    MS. HARTNETT:  No, that's all from Meta.  Thank

2 you.

3    THE COURT:  All right.  Thank you.

4    And, Plaintiffs, are there further issues that you want

5 to raise on this call?

6    MR. SAVERI:  This is Joseph Saveri, your Honor.

7 This is one issue.  We've received from Meta an 1,000-line

8 privilege log.  The privilege log, as I understand it,

9 contains both fully -- identification of documents that have

10 been fully withheld, as well as materials that have been

11 withheld in part, in other words, redacted.  That privilege

12 log doesn't have any Bates numbers for the redacted

13 documents.  So among the things we're challenged by right

14 now is trying to match up that privilege log, which also has

15 a number of just basic flaws with the designation, with the

16 production.

17    So what I would ask today is, can you order -- or maybe

18 we have to submit briefs on this -- whether the Defendants

19 have to provide a privilege log that complies with the

20 Burlington Northern and the other Ninth Circuit standards,

21 as well as contains a specific Bates number identification

22 of the redacted documents, so that we don't have to hunt

23 through the production for them?

24    UNIDENTIFIED SPEAKER:  Yes, and we've raised --

25 excuse me.  I'll be quiet, your Honor.  I apologize.

39

1          THE COURT:  Can you remind me, do the parties have

2   a stipulated ESI (phonetic) order in this case?

3          MR. SAVERI:  They do, your Honor, but it's silent

4   with respect to privilege logs.

5          THE COURT:  Okay.  Thank you.

6      Sorry, Mr. Saveri.  I didn't mean to cut you off.

7   Please continue.

8          MR. SAVERI:  Your Honor, I don't have -- I'll stop

9   there.  Thank you.

10          THE COURT:  All right.  Let me turn to Meta.  What

11  are your thoughts on this issue about Bates numbers for

12  redacted documents?

13          MR. GHAJAR:  I'll attempt to address this.  This

14  is Bobby Ghajar.  This is an issue that was raised on Friday

15  night, so we've barely had a chance to review their letter,

16  let along discuss it and examine whether there's anything

17  behind it.  I'd like an opportunity to confer with the team,

18  with the client, address the letter.  This is a brand-new

19  issue the parties have not discussed.  I don't know their

20  entitlement to Bates numbers.  I don't know what problems

21  they have with the privilege log.

22      I will note that, on the topic of privilege logs, nine

23  out of 12 of the Plaintiffs have not produced one, and so,

24  as we discuss privilege logs, we'd like a response from

25  Plaintiff as to why they agreed to a mutual exchange and a

40

1  majority of them have not produced a privilege log.

2       I would suggest on the issue that Mr. Saveri raised

3  that the parties meet and confer, and agree on a time to

4  raise an issue with the Court, if it is ripe for the Court's

5  consideration.  Right now it isn't, and I cannot provide the

6  Court with any more context, since it is such a fresh issue

7  and we're still looking into the letter we received on

8  Friday night.

9            THE COURT:  Thank you.

10      Let me turn to Plaintiffs.  Is it correct that this

11  issue was first raised by you on Friday?

12           MR. SAVERI:  It is, your Honor, and I just -- and

13  it's fine with us if we meet and confer.  I guess I would

14  just observe that we extended that deadline to -- we gave --

15  Meta asked for an extension to provide the privilege log,

16  which we did, because that's what we do.  We give extensions

17  when they're asked, and that hasn't been, candidly, the case

18  in this case, and one of the consequences of it, I think, is

19  one of the discussions we're having about timing.

20      So the fact that we have a privilege log like this is a

21  substantial impediment for our preparation for depositions,

22  including the identification of witnesses as well as the

23  preparation for the depositions we are going to take.  So it

24  presents a challenge, and in the ordinary course, that's one

25  of the reasons for extending these deadlines.

41

1      But, nonetheless, to go back to the question you asked

2  me, your Honor, I am happy to meet and confer with Mr.

3  Ghajar about this issue.

4           THE COURT:  Okay.  Thank you.

5      It sounds like this issue isn't ripe for me to do

6  anything with it, because the parties need to meet and

7  confer further.  So I'm going to instruct the parties to

8  meet and confer with respect to the absence of Bates numbers

9  in Meta's privilege log for redacted documents.  If the

10 parties are able to resolve the dispute, then great, and if

11 you're not able to resolve the dispute, then please promptly

12 file a joint discovery letter brief.

13          MR. SAVERI:  Your Honor, it's Joseph Saveri.

14 That's fine.  Thank you.  We don't have anything else to

15 raise.

16          THE COURT:  Okay.  All right.  Well, thank you,

17 Counsel.  This discussion has been very helpful, and I look

18 forward to receiving the parties' joint discovery letter

19 briefs.  Have a good afternoon, everyone.

20          ALL:  Thank you, your Honor.

21          THE CLERK:  Thank you, everyone.  Off the record

22 in this matter.

23      (Proceedings adjourned at 1:53 p.m.)

24

25

42

<u>1                    CERTIFICATE OF TRANSCRIBER</u>

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17          Echo Reporting, Inc., Transcriber

18             Wednesday, September 11, 2024

19

20

21

22

23

24

25