September 12, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC
        **Joint Discovery Letter Brief re: Plaintiffs' Motion to Extend Deposition Limits**

Dear Magistrate Judge Hixson:

The Consolidated Plaintiffs in the above-captioned action ("Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta"), pursuant to the Court's instructions at the September 9, 2024 telephonic discovery hearing (Tr. 16:4-6), jointly submit this letter brief regarding Plaintiffs' request to expand the cap on number of depositions. The Court ordered that each party's submission could be up to five pages.

Honorable Thomas S. Hixson
September 12, 2024
Page 2

I.     PLAINTIFFS' POSITION

Pursuant to Fed. R. Civ. P. 30(a)(2), Plaintiffs respectfully request leave of Court to notice 35 party depositions, exclusive of third-party depositions conducted pursuant to Rule 45. In the alternative, Plaintiffs request 180 cumulative hours of deposition testimony.

    **A. Sufficient Reasons Exist to Expand the Cap**

Rule 30 provides a presumptive limit of ten depositions per party. To exceed this limit, a party must obtain a stipulation, or seek leave of Court. Fed. R. Civ. P. 30(a)(2)(A)(i). Rule 30, in turn, directs the Court to apply the standards set forth in Federal Rules of Civil Procedure 26(b)(1) and 26(b)(2) in determining whether to grant such leave. "Importantly, Rule 30 lists no other standard—apart from those principles enumerated in Rule 26—governing requests for additional depositions." *Pitkin v. Corizon Health, Inc.*, 2018 WL 1336047, at *1 (D. Or., Mar. 13, 2018). "The party seeking leave of the court to conduct additional depositions under Rule 30 bears the burden of showing sufficient reasons, consistent with the principles set forth in Rule 26(b)(1) and (2), to justify an extension of the presumptive limit." *Id*. at *2.

Courts in the Ninth Circuit are split on the appropriate standard for showing "sufficient reasons." For example, the *Pitkin* court observed:

> [T]he Federal Rules of Civil Procedure do not require a moving party to make a particularized showing of necessity when seeking leave to take additional depositions. *See* Fed. R. Civ. P. 30(a)(2). Furthermore, imposing such a requirement would unduly increase the burden on a moving party. The plain language of Rule 30 states, inter alia, "the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." *Id*. There is no mention of necessity or a particularized showing in Rule 26. . . . Accordingly, plaintiffs' only burden is to show sufficient reason, based in the principles set forth in Rule 26(b)(1) and (2)[.]

*Id*. at *2 (citing *Laryngeal Mask Co. Ltd. v. Ambu A/S*, 2009 WL 10672436, *3–4 (S.D. Cal. July 17, 2009) (stating: "[t]he plain language of the Rules and the Advisory Committee Notes do not require a particularized showing" when applying Rule 30(a)(2)). As Meta notes, some district courts have required a particularized showing. *See, e.g., Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008) ("In the present case—a run-of-the-mill patent case with one plaintiff and one defendant, and counterclaims—Atrua failed to make a particularized showing in its opening papers as to why additional depositions are necessary. This is not a complex class action with numerous plaintiffs and defendants . . .").

Regardless of which standard is applied, however, Plaintiffs can establish sufficient need. Unlike the "run-of-the-mill" *Authentec* case relied on so heavily by Meta (see below), this is a complex class action addressing cutting-edge artificial intelligence technology and the alleged infringement of hundreds of thousands of copyrights, where damages run into the billions of dollars. ***The outcome of this case could help set the rules for a generation***. Given the stakes, an expansion of the deposition limits is proportional. *See Perez v. Indian Harbor Ins. Co*., 4:19-cv-07288-YGR-

TSH, Dkt. 61, at 1 (Discovery Order) (N.D. Cal., Jul 27, 2020) ("Plaintiff is suing for $267 million, so lifting the cap of 10 depositions is proportional to the needs of the case").

