September 20, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey et al. v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC-TSH
      **Motion for a Protective Order re Plaintiffs' Request to Depose Mark Zuckerberg**

Dear Magistrate Judge Hixson:

The parties respectfully submit this letter brief regarding Plaintiffs' request to depose Mark Zuckerberg, the founder, chairman, and Chief Executive Officer of Defendant Meta Platforms, Inc. ("Meta"). Meta objects to Mr. Zuckerberg's deposition, principally under the apex doctrine, and seeks a protective order under Federal Rule of Civil Procedure 26(1). The parties met and conferred regarding this issue on September 17, 2024.

Honorable Thomas S. Hixson
September 20, 2024
Page 2

### I. DEFENDANT'S POSITION

Discovery has been open for ten months and closes in 10 days. Dkt. 87. Meta served its initial disclosures in December 2023 and completed its disclosure of custodians in May 2024. Dkt. 137 at 2. Yet Plaintiffs did not notice any depositions until August 22, 2024, when they noticed depositions of two Meta employees. Dkt. 137-1, ¶ 16 & Ex. G. Plaintiffs did not seek Mr. Zuckerberg's deposition until after 10:00 p.m. on Thursday, September 12. *See* Dkt. 149 at 1.

In a court filing earlier on September 12, Plaintiffs identified Mr. Zuckerberg as one of over **two dozen** current and former employees whose depositions Plaintiffs **might** seek, *see* Dkt. 143 at 3-6, if "warranted," *id.* at 5. As their claimed basis for Mr. Zuckerberg's deposition, Plaintiffs stated: (1) "he is familiar with Meta's choices of datasets and the decision to make Llama 'open source;'" (2) he "appears throughout Meta's production and, based on Plaintiffs' review of the production, exercised ultimate control and authority over the development and distribution of the Llama models;" and, (3) according to an April 6, 2024 *New York Times* article, Mr. Zuckerberg "'demanded a solution' to the scarcity of available data dilemma, which ultimately le[d] to Meta's decision to take copyrighted data without permission." *Id.* at 5 (quoting article).[1]

The next day, Meta wrote to Plaintiffs objecting to Mr. Zuckerberg's deposition based on the apex doctrine and requesting to meet and confer. Dkt. 149-1, ¶ 3 & Ex. A. During the September 17 meet and confer, Meta asked Plaintiffs if they had any basis for Mr. Zuckerberg's deposition beyond the statements in their filing (Dkt. 143). Plaintiffs' counsel argued that the case law does not require an apex witness to have unique knowledge to be deposed. They also highlighted several documents from Meta's production that, in their view, justify Mr. Zuckerberg's deposition, which they memorialized in an email sent that evening, attached hereto as **Ex. A**.[2] Plaintiffs, below, now cite additional documents, none of which support the deposition of Mr. Zuckerberg. The Court should issue a protective order prohibiting this deposition under the apex doctrine.

"When a party seeks the deposition of a high-level executive (a so-called "apex" deposition), courts have observed that such discovery creates a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (cleaned up); *see, e.g.*, *Davis v. Pinterest, Inc.,* 2021 WL 11117688, at *1 (N.D. Cal. May 27, 2021). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Samsung*, 282 F.R.D. at 263 (cleaned up); *see also Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, *1 (N.D. Cal. Jun. 30, 2015) (setting forth this framework). Here, the record does not support either required showing. Having conducted **no** depositions before seeking Mr. Zuckerberg's, and only two to date, Plaintiffs lack any basis to assert that he has unique knowledge that cannot be obtained less intrusively. Nor can Plaintiffs demonstrate that they have "exhausted other less intrusive discovery

---

[1] Meta noted its objection to Mr. Zuckerberg's deposition in that filing. *See* Dkt. 143 at 11 n.11.
[2] Based on those arguments and documents, Meta prepared its portion of this letter yesterday afternoon for simultaneous exchange. Plaintiffs' next draft abandoned all but *two* of those documents in favor of *eight* new ones. None of these documents support Plaintiffs' request. Moreover, Plaintiff has provided the Court only pages of these documents out of context. If the Court is interested in further context for any of them, Meta can address if provided adequate time.

methods," including because they have not deposed witnesses Meta has identified as having knowledge of the topics that Plaintiffs now claim they seek from Mr. Zuckerberg.

As Judge Chhabria recently commented, the primary issue in this case is fair use. *See* Dkt. 156 ("the only real legal question…is whether [Meta's use of Plaintiff's works] constituted 'fair use'"). Fair use will largely turn on the transformative nature of the AI models and the alleged effect on the market for Plaintiffs' books. Plaintiffs do not need a litany of depositions, let alone, Mr. Zuckerberg's deposition, to establish or defend these elements.

