# EXHIBIT B

1               UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3      Before The Honorable Vince Chhabria, District Judge

4

5  KADREY, et al.,         )  No. C 23-03417-VC
                     )
6        Plaintiffs,    )
                     )
7  vs.                 )
                     )
8  META PLATFORMS, INC.,    )
                     )
9        Defendant.     )
  _____)
10

11                        San Francisco, California
                        Friday, September 20, 2024
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 1:03 - 2:00 = 57 MINUTES
14

15  APPEARANCES:

16  For Plaintiffs:
                        Joseph Saveri Law Firm, LLP
17                    601 California Street
                    Suite 1000
18                    San Francisco, California
                     94108
19             BY:  JOSEPH R. SAVERI, ESQ.
                    CHRISTOPHER K. L. YOUNG, ESQ.
20
                        Cafferty Clobes Meriwether &
21                   Sprengel LLP
                    135 South LaSalle Street
22                    Suite 3210
                    Chicago, Illinois 60603
23             BY:  ALEXANDER J. SWEATMAN, ESQ.

24

25       (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

1  For Plaintiffs:

2                              Matthew Butterick, Attorney at
                                  Law
3                              1920 Hillhurst Avenue
                               Unit 406
4                              Los Angeles, California 90027
                           BY: MATTHEW C. BUTTERICK, ESQ.

5                              DiCello Levitt, LLP
                               10 North Dearborn Street
6                              Sixth Floor
                               Chicago, Illinois 60602
7                          BY: NADA DJORDJEVIC, ESQ.

8  For Defendant:

9                              Cooley, LLP
                               1333 2nd Street, Suite 400
                               Santa Monica, California 90401
10                         BY: BOBBY A. GHAJAR, ESQ.

11                             Cooley, LLP
                               3 Embarcadero Center
12                             20th Floor
                               San Francisco, California
13                                94111
                           BY: KATHLEEN R. HARTNETT, ESQ.
14                             JUDD D. LAUTER, ESQ.

15 Transcribed by:             Echo Reporting, Inc.
                               Contracted Court Reporter/
16                             Transcriber
                               echoreporting@yahoo.com

17

18

19

20

21

22

23

24

25

3

1  <u>Friday, September 20, 2024</u>                    <u>1:03 p.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  Now calling solo case 23-3417, Kadrey

5  et al. versus Meta Platforms, Inc.

6      Will counsel please state your appearances for the

7  record, starting with the Plaintiff?

8          MR. SAVERI:  Joseph Saveri for the Plaintiffs.

9          THE COURT:  Hello.

10         MR. BUTTERICK:  Hello.  Good afternoon, your

11  Honor.  Matthew Butterick for the Kadrey Plaintiffs.

12         THE COURT:  Hi.

13         MS. DJORDJEVIC:  Good afternoon, your Honor.  Nada

14  Djordjevic for Ms. TerKeurst.

15         MR. SWEATMAN:  Good afternoon --

16         THE COURT:  Hi.

17         MR. SWEATMAN:  -- Alex Sweatman on behalf of

18  Plaintiffs, Clobes and Diaz, Hwang, Clam, Snyder, Woods and

19  Greer and Coates.

20         THE COURT:  Hello.

21         MR. GHAJAR:  Good afternoon, your Honor --

22         MS. HARTNETT:  This is Kathleen Hartnett for

23  Defendant Meta.

24         THE COURT:  Hi.

25         MR. GHAJAR:  Good afternoon, your Honor.  Bobby

4

1  Ghajar on behalf of Defendant.

2          THE COURT:  Hi.

3          MR. LAUTER:  Good afternoon, your Honor.  Judd

4  Lauter on behalf of Defendant.

5          THE COURT:  Hi.

6      Okay.  Is that everybody?  I think that was everybody.

7  Okay.  So, let me -- let me start I guess with the

8  Plaintiffs.  This case, at least as I understand it, is

9  mostly about -- or maybe entirely about the question of fair

10 use.  So, what -- what information, what facts are you

11 trying to gather that you don't have now that is relevant to

12 the question of fair use?

13         MR. SAVERI:  Your Honor, this is Joseph Saveri on

14 behalf of the Plaintiffs.  I think that he -- in terms of

15 the fair use defense, there are four elements.

16         THE COURT:  Well -- sorry.  Hold on a second.

17 We're getting some echoing from the court reporters.  Okay.

18 Thank you.

19     Sorry.

20         MR. SAVERI:  Is it me, your Honor?  I can't tell.

21         THE COURT:  No, it wasn't you.  It was the court.

22         MR. SAVERI:  Okay.  So, with respect to the fair

23 use defense, there are four elements, right.  Well, one --

24 with respect to -- we don't really know right now whether

25 the Defendants are going to contest all four elements.  I

5

1  think one of the things I'd like to get some clarity on is

2  whether they are going to in fact contest the second and

3  elements.  I think the factual dispute or the legal dispute

4  centers on the first and the fourth element of the fair use

5  defense.

6       And with respect --

7            THE COURT:  Not really -- they're more factors

8  than elements, right?  It's a non-inclusive list to factors

9  that you consider --

10            MR. SAVERI:  Fair enough, your Honor, but there

11  are --

12            THE COURT:  Anyway.  Okay.  The first and fourth.

13            MR. SAVERI:  -- four, your Honor.  And we don't

14  know if the second and third are really at issue here, and

15  whether he need to prepare a response to them.  I think

16  that's really what I'm getting at.

17       So with respect to the first, one question we generally

18  is, which of the -- which databases were pirated, taken?  We

19  have an issue that's come up in discovering last week that

20  the case looks to be bigger than we pled.

21       But with respect the legal and factual issues, okay,

22  there is information that we need to find out about intent.

23  That's one of the factors that -- one of the facts are part

24  of the first factor.  Another is evidence that goes to

25  convertiality.  That's another factor under one.

6

1          THE COURT:  Well, can you be a little more --
2  could you -- sorry.  That's all a little bit vague.  Could
3  you be a little bit more specific about what is you're
4  trying to find out that you haven't been able to find out
5  about thus far?
6          MR. SAVERI:  Sure, your Honor.  With respect --
7          THE COURT:  Right.  Because intent -- I mean, they
8  -- commercial use, I mean we know, right, are you talking
9  about the use of the copyrighted works?  I thought everybody
10 sort of agreed about the use of the copyrighted works.  That
11 they're -- they were available on a database, and that the
12 database was not authorized to make them available.
13     That Meta acquired them from that database, then Meta
14 fed the stuff from the database into the large language
15 model.  And that of course the large language model is for
16 commercial use.
17     So, I -- to use utter the phrase "commercial use" or
18 intent, I mean, I -- that doesn't help me understand what
19 information --
20          MR. SAVERI:  Okay.
21          THE COURT:  -- you're trying to find that you
22 haven't been able to find and whether it's relevant to the
23 fair use inquiry.
24          MR. SAVERI:  Okay.  So let me try to drill down
25 and be granular and specific about that to answer the

7

1 (indiscernible).  So, for example, one question that has to

2 do with intent.  And that evidence of intent includes, among

3 other things, whether Meta knew that the works that they

4 were using for the large language models were pirated.  And

5 that despite that or with that information, they

6 nevertheless said, we're going to go forward and take our

7 clients' copyrighted material.

