**Via ECF**
September 30, 2024

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey, et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417 (N.D. Cal.)

Dear Honorable Judge Hixson:

The Consolidated Plaintiffs in the above-captioned action ("Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta"), pursuant to the Court's instructions at the September 25, 2024 telephonic discovery hearing (Tr. 26:20-22), jointly submit this letter brief regarding the topics that were the subject of that hearing.[1] The Court ordered that each party's submission could be up to five pages.

---

[1] Per the Court's instructions, the parties will submit a joint letter brief on any remaining privilege issues, to the extent they are not resolved through the meet-and-confer process.

**PLAINTIFFS' STATEMENT**

I.   Additional Custodians

Plaintiffs respectfully request an order requiring Meta to include the following document custodians: (1) Mark Zuckerberg, (2) Eleonora Presani, (3) Alex Boesenberg, (4) Amanda Kallet, and (5) Nikolay Bashlykov. Plaintiffs' support for their request is provided below.

　　A.　Brief Background

The Parties' Stipulated Order re: Discovery of Electronically Stored Information ("ESI Protocol") (ECF No. 101) provides a procedure for adding "additional Document Custodians". ESI Protocol, ¶ 6.b. The ESI Protocol requires the parties to meet and confer, and if agreement cannot be reached within 30 days, then the matter may be brought to the Court's attention. *Id.*

Pursuant to the ESI Order, in addition to raising the issue in their request to extend the discovery cutoff, Plaintiffs issued a letter to Meta on August 23 requesting twelve additional ESI custodians with the basis for each. The Parties conferred on August 29, and—in the interest of resolving the issue without Court intervention—Plaintiffs submitted a follow-up letter on September 4 narrowing their list to seven custodians and providing specific justifications as to each requested custodian. Plaintiffs met and conferred with Meta on September 20, but Meta failed to respond other than by way of their argument during the September 25 hearing. Meta has largely ignored Plaintiffs' efforts to resolve this issue through the meet-and-confer process.

At the September 25 hearing, Meta characterized Plaintiffs' request as "last-minute" (Sept. 25 Hr'g. Tr. at 19:20), and argued that the requested additional custodians "are individuals that Plaintiffs have been aware of for the length of the discovery period[.]" Sept. 25 Hr'g. Tr. at 16:11-13. Not so. Meta did not designate *any* of the requested additional custodians in either its initial or amended Rule 26 disclosures (dated May 29, 2024). Instead, Plaintiffs had to determine these custodians and their importance only after a careful review of Meta's document productions.

At the hearing, Meta stated that it would take a minimum of two weeks to produce documents for just one of the requested additional custodians and that search terms and privilege review require additional time. Plaintiffs reasonably believe that these custodians have already been identified and their documents segregated, along with other percipient witnesses possessing knowledge of the facts at issue in the case. Even if it were true that Meta has yet to begin to search for or process custodial ESI for these individuals, Meta could have started the process long ago.

　　B.　Specific Custodians Requested

1. **Mark Zuckerberg.**  Meta cannot credibly dispute that Mr. Zuckerberg's custodial ESI contains relevant information: "Plaintiffs have made an evidentiary showing that Mr. Zuckerberg is the chief decision maker and policy setter for Meta's Generative AI branch and the development of the large language models at issue in this action." ECF No. 171 at 2. Mr. Zuckerberg should be designated as a document custodian.

Rule 26's proportionality analysis applies equally to executives, like other custodians. *Oracle Am., Inc. v. Google Inc.*, No. 10-CV-03561-WHA-DMR, 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015). Courts routinely add CEOs as custodians where their files are likely to contain relevant information. *See Shenwick v. Twitter*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (ordering Twitter CEO Jack Dorsey be added as a document custodian); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*, 2018 WL 1440923, at **3-4 (D. Kan. Mar. 15, 2018) (designating as document custodians two former CEOs who were part of company's decision-making team).

