**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua I. Schiller (SBN 330653)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jischiller@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice* forthcoming)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Margaux Poueymirou (SBN 356000)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butericklaw.com

**CAFFERTY CLOBES MERIWETHER &
 SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class. (additional counsel included below)*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICHARD KADREY, et al., <br><br> *Individual and Representative Plaintiffs*, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> *Defendant.* | Case No. 3:23-cv-03417-VC <br><br> **MOTION TO AMEND CASE MANAGEMENT SCHEDULE** |

Just last week, a reporter covering Meta's annual technology conference quoted Meta's CEO commenting on why Meta chose to scrape copyrighted works without negotiating licenses for their use in the first instance, stating, "I think individual creators or publishers tend to overestimate the value of their specific content in the grand scheme of this," and he "guess[ed] . . . there are going to be certain partnerships that get made when content is really important and valuable." Pritt Decl. Ex. A (9/25/24 Zuckerberg Interview) at 40.

As the Court explained at the hearing on Plaintiffs' Motion to Enlarge Discovery Cutoff, this case is an "important" and "complex matter" that will decide whether purveyors of artificial intelligence ("AI") technologies, like Meta, may, without permission, use copyrighted works to develop and commercialize their products. Pritt Decl. Ex. B (9/20/24 Hr'g Tr.) at 15:12-16, 16:2-3, 16; *see also* Ex. A at 38 (Meta's CEO stating last week he believes "all these things are basically going to need to get relitigated and rediscussed in the AI era. These are important questions."). Because large language models ("LLMs") rely on enormous amounts of data, the scale of potential infringement is unprecedented. This case is thus very "important for the proposed class" of all U.S. copyright holders, who stand on the precipice of losing control over, and the economic value of, their intellectual property. Ex. B at 15:12-16. And because AI is rapidly proliferating across every aspect of daily life, this proceeding presents "an important societal issue." *Id.* Accordingly, the Court recognized the need for building a "proper record" that will permit it to issue a pivotal decision concerning this rapidly proliferating technology and the legality of its corporate owners' pirating of authors' intellectual property. *Id.* at 16:19-20. To that end, the Court requested that Plaintiffs' counsel augment its team, saying it would consider extending the discovery period "with a newly constituted legal team" and an articulation of "what's missing that is important to the fair use issue at summary judgment." *Id.* at 39:15-22. Because Meta began raising issues other than fair use, the Court also directed it "to identify the issues that we need to . . . deal with at summary judgment." *Id.* at 45:17-23. Meta has thus far refused to identify the totality of issues beyond fair use that it believes are necessary to "deal with at summary judgment."

Plaintiffs' counsel acted expeditiously to add Boies Schiller Flexner LLP ("BSF"), whose attorneys entered appearances on September 24, 2024. BSF has since dedicated a large team to reviewing the case file so that it could formulate a case management proposal to allow for development of the "proper record" that the Court requested. It is evident to BSF from its expedited review that this case will benefit from some additional time for discovery. Even so, BSF believes it could be feasible to keep the summary judgment hearing in March 2025.

To that end, Plaintiffs respectfully request to modify case management deadlines as set forth below. This schedule assumes, as the Court has, that "the only real legal question to be presented at summary judgment is whether doing so [*i.e.*, infringing the works' copyrights as alleged in the complaint] constituted 'fair use' within the meaning of copyright law."[1]

| Event | Deadline |
|---|---|
| Exchange Supplemental Initial Disclosures | 10/07/2024 |
| Letter Briefs re: Addt'l Existing Discovery/Priv. Issues | 10/11/2024 |
| Motion for Leave to Amend Complaint | 10/11/2024 |
| Additional Written Discovery Requests | 10/11/2024 |
| Identification of Addt'l Document Custodians/Deponents | 10/11/2024 |
| Letter Briefs re: Addt'l Custodians/Deponents | 10/18/2024 |
| Responses To Addt'l Discovery (served by 10/11) | 11/04/2024 |
| Documents/Priv. Logs for Addt'l Discovery (served by 10/11) | 11/07/2024 |
| Letter Briefs re: Addt'l Discovery/Priv. Logs | 11/15/2024 |
| Close of Fact Discovery | 12/13/2024 |
| Opening Expert Reports | 12/20/2024 |
| Rebuttal Reports | 01/15/2025 |
| Close of Expert Discovery | 01/31/2025 |
| Opening MSJ/Daubert Briefs | 02/07/2025 |
| Oppositions MSJ/Daubert Briefs | 03/07/2025 |
| Reply MSJ/Daubert Briefs | 03/21/2025 |
| Motion For Summary Judgment Hearing | 03/27/2025 |

