Exhibit A

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

LEX LUMINA PLLC
MARK A. LEMLEY (155830)
(mlemley@lex-lumina.com)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>   Individual and Representative Plaintiffs,<br><br>   v.<br><br>META PLATFORMS, INC., a Delaware corporation;<br><br>                              Defendant. | Case No. 3:23-cv-03417-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**<br><br>Trial Date:<br>Date Action Filed: July 7, 2023 |

- ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction (ECF No. 90, the "Protective Order").

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions:

**1.** Meta objects to all defined terms to the extent that they are not utilized in Plaintiffs Second Set of Interrogatories.

**2.** Meta objects to the definition of "Agreements" as overbroad and unduly burdensome to the extent that it encompasses oral contracts, arrangements, or understandings, including those that are informal. Meta further objects to the definition of "Agreements" as vague, ambiguous, and unintelligible as to the term "modifications" to the extent it is intended to mean something distinct from "versions" or "amendments." Meta will construe "Agreements" to mean written contracts, including drafts, versions, amendments, exhibits, and appendices thereof.

**3.** Meta objects to the definition of "Communications" to the extent it is inconsistent with and otherwise seeks to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the Stipulated Protocol regarding Electronic Discovery ("ESI Order"). Meta will produce Documents, including Communications, pursuant to the terms of the ESI Order, and any agreement to produce such Documents is explicitly in view of the terms of the ESI Order. To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate. Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiffs.

**4.** Meta objects to the definition of "Complaint" which refers to an outdated complaint that has since been replaced by the Corrected Second Consolidated Amended Complaint (ECF No. 133). Meta will construe "Complaint" to refer to the Corrected Second Consolidated Amended Complaint.

**5.** Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses. For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLM released by Meta under that name on April 18, 2024 and July 23, 2024.

**6.** Meta objects to the definition of "Meta" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning any "owners" regardless of shareholder interest and shareholders with an ownership of in Meta of greater than 5%. Meta will construe "Meta" or "You" to mean Meta Platforms, Inc.

**7.** Meta objects to the definition of "Meta Language Models" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning LLMs that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to this definition to the extent that it purports to require Meta to produce documents that are not relevant to any party's claims or

defenses. Meta will construe "Meta Language Models" to mean the models within the Llama family of LLMs that have been publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3 (as those terms are construed above).

8. Meta objects to the definition of "Relevant Period" as vague, ambiguous, and unintelligible, as it is defined circularly to mean "all times relevant to… the Complaint." Meta will construe the Relevant Period to mean January 1, 2022 to the present.

9. Meta objects to the definition of "Training Data" as vague, ambiguous, and unintelligible as to the term "other material," which is indefinite and undefined. Meta further objects to the definition of "Training Data" as vague and ambiguous as to the phrase "considered for use," which, read literally, would encompass any dataset considered by any Meta employee, regardless of the seriousness of such consideration and whether or not that consideration was ever acted upon. Meta further objects to this definition to the extent it purports to include datasets (or "considered" datasets) that include content to which Plaintiffs have made no claim of ownership and which are not the subject of any allegations of copyright infringement by Plaintiffs. Meta will construe "Training Data" to mean the "Books3" textual dataset used to train the Meta Language Models (as construed above).

10. Meta objects to the definition of "You" and "Your" as overbroad, unduly burdensome, and nonsensical, insofar as it refers to "the specific Defendant(s) producing documents in response to these Requests." There is only one defendant in this case, Meta, and this response is to the Interrogatories, not any document requests. Meta further objects to this definition to the extent it seeks to impose upon Meta an obligation to investigate information or documents outside of its possession, custody, or control. For purposes of these responses, Meta construes the terms "You" and "Your" coextensively with Meta (as construed above).

11. Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense. Meta will supplement or amend its responses to these Interrogatories in accordance with Meta's obligations under Rule 26(e).

and undue burden and expense. Meta further objects to Instruction 11 to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control. As such the Instruction if overly broad, as well. Subject to any objections applicable to a particular Interrogatory, Meta will conduct a reasonable, proportionate search for non-privileged, relevant, responsive information within its possession, custody, or control.

19. In responding to all Interrogatories, Meta will comply with the requirements of the Federal Rules of Evidence and Federal Rule of Civil Procedure 26.

### III. OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 1:**

State all facts on which you base Your contention that Your conduct constitutes fair use (17 U.S.C. § 107).

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the phrase "Your conduct," which is undefined and could refer to any conduct. Meta will construe this Interrogatory to seek information concerning Meta's claim of fair use in connection with the conduct alleged in the Complaint (as construed above).

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information that Meta does not intend to rely on to support a claim of fair use and calls for a lengthy narrative with regard to twelve different plaintiffs and more than forty works.

Meta objects to this Interrogatory to the extent it prematurely calls for expert testimony or identification of facts yet to be disclosed by Plaintiffs, and to the extent that it requires Meta to respond to legal arguments or theories not yet disclosed by Plaintiffs.

Finally, Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25 Interrogatories under Rule 33(a)(1).

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responds as follows:

The alleged use of Plaintiffs' asserted works, to the extent it is shown to have occurred, is highly transformative in nature, because it adds something new, with a further purpose or different character, altering those works with considerable new expression, meaning, or message. To the extent Plaintiffs' works were used to train the Meta Language Models, the purpose was transformative both in terms of purpose and expression. With respect to purpose, Plaintiffs' works were allegedly used as data to train the models. In other words, the works were allegedly a part of a corpus of text (specifically, terabytes of text from a variety of sources), from which the models built complex statistical representations of language derived from the patterns, structures, and relationships between words within the corpus. This enables the models to predict the next word in a sequence, and thereby provide useful responses to any manner of input prompts. Such use of text material serves a fundamentally different purpose from the original texts on which the Meta Language Models were trained. *See e.g.*, Meta_Kadrey_00000001-00000077, Meta_Kadrey_00000078-00000104, Meta_Kadrey_00000224-00000248, Meta_Kadrey_00093669- Meta_Kadrey_00093760.

The text corpus used to train the Meta Language Models includes a large amount of textual materials, and to the extent Plaintiffs' works were used to train those models, they would constitute a tiny fraction of the textual training dataset (both individually and collectively). The purpose of the models, and the use of text datasets, is to create new, original textual output, not to reproduce the content of the datasets with which it was trained. This is demonstrated by, among other things, Meta's efforts to minimize the models' ability to memorize and/or output training data verbatim (*see e.g.*, Meta_Kadrey_00000277) and the wide variety of uses that have been made of the models. *See e.g.*, Meta_Kadrey_00092978-00093308, Meta_Kadrey_00062157. Indeed, all Plaintiffs have admitted that they are not aware of any output from any Meta Language Model that replicates any protected expression in their at-issue books. *See e.g.*, T. Coates 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (admitting, subject to objections, that Plaintiff is "personally unaware of any text generated by any of Meta's Llama models that infringes [Plaintiff's] ASSERTED WORKS."); J. Díaz 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); C. Golden 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to

RFA No. 24 (same); A. Greer 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); D. Hwang 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); R. Kadrey 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); M. Klam 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); L. Lippman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); S. Silverman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); R. Snyder 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); J. Woodson 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); C. Golden 9/17/2024 Dep. 260:6–261:13 (Mr. Golden testifying that the present lawsuit is not about what comes out of Meta's large language models); A. Greer 9/24/2024 Rough Drft. Dep. 15:21–16:20, 68:22–69:2 (Mr. Greer testifying that he doesn't "know anything about" Meta passing off any of Mr. Greer's work as AI-generated output, and acknowledging that there are no presently asserted claims by Plaintiffs as to output generated by Meta's large language models); D. Hwang 9/16/2024 Dep. 252:23–253:6 (Mr. Hwang testifying that the operative complaint does not allege that the Meta Language models create any output that is similar to any of his books or plays); L. TerKeurst 9/23/2024 Dep. 226:20–25, 229:5–12 (Ms. TerKeurst testifying that she was not aware of any text generated by the Meta Language Models that was substantially similar that of her asserted works); *cf.* D. Hwang 9/16/2024 Dep. 363:6–15 (Mr. Hwang testifying that he did not believe when he filed suit that the Meta Language Models could create works that were substantially similar to his works); L. Lippman 9/17/2024 Rough Drft. Dep. 301:1–7 (Ms. Lippman testifying that she is aware that the current version of the Complaint does not allege that Meta's generative AI tools create any output that is substantially similar to her books).

The transformative nature also extends to <u>expression</u>. The pre-training process involves a number of steps that fundamentally transform the input dataset text in order to facilitate training of the large language model ("LLM"), which Meta will further describe in further detail in connection with expert discovery. At a high-level, the pre-training process includes a "tokenization" step in which the data in training datasets is broken down and encoded into a series of values known as "tokens" which are used to create numerical vector representations that the LLM training

algorithms can understand. (*See e.g.*, Meta_Kadrey_00000078-00000104, Section 2.1 ("Tokenizer"); Meta_Kadrey_00000001-00000077, at 6 ("Tokenizer").) The input data is then used in a complex series of LLM training algorithms that adjust the large number of numerical values (known as parameters which include weights) in the LLM, that define the connections and relationships between the nodes in the LLM. By adjusting these weights, the LLM can "learn" and better predict correct outputs based on input data. These numerical parameters enable the LLM, after the training process, to generate better output data in response to input prompts. The process of training of an LLM represents a complete transformation into a form that is entirely unrecognizable from the original training data.

As a further indication of the transformative nature, and the fact that the training process does not simply make a copy of the input dataset, the training process is so computationally complex that it requires an enormous amount of computing power. *See e.g.*, Meta_Kadrey_00000001-00000077, at 4 ("When training a 65B-parameter model, our code processes around 380 tokens/sec/GPU on 2048 A100 GPU with 80GB of RAM. This means that training over our dataset containing 1.4T tokens takes approximately 21 days.").

Aside from its highly transformative nature, Meta's alleged use also has substantial non-commercial, nonprofit, and educational (including research) purposes. Meta is investing billions of dollars in research and development of state-of-the-art LLM technology that it is then making available to the public. In particular, the training of the Meta Language Models resulted in Meta's release of Llama 1, Llama 2, CodeLlama, and Llama 3, 3.1, and 3.2 to the open source community. These LLMs were provided openly to the public, pursuant to an open license that permits developers, researchers, and institutions (with the exception of licensees with more than 700 million monthly active users) to use and modify the Llama models free of charge. *See e.g.*, Meta_Kadrey_00000160-00000162, Meta_Kadrey_00093275-00093284, Meta_Kadrey_00093658-00093760. The open release of Llama has resulted in the Llama models being downloaded hundreds of millions of times by researchers and developers from around the world and has catalyzed development of new and improved AI tools and technologies. *See e.g.*, Meta_Kadrey_00092978-00093308, Meta_Kadrey_00062157. The open and public release of

Llama has allowed the public to access highly capable LLM technologies that would otherwise be available only to large organizations and/or at considerable expense. More broadly, Meta's investment and open release is contributing to the U.S. economy, the emergence of a new and important industry, and the U.S.'s global leadership of that industry over geopolitical competitors.

Plaintiffs allegedly infringed works were published prior to Meta's alleged use of those works. And Meta's use of large volumes of texts was necessary to extract data regarding, e.g., word frequencies, grammar, and syntax from those works to generate new content. This information constitutes either facts and ideas, which are not protectable by copyright, or is otherwise unrelated to the purpose of copyright protection. Furthermore, given that training the Meta Language Models requires terabytes of text, that greater volumes of text tends to improve model performance on objective benchmarks measuring reasoning and knowledge of facts, and the formats in which the text is available, it was reasonable for Meta to utilize copies of entire works (as opposed to portions thereof), in particular given Meta's efforts to develop the models in a manner that minimizes the likelihood that training data can be reproduced as model output. For example, books data comprised only approximately 4.5% of tokens used to train Llama 1 and only 4.4% of tokens used to train Llama 2.

The ordinary market for Plaintiffs' works is the market for people to purchase and read the books and, possibly, to create derivative works from those books, such as for audio books and film and television adaptations. The Meta Language Models and their outputs do not serve as a market substitute for the Plaintiffs' asserted works, do not compete with those works, and do not harm the value of Plaintiffs' asserted works. Plaintiffs have produced no evidence to the contrary, such as evidence of lost sales or other financial harm. To the contrary, plaintiffs have admitted that they are not aware of any such harm. *See e.g.*, T. Coates 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (admitting, subject to objections, that Plaintiff is unaware of lost sales due to alleged infringement); J. Diaz 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); C. Golden 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); A. Greer 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); D. Hwang 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No.

15 (same); R. Kadrey 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); M. Klam 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); L. Lippman 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); S. Silverman 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); R. Snyder 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); J. Woodson 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); L. Terkeurst 9/12/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (similar); A. Greer 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 16 (admitting, subject to objections, that Plaintiff's book sales have not decreased due to the alleged use of Plaintiff's Asserted Works to train large language models); L. Terkeurst 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 16 (similar); T. Coates 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (admitting, subject to objections, that Plaintiff is unaware of lost licensing opportunities due to alleged infringement); J. Diaz 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); C. Golden 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); A. Greer 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); D. Hwang 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); R. Kadrey 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); M. Klam 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); L. Lippman 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); S. Silverman 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); R. Snyder 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); J. Woodson 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); L. Terkeurst 9/12/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); T. Coates 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (admitting, subject to objections, that Plaintiff is unaware of (1) persons reading text generated by Meta's Llama models as a substitute for Plaintiff's Asserted Works as described in RFA 22, and (2) documentary evidence of persons reading text generated by Meta's Llama models as substitute for Plaintiff's Asserted Works as described in RFA 23); J. Diaz

7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); C. Golden 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); A. Greer 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); D. Hwang 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); R. Kadrey 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); M. Klam 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); L. Lippman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); S. Silverman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); R. Snyder 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); J. Woodson 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); L. TerKeurst 8/21/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (similar); D. Hwang 9/16/2024 Dep. 254:7–13 (Mr. Hwang testifying that he did not know whether he had experienced any financial loss as a result of the alleged training of the Meta Language Models on his asserted works); D. Hwang 9/16/2024 Dep. 290:10–17, 291:22–292:4 (Mr. Hwang testifying that he was not aware of any lost sales of his asserted works due to the alleged infringement in the complaint); R. Kadrey 9/25/2024 Rough Drft. Dep. 194:10–21 (Mr. Kadrey testifying that he was unaware of any injury other than purported harm of not receiving compensation from Meta); R. Kadrey 9/25/2024 Rough Drft. Dep. 193:4–7 (Mr. Kadrey testifying that he was not aware of any lost sales of his asserted works due to the alleged infringement in the complaint); L. Lippman 9/17/2024 Rough Drft. Dep. 329:19–330:5 (Ms. Lippman testifying that she is unaware of any financial harm that she has suffered as a result of conduct by Meta alleged in the Complaint); A. Greer 9/24/2024 Rough Drft. Depo. 110:3–20 (Mr. Greer testifying that he is unaware of any lost book sales or lost licensing opportunities as a result of Meta's alleged infringement of his works, or whether it is possible that book sales have actually increased due to his participation in this lawsuit).

Moreover, there was no market for licensing Plaintiffs' literary books as training data for LLMs at the time Meta first Llama 1 or at the time Plaintiffs' filed their lawsuit, and there is no such market today. Plaintiffs have admitted as much in discovery. Moreover, any particular book

has no independent value as training data and/or is interchangeable with countless other books. In any case, such a market would be for a transformative use. It would also be impractical, if not impossible, for companies developing LLMs to attempt to negotiate licenses with each individual book rights holder for various reasons, including but not limited to the amount of time and cost necessary to do so would have precluded development of the models in the first instance, in particular given the time and costs relative to the de minimis value of individual works to the development of the models. In support, Meta intends to rely on Plaintiffs' discovery responses and testimony, expert reports and testimony, percipient witness testimony, as well as documents produced in this litigation.

**INTERROGATORY NO. 2:**

If You or any of Your employees and/or agents intend to assert the advice of counsel defense, state any and all facts upon which You or any of your employees and/or agents intend to rely on for that contention.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the reference to "Your employees and/or agents" with respect to any defense in this case, as no Meta employees or agents are parties to this case.

Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25 Interrogatories under Rule 33(a)(1).

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta does not presently intend to assert the advice of counsel defense.