COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KADREY, et al., | Case No. 3:23-cv-03417-VC |
| Individual and Representative Plaintiffs, | **DEFENDANT META PLATFORMS, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 125)** |
| v. | |
| META PLATFORMS, INC., a Delaware corporation; | |
| Defendant. | Discovery Cut-Off: September 30, 2024<br>Date Action Filed: July 7, 2023 |

Pursuant to this Court's September 27, 2024 Order (Dkt. 181), Defendant Meta Platforms, Inc. ("Meta") respectfully opposes Plaintiffs' Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge ("Motion") (Dkt. 125).  Plaintiffs' Motion disregards the relevant standard of review, the applicable law, and the record evidence.  Because Magistrate Judge Hixson's August 22, 2024 Discovery Order ("Discovery Order") (Dkt. 114) is neither clearly erroneous nor contrary to law, Plaintiffs' Motion should be denied.

**Background.**  Former part-time Meta employee and AI researcher Tim Dettmers shared Meta's privileged legal advice on EleutherAI's server on Discord (the "Subject Communications") in a few messages posted in late 2020 and early 2021.  Dkt. 105 at 2–3.[1]  As Judge Hixson concluded—and as Plaintiffs no longer dispute—the Subject Communications "plainly reveal privileged legal advice given to [Mr. Dettmers] by Meta's attorneys" and were therefore "privileged in the first place."  Dkt. 114 at 1.  It is also undisputed that Mr. Dettmers posted the Subject Communications without Meta's knowledge or authorization, and that Meta first learned about the Subject Communications when they were quoted in Plaintiffs' First Consolidated Amended Complaint filed on the public docket in this case in December 2023 ("FCAC") (Dkt. 64).  See Dkt. 105-1 ("Dettmers Decl."), ¶ 12; Dkt. 105-2 ("Zettlemoyer Decl."), ¶ 6–7.  By that time, the Subject Communications had been removed from Discord for several months.  Dkt. 69, ¶ 64.

At the time he made the Subject Communications, Mr. Dettmers was a Ph.D student and a part-time Visiting Researcher in the Facebook AI Research (FAIR) team at Meta.  Dettmers Decl., ¶ 3.  Mr. Dettmers obtained his research position at Meta through a joint program between the University of Washington and Meta whereby students could work part-time for Meta for up to two years.  Dettmers Decl., ¶¶ 2–3.  Mr. Dettmers' work at Meta included researching how to make AI large-language models ("LLMs") more efficient, and none of his research or work related to the Llama LLM.  *Id.* ¶ 5.  He did not have any managerial responsibilities, nor was he tasked with

---

[1] EleutherAI is a non-profit research lab.  *See* Dkt. 105 at 2.  Discord is a real-time messaging service that, unlike other social media platforms, is comprised of decentralized servers—the vast majority of which are invite-only spaces for small communities—in which users communicate.  *See id.* at 1-2.  Discord is not designed to maximize engagement; older conversations are not readily accessible on the platform; and the EleutherAI Discord server does not appear to have been indexed by or searchable through internet search engines like Google.  *See id.* at 2.

1  communicating with third parties regarding legal issues.  Zettlemoyer Decl., ¶ 3.

2          Meta's legal advice in the Subject Communications regarded the use of certain datasets for

3  AI research and was requested by other members of Mr. Dettmers' research team through an

4  internal "single review tool" (SRT).  *Id.* at ¶ 4–5; Dettmers Decl., ¶ 7.  Among these datasets was

5  The Pile, which was released by EleutherAI in late-2020, around the time of the Subject

6  Communications.  Dettmers Decl., ¶¶ 6, 8–11.  Mr. Dettmers, of his own accord and without Meta's

7  authorization, shared the legal advice that he received from Meta's attorneys while communicating

8  with two individuals at EleutherAI following the release of The Pile.  *Id.* at ¶ 8, 12.

9          **Legal Standard.**  Plaintiffs ignore the controlling legal standard.  Under Rule 72(a), a

10  magistrate judge's discovery order may only be modified or set aside if it is "clearly erroneous" or

11  "contrary to law."  Fed. R. Civ. P. 72(a). "The magistrate's factual determinations are reviewed for

12  clear error, and the magistrate's legal conclusions are reviewed to determine whether they are

13  contrary to law."  *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).  "This standard

14  is highly deferential—the district judge may not simply substitute his or her judgment for that of

15  the magistrate judge."  *Campbell v. City of Milpitas*, WL 5077135, at *1 (N.D. Cal. Oct. 9, 2014)

16  (citing *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991)).[2]

17          **Judge Hixson Did Not Clearly Err In Finding That Mr. Dettmers Lacked Authority**

18  **to Waive Meta's Privilege.**  "[T]he power to waive the corporate attorney-client privilege rests

19  with the corporation's management and is normally exercised by its officers and directors."  *United*

20  *States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (quoting *Commodity Futures Trading Comm'n*

21  *v. Weintraub*, 471 U.S. 343, 348 (1985)).  Thus, public disclosure of a corporation's attorney-client

22  privileged material does not constitute a waiver of privilege where, as here, the disclosure was not

23  authorized by the corporation.  *See Chen*, 99 F.3d at 1502 (explaining that where a corporate

24  employee "never was given any authority to waive the attorney-client privilege," the employee's

25  "disclosures of attorney-client communications could not and did not waive the privilege").  This

26  _____

27  [2] Local Rule 72-2(d) provides that "[i]f no order denying the motion or setting a briefing schedule is made within 14 days of filing the motion [for relief], the motion shall be deemed

28  denied."  Plaintiff's Motion was filed on September 5, 2024, and no order denying the motion or setting a briefing schedule was made by September 19, 2024.

COOLEY LLP
ATTORNEYS AT LAW

META'S RESPONSE TO MTN FOR RELIEF
3:23-CV-03417-VC

is so even if the privileged material is made available widely.  *See, e.g. Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892 (N.D. Cal. March 26, 2013) (holding that publication by the *New York Times* of the details of an unauthorized disclosure of corporate attorney-client privileged information did not waive the attorney-client privilege).

It is undisputed that Mr. Dettmers, a part-time employee and Ph.D student, was not part of Meta management and thus not authorized by the nature of his position to waive Meta's privilege. In rare circumstances, lower-level employees can waive a corporation's privilege by inadvertently disclosing privileged material while acting within the scope of their authority.  For example, in *Vans, Inc. v. Walmart, Inc.*, 2023 WL 4291986, *6 (C.D. Cal. Jun. 5, 2023), the court concluded that Walmart's privilege was waived by a lower-level employee who was "delegated authority to work with a supplier to implement legal advice."  *Id.* at *8 (cleaned up). The record here is uncontradicted that Mr. Dettmers was not delegated authority by Meta to discuss legal matters with third parties.  As Judge Hixson correctly noted, it was Mr. Dettmers, of his own accord, who "sought to communicate (and potentially collaborate) with EleutherAI."  Dkt. 114 at 3:25–28; *see also* Dettmers Decl., ¶ 8.  Mr. Dettmers' supervisor Luke Zettlemoyer also confirmed that Mr. Dettmers—unlike the employee in *Vans*—was not tasked with communicating with third parties regarding legal issues, Zettlemoyer Decl., ¶ 3.  There is no error—let alone clear error—in Judge Hixson's determination that Mr. Dettmers lacked authority to waive Meta's privilege.[3]

**Judge Hixson Did Not Clearly Err In Finding That Meta Took Reasonable Steps To Protect Its Privilege.**  "[W]hen there has been an involuntary disclosure, the privilege will be preserved if the privilege holder has made efforts reasonably designed to protect the privilege." *Gomez v. Vernon*, 255 F.3d 1118, 1131–32 (9th Cir. 2001).  The law does not require "strenuous or Herculean efforts," only "reasonable efforts." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2008 WL 350641 *1–2 (N.D. Cal., Feb. 2, 2008).[4]

---

[3] Plaintiffs incorrectly argue that Judge Hixson applied the wrong legal standard by not considering whether Mr. Dettmers' disclosure was voluntary.  Dkt. 125 at 3–4.  But voluntariness is not the issue; the issue here is whether Mr. Dettmers had the ***authority*** to disclose the privileged information, as required for even a voluntary privilege waiver. *See, e.g.*, *Chen*, 99 F.3d at 1502.
[4] Plaintiffs argue (Dkt. 125 at 4) that Judge Hixson should have applied the test in *Hartford Fire Ins. Co. v. Garvey*, which considers three additional elements beyond Meta's reasonable efforts to protect its privilege.  109 F.R.D. 323, 332 (N.D. Cal. 1985).  However, that case predates the Ninth

Judge Hixson concluded, correctly, and in no event with clear error, that Meta "took all reasonable steps to protect the privilege." Dkt. 114 at 4. It is undisputed that Meta did not know that Mr. Dettmers was sharing legal advice with third parties until Plaintiffs filed the FCAC on December 11, 2023. Dettmers Decl., ¶ 12; Zettlemoyer Decl., ¶ 6. Meta promptly had the document "locked" in the ECF system, rendering it publicly inaccessible. Dkt. 64. Additionally, Meta employees, including Mr. Dettmers, were trained not to disclose legal advice or other confidential information externally. Zettlemoyer Decl., ¶ 3; Dettmers Decl., ¶ 12. And Meta had safeguards in place to limit access to the SRT tool—through which Mr. Dettmers and his colleagues received the legal advice in question—to only those employees that were added to a particular SRT request. Zettlemoyer Decl., ¶ 5. As such, only the researchers in Mr. Dettmers' team, the Meta attorneys that provided the legal advice, and two administrative employees responsible for managing SRT requests were provided access to the specific legal advice at issue. *Id.*

Plaintiffs' claim that Meta should have found and removed the Subject Communications from Discord before it knew about them is baseless, and in no case indicates clear error on the part of Judge Hixson. Meta had no reason to investigate Discord for potential disclosure of its privileged information, particularly given the obscure nature of EleutherAI's Discord server. Zettlemoyer Decl., ¶ 6; Dettmers Decl., ¶ 8. And Plaintiffs' claim that the Subject Communications were on EleutherAI's Discord server for two years "where anyone could see them," Dkt. 125 at 4, is contrary to the record. The EleutherAI Discord server and channels were never indexed by or searchable through internet search engines, and users had to accept an invitation and log in to access the server. Dkt. 105 at 2. Moreover, as a "real time messaging service," older Discord messages would not be readily accessible to a user visiting the server months or years after the fact. *Id.*

Plaintiffs also point to a LinkedIn post with screenshots of the Subject Communications to argue that Meta did not take reasonable steps to protect its privilege. Dkt. 125 at 4. However, they fail to disclose that the post was made by the same individual who provided the Subject

---

Circuit's decision in *Gomez* and also is about the inadvertent production of documents in the course of litigation, not—as here—whether an involuntary disclosure of privileged material to a third party results in a privilege waiver. Moreover, waiver is still unwarranted even if *Hartford* applied here. Not only did Meta act reasonably and promptly, but the legal advice reflected in the documents at issue is not about the Llama LLMs, on which Mr. Dettmers did not work. *See supra* p.1.

COOLEY LLP
ATTORNEYS AT LAW

META'S RESPONSE TO MTN FOR RELIEF
3:23-CV-03417-VC

Communications to Plaintiffs in the first place, Dkt. 145-3—an individual over whose communications Plaintiffs' counsel sought to assert work product protection, *see* Dkt. 105 at 7, who has a demonstrated hostility toward Meta and other generative AI companies, *see* Hartnett Decl., Exs. 6, 7. Meta detailed to Judge Hixson the efforts it took to have LinkedIn remove the individual's post, Dkt. 105 at 7, and it has renewed these efforts after Judge Hixson's order, *see* Supp. Decl., ¶¶ 3–4. Given the LinkedIn poster's hostility and extraterritoriality, any direct request would have been futile. *See* Dkt. 105 at 7; Supp. Decl., Ex. A (Hearing Transcript) ("Well, presumably, he is not going to be very helpful, because he intentionally posted it").

Plaintiffs are also wrong that the online publication of attorney-client privileged material vitiates the privilege, *see* Dkt. 125 at 5. This erroneous argument ignores, among other things, *Dukes*, which involved a privileged memorandum leaked to and published by the *New York Times*. 2013 WL 1282892 at *1. As Judge Corley concluded, Wal-Mart's privilege was not waived because the disclosure was "unauthorized and involuntary," and Wal-Mart took reasonable precautions to limit dissemination of the privileged memo. *Id.* at *5–6. Likewise here.

Plaintiffs cite no cases finding privilege waiver where publication was involuntary. *See* Dkt. 125 at 5. In *Estate of Bennet v. Altec Indus., Inc.*, the disclosure of defendant's information on Lexis CourtLink was because the defendant "previously produced the drawings in the course of discovery in two other lawsuits." 2005 WL 8155489, *1 (D. Wy. Dec. 16, 2005). In *Younes v. 7-Eleven, Inc.*, the court found that 7-Eleven did not even demonstrate that the purportedly privileged document that was disseminated online was privileged. 2014 WL 1959246, * 3 (D.N.J. May 15, 2014). And *L.P. v. Lupin Ltd.* did not involve an assertion of privilege. 2014 WL. 956086, *3 (D.N.J. Mar. 12, 2014). In short, these cases do not support Plaintiffs' claim of waiver or show that Judge Hixson's determination of non-waiver was clearly erroneous.

\*\*\*

When Plaintiffs came into possession of Meta's attorney-client privileged information from an individual hostile to Meta obtained from an obscure Discord server, they should have contacted Meta—not disclosed the materially publicly in the FCAC. There has been no waiver over the concededly privileged material at issue. The Court should deny Plaintiffs' Motion.

1

2    Dated: October 4, 2024                    COOLEY LLP

3                                          By:  _/s/  Bobby Ghajar_

4                                              Bobby Ghajar
                                               Mark Weinstein
5                                              Kathleen Hartnett
                                               Judd Lauter
6                                              Liz Stameshkin
                                               Colette Ghazarian
7
                                               CLEARY GOTTLIEB STEEN &
8                                              HAMILTON LLP
                                               Angela L. Dunning
9
                                               Attorneys for Defendant
10                                             META PLATFORMS, INC.

11   308918711

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys at Law

Meta's Response to Mtn for Relief
3:23-cv-03417-VC