1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3      Before The Honorable Thomas S. Hixson, Magistrate Judge

4

5  KADREY, et al.,                ) No. C 23-03417-VC
                                  )
6          Plaintiffs,            )
                                  )
7  vs.                            )
                                  )
8  META PLATFORMS, INC.,          )
                                  )
9          Defendant.             )
   _____)
10

11                            San Francisco, California
                              Wednesday, September 25, 2024
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 3:03 - 3:56 = 53 MINUTES
14

15  APPEARANCES:

16  For Plaintiffs:
                              Joseph Saveri Law Firm, LLP
17                            601 California Street
                              Suite 1000
18                            San Francisco, California
                               94108
19                      BY:   JOSEPH R. SAVERI, ESQ.
                        BY:   HOLDEN J. BENON, ESQ.
20                      BY:   AARON CERA, ESQ.

21                            DiCello Levitt LLP
                              Ten North Dearborn Street
22                            Sixth Floor
                              Chicago, Illinois 60602
23                      BY:   AMY E. KELLER, ESQ.

24

25            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

```
 1   For Plaintiffs:

 2                            Cafferty Clobes Meriwether &
                                 Sprengel, LLP
 3                            135 South LaSalle Street
                             Suite 3210
 4                           Chicago, Illinois 60603
                        BY:  MOHAMMED RATHUR, ESQ.
 5
                             Boies Schiller Flexner LLP
 6                           Forty-Four Montgomery Street
                             Forty-First Floor
 7                           San Francisco, California
                                 94104
 8                      BY:  MAXWELL V. PRITT, ESQ.
                        BY:  JOSHUA I. SCHILLER, ESQ.
 9
     For Defendant:
10                           Cooley, LLP
                             1333 2nd Street, Suite 400
11                           Santa Monica, California 90401
                        BY:  BOBBY A. GHAJAR, ESQ.
12
                             Cleary Gottlieb Steen &
13                               Hamilton LLP
                             1841 Page Mill Road
14                           Suite 250
                             Palo Alto, California 94304
15                      BY:  ANGELA DUNNING, ESQ.

16                           Cooley, LLP
                             3 Embarcadero Center
17                           20th Floor
                             San Francisco, California
18                               94111
                        BY:  KATHLEEN R. HARTNETT, ESQ.
19
     Transcribed by:         Echo Reporting, Inc.
20                           Contracted Court Reporter/
                             Transcriber
21                           echoreporting@yahoo.com

22

23

24

25
```

3

1  <u>Wednesday, September 25, 2024</u>                      <u>3:03 p.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4              THE CLERK:  Okay, everyone.  Good afternoon.  We

5  are here in Civil Action 23-3417, Kadrey, et al., versus

6  Meta Platforms, Inc., Honorable Thomas S. Hixson presiding.

7       Judge, we're all set.  Go ahead.

8              THE COURT:  Great.  Can counsel for Plaintiffs

9  please state your names for the record.

10             MR. SAVERI:  Good afternoon, your Honor.  Joseph

11 Saveri on behalf of the Plaintiffs.  Holden Benon with my

12 office is also on the line.  He's going to be handling most

13 of the argument for us.  Good afternoon.

14             MR. BENON:  Good afternoon, your Honor.  Holden

15 Benon for the Plaintiffs.

16             MR. CERA:  Good afternoon, your Honor.  Aaron Cera

17 for the Plaintiffs.

18             MS. KELLER:  Good afternoon, your Honor.  Amy

19 Keller for the Plaintiff.

20             MR. RATHUR:  Good afternoon, your Honor.  Mohammed

21 Rathur for the Plaintiffs.

22             MR. PRITT:  Also for the Plaintiffs, Maxwell

23 Pritt, and my partner, Josh Schiller, of Boies, Schiller and

24 Flexner, for the Plaintiff.

25             THE COURT:  Good afternoon.

4

1       And for Defendant?

2             MR. GHAJAR:  Good afternoon, your Honor.  This is

3   Bobby Ghajar from Cooley.

4             MS. DUNNING:  And good afternoon, your Honor.

5   This is Angela Dunning from Cleary, also on behalf of Meta.

6             MS. HARTNETT:  And, your Honor, this is Kathleen

7   Hartnett from Cooley on behalf of Meta.

8             THE COURT:  Hi.  Good afternoon, everyone.  We're

9   here for a discovery hearing.

10      Let me first turn to Plaintiffs.  Can you please

11  identify the issues that you would like to address at the

12  hearing today.

13            MR. BENON:  Yes, your Honor.  Good afternoon.

14  This is Holden Benon.

15      At the start, your Honor, I'd just first like to say

16  thank you, your Honor.  We'd like to express our gratitude

17  for the Court's time and attention to this on such short

18  notice.  I also want to take a brief moment to introduce

19  Maxwell Pritt and Josh Schiller of the Boies Schiller

20  Flexner firm.  They're here on behalf of the Plaintiffs.

21      Referring to your Honor's question, last Friday,

22  Plaintiffs submitted a list of eight different issues to

23  your Honor's courtroom deputy.  We are here to discuss those

24  eight different issues, and if your Honor may, we would like

25  to address some of those out of order, if that's okay with

5

1  your Honor.

2       THE COURT:  That's fine, but I do want you to

3  state on the record what the issues are that you're raising

4  at this hearing today.

5       MR. BENON:  Okay.  So the first four issues on

6  that list of eight deal with our request for the production

7  of responsive documents from the custodial files of five

8  individuals prior to their depositions taking place.

9      After those four issues, your Honor, there are two, we

10  call them "cleanup issues," with respect to Meta's

11  production.  One of them has to do with an imaging problem.

12  Some of these documents that Meta has produced are

13  improperly imaged, making it difficult for us to conduct a

14  thorough review.

15      The second cleanup issue, your Honor, has to do with

16  improperly redacted documents.  We also would like to

17  discuss, briefly, some deficiencies with respect to Meta's

18  privilege log.

19      Lastly, your Honor, if there is still time, my

20  colleague, Aaron Cera, will be discussing an issue that has

21  just recently come up regarding allotted time for the

22  deposition of 30(b)(6) witnesses versus 30(b)(1) witnesses.

23       THE COURT:  All right.  Thank you.  This is a lot

24  of issues to raise in a discovery hearing without any

25  written briefing, and so a possible outcome today is that I

6

1 order the parties to file a joint discovery letter brief

2 setting forth the issues in more detail.

3    I'm just previewing that that may be one outcome for

4 today, but let me hear first, Plaintiffs, if you can briefly

5 go through the different issues, and briefly present an

6 argument that will help me to understand whether I can rule

7 on things at the hearing or whether I need a joint discovery

8 letter brief.  So please go ahead.

9         MR. BENON:  Yes, your Honor.  With respect to the

10 first issue we'd like to raise, it's the third issue on the

11 list, and it has to do with the upcoming deposition of

12 Eleonora Presani.  She's a Meta employee.

13    That deposition, your Honor, is currently scheduled for

14 tomorrow.  We have San Francisco-based attorneys that have

15 flown out to New York.  They're prepared to take that

16 deposition.  Presumably, Meta has West Coast attorneys that

17 are also prepared to take the deposition in New York

18 tomorrow.

19    Plaintiffs wish to go forward with that deposition on

20 the current record, your Honor.  However, our request is

21 that the Court order the production of responsive documents

22 from this witness' custodial files.  Plaintiffs intend to

23 keep that deposition open for further examination after the

24 custodial files are produced, assuming the Court grants the

25 relief we seek.

7

1          THE COURT:  Okay.  Thank you.

2          MR. BENON:  We also would like -- the second issue

3 is similar, your Honor, but slightly different.  On Friday,

4 Plaintiffs intend to take the deposition of Alex Boesenberg,

5 who is an employee of Meta.  He has been made available in

6 Palo Alto, so there won't be as many adverse to travel out

7 and take this deposition.

8      With respect to this witness, your Honor, we know he

9 has had conversations with book publishers, for example, to

10 solicit licenses for book data.  This is highly relevant.

11 It goes to factor four of the Fair Use Doctrine.  We have an

12 RFP pending.  It's been served.  That goes right to these

13 documents.

14      Another member of this team, Amanda Kallet, has also

15 reached out to book publishers for the same purpose, based

16 on the documents we've seen, but we don't have the

17 communications themselves with these book publishers.

18      We'd like to take the deposition of Mr. Boesenberg

19 after these documents have been produced.  We think it makes

20 sense to have that deposition take place the second week of

21 October, and for Meta to produce these documents as soon as

22 possible, if possible by the end of this week, by Friday, so

23 we can have time to review and prepare for his deposition.

24      The third item is with respect to witness Nikolay

25 Bashlykov, very similar to Mr. Boesenberg.  We believe he

8

1  has highly relevant information.  His deposition, your

2  Honor, is scheduled for October 1st in London.  Similarly,

3  we request an order compelling the production of his

4  custodial file before his deposition proceeds.

5      We think his deposition should proceed in the second

6  week of October, when there are currently no depositions of

7  Meta employees scheduled.  It's a wide -- it's an open slate

8  for Meta employee depositions, and it makes sense to push

9  these two depositions out until then, so we can receive and

10  review their custodial files before those depositions take

11  place.

12      The fourth item is with respect to Mark Zuckerberg.  As

13  your Honor knows, your Honor just denied Meta's motion for

14  protective order, and that deposition will be going forward.

15  Plaintiffs request that his custodial files be produced

16  before his deposition begins.  We also would like to bring

17  to your Honor's attention that the parties mutually

18  disclosed data sources within the producing parties'

19  possession, custody, or control.

20      Noticeably absent from Meta's list of data sources are

21  things like mobile phones, iMessage, WhatsApp, and other

22  messaging applications.  We have raised this with Meta, and

23  in our experience, your Honor, personnel like Mark

24  Zuckerberg are often likely to use such messaging platform

25  like the ones I've just listed, and we'd ask the Court to

9

1  order Meta to search these data sources as well, prior to

2  the deposition of Mark Zuckerberg taking place.

3       As a quick aside, your Honor, Meta has asked for our

4  flexibility in terms of scheduling Mr. Zuckerberg's

5  deposition, and we are, of course, willing to be flexible

6  with respect to the scheduling of Mr. Zuckerberg's

7  deposition.

8       This is a natural break, your Honor.  The next items

9  deal with the cleanup items I've identified before, and

10 maybe it makes sense for me to take a pause here.

11          THE COURT:  I thought there were going to be five

12 individuals, and you've mentioned four.  Did I misunderstand

13 you?

14          MR. BENON:  Well, yes.  So, with respect to Mr. --

15 I kind of mentioned this under Mr. Boesenberg.  He has a

16 teammate named Amanda Kallet who also communicated with book

17 publishers.  So we think it -- we would request the Court

18 for the production of her custodial files as well prior to

19 the deposition of Mr. Boesenberg taking place.

20      Since Mr. Boesenberg and Ms. Kallet were on the same

21 team, they conducted essentially the same function of

22 reaching out to these book publishers.  So we'd ask the

23 Court to order the production of her custodial file prior to

24 the deposition of Mr. Boesenberg.

25          THE COURT:  Okay.  Thank you for the

10

1  clarification.  I appreciate that.  I think I understand

2  Plaintiffs' request for the five individuals.  Yes.  If you

3  can now turn to the other issues, please.

4          MR. BENON:  Okay.  So the first -- I call it a

5  cleanup item -- is this imaging problem, your Honor.  So

6  Meta produced numerous documents with imaging issues.

7  Appendices, tables, and lists throughout Meta's production

8  were not imaged properly.  Authors and comments are also

9  anonymous, making it hard for us to determine who made a

10 comment to which Word document.

11     Meta says that the text files that were produced

12 alongside the images are complete, so you can simply toggle

13 between the text and the image file to see if you're missing

14 something, but under the ESI stipulation entered in this

15 case, your Honor:

16          "When an image file is unreadable, the

17          producing party shall provide a

18          higher-quality image, or the native, or

19          the original file."

20     And that's on page 16 of the ESI protocol.

21     Your Honor, Meta's proposed solution is absurd.  We

22 should not have to scrutinize a text file against an image

23 file for every document in Meta's production to see if we're

24 missing a few extra lines, and this is not just a

25 theoretical concerned, your Honor.

11

1      In one instance just this last week, in preparing for a
2  deposition, one of my colleagues was pouring over a
3  documents, a key exhibit used in the deposition, and she
4  happened to compare the text file against the image, and we
5  were able to make a last-minute request for the image
6  version of the document, and at the 11th hour, your Honor,
7  the night before the deposition, the document was re-imaged
8  and produced, but, your Honor, this is not -- Plaintiffs
9  take the position this is not how discovery and litigation,
10 especially litigation of this magnitude, should be
11 conducted.

12     We shouldn't have to be doing this for each and every
13 document, and we request an order requiring Meta to
14 reproduce all the image files -- I'm sorry -- all the
15 improperly imaged files in its production, and we think this
16 should take place before the depositions.

17          THE COURT:  Okay.  Thank you.

18          MR. BENON:  The second -- thank you, your Honor.
19 The second cleanup item, your Honor, has to do with
20 redactions.  So, earlier this month, we raised the issue
21 that many redactions across Meta's production are improper,
22 and conceal material that is not attorney-client privileged,
23 and is not work product on its face.  The parties met and
24 conferred, and Meta agreed to re-review its production and
25 re-produce documents with fewer redactions.

12

1     Your Honor, we thought that Meta completed this task as

2 of last week, but, in reviewing for documents for this

3 Friday's deposition just last night, we discovered an Excel

4 sheet with blanket redaction tags on its face, no apparently

5 basis for attorney-client privilege or work product.

6     We brought this to Meta's attention last night, and we

7 got a response this morning saying the re-review is still

8 ongoing and the document would be produced this week.  So

9 we'd ask that Meta be ordered to finish its re-review and

10 produce these documents no later than Friday.

11     The next issue, your Honor, has to do with deficiencies

12 in Meta's privilege log, and I'll turn this over to my

13 colleague, Amy Keller.

14          THE COURT:  Great.  Thank you.

15          MS. KELLER:  Hello.  Good afternoon.  Apologies,

16 your Honor.  Hello.  Good afternoon.  Amy Keller for the

17 Plaintiffs.

18     As it pertains to the privilege log, I want to provide

19 the Court with more of a status update on our discussions

20 with data, you know, because this information was just

21 raised that, of course, whenever redactions are made, enough

22 information has to be provided to the party to whom the

23 production is being made to assess any claim of privilege,

24 and that's consistent with Federal Rule of Civil Procedure

25 2065.

13

1      We noted to Meta concerns we had with our privilege log
2  which prevented us from assessing its privilege claims.  Now
3  we've raised the issue with the Court because of the
4  then-impending discovery deadline, but we have a small
5  amount of breathing room now, which allowed us to have a
6  meet-and-confer with Meta.  We raised the issues with Meta
7  in a, you know, fairly lengthy correspondence with them on
8  September 18th.  We were able to have a productive call with
9  them yesterday, and Meta will be responding to our letter
10  with some case law on September 30th.  We may need your
11  Honor's guidance.
12      I don't believe a ruling is needed today, but we wanted
13  to inform you of the status of our ongoing discussions,
14  given that we have brought the issue to the Court's
15  attention because of the discovery deadline, which was set
16  to expire on Monday, and we might need your Honor's
17  assistance in the future, depending on how our conversations
18  go and Meta's response, but, on the whole, we wanted to
19  provide you with just a status update on that as we work
20  through these issues, so that we can have, you know, a
21  little bit more information in the privilege log to see --
22  to assess their claims of privilege.
23          THE COURT:  Thank you for the status update.
24          MR. CERA:  Hello, your Honor.  Aaron Cera on
25  behalf of Plaintiffs.  If I may, I would like to discuss the

14

1 30(b)(6) issue.

2          THE COURT:  Yes, please.

3          MR. CERA:  So, your Honor, this issue is

4 straightforward.  It's whether Plaintiffs are entitled to

5 separate time limitations for a witness proffered as both a

6 30(b)(1) and 30(b)(6) witness.  We believe the authority

7 which we have provided to Meta supports an affirmative

8 answer to this question.  I'm happy to provide the case law

9 to you now here.  I do think maybe some factually background

10 may be helpful, and I'm happy to provide that as well.

11          THE COURT:  Okay.  Thank you.

12          MR. CERA:  So, your Honor, the parties served an

13 amended 30(b)(1) notice on one of Meta's witnesses on

14 September 11th, to have his deposition taken on September

15 18th.  On September 16th, the parties served a 30(b)(6)

16 notice.

17     On September 17th, Meta e-mailed Plaintiffs' counsel

18 around 5:10 p.m., informing them that the 30(b)(1) witness

19 set to testify on September 19th would also be prepared to

20 testify in a -- as a corporate designee, on the discrete

21 30(b)(6) topic.

22     It is our position that we are -- that Plaintiffs are

23 entitled to a separate date and time, and that time being

24 seven hours to depose this witness in his 30(b)(6) capacity,

25 separate from his 30(b)(1) deposition.

1    As for the case I was referencing, your Honor, that is

2  Wesley v. Gates, Westlaw 1955, 997, Northern District of

3  California, 2009.  The other authority is Dynatix Design

4  Solutions, Inc. v. Synopsys, Inc., 2012 Westlaw 5943105, ND

5  Cal (phonetic) November 27, 2012.

6         THE COURT:  Okay.  Thank you.  Have you covered

7  the issues that Plaintiffs want to raise?

8         MR. CERA:  Yes, your Honor.

9         THE COURT:  Thank you.

10    Meta, I would like to hear your responses to the issues

11  that Plaintiffs have raised.

12         MS. DUNNING:  Thank you, your Honor.  This is

13  Angela Dunning from Cleary.  I'll go ahead and start, and

14  Mr. Ghajar may join.

15    I think the recitation of issues that the Court has

16  just heard illustrates in part why the issues are not ripe

17  in many respects for resolution.  Many of these issues have

18  not resolved in meet-and-confer yet.  They're issues we've

19  just heard for the first time.  So I'll do my best to

20  respond to the list of issues that the Plaintiffs' counsel

21  has just gone through, but much of this is new.

22    With respect to their request to add five new document

23  custodians, that request comes, frankly, your Honor, far too

24  late.  The close of discovery is Monday.  At the hearing

25  before Judge Chhabria on Friday, the Court acknowledged that

16

1  the parties may take an additional two weeks to complete the
2  depositions that have already been noticed, but the prospect
3  of Plaintiffs' proposal, number one, is not possible within
4  the existing schedule, which Judge Chhabria reaffirmed at
5  the hearing on Friday.

6      And so we have a situation in which we have scheduled
7  depositions consistent with that scheduling order.  We do
8  have several depositions scheduled for the first two weeks
9  of October, but there is not time consistent with the order
10  that Judge Chhabria reaffirmed to add additional document
11  custodians at this time.  These are not -- these are
12  individuals that Plaintiffs have been aware of for the
13  length of the discovery period, and if they --

14      THE COURT:  I have a question for you.  Can you
15  describe for me in a little bit more detail the steps Meta
16  uses to collect and review and produce custodial documents?
17  That would help me to better evaluate your assertion that
18  there isn't enough time.  For example, does Meta image
19  someone's e-mail account and then ship that to an outside
20  vendor?  Or if you can just walk me through.  I don't need
21  all the details, but just the general steps that Meta goes
22  through for each custodian to review and produce their
23  documents.

24      MS. DUNNING:  Your Honor, I am -- I'll do my best
25  to describe that at a high level, and then, if you need more

17

1  detail, some of my colleagues may join in.  Yes.

2      To collect documents, we ascertain where the custodian

3  is likely to keep documents that could be responsive.  There

4  is a process for identifying those, for pulling them through

5  a central process, for getting them to a vendor.  They need

6  to be processed.  They need to be reviewed for

7  responsiveness, relevance, and privilege.  They then need to

8  be processed for production, and Bates-labeled, and

9  produced.

10      I understand from the team that the -- and from the

11  client -- that the minimum amount of time, if Meta were to

12  prioritize the document production in this case above all

13  other matters, and to put all available resources to it,

14  would be a minimum of two weeks to produce documents for

15  even one custodian.

16      So I think there is no offense at the client that this

17  is a request that could possibly be complied with within the

18  schedule, and, your Honor, frankly, we're five days before

19  the close of discovery.  These issues have been raised at

20  the very last minute, and it's just not consistent with the

21  manner in which the parties should have been conducting

22  discovery to this point.

23          THE COURT:  And then, to follow up on my previous

24  question, once Meta identifies locations or data sources for

25  each custodian, and then pulls those, and then sends them to

1  a vendor, how do you narrow that down?  Is Meta using, for

2  example, search terms or technology-assisted review?  What's

3  the next step?

4          MS. DUNNING:  Your Honor, there are search terms.

5  The ESI order in this case provides for search terms, and

6  there is, you know, some negotiation over that, and it's a

7  complicated process, your Honor.

8          THE COURT:  Okay.  Thank you.  That detail is

9  helpful.  Please proceed.

10          MS. HARTNETT:  Sorry.  If I may, this is Kathleen

11  Hartnett, co-counsel for Meta.

12      I just wanted to chime in that our understanding is

13  that, in addition to the review process, there has to then

14  be the privilege review, so that's an extra step that has to

15  occur before the documents can then go back to the vendor to

16  be processed for production, and my understanding is, as of

17  our July substantial completion period, we had spent over

18  3,300 hours on first-level review of documents, and over

19  1,000 hours in other reviewers on documents, not including

20  various specialized reviews.  So this is a very

21  time-consuming process, because the reviewers have to do a

22  careful and good job.

23          THE COURT:  Okay.  Thank you.

24          MS. DUNNING:  Your Honor, with respect to the

25  other aspect of this request, as counsel indicated, I am

19

1  here in New York, prepared to defend Doctor Presani's

2  deposition tomorrow.  Meta would also strongly object to any

3  suggestion that the deposition proceed, and then be kept

4  open for, you know, additional questioning down the line.

5       You know, we took your Honor's order very seriously

6  when we were here a couple of hearings ago that the, you

7  know, depositions needed to proceed and be completed within

8  the schedule ordered by Judge Chhabria.  Judge Chhabria then

9  reaffirmed that schedule.  We have taken several depositions

10 at this point, even as we continue to receive documents from

11 the Plaintiffs much after their substantial completion date.

12      For many of the Plaintiffs, they have produced more

13 documents after the substantial completion date than they

14 did before.  We have not received a privilege log for at

15 least one of the Plaintiffs, and yet I think all of the

16 parties are trying to proceed with depositions, and both

17 sides have done that with the understanding that there would

18 be a single day of deposition of no more than seven hours,

19 consistent with the federal rules.

20      So I think the last-minute request to both add

21 additional document custodians, a request that could have

22 been made months ago, and enabled this in an orderly

23 fashion, is untimely, as is the suggestion that depos should

24 be continued or reopened if further documents later emerge.

25            THE COURT:  Okay.  Thank you.  Do you want to turn

20

1  to the issues that the other side described as "cleanup

2  problems"?

3        MS. DUNNING:  Sure.  There was one other issue on

4  the new custodians, your Honor, and it's one that we hadn't

5  heard yet, and we certainly haven't fully met and conferred

6  on, and that was with respect to their order that any

7  production of documents include a variety of additional data

8  sources.

9     I did want to clarify for the record that Meta's

10  collection of documents has been complete.  We have

11  collected documents from any location where responsive or

12  relevant documents could be located.  If they're for the

13  custodians that are part of the case, if they do not have

14  documents from certain locations, it's because those

15  locations are not relevant for purposes of the case, and so

16  we're not sure what that issue is that they're raising, but

17  it's certainly not ripe for the Court's intervention.

18     Turning to the alleged imaging issues, there are -- the

19  allegation -- and we clarified this in the e-mail that I

20  sent Ms. Mahr (phonetic) on Monday, but the -- to date, as I

21  understand it, Plaintiffs have identified 11 documents, out

22  of a production of roughly 20,000 documents from Meta, that

23  contain this imaging issue in which some of the content did

24  not appear in the produced versions of the documents, though

25  it does appear in the text file.

21

1     When those instances have been brought to Meta's

2 attention, Meta has promptly re-collected those documents

3 and re-produced them, and we have made clear that if

4 Plaintiffs identify any other documents that they believe

5 have cut-off or missing content, that we would be happy to

6 try to address that as quickly as possible.

7     Counsel referenced an instance in which a document was

8 recently provided to them before the deposition.  I wanted

9 to clarify, your Honor, that that document was actually

10 being re-produced at that point for a third time.  When they

11 had originally brought this document to our attention, we

12 had re-produced it as a PDF that contained all of the

13 content, and I think the Plaintiffs' counsel may have missed

14 that.

15     So we're not aware of other documents with imaging

16 issues.  We are certainly happy to address any other imaging

17 issues that Plaintiffs want to raise with us, but the

18 request in their e-mail to you that Meta re-review its

19 entire 20,000-document production to try to find instances

20 in which content may be cut off is not proportional or

21 appropriate.  We think the much better approach, your Honor,

22 is, to the extent that there are specific documents that

23 they plan to use or need, and believe that this issue is

24 present, we can certainly address that promptly as it comes

25 up.

22

1      And let me pause there before I turn to the redactions

2  issue, your Honor.

3          THE COURT:  Thank you.  I think I understand your

4  argument, so why don't you go ahead to the redactions.

5          MS. DUNNING:  Thank you so much.  So I am

6  surprised to hear the representation from counsel that we

7  said we would be finished last week in re-producing

8  documents that are redacted.  That is not accurate.  We have

9  been very clear with Plaintiffs' counsel that the redaction

10  issue they identify, you know, has arisen because, in some

11  instances, more than one version of a document was part of

12  the production, and redactions were applied to copies of

13  that same document, in some instances, differently.

14      We committed to re-reviewing every redacted document,

15  and to making a new production of corrected redactions by

16  the end of this week, and we are on track to do that.  So,

17  although this is not an issue that has, you know, been

18  through the appropriate meet-and-confer process, as required

19  by the discovery order, it's also a moot one, because we

20  have been doing exactly what they've asked, which is to go

21  through every redaction and try to address any

22  inconsistencies, and then get those re-produced to them this

23  week.

24      So we're doing just that, and, your Honor, I'll also

25  just point on this point that, in many instances, you know,

23

1  they have -- because they have multiple versions of the same

2  document, they do have the lesser-redacted version.  They

3  just want us to correct the other versions to also be lesser

4  redacted, and we've committed to doing that, and we'll have

5  that done by the end of the week.

6           THE COURT:  All right.  Thank you.

7           MS. DUNNING:  And I'll turn it to my colleagues to

8  address the remaining issue with respect to 30(b)(6).

9           MR. GHAJAR:  Your Honor, this is Bobby Ghajar on

10 behalf of Meta.  The 30(b)(6) versus 30(b)(1) issue was an

11 issue that we actually flagged for the Court, but I

12 appreciate my colleague, Aaron Cera from Plaintiffs, raising

13 it.  I think we can all agree that if somebody has a

14 30(b)(6) deposition that is for 30 topics, it doesn't

15 entitle them to seven hours per topic.  I think, as with all

16 things litigation-related, there is a reasonable compromise

17 to be had.

18     We have not taken the position, your Honor, that, if

19 there's a 30(b)(1) witness who happens to be identified as

20 the designee for a couple of 30(b)(6) topics, that they

21 don't get a little bit of additional time.  However, the

22 idea that if somebody is a 30(b)(6) witness, and designated

23 on a discrete, single topic, that the Plaintiffs get another

24 seven hours for that topic, particularly in the instance

25 that Mr. Cera cited where the deposition was completed, we

24

1  do not believe that's reasonable.

2      Although we do not have the cases they cited handy, and

3  there is counter-authority and distinguishing authority that

4  we would bring to the Court's attention if this were

5  briefed, we believe the more prudent approach would be to

6  reach an agreement with the other side that, where a witness

7  is handling a couple of discrete 30(b)(6) topics, there be

8  some reasonable additional time, but certainly not a second

9  day, and certainly not seven hours for that deposition.

10     In this case, we have a relatively discrete group of

11 deponents whose depositions have been noticed.  It is my

12 understanding as of this date that the group of individuals

13 who have been noticed as 30(b)(6) witnesses will likely

14 cover one or more 30(b)(6) topics.  One example was provided

15 to the Court by Mr. Cera.  There will be witnesses in the

16 coming week that will handle other topics.

17     And so we would benefit from the Court's guidance as to

18 whether Plaintiffs are entitled to seven hours for each

19 individual witness who might cover a topic or two, but again

20 I would suggest to the Court that the parties should meet

21 and confer and try to reach a compromise, for example, an

22 extra 30 minutes per topic, an extra hour per topic,

23 something proportional, before your Honor issues a blanket

24 ruling that, for any witness being deposed in their

25 individual capacity, and regardless of the number of

1  30(b)(6) topics on which they may speak, that the Plaintiff

2  get an extra seven hours per witness.  We don't think that's

3  reasonable or proportionate.

4          THE COURT:  Okay.  Thank you.

5      This is a number of discovery issues, and I understand

6  that they're important issues, and I appreciate the

7  arguments that both sides have presented at this hearing

8  today that have previewed these disputes for me.  Given the

9  number of issues, I am going to want the parties to file a

10 joint discovery letter brief to fully set forth your

11 arguments.  I think that will help me to make a thoughtful

12 decision on these issues.

13     So now I want to turn to talk about when the joint

14 discovery letter brief should be filed, and my default rule

15 is the letter brief is five pages, but we can change that if

16 the parties would like to have more space.

17     Let me turn first to Plaintiffs.  When do you propose

18 that I should set the deadline to get the joint discovery

19 letter brief filed, and what do you propose in terms of page

20 length?

21          MR. BENON:  Your Honor, two things with respect to

22 the timing.  As I previewed for the Court, there's currently

23 a deposition set for Friday.  That's a deposition that's

24 going to hinge on a lot of these documents that are at

25 issue.

26

1       We would ask the Court, and also ask my colleagues on

2  the other side of the V (sic), if they'd be flexible on

3  pushing that deposition out to the second week of October,

4  so the parties can hash these issues out in the meantime,

5  and we'd also ask for a Monday filing on the joint letter

6  brief, with 10 pages, total, five pages for each side, to

7  hash these issues out.

8           THE COURT:  Thank you.

9       Let me turn to Meta.  Your thoughts on timing and page

10 limits?

11          MR. GHAJAR:  Thank you, your Honor.  This is Bobby

12 Ghajar again.  I'll address this issue.

13      First, on the timing and page limits, Monday seems

14 reasonable, and the proposed page limits seem reasonable as

15 well.  We have to agree between counsel in terms of timing

16 of exchange and so on, and I'm sure we can do that.

17          THE COURT:  Okay.  Thank you.

18      Then I order the parties to file a joint discovery

19 letter brief discussing the issues that were raised at this

20 hearing today by Monday, September 30th, and the joint

21 discovery letter brief should be no more than 10 pages, with

22 five pages per side.

23      We've gone through the discovery issues that Plaintiffs

24 wanted to raise on this call.  Let me turn now to Meta.  Do

25 you have any discovery issues that you would like to raise?

1        MR. GHAJAR:  Yes, your Honor.  This is Bobby

2   Ghajar again.  I appreciate the opportunity.

3        The issue is not fully ripe, but I will preview it for

4   your Honor, and I would ask the Court to set a deadline for

5   the parties to brief the issue.  It doesn't have to be on

6   Monday, but it can be at some point next week.

7        We have raised issues with Plaintiffs regarding missing

8   privilege logs, a privilege log that has yet to be produced.

9   We received a privilege log weeks after the mutually agreed

10  upon date for them to produce it, and when we finally

11  received the privilege logs for a number of the Plaintiffs,

12  we saw the same descriptions of documents copied and pasted

13  many times, over and over again, throughout.

14        In short, there's an issue with their privilege log on

15  its face.  We are going to meet and confer with them as soon

16  as they'll make themselves available.  We'd ask the Court to

17  encourage Plaintiffs to do that quickly, and then set a date

18  next week for the parties to brief any remaining issues as

19  to the privilege log that Plaintiffs have produced,

20  including the untimeliness of one of the privilege logs.

21        THE COURT:  Thank you.

22        Let me hear Plaintiffs' response on this issue.

23        MR. BENON:  Your Honor, on behalf of the Kadrey,

24  Silverman, and Golden Plaintiffs, we just received a letter

25  from Meta's counsel.  I believe it was today.  We note there

28

1  was a paragraph in there that pertains to those three

2  Plaintiffs.  We're reviewing it.  People are already working

3  on addressing these issues.

4      With respect to those three Plaintiffs, it's very

5  likely that the issues will be mooted, because the

6  Plaintiffs will simply just address the concerns through a

7  reproduction of the privilege log.

8          THE COURT:  Thank you.

9      Meta, you wanted a deadline for the parties to get a

10 joint discovery letter brief on file if they're not able to

11 resolve this through meet-and-confer.  What do you propose

12 as the deadline?

13         MR. GHAJAR:  I think next Wednesday or Thursday,

14 your Honor, would be reasonable, and we do hope to narrow or

15 moot the issues, as we have attempted to do with Plaintiffs

16 when they've raised any concern or question regarding Meta's

17 documents or logs or other issues in the case.  So I'm

18 hoping that, by Wednesday or Thursday at the latest, we will

19 have gone through that process and exhausted it.  So

20 Wednesday or Thursday at the latest, your Honor.

21         THE COURT:  And do you think that the default

22 limit of five pages would be sufficient for this issue?

23         MR. GHAJAR:  In this instance, on this one issue,

24 yes, your Honor.

25         THE COURT:  All right.  Let me turn to Plaintiffs.

1  Your thoughts on timing and page limits?

2       MR. BENON:  For the Kadrey, Golden, and Silverman

3  Plaintiffs, that makes sense, but I'd like to hear from my

4  colleagues at the Clobes and DiCello firms regarding the

5  other -- their Plaintiffs.

6       MS. KELLER:  Yes, your Honor.  Amy Keller on

7  behalf of Plaintiff TerKeurst.  I believe that makes sense

8  as well.  We are in agreement with the other Plaintiff.

9       MR. RATHUR:  And yes, your Honor, on behalf of the

10 remaining Plaintiffs.  This is Mohammed Rathur.  We are in

11 agreement on the timing and limits.

12      THE COURT:  Okay.  Thank you.

13     Then, with respect to this issue, I order the parties

14 to meet and confer to see if you're able to resolve the

15 dispute.  If you are not able to resolve the dispute, then I

16 order the parties to file a joint discovery letter brief no

17 later than Thursday, October 3rd, not to exceed five pages.

18     Let me turn to Plaintiffs before we end this hearing

19 today.  Are there any other points that you wanted to

20 address?

21      MS. KELLER:  Your Honor, Amy Keller again on

22 behalf of Plaintiff Lysa TerKeurst, related to the earlier

23 topic I discussed today concerning Meta's privilege logs.

24 Perhaps it would make sense, given that the parties are

25 still meeting and conferring, and we'll get Meta's response

30

1 on Monday related to the issues we brought up to them during

2 our meet-and-confer yesterday, that if the parties are

3 unable to come to a resolution through that process, that we

4 also address it through the briefing that was just set to be

5 filed October 3rd.

6          THE COURT:  I see.

7     And, Meta, what are your thoughts?  Do you think, if

8 that issue is not able to be addressed through

9 meet-and-confer, you could include that issue in the joint

10 discovery letter brief that's due on October 3rd?

11          MR. GHAJAR:  I think that makes sense, your Honor.

12 This is Bobby Ghajar again.  I think that makes sense.  It's

13 a proven approach.  If we're going to do, potentially, two

14 sets of privilege issues in the same briefing, I might

15 suggest an enlargement of the page length, if your Honor

16 would indulge, perhaps a couple more pages per side, at the

17 most.  We'll try to be judicious with what we write, but I'm

18 agreeable to that approach.

19          THE COURT:  And can you propose a specific number

20 of pages?

21          MR. GHAJAR:  Sure, your Honor.  I guess I would

22 suggest three and a half pages a side.

23          THE COURT:  Okay.  So seven pages, total.

24     And let me turn to Plaintiffs.  Does that page length

25 make sense to you?

1          MS. KELLER:  On behalf of Plaintiff Lysa
2 TerKeurst, it does.  I want to defer to my other colleagues
3 to see if they have additional thoughts on this as well.
4          MR. BENON:  That seems fine for the remaining
5 Plaintiffs.
6          THE COURT:  Okay.  Then, with respect to both
7 privilege issues, the one raised by Plaintiff and the one
8 raised by Meta, I order the parties to meet and confer, and
9 if they're not able to resolve their disputes, then I order
10 them to file a joint discovery letter brief no later than
11 October 3rd and no longer than seven pages.
12     Are there any other points --
13          MS. KELLER:  Thank you, your Honor.
14          THE COURT:  -- Plaintiffs wanted to raise at this
15 hearing today?
16          MR. BENON:  Yes, your Honor, and this is Holden
17 Benon again.  This is something I just briefly touched on.
18 Two of the depositions that are currently scheduled --
19 that's Mr. Boesenberg on Friday and Mr. Bashlykov on
20 Tuesday, those are sort of -- those issues touch on the
21 custodial issues that we talked about, your Honor, and I
22 respectfully would ask the Court to encourage Meta to be
23 flexible on rescheduling those depositions for the second
24 week of October, within a deadline set by the Court, so that
25 the parties can work out those issues and still have enough

32

1  time for, hopefully, a production of documents before those

2  depositions take place.

3          MS. DUNNING:  Your Honor, this is --

4          THE COURT:  Go ahead.

5          MS. DUNNING:  I'm sorry.  This is Angela Dunning,

6  your Honor, on behalf of Meta.  I understand that Mr.

7  Bashlykov is not available after next week, and we provided

8  the date that would work for him within the discovery

9  schedule ordered by Judge Chhabria.  So we're not able to

10 accommodate a request to push him any later.  I'll let Mr.

11 Ghajar address Mr. Boesenberg, but I understand that Doctor

12 Presani's deposition, everyone agrees, will be proceeding

13 tomorrow.

14         MR. GHAJAR:  Thank you.  This is Bobby Ghajar

15 again.  I would agree with my colleague, Ms. Dunning.  The

16 Friday deposition that's been scheduled with the witness

17 here is calendared.  That deposition should proceed.  It

18 should not be held in limbo pending an as-yet-resolved

19 request for custodial documents, which the Court may or may

20 not provide, and which may or may not be available before

21 the close of deposition discovery, and I will repeat my

22 colleague's argument on that point regarding the

23 untimeliness.

24        As an aside, your Honor, your Honor helped resolve

25 discovery issues that Meta raised a few weeks ago, and

33

1  granted a motion with respect to a number of document

2  requests.  I'm bringing this up because your Honor gave the

3  Plaintiff until September 30th to produce documents, and, at

4  the time, that was the deadline for all discovery and

5  depositions.

6        We took depositions, for better or worse, without

7  having access to documents that are going to be produced in

8  five days.  We took depositions without documents that we

9  believe were called for many months ago.  So the fact that

10  Plaintiffs are just now raising ESI requests under the ESI

11  protocol is not a basis, we believe, for the Court to

12  adjourn a deposition that has long been scheduled,

13  inconvenience witnesses, and disrupt a lot of preparation

14  that went into arranging for these depositions.

15        And I'll note, although I don't have the privilege of

16  having to go to Europe next week, we made extensive

17  arrangements, your Honor, to make two European witnesses

18  available, both in London.  That's not where the witnesses

19  reside, but we did that to save Plaintiffs a lot of hassle

20  and a lot of effort to try to depose them where they reside.

21  It took a lot of coordination.  As you can imagine, it took

22  a lot of expense, airfare, et cetera, and so attempting to

23  move those depositions for reserving an extra day we do not

24  believe is appropriate.

25              THE COURT:  All right.  Thank you, Counsel.

34

1    I'm not going to say anything about the scheduling of
2 depositions for particular witnesses on particular days.  I
3 am not familiar with the witnesses' availability, and I'm
4 not aware of all the meeting and conferring that has gone on
5 between the two sides.  So I don't feel that I'm adequately
6 knowledgeable to say what depositions should happen on what
7 day, so I'm just not going to say anything about that at
8 today's hearing.
9    Let me turn to Meta.  Are there any further items that
10 you wanted to raise at this hearing today?
11       MR. GHAJAR:  This is Bobby Ghajar.  Nothing from
12 my perspective.  I'll ask my colleagues, Ms. Hartnett and
13 Ms. Dunning, if there are any other issues they'd like to
14 address.
15       MS. DUNNING:  Not at this time, your Honor.  We
16 appreciate your input, as always.
17       MS. HARTNETT:  Nor here, thank you.  This is Ms.
18 Hartnett.
19       THE COURT:  All right.  Well, thank you, Counsel.
20 I wish you good luck in meeting and conferring on the
21 privilege issues, and, if not, then I'll look forward to
22 seeing the parties' joint discovery letter brief on October
23 3rd, and with respect to the remaining issues, I'll look
24 forward to receiving the parties joint discovery letter
25 brief on Monday, September 30th.

35

1       Have a good afternoon, counsel.

2           ALL:  Thank you, your Honor.

3           THE CLERK:  Thank you, everyone.  We're off the

4  record in this matter.

5       (Proceedings adjourned at 3:56 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

1                    CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16

17             Echo Reporting, Inc., Transcriber

18                 Friday, September 27, 2024

19

20

21

22

23

24

25