Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

RICHARD KADREY, et al.,          )
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )     NO. C 23-03417 VC
                                 )
META PLATFORMS, INC., a          )
Delaware corporation,            )
                                 )
          Defendant.             )
_____)
CHRISTOPHER FARNSWORTH, et al.,)
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )     NO. C 24-06893 VC
                                 )
META PLATFORMS, INC., a          )
Delaware corporation,            )
                                 )
          Defendant.             )
_____)
                          San Francisco, California
                          Friday, October 4, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:
                    JOSEPH SAVERI LAW FIRM
                    555 Montgomery Street - Suite 1210
                    San Francisco, California  94111
               BY:  **JOSEPH R. SAVERI, ATTORNEY AT LAW**
                    **CHRISTOPHER K.L. YOUNG, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

**APPEARANCES:**  (via videoconference, continued)

For Plaintiffs:

                        BOIES SCHILLER FLEXNER LLP
                        333 Main Street
                        Armonk, New York  10504
                 BY:  **DAVID BOIES, ATTORNEY AT LAW**

                        BOIES SCHILLER FLEXNER LLP
                        1401 New York Avenue, NW
                        Washington, DC  20005
                 BY:  **JESSE M. PANUCCIO, ATTORNEY AT LAW**

                        BOIES SCHILLER FLEXNER LLP
                        44 Montgomery Street - 41st Floor
                        San Francisco, California  94104
                 BY:  **MAXWELL V. PRITT, ATTORNEY AT LAW**

                        BUTTERICK LAW
                        1920 Hillhurst Avenue - Suite 406
                        Los Angeles, California  90027
                 BY:  **MATTHEW BUTTERICK, ATTORNEY AT LAW**

                        CAFFERTY CLOBES MERIWETHER & SPRENGEL
                        135 South LaSalle Street - Suite 3200
                        Chicago, Illinois  60603
                 BY:  **ALEXANDER SWEATMAN, ATTORNEY AT LAW**

                        DiCELLO LEVITT LLC
                        Ten North Dearborn Street - 6th Floor
                        Chicago, Illinois  60602
                 BY:  **AMY E. KELLER, ATTORNEY AT LAW**

                        LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                        275 Battery Street - 29th Floor
                        San Francisco, California  94111
                 BY:  **DANIEL M. HUTCHINSON, ATTORNEY AT LAW**
                        **ELIZABETH J. CABRASER, ATTORNEY AT LAW**
                        **REILLY T. STOLER, ATTORNEY AT LAW**

                        LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                        250 Hudson Street - 8th Floor
                        New York, New York  10013
                 BY:  **RACHEL GEMAN, ATTORNEY AT LAW**

            **(APPEARANCES CONTINUED ON THE FOLLOWING PAGES)**

```
 1   APPEARANCES:  (via videoconference, continued)

 2   For Plaintiffs:

 3                        COWAN DeBAETS ABRAHAMS & SHEPPARD LLP
                          60 Broad Street - 30th Floor
 4                        New York, New York  10004
                 BY:   CECE COLE, ATTORNEY AT LAW
 5                     SCOTT J. SHOLDER, ATTORNEY AT LAW

 6                        COWAN DeBAETS ABRAHAMS & SHEPPARD LLP
                          9454 Wilshire Boulevard - Suite 901
 7                        Beverly Hills, California  90212
                 BY:   NANCY E. WOLFF, ATTORNEY AT LAW

 8
     For Defendant:
 9                        COOLEY LLP
                          1333 2nd Street - Suite 400
10                        Santa Monica, California  90401
                 BY:   BOBBY A. GHAJAR, ATTORNEY AT LAW
11
                          COOLEY LLP
12                        Three Embarcadero Center - 20th Floor
                          San Francisco, California  94111
13               BY:   KATHLEEN R. HARTNETT, ATTORNEY AT LAW
                       MARK WEINSTEIN, ATTORNEY AT LAW
14
                          CLEARY GOTTLIEB STEEN & HAMILTON LLP
15                        1841 Page Mill Road - Suite 250
                          Palo Alto, California  94304
16               BY:   ANGELA DUNNING, ATTORNEY AT LAW

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Friday - October 4, 2024**                                    **1:05 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:**  Now calling civil cases 23-3417, Kadrey, |
| 5 | et al. versus Meta Platforms, Inc. and 24-6893, Farnsworth |
| 6 | versus Meta Platforms, Inc. |
| 7 |     Will Counsel please state your appearances for the record |
| 8 | starting with the Plaintiff for Kadrey. |
| 9 | **MR. SAVERI:**  Good afternoon, Your Honor, Joseph Saveri |
| 10 | for the Plaintiffs. |
| 11 | **THE COURT:**  Hi. |
| 12 | **MR. BOIES:**  Good afternoon, Your Honor, David Boies of |
| 13 | Boies Schiller Flexner for the Plaintiffs. |
| 14 | **THE COURT:**  Hi. |
| 15 | **MR. YOUNG:**  Good afternoon, Your Honor, Chris Young, |
| 16 | Joseph Saveri Law Firm for the Kadrey Plaintiffs. |
| 17 | **THE COURT:**  Hi. |
| 18 | **MR. SWEATMAN:**  Good afternoon, Your Honor, Alex |
| 19 | Sweatman from Cafferty Clobes Meriwether & Sprengel on behalf |
| 20 | of the Plaintiffs. |
| 21 | **THE COURT:**  Hi. |
| 22 | **MR. PRITT:**  Good afternoon, Your Honor, Maxwell Pritt, |
| 23 | Boies Schiller Flexner for the Plaintiffs. |
| 24 | **THE COURT:**  Hi. |
| 25 | **MS. KELLER:**  Good afternoon, Your Honor, Amy Keller, |

1  DiCello Levitt LLP on behalf of Plaintiffs.

2          **THE COURT:**  Hi.

3          **MR. PANUCCIO:**  Good afternoon, Your Honor, Jesse

4  Panuccio with Boies Schiller also for Plaintiffs.

5          **THE COURT:**  Hi.

6          **MR. BUTTERICK:**  Your Honor, good afternoon, Matthew

7  Butterick for the Kadrey Plaintiffs.

8          **THE COURT:**  Hi.  Is that it for the Kadrey Plaintiffs?

9                          (No response.)

10          **THE COURT:**  I think so.  All right.  Who else do we

11  have?

12          **MS. GEMAN:**  Good afternoon, Your Honor, for the

13  Farnsworth Plaintiff Rachel Geman, Lieff Cabraser.

14          **THE COURT:**  Hi.

15          **MR. STOLER:**  Good afternoon, Reilly Stoler also with

16  Lieff Cabraser Heimann & Bernstein also for the Farnsworth

17  Plaintiff.

18          **THE COURT:**  Hello.

19          **MS. CABRASER:**  Good afternoon, Your Honor, Elizabeth

20  Cabraser of Lieff Cabraser for the Kadrey Plaintiffs as well.

21          **THE COURT:**  Hi.

22          **MR. HUTCHINSON:**  Good afternoon, Your Honor, Daniel

23  Hutchinson of Lieff Cabraser Heimann & Bernstein.

24          **THE COURT:**  Hi.

25          **MR. SHOLDER:**  Good afternoon, Your Honor, Scott

1  Sholder from Cowan DeBaets Abrahams & Sheppard also on behalf

2  of the Farnsworth Plaintiffs.

3           **THE COURT:**  Hi.

4           **MS. COLE:**  Good morning, CeCe Cole from Cowan DeBaets

5  Abrahams & Sheppard also on behalf of the Farnsworth Plaintiff.

6           **THE COURT:**  Hi.

7           **MS. COLE:**  And as a panelist, there is also Nancy

8  Wolff from Cowan DeBaets Abrahams & Sheppard on behalf of the

9  Farnsworth Plaintiff.

10          **THE COURT:**  Okay, hi.  Is that it for Farnsworth?

11                         (No response.)

12          **THE COURT:**  Okay.

13          **MS. GEMAN:**  Yes, Your Honor.

14          **MR. GHAJAR:**  Good afternoon, Your Honor, Bobby Ghajar

15  from Cooley on behalf of Defendant Meta Platforms.

16          **THE COURT:**  Okay.

17          **MS. HARTNETT:**  Good afternoon, Your Honor, Kathleen

18  Hartnett also from Cooley for Meta.

19          **THE COURT:**  Hi.

20          **MR. WEINSTEIN:**  Good afternoon, Your Honor, Mike

21  Weinstein also from the Cooley firm and also for Defendant.

22          **MS. DUNNING:**  And I think perhaps last, Angela Dunning

23  from Cleary Gottlieb on behalf of Meta.  Good afternoon,

24  Your Honor.

25          **THE COURT:**  Good afternoon.  All right, the party is

1    growing.  Welcome, everybody.

2        Does -- I don't really know what to do right now.  Does

3    anybody have any ideas on how we should proceed given the size

4    of the party now?

5        **MR. BOIES:**  Your Honor, this is David Boies.  I would

6    suggest there may be a couple of threshold issues.  One is

7    whether the recently case filed [sic] is a related case.  I

8    think everybody agrees that it is a related case.

9        **THE COURT:**  Yeah, and I think I granted the motion to

10   relate; but if I didn't, I will do so -- if I haven't already,

11   that's granted.  The cases are related.

12       **MS. GEMAN:**  It was granted, Your Honor.  Thank you.

13       **THE COURT:**  Okay.

14       **MR. BOIES:**  And then I think a second issue is what is

15   the schedule and whether there is going to be an extension of

16   the schedule and related to that is how the recently filed

17   litigation is coordinated with the existing litigation.

18       **THE COURT:**  Right.  And, I mean, it may be that the

19   latter question should be answered first; right.

20       I mean, usually when we get two basically identical

21   proposed class actions -- and I actually don't know for sure if

22   they are basically identical but it seems like they are -- you

23   know, usually when we had two basically identical proposed

24   class actions, we kind of make a decision about how they are --

25   how they are going to proceed.

1    And one thing we sometimes do is that we consolidate both

2    of them and then we appoint lead counsel, right, to represent

3    the proposed class.

4    Sometimes we will stay the later filed case and allow the

5    earlier filed case to go forward or if there's a good reason,

6    sometimes we might stay the earlier filed case and allow the

7    later case to go forward although that is exceedingly rare;

8    right.  I would think there would have to be a very good reason

9    for that.

10    So, it strikes me that maybe before we talk about what we

11    are going to do with the schedule, we need to figure out how

12    these cases are going to operate together.

13    **MS. HARTNETT:**  Your Honor, I would be happy to speak

14    to that from Meta's perspective when appropriate.

15    **THE COURT:**  Go for it.

16    **MS. HARTNETT:**  Your Honor, from our point of view, the

17    newly filed case should be stayed.  It has been related as

18    Your Honor noted.  It could have been filed long ago in terms

19    of being part of the party.  The party has been going on.

20    We have had several cases that were consolidated together.

21    The schedule has been proceeding.  We can talk about the

22    request for an extension, but we don't believe the new case

23    should change the calculus about how to resolve the existing

24    case.

25    **THE COURT:**  Okay.  And, Mr. Boies, what's your view on

1    that?

2        **MR. BOIES:**  I agree, Your Honor, that the new case

3    should not change the schedule that the Court would otherwise

4    set.

5        I think the case could be stayed.  I think that we have

6    not had a chance to consult -- at least I have not with the

7    Counsel for the recently filed case.

8        So, in terms of how they are integrated with the existing

9    case or whether it is stayed, it's not something I have a point

10   of view on.

11       I do, though, agree with Counsel for Meta that the

12   addition of this case should not delay the schedule that the

13   Court would otherwise set.

14       **THE COURT:**  Okay.  And then whoever is speaking for

15   the Farnsworth Plaintiffs, what's your view on -- you know, how

16   the cases should proceed --

17       **MS. GEMAN:**  Thank you, Your Honor.

18       **THE COURT:**  -- in relation to one another?

19       **MS. GEMAN:**  Thank you, Your Honor, Rachel Geman.

20       We believe with some but not all of what has been said.

21   Certainly the filing of our case is not meant to itself cause a

22   delay in the proceedings.  We are here to bring our experience

23   in these cases to help -- to work and to help safeguard the

24   interest of book authors.

25       We -- as Mr. Boies says, we have not had the chance to

1    speak directly with him; but we have been in collaborative

2    touch with certain of the parties.

3        And whether Your Honor would be inclined to, perhaps,

4    consolidate for pretrial purposes or have the cases proceed in

5    tandem, we think that would be the most sort of procedurally

6    efficacious.

7        Certainly we are in no way trying to stay the first filed

8    case nor are we trying to stay ourselves.  We are here to work

9    collaboratively mindful of Your Honor's directive in late

10   September that an augmented team might benefit the larger

11   class.

12       **THE COURT:**  Right.  I mean, the -- the idea of both

13   cases proceeding in tandem and -- but remaining separate -- I

14   mean, you were suggesting that they sort of be coordinated

15   together for pretrial purposes but remain separate and have --

16   I guess I don't understand that.

17       I mean, to the extent it's the same class that you-all are

18   proposing to represent, right, I mean, what we usually do is we

19   decide who is going to be lead counsel to represent that class

20   or that proposed class.  And to the extent that you-all are

21   competing, you know, to represent the proposed class, I think I

22   have to decide who is going to be lead counsel.

23       And or to the extent that you are proposing that, you

24   know, the cases be consolidated and that you -- you know, both

25   the Cabraser firm and the Boies firm serve jointly as lead

1    counsel and will work together, I mean, I could entertain that

2    too, I suppose; but I -- I'm not totally sure I understand what

3    your proposal was.

4        But to the extent that you are suggesting that the cases

5    should remain separate and such that there could potentially be

6    two class action trials, I mean, that doesn't make any sense,

7    right, to the extent it is the same proposed class.  I mean,

8    there needs to be one -- one case -- one motion for class

9    certification and one class action trial if a trial is

10   ultimately needed.  And then -- and I think there needs -- you

11   know, we need to figure out who lead counsel for the class is

12   going to be.

13       And so, it strikes me that that's -- one option is to go

14   that route, and the other option is to stay the later filed

15   case.  And, you know, I think those are the only two reasonable

16   options.

17       I'm happy to hear suggestions for other reasonable

18   options, but I think those are probably the only two.

19           **MS. GEMAN:**  Thank you, Your Honor.  It is helpful as a

20   gating issue.  Your Honor is correct, that there is certainly

21   overlap in the classes.  Our class is a little bit different

22   than the Kadrey class insofar as it is more limited, but

23   certainly we understand that is arguably sort of a subset of

24   the larger class in the other case.

25           **THE COURT:**  How is it more -- how is it more limited?

1                **MS. GEMAN:**  Our class, Your Honor, is limited to

2      authors with registered copyrights -- and I'm looking at

3      paragraph 55 of our complaint -- whose works were used by Meta

4      for LLM training and research development.

5          We also have a feature of the class where the works are

6      assigned an ISBN number, but I think the high-level point is

7      these are book authors with registered copyrights.

8                **THE COURT:**  Okay.  As opposed to -- and remind me what

9      the proposed class is in the earlier filed case.

10               **MS. GEMAN:**  Yes, Your Honor.  The case there is

11     copyright holders, more generally.  I believe theirs is all

12     persons or entities domiciled in the U.S. that own a U.S.

13     copyright and any work that was used as training data for any

14     version of the language models.

15         So, they are both -- as all class definitions, they are

16     perhaps both a little wordy, but ours is essentially more

17     narrow in a couple of respects.

18               **THE COURT:**  Okay.

19               **MS. GEMAN:**  With respect to Your Honor's question,

20     though -- and I don't think this detracts from Your Honor's

21     point that you see two options -- I think certainly our

22     preference would be to continue to speak collaboratively with

23     the current counsel to see if there is a proposal for

24     consolidation or if Your Honor wanted to consolidate at this

25     point, it's certainly -- that would be our preference rather

1    than being stayed.

2         MS. HARTNETT:  Your Honor, if I may for Meta -- this

3    is Kathleen Hartnett -- the reason why we took the position of

4    staying is that case, as you can tell, there already are a lot

5    of counsel involved here -- and we can talk more about it when

6    we get to the issue of scheduling -- but our client has been

7    continuing to make its best efforts to create the full record

8    that Your Honor asked for.

9         And so, our main concern at this point -- where the case

10   has been bifurcated, we are not even at the class stage yet --

11   is just to try to get through the discovery efficiently so that

12   you can have your summary judgment motions.

13        And so, I think we are just concerned that we don't

14   really -- we are indifferent to which counsel we oppose in the

15   sense that we just want to litigate this case efficiently; and

16   we just see this as potentially complicating things further by

17   adding another Plaintiff and other issues where it is already

18   complicated enough.

19        And I would like to speak to the scheduling issues too

20   because I think that may inform -- you know, as much as there

21   was concern about is the record coming together, you know,

22   hopefully it is.

23        THE COURT:  Okay.  Go ahead and what do you want to

24   say about the scheduling stuff?

25        MS. HARTNETT:  Well, I guess I will say two things.

1    One is that unfortunately, you know, existing counsel has not

2    heeded your admonition fully at the September 20th hearing

3    about completing the discovery within two weeks of the close.

4        Since that hearing, they have actually cancelled three

5    depositions of Meta witnesses.  They didn't take a date for

6    another one, the Chief AI Researcher; and we still have to

7    schedule two other depositions, the 30(b)(6) and the deposition

8    that was ordered of Mr. Zuckerberg.

9        They did take one deposition yesterday of Meta's head

10   of -- Vice President for AI, and they took two others.

11       Meanwhile, Plaintiffs have actually completed all -- we

12   have completed our depositions of Plaintiffs, seven of them,

13   except for three next week.  Two witnesses have been sick.  One

14   was out of the country.

15       So, from our perspective, we are wrapping things up the

16   way Your Honor contemplated.  Unfortunately, kind of rather

17   than just complete the discovery that they were given and make

18   that full record, they have not done that but have re-filed

19   this motion.

20       And so, what we -- our perspective at this point is

21   they -- just right before the call today offered -- asked us to

22   get dates for the three that they had cancelled.  We are happy

23   to provide those.  We would like to complete the depositions

24   that were ordered.  Complete the tie up issues in discovery and

25   get this to expert discovery, which is going to be an important

```
 1   part of the summary judgment record.

 2        So, I just say that only for two reasons, which is, one,

 3   the renewed motion to extend the case schedule, we respectfully

 4   submit should not be well taken because they haven't really

 5   progressed much more than before but just are making the same

 6   arguments again.

 7        THE COURT:  Although I assume -- to be fair, I mean, I

 8   assume -- they haven't spoken to this -- I'm assuming what

 9   happened with the three depositions that were cancelled is new

10   counsel has come in.  New counsel is probably going to be

11   taking those depositions, and they are not ready to take the

12   depositions yet and --

13        MS. HARTNETT:  That actually -- that was not the case.

14   Oh, they did cancel at least one after new counsel.  What they

15   wanted to do was have -- expand the number of custodians, and

16   they wanted to get those custodial documents before the

17   deposition.  And then Magistrate Judge Hixson this week ruled

18   they were too late in asking for that.

19        And so, we were happy to proceed with those depositions

20   because we had scheduled them in the -- we had scheduled two in

21   the UK; having a witness from France come to the UK to make

22   sure that it was easier for them to take the discovery, and we

23   had another deposition scheduled.

24        So, and so far existing counsel has been taking the

25   depositions.  So, from our perspective, this really is at the
```

1    end of the road.  We are there.  The end is in sight, and I

2    think we keep getting distracted from that by these repetitive

3    motions; and all they need to do is take the six remaining

4    depositions they have and then they will have the record they

5    need.

6        **MR. BOIES:**  Your Honor, if I could address that first,

7    I think the Court is correct; that the depositions that were

8    cancelled are depositions that new counsel intends to take.

9        I don't want to get into my very first appearance before

10    the Court sort of back-and-forth with Meta's counsel; but I

11    don't think it is fair to say that the -- that the issue here

12    is exclusively one on the Plaintiffs' side.

13        Yesterday there was a substantial production of additional

14    source code from the Defendant that we have not yet had an

15    opportunity to review.

16        On September 10th a hard drive was produced to us labeled

17    the -- hard drive number 4, which had already been produced.

18    We thought it was a duplicate.  We later found out -- counsel

19    later found out that it was not a duplicate and that it

20    contained one of the compilations of the copyrighted works that

21    Meta had used.  And so, that is now being analyzed.

22        **THE COURT:**  Could I -- Mr. Boies, can I interrupt you

23    for just a second?

24        **MR. BOIES:**  Yes.

25        **THE COURT:**  One of the things that troubled me about

 1   your motion to extend the litigation deadlines was that it was

 2   clear to me when I -- when we had our previous hearing, right,

 3   that these delays were the fault of the Plaintiffs; and it is

 4   clear from Judge Hixson's rulings; that he is convinced also

 5   that the Plaintiffs have been dragging their feet and they have

 6   not been pushing the case forward.

 7        But in your -- in your renewed motion for an extension, it

 8   seemed like all you were doing was blaming the Defendants for

 9   delays, and I guess -- you know, I found that really hard to

10   swallow; and I find it really hard to entertain another request

11   to extend the discovery deadlines when all your side seems to

12   be doing is doubling down on this -- what I believe to be a

13   false assertion -- that Meta is stonewalling you.

14        I am -- I am more convinced than ever -- especially after

15   reading Judge Hixson's rulings -- discovery rulings -- that

16   this is either entirely or almost entirely the fault of the

17   Plaintiffs' legal team.

18        And so, I just -- I don't really know what to do with

19   that.  I have got -- you know, I have got a newly constituted

20   legal team in the Kadrey case that sort of generally,

21   theoretically I would have confidence in.

22        And, you know, generally if they were able to articulate

23   for me what more they need that they don't have and why, that

24   then I might be inclined to defer to.

25        But instead of filing a motion where you clearly

 1    articulated what more it is that you need for adjudication of

 2    the fair use issue and sort of give me a roadmap for how we can

 3    get there, you're -- you know, instead of saying, "Sorry, we

 4    didn't get it before but here is our plan for getting it now,"

 5    you are again accusing Meta of stonewalling and I think falsely

 6    accusing Meta of stonewalling.

 7          And so, I'm left not knowing how to handle this renewed

 8    motion for an extension.

 9          **MR. BOIES:**  I appreciate the Court's difficulty there.

10    And I don't think that we would say that the problem is simply

11    Meta stonewalling.

12          I do think -- and maybe we have not made that record

13    adequately -- but I do think that there are substantial gaps in

14    what Meta has produced, and some of that stuff because of its

15    recent production we are not in a position to be absolutely

16    comprehensive about it.

17          I can give you some examples.  One of the issues is -- as

18    the Court is aware -- Meta has a series of versions of its

19    Llama product.

20          And we know we do not have all of the training materials

21    for the first, and we know that we do not have all of the

22    training materials for the most recent.  We are not able to

23    determine whether we have a lot of the training materials for

24    Llama 2, for example.

25          This is something that I think a 30(b)(6) deposition --

1    which we have scheduled, and as the Court is aware, we have

2    been given 16 hours to take -- I think we will reveal the

3    extent to which we are right that there is stuff that we don't

4    have or perhaps we are wrong.

5         With respect to the schedule, you know, as any Plaintiff,

6    we are anxious to move along; and I, you know, regret that we

7    are in the position that we are in right now.

8         Since we were brought on, we have devoted a very

9    substantial team to try to understand the documents that exist,

10   the documents that don't exist.  We have made a lot of progress

11   in that.

12        You know, I would -- I would say to the Court that I don't

13   think that you will have the record that would be desirable if

14   we try to wrap this up in two weeks.

15        I think that we can -- if we limit this to the fair use

16   issue -- and the Court on September 20th said that there were

17   five points that the Court believed were not disputed.  If

18   those points are not disputed and we limit this to fair use, I

19   think we can move very expeditiously.

20        Since the September 20th hearing and since we got

21   involved, Meta has at least been ambiguous as to whether their

22   summary judgment motion is going to be limited to fair use and

23   also ambiguous as to whether or not they dispute the five

24   points.  Those are two things that we think is very important

25   to understand before the Court sets the schedule.

1    The --

2        **THE COURT:** Well, I mean, to be fair to them at the

3   last hearing, they made pretty clear that there was a good

4   chance that the summary judgment motion would not be limited to

5   fair use; right.

6        **MR. BOIES:** But if that's the case, Your Honor, I

7   really think that the -- I mean, just -- and the Court knows

8   and I don't because I wasn't here -- but just looking at the

9   record that we reviewed, it looks like that what was the focus

10  of this was the belief -- maybe it was erroneous but it was the

11  belief on our part -- and I think the Court's part -- that this

12  was going to be limited to fair use.

13       If it is not going to be limited to fair use, one of the

14  things the Court said is we need to know what is going to be on

15  the agenda.  And although Meta increasingly says there is going

16  to be more than fair use, we still don't have a list of what

17  those issues are.

18       And again, I would urge the Court that before setting the

19  schedule, it's important that we know what the issues are for

20  summary judgment.

21       **MS. HARTNETT:** Your Honor, if I may respond on that.

22       **THE COURT:** Sure.

23       **MS. HARTNETT:** Respectfully, I think some of what you

24  just heard is actually not accurate unfortunately including

25  that we have not provided a list of potential summary judgment

1   arguments beyond fair use, which we expect to be the bulk of

2   our summary judgment motion.

3       We reserved the right on our call with Plaintiffs'

4   Counsel -- that Mr. Boies was not on -- to potentially argue a

5   standing issue, which would just be if someone's works are not

6   in the data set or if they don't have right to the copyright.

7   We could also just file a motion on that separately later if

8   that is more straightforward.  There also could be a legal

9   issue about whether something is copying or not.  We would

10  expect that to be brief.  There is not a mystery here about the

11  issues.

12      And I would move on to say on the issues about the

13  smattering of arguments being made about source code dumps or

14  whatever else, those are all -- I don't need to -- I'm happy to

15  get into the minutia because I know the facts on those.  The

16  hard drive, for example, was mislabeled by mistake.  They knew

17  what it was.  They actually have a 30(b)(6) topic on the drive,

18  so they know what it was.  It is not a mystery.

19      The source code production this week were pool requests

20  that they asked for as a supplement.  And the source code is a

21  red herring anyway because it is really not the point of the

22  fair use argument.

23      So, they do -- we have been working to get them what they

24  want.  They have it.  And I really think it is important to

25  note, the six depositions they have yet to take are on the

1   topics that they claim to need more on.  They have one who is

2   going to be knowledgeable about a data set other than books 3.

3   They have that deposition.  They could take it.

4        They have the -- they have the head of AI, the kind of

5   leader in the AI development, Mr. LeCun.  They could take that

6   deposition.  They have a person that has dealt with licensing

7   issues.  They can take that deposition.

8        So, they have refused to take three depos.  They have

9   refused a date for another.  They have a 30(b)(6) that has not

10  actually been scheduled yet, but we are happy to schedule that.

11       And so from our perspective, they just need to take their

12  depositions.  We can finish up any cleanup issues with Judge

13  Hixson.  Those motions would be due on Monday.  So that's yet

14  another way in which they are using the time to re-argue the

15  schedule when they should just be doing the cleanup discovery

16  with Judge Hixson.

17       And if they have a problem with the source code

18  production, the right answer wasn't to come ask for more time

19  with you.  It was to actually bring a motion before Judge

20  Hixson and they haven't done that.

21            **THE COURT:**  Well, maybe they are doing that on Monday.

22            **MS. HARTNETT:**  Well, we haven't met and conferred on

23  anything.  And that's really important, Your Honor.  Judge

24  Hixson on our calls has been available on short notice.  He has

25  resolved everything promptly and on one of our last calls said,

1  "Tell me.  Is there more coming?  Tell me now.  I will get

2  ready for it."  One of those calls was attended by new counsel.

3      So, the notion that the right thing to do is to re-argue

4  the schedule over and over is wrong.  The right thing to do is

5  to take the depositions and go to Judges Hixson if there is a

6  problem with our production.

7          **THE COURT:**  Okay.

8          **MR. BOIES:**  Your Honor, I would -- I would suggest to

9  the Court that without an adequate record and without a class

10 certified, resolving the summary judgment for the named class

11 representatives is not a productive approach.

12     We are not asking for an extensive delay.  The delay that

13 we are asking for is not inconsistent with either keeping or

14 very closely keeping the summary judgment schedule.  We can

15 overlap some of the work that needs to be done.

16     But I think it will -- I think it is important that the

17 Court have an adequate record, and I think the Court recognizes

18 that the record that's been made right now is not adequate for

19 a decision that is going to have an ability maybe to put some

20 of these issues at rest.

21     You know, we can argue how we got here but we are where we

22 are right now; and -- and I think the Court knows that there is

23 not an adequate record here.

24     I think the Court knows that we are going to make an

25 effort very expeditiously to address these issues.  And if the

 1    only issues on other than fair use are standing and the legal

 2    issue of copying, if that's all that we are talking about and

 3    if the five issues that the Court said on the 20th that you

 4    thought were undisputed remain undisputed, this is something

 5    that we can move very expeditiously on; and we are committed to

 6    doing that, but it's not -- but with respect, it's not two

 7    weeks.

 8        You know, whether it is 60 days or 30 days or 90 days, you

 9    know, I think is something that people may be able to differ

10    on; but I would -- you know, we are not asking for six months.

11    We are also saying that two weeks isn't going to do it.

12        **MS. HARTNETT:**  Your Honor, if I may, on the issue that

13    Mr. Boies just raised about having the class come second would

14    not make sense.  That's actually the bifurcation that

15    Your Honor ordered at the beginning of this case.

16        So, the summary judgment is going to come before the class

17    because that's the schedule that you set.

18        And then to the extent we are talking about -- I just go

19    back to your order, and it derives from the good cause standard

20    itself.  What you said on the 20th of September is what the

21    rules require, which is that they come back with something that

22    is critical for the resolution of fair use.  They have to

23    identify something missing, and respectfully you have heard

24    that the record is horrible but nothing specific.

25        **THE COURT:**  Yeah.  I guess the -- their best argument,

which they haven't really made but I will sort of make for them
now, is that the Plaintiffs really messed up by not moving the
case forward in an expeditious fashion.

They found themselves stuck up against the discovery
cut-off and hadn't come close to doing the work that they
needed to do to get the case ready to be adjudicated.

New counsel has come in now with the ability and the
resources to get the case ready for adjudication, but they need
a little more time because they are new to the case -- you
know, they need a little more time to learn the case and learn
what's in the discovery record and then augment the discovery
record.

And it's an important case.  You know, it's a case that --
I mean, obviously, we are only in the district court; and what
happens in the district court is never all that important, but
it is an important case that needs to -- you know, we need a
ruling.

And, you know, it implicates not just Meta but all these
other companies and all these other authors.  And, you know, we
need a couple more months to make sure we are getting it right
now that a new legal time is in charge.

I mean, that I think is the argument for, you know,
extending this out a couple of months.  Again, we still have
got to figure out what we are doing with this other case.  That
would be the argument for extending this out for a couple of

months; to make sure that, you know, any holes in the discovery record can be filled before the matter is adjudicated.

**MS. HARTNETT:**  Can I give you one example, though?  I hear you and I think that is somewhat the argument they have been making but not with the specificity that we believe Your Honor asked for at the last hearing, which could be developed if they -- you know, but we need that specificity.

The source code is a good example.  The Plaintiffs' Counsel -- existing Plaintiffs' Counsel did not actually ask for source code in an RFP.  It is apparently now important to them.

Meta provided the source code any way.  They have had it since May.  They have reviewed it.  My colleague can speak to it if necessary.

So, there is an example of something where, okay, was that the best that could have been done?  Probably not.  Did we -- is the record actually okay?  Yes, it is.

And I think that's really what I'm trying to underscore from my client's perspective here.  We are not trying to help the other side win, but we have been litigating in good faith providing the witness' availability.  We are here to complete discovery.

And so, from our perspective two more months of getting a redo when a redo is not necessary -- there is not a record showing there is a redo necessary -- is unfair to us because

just yesterday we had our Vice President of AI sit for a
deposition all day.  That happened.  The other depositions
should happen.

So, I just -- I do think, sure, in some case could there
be a record where this is required a redo?  Yes.  Has the
record been made here that there should be a redo that good
cause exists?  I don't believe so.

A lot of aspersions have been cast.  General statements
have been made.  There is nothing that they have been pointing
to relative to the fair use analysis that they don't have or
won't get from the depositions coming up of six very key
witnesses to the dispute.

We believe that should happen.  You should give a little
more time for that to happen.  Hopefully their word means
something and we can get them done this time.  They can come
back later if they need to with good cause down the road, but
it shouldn't be an open season now.

THE COURT:  Yeah, I hear what you are saying.  Okay,
well, let me give all of this a little bit more thought.  And
obviously I would not make a decision about whether to stay the
second case or consolidate the second case into the first case
without giving you-all an opportunity to be heard further on
that right.

But let me -- let me give some thought to everything that
we have discussed so far and issue a ruling on the case

1  schedule.

2      And after I issue a ruling on the case schedule, we can

3  decide -- we can endeavor quickly to figure out what role this

4  second case is going to play, if any, in the adjudication of

5  the issues that we are scheduled to adjudicate.  All right.

6          **MR. BOIES:**  Thank you, Your Honor.

7          **THE COURT:**  Thank you.

8          **MS. HARTNETT:**  Thank you, Your Honor.

9          **MS. GEMAN:**  Thank you, Your Honor.

10             (Proceedings adjourned at 1:42 p.m.)

11                     ---oOo---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   October 7, 2024




_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter