October 11, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC
      **Joint Discovery Letter Brief re: Plaintiffs Motion to Extend Deposition Limits**

Dear Magistrate Judge Hixson:

      Plaintiffs in the above-captioned action ("Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta"), pursuant to the Court's Order at Dkt. 213, jointly submit this letter brief regarding Plaintiffs' request to expand the cap on the number of depositions they may take. The Court ordered that each party's submission could be up to five pages.

I. **PLAINTIFFS' POSITION**

Pursuant to Fed. R. Civ. P. 30(a)(2), the Order of Judge Chhabria extending the case schedule, Dkt. 211, and this Court's order requesting this joint Letter Briefing, Dkt. 213, Plaintiffs respectfully request leave of Court to take 35 total depositions under Fed. R. Civ. P. 30(b)(1), inclusive of party and third-party witnesses, to be further limited by a total cap of individual fact witness deposition time of 167.5 hours for the 31 remaining depositions Plaintiffs have yet to take.[1]

A. **The Extended Discovery Period Allows for Additional Depositions**

This Court previously denied Plaintiffs' request for leave to depose more than ten fact witnesses based solely on the then-imminent deadline for fact discovery. *See* Dkt. 146 ("For present purposes, the Court denies Plaintiffs' motion because the requested relief is incompatible with the current case schedule."). Meta's principal argument is that this reasoning should still apply. But the Court stated it would reconsider if "the close of fact discovery changes." *Id.* Subsequently, at the Court's request, Plaintiffs supplemented their legal team to help build the "proper record" necessary for this "complex case" that will determine "an important societal issue" as AI technologies proliferate across nearly all sectors of the economy. Panuccio Decl. Ex. A at 15:12-16, 16:19-20. The Court then extended the fact-discovery deadline by two months, to December 13, 2024. In the last two weeks, Plaintiffs completed depositions of four Meta employees for a total of 25.5 hours on the record.[2]

Accordingly, Plaintiffs respectfully revive their request for an increase in the number of permitted fact depositions. Plaintiffs' request is similar to that previously sought, but now also includes an independently applicable limit to the total record time for the depositions.

B. **Sufficient Reasons Exist to Expand the Cap**

Rule 30 provides a presumptive limit of ten depositions per party. To exceed this limit without a stipulation, a party must obtain leave of Court. Fed. R. Civ. P. 30(a)(2)(A)(i). "The party seeking leave of the court to conduct additional depositions under Rule 30 bears the burden of showing sufficient reasons, consistent with the principles set forth in Rule 26(b)(1) and (2), to justify an extension of the presumptive limit." *Pitkin v. Corizon Health, Inc.*, 2018 WL 1336047, at *2 (D. Or., Mar. 13,o 2018). Such reasons exist here.[3]

As the Court has recognized, this is a complex class action addressing cutting-edge

---

[1] Plaintiffs' request excludes time for Rule 30(b)(6) depositions. The Court already ordered that Plaintiffs may take a total of 16 hours of 30(b)(6) testimony.Dkt. 196 at 1-2.

[2] The Court has already ordered that Meta's CEO, Mark Zuckerberg, must be deposed, Dkt. 171 at 2, and Plaintiffs intend to set and take that deposition within the extended discovery period.

[3] Defendants' "particularized showing" standard has been criticized by other district courts. As noted in *Pitkin*, "[t]here is no mention of necessity or a particularized showing in Rule 26," and only "sufficient reason" is required. *Pitkin*, at *2 (citing *Laryngeal Mask v. Ambu A/S*, 2009 WL 10672436, *3–4 (S.D. Cal. July 17, 2009). In any event, Plaintiffs meet either standard.

Honorable Thomas S. Hixson
October 11, 2024
Page 3

artificial intelligence technology and the alleged infringement of hundreds of thousands of copyrights, where damages run into the billions of dollars. The outcome here may set the rules governing intellectual property and its value for the foreseeable future. The need for a complete record is paramount and an expansion of the deposition limits "is proportional to the needs of the case." *Perez v. Indian Harbor Ins. Co.*, 4:19-cv-07288-YGR-TSH, Dkt. 61, at 1 (Discovery Order) (N.D. Cal., Jul 27, 2020) (expanding ten-deposition limit because "Plaintiff [wa]s suing for $267 million"); *see also Brown v. Google*, 4:20-cv-03664-YGR-SVK, Dkt No. 230 at 27-30 ("Dispute P17") (Plaintiffs seeking 40 depositions in class action alleging unauthorized data collection by Google from millions of users) (N.D. Cal. Aug. 3, 2021); *id.*, Dkt. No. 242-1 (granting Plaintiffs 40 total depositions in *Brown* and related case).[4]

The increase to the number of allowed depositions is amply justified by what Plaintiffs have already adduced in discovery. As set forth below, Plaintiffs have identified 41 potential deponents combined across party and third-party witnesses who have material knowledge concerning the defenses anticipated at summary judgment. There are also up to two dozen additional third parties Plaintiffs contemplate deposing due to their direct knowledge of licensing negotiations at Meta or other AI technology companies. Plaintiffs also recognize that not every witness will need examination for the full allowable seven hours, and are thus willing to restrict remaining time on the record with a 167.5-hours cap, for an average of fewer than 5.5 hours per deponent.[5]

Meta laments that, consistent with the expanded discovery period, Plaintiffs have served a "barrage" of new written discovery, and therefore additional depositions should not be permitted. But the point of the discovery extension is to permit the additional discovery necessary to build a proper record in this important case, not simply for Meta to run out the clock by stonewalling all new discovery requests, which they now promise to do. *See infra* (listing Plaintiffs' recent discovery requests and threatening to "object to this other discovery in due course").

### 1. Meta Included Twelve Witnesses in Its Disclosures

In its amended Rule 26(a) disclosures dated May 29, 2024, Meta identified twelve Meta employees "believed to have knowledge of facts relevant" to its defenses. See Rule

---

[4] Defendants' attempts to distinguish *Perez* and *Brown* are unavailing. In *Perez* the Court recognized the need to increase the cap on the number of deponents while imposing the efficiency of a timing cap—just what Plaintiffs propose here. The distinction that *Brown* involved two cases is no distinction at all, because this matter also features several consolidated cases.

[5] Meta's objection that Plaintiffs postponed four depositions ignores that the postponement stemmed from Meta's own failure to provide custodial documents for three of those deponents, the fourth resulted from the obvious need to avoid multiple cross-Atlantic trips, and the Court has now ordered those productions. Similarly, Meta's complaints that depositions of Dr. Eleonora Presani and Todor Mihaylov lacked relevance are entirely baseless. Dr. Presani raised alarms within Meta and advised against the use of certain datasets in produced documents, and Mr. Mihaylov testified Meta has used or is still using various shadow dataset for Llama Model training.

Honorable Thomas S. Hixson
October 11, 2024
Page 4

26(A)(1)((A)(i)). Holding to the ten-witness cap would preclude Plaintiffs from deposing at least two of these central defense witnesses. Plaintiffs seek leave to take the depositions of the following individuals listed on Meta's disclosures.

**Amrish Acharya** (Finance Director): Information and documents concerning financial information regarding, and investment in, the Llama models.

**Angela Fan** (Research Scientist): Information and documents concerning background, development, and use of Llama 2 and 3 by Meta; integration of Llama into products at Meta.

**Aurélien Rodriguez** (Former Software Engineering Manager): Information and documents concerning background, development, and use of Llama 1, 2, and 3 by Meta; management and oversight of development of Llama 1 and Llama 2; benchmarking tests.

**Chaya Nayak** (Director, Product Management): Information and documents concerning background, development, and use of Llama 2 and 3 by Meta; risk and safety policies related to Llama 2 and 3 and implementation of the same; integration of Llama into Meta products.

**Hugo Touvron** (Research Scientist): Information and documents concerning background, development, and use of Llama 1, 2, and 3 by Meta, including model design architecture, and fine-tuning.

**Joelle Pineau** (VP, AI Research): Information and documents concerning background, development, and release of Llama 1; Llama 1 open license approach; artificial intelligence and neural networks; natural language processing; large language models; oversight of Fundamental AI Research ("FAIR") team, including regarding Llama 1.

**Josh Ginsberg** (VP, Marketing): Information concerning marketing of the Llama models.

**Mike Clark** (Director, Product Management): Information and documents concerning development of Llama 2 and 3; risk and safety policies related to Llama 2 and 3 and implementation of the same.

**Sergey Edunov** (Director, AI Research): Information and documents concerning background, development, and use of Llama 2 and 3 by Meta; management and oversight of development of Llama 2 and Llama 3.

**Yann LeCun** (Chief AI Scientist): Artificial intelligence and neural networks; natural language processing; large language models, including training thereof; Meta's decision to release Llama models under an open license.

### 2. Plaintiffs Seek to Depose Additional Meta Employees Not Hand-Selected by Meta in its Disclosures

Plaintiffs should not be limited to seeking testimony only from individuals Meta has strategically

selected. Plaintiffs seek to depose the following individuals:

**Alex Bosenberg**. referenced in Meta_Kadrey_0045315, which shows that Bosenberg had independent interactions with various fiction book publishers for the purpose of negotiating licenses for the copyrighted data at issue here.

**Arun Rao** is a key product manager for Meta machine learning and is on important documents in the production regarding use cases. Kadrey_Meta_00063884. Meta's intended uses for the product are integral to the fair use analysis.

**Eugene Nho** is Director of Product, Generative A.I., involved in acquiring data for training LLMs.

**Lukas Blecher** is a Machine Learning Engineer, and was involved in the processing of relevant and high-quality data from books to train Meta's LLMs.

**Luke Zettlemoyer** is a Research Manager and Professor; Plaintiffs understand he has unique knowledge about Meta's A.I. development.

**Armand Joulin** is a manager responsible for the development of Llama 1 series of models.

**Steven Roller** is a former research engineer on Mr. Kambadur's team who explored and analyzed opportunities to license training data, including by analyzing the cost of licensing.

**Sean Bell** currently is the head of Llama Data and likely has knowledge concerning the data used to create the Llama models.

**Kenneth Heafield** is a Meta manager who tried to get Internet Archive as a potential data source for Llama training who may have knowledge about Meta considering paying for training data.

**Brian Gamido** is part of Meta's AI Business Development team who was tasked with reaching out to content owners to discuss potential licensing opportunities.

**Elisa Garcia Anzano** was part of the AI Business Development team who also was tasked with reaching out to content owners to discuss potential licensing opportunities.

**Sy Choudhury** is a member of the AI BD team that apparently played a lead role in Meta's long term open-source and commercial license strategy for Llama, including future releases.

**Ragavan Srinivasan** is the head of product at Facebook AI.

**Santosh Janardhan** is the head of infrastructure at Meta.

**Alexis Björlin** is a former vice president of infrastructure at Meta who was in charge of AI infrastructure training.

Honorable Thomas S. Hixson
October 11, 2024
Page 6

**Michel Meyer** is the group product manager working on Core Learning and Reasoning within FAIR.

**Jennifer Pak** is Lead Counsel on intellectual property risks in Generative AI at Meta.

**Movarid ("Mo") Metanat** is Director and Associate General Counsel, Artificial Intelligence Product at Meta.

**Eugene Nho** is Director of Product, Generative A.I., involved in acquiring Meta's AI training data.

**Nisha Neo** is a Marketing and Communications director and has been involved in Meta's decisions on how to handle public messaging of Meta's use of pirated copyrighted materials for AI training.

**Lukas Blecher** is a Machine Learning Engineer who was involved in the processing of relevant and high-quality data from books to train Meta's Llama models.

**Jacob Xu** is a researcher at Meta who was involved in downloading books databases.

**Nikolay Bashylkov** is a Research Engineer who headed the downloading and parsing of LibGen, a highly relevant dataset used to train the Llama models.

### 3. Plaintiffs Seek to Depose a Limited Number of Third Parties

Plaintiffs also seek to depose several non-party witnesses. To date, Plaintiffs have identified former employees **Guillaume Lample** (knowledge of the books in Meta's training set); **Moya Chen** (knowledge of the downloading and processing of LibGen1 and LibGen2); **Susan Zhang** (knowledge of pre-training on books, impact on models when training on books versus not; and ethical considerations); **Xavier Martinet** (former Meta research engineer familiar with Meta's decision to use pirated materials rather than paying for licenses); and **Edouard Grave** (knowledge of competitors' use of books as training data). Plaintiffs also plan to deposing an employee of EleutherAI (**Stella Biderman**) because of her unique knowledge of The Pile. Plaintiffs may also seek to depose **Tim Dettmers**, depending on the outcome of the current privilege dispute related to his posts on Discord.

Additionally, Plaintiffs anticipate deposing more third parties whose testimony would be highly relevant to fair use and to Plaintiffs' damages: (a) representatives of other AI technology companies—Google, Microsoft, OpenAI, GitHub, Apple, and others—to establish what those companies' practices have been with respect to negotiating and executing license agreements with intellectual property owners, and (b) celebrities, content creators, and other intellectual property owners who have reportedly negotiated with those companies to complete licensing deals.[6]

---

[6] Meta has "reportedly paid millions of dollars to humanize a new generation of chatbots" by licensing the voices of Judi Dench, John Cena, Kristen Bell, Awkwafina, and Keegan-Michael Key. *See* Ex. B.

I.  **DEFENDANT'S POSITION**

One month ago, Plaintiffs sought leave to take a total of "35 party depositions, exclusive of third-party depositions" and 30(b)(6) depositions, or "a total of 180 hours of deposition testimony." ECF No. 146.  Since this initial request by Plaintiffs to massively expand deposition discovery, Plaintiffs have been repeatedly directed to clearly articulate their specific need for any enlargement of discovery and to tailor such additional discovery to the issues in dispute.  *See, e.g.*, ECF No. 163 (requiring Plaintiffs to "articulate clearly what is missing that is critical to the resolution of the fair use issue").  Based on Plaintiffs' claim that "much is still needed to make a proper fair-use record," ECF No. 193 at 4, Judge Chhabria "reluctantly" extended the case schedule by roughly two months, *see* ECF No. 211.  Likewise, this Court has repeatedly admonished all parties to be realistic about their discovery demands in light of the case schedule, and, in particular, for the present submission to reflect "what is feasible to do by December 13, 2024," ECF 213.

Despite these directives, Plaintiffs have returned to the Court with a similarly sweeping proposal for deposition discovery.  Plaintiffs revisit their request for ***35 total depositions*** of Meta and third-party witnesses—meaning that they would be taking 31 depositions in the next two months (as they have so far taken only 4 depositions), plus the 16 hours of 30(b)(6) deposition that has been ordered.  This proposal is unrealistic, unnecessary, and disproportionate, and it should be rejected.  This case involves one copyright claim—albeit an important one—and discovery should be conducted accordingly.  As explained herein, Plaintiffs have failed to tailor their ever-expanding demands to the issues in this case and instead seek dozens of irrelevant and/or cumulative depositions.  Moreover, Plaintiffs' proposal is not "feasible" (ECF No. 213) but "impossible" (ECF No. 146) to complete in two months.

Notably, the present, unjustified request for dozens of additional depositions is not the only overreach by Plaintiffs in the days since the Court granted a modest extension.  In the last 48 hours Plaintiffs have served:  ***52*** new document requests, ***30*** new interrogatories (without leave of Court and despite exceeding the default limit of 25 that they have exhausted), ***89*** new requests for admission, a newly amended, more expansive Rule 30(b)(6) notice, and ***17*** new document custodians (on top of the 15 already agreed to by the parties and recently ordered by the Court, *see* ECF No. 212).  Meta will appropriately object to this other discovery in due course, but this barrage confirms Plaintiffs' overall approach to the Court's measured extension:  unreasonably demand as much as possible in hopes of getting some percentage of the request, without regard to what is actually "missing that is critical to the resolution of the fair use issue."  ECF No. 163.

Meta respectfully requests that the Court adopt Meta's proposal:  six additional fact depositions per side, subject to the default 7-hour limit, and exclusive of multiple 30(b)(6) witnesses (i.e., a 30(b)(6) deposition counts as one deposition, regardless of the number of witnesses).  This proposal is feasible and tailored to accommodate both sides' additional needs without imposing undue, unnecessary, and impossible burdens.  It also acknowledges that the parties already have conducted extensive discovery over a 10-month period, and that it would be both impossible and unfair to allow Plaintiffs to cram a year's worth of discovery into a two-month period.

### A.  Meta's Proposal is Feasible and Proportionate to this Case's Needs

Meta proposes expanding the fact deposition limit by up to six depositions per side for a total of 16 depositions per side, inclusive of third-party depositions and one 30(b)(6) deposition (but not including any additional 30(b)(6) depositions in the event that Meta designates a 30(b)(6) witness who is not also noticed for deposition under Rule 30(b)(1)). Under this proposal, the parties would still have *20* depositions between them to complete before December 13—8 for Meta (which has completed all but two of its original 10 depositions) and 12 for Plaintiffs (which still have six of their original ten depositions to take. That is a tall order but one that is feasible.

Not only is Meta's proposal feasible, but it will allow any critical discovery to be completed without requiring an unnecessary and disproportionate number of depositions. Specifically, Meta's proposal would enable Plaintiffs to depose all of Meta's disclosed witnesses and ESI custodians, including individuals most knowledgeable about the subjects of Plaintiffs' new discovery requests (e.g., Meta's future plans for its LLMs, Meta's financials associated with its AI efforts, and Meta's efforts to license LLM training data). This enlargement would also allow Meta to complete depositions of all twelve Plaintiffs, as well as any additional third-party depositions that may be necessary in light of Plaintiffs' new discovery requests and recent depositions. Meta will identify additional deponents as soon as feasible but is still in the process of reviewing the substantial discovery that Plaintiffs recently served.

### B. **Plaintiffs' Proposal is Unjustified and Infeasible**

**Relevant Background**. The history of Plaintiffs' shifting demands to enlarge the deposition limits is important context for Plaintiffs' current request. As the parties neared the original September 30, 2024 fact discovery cut-off, Plaintiffs—without having taken any depositions and without any explanation of need—suddenly demanded that they be entitled to take an unlimited number of depositions within a 140 hour cap. *See* ECF 137-1, ¶ 23. Then, on August 29, 2024, Plaintiffs sent Meta a list of 25 proposed depositions, in addition to three others they had previously identified, and purported to "reserve all rights with respect to seeking additional depositions." *Id.*, ¶ 23 & Ex. L. Plaintiffs later sought to add two deponents to their August 29 list, but to reduce the proposed number of deposition hours to 120. *Id.* at ¶ 25. Then, on September 10, 2024, Plaintiffs sent Meta a further proposal of 35 depositions or 180 hours per side, exclusive of Rule 30(b)(6) testimony and third-party depositions. *See id.* at ¶ 2 & Ex. A. This proposal was rejected by the Court on September 13, 2024 as "incompatible with the current case schedule." ECF No. 146 (Order).

Since the Order, Plaintiffs have taken only four depositions of Meta witnesses totaling 25.5 hours. Only two of these Meta witnesses were among the twelve individuals identified by Meta in its initial disclosures. The depositions of the other two, whom Plaintiffs previously described as "likely to have important knowledge of key facts" (ECF 143 at 4), showed those deponents' *lack* of knowledge of material issues and, correspondingly, Plaintiffs' lack of credibility in requesting their depositions. *See e.g.*, ECF 190-1, ("Presani Tr.") at 152:4-18 ( "I don't know any of the datasets that have been used" to train Meta's LLMs), 64:15-20 (no role in evaluating datasets), 64:21-65:2-11 (no role or input in selecting or approving datasets); Lauter Decl., Ex. A ("Mihaylov Tr.") at 90:1-13 (explaining that his dataset work concerns web data, not books). Separately,

Plaintiffs *postponed* four depositions that they could have completed.[7]

Coupled with its voluminous new written discovery, ESI demands, and rescheduling of four depositions, Plaintiffs' proposal today is even *more sweeping* than the one this Court previously rejected as "impossible" to accomplish in the short time remaining, *see* ECF No. 146.

**Plaintiffs' Claimed "Need"**. This case is about whether Meta's training of its AI models using certain datasets violated Plaintiffs' copyrights and if so, whether it is a fair use. Class discovery has not yet begun, meaning that at present there are 12 individual claims before the Court. Fact discovery thus should not be complicated, 1/12/24 Tr. 12:10-17:6, and any additional discovery beyond the default should be correspondingly modest and supported by "a particularized showing of [] need." *Authentec, Inc. v. Atrua Techs., Inc.,* 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008); *accord Martensen v. Koch*, 2013 WL 11316743, at *1 (N.D. Cal. Jun. 19, 2013).

In evaluating whether there has been a particularized showing of need, courts assess whether: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Authentec*, 2008 WL 5120767, at *1. Plaintiffs' proposal runs contrary to these considerations.

*First*, Plaintiffs again rely on speculation that certain Meta employees should be deposed merely because they—like many others—are mentioned in a document or are known to have had some involvement in the development of Meta's Llama models.[8] There are hundreds of Meta employees working on AI. That does not make them appropriate deponents. As one example, Plaintiffs identify Santosh Janardhan, the head of infrastructure at Meta, and Alexis Bjorlin, former vice president of infrastructure at Meta, without explaining their relevance to the issues in this case. "Infrastructure" is irrelevant to this case generally and to fair use specifically.

Elsewhere, Plaintiffs identify several people likely to have overlapping information. For instance, Alex Boesenberg, Stephen Roller, Brian Gamido, and Elisa Garcia Anzano are all described by Plaintiffs as having knowledge of "potential licensing of training data" for Meta's LLMs. Their supposed subject matter knowledge is, as described, duplicative of one another, and is also

---

[7] Plaintiffs canceled Alex Boesenberg's deposition; canceled the depositions of Europe-based witnesses Hugo Touvron and Nikolay Bashlykov (even though Meta had already arranged for both to travel to London, one from France); scheduled then canceled the deposition of Stella Biderman; scheduled then canceled the deposition of Amanda Kallet; and then asked for the deposition of Yann LeCun (Chief AI Scientist at Meta) and did not accept the date provided. Many of these cancellations occurred after new counsel joined Plaintiffs' expansive legal team.

[8] Notably, Plaintiffs do not even indicate whom they intend to depose among the more than 45 current and former Meta employees and third parties described in their portion of this joint letter. This ambiguity further confirms the lack of need.

encompassed by Plaintiffs' 30(b)(6) topics. Similarly, Eugene Nho, Lukas Blecher, Jacob Xu, Nikolay Bashlykov are described as having knowledge of the "acquisition and processing of training data," which is also the subject of Plaintiffs' 30(b)(6) notice. Plaintiffs also list a number of individuals with roles developing Meta's Llama models, without regard to whether those roles imparted them with non-cumulative, relevant, material knowledge. Plaintiffs fail to justify these overlapping, duplicative depositions. *See, e.g.*, *Cisco Sys. Inc v. Arista Networks, Inc.*, No. 14-CV-05344-BLF, 2016 WL 632000, at *2–3 (N.D. Cal. Feb. 17, 2016) (declining additional depositions as duplicative); *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 2012 WL 2357446, at *3 (N.D. Cal. June 14, 2012) (same). This is especially deficient given Plaintiffs' broad written discovery **and** 30(b)(6) on the same topics. *See* Lauter Decl., Ex. B; *RJ v. Cigna Health & Life Ins. Co.*, 2022 WL 16839492, at *2 (N.D. Cal. Nov. 9, 2022) (depositions denied, in part, as duplicative of anticipated 30(b)(6) witness)

Plaintiffs also seek to depose Jennifer Pak and Moyarid Metanat, both in-house *counsel* at Meta. As any relevant information these individuals possess would be privileged (e.g., "intellectual property risks"), it is unclear what legitimate need Plaintiffs could have to depose them.

In sum, "[t]he number of potential witnesses does not justify deposing everyone." *In re At Home Corp.*, 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) (denying motion to permit 21 depositions).[9]

***Second***, the testimony that Plaintiffs purport to seek from more than tripling the deposition limit is significantly outweighed by the burden and expense on Meta. As an initial matter, it ignores the immense amount of effort and resources that Meta has ***already*** put into responding to Plaintiffs' discovery. And, as explained above, to the extent that Plaintiffs have identified specific witnesses, these individuals are likely to have overlapping and cumulative knowledge, if they have material knowledge at all. Meanwhile, scheduling, preparing for, and participating in dozens of depositions would be extremely costly and time consuming for both Meta and its employees, all of whom have significant other responsibilities, and several of whom are located outside of the United States and/or have limited availability. An hours cap does not reduce these burdens.

***Third,*** Plaintiffs' outsized request is, at best, premature. Plaintiffs have taken only four depositions, only two of which concerned witnesses identified by Meta as knowledgeable about relevant issues and/or likely to possess documents responsive to Plaintiffs' discovery. Plaintiffs say they need 25 ***more*** depositions than the 10 allotted to them under the rules (on top of the

---

[9] Plaintiffs again rely on *Perez v. Indian Harbor Insurance Co.*, Dkt. 61, No. 4:19-cv-07288-YGR (N.D. Cal. Jul. 20, 2020), but, as Meta previously explained, that decision does not support Plaintiffs' unreasonable request. Dkt. 143 at 10. Indeed, *Perez* specifically noted that *it was* "not a situation where we need to expand the total amount of deposition time in the case." *Brown v. Google*, cited by Plaintiffs, also does not support Plaintiffs' demand. In that case, the Court allowed 40 depositions in *two* cases over 5 months. *See* 4:20-cv-03664-YGR-SVK, Dkt. No. 242-1 (issued August 12, 2021); *id.* Dkt. No. 256 (noting extension of fact discovery cut-off to January 21, 2022). The present situation involves *one* case and *two* months.

30(b)(6) deposition) but have postponed four and would prefer to guess about relevance than take discovery needed to ascertain it. Courts generally decline to extend the default limit before a party has exhausted its ten allotted depositions. *See, e.g.*, *Authentec,* 2008 WL 5120767, at *1 (explaining that "courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right"); *Martensen v. Koch*, 2013 WL 11316743, at *1 (N.D. Cal. Jun. 19, 2013) (same); *Agne v. Rain City Pizza LLC*, 2012 WL 12882906, at *1 (W.D. Wash. Nov. 13, 2012) (same). Among other things, this protects parties against cumulative and unnecessarily burdensome discovery. A threefold enlargement of the deposition limit cannot be justified when Plaintiffs have taken so few depositions and largely ignored the witnesses that Meta has indicated possess relevant knowledge

Because there is no need for the discovery sought by Plaintiffs, let alone a need to justify the massive burden their request creates, it should be denied.

### C. It is Infeasible for the Parties to Schedule More Than Forty Depositions By December 13th

Plaintiffs completed a total of four depositions in the first ten months of discovery; they now propose taking over thirty depositions in the final two months. This is unrealistic, to say the least.

Plaintiffs have yet to notice dates for *any* depositions beyond the four they've taken and that of Mr. Zuckerberg, leaving its five remaining depositions (including a 30(b)(6) deposition) still to be scheduled. Each will require coordination of the schedules of the witnesses and counsel for both parties (with some witnesses out of the country); for those witnesses who are ESI custodians, review of their documents will need to be completed and documents produced with time for Plaintiffs to review them. Although Meta only has two more scheduled depositions (Coates, Diaz), if deposition limits were expanded, it would take the depositions of the two remaining Plaintiffs (Klam, Snyder) and potential third parties. The bottom line: even with Meta's proposed compromise, the parties would still have 20 depositions to take/defend in two months. Given the difficulty in scheduling the initial 10 depositions per side, history shows that even this expansion (i.e. 6 more depositions/side) will be incredibly difficult.

On top of that, Plaintiffs have now served broad, new discovery, which will require Meta to search for and collect new documents, potentially including additional materials from existing ESI custodians, beyond the five new ESI custodians recently ordered by the Court. To say nothing of Plaintiffs' lack of demonstrated need or proportionality, there is simply no time for anything approximating the deposition enlargement proposed by Plaintiffs.

    /s/draft
David Boies
David L. Simons
Maxwell V. Pritt
Joshua I. Schiller
Joshua M. Stein
Jesse Panuccio
Boies Schiller Flexner LLP

*Attorneys for Plaintiffs*

    /s/draft
Bobby Ghajar
Kathleen Hartnett
Judd Lauter
Cooley LLP
Attorneys for Defendant META PLATFORMS, INC.

*Attorneys for Defendant*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, David Boies, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of October, 2024, at San Francisco, California.

    /s/draft
David Boies