# Exhibit C

# Plaintiffs' Eighth* Set of Requests for Production to Defendant Meta
(*mislabeled as Sixth Set)

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua I. Schiller (SBN 330653)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jischiller@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312)-782-4880
bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class. (additional counsel included below)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Richard Kadrey, et al., *Individual and Representative Plaintiffs*, v. Meta Platforms, Inc., *Defendant*. | Case No. 3:23-cv-03417-VC **PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT META** |

1  In accordance with Federal Rules of Civil Procedure Rules 26 and 34, Plaintiffs, by and through their undersigned attorneys, hereby request that Defendant Meta produce for inspection and copying, within thirty days of service, the documents and things described below, in accordance with the following definitions and instructions. Plaintiffs request that Defendant Meta produce documents and other things described below electronically or at the offices of Joseph Saveri Law Firm, LLP, 601 California Street, Suite 1505, San Francisco, California 94108.

## DEFINITIONS

As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form:

1. "Agreements" means any oral or written contract, arrangement or understanding, whether formal or information, between two or more Persons, including all drafts, versions, modifications, amendments, attachments, exhibits, and appendices thereof.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

4.      "Complaint" refers to the operative complaint at the time documents are produced in response to these requests. At the time of service, the currently operative Complaint is Plaintiffs' Corrected Second Consolidated Amended Complaint. ECF No. 133.

5.      "Concerning," whether capitalized or not, refers to and includes "constituting," "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically or factually dealing with the matter described in the request in which the term appears.

6.      "Defendant" means Defendant Meta Platforms, Inc.

7.      "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;
- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;
- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;

- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

8. "Identify" as it pertains to Persons means to describe each Person by name, residence address, residence telephone number, occupation, title, business address, and business telephone number. The term "Identify" as pertains to Documents means to state, to the extent known, the date the Document bears, if any; the title of the Document; the author(s) of the Document; the recipient(s) of the Document and the present location(s) or custodian of the Document.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Llama Models" means all instances, iterations, versions, updates, or modifications of the Meta's AI model known as "LLaMa" or "Llama" and any other AI models developed or in development by Meta. This includes, but is not limited to, the original version, experimental versions, subsequent versions, updates, or refinements made to the underlying algorithms, parameters, or architecture.

11. "Llama 1" means the series of language models originally styled "LLaMA" and released by Meta in February 2023, as well as precursor models and variant models.

12. "Llama 2" means the series of language models of the same name released by Meta in July 2023, as well as precursor models and variant models.

13. "Llama 3" means the series of language models of the same name released by Meta in April 2024, as well as precursor models and variant models.

14. "Llama 1 Paper" means the document Meta published in or around February 2023 called ""[Llama 1]: Open and Efficient Foundation Language Models" and that is referred to in paragraph 31 of the Complaint.

15. "Llama 2 Paper" means the document that Meta published in or around July 2023 called "Llama 2: Open Foundation and Fine-Tuned Chat Models" and that is referred to in paragraph 70 of the Complaint.

16. "Meta" means Meta Platforms, Inc., and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

17. "OCR" means optical character recognition.

18. "Person" means any natural person or any business, legal, or governmental entity or association.

19. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

20. "RLHF" means "reinforcement learning from human feedback."

21. "Shadow Dataset(s)" means the type of databases described in paragraph 37 of the Complaint—databases including but not limited to Books3, Z-Library (aka B-ok), Library Genesis, Bibliotik, Anna's Archive, and The Pile. The term encompasses all versions, updates, augmentations, or modifications of such databases.

22. "Torrent System" means a network or application designed for sharing computer data.

23. "EleutherAI" refers to the research organization of that name, and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

24. "The Eye" refers to the web site the-eye.eu referred to in paragraph 41 of the Complaint, and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

25. "Hugging Face" refers to the AI project hosting service referred to in paragraph 42 of the Complaint, and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

26. "SRT" means the "single resource tool" application used by Meta employees to track and communicate about compliance, business, and/or legal issues.

27. "You" or "Your" refers to Meta.

28. "Partnerships" refers to any agreement, understanding, or arrangement, contractual or otherwise, including unfinalized agreements, understandings, or arrangements between Meta and any third party.

## **INSTRUCTIONS**

1. Please separately respond to each item by stating (a) you will produce, (b) you are presently unable to produce, or (c) you object to production.

2. Unless superseded by a mutually-agreed-upon stipulation, the following provisions shall generally govern the production format and procedure for Hard Copy Documents and images:

   a. All Documents originating in hardcopy format will be produced as black-and-white or color (if originally in color), single-page, 300 dpi Group IV tagged image file format ("TIFF") images, with OCR text and related path provided in document level text files.

   b. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The Producing Party will use reasonable efforts to unitize documents correctly.

   c. Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

   d. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/Metadata load file (.DAT), pursuant to any agreement to be made by the Parties or in accordance with any Stipulated Order Regarding ESI Protocol and Production of ESI and Paper Documents ("ESI Protocol") to be entered by the Parties.

   e. YOU will utilize best efforts to ensure that paper records for a particular custodian,

                which are included in a single production, are produced in consecutive Bates-stamp order.

3. Unless superseded by a mutually-agreed-upon stipulation regarding the production of ESI, All Documents shall be produced in accordance with the specifications below except for source code, which may be produced in accordance with the specifications below.

    a. Where technically feasible, emails shall be produced in TIFF format. TIFFs shall be produced as true color, single-page Group IV TIFF in 8½ X 11-inch page size images at a resolution of at least 300 DPI with the quality setting of 75% or higher.

    b. When producing documents in TIFF format, the image files shall be produced along with Concordance/Opticon image load files, linking the images to the corresponding document that indicate the beginning and ending of each document, showing the Bates number of each page and the appropriate unitization of the documents.

    c. Each image file of an electronic document will be created directly from the original electronic document. Image files shall show all text and images that would be visible in the original electronic format (Native Format), including redlines and speaker notes.

    d. All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent technically feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

    e. All documents shall be produced in their original language. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

f. Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

g. Microsoft Word Documents (or similar) (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced as a single color PDF file for each Document, containing all images for that document, and should be imaged in a manner that captures track changes and comments. To the extent Plaintiffs believes the converted image format distorts, omits, or causes information to be improperly displayed, Plaintiffs may request the Document in Native Format and the Parties shall meet and confer to attempt to resolve the problem(s).

h. In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

i. The following ESI shall be produced in native file format:

   i. Excel files;
   ii. Text message files;
   iii. Presentation files (e.g., PowerPoint);
   iv. Personal databases (MS Access);
   v. Audio/video files;
   vi. Web pages;
   vii. Animations;
   viii. Source code.

j. To the extent responsive Text Messages are being produced, they will be produced in a reasonable usable format. YOU will disclose its production format of Text Messages to the Plaintiffs prior to the production of Text Messages. Plaintiffs retain their rights to meet and confer on the production format to address any concerns.

k. The Parties reserve the right to request production of other ESI types in Native Format, for example, that documents be produced in Microsoft Word, in addition to TIFF images. The Parties agree to meet and confer regarding such requests.

l. PowerPoint or other presentation files should be produced in Native Format as (e.g., as .PPT files). PowerPoint presentations shall also be produced in full-slide image format, along with speaker notes (which should follow the full images of the slides) with related searchable text, Metadata, and bibliographic information.

m. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production.

n. ESI shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, notes, tracked changes, and comments. Any Party seeking a deviation from this provision must provide notice to other Parties and the Parties agree to meet and confer regarding such requests.

o. The Parties will meet and confer about objective coding fields and Metadata that will be produced for all ESI—including ESI produced in TIFF or Native Format, and any such Metadata will be produced in accordance with the Parties' agreement or in accordance with any ESI Protocol to be agreed upon by the Parties.

p. Any Document produced in native format, will be produced according to the following specifications:

   i. A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "BATES000001_HighlyConfidential.xls"

   ii. The native format Documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the

          electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a Bates number.

    iii.   In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the native file. For any native format documents that cannot be imaged or where the image is produced as a separate document, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and confidential designation, if any, of the corresponding file.

    iv.   In order to preserve the integrity of any file produced in Native Format, no Bates number, confidentiality designation or internal tracking number should be added to the body of the Native Format document unless otherwise agreed to between the Producing Party and the Receiving Party during any meet and confer related to the production of that Native Format document.

    v.   Plaintiffs may also request that You produce additional file types of electronic Documents in Native Format where converted image formats distort or otherwise cause information to be improperly displayed. The Parties shall meet and confer regarding such requests in good faith and cooperation.

4. These Requests for Productions should be deemed continuing such that if Your directors, officers, employees, agents, representatives or any person acting on Your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional documents become available.

5. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all

documents describing or referencing: (1) the contents of the lost or destroyed document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

6. If You object to any item or category of item, Your response shall (a) identify with particularity each document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

7. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2) the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

8. In responding to these Requests for Production, You are to include Documents (1) obtained from witnesses who gave information to any governmental agency or investigatory body, including Congress; (2) that constitute, refer or relate to summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation, including before Congress; or (3) obtained on Your behalf in preparation for testimony or interviews before any governmental agency or investigatory body, including Congress.

# REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 131**

All Documents and Communications related to Meta's partnership with Reuters to utilize Reuters' content with Meta's AI chatbot, including as described in the October 25, 2024 news article, "Meta Platforms to use Reuters news content in AI chatbot," *available at* https://www.reuters.com/technology/artificial-intelligence/meta-platforms-use-reuters-news-content-ai-chatbot-2024-10-25/

**REQUEST FOR PRODUCTION NO. 132**

Documents sufficient to show the terms, including the financial terms, of the partnership between Meta and Reuters announced on October 25, 2024 relating to Meta's use of Reuters content with Meta's AI chatbot.

**REQUEST FOR PRODUCTION NO. 133**

The final deal documents and all drafts of the agreement between Meta and Reuters allowing Meta to utilize Reuters' content with Meta's AI chatbot.

**REQUEST FOR PRODUCTION NO. 134**

All Documents and Communications, including discussions, deliberations, or negotiations, related to any actual, proposed, or contemplated licensing agreements (even if never written or executed) with news agencies or news publishers, including Reuters, for AI training data, including any actual, proposed, or contemplated terms, conditions, and considerations.

**REQUEST FOR PRODUCTION NO. 135**

All Documents and Communications relating to how the Llama Models will be utilized in connection with Meta's Partnerships with news agencies or news publishers, including Meta's partnership with Reuters announced on October 25, 2024.

**REQUEST FOR PRODUCTION NO. 136**

Documents sufficient to show Meta's projections or analysis related to the revenue or other financial benefits forecast to be derived from Meta's Partnerships with news agencies or news publishers, including Meta's partnership with Reuters announced on October 25, 2024.

Dated: October 26, 2024          By:     /s/ David L. Simons

| | |
|---|---|
| **JOSEPH SAVERI LAW FIRM, LLP**<br>Joseph R. Saveri (SBN 130064)<br>Cadio Zirpoli (SBN 179108)<br>Christopher K.L. Young (SBN 318371)<br>Holden Benon (SBN 325847)<br>Aaron Cera (SBN 351163)<br>601 California Street, Suite 1505<br>San Francisco, California 94108<br>(415) 500-6800<br>jsaveri@saverilawfirm.com<br>czirpoli@saverilawfirm.com<br>cyoung@saverilawfirm.com<br>hbenon@saverilawfirm.com<br>acera@saverilawfirm.com<br><br>Matthew Butterick (SBN 250953)<br>1920 Hillhurst Avenue, #406<br>Los Angeles, CA 90027<br>(323) 968-2632<br>mb@buttericklaw.com<br><br>**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**<br>Bryan L. Clobes (*pro hac vice*)<br>135 S. LaSalle Street, Suite 3210<br>Chicago, IL 60603<br>(312)-782-4880<br>bclobes@caffertyclobes.com<br><br>**DICELLO LEVITT LLP**<br>Amy Keller (*pro hac vice*)<br>Nada Djordjevic (*pro hac vice*)<br>James Ulwick (*pro hac vice*)<br>(312) 214-7900<br>akeller@dicellolevitt.com<br>ndjordjevic@dicellolevitt.com<br>julwick@dicellolevitt.com<br>10 North Dearborn Street, Sixth Floor<br>Chicago, Illinois 60602<br><br>David Straite (*pro hac vice*)<br>(646) 933-1000<br>dsraite@dicellolevitt.com | **BOIES SCHILLER FLEXNER LLP**<br>David Boies (*pro hac vice*)<br>333 Main Street<br>Armonk, NY 10504<br>(914) 749-8200<br>dboies@bsfllp.com<br><br>Maxwell V. Pritt (SBN 253155)<br>Joshua I. Schiller (SBN 330653)<br>Joshua M. Stein (SBN 298856)<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA  94104<br>(415) 293-6800<br>mpritt@bsfllp.com<br>jischiller@bsfllp.com<br>jstein@bsfllp.com<br><br>Jesse Panuccio (*pro hac vice*)<br>1401 New York Ave, NW<br>Washington, DC  20005<br>(202) 237-2727<br>jpanuccio@bsfllp.com<br><br>David L. Simons (*pro hac vice*)<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>(914) 749-8200<br>dsimons@bsfllp.com |

485 Lexington Avenue
Suite 1001
New York, New York 10017

# CERTIFICATE OF SERVICE

I, the undersigned, am employed by the Boies Schiller Flexner LLP. My business address is 55 Hudson Yards, New York, NY 10001. I am over the age of eighteen and not a party to this action.

On October 26, 2024, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT META**

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 26, 2024.

*/s/ David L. Simons*

**SERVICE LIST**

Bobby A. Ghajar
Colette Ani Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Email: bghajar@cooley.com
          cghazarian@cooley.com

Kathleen R. Hartnett
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Email: khartnett@cooley.com

Judd D. Lauter
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Email: jlauter@cooley.com

Mark Alan Lemley
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Email: mlemley@lex-lumina.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road
Palo Alto, CA 94304-1254
Email: adunning@cgsh.com

*Counsel for Defendant
Meta Platforms, Inc.*