# EXHIBIT F



October 23, 2024

**VIA EMAIL**

| | |
|---|---|
| Kathleen Hartnett | Bobby Ghajar |
| khartnett@cooley.com | bghajar@cooley.com |
| Mark Weinstein | Colette Ghazarian |
| mweinstein@cooley.com | cghazarian@cooley.com |
| Judd Lauter | Cooley LLP |
| jlauter@cooley.com | 133 2nd Street, Suite 400 |
| Elizabeth L. Stameshkin | Santa Monica, California 90401 |
| estameshkin@cooley.com | |
| Cooley LLP | Angela L. Dunning |
| 3175 Hanover Street | adunning@cgsh.com |
| Palo Alto, CA 94304-1130 | Cleary Gottlieb Steen & Hamilton LLP |
| | 1841 Page Mill Road, Suite 250 |
| | Palo Alto, CA 94304 |

Re: *Kadrey et al v. Meta Platforms, Inc.*, Case No. 23-cv-03417

Dear Counsel:

  We write to address Defendant Meta Platforms, Inc.'s ("Meta's") amended privilege logs, which Meta produced to Plaintiffs on October 7, 2024, after the parties met and conferred over deficiencies in Meta's original logs. This letter addresses additional deficiencies in Meta's privilege logs. This letter does not purport to address everything that is deficient and objectionable about Meta's privilege logs, and Plaintiffs reserve their right to raise additional deficiencies.

  As explained below, Plaintiffs have serious concerns regarding Meta's internal privilege practices and disagree with Meta's assertion of privilege and/or work product over many of the logged documents. Plaintiffs' concerns regarding Meta's efforts to shield business communications from discovery are bolstered by Meta's admission that multiple documents

labeled internally as "A-C Priv" in fact "do not contain attorney-client privileged material or information."

### A. Hundreds of Meta's Privilege Log Entries Suffer from Procedural Deficiencies That Must Be Fixed.

***First***, Meta fails to identify which individuals named in its privilege logs are attorneys, as it is required to do. *See, e.g.*, *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989)) (listing required elements of a privilege log, including, *inter alia*, identification of "the attorney and client involved"). Plaintiffs request that Meta amend its privilege logs no later than October 25th to identify which senders, recipients, or authors are attorneys with an asterisk after their names or email addresses.

***Second***, Meta fails to identify users who made comments on nearly all non-email documents. That is, the comments themselves are labeled generically and do not show the names of the users who left them. Instead, these documents simply list the comments numerically as "Commented [1]"; "Commented [2]"; and so on. *See, e.g.*, Non-Email Log Nos. 15, 19, 81, 107, 154, 164, 175, 252, 345, 371, 381, 389, 417, 418. In order to assess Meta's privilege claims, Plaintiffs are entitled to see which user made each comment. We understand Meta has agreed to fix this error, and we request that Meta do so no later than October 25th.

***Third***, Meta's non-email privilege log in particular fails to identify the names corresponding to email addresses. For many supplied emails, there is no way to determine the name of the individual. For example, Non-Email Log No. 230 identifies ███████████████████████████████████████████████████████████████████████████████████████ Further, for documents containing individuals' names in the body or in comments, Plaintiffs cannot identify which text can be attributed to the Legal Source or other emails listed in the log without knowing the names corresponding to them. Finally, for the few non-Meta emails, Meta must provide the full name and company title of the user of the email. Plaintiffs request that Meta amend its privilege logs no later than October 25th to provide the full name and, where applicable, company name and job title for all persons in the logs.

***Fourth***, Meta produced documents with improper redactions that conceal context necessary to assess Meta's privilege claims. For example, many of Meta's redactions conceal the names of senders and recipients of allegedly privileged content. One such redaction can be found in Email Log No. 492, Meta_Kadrey_00079054, which is part of same document as Email

Log No. 485, Meta_Kadrey_00079040.  In Email Log 492, Meta_Kadrey_00079054 redacts the name of the sender and the date and time, while Meta_Kadrey_00079040 does not redact the same text for the same message.  It goes without saying that names of senders and recipients are not privileged.  Similarly, in Non-Email Log No. 270, three of the four Bates Numbers redact the text "by Adam S + Legal," while Meta_Kadrey_00092127 does not.  This text also is plainly not privileged.

Similarly, in most documents from the Non-Email Privilege Log that contain redacted comments, the top of the comment that indicates the name of the commenter is redacted.  The names of users making comments must be included without redaction in remedial and future productions.

Meta also improperly redacted headings in at least 13 documents from the Non-Email Privilege Log: Log Nos. 76, 84, 107, 135, 194, 276, 324, 325, 354, 366, 380, 386, 422.  This number is likely even higher, as there are several documents in which entire pages or presentation slides are redacted.  Headings almost never constitute a communication made for the purpose of obtaining or rendering legal advice, but rather are required to be provided as the subject of the communication or document for purposes of assessing privilege claims.  Please unredact the headings or confirm Meta is in fact claiming they constitute a communication made for the purpose of obtaining or rendering legal advice so Plaintiffs can assess Meta's privilege claims.

Finally, in the Amended Privilege Logs, 69 documents' filenames contain redactions: Email Log Nos. 35, 57, 59, 60, 132, 133, 134, 136, 137, 138, 139, 142, 143, 431, 432, 446, 447, 533, 534, 535, 543, 589, 590, 591, 603, 604, 757; and Non-Email Log Nos. 3, 71, 79, 95, 109, 110, 111, 125, 127, 128, 129, 133, 134, 141, 142, 147, 158, 166, 185, 188, 190, 196, 199, 240, 279, 294, 299, 307, 312, 329, 349, 352, 398, 420, 421, 424, 435, 537, 440, 442, 452, 467.  And the filenames for Email Log Nos. 431, 432, 446, 447, 535, 603, and 604 are entirely redacted.  Like headings, it is highly improbable that filenames constitute a communication made for the purpose of obtaining or rendering legal advice; rather, they are needed to assess the privilege claims. Please unredact the filenames and correct the other improper redactions <u>no later than October 25th</u>.

*Fifth*, Meta's "Legal Source" column in both privilege logs is vague and insufficient to allow Plaintiffs to assess Meta's privilege claims.  To start, the column is often ambiguous as to who the purported "Legal Source" actually is.  In 367 entries across both logs, the "Legal Source" just includes the general categories "MPI In-House Legal Counsel" and/or "External Legal Counsel."

- In the Non-Email Privilege Log, there are 214 documents where the only "Legal Source" is "MPI In-House Legal Counsel": Log Nos. 3, 4, 7–17, 23–25, 28, 30, 35, 36, 45, 46, 51, 59–61, 67, 69, 74–79, 81, 85, 87, 91, 93, 114, 115, 117, 118, 120, 121, 125, 126, 128, 131, 136, 142, 154, 158, 160, 163, 165, 166, 169, 172, 173, 176, 178, 181, 182, 184–187, 190, 194, 198, 201, 203, 207–217, 220, 221, 229–231, 234, 236, 238, 240, 242, 244, 245, 250–252, 254, 255, 257, 264, 265, 267, 269–272, 275, 277–279, 281, 282, 286, 288, 290, 291, 293, 294, 302, 309, 311, 314–317, 319, 321, 322, 326–328, 330–333, 335, 337, 339, 341, 342, 345, 346, 349, 354, 357–361, 363–365, 367, 369, 372–377, 380–388, 391–393, 401, 402, 405–407, 410, 412–416, 418–420, 422–425, 428, 429, 431, 434–436, 441, 445–450, 455–458, 461–463, 466.

- Similarly, five documents list "External Legal Counsel; MPI In-House Legal Counsel" as the "Legal Source": Non-Email Log Nos. 29, 193, 195, 304, 454. Further, 16 documents list "MPI In-House Legal Counsel" as well as specific in-house counsel as the "Legal Source": Non-Email Log Nos. 18, 31, 94, 96, 97, 129, 130, 139, 199, 235, 298, 305, 318, 355, 379, 394.

- In the Email Privilege Log, there are 115 documents where the Legal Source" is "MPI In-House Legal Counsel": Log Nos. 3, 10, 20, 24, 25, 27, 28, 34, 39, 42, 43, 46, 65, 72, 135, 144, 145, 152, 159, 160, 165, 169, 183, 185, 189, 191, 194, 195, 205, 215, 217, 218, 227, 237, 238, 279, 285, 287, 294, 295, 301, 302, 304, 305, 307, 346, 357, 358, 368, 374, 392, 393, 399, 403, 413, 416, 429, 435, 446, 450, 453, 454, 456, 457, 461, 462, 463, 465, 478, 483, 491, 505, 506, 512, 513, 515, 517, 529, 537, 546, 551, 556, 563, 572, 574, 578, 580, 586, 587, 589, 590, 591, 593, 595, 596, 601, 642, 645, 661, 675, 677, 679, 693, 696, 699, 714, 724, 730, 736, 737, 738, 740, 741, 762, 764,

- There are also eight documents for which the "Legal Source" is "External Legal Counsel; MPI In-House Legal Counsel": Email Log Nos. 409, 411, 424, 508, 510, 525, 540, 542.

- There are nine documents where the "Legal Source" is "MPI In-House Legal Counsel" and specific in-house counsel: Email Log Nos. 36, 53, 80, 120, 163, 174, 293, 520, 727.

It goes without saying that general references to "counsel" are insufficient to make out a prima facie privilege claim; Meta must identify all attorneys by name. *See, e.g. Laatz v. Zazzle, Inc.*, No. 22-cv-4844-BLF (VKD), 2024 U.S. Dist. LEXIS 146077, at *7–8 (N.D. Cal. Aug. 15, 2024) ("Zazzle's failure to identify the attorney involved . . . means that Zazzle has not adequately

made a prima facie showing that the privilege applies."); *E & J Gallo Winery v. Encana Energy Servs.*, No. 03-cv-5412-AWI (LJO), 2005 U.S. Dist. LEXIS 53665, at *17 (E.D. Cal. Jan. 28, 2005) (requiring defendant to serve "revised privilege logs to identify by name and position the authors of documents"); *Elan Microelectronics Corp. v. Apple, Inc.*, No. 09-cv-1531-RS (PSG), 2011 U.S. Dist. LEXIS 87989, at *21 (N.D. Cal. Aug. 8, 2011) (finding privilege logs deficient when they fail to identify attorneys by name). If Meta continues to argue that it is impossible to identify which specific members of its legal team render a document privileged, then it cannot carry its burden to show that the document is in fact privileged and must produce it. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) ("A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication."); *Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1181 (C.D. Cal. 2022) ("Dr. Eastman's description in the privilege log is conclusory, describing the sender merely as his "co-counsel.'"). Please identify all attorneys by name no later than October 25th.

Next, even where Meta identified specific persons or email addresses for the "Legal Source," it is often unclear (or impossible to tell) if or how that "Legal Source" interacted with the document, let alone whether the attorney did so in a legal or non-legal capacity. For example, in Non-Email Log No. 185, the "Author/From" cell ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Further, in 147 entries in the Email Privilege Log, the entity or entities named in the "Legal Source" category are not represented in the "To," "From," "CC," "BCC," or "Custodian" categories: Log Nos. 1–16, 20, 22, 25, 28, 29, 35, 39, 42, 43, 46, 50, 51, 55, 58, 60, 62, 72, 129, 130, 131–143, 145, 152, 159, 160, 165, 169, 174, 176–178, 180, 183, 185, 186–188, 190, 191, 194, 195, 205, 215, 217, 218, 227, 237, 238, 279, 285, 287, 293–295, 301, 302, 304, 305, 307, 346, 357, 358, 368, 374, 392, 393, 399, 403, 406, 412, 413, 418, 420, 421, 422, 426, 453, 456, 461, 465, 478, 483, 485, 491, 492, 496, 501, 505, 506, 512, 522, 523, 526, 547, 556, 572, 578, 594, 596, 642, 645, 661, 679, 693, 696, 699, 714, 717, 718, 720, 724, 727, 728, 729, 735, 737, 738, 760, 762, 764.

Similarly, in the Non-Email Privilege Log, there are at least 126 entries with no attorneys listed in either the "Author/From" or "Custodian" columns: Log Nos. 2, 4, 5, 7–9, 27, 28, 37, 44,

45, 57, 58, 59,  69, 74, 75, 77, 78, 84, 87, 96, 112, 118, 121, 126, 135, 144, 154, 168, 169, 173, 177, 182, 183, 190, 191, 192, 193, 197, 198, 200, 202, 204, 207, 208, 209, 210, 211, 213, 216, 220, 222, 235, 238, 247, 249, 250, 263, 264, 267, 271, 278, 281, 286, 319, 329, 334, 337, 338, 339, 341, 342, 344, 346, 34, 348, 350, 351, 355, 356, 357, 358, 364, 365, 367, 371, 373, 374, 376, 378, 379, 380, 381, 383, 391, 392, 396, 402, 403, 404, 406, 407, 408, 410, 412, 413, 414, 415, 418, 423, 425, 426, 428, 429, 436, 441, 443, 444, 445, 449, 454, 455, 456, 457, 458, 459.

In 63 other entries, the people or entities listed in the "Author/From" or "Custodian" columns do not match anyone listed in the "Legal Source" column: Log Nos. 1, 3, 12, 25, 26, 29, 30, 36, 40, 41, 42, 46, 56, 67, 70, 76, 89, 94, 97, 109, 110, 140, 143, 155, 166, 184, 194, 203, 224, 225, 227, 231, 232, 244, 258, 259, 260, 261, 262, 265, 273, 276, 291, 294, 296, 300, 303, 322, 323, 324, 325, 326, 327, 345, 360, 363, 388, 390, 419, 422, 438, 439, 465.  If the attorneys did not author, send, or receive the documents, Meta must indicate the relationship between the "Legal Source" and the document, especially where it is not apparent from the document or privilege log, otherwise Plaintiffs cannot assess Meta's claims of privilege over these documents. Please fix these errors and provide the requested and necessary information <u>no later than October 25th</u>.

**Sixth**, Meta fails to provide sufficiently detailed descriptions in its amended logs to enable Plaintiffs to be able to assess many of Meta's privilege claims.  Descriptions such as "Document seeking and containing legal advice concerning open source policy"; "Presentation seeking and containing legal advice concerning product release"; "Document reflecting legal advice concerning data privacy and safety issues"; and "Presentation reflecting legal advice concerning communications with the public," are too vague and refer to topics that concern typical business functions and issues, not legal advice.  Courts in this district have explained that such descriptions are insufficient for purposes of enabling a party to assess privilege claims. *E.g.*, *LD v. United Behavioral Health*, No. 20-cv-2254-YGR (JCS), 2022 U.S. Dist. LEXIS 180719, at *20 (N.D. Cal. Oct. 3, 2022) (explaining that entries like "Email chain requesting information and reflecting counsel's impressions regarding pricing methodology data" are "uninformative" and "vague"); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-cv-20905-RMW, 2008 U.S. Dist. LEXIS 11764, at *3 (N.D. Cal. Feb. 2, 2008) ("A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged."); *see also Saud v. California*, No. 14-cv-2536-GEB (AC), 2016 WL 2927591, *3 (E.D. Cal. 2016) ("Here, the privilege log provides little information other than authorship or receipt of the emails by in-house counsel.  The descriptions of the documents are too brief to permit determination whether they involve legal advice.").

In addition, these descriptions mention general topics in connection with "legal advice," but are insufficient to show that seeking or rendering legal advice was the primary purpose of the document. *See In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2022) ("Under the 'primary purpose' test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice. The natural implication of this inquiry is that a dual-purpose communication can only have a single 'primary' purpose.") (citing *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). Even descriptions like "Document seeking and containing legal advice concerning copyright, data privacy, and safety issues" are insufficient—copyright, privacy, and safety issues are often just business concerns; to be privileged, the primary purpose of the communication or document must be securing or providing legal *advice*; mere discussions of legal issues or concerns—even if it in fact concerns legal and not business issues, and even if it in fact is the primary purpose of the communication or document—are not privileged. *See, e.g.*, *Walker v. AIU Ins. Co.*, No. 23-cv-1641-PHX (JAT), 2024 WL 4364149, at *4 (D. Ariz. Oct. 1, 2024) ("summaries of legal activities, such as depositions and initial hearings, do not equate to legal advice"); *Illumina Inc. v. BGI Genomics Co.*, No. 19-cv-3770-WHO (TSH), 2021 WL 2662074, at *4 (N.D. Cal. June 29, 2021) (holding that "[a] businessperson's statement that the company needs to assess legal risk as part of its SWOT analysis is not privileged," and a "slide deck that mentions potential legal risk twice in passing is not how a company asks for legal advice either"); *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 271 (S.D.N.Y. 2012) ("advice about 'risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances' typically is not legal advice"); *Monroe v. United Air Lines, Inc.*, No. 79-cv-1572, 1981 WL 96653, at *6 (N.D. Ill. Feb. 9, 1981) ("United persists in characterizing every document that finds its way to a lawyer among other distributees as involving a legal problem in a way that triggers the privilege. But many of the documents themselves make it plain that they address United's making of a *policy* decision, albeit one to which legal advice and input may be useful or important. . . . [I]f information serves a dual purpose, providing both input to lawyers for such legal advice *and* input to non-lawyer management for the policy decision, the privilege does not attach to such information.") (emphasis in original).

Meta's vague descriptions, coupled with the fact that only in-house counsel are listed on the vast majority of entries, both render Meta's entries insufficient and call into question Meta's claims, as it impossible to determine whether the advice provided is primarily legal advice rather than business.

- In the Non-Email Privilege Log, in addition to the 214 entries where the only "Legal Source" is "MPI In-House Legal Counsel," there are 213 entries for which the "Legal Source" is only named in-house counsel: Log Nos. 1, 2, 5, 17, 19, 20, 22, 26, 27, 32, 33,

    34, 37–44, 47–50, 52–58, 62–66, 68, 70–73, 80, 82–84, 86, 88–90, 92, 95, 98–113, 116, 119, 122–124, 127, 132–135, 137, 138, 140, 141, 143, 144, 146–151, 153 , 155, 156, 159, 164, 167, 168, 170, 171, 174, 175, 177, 179, 180, 183, 188, 189, 191, 192, 196, 197, 200, 204, 205, 218, 219, 222–228, 232, 233, 237, 239, 241, 243, 246–249, 256, 258, 259, 263, 266, 268, 273, 274, 276, 280, 283–285, 287, 289, 295–297, 300, 301, 303, 307, 308, 310, 312, 313, 320, 323–325, 329, 334, 336, 338, 340, 343, 344, 347, 348, 350–353, 356, 362, 366, 368, 370, 371, 378, 389, 395–400, 403, 404, 408, 409, 411, 417, 421, 426, 427, 430, 432, 433, 439, 440, 442–444, 451, 452, 459, 464, 465, 467, 468.

- Similarly, in the Email Privilege Log, in addition to the 115 entries where the Legal Source" is "MPI In-House Legal Counsel," there are 170 entries for which the legal source is only in-house counsel: Log Nos. 1, 16–19, 21–23, 26, 29–33, 35, 37, 40, 50–52, 55–60, 62, 79, 87, 113, 129–134, 136, 140–143, 150, 153–158, 161, 162, 164, 166–168, 170–173, 175–180, 182, 184, 186–188, 190, 406, 407, 412, 417, 419, 420, 421, 422, 425, 426, 427, 430, 431, 432, 438, 439, 440, 441, 442, 443, 445, 446, 455, 458, 459, 460, 471, 473, 485, 492, 496, 501, 511, 522, 523, 526, 527, 530, 532, 533, 534, 535, 538, 543, 544, 547, 553, 564, 565, 566, 567, 568, 569, 570, 571, 588, 594, 602, 603, 605, 606, 607, 611, 618, 627, 639, 640, 715, 716, 717, 718, 719, 720, 721, 722, 723, 725, 728, 729, 731, 735, 733, 742, 743, 744, 746, 748, 749, 750, 752, 753, 755, 756, 757, 758, 759, 760, 761, 766, 767.

In all, there are over 700 entries where the only counsel identified, either specifically or generally, on the privilege logs are in-house counsel who naturally are not only rendering legal advice.

Thirty nine descriptions are further insufficient because they appear multiple steps removed from the provision of legal advice, *e.g.*, Non-Email Log No. 168: "Document providing information for the purpose of facilitating legal advice concerning copyright and data privacy issues"; Email Log Nos. 444, 445: "Image providing information for the purpose of facilitating legal advice concerning contract issues"; Email Log No. 757: "Document providing information for the purpose of facilitating legal advice concerning research review." *See also* Email Log Nos. 37, 57, 159, 163, 169, 176, 177, 178, 179, 184, 429, 440, , 460, 523, 565, 566, 567, 569, 570, 571, 589, 590, 591, 603, 604, 721, 742, 722, 734, 749, 753, 756, , 759, 761, 767; Non-Email Log Nos. 58, 59, 60, 168, 171, 172, 215, 316, 330, 340, 414.  In addition, as explained above, the subjects identified are also business issues and/or the entries do not establish that the *primary* purpose of the communications and documents are to give or receive legal *advice*.  Plaintiffs request that Meta amend its privilege log descriptions no later than October 28th to sufficiently identify that the logged documents themselves in fact request or provide *legal* advice, and that

that is the *primary* purpose of the documents.  To the extent that, in conducting its review to amend its logs, Meta determines that the primary purpose of any logged document is not in fact to give or receive legal advice, Plaintiffs request that Meta produce the documents no later than October 28th.

***Seventh***, by using inappropriately broad sender and recipient groupings, Meta fails to provide sufficient information in the "To" and "Author/From" columns to allow Plaintiffs to assess privilege.  Instead of naming the attorneys and/or employees involved, 62 of entries in the Non-Email Privilege Log have a broad or ambiguous category in the "Author/From" field: "Shared drive (unavailable)": Log Nos. 3, 12, 25, 26, 29, 30, 36, 40–42, 46, 56, 67, 70, 76, 89, 94, 109, 110, 135, 140, 143, 166, 174, 194, 224, 225, 227, 231, 244, 265, 273, 276, 291, 296, 303, 345, 360, 363, 422, 438, 439, 465; "Central AI Risk Hub (a/c priv)": Log Nos. 33, 38, 39, 53, 62–65, 187, 399; "a/c priv - GenAI Guidance Locker": Log Nos. 54, 55; "GenAI – Leadership": Log No. 78; "GenAI Trust & RAI": Log No. 111; "GenAI LLM Research": Log Nos. 141, 228, 277, 312, 433.  Again, Meta must identify specific authors, senders, recipients and attorneys by name.  Please do so and provide amended log entries no later than October 25th.

***Eighth***, Meta's Amended Privilege Logs are missing data altogether.  In the Non-Email Log, 14 non-email documents have no content in the "Author/From" field: Log Nos. 7–9, 155, 184, 232, 259–263, 300, 390, 419.  *See also* Log No. 294, for which the author is "Author."  Log No. 300 is signed off as "From, Alex," but the author field is still empty.  This information is particularly important for the non-email documents, where a document's authors are often impossible for Plaintiffs to discern but still necessary to assess Meta's privilege claims.  In the Email Log, 2 emails are missing data in both the "To" and "From" fields: Log Nos. 2, 9.  In Email Log No. 9, the "To" and "From" data is easily discernible from the top of the document.  However, in Email Log No. 2, although the email is from Joelle Pineau, there is no "To" field, implying that the email was never sent.  This information should be included in the privilege log.  Plaintiffs request that Meta provide amended entries with this information no later than October 25th.

***Ninth***, Meta's Non-Email Log does not include information about who received or viewed any of its 768 logged documents.  Identification of viewers/recipients is required.  *See Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237-38 (N.D. Cal. 2015) (parties must identify for each logged document, *inter alia*, "all persons or entities known to have been furnished the document or informed of its substance").  Cloud and local storage systems,

including Google Workplace, log user access to documents.[1]  Plaintiffs request that Meta produce audit logs for each logged document in the Non-Email Log and no later than October 28th.

*Finally*, Meta failed to produce documents that show all included text.  At least seven documents include tables, charts, and graphics that are wider than the image of the document produced, cutting off text of the left and/or right sides of the chart: Non-Email Log Nos. 200, 202, 292, 293, 338, 393, 413.  At times, this text is crucial to assessing privilege.  For example, Non-Email Log No. 338 document, the cell immediately adjacent to the redacted text appears to contain the email addresses of the owners or individuals responsible for the content in the rest of the row.  As this column is cut off, Plaintiffs cannot assess whether the individuals identified in the row are the attorneys listed in the log, or whether they are attorneys or even Meta employees at all.

Similarly, at least five documents contain comments that are cut off because there are too many comments to display the full text of all of them at once on the page: Non-Email Log Nos. 345, 371, 381, 389, 417.  And when text within these comments is redacted, it is impossible to assess Meta's privilege claims.  For example, in the Non-Email Log No. 345 document, Meta_Kadrey_00080065, on page Meta_Kadrey_00080067, most of comments 5–27 clearly contain more text that is cut off after just the first few words, as indicated by the ellipses.  The complete comments are necessary to assess the privilege claim.  We understand Meta has agreed to fix this issue and ask that it do so by October 25th.

Additionally, in its privilege logs, Meta provided a column containing documents' filenames.  However, many of these filenames appear cut off in some way.  In the Email Log, only seven filenames appear cut off by an ellipse at the end: Log Nos. 140, 141, 186, 187, 718, 719, 720.  In the Non-Email Log, a substantial number of entries are cut off by an underscore and then various numbers and letters, *e.g.*, These

---

[1] *See, e.g.,* https://cloud.google.com/logging/docs/audit/gsuite-audit-logging ("Google Cloud services write audit logs to help you answer the questions, 'Who did what, where, and when?'").

cut-off filenames are especially problematic for withheld documents, as Plaintiffs have no information about the documents aside from the information provided in the privilege log. For example, in Non-Email Log No. 308, the filename reads ███████████████████████████████████████████████████████████████ and the description reads, "Document providing legal advice concerning product release." The only attorneys in this log entry are in-house counsel. That is insufficient information to assess Meta's privilege claim. Plaintiffs request that Meta fix these issues and serve amended logs <u>by October 25th</u>.

### B. Meta Is Withholding Documents or Data That Must Be Produced Because They Are Not Privileged.

#### 1. Business Matters

As discussed above, most of the entries in Meta's Amended Privilege Logs do not contain sufficient information to support that the primary purpose of the logged documents are to give or receive legal advice. Even without such information, however, several documents on Meta's privilege logs plainly do not appear to have been made for the primary purpose of giving or receiving legal advice, and instead involve business matters. *See, e.g.*, *In re Grand Jury*, 23 F.4th at 1091 (9th Cir. 2022).

- The description of Non-Email Log No. 356, Meta_Kadrey_00093927 reads, "Document reflecting legal advice concerning open source policy." In the document, however, a ███████████████████████████████████████████████████████████████ And as with most of the non-email documents, there is no indication that any statements were even made to or by an attorney.

- Similarly, in Non-Email Log No. 389, Meta_Kadrey_00064494, there are two comments on a heading about how ███████████████████████████████████████████████████████████████ This is a question about a business function, not a request or provision of legal advice, let alone

the primary purpose of the document, and it is highly unlikely a question is privileged but its answer is not.

- Additionally, Meta's privilege logs contain at least 19 instances in which Meta produced multiple versions of the same document with different portions of text redacted: Email Log Nos. 411, 424, 492; and Non-Email Log Nos. 76, 107, 135, 221, 226, 247, 270, 276, 293, 313, 325, 345, 377, 383, 388, 454.  These documents reveal some redacted text that is clearly not legal advice, nor in furtherance thereof (and again in no way is the primary purpose of any of the documents legal advice).  These inconsistencies not only raise serious questions generally about the documents Meta is attempting to shield from discovery but also confirm Meta's representations regarding its redactions are not true, with Meta improperly seeking to redact non-privileged business communications and documents.

- Non-Email log No. 247 has two Bates #s: Meta_Kadrey_00094284; Meta_Kadrey_00094767.  In both documents, the text immediately following "Legal and Policy recommend" is redacted.  However, in Meta_Kadrey_00094284, the subsequent paragraph is also redacted.  This short paragraph is not redacted in Meta_Kadrey_00094767, which reveals the paragraph reads, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This paragraph clearly reflects the business decision of FAIR leadership and is not privileged.  *See, e.g.*, *Hynix Semiconductor* 2008 WL 350641, at *3 (holding that documents that include "a discussion of a business plan and strategy that . . . may have taken into account advice [regarding a company's] legal positions" are not protected, and rejecting defendant's argument that documents that "reflect[]" an attorney's advice are privileged).  Further, the earlier redacted text also must be produced as the primary purpose of the document plainly is not legal advice but concerns business matters.

- Email Log No. 525, Meta_Kadrey_00047085, is another example of a obvious business document with very limited redactions.  Accordingly, its primary purpose cannot be legal advice.

Meta has also improperly redacted other clearly non-privileged text, further demonstrating that Meta's privilege claims are inaccurate, unreliable, and cannot be taken at face value.

- For example, in the Non-Email Log No. 280 document, the last bullet under cross-workstream resources, under "narratives + comms docs" is redacted. The redacted text is likely a hyperlink, as every other bullet in this whole section is solely a hyperlink." It is highly unlikely—and frankly, implausible—that a mere hyperlink could be privileged.

- In Non-Email Log No. 124, Meta_Kadrey_00057872, a sentence reads, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Nothing in this document suggests anything relating to a request for or provision of legal advice, let alone that the primary purpose of the communications are to give or receive legal advice. Plainly they're not, as the un-redacted portions discuss business and technical issues of Llama training datasets.

- Plaintiffs have encountered at least 20 instances where Meta produced multiple versions of the same document with different portions of text redacted: Email Log Nos. 411, 424, 492, and Non-Email Log Nos. 76, 107, 124, 135, 221, 226, 247, 270, 276, 293, 313, 325, 345, 377, 383, 388, 454. Some of these documents redact simple words or phrases, such as the heading "Risks" in Non-Email Log No. 135, and the word "Current" in Non-Email Log No. 293. None is remotely privileged and, again, calls into question Meta's privilege claims.

Moreover, even if Meta had provided or can provide sufficient information to show that that the primary purpose of any of its logged documents was in fact to give or receive legal advice, many if not all of these documents nonetheless must be produced under the crime-fraud exception.

### 2. Crime/Fraud

The documents produced by Meta to date reveal that Meta intentionally engaged in a criminal and fraudulent scheme to access, acquire, copy, and use pirated copyrighted works without licensing them, and that Meta involved its in-house counsel in furtherance of this illegal scheme.

The crime/fraud exception to the attorney-client privilege and work product doctrine applies when "the client 'consults an attorney for advice that will serve him in the commission of a fraud' or crime." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007)); *Roe v. White*, No. 03-

cv-4035, 2014 WL 842790, at *2 (N.D. Cal. Feb. 28, 2014) (crime-fraud exception applies to work product).  Fraud is construed broadly under this exception.  *See, e.g.*, *Lewis v. Delta Air Lines, Inc.*, No. 14-cv-1683-RFB (GWF), 2015 WL 9460124, at *3 (D. Nev. Dec. 23, 2015) (collecting cases across circuits broadening crime/fraud exception).  In addition, this District has recognized the exception in the copyright infringement context.  *See, e.g.*, *Netbula, LLC v. Chordiant Software, Inc.*, No. 08-cv-0019-JW (HRL), 2009 WL 3919495, at *2 (N.D. Cal. Nov. 18, 2009).

Applying the crime/fraud exception requires showing that (1) "'the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme'" and (2) "the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality."  *In re Grand Jury*, 810 F.3d at 1113 (quoting *Napster*, 479 F.3d at 1090).  The exception requires only an effort to complete a crime or fraud, not actual completion, and the attorney-client communication may "turn[] out not to help (and perhaps even [] hinder) the client's completion" of the crime or fraud.  *Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1196 (C.D. Cal. 2022) (quoting *In re Grand Jury Proc. (Corp.)*, 87 F.3d 377, 381–82 (9th Cir. 1996)).

Discovery has revealed that Meta planned a criminal and fraudulent scheme to access, acquire, copy, and use copyrighted works without licensing them or otherwise obtaining authorization or permission—a scheme to violate, *inter alia*, criminal copyright laws and the Digital Millennium Copyright Act.  *See* 17 U.S.C. §§ 501, 506 (criminal copyright); 17 U.S.C. § 1202(b).

For example:

- 

- In the same thread, 

Meta did in fact "cut corners," and engaged its inhouse counsel to "make a case" to defend—and further—this illegal scheme, notwithstanding employees' acknowledgment of its illegality.



- [redacted]

- Additionally, [redacted]

- [redacted]

Meta's execution of a scheme that it manifestly understood violated criminal and civil law—copyright law and the DMCA, among others—nullifies any purported attorney-client or work product privilege for communications with counsel (or for communications containing counsel's advice) that were intended to or used to further that scheme. *See, e.g., Eastman*, 594 F. Supp. 3d at 1196. That is most, if not all, of Meta's logged documents, and Meta must produce them.

\*   \*   \*

Please confirm that Meta (1) will produce the documents identified in this section and (2) will synchronize its redactions on identical documents to enable Plaintiffs to assess Meta's privilege claims to the extent that Meta continues to assert privilege over any of them. If Meta continues to assert privilege over any of these documents, Plaintiffs propose to resolve any disagreements as to this issue by submitting a representative sampling of these documents for in camera review. Judge Hixson's holdings can then be applied to the remainder of the documents at issue.

Respectfully,

_____

Maxwell V. Pritt