November 26, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey et al. v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC-TSH

Dear Magistrate Judge Hixson:

      Plaintiffs in the above-captioned action ("Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta") jointly submit this letter brief regarding issues related to Meta's Responses to Plaintiffs' First and Second Sets of Requests for Admission ("RFAs"). The parties met and conferred on November 20 and November 21, 2024, but were unable to reach a resolution.

I. **PLAINTIFFS' POSITION**

"The dual purpose of [RFAs] is to facilitate proof with respect to issues that cannot be eliminated from the case and to narrow the issues by eliminating those that can be." *I-Enterprise Co. v. Draper Fisher Jurvetson Mgmt. Co.*, 2005 WL 8177424, at *1 (N.D. Cal. Mar. 23, 2005) (cleaned up). Plaintiffs' RFAs are narrowly tailored for those purposes. Meta, however, construes many of Plaintiffs' RFAs to render its answers unhelpful and to sidestep the core admissions sought.

   A. **Meta's Objection That It Can Only Determine What Is "Copyrighted Material" by Consulting the Library of Congress Is Both Factually and Legally Frivolous.**

Meta denies each of Plaintiffs' requests that ask about copyrighted material—RFAs 3–6, 17, 20, 23, 34, 43, 45–89, and 90–96—because Meta purportedly "lacks knowledge as to whether [certain] text also appeared in the deposit copies submitted to the U.S. Copyright Office." *See* Ex. A. But it is no defense to infringement that the infringer did not have or was not shown a deposit copy.

The notion that Meta cannot know whether a work is copyrighted unless it possesses a "deposit copy" from the U.S. Copyright Office is baseless. No case supports that "deposit copies" of a copyrighted work are an exclusive source for knowledge or proof that a work is copyrighted. *See, e.g.*, *Valancourt Books v. Garland*, 82 F.4th 1222, 1233 (D.C. Cir. 2023) (copyright registration alone "provide[s] copyright owners with prima facie evidence of the validity of their copyright"). To the contrary, it is well established that publicly available information about a copyright (like a registration or copyright notice accompanying a work) is prima facie evidence of not just knowledge, but also willfulness. *E.g.*, *Lanard Toys. v. Novelty*, 2008 WL 11333941, at *6 (C.D. Cal. Mar. 18, 2008), *aff'd*, 375 F. App'x 705 (9th Cir. 2010) ("[W]illfulness of copyright infringement may be actual or constructive[.]") (citation omitted); *see also Reed v. Ezelle Investment Properties Inc.*, 353 F. Supp. 3d 1025 (D. Or. 2018) (defendant's use of photograph was not innocent where defendant could have learned about its copyright through basic online research).

Further, it is also well established that there is no requirement that copyright owners deposit copies of their works to obtain copyright protection. *See, e.g.*, *Valancourt*, 82 F.4th at 1233; *Mercer Publ'g v. Smart Cookie Ink*, 2012 WL 5879441, at *2 (W.D. Wash. 2012) (rejecting argument that a deposit copy is required to prove copyright ownership where defendant did not dispute authenticity of copyright registration certificates); *Ross-Nash v. Almond*, 2020 WL 6947691, at *1 (D. Nev. Oct. 28, 2020) (rejecting argument that author did not prove infringement of her work because she "did not produce [its] deposit copy"). The legitimate use of a deposit copy is, at most, to establish the bounds of what is copyrighted material *when such a dispute exists* over *unpublished* parts of works. *See, e.g.*, *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1062 (9th Cir. 2020) (en banc).[1]

Plaintiffs respectfully request the Court order Meta to amend its responses to remove its "deposit copy" objections and either admit or deny the RFAs based on what it actually knew about the works in question. If Meta nonetheless denies the RFAs and forces Plaintiffs to prove Meta's knowledge of copyrighted works at trial, then it risks paying Plaintiffs' attorneys' fees if the denials

---

[1] The use of deposit copies in *Skidmore* is also specific to musical works. *See Parker v. Hinton,* 2023 WL 370910, at *5 (6th Cir. Jan. 24, 2023)

1

prove to be frivolous.[2] *See* Fed. R. Civ. P. 37(c)(2). Alternatively, Meta can admit the RFAs and streamline the issues so the parties and factfinder can focus on the key issues of whether Meta willfully infringed copyrights and, if so, whether the fair use defense applies. What Meta cannot do is construe RFAs to render them meaningless, and then deny those misconstrued RFAs.

### B. Meta Must Amend Its RFA Responses To Omit Nonresponsive and Extraneous Statements.

In response to RFAs asking Meta to admit it did not seek or obtain authorization from copyright owners to copy their work and use it to train Llama, Meta "admits" it did not "seek, obtain, *or need* authorization" from owners. *See* Ex. A, RFAs 8, 9, 18, 21, and 24 (emphasis added). In an additional four responses, where the RFAs asked Meta to admit it made successive versions of Llama "available for use by Third Parties," Meta admits it did so "under certain circumstances and subject to certain terms and restrictions." *See id.*, RFAs 10-13. Finally, in Meta's Response to RFA 1, which asks Meta to admit it created and maintains Llama, Meta adds that it "released [Llama] under open source licenses." *Id.*, Response to RFA 1. Such extraneous, non-responsive statements trying to ameliorate Meta's admissions are improper.

Responses to RFAs may not contain qualifications that are not responsive to the request and that "cannot be construed as having been made in good faith." *Pecover v. Elec. Arts, Inc.*, 2012 WL 12921363, at *7 (N.D. Cal. Mar. 23, 2012) (requiring amended RFA responses where responding party inserted nonresponsive facts and legal conclusions); *see also Bullock v. Kraft Foods, Inc.*, 2011 WL 5101777, at *2 (E.D. Va. Oct. 26, 2011) (requiring amended RFA responses where admission also contained "denials about other issues" and "information nonresponsive to the substance of the request"). Meta's insertion of non-responsive qualifiers into its admissions is improper and requires amendment. The insertion of "or need" in the responses identified above is especially egregious because the prompt is purely factual—Meta cannot insert nonresponsive legal argument to confuse, obscure, or attempt to ameliorate a simple factual admission just because the admission is bad for Meta. Plaintiffs therefore respectfully request the Court order that Meta amend its responses to RFAs 1, 8–13, 19, 21, and 24 to remove the extraneous portions identified above.

### C. Meta Must Respond to RFA 7.

RFA 7 simply asks Meta to admit the obvious—that it "did not obtain permission or consent from the relevant copyright owners to use all copyrighted books in the Datasets used to train Llama Models." Meta elsewhere admits that it did not seek or obtain "authorization from all owners of any copyrighted works included within the third-party dataset commonly known as Books3." Response to RFA 18. It thus is unclear why Meta could answer RFA 18 but not RFA 7. Plaintiffs thus respectfully request the Court order Meta to amend its response and answer RFA 7.

### D. Meta's RFA Responses Should Encompass Llama 5.

For the same reasons stated in Plaintiffs' accompanying brief on RFPs, Meta's construction of "Llama Models" to exclude Llama 5 in its RFA responses is improper. Plaintiffs request that the Court order that Meta amend its RFAs to encompass Llama 5 where it would affect the answers. Meta may, of course, limit any admission to the extent it is true for some versions of Llama and false for others.

---

[2] There are extensive records produced by Meta showing it knew the Llama training datasets contained copyrighted works.

## II. META'S POSITION

Meta properly responded to Plaintiffs' Requests for Admissions ("RFAs").

**Meta Admitted RFAs Nos. 3–6, 17, 20, 23, 34, 43, 45–89, 90, 91, 94, and 96 To The Fullest Extent Possible.** RFA Nos. 3–6, 17, 20, 23, 34, 43, 45–89 asked Meta to admit that certain of Plaintiffs' allegedly copyrighted at-issue books were included in the Books3 dataset (a dataset created by a third party), and RFA Nos. 90–97 asked Meta to admit that certain of Plaintiff Farnsworth's allegedly copyrighted books were "included in a dataset used to train" Meta's Llama Models. In response, Meta admitted the RFAs as fully as possible based on the information known or readily obtainable by Meta—specifically that "text from a published and commercially-available version of [each such book]" was included in Books3, or a dataset used for training. Meta also appropriately clarified in each response that it does not know, and therefore cannot admit, whether such text also appears in the deposit copy submitted to the U.S. Copyright Office— *i.e.*, the copy that delimits the extent of Plaintiffs' alleged copyright registrations and thus the subject of this suit. This qualification was necessary and appropriate to define the scope of Meta's admissions, and Plaintiffs offer no effective argument to the contrary.[3] Indeed, Plaintiffs admit above that the deposit copy is used "to establish the bounds of what is copyrighted material."

"Ordinarily, a registration for a work of authorship only covers the material that is included in the deposit copy(ies). It does not cover authorship that does not appear in the deposit copy(ies), even if the applicant expressly claims that authorship in the application." Compendium of U.S. Copyright Practices (Third Ed.) § 504.2. The deposit copy "circumscribes the scope of the copyright" and "defines the four corners of it." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020); *see also Structured Asset Sales, LLC v. Sheeran*, 559 F. Supp. 3d 172, 174 (S.D.N.Y. 2021) ("[T]he Deposit Copy is the sole definition of the elements included in the protection of copyright.").

Additionally, Meta's ability to determine whether certain datasets contain text from any particular work – copyrighted or not – is limited to the materials it knows or can readily obtain. Meta thus asked Plaintiffs in discovery to produce copies of the deposit materials they submitted to the Copyright Office with their applications to register their asserted works. ECF No. 142 at 2-3. As the Court is aware, Plaintiffs did not produce deposit copies, claiming they do not have them. ECF No. 147. Accordingly, Meta reasonably investigated whether Plaintiffs' at-issue works are included in the Books3 dataset using published, commercially available copies of Plaintiffs' works. In depositions, Plaintiffs have been unable to represent that the deposit copies match the commercially published books. Likewise, without those deposit copies, Meta has no way of determining whether the commercially available copies match the deposit copies submitted to the Copyright Office.[4] Meta therefore cannot admit that the works allegedly covered by Plaintiffs' copyright registrations are exactly those included in Books3 or any other dataset. This is also the case for Plaintiffs' Requests seeking admissions as to "copyrighted books" (RFAs 3-6), "copyrighted works" (RFA 17, 20, 23, 34), or "copyrighted material" (RFA 43), generally.

---

[3] Meta outright objected to RFAs 92, 93, 95, and 97 on relevance and proportionality grounds, among others, because those RFAs sought admissions as to works by Plaintiff Farnsworth that are not included in his Complaint and thus not at issue in this case.

[4] Indeed, publishers make pre-publication edits, cuts, and edits to manuscripts prior to publication.

Plaintiffs argue Meta should admit these RFAs without qualification because a plaintiff need not produce a deposit copy to prove copyright ownership. But that misses the point. The question is not whether and how Plaintiffs will prove that they own valid copyright registrations for their works, but whether Meta can be forced to admit facts in response to discovery requests that pertain to information within *Plaintiffs'* own possession or control that Meta has tried, but been unable, to verify. Plaintiffs provide no authority for any such requirement because there is none. Meta has appropriately "admitted [these RFAs] to the fullest extent possible, and explained in detail why other portions of the requests may not be admitted," which is all that is required. *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) (cleaned up). Meta's responses to RFAs 3–6, 17, 20, 23, 34, 43, 45–91, 93, and 96 are proper.

In addition, Meta's good faith-effort to respond to these Requests was more than proportionate to the needs of this case. Meta underwent significant burden in comparing the texts from the published, commercially-available versions of Plaintiffs' works against third-party datasets to determine whether the datasets included text from Plaintiffs' at-issue books (albeit not the deposit copies, which, as noted, Plaintiffs have failed to provide). Plaintiffs, who have had the relevant datasets for months, *could have conducted the same analysis,* and doing so would have been no more burdensome for them than it was for Meta. To the extent Plaintiffs intended these Requests as a means of obtaining evidence, that is improper. *See Woodall v. California*, 2010 WL 4316953 at *3 (E.D.Cal. October 22, 2010) ("requests for admissions are not principally discovery devices and should not be used as a substitute for other discovery processes to uncover evidence.").

**Meta's Qualified Admissions In Response to RFA Nos. 1, 8–13, 18, 21, and 24 Are Proper.** Meta need not amend its responses to RFA Nos. 1, 8–13, 18, 21, and 24, as it admitted the substance of these Requests and included qualifying language that provides necessary context and clarification, as is permitted under Rule 36. *See Tesla, Inc. v. Cao*, 2020 WL 8515010, at *1 (N.D. Cal. Dec. 10, 2020) ("Defendant is correct that he may add a qualification to explain the surrounding context."). In response to RFAs 8, 9, 18, 21, and 24, Meta admitted that it did not seek or obtain authorization from copyright owners to use their works to train its Llama models. It also qualified the admission by stating that it did not need to seek or obtain such authorization, to the extent an unqualified admission would suggest otherwise. This is nothing like the response in *Pecover v. Electronic Arts, Inc.*, 2012 WL 12921363, at *7 (N.D. Cal. Mar. 23, 2012), which included "unnecessary allegations that cannot be construed as having been made in good faith." Whether Meta required Plaintiffs' authorization or permission to train its AI models on data that included text from Plaintiffs' books is a disputed issue in this case. Meta's qualification therefore "concern[s] an ongoing dispute between the parties that should be resolved at trial, rather than in discovery responses." *Baird v. BlackRock Institutional Tr. Co., N.A.*, 2019 WL 1897489, at *3 (N.D. Cal. Apr. 29, 2019) (distinguishing *Pecover*).

RFA Nos. 10–13 ask Meta to admit that it made various Llama models available to third parties. Meta admitted that it did so. It also added the qualifier that it did so "under certain circumstances and subject to certain terms and restrictions." This qualification is appropriate, as Meta did not provide unrestricted or unlimited access to its Llama models, as an unqualified admission would suggest, particularly insofar as these RFAs included the vague and undefined phrase "made available." Meta's qualifying language is required to ensure the accuracy of the admission and is therefore proper.

As to RFA No. 1, Plaintiffs take issue with Meta's response stating that it created a family of AI models under the "Llama" name, which Meta "released under open source licenses." Plaintiffs' concern appears to be that Meta did not admit that Meta "maintains" these large language models. However, as stated in Meta's response, the models were released under open source licenses. This means that users can "fine-tune, distill and deploy [the Llama models] anywhere." *See* https://www.llama.com/. It would thus be inaccurate for Meta to admit that it "maintains" the Llama models.

**Meta Cannot Admit or Deny Unintelligible RFA No. 7**. RFA No. 7 is a vague, multi-part request relating to "permission or consent" from "relevant copyright owners" to "use all copyrighted books" in the "Datasets" "used to train [multiple]Llama Models." It is wholly unclear what is meant by "relevant copyright owners" and "all copyrighted books." Among other things, is this limited to registered copyrights in the US? During meet and confer discussions, Plaintiffs explained that RFA 7 should be construed similarly to RFA 18, which asks Meta to admit that its "use of the Books3 database as a Dataset for training Llama Models was not authorized by all copyright owners of the works contained within the Books3 database." However, RFA 18 is worded differently, allowing Meta to admit it and the similarly worded RFAs 21 and 24. However, Meta cannot admit or deny unintelligible RFA 7, and it would serve no legitimate purpose here given Meta's other admissions.

**Llama "5" Is Inapplicable to Plaintiffs' Requests for Admission**. As explained during the parties' meet and confer and in Meta's portion of the parties' joint letter regarding Meta's responses to Plaintiffs' RFPs (also filed today), Meta has appropriately excluded Llama 5 from its construction of "Llama Models" because Llama "5" is far out in the future. Even Llama 4 is not yet released and still under development. Thus, requests about Llama "5" are irrelevant, outside the scope of the parties' dispute, and purely speculative and hypothetical. Meta cannot provide admissions about a model that does not exist and is not at issue.

### III.   PLAINTIFFS' REPLY

In limited page space, Plaintiffs raise these significant points without conceding other responses.

**Deposit Copies:** Plaintiffs urge the Court to review Meta's RFA responses and determine whether they meaningfully engage with the substance of what was requested (they do not). Even if Meta is permitted to limit its admissions to "a published and commercially-available version" of each work, it still qualifies its admissions to say vaguely only that "text from" each work is in the database.[5] The RFAs ask whether the works are in Books3, not if "text from" them are in Books3. If Meta will only admit that "text from" each work is in Books3, then it should just deny the RFAs.

**Extraneous Statements:** Meta's responses, especially those with the "or need" language, do not fall within the ambit of permissible qualified admissions. Instead, they are impermissible attempts to (1) rewrite RFAs that called for factual admissions and (2) turn them into legal briefing. Ironically, Meta's cited case generally permitting qualified admissions held that the defendant did not "admit or deny what the RFA straightforwardly asks" and ordered amendment. *Tesla, Inc.*, 2020 WL 8515010, at *1 (N.D. Cal. Dec. 10, 2020). Meta did not merely provide surrounding context for a plain admission. Instead, it admitted something different than what was asked.

---

[5] Meta complains Plaintiffs could have also compared the books to see if they're in the datasets. Plaintiffs have, and the works are. These RFAs are intended to streamline facts that cannot reasonably be disputed.

By:  /s/ *Bobby Ghajar*

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email: bghajar@cooley.com
       cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
Email: mweinstein@cooley.com
       lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile:  (415) 693-2222
Email: khartnett@cooley.com
       jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4121

By:  /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jischiller@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Plaintiffs*

6

Facsimile:  (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 26, 2024                              BOIES SCHILLER FLEXNER LLP

<u>*/s/ Maxwell V. Pritt*</u>
Maxwell V. Pritt
Reed Forbush
Jay Schuffenhauer

Attorneys for Plaintiffs