# EXHIBIT A

1   COOLEY LLP
    BOBBY GHAJAR (198719)
2   (bghajar@cooley.com)
    COLETTE GHAZARIAN (322235)
3   (cghazarian@cooley.com)
    1333 2nd Street, Suite 400
4   Santa Monica, California 90401
    Telephone:    (310) 883-6400
5
    MARK WEINSTEIN (193043)
6   (mweinstein@cooley.com)
    KATHLEEN HARTNETT (314267)
7   (khartnett@cooley.com)
    JUDD LAUTER (290945)
8   (jlauter@cooley.com)
    ELIZABETH L. STAMESHKIN (260865)
9   (lstameshkin@cooley.com)
    3175 Hanover Street
10  Palo Alto, CA  94304-1130
    Telephone:    (650) 843-5000
11  CLEARY GOTTLIEB STEEN & HAMILTON LLP
    ANGELA L. DUNNING (212047)
12  (adunning@cgsh.com)
    1841 Page Mill Road, Suite 250
13  Palo Alto, CA 94304
    Telephone: (650) 815-4131
14
    *[Full Listing on Signature Page]*
15
    *Counsel for Defendant Meta Platforms, Inc.*
16                  **UNITED STATES DISTRICT COURT**
17                 **NORTHERN DISTRICT OF CALIFORNIA**
18                    **SAN FRANCISCO DIVISION**
19  RICHARD KADREY, *et al.*,                    Case No. 3:23-cv-03417-VC
20  Individual and Representative
21                          Plaintiffs,          **DEFENDANT META PLATFORMS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS**
22          v.
23  META PLATFORMS, INC., a Delaware
    corporation;
24
                            Defendant.
25
26
27
28

| 1 | **PROPOUNDING PARTY:** | **PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER** |
| 2 | | **GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN,** |
| 3 | | **RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH** |

| 4 | **RESPONDING PARTY:** | **DEFENDANT META PLATFORMS, INC.** |

| 5 | **SET NUMBER:** | **ONE** |

Pursuant to Rule 36 of the Federal Rules of Civil Procedure ("Rules"), Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's First Set of Requests for Admissions ("Requests").

## I.    RESPONSES TO ALL REQUESTS

**1.**    Meta's responses to the Requests are made to the best of Meta's present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and Meta reserves the right to amend, revise, correct, supplement, or clarify the responses and objections propounded herein.

**2.**    To the extent that Meta responds to Plaintiff's Requests by stating that Meta will provide information and/or documents which Meta or any other party to this litigation deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Rule 26(c)(7) or Federal Rule of Evidence 501, Meta will do so pursuant to the Stipulated Protective Order entered in this case (Dkt. 90).

**3.**    The provision of a response to any of these Requests does not constitute a waiver of any objection regarding the use of said response in these proceedings.  Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to the Requests.

**4.**    Meta reserves the right to object on any ground at any time to such other or supplemental requests for admission that Plaintiffs may propound involving or relating to the subject matter of these Requests.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Request, Meta makes these objections to the following Instructions and Definitions.

**1.**    Meta objects to all defined terms to the extent that they are not utilized in Plaintiffs' First Set of Requests for Admission.

**2.**    Meta objects to the definition of "Complaint," which refers to the production of documents in response to Plaintiffs' Requests for Admission.  Meta will construe "Complaint" to refer to Plaintiffs' Corrected Second Consolidated Amended Complaint (Dkt. 133), filed September 9, 2024.

**3.**    Meta objects to the definition of "Dataset(s)" as vague, ambiguous, as to the phrase "all collections of data," which is indefinite and overbroad.  Meta further objects to the definition of "Dataset(s)" as vague and ambiguous as to the phrase "referenced, or intended to be used," which, read literally, would encompass any dataset referenced by any Meta employee in the context of the development, training, validation, testing, or evaluation of LLMs and any datasets that were intended for such use but not actually used.  Meta further objects to this definition to the extent it purports to include datasets that include content to which Plaintiffs have made no claim of ownership and which are not the subject of any allegations of copyright infringement by Plaintiffs.  Meta will construe "Dataset(s)" to mean the textual datasets used to train the Llama Models (as construed below).

**4.**    Meta objects to the definition of "Llama Models" as vague and ambiguous as to the terms and phrases "other AI models," "instances," "iterations," "versions," "updates," "modifications," "original version," "experimental versions," "subsequent versions," and "refinements to the underlying algorithm, parameters, or architecture," as applied to Llama and "any other AI models developed or in development by Meta."  Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works.  For the same reason, Meta objects to this definition to the

extent that it purports to require Meta to produce documents that are not relevant to any party's claims or defenses. Meta will construe "Llama Models" to mean the models within the Llama family of LLMs that have been publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3.

5.    Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning LLMs that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses. For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLMs released by Meta under that name on April 18, 2024, July 23, 2024, and September 25, 2024.

6.    Meta objects to the definition of "Meta" as overbroad and unduly burdensome to the extent it seeks to impose on Meta an obligation to investigate information or documents outside of its possession, custody, or control. For purposes of these responses, Meta construes the term "Meta" or "You" to mean Meta Platforms, Inc. and its officers, directors, employees, and authorized agents working on its behalf and subject to its control.

7.    Meta objects to the definition of "Relevant Period" as vague, ambiguous, and unintelligible, as it is defined circularly to mean "all times relevant to … the Complaint." Meta construes the Relevant Period to mean January 1, 2022 to the present.

8.    Meta objects to Instruction 4 to the extent it purports to require more of Meta than any obligation imposed by law, and to the extent it purports to require Meta to disclose information protected by attorney-client privilege and/or the attorney work product doctrine.

Cooley LLP
Attorneys at Law

3

Meta's Obj & Resps to
Pltf's First Set of RFA's
3:23-cv-03417-VC

**9.**     Meta objects to Instruction 5 as overbroad and unduly burdensome to the extent it purports to require more of Meta than any obligation imposed by law.

**10.**     Meta objects to Instruction 8 insofar as it provides that any Request will be deemed admitted as a result of an undefined "inadequate" response, without requiring Plaintiffs to bring a motion regarding the sufficiency of an answer or objection, as required under Fed. R. Civ. P. 36(a)(6).

**III.    OBJECTIONS AND RESPONSES TO INDIVIDUAL DOCUMENT REQUESTS**

**REQUEST FOR ADMISSION NO. 1:**

Admit that Meta created and maintains the large language models known as Llama.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta admits that it created a family of generative artificial intelligence ("AI") large language models known under variations of the "Llama" name (i.e., Llama 1, Llama 2, Llama 3), which Meta released under open source licenses.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Llama Models are large language models designed to emit naturalistic text outputs in response to user prompts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the terms "designed to" and "naturalistic" as vague and ambiguous, as it is unclear whether this Request is asking for an admission regarding Meta's intended purpose of the Llama Models or about their functionality.

Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta admits that one of the functions of the Llama Models is to emit natural language text outputs in response to user prompts.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the Dataset used to train Llama 1 included copyrighted books.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train Llama 1.  Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted books," and on the ground that it does not specify any copyrighted books or otherwise define this term.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more books is included in a Dataset used to train Llama 1.  As Meta lacks knowledge as to whether that text also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registrations for those books, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the Dataset used to train Llama 2 included copyrighted books.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train Llama 2.  Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted books," and on the ground that it does not specify any copyrighted books or otherwise define this term.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more books is

included in a Dataset used to train Llama 2.  As Meta lacks knowledge as to whether that text also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimit what is covered by the corresponding copyright registrations for those books, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the Dataset used to train Llama 3 included copyrighted books.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train Llama 3.  Meta objects to this Request to the extent that it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more books is included in a Dataset used to train Llama 3.  As Meta lacks knowledge as to whether that text also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimit what is covered by the corresponding copyright registrations for those books, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the Dataset used or that will be used to train Llama 4 included copyrighted books.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train Llama 4.  Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted books," and on the ground that it does not specify any copyrighted books or otherwise define this term.  Meta objects to this Request as purely speculative and not relevant to the claims or defenses of any party insofar as Meta has not yet released Llama 4 and Meta is in the process of finalizing the data corpus for Llama 4.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more books is

included in a Dataset that may be used to train Llama 4. As Meta lacks knowledge as to whether that text also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimit what is covered by the corresponding copyright registrations for those books, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 7:**

Admit that You did not obtain permission or consent from the relevant copyright owners to use all copyrighted books in the Datasets used to train Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the Request as vague, ambiguous, and unintelligible as to "use all copyrighted books in the Datasets." Meta also objects on the ground that the terms "relevant copyright owners" and "copyrighted books" are vague, ambiguous, indefinite, undefined, and overbroad in that they are untethered to the allegedly copyright registered works at issue in this Action. Meta objects to the Request as compound insofar as it seeks an admission as to multiple datasets used to train Llama Models. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of books or other content to be included in the datasets used to train the Llama Models or that Meta was required to obtain permission from copyright owners to train the Llama Models on any unspecified content of books they authored or to which they own the copyright.

Subject to and without waiving the foregoing objections, Meta responds as follows: As written, Meta is unable to respond to this Request and on that basis denies the Request. Meta is willing to meet and confer to understand how to interpret this Request.

**REQUEST FOR ADMISSION NO. 8:**

Admit that You did not obtain permission from Plaintiffs to include the content of books they authored in the Datasets used to train Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the Request

as compound insofar as it seeks an admission as to multiple datasets used to train Llama Models. Meta further objects on the ground that the term "content of books they authored" is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly copyright registered works at issue in this Action. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of books or other content to be included in the datasets used to train the Llama Models or that Meta was required to obtain permission from Plaintiffs to train the Llama Models on any unspecified content of books they authored.

Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta admits that it did not seek, obtain, or need permission from Plaintiffs to train Llama Models using Datasets to the extent they included the content of books they purportedly authored.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 9:**

Admit that You did not compensate Plaintiffs for the inclusion of the content of books they authored in the Datasets used to train Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "compensate" as vague and ambiguous.  Meta will construe "compensate" to refer to financial compensation.  Meta objects to the Request as compound insofar as it seeks an admission as to multiple datasets used to train Llama Models.  Meta further objects on the ground that the term "content of books they authored" is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly copyright registered works at issue in this Action.  Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of the content of books or other content to be included in the datasets used to train the Llama Models or that Meta was required to compensate Plaintiffs to train the Llama Models on any unspecified content of books Plaintiffs authored.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it did not compensate or need to compensate Plaintiffs for the inclusion of the content

of books they purportedly authored in the Datasets used to train Llama Models, to the extent those Datasets included the content of books they purportedly authored.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 10:**

Admit that You have made Llama 1 available for use by Third Parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has made Llama 1 available for use by Third Parties under certain circumstances and subject to certain terms and restrictions.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that You have made Llama 2 available for use by Third Parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has made Llama 2 available for use by Third Parties under certain circumstances and subject to certain terms and restrictions.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 12:**

Admit that You have made Llama 3 available for use by Third Parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has made Llama 3 available for use by Third Parties under certain circumstances and subject to certain terms and restrictions. Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 13:**

Admit that you intend to make Llama 4 available for use by Third Parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to this Request as purely speculative and not relevant to the claims or defenses of any party insofar as Meta has not yet released Llama 4.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it currently intends to make Llama 4 available for use by Third Parties at some point in the future under certain circumstances and subject to certain terms and restrictions. Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 14:**

Admit that You have generated revenue from making one or more Llama Models available for use by Third Parties.

**\*CONFIDENTIAL\* RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta further objects to the capitalized term "Third Parties," which is ambiguous and undefined. Meta construes this term to refer to persons who are not named parties to this Action. Meta further objects to this Request on the ground that the terms "generated revenue" and "from making one or more Llama Models available for use by Third Parties" are vague, ambiguous, and undefined. Meta further objects on the ground that this Request is compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: ██

███████████████████████████████████████████████████████

████████████████████████████

**REQUEST FOR ADMISSION NO. 15:**

Admit that You have not disclosed all Datasets used to train Llama Models in response to discovery in this case.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request, including, in particular Objection No. 4. Meta objects to this Request as improperly seeking discovery on discovery. Meta further objects to this Request to the extent it seeks information that is not relevant to the claims or defenses of any party.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 16:**

Admit that You used the Books3 database as a Dataset to train one or more Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe "Books3 database" to mean the third-party dataset commonly known as Books3. Meta further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has used a portion of the third-party dataset commonly known as Books3 as training data to train one or more Llama Models. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the Books3 database contains copyrighted works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe "Books3 database" to mean the third-party dataset commonly known as Books3. Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted works," and on the ground that it does not specify any copyrighted works or otherwise define this term.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more copyrighted

works appears in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimit what is covered by the corresponding copyright registrations for those works, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Your use of the Books3 database as a Dataset for training Llama Models was not authorized by all copyright owners of the works contained within the Books3 database.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe "Books3 database" to mean the third-party dataset commonly known as Books3. Meta objects to this Request to the extent that it calls for a legal conclusion. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of content to be included in the third-party Books3 dataset or that Meta's use of the Books3 dataset for training the Llama Models required authorization from the owners of the copyrights in the works contained within that dataset.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it did not seek, obtain, or need authorization from all owners of any copyrighted works included within the third-party dataset commonly known as Books3 to use that dataset for training Llama Models. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 19:**

Admit that You used the "Library Genesis" database as a Dataset to train one or more Llama Models.

**\*CONFIDENTIAL\* RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: 

1  ███████████████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  ██████

4  **REQUEST FOR ADMISSION NO. 20:**

5  Admit that the "Library Genesis" database contains copyrighted works.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

7  Meta incorporates by reference its Objections to Instructions and Definitions, including its

8  own definitions stated therein, which are applicable to this Request. Meta objects to this Request

9  to the extent that it calls for a legal conclusion as to "copyrighted works," and on the ground that it

10  does not specify any copyrighted works or otherwise define this term.

11  Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

12  admits that text from a published and commercially-available version of one or more books appears

13  in the third-party "Library Genesis" database. As Meta lacks knowledge as to whether that text

14  also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimit what is

15  covered by the corresponding copyright registrations for those works, Meta denies this RFA.

16  **REQUEST FOR ADMISSION NO. 21:**

17  Admit that Your use of the "Library Genesis" database as a Dataset for training Llama

18  Models was not authorized by all copyright owners of the works contained within the "Library

19  Genesis" database.

20  **\*CONFIDENTIAL\* RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

21  Meta incorporates by reference its Objections to Instructions and Definitions, including its

22  own definitions stated therein, which are applicable to this Request. Meta objects to this Request

23  to the extent that it calls for a legal conclusion. Meta objects to this Request to the extent it suggests

24  that Meta's use of data from the third-party "Library Genesis" database for training the Llama

25  Models required authorization from the owners of the copyrights in the works contained within that

26  database.

27  Subject to and without waiving the foregoing objections, Meta responds as follows: ████

28  ███████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ██████████████████████████████

3 **REQUEST FOR ADMISSION NO. 22:**

4     Admit that You used the database known as "The Pile" as a Dataset to train one or more

5 Llama Models.

6 **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

7     Meta incorporates by reference its Objections to Instructions and Definitions, including its

8 own definitions stated therein, which are applicable to this Request.  Meta objects to the term "'The

9 Pile' database" as vague and ambiguous.  Meta will construe "'The Pile' database" to mean the

10 third-party dataset commonly known as The Pile.  Meta further objects to this Request as

11 compound.

12     Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

13 admits that it has used some content included in the third-party dataset commonly known as The

14 Pile as training data to train one or more Llama Models.  Except as expressly admitted, Meta denies

15 this Request.

16 **REQUEST FOR ADMISSION NO. 23:**

17     Admit that the database known as "The Pile" contains copyrighted works.

18 **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

19     Meta incorporates by reference its Objections to Instructions and Definitions, including its

20 own definitions stated therein, which are applicable to this Request.  Meta objects to the term "'The

21 Pile' database" as vague and ambiguous.  Meta will construe "'The Pile' database" to mean the

22 third-party dataset commonly known as The Pile.  Meta objects to this Request to the extent that it

23 calls for a legal conclusion as to "copyrighted works," and on the ground that it does not specify

24 any copyrighted works or otherwise define this term.

25     Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

26 admits that text from a published and commercially-available version of one or more books appears

27 in the third-party dataset commonly known as The Pile.  As Meta lacks knowledge as to whether

28 that text also appeared in the deposit copies submitted to the U.S. Copyright Office, which delimit

what is covered by the corresponding copyright registrations for those works, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 24:**

Admit that Your use of the database known as "The Pile" as a Dataset for training Llama Models was not authorized by all copyright owners of the works contained within the "The Pile" database.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "'The Pile' database" as vague and ambiguous. Meta will construe "'The Pile' database" to mean the third-party dataset commonly known as The Pile. Meta objects to this Request to the extent that it calls for a legal conclusion. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of content to be included in the third-party dataset commonly known as The Pile or that Meta's use of The Pile for training the Llama Models required authorization from the owners of the copyrights in the works contained within that dataset.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it did not seek, obtain, or need authorization from all owners of any copyrighted works included within the third-party The Pile dataset to use that dataset for training Llama Models. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 25:**

Admit that You have contacted one or more Person(s) to negotiate licensing of material for the purpose of training a Llama Model.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the terms "material" and "licensing" as vague, ambiguous, and indefinite.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has contacted one or more Persons to discuss an agreement for access to and use of certain data as training material.  Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 26:**

Admit that You have contacted one or more copyright owners to negotiate licensing of their copyrighted material for the purpose of training a Llama Model.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the terms "copyright owners," "copyrighted material," and "licensing" as vague, ambiguous, indefinite, and calling for a legal conclusion.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has contacted one or more Persons to discuss an agreement for access to and use of certain data that may include copyrighted material as training material.  Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 27:**

Admit that each Llama Model can generate text outputs similar to copyrighted works in Datasets used to train each Llama Model.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses, in particular the substance of the outputs of the Llama Models.  Meta objects to this Request as compound as it purports to seek an admission as to multiple Llama Models.  Meta objects to this Request on the grounds that the terms "copyrighted works" and "similar to copyrighted works" are vague, ambiguous, undefined, indefinite, and call for a legal conclusion.  Meta objects to this Request as speculative insofar as it seeks an admission as to whether the Llama Models "can" generate certain text outputs, regardless of whether they actually do generate those text outputs.  Meta objects to the

phrase "each Llama Model can generate" as vague and ambiguous. Meta will construe "each Llama Model can generate" to refer to the capabilities of the final, released versions of Llama 1, Llama 2, and Llama 3, as construed above. Meta further objects to this Request on the ground that it constitutes an incomplete hypothetical and calls for speculation.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 28:**

Admit that You issued a DMCA takedown notice to a Person who made a leaked version of Llama 1 available for download to third parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses. Meta objects to the term "leaked version" as vague, ambiguous, and undefined. Meta construes the term "third parties" synonymously with the defined term Third Parties.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it issued a DMCA takedown notice to a Person who made the Llama 1 weights available for download to Third Parties other than those Persons authorized to use Llama 1. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit that You received more than 100,000 applications for access to Llama 1.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "applications" as vague and ambiguous.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it received more than 100,000 requests to provide access to Llama 1. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that You granted access to Llama 1 to tens of thousands of third-party users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta construes "third parties" in this Request synonymously with the defined term Third Parties.

Subject to and without waiving the foregoing objections, Meta responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 31:**

Admit that You granted access to Llama 2 to tens of thousands of third-party users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "granted access" as vague and ambiguous in the context of Llama 2, which is freely available. Meta construes "third parties" in this Request synonymously with the defined term Third Parties.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that Llama 2 is freely available to at least tens of thousands of third-party users. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 32:**

Admit that You granted access to Llama 3 to tens of thousands of third-party users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "granted access" as vague and ambiguous in the context of Llama 3, which is freely available. Meta construes "third parties" in this Request synonymously with the defined term Third Parties.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that Llama 3 is freely available to at least tens of thousands of third-party users. Except as expressly admitted, Meta denies this Request.

1    REQUEST FOR ADMISSION NO. 33:

2        Admit that one or more Llama Models were trained using publicly available data.

3    RESPONSE TO REQUEST FOR ADMISSION NO. 33:

4        Meta incorporates by reference its Objections to Instructions and Definitions, including its

5    own definitions stated therein, which are applicable to this Request.  Meta objects to the term

6    "publicly available data" as vague and ambiguous, and will construe the term to mean data that is

7    accessible for free to the general public.  Meta further objects to this Request as compound.

8        Subject to and without waiving the foregoing objections, Meta responds as follows: Admit.

9    REQUEST FOR ADMISSION NO. 34:

10       Admit that the publicly available data used to train the Llama Models included copyrighted

11   works.

12   RESPONSE TO REQUEST FOR ADMISSION NO. 34:

13       Meta incorporates by reference its Objections to Instructions and Definitions, including its

14   own definitions stated therein, which are applicable to this Request. Meta objects to the term

15   "publicly available data" as vague and ambiguous, and will construe the term to mean data that is

16   accessible for free to the general public.  Meta objects to this Request to the extent that it calls for

17   a legal conclusion as to "copyrighted works," and on the ground that it does not specify any

18   copyrighted works or otherwise define this term.  Meta further objects to this Request as compound.

19       Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

20   admits that the publicly available data used to train the Llama Models included text from a

21   published and commercially-available version of one or more copyrighted works.  As Meta lacks

22   knowledge as to whether that text also appeared in the deposit copies submitted to the U.S.

23   Copyright Office, which delimit what is covered by the corresponding copyright registrations for

24   those works, Meta denies this RFA.

25   REQUEST FOR ADMISSION NO. 35:

26       Admit that Meta has not provided to Plaintiffs a list of works used in the Datasets used to

27   train Llama Models.

28

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

2         Meta incorporates by reference its Objections to Instructions and Definitions, including its

3    own definitions stated therein, which are applicable to this Request.  Meta objects to the term

4    "works" as vague, ambiguous, and indefinite. Meta objects to this Request as it improperly seeking

5    discovery on discovery.

6         Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

7    Meta has produced a list of the content of the third-party Books3 dataset (Meta_Kadrey_00000250),

8    which is alleged to include text from each of Plaintiffs' books that are at issue in the Complaint.

9    Meta is not aware or in possession of any list(s) of the content of any other Datasets used to train

10   the Llama Models, and any such list(s) would not be relevant to the Parties' claims or defenses nor

11   proportional to the needs of this case. Except as expressly admitted, Meta denies this Request.

12   **REQUEST FOR ADMISSION NO. 36:**

13        Admit that the toxicity mitigation measures in Llama 2 were identical to those present in

14   Llama 1.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

16        Meta incorporates by reference its Objections to Instructions and Definitions, including its

17   own definitions stated therein, which are applicable to this Request.  Meta objects to the term

18   "toxicity mitigation measures" as vague, ambiguous, and undefined.  Meta will construe this term

19   to refer to measures taken or implemented to avoid generating toxic content as outputs.

20        Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

21   **REQUEST FOR ADMISSION NO. 37:**

22        Admit that the toxicity mitigation measures in Llama 3 were identical to those present in

23   Llama 2.

24   **RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

25        Meta incorporates by reference its Objections to Instructions and Definitions, including its

26   own definitions stated therein, which are applicable to this Request.  Meta objects to the term

27   "toxicity mitigation measures" as vague, ambiguous, and undefined.  Meta will construe this term

28   to refer to measures taken or implemented to avoid generating toxic content as outputs.

1    Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

2    **REQUEST FOR ADMISSION NO. 38:**

3    Admit that You store copyrighted material for training Llama Models.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

5    Meta incorporates by reference its Objections to Instructions and Definitions, including its

6    own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

7    to the extent that it calls for a legal conclusion.  Meta objects to this Request on the grounds that

8    the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls for a legal

9    conclusion.  Meta objects to the term "store copyrighted material for training Llama Models" as

10    vague and ambiguous.  Meta also objects on the ground that this Request is overbroad and seeks

11    information that is not relevant to any party's claims or defenses.  Meta objects to this Request as

12    compound.

13    Subject to and without waiving the foregoing objections, Meta responds as follows: As

14    written, Meta is unable to respond to this Request and on that basis denies the Request.  Meta is

15    willing to meet and confer to understand how to interpret this Request.

16    **REQUEST FOR ADMISSION NO. 39:**

17    Admit that You have not deleted all copyrighted material in Your possession after it is used

18    for training Llama Models.

19    **RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

20    Meta incorporates by reference its Objections to Instructions and Definitions, including its

21    own definitions stated therein, which are applicable to this Request. .  Meta objects to this Request

22    on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite,

23    and calls for a legal conclusion.  Meta objects to this Request to the extent it suggests that Meta

24    was required to delete copyrighted material used for training LLMs after the material was used to

25    train its Llama Models.  Meta also objects on the ground that this Request is overbroad and seeks

26    information that is not relevant to any party's claims or defenses. Meta objects to this Request as

27    compound.

28    Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

admits that it has not deleted all training data used to train its Llama Models in its possession after that training data was used to train its Llama Models, including, in part, to comply with its obligations to preserve relevant documents and materials in connection with this Action.  Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 40:**

Admit that you reproduced copyrighted material in the training of Llama models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "Llama models" as vague and ambiguous to the extent its meaning is intended to be different from the defined term "Llama Models."  Meta will construe "Llama models" as the defined term "Llama Models" as limited and construed above.  Meta objects to this Request on the grounds that the terms "copyrighted material" and "reproduced" are vague, ambiguous, undefined, indefinite, and call for a legal conclusion.  Meta objects to this Request to the extent it calls for a legal conclusion.  Meta objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the Llama Models are capable of reproducing copyrighted material.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses, in particular the substance of the outputs of the Llama Models.  Meta objects to this Request as compound as it purports to seek an admission as to multiple Llama Models.  Meta objects to this Request on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls for a legal conclusion.  Meta objects to this Request as speculative insofar as it seeks an admission as to whether the Llama Models "are capable of" reproducing certain material, regardless of whether they actually do reproduce such material.  Meta objects to the phrase "the Llama Models

1    are capable of reproducing" as vague and ambiguous.  Meta will construe "the Llama Models are

2    capable of reproducing" to refer to the capabilities of the final, released versions of Llama 1, Llama

3    2, and Llama 3, as construed above.  Meta further objects to this Request on the ground that it

4    constitutes an incomplete hypothetical and calls for speculation.

5        Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

6    **REQUEST FOR ADMISSION NO. 42:**

7        Admit that the Llama Models are programmed, trained, or filtered to avoid reproducing

8    copyrighted material.

9    **RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

10       Meta incorporates by reference its Objections to Instructions and Definitions, including its

11   own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

12   insofar as it seeks information that is not relevant to any party's claims or defenses, in particular

13   the substance of the outputs of the Llama Models.  Meta objects to this Request as compound as it

14   purports to seek an admission as to multiple Llama Models.  Meta objects to this Request on the

15   grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls

16   for a legal conclusion.

17       Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

18   admits that it implemented certain risk mitigation measures in the process of developing the Llama

19   Models to minimize the likelihood that the models would generate undesirable outputs, including

20   outputs that may reproduce portions of any copyrighted materials.  Except as expressly admitted,

21   Meta denies this Request.

22   **REQUEST FOR ADMISSION NO. 43:**

23       Admit that the Llama Models that were trained with copyrighted material had at least in

24   part a commercial purpose.

25   **RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

26       Meta incorporates by reference its Objections to Instructions and Definitions, including its

27   own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

28   on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite,

1  and calls for a legal conclusion.  Meta objects to the Request as compound.

2      Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

3  admits that Llama 2 and Llama 3 models were made available to the open source community

4  pursuant to a license that allowed developers to use the models for commercial uses pursuant to

5  certain terms and conditions.  Meta also admits that the data used to train the Llama Models

6  included text from a published and commercially-available version of one or more copyrighted

7  works.  As Meta lacks knowledge as to whether that text also appeared in the deposit copies

8  submitted to the U.S. Copyright Office, which delimit what is covered by the corresponding

9  copyright registrations for those works, Meta denies this RFA to the extent it seeks an admission

10  that the Llama Models were trained with copyrighted material.  Except as expressly admitted, Meta

11  denies this Request.

12  **REQUEST FOR ADMISSION NO. 44:**

13      Admit that if copyright holders or other content creators demanded that You not use their

14  content to train Your LLM models, then You would not use their content to train Your LLM models.

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

16      Meta incorporates by reference its Objections to Instructions and Definitions, including its

17  own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

18  on the ground that it constitutes an incomplete hypothetical and as purely speculative.

19      Subject to and without waiving the foregoing objections, Meta responds as follows: As

20  written, Meta is unable to respond to this Request and on that basis denies the Request.  Meta is

21  willing to meet and confer to understand how to interpret this Request.

22  **REQUEST FOR ADMISSION NO. 45:**

23      Admit that the Books3 database contains Plaintiff Richard Kadrey's work *Aloha from Hell*.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

25      Meta incorporates by reference its Objections to Instructions and Definitions, which are

26  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

27  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

28  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

1  commonly known as Books3.

2       Meta lacks information sufficient to admit or deny that *Aloha from Hell*, which is the subject

3  of Plaintiff Kadrey's claim and allegedly subject to copyright protection, is contained in the Books3

4  dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Aloha*

5  *from Hell* submitted to the U.S. Copyright Office, which delimits what is covered by the

6  corresponding copyright registration.  Meta admits that text from a published and commercially-

7  available version of *Aloha from Hell* is included in the third party Books3 dataset.  As Meta lacks

8  knowledge as to whether that text is also included in the deposit copy for this work, Meta denies

9  this RFA.

10 **REQUEST FOR ADMISSION NO. 46:**

11      Admit that the Books3 database contains Plaintiff Richard Kadrey's work *The Everything*

12 *Box*.

13 **RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

14      Meta incorporates by reference its Objections to Instructions and Definitions, which are

15 applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

16 unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

17 ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

18 commonly known as Books3.

19      Meta lacks information sufficient to admit or deny that *The Everything Box*, which is the

20 subject of Plaintiff Kadrey's claim and allegedly subject to copyright protection, is contained in the

21 Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

22 for *The Everything Box* submitted to the U.S. Copyright Office, which delimits what is covered by

23 the corresponding copyright registration.  Meta admits that text from a published and

24 commercially-available version of *The Everything Box* is included in the third party Books3

25 dataset.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for

26 this work, Meta denies this RFA.

27 **REQUEST FOR ADMISSION NO. 47:**

28      Admit that the Books3 database contains Plaintiff Richard Kadrey's work *Kill the Dead*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Kill the Dead*, which is the subject of Plaintiff Kadrey's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Kill the Dead* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Kill the Dead* is included in the third-party Books3 dataset.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 48:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *The Perdition Score*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *The Perdition Score*, which is the subject of Plaintiff Kadrey's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *The Perdition Score* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and

commercially-available version of *The Perdition Score* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 49:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *Sandman Slim*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Sandman Slim*, which is the subject of Plaintiff Kadrey's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Sandman Slim* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Sandman Slim* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 50:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *The Wrong Dead Guy*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

1    Meta lacks information sufficient to admit or deny that *The Wrong Dead Guy*, which is the

2    subject of Plaintiff Kadrey's claim and allegedly subject to copyright protection, is contained in the

3    Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

4    for *The Wrong Dead Guy* submitted to the U.S. Copyright Office, which delimits what is covered

5    by the corresponding copyright registration.  Meta admits that text from a published and

6    commercially-available version of *The Wrong Dead Guy* is included in the third-party dataset

7    commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in

8    the deposit copy for this work, Meta denies this RFA.

9    **REQUEST FOR ADMISSION NO. 51:**

10    Admit that the Books3 database contains Plaintiff Sarah Silverman's work *The Bedwetter*.

11    **RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

12    Meta incorporates by reference its Objections to Instructions and Definitions, which are

13    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

14    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

15    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

16    commonly known as Books3.

17    Meta lacks information sufficient to admit or deny that *The Bedwetter*, which is the subject

18    of Plaintiff Silverman's claim and allegedly subject to copyright protection, is contained in the

19    Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

20    for *The Bedwetter* submitted to the U.S. Copyright Office, which delimits what is covered by the

21    corresponding copyright registration.  Meta admits that text from a published and commercially-

22    available version of *The Bedwetter* is included in the third-party dataset commonly known as

23    Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for

24    this work, Meta denies this RFA.

25    **REQUEST FOR ADMISSION NO. 52:**

26    Admit that the Books3 database contains Plaintiff Christopher Golden's work *Ararat*.

27    **RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

28    Meta incorporates by reference its Objections to Instructions and Definitions, which are

applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Ararat*, which is the subject of Plaintiff Golden's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Ararat* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Ararat* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 53:**

Admit that the Books3 database contains Plaintiff Christopher Golden's work *Dead Ringers*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 53:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Dead Ringers*, which is the subject of Plaintiff Golden's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Dead Ringers* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Dead Ringers* is included in the third-party dataset commonly known as

1    Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for

2    this work, Meta denies this RFA.

3    **REQUEST FOR ADMISSION NO. 54:**

4         Admit that the Books3 database contains Plaintiff Christopher Golden's work *The Pandora*

5    *Room*.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

7         Meta incorporates by reference its Objections to Instructions and Definitions, which are

8    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

9    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

10   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

11   commonly known as Books3.

12        Meta lacks information sufficient to admit or deny that *The Pandora Room*, which is the

13   subject of Plaintiff Golden's claim and allegedly subject to copyright protection, is contained in the

14   Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

15   for *The Pandora Room* submitted to the U.S. Copyright Office, which delimits what is covered by

16   the corresponding copyright registration.  Meta admits that text from a published and

17   commercially-available version of *The Pandora Room* is included in the third-party dataset

18   commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in

19   the deposit copy for this work, Meta denies this RFA.

20   **REQUEST FOR ADMISSION NO. 55:**

21        Admit that the Books3 database contains Plaintiff Christopher Golden's work *Snowblind*.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

23        Meta incorporates by reference its Objections to Instructions and Definitions, which are

24   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

25   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

26   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

27   commonly known as Books3.

28

Meta lacks information sufficient to admit or deny that *Snowblind*, which is the subject of Plaintiff Golden's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Snowblind* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Snowblind* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 56:**

Admit that the Books3 database contains Plaintiff Ta-Nehisi Coates's work *The Beautiful Struggle*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *The Beautiful Struggle*, which is the subject of Plaintiff Coates's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *The Beautiful Struggle* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *The Beautiful Struggle* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 57:**

Admit that the Books3 database contains Plaintiff Ta-Nehisi Coates's work *The Water Dancer*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *The Water Dancer*, which is the subject of Plaintiff Coates's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *The Water Dancer* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *The Water Dancer* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 58:**

Admit that the Books3 database contains Plaintiff Ta-Nehisi Coates's work *We Were Eight Years in Power*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *We Were Eight Years in Power*, which is the subject of Plaintiff Coates's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *We Were Eight Years in Power* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a

published and commercially-available version of *We Were Eight Years in Power* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the Books3 database contains Plaintiff Junot Díaz's work *The Brief Wondrous Life of Oscar Wao*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *The Brief Wondrous Life of Oscar Wao*, which is the subject of Plaintiff Diaz's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *The Brief Wondrous Life of Oscar Wao* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *The Brief Wondrous Life of Oscar Wao* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the Books3 database contains Plaintiff Junot Díaz's work *Drown*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Drown*, which is the subject of Plaintiff Diaz's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Drown* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Drown* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *The Confessions of Max Tivoli*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *The Confessions of Max Tivoli*, which is the subject of Plaintiff Greer's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *The Confessions of Max Tivoli* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *The Confessions of Max Tivoli* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 62:**

Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *How It Was For Me*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *How It Was For Me*, which is the subject of Plaintiff Greer's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *How It Was For Me* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *How It Was For Me* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 63:**

Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *Less*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Less*, which is the subject of Plaintiff Greer's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Less* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Less* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to

1    whether that text is also included in the deposit copy for this work, Meta denies this RFA.

2    **REQUEST FOR ADMISSION NO. 64:**

3         Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *The Path of*

4    *Minor Planets*.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

6         Meta incorporates by reference its Objections to Instructions and Definitions, which are

7    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

8    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

9    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

10   commonly known as Books3.

11        Meta lacks information sufficient to admit or deny that *The Path of Minor Planets*, which

12   is the subject of Plaintiff Greer's claim and allegedly subject to copyright protection, is contained

13   in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit

14   copy for *The Path of Minor Planets* submitted to the U.S. Copyright Office, which delimits what

15   is covered by the corresponding copyright registration.  Meta admits that text from a published and

16   commercially-available version of *The Path of Minor Planets* is included in the third-party dataset

17   commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in

18   the deposit copy for this work, Meta denies this RFA.

19   **REQUEST FOR ADMISSION NO. 65:**

20        Admit that the Books3 database contains Plaintiff David Henry Hwang's work *Golden*

21   *Child*.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

23        Meta incorporates by reference its Objections to Instructions and Definitions, which are

24   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

25   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

26   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

27   commonly known as Books3.

28        Meta lacks information sufficient to admit or deny that *Golden Child*, which is the subject

of Plaintiff Hwang's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Golden Child* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Golden Child* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 66:**

Admit that the Books3 database contains Plaintiff David Henry Hwang's work *M. Butterfly*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *M. Butterfly*, which is the subject of Plaintiff Hwang's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *M. Butterfly* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *M. Butterfly* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 67:**

Admit that the Books3 database contains Plaintiff David Henry Hwang's work *Trying to Find Chinatown*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are

1    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

2    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

3    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

4    commonly known as Books3.

5        Meta lacks information sufficient to admit or deny that *Trying to Find Chinatown*, which is

6    the subject of Plaintiff Hwang's claim and allegedly subject to copyright protection, is contained

7    in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit

8    copy for *Trying to Find Chinatown* submitted to the U.S. Copyright Office, which delimits what is

9    covered by the corresponding copyright registration.  Meta admits that text from a published and

10   commercially-available version of *Trying to Find Chinatown* is included in the third-party dataset

11   commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in

12   the deposit copy for this work, Meta denies this RFA.

13   **REQUEST FOR ADMISSION NO. 68:**

14       Admit that the Books3 database contains Plaintiff Matthew Klam's work *Sam the Cat*.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

16       Meta incorporates by reference its Objections to Instructions and Definitions, which are

17   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

18   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

19   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

20   commonly known as Books3.

21       Meta lacks information sufficient to admit or deny that *Sam the Cat*, which is the subject of

22   Plaintiff Klam's claim and allegedly subject to copyright protection, is contained in the Books3

23   dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Sam

24   the Cat* submitted to the U.S. Copyright Office, which delimits what is covered by the

25   corresponding copyright registration.  Meta admits that text from a published and commercially-

26   available version of *Sam the Cat* is included in the third-party dataset commonly known as

27   Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for

28   this work, Meta denies this RFA.

1  **REQUEST FOR ADMISSION NO. 69:**

2  Admit that the Books3 database contains Plaintiff Matthew Klam's work *Who is Rich*?

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

4  Meta incorporates by reference its Objections to Instructions and Definitions, which are

5  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

6  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

7  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

8  commonly known as Books3.

9  Meta lacks information sufficient to admit or deny that *Who is Rich?*, which is the subject

10  of Plaintiff Klam's claim and allegedly subject to copyright protection, is contained in the Books3

11  dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Who*

12  *is Rich?* submitted to the U.S. Copyright Office, which delimits what is covered by the

13  corresponding copyright registration.  Meta admits that text from a published and commercially-

14  available version of *Who is Rich?* is included in the third-party dataset commonly known as

15  Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for

16  this work, Meta denies this RFA.

17  **REQUEST FOR ADMISSION NO. 70:**

18  Admit that the Books3 database contains Plaintiff Laura Lippman's work *After I'm Gone*.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

20  Meta incorporates by reference its Objections to Instructions and Definitions, which are

21  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

22  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

23  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

24  commonly known as Books3.

25  Meta lacks information sufficient to admit or deny that *After I'm Gone*, which is the subject

26  of Plaintiff Lippman's claim and allegedly subject to copyright protection, is contained in the

27  Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

28  for *After I'm Gone* submitted to the U.S. Copyright Office, which delimits what is covered by the

corresponding copyright registration. Meta admits that text from a published and commercially-available version of *After I'm Gone* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 71:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *In a Strange City*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *In a Strange City*, which is the subject of Plaintiff Lippman's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *In a Strange City* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *In a Strange City* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 72:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *Lady in the Lake*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Lady in the Lake*, which is the subject of Plaintiff Lippman's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Lady in the Lake* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Lady in the Lake* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 73:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *Sunburn*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Sunburn*, which is the subject of Plaintiff Lippman's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Sunburn* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Sunburn* is included in the third-party dataset commonly known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 74:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *What the Dead Know*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *What the Dead Know*, which is the subject of Plaintiff Lippman's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *What the Dead Know* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *What the Dead Know* is included in the third-party dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 75:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *Wilde Lake*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Wilde Lake*, which is the subject of Plaintiff Lippman's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Wilde Lake* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Wilde Lake* is included in the third-party dataset commonly known as Books3. As Meta lacks

1   knowledge as to whether that text is also included in the deposit copy for this work, Meta denies

2   this RFA.

3   **REQUEST FOR ADMISSION NO. 76:**

4        Admit that the Books3 database contains Plaintiff Rachel Louise Snyder's work *No Visible*

5   *Bruises: What We Don't Know About Domestic Violence Can Kill Us.*

6   **RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

7        Meta incorporates by reference its Objections to Instructions and Definitions, which are

8   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

9   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

10  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

11  commonly known as Books3.

12       Meta admits that text from *No Visible Bruises: What We Don't Know About Domestic*

13  *Violence Can Kill Us* is included in the third party dataset Books3 dataset.  Except as expressly

14  admitted, Meta denies this RFA.

15  **REQUEST FOR ADMISSION NO. 77:**

16       Admit that the Books3 database contains Plaintiff Lysa TerKeurst's work *Embraced*.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

18       Meta incorporates by reference its Objections to Instructions and Definitions, which are

19  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

20  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

21  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

22  commonly known as Books3.

23       Meta lacks information sufficient to admit or deny that *Embraced*, which is the subject of

24  Plaintiff TerKeurst's claim and allegedly subject to copyright protection, is contained in the Books3

25  dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for

26  *Embraced* submitted to the U.S. Copyright Office, which delimits what is covered by the

27  corresponding copyright registration.  Meta admits that text from a published and commercially-

28  available version of *Embraced* is included in the dataset commonly known as Books3.  As Meta

1    lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta

2    denies this RFA.

3    **REQUEST FOR ADMISSION NO. 78:**

4        Admit that the Books3 database contains Plaintiff Lysa TerKeurst's work *Unglued*.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

6        Meta incorporates by reference its Objections to Instructions and Definitions, which are

7    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

8    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

9    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

10   commonly known as Books3.

11       Meta lacks information sufficient to admit or deny that *Unglued*, which is the subject of

12   Plaintiff TerKeurst's claim and allegedly subject to copyright protection, is contained in the Books3

13   dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for

14   *Unglued* submitted to the U.S. Copyright Office, which delimits what is covered by the

15   corresponding copyright registration.  Meta admits that text from a published and commercially-

16   available version of *Unglued* is included in the dataset commonly known as Books3.  As Meta lacks

17   knowledge as to whether that text is also included in the deposit copy for this work, Meta denies

18   this RFA.

19   **REQUEST FOR ADMISSION NO. 79:**

20       Admit that the Books3 database contains Plaintiff Lysa TerKeurst's work *Made to Crave*

21   *Devotional*.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

23       Meta incorporates by reference its Objections to Instructions and Definitions, which are

24   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

25   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

26   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

27   commonly known as Books3.

28       Meta lacks information sufficient to admit or deny that *Made to Crave Devotional*, which

1   is the subject of Plaintiff TerKeurst's claim and allegedly subject to copyright protection, is

2   contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce,

3   the deposit copy for *Made to Crave Devotional* submitted to the U.S. Copyright Office, which

4   delimits what is covered by the corresponding copyright registration. Meta admits that text from a

5   published and commercially-available version of *Made to Crave Devotional* is included in the

6   dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also

7   included in the deposit copy for this work, Meta denies this RFA.

8   **REQUEST FOR ADMISSION NO. 80:**

9          Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *After Tupac*

10  *& D Foster*.

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

12         Meta incorporates by reference its Objections to Instructions and Definitions, which are

13  applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

14  unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

15  ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create,

16  commonly known as Books3.

17         Meta lacks information sufficient to admit or deny that *After Tupac & D Foster*, which is

18  the subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained

19  in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit

20  copy for *After Tupac & D Foster* submitted to the U.S. Copyright Office, which delimits what is

21  covered by the corresponding copyright registration. Meta admits that text from a published and

22  commercially-available version of *After Tupac & D Foster* is included in the dataset commonly

23  known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit

24  copy for this work, Meta denies this RFA.

25  **REQUEST FOR ADMISSION NO. 81:**

26         Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Another*

27  *Brooklyn*.

28

**RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Another Brooklyn*, which is the subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Another Brooklyn* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Another Brooklyn* is included in the dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 82:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Behind You*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Behind You*, which is the subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Behind You* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Behind You* is included in the dataset commonly known as Books3. As Meta lacks knowledge

1    as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

2    **REQUEST FOR ADMISSION NO. 83:**

3        Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Beneath a*

4    *Meth Moon*.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

6        Meta incorporates by reference its Objections to Instructions and Definitions, which are

7    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

8    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

9    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

10   commonly known as Books3.

11       Meta lacks information sufficient to admit or deny that *Beneath a Meth Moon*, which is the

12   subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in

13   the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit

14   copy for *Beneath a Meth Moon* submitted to the U.S. Copyright Office, which delimits what is

15   covered by the corresponding copyright registration.  Meta admits that text from a published and

16   commercially-available version of *Beneath a Meth Moon* is included in the dataset commonly

17   known as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit

18   copy for this work, Meta denies this RFA.

19   **REQUEST FOR ADMISSION NO. 84:**

20       Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Brown Girl*

21   *Dreaming*.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

23       Meta incorporates by reference its Objections to Instructions and Definitions, which are

24   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

25   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

26   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

27   commonly known as Books3.

28       Meta lacks information sufficient to admit or deny that *Brown Girl Dreaming*, which is the

subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Brown Girl Dreaming* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Brown Girl Dreaming* is included in the dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 85:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Feathers*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3.

Meta lacks information sufficient to admit or deny that *Feathers*, which is the subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Feathers* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Feathers* is included in the dataset commonly known as Books3. As Meta lacks knowledge as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 86:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Harbor Me*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

1   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

2   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

3   commonly known as Books3.

4          Meta lacks information sufficient to admit or deny that *Harbor Me*, which is the subject of

5   Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the Books3

6   dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy for *Harbor*

7   *Me* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding

8   copyright registration.  Meta admits that text from a published and commercially-available version

9   of *Harbor Me* is included in the dataset commonly known as Books3.  As Meta lacks knowledge

10  as to whether that text is also included in the deposit copy for this work, Meta denies this RFA.

11  **REQUEST FOR ADMISSION NO. 87:**

12         Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *If You Come*

13  *Softly*.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

15         Meta incorporates by reference its Objections to Instructions and Definitions, which are

16  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

17  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

18  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

19  commonly known as Books3.

20         Meta lacks information sufficient to admit or deny that *If You Come Softly*, which is the

21  subject of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in

22  the Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit

23  copy for *If You Come Softly* submitted to the U.S. Copyright Office, which delimits what is covered

24  by the corresponding copyright registration.  Meta admits that text from a published and

25  commercially-available version of *If You Come Softly* is included in the dataset commonly known

26  as Books3.  As Meta lacks knowledge as to whether that text is also included in the deposit copy

27  for this work, Meta denies this RFA.

28

1    **REQUEST FOR ADMISSION NO. 88:**

2        Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Miracle's*

3    *Boys*.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

5        Meta incorporates by reference its Objections to Instructions and Definitions, which are

6    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

7    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

8    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

9    commonly known as Books3.

10        Meta lacks information sufficient to admit or deny that *Miracle's Boys*, which is the subject

11   of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the

12   Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

13   for *Miracle's Boys* submitted to the U.S. Copyright Office, which delimits what is covered by the

14   corresponding copyright registration.  Meta admits that text from a published and commercially-

15   available version of *Miracle's Boys* is included in the dataset commonly known as Books3.  As

16   Meta lacks knowledge as to whether that text is also included in the deposit copy for this work,

17   Meta denies this RFA.

18   **REQUEST FOR ADMISSION NO. 89:**

19        Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Red at the*

20   *Bone*.

21   **RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

22        Meta incorporates by reference its Objections to Instructions and Definitions, which are

23   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

24   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

25   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

26   commonly known as Books3.

27        Meta lacks information sufficient to admit or deny that *Red at the Bone*, which is the subject

28   of Plaintiff Woodson's claim and allegedly subject to copyright protection, is contained in the

1    Books3 dataset because Meta does not possess, and Plaintiffs failed to produce, the deposit copy

2    for *Red at the Bone* submitted to the U.S. Copyright Office, which delimits what is covered by the

3    corresponding copyright registration.  Meta admits that text from a published and commercially-

4    available version of *Red at the Bone* is included in the dataset commonly known as Books3.  As

5    Meta lacks knowledge as to whether that text is also included in the deposit copy for this work,

6    Meta denies this RFA.

7    Dated: November 8, 2024                                    COOLEY LLP

8

9                                                              By:  */s/Judd Lauter*
                                                                   Bobby Ghajar
10                                                                 Mark Weinstein
                                                                   Kathleen Hartnett
11                                                                 Judd Lauter
                                                                   Liz Stameshkin
12                                                                 Colette Ghazarian

13   *Full Counsel List*                                       LEX LUMINA PLLC
                                                               Mark A. Lemley
14   COOLEY LLP
     PHILLIP MORTON *(pro hac vice)*                           CLEARY GOTTLIEB STEEN &
15   (pmorton@cooley.com)                                      HAMILTON LLP
     COLE A. POPPELL (pro hac vice)                            Angela L. Dunning
16   (cpoppell@cooley.com)
     1299 Pennsylvania Avenue, NW, Suite 700                   Attorneys for Defendant
17   Washington, DC 20004-2400                                 META PLATFORMS, INC.
     Telephone:    (202) 842-7800
18
     COOLEY LLP
19   MATTHEW BRIGHAM (191428)
     (mbrigham@cooley.com)
20   JUAN PABLO GONZALEZ (334470)
     (jgonzalez@cooley.com)
21   3175 Hanover Street
     Palo Alto, CA  94304-1130
22   Telephone:    (650) 843-5000

23   LEX LUMINA PLLC
     MARK A. LEMLEY (155830)
24   (mlemley@lex-lumina.com)
     745 Fifth Avenue, Suite 500
25   New York, NY 10151
     Telephone:    (646) 898-2055

26

27

28

1

## PROOF OF SERVICE

2          I am a citizen of the United States and a resident of the State of California.  I am

3  employed in Santa Clara County, State of California, in the office of a member of the bar of this

4  Court, at whose direction the service was made.  I am over the age of eighteen years, and not a

5  party to the within action.  My business address is Cooley LLP, 3175 Hanover Street, Palo Alto,

6  California  94304-1130.  On the date set forth below I served the documents described below in

7  the manner described below:

8        • **DEFENDANT META PLATFORMS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS**

9

10      ☒    (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

11

12  on the following part(ies) in this action:

13  *Service list on next page.*

14         Executed on November 8, 2024, at Palo Alto, California.

15

16                       */s/ Jocelyn McIntosh*
                         Jocelyn McIntosh

17

18

19

20

21

22

23

24

25

26

27

28

SERVICE LIST

1

2  Joseph R. Saveri
   Cadio Zirpoli
3  Christopher K.L. Young
   Holden Benon
4  Louis Andrew Kessler
   Aaron Cera
5  Margaux Poueymirou
6  **JOSEPH SAVERI LAW FIRM, LLP**
   601 California Street, Suite 1000
7  San Francisco, CA 94108
8  Email: jsaveri@saverilawfirm.com
          czirpoli@saverilawfirm.com
9         cyoung@saverilawfirm.com
          hbenon@saverilawfirm.com
10        lkessler@saverilawfirm.com
          acera@saverilawfirm.com
11        mpoueymirou@saverilawfirm.com
12
   Matthew Butterick
13 **MATTHEW BUTTERICK,**
   **ATTORNEY AT LAW**
14 1920 Hillhurst Avenue, #406
   Los Angeles, CA 90027
15 Email: mb@butericklaw.com
16 *Attorneys for Individual and Representative*
   *Plaintiffs and the Proposed Class*
17
18 Bryan L. Clobes (admitted *pro hac vice*)
   Alexander J. Sweatman (admitted *pro hac vice*)
19 Mohammed Rathur
   **CAFFERTY CLOBES MERIWETHER**
20 **& SPRENGEL LLP**
   135 South LaSalle Street, Suite 3210
21 Chicago, IL 60603
22 Email: bclobes@caffertyclobes.com
          asweatman@caffertyclobes.com
23        mrathur@caffertyclobes.com
24 *Attorneys for Individual and Representative*
   *Plaintiffs and the Proposed Class*
25

26

27

28

Joshua I. Schiller, Esq.
Maxwell Vaughn Pritt, Esq.
**BOIES SCHILLE FLEXNER**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jischiller@bsfllp.com
       mpritt@bsfllp.com

David Boise, Esq. (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
1401 New York Ave. NW
Washington, DC 20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
       julwick@dicellolevitt.com
       ndjordjevic@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

META'S OBJ & RESPS TO
PLTF'S FIRST SET OF RFA'S
3:23-CV-03417-VC

| | | |
|---|---|---|
| 1 | Elizabeth J. Cabraser, Esq.<br>Daniel M. Hutchinson, Esq. | Nancy Evelyn Wolff<br>**COWAN DEBAETS ABRAHAMS &** |
| 2 | Reilly T. Stoler, Esq.<br>**LIEFF CABRASER HEIMANN &** | **SHEPPARD LLP**<br>9454 Wilshire Boulevard, Suite 901 |
| 3 | **BERNSTEIN, LLP**<br>275 Battery Street, 29th Floor | Beverly Hills, CA 90212<br>Telephone: (310) 340-6334 |
| 4 | San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000 | Fax: (310) 492-4394<br>Email: NWolff@cdas.com |
| 5 | Email: ecabraser@lchb.com<br>dhutchinson@lchb.com | |
| 6 | rstoler@lchb.com | |
| 7 | Rachel Geman | Scott J. Sholder<br>CeCe M. Cole |
| 8 | **LIEFF CABRASER HEIMANN &**<br>**BERNSTEIN, LLP** | **COWAN DEBAETS ABRAHAMS &**<br>**SHEPPARD LLP** |
| 9 | 250 Hudson Street, 8th Floor<br>New York, New York 10013-1413 | 60 Broad Street, 30th Floor<br>New York, New York 10004 |
| 10 | Telephone: (212) 355-9500<br>Email: rgeman@lchb.com | Telephone: (212) 974-7474<br>Email: ssholder@cdas.com |
| 11 | | ccole@cdas.com |
| 12 | Attorneys for Plaintiff *Christopher Farnsworth*<br>*and Representative Plaintiffs and the Proposed* | Attorneys for Plaintiff *Christopher Farnsworth*<br>*and Representative Plaintiffs and the Proposed* |
| 13 | *Class* | *Class* |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

COOLEY LLP
ATTORNEYS AT LAW

3

PROOF OF SERVICE
3:23-CV-03417-VC

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
TERESA MICHAUD (296329)
(tmichaud@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*[Full Listing on Signature Page]*

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br><br>Individual and Representative<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation;<br><br>Defendant. | Case No. 3:23-cv-03417-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSIONS** |

**PROPOUNDING PARTY:**     **PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH**

**RESPONDING PARTY:**     **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**     **SECOND**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure ("Rules"), Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's Second Set of Requests for Admissions ("Requests").

## I.    OBJECTIONS AND RESPONSES TO ALL REQUESTS

**1.**     Meta's responses to the Requests are made to the best of Meta's present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and Meta reserves the right to amend, revise, correct, supplement, or clarify the responses and objections propounded herein.

**2.**     To the extent a Request seeks information that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Rule 26(c) and/or Federal Rule of Evidence 501, Meta will only provide such information subject to, and in accordance with, the parties' stipulated protective order (ECF No. 90, the "Protective Order").

**3.**     The provision of a response to any of these Requests does not constitute a waiver of any objection regarding the use of said response in these proceedings.  Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to the Requests.

**4.**     Meta objects to Plaintiffs' Requests insofar as the numbering of the Requests overlaps with the numbering of Plaintiffs' First Set of Requests for Admissions.  To avoid

confusion, Meta has numbered its responses consecutively based on Plaintiffs' First Set of Requests for Admissions, beginning with "Request for Admission No. 90."

**5.** Meta reserves the right to object on any ground at any time to such other or supplemental requests for admission that Plaintiffs may propound involving or relating to the subject matter of these Requests.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Request, Meta makes these objections to the following Instructions and Definitions.

**1.** Meta objects to the definition of "You," "Your," and "Meta Platforms" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents outside of its possession, custody, or control.  Meta construes "Meta" or "You" to mean Meta Platforms, Inc.

**2.** Meta objects to Instruction 1 as vague and ambiguous as to "Plaintiffs' Second Set of Requests for Production of Documents," as Plaintiffs also served "Plaintiffs' Corrected Second Set of Requests for Production" on the same day, March 20, 2024.  Meta further objects to Instruction 1 to the extent that the instructions set forth in Plaintiffs' Second Set of Requests for Production of Documents are inapplicable to responding to requests for admission.  To the extent those instructions are applicable to responding to the Requests, Meta incorporates its Objections to Instructions and Definitions set forth in its Objections and Responses to Plaintiffs' Corrected Second Set of Requests for Production of Documents.

**3.** Meta objects to Instruction 2 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law.  Meta also objects to this instruction on the ground that it improperly demands narrative responses, which are the proper subject not of requests for admissions but of interrogatories, and thereby seeks to circumvent the interrogatory limit.

**4.** Meta objects to Instruction No. 5 as vague, ambiguous, and unintelligible.  Meta will answer the Requests as provided under Rule 36(a)(4).

**5.** Meta objects to Instruction Nos. 8 and 9 as overbroad and unduly burdensome to the extent that they purport to require more of Meta than any obligation imposed by law.

**6.** Meta objects to Instruction 10 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law. Meta also objects to this instruction on the ground that it improperly demands narrative responses, which are the proper subject not of requests for admissions but of interrogatories, and thereby seeks to circumvent the interrogatory limit.

### III. OBJECTIONS AND RESPONSES TO INDIVIDUAL DOCUMENT REQUESTS

**REQUEST FOR ADMISSION NO. 90:**

Admit that *Blood Oath* by Christopher Farnsworth was included in a dataset used to train Your large language models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta further objects to the term "large language models" as vague, ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3, and Llama 4.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta lacks information sufficient to admit or deny that *Blood Oath*, which is the subject of Plaintiff Farnsworth's claim and allegedly subject to copyright protection, is contained in a dataset used to train Meta's large language models because Plaintiff Farnsworth has not produced, and Meta does not possess, the deposit copy for *Blood Oath* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *Blood Oath* is included in a dataset used to train Meta's large language models, as that term is construed above. As Meta lacks knowledge as to whether

1  that text (or all of that text) is also included in the deposit copy for this work, Meta denies this RFA.

2  **REQUEST FOR ADMISSION NO. 91:**

3  Admit that *The President's Vampire* by Christopher Farnsworth was included in a dataset

4  used to train Your large language models.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 91:**

6  Meta incorporates by reference its Objections to Instructions and Definitions, which are

7  applicable to this Request.  Meta further objects to the term "large language models" as vague,

8  ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

9  the needs of the case to the extent that it purports to include large language models that were not

10  publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

11  allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

12  within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

13  1, Llama 2, Code Llama, Llama 3, and Llama 4.

14  Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta

15  lacks information sufficient to admit or deny that *The President's Vampire*, which is the subject of

16  Plaintiff Farnsworth's claim and allegedly subject to copyright protection, is contained in a dataset

17  used to train Meta's large language models because Plaintiff Farnsworth has not produced, and

18  Meta does not possess, Meta does not possess the deposit copy for *The President's Vampire*

19  submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding

20  copyright registration.  Meta admits that text from a published and commercially-available version

21  of *The President's Vampire* is included in a dataset used to train Meta's large language models, as

22  that term is construed above.  As Meta lacks knowledge as to whether that text (or all of that text)

23  is also included in the deposit copy for this work, Meta denies this RFA.

24  **REQUEST FOR ADMISSION NO. 92:**

25  Admit that *Red, White, and Blood* by Christopher Farnsworth was included in a dataset used

26  to train Your large language models.

27  **RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

28  Meta incorporates by reference its Objections to Instructions and Definitions, which are

1   applicable to this Request.  Meta further objects to the term "large language models" as vague,

2   ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

3   the needs of the case to the extent that it purports to include large language models that were not

4   publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

5   allegedly copyrighted works.  Meta construes "large language models" to mean the models within

6   the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama

7   2, Code Llama, Llama 3, and Llama 4.  Meta further objects to this Request on the ground that the

8   referenced work, *Red, White, and Blood*, is not alleged to be at issue in this action.

9   **REQUEST FOR ADMISSION NO. 93:**

10          Admit that *The Burning Men: A Nathaniel Cade Story* by Christopher Farnsworth was

11   included in a dataset used to train Your large language models.

12   **RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

13          Meta incorporates by reference its Objections to Instructions and Definitions, which are

14   applicable to this Request.  Meta further objects to the term "large language models" as vague,

15   ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

16   the needs of the case to the extent that it purports to include large language models that were not

17   publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

18   allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

19   within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

20   1, Llama 2, Code Llama, Llama 3, and Llama 4.  Meta further objects to this Request on the ground

21   that the referenced work, *The Burning Men: A Nathaniel Cade Story* is not alleged to be at issue in

22   this action.

23   **REQUEST FOR ADMISSION NO. 94:**

24          Admit that *The Eternal World* by Christopher Farnsworth was included in a dataset used to

25   train Your large language models.

26   **RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

27          Meta incorporates by reference its Objections to Instructions and Definitions, which are

28   applicable to this Request.  Meta further objects to the term "large language models" as vague,

ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3, and Llama 4.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta lacks information sufficient to admit or deny that *The Eternal World*, which is the subject of Plaintiff Farnsworth's claim and allegedly subject to copyright protection, is contained in a dataset used to train Meta's large language models because Plaintiff Farnsworth has not produced, and Meta does not possess, the deposit copy for *The Eternal World* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration. Meta admits that text from a published and commercially-available version of *The Eternal World* is included in a dataset used to train Meta's large language models, as that term is construed above. As Meta lacks knowledge as to whether that text (or all of that text) is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 95:**

Admit that *Killfile* by Christopher Farnsworth was included in a dataset used to train Your large language models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta further objects to the term "large language models" as vague, ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

1, Llama 2, Code Llama, Llama 3, and Llama 4.  Meta further objects to this Request on the ground that the referenced work, *Killfile*, is not alleged to be at issue in this action.

**REQUEST FOR ADMISSION NO. 96:**

Admit that *Flashmob* by Christopher Farnsworth was included in a dataset used to train Your large language models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 96:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta further objects to the term "large language models" as vague, ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works.  Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3, and Llama 4.

Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta lacks information sufficient to admit or deny that *Flashmob*, which is the subject of Plaintiff Farnsworth's claim and allegedly subject to copyright protection, is contained in a dataset used to train Meta's large language models because Plaintiff Farnsworth has not produced, and Meta does not possess, the deposit copy for *Flashmob* submitted to the U.S. Copyright Office, which delimits what is covered by the corresponding copyright registration.  Meta admits that text from a published and commercially-available version of *Flashmob* is included in a dataset used to train Meta's large language models, as that term is construed above.  As Meta lacks knowledge as to whether that text (or all of that text) is also included in the deposit copy for this work, Meta denies this RFA.

**REQUEST FOR ADMISSION NO. 97:**

Admit that *Deep State: A Nathaniel Cade Story* by Christopher Farnsworth was included in a dataset used to train Your large language models.

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

2         Meta incorporates by reference its Objections to Instructions and Definitions, which are

3    applicable to this Request.  Meta further objects to the term "large language models" as vague,

4    ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

5    the needs of the case to the extent that it purports to include large language models that were not

6    publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

7    allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

8    within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

9    1, Llama 2, Code Llama, Llama 3, and Llama 4.  Meta further objects to this Request on the ground

10   that the referenced work, *Deep State: A Nathaniel Cade Story*, is not alleged to be at issue in this

11   action.

12   **REQUEST FOR ADMISSION NO. 98:**

13        Admit that you used books sourced from Books3 to train one or more of your large language

14   models.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

16        Meta incorporates by reference its Objections to Instructions and Definitions, which are

17   applicable to this Request.  Meta objects to this Request and vague, ambiguous, and unintelligible,

18   as written.  It is not clear to Meta what it means to use "books sourced from Books3."  Meta further

19   objects to the term "large language models" as vague, ambiguous, and undefined, as well as

20   overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that

21   it purports to include large language models that were not publicly released and/or were not trained

22   on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works.  Meta

23   construes the term "large language models" to mean the models within the Llama family of LLMs

24   that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3,

25   and Llama 4.

26        Subject to and without waiving the foregoing objections, Meta responds as follows:  As

27   written, Meta does not understand this Request and, on that basis, denies the Request.  Meta is

28   willing to meet and confer to understand how to interpret this Request.

1

2

3
Dated: November 18, 2024                        COOLEY LLP

4
                                                By:  /s/Judd Lauter
                                                     Bobby Ghajar
5                                                    Mark Weinstein
                                                     Kathleen Hartnett
6                                                    Teresa Michaud
                                                     Judd Lauter
7                                                    Liz Stameshkin
                                                     Colette Ghazarian
8    *Full Counsel List*
                                                LEX LUMINA PLLC
9    COOLEY LLP                                 Mark A. Lemley
     PHILLIP MORTON (pro hac vice)
10   (pmorton@cooley.com)                       CLEARY GOTTLIEB STEEN &
     COLE A. POPPELL (pro hac vice)             HAMILTON LLP
11   (cpoppell@cooley.com)                      Angela L. Dunning
     1299 Pennsylvania Avenue, NW, Suite 700
12   Washington, DC 20004-2400                  Attorneys for Defendant
     Telephone:    (202) 842-7800               META PLATFORMS, INC.
13
     COOLEY LLP
14   MATTHEW BRIGHAM (191428)
     (mbrigham@cooley.com)
15   JUAN PABLO GONZALEZ (334470)
     (jgonzalez@cooley.com)
16   3175 Hanover Street
     Palo Alto, CA  94304-1130
17   Telephone:    (650) 843-5000

18   LEX LUMINA PLLC
     MARK A. LEMLEY (155830)
19   (mlemley@lex-lumina.com)
     745 Fifth Avenue, Suite 500
20   New York, NY 10151
     Telephone:    (646) 898-2055

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

  I am a citizen of the United States and a resident of the State of California.  I am

3

employed in Los Angeles County, State of California, in the office of a member of the bar of this

4

Court, at whose direction the service was made.  I am over the age of eighteen years, and not a

5

party to the within action.  My business address is Cooley LLP, 355 South Grand Avenue, Suite

6

900, Los Angeles, CA  90071.  On the date set forth below I served the documents described

7

below in the manner described below:

8

  •  **DEFENDANT META PLATFORMS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'
SECOND SET OF REQUESTS FOR ADMISSIONS**

9

10

  ☒  (BY ELECTRONIC MAIL) I am personally and readily familiar with the business
practice of Cooley LLP for the preparation and processing of documents in

11

portable document format (PDF) for e-mailing, and I caused said documents to be
prepared in PDF and then served by electronic mail to the parties listed below.

12

on the following part(ies) in this action:

13

*Service list on next page.*

14

  Executed on November 18, 2024, at Los Angele, California.

15

16

      */s/Jerry Gonzalez*
      Jerry Gonzalez

17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST

1

2   Joseph R. Saveri
    Cadio Zirpoli
3   Christopher K.L. Young
    Holden Benon
4   Louis Andrew Kessler
    Aaron Cera
5   Margaux Poueymirou
6   **JOSEPH SAVERI LAW FIRM, LLP**
    601 California Street, Suite 1000
7   San Francisco, CA 94108
    Email: jsaveri@saverilawfirm.com
8          czirpoli@saverilawfirm.com
           cyoung@saverilawfirm.com
9          hbenon@saverilawfirm.com
           lkessler@saverilawfirm.com
10         acera@saverilawfirm.com
           mpoueymirou@saverilawfirm.com
11
12  Matthew Butterick
13  **MATTHEW BUTTERICK,**
    **ATTORNEY AT LAW**
14  1920 Hillhurst Avenue, #406
    Los Angeles, CA 90027
15  Email: mb@butcoericklaw.com
16  *Attorneys for Individual and Representative*
    *Plaintiffs and the Proposed Class*
17
18  Bryan L. Clobes (admitted *pro hac vice*)
    Alexander J. Sweatman (admitted *pro hac vice*)
19  Mohammed Rathur (admitted *pro hac vice*)
    **CAFFERTY CLOBES MERIWETHER**
20  **& SPRENGEL LLP**
    135 South LaSalle Street, Suite 3210
21  Chicago, IL 60603
    Email: bclobes@caffertyclobes.com
22         asweatman@caffertyclobes.com
           mrathur@caffertyclobes.com
23
24  *Attorneys for Individual and Representative*
    *Plaintiffs and the Proposed Class*
25
26
27
28

Joshua I. Schiller, Esq.
Maxwell Vaughn Pritt, Esq.
**BOIES SCHILLER FLEXNER**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jischiller@bsfllp.com
       mpritt@bsfllp.com

David Boies, Esq. (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
1401 New York Ave. NW
Washington, DC 20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
       julwick@dicellolevitt.com
       ndjordjevic@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

| | | |
|---|---|---|
| 1 | Elizabeth J. Cabraser, Esq. | Nancy Evelyn Wolff |
| 2 | Daniel M. Hutchinson, Esq.<br>Reilly T. Stoler, Esq. | **COWAN DEBAETS ABRAHAMS &<br>SHEPPARD LLP** |
| 3 | **LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP** | 9454 Wilshire Boulevard, Suite 901<br>Beverly Hills, CA 90212 |
| 4 | 275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339 | Telephone: (310) 340-6334<br>Fax: (310) 492-4394 |
| 5 | Telephone: (415) 956-1000<br>Email: ecabraser@lchb.com | Email: NWolff@cdas.com |
| 6 |       dhutchinson@lchb.com<br>      rstoler@lchb.com | |
| 7 | Rachel Geman | Scott J. Sholder<br>CeCe M. Cole |
| 8 | **LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP** | **COWAN DEBAETS ABRAHAMS &<br>SHEPPARD LLP** |
| 9 | 250 Hudson Street, 8th Floor<br>New York, New York 10013-1413 | 60 Broad Street, 30th Floor<br>New York, New York 10004 |
| 10 | Telephone: (212) 355-9500<br>Email: rgeman@lchb.com | Telephone: (212) 974-7474<br>Email: ssholder@cdas.com |
| 11 | |       ccole@cdas.com |
| 12 | Attorneys for Plaintiff *Christopher Farnsworth<br>and Representative Plaintiffs and the Proposed<br>Class* | Attorneys for Plaintiff *Christopher Farnsworth<br>and Representative Plaintiffs and the Proposed<br>Class* |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | 310642454 | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |