December 4, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC

Dear Magistrate Judge Hixson:

      Defendant Meta Platforms, Inc. ("Meta") and Plaintiffs in the above-captioned action ("Plaintiffs") jointly submit this letter brief regarding issues related to Plaintiffs' responses to certain interrogatories and requests for admission. The parties met and conferred on November 26, 2024, but were unable to reach a resolution.

I.   **META'S POSITION**

    A.   **Plaintiffs Must Respond to Meta's Contention Interrogatories.**

From the outset of this litigation, the parties and the Court have recognized that fair use is the main issue in dispute. Meta has accordingly sought discovery on matters related to fair use, including Interrogatory Nos. 20-23 and 25[1], which seek identification of facts that Plaintiffs will rely on to support their positions on aspects of the statutory fair use factors. 17 U.S.C. § 107; *see* Ex. 1. Specifically, Meta has asked Plaintiffs to identify facts supporting their contentions that Meta's use of their works is not transformative (Interrogatory No. 20), that the amount of Plaintiffs' works used by Meta was unreasonable relative to the nature of the use (Interrogatory No. 25), whether/that there exists a market to license Plaintiffs' works as LLM training data (Interrogatory No. 23), and whether/that such market has been affected by Meta's alleged infringement (Interrogatory No. 21). Meta has also asked Plaintiffs to identify facts supporting their contention that Meta lacked good faith in its alleged use of their works (Interrogatory No. 22), which Plaintiffs have argued undermines Meta's fair use defense.

Plaintiffs do not dispute the relevance or proportionality of these Interrogatories. Instead, they refuse to respond to them because they concern issues for which Meta bears the burden of proof.[2] This position is contrary to Rule 33 and the weight of district court authority.

Rule 33 states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)," while Rule 26(b) provides that parties "may obtain discovery regarding *any* nonprivileged matter that is *relevant* to any party's claim or defense" (emphasis added). Nowhere does Rule 26 limit parties to serving discovery only on issues for which the responding party bears the burden of proof. To the contrary, district courts, including this one, routinely require parties to respond to interrogatories concerning issues for which the other party bears the burden. *See e.g., Baird v. BlackRock Institutional Tr. Co., N.A.*, 2019 WL 1897489, at *3 (N.D. Cal. Apr. 29, 2019) (requiring a plaintiff to respond to interrogatory concerning a defendant's affirmative defense); *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, 2020 WL 10052403, at *11 (C.D. Cal. July 8, 2020) (granting motion to compel defendant's responses to contention interrogatories concerning factual support for noninfringement in a patent dispute); *Auto Meter Prod., Inc. v. Maxima Techs. & Sys., LLC*, No. 05 C 4587, 2006 WL 3253636, at *5 (N.D. Ill. Nov. 6, 2006) (granting motion to compel defendant's responses to contention interrogatories concerning factual support for noninfringement in a trademark dispute).

Plaintiffs must provide facts upon which they will rely to demonstrate that Meta's LLMs – which do not reproduce Plaintiffs' books or serve as a substitute for reading them – are not

---

[1] Certain of Plaintiffs misnumbered their responses, starting numbering over at 1 for what should have been Interrogatory No. 20. As to these Plaintiffs the at-issue Interrogatories are Nos. 1-3 and 5 in response to Meta's Third Set of Interrogatories.

[2] In response to each Interrogatory, Plaintiffs also asserted a number of facially baseless, boilerplate objections, including that the interrogatories are "compound, premature, request[] information over which Defendant has custody or control, [] duplicative," and contain "subparts." Ex. 1. A cursory review of the Interrogatories demonstrates that these objections are meritless. In any case, Plaintiffs have represented that they are refusing to respond on the basis of the burden of proof objection.

transformative; how the LLMs use too much (or none) of their books; any licensing market for their books or the effect on the market for the sales of their books; and that Meta lacked good faith. If they are unaware of any facts, they must state as much. Plaintiffs should be ordered to provide fulsome responses to each of the Interrogatories.

### B. Plaintiffs Must Admit or Deny Requests for Admission Concerning Their Publisher Licensing Rights.

Meta asked Plaintiffs to admit or deny that (1) Plaintiffs have not granted their publishers the right to license their works as LLM training data, and (2) Plaintiffs' publishers do not otherwise possess such a right. Ex. 2.[3] Plaintiffs Silverman, Kadrey, and Golden have admitted these Requests, Ex. 3, but the remaining ten (10) Plaintiffs have not. Ex. 4. Instead, their responses to the RFAs improperly refer Meta to certain publisher agreements, which Plaintiffs contend "speak for themselves." *Id*.[4] These are not appropriate responses to requests for admission.

"Requests that characterize or construe the meaning of material documents in the case may serve to establish what issues are actually in dispute." *Adobe Systems Inc. v. Christenson*, 2011 WL 540278 at *10 (D. Nev. Feb. 7, 2011) (overruling "speaks for itself" objection and requiring amended response to RFA). Accordingly, "the statement 'the document speaks for itself' in response to a request for admission characterizing the content or meaning of a contract document [is] evasive." *Id*. Courts either require parties to amend such responses, *id*., or deem them admitted. *See e.g.*, *Gurshin v. Bank of Am. Nat'l Ass'n*, 2017 WL 68650, at *3 (D. Nev. Jan. 5, 2017) (overruling "speaks for itself" objection and finding RFA admitted); *Goodman v. New Hampshire Ins. Co.*, 2010 WL 11565109, at *3 (W.D. Wash. June 18, 2010) (finding "letter speaks for itself" response as admission of the matter requested). As to each of the at-issue RFAs, this Court should do the same.

---

[3] Meta does not refer to these Requests for Admission ("RFA") by number here because the numbering differs among the RFAs served on several of the Plaintiffs. By way of example, however, the relevant RFAs are reflected in RFA Nos. 67 and 68 served on Plaintiff Diaz. *See* Ex. 4.

[4] For its part, Meta has reviewed the publishing agreements and is unaware of any provision therein in which the individual Plaintiffs provided their publishers the right to license their works for AI training. Meta seeks to foreclose any factual assertion that those agreements – or other improperly undisclosed agreements – provide such rights to Plaintiffs' publishers. Only Plaintiffs can provide that answer, and these two RFAs appropriately attempt to settle and streamline factual issues that are not reasonably disputed by Plaintiffs.

II. **PLAINTIFFS' POSITION**

    A.    **The At-Issue Interrogatories[5] Are Grossly Overbroad and Improperly Shift the Burden of Proof Regarding Fair Use**

**Introduction:** Meta improperly conflates the importance of a substantive issue in a case with the question of whether the procedural rules of discovery can be violated. Plaintiffs do not object to the Interrogatories because or only because they *relate* to fair use, but because Meta compounded the inherent risk of confusion[6] in discovery about this topic by overbroad questions. Meta's refusal of Plaintiffs' compromise – which sought to narrow Meta's overbroad omnibus questions asking for all facts that may rebut any defense Meta may offer into fact-based, straightforward questions that comply with the rules –has resulted in this instant dispute. **Plaintiffs' Ex. A** (Dec. 2 email from Plaintiffs' counsel to Meta's counsel).

**The Interrogatories are improper:** The At-Issue Interrogatories address the elements of fair use, asking Plaintiffs to "state all facts" or "[d]escribe in detail the factual basis" supporting any contentions that each such element is not met. Fair use is an affirmative defense, and Meta must seek to show its use of Plaintiffs' works was fair. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985). Meta cannot use offensive discovery to shift the burden to Plaintiffs, which it is seeking to do through overbroad and improper questions.

The Court should find the At Issue Interrogatories categorically improper. For example, in *In re Facebook, Inc.*, 2016 WL 5080152, at *4 (S.D.N.Y. July 7, 2016), defendants similarly argued that plaintiffs should be compelled to respond to contention interrogatories regarding defendants' affirmative defense, "despite [defendants] bearing the burden of proof." The court disagreed and denied defendants' motion to compel, explaining "responses to these contention interrogatories therefore amount to a collection of information akin to [d]efendants' affirmative defense. It would be inappropriate to require Plaintiffs to devise a theory for an element which is not required for their prima facie case." *Id*. The same is true here.

Meta's cases are inapposite or distinguishable. In contrast to *In re Facebook*, where the court directly analyzed the question of burden shifting, neither the parties nor the courts addressed these issues in *Lexington Luminance LLC*, 2020 WL 10052403, at *11 (defendant refused to respond to contention interrogatories regarding its defenses "on the ground that they each prematurely seek expert discovery") or *Auto Meter Prod., Inc.*, 2006 WL 3253636, at *5 (contention interrogatory seeking "the facts upon which [defendant]'s non-infringement defense is based, and not any legal theory or analysis" allowed because defendant "cannot prevail on its non-infringement defense in the absence of specific facts."). Finally, in *Baird*, 2019 WL 1897489, at *3, the court rejected plaintiff's burden shifting argument without analysis (and notably, as addressed more below in the context of far more tailored and factual questions than those here). Thus, Plaintiffs responses to the At-Issue Interrogatories are appropriate.

---

[5] Meta asserts there are five interrogatories at issue (20, 21, 22, 23, 25), it states it is only seeking four via its footnote 1 (seeking answers to 1,2,3,5 (four total).

[6] *See, e.g., Phillies v. Harrison/Erickson, Inc.*, No. 19-CV-07239 (VM)(SN), 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) ("courts have recognized the risk that a jury may incorrectly construe a response by one party as a concession on an issue that the other party must prove.")

**Alternatively, the At-Issue Interrogatories should be narrowed to render them more compliant:** If the Court finds that supplemental responses are warranted, Plaintiffs submit that at minimum they should be limited to the "material facts" and "material factual basis" for the contentions therein that Plaintiffs intend to rely upon. Courts consistently treat interrogatories as "overly broad and unduly burdensome when they require a party to state 'every fact' or 'all facts' supporting identified allegations or defenses." *Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012); *see also, e.g.*, *Largan Precision Co. v. Samsung Elecs. Co.*, 2015 WL 11251730, at *3 (S.D. Cal. May 5, 2015) (narrowing interrogatories seeking "all facts" and "all facts and circumstances" to the "material facts and circumstances" underlying plaintiff's claims); *Linde v. Arab Bank, PLC*, 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012) (contention interrogatories are not "a vehicle to obtain every fact and piece of evidence a party may wish to offer concerning a given issue at trial."); *S.E.C. v. Berry*, 2011 WL 2441706, at *4 (N.D. Cal. June 15, 2011) (A party "is not obligated to put forth its entire case in response to a single interrogatory."). In such cases, courts adopt "a middle ground, requiring parties to explain the factual bases for their contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all of the evidence that will be offered." *Linde*, 2012 WL 957970, at *1. In addition to their overbreadth in seeking an exhaustive list of facts, the Interrogatories are also overbroad in scope and reach, and should further rewritten to be answerable especially given the context that fair use is Meta's affirmative defense. Plaintiffs' rejected potential compromises are set forth in their Dec. 2 email. If the Court decides a response to any one or more of Interrogatories 20-23 and 25 is required, the interrogatories should be modified in accordance with Plaintiffs' compromise proposal.

Interrogatory **20** addresses whether Meta's use of Plaintiffs' works to train its LLMs is "transformative." As the Court is aware, transformative-ness is a judge-made doctrine that has been used when courts consider factor one. For example, as here, Meta's extensive copying of books is not transformative. As relevant to this dispute, this is a mixed question, with the nature of the use being more factual. *McGucken v. Pub Ocean Ltd.*, 42 F. 4th 1149, 1158 (9th Cir. 2022) ("Fair use is a mixed question of law and fact ... [e]ach of the statutory factors encompasses legal and factual questions. For instance, 'how much of the copyrighted work was copied' is a factual question, ... but which way in the fair use analysis that points in a particular case, and by how much, is a legal question." (citations omitted)).

Interrogatory **21** addresses whether Meta's use of Plaintiffs' works to train its LLMs "has or will affect the market or potential market" for the works or the value of the works in the market, how it did or will do so, and identification of each current or potential market affected. Interrogatory 23 ask for all facts supporting the existence of such markets, detailed identification of when and how such market arose and all transactions and documents supporting the existence of such markets. The scope of these interrogatories is so broad that any attempt at a comprehensive response would necessarily "produce ... a mass of data that contains, incidental, secondary, and perhaps irrelevant and trivial details." *Linde*, 2012 WL 957970, at *1.

Interrogatory **22** addresses whether Meta's fair use defense is precluded or diminished by Meta's lack of good faith, which does not relate to conduct but law as written.

Finally, Interrogatory **25** addresses whether the amount and substantiality of the portion of the Plaintiffs' works copied by Meta was reasonable in relation to the purpose of training the Meta LLMs. What and how much was copied are factual questions, questions about fair use factors two and three in this form are not.

### B. RFAs 67 and 68 Improperly Seek Legal Conclusions[7]

RFAs 67 and 68 do not ask Plaintiffs to admit or deny facts. They ask Plaintiffs to admit or deny legal conclusions, which is improper. *See, e.g.*, *Corona v. City of Fontana*, 2023 WL 9596831, at *6 (C.D. Cal. Apr. 27, 2023); *Fairbairn v. Fid. Invs. Charitable Gift Fund*, 2020 WL 999752, at *2 (N.D. Cal. Mar. 2, 2020); *Gurshin v. Bank of Am. Nat'l Ass'n*, 2017 WL 68650, at *(D. Nev. Jan. 5, 2017) (cited by Meta and holding legal conclusions not appropriate for RFA's).

Notably, as the court in *Baird* (which Meta relies on) confirmed, there is an important difference between an RFA that asks about what an agreement *states* versus one that asks for legal conclusions *arising out of* that same agreement. *Id.*, 2019 WL 1897489, at *2 (finding RFAs improper because they "do not ask whether the agreements … *state* that CTIs pay no investment fees, but whether the agreements *entitle* the CTIs to pay no investment fees. Thus, rather than asking what is written in the agreement, the RFAs would require Plaintiffs to interpret the agreements and determine what they allow." (emphasis in original)). Plaintiffs therefore admitted to the existence of licensing agreements with their publishers and pointed to the text of those documents regarding what they state. Plaintiffs' Ex. **B.** Plaintiffs also offered to amend their responses to RFAs 67 and 68 to admit that Plaintiffs' licensing agreements for their asserted works do not state that the publishers have the right to license the asserted works as training data for LLMs. Meta did not explain why this was not sufficient. Plaintiffs remain willing to provide these admissions

## III. META'S REPLY

**Interrogatories**: Plaintiffs' reliance on *In re Facebook, Inc.*, 2016 WL 5080152, at *4 (S.D.N.Y. July 7, 2016), is unavailing. Meta is not asking Plaintiffs to "devise a theory." *Id.* Rather, consistent with Plaintiffs' own cited authority, Meta seeks the "***material facts***" upon which they will rely for what they admit is "the only real legal question" for summary judgment—fair use. ECF 193. If Plaintiffs intend to argue that Meta's alleged use of their books to train Llama was not transformative (Fair Use Factor One), i.e., because Llama allegedly can output copies of their books or otherwise—they must state the facts on which they will rely (**Rog. 20**). If they claim Meta used more of their works than necessary (Factor Three), they should identify their supporting facts (**Rog. 25**). If they claim Meta's conduct harmed the market(s) for their books (Factor Four), they should identify the facts and documents establishing what those markets are and how specifically they've been harmed (**Rogs. 21, 23**). And if they contend that Meta's fair use defense is foreclosed by bad faith, they should identify the material facts they claim purportedly show bad faith conduct by Meta (**Rog. 22**).[8] Plaintiffs are still playing "hide-the-ball"; it is far too late for that.

**RFAs**: Plaintiffs never objected to these RFAs as calling for a legal conclusion, so that objection is waived. Further, "[w]here, [as here,] the question of the meaning of [a] document is at issue in the case, a request … seeking admission or denial of a document's meaning or intent … relates to a statement [of] fact, and [is] authorized by Rule 36." *James v. UMG Recordings, Inc.*, 2013 WL 5402045, at *2 (N.D. Cal. Sep. 26, 2013). Plaintiffs should be required to admit or deny that they have not granted their publishers the right to license their works as LLM training data, either in their publishing agreements or otherwise (i.e., in other documents they failed to produce).

---

[7] For ease of reference, Plaintiffs use the same RFA numbers provided by Meta in footnote 3. The actual numbers assigned to these RFAs varies by Plaintiff.
[8] Fn 1 inadvertently referred to corresponding Interrogatories Nos. 1-3, 5; in fact, they are 1-4, 6.

December 4, 2024

By: /S/Judd Lauter

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
      cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
Email: mweinstein@cooley.com
      lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com
      jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4121
Facsimile: (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

By: /S/Rachel Geman

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592
Email: rgeman@lchb.com

Elizabeth J. Cabraser, Esq.
Daniel M. Hutchinson, Esq.
Reilly T. Stoler, Esq.
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Email: ecabraser@lchb.com
dhutchinson@lchb.com
rstoler@lchb.com

Kenneth S. Byrd. (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue South, Suite 1640
Nashville, TN 37201-2375
Telephone: 615.313.9000
Email: kbyrd@lchb.com
bsugar@lchb.com

Scott J. Sholder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
**COWAN DEBAETS ABRAHAMS & SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: 212.974.7474
Email: ssholder@cdas.com
ccole@cdas.com
*Attorneys for Plaintiff Christopher Farnsworth and Representative Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 4, 2024   COOLEY LLP

*/s/Judd Lauter*
Judd Lauter

Attorneys for Defendant
*META PLATFORMS, INC.*