# EXHIBIT 1

# EXHIBIT C



Teresa Michaud
T: +1 213 561 3241
tmichaud@cooley.com

**Designated CONFIDENTIAL**
Pursuant to the Parties' Protective Order

November 1, 2024

Maxwell Pritt, Esq.
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor,
San Francisco, CA 94104, mpritt@bsfllp.com

Re:    *Kadrey, et al. v. Meta Platforms, Inc.* Case No. 3:23-cv-03417 (N.D. Cal.)

Counsel,

We write in further response to your October 23, 2024 letter and our October 25, 2024 email regarding Defendant Meta Platforms, Inc.'s ("Meta") amended privilege logs.

As an initial point, your letter was untimely, and you have waived any arguments regarding alleged deficiencies in Meta's privilege logs. After significant back and forth over Meta's original privilege log, Meta served amended privilege logs on October 7, 2024. Plaintiffs had the next nine days to raise any issues on or before the October 16, 2024 meet and confer deadline, and another seven days until the October 23, 2024 deadline to request and submit joint briefing on any remaining issues pertaining to Meta's privilege log. Dkt. 238, 2. Plaintiffs did neither, instead opting to wait until both deadlines had expired to raise disputes about the amended privilege log for the first time in its October 23, 2024 letter. To be clear, these deadlines included any issues Plaintiffs might have with Meta's privilege log. Plaintiffs' letter neither tolled nor extended the Court's deadlines, and Plaintiffs never asked Meta or the Court for an extension. As a result, Plaintiffs' issues were raised too late and are waived.

Nevertheless, and without waiving Meta's position that the issues raised in your letter are untimely, Meta responds to each of the points you raised below. We also note that, while Meta is taking these issues seriously, we believe many of the alleged issues were already addressed during meet and confers with prior counsel and will be addressed by our ongoing reproduction of documents pursuant to the Court's prior discovery order. Dkt. 196.

Maxwell Pritt, Esq.  
November 1, 2024  
Page 2

**CONFIDENTIAL**

### A. Meta's Email and Non-Email Privilege Logs Do Not Have Procedural Deficiencies

To begin, Meta has satisfied the requirements set out by the federal rules and applicable case law regarding asserting privilege. More specifically, Rule 26(b)(5) only requires a party to "expressly make" a claim of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Pro. 26(b)(5)(A). Further, the cases you rely on make clear that privilege logs require identification of "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see also Robinson v. Chefs' Warehouse*, No. 3:15-cv-05421-RS (KAW), 2017 WL 2895915, at *3 (N.D. Cal. July 7, 2017) ("A party does not have to provide a description of the subject matter of each document to meet its burden."). The initial information provided in Meta's privilege log meets or exceeds these requirements.

With respect to any purported procedural deficiencies in the privilege log, Plaintiffs' concerns are misplaced, and we address them below in the order set out in your letter.

*First*, as we already explained during meet and confers with prior counsel and in our October 25, 2024 email, to the extent it was not obvious, Meta has used the label "Legal Source" to identify the attorney or attorneys on each document who either provided or were being contacted to provide legal advice. Where it was clear from the face of the document that a non-attorney was explaining legal advice received from unnamed in-house counsel or where the document references or notes a request for legal advice from unnamed in-house counsel, we used the phrase "MPI In-House Legal Counsel" in the "Legal Source" column to describe Meta's in-house legal team.

As we also explained to prior counsel when discussing Meta's supplemental privilege logs, providing more detail would require interviewing every single author and contributor for each of these documents to determine which attorney or attorneys within Meta's in-house legal team of approximately 1500 were contacted to provide, or did provide the specific advice being discussed. *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *5 (N.D. Ill. July 14, 2020) (noting the absence of individual names for every in-house attorney on Walgreen's privilege log and holding "the fact that these attorneys are not identified specifically does not defeat the privilege claim or trigger *in camera* review. Depending on the complexity of the issues and the size of the corporation, identifying each advising attorney as to each email may be difficult and even cost-prohibitive, particularly when the emails in question number in the thousands. The lack of identification of these attorneys does not engender a disbelief in the veracity of the log entries sufficient to require *in camera* review. In any event, the Court is not persuaded that further

Maxwell Pritt, Esq.
November 1, 2024
Page 3

**CONFIDENTIAL**

identification of the lawyers who gave the advice is proportional to the needs of the case at this time.").

Given the volume of documents and number of in-house counsel at Meta, a manual process would be incredibly burdensome, disproportionate to the needs of the case, and is not required by the applicable rules and case law. Instead, solely in the interest of avoiding a privilege dispute in this matter, as also referenced below, we will provide a list of names of Meta's in-house attorneys with corresponding email addresses and job titles.

***Second***, we previously explained that Meta's reproduction efforts address the concerns regarding the ability to identify users who made comments on non-email documents, and believe our reproduction efforts moot these issues.

***Third***, while we note it is possible for Plaintiffs to match the names listed in the "Legal Source" column to the email addresses within the documents themselves, in the interest of resolving this alleged issue, Meta will provide a list to further assist Plaintiffs with cross-referencing names and email addresses to the extent applicable to any particular document. This will include the names and email addresses of any outside counsel. While Meta is not required to furnish this information, in an effort to resolve this dispute Meta will also endeavor to provide the current job title of individuals within the cross-referenced document. *Khasin v. Hershey Co.*, No. 5:12-CV-01862-EJD-PSG, 2014 WL 690278, at *4 (N.D. Cal. Feb. 21, 2014) ("[T]he Ninth Circuit's test does not require a privilege log to provide the organizational positions of senders and recipients; it merely requires the log to identify the attorney and the client on each document.").

***Fourth***, as already discussed during the October 7, 2024 meet and confer, Meta has been diligent in reviewing and rectifying any alleged inconsistencies in redactions. The updated, corrected documents will be reproduced, but the existence of minor inconsistencies in redactions across documents does not change the privileged nature of the information that is redacted.

Plaintiffs make the wholly unfounded assertion that headings, full slides, or filenames are "almost never" privileged. Ltr., 3. To be clear, Meta has conducted a thorough privilege review of the documents listed in its privilege logs. During review, where necessary to protect privileged information, Meta applied redactions as opposed to wholly withholding documents. The applied redactions protect information that is privileged or discloses privileged information. Nevertheless, in an effort to resolve this dispute, Meta will re-review the redacted headings, slides, and filenames to determine if there are any instances where the redactions can be safely removed without compromising privileged information.

***Fifth***, as explained above and, again as we explained to prior counsel when discussing the supplemental privilege logs, providing more detail for the entries where "MPI In-House Counsel" is used in the "Legal Source" column would require interviewing every single author and contributor for each of these documents to determine who spoke with which attorney in Meta's large in-house

Maxwell Pritt, Esq.  
November 1, 2024  
Page 4

**CONFIDENTIAL**

legal team. This process would be incredibly burdensome, is disproportionate to the needs of the case, and is not required by applicable rules and case law. With respect to the entries listing "External Legal Counsel," we are investigating and will supplement the privilege log to the extent we are able to provide more detail.

***Sixth***, your proposed privilege description formulation is not required by the rules or case law. Further, any such requirement would wholly subsume claims of attorney-client privilege because it would eliminate a privilege claim whenever a party could in some way characterize the description as relating to a business activity. This is improper, and your criticisms of the descriptions admit as much. For example, you argue "descriptions like 'Document seeking and containing legal advice concerning copyright, data privacy, and safety issues' are insufficient—copyright, privacy, and safety issues are often just business concerns." Ltr., 7. This argument completely ignores the first part of the description, which recites "seeking and containing legal advice."[1] That a portion of a description in a privilege log *could* be characterized as business advice if you ignore both the remainder of the description and the context of the document itself does not mean that a privilege claim is improper.

In any event, Meta carefully considered the distinction between business and legal advice when performing its privilege review. This is evidenced by Meta's careful redactions to documents that also include business or policy advice, which were then produced disclosing the business advice in those documents. *See*, *e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO (VKD), 2024 WL 3381029, at *6 (N.D. Cal. July 10, 2024) ("Plaintiffs challenge Meta's assertion of privilege as insufficiently supported, arguing that '[t]hese communications appear to be primarily for the business purpose of discussing the [redacted] Dkt. No. 476-3 at 3.' This argument, which appears to be based solely on the subject line of the threads, entirely ignores both Meta's privilege log and Meta's portion of the joint submission, as well as the redacted communications themselves. While plaintiffs are correct that merely labeling an email 'a/c priv' does not make the communication privileged, the Court is not persuaded that this is what Meta has done. To the contrary, the Court concludes that Meta's privilege log, together with its discovery dispute submission, satisfies the Ninth Circuit's criteria for asserting attorney-client privilege in the first instance. Meta has identified: the attorney and Meta employees involved in the communications; the nature, subject matter, and purpose of the communications; all persons known to have sent or received the communications or been informed of the contents of the communications; and the dates of the communications. There is no indication that these communications have been disclosed to anyone outside the attorney-client relationship, or that they have not otherwise been maintained in confidence."); *see also Fox News Network, LLC v. U.S. Dep't of The Treasury*, 739 F. Supp. 2d 515, 560 (S.D.N.Y. 2010) ("Moreover, when the legal advice is 'incidental to the nonlegal advice that is

---

[1] We also observe that Plaintiffs' privilege logs do not adopt the types of descriptions of privilege for which you advocate in your letter.

Maxwell Pritt, Esq.
November 1, 2024
Page 5

**CONFIDENTIAL**

the predominant purpose of the communication,' redaction may be appropriate to preserve the privileged information.") (citing *In re Cnty. of Erie,* 473 F.3d 413, 421 n.8 (2d Cir. 2007)); *see also United States v. Weisman,* No. 94 Cr. 760 (CSH), 1995 WL 244522, at *4 (S.D.N.Y. Apr. 26, 1995) (recognizing the availability of redaction to protect legal advice in hybrid documents). We are aware of no case, and you have cited none, in which a court disallowed the redaction of privileged legal communications within a produced document merely because it also contains non-privileged and non-redacted business advice.

Your statement that "[t]hirty nine descriptions are further insufficient because they appear multiple steps removed from the provision of legal advice," is contrary to the federal rules and case law. Specifically, numerous courts have held that the attorney-client privilege extends to communications made "for the purpose of facilitating the rendition of professional legal services." *In re Grand Jury*, 23 F.4th 1088, 1092–93 (9th Cir. 2021) (citation omitted); *see also United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable [them] to give sound and informed advice.") (quoting *Upjohn v. United States*, 449 U.S. 383, 390-91 (1981)). The specific examples you provide both note that the document or image is being used to "facilitate" legal advice or "provid[e] information" for the facilitation of legal advice. Ltr., 8.

In addition, courts have recognized that legal advice often needs to be passed between non-attorneys and clearly note that doing so does not eliminate the privilege. For example, the court in *Miller v. Arizona Public Service Co.*, No. CV-19-03397-PHX-DWL, 2020 WL 5880143, at *2 (D. Ariz. Oct. 2, 2020) noted that "to the extent Plaintiff's position is that the redactions are categorically improper because they involve communications between non-attorneys, this argument lacks merit." *Id*. "It is well established that 'the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation. A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege.'" *Id*. (citations omitted).

**Seventh**, it is clear from the privilege log that some documents were collected from legal files and other shared drives, the contents of which may have had many different legal "authors" and "recipients." While we disagree with your characterizations regarding the need to include such details on documents stored in these locations (*see Washtenaw Cnty. Emps.' Ret. Sys.*, 2020 WL 3977944, at *5), Meta is actively and diligently working to supplement the "To" and "Author/From" columns in the privilege log for these documents if such information is reasonably available.

With respect to the **Eighth** and **Ninth** items you identified in your letter, the rules and case law do not require the entire history of every document on the privilege log to be provided to support a

Maxwell Pritt, Esq.  
November 1, 2024  
Page 6

**CONFIDENTIAL**

claim of privilege. Meta has both satisfied the requirements in its existing privilege log, and also provided the metadata readily available to it. While we are continuing to investigate the absence of any metadata as described elsewhere in this letter, Plaintiffs have no evidence of any improper recipients, let alone waiver, and cannot attempt to challenge an entire category of documents with such a generic request.

***Tenth***, Meta has reproduced more than a thousand documents to resolve the problem of text being cut-off in large-format tables, charts and graphic documents and to resolve any issues with names associated with comments and comment text. We believe our reproduction efforts moot any concerns regarding these issues.

### B. The Withheld and Redacted Documents Are Privileged

a. Business Matters

As already discussed above, Meta carefully analyzed the distinction between business and legal advice and, accordingly, tailored its privilege assertions narrowly by redacting legal advice where necessary and producing business advice, instead of withholding such documents in full. Nonetheless, without waiver, Meta is reviewing the specific documents referenced in your letter and will supplement its privilege log to the extent necessary by the end of next week.

b. The Crime-Fraud Exception Does Not Apply

Your letter thinly argues that the "crime-fraud exception" applies to Meta's claim to privilege. Ltr., 14. This argument is baseless. For the crime-fraud exception to apply, the Ninth Circuit requires that Plaintiffs make two showings: (1) that Meta was engaged in or planning a criminal or fraudulent scheme *when* it sought the advice of counsel to further the scheme, and (2) that the attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of intended, or present, *continuing illegality*. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007).

As a starting point, Plaintiffs do not and cannot come close to satisfying the threshold showing since they make no claim for a violation of a criminal law. There is also no precedent (and Plaintiffs' letter cites none) holding that Plaintiffs' sole remaining cause of action could be characterized as criminal. Plaintiffs' letter identifies the allegedly criminal or fraudulent scheme as one **"to access, acquire, copy, and use copyrighted works without licensing them or otherwise obtaining authorization or permission**.*"* Ltr., 14. This description of conduct (i.e., access and copying without permission) simply parrots Plaintiffs' civil copyright infringement claim. A bare citation to the criminal copyright statute does not change this analysis. Nor is Plaintiffs' reliance on the DMCA availing given that the Court previously dismissed Plaintiffs' DMCA claims. Dkt. 56, ¶ 3. Nothing in Plaintiffs' letter undermines the applicability or reasoning of the Court's dismissal.

Maxwell Pritt, Esq.  
November 1, 2024  
Page 7

**CONFIDENTIAL**

Nor does the letter address any of Meta's substantive defenses (e.g., fair and transformative use) to Plaintiffs' copyright infringement claim, which would apply with equal force to any purported criminal copyright claim. *See, e.g., Authors Guild v. Google, Inc.*, 804 F.3d 202, 206-07 (2d Cir. 2015) (finding fair use where copyrighted works were scanned and reproduced).

What Plaintiffs describe as a purported "criminal" scheme here is exactly what the court found to constitute fair use in *Authors Guild*. *See id*. at 229. ("In sum, we conclude that: (1) Google's unauthorized digitizing of copyright-protected works, creation of a search functionality, and display of snippets from those works are non-infringing fair uses. The purpose of the copying is highly transformative, the public display of text is limited, and the revelations do not provide a significant market substitute for the protected aspects of the originals. Google's commercial nature and profit motivation do not justify denial of fair use. (2) Google's provision of digitized copies to the libraries that supplied the books, on the understanding that the libraries will use the copies in a manner consistent with the copyright law, also does not constitute infringement. Nor, on this record, is Google a contributory infringer."). As we have explained in prior correspondence, numerous cases support a finding of fair use where the reproduction of allegedly copyrighted material was unauthorized.

The few documents cited in Plaintiffs' letter do not change the above analysis, nor do your allegations come close to meeting the high bar required to invade the protections afforded Meta when seeking legal advice to understand and comply with copyright laws in novel circumstances. The crime-fraud exception does not apply.

*   *   *

In sum, Meta's supplemental privilege log more than satisfies the requirements to establish privilege over the documents withheld. However, and despite Plaintiffs' untimely challenges, in the interest of avoiding unnecessary discovery disputes Meta is actively working to address certain aspects of its prior production as set forth above and will supplement such production as soon as reasonably practicable.

For the avoidance of doubt, nothing herein constitutes a waiver, and Meta's rights are reserved in their entirety.

Maxwell Pritt, Esq.
November 1, 2024
Page 8

**CONFIDENTIAL**

Respectfully,

Teresa Michaud

TM::jg

Cc: via email: zmetakadrey@cooley.com

Cooley LLP   355 South Grand Avenue   Suite 900   Los Angeles, CA   90071
t: +1 213 561 3250  f: +1 213 561 3244  cooley.com