December 12, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey et al. v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC-TSH

Dear Judge Hixson:

      Plaintiffs and Defendant Meta Platforms, Inc. ("Meta") jointly submit this letter brief regarding privilege-related issues that arose during the December 5, 2024 deposition of Sy Choudhury. The parties met and conferred during the deposition but were unable to reach a resolution.

I.  **PLAINTIFFS' STATEMENT**

Plaintiffs deposed Sy Choudhury, Meta's Director of Business Development, AI Partnerships, on December 6, 2024. During that deposition, Meta improperly (1) attempted to claw back a portion of a Meta business document that is not privileged (and would be waived regardless), and (2) asserted privilege over the substance of an April 2023 business-related meeting that resulted in Meta's decision to "pause" its pursuit of licensing all text data for use with Llama.

**A. The Clawed Back Documents Are Not Privileged**

In the course of questioning Mr. Choudhury about Meta_Kadrey_00093499, Meta's counsel orally clawed back two pages of the document. See Ex. A at 228:17-22; 234:12-14. Plaintiffs stated on the record they "will certainly dispute the ability to claw back this document." See Ex. A at 229:1-4; 234:15-235:1. Plaintiffs then sequestered Meta_Kadrey_00093499 and *four* duplicate versions identified by Meta.[1] Ex. C. Under Rule 26(b)(5)(B), a party receiving a clawback notice "may promptly present the information to the court under seal for a determination of the [privilege] claim."[2] The subject documents are not privileged. They are a presentation for Mark Zuckerberg and other Meta executives about pros and cons of ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓" for Llama, Ex. A at 216:9-19, 220:14-20, including whether to open source the model to improve Meta's competitive standing, *id.* at 221:1-225:6. A column on "legal" risks, among others, Ex. A at 228:17-22, cannot change that purpose; reference to the word "legal" does not make it legal *advice*. Further, for communications that "may relate to both legal and business advice, the proponent of the privilege must make a 'clear showing' that the 'primary purpose' of the communication was securing legal advice." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 873 (N.D. Cal. 2019). The "primary purpose" of this document is to inform a *business* decision about releasing Llama.

Meta also waived any privilege because the documents were not produced "inadvertently." Courts apply a "totality of the circumstances" approach to inadvertent disclosure, including (1) reasonableness of precautions to prevent inadvertent disclosure, (2) time taken to rectify the error, (3) scope of discovery, (4) extent of the disclosure, and (5) overriding issue of fairness. *E.g.*, *Hanson v. Wells Fargo Home Mortg., Inc.*, 2013 WL 5674997, at *6 (W.D. Wash. Oct. 17, 2013). Rule 502(b) encompasses errors, not intentional disclosures a party regrets. *See Silverstein v. Fed. Bureau of Prisons*, 2009 WL 4949959, at *11 (D. Colo. Dec. 14, 2009) (disclosure not "inadvertent" where document examined by two attorneys before production). Meta produced *five* versions of this document, apparently without redacting the portion it now seeks to claw back. Ex. C. It defies belief that Meta "inadvertently" made the same "mistake" five times. Meta clearly believed the pages at issue were not privileged when it conducted its privilege reviews, and counsel's *post hoc* mid-deposition clawback can't undo that. Plaintiffs thus request that the Court order Meta to submit all versions for *in camera* review, identify the two pages it seeks to claw back, and order Meta to produce the documents unredacted.

---

[1] Plaintiffs cannot review these documents because they are now sequestered, and thus brief this issue based on excerpts of Mr. Choudhury's deposition that discuss some of the non-clawed-back parts of the document.

[2] The protective order contemplates that the parties would negotiate a clawback agreement. Dkt. No. 90 at 20. This never occurred. "Absent a stipulation adopting different procedures, the procedures for making a privilege claim and for disputing such a claim are set forth in Rule 26(b)(5) of the Federal Rules of Civil Procedure." *In re Google RTB Consumer Privacy Litig.*, 2022 WL 1316586, at *1 (N.D. Cal. May 3, 2022).

### B. Meta's Decision To Stop Licensing Efforts for Llama Text Data Is Not Privileged

A second privilege-related issue involves Meta's decision to cease third-party licensing efforts in April 2023. Extensive evidence shows that Meta was aggressively pursuing licensing arrangements with book publishers in late 2022 and Q1 2023. Specifically, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. When Plaintiffs' counsel questioned Mr. Choudhury about why, he testified that the decision was made during a meeting between himself, his "boss's boss," and a Meta in-house lawyer. Ex. A at 104:8-107:11. Meta's counsel then repeatedly invoked attorney-client privilege to shield the substance of that meeting. *See* Ex. A. The same happened during Mr. Choudhury's 30(b)(6) deposition. *See* Ex. B.

Meta's invocation of privilege over the decision to ████████████████████████████████ is improper. This is a quintessential business decision. *See Epic Games, Inc. v. Apple, Inc.*, 2024 WL 4947269, at *1 (N.D. Cal. Dec. 2, 2024) ("business people decide among the options legally available to them, and they consider things like profit, cost, competition, and so on; those communications are not privileged"). As best as Plaintiffs can tell, Meta's only basis for asserting privilege is that a lawyer was present at the meeting where this strategy was decided. But it is black-letter law that the mere presence of an attorney in a meeting is not sufficient to justify an assertion of privilege over everything discussed therein. *E.g.*, *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (N.D. Cal. 2003) ("In the business world, a meeting is not automatically privileged simply because legal counsel is present. . . . [I]n the business world, the mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that *everything* said at the meeting is privileged.") (cleaned up).

Even if Meta's decision ████████████████████████ involved *some* "legal advice," that alone cannot shut down all questioning. Meta's counsel (along with Mr. Choudhury himself) repeatedly asserted privilege over follow-up questions that were targeted to business discussions, including questions about the factors Meta considered in deciding ██████████████████ ████████████████████████ and questions about whether ██████████████████████████████ factored into the decision. Ex. A 108:8-22; 114:14-116:6; 126:4-20; 291:14-292:16; Ex. B 18:20-20:4; 26:17-29:1. Mr. Choudhury even asserted that the engineering and product teams' input constituted "legal advice." Ex. B at 29. Meta cannot categorically shield all discussion of a business decision simply because it had in-house counsel present. To the contrary, Meta's decision ████████████████████████████ clearly constituted "business people" like Mr. Choudhury deciding "among the options legally available to them"—a distinctly non-privileged discussion.[3] *See, e.g.*, *Epic Games*, 2024 WL 4947269 at *1.

### C. Prayer for Relief

Plaintiffs respectfully request that the Court (1) reject Meta's clawback over the five duplicate documents and order Meta to produce other similarly-redacted and/or withheld documents; and (2) order Mr. Choudhury to sit for an additional two hours of deposition—one hour as a 30(b)(1) witness and one as a 30(b)(6) witness—regarding Meta's April 2023 decision to cease Meta's licensing efforts for text data for use with Llama and on Meta_Kadrey_00093499.

---

[3] Plaintiffs, of course, dispute that Meta's alternative strategy—pirating works and using them for free—was legal.

## II. META'S STATEMENT

Plaintiffs' privilege disputes regarding Mr. Choudhury's deposition are meritless. Meta's counsel immediately clawed back a portion of a document that, by Plaintiffs' own description, is "[a] column on 'legal' risks." And Mr. Choudhury appropriately relied on attorney-client privilege in not disclosing communications with Meta's in-house counsel regarding legal advice bearing on Mr. Choudhury's decision to cease licensing outreach. Relief should be denied.

### A. The Clawed-Back Two Pages Are Privileged And There Has Been No Waiver.

During the 30(b)(1) deposition of Mr. Choudhury, Plaintiffs' counsel introduced as Exhibit 862 a document entitled "LLaMa – A New Industry Platform." Ex. 1 (12/5/24 Choudhury 30(b)(1) Tr.) at 215:15 (referring to Meta_Kadrey_00093499–00093513.00016). Eventually, Plaintiffs' counsel began questioning about a "trade-off-summaries" chart that listed three options regarding commercial licensing of Llama. *Id.* at 226:20-227:15. When counsel turned to page 00093506, which Plaintiffs' counsel described as "refer[ring] to several risks for making the model available," *id.* at 228:9-11, counsel for Meta immediately sought to claw back that page: "[T]his appears to be something I'll need to claw back, the legal risks listed in column 2 . . . ." *Id.* at 228:17-22. Plaintiffs' counsel stopped questioning on that portion of the document, *see id.* at 229:1-2, but was permitted to complete questioning regarding other, non-privileged sections of it, *id.* at 229–34. After that questioning ended, Meta's counsel again explained the scope and basis for the clawback: disclosure of a legal risk discussion. *Id.* at 234:12-14. Plaintiffs' counsel disputed the clawback but agreed to sequester. *Id.* at 234:15-235:1.

Plaintiffs concede that the clawed-back material is "[a] column on 'legal' risks," but argue that it is not privileged because "[t]he 'primary purpose' of this document is to inform a *business* decision about releasing Llama." Plaintiffs are wrong, as they have been on this point before. *See* Dkt. 309. The fact "[t]hat the document as a whole addresses predominantly business matters ***does not negate the privilege as to the portion containing requests for legal advice***." *U.S. v. Chevron Corp.*, 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996) (emphasis added); *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2023 WL 5519304, at *8 (N.D. Cal. Aug. 25, 2023) (permitting redactions of legal advice although "the remainder of the document involves business advice."); *In re Meta Pixel Healthcare Litig.*, 2024 WL 3381029, at *6 (N.D. Cal. July 10, 2024) (same).

Here, Meta is not claiming privilege over the entirety of the clawed-back document. *See* Ex. C ("Meta will reproduce such documents with appropriate redactions in due course."). And the two pages that Meta seeks to redact clearly have the "primary purpose" to give or receive legal advice. *See Stirratt v. Uber Techs., Inc.*, No. 2024 WL 1723710, at *5 (N.D. Cal. Apr. 19, 2024) (approving redactions in dual-purpose documents where "the primary purpose of the ***redacted information*** is to give or receive legal advice rather than business advice" (emphasis added)); *Illumina Inc. v. BGI Genomics Co.*, 2021 WL 2662074, at *4 (N.D. Cal. June 29, 2021) (finding proper redactions to an org chart where the "redaction . . . identifies a specific legal risk").

Nor has Meta waived privilege. Plaintiffs are wrong that because Meta produced five versions of the same document (from different sources) with the same error that the mistake was not inadvertent or that "Meta clearly believed the pages at issue were not privileged." To the contrary, among tens of thousands of pages of production, this redaction was missed by Meta's privilege review for the first version of the document produced, and the redactions for the first version of the document were then replicated across the four other versions when those were produced. Hartnett Decl. ¶ 4. At no time did Meta intentionally release this information. *Id.* at ¶

3

5. And at the first use of this document by Plaintiffs, Meta's counsel immediately clawed back the portion reflecting attorney advice. *See supra*. In such circumstances—inadvertent production in a fast-moving case with voluminous discovery and immediate clawback upon recognition of the issue—there is no waiver. *See, e.g., Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *4 (N.D. Cal. Mar. 11, 2011) ("In relatively large productions . . . perfection or anything close based on the clairvoyance of hindsight cannot be the standard . . . ."); *California Inst. of Tech. v. Broadcom Ltd.*, 2018 WL 1468371, at *4 (C.D. Cal. Mar. 19, 2018) ("None of the cases cited found a waiver when, as here, counsel asserted the privilege at the deposition less than a minute after discovering the basis for . . . privilege . . . .").

### B. Mr. Choudhury Appropriately Asserted Privilege Over Legal Advice.

Plaintiffs are also wrong that Mr. Choudhury inappropriately asserted privilege over business decisions, as opposed to legal advice. According to Plaintiffs, "Meta's decision to cease third-party licensing efforts clearly constituted 'business people' like Mr. Choudhury deciding 'among the options legally available to them'—a distinctly non-privileged discussion." But, as explained below, Mr. Choudhury (like a prior witness who testified on this topic, Mr. Boesenberg), appropriately disclosed the business decision that was made and non-privileged business concerns, but he did not disclose the privileged legal advice behind the decision. This was entirely proper.

As important context for Mr. Choudhury's invocation of privilege was a similar invocation by Mr. Choudhury's direct report, Mr. Boesenberg, at his November 18, 2024 deposition. At that deposition, Plaintiffs' counsel correctly—and unlike at Mr. Choudhury's deposition—acknowledged that it was proper for Mr. Boesenberg to exclude legal advice underlying the April 2023 decision to cease licensing outreach. Plaintiffs' counsel asked: " ██████████████ ███████████████████████████████████████████████████████████████ " Ex. 2 (11/18/24 Boesenberg Tr.) at 130:13-19. Mr. Boesenberg then responded that on April 7, 2023, he was "██████████████████████████████████" *Id*. at 131:1-5. Later in the deposition, Plaintiffs' counsel asked "Do you recall ███████████████████ and Mr. Boesenberg testified ████." *Id*. at 383:12-14. Plaintiffs' counsel asked "██████"; Meta's counsel cautioned the witness not to disclose any privileged communication; and Mr. Boesenberg stated: ██████████████████ ████████████████████████████████████████████████ *Id*. at 383:18–384:12. Plaintiffs' counsel then—appropriately—did not ask further questions about that privileged conversation. *See id*. at 384:13-14.

Flash forward to Mr. Choudhury's deposition. First, in his 30(b)(1) deposition, Mr. Choudhury confirmed, as Mr. Boesenberg had previously testified, that Mr. Choudhury made the decision, in a meeting with his boss and in-house counsel, ████████████████████████ ████████████████████████████████████████████████████████ " Ex. 1 at 104:8–105:19.[4] When asked "██████ ████████████████████ Mr. Choudhury explained (as had Mr. Boesenberg) that the answer was ████████████████████████ *Id*. at 106:12-13. Mr. Choudhury further confirmed that, with regard to that decisional meeting, there were ████████████████████ for the decision. *Id*. at 108:7-14. Then, when asked whether he had reservations about the decision, he provided an

---

[4] As reflected by his attached declaration, Mr. Choudhury realized after his deposition that he was mistaken about the name of the in-house attorney with whom he met to discuss the decision to pause publisher outreach. Choudhury Decl. ¶ 4. The in-house attorney was not "Natasha," but Mo Metanat (*id*.), who has also submitted a declaration verifying that the discussions over the decision to pause licensing involved her provision of legal advice. Metanat Decl. ¶ 4.

answer that appropriately excluded attorney-client communications. *See id.* at 110:17-20. Plaintiffs' counsel continued to press as to whether there were ███████████ discussed in the attorney-client privileged meeting, and, again, Mr. Choudhury indicated that the meeting was covered by ███████████████████████████████████████████████
████████████████████████████████████ *Id.* at 116:3-16. Mr. Choudhury also testified to any non-privileged pros and cons about the decision, *see id.* at 120:20-123:7, and he described conveying the decision to his team, *id.* at 123:22-125:6. Mr. Choudhury similarly testified in his ensuing Rule 30(b)(6) deposition, explaining that the decision to pause was made in privileged conversations with in-house counsel, but providing any non-privileged information he could. *See* Ex. 3 (12/5/24 Choudhury 30(b)(6) Tr.) at 17:17–24:21; 26:3–30:2.

Plaintiffs incorrectly claim that "Mr. Choudhury even asserted that the engineering and product teams' input constituted 'legal advice.'" *Supra*. What Mr. Choudhury testified, however, was that those teams' input was provided in a privileged meeting that preceded his meeting with in-house counsel, and that it was conveyed to Mr. Choudhury as part of the seeking and providing of legal advice. *Id.* at 26:3–28:17; *see also* Metanat Decl., ¶ 4. Communications between corporate employees and corporate counsel are privileged if they are "made at the direction of corporate superiors in order to secure legal advice." *U.S. v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010). The engineering and product teams' input was provided for the purpose of securing legal advice on behalf of Meta, and that information was later discussed among Mr. Choudhury, Mr. Shedroff, and in-house counsel, also in the context of providing legal advice. Ex. 3 at 26:3-29:1.

Mr. Choudhury's invocation of privilege was entirely appropriate. *See Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) (observing that the answer to "How did the idea of forming the [limited partnership] come about?" is privileged "if the idea came from the witness's attorney"). The meetings at issue involved the provision of legal advice underlying the decision to stop pursuing potential licensing explorations, which was informed by the input from Meta's product and engineering teams. Meta's assertion of privilege is only as to this advice. Plaintiffs' requested relief should be denied.[5]

### III. PLAINTIFFS' REPLY

This Court (like many others) has rejected Meta's argument that every document with in-house counsel's input is privileged. *See Epic Games*, 2024 WL 4947269 at *1 ("[A] business analysis of ways to comply with a legal requirement is not privileged."). That is exactly what the clawed back document is. Meta considered a multitude of factors in determining the specifics of Llama's commercial release—a business decision. That a business decision considered "legal" risks (among many others) does not make it privileged. Regarding clawback waiver, Meta admits that the document was produced five separate times with the pages at issue unredacted. That Meta apparently "copy-pasted" these same redactions onto all duplicate versions of the document does nothing to mitigate the waiver, and if anything, shows Meta did not take steps necessary to protect privilege. Similarly, the fact that an in-house lawyer was part of the decision to ███████████
███████████████████████████████████ does not render that decision privileged (an attorney declaration does not change the analysis). Meta can't shield business decisions at the heart of the case under the guise of privilege, especially when it has disclaimed the advice of counsel defense.

---

[5] Although Mr. Choudhury should not be required to provide any further testimony, in no event should he be required to testify for two hours as Plaintiffs request. *At most*, he should be required to testify for 30 minutes in both 30(b)(1) and 30(b)(6) capacities (i.e., 30 minutes total) to the two meetings at issue.

By: /s/ *Bobby Ghajar*

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
        cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
Email: mweinstein@cooley.com
        lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com
        jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304

By: /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com
jischiller@bsfllp.com

*Interim Lead Counsel for Plaintiffs*

Telephone: (650) 815-4121
Facsimile:  (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 12, 2024                                              BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt
Reed Forbush
Jay Schuffenhauer

*Attorneys for Plaintiffs*