**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butboricklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

(additional counsel included below)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al., *Individual and Representative Plaintiffs*, <br><br>v.<br><br> META PLATFORMS, INC., <br><br>*Defendant.* | Case No. 3:23-cv-03417-VC <br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED CONSOLIDATED COMPLAINT** |

With just two hours left before the fact discovery cut-off on Friday, December 13, 2024, Meta produced some of the most incriminating internal documents it has produced to date relevant to Meta's copyright infringement claim and fair use defense, as well as Plaintiffs' proposed new claims. These documents concern Meta's ███████████████████ including that: Meta's CEO, Mark Zuckerberg, ███████████████████ ███████████████████ ███████████████████ top Meta engineers discussed accessing and reviewing ███ data but hesitated to get started because ███████████████████ ███ Reply Ex. B at 204224; one of those engineers ███████████████████ ███████████████████ to train Llama, Reply Ex. C at 204220-21; and, by January 2024, Meta had already ███████████████████[1] And just yesterday, when asked about ███████████████████ Mr. Zuckerberg testified that ███████████████████ Reply Ex. E (Zuckerberg Dep. Tr.) at 102:10–14; 98:24–99:2.

Especially against this backdrop, Meta's arguments about delay and bad faith are without basis. In addition to the recently produced documents and testimony cited in Plaintiffs' Motion that support Plaintiffs' proposed amendments and additional claims, Meta just produced still more evidence central to those proposed amendments and claims. And it did so just days *after* Meta opposed Plaintiffs' Motion by claiming *Plaintiffs* unduly delayed and "lack[ed] . . . good faith." While Plaintiffs continue to seek relevant evidence withheld by Meta, including challenging privilege assertions for which Judge Hixson has ordered *in camera* review, *see, e.g.*, Dkt. 341, and Meta's failure to sufficiently prepare 30(b)(6) witnesses, *see* Dkt. 336, the evidence Meta produced on the last day of discovery only further establishes the validity of Plaintiffs' amendments.

---

[1] According to their "File Paths," Meta collected these and hundreds of other documents months ago, some as early as June 2024. Yet Meta withheld them until the last hours of fact discovery.

### A. Meta Wrongly Asserts Plaintiff's DMCA Claim Was Dismissed With Prejudice.

The Court dismissed Plaintiffs' original § 1202(b)(1) claim *without* prejudice and set a 21-day deadline to amend *without leave*. Dkt. 56 at 3–4. Meta cites no legal authority supporting the notion that failure to amend in the "without leave" period results in dismissal *with prejudice*, foreclosing amendment *with leave*.[2] No such rule exists. *See, e.g., Wang v. Zymergen Inc.,* 2024 WL 773603, at *1 (N.D. Cal. Feb. 26, 2024) (granting leave to add a previously dismissed claim based on "discovery obtained to date," where dismissal more than a year earlier set a 28-day deadline to amend). Plaintiffs took the Court's ruling seriously and waited for evidence fully supporting a DMCA claim. *See Leines v. Homeland Vinyl,* 2020 WL 6044037, at *3-*5 (E.D. Cal. Oct. 13, 2020); *Carlson v. Colorado Ctr. for Repr. Med.,* 2022 WL 180222, *1-*2 (N.D. Cal. Jan. 20, 2022); *Moore v. Wells Fargo Bank, N.A.,* 2023 WL 5538268, at *2 (N.D. Cal. Aug. 28, 2023).[3]

### B. Meta Produced Facts Underlying the Proposed Amendments One Week Before Filing.

Meta incorrectly contends that Plaintiffs lack "new" evidence justifying leave to amend. Opp. at 6. Plaintiffs promptly filed their Motion after Meta's 30(b)(6) testimony on November 20, 2024, during which Plaintiffs learned for the first time that ████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Plaintiffs who wait until they have "sufficient evidence of conduct upon which they could base claims of wrongful conduct" have "a satisfactory explanation for their delay." *DCD Programs v. Leighton,* 833 F.2d. 183, 187 (9th Cir. 1987); *Leines,* 2020 WL 6044037 at *3-*5. More generally, "delay, by itself, is insufficient to justify denial of leave to amend." *DCD,* 833 F.2d at 186; *Tiedemann v. von Blanckensee,* 72 F.4th 1001, 1011 (9th Cir. 2023) (district court abused discretion by denying leave). And when there is no scheduled pretrial conference or trial date, there is no prejudicial delay. *DCD Programs,* 833

---

[2] The single case that Meta cites, *Fallay v. San Franciso,* 2016 WL 888901, at *3 (N.D. Cal. Mar. 8, 2016), is inapposite. It was dismissed *in its entirety* after the pro-se plaintiff failed to amend his complaint before the Court's 30-day deadline to re-plead, and the Court held he could not later revive the action after the deadline lapsed. There was no ongoing case, nor discovery of new facts.
[3] The Court never set a deadline to amend the Complaint, and Meta provides no basis for its claim (Opp. at 15) that Plaintiffs were somehow supposed to propose a deadline to amend pleadings.

F.2d. at 188.

As to Plaintiffs' DMCA claim, only documents and testimony provided after November 20, 2024 confirmed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. The sole Google Doc Meta points to as purportedly sufficient to require the earlier filing of Plaintiffs' DMCA claim shows ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Mot. Ex. 7 (emphasis added). But that document does not address ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Meta also argues (Opp. at 7) that the mere *questioning* of a witness at a September deposition about this document somehow also supports untimeliness of the Motion. But that deponent, Todor Mihaylov, testified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Plaintiffs were unable to confirm that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

As to CDAFA, Meta fails to support its contention that ▬▬▬▬▬ came to light "months ago." Opp. at 3. Instead, Meta relies on the same Google Doc mentioned above to assert that Plaintiffs were aware of "Meta's downloading and use of ▬▬▬ and other 'shadow libraries.'" *Id.* at 7. But Meta's mere "use of shadow libraries" is not the basis for Plaintiffs' CDAFA claim; rather, the claim turns on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ "without permission." *See* § D.2, *infra*. Further, Meta wrongly conflates the date of its document production with the date when Plaintiffs had sufficient information to understand and plead Meta's use of ▬▬▬▬▬▬▬ such shadow libraries. The lone document relied on by Meta mentions only that ▬▬▬▬▬ was a *possible* way to acquire ▬▬▬▬, and in fact states Bashlykov "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ due, in part, to

██████████████████████████████████████ Mot. Ex. 7 at 89856 (emphasis added). Again, as with ██████████ it was only the 30(b)(6) deposition on November 20 that provided the pivotal evidence, one week before Plaintiffs filed their Motion. *See* Reply Ex. G at 312:18-314:12.[4]

Indeed, Plaintiffs filed this motion just seven days after Meta's corporate representative provided testimony about Meta's systematic practices ████████████████████████ ██████ Plaintiffs' and Class members' copyrighted works. Plaintiffs filed the motion weeks before the close of fact discovery, months before the close of expert discovery, summary judgment, and class certification, and likely more than a year before any pre-trial conference and trial. These facts readily distinguish this case from those Meta cites. In *Zivkovic v. S. Cal. Edison Co.*, the finding of undue delay was heavily informed by a trial scheduled to start three months after the motion was filed. And unlike in *Brownlee v. 12745 Moorpark*, there was no months-long delay between discovery of information needed and the seeking of amendment. *See also, e.g., Leines*, 2020 WL 6044037 at *3–5.

### C. Granting Leave to File the TACC Causes Meta No Meaningful Prejudice.

Meta's claim, at Opp. 8-10, that it would be prejudiced by leave to amend is meritless. Plaintiffs have already sought and obtained discovery on the subjects Meta raises. No reopening of discovery is thus necessary for Meta to defend itself. Because courts in this Circuit apply Rule 15 "with extreme liberality," *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014), the party opposing amendment bears a "heavy burden" to show prejudice. *Larios v. Nike Retail Servs., Inc.*, 2013 WL 4046680, at *3 (S.D. Cal. Aug. 9, 2013). Meta has far from met that burden.

Meta argues amendment would "upend the case schedule." Not so. Plaintiffs do not seek to amend the case schedule at all. The new claims are based on discovery already obtained. And without any request to modify the schedule, Meta's invocation of Rule 16 is inapposite. Granting

---

[4] Mr. Clark's testimony concerning ██████ is also the basis for certain of Plaintiffs' conforming amendments to its existing copyright claim, which further elaborates on Meta's infringement by reproduction. Meta identifies no way in which it needs to "obtain additional discovery" with respect to ██████████████████████ The rest of Meta's objections to Plaintiffs' conforming amendments are similarly baseless. *See* Opp at 14-15.

leave to amend is thus "particularly appropriate" where, as here, it "will not disrupt any other deadlines in this case." *Srigley v. Monterey Peninsula Yacht Club, Inc.*, 2024 WL 4143590, at *2 (N.D. Cal. Sept. 11, 2024).

Meta nonetheless argues that *it* would need to reopen discovery to seek evidence regarding its ▮▮▮▮▮ But naturally, Meta is already aware of its own practices. And, in any event, Plaintiffs already sought discovery on these issues and Meta has provided it (and/or it is the subject of letter briefing before Judge Hixson). *See, e.g.,* Mot. Ex. 2 at 101615 (▮▮▮▮▮ Reply Ex. H at RFP 119 ("All Documents and Communications, including source code, relating to the processing of copyrighted material used in training Llama Models");[5] Mot. Ex. 9 (identifying the ▮▮▮ URL from which Bashlykov ▮▮▮▮▮ Reply Ex. H at RFP 81 (requesting "All Documents and Communications related to the decision to use Shadow Datasets for training Llama Models"). Further, Meta already admitted that it both ▮▮▮▮▮ from training datasets, Reply Ex. G at 314:10–12, and ▮▮▮▮▮ *id.* at 349:22-350:12. The extensive existing discovery on these issues distinguishes the present case from *Lockheed Martin v. Network Sols.*, where the plaintiff sought to "add causes of action on which discovery had not been undertaken." 194 F.3d 980, 986 (9th Cir. 1999).[6]

Similarly, Meta fails to show prejudice by arguing that it might seek to dismiss Plaintiffs' amended claims. "[T]he fact that adding new claims to a complaint will require the defendants to defend against those claims on the merits does not constitute undue prejudice." *Wang v. Zymergen Inc.*, 2024 WL 773603, at *3 (N.D. Cal. Feb. 26, 2024) ("time and expense of litigating a motion to dismiss the new claim" not prejudicial). Meta may choose to bring a motion to dismiss while

---

[5] *See* Dkt. No. 308 at 3, 6. Plaintiffs are currently challenging Meta's refusal to produce documents concerning its storage and processing of copyrighted material, topics that are clearly relevant both to Plaintiffs' existing copyright claim and the TACC's two additional claims.

[6] If Meta in fact needs more time for discovery on new, yet unidentified defenses, then Plaintiffs would not oppose Meta's request. But Meta has not made any such request, just like it has not asked to expedite briefing or advance the hearing—other measures Plaintiffs would not oppose if asked.

expert discovery is ongoing in early 2025 or it can make its arguments during summary judgment.

Meta also cannot show prejudice by claiming it will have to change its expert strategy. *See generally Ohio Cas. Ins. Co. v. Eagle Mist Corp.*, 2021 WL 1222424, at *4 (E.D. Mo. Mar. 31, 2021) ("Any time a party amends a pleading to add new claims or other parties, the case will demand additional work; denying leave to amend on that ground would not accord with Rule 15's dictate that leave to amend be freely given when justice so requires.") (cleaned up). Courts routinely allow parties to plead additional claims well into and after discovery. *See Leines*, 2020 WL 6044037 at *3–5; *Hansen Beverage v. Nat'l Beverage*, 2007 WL 9747720, at *2 (C.D. Cal. Feb. 12, 2007) (collecting cases). It is unclear why Meta needs experts rather than lay testimony for the points they raise (aside from referencing "technical details" twice). In any event, there's no significant prejudice to Meta in hiring an expert to address the issues it identifies because *Meta already possesses the information any expert might need. See* Opp. at 9 (also failing to identify the type of new expert needed).

Meta's insistence that it must question Plaintiffs about the harms they allege, or whether they've engaged in the same illicit conduct as Meta also falls flat. *See* Opp. at 9-10. Plaintiffs have no firsthand knowledge of Meta's [REDACTED]. That is all that could be at issue.

**D. The TACC's New Claims Are Not Futile.**

1. <u>Plaintiffs' DMCA Claim Sufficiently Pleads Knowledge and Harm.</u>

Meta incorrectly seeks to apply a Rule 12 standard to this Motion. Courts "generally . . . defer[] consideration of challenges to the merits after leave to amend is granted and the amended pleadings are filed." *Stanz v. Brown*, 2023 WL 2254910, at *4 (S.D. Cal. Feb. 27, 2023); *see also Morand-Doxzon v. DE N. Companies Sportservice*, 2021 WL 831263, at *4 (S.D. Cal. Mar. 4, 2021) ("Case law indicates that where there is a colorable claim, courts must grant leave to amend.") Meta argues Plaintiffs' DMCA claim fails to allege it knew or had reasonable grounds to know [REDACTED]. Opp. at 11. But the TACC alleges precisely that. *See* TACC ¶¶ 88-90 ([REDACTED]

████████ 106-108. So Meta attempts to characterize those allegations as "conclusory" or somehow illogical. Opp. at 11. But the TACC alleges the full context of how ████████ ████████ See TACC ¶¶ 80, 88-90, 106-108. And contrary to Meta's assertion, the mere output of copyrighted material would not make Meta's infringement "obvious" to a typical user or the public, while Llama's output of ████████ ████████ See id., ¶¶ 88-90, 106-108.

Meta also argues that Plaintiffs lack standing for their DMCA claim because the TACC purportedly alleges no cognizable harm. Opp. at 11. As Plaintiffs pointed out in their Motion (at 9-10), this Court will not be alone in permitting a DMCA claim to proceed on similar AI training facts. *See The Intercept Media v. OpenAI*, No. 24-cv-01515 (S.D.N.Y. Nov. 21, 2024), Dkt. 122 (denying motion to dismiss for "reasons [the Court] will issue in due course") (Rakoff, J.). The facts in *The Intercept Media* are similar in all relevant respects to those in this case, including with respect to harm. *Compare id.*, Dkt. 1, Compl., ¶¶ 51-61, 66-75 *with* TACC ¶¶ 80, 88-90, 103-109.

Rather than engage with that case, Meta relies on *Raw Story Media v. OpenAI,* which held that the plaintiff news organization lacked standing to sue OpenAI for violating § 1202(b)(1) because Article III requires that plaintiffs allege a "concrete" injury, 2024 WL 4711729, at *4 (S.D.N.Y. Nov. 7, 2024) (citing *TransUnion LLC v. Ramirez,* 594 U.S. 413, 424 (2021)), and the "mere removal" of CMI was insufficient without dissemination of plaintiffs' works in OpenAI's chatbot. *Id.* To start, the *Raw Story* court is permitting amendment. In addition, *Raw Story* is distinguishable because the plaintiffs in that case only brought a § 1202(b)(1) claim. Here, however, the Court already permitted Plaintiffs' copyright infringement claim to proceed; and, conspicuously, Meta has not raised a *Transunion* argument against infringement. The stripping of CMI to enable and conceal that same (injurious) infringement likewise has contributed to Plaintiffs' deprivation in receiving no payment, when they should have been paid. *Cf. Raw Story*, 2024 WL 4711729 at *5 (plaintiffs "truly seek redress" for "[OpenAI's] *use* of [their] articles").

The *Raw Story* court also held that a § 1202(b)(1) violation without dissemination did not

cause a cognizable injury for Article III purposes because it did not have a "close historical or common-law analogue." *Id.* But the Ninth Circuit credits Congress's judgment about which statutory violations constitute cognizable harm, especially when technological advances make protections against those new harms necessary. *See Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017) (recognizing Congress's role in "elevating" injuries to concrete and cognizable status and holding valid the "substantive right to be free from" autodialed calls and texts under the TCPA); *Wakefield v. ViSalus,* 51 F.4th 1109, 1118 (9th Cir. 2022) (*Van Patten*'s analysis is consistent with *TransUnion*), *cert. denied*, 143 S. Ct. 1756 (2023). *Raw Story* made no such analysis concerning the removal of CMI under § 1202(b)(1), even though Congress notably made "distribution" (i.e., dissemination) a necessary element *only* in violations of sub-sections (2) and (3).[7] Congress, not the *Raw Story* court, deserves deference in its choice to elevate ▆▆▆ with knowledge that such removal enabled or concealed infringement—into a cognizable harm, regardless of whether there was distribution. *See Van Patten*, 847 F.3d at 1043. Enforcing § 1202(b)(1) as written against Meta for ▆▆▆ provides the heightened protections Congress intended copyright owners to have to combat the risks of the Internet age.[8]

2. Plaintiffs' CDAFA Claim Is Not Preempted and Is Sufficiently Pleaded.

Meta argues that Plaintiffs' CDAFA claim is preempted because the alleged unauthorized access here is not an "extra element" making the claim qualitatively different from infringement. *See* Opp. at 12-13. Meta reaches this conclusion by citing a single case—one that does not involve CDAFA (or any hacking). *See id.* (citing *Maloney v. T3 Media*, 853 F.3d 1004 (9th Cir. 2017)).

Plaintiffs' CDAFA claim alleges Meta ▆▆▆—Plaintiffs' books for training Llama. Plaintiffs' allegations that Meta used computer

---

[7] Further, contrary to the reasoning in *Raw Story*, requiring dissemination for a § 1202(b)(1) removal claim would make § 1202(b)(1) redundant with § 1202(b)(3). Anyone who intentionally removed CMI from a work in violation of § 1202(b)(1), and then disseminated the work, would necessarily have distributed it knowing CMI had been removed, thus violating § 1202(b)(3).

[8] *See* S. Rep. No. 105–190, at 8 (May 11, 1998) (DMCA addresses the "hesitat[ion]" of copyright owners "to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy"); H.R. Rep. No. 105–551, pt. 1, at 9–10 (May 22, 1998) (DMCA "adapt[s]" the law to "evolution in technology" that allows users "to send and retrieve perfect reproductions of copyrighted material easily and nearly instantaneously" worldwide).

networks to gain unauthorized access to Plaintiffs' works are the same type of harm courts have recognized as *not* preempted by copyright law. *See Capitol Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154, 1159 (E.D. Cal. 2013) (rejecting defendant's argument that copyright preempts CDAFA when a complaint alleges only copyright damages). Further, Plaintiffs' allegations are far afield from the allegations in *Maloney*, in which the court found plaintiffs' "publicity-right claims and the derivative UCL claim" concerning copyrighted photos of plaintiffs taken by others and owned by the NCAA "challenge[d] 'control of the artistic work itself,'" and thus were within "the subject matter of copyright." *See* 853 F.3d at 1019. Meta's unauthorized access to Plaintiffs' data by ████████████████████████████████████████ provides the "extra element" necessary to establish an independent CDAFA action. Had Meta bought Plaintiffs' works in a bookstore or borrowed them from a library and trained its Llama models on them without a license, it would have committed copyright infringement. Meta's decision to bypass lawful methods of acquiring books and ████████████████████████████████████ ████████ establishes a CDAFA violation and serves as proof of copyright infringement. *See Capital Audio*, 980 F. Supp. 2d at 1160-61 (rejecting preemption where plaintiffs contended defendant "'engage[d] in various activities relating to accessing computers and data without authorization'").

Meta further contends the CDAFA claim is not plausible because Plaintiffs allege Meta used ███████ to obtain the copyrighted data from "publicly available" websites—thus there is no allegation of unlawful computer access, just "objection to inclusion of [Plaintiffs'] works in [the] datasets (which Meta did not create)[.]" Opp. at 13. Meta has treated the so-called "public availability" of shadow datasets as a get out of jail free card, notwithstanding that internal Meta records show ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Reply Ex. A at 211699 (████ ████████████████████████████████████████████████████████████████████ ████████████), 211702 ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ For CDAFA, what matters is that Meta downloaded and distributed Plaintiffs' copyrighted works in

the form of computer data "without permission," and then used it for an improper purpose. *See West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 745 (C.D. Cal. 2020). Any purported "[p]ublic availability" does not preclude liability under CDAFA. *See U.S. v. Christensen*, 828 F.3d 763, 777, 789 (9th Cir. 2015) (CDAFA differs from the federal CFAA in that the former does not require "unauthorized access," and the term 'access'" in Cal. Penal Code § 502(c)(2) "includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly").

Finally, Meta argues that Plaintiffs have not alleged sufficient harm or damages because the CDAFA purportedly "contemplates" damage to a "computer system, network, program, or data." Opp. at 13-14. Meta misstates the statutes and ignores Plaintiffs' cited cases. Facts sufficient to establish that the information accessed and copied by a defendant "carrie[s] financial value," as Plaintiffs allege here concerning their copyrighted works, support CDAFA standing. *See, e.g., Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024). Further, "damages in an amount to be proven at trial" is sufficient because CDAFA's "compensatory damages include 'any expenditure . . . incurred by the owner [of data] . . . to verify that , . . data was or was not altered, damaged, or deleted by the access.'" *Biden v. Ziegler*, 2024 WL 3498786, at *10 (C.D. Cal. June 20, 2024) (502(e)(1)); *see also Capitol Audio*, 980 F. Supp. 2d at 1159–60 (approving a claim alleging only that the plaintiff "has been injured by [defendant's] violations of" CDAFA).

### E. Plaintiffs Sought Leave To Amend Their Operative Complaint In Good Faith.

Meta repackages its arguments about purported delay and prejudice to argue that Plaintiffs' amendments "lack[] good faith." Yet Plaintiffs filed their Motion just seven days after Meta's 30(b)(6) witness confirmed, for the first time, Meta's ▮▮▮▮▮▮▮▮▮▮ practices. Plaintiffs also seek no discovery extension or change to the case schedule, notwithstanding Meta's insistence otherwise. If nothing else, Plaintiffs' waiting until there was sufficient evidence to support their claims shows they acted in good faith. Meta's suggestion to the contrary has no merit.

Dated: December 18, 2024

By: /s/ *Joshua M. Stein*
Joshua M. Stein

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (State Bar No. 083151)
Daniel M. Hutchinson (State Bar No. 239458)
Reilly T. Stoler (State Bar No. 310761)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
rstoler@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dsraite@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butboricklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*