# EXHIBIT A

1    COOLEY LLP
     BOBBY GHAJAR (198719)
2    (bghajar@cooley.com)
     COLETTE GHAZARIAN (322235)
3    (cghazarian@cooley.com)
     1333 2nd Street, Suite 400
4    Santa Monica, California 90401
     Telephone:    (310) 883-6400
5
     MARK WEINSTEIN (193043)
6    (mweinstein@cooley.com)
     KATHLEEN HARTNETT (314267)
7    (khartnett@cooley.com)
     JUDD LAUTER (290945)
8    (jlauter@cooley.com)
     ELIZABETH L. STAMESHKIN (260865)
9    (lstameshkin@cooley.com)
     3175 Hanover Street
10   Palo Alto, CA  94304-1130
     Telephone:    (650) 843-5000
11   CLEARY GOTTLIEB STEEN & HAMILTON LLP
     ANGELA L. DUNNING (212047)
12   (adunning@cgsh.com)
     1841 Page Mill Road, Suite 250
13   Palo Alto, CA 94304
     Telephone: (650) 815-4131
14
     *[Full Listing on Signature Page]*
15
     *Counsel for Defendant Meta Platforms, Inc.*
16                    **UNITED STATES DISTRICT COURT**

17                    **NORTHERN DISTRICT OF CALIFORNIA**

18                       **SAN FRANCISCO DIVISION**

19   RICHARD KADREY, *et al.*,                Case No. 3:23-cv-03417-VC

20   Individual and Representative

21                         Plaintiffs,        **DEFENDANT META PLATFORMS, INC.'S
                                              AMENDED OBJECTIONS AND RESPONSES TO
                                              PLAINTIFFS' FIRST SET OF REQUESTS FOR
22         v.                                 ADMISSIONS**

23   META PLATFORMS, INC., a Delaware
     corporation;
24
                           Defendant.
25

26

27

28

**PROPOUNDING PARTY:**     **PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH**

**RESPONDING PARTY:**     **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**          **ONE**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure ("Rules"), Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's First Set of Requests for Admissions ("Requests").

## I.      RESPONSES TO ALL REQUESTS

**1.**     Meta's responses to the Requests are made to the best of Meta's present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and Meta reserves the right to amend, revise, correct, supplement, or clarify the responses and objections propounded herein.

**2.**     To the extent that Meta responds to Plaintiff's Requests by stating that Meta will provide information and/or documents which Meta or any other party to this litigation deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Rule 26(c)(7) or Federal Rule of Evidence 501, Meta will do so pursuant to the Stipulated Protective Order entered in this case (Dkt. 90).

**3.**     The provision of a response to any of these Requests does not constitute a waiver of any objection regarding the use of said response in these proceedings.  Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to the Requests.

**4.**     Meta reserves the right to object on any ground at any time to such other or supplemental requests for admission that Plaintiffs may propound involving or relating to the subject matter of these Requests.

**II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Whether or not separately set forth in response to each Request, Meta makes these objections to the following Instructions and Definitions.

**1.**    Meta objects to all defined terms to the extent that they are not utilized in Plaintiffs' First Set of Requests for Admission.

**2.**    Meta objects to the definition of "Complaint," which refers to the production of documents in response to Plaintiffs' Requests for Admission.  Meta will construe "Complaint" to refer to Plaintiffs' Corrected Second Consolidated Amended Complaint (Dkt. 133), filed September 9, 2024.

**3.**    Meta objects to the definition of "Dataset(s)" as vague, ambiguous, as to the phrase "all collections of data," which is indefinite and overbroad.  Meta further objects to the definition of "Dataset(s)" as vague and ambiguous as to the phrase "referenced, or intended to be used," which, read literally, would encompass any dataset referenced by any Meta employee in the context of the development, training, validation, testing, or evaluation of LLMs and any datasets that were intended for such use but not actually used.  Meta further objects to this definition to the extent it purports to include datasets that include content to which Plaintiffs have made no claim of ownership and which are not the subject of any allegations of copyright infringement by Plaintiffs.  Meta will construe "Dataset(s)" to mean the textual datasets used to train the Llama Models (as construed below).

**4.**    Meta objects to the definition of "Llama Models" as vague and ambiguous as to the terms and phrases "other AI models," "instances," "iterations," "versions," "updates," "modifications," "original version," "experimental versions," "subsequent versions," and "refinements to the underlying algorithm, parameters, or architecture," as applied to Llama and "any other AI models developed or in development by Meta."  Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works.  For the same reason, Meta objects to this definition to the

extent that it purports to require Meta to produce documents that are not relevant to any party's claims or defenses.  Meta will construe "Llama Models" to mean the models within the Llama family of LLMs that have been publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3, and the models Llama 4 and Llama 5, which remain under development.

5.     Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models."  Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning LLMs that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works.  For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses.  For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLMs released by Meta under that name on April 18, 2024, July 23, 2024, and September 25, 2024.

6.     Meta objects to the definition of "Meta" as overbroad and unduly burdensome to the extent it seeks to impose on Meta an obligation to investigate information or documents outside of its possession, custody, or control.  For purposes of these responses, Meta construes the term "Meta" or "You" to mean Meta Platforms, Inc. and its officers, directors, employees, and authorized agents working on its behalf and subject to its control.

7.     Meta objects to the definition of "Relevant Period" as vague, ambiguous, and unintelligible, as it is defined circularly to mean "all times relevant to … the Complaint."  Meta construes the Relevant Period to mean January 1, 2022 to the present.

8.     Meta objects to Instruction 4 to the extent it purports to require more of Meta than any obligation imposed by law, and to the extent it purports to require Meta to disclose information protected by attorney-client privilege and/or the attorney work product doctrine.

9.     Meta objects to Instruction 5 as overbroad and unduly burdensome to the extent it

purports to require more of Meta than any obligation imposed by law.

**10.**    Meta objects to Instruction 8 insofar as it provides that any Request will be deemed admitted as a result of an undefined "inadequate" response, without requiring Plaintiffs to bring a motion regarding the sufficiency of an answer or objection, as required under Fed. R. Civ. P. 36(a)(6).

## III.    AMENDED OBJECTIONS AND RESPONSES TO INDIVIDUAL DOCUMENT REQUESTS

**REQUEST FOR ADMISSION NO. 1:**

Admit that Meta created and maintains the large language models known as Llama.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta admits that it maintains those versions of the large language models known as Llama (i.e., Llama 1, Llama 2, Llama 3) that are provided by Meta through Meta's website and Meta's hosting partners Amazon, Google, and Microsoft.  Meta denies that it maintains versions of Llama that are under the control of  licensees or unauthorized third party users of the Llama models.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Llama Models are large language models designed to emit naturalistic text outputs in response to user prompts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the terms "designed to" and "naturalistic" as vague and ambiguous, as it is unclear whether this Request is

1  asking for an admission regarding Meta's intended purpose of the Llama Models or about their

2  functionality.

3      Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta

4  admits that one of the functions of the Llama Models is to emit natural language text outputs in

5  response to user prompts.  Except as expressly admitted, Meta denies the Request.

6  **REQUEST FOR ADMISSION NO. 3:**

7      Admit that the Dataset used to train Llama 1 included copyrighted books.

8  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

9      Meta incorporates by reference its Objections to Instructions and Definitions, including its

10  own definitions stated therein, which are applicable to this Request.  Meta objects to the term

11  "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train

12  Llama 1.  Meta objects to this Request to the extent that it calls for a legal conclusion as to

13  "copyrighted books," and on the ground that it does not specify any copyrighted books or otherwise

14  define this term.

15      Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

16  admits that it used one or more Datasets that included text from a published and commercially-

17  available version of one or more copyrighted books to train Llama 1.  Except as expressly admitted,

18  Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis

19  denies it.

20  **REQUEST FOR ADMISSION NO. 4:**

21      Admit that the Dataset used to train Llama 2 included copyrighted books.

22  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

23      Meta incorporates by reference its Objections to Instructions and Definitions, including its

24  own definitions stated therein, which are applicable to this Request.  Meta objects to the term

25  "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train

26  Llama 2.  Meta objects to this Request to the extent that it calls for a legal conclusion as to

27  "copyrighted books," and on the ground that it does not specify any copyrighted books or otherwise

28  define this term.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it used one or more Datasets that included text from a published and commercially-available version of one or more copyrighted books to train Llama 2.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the Dataset used to train Llama 3 included copyrighted books.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train Llama 3.  Meta objects to this Request to the extent that it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it used one or more Datasets that included text from a published and commercially-available version of one or more copyrighted books to train Llama 3. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 6:**

Admit that the Dataset used or that will be used to train Llama 4 included copyrighted books.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "the Dataset" as vague and ambiguous, to the extent it suggests that Meta used a single dataset to train Llama 4.  Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted books," and on the ground that it does not specify any copyrighted books or otherwise define this term.  Meta objects to this Request as purely speculative and not relevant to the claims or defenses of any party insofar as Meta has not yet released Llama 4 and Meta is in the process of finalizing the data corpus for Llama 4.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more copyrighted books is included in a Dataset that could be used to train Llama 4. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 7:**

Admit that You did not obtain permission or consent from the relevant copyright owners to use all copyrighted books in the Datasets used to train Llama Models.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the Request as vague, ambiguous, and unintelligible as to "use all copyrighted books in the Datasets." Meta also objects on the ground that the terms "relevant copyright owners" and "copyrighted books" are vague, ambiguous, indefinite, undefined, and overbroad in that they are untethered to the allegedly copyright registered works at issue in this Action. Meta further objects to this Request on the ground that information about who the "relevant copyright owner" is for any allegedly copyrighted book or its contents is outside of Meta's possession, custody, or control. Even reviewing the copyright registration or copyright notice in a book would not tell Meta who the "relevant copyright owner" is of any book, because, e.g., all or some of the exclusive rights of copyright could have been assigned, could be invalid, could have been contributed to the public domain, or could have been registered through error or fraud in the name of a person other than the author/true copyright owner. Moreover, even where an author owns the copyright to a book, that copyright may not cover all text in the book (by way of example, content contributed by another author, or previously published or registered works appearing in a collection or anthology, such as a collection of short stories, are not covered by any copyright in the book, whether registered or not). Meta construes the term "relevant copyright owner" as used in this Request to refer to the person identified in the book as the copyright owner, without admitting that such person in fact owns a valid copyright in the book or what it covers. Meta further objects to this Request as overly burdensome and

COOLEY LLP
ATTORNEYS AT LAW

disproportionate to the needs of the case insofar as it would require Meta to attempt to ascertain the "relevant copyright owner" of "all copyrighted books" in its training Datasets, which Plaintiffs assert comprised thousands of books. Meta objects to the Request as compound insofar as it seeks an admission as to multiple datasets used to train Llama Models. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of books or other content to be included in the datasets used to train the Llama Models or that Meta was required to obtain permission from copyright owners to train the Llama Models on any unspecified content of books they authored or to which they own the copyright.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that one or more Datasets used to train its Llama Models contained text from published and commercially-available versions of one or more copyrighted books for which it did not obtain permission or consent from the relevant copyright owner(s) (as construed above). Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 8:**

Admit that You did not obtain permission from Plaintiffs to include the content of books they authored in the Datasets used to train Llama Models.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the Request as compound insofar as it seeks an admission as to multiple datasets used to train Llama Models. Meta further objects on the ground that the term "content of books they authored" is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly copyright registered works at issue in this Action. Meta further objects to this Request on the ground that information about who authored the books at issue in this case is outside of Meta's possession, custody, or control. Even reviewing the copyright registration or copyright notice in a book would not tell Meta who "authored" all or any part of the book, because the information may be inaccurate. In this case, authorship is a disputed issue as to at least one at-issue work. Moreover, even where

a person is identified as the "author" of a book in a copyright notice or registration, that authorship may not extend to all text in the book (by way of example, content contributed by another author, or previously published or registered works appearing in a collection or anthology, such as a collection of short stories, would not be authored by the copyright holder and are not covered by any copyright in the book, whether registered or not).  For purposes of its response below, Meta construes the term "books they authored" as used in this Request to refer to the at-issue books Plaintiffs claim in this case to have authored, without admitting that any Plaintiff was, in fact, the author or owns a valid copyright in the book, and without admitting what any copyright in the book may cover.  Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of books or other content to be included in the datasets used to train the Llama Models or that Meta was required to obtain permission from Plaintiffs to train the Llama Models on any unspecified content of books they authored.

Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta admits that it did not seek or obtain permission from Plaintiffs to train Llama Models using Datasets that included books Plaintiffs claim in this action to have authored.  Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 9:**

Admit that You did not compensate Plaintiffs for the inclusion of the content of books they authored in the Datasets used to train Llama Models.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "compensate" as vague and ambiguous.  Meta will construe "compensate" to refer to financial compensation.  Meta objects to the Request as compound insofar as it seeks an admission as to multiple datasets used to train Llama Models.  Meta further objects on the ground that the term "content of books they authored" is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly copyright registered works at issue in this Action.  Meta further objects to this Request on the ground that information about who authored the books at issue in this

case is outside of Meta's possession, custody, or control. Even reviewing the copyright registration or copyright notice in a book would not tell Meta who "authored" all or any part of the book, because the information may be inaccurate. In this case, authorship is a disputed issue as to at least one at-issue work. Moreover, even where a person is identified as the "author" of a book in a copyright notice or registration, that authorship may not extend to all text in the book (by way of example, content contributed by another author, or previously published or registered works appearing in a collection or anthology, such as a collection of short stories, would not be authored by the copyright holder and are not covered by any copyright in the book, whether registered or not). For purposes of its response below, Meta construes the term "books they authored" as used in this Request to refer to the at-issue books Plaintiffs claim in this case to have authored, without admitting that any Plaintiff was, in fact, the author or owns a valid copyright in the book, and without admitting what any copyright in the book may cover. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of the content of books or other content to be included in the datasets used to train the Llama Models or that Meta was required to compensate Plaintiffs to train the Llama Models on any unspecified content of books Plaintiffs authored.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it did not compensate Plaintiffs for the inclusion of the content of books they purportedly authored in the Datasets used to train Llama Models, to the extent those Datasets included the content of books they purportedly authored. Except as expressly admitted, Meta denies the Request.

**REQUEST FOR ADMISSION NO. 10:**

Admit that You have made Llama 1 available for use by Third Parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has made Llama 1 available for use by Third Parties under certain circumstances and

1    subject to certain terms and restrictions.  Except as expressly admitted, Meta denies the Request.

2    **REQUEST FOR ADMISSION NO. 11:**

3        Admit that You have made Llama 2 available for use by Third Parties.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

5        Meta incorporates by reference its Objections to Instructions and Definitions, including its

6    own definitions stated therein, which are applicable to this Request.

7        Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

8    admits that it has made Llama 2 available for use by Third Parties under certain circumstances and

9    subject to certain terms and restrictions.  Except as expressly admitted, Meta denies the Request.

10   **REQUEST FOR ADMISSION NO. 12:**

11       Admit that You have made Llama 3 available for use by Third Parties.

12   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

13       Meta incorporates by reference its Objections to Instructions and Definitions, including its

14   own definitions stated therein, which are applicable to this Request.

15       Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

16   admits that it has made Llama 3 available for use by Third Parties under certain circumstances and

17   subject to certain terms and restrictions. Except as expressly admitted, Meta denies the Request.

18   **REQUEST FOR ADMISSION NO. 13:**

19       Admit that you intend to make Llama 4 available for use by Third Parties.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

21       Meta incorporates by reference its Objections to Instructions and Definitions, including its

22   own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

23   as purely speculative and not relevant to the claims or defenses of any party insofar as Meta has not

24   yet released Llama 4.

25       Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta

26   admits that it currently intends to make Llama 4 available for use by Third Parties at some point in

27   the future under certain circumstances and subject to certain terms and restrictions. Except as

28   expressly admitted, Meta denies the Request.

COOLEY LLP
ATTORNEYS AT LAW

META'S AMENDED OBJ & RESPS TO
PLTF'S FIRST SET OF RFA'S
3:23-CV-03417-VC

1    **REQUEST FOR ADMISSION NO. 14:**

2         Admit that You have generated revenue from making one or more Llama Models available

3    for use by Third Parties.

4    **\*CONFIDENTIAL\* RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

5         Meta incorporates by reference its Objections to Instructions and Definitions, including its

6    own definitions stated therein, which are applicable to this Request.  Meta further objects to the

7    capitalized term "Third Parties," which is ambiguous and undefined.  Meta construes this term to

8    refer to persons who are not named parties to this Action.  Meta further objects to this Request on

9    the ground that the terms "generated revenue" and "from making one or more Llama Models

10   available for use by Third Parties" are vague, ambiguous, and undefined.  Meta further objects on

11   the ground that this Request is compound.

12        Subject to and without waiving the foregoing objections, Meta responds as follows: ███

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████

15   **REQUEST FOR ADMISSION NO. 15:**

16        Admit that You have not disclosed all Datasets used to train Llama Models in response to

17   discovery in this case.

18   **\*CONFIDENTIAL\* AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

19        Meta incorporates by reference its Objections to Instructions and Definitions, including its

20   own definitions stated therein, which are applicable to this Request, including, in particular

21   Objection No. 4.  Meta objects to this Request as improperly seeking discovery on discovery.  Meta

22   further objects to this Request to the extent it seeks information that is not relevant to the claims or

23   defenses of any party.

24        Subject to and without waiving the foregoing objections, Meta responds as follows: ███

25   ████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████

**REQUEST FOR ADMISSION NO. 16:**

Admit that You used the Books3 database as a Dataset to train one or more Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe "Books3 database" to mean the third-party dataset commonly known as Books3. Meta further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has used a portion of the third-party dataset commonly known as Books3 as training data to train one or more Llama Models. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the Books3 database contains copyrighted works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe "Books3 database" to mean the third-party dataset commonly known as Books3. Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted works," and on the ground that it does not specify any copyrighted works or otherwise define this term.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more copyrighted works appears in the third-party dataset commonly known as Books3. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Your use of the Books3 database as a Dataset for training Llama Models was not authorized by all copyright owners of the works contained within the Books3 database.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe "Books3 database" to mean the third-party dataset commonly known as Books3. Meta objects to this Request to the extent that it calls for a legal conclusion. Meta further objects on the ground that the term "copyright owners" is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly copyright registered works at issue in this Action. Meta further objects to this Request on the ground that information about who the "copyright owner" is for any allegedly copyrighted book or its contents is outside of Meta's possession, custody, or control. Even reviewing the copyright registration or copyright notice in a book would not tell Meta who the "copyright owner" is of any book, because, e.g., all or some of the exclusive rights of copyright could have been assigned, could be invalid, could have been contributed to the public domain, or could have been registered through error or fraud in the name of a person other than the author/true copyright owner. Moreover, even where an author owns the copyright to a book, that copyright may not cover all text in the book (by way of example, content contributed by another author, or previously published or registered works appearing in a collection or anthology, such as a collection of short stories, are not covered by any copyright in the book, whether registered or not). Meta construes the term "copyright owner" as used in this Request to refer to the person identified in the book as the copyright owner, without admitting that such person in fact owns a valid copyright in the book or what it covers. Meta further objects to this Request as overly burdensome and disproportionate to the needs of the case insofar as it would require Meta to attempt to ascertain the "copyright owner" of "all copyrighted books" in the Books3 database, a database Meta did not create and which Plaintiffs assert comprises thousands of books. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of content to be included in the third-party Books3 dataset or that Meta's use of the Books3 dataset for training the Llama Models required authorization from the owners of the copyrights in the works contained within that dataset.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

1  admits that it did not seek or obtain authorization from all copyright owners (as construed above)

2  of works included within the third-party dataset commonly known as Books3 to use that dataset for

3  training Llama Models.  Except as expressly admitted, Meta denies this Request.

4  **REQUEST FOR ADMISSION NO. 19:**

5  Admit that You used the "Library Genesis" database as a Dataset to train one or more Llama

6  Models.

7  **\*CONFIDENTIAL\* RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

8  Meta incorporates by reference its Objections to Instructions and Definitions, including its

9  own definitions stated therein, which are applicable to this Request.  Meta further objects to this

10  Request as compound.

11  Subject to and without waiving the foregoing objections, Meta responds as follows: ███

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ███████

15  **REQUEST FOR ADMISSION NO. 20:**

16  Admit that the "Library Genesis" database contains copyrighted works.

17  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

18  Meta incorporates by reference its Objections to Instructions and Definitions, including its

19  own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

20  to the extent that it calls for a legal conclusion as to "copyrighted works," and on the ground that it

21  does not specify any copyrighted works or otherwise define this term.

22  Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

23  admits that text from a published and commercially-available version of one or more copyrighted

24  works appears in the third-party "Library Genesis" database.  .  Except as expressly admitted, Meta

25  lacks information sufficient to form a belief as to the truth of this request, and on that basis denies

26  it.

27  **REQUEST FOR ADMISSION NO. 21:**

28  Admit that Your use of the "Library Genesis" database as a Dataset for training Llama

Models was not authorized by all copyright owners of the works contained within the "Library Genesis" database.

**\*CONFIDENTIAL\* AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to this Request to the extent that it calls for a legal conclusion. Meta further objects on the ground that the term "copyright owners" is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly copyright registered works at issue in this Action. Meta further objects to this Request on the ground that information about who the "copyright owner" is for any allegedly copyrighted book or its contents is outside of Meta's possession, custody, or control. Even reviewing the copyright registration or copyright notice in a book would not tell Meta who the "copyright owner" is of any book, because, e.g., all or some of the exclusive rights of copyright could have been assigned, could be invalid, could have been contributed to the public domain, or could have been registered through error or fraud in the name of a person other than the author/true copyright owner. Moreover, even where an author owns the copyright to a book, that copyright may not cover all text in the book (by way of example, content contributed by another author, or previously published or registered works appearing in a collection or anthology, such as a collection of short stories, are not covered by any copyright in the book, whether registered or not). Meta construes the term "copyright owner" as used in this Request to refer to the person identified in the book as the copyright owner, without admitting that such person in fact owns a valid copyright in the book or what it covers. Meta further objects to this Request as overly burdensome and disproportionate to the needs of the case insofar as it would require Meta to attempt to ascertain the "copyright owner" of "all copyrighted books" in the "Library Genesis" database, a database Meta did not create and which Plaintiffs assert comprises thousands of books. Meta objects to this Request to the extent it suggests that Meta's use of data from the third-party "Library Genesis" database for training the Llama Models required authorization from the owners of the copyrights in the works contained within that database.

Subject to and without waiving the foregoing objections, Meta responds as follows: 

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████

**REQUEST FOR ADMISSION NO. 22:**

Admit that You used the database known as "The Pile" as a Dataset to train one or more Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "'The Pile' database" as vague and ambiguous. Meta will construe "'The Pile' database" to mean the third-party dataset commonly known as The Pile. Meta further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has used some content included in the third-party dataset commonly known as The Pile as training data to train one or more Llama Models. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 23:**

Admit that the database known as "The Pile" contains copyrighted works.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "'The Pile' database" as vague and ambiguous. Meta will construe "'The Pile' database" to mean the third-party dataset commonly known as The Pile. Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted works," and on the ground that it does not specify any copyrighted works or otherwise define this term.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of one or more copyrighted works appears in the third-party dataset commonly known as The Pile. Except as expressly

1    admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on

2    that basis denies it.

3    **REQUEST FOR ADMISSION NO. 24:**

4        Admit that Your use of the database known as "The Pile" as a Dataset for training Llama

5    Models was not authorized by all copyright owners of the works contained within the "The Pile"

6    database.

7    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

8        Meta incorporates by reference its Objections to Instructions and Definitions, including its

9    own definitions stated therein, which are applicable to this Request. Meta objects to the term "'The

10   Pile' database" as vague and ambiguous. Meta will construe "'The Pile' database" to mean the

11   third-party dataset commonly known as The Pile. Meta objects to this Request to the extent that it

12   calls for a legal conclusion. Meta further objects on the ground that the term "copyright owners"

13   is vague, ambiguous, indefinite, undefined, and overbroad in that it is untethered to the allegedly

14   copyright registered works at issue in this Action. Meta further objects to this Request on the

15   ground that information about who the "copyright owner" is for any allegedly copyrighted book or

16   its contents is outside of Meta's possession, custody, or control. Even reviewing the copyright

17   registration or copyright notice in a book would not tell Meta who the "copyright owner" is of any

18   book, because, e.g., all or some of the exclusive rights of copyright could have been assigned, could

19   be invalid, could have been contributed to the public domain, or could have been registered through

20   error or fraud in the name of a person other than the author/true copyright owner. Moreover, even

21   where an author owns the copyright to a book, that copyright may not cover all text in the book (by

22   way of example, content contributed by another author, or previously published or registered works

23   appearing in a collection or anthology, such as a collection of short stories, are not covered by any

24   copyright in the book, whether registered or not). Meta construes the term "copyright owner" as

25   used in this Request to refer to the person identified in the book as the copyright owner, without

26   admitting that such person in fact owns a valid copyright in the book or what it covers. Meta further

27   objects to this Request as overly burdensome and disproportionate to the needs of the case insofar

28   as it would require Meta to attempt to ascertain the "copyright owner" of "all copyrighted books"

in the "The Pile," a database Meta did not create and which Plaintiffs assert comprises thousands of books. Meta objects to this Request to the extent it improperly suggests that Meta participated in the selection of content to be included in the third-party dataset commonly known as The Pile or that Meta's use of The Pile for training the Llama Models required authorization from the owners of the copyrights in the works contained within that dataset.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it did not seek or obtain authorization from all copyright owners (as construed above) of any works included within the third-party The Pile dataset to use that dataset for training Llama Models. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 25:**

Admit that You have contacted one or more Person(s) to negotiate licensing of material for the purpose of training a Llama Model.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the terms "material" and "licensing" as vague, ambiguous, and indefinite.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has contacted one or more Persons to discuss an agreement for access to and use of certain data as training material. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 26:**

Admit that You have contacted one or more copyright owners to negotiate licensing of their copyrighted material for the purpose of training a Llama Model.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the terms "copyright owners," "copyrighted material," and "licensing" as vague, ambiguous, indefinite, and calling for a legal conclusion.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

admits that it has contacted one or more Persons to discuss an agreement for access to and use of certain data that may include copyrighted material as training material. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 27:**

Admit that each Llama Model can generate text outputs similar to copyrighted works in Datasets used to train each Llama Model.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses, in particular the substance of the outputs of the Llama Models. Meta objects to this Request as compound as it purports to seek an admission as to multiple Llama Models. Meta objects to this Request on the grounds that the terms "copyrighted works" and "similar to copyrighted works" are vague, ambiguous, undefined, indefinite, and call for a legal conclusion. Meta objects to this Request as speculative insofar as it seeks an admission as to whether the Llama Models "can" generate certain text outputs, regardless of whether they actually do generate those text outputs. Meta objects to the phrase "each Llama Model can generate" as vague and ambiguous. Meta will construe "each Llama Model can generate" to refer to the capabilities of the final, released versions of Llama 1, Llama 2, and Llama 3, as construed above. Meta further objects to this Request on the ground that it constitutes an incomplete hypothetical and calls for speculation.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 28:**

Admit that You issued a DMCA takedown notice to a Person who made a leaked version of Llama 1 available for download to third parties.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses. Meta objects

to the term "leaked version" as vague, ambiguous, and undefined. Meta construes the term "third parties" synonymously with the defined term Third Parties.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it issued a DMCA takedown notice to a Person who made the Llama 1 weights available for download to Third Parties other than those Persons authorized to use Llama 1.  Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit that You received more than 100,000 applications for access to Llama 1.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "applications" as vague and ambiguous.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it received more than 100,000 requests to provide access to Llama 1.  Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that You granted access to Llama 1 to tens of thousands of third-party users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta construes "third parties" in this Request synonymously with the defined term Third Parties.

Subject to and without waiving the foregoing objections, Meta responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 31:**

Admit that You granted access to Llama 2 to tens of thousands of third-party users.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "granted access" as vague and ambiguous in the context of Llama 2, which is freely available.  Meta

1   construes "third parties" in this Request synonymously with the defined term Third Parties.

2       Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

3   admits that Llama 2 is freely available to at least tens of thousands of third-party users.  Except as

4   expressly admitted, Meta denies this Request.

5   **REQUEST FOR ADMISSION NO. 32:**

6       Admit that You granted access to Llama 3 to tens of thousands of third-party users.

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

8       Meta incorporates by reference its Objections to Instructions and Definitions, including its

9   own definitions stated therein, which are applicable to this Request. Meta objects to the term

10  "granted access" as vague and ambiguous in the context of Llama 3, which is freely available.  Meta

11  construes "third parties" in this Request synonymously with the defined term Third Parties.

12      Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

13  admits that Llama 3 is freely available to at least tens of thousands of third-party users.  Except as

14  expressly admitted, Meta denies this Request.

15  **REQUEST FOR ADMISSION NO. 33:**

16      Admit that one or more Llama Models were trained using publicly available data.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

18      Meta incorporates by reference its Objections to Instructions and Definitions, including its

19  own definitions stated therein, which are applicable to this Request.  Meta objects to the term

20  "publicly available data" as vague and ambiguous, and will construe the term to mean data that is

21  accessible for free to the general public.  Meta further objects to this Request as compound.

22      Subject to and without waiving the foregoing objections, Meta responds as follows: Admit.

23  **REQUEST FOR ADMISSION NO. 34:**

24      Admit that the publicly available data used to train the Llama Models included copyrighted

25  works.

26  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

27      Meta incorporates by reference its Objections to Instructions and Definitions, including its

28  own definitions stated therein, which are applicable to this Request. Meta objects to the term

"publicly available data" as vague and ambiguous, and will construe the term to mean data that is accessible for free to the general public.  Meta objects to this Request to the extent that it calls for a legal conclusion as to "copyrighted works," and on the ground that it does not specify any copyrighted works or otherwise define this term.  Meta further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that the publicly available data used to train the Llama Models included text from a published and commercially-available version of one or more copyrighted works.

**REQUEST FOR ADMISSION NO. 35:**

Admit that Meta has not provided to Plaintiffs a list of works used in the Datasets used to train Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "works" as vague, ambiguous, and indefinite. Meta objects to this Request as it improperly seeking discovery on discovery.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny. Meta has produced a list of the content of the third-party Books3 dataset (Meta_Kadrey_00000250), which is alleged to include text from each of Plaintiffs' books that are at issue in the Complaint. Meta is not aware or in possession of any list(s) of the content of any other Datasets used to train the Llama Models, and any such list(s) would not be relevant to the Parties' claims or defenses nor proportional to the needs of this case. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 36:**

Admit that the toxicity mitigation measures in Llama 2 were identical to those present in Llama 1.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to the term "toxicity mitigation measures" as vague, ambiguous, and undefined.  Meta will construe this term

1  to refer to measures taken or implemented to avoid generating toxic content as outputs.

2      Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

3  **REQUEST FOR ADMISSION NO. 37:**

4      Admit that the toxicity mitigation measures in Llama 3 were identical to those present in

5  Llama 2.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

7      Meta incorporates by reference its Objections to Instructions and Definitions, including its

8  own definitions stated therein, which are applicable to this Request.  Meta objects to the term

9  "toxicity mitigation measures" as vague, ambiguous, and undefined.  Meta will construe this term

10  to refer to measures taken or implemented to avoid generating toxic content as outputs.

11      Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

12  **REQUEST FOR ADMISSION NO. 38:**

13      Admit that You store copyrighted material for training Llama Models.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

15      Meta incorporates by reference its Objections to Instructions and Definitions, including its

16  own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

17  to the extent that it calls for a legal conclusion.  Meta objects to this Request on the grounds that

18  the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls for a legal

19  conclusion.  Meta objects to the term "store copyrighted material for training Llama Models" as

20  vague and ambiguous.  Meta also objects on the ground that this Request is overbroad and seeks

21  information that is not relevant to any party's claims or defenses.  Meta objects to this Request as

22  compound.

23      Subject to and without waiving the foregoing objections, Meta responds as follows: As

24  written, Meta is unable to respond to this Request and on that basis denies the Request.  Meta is

25  willing to meet and confer to understand how to interpret this Request.

26  **REQUEST FOR ADMISSION NO. 39:**

27      Admit that You have not deleted all copyrighted material in Your possession after it is used

28  for training Llama Models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. . Meta objects to this Request on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls for a legal conclusion. Meta objects to this Request to the extent it suggests that Meta was required to delete copyrighted material used for training LLMs after the material was used to train its Llama Models. Meta also objects on the ground that this Request is overbroad and seeks information that is not relevant to any party's claims or defenses. Meta objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it has not deleted all training data used to train its Llama Models in its possession after that training data was used to train its Llama Models, including, in part, to comply with its obligations to preserve relevant documents and materials in connection with this Action. Except as expressly admitted, Meta denies this Request.

**REQUEST FOR ADMISSION NO. 40:**

Admit that you reproduced copyrighted material in the training of Llama models.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request. Meta objects to the term "Llama models" as vague and ambiguous to the extent its meaning is intended to be different from the defined term "Llama Models." Meta will construe "Llama models" as the defined term "Llama Models" as limited and construed above. Meta objects to this Request on the grounds that the terms "copyrighted material" and "reproduced" are vague, ambiguous, undefined, indefinite, and call for a legal conclusion. Meta objects to this Request to the extent it calls for a legal conclusion. Meta objects to this Request as compound.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the Llama Models are capable of reproducing copyrighted material.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses, in particular the substance of the outputs of the Llama Models.  Meta objects to this Request as compound as it purports to seek an admission as to multiple Llama Models.  Meta objects to this Request on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls for a legal conclusion.  Meta objects to this Request as speculative insofar as it seeks an admission as to whether the Llama Models "are capable of" reproducing certain material, regardless of whether they actually do reproduce such material.  Meta objects to the phrase "the Llama Models are capable of reproducing" as vague and ambiguous.  Meta will construe "the Llama Models are capable of reproducing" to refer to the capabilities of the final, released versions of Llama 1, Llama 2, and Llama 3, as construed above.  Meta further objects to this Request on the ground that it constitutes an incomplete hypothetical and calls for speculation.

Subject to and without waiving the foregoing objections, Meta responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the Llama Models are programmed, trained, or filtered to avoid reproducing copyrighted material.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

Meta incorporates by reference its Objections to Instructions and Definitions, including its own definitions stated therein, which are applicable to this Request.  Meta objects to this Request insofar as it seeks information that is not relevant to any party's claims or defenses, in particular the substance of the outputs of the Llama Models.  Meta objects to this Request as compound as it purports to seek an admission as to multiple Llama Models.  Meta objects to this Request on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite, and calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that it implemented certain risk mitigation measures in the process of developing the Llama

1    Models to minimize the likelihood that the models would generate undesirable outputs, including

2    outputs that may reproduce portions of any copyrighted materials.  Except as expressly admitted,

3    Meta denies this Request.

4    **REQUEST FOR ADMISSION NO. 43:**

5    Admit that the Llama Models that were trained with copyrighted material had at least in

6    part a commercial purpose.

7    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

8    Meta incorporates by reference its Objections to Instructions and Definitions, including its

9    own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

10    on the grounds that the term "copyrighted material" is vague, ambiguous, undefined, indefinite,

11    and calls for a legal conclusion.  Meta objects to the Request as compound.

12    Subject to and without waiving the foregoing objections, Meta responds as follows: Meta

13    admits that Llama 2 and Llama 3 models were made available to the open source community

14    pursuant to a license that allowed developers to use the models for commercial uses pursuant to

15    certain terms and conditions.  Meta also admits that the data used to train the Llama Models

16    included text from a published and commercially-available version of one or more copyrighted

17    works.  Except as expressly admitted, Meta denies this Request.

18    **REQUEST FOR ADMISSION NO. 44:**

19    Admit that if copyright holders or other content creators demanded that You not use their

20    content to train Your LLM models, then You would not use their content to train Your LLM models.

21    **RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

22    Meta incorporates by reference its Objections to Instructions and Definitions, including its

23    own definitions stated therein, which are applicable to this Request.  Meta objects to this Request

24    on the ground that it constitutes an incomplete hypothetical and as purely speculative.

25    Subject to and without waiving the foregoing objections, Meta responds as follows: As

26    written, Meta is unable to respond to this Request and on that basis denies the Request.  Meta is

27    willing to meet and confer to understand how to interpret this Request.

28    **REQUEST FOR ADMISSION NO. 45:**

1    Admit that the Books3 database contains Plaintiff Richard Kadrey's work *Aloha from Hell*.

2    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

3    Meta incorporates by reference its Objections to Instructions and Definitions, which are

4    applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

5    unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

6    ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create,

7    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

8    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

9    particular book, and would require Meta to conduct an analysis of a third party database that is

10   equally accessible to Plaintiffs for every word of any particular work. Meta further object to this

11   Request to the extent that it presumes that the referenced author in fact authored the referenced

12   work—information that is outside of Meta's possession, custody, or control.

13   Meta admits that some text from a published and commercially-available version of *Aloha*

14   *from Hell* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks

15   information sufficient to form a belief as to the truth of this request, and on that basis denies it.

16   **REQUEST FOR ADMISSION NO. 46:**

17   Admit that the Books3 database contains Plaintiff Richard Kadrey's work *The Everything*

18   *Box*.

19   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

20   Meta incorporates by reference its Objections to Instructions and Definitions, which are

21   applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

22   unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

23   ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create,

24   commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

25   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

26   particular book, and would require Meta to conduct an analysis of a third party database that is

27   equally accessible to Plaintiffs for every word of any particular work. Meta further object to this

28   Request to the extent that it presumes that the referenced author in fact authored the referenced

work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *The Everything Box* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it..

**REQUEST FOR ADMISSION NO. 47:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *Kill the Dead*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Kill the Dead* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 48:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *The Perdition Score*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *The Perdition Score* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 49:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *Sandman Slim*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Sandman Slim* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 50:**

Admit that the Books3 database contains Plaintiff Richard Kadrey's work *The Wrong Dead Guy*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *The Wrong Dead Guy* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the Books3 database contains Plaintiff Sarah Silverman's work *The Bedwetter*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is

equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *The Bedwetter* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 52:**

Admit that the Books3 database contains Plaintiff Christopher Golden's work *Ararat*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Ararat* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 53:**

Admit that the Books3 database contains Plaintiff Christopher Golden's work *Dead Ringers*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 53:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

1  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

2  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

3  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

4  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

5  particular book, and would require Meta to conduct an analysis of a third party database that is

6  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

7  Request to the extent that it presumes that the referenced author in fact authored the referenced

8  work—information that is outside of Meta's possession, custody, or control.

9      Meta admits that some text from a published and commercially-available version of *Dead

10  Ringers* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

11  information sufficient to form a belief as to the truth of this request, and on that basis denies it.

12  **REQUEST FOR ADMISSION NO. 54:**

13      Admit that the Books3 database contains Plaintiff Christopher Golden's work *The Pandora

14  Room*.

15  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

16      Meta incorporates by reference its Objections to Instructions and Definitions, which are

17  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

18  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

19  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

20  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

21  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

22  particular book, and would require Meta to conduct an analysis of a third party database that is

23  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

24  Request to the extent that it presumes that the referenced author in fact authored the referenced

25  work—information that is outside of Meta's possession, custody, or control.

26      Meta admits that some text from a published and commercially-available version of *The

27  Pandora Room* is included in the third party Books3 dataset.  Except as expressly admitted, Meta

28  lacks information sufficient to form a belief as to the truth of this request, and on that basis denies

1    it.

2    **REQUEST FOR ADMISSION NO. 55:**

3        Admit that the Books3 database contains Plaintiff Christopher Golden's work *Snowblind*.

4    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

5        Meta incorporates by reference its Objections to Instructions and Definitions, which are

6    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

7    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

8    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

9    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

10   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

11   particular book, and would require Meta to conduct an analysis of a third party database that is

12   equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

13   Request to the extent that it presumes that the referenced author in fact authored the referenced

14   work—information that is outside of Meta's possession, custody, or control.

15       Meta admits that some text from a published and commercially-available version of

16   *Snowblind* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

17   information sufficient to form a belief as to the truth of this request, and on that basis denies it.

18   **REQUEST FOR ADMISSION NO. 56:**

19       Admit that the Books3 database contains Plaintiff Ta-Nehisi Coates's work *The Beautiful*

20   *Struggle*.

21   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

22       Meta incorporates by reference its Objections to Instructions and Definitions, which are

23   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

24   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

25   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

26   commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

27   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

28   particular book, and would require Meta to conduct an analysis of a third party database that is

1    equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

2    Request to the extent that it presumes that the referenced author in fact authored the referenced

3    work—information that is outside of Meta's possession, custody, or control.

4        Meta admits that some text from a published and commercially-available version of *The*

5    *Beautiful Struggle* is included in the third party Books3 dataset.  Except as expressly admitted,

6    Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis

7    denies it.

8    **REQUEST FOR ADMISSION NO. 57:**

9        Admit that the Books3 database contains Plaintiff Ta-Nehisi Coates's work *The Water*

10   *Dancer*.

11   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

12       Meta incorporates by reference its Objections to Instructions and Definitions, which are

13   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

14   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

15   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

16   commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

17   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

18   particular book, and would require Meta to conduct an analysis of a third party database that is

19   equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

20   Request to the extent that it presumes that the referenced author in fact authored the referenced

21   work—information that is outside of Meta's possession, custody, or control.

22       Meta admits that some text from a published and commercially-available version of *The*

23   *Water Dancer* is included in the third party Books3 dataset.  Except as expressly admitted, Meta

24   lacks information sufficient to form a belief as to the truth of this request, and on that basis denies

25   it.

26   **REQUEST FOR ADMISSION NO. 58:**

27       Admit that the Books3 database contains Plaintiff Ta-Nehisi Coates's work *We Were Eight*

28   *Years in Power*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *We Were Eight Years in Power* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the Books3 database contains Plaintiff Junot Díaz's work *The Brief Wondrous Life of Oscar Wao*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced

1   work—information that is outside of Meta's possession, custody, or control.

2       Meta admits that some text from a published and commercially-available version of *The*

3   *Brief Wondrous Life of Oscar Wao* is included in the third party Books3 dataset. Except as

4   expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request,

5   and on that basis denies it.

6   **REQUEST FOR ADMISSION NO. 60:**

7       Admit that the Books3 database contains Plaintiff Junot Díaz's work *Drown*.

8   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

9       Meta incorporates by reference its Objections to Instructions and Definitions, which are

10  applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

11  unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

12  ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create,

13  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

14  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

15  particular book, and would require Meta to conduct an analysis of a third party database that is

16  equally accessible to Plaintiffs for every word of any particular work. Meta further object to this

17  Request to the extent that it presumes that the referenced author in fact authored the referenced

18  work—information that is outside of Meta's possession, custody, or control.

19      Meta admits that some text from a published and commercially-available version of *Drown*

20  is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information

21  sufficient to form a belief as to the truth of this request, and on that basis denies it.

22  **REQUEST FOR ADMISSION NO. 61:**

23      Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *The*

24  *Confessions of Max Tivoli*.

25  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

26      Meta incorporates by reference its Objections to Instructions and Definitions, which are

27  applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

28  unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

1  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

2  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

3  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

4  particular book, and would require Meta to conduct an analysis of a third party database that is

5  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

6  Request to the extent that it presumes that the referenced author in fact authored the referenced

7  work—information that is outside of Meta's possession, custody, or control.

8      Meta admits that some text from a published and commercially-available version of *The*

9  *Confessions of Max Tivoli* is included in the third party Books3 dataset.  Except as expressly

10 admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on

11 that basis denies it.

12 **REQUEST FOR ADMISSION NO. 62:**

13     Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *How It Was*

14 *For Me*.

15 **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

16     Meta incorporates by reference its Objections to Instructions and Definitions, which are

17 applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

18 unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

19 ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

20 commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

21 burdensome for Meta to determine whether the books3 dataset contains the entirety of any

22 particular book, and would require Meta to conduct an analysis of a third party database that is

23 equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

24 Request to the extent that it presumes that the referenced author in fact authored the referenced

25 work—information that is outside of Meta's possession, custody, or control.

26     Meta admits that some text from a published and commercially-available version of *How It*

27 *Was For Me* is included in the third party Books3 dataset.  Except as expressly admitted, Meta

28 lacks information sufficient to form a belief as to the truth of this request, and on that basis denies

1    it.

2    **REQUEST FOR ADMISSION NO. 63:**

3        Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *Less*.

4    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

5        Meta incorporates by reference its Objections to Instructions and Definitions, which are

6    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

7    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

8    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

9    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

10    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

11    particular book, and would require Meta to conduct an analysis of a third party database that is

12    equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

13    Request to the extent that it presumes that the referenced author in fact authored the referenced

14    work—information that is outside of Meta's possession, custody, or control.

15        Meta admits that some text from a published and commercially-available version of *Less* is

16    included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information

17    sufficient to form a belief as to the truth of this request, and on that basis denies it.

18    **REQUEST FOR ADMISSION NO. 64:**

19        Admit that the Books3 database contains Plaintiff Andrew Sean Greer's work *The Path of

20    Minor Planets*.

21    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

22        Meta incorporates by reference its Objections to Instructions and Definitions, which are

23    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

24    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

25    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

26    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

27    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

28    particular book, and would require Meta to conduct an analysis of a third party database that is

1   equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this
2   Request to the extent that it presumes that the referenced author in fact authored the referenced
3   work—information that is outside of Meta's possession, custody, or control.

4        Meta admits that some text from a published and commercially-available version of *The*
5   *Path of Minor Planets* is included in the third party Books3 dataset.  Except as expressly admitted,
6   Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis
7   denies it.

8

9   **REQUEST FOR ADMISSION NO. 65:**

10       Admit that the Books3 database contains Plaintiff David Henry Hwang's work *Golden*
11  *Child*.

12  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

13       Meta incorporates by reference its Objections to Instructions and Definitions, which are
14  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and
15  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and
16  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,
17  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly
18  burdensome for Meta to determine whether the books3 dataset contains the entirety of any
19  particular book, and would require Meta to conduct an analysis of a third party database that is
20  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this
21  Request to the extent that it presumes that the referenced author in fact authored the referenced
22  work—information that is outside of Meta's possession, custody, or control.

23       Meta admits that some text from a published and commercially-available version of *Golden*
24  *Child* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks
25  information sufficient to form a belief as to the truth of this request, and on that basis denies it.

26  **REQUEST FOR ADMISSION NO. 66:**

27       Admit that the Books3 database contains Plaintiff David Henry Hwang's work *M. Butterfly*.

28  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

1    Meta incorporates by reference its Objections to Instructions and Definitions, which are

2    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

3    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

4    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

5    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

6    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

7    particular book, and would require Meta to conduct an analysis of a third party database that is

8    equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

9    Request to the extent that it presumes that the referenced author in fact authored the referenced

10   work—information that is outside of Meta's possession, custody, or control.

11    Meta admits that some text from a published and commercially-available version of *M.*

12   *Butterfly* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

13   information sufficient to form a belief as to the truth of this request, and on that basis denies it.

14   **REQUEST FOR ADMISSION NO. 67:**

15    Admit that the Books3 database contains Plaintiff David Henry Hwang's work *Trying to*

16   *Find Chinatown*.

17   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

18    Meta incorporates by reference its Objections to Instructions and Definitions, which are

19   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

20   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

21   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

22   commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

23   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

24   particular book, and would require Meta to conduct an analysis of a third party database that is

25   equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

26   Request to the extent that it presumes that the referenced author in fact authored the referenced

27   work—information that is outside of Meta's possession, custody, or control.

28    Meta admits that some text from a published and commercially-available version of *Trying*

1  *to Find Chinatown* is included in the third party Books3 dataset.  Except as expressly admitted,

2  Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis

3  denies it.

4  **REQUEST FOR ADMISSION NO. 68:**

5      Admit that the Books3 database contains Plaintiff Matthew Klam's work *Sam the Cat*.

6  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

7      Meta incorporates by reference its Objections to Instructions and Definitions, which are

8  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

9  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

10  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

11  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

12  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

13  particular book, and would require Meta to conduct an analysis of a third party database that is

14  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

15  Request to the extent that it presumes that the referenced author in fact authored the referenced

16  work—information that is outside of Meta's possession, custody, or control.

17      Meta admits that some text from a published and commercially-available version of *Sam

18  the Cat* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

19  information sufficient to form a belief as to the truth of this request, and on that basis denies it.

20  **REQUEST FOR ADMISSION NO. 69:**

21      Admit that the Books3 database contains Plaintiff Matthew Klam's work *Who is Rich*?

22  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

23      Meta incorporates by reference its Objections to Instructions and Definitions, which are

24  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

25  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

26  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

27  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

28  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Who is Rich*? is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 70:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *After I'm Gone*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *After I'm Gone* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 71:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *In a Strange City*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *In a Strange City* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 72:**

Admit that the Books3 database contains Plaintiff Laura Lippman's work *Lady in the Lake*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Lady in the Lake* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

1    **REQUEST FOR ADMISSION NO. 73:**

2         Admit that the Books3 database contains Plaintiff Laura Lippman's work *Sunburn*.

3    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

4         Meta incorporates by reference its Objections to Instructions and Definitions, which are

5    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

6    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

7    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

8    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

9    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

10   particular book, and would require Meta to conduct an analysis of a third party database that is

11   equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

12   Request to the extent that it presumes that the referenced author in fact authored the referenced

13   work—information that is outside of Meta's possession, custody, or control.

14        Meta admits that some text from a published and commercially-available version of

15   *Sunburn* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

16   information sufficient to form a belief as to the truth of this request, and on that basis denies it.

17   **REQUEST FOR ADMISSION NO. 74:**

18        Admit that the Books3 database contains Plaintiff Laura Lippman's work *What the Dead*

19   *Know*.

20   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

21        Meta incorporates by reference its Objections to Instructions and Definitions, which are

22   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

23   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

24   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

25   commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

26   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

27   particular book, and would require Meta to conduct an analysis of a third party database that is

28   equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

1   Request to the extent that it presumes that the referenced author in fact authored the referenced

2   work—information that is outside of Meta's possession, custody, or control.

3       Meta admits that some text from a published and commercially-available version of *What*

4   *the Dead Know* is included in the third party Books3 dataset.  Except as expressly admitted, Meta

5   lacks information sufficient to form a belief as to the truth of this request, and on that basis denies

6   it.

7   **REQUEST FOR ADMISSION NO. 75:**

8       Admit that the Books3 database contains Plaintiff Laura Lippman's work *Wilde Lake*.

9   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

10      Meta incorporates by reference its Objections to Instructions and Definitions, which are

11  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

12  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

13  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

14  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

15  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

16  particular book, and would require Meta to conduct an analysis of a third party database that is

17  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

18  Request to the extent that it presumes that the referenced author in fact authored the referenced

19  work—information that is outside of Meta's possession, custody, or control.

20      Meta admits that some text from a published and commercially-available version of *Wilde*

21  *Lake* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

22  information sufficient to form a belief as to the truth of this request, and on that basis denies it.

23  **REQUEST FOR ADMISSION NO. 76:**

24      Admit that the Books3 database contains Plaintiff Rachel Louise Snyder's work *No Visible*

25  *Bruises: What We Don't Know About Domestic Violence Can Kill Us*.

26  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

27      Meta incorporates by reference its Objections to Instructions and Definitions, which are

28  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *No Visible Bruises: What We Don't Know About Domestic Violence Can Kill Us l* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 77:**

Admit that the Books3 database contains Plaintiff Lysa TerKeurst's work *Embraced*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Embraced* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

1    **REQUEST FOR ADMISSION NO. 78:**

2        Admit that the Books3 database contains Plaintiff Lysa TerKeurst's work *Unglued*.

3    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

4        Meta incorporates by reference its Objections to Instructions and Definitions, which are

5    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

6    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

7    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

8    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

9    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

10    particular book, and would require Meta to conduct an analysis of a third party database that is

11    equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

12    Request to the extent that it presumes that the referenced author in fact authored the referenced

13    work—information that is outside of Meta's possession, custody, or control.

14        Meta admits that some text from a published and commercially-available version of

15    *Unglued* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

16    information sufficient to form a belief as to the truth of this request, and on that basis denies it.

17    **REQUEST FOR ADMISSION NO. 79:**

18        Admit that the Books3 database contains Plaintiff Lysa TerKeurst's work *Made to Crave*

19    *Devotional*.

20    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

21        Meta incorporates by reference its Objections to Instructions and Definitions, which are

22    applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

23    unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

24    ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

25    commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

26    burdensome for Meta to determine whether the books3 dataset contains the entirety of any

27    particular book, and would require Meta to conduct an analysis of a third party database that is

28    equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

1  Request to the extent that it presumes that the referenced author in fact authored the referenced

2  work—information that is outside of Meta's possession, custody, or control.

3      Meta admits that some text from a published and commercially-available version of *Made*

4  *to Crave Devotional* is included in the third party Books3 dataset.  Except as expressly admitted,

5  Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis

6  denies it.

7  **REQUEST FOR ADMISSION NO. 80:**

8      Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *After Tupac*

9  *& D Foster.*

10  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

11      Meta incorporates by reference its Objections to Instructions and Definitions, which are

12  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

13  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

14  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

15  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

16  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

17  particular book, and would require Meta to conduct an analysis of a third party database that is

18  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

19  Request to the extent that it presumes that the referenced author in fact authored the referenced

20  work—information that is outside of Meta's possession, custody, or control.

21      Meta admits that some text from a published and commercially-available version of *After*

22  *Tupac & D Foster* is included in the third party Books3 dataset.  Except as expressly admitted,

23  Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis

24  denies it.

25  **REQUEST FOR ADMISSION NO. 81:**

26      Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Another*

27  *Brooklyn.*

28  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Another Brooklyn* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 82:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Behind You*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Behind You* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

1   information sufficient to form a belief as to the truth of this request, and on that basis denies it.

2   **REQUEST FOR ADMISSION NO. 83:**

3       Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Beneath a*

4   *Meth Moon*.

5   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

6       Meta incorporates by reference its Objections to Instructions and Definitions, which are

7   applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

8   unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

9   ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

10  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

11  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

12  particular book, and would require Meta to conduct an analysis of a third party database that is

13  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

14  Request to the extent that it presumes that the referenced author in fact authored the referenced

15  work—information that is outside of Meta's possession, custody, or control.

16      Meta admits that some text from a published and commercially-available version of *Beneath*

17  *a Meth Moon* is included in the third party Books3 dataset.  Except as expressly admitted, Meta

18  lacks information sufficient to form a belief as to the truth of this request, and on that basis denies

19  it.

20  **REQUEST FOR ADMISSION NO. 84:**

21      Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Brown Girl*

22  *Dreaming*.

23  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

24      Meta incorporates by reference its Objections to Instructions and Definitions, which are

25  applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and

26  unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

27  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

28  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Brown Girl Dreaming* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 85:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Feathers*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Feathers* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 86:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Harbor Me*.

1   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

2       Meta incorporates by reference its Objections to Instructions and Definitions, which are

3   applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

4   unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

5   ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create,

6   commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

7   burdensome for Meta to determine whether the books3 dataset contains the entirety of any

8   particular book, and would require Meta to conduct an analysis of a third party database that is

9   equally accessible to Plaintiffs for every word of any particular work. Meta further object to this

10  Request to the extent that it presumes that the referenced author in fact authored the referenced

11  work—information that is outside of Meta's possession, custody, or control.

12      Meta admits that some text from a published and commercially-available version of *Harbor*

13  *Me* is included in the third party Books3 dataset. Except as expressly admitted, Meta lacks

14  information sufficient to form a belief as to the truth of this request, and on that basis denies it.

15  **REQUEST FOR ADMISSION NO. 87:**

16      Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *If You Come*

17  *Softly*.

18  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

19      Meta incorporates by reference its Objections to Instructions and Definitions, which are

20  applicable to this Request. Meta objects to the term "contains" as vague and ambiguous and

21  unintelligible in the context of this RFA. Meta objects to the term "Books3 database" as vague and

22  ambiguous. Meta will construe this term to mean the third party dataset that Meta did not create,

23  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

24  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

25  particular book, and would require Meta to conduct an analysis of a third party database that is

26  equally accessible to Plaintiffs for every word of any particular work. Meta further object to this

27  Request to the extent that it presumes that the referenced author in fact authored the referenced

28  work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *If You Come Softly* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 88:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Miracle's Boys*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create, commonly known as Books3. Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the books3 dataset contains the entirety of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Meta admits that some text from a published and commercially-available version of *Miracle's Boys* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it..

**REQUEST FOR ADMISSION NO. 89:**

Admit that the Books3 database contains Plaintiff Jacqueline Woodson's work *Red at the Bone*.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta objects to the term "contains" as vague and ambiguous and unintelligible in the context of this RFA.  Meta objects to the term "Books3 database" as vague and

1  ambiguous.  Meta will construe this term to mean the third party dataset that Meta did not create,

2  commonly known as Books3. Meta further objects to this Request on the ground that it is unduly

3  burdensome for Meta to determine whether the books3 dataset contains the entirety of any

4  particular book, and would require Meta to conduct an analysis of a third party database that is

5  equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this

6  Request to the extent that it presumes that the referenced author in fact authored the referenced

7  work—information that is outside of Meta's possession, custody, or control.

8       Meta admits that some text from a published and commercially-available version of *Red at*

9  *the Bone* is included in the third party Books3 dataset.  Except as expressly admitted, Meta lacks

10  information sufficient to form a belief as to the truth of this request, and on that basis denies it.

11

12  Dated: December 13, 2024                         COOLEY LLP

13                                           By:  */s/Judd Lauter*

14                                                Bobby Ghajar
                                                 Mark Weinstein
15                                               Kathleen Hartnett
                                                 Judd Lauter
16                                               Liz Stameshkin
                                                 Colette Ghazarian

17  *Full Counsel List*                          LEX LUMINA PLLC
                                                 Mark A. Lemley
18  COOLEY LLP
    PHILLIP MORTON *(pro hac vice)*              CLEARY GOTTLIEB STEEN &
19  (pmorton@cooley.com)                         HAMILTON LLP
    COLE A. POPPELL (pro hac vice)               Angela L. Dunning
20  (cpoppell@cooley.com)
    1299 Pennsylvania Avenue, NW, Suite 700      Attorneys for Defendant
21  Washington, DC 20004-2400                    META PLATFORMS, INC.
    Telephone:    (202) 842-7800
22
    COOLEY LLP
23  MATTHEW BRIGHAM (191428)
    (mbrigham@cooley.com)
24  JUAN PABLO GONZALEZ (334470)
    (jgonzalez@cooley.com)
25  3175 Hanover Street
    Palo Alto, CA  94304-1130
26  Telephone:    (650) 843-5000

27  LEX LUMINA PLLC
    MARK A. LEMLEY (155830)
28  (mlemley@lex-lumina.com)
    745 Fifth Avenue, Suite 500

1  New York, NY 10151
   Telephone:    (646) 898-2055
2

1

**PROOF OF SERVICE**

2        I am a citizen of the United States and a resident of the State of California.  I am

3   employed in Los Angeles County, State of California, in the office of a member of the bar of this

4   Court, at whose direction the service was made.  I am over the age of eighteen years, and not a

5   party to the within action.  My business address is Cooley LLP, 355 South Grand Avenue, Suite

6   900, Los Angeles, CA  90071.  On the date set forth below I served the documents described

7   below in the manner described below:

8        • **DEFENDANT META PLATFORMS, INC.'S AMENDED OBJECTIONS AND RESPONSES TO
           PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS**

9

10       ☒    (BY ELECTRONIC MAIL) I am personally and readily familiar with the business
             practice of Cooley LLP for the preparation and processing of documents in
11           portable document format (PDF) for e-mailing, and I caused said documents to be
             prepared in PDF and then served by electronic mail to the parties listed below.

12  on the following part(ies) in this action:

13  *Service list on next page.*

14       Executed on December 13, 2024, at Los Angeles, California.

15

16       */s/Jerry Gonzalez*
         Jerry Gonzalez

17

18

19

20

21

22

23

24

25

26

27

28

1

**SERVICE LIST**

2

Joseph R. Saveri
3  Cadio Zirpoli
Christopher K.L. Young
4  Holden Benon
Louis Andrew Kessler
5  Aaron Cera
Margaux Poueymirou
6  **JOSEPH SAVERI LAW FIRM, LLP**
7  601 California Street, Suite 1000
San Francisco, CA 94108
8  Email: jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
9  cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
10  lkessler@saverilawfirm.com
acera@saverilawfirm.com
11  mpoueymirou@saverilawfirm.com
12
Matthew Butterick
13  **MATTHEW BUTTERICK,**
**ATTORNEY AT LAW**
14  1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
15  Email: mb@butericklaw.com
16  *Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*
17
Bryan L. Clobes (admitted *pro hac vice*)
18  Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed Rathur
19  **CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
20  135 South LaSalle Street, Suite 3210
Chicago, IL 60603
21  Email: bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
22  mrathur@caffertyclobes.com
23
*Attorneys for Individual and Representative*
24  *Plaintiffs and the Proposed Class*
25

26

27

28

Joshua I. Schiller, Esq.
Maxwell Vaughn Pritt, Esq.
**BOIES SCHILLE FLEXNER**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jischiller@bsfllp.com
mpritt@bsfllp.com

David Boise, Esq. (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
1401 New York Ave. NW
Washington, DC 20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
julwick@dicellolevitt.com
ndjordjevic@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

Cooley LLP
Attorneys at Law

2

Meta's Amended Obj & Resps to
Pltf's First Set of RFA's
3:23-cv-03417-VC

1  Elizabeth J. Cabraser, Esq.
   Daniel M. Hutchinson, Esq.
2  Reilly T. Stoler, Esq.
   **LIEFF CABRASER HEIMANN &**
3  **BERNSTEIN, LLP**
   275 Battery Street, 29th Floor
4  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
5  Email: ecabraser@lchb.com
            dhutchinson@lchb.com
6            rstoler@lchb.com

7  Rachel Geman
   **LIEFF CABRASER HEIMANN &**
8  **BERNSTEIN, LLP**
   250 Hudson Street, 8th Floor
9  New York, New York 10013-1413
   Telephone: (212) 355-9500
10 Email: rgeman@lchb.com

11

12 Attorneys for Plaintiff *Christopher Farnsworth
   and Representative Plaintiffs and the Proposed
   Class*

Nancy Evelyn Wolff
**COWAN DEBAETS ABRAHAMS &**
**SHEPPARD LLP**
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 340-6334
Fax: (310) 492-4394
Email: NWolff@cdas.com

Scott J. Sholder
CeCe M. Cole
**COWAN DEBAETS ABRAHAMS &**
**SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Email: ssholder@cdas.com
            ccole@cdas.com

Attorneys for Plaintiff *Christopher Farnsworth
and Representative Plaintiffs and the Proposed
Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    COOLEY LLP
     BOBBY GHAJAR (198719)
2    (bghajar@cooley.com)
     TERESA MICHAUD (296329)
3    (tmichaud@cooley.com)
     COLETTE GHAZARIAN (322235)
4    (cghazarian@cooley.com)
     1333 2nd Street, Suite 400
5    Santa Monica, California 90401
     Telephone:    (310) 883-6400
6
     MARK WEINSTEIN (193043)
7    (mweinstein@cooley.com)
     KATHLEEN HARTNETT (314267)
8    (khartnett@cooley.com)
     JUDD LAUTER (290945)
9    (jlauter@cooley.com)
     ELIZABETH L. STAMESHKIN (260865)
10   (lstameshkin@cooley.com)
     3175 Hanover Street
11   Palo Alto, CA  94304-1130
     Telephone:    (650) 843-5000
12   CLEARY GOTTLIEB STEEN & HAMILTON LLP
     ANGELA L. DUNNING (212047)
13   (adunning@cgsh.com)
     1841 Page Mill Road, Suite 250
14   Palo Alto, CA 94304
     Telephone: (650) 815-4131
15
     *[Full Listing on Signature Page]*
16
     *Counsel for Defendant Meta Platforms, Inc.*
17                    **UNITED STATES DISTRICT COURT**

18                   **NORTHERN DISTRICT OF CALIFORNIA**

19                      **SAN FRANCISCO DIVISION**

20   RICHARD KADREY, *et al.*,                    Case No. 3:23-cv-03417-VC

21   Individual and Representative
                                                  **DEFENDANT META PLATFORMS, INC.'S**
22                            Plaintiffs,          **AMENDED OBJECTIONS AND RESPONSES TO**
                                                  **PLAINTIFFS' SECOND SET OF REQUESTS**
23          v.                                     **FOR ADMISSIONS**

24   META PLATFORMS, INC., a Delaware
     corporation;
25
                              Defendant.
26

27

28

COOLEY LLP
ATTORNEYS AT LAW

| | |
|---|---|
| **PROPOUNDING PARTY:** | **PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH** |
| **RESPONDING PARTY:** | **DEFENDANT META PLATFORMS, INC.** |
| **SET NUMBER:** | **SECOND** |

Pursuant to Rule 36 of the Federal Rules of Civil Procedure ("Rules"), Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's Second Set of Requests for Admissions ("Requests").

## I.    OBJECTIONS AND RESPONSES TO ALL REQUESTS

**1.**    Meta's responses to the Requests are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and Meta reserves the right to amend, revise, correct, supplement, or clarify the responses and objections propounded herein.

**2.**    To the extent a Request seeks information that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Rule 26(c) and/or Federal Rule of Evidence 501, Meta will only provide such information subject to, and in accordance with, the parties' stipulated protective order (ECF No. 90, the "Protective Order").

**3.**    The provision of a response to any of these Requests does not constitute a waiver of any objection regarding the use of said response in these proceedings. Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to the Requests.

**4.**    Meta objects to Plaintiffs' Requests insofar as the numbering of the Requests overlaps with the numbering of Plaintiffs' First Set of Requests for Admissions. To avoid

confusion, Meta has numbered its responses consecutively based on Plaintiffs' First Set of Requests for Admissions, beginning with "Request for Admission No. 90."

**5.**    Meta reserves the right to object on any ground at any time to such other or supplemental requests for admission that Plaintiffs may propound involving or relating to the subject matter of these Requests.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Request, Meta makes these objections to the following Instructions and Definitions.

**1.**    Meta objects to the definition of "You," "Your," and "Meta Platforms" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents outside of its possession, custody, or control. Meta construes "Meta" or "You" to mean Meta Platforms, Inc.

**2.**    Meta objects to Instruction 1 as vague and ambiguous as to "Plaintiffs' Second Set of Requests for Production of Documents," as Plaintiffs also served "Plaintiffs' Corrected Second Set of Requests for Production" on the same day, March 20, 2024. Meta further objects to Instruction 1 to the extent that the instructions set forth in Plaintiffs' Second Set of Requests for Production of Documents are inapplicable to responding to requests for admission. To the extent those instructions are applicable to responding to the Requests, Meta incorporates its Objections to Instructions and Definitions set forth in its Objections and Responses to Plaintiffs' Corrected Second Set of Requests for Production of Documents.

**3.**    Meta objects to Instruction 2 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law. Meta also objects to this instruction on the ground that it improperly demands narrative responses, which are the proper subject not of requests for admissions but of interrogatories, and thereby seeks to circumvent the interrogatory limit.

**4.**    Meta objects to Instruction No. 5 as vague, ambiguous, and unintelligible. Meta will answer the Requests as provided under Rule 36(a)(4).

**5.**        Meta objects to Instruction Nos. 8 and 9 as overbroad and unduly burdensome to the extent that they purport to require more of Meta than any obligation imposed by law.

**6.**        Meta objects to Instruction 10 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law.  Meta also objects to this instruction on the ground that it improperly demands narrative responses, which are the proper subject not of requests for admissions but of interrogatories, and thereby seeks to circumvent the interrogatory limit.

### III.     AMENDED OBJECTIONS AND RESPONSES TO INDIVIDUAL DOCUMENT REQUESTS

**REQUEST FOR ADMISSION NO. 90:**

Admit that *Blood Oath* by Christopher Farnsworth was included in a dataset used to train Your large language models.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request.  Meta further objects to the term "large language models" as vague, ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works.  Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.

Meta further objects to this Request on the ground that it is unduly burdensome for Meta to determine whether the datasets used to train Meta's large language models (as construed above) contain the entirety of the text of any particular book, and would require Meta to conduct an analysis of a third party database that is equally accessible to Plaintiffs for every word of any particular work.  Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

1    Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta

2    admits that text from a published and commercially-available version of *Blood Oath* is included in

3    a dataset used to train Meta's large language models, as that term is construed above.   Except as

4    expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request,

5    and on that basis denies it.

6    **REQUEST FOR ADMISSION NO. 91:**

7    Admit that *The President's Vampire* by Christopher Farnsworth was included in a dataset

8    used to train Your large language models.

9    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 91:**

10   Meta incorporates by reference its Objections to Instructions and Definitions, which are

11   applicable to this Request.  Meta further objects to the term "large language models" as vague,

12   ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

13   the needs of the case to the extent that it purports to include large language models that were not

14   publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

15   allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

16   within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

17   1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.

18   Meta further objects to this Request on the ground that it is unduly burdensome for Meta to

19   determine whether the datasets used to train Meta's large language models (as construed above)

20   contain the entirety of the text of any particular book, and would require Meta to conduct an analysis

21   of a third party database that is equally accessible to Plaintiffs for every word of any particular

22   work.  Meta further object to this Request to the extent that it presumes that the referenced author

23   in fact authored the referenced work—information that is outside of Meta's possession, custody, or

24   control.

25   Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta

26   admits that text from a published and commercially-available version of *The President's Vampire*

27   is included in a dataset used to train Meta's large language models, as that term is construed

28

1  above.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the

2  truth of this request, and on that basis denies it.

3  **REQUEST FOR ADMISSION NO. 92:**

4      Admit that *Red, White, and Blood* by Christopher Farnsworth was included in a dataset used

5  to train Your large language models.

6  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

7      Meta incorporates by reference its Objections to Instructions and Definitions, which are

8  applicable to this Request.  Meta further objects to the term "large language models" as vague,

9  ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

10  the needs of the case to the extent that it purports to include large language models that were not

11  publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

12  allegedly copyrighted works.  Meta construes "large language models" to mean the models within

13  the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama

14  2, Code Llama, Llama 3, Llama 4, and Llama 5.  Meta further objects to this Request on the ground

15  that the referenced work, *Red, White, and Blood*, is not alleged to be at issue in this action.

16  **REQUEST FOR ADMISSION NO. 93:**

17      Admit that *The Burning Men: A Nathaniel Cade Story* by Christopher Farnsworth was

18  included in a dataset used to train Your large language models.

19  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

20      Meta incorporates by reference its Objections to Instructions and Definitions, which are

21  applicable to this Request.  Meta further objects to the term "large language models" as vague,

22  ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

23  the needs of the case to the extent that it purports to include large language models that were not

24  publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

25  allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

26  within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

27  1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.  Meta further objects to this Request on

28

1    the ground that the referenced work, *The Burning Men: A Nathaniel Cade Story* is not alleged to

2    be at issue in this action.

3    **REQUEST FOR ADMISSION NO. 94:**

4    Admit that *The Eternal World* by Christopher Farnsworth was included in a dataset used to

5    train Your large language models.

6    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

7    Meta incorporates by reference its Objections to Instructions and Definitions, which are

8    applicable to this Request.  Meta further objects to the term "large language models" as vague,

9    ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

10   the needs of the case to the extent that it purports to include large language models that were not

11   publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

12   allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

13   within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

14   1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.

15   Meta further objects to this Request on the ground that it is unduly burdensome for Meta to

16   determine whether the datasets used to train Meta's large language models (as construed above)

17   contain the entirety of the text of any particular book, and would require Meta to conduct an analysis

18   of a third party database that is equally accessible to Plaintiffs for every word of any particular

19   work.  Meta further object to this Request to the extent that it presumes that the referenced author

20   in fact authored the referenced work—information that is outside of Meta's possession, custody, or

21   control.

22   Subject to and without waiving the foregoing objections, Meta responds as follows:  Meta

23   admits that text from a published and commercially-available version of *The Eternal World* is

24   included in a dataset used to train Meta's large language models, as that term is construed

25   above.  Except as expressly admitted, Meta lacks information sufficient to form a belief as to the

26   truth of this request, and on that basis denies it.

27

28

1    **REQUEST FOR ADMISSION NO. 95:**

2        Admit that *Killfile* by Christopher Farnsworth was included in a dataset used to train Your

3    large language models.

4    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

5        Meta incorporates by reference its Objections to Instructions and Definitions, which are

6    applicable to this Request.  Meta further objects to the term "large language models" as vague,

7    ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

8    the needs of the case to the extent that it purports to include large language models that were not

9    publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

10   allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

11   within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

12   1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.  Meta further objects to this Request on

13   the ground that the referenced work, *Killfile*, is not alleged to be at issue in this action.

14   **REQUEST FOR ADMISSION NO. 96:**

15       Admit that *Flashmob* by Christopher Farnsworth was included in a dataset used to train

16   Your large language models.

17   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 96:**

18       Meta incorporates by reference its Objections to Instructions and Definitions, which are

19   applicable to this Request.  Meta further objects to the term "large language models" as vague,

20   ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to

21   the needs of the case to the extent that it purports to include large language models that were not

22   publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs'

23   allegedly copyrighted works.  Meta construes the term "large language models" to mean the models

24   within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama

25   1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.

26       Meta further objects to this Request on the ground that it is unduly burdensome for Meta to

27   determine whether the datasets used to train Meta's large language models (as construed above)

28   contain the entirety of the text of any particular book, and would require Meta to conduct an analysis

of a third party database that is equally accessible to Plaintiffs for every word of any particular work. Meta further object to this Request to the extent that it presumes that the referenced author in fact authored the referenced work—information that is outside of Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta admits that text from a published and commercially-available version of *Flashmob* is included in a dataset used to train Meta's large language models, as that term is construed above. Except as expressly admitted, Meta lacks information sufficient to form a belief as to the truth of this request, and on that basis denies it.

**REQUEST FOR ADMISSION NO. 97:**

Admit that *Deep State: A Nathaniel Cade Story* by Christopher Farnsworth was included in a dataset used to train Your large language models.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta further objects to the term "large language models" as vague, ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5. Meta further objects to this Request on the ground that the referenced work, *Deep State: A Nathaniel Cade Story*, is not alleged to be at issue in this action.

**REQUEST FOR ADMISSION NO. 98:**

Admit that you used books sourced from Books3 to train one or more of your large language models.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

Meta incorporates by reference its Objections to Instructions and Definitions, which are applicable to this Request. Meta objects to this Request and vague, ambiguous, and unintelligible, as written. It is not clear to Meta what it means to use "books sourced from Books3." Meta further objects to the term "large language models" as vague, ambiguous, and undefined, as well as overbroad, and unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. Meta construes the term "large language models" to mean the models within the Llama family of LLMs that have been or are being developed by Meta, namely, Llama 1, Llama 2, Code Llama, Llama 3, Llama 4, and Llama 5.

Subject to and without waiving the foregoing objections, Meta responds as follows: As written, Meta does not understand this Request and, on that basis, denies the Request. Meta is willing to meet and confer to understand how to interpret this Request.

Dated: December 13, 2024

COOLEY LLP

By: */s/Judd Lauter*
Bobby Ghajar
Mark Weinstein
Kathleen Hartnett
Teresa Michaud
Judd Lauter
Liz Stameshkin
Colette Ghazarian

*Full Counsel List*

COOLEY LLP
PHILLIP MORTON *(pro hac vice)*
(pmorton@cooley.com)
COLE A. POPPELL (pro hac vice)
(cpoppell@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:     (202) 842-7800

COOLEY LLP
MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
JUAN PABLO GONZALEZ (334470)
(jgonzalez@cooley.com)
3175 Hanover Street

LEX LUMINA PLLC
Mark A. Lemley

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
Angela L. Dunning

Attorneys for Defendant
META PLATFORMS, INC.

1   Palo Alto, CA  94304-1130
    Telephone:     (650) 843-5000
2
    LEX LUMINA PLLC
3   MARK A. LEMLEY (155830)
    (mlemley@lex-lumina.com)
4   745 Fifth Avenue, Suite 500
    New York, NY 10151
5   Telephone:     (646) 898-2055

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the State of California.  I am employed in Los Angeles County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is Cooley LLP, 355 South Grand Avenue, Suite 900, Los Angeles, CA  90071.  On the date set forth below I served the documents described below in the manner described below:

- **DEFENDANT META PLATFORMS, INC.'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSIONS**

☒  (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

*Service list on next page.*

Executed on December 13, 2024, at Los Angeles, California.

*/s/Jerry Gonzalez*
Jerry Gonzalez

**SERVICE LIST**

| | |
|---|---|
| 1 | |

Joseph R. Saveri
Cadio Zirpoli
Christopher K.L. Young
Holden Benon
Louis Andrew Kessler
Aaron Cera
Margaux Poueymirou
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Email: jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
lkessler@saverilawfirm.com
acera@saverilawfirm.com
mpoueymirou@saverilawfirm.com

Matthew Butterick
**MATTHEW BUTTERICK,
ATTORNEY AT LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Email: mb@butericklaw.com

*Attorneys for Individual and Representative
Plaintiffs and the Proposed Class*

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed Rathur (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Email: bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

*Attorneys for Individual and Representative
Plaintiffs and the Proposed Class*

Joshua I. Schiller, Esq.
Maxwell Vaughn Pritt, Esq.
**BOIES SCHILLER FLEXNER**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jischiller@bsfllp.com
mpritt@bsfllp.com

David Boies, Esq. (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
1401 New York Ave. NW
Washington, DC 20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative
Plaintiffs and the Proposed Class*

Brian O'Mara
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
julwick@dicellolevitt.com
ndjordjevic@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

**Meta's Amended Obj & Resps to
Pltf's First Set of RFA's
3:23-cv-03417-VC**

1   Elizabeth J. Cabraser, Esq.
    Daniel M. Hutchinson, Esq.
2   Reilly T. Stoler, Esq.
    **LIEFF CABRASER HEIMANN &**
3   **BERNSTEIN, LLP**
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
5   Email: ecabraser@lchb.com
              dhutchinson@lchb.com
6             rstoler@lchb.com

7   Rachel Geman
    **LIEFF CABRASER HEIMANN &**
8   **BERNSTEIN, LLP**
    250 Hudson Street, 8th Floor
9   New York, New York 10013-1413
    Telephone: (212) 355-9500
10  Email: rgeman@lchb.com

11
    Attorneys for Plaintiff *Christopher Farnsworth*
12  *and Representative Plaintiffs and the Proposed*
    *Class*
13

Nancy Evelyn Wolff
**COWAN DEBAETS ABRAHAMS &**
**SHEPPARD LLP**
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 340-6334
Fax: (310) 492-4394
Email: NWolff@cdas.com

Scott J. Sholder
CeCe M. Cole
**COWAN DEBAETS ABRAHAMS &**
**SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Email: ssholder@cdas.com
          ccole@cdas.com

Attorneys for Plaintiff *Christopher Farnsworth*
*and Representative Plaintiffs and the Proposed*
*Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28