The case law cited by Meta is distinguishable. For example, in *Jacobsen v. Katzer*, 2009 WL 10697750, at *2 (N.D. Cal. June 12, 2009) the court denied relief on the basis that actual damages were a mere $1,200. And *Jones v. Sunbelt Rentals, Inc.*, 2023 WL 10691302, at *4 (N.D. Cal. Nov. 16, 2023) is a motor vehicle collision case where a defendant sought to depose fourteen "CHP officers and first responders" but offered no details or reasons why it needed to depose each of those individuals. *Id.* Unlike *Jones*, Plaintiffs did their homework. Below, Plaintiffs articulate particularized, non-duplicative reasons why each proposed deponent should be questioned.[1]

### 1. Meta Included 12 Witnesses in Its Disclosures.

In its amended Rule 26(a) disclosures dated May 29, 2024, Meta identifies 12 Meta employees "believed to have knowledge of facts relevant" to its defenses. See Rule 26(A)(1)((A)(i)). Even if Plaintiffs hypothetically limited their deponent list to the employees hand-selected by Meta to best present Meta's defense (which, as noted below, is not tenable), Meta's refusal to agree to expand the cap means that Plaintiffs are precluded from deposing at least two of these central defense witnesses—or three of them, if one includes the 30(b)(6) deposition in the default-rule cap. For this reason alone, the limit should be expanded. Plaintiffs should be allowed to depose these individuals in part to ensure there are no surprises at trial. *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 473 (D. Del. 2006) ("It is known that this court requires the **discovery** process to be a meaningful one, so that there should be no surprises at trial.")And while there is arguably no *automatic* right to depose all individuals included in defendant's disclosures, Plaintiffs are entitled to take the deposition of any witness who will offer testimony in this case. Meta has disclosed that each of these twelve have *unique* knowledge and potentially relevant information, and (with one exception) all have different job titles and roles bearing in materially different ways on this case:

> **Ahmad Al-Dahle** (VP Gen AI): Information and documents concerning background, development, release, and use of Llama 2 and 3 by Meta; integration of Llama into products at Meta; oversight of Generative AI ("Gen AI") team, including regarding Llama 2 and Llama 3.
>
> **Amrish Acharya** (Finance Director): Information and documents concerning financial information regarding, and investment in, the Llama models.
>
> **Angela Fan** (Research Scientist): Information and documents concerning background,

---

[1] While a court sometimes will not consider a request to take more than 10 depositions until those have been taken, several courts, including this Court, have expanded deposition limits prior to the first deposition. *See*, *Perez* at *1 (Hixson, J.); *Brown v. Google*, 4:20-cv-03664-YGR-SVK, Dkt No. 230 at 27-30 ("Dispute P17," chart with joint briefing) (N.D. Cal. Aug. 3, 2021); Dkt. No. 242-1 (resolving Dispute P17, allowing 20 depositions in *Brown* and 20 in related *Calhoun* action). As in *Perez* and *Brown*, the Parties would benefit from knowing the cap in advance, and thus could more intelligently and fairly select deponents and more efficiently manage the deposition schedule.

development, and use of Llama 2 and 3 by Meta; integration of Llama into products at Meta.

**Aurélien Rodriguez** (Former Software Engineering Manager): Information and documents concerning background, development, and use of Llama 1, 2, and 3 by Meta; management and oversight of development of Llama 1 and Llama 2; benchmarking tests.

**Chaya Nayak** (Director, Product Management): Information and documents concerning background, development, and use of Llama 2 and 3 by Meta; risk and safety policies related to Llama 2 and 3 and implementation of the same; integration of Llama into Meta products.

**Hugo Touvron** (Research Scientist): Information and documents concerning background, development, and use of Llama 1, 2, and 3 by Meta, including model design architecture, and fine-tuning.

**Joelle Pineau** (VP, AI Research): Information and documents concerning background, development, and release of Llama 1; Llama 1 open license approach; artificial intelligence and neural networks; natural language processing; large language models; oversight of Fundamental AI Research ("FAIR") team, including regarding Llama 1.

**Josh Ginsberg** (VP, Corporate Marketing): Information and documents concerning marketing of the Llama models.

**Melanie Kambadur** (Research Engineering Manager): Information and documents concerning background, development, and use of Llama 2 and 3 by Meta, including dataset selection and risk mitigations.

**Mike Clark** (Director, Product Management): Information and documents concerning development of Llama 2 and 3; risk and safety policies related to Llama 2 and 3 and implementation of the same.

**Sergey Edunov** (Director, AI Research): Information and documents concerning background, development, and use of Llama 2 and 3 by Meta; management and oversight of development of Llama 2 and Llama 3.

**Yann LeCun** (Chief AI Scientist): Artificial intelligence and neural networks; natural language processing; large language models, including training thereof; Meta's decision to release Llama models under an open license.

### 2. Plaintiffs Seek to Depose Additional Meta Employees Not Hand-Selected by Meta in its Disclosures

Of course, it would be unfairly prejudicial if Plaintiffs were only allowed to depose those employees hand-selected by Meta in its disclosures. The Rule 26 disclosures are intended only to

identify witnesses to support Meta's claims and defenses. *See* Rule 26(a)(1)((A)(i) Unless the default cap is increased, noticing any of the deponents identified below would necessarily come at the cost of not forgoing the deposition of a critical defense witness.

Based on their review of Meta's document productions and Plaintiffs' own independent research, Plaintiffs have identified a limited number of additional employees that are likely to have important knowledge of key facts. As depositions progress, of course, Plaintiffs can remove some of these if warranted. But setting a fixed cap now will allow Plaintiffs to make decisions on appropriate alternatives without burdening the Court with another motion for leave. For now, Plaintiffs wish to depose the following individuals (in addition to those listed above):

**Alex Bosenberg**. referenced in Meta_Kadrey_0045315, which shows that Bosenberg had independent interactions with various fiction book publishers for the purpose of negotiating licenses for the copyrighted data at issue here.

**Arun Rao** is a key product manager for Meta machine learning and is on important documents in the production regarding use cases. Kadrey_Meta_00063884. Meta's intended uses for the product are integral to the fair use analysis.

**Eleanora Presani** is Program Manager for Responsible AI, who expressed concerns about using pirated materials in Meta's A.I. Meta_Kadrey_00074729.

**Eugene Nho** is Director of Product, Generative A.I., involved in the acquisition of data for training LLMs.

**Lukas Blecher** is a Machine Learning Engineer, and was involved in the processing of relevant and high-quality data from books to train Meta's LLMs.

**Luke Zettlemoyer** is a Research Manager and Professor; Plaintiffs understand he has unique knowledge about Meta's A.I. development.

**Mark Zuckerberg**[2] is Meta's founder and CEO, and Plaintiffs understand that he is familiar with Meta's choices of datasets and the decision to make Llama "open source." Mark Zuckerberg also appears throughout Meta's production and, based on Plaintiffs' review of the production, exercised ultimate control and authority over the development and distribution of the Llama models. Further, according to reporting by the New York Times, Mark Zuckerburg "demanded a solution" to the scarcity of available data dilemma, which ultimately lead to Meta's decision to take copyrighted data without permission. New York Times, *How Tech Giants Cut Corners to Harvest Data for A.I.*, (Apr. 6, 2024) https://www.nytimes.com/2024/04/06/technology/tech-giants-harvest-data-artificial-intelligence.html.

---

[2] Meta raises the "apex doctrine" below with respect to Mr. Zuckerberg, in a new argument added minutes before filing, without raising the issue in any meet and confer. Plaintiffs disagree with Meta's apex doctrine argument in substance, but it is not relevant to the relief sought here.

> **Nikolay Bashylkov** is a Research Engineer who headed the downloading and parsing of LibGen, a highly relevant dataset used to train the Llama models. Meta_Kadrey_00065244.
>
> **Nisha Neo** is a Marketing and Communications director and is involved in how Meta frames public-facing business and marketing decisions, which include Meta's narrative surrounding the use of pirated copyrighted materials to train their technology.
>
> **Xavier Martinet** is a Research Engineer who is familiar with Meta's decision to use pirated materials rather than paying for them. Meta_Kadrey_00074729. Martinet prepared an independent analysis on, and he proposed a unique strategy for, obtaining access and ostensible rights to those materials. *Id.*

In addition to the reasons mentioned above, Plaintiffs' request is also grounded in the document counts and statistics on Meta's productions (totaling approximately 16,000 documents as of the date of this filing). According to Plaintiffs' count, over 40 Meta employees appear on 6,000 documents or more and over 65 Meta employees appear on 1,000 documents or more.

### 3. Plaintiffs Seek a Rule 30(b)(6) Deposition

Plaintiffs seek a Rule 30(b)(6) deposition and have so notified Meta; if the Court were to count this deposition against the default-rule, that means yet another key witness identified above is likely to avoid giving testimony, in light of Meta's right to select their own corporate representative(s) to testify.

### 4. Plaintiffs Seek to Depose a Limited Number of Third Parties

Plaintiffs also seek to depose several non-party witnesses, including former employees of Meta, pursuant to Rule 45. These individuals likewise possess non-duplicative and non-cumulative information. To date, Plaintiffs have identified former employees **Guillaume Lample** (knowledge of the books in Meta's training set); **Moya Chen** (knowledge of the downloading and processing of LibGen1 and LibGen2); **Susan Zhang** (knowledge of pre-training on books, impact on models when training on books versus not; and ethical considerations); and **Edouard Grave** (knowledge of competitors' use of books as training data). Plaintiffs also are considering deposing an employee of EleutherAI (**Stella Biderman**) because of her unique knowledge of The Pile, which includes the highly relevant Books dataset. Plaintiffs may also seek to depose **Tim Dettmers**, depending on the outcome of the current privilege dispute related to his posts on Discord.

### B. In the Alternative, Plaintiffs Seek a 180-hour cap on Deposition Testimony

As this Court observed, "Rule 30's default provisions can be a little clunky. They seem to assume that a limited number of people are going to have relevant testimony (10 per side), but that each person is going to know a lot (7 hours of record time)." *Perez*, *supra* (Hixson, J.). This Court fashioned a common-sense remedy: an hourly cap, rather than a cap on number of depositions, which the Court noted would "promote efficiency." *Id.* Plaintiffs are amenable to an hours-based cap as an alternative to their request for 35 depositions, and respectfully propose 180 hours.

II. **META' POSITION**

Despite discovery on their one claim in this case opening **ten months ago**, and having taken **no depositions** to date, Plaintiffs move just **18 days before** the close of fact discovery to massively expand the discovery limits in this case—from the presumptive limit of ten total depositions per side under which the parties have operated for months, to **35 party depositions** or **180 deposition hours** per side, and unlimited third-party and Rule 30(b)(6) depositions. As the Court has observed, it "must manage discovery under the existing deadline[s]," Dkt. 139 at 1, and Plaintiffs' request is plainly impossible under the Court-ordered schedule. More fundamentally, Plaintiffs' eleventh-hour request should be denied because it is based on curiosity rather than a particularized showing of need or good cause—as required to obtain relief. Plaintiffs' failure to use the nearly year-long discovery period to properly conduct depositions should not be rewarded, particularly absent a showing of specified need for *additional* depositions when they have taken *none* so far.

### A. Plaintiffs Must Make Multiple Showings To Obtain Their Requested Relief.

Federal Rule 30(a)(2) limits each side to a total of ten depositions, absent leave of court. *See* Fed. R. Civ. P. 30(a)(2) (providing that "[a] party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken under this rule" per side). "A party seeking to exceed the presumptive number of depositions must make a ***particularized showing of the need*** for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.,* 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) (emphasis added); *accord Martensen v. Koch*, 2013 WL 11316743, at *1 (N.D. Cal. Jun. 19, 2013).[3]

In assessing whether there has been a particularized showing of need, courts assess the following factors: "whether (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Authentec*, 2008 WL 5120767, at *1.

Moreover, where, as here, a party has failed to exhaust the ten depositions allotted—and, indeed, has taken **no** depositions at all—relief is generally unwarranted. *See, e.g., id.* at *1 (explaining that "courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right," and that "Rule 30(a)(2) contemplates that a party has already taken at least some of its ten depositions before a motion is filed seeking leave of court for a proposed deposition that would result in more than ten depositions being taken under this rule"); *Martenson*, 2013 WL 11316742, at *1 (same).

Finally, under this Court's rules, "[d]iscovery requests that call for responses or depositions after

---

[3] Plaintiffs cite a couple of outlier cases (none from this District) in claiming that they need not make a particularized showing of need. But as Plaintiffs' own cases make clear, "the majority of courts to have considered the issue" require a particularized showing of need. *Woodall v. Walt Disney Co.*, 2023 WL 8044444, at *1 (C.D. Cal. Sept. 25, 2023); *accord Jordan v. Wonderful Citrus Packing LLC*, 2019 WL 176264, at *2 (E.D. Cal. Jan. 11, 2019).

Honorable Thomas S. Hixson
September 12, 2024
Page 8

the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown." Civ. L.R. 37-3. Where, as here, a party seeks to expand the number of depositions so as to require depositions after the discovery cutoff, it must show "good cause" for the relief it seeks. *O'Connell v. Celonis, Inc.*, 2023 WL 5022273, at *2 (N.D. Cal. July 21, 2023). "Good cause" requires a showing of diligence by the party seeking to extend the schedule. *See, e.g.*, *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (if the moving party "was not diligent, the inquiry should end")).

### B. Plaintiffs Have Failed To Make A Particularized Showing Of Need Or Otherwise Meet The Requirements For The Relief They Seek.

Plaintiffs have failed to meet the above requirements for their requested 35 depositions or 180 deposition hours: they have made no particularized showing of need; they have not yet taken *any* depositions; and they have failed to show "good cause" for the expansion of the case schedule.

#### 1. Plaintiffs' Lack Of Diligence And Shifting Proposals.

As Meta explained in its recently filed opposition to Plaintiffs' motion to extend all case deadlines, Plaintiffs have failed to diligently conduct discovery in this matter pursuant to the deadlines ordered by the Court, including with respect to depositions. *See* Dkt. 137. Discovery in this case opened in November 2023, and in January 2024, the Court bifurcated merits and fact discovery and ordered a fact discovery cutoff for the merits stage of September 30, 2024, observing that a more extended schedule would be "too elongated" in light of bifurcation. *See id.* at 2:8–13. The Court ordered no deviation from the default rule of ten depositions per side. *See* Dkt. 87. Meta served initial disclosures listing witnesses in December 2023 and disclosed all custodians to Plaintiffs by May 2024. By July 15, Meta had substantially completed its document production. *See* Dkt. 137 at 3:1-4. Yet, Plaintiffs, by choice, have taken *zero* depositions to date. *See id.* at 4:23. They have noticed only three depositions (two of Meta witnesses, and one third-party notice since withdrawn), and they have refused to identify the remaining Meta witnesses they intend to depose. *See id.* at 3:9–18.[4] They also have refused to provide a Rule 30(b)(6) notice to Meta despite its requests, and despite two Meta depositions next week. *See id.* at 3:18–20.

Instead of proceeding diligently and in good faith to schedule the ten depositions to which they are entitled, since late August, Plaintiffs instead have insisted on providing lengthy, shifting lists of potential deponents to Meta—apparently in an effort to make a record that they need more time to conduct discovery, while squandering the time they have had. First, on August 23, 2024—without identifying any Meta deponents—Plaintiffs sent a letter to Meta that proposed expanding their deposition entitlement from 10 depositions to **140** hours. *See* Dkt. 137-1, ¶ 23. Then, on August 29, 2024, Plaintiffs sent a list of 25 proposed depositions to take, in addition to three others they had previously identified, and purported to "reserve all rights with respect to seeking additional depositions." *Id.*, ¶ 23 & Ex. L. Plaintiffs thereafter proposed to add two deponents to their August 29 list, but to reduce the proposed number of deposition hours to **120**. *Id.* at ¶ 25.

Finally, on September 10, 2024, Plaintiffs sent Meta its current proposal: ***35 depositions*** or ***180 hours*** per side, ***exclusive of*** Rule 30(b)(6) testimony and third-party depositions. *See id.* at ¶ 2 &

---

[4] Plaintiffs served a deposition notice for third-party Stella Biderman of EleutherAI on August 30, 2024, but informed Meta on September 10 that this deposition was "continued" indefinitely.

Ex. A.⁵  This proposal included a list of **23** current Meta employees, **five** former Meta employees, an additional third party, and a Rule 30(b)(6) deposition (without delineating topics from which Meta could identify persons most knowledgeable), and also purported to "reserve the right to name additional deponents as discovery warrants, so long as within any enlarged cap approved by the Court." *Id.*  Plaintiffs provided no explanation of any specific or unique need that would be served by this laundry list of potential witnesses.  *Id.*  And, despite that fact discovery closes in 18 days, **none** of these witnesses have yet been deposed and only two are noticed for deposition.

As this record makes clear, Plaintiffs have taken a delinquent, shifting, and scattershot approach to identifying deponents, with no clear basis for their requested massive expansion of depositions.  Plaintiffs' constantly shifting positions as to the number of hours and depositions they need shows that, in fact, they do not actually know what they want or why they want it.  Unfortunately, it appears that Plaintiffs may be seeking an unreasonable expansion of the deposition limit in the hope that the Court indulges a less unreasonable limit.  But Plaintiffs fail to show entitlement to **any** expansion; their effort should thus be rejected in full.

## 2. Plaintiffs Have Made No Showing Of Need, Precluding Relief.

Plaintiffs have wholly failed to make a particularized showing of need for any depositions beyond ten.  As Plaintiffs concede, 12 of the Meta witnesses whom Plaintiffs seek to depose were identified in Meta's Rule 26 disclosures in December 2023 or otherwise disclosed as custodians by May 2024.⁶  Though Plaintiffs speculate to the contrary, Meta took care to identify as ESI custodians and witnesses the senior Meta employees and executives most likely to have knowledge of relevant issues and non-duplicative documents responsive to Plaintiffs' requests.  *See* Dkt. 137 at 2:18–22.  Because Plaintiffs have, to date, deposed **none** of these individuals (despite a ten-month discovery period and the looming September 30 discovery cutoff), they have no basis, other than speculation, to claim that they cannot obtain all of the remaining information they need in ten full-length depositions.  Among other things, there is no basis for Plaintiffs' speculation that all individuals on Meta's disclosures have "*unique* knowledge" and "roles bearing in materially different ways on this case."  As Plaintiffs acknowledge, "there is no *automatic* right to depose all individuals included in defendant's disclosures."  Rather, as in all complex cases, some individuals who have relevant information or appear on documents will not be deposed, as "[t]he number of potential witnesses does not justify deposing everyone." *In re At Home Corp.*, 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) (denying motion to permit 21 depositions where Rule 26 disclosures identified 15 witnesses).  Nor have Plaintiffs made any showing of need for depositions of individuals beyond those on Meta's disclosures; to the contrary, Plaintiffs acknowledge that such depositions may not be ultimately "warranted."  It has never been a secret that many individuals at Meta have worked

---

⁵ Plaintiffs are wrong that third-party and Rule 30(b)(6) depositions do not count against the ten allotted depositions.  Fed. R. Civ. P. 30(a)(1) contemplates that a "deponent's attendance may be compelled by subpoena under Rule 45," which simply provides the method for commanding a third-party's attendance, not a means of expanding the number of depositions.  *See also Nevarez v. Forty Niners Football Co., LLC*, 2018 WL 5023370, at *2 (N.D. Cal. Oct. 16, 2018) (considering third-party depositions within the 10-deposition limit in determining whether to expand the limit").
⁶ These include Ms. Kambadur, Mr. Touvron, Mr. Rodriguez (former), Mr. Edunov, Mr. Acharya, Mr. Ginsberg, Ms. Fan, Ms. Pineau, Mr. Clark, Mr. Al-Dahle, Ms. Nayak, and Mr. LeCun.

on its large language models. Plaintiffs do not even attempt to show that any of them, let alone **35** of them, have critical, proportional, non-duplicative information.[7]

As supposed support, Plaintiffs cite *Perez v. Indian Harbor Insurance Co.*, Dkt. 61, No. 4:19-cv-07288-YGR (N.D. Cal. Jul. 20, 2020), but that decision is no help to Plaintiffs. In *Perez*, this Court ordered that each side was "not limited to 10 depositions, but is instead limited to 70 hours of deposition time," because for most witnesses "it seems inconceivable that a deposition could take anywhere near seven hours." *Id.* The Court specifically noted that *Perez* was "not a situation where we need to expand the total amount of deposition time in the case." *Id.* Here, unlike in *Perez*, Plaintiffs do not propose merely to conduct depositions within a 70 hours cap.[8] Rather, they seek **180 deposition hours** (more than two-and-a-half times the hours permitted in *Perez*) or **35 depositions** plus a Rule 30(b)(6) deposition of Meta and unlimited third-party depositions. Plaintiffs have no authority for such a sweeping departure from the Rules.[9]

*Jones v. Sunbelt Rentals, Inc.*, 2023 WL 10691302 (N.D. Cal. Nov. 16, 2023), is instructive. *Jones* denied Sunbelt's request to depose 40 additional witnesses because Sunbelt failed to make a particularized showing of need. *Id.* at *3–5. Specifically, the court noted that Sunbelt failed to explain why the additional depositions were necessary, would avoid duplicative discovery, or would be cost-effective. *Id.* at *4. Likewise here, where nearly all of the witnesses Plaintiffs seek to depose are current or former Meta employees who worked on artificial intelligence-related matters at the company, and where Plaintiffs have no reasoned basis to claim that they will not get the information they need from the ten depositions to which they are entitled, deposing all of Plaintiffs' proposed witnesses would be duplicative, burdensome, and anything but cost-effective.

Finally, the completely unsubstantiated benefit that Plaintiffs may gain from more than tripling the deposition limit is also significantly outweighed by the burden and expense on Meta. In addition to the baseline burden imposed by every additional deposition, several of the Meta employees identified by Plaintiffs are located outside of the United States, and others are high-level employees with limited availability. There is simply no basis to impose such burdens in this case—which involves a single claim for copyright infringement brought by twelve Plaintiffs.[10] Any expansion

---

[7] Notably, Meta will not be deposing all twelve Plaintiffs under the 10-deposition-per-side limit.

[8] Many months ago, Meta proposed that the parties agree to a 70 hours cap per side, with no more than 15 depositions per side, but Plaintiffs rejected that proposal. *See* Dkt. 71 at 9.

[9] Plaintiffs also cite *Brown v. Google* but fail to establish any similarities to the case that would justify more depositions here, particularly at this late date.

[10] Plaintiffs dramatically assert that "***[t]he outcome of this case could help set the rules for a generation.***" Currently, this is a 12-Plaintiff putative class action with one claim in merits (not class) discovery. And even accepting Plaintiffs' framing, that does not mean they are entitled to a massive expansion of depositions without a showing of need. If anything, given their view of the case, they should have diligently conducted discovery within the case schedule, including by taking depositions and not waiting until the last minute to seek more having taken none.

of depositions based on this record would be grossly disproportionate to the needs of this case.[11]

### 3. Plaintiffs Have Failed To Take Any Depositions, Precluding Relief.

In addition to failing to make a particularized showing of need for more than ten depositions, relief also should be denied because Plaintiffs have not conducted any depositions to date, despite the fact that discovery opened ten months ago, that the fact discovery cutoff is September 30, 2024, and that Meta disclosed its witnesses and custodians months ago. At a minimum, Plaintiffs must take "at least some" of their 10 allotted depositions in order to obtain the relief they seek. *See supra* Section A; *Martensen* 2013 WL 11316743, *1 (citing *Authentec*, 2008 WL 5120767, at *1).

There is simply no justification for Plaintiffs' inaction and delay. Meta first identified Mr. Touvron and Mr. Rodriguez, two of Plaintiffs' intended deponents, on December 1, 2023. The Llama papers accompanying the release of Meta's LLMs also listed numerous authors, all known months ago to Plaintiffs. And on May 29, 2024, Meta served Amended Initial Disclosures, identifying several other of Plaintiffs' intended deponents, namely Mr. Edunov, Mr. Acharya, Mr. Ginsberg, Ms. Fan, Ms. Kambadur, Ms. Pineau, Mike Clark, Mr. Al-Dahle, Ms. Nayak, and Mr. LeCun. And, except for Mr. Acharya and Mr. LeCun, these individuals were also the custodians disclosed to Plaintiff on April 24, 2024 and May 10, 2024, pursuant to Paragraph 6(a) of the parties' ESI protocol. Dkt. 137-1, Exs. B, C. Yet Plaintiffs took no action to depose anyone until August 22, 2024, when they served deposition notices for Ms. Kambadur and Todor Mihaylov (who is neither a custodian, nor in Meta's disclosures). *Id.*, ¶ 15. And to date, Plaintiffs have served only one other deposition notice (since withdrawn) for third-party Stella Biderman. Dkt. 137-1, Ex. H.

### 4. Plaintiffs Have Failed To Show Good Cause, Precluding Relief.

In addition to the above reasons for denying Plaintiffs' motion, their request for dramatically expanding deposition discovery in this case should be denied because it would require extending the case schedule and they have failed to demonstrate the required good cause. *See* Civ. L.R. 37-3; *O'Connell*, 2023 WL 5022273, at *2. As detailed in Meta's opposition to Plaintiffs' motion for a 97-day extension of all case deadlines, Plaintiffs have woefully failed to show good cause for any extension of the case schedule based on their lack of diligence and failure to comply with discovery deadlines, including with respect to depositions. *See* Dkt. 137. This precludes relief.

For all the foregoing reasons, Plaintiffs' motion should be denied.

---

[11] Meta reserves its right to object to any noticed deposition on all available grounds and to seek relief from the Court if necessary. In particular, Meta objects to Plaintiffs' proposed deposition of Mark Zuckerberg under the apex doctrine (among other grounds) and reserves all rights to object to his deposition. Plaintiffs have not substantiated any need for Mr. Zuckerberg's deposition or that any information he has cannot be obtained with less intrusive discovery. Indeed, Plaintiffs' listing of Mr. Zuckerberg as part of their laundry list of **28** current and former employees—without having yet taken any deposition—appears designed to burden and inconvenience Meta.

      /s/ Joseph R. Saveri
Joseph R. Saveri
Bryan Clobes
David A. Straite
Joseph Saveri Law Firm, LLP
Cafferty Clobes Meriwether & Sprengel LLP
Ventura Hersey & Muller, LLP
RMP, LLP
DiCello Levitt LLP
Poynter Law Group

*Attorneys for Plaintiffs*

      /s/ Kathleen Hartnett
Bobby Ghajar
Kathleen Hartnett
Cooley LLP

*Attorneys for Defendant*

### ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Joseph R. Saveri, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of September, 2024, at San Francisco, California.

      /s/ Joseph R. Saveri
      Joseph R. Saveri