*First*, there is no showing that Mr. Zuckerberg "has unique first-hand, non-repetitive knowledge of the facts at issue in the case." *Samsung*, 282 F.R.D. at 263 (cleaned up). Plaintiffs are just beginning to depose Meta witnesses and served their Rule 30(b)(6) notice this week (*see* **Ex. B**). Plaintiffs cite to a handful of documents, *see supra* n.2, but provide no reason to conclude that Mr. Zuckerberg has firsthand knowledge of facts others at Meta lack (even assuming relevance)—*e.g.*, Meta's plans for AI (**Exs. K**, **N**), its negotiations with business partners (**Ex. G**), or how its teams are organized (**Ex. J**.) To the extent Plaintiffs seek discovery on Mr. Zuckerberg's "thoughts or motivations," they have not explained why this is relevant to fair use. They claim that Meta's claimed "fervor" for AI is relevant to "how Meta intends to use Plaintiffs" works, but that Meta using a dataset containing some of Plaintiffs' works to train Llama is not in dispute. Similarly, while the commercial or open source *nature* of Llama might be relevant to the fair use analysis, who made the decision or how the decision came about is not. In any event, there has been no showing that Plaintiffs need Mr. Zuckerberg's deposition to obtain this information.

Plaintiffs weakly argue that Mr. Zuckerberg is "**familiar** with Meta's choices of datasets and the decision to make Llama 'open source'" as a basis to depose him. Dkt. 143 at 5. Numerous Meta employees are "familiar" with Meta's choices of datasets. For instance, on September 17, Plaintiffs deposed Ms. Kambadur, a Research Engineering Manager, "concerning background, development, and use of Llama 2 and 3 by Meta, including dataset selection and risk mitigations." Dkt. 143 at 4, 11. Mr. Zuckerberg did not come up. Plaintiffs' 30(b)(6) notice seeks a witness on "Meta's curation of datasets to train its [LLMs]," which Meta will provide. Otherwise, the decision to "open source" Llama is a red herring—it is not even among Plaintiffs' Rule 30(b)(6) topics. Moreover, in *May*, Meta identified Yann LeCun as having knowledge of "Meta's decision to release Llama models under an open license." *See* **Ex. C**. Only after receiving Meta's portion fo this letter did Plaintiffs seek to depose Mr. LeCun. Admittedly, they do not need Mr. Zuckerberg.

Plaintiffs attempt to justify Mr. Zuckerberg's deposition because of his alleged "control and authority" over the development and distribution of Llama. Dkt. 143 at 5. Were this reasoning enough to justify taking his deposition, the apex doctrine would be rendered meaningless, as any CEO exercises control and authority over a company's key offerings. Meta previously identified Joelle Pineau, Vice President of AI Research, as having "oversight of Meta's Fundamental AI Research ("FAIR") team, including regarding Llama 1" and Ahmad Al-Dahle, Vice President of Gen AI, as having "oversight of Meta's Generative AI ("Gen AI") team, including regarding Llama 2 and Llama 3."[3] **Ex. C**. And if Plaintiffs truly want to rely on *New York Times* reporting, then Mr. Al-Dahle was also among other high-level executives identified in that article. **Ex. D**.

---

[3] Meta is providing Mr. Al-Dahle for deposition. Plaintiffs did not seek to depose Ms. Pineau.

***Second***, Plaintiffs have wholly failed to "exhaust[] other less intrusive discovery methods." *Samsung*, 282 F.R.D. at 263. As of the date of this filing, they have taken only ***two*** depositions and have several remaining depositions of other witnesses to obtain the information they seek. Months ago, Meta provided Plaintiffs with datasets and subsequently, documents relating to the decision to make Llama open source. This case is categorically different from *Finisar*, cited below, in which the party seeking the apex deposition tried to obtain the information at issue from "numerous other depositions," to no avail. *Finisar*, 2015 WL 3988132 at *3; *see id.* at *4.

This case is also unlike *In re Apple Iphone Antitrust Litigation*, in which this Court permitted a 7-hour deposition of Apple's CEO, Tim Cook. *See* 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021). The Court viewed that dispute as not ***whether*** the deposition should occur, but its length, given that Apple offered four hours. *See id.* Here, there is no basis for ***any*** deposition of Mr. Zuckerberg. Moreover, Apple relied on a business justification defense that is "ultimately a matter of corporate opinion and judgment." *Id.* Mr. Cook's "unique, non-repetitive knowledge" of "the competition [Apple] faces and important aspects of its business model" were directly implicated by the antitrust claims in that case. *Id.* Here, Meta has not relied on a business justification defense, nor is this case a challenge to Meta's business model. To the contrary, this case will hinge on the fair use factors—matters about which others at Meta will be able to testify. *See* Dkt. 156.

At the end of the day, given their lack of any substantiation for their belief that Mr. Zuckerberg has any special knowledge of this dispute and their failure to undertake other discovery first to find out, it appears that Plaintiffs' eleventh-hour request for Mr. Zuckerberg's deposition is simply because it "would be burdensome, inconvenient, and highly visible to the company." *Davis*, 2021 WL 11117688, at *1. This is impermissible. The motion for protective order should be granted.

## II. PLAINTIFFS' POSITION

The decision-makers who directly set policy and implement strategy with respect to Meta's Large Language Models ("LLMs") are critical witnesses in this case. Mark Zuckerberg is at the top of that list.[4] But Mr. Zuckerberg is the chief decision maker and policy setter for Meta's Generative AI branch and importantly, the development of the LLMs at issue in this Action. Meta's documents reveal that he personally issued directives guiding the development and sale of Meta's generative AI products and leading efforts to employ them as revenue streams. Mr. Zuckerberg has unique, first-hand knowledge regarding Meta's LLMs that is unavailable from any other source. He is a critical percipient witness. The Court should deny Meta's request to prevent the deposition of its CEO Mark Zuckerberg.[5,6]

---

[4] **Ex. D**, Cade Metz, *How Tech Giants Cut Corners to Harvest Data for A.I.*, N.Y. Times, Apr. 6, 2024, at 15-16.

[5] To dispel Meta's mischaracterization: Plaintiffs' position at the September 17 meet and confer was not "case law does not require that an apex witness have unique knowledge to be deposed." Plaintiffs cited *Finisar* stating that Plaintiffs "need not prove conclusively that the deponent *certainly* has unique non-repetitive information" as well as providing numerous Meta produced documents to make clear that Mr. Zuckerberg has unique information.

"[I]t is very unusual for a court to prohibit the taking of a deposition all together absent extraordinary circumstances." *Powertech Tech., Inc. v. Tessera, Inc.*, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013) (internal cites omitted). Nonetheless, Meta seeks to block Mr. Zuckerberg's deposition based entirely on the Apex Doctrine. In deciding whether an Apex deposition should proceed, "courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). To satisfy the first element, "the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, where a corporate officer *may have any* first-hand knowledge of relevant facts, the deposition should be allowed." *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (emphasis added). And exhaustion of discovery methods is not an absolute requirement. *Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015). Meta bears the burden as the party seeking a protective order to make the "strong showing [] required before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (cleaned up). This is so even when the Apex Doctrine is asserted. *Hunt v. Cont'l Casualty Co.*, 2015 WL 1518067, at *1 n.1 (N.D. Cal. 2015).

Meta cannot meet its heavy burden. First, Mr. Zuckerberg has unique and superior first-hand knowledge of material facts. As the chief decision maker for Meta, he exercises direct control over AI initiatives and AI-related projects. *See* **Ex. D** at 14; **Ex. E** ("[Mark Zuckerberg] immediately pushed to match and exceed ChatGPT, calling executives and engineers at all hours of the night to push them to develop a rival chatbot…"); Meta_Kadrey_00045393-5 (                                                                                                                                                    ). Meta's other witnesses will not be able to testify to Mr. Zuckerberg's thoughts or motivations behind the critical decision to push development of its LLMs to keep pace with OpenAI and other competitors. This means that he has unique first-hand, non-repetitive knowledge. *Apple Inc.*, 282 F.R.D. at 263; *In re Apple Iphone Antitrust Litig.*, No. 3:11-cv-06714 YGR (TSH), 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021) (J. Hixson) ("There is really no one like Apple's CEO who can testify about how Apple views competition in these various markets that are core to its business model."); *see also id.* (overruling apex deposition objection where Plaintiffs "show[ed] his personal involvement in decisions concerning [the relevant conduct]").

Second, regarding **fair use**, Mr. Zuckerberg made the final decision regarding how best to develop the Llama models, including utilizing the Llama models to generate revenue. Meta's production is replete with documents reflecting Mr. Zuckerberg's decision to use the Llama models as a major source of revenue, which go to several of the fair use factors, including the commercial use of Llama and the nature of the use. **Ex. F** Meta_Kadrey_00047318                                                                                                                                 ); *see, e.g.*, *Savage v. Council on Am.-Islamic Rels., Inc.*, 2008 WL 2951281, at *5 (N.D. Cal. July 25, 2008) ("The first fair use factor examines the 'purpose and character of the use,' considering whether the character of the use is criticism and commentary and weighing, for instance, the 'commercial or nonprofit purpose of the use.'"). Meta's documents further evidence Mr. Zuckerberg's direct role in facilitating negotiations with other companies in order to maximize revenue from Llama. *See, e.g.*, **Ex. G** Meta_Kadrey_00046317 ("                                                                                                                    "). Meta likely will point to the ostensible

Honorable Thomas S. Hixson
September 20, 2024
Page 6

"open-source" nature of the model to support its fair use arguments and Meta's documents reveal that Mr. Zuckerberg was the principal decision maker committing Meta to "open source" the model. *See e.g.*, **Exs. H**; **I** Meta_Kadrey_00051217; Meta_Kadrey_00048261 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Meta also produced documents reflecting a fervor for pursuing artificial general intelligence, which goes to fair use factor one: how Meta intends to use Plaintiffs' work. *E.g.*, **Ex. J** Meta_Kadrey_00039786.

Third, Meta's documents demonstrate Mr. Zuckerberg's direct supervision regarding Meta's AI products. *See e.g.*, **Exs. K**; **L**; **M**; **N** (Meta_Kadrey_00032756) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮);(Meta_Kadrey_00033120) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); (Meta_Kadrey_00033868) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); (Meta_Kadrey_00033900) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Mr. Zuckerberg clearly possesses unique first-hand knowledge of material relevant to the case. *Apple Inc.*, 282 F.R.D. at 263. That other Meta employees may also have relevant knowledge does not mean they possess the same knowledge as Mr. Zuckerberg.

Fourth, Mr. Zuckerberg has unique information regarding the willfulness of Meta's infringement. Specifically, Mr. Zuckerberg reportedly asked his underlings to find a solution to the "ethical concerns around taking intellectual property from artists." **Ex. D** at 14. Faced with a decision between "sucking up more [books, essays, and other works without permission] even if that meant facing lawsuits" and seeking full licensing rights, Meta at the behest of its CEO chose the former. *Id.*

**Plaintiffs have sought discovery through other means.** Plaintiffs have served discovery requests on Meta seeking relevant information regarding various topics: 1) Training Data sourcing, 2) Licensing Efforts, and 3) Documents concerning certain executive statements made in the New York Times Article. **Ex. D**. Absent from Meta's production are documents and communications showing Mr. Zuckerberg's motivations behind the strategies which were adopted and utilized at his direction. This evidence would make the fact that Meta willfully infringed Plaintiffs' Asserted Works more or less probable. *See* Fed. R. Evid. 401(a). That Meta is choosing to open source its model and extract revenue from it is also relevant to fair use--a core issue in this case. Meta's documents highlight Mr. Zuckerberg's central role over the creation, direction and use of Meta's Llama models. *See* **Exs. K**; **L**.

**Meta has failed to establish the extraordinary circumstances** required to deny Plaintiffs' right to pursue the relevant information they are entitled to under the Federal Rules. Though more deponents are necessary, Plaintiffs noticed the depositions of 10 carefully selected deponents who are necessary witnesses, including Mr. Zuckerberg. Meta's motion should be denied.

/s/ Kathleen Hartnett
Bobby Ghajar
Kathleen Hartnett
Colette Ghazarian
Cooley LLP
Attorneys for Defendant META PLATFORMS, INC.

/s/ Joseph R. Saveri
Joseph R. Saveri
Cadio Zirpoli
Christopher K.L. Young
Holden Benon
Aaron Cera
Joseph Saveri Law Firm, LLP
Attorneys for Plaintiffs RICHARD KADREY, SARAH SILVERMAN, and CHISTOPHER GOLDEN

/s/ Bryan L. Clobes
Bryan L. Clobes (*pro hac vice*)
Alex J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
Cafferty Clobes Meriwether & Sprengel, LLP
Attorneys for Plaintiffs TA-NEHISI COATES, JUNOT DIAZ, CHRISTOPHER GOLDEN, RICHARD GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, and JACQUELINE WOODSON

/s/ David A. Straite
David A. Straite (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
DiCello Levitt, LLP
Attorneys for Plaintiff Lysa TerKeurst

### ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Dated: September 20, 2024 | COOLEY LLP |
| | |
| | */s/ Kathleen Hartnett* |
| | Bobby Ghajar |
| | Kathleen Hartnett |
| | Colette Ghazarian |
| | |
| | Attorneys for Defendant |
| | *META PLATFORMS, INC.* |