8        That evidence of intent goes to the first factor, and

9 it's recognized by the Supreme Court in the most recent <u>Andy</u>

10 <u>Warhol</u> case.  So it's that evidence of intent on -- another

11 way to think about it is, scienter.  That's another way of

12 thinking about the same idea.  That's the subject matter.

13        I think that the information that goes to that comes

14 from -- from what I -- basically two sources.  Business

15 records will evidence that, and there's (indiscernible)

16 testimony that will evidence that.  Of course those two

17 should be (indiscernible), and one of the things that's

18 important, your Honor --

19            THE COURT:  Well, I'm -- Mr. Saveri is coming in

20 and out for me.  Is he coming in and out for everybody else?

21            MR. SAVERI:  -- evidence of intent --

22            MR. BUTTERICK:  Yes, your Honor.

23            MR. SWEATMAN:  Yeah.

24            THE COURT:  Mr. Saveri, you're cutting in and out,

25 unfortunately.

8

1          MR. SAVERI:  Limited to (indiscernible) --

2          THE COURT:  Mr. Saveri, you're going to have to

3    find a different connection, because you're cutting in and

4    out.

5          MR. BUTTERICK:  Until mister -- your Honor, I can

6    pick up where Mr. Saveri was speaking as far as his first

7    factor, right.  I mean, as you mentioned, commercial use,

8    good faith --

9          MR. SAVERI:  Go ahead, Mr. Butterick.

10         MR. BUTTERICK:  Yeah.  Under the Harper and Row v.

11   Nation Enterprises, right, good -- fair use presupposes good

12   faith.  So as Mr. Saveri was saying, evidence of intent of

13   the actions that were undertaken, how did these datasets

14   arrive in Meta in the first instance?

15       And then, as he was alluding, transformative use,

16   right, which is the Warhol case and the intended type of use

17   of (indiscernible) material.

18         THE COURT:  Well, transformative use, I mean

19   there's not going to be a dispute about that, is there?

20         MR. BUTTERICK:  Can you elaborate?

21         THE COURT:  I mean, you're not -- you're no longer

22   pursuing a claim that the output from the large language

23   model resembles the -- the works that your clients have

24   protected, are you?

25         MR. BUTTERICK:  That's true.  That's not a part of

9

1  the infringement claim.  The infringement claim focuses on

2  the making of copies at the input stage, at the training

3  stage.  And I think there is very much a question of whether

4  that's a transformative use.  Obviously, it would not --

5  cases out there be -- excuse me.  I'm pulling it up right

6  here.

7       The -- yeah, I think there is an open question though

8  about whether this is -- you know, taking all of these works

9  and turning it into sort of copyright sausage in the form of

10 these language models is transformative because it's -- you

11 know, it has nothing to do with the original works.  It

12 doesn't add to them.  It doesn't critique them.  It doesn't

13 add to their value at all.

14          THE COURT:  But do you need any discovery on that?

15 I mean, do we -- we know what -- to use your phrase, turning

16 it into copyright sausage.  I mean, we know that your

17 clients works with gazillions of other works, are going in

18 and making this copyright sausage.  I mean, do -- is there

19 any discovery that you need to better understand that?  And,

20 if so, what is it?

21          MR. SAVERI:  Your Honor --

22          MR. BUTTERICK:  I think that we are -- go ahead,

23 sir.

24          MR. SAVERI:  Your Honor, I'm sorry about my

25 connection.  So there are -- there are documents, right?

1  And just so we're clear about where we are on the documents,

2  the ESI that we've received from the custodians that we

3  received, were entirely chosen by Meta.  Under the ESI

4  protocol, which we negotiated, it took some time, but in the

5  first instance Meta gets to choose whose documents were

6  searched.  Under that protocol and under that agreement, we

7  have the opportunity now to suggest additional custodians

8  and additional search terms.

9          THE COURT:  And when did you suggest additional

10 custodians?

11         MR. SAVERI:  Several weeks ago, your Honor.

12         THE COURT:  Several weeks ago?  When is --

13         MR. SAVERI:  I think -- well, I think it was

14 August 22nd.  Your Honor --

15         THE COURT:  -- the discovery cutoff?

16         MR. SAVERI:  I beg your pardon, your Honor?

17         THE COURT:  When is the discovery cutoff?

18         MR. SAVERI:  The discovery cutoff's at the end of

19 this month, your Honor.

20         THE COURT:  So, August 22nd you proposed

21 additional custodians when the discovery cutoff was

22 September 20th?

23         MR. SAVERI:  Yes, your Honor.  That's because the

24 substantial --

25         THE COURT:  I'll tell you -- Mr. Saveri, let me

11

1  cut you off, okay?  I'll tell you why it's because.  It's

2  because --

3            MR. SAVERI:  I'm sorry.  What, your Honor?

4            THE COURT:  You said, "that's because."  I'll tell

5  you why.  It's because and your -- whatever team you've

6  assembled, has not been litigating this case as if the

7  December 30 cutoff is a real cutoff.  You are not doing your

8  job in this case.

9            MR. SAVERI:  Your Honor --

10           THE COURT:  This is an important case, and the --

11 you are teed up to get a ruling that I think would be the

12 first ruling on whether this is fair use.  And you're not --

13 you're not doing your job to work the case up.

14           MR. SAVERI:  Your Honor --

15           THE COURT:  You're not -- you have not even come

16 close to moving the ball forward in this case.

17           MR. SAVERI:  Your Honor, if I may?

18           THE COURT:  Yeah.

19           MR. SAVERI:  I think that's 100-percent wrong,

20 your Honor.  I think that we had a -- when we agreed and you

21 ordered a not -- the discovery cutoff to end at the end of

22 September, at that time we -- we had -- it was December, and

23 in January and February we propounded discovery requests.

24      Now, from that point forward, there was a substantial

25 completion deadline which you set, which is in the middle of

12

1  July.  We -- from that -- from the time we produced -- we

2  propounded the discovery in December, we didn't get any

3  documents from the Defendants until, I believe, if my notes

4  are right, until -- excuse me, until -- until August 9.

5  That's when we got the first (indiscernible) --

6          THE COURT:  Say that -- can you say that one more

7  time?  You propounded the --

8          MR. SAVERI:  August 9th, sir.  August 9th, your

9  Honor.

10         THE COURT:  You made document requests in

11 December, and you didn't get any documents until August 9th,

12 is that what you said?

13         MR. SAVERI:  It is what I'm saying, your Honor.

14 And then we received subsequent productions.  They trickled

15 in August 9th again, August 15th again, August 29th, August

16 30, August 30 again, September --

17         THE COURT:  So now -- so are --

18         MR. SAVERI:  Excuse me, your Honor.  There's more.

19         THE COURT:  I think you -- I think you need to be

20 really careful about the representations that you're making,

21 because I'm -- you know, I'm concerned that what you're

22 saying is not accurate.

23         MR. SAVERI:  Okay.

24         MS. HARTNETT:  Your Honor, we can also

25 (indiscernible) --

13

1         MR. SAVERI:  Your Honor, I did --

2         THE COURT:  Mr. Saveri -- Mr. Saveri, can you hold

3  on just a second?

4         MR. SAVERI:  Yeah.  Absolutely.

5         THE COURT:  I'm concerned that you might be sort

6  of reaching, you know, sanctions territory here in what

7  you're saying.

8         MR. SAVERI:  Well, I --

9         THE COURT:  I want you to -- I want to urge  you

10 to be careful.

11    Ms. Hartnett, go ahead.

12         MS. HARTNETT:  Thank you, your Honor.  And I -- my

13 colleague, Mr. Lauter or Mr. Ghajar should also jump in.

14 But we've produced I believe 16,998 documents by July 15th,

15 the substantial completion date, out of approximately 20,000

16 documents produced to date.

17    And so that means that several -- there was a

18 productions -- productions were made before July, including

19 in April when we -- we shipped the drive with the dataset

20 that Mr. Saveri was saying he was deprived of, we shipped

21 that in May, May 9th for delivery May 10th.

22    So I can -- we have provide a more exhaustive list, but

23 the main point here is that we met the substantial

24 completion deadline in July.  We made productions before

25 that, and there's been a bit of production since then to

14

1  address a couple of issues they had identified about some

2  documents that did not fully reproduce, and some other

3  follow-ups.  So --

4          MR. SAVERI:  Your Honor --

5          MS. HARTNETT:  -- that's just wrong.

6          MR. SAVERI:  Your Honor?

7          THE COURT:  Yes.

8          MR. SAVERI:  The dates that I gave you, the two

9  August 9ths, the August 15th, the August 29, the two August

10 30ths, the two September 10ths, and the one last week were

11 all after the original substantial completion.  It is true

12 when --

13         THE COURT:  Hold on a second.  But that's not what

14 you said.  I believe you, that they may -- other additional

15 documents may have come in after the substantial completion

16 deadline, but that's not what you said.  You said that you

17 didn't receive any documents until August something.

18         MR. SAVERI:  Your Honor, if I said that, I did

19 misspoke -- misspeak.

20         THE COURT:  Okay.  So we've got a real -- we have

21 a real problem here, right?  And here's the problem.  It's

22 very -- it clear to me from the papers, from the docket and

23 from talking to the Magistrate Judge, that you have brought

24 this case, and you have not done your job to advance it.

25 It's very clear, okay.  And now you're in court making false

15

1  representations about the -- when you first received

2  documents in the case.  I don't know, maybe you're doing

3  this because I previously sanctioned Meta and its lawyers

4  for discovery abuses.  Maybe you're somehow like thinking

5  that you could take advantage of that.

6       But I assure you, Mr. Saveri, that I'm going to look at

7  every case individually.  And it's obvious in this case,

8  that Meta has been litigating the case as if September 30th

9  is an actual discovery cutoff.  And you and your team have

10 barely been litigating the case.  That's obvious.

11      And so, here's what I'm going to tell you, all right.

12 And, moreover, this is an important case, right?  This is

13 not -- this is not your typical proposed class action.  This

14 is an important case.  It's an important societal issue.

15 It's important for your clients.  It's important for the

16 proposed class members.  It's important for society.

17      And, you know, you and your team appear to have taken

18 on a case that you are either unwilling or unable to

19 litigate properly.  And so, I will tell you right now that

20 if this case gets to the class certification stage, I will

21 not certify class represented by this legal team based on --

22 based on the way you've litigated the case so far.

23      I think what you need, frankly, is to bring in -- bring

24 in somebody who can help you litigate the case.  Who has the

25 resources and the wherewithal to move this case forward.

16

1 Somebody like Sussman Godfrey or somebody like that who

2 actually has the ability to take on a complex matter like

3 this and litigate it properly.  I think you need to

4 reconstitute your legal team.

5     And I will tell you, that I -- based on what I've seen

6 so far, there is no way that I will -- that I would grant

7 class certification.  There is no way that I would find

8 adequacy of representation based on the representation that

9 I've seen take place thus far, okay.

10     I feel like I'm in a little bit of a bind here, because

11 -- and I don't know if maybe the Defendants can speak to

12 this.  And, you know, the Defendants don't need to convince

13 me that we are here today because the Plaintiffs have failed

14 to move the case forward.  I understand that.

15     But I'm in a little bit of a difficult position because

16 it is such an important case, and, you know, I -- if I deny

17 the motion to extend the discovery cutoff, right, it may be

18 that, you know, I am not going to be able to adjudicate the

19 question that is presented at summary judgment on a proper

20 record, right.

21     So maybe the answer is, fine, I deny the motion to

22 extend the discovery cutoff, and then I -- if there's no

23 proper record, that's the Plaintiff's fault, and so they

24 lose their case and some other plaintiffs are going to have

25 to bring a case against Meta, right, on this issue.  Maybe

17

1  that's the answer.

2       But, you know, I -- you know, courts, district courts

3  have a responsibility to proposed class members, to make

4  sure that their interests are protected.  I'm not sure their

5  interests have been protected thus far, and I don't -- I

6  don't know if I'm protecting the interests of the proposed

7  class if I, you know, simply deny the, you know, the motion

8  to extend the cutoff and to alter the case schedule, and

9  then we barrel towards summary judgment on a totally

10 inadequate record.

11      So, what -- I still don't -- I'm left wondering what I

12 should do, how I should handle this.

13           MS. HARTNETT:  Your Honor, I would be happy to

14 address that.  This is Kathleen Hartnett.

15           THE COURT:  Could I -- before you address that,

16 let me ask one question.  There's somebody named Christopher

17 Young raising their hand.  Is that a member of the legal

18 team?

19           MR. SAVERI:  I believe so.  He's one of our team,

20 your Honor, and he's got --

21           THE COURT:  What do mean, you believe so?

22           MR. SAVERI:  He -- I don't know if he -- I can't

23 see whose hands are raised, your Honor.

24           THE COURT:  But Christopher Young is a member of

25 your legal team?

18

1          MR. SAVERI:  Yes, sir.

2          THE COURT:  Okay.  So, Bob, now you can go ahead

3    and let him into the courtroom.

4       All right.  Sorry, Ms. Hartnett.

5          MS. HARTNETT:  Thank you, your Honor.  And we

6    appreciate not repeating the points about diligence.  I

7    think that in the debate between the parties about that,

8    what may have gotten lost a little bit in translation is the

9    substance, which is that this case will be properly

10   discovered if we have a short extension or just allowance

11   for a few depositions to take place the first week of

12   October.

13      We've been trying to work that out with Plaintiff's

14   counsel.  I think they are delaying fully responding to our

15   proposal until this hearing today, but we basically have

16   been able to, despite these challenges that we've explained

17   in our briefing, complete depositions.

18      We've had three of the Plaintiff's already taken.  We

19   are -- have, I believe four of them set, and three need to

20   be scheduled, too, because of illness shortly before the

21   deposition.  Defense depositions have been taking place and

22   are currently.  We're preparing our witnesses to complete

23   those within the discovery period or shortly thereafter.

24      And so, just from my client's perspective, which has

25   truly worked hard and in good faith to try to make the

19

1  production that will allow this Court to adjudicate the

2  important you note.

3       Our strong recommendation would be to make the slight

4  modification to the schedule that will be necessary to allow

5  the depositions to complete.  There's been no showing of

6  need for more than the 10 depositions normally allotted, and

7  we are actually willing to forego two Plaintiff depositions

8  to adhere to the, you know, the default allotment and to the

9  schedule.

10      And then the point you raise about adequacy and class

11  cert, that obviously is an important point that should be

12  addressed in due course.  But just from my client's

13  perspective, we'd prefer not to have to re-litigate the

14  whole case, because we have been doing it properly.  And

15  notwithstanding some of these challenges, we have produced a

16  record that will allow you to make your decision on a full

17  record.

18      And so we would respectfully --

19          THE COURT:  What's hard for me -- I guess for me

20  sitting here right now, it's hard for me to know whether

21  that's true or not, right.  I mean, I -- that's something

22  that I would have to access.  But what happened -- what

23  happens if we -- you know, if I grant the short extension

24  that you're contemplating, we get to summary judgment, and

25  all of the sudden I conclude that there are a bunch of

20

1   unanswered questions?

2          MS. HARTNETT:  Well, I do think at that point that

3   you would grant us -- I mean, we believe we'd be -- if

4   there's a deficiency in the record due to Plaintiff's

5   failure to prove its case, then we should win at summary

6   judgment.  I don't think this is going to be so below the

7   standard that it's going to be an absence of counsel for the

8   Plaintiffs.

9          And so, you know, we are -- we are having normal

10  depositions now that we're having them.  That we finally

11  kind of got into the mode of actually listening to the

12  schedule and responding to it.  We're getting ready for all

13  those.  We're all flying around to complete them.  And so, I

14  do think the message has gotten through, that this actually

15  has to be litigated as a case.

16         And so I guess my main point is just that my client's

17  undertaken a lot of time and effort to make sure that we are

18  being responsive.  I don't think there's any -- I don't

19  believe, and my colleagues can step in, there are just no

20  massive gaps in information that are going to be in the

21  discovery record.  It's all been overblown just to be able

22  to try to get more time to complete depositions they didn't

23  want to take.

24         MR. YOUNG:  Good afternoon, your Honor.

25  Christopher Young for the Plaintiffs.  Would you mind if

21

1  jump in for a second and just -- just briefly expand upon

2  what Mr. Saveri was kind of gesturing at earlier.

3       So we do believe that additional discovery is going --

4  need to be taken.  Partially because of the inadequate

5  protection as is.  So, the original substantial completion

6  deadline was July 2nd.  In accordance with the Professional

7  Guideline Rules in the Northern California, we graciously

8  gave Meta a two-week extension.  Since then over 12,000

9  pages of documentary evidence have been produced.

10      This case is going to involve a lot of data.  We've had

11 6.6 terabytes of data produced in the last three -- three

12 weeks alone.  That stuff will need to be examined by our

13 experts.  Our current opening report deadline is October

14 11th.  So it -- but there's a lot of pressure being put

15 on --

16           THE COURT:  Have you hired experts yet?

17           MR. YOUNG:  Yes.  We have retained experts.  We

18 have disclosed experts consistent with the protective order,

19 your Honor.

20      We have been thoroughly litigating this case.  The

21 production itself is insufficient.  We have received a

22 privilege log which does not identify, for example,

23 attorneys, does not identify Bates numbers of the documents

24 that are being redacted.  Many of the documents are

25 redacted.  And having sat -- having taken a deposition just

22

1 three days earlier, your Honor, it does seem that legal

2 advice may become an issue in this case.

3 So, we will have to tee up -- we potentially may have

4 to tee up a privilege log challenge, your Honor.  And we are

5 -- we have -- we have sent letters and we are currently in

6 the process of meeting and conferring about the privilege

7 log.

8 With respect to the document production itself, there

9 have been serious deficiencies that have been systemic

10 throughout Meta's production.  Meta has recently this week

11 committed to rear-viewing all of the redactions in their

12 production because the production has been so deficient.  It

13 has seriously inhibited our efforts to take these

14 depositions, because we do not know what is being properly

15 redacted and what needs to be challenged and rear viewed.

16 MS. HARTNETT:  Your Honor, if I may.  What -- I

17 mean, with respect, those accusations are unfounded and

18 overblown and inappropriate.  They're not supported by

19 what's happening right now.  There have been some relatively

20 minor privilege log consistency of redaction issues that we

21 have resolved for the Plaintiffs when they've identified

22 them.

23 There is no systematic issue with our document

24 production.  There's also some Google Docs, NGC Docs that

25 don't print out exactly like you might see on the printout,

23

1  but that we've been able to make sure they have the actual

2  underlying data.

3      So I -- I'm surprised to hear this, especially in light

4  of your Honor's admonitions about accuracy on the record,

5  because that is just untrue.  I don't believe any -- we have

6  any indication of any deposition being impaired to date,

7  other than, frankly, the Plaintiff's failure to produce

8  privilege logs for all but two of their -- two of the

9  Plaintiffs.  But, again, we're going through this, and I do,

10 I just think there's nothing in the record.

11     And again, I do seek my colleagues input if I'm

12 overlooking something that will prevent you from making a

13 decision on this record.  What they're seeking are just,

14 honestly, quibbling with the small things that happen in any

15 litigation.  There's nothing of moment here, and Judge

16 Hixson has promptly resolved each dispute that's been

17 brought to him so far.

18     We're not sure exactly why they're doing this, but

19 there really is just not an issue here, other than

20 completing these depositions in the next two weeks.

21         MS. DJORDJEVIC:  Your Honor, may I say something?

22         THE COURT:  Sure.

23         MS. DJORDJEVIC:  Thank you.  This is Nada

24 Djordjevic for Plaintiff Lisa TerKeurst.  I need to point

25 out, my client is in a slightly different position than the

24

1 others.  Her claims were consolidated into this case in

2 July.  Magistrate Judge Hixson has ruled that her responses

3 to everything have been timely, appropriate.  We are

4 producing documents in this case.  And Meta is aware and Ms.

5 Hartnett is aware that we have -- Plaintiffs generally have

6 raised issues with their production that are still being

7 hashed out.  So I don't think it's fair to suggest that

8 anyone is misrepresenting --

9         THE COURT:  Sorry.  You said your client joined

10 the case in July?

11        MS. DJORDJEVIC:  Yes, sir.

12        THE COURT:  So, you filed a separate lawsuit in

13 another --

14        MS. DJORDJEVIC:  Separate lawsuit, yes, that was

15 consolidated in July.

16        THE COURT:  Consolidated into this in July of

17 2024?

18        MS. DJORDJEVIC:  Correct, your Honor.

19        THE COURT:  And was that pursuant to stipulation?

20 How did that happen?  I'm not remembering that.

21        MS. DJORDJEVIC:  I believe it was pursuant to

22 stipulation.  Months' worth of negotiations were required

23 for that stipulation, but it was pursuant to stipulation,

24 yes.

25     So I just want to make sure that my client's interest

25

1  are -- are, you know, protected.  And to the extent that

2  your Honor is considering an extension, I understand that

3  Meta would prefer to only be a week, but given how recently

4  my client has come into the case --

5          THE COURT:  But why would you -- I guess I'm

6  confused.  Like why would you stipulate -- if you filed a

7  separate lawsuit on behalf of your client, and it's a --

8  when did you file the lawsuit?

9          MS. DJORDJEVIC:  So, we filed the lawsuit, I

10 believe in 2023.  I wasn't on it yet.  Actually, in New York

11 against Bloomberg and Meta.  Meta then had that -- the Meta

12 specific portion of that lawsuit transferred over to

13 California.

14         THE COURT:  Okay.

15         MS. DJORDJEVIC:  It was related with this case,

16 but the consolidation did not actually happen until July.

17         THE COURT:  Okay.  I mean, if you were --

18         MS. DJORDJEVIC:  But we have not had the same

19 opportunity yet to --

20         THE COURT:  So when it was --

21         MS. DJORDJEVIC:  -- flip as much as we can, but

22 we've not had the same opportunity to push this case

23 (indiscernible).

24         THE COURT:  It is -- it was -- when was the --

25 your case -- when did your case come here and when was it

1 related to the --

2          MS. DJORDJEVIC:  I believe it was related on July

3 7th.  Don't quote me on the date --

4          THE COURT:  Of 2024?

5          MS. DJORDJEVIC:  -- but early July of 2024.  Yes,

6 your Honor.

7          THE COURT:  So why would you -- why would you

8 agree to have your case consolidated into this case if there

9 was a discovery deadline two months later in this case?

10          MS. DJORDJEVIC:  I mean, our understanding at the

11 time was the discovery was proceeding as appropriate.  The

12 cases were related, I believe, back in January.

13          MS. HARTNETT:  If I may?  Their stipulation -- it

14 was well-known that Ms. TerKeurst would be part of this

15 litigation for months before the stipulation actually

16 finally got finalized and filed.  It was just a long process

17 for various reasons to negotiate that.

18      Being the person that's taking Ms. TerKeurst's

19 deposition in Charlotte, she's actually producing thousands

20 of pages throughout this week, which is a major burden to

21 us.  We're getting through them.  We will get ready to take

22 her deposition, but I'm really unclear on what points are

23 being raised here with respect to Meta's production.

24 There's been nothing in Meta's production that I believe has

25 raised any issue for Ms. TerKeurst.

27

1          MR. GHAJAR:  And if I could add to that, your

2 Honor.  Ms. Djordjevic suggests that her client would like

3 an opportunity to do something differently.  As far as we're

4 aware, and I'm speaking on behalf of Meta, the discovery

5 that we received from her lone client is the exact same

6 discovery served by the rest of the Plaintiffs.  There's no

7 unique discovery.  They have access to all of the same

8 thousands of documents we produced months ago, and

9 presumably, had access to them before the consolidation was

10 finalized.

11     And so, it seems a bit like window dressing or

12 exaggeration to suggest that Ms. TerKeurst hasn't had an

13 opportunity to conduct discovery.  She has.  She's decided

14 to file the exact same responses and the exact same requests

15 as the rest of the Plaintiffs.  So, I think that that excuse

16 doesn't carry any weight.

17     I want to go back to the top of hearing, if I may,

18 because I'm --

19          MS. DJORDJEVIC:  Can I respond to your comment

20 first?

21          THE COURT:  No.

22          MS. DJORDJEVIC:  -- before you move on to another

23 point, if that's all right?

24          THE COURT:  No.

25          MR. GHAJAR:  I'd like -- thank you, your Honor.

1    Your Honor is concerned about having a full record.

2  We've produced document sufficient, more than sufficient to

3  show the way the models -- what's in the models.  They've

4  had the training data for months.  They've hired experts to

5  examine the training data.  They finally got around to

6  sending somebody to our offices to inspect the data.  They

7  spent a couple of days in our offices doing that.

8    Your Honor, this is a case where Plaintiffs will have

9  to show that they have valid copyrights.  That they have

10 standing, they own the copyrights, and that their works were

11 in a dataset used by Meta or other -- and other companies.

12 They have all the information they need for that.

13    In fact, they possess information on their own standing

14 and their own copyrights.  So it's been like prying --

15 prying to get that out of them, but we've gotten it out of

16 them.  That's our burden.  We're going to have a record on

17 that.

18    As to fair use your Honor has heard argument from

19 counsel about transformativeness, and, your Honor, they

20 don't need any more discovery on that.  It is really trying

21 to nibble around the edges to point fingers as an excuse for

22 their own lack of diligence.  They have what they need.  The

23 record is fulsome.

24    There is no additional information that they need from

25 our client in order to proceed with the case.  And to either

29

1  disprove that theories should be applicable here, or to

2  prove their burdens as Plaintiff to show that they have

3  valid copyrights they own and they have standing to assert

4  them, and that their works were used without permission.

5          THE COURT:  Let me -- I'm trying to think -- I'm

6  trying to think about this practically.  And we have -- so

7  the current schedule is, discovery -- fact discovery cutoff,

8  September 30th, right?  And then you've got expert

9  discovery.  And then there -- we scheduled a hearing on

10 summary judgment as to the named plaintiffs.  And when is

11 that hearing supposed to be?

12         MS. HARTNETT:  March.

13         MR. YOUNG:  March, your Honor.

14         THE COURT:  And so then, you know, you'll have a

15 ruling in March or April on that.

16     And, you know, I suppose ones practical way of dealing

17 with this is to say, look, it's obvious that the Plaintiffs

18 have not diligently pursued the case.  It -- we're not going

19 to extend the discovery cutoff, except for maybe the short

20 extension that Ms. Hartnett is talking about, and I can ask

21 more about the details of that proposal in a second.  We'll

22 go to summary judgment.

23     And then, you know, if we, you know, if we get to the

24 point where, you know, that at the summary stage, obviously

25 the Plaintiffs are free to make whatever argument they want

1  about how they've been prevented from getting information

2  that they need, you know, to fight of a summary judgment

3  motion.  Or maybe Meta is right, that I have all the

4  information I need to decide it on summary judgment.

5       And if I, you know, if I decide it on summary judgment

6  and I deny summary judgment, and I say there needs to be a

7  trial on fair use because there are these -- you know,

8  because there are, you know, factual issues that a jury

9  would need to decide before I could I render a ruling on

10  fair use, then we could have a discussion about whether any

11  additional discovery would need to be done before trial.

12  Because we still have -- we would still have the class

13  certification phase.  And, you know, if additional merits,

14  discovery needs to be done during that time, that would be

15  fine.  But that would have the benefit of not delaying the,

16  you know, the case schedule in the meantime.

17            MR. YOUNG:  Your Honor, if I may?

18            THE COURT:  Sure.

19            MR. YOUNG:  Your Honor, this -- you know,

20  candidly, this kind of puts us in a difficult position,

21  because we kind of feel like we're in this position because

22  we granted Meta time to complete their discovery, and in our

23  view -- and to give us their privilege log.  And in our

24  view, even with that additional time, their production and

25  privilege log has been in our view grossly deficient.  And

31

1   what we're hearing right now is, we're being put in a very

2   difficult situation where we have to litigate to summary

3   judgment on what we believe is an insufficient record.

4       You know, just to make the record, when Meta has asked

5   for every extension, we, consistent with Northern District

6   of California Practice Guideline Four, gave them the

7   extensions without any question.  Perhaps the error was ours

8   in not raising discovery disputes earlier or --

9           THE COURT:  Definitely the error -- to the extent

10  that you have legitimate discovery disputes, and I have no

11  way of telling whether you do, but to the extent that you

12  do, it was definitely your error in not raising them

13  earlier.

14          MR. YOUNG:  Well, your Honor, you know --

15          THE COURT:  And that's part of -- part of how you

16  have failed to adequately and diligently pursue the case.

17          MR. YOUNG:  Well, your Honor, you know, consistent

18  with this Court's, you know, practice guidelines and

19  (indiscernible) on a conference, we've always tried to

20  resort to court intervention, you know, only as a last

21  resort, your Honor.  And, you know, part of the

22  (indiscernible) --

23          THE COURT:  Well, I'm quite confident -- knowing

24  Judge Hixson, I'm quite confident that he said to, and I

25  probably also said to you at the outset of this case, don't

32

1  wait until the 11th hour to bring discovery disputes to

2  Judge Hixson.  And I know that he feels that way, and I'm

3  sure he's admonished to that effect as well.  You don't --

4  you know, you don't wait until the last minute to bring

5  these discovery disputes to the judge.

6      And I don't even know if you have any legitimate

7  discovery disputes to be honest with you.  You know, it

8  doesn't -- as far as I can tell, this has just been a case

9  -- maybe you -- maybe there's an issue with the privilege

10 log, maybe there's not, I don't really know.  But, you know,

11 I can't really -- I mean the first thing out of the mouth of

12 the Plaintiffs was that they hadn't received any documents

13 until August 12th or something like that.

14     So, you're not, you know, you're not exactly -- you

15 know, your assertion that there's a problem with the

16 privilege is not something that I can accept at face value,

17 let's put it that way.

18     What I -- here's what I will say.  What is -- let me

19 just ask the -- and, sorry, Ms. Djordjevic.  You wanted to

20 respond very briefly to something about your case.  You said

21 that -- you said that your case came in and was related not

22 in July, but in January, right?

23         MS. DJORDJEVIC:  It was related in January,

24 consolidated in July.

25         THE COURT:  You've had since January to do -- to

33

1   move discovery forward with respect to your client, right?

2          MS. DJORDJEVIC:  I don't believe that's the case,

3   your Honor.

4          THE COURT:  Why not?

5          MS. DJORDJEVIC:  Because I don't think any

6   discovery was served on us in this case until after we

7   joined in July.  There was discovery from the earlier case

8   that was stayed (indiscernible) --

9          THE COURT:  But what about discovery --

10         MS. DJORDJEVIC:  -- about that.

11         THE COURT:  But are you -- you're complaining that

12  discovery was served on you too late, or that you were --

13  you were unable to get discovery from them relating to your

14  client?

15         MS. DJORDJEVIC:  I'm not complaining about either.

16  That's why I wanted to respond to Mr. Ghajar.  And I

17  apologize.  I don't know how he actually pronounces his last

18  name.

19         THE COURT:  Ghajar.

20         MS. DJORDJEVIC:  That I'm not trying to make an

21  excuse what we did or didn't do.  I just want to protect my

22  client's interests by saying, to the extent that you are

23  willing to grant an extension, that it be more than the week

24  Meta is doing, just because I need -- again, I'm just

25  putting this on the record to protect my client's own

34

1 interests, if nothing else, to allow enough time.  A number

2 of disputes have been raised with Magistrate Judge Hixson

3 recently, and he's ruled on them under the current deadline,

4 with the caveat that if your Honor didn't grant an

5 extension, he would look at again at some of them.

6      I think it would at least be fair, because we contend

7 there are some privilege -- not privilege, remaining issues

8 with the production, privilege, whatnot.  Meta says not --

9 to at least allow enough additional time to let Magistrate

10 Judge Hixson and the parties address those on the merits,

11 because right now there's so little time left, it isn't

12 possible to get you the information that would let you know,

13 were there real disputes.

14          THE COURT:  Ms. Hartnett, what is your -- what is

15 -- Ms. Hartnett, what's your proposal for an extension?

16          MS. HARTNETT:  Well, just on that last point, I --

17 the only -- I believe the only motion that Judge Hixson

18 deferred on was whether to expand the number of depositions,

19 where the Plaintiffs were seeking a massive expansion, and

20 he said, not under the current case schedule.

21      Otherwise, he's been resolving other disputes based on

22 the current record.  I believe the parties have until seven

23 days after the cutoff to bring those motions, if I'm not

24 mistaken.  And so, therefore, there's not an issue with any

25 -- we can resolve those things, and if there's additional

35

1  production that needs to be made, that will get resolved.

2  So I don't think that's an issue with the current schedule.

3     The only issue with the current schedule is that

4  technically (indiscernible) after the 30th of September

5  under the current schedule, unless the parties agree.  We

6  have tried to reach agreement on that.  And so what we would

7  request is to allow depositions to occur, I would say maybe

8  the first two weeks of October, just to make that we are

9  able to actually complete them.  That would be our proposal.

10     And, also, we did look closely at the schedules, with

11 the eye of keeping the March date on calendar, and we

12 believe the expert deadlines could all probably be advanced

13 one week, giving the parties a little bit more time for

14 opening, rebuttal and reply reports.  And that would -- so,

15 moving each of those days a week forward would give us a

16 little more room there to get that done.

17     So we would say, if anything, two weeks for

18 depositions, not additional fact discovery, just the

19 finishing of depositions, and the one week for those three

20 expert deadlines.

21          MR. GHAJAR:  If I could --

22          THE COURT:  Okay.

23          MR. GHAJAR:  Could I -- could I add to my

24 colleague's remarks?  It's the depositions, your Honor, the

25 reason we're in this situation is some of the Plaintiffs are

36

1  not available during the discovery cutoff.  So it's to

2  complete the depositions identified, not new depositions.

3      So, for example, I'm in New York right now.  I was to -

4  - I was supposed to take Mr. Coates' deposition today.  He

5  fell ill and cancelled the morning of.  And I'm -- we're

6  trying to find another date.  It may be beyond the discovery

7  cutoff.  So that's the type or rescheduling we're talking

8  about.

9      The same thing happened with Ms. Silverman, scheduled

10 to take her deposition last Friday.  The day before she fell

11 ill.  The only dates offered to us are after discovery

12 cutoff.  So when my colleague, Ms. Hartnett, is talking

13 about additional time for depositions, we want to make clear

14 it's for the depositions that have been noticed, not a new

15 swath of them.

16          MS. HARTNETT:  Correct.

17          THE COURT:  Okay.  So here's what I'm going to do.

18 For now, I'm going to -- I'm going to extend the discovery

19 -- fact discovery cutoff by 14 days for the purpose of

20 taking depositions that couldn't be scheduled before the

21 discovery cutoff.

22     I will extend the expert -- what is it, the expert

23 disclosure and rebuttal expert disclosure dates by seven

24 days.  Is that what you're proposing?

25          MS. HARTNETT:  Yes.  It's opening, rebuttal and

37

1  rely.

2        MR. SAVERI:  Yeah.  Your Honor, I -- we have set

3  it up so there's two dates.  Each party does it at the same

4  time, and then there's simultaneous rebuttal.  So it's those

5  days.

6        THE COURT:  So it seems like you -- the two of you

7  just said inconsistent things.  It seems like Ms. Hartnett

8  was saying there's opening and opposition and rebuttal and

9  -- or opening and rebuttal and reply.  And you were saying

10 that there was simultaneous opening and simultaneous

11 rebuttal.  Which is it?

12       MR. SAVERI:  I understand it's on the -- the

13 opening opinions would be on the issues that we have the

14 burden of proof.

15       THE COURT:  Okay.  Well, what's the answer?

16 Somebody -- this a --

17       MS. HARTNETT:  Yeah.  I just pulled this from the

18 scheduling order.

19       THE COURT:  -- this a provable issue.  There

20 shouldn't a dispute of fact on this issue.

21       MR. SAVERI:  In any event, your Honor, we're fine

22 with slipping the dates to that interval that we're talking

23 about.

24       THE COURT:  And, Ms. Hartnett, sorry.  You said

25 you were just -- you just pulled the deadlines.  What is it?

38

 1          MS. HARTNETT:  The case schedule is docket 87.

 2  And I'm just trying to make sure I didn't lose something

 3  here in translation.  One second, please.  Docket 87 has --

 4  this is your case schedule that you've entered.  It has

 5  opening report --

 6          THE COURT:  Read it again.

 7          MS. HARTNETT:  Yes.  Opening reports, October

 8  11th, rebuttal reports, November 8th, reply reports,

 9  November 22nd.  So we -- for those three deadlines, we would

10  propose moving them a week forward.

11          THE COURT:  I don't see in the -- on the docket on

12  -- I'm sorry, what docket number?

13          MR. SAVERI:  Eighty-five.

14          MS. HARTNETT:  Eighty-seven.

15          MR. SAVERI:  Eighty-seven.

16          THE COURT:  That's funny.  I don't see reply

17  reports on there.  I see only opening and rebuttal reports

18  on there, at least in the minute entry.

19          MS. HARTNETT:  Yeah.  It's in the Exhibit A, the

20  schedule that you so ordered.

21          THE COURT:  Okay.  All right.  So, anyway, so the

22  deadlines are -- sorry.

23          MS. HARTNETT:  Sorry.

24          THE COURT:  October 11th, November 8th, and what?

25          MS. HARTNETT:  November 22nd.

39

1         THE COURT:  So you're saying move each of those

2  dates back by seven days?

3         MS. HARTNETT:  Yeah.  Although for the 22nd one,

4  if you do that, it may be better to make that December --

5  sorry, December 2nd, because seven days would be --

6         THE COURT:  The holiday?

7         MS. HARTNETT:  Yeah, but we get the day after

8  Thanksgiving.

9         THE COURT:  Okay.  That's -- so, I going to -- I

10  will move those dates as you have proposed.  Those dates

11  will be moved as you've proposed.

12      And I -- you know, you heard what I said about adequacy

13  of representation.  That's relevant at the class

14  certification stage, but it -- you know, if -- I will say

15  that if I -- if, you know, Mr. Saveri, if you come in with a

16  newly constituted team and can articulate clearly what it is

17  you're missing that is critical for the resolution of the

18  fair use issue, and you want to file a renewed request for

19  an extension of time, I'll consider it.  But it has to make

20  -- it has to make very clear, you know, sort of what's

21  missing that is important to the resolution of the fair use

22  issue at summary judgment.

23      But I'm not -- I have no confidence in the team that

24  exists right now to justify pushing this back and doing a

25  ton more discovery.  So I'm -- if you want to file a renewed

40

1 motion, it has to be with a newly-constituted legal team.

2          MR. SAVERI:  Okay.  Your Honor, thank you. I do

3 take your criticism seriously, and I'm confident that I'll

4 -- we'll be able to address it.  But the proof of the

5 pudding's in the eating.  And so, I hear you, your Honor,

6 100-percent.

7          THE COURT:  Okay.  But if when you say I'm

8 confident we'll be able to address it, if what you're saying

9 is that I'm confident we'll be able to convince you --

10          MR. SAVERI:  No, your Honor.

11          THE COURT:  -- of adequacy of representation --

12          MR. SAVERI:  Yes, yes --

13          THE COURT:  -- at the last stage with this team?

14          MR. SAVERI:  Yeah.  Yes.

15          THE COURT:  I would not feel --

16          MR. SAVERI:  Not necessary with this team, your

17 Honor.

18          THE COURT:  -- I would not feel confident with

19 that.  Yeah.  Okay.

20          MR. SAVERI:  I hear you loud and clear.  The most

21 important thing to me that you said -- well, I wouldn't rank

22 it, but the criticism of the work we've done I take very

23 seriously.  And I -- and the only way I'm going to be able

24 to prove that is to demonstrate it to you.  And I'm not

25 going to try to tell you that, I aim to prove that to you.

41

1    And so, I hear on you that, your Honor.  That's --
2  that's all I would say on that point.

3              THE COURT:  Okay.

4              MR. SAVERI:  Can I ask -- your Honor, can I ask a
5  question about the summary judgment?

6              THE COURT:  Yeah.

7              MR. SAVERI:  So, it's not clear to me based on the
8  discovery that's been taken from some of the Plaintiffs,
9  exactly what the parameters of the summary judgment motion
10 are going to be.

11    Is it the case that it's limited to the fair use
12 defense, or is there more?  And we -- if there's more, we
13 would like to know it now.

14             THE COURT:  It seems like in the interest of sort
15 of moving this case along efficiently and making sure that
16 it's adjudicated properly, it would be nice to hear from the
17 Defendants about what I'm going to have to be dealing with
18 at summary judgment --

19             MR. GHAJAR:  Sure, I'll (indiscernible) it.

20             THE COURT:  -- to the extent that -- to the extent
21 that you're able to do so.

22             MR. GHAJAR:  Yeah, exactly.  To the extent I'm
23 able to do so, I can preview at least one issue, and there
24 may be others.  And the others are subject to further
25 investigation and deliberations with my team -- the team and

42

1 the client.

2     But one of the issues I previewed earlier in the call

3 is one of standing.  Your Honor, just to file a case for

4 copyright infringement, Plaintiffs need to own the

5 copyrights, they need the right to sue on the copyrights.

6 And we believe that that could be an issue with the

7 Plaintiffs here.  I'd rather not get into any more detail,

8 but there would be a standing issue that is potentially

9 easily addressed on summary judgment.

10     And I would reiterate for the Court that it has nothing

11 to do with the discovery Plaintiffs seek from Meta, and

12 everything to do with the discovery we have sought from

13 Plaintiffs.

14        MR. SAVERI:  Your Honor, if I may.  I -- if there

15 is a standing issue, I do agree with Mr. Ghajar that that's

16 -- that doesn't require discovery from the other side.

17 That's about what our -- whether our Plaintiffs have

18 copyright protected work and whether they own it.

19     If there's more, I don't -- and especially if we're

20 proceeding on this kind of advanced schedule, I think it's

21 fair to the Plaintiffs, particularly given where we are in

22 discovery, to be advised what summary judgment motions are

23 intended.

24        THE COURT:  Well, I think that Mr. Ghajar was just

25 -- just going through that, so why don't --

43

1          MR. SAVERI:  I'm sorry.  I thought he was done.

2          THE COURT:  -- you give him a chance --

3          MR. SAVERI:  If there's more, your Honor, I

4  apologize.  I thought he was done.

5          THE COURT:  Why don't you give him a chance to

6  finish.

7      Yeah, go ahead.

8          MR. GHAJAR:  Thank you, your Honor.  I -- again,

9  with the caveat that there may be other issues, I'll preview

10  a second issue.  This is non-exhaustive, but we believe that

11  these are important potential defects.

12      The Plaintiffs have alleged to your Honor in the

13  complaint that certain of their works appeared in a dataset,

14  and that Meta used that dataset, so, therefore, there was

15  copying of their works through that dataset in the training

16  of certain large language models.

17      What we have seen in the context of revising the

18  complaint that was filed with you a couple of weeks ago --

19  your Honor might have seen there was a corrected second

20  consolidated, amended complaint, is that at least one of the

21  Plaintiffs sought to remove works from that complaint.

22  Perhaps we haven't had a chance to exhaust discovery on

23  this.  Perhaps based on a realization, your Honor, that

24  those works did not appear in the accused dataset.

25      And so I don't think it's groundbreaking to observe

44

1  that if a dataset was used that does not contain works that

2  are asserted in the complaint, they cannot form the basis of

3  a copyright infringement claim.  So that is another issue on

4  which we may --

5        THE COURT:  All of that stuff -- I mean, all that

6  stuff is going to be -- I mean, that's-- that's plaintiff by

7  plaintiff -- that's going to be a plaintiff-by-plaintiff

8  thing and a work-by-work thing.  It sounds like it's not

9  necessarily something that might be dispositive of the

10 entire case, is that right?

11       MR. GHAJAR:  No, but appropriate for --

12       THE COURT:  Yeah, yeah.

13       MR. GHAJAR:  -- partial (indiscernible) judgment.

14       THE COURT:  Yes.

15       MR. GHAJAR:  Yes, your Honor.  Yes.

16       THE COURT:  Okay.

17       MR. SAVERI:  And, your Honor, I guess my request

18 is, to the extent that there are summary judgments that are

19 planned or intended, consistent with what we've done in

20 other cases, if we're on this kind of track, for the

21 Defendants to advise us sooner rather than late.  We --

22 instead of playing hide the ball.

23    I don't -- we propounded discovery on that.  We don't

24 know the answer.  I thought this would be a good opportunity

25 to raise it.  And so I --

45

1            THE COURT:  Yeah, I know, but you keep -- and then

2    you keep interrupting him as he's talking.  So I don't --

3            MR. SAVERI:  I'm sorry, your Honor.  I thought he

4    was done.  I apologize again.

5            MR. GHAJAR:  Well, I actually was done, your

6    Honor.  But they have not asked -- I'm not aware of a

7    discovery request asking us to identify all bases you're

8    considering for summary judgment.

9            MR. SAVERI:  Okay.  All right.

10           THE COURT:  Yeah.  I'm not sure that would be an

11   appropriate --

12           MR. SAVERI:  We'll -- we'll take that up, your

13   Honor.  I'm not going to debate what -- where we are on

14   that.

15           THE COURT:  I'm not -- I'm not sure it's

16   appropriate to make a discovery request about all summary

17   bases you may be considering, but I do think that in the

18   interest of efficiency and moving this case along, and with

19   -- consistent with the position that Meta has taken in its

20   papers, it would be -- it would be very helpful to the Judge

21   and the Magistrate Judge, as well as the parties involved,

22   to identify the issues that we need to get -- be getting

23   ready to deal with at summary judgment.

24           MR. GHAJAR:  Understood, your Honor.  Hopefully --

25           THE COURT:  Okay.

46

1          MR. GHAJAR:  -- hopefully the additional
2     background I gave today was relevant and responsive.  We
3     wouldn't normally have --
4          THE COURT:  Yeah.
5          MR. GHAJAR:  -- gotten into that detail this far
6     before summary judgment, but I wanted to be --
7          THE COURT:  Right.
8          MR. GHAJAR:  -- responsive to your Honor.
9          MR. SAVERI:  Your Honor, I have one more issue I
10    want to raise.
11         THE COURT:  Okay.  Make it quick because we have a
12    number of parties waiting to --
13         MR. SAVERI:  And I -- so, your Honor, part of our
14    discoveries indicated that the piracy and the copying is
15    limited to the database that we have in our complaint.  So
16    we're contemplating an amendment, and we'd like to do that
17    soon.  And that's based in part of depositions this week.  I
18    don't want anybody to be surprised by it.  If -- maybe we
19    just make that motion as soon as we can and take it up, but
20    I certainly wanted to advise everybody about that.
21         THE COURT:  And you're saying the copying isn't
22    limited to the accused databases as it's been referred to?
23         MR. SAVERI:  Yes.
24         THE COURT:  Meaning copying of your -- of the
25    works of your clients?

47

1          MR. SAVERI:  Yes, your Honor.

2          THE COURT:  And I'm curious.  Like is -- would it

3    matter?  Like if they -- if they happen to acquire your

4    client's works from two different databases and fed them

5    into the large language model, versus acquiring your

6    client's work from one database and feeding it into the

7    large language model, would that make any difference in the

8    fair use analysis?

9          MR. SAVERI:  Yes, your Honor, in a couple ways.  I

10   think the multiplicity of that goes to issues like intent

11   and scienter.  Also, this is a statutory damages case, so it

12   would change the arithmetic.  And so, those are just two

13   ways off the top of my head.

14       With respect to fair use, your Honor, probably not, to

15   be fair.  I mean, because the -- but I haven't thought that

16   through entirely, but if that's the --

17         THE COURT:  Why did it -- why would it need -- the

18   other question that pops into my mind is, why does it need

19   an amended complaint?  I mean, if -- you know, there -- you

20   know, it seems to me that that you have a complaint that

21   alleges, you know, that they have -- you know, they've

22   acquired -- you know, there's these -- unauthorized database

23   that has your client's works.  They acquired that.  They fed

24   it into the language model.  They didn't have permission to

25   do that.  It's copyright infringement.  Whether it's one or

1  two, it's not obvious to me why that needs an amendment to

2  the complaint.  Maybe it does.  I'm just saying that I'm --

3  it's not obvious to me.

4          MR. YOUNG:  Your Honor, if I may?  I think it does

5  go into the fair use analysis, particularly with respect to

6  fair use factors one, which deals with elements of good

7  faith, willfulness.  If you're caught being illegal works

8  multiple times, that goes to willfulness.  That will need

9  discovery.

10      But it also goes to factor three, substantial --

11  substantiality of the works.  If you're including the same

12  work multiples times willfully and intentionally, I think

13  that goes straight to that fair use factor, your Honor.  And

14  also commerciality, your Honor.  If you are including more

15  datasets to make your product more profitable, that seems to

16  me to do directly towards the commerciality, which is

17  another fair use (indiscernible).

18          THE COURT:  Okay.  Well, I just don't think --

19  that's fine.  I mean, I just wanted to ask some initial

20  questions about that and share my initial reaction to that,

21  to the extent it's helpful.  You have to take my questions

22  and comments on that with a grain of salt because I've never

23  thought about it before, but I thought that would be useful.

24  But obviously we're not resolving that issue here today.

25          MR. SAVERI:  And I just -- I'm -- I appreciate

49

1 that.  We're not -- we wanted to raise it.  We didn't

2 anybody to be surprised.  We have to consider that.

3          THE COURT:  Okay.  All right.  Thank you very

4 much.

5          MR. YOUNG:  Thank you, your Honor.

6          MS. HARTNETT:  Thank you.

7      (Proceedings adjourned at 2:00 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

50

1                 <u>CERTIFICATE OF TRANSCRIBER</u>

2

3     I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9     I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15 

16

17        Echo Reporting, Inc., Transcriber

18          Wednesday, September 25, 2024

19

20

21

22

23

24

25

# EXHIBIT B