Plaintiffs recently submitted papers and evidence showing Mr. Zuckerberg is a percipient witness with specific personal knowledge about critical facts of consequence in the case. News articles and documents produced by Meta show Mr. Zuckerberg's specific involvement in Meta's AI initiatives. *See* ECF Nos. 162-4 at 14; 162-5; *see also* "Mark Zuckerberg: creators and publishers 'overestimate the value' of their work for training AI", *available at* https://www.theverge.com/2024/9/25/24254042/mark-zuckerberg-creators-value-ai-meta ("I think that in any new medium in technology, there are the concepts around fair use and where the boundary is between what you have control over."). Additionally, Meta produced documents showing that Mr. Zuckerberg was the principal decision maker concerning Meta's decision to open source the language models at issue in this litigation. ECF No. 162-9 (Meta_Kadrey_00048261) ( ▮ ). What is more, Plaintiffs have submitted evidence of Mr. Zuckerberg's direct supervision of Meta's AI products. ECF Nos. 162-11; 162-12; 162-13; 162-14 (Meta_Kadrey_00032756) ( ▮ ); (Meta_Kadrey_00033120) ( ▮ "); (Meta_Kadrey_00033868) (" ▮ "); (Meta_Kadrey_00033900) ( ▮ ").

Plaintiffs' request for Mr. Zuckerberg's custodial file is proportional to the needs of the case, a matter of paramount societal importance, with billions of dollars in potential claims concerning the rights of thousands of copyright holders, against a company with vast resources. Sept. 20 Hr'g Tr. at 15:13-6. The evidence produced thus far shows that Mr. Zuckerberg had direct supervision and authority over Meta's AI products at issue, and possesses unique documents related to Meta's willful copyright infringement. ECF No. 162-11 (Meta_Kadrey_00032756) ( ▮ ).

**2. Eleonora Presani.**  Plaintiffs request an order that Dr. Eleonora Presani be designated as a document custodian. Last week, Plaintiffs took their deposition. That deposition showed that they possessed numerous relevant documents, which have not been produced. Meta did not disclose Dr. Presani in its initial or amended disclosures.

Plaintiffs first requested Dr. Presani be added as a custodian on August 23.  Initially, Plaintiffs' request for their custodial file was based on ▮

███████████████████████████. These materials were produced, among other reasons, because they were responsive to search terms run on other's custodial ESI. Plaintiffs reasonably believed there were likely other such documents, along with other documents on similar topics, located within Dr. Presani's custodial file. At their deposition, Dr. Presani intimated there were. Presani Dep. Tr. at 219:12-16 (Ex. 1) ███████████████████████████████████████████████████████████████████████████████████████████████). It appears no such documents have been produced. Acknowledgment that ████████████████████████████████████ is relevant to a number of disputed issues, including proof of violations as well as intent regarding the unlicensed use of copyrighted material to train Meta's LLMs. *Harper & Row Publ'rs v. Nation Enters.*, 471 U.S. 539, 562 (1985). Dr. Presani's testimony raises a high likelihood that their files contain relevant and unique information that has thus far not been searched.

Dr. Presani's testimony also revealed that they have had highly relevant communications with non-custodial third parties about ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Presani Dep. Tr. at 179:8-20 (Ex. 1) ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ not only shows intent, it also serves to prove the existence of a commercial market for training data, which is directly relevant to defeat Meta's fair use defense. ████████████████████████████ would also help establish a measure of damages, namely what a willing buyer would have paid in the "but-for" world. Plaintiffs understand Meta intends to dispute each of these facts and move for summary judgment with respect to them. *See* Fed. R. Civ. P. 56(d).

**3. Amanda Kallet & Alex Boesenberg.** Plaintiffs also request the custodial ESI of Amanda Kallet & Alex Boesenberg, Meta employees ████████████████████████████████████████████. Kallet and Boesenberg were each members of Meta's business development ("bizdev") team. Neither were disclosed by Meta. The bizdev team was responsible for developing a commercially viable generative AI product, a fact which goes directly to the first and fourth factors of the fair use analysis. *Harper & Row*, 471 U.S. at 562, 566-67. Also, ████████████████████████████████████████████████████. Specifically, Meta produced a document entitled "Generative AI BD Pipeline – 2023" ("Pipeline Document"). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ is directly relevant to many disputed issues in the case.

4

Meta argues that Plaintiffs' RFP on licensing efforts goes to documents that "were used" to train Meta's Llama models. But the documents produced to date reveal that Meta's ▮▮▮▮ The documents produced indicate that Meta ▮▮▮▮ *See, e.g.*, Meta_Kadrey_00065314.00012 ▮▮▮▮ (Bracketed language in original.) These documents are highly relevant because they would reveal ▮▮▮▮, which goes to fair-use factor four, the effect on the potential market or value of the copyrighted work. *Harper & Row*, 471 U.S. at 561.

**4. Nikolay Bashlykov.** Plaintiffs also request the custodial ESI of Nikolay Bashlykov ▮▮▮▮ During the deposition of Melanie Kambadur, one of the key developers of Meta's large language models, Plaintiffs examined her about who obtained, compiled or curated the training data, and the steps that were followed to download and process ▮▮▮▮ Kambadur Dep. Tr. 69:1-11 (Ex. 2) (▮▮▮▮

▮▮▮▮ The documents that Meta has produced thus far, and the testimony Plaintiffs have elicited by the witnesses deposed to date, indicate Mr. Bashlykov's custodial file contains unique and highly relevant nonduplicative information.

▮▮▮▮ That is wrong. The Complaint broadly defines the class as: "All persons or entities domiciled in the United States that own a United States copyright in any work that was used as training data **for any version of the Llama language models between July 7, 2020 and the present**[.]" ECF No. 133 at ¶ 83 (emphasis added). ▮▮▮▮ Moreover, it was not until *after* Plaintiffs filed their complaint that Meta chose to release a model ▮▮▮▮ *See, e.g., supra*, section I.B.2. This goes to multiple fair use factors, including good faith, the amount and substantiality of the works used, and commerciality. *Harper & Row*, 471 U.S. at 562, 566-67.

II.   **Imaging Issues**

Meta's production also suffers from serious and persistent imaging issues. The Court should order Meta to review its productions to determine if documents had been incorrectly imaged and to reproduce those as well. Meta has produced a significant volume of document that are cut-off

5

and illegible. This violates not only the ESI Protocol but Meta's obligations under the Federal Rules. Plaintiffs should not have to comb through Meta's production to identify each violating document when it was Meta's obligation in the first instance to produce documents that are legible and searchable.

III.     30(b)(6) Issue

Plaintiffs' Rule 30(b)(6) deposition notice is limited to a single page of eleven topics which are highly relevant to the remaining claims in this litigation. Ex. 4.  Meta has not yet disclosed how many witnesses it intends to produce to address the eleven topics noticed by Plaintiffs, but it has indicated that it plans on designating more than one Rule 30(b)(1) witness to testify. Plaintiffs and Meta have not been able to agree upon how much time should be allocated for Rule 30(b)(6) testimony and how much advance notice Meta must provide to Plaintiffs concerning which witnesses will testify as to what topics. This disagreement became especially problematic when Meta attempted to designate Todor Mihaylov, who was set to testify in his individual capacity, as a Rule 30(b)(6) witness one topic the evening before his deposition. When asked about how Meta prepared him as a corporate designee to testify on data ablation experiments, the witness stated he did not do any specific preparation. *See* Mihaylov Dep. Tr. 21:7-9 (Ex. 3) ("I didn't do any particular work for this particular topic, just because...for us it's like a day-to-day thing[.]").

Although Plaintiffs provided Meta with caselaw showing that they should be entitled to two separate, seven-hour depositions for each Rule 30(b)(6) and 30(b)(1) witness, they attempted to compromise. Without knowing how many witnesses Meta would designate for eleven topics, Plaintiffs suggested that twenty-four hours of total Rule 30(b)(6) testimony would be reasonable, which amounts to a little over two hours of deposition testimony on average per topic. Plaintiffs also requested that Meta provide two weeks' notice as to which witnesses would provide testimony on which topics. Meta refused, agreeing to only seven hours of testimony total, but agreeing to an additional 20 minutes per topic if a deponent were designated on multiple topics, and two days' notice concerning topics.

The Advisory Committee's Notes to the 2000 amendment provide that "the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition" for purposes of computing time limits. Witness noticed pursuant to Rule 30(b)(1) and who is also designated as a Rule 30(b)(6) corporate representative is subject to independent time limitations. *Wesley v. Gates*, 2009 WL 1955997, at *1 (N.D. Cal. July 2, 2009) (individual and corporate representatives, even if they are the same, subjected to separate time limitations). Courts regularly allow parties more than seven hours of corporate representative testimony. *See United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *3 (C.D. Cal. Oct. 26, 2016) (twenty-one hours); *Gibson v. Walmart Inc.*, 2023 WL 11195913, at *4 (C.D. Cal. Dec. 12, 2023) (twelve hours); *Crawford v. Melzer*, 2011 WL 1599650, at *2 (N.D. Cal. Apr. 28, 2011) (fourteen hours).

Limiting testimony to only seven hours (plus twenty minutes on a limited, but unknown number of topics) is too restrictive—especially when Meta has yet to determine how many witnesses to designate for Plaintiffs' topics. Plaintiffs' proposal still restricts the total amount of time available for testimony on important and complex issues, despite not knowing the number of witnesses that will be designated.

## DEFENDANT'S STATEMENT

**Introduction.** As this Court has reminded the Parties, discovery closes **today**, September 30, 2024, and it was incumbent on the parties to raise discovery issues with sufficient time for resolution within the discovery period. *E.g.* ECF 147 at 2. Judge Chhabria recently extended discovery for 14 days for the limited purpose "of taking depositions that couldn't be scheduled before the discovery cut-off." ECF 163. In doing so, the Court considered and rejected Plaintiffs' request to extend discovery for the purpose of expanding it, as the instant motion effectively, and improperly, seeks to relitigate.

Just 18 days ago, Plaintiffs sought to expand the default deposition limit from ten depositions to thirty-five. This Court denied that request, explaining that it was "obviously impossible" for the parties to take and defend dozens of depositions within a two-week period. This motion is more of the same. As explained below, Plaintiffs' demand cannot be accommodated within the discovery schedule and should be denied on that basis alone. Their demand is also unwarranted: Plaintiffs cannot show that the discovery sought is "proportional to the needs of the case" (Fed. R. Civ. P. 26(b)(1)), rather than irrelevant, cumulative, and unduly burdensome.

**Relevant Background.** To meet a July 15 deadline to substantially complete document productions, Meta's attorneys and a team of contract reviewers logged thousands of hours poring over tens of thousands of documents. Below, Meta provides the Court with relevant background on timing of its ESI custodian identification and the process of collecting ESI from its custodians for review against Plaintiffs' discovery requests.

**Identification of custodians.**[2] Based on the discovery sought by Plaintiffs, Meta identified 10 custodians to Plaintiffs as part of the ESI process, beginning with disclosure of two custodians on April 24, 2024 and the remainder on May 11, 2024. Meta also provided information concerning Meta's custodians and their responsibilities in its interrogatory responses and Rule 26 disclosures. As Plaintiffs themselves admitted, Meta identified senior level personnel most likely to have relevant information responsive to Plaintiffs' discovery requests. And they did, resulting in a production of over 20,000 documents between April and August 2024. Every step of the way, Meta did what it was asked and supposed to do. Meanwhile, Plaintiffs failed to demand additional custodians until the waning days of discovery, and now offer vague and generalized explanations as to why those custodians are needed to decide the issues in dispute.

**The collection and review process.** The process of collecting and reviewing documents for responsiveness and privilege was and is time consuming. The process requires Meta to first collect custodial files and process them for delivery to an e-discovery vendor. This initial processing is machine time that is bandwidth constrained by the quantity of materials collected and the volume of Meta's overall e-discovery needs, which are substantial. Accordingly, this first step alone can take up to one week or longer, even if prioritized at the expense of all other tasks by the vendor.

---

[2] During the hearing, counsel inadvertently misspoke when she suggested that Plaintiffs knew of all the individuals subject to this motion for many months. (Tr. at 16:11-13.) Plaintiffs knew of at least one since ***last year*** (Mr. Zuckerberg, listed in *Plaintiffs'* December 2023 Initial Disclosures), and the remainder for several months.

Once that happens, Meta's attorneys must apply search terms to the custodial files followed by a substantive review for responsiveness, and a second level review for privilege. Once all of that is completed, in most cases, at least an additional 48 hours are required to perform a quality control check and process any responsive, non-privileged documents for production; separately, at least an additional seven to ten days is necessary to complete a privilege log, depending on the volume of privileged materials redacted or withheld (adding to the burden). *See* Decl. of Elizabeth Stameshkin ("Stam. Decl."), ¶¶ 2-3. In this case, given the involvement of attorneys on novel issues of privacy, regulation, IP, and a myriad of other legal issues, there was and is a high volume of privileged communication – a review process that itself took hundreds of hours and cannot be solved by merely adding more attorneys, which would increase the risk of mistakes.

At the hearing, Meta's counsel estimated the turnaround for a *single* ESI custodian review, with privilege review done separately. By way of example, it took Meta over eight weeks to collect, review, and produce documents for the 10 custodians it identified. Stam. Decl. ¶ 4.

Above, Plaintiffs speculate that they "reasonably believe that the[] custodians [that are the subject of this letter] have already been identified [by Meta] and their documents segregated, along with other percipient witnesses possessing knowledge of the facts at issue in the case." Plaintiffs cite no evidence for that belief. That said, Meta is exploring the feasibility of any production that the Court might Order. Elsewhere, Plaintiffs argue that Meta has "largely ignored Plaintiffs' efforts to resolve this issue" via meet and confer. This is untrue. Although Plaintiffs have shown no entitlement to this post-cut-off discovery, Meta offered to negotiate a modest extension for limited, additional discovery on discrete issues that Plaintiffs reasonably believe are relevant to the Court's adjudication of fair use. Plaintiffs instead filed another motion (ECF 184) seeking a complete reworking of the discovery schedule to engage in a cumulative, duplicative and wildly disproportionate fishing expedition that ignores the last four months of discovery and the enormous amount of work that has already taken place to build a proper record for the Court.

**<u>Arguments Regarding Specific New ESI Custodians</u>.** If the Court is inclined to consider Plaintiffs' demand for additional custodians notwithstanding its untimeliness, it must be construed in light of (1) the <u>issues in dispute</u> (*i.e.*, primarily (i) whether Plaintiffs' own valid copyrights in the works they allege were infringed; (ii) whether Meta used text datasets that included those works without Plaintiffs' authorization; and (iii) whether such use, if it occurred, is a fair use); and (2) the <u>discovery that has been served</u> prior to the close of fact discovery. Against this backdrop, Plaintiffs demands should be denied.

*Mark Zuckerberg.* The core issue in this case is whether fair use applies to data used to train Meta's Llama models, and the extraordinary request for the custodial documents of Meta's CEO should correspond to a specific, demonstrated need related to that issue. Although Plaintiffs suggest that Mr. Zuckerberg has unique knowledge of "critical facts of consequence," they do not say what those are. Instead, they grossly mischaracterize documents produced by Meta to suggest that Mr. Zuckerberg was the "lead on Llama evaluations" (the documents indicate no such thing) and exaggerate his presence in meetings related to generative AI as evidence that he possesses non-duplicative documents that are material to the issues in dispute. At most, they argue that Mr. Zuckerberg was involved in corporate strategy around AI investment or that he may possess some responsive documents, in particular, related to his role in the peripheral issue of Meta's open

license policy, but this cannot justify requiring collection of his documents. *Affinity Credit Union, et al., v. Apple, Inc.*, 2024 WL 3859802, at *2 (N.D. Cal. Aug. 16, 2024) (denying motion to compel production from Apple CEO Tim Cook). As explained, Meta identified custodians most likely to possess documents responsive to Plaintiffs' discovery requests and already produced those documents—including senior level developers and executives who were responsible for direct oversight of and decision making around the development of the at-issue LLMs, including Meta's VP of marketing and the heads of its Gen AI and research divisions. Plaintiffs have not shown that the documents they seek from Meta's CEO are germane to fair use, or that they are non-cumulative of documents collected from other custodians—many of whom were in the same meetings and were participants in the same discussions and decisions referenced in the documents cited by Plaintiffs. A recent quote from Meta's CEO about "concepts of fair use" hardly suggests that he would have documents on the subject.

**Eleonora Presani.** Plaintiffs describe two categories of communications that they seek from Dr. Presani's files. The first category concerns communications between Dr. Presani and others discussing ▆▆▆. However, Dr. Presani (they/them) is a Program Manager within GenAI, who currently works on Trust & Safety. (Ex. 1, Presani Tr. at 10:18-22.) Their responsibilities are so far removed from anything relevant, that Dr. Presani lacks knowledge even of which datasets were used to train Meta's large language models. *Id.* at 152:4-18, (▆▆▆ *See also id.* at 64:15-20 (no role in evaluating datasets), 64:21-65:2-11 (no role or input in selecting or approving datasets). Dr. Presani testified that, if they had further communications like the one that piqued Plaintiffs' curiosity, they would have been with one of Meta's ESI custodians. *Id.* at 226:16-228-7. This testimony does not show that Dr. Presani has non-cumulative, material, and relevant communications regarding this topic.[3]

Plaintiffs assert that Dr. Presani intimated that such communications exist, but they did nothing of the sort. Dr. Presani testified only that they did not recall any such communications and suggested that it was "possible" that other communications existed. *Id.* at 219:12-219:16. Dr. Presani also testified that ▆▆▆ Presani Tr. at 222:4-223:16. The mere possibility that there exist communications between Dr. Presani and others ▆▆▆ is not an adequate reason to require Meta to undergo the process of collecting and reviewing Dr. Presani's custodial files.

The second category concerns Dr. Presani's alleged communications ▆▆▆. However, any such communications, if they

---

[3] Plaintiffs overstate the purported relevance of Dr. Presani's personal views on ▆▆▆ by citing *Harper & Row Publ'rs v. Nation Enters.* to suggest that "intent" is an element of fair use. 471 U.S. 539, 562 (1985). *Harper & Row* concerned the knowing publication of extensive segments of an unpublished manuscript in order to scoop a competitor—it is inapposite. In almost every fair use case, a defendant intentionally used another's work without permission to create something new. *See, e.g., Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 8 (2021) and *Authors Guild v. Google, Inc.*, 804 F.3d 202, 207 (2d Cir. 2015).

9

exist, would be unrelated to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Nor have Plaintiffs identified an RFP to which those would be responsive. Plaintiffs served a request for communications concerning negotiations of datasets that "were used" to train Meta's Llama models (*see* Ex. C, Plaintiffs' 4th Set of RFPs, No. 77 – responses due September 30); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

***Amanda Kallet & Alex Boesenberg.*** Plaintiffs' demand regarding Ms. Kallet (whose deposition they withdrew) and Mr. Boesenberg (whose deposition they adjourned) suffers from the same deficiencies as discussed with respect to Dr. Presani. Plaintiffs have not made a showing that either possesses documents responsive to Plaintiffs' discovery requests or that collection from each individual—whom Plaintiffs represent had similar responsibilities – would not be duplicative.

***Nikolay Bashlykov.*** Plaintiffs seek Mr. Bashlykov's documents because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is reflected in Plaintiffs' discovery requests, which have sought only limited discovery on this topic. *See* Ex. B, Plaintiffs' First Set of RFP, No. 7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Even so, Meta produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs have not, and cannot, articulate a need for *additional* custodial documents related to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Plaintiffs' individual claims (class discovery has not yet begun), and concerning which there has been only limited discovery. Moreover, any shared custodial locations (with other ESI custodians) where Mr. Bashlykov maintains documents related to training data would have already been collected, searched, and reviewed for responsiveness, which is why Plaintiffs received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Alleged Imaging Issues.** Plaintiffs' suggestion that Meta must re-review its entire production, rather than reproduce the unique document-type to address Plaintiffs' concerns, creates a burden for Meta without reason. Earlier today, to resolve this discovery dispute, Meta offered to Plaintiffs a compromise with respect to Plaintiffs' concerns with the imaging of documents, as an exception to its normal processes and for this specific matter. (Ex. A, 9/30 Stameshkin email to Counsel) Meta proposed, for the purposes of this case, that for Google Suite.docx files (the files at issue in Plaintiffs' motion) previously produced as TIFF files, where comment information and/or text is not visible in the TIFFs as produced, Meta would agree to (1) reproduce those documents without redactions in native format (which could occur this week), and (2) to work with its vendor to identify a custom solution to attempt to make this information available, if possible. (*Id.*) Meta reiterated that, to the extent there are other specific files that Plaintiffs believe require native or specialized production, Meta would confer with Plaintiffs as set forth in the ESI Order. (*Id.*) Meta's compromise would obviate the need for court intervention on this issue.

**Dispute over 30(b)(6) Deposition Limits.** For background, Meta repeatedly asked Plaintiffs to serve their 30(b)(6) notice weeks ago, in anticipation of the discovery close and scheduled depositions. On September 16, 2024, Plaintiffs finally served the 11-topic notice – just three days before the deposition of Todor Mihaylov. As soon as it could, Meta designated Mr. Mihaylov on topic two, concerning Meta's ablations experiments (*i.e.*, experiments on datasets) and he was

prepared to address that topic. Plaintiffs took and completed his deposition on the noticed date and ended early. Plaintiffs cannot blame Meta for neglecting to ask him questions about that topic; time certainly wasn't the issue. He should not have to reappear due to Plaintiffs' decision to wait to serve its 30(b)(6) notice until there were only 14 days left to complete discovery.

As to the remaining 10 topics, Meta currently anticipates identifying three, and no more than four, designees to testify. At least two designees have already been noticed for depositions in their individual capacities under Rule 30(b)(1). Meta has attempted to negotiate with Plaintiffs over the amount of time for 30(b)(6) testimony, but Plaintiffs have been unwilling to compromise.

Plaintiffs initially sought seven hours per designee, which Meta rejected as unreasonable. On September 26, 2024, Plaintiffs proposed an alternative of 24 hours of total 30(b)(6) testimony, but this was excessive given the number and scope of the topics. Several of Plaintiffs' 11 topics are overlapping (e.g. Topics 1, 3, and 5; Topics 4 and 9) or concern discrete subject matter (e.g. Topic 6). Several of Meta's designees, if not all of them, are anticipated to be deposed for up to seven hours in their individual capacities; thus, Plaintiffs' proposal would guarantee that those witnesses would need to appear for a full second day – without any showing that 14 hours is needed.

Meta proposes that Plaintiff is allotted **up to 12 hours** of total questioning across the 10 topics **not to exceed 3 additional hours for any witness also noticed under Rule 30(b)(1)**. This would permit Plaintiffs more than ample time to depose Meta's designees, while avoiding the prospect of unnecessarily requiring one witness to sit for two days of depositions – especially in view of the tight timeframe left to schedule remaining depositions.

Meta's proposal is consistent with precedent in this district and others. Although courts have held that 30(b)(6) and 30(b)(1) are separate and subject to separate time limits, "the deposing party does not have carte blanche to depose an individual for seven hours as an individual and seven hours as a 30(b)(6) witness." *Forte Cap. Partners, LLC v. Harris Cramer, LLP*, 2008 WL 4924724, at *3 (N.D. Cal. Nov. 14, 2008). The court must make a "fact intensive inquiry as to whether a particular witness should or should not be required to submit to questioning which exceeds seven hours in length." *Id.*; *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9900619, at *2 (N.D. Cal. Oct. 26, 2015). Indeed, courts have ordered substantially fewer hours than Meta is offering as a compromise. *See Virtru Corp. v. Microsoft Corp.*, 2024 WL 2133953, at *1–2 (W.D. Wash. May 10, 2024) (ordering 2 hours of deposition time for questioning of designee on 8 topics); *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, 2013 U.S. Dist. LEXIS 111421 at *3 (N.D. Cal. Aug. 2, 2013) (granting motion to compel but limiting 30(b)(6) topic to an hour).

The cases cited by Plaintiffs do not support their demand for up to 14 hours of testimony with each 30(b)(6) witness and support hours limits more similar to Meta's compromise proposal. *See, e.g.*, *Wesley v. Gates* (dispute over whether a 30(b)(6) deposition of a third party entity controlled by the plaintiff would be subject to a separate hours limit from the plaintiff's individual deposition); *Crawford v. Melzer* (14-hour limit had been *stipulated* to by the parties); *U.S. v. HVI Cat Canyon, Inc.* (the allotted 21 hours of 30(b)(6) testimony was undisputed in a prior case management order); *Gibson v. Walmart Inc*. (12 hours of 30(b)(6) testimony spread across three depositions and multiple corporate entities). Nonetheless, Meta's proposal falls within the time allotments of *Virtru Corp.*, *Jackson Family*, and Plaintiffs' cases as well as the scope of the topics at issue.

/s/ Joseph R. Saveri
Joseph R. Saveri
Cadio Zirpoli
Christopher K.L. Young
Holden Benon
Aaron Cera

/s/ David Boies
David Boies (*pro hac vice*)
David L. Simons (*pro hac vice*)
Boies Schiller Flexner LLP


/s/ Bryan L. Clobes
Bryan L. Clobes (*pro hac vice*)
Alex J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
Cafferty Clobes Meriwether & Sprengel, LLP

/s/ David A. Straite
David A. Straite (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
DiCello Levitt, LLP

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

/s/  Judd Lauter
Bobby Ghajar
Kathleen Hartnett
Colette Ghazarian
Cooley LLP

*Attorneys for Defendant META PLATFORMS, INC.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2024                                              JOSEPH SAVERI LAW FIRM LLP
                                                                                                  */s/  Joseph R. Saveri*
                                                                                                  Joseph R. Saveri