While this schedule might be feasible if the *only* disputed issue were fair use, Meta apparently does not share the assumption that the case is so limited. On September 20, Meta alluded to other issues, such as standing, but said it would "rather not get into any more detail," leaving the potential scope of summary judgment a mystery. Ex. B at 28:8-12, 29:1-4, 41:22–42:9. At a subsequent meet-and-confer, Meta said it *will* dispute all liability issues the Court

---

[1] ECF No. 156; *see also* Ex. B at 4:8-10 ("This case, at least as I understand it, is mostly about—or entirely about the question of fair use."), 6:9-16 ("I thought everybody sort of agreed about the use of the copyrighted works").

believed were undisputed.[2] Meta also reiterated it would pursue affirmative defenses other than fair use without identifying which ones, except once more obliquely referring to standing "issues."

In such an expanded scenario, Plaintiffs respectfully submit the following schedule is more appropriate:

| Event | Deadline |
| --- | --- |
| Close of Fact Discovery | 01/24/2025 |
| Opening Expert Reports | 02/14/2025 |
| Rebuttal Reports | 03/07/2025 |
| Close of Expert Discovery | 03/28/2025 |
| Opening MSJ/Daubert Briefs | 04/25/2025 |
| Opposition MSJ/Daubert Briefs | 05/23/2025 |
| Reply MSJ/Daubert Briefs | 06/13/2025 |
| Motion For Summary Judgment Hearing | 06/26/2025 |

Plaintiffs recognize the Court also requested their reconstituted legal team "identify what's missing that is important to the resolution of the fair use issue at summary judgment." Ex. B at 39:15-22. As this Court has explained, "[t]he fair use analysis is fact intensive." *In re DMCA §512(h) Subpoena to Twitter, Inc.*, 608 F.Supp.3d 868, 879 (N.D. Cal. 2022) (Chhabria, J.). Here, while BSF's file review is ongoing, it appears much is still needed to make a proper fair-use record:

**1.** Meta has not produced for each Llama model through the recently-released Llama 3.2 and Llama 4 (in development): (a) source code and, potentially, training data pertaining to the validation, testing, fine-tuning, and alignment phases;[3] (b) documents that Meta obtained from the totality of shadow libraries and online sources; or (c) "post-processing" scripts, source code, or training techniques that Meta has developed to prevent the models from outputting infringing material.[4] Relatedly, Plaintiffs have sought to add as a document custodian Nikolay Bashylov, Meta's research engineer responsible for downloading and analyzing the massive LibGen datasets

---

[2] Namely, that (1) the copyrighted works "were available on a database"; (2) "the database was not authorized to make them available"; (3) "Meta acquired them from that database"; (4) "Meta fed the stuff from the database into the large language model"; and (5) "of course the large language model is for commercial use." Ex. B at 6:9-16; Pritt Decl. ¶¶ 12-13.

[3] Meta produced some training data for "pre-training" and data processing, but it does not appear complete. Likewise, Meta made available some fine-tuning scripts but it is also does not appear complete.

[4] Meta appears to have made available a hodgepodge of code and scripts with no context or history, including how the LLMs handle or filter copyrighted material. Plaintiffs' data scientist, Dr. Jonathan Krein, will attend the hearing on this motion to address any questions from the Court.

that Meta first mailed to Plaintiffs on September 10, 2024.[5]  Discovery on these topics is critical to fair use factors one and three regarding how and to what extent Meta used Plaintiffs' works, and whether such use was willful and done in bad faith.  Plaintiffs already have raised some of these deficiencies with Judge Hixson.

**2.** Plaintiffs issued RFPs regarding Meta's licensing of training data, which is critical to fair use factor four.  The few documents produced thus far, and deposition testimony, show Meta considered licensing deals, including with book publishers, for training data.  They also show Meta licensed most of its training data for its image, video, music, and 3D models.  Yet, due to the limited set of Meta custodians (just 10, selected by Meta), which does not include anyone from Meta's Business Development group, Plaintiffs have not received custodial documents from any of the key licensing figures, such as Alex Boesenberg and Amanda Kallet (none of whom are in Meta's disclosures).  While Mr. Boesenberg was charged with negotiating licensing deals with book publishers and others for AI training data—and is the author of two key documents tracking Meta's licensing efforts—Meta has produced just 18 documents (out of only approximately 19,000 total documents total produced by Meta) that include his name.  Additional discovery on these issues is essential to address fair use.  Plaintiffs have raised some of these issues with Judge Hixson.

**3.** Plaintiffs have raised, with Meta and Judge Hixson, issues concerning Meta's privilege assertions.  While Plaintiffs do not know the precise content of the concealed material, it is notable that key documents reflecting business discussions about Meta's rampant use of unlicensed, copyrighted works to train its Llama models are redacted even though no lawyers appear on them.

**4**. Plaintiffs served interrogatories seeking facts supporting Meta's fair use defense and asking if it intends to rely on advice of counsel given testimony that Legal "approved" use of training datasets.  Meta has not yet responded.  Resolution of any disputes over Meta's responses to these interrogatories will directly implicate the Court's ability to resolve the fair use issue.

---

[5] Meta's production letter accompanying this 2.66 TB hard drive did not describe its contents and misidentified it as a copy of a hard drive (META_KADREY_DATA_004) produced previously. Because it takes substantial time to process terabytes of data, Plaintiffs did not discover until September 27, 2024, that it was an entirely new production of millions of pirated and copied works.

Separately—because Meta now states it will contest many issues beyond fair use, including infringement *in toto*, during this stage—the need for additional discovery is also evident as to:

**1. Financial impact:** Plaintiffs will seek actual and projected financial statements reflecting revenue and profits associated with the Llama models. Plaintiffs will also seek to better understand Meta's AI partnerships and collaborations, including Meta's plans to monetize Llama through revshare models with external hosting partners and recently reported collaborations with celebrities to train Meta's AI chatbot.[6] That, along with discovery into the use of Meta's LLMs in its suite of products, will demonstrate commercial intent behind the use of copyrighted materials.

**2. Meta's state of mind:** Plaintiffs will seek discovery into Meta's decision to use unlicensed, copyrighted material from shadow libraries and torrent systems. This includes internal discussions about the implications of using such sources, copyright-mitigation techniques, and launching in select jurisdictions. It also includes guidance received by executives like Mark Zuckerberg who have discussed Meta's infringement, including stating just last week that "there are going to be certain partnerships that get made when content is really important and valuable," but "if [creators] demanded that we don't use their content, then we just wouldn't use their content. It's not like that's going to change the outcome of this stuff that much." Ex. A at 40.

**3. Technical discovery:** Meta apparently asserts non-infringement by its LLMs, but that assertion cannot yet be sufficiently reviewed or challenged by Plaintiffs. Further technical discovery into the source code for Meta's LLMs, particularly for Llama 3, Llama 3.2 (released just last week, on September 25, 2024), and Llama 4 is highly relevant to Plaintiffs' claims.[7]

Finally, BSF expects that, after completion of a full review of the record, it will identify other discovery necessary for building the proper record this Court identified as critical to fully litigating the class's claims and ensuring this Court can issue a meaningful decision. While BSF understands it is entering this case after several months of discovery, counsel respectfully seeks the opportunity to continue litigating this case and to do so in a manner that befits its importance.

---

[6] https://www.cnn.com/2024/09/25/tech/meta-ai-celebrities-chatbots/index.html.

[7] Now that Meta has advised Plaintiffs it contests every merits issue and intends to raise multiple defenses on summary judgment, BSF also believes that discrete RFAs would help narrow the case.

Dated: October 1, 2024

Respectfully submitted,
**BOIES SCHILLER FLEXNER LLP**

By: */s/ David Boies*

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butterickaw.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312)-782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT**
Amy Keller (*pro hac vice*)
(312) 214-7900
akeller@dicellolevitt.com
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua I. Schiller (SBN 330653)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jischiller@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice* forthcoming)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*