Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                hbenon@saverilawfirm.com
                kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:          mb@butericklaw.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| Richard Kadrey, Sarah Silverman, Christopher Golden, Michael Chabon, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Ayelet Waldman, and Jacqueline Woodson, <br><br> *Individual and Representative Plaintiffs*, <br><br> v. <br><br> Meta Platforms, Inc., a Delaware corporation; <br><br> *Defendant.* | Case No. 3:23-cv-03417-VC <br><br> **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT META** |

In accordance with Federal Rules of Civil Procedure Rules 26 and 33, Plaintiffs, by and through their undersigned attorneys, hereby request that Defendant Meta respond to the following First Set of Interrogatories separately and fully, in writing and under oath, within thirty (30) days of service hereof, in accordance with the following definitions and instructions.

## DEFINITIONS

As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form:

1.      "Agreements" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, including all drafts, versions, modifications, amendments, attachments, exhibits, and appendices thereof.

2.      "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3.      "Communications" means oral or written communications of any kind, communicated directly or indirectly, Including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (Including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" Includes instances where one party disseminates information that the other party receives but does not respond to.

4.      "Complaint" refers to the operative complaint at the time documents are produced in response to these requests. At the time of service, the currently operative Complaint is Plaintiffs' First Amended Complaint. ECF No. 64.

5.      "Concerning" refers to and includes "constituting," "evidencing," "supporting,"

"regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining

to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving,"

"connected with," "commenting on," "about," showing," "describing," and/or logically or

factually dealing with the matter described in the request in which the term appears.

6.      "Defendant" means Defendant Meta Platforms, Inc.

7.      "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules

of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting,

typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail

or facsimile, and every other means of recording upon any tangible thing, any form of

communication or representation, Including letters, words, pictures, sounds, or symbols, or

combinations thereof, and any record thereby created, regardless of the manner in which the record

has been stored.

This Includes:

- The originals, drafts and All non-identical copies thereof, whether different from the
  original by reason of any notation made on such copies or otherwise;

- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts,
  agreements, photographs, minutes, memoranda, messages, appraisals, analyses,
  reports, financial calculations and representations, invoices, accounting and diary
  entries, inventory sheets, diaries, appointment books or calendars, teletypes,
  telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press
  releases, advertisements, notes, working papers, drawings, schedules, tabulations,
  projections, information or programs stored in a computer (whether or not ever
  printed out or displayed), and All drafts, alterations, modifications, changes or
  amendments of any of the foregoing;

- Graphic or aural representations of any kind, Including, without limitation,
  photographs, microfiche, microfilm, videotapes, recordings, drawings, charts and
  motion pictures;

- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or

on any electronic, mechanical, magnetic, or optical device Including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

8.     "Identify" as it pertains to Persons means to describe each Person by name, residence address, residence telephone number, occupation, title, business address, and business telephone number. The term "Identify" as pertains to Documents means to state, to the extent known, the date the Document bears, if any; the title of the Document; the author(s) of the Document; the recipient(s) of the Document and the present location(s) or custodian of the Document.

9.     "Including" and "Includes" are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "Including" and "Includes" shall be construed as if followed by the phrase "but not limited to."

10.     "Llama 1" means the series of language models originally styled "LLaMA" and released by Meta in February 2023, as well as precursor models and variant models.

11.     "Llama 2" means the series of language models of the same name released by Meta in July 2023, as well as precursor models and variant models.

12.     "Llama 3" means the series of language models of the same name intended as a successor to Llama 2 and currently in development at Meta (according to a public statement by Meta in October 2023), as well as precursor models and variant models.

13.     "Meta" means Meta Platforms, Inc., their respective parents, owners, directors, subsidiaries and any company, business entity or person in which any of them possess an ownership interest greater than five percent.

14.     "Meta Language Models" means the series of large language models known as Llama 1, Llama 2, and Llama 3, as well as their precursor models and variant models.

15.     "Person" means any natural person or any business, legal, or governmental entity or association.

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

COOLEY LLP
MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone:    (650) 815-4131

*[Full Listing on Signature Page]*

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC., a Delaware corporation;<br><br>                    Defendant. | Case No. 3:23-cv-03417-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S FURTHER SUPPLEMENTAL AND AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>Trial Date: None<br>Date Action Filed: July 7, 2023 |

**PROPOUNDING PARTY:** **PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH**

**RESPONDING PARTY:** **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER: ONE** **ONE**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's ("Plaintiffs") First Set of Interrogatories ("Interrogatories").

## I.    RESPONSES TO ALL INTERROGATORIES

**1.** Meta's responses to these Interrogatories are made to the best of Meta's current employees' present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.** To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the parties' stipulated protective order governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL

- ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction (ECF No. 90, the "Protective Order").

**3.**     Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS[1]

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions:

**1.**     Meta objects to the definition of "Agreement" as overbroad and unduly burdensome to the extent that it encompasses oral contracts, arrangements, or understandings, including those that are informal.  Meta further objects to the definition of "Agreement" as vague, ambiguous, and unintelligible as to the term "modifications" to the extent it is intended to mean something distinct from "versions" or "amendments."  Meta will construe "Agreement" to mean written contracts, including drafts, versions, amendments, exhibits, and appendices thereof.

**2.**     Meta objects to the definition of "Communications" to the extent it is inconsistent with and otherwise seeks to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the Stipulated Protocol regarding Electronic Discovery ("ESI Order").  Meta will produce Documents, including Communications, pursuant to the terms of the ESI Order, and any agreement to produce such Documents is explicitly in view of the terms of the ESI Order.  To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate.  Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiffs.

---

[1] In connection with these First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, Meta has updated its objections to Plaintiffs' definitions of "Communications," "Llama 3," and "Meta Language Models" to address the entry of the ESI Order and the release of Llama 3.

**3.** Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses. For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLM released by Meta under that name on April 18, 2024, July 23, 2024, and September 25, 2024.

**4.** Meta objects to the definition of "Meta" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning any "owners" regardless of shareholder interest and shareholders with an ownership of in Meta of greater than 5%. Meta will construe "Meta" or "You" to mean Meta Platforms, Inc.

**5.** Meta objects to the definition of "Meta Language Models" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning LLMs that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to this definition to the extent that it purports to require Meta to produce documents that are not relevant to any party's claims or defenses. Meta will construe "Meta Language Models" to mean the models within the Llama family of LLMs that have been publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3 (as those terms are construed above).

1   **6.**     Meta objects to the definition of "Relevant Period" as vague, ambiguous, and

2   unintelligible, as it is defined circularly to mean "all times relevant to… the Complaint." Meta will

3   construe the Relevant Period to mean January 1, 2022 to the present.

4   **7.**     Meta objects to the definition of "Training Data" as vague, ambiguous, and

5   unintelligible as to the term "other material," which is indefinite and undefined. Meta further

6   objects to the definition of "Training Data" as vague and ambiguous as to the phrase "considered

7   for use," which, read literally, would encompass any dataset considered by any Meta employee,

8   regardless of the seriousness of such consideration and whether or not that consideration was ever

9   acted upon. Meta further objects to this definition to the extent it purports to include datasets (or

10   "considered" datasets) that include content to which Plaintiffs have made no claim of ownership

11   and which are not the subject of any allegations of copyright infringement by Plaintiffs. Meta will

12   construe "Training Data" to mean the "Books3" textual dataset used to train the Meta Language

13   Models (as construed above).

14   **8.**     Meta objects to the definition of "You" and "Your" as overbroad, unduly

15   burdensome, and nonsensical, insofar as it refers to "the specific Defendant(s) producing

16   documents in response to these Requests." There is only one defendant in this case, Meta, and this

17   response is to the Interrogatories, not any document requests. Meta further objects to this definition

18   to the extent it seeks to impose upon Meta an obligation to investigate information or documents

19   outside of its possession, custody, or control. For purposes of these responses, Meta construes the

20   terms "You" and "Your" coextensively with Meta (as construed above).

21   **9.**     Meta objects to Instruction 1 to the extent that it purports to require more of Meta

22   than any obligation imposed by law, and would subject Meta to unreasonable and undue burden

23   and expense. Meta will supplement or amend its responses to these Interrogatories in accordance

24   with Meta's obligations under Rule 26(e).

25   **10.**    Meta objects to Instruction 2, which defines the "Relevant Period" as January 1,

26   2000 to the present. Such definition is overbroad, unduly burdensome, and disproportionate to the

27   needs of the case because it both precedes the existence of Facebook (and therefore Meta) by

28   several years, and the development of the Meta Language Models by decades. For the same reason,

the definition of "Relevant Period," as applied to the Interrogatories, would encompass information that is irrelevant to the parties' claims and defenses. The Instruction is also inconsistent with the definition of "Relevant Period" provided on page 3 of the Interrogatories and is therefore vague and ambiguous. Meta will construe the Relevant Period to mean January 1, 2022 to the present.

11.    Meta objects to Instruction 4 (referring to Fed. R. Civ. P. Rule 33(d)) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.

12.    Meta objects to Instruction 6 (outlining additional obligations for allegedly incomplete responses) to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control.

13.    Meta objects to Instruction 8 (outlining additional obligations for any privilege objection) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.

14.    Meta objects to Instruction 9 (outlining additional obligations for any work product objection) on the ground that it purports to require more of Meta than any obligation imposed by law, and would itself require disclosure of information protected by attorney-client privilege and/or attorney work product doctrine.

15.    Meta objects to Instruction 10 (building in a separate question for each Interrogatory) on the ground that it purports to require more of Meta than any obligation imposed by law, seeks disclosure of information protected by attorney-client privilege and/or attorney work product doctrine, and seeks to circumvent Plaintiffs' interrogatory limit.

16.    Meta objects to Instruction 11 (purporting to require responses for "all predecessors, successors, subsidiaries … divisions and/or affiliates of Meta"), on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense. Meta further objects to Instruction 11 to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control. As such the Instruction if overly broad, as well. Subject to any objections applicable to a particular

Interrogatory, Meta will conduct a reasonable, proportionate search for non-privileged, relevant, responsive information within its possession, custody, or control.

**17.** In responding to all Interrogatories, Meta will comply with the requirements of the Federal Rules of Evidence and Federal Rule of Civil Procedure 26.

III. **OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES**

**INTERROGATORY NO. 1:**

Describe in detail the data You have used to train or otherwise develop the Meta Language Models, Including, for each:

a.    How You obtained the data, e.g., by scraping the data, purchasing it from third parties, or by other means;

b.    All sources of Data, including any third parties that provided data sets;

c.    To the extent the data was derived from publicly available websites, a list of all such websites and, for each, the percentage of the data corpus that is derived from that website;

d.    The categories of content included in the data and the extent to which each category is represented in the data corpus (i.e., as a percentage of data used to train the model);

e.    All policies and procedures Related to identifying, assessing, vetting and selecting sources of data for the model.

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms "You" and "Meta Language Models." Meta further notes that the capitalized term "Related" is not defined; Meta construes that term coextensively with "concerning."

As an initial matter, Meta objects to this Interrogatory because it consists of multiple, separate Interrogatories, each which count toward Plaintiffs' limit under the Federal Rules. For example, the question about what data used to train a model is separate from how it was obtained, and further, subparts (d) and (e) are not subsumed within and necessarily related to the primary question, and purport to require a calculation of percentages of data, and separate identification of "policies" and "procedures" for (1) identifying, (2) assessing, (3) vetting, and (4) selecting data. This Interrogatory consists of *at least* three Interrogatories, and depending on how it is interpreted,

1    many more.  In answering the Interrogatory, Meta does not waive this objection.

2         Meta objects to this Interrogatory because, on its face, it does not exclude legal advice or

3    opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in

4    particular as to subpart (e).  Meta will not produce privileged materials or attorney work product.

5         Meta objects to this Interrogatory as vague and ambiguous as to the term "data," which is

6    undefined.  Meta will construe "data" to mean Training Data (as construed above).

7         Meta objects to this Interrogatory as vague, ambiguous, and unintelligible as to "percentage

8    of that data corpus that is derived from that website" because "data corpus" is undefined, and Meta

9    is accordingly unable to interpret and respond to subpart (c).  Even if "data corpus" were defined,

10   the subject matter of subpart (c) would be overbroad, unduly burdensome, and disproportionate to

11   the needs of the case and seeks information that is not relevant to the parties' claims and defenses.

12   Meta will not respond to subpart (c).

13        Meta objects to the undefined phrase "categories of content, which is vague, ambiguous,

14   and unintelligible.

15        Meta objects to this Interrogatory to the extent that it seeks information that is not within

16   Meta's possession, custody, or control.

17        Subject to and without waiving the foregoing objections, and pursuant to the terms of the

18   Protective Order and the ESI Order, Meta responds as follows: Meta incorporates by reference the

19   identification of datasets used to train Llama 1 that is included in the publicly available paper

20   "LLaMA: Open and Efficient Foundation Language Models."  Such datasets were used to train

21   Llama 1.  Meta will produce a copy of that paper in its forthcoming production pursuant to Rule

22   33(d).

23        Meta will conduct a reasonable search for additional non-privileged information or, in

24   accordance with Rule 33(d), documents in Meta's possession, custody, or control, sufficient to

25   show any other datasets used to train the Meta Language Models (as construed above), as well as

26   policies and procedures for identifying, assessing, vetting, and selecting sources of data for those

27   models.

28        Discovery is ongoing and Meta will also supplement its response to this Interrogatory to

identify the sources of such datasets and general categories of data within them, to the extent that such information is within Meta's possession, custody, or control.

Discovery is continuing and Meta reserves the right to supplement or amend its response at a later time.

**Meta's First Supplemental and Amended Response to Interrogatory No. 1:**

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responds as follows.

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

COOLEY LLP
ATTORNEYS AT LAW

COOLEY LLP
ATTORNEYS AT LAW

META'S FURTHER SUPP. & AMENDED RESP
& OBJ'S TO PLTFS' FIRST SET OF ROGS
3:23-CV-03417-VC



COOLEY LLP
ATTORNEYS AT LAW

META'S FURTHER SUPP. & AMENDED RESP
& OBJ'S TO PLTFS' FIRST SET OF ROGS
3:23-CV-03417-VC

**INTERROGATORY NO. 3:**

Describe in detail the RLHF process for each Meta Language Model. Include in Your response:

a. Examples of types of experts who write questions and answers for use in RLHF;

b. Examples of questions and answers;

c. An explanation of the rating system or method of evaluation for the Meta Language Model's responses;

d. A description of the RLHF You actually undertook in order to correct or remediate any Meta Language Model's propensity to emit protected expression from its Training Data.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms

1    "Meta Language Model," "You," and "Your."

2       As an initial matter, Meta objects to this Interrogatory because it consists of multiple,

3 separate Interrogatories, each which count toward Plaintiffs' limit under the Federal Rules.  For

4 example, the question about the RLHF process is separate from subpart (b), which asks for

5 "examples of questions answers" or subpart (c) which asks for a description of a rating system.

6 Moreover, subpart (d) asks about steps taken to "correct or remediate" *any* language model's

7 "propensity" to emit "protected expression," which is a separate inquiry altogether.  This

8 Interrogatory consists of *at least* three Interrogatories.  In answering the Interrogatory, Meta does

9 not waive this objection.

10       Meta objects to this Interrogatory as vague and ambiguous as to "examples of types of

11 experts."  Meta will construe this phrase to refer to examples of the general background of

12 individuals who have written questions and answers for use in connection with RLHF for Meta

13 Language Models (as construed above).

14       Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

15 to the needs of the case and seeks information that is not relevant to the parties' claims and defenses,

16 in particular as to subparts (a)-(c).

17       Meta objects to this Interrogatory to the extent that it seeks information that is not within

18 Meta's possession, custody, or control.

19       Meta objects to the counterfactual presumption and characterization of its language models

20 as having a "propensity to emit protected expression" from training data.  Relatedly, "protected

21 expression" appears to call for a legal conclusion and is otherwise vague.

22       Subject to and without waiving the foregoing objections, and pursuant to the terms of the

23 Protective Order and the ESI Order, Meta responds as follows:

24       **This response is designated as Confidential under the Protective Order.**

25    ████████████████████████████

26    ████████████████████████████████████

27    ██████████████████████████████████████

28    ██████████████████████████████████████

**Meta's First Supplemental Response to Interrogatory No. 3:**

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta identifies the following documents as containing examples of questions and answers used during the RLHF process: Meta_Kadrey_00014794-00015376, Meta_Kadrey_00016896-00017243, Meta_Kadrey_00017244-00018017, Meta_Kadrey_00019182-00019625, and Meta_Kadrey_00022649-00022996.

Meta has produced a copy of "Llama 2: Open Foundation and Fine-Tuned Chat Models" as Meta_Kadrey_00000001-00000077. Pursuant to Rule 33(d), Meta also refers Plaintiffs to the paper titled "The Llama 3 Herd of Models," published by Meta on July 23, 2024, for further information.

**Meta's Second Supplemental Response to Interrogatory No. 3:**

**This response is designated as Confidential under the Protective Order.**

████████████████████████████████

**INTERROGATORY NO. 4:**

Describe in detail the policies and procedures that You follow in order to assess risk, safety, and alignment before You release a new Meta Language Model to the public, whether paid or free. Include in Your response:

a.    A description of the risks taken into consideration, including the risks that a Meta Language Model will emit protected expression from its Training Data;

b.    A description of the individual(s), type(s) of individual by title and area of expertise, or department(s) responsible for determining whether the Meta Language Model is ready to be released;

c.    A list of all instances where a Meta Language Model was released to the public after passing this review;

d.    A list of all instances where a Meta Language Model was not released to the public after failing this review;

e.    A list of all instances where a Meta Language Model was released to the public despite failing this review, and which individual(s) were responsible for overriding the result of this review.

**RESPONSE TO INTERROGATORY NO. 4:**

Meta incorporates by reference its objections and definitions above, including to the terms "Meta Language Model," "You," and "Training Data."

As an initial matter, Meta objects to this Interrogatory because it consists of multiple, separate Interrogatories, each which count toward Plaintiffs' limit under the Federal Rules. The Interrogatory consists of *at least* four Interrogatories, which count toward Plaintiffs' limit. For example, subparts (c), (d), and (e) are not subsumed within and necessarily related to the primary question. In answering the Interrogatory, Meta does not waive this objection.

Meta objects to this Interrogatory because, on its face, it does not exclude legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in particular as the subject matter of the Interrogatory encompasses policies and procedures that are

1    legal in nature.  Meta will not respond to subparts (a), (d), and (e).

2         Meta objects to the phrase "risk, safety, and alignment" as undefined and thus vague and

3    ambiguous.  Meta also objects to the phrase "this review" as vague, ambiguous, and undefined,

4    and, in particular, to the extent that it implies anything about the type of "review," if any, undertaken

5    by Meta.

6         Meta objects to the counterfactual presumption and characterization of its language models

7    as having a propensity to "emit protected expression" from training data.  Relatedly, "protected

8    expression" appears to call for a legal conclusion and is otherwise vague.

9         Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

10   to the needs of the case and seeks information that is not relevant to the parties' claims and defenses,

11   in particular to the extent it seeks information concerning policies and procedures that have no

12   bearing on issues related to U.S. copyright law.

13        Meta objects to this Interrogatory to the extent that it seeks information that is not within

14   Meta's possession, custody, or control.

15        Subject to and without waiving the foregoing objections, and pursuant to the terms of the

16   Protective Order, Meta responds as follows:

17        **This response is designated as Confidential under the Protective Order.**

COOLEY LLP
ATTORNEYS AT LAW

1    Discovery is continuing and Meta reserves the right to supplement or amend its response at
2    a later time.

3    **Meta's First Supplemental Response to Interrogatory No. 4:**

4    Subject to and without waiving the foregoing objections, and pursuant to the terms of the
5    Protective Order, Meta identifies the following additional individuals:

6    **This response is designated as Confidential under the Protective Order.**



17   **Meta's Second Supplemental Response to Interrogatory No. 4:**

18   Meta considered a number of risks in conjunction with development and release of the Meta
19   Language Models (as construed above), including risks associated with data privacy, product
20   safety, intellectual property, social risks (e.g., toxicity and bias), and risks that the models could be
21   abused by bad actors, among other risks.  Meta made significant investments to mitigate these risks
22   prior to release of the Meta Language Models (as construed above), in particular Llama 2 onward,
23   and all such models were determined by cross-functional stakeholders to be suitable for release.
24   *See e.g.*, M. Clark 11/13/2024 30(b)(6) Dep. 11:15-22, 16:6-18:15, 101:3-103:22.

25   **INTERROGATORY NO. 5:**

26   Identify all Agreements between and among:

27   a.      You and anyone associated, affiliated, or having any connection with data used to
28   train the Meta Language Models;

1    b.    You and directors and officers of Defendants or Related Entities with a more than

2    five percent interest held by directors and officers of Defendants.

3    **RESPONSE TO INTERROGATORY NO. 5:**

4    Meta incorporates by reference its objections and definitions above, including to the terms

5    "Meta Language Models," and "You."

6    As an initial matter, Meta objects to this Interrogatory because it consists of two

7    Interrogatories, which count toward Plaintiffs' limit.  In answering the Interrogatory, Meta does not

8    waive this objection.

9    Meta objects to this Interrogatory as vague, ambiguous, and unintelligible as to the phrase

10   "any connection with data."  Meta is accordingly unable to respond to subpart (a) as written.

11   Meta objects to this Interrogatory as vague, ambiguous, and unintelligible as to

12   "Defendant_s_," as Meta is the only named defendant in this case.  Meta will interpret "Defendants"

13   to mean Meta (as construed above).

14   Meta objects to this Interrogatory as vague, ambiguous, and unintelligible as to the term

15   "Related Entities," which is capitalized as if it is defined when it is not.  For purposes of this

16   response, Meta will construe "Related Entities" to mean entities owned by or sharing common

17   ownership with Meta.

18   Meta objects to this Interrogatory on the ground that it is overbroad, unduly burdensome,

19   and disproportionate to the needs of the case and seeks information that is not relevant to the parties'

20   claims and defenses, in particular to the extent it seeks information concerning "all" such

21   agreements regardless of their subject matter having "any connection" with "data."  Meta will

22   construe subpart (a) to refer to formal, written agreements concerning licensing or acquisition of

23   training data for any Meta Language Model (as construed above).  Meta will not respond to subpart

24   (b).

25   Subject to and without waiving the foregoing objections, and pursuant to the terms of the

26   Protective Order and the ESI Order, Meta responds as follows:

27   Meta incorporates by reference its most recent SEC FORM DEF 14A, which identifies

28   individuals and companies with a beneficial interest of more than 5% of Meta's publicly traded

COOLEY LLP
ATTORNEYS AT LAW

19

stock. Meta will produce a copy of that document in its forthcoming production pursuant to Rule 33(d).

Pursuant to Rule 33(d), Meta will also conduct a reasonable search for and produce on a rolling basis documents sufficient to show any executed written agreements concerning licensing or acquisition of training datasets for any Meta Language Models (as construed above).

**Meta's First Supplemental Response to Interrogatory No. 5:**

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responses as follows:

**This response is designated as Confidential under the Protective Order.**

**Meta's Second Supplemental Response to Interrogatory No. 5:**

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

**INTERROGATORY NO. 6:**

In order of corporate seniority, Identify by name and date all Your past and present directors, officers, and board members.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the term "Your."

Meta objects to the portion of this Interrogatory requiring Meta to list individuals by order

of "corporate seniority," as certain individuals may be of equivalent or otherwise indistinguishable seniority.

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning all past and present directors, officers, and board members of Meta, irrespective of the time period relevant to Plaintiffs' allegations, or the role of said individuals in the conduct at issue in Plaintiffs' complaint, which concerns language models that were only recently released.

Meta will not respond to this Interrogatory. Meta instead refers Plaintiff to the Investor Relations (https://investor.fb.com/home/default.aspx) and Company Info (https://about.meta.com/company-info/) pages on its website, which contain information about present Meta leadership.

**INTERROGATORY NO. 7:**

In order of corporate seniority, Identify by name, job title, and date, all Persons, Including employees from other businesses, contractors, vendors, and other non-employees of Your business, previously and currently responsible for, or having oversight or control over the training, engineering, development, ethics, safety, or alignment of the Meta Language Models, and any iterations, versions, or variations thereof. Include in Your response:

a. For each Person, a description of his or her area of expertise;

b. For each Person, a description of whether such Person was previously or is currently responsible for, or has or had oversight or control over ethics, safety, or alignment related to the Meta Language Models;

c. For each Person, a description of whether such Person was previously or is currently responsible for, or has or had oversight or control over researching, analyzing, reporting on, mitigating, or remediating the propensity of the Meta Language Models to emit protected expression from the Training Data;

d. For each Person responsive to subpart b above, provide a description of whether such Person created Documents or Communications Concerning the ethics or legality of any

1  Training Data gathered or used by You;

2      e.      Provide a description of the mitigations and remediations so undertaken by any

3  Persons responsive to subpart c. above;

4      f.      For Persons previously employed, Identify whether they left You voluntarily or

5  involuntarily, and whether any disagreement with You about Training Data was a factor in their

6  separation from You.

7  **RESPONSE TO INTERROGATORY NO. 7:**

8      Meta incorporates by reference its objections and definitions above, including to the terms

9  "You," "Communications," and "Meta Language Models."

10     As an initial matter, Meta objects to this Interrogatory because it consists of *at least* four

11  Interrogatories, which count toward Plaintiffs' limit.  For example, subparts (d), (e), and (f) are not

12  subsumed within and necessarily related to the primary question.  In answering the Interrogatory,

13  Meta does not waive this objection.

14     Meta objects to this Interrogatory because, on its face, it does not exclude legal advice or

15  opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in

16  particular as the subject matter of the Interrogatory encompasses policies and procedures that are

17  legal in nature.  Meta will not respond to subpart (d).  Meta also will not respond to subpart (e) to

18  the extent it seeks information subject to attorney-client privilege and/or attorney work product

19  doctrine.

20     Meta objects to this Interrogatory as vague and ambiguous as to the terms "safety" and

21  "ethics," and the phrase "iterations, versions, or variations thereof," all of which are undefined (and

22  as to "any iterations, versions, or variations thereof" as overly broad and unduly burdensome).

23     Meta also objects to the reference to "date" as vague, ambiguous, and unintelligible as to

24  the subject of this Interrogatory.

25     Meta further objects to the portion of this Interrogatory requiring Meta to list individuals by

26  order of "corporate seniority," as certain individuals may no longer be employed by Meta (and thus

27  have no seniority), while others may be of equivalent or otherwise indistinguishable seniority.  Meta

28  will identify individuals in alphabetical order of their last names.

Meta objects to this Interrogatory as vague and ambiguous as to the phrase "responsible for, or having oversight or control," which, read broadly, would include a large number of individuals regardless of the significance of their role. Meta will construe this Interrogatory to seek information concerning individuals in a managerial role or who may be regarded as lead developers with primary responsibility for the training, engineering, development, or alignment of the Meta Language Models (as construed above).

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning issues unrelated to Plaintiffs' direct copyright infringement claim.

Meta objects to this Interrogatory to the extent that it seeks information that is not within Meta's possession, custody, or control, in particular as to individuals who are no longer with the company.

Meta objects to the counterfactual presumption and characterization of its language models as having a "propensity to emit protected expression" from training data.

**Meta's Further Supplemental and Amended Response to Interrogatory No. 7:**

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order and the ESI Order, Meta responds as follows:

Meta refers Plaintiffs to Appendix A.1 to the publicly available paper "Llama 2: Open Foundation and Fine-Tuned Chat Models," which identifies the following individuals as having leadership roles in connection with development of Llama 2:

- **Science and Engineering Leadership:**
  - Guillem Cucurull (Research Engineer, former Meta employee) – Mr. Cucurull left Meta voluntarily. Meta is unaware of any information to suggest that his departure from Meta concerned a disagreement with Meta over training data.
  - Naman Goyal (Software Engineer)
  - Louis Martin (Research Scientist, former Meta employee) – Mr. Martin left Meta voluntarily. Meta is unaware of any information to suggest that his departure from

1    Meta concerned a disagreement with Meta over training data.

2        o   Thomas Scialom (Research Scientist)

3        o   Ruan Silva (Software Engineer)

4        o   Kevin Stone (Research Engineer, former Meta employee) – Mr. Stone left Meta

5            voluntarily.  Meta is unaware of any information to suggest that his departure from

6            Meta concerned a disagreement with Meta over training data.

7        o   Hugo Touvron (Research Scientist)

8    •   **Technical and Management Leadership:**

9        o   Sergey Edunov (Director, AI Research)

10       o   Angela Fan (Research Scientist)

11       o   Melanie Kambadur (Research Engineering Manager)

12       o   Sharan Narang (Research Scientist Manager)

13       o   Aurelien Rodriguez (Software Engineering Manager, former Meta employee) – Mr.

14           Rodriguez left Meta voluntarily.  Meta is unaware of any information to suggest that

15           his departure from Meta concerned a disagreement with Meta over training data.

16       o   Robert Stojnic (Engineering Manager, former Meta employee) – Mr. Stojnic left

17           Meta voluntarily.  Meta is unaware of any information to suggest that his departure

18           from Meta concerned a disagreement with Meta over training data.

19   Meta has produced a copy of the Llama 2: Open Foundation and Fine-Tuned Chat Models

20   paper as Meta_Kadrey_00000001-00000077.  Excluding Mr. Silva and Mr. Martin, each of the

21   foregoing listed individuals also contributed to development of Llama 3.  Pursuant to Rule 33(d),

22   Meta also refers Plaintiffs to the paper titled "The Llama 3 Herd of Models," published by Meta on

23   July 23, 2024, for further information.

24   Meta also identifies the following individuals as having leadership roles in connection with

25   development of Llama 2 and Llama 3:

26       •   Mike Clark (Director, Product Management)

27       •   Ahmad Al-Dahle (VP Gen AI)

28       •   Chaya Nayak (Director, Product Management)

In addition, Meta identifies the following individuals as having leadership roles in connection with development of Llama 1:

- Joelle Pineau (VP, AI Research)

- Edouard Grave (Research Scientist, former Meta employee) – Mr. Grave was a research scientist at Meta.  Mr. Grave was one of the lead developers of Llama 1. Mr. Grave left Meta voluntarily.  Meta is unaware of any information to suggest that his departure from Meta concerned a disagreement with Meta over training data.

- Guillaume Lample (Research Scientist, former Meta employee) – Mr. Lample was a research scientist at Meta.  Mr. Lample was one of the lead developers of Llama 1.  Mr. Lample left Meta voluntarily.  Meta is unaware of any information to suggest that his departure from Meta concerned a disagreement with Meta over training data.

- Aurelien Rodriguez (Software Engineering Manager, former Meta employee)

- Hugo Touvron (Research Scientist)

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

**INTERROGATORY NO. 8:**

Identify all software, databases, or services previously and currently used by You for training, maintaining, supervising, managing, analyzing, programming, updating, troubleshooting, diagnosing, testing or modifying the Meta Language Models.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms "You" and "Meta Language Models."

As an initial matter, Meta objects to this Interrogatory because it consists of twenty-seven Interrogatories, which count toward Plaintiffs' limit. Specifically, "software," "databases" and "services" are all broad, distinct subject matters, as are "training," "maintaining," "supervising," "managing," "analyzing," "programming," "updating," "troubleshooting [and] diagnosing", "testing," and "modifying." In answering the Interrogatory, Meta does not waive this objection.

Meta objects to this Interrogatory as vague, ambiguous, and unintelligible as to "maintaining," "supervising," "managing," "troubleshooting," "diagnosing," and "modifying" in the context of Meta's Llama models.

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning issues unrelated to Plaintiffs' theory of copyright infringement.

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order and the ESI Order, Meta responds as follows:

**This response should be treated as Confidential under the Protective Order.**

████████████████████████████████████

**INTERROGATORY NO. 10:**

Identify all Persons or Related Entities from whom You licensed, purchased or otherwise obtained Training Data for the Meta Language Models.  For each such provider of Training Data, include the name of such person(s), date, amount paid, approximate description and size of data You obtained, and Identify the particular models such Training Data was used for.

**RESPONSE TO INTERROGATORY NO. 10:**

Meta incorporates by reference its objections and definitions above, including to the terms "You," "Training Data," and "Meta Language Models."

As an initial matter, Meta objects to this Interrogatory because it consists of *at least* three Interrogatories, which count toward Plaintiffs' limit.  For example, identifying a "Person" is separate from the date of an alleged transaction, how much was paid, or specifics about data.  In answering the Interrogatory, Meta does not waive this objection.

Meta objects to this Interrogatory as vague, ambiguous, and unintelligible as to the term "Related Entities" which is capitalized as if it is defined when it is not.  Meta will construe "Related Entities" to mean entities owned by or sharing common ownership with Meta.

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses,

in particular to the extent it seeks information concerning issues unrelated to Plaintiffs' theory of copyright infringement.

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order and the ESI Order, Meta responds that it will identify Persons from whom Meta has "licensed, purchased, or otherwise obtained" Training Data (as construed above) for the Meta Language Models (as construed above), if any, to the extent such information is within Meta's possession, custody, or control, after additional investigation has been completed. Discovery is continuing and Meta reserves the right to supplement or amend its response at a later time.

**Meta's First Supplemental Response to Interrogatory No. 10:**

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responds as follows:

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

**Meta's Second Supplemental Response to Interrogatory No. 10:**

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

**INTERROGATORY NO. 11:**

Identify by name all individuals or entities who possess or have possessed stock or

1    ownership interests in You greater than five percent.

2    **RESPONSE TO INTERROGATORY NO. 11:**

3    Meta incorporates by reference its objections and definitions above, including to the term

4    "You." Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

5    to the needs of the case, is unbounded in time and scope, and seeks information that is not relevant

6    to the parties' claims and defenses. A list of all individuals or entities that have at any point in time

7    possessed stock or ownership in Meta greater than five percent is irrelevant to Plaintiffs' theory of

8    copyright infringement.

9    Meta incorporates by reference its most recent SEC FORM DEF 14A, which identifies

10    individuals and companies with a beneficial interest of more than 5% of Meta's publicly traded

11    stock. Meta will produce a copy of that document in its forthcoming production pursuant to Rule

12    33(d).    Meta    also    refers    Plaintiff    to    the    Investor    Relations

13    ([https://investor.fb.com/home/default.aspx](https://investor.fb.com/home/default.aspx)) and Company Info ([https://about.meta.com/company-](https://about.meta.com/company-info/)

14    [info/](https://about.meta.com/company-info/)) pages on its website, which contain information about present Meta leadership.

15    **INTERROGATORY NO. 12:**

16    Identify by name, department, and job description, all individuals who have directly

17    participated in the planning, conception, design, programming, testing, or operation of the Meta

18    Language Models during the Relevant Period (including organization charts if applicable),

19    Including All Persons with responsibility who have directly participated in the choice or selection

20    of Training Data for the Meta Language Models.

21    **RESPONSE TO INTERROGATORY NO. 12:**

22    Meta incorporates by reference its objections and definitions above, including to the terms

23    "Relevant Period," "Training Data," and "Meta Language Models."

24    As an initial matter, Meta objects to this Interrogatory because it consists of several

25    Interrogatories, each which count toward Plaintiffs' limit.

26    Meta objects to this Interrogatory as vague and ambiguous as to the phrase "directly

27    participated in," which, read literally, may include a large number of individuals regardless of the

28    significance of their role. Meta also objects to this Interrogatory as vague and ambiguous as to the

term "operation," which could mean any number of things, including any use of a model. Meta will construe this Interrogatory to seek information concerning individuals in a managerial role or who may be regarded as lead developers with primary responsibility for the planning, conception, design, programming, testing, or selection of Training Data (as construed above) used for Meta Language Models (as construed above).

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning issues unrelated to Plaintiffs' direct copyright infringement claim.

Meta objects to this Interrogatory to the extent that it seeks information that is not within Meta's possession, custody, or control, in particular as to individuals who are no longer with the company and any "organization charts" of relevant employees.

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order and the ESI Order, Meta responds as follows:

Meta incorporates by reference Appendix A.1 to the publicly available paper "Llama 2: Open Foundation and Fine-Tuned Chat Models," which identifies the following individuals as having leadership roles in connection with development of Llama 2:

· **Science and Engineering Leadership:** Guillem Cucurull (Research Engineer), Naman Goyal (Software Engineer), Louis Martin (Research Scientist), Thomas Scialom (Research Scientist), Ruan Silva (Software Engineer), Kevin Stone (Research Engineer), Hugo Touvron (AI Research Scientist).

· **Technical and Management Leadership:** Sergey Edunov (Director, AI Research), Angela Fan (Research Scientist), Melanie Kambadur (Research Engineering Manager), Sharan Narang (Research Scientist Manager), Aurelien Rodriguez (Software Engineering Manager), Robert Stojnic (Engineering Manager).

Meta will produce a copy of that paper in its forthcoming production pursuant to Rule 33(d).

**This response is designated as Confidential under the Protective Order.**

In addition, Meta identifies the Edouard Grave (Research Scientist, former employee),

Guillaume Lample (Research Scientist, former employee), Hugo Touvron (AI Research Scientist), and Aurelien Rodriguez (Software Engineering Manager) as lead developers with primary responsibility for the planning, conception, design, programming, testing, or operation of Llama 1.

**Meta's First Supplemental Response to Interrogatory No. 12:**

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

**INTERROGATORY NO. 13:**

Describe in detail the policies and procedures that You follow or have followed in assessing whether to permit the use of a dataset as Training Data for a Meta Language Model, and:

a.    list all datasets that have been so reviewed;

b.    list datasets that have been permitted to be used as Training Data for any Meta Language Model, and the date so designated;

c.    list datasets that have at any time been forbidden from being used as Training Data for any Meta Language Model;

d.    for each forbidden dataset, list the reason that it was forbidden and the date so forbidden;

e.    if a forbidden dataset was later designated safe to use, list the reason its designation was revised and the date so revised.

**RESPONSE TO INTERROGATORY NO. 13:**

Meta incorporates by reference its objections and definitions above, including to the terms "You," "Training Data," and "Meta Language Models."

As an initial matter, Meta objects to this Interrogatory because it consists of at least three Interrogatories, which count toward Plaintiffs' limit. Specifically, questions about so-called policies or procedures are separate from a list of datasets reviewed, reasons why a dataset was "forbidden" (a term used by the Interrogatory), or reasons why a dataset was once "forbidden" but later not. In answering the Interrogatory, Meta does not waive this objection.

Meta objects to this Interrogatory because, on its face, it does not exclude legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in particular as the subject matter of the Interrogatory encompasses policies and procedures that are legal in nature. Meta will not provide information concerning policies and procedures that constitute legal advice, nor will Meta respond to subparts (a), (b), to the extent that it concerns whether and when a given dataset received approval for use, and (c)-(e).

Meta objects to this Interrogatory as vague and ambiguous as to the term "forbidden dataset," which is undefined. Meta further objects to this term to the extent it implies that Meta has prohibited use of any particular dataset for training a language model. Meta will construe "forbidden dataset" to mean datasets referred to in subpart (c).

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning issues unrelated to Plaintiffs' direct copyright infringement claim.

Meta objects to this Interrogatory as duplicative and cumulative of Interrogatory No. 1, and therefore refers to its response to Interrogatory 1.

Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25 Interrogatories under Rule 33(a)(1).

**Meta's First Supplemental Response to Interrogatory No. 13:**

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, the ESI Order, and Rule 33(d), Meta identifies Bates Nos. Meta_Kadrey_00089197, Meta_Kadrey_00093496, Meta_Kadrey_00065402, and Meta_Kadrey_00154774 as identifying datasets that Meta has considered for use as text training

1    data for the Meta Language Models (as construed above).

2    **INTERROGATORY NO. 14:**

3        Identify by name all individuals or entities who have applied for access to Llama 1.  Include

4    in Your response:

5        a.    The names all individuals or entities who obtained access to Llama 1;

6        b.    The names all individuals or entities who you denied access to Llama 1, including

7    the names of all individuals or entities who have had their access to Llama 1 revoked or otherwise

8    limited by You;

9        c.    For each individual or entity whom you denied access to Llama 1, a description of

10   the reason(s) why you denied access to that particular individual or entity.

11   **RESPONSE TO INTERROGATORY NO. 14:**

12       Meta incorporates by reference its objections and definitions above, including to the terms

13   "You," "Your," and "Llama 1."

14       As an initial matter, Meta objects to this Interrogatory because it consists of at least three

15   Interrogatories, which count toward Plaintiffs' limit.  Specifically, an inquiry regarding entities

16   who applied for access is separate from a question about who obtained or was denied access, and

17   the reasons why (on a person by person basis).

18       Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

19   to the needs of the case as it would require Meta to compile a list of every individual who sought

20   to use Llama v1 and when and whether they were given access (or not), and then determine the

21   reasoning (if there was one) why access was or was not granted.  There is no relevance or

22   proportionality of this request to Plaintiffs' direct copyright infringement claim relating to training.

23       Meta objects to this Interrogatory because, on its face, it does not exclude legal advice or

24   opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in

25   particular as the subject matter of the Interrogatory encompasses determinations that are legal in

26   nature.

27       Finally, Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25

28   Interrogatories under Rule 33(a)(1).

COOLEY LLP
ATTORNEYS AT LAW

33

1

**Meta's First Supplemental Response to Interrogatory No. 14:**

2

Pursuant to Rule 33(d), Meta identifies the Bates Nos. Meta_Kadrey_00065897,

3

Meta_Kadrey_00065898,          Meta_Kadrey_00065899,          Meta_Kadrey_00066056,

4

Meta_Kadrey_00066065,          Meta_Kadrey_00187042,          Meta_Kadrey_00187043,

5

Meta_Kadrey_00187044, Meta_Kadrey_00187045.  These documents identify individuals who

6

received, and who were denied, access to Llama 1.    Meta also identifies Bates Nos.

7

Meta_Kadrey_00185688, Meta_Kadrey_00185680, which describe the criteria Meta used to grant

8

or deny access to Llama 1.

9

**INTERROGATORY NO. 15:**

10

Explain in detail the role of the following individuals in any aspect of the design, training,

11

development, testing, marketing, release or support of each of the Meta Language Models:

12

      a.     Hugo Touvron

13

      b.     Aurélien Rodriguez

14

      c.     Tim Dettmers

15

      d.     Luke Zettlemoyer

16

      e.     Shawn Presser

17

      f.     Stella Biderman

18

      g.     Leo Gao

19

      h.     Yann LeCun

20

      i.     John Carmack

21

      j.     Andrew Bosworth

22

      k.     Chris Cox

23

      l.     Jennifer Newstead

24

      m.     Ahmad Al-Dahle

25

      n.     Marc Zuckerberg

26

      o.     Marc Andreessen

27

**RESPONSE TO INTERROGATORY NO. 15:**

28

Meta incorporates by reference its objections and definitions above, including to the term

1  "Meta Language Models."

2      As an initial matter, Meta objects to this Interrogatory because it consists of at least fifteen

3  Interrogatories, which count toward Plaintiffs' limit.  Specifically, each individual's role in the

4  broad subjects of "design, training, development, testing, marketing, release or support" are

5  separate subjects, and are not necessarily related to one another.

6      Meta objects to this Interrogatory as vague and ambiguous as to the term "support," which

7  is undefined and effectively meaningless.  Meta also objects to this Interrogatory as vague and

8  ambiguous as to the phrase "involved in any aspect of," which is undefined and overbroad.  Meta

9  will construe this Interrogatory to seek information concerning the identified individuals' job

10 responsibilities in connection with the "design, training, development, testing, marketing, and

11 release" of the Meta Language Models (as construed above).

12      Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

13 to the needs of the case and seeks information that is not relevant to the parties' claims and defenses,

14 in particular to the extent it seeks information concerning issues unrelated to Plaintiffs' theory of

15 copyright infringement.

16      Finally, Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25

17 Interrogatories under Rule 33(a)(1).

18      **Meta's First Supplemental Response to Interrogatory No. 15:**

19      Based on a reasonable investigation, Meta describes the roles of the following individuals

20 in the development of the Meta Language Models as follows:

21      **This response is designated as Highly Confidential − Attorney's Eyes Only under the**

22 **Protective Order.**



COOLEY LLP
ATTORNEYS AT LAW



COOLEY LLP
ATTORNEYS AT LAW

META'S FURTHER SUPP. & AMENDED RESP
& OBJ'S TO PLTFS' FIRST SET OF ROGS
3:23-CV-03417-VC

1    Dated: December 13, 2024                                    COOLEY LLP

2                                                        By:  _/s/ Judd Lauter_
3                                                             Bobby Ghajar
                                                             Mark Weinstein
4                                                             Kathleen Hartnett
                                                             Phillip Morton
5                                                             Judd Lauter
                                                             Elizabeth L. Stameshkin
6                                                             Matthew Brigham
                                                             Colette Ghazarian
7                                                             Juan Pablo Gonzalez
                                                             Cole A. Poppell

8                                                             LEX LUMINA PLLC
9                                                             Mark A. Lemley

10                                                            CLEARY GOTTLIEB STEEN &
                                                             HAMILTON LLP
11                                                            Angela L. Dunning

12                                                            Attorneys for Defendant
                                                             META PLATFORMS, INC.
13   *Full Counsel List*

14   COOLEY LLP
15   PHILLIP MORTON *(pro hac vice)*
     (pmorton@cooley.com)
16   COLE A. POPPELL *(pro hac vice)*
     (cpoppell@cooley.com)
17   1299 Pennsylvania Avenue, NW, Suite 700
     Washington, DC 20004-2400
18   Telephone:    (202) 842-7800

19   COOLEY LLP
20   MATTHEW BRIGHAM (191428)
     (mbrigham@cooley.com)
     JUAN PABLO GONZALEZ (334470)
21   (jgonzalez@cooley.com)
     3175 Hanover Street
22   Palo Alto, CA  94304-1130
     Telephone:    (650) 843-5000

23   LEX LUMINA PLLC
24   MARK A. LEMLEY (155830)
     (mlemley@lex-lumina.com)
25   745 Fifth Avenue, Suite 500
     New York, NY 10151
26   Telephone:    (646) 898-2055

27

28

COOLEY LLP
ATTORNEYS AT LAW

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the State of California.  I am employed in Los Angeles County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is Cooley LLP, 355 South Grand Avenue, Suite 900, Los Angeles, CA  90071.  On the date set forth below I served the documents described below in the manner described below:

- **DEFENDANT META PLATFORMS, INC.'S FURTHER SUPPLEMENTAL AND AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

Executed on December 13, 2024, at Los Angeles, California.

*/s/Jerry Gonzalez*

Jerry Gonzalez

COOLEY LLP
ATTORNEYS AT LAW

1

**PROOF OF SERVICE**
**3:23-CV-03417-VC**

1

**SERVICE LIST**

2
Joseph R. Saveri
3
Cadio Zirpoli
Christopher K.L. Young
4
Holden Benon
Louis Andrew Kessler
5
Aaron Cera
Margaux Poueymirou
6
JOSEPH SAVERI LAW FIRM, LLP
7
601 California Street, Suite 1000
San Francisco, CA 94108
8
Email: jsaveri@saverilawfirm.com
          czirpoli@saverilawfirm.com
9
          cyoung@saverilawfirm.com
          hbenon@saverilawfirm.com
10
          lkessler@saverilawfirm.com
          acera@saverilawfirm.com
11
          mpoueymirou@saverilawfirm.com
12
Matthew Butterick
13
MATTHEW BUTTERICK,
ATTORNEY AT LAW
14
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
15
Email: mb@butiericklaw.com
16
*Attorneys for Individual and Representative*
17
*Plaintiffs and the Proposed Class*
18
Bryan L. Clobes (*pro hac vice*)
19
Alexander J. Sweatman (*pro hac vice*)
Mohammed Rathur
20
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
21
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
22
Email: bclobes@caffertyclobes.com
          asweatman@caffertyclobes.com
23
          mrathur@caffertyclobes.com
24
*Attorneys for Individual and Representative*
25
*Plaintiffs and the Proposed Class*
26

27

28

Joshua I. Schiller
Maxwell Vaughn Pritt
BOIES SCHILLER FLEXNER
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Email: jischiller@bsfllp.com
          mpritt@bsfllp.com

David Boies (*pro hac vice*)
BOIES SCHILLER FLEXNER
333 Main Street
Armonk, NY  10504
Email: dboies@bsfllp.com

Jesse Panuccio (*pro hac vice*)
BOIES SCHILLER FLEXNER
1401 New York Ave. NW
Washington, DC  20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
DiCELLO LEVITT LLP
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
DiCELLO LEVITT LLP
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
          julwick@dicellolevitt.com
          ndjordjevic@dicellolevitt.com

David A. Straite (*pro hac vice*)
DiCELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

**Proof of Service**
**3:23-CV-03417-VC**

Elizabeth J. Cabraser
Daniel M. Hutchinson
Reilly T. Stoler
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Email: ecabraser@lchb.com
        dhutchinson@lchb.com
        rstoler@lchb.com

Rachel Geman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
Email: rgeman@lchb.com

*Attorneys for Plaintiff Christopher
Farnsworth and Representative Plaintiffs
and the Proposed Class*

Nancy Evelyn Wolff
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 340-6334
Fax: (310) 492-4394
Email: NWolff@cdas.com

Scott J. Sholder
CeCe M. Cole
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Email: ssholder@cdas.com
        ccole@cdas.com

*Attorneys for Plaintiff Christopher
Farnsworth and Representative Plaintiffs
and the Proposed Class*

COOLEY LLP
ATTORNEYS AT LAW

2

1  COOLEY LLP
   BOBBY GHAJAR (198719)
2  (bghajar@cooley.com)
   COLETTE GHAZARIAN (322235)
3  (cghazarian@cooley.com)
   1333 2nd Street, Suite 400
4  Santa Monica, California 90401
   Telephone:    (310) 883-6400
5
   COOLEY LLP
6  MARK WEINSTEIN (193043)
   (mweinstein@cooley.com)
7  KATHLEEN HARTNETT (314267)
   (khartnett@cooley.com)
8  JUDD LAUTER (290945)
   (jlauter@cooley.com)
9  ELIZABETH L. STAMESHKIN (260865)
   (lstameshkin@cooley.com)
10 3175 Hanover Street
   Palo Alto, CA  94304-1130
11 Telephone:    (650) 843-5000

12 CLEARY GOTTLIEB STEEN & HAMILTON LLP
   ANGELA L. DUNNING (212047)
13 (adunning@cgsh.com)
   1841 Page Mill Road, Suite 250
14 Palo Alto, CA 94304
   Telephone:    (650) 815-4131
15
   *[Full Listing on Signature Page]*
16
   *Counsel for Defendant Meta Platforms, Inc.*
17

18              **UNITED STATES DISTRICT COURT**

19             **NORTHERN DISTRICT OF CALIFORNIA**

20 RICHARD KADREY, et al.,                        Case No. 3:23-cv-03417-VC

21     Individual and Representative Plaintiffs,   **DEFENDANT META PLATFORMS, INC.'S
                                                   FURTHER SUPPLEMENTAL AND AMENDED**
22     v.                                          **RESPONSES AND OBJECTIONS TO
                                                   PLAINTIFFS' SECOND SET OF**
23 META PLATFORMS, INC., a Delaware               **INTERROGATORIES**
   corporation;
24
                                   Defendant.
25                                                 Trial Date:
                                                   Date Action Filed: July 7, 2023
26

27

28

COOLEY LLP
ATTORNEYS AT LAW

PROPOUNDING PARTY:     PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH

RESPONDING PARTY:     DEFENDANT META PLATFORMS, INC.

SET NUMBER: ONE     SECOND

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's ("Plaintiffs") Second Set of Interrogatories ("Interrogatories").

## I.     RESPONSES TO ALL INTERROGATORIES

**1.**     Meta's responses to these Interrogatories are made to the best of Meta's current employees' present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.**     To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the parties' stipulated protective order governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL

- ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction (ECF No. 90, the "Protective Order").

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions:

**1.** Meta objects to all defined terms to the extent that they are not utilized in Plaintiffs Second Set of Interrogatories.

**2.** Meta objects to the definition of "Agreements" as overbroad and unduly burdensome to the extent that it encompasses oral contracts, arrangements, or understandings, including those that are informal. Meta further objects to the definition of "Agreements" as vague, ambiguous, and unintelligible as to the term "modifications" to the extent it is intended to mean something distinct from "versions" or "amendments." Meta will construe "Agreements" to mean written contracts, including drafts, versions, amendments, exhibits, and appendices thereof.

**3.** Meta objects to the definition of "Communications" to the extent it is inconsistent with and otherwise seeks to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the Stipulated Protocol regarding Electronic Discovery ("ESI Order"). Meta will produce Documents, including Communications, pursuant to the terms of the ESI Order, and any agreement to produce such Documents is explicitly in view of the terms of the ESI Order. To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate. Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiffs.

**4.**     Meta objects to the definition of "Complaint" which refers to an outdated complaint that has since been replaced by the Corrected Second Consolidated Amended Complaint (ECF No. 133). Meta will construe "Complaint" to refer to the Corrected Second Consolidated Amended Complaint.

**5.**     Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses. For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLM released by Meta under that name on April 18, 2024, July 23, 2024, and September 25, 2024.

**6.**     Meta objects to the definition of "Meta" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning any "owners" regardless of shareholder interest and shareholders with an ownership of in Meta of greater than 5%. Meta will construe "Meta" or "You" to mean Meta Platforms, Inc.

**7.**     Meta objects to the definition of "Meta Language Models" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning LLMs that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to this definition to the extent that it purports to require Meta to produce documents that are not relevant to any party's claims or

defenses. Meta will construe "Meta Language Models" to mean the models within the Llama family of LLMs that have been publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3 (as those terms are construed above).

**8.** Meta objects to the definition of "Relevant Period" as vague, ambiguous, and unintelligible, as it is defined circularly to mean "all times relevant to… the Complaint." Meta will construe the Relevant Period to mean January 1, 2022 to the present.

**9.** Meta objects to the definition of "Training Data" as vague, ambiguous, and unintelligible as to the term "other material," which is indefinite and undefined. Meta further objects to the definition of "Training Data" as vague and ambiguous as to the phrase "considered for use," which, read literally, would encompass any dataset considered by any Meta employee, regardless of the seriousness of such consideration and whether or not that consideration was ever acted upon. Meta further objects to this definition to the extent it purports to include datasets (or "considered" datasets) that include content to which Plaintiffs have made no claim of ownership and which are not the subject of any allegations of copyright infringement by Plaintiffs. Meta will construe "Training Data" to mean the "Books3" textual dataset used to train the Meta Language Models (as construed above).

**10.** Meta objects to the definition of "You" and "Your" as overbroad, unduly burdensome, and nonsensical, insofar as it refers to "the specific Defendant(s) producing documents in response to these Requests." There is only one defendant in this case, Meta, and this response is to the Interrogatories, not any document requests. Meta further objects to this definition to the extent it seeks to impose upon Meta an obligation to investigate information or documents outside of its possession, custody, or control. For purposes of these responses, Meta construes the terms "You" and "Your" coextensively with Meta (as construed above).

**11.** Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense. Meta will supplement or amend its responses to these Interrogatories in accordance with Meta's obligations under Rule 26(e).

**12.**     Meta objects to Instruction 2, which defines the "Relevant Period" as January 1, 2000 to the present.  Such definition is overbroad, unduly burdensome, and disproportionate to the needs of the case because it both precedes the existence of Facebook (and therefore Meta) by several years, and the development of the Meta Language Models by decades.  For the same reason, the definition of "Relevant Period," as applied to the Interrogatories, would encompass information that is irrelevant to the parties' claims and defenses.  The Instruction is also inconsistent with the definition of "Relevant Period" provided on page 3 of the Interrogatories and is therefore vague and ambiguous.  Meta will construe the Relevant Period to mean January 1, 2022 to the present.

**13.**     Meta objects to Instruction 4 (referring to Fed. R. Civ. P. Rule 33(d)) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.

**14.**     Meta objects to Instruction 6 (outlining additional obligations for allegedly incomplete responses) to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control.

**15.**     Meta objects to Instruction 8 (outlining additional obligations for any privilege objection) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.

**16.**     Meta objects to Instruction 9 (outlining additional obligations for any work product objection) on the ground that it purports to require more of Meta than any obligation imposed by law, and would itself require disclosure of information protected by attorney-client privilege and/or attorney work product doctrine.

**17.**     Meta objects to Instruction 10 (building in a separate question for each Interrogatory) on the ground that it purports to require more of Meta than any obligation imposed by law, seeks disclosure of information protected by attorney-client privilege and/or attorney work product doctrine, and seeks to circumvent Plaintiffs' interrogatory limit.

**18.**     Meta objects to Instruction 11 (purporting to require responses for "all predecessors, successors, subsidiaries … divisions and/or affiliates of Meta"), on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable

and undue burden and expense.  Meta further objects to Instruction 11 to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control.  As such the Instruction if overly broad, as well.  Subject to any objections applicable to a particular Interrogatory, Meta will conduct a reasonable, proportionate search for non-privileged, relevant, responsive information within its possession, custody, or control.

**19.**    In responding to all Interrogatories, Meta will comply with the requirements of the Federal Rules of Evidence and Federal Rule of Civil Procedure 26.

**III.    OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES**

**INTERROGATORY NO. 16:**

State all facts on which you base Your contention that Your conduct constitutes fair use (17 U.S.C. § 107).

**FIRST AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the phrase "Your conduct," which is undefined and could refer to any conduct.  Meta will construe this Interrogatory to seek information concerning Meta's claim of fair use in connection with the conduct alleged in the Complaint (as construed above).

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information that Meta does not intend to rely on to support a claim of fair use and calls for a lengthy narrative with regard to twelve different plaintiffs and more than forty works.

Meta objects to this Interrogatory to the extent it prematurely calls for expert testimony or identification of facts yet to be disclosed by Plaintiffs, and to the extent that it requires Meta to respond to legal arguments or theories not yet disclosed by Plaintiffs.

Finally, Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25 Interrogatories under Rule 33(a)(1).

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responds as follows:

The alleged use of Plaintiffs' asserted works, to the extent it is shown to have occurred, is highly transformative in nature, because it adds something new, with a further purpose or different character, altering those works with considerable new expression, meaning, or message. To the extent Plaintiffs' works were used to train the Meta Language Models, the purpose was transformative both in terms of <u>purpose</u> and <u>expression</u>. With respect to <u>purpose</u>, Plaintiffs' works were allegedly used as data to train the models. In other words, the works were allegedly a part of a corpus of text (specifically, terabytes of text from a variety of sources), from which the models built complex statistical representations of language derived from the patterns, structures, and relationships between words within the corpus. This enables the models to predict the next word in a sequence, and thereby provide useful responses to any manner of input prompts. Such use of textual material serves a fundamentally different purpose from the original texts on which the Meta Language Models were trained. *See e.g.*, Meta_Kadrey_00000001-00000077, Meta_Kadrey_00000078-00000104, Meta_Kadrey_00000224-00000248, Meta_Kadrey_00093669- Meta_Kadrey_00093760.

The text corpus used to train the Meta Language Models includes a large amount of textual materials, and to the extent Plaintiffs' works were used to train those models, they would constitute a tiny fraction of the textual training dataset (both individually and collectively). The purpose of the models, and the use of text datasets, is to create new, original textual output, not to reproduce the content of the datasets with which it was trained. This is demonstrated by, among other things, Meta's efforts to minimize the models' ability to memorize and/or output training data verbatim (*see e.g.*, Meta_Kadrey_00000277) and the wide variety of uses that have been made of the models. *See e.g.*, Meta_Kadrey_00092978-00093308, Meta_Kadrey_00062157. Indeed, all Plaintiffs have admitted that they are not aware of any output from any Meta Language Model that replicates any protected expression in their at-issue books. *See e.g.*, T. Coates 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (admitting, subject to objections, that Plaintiff is "personally unaware of any text generated by any of Meta's Llama models that infringes [Plaintiff's] ASSERTED WORKS."); J. Díaz 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); C. Golden 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to

RFA No. 24 (same); A. Greer 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); D. Hwang 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); R. Kadrey 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); M. Klam 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); L. Lippman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); S. Silverman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); R. Snyder 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); J. Woodson 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); C. Golden 9/17/2024 Dep. 260:6–261:13 (Mr. Golden testifying that the present lawsuit is not about what comes out of Meta's large language models); A. Greer 9/24/2024 79:21–80:3 (Mr. Greer testifying that his claims concern the use of his works to train large language models); D. Hwang 9/16/2024 Dep. 252:23–253:6 (Mr. Hwang testifying that the operative complaint does not allege that the Meta Language models create any output that is similar to any of his books or plays); L. TerKeurst 9/23/2024 Dep. 226:20–25, 229:5–12 (Ms. TerKeurst testifying that she was not aware of any text generated by the Meta Language Models that was substantially similar that of her asserted works); J. Woodson Dep. 328:23–329:4 (Ms. Woodson testifying that she is not aware of any output from any Meta LLM in which any of her characters appeared.); S. Silverman 10/10/2024 Dep. 42:5–8 (Q: "[D]oes it matter if Meta's models never output any language from your book?"  A: "It doesn't matter at all."); *id.* 156:25–157:2 ("It doesn't matter what he does with it or what output comes from it.  It's not right."); *id.* 321:9–11 ("It's not about the output.  If the output might not be this book, but without this book it wouldn't have the out-book [SIC] . . . ."); T. Coates 11/21/2024 Dep. 52:22–53:11 (Mr. Coates testifying that he has not personally created or witnessed someone create output from Meta's AI model that replicates or regurgitates portions of his books); M. Klam Rough Drft. Dep. 38:11–16, 234:5–11  (Mr. Klam testifying that he is unaware of any instance in which any Meta AI tool has output verbatim text from any of his books and cannot identify any language he has written in any of his books that was reproduced in the output of Meta's AI model); R. Snyder Rough Drft. Dep. 36:2–4 (Ms. Snyder testifying that she has never seen any output generated by a Meta AI model that copies any language of hers); *cf.* D. Hwang 9/16/2024 Dep.

363:6–15 (Mr. Hwang testifying that he did not believe when he filed suit that the Meta Language Models could create works that were substantially similar to his works); L. Lippman 9/17/2024 Dep. 311:16–312:1 (Ms. Lippman testifying that she is aware that the current version of the Complaint does not allege that Meta's generative AI tools create any output that is substantially similar to her books); A. Greer 9/24/2024 Dep. 28:17–20 (same); J. Díaz 11/20/2024 Dep. 216:4–13 (same)

The transformative nature also extends to <u>expression</u>. The pre-training process involves a number of steps that fundamentally transform the input dataset text in order to facilitate training of the large language model ("LLM"), which Meta will further describe in further detail in connection with expert discovery. At a high-level, the pre-training process includes a "tokenization" step in which the data in training datasets is broken down and encoded into a series of values known as "tokens" which are used to create numerical vector representations that the LLM training algorithms can understand. (*See e.g.*, Meta_Kadrey_00000078-00000104, Section 2.1 ("Tokenizer"); Meta_Kadrey_00000001-00000077, at 6 ("Tokenizer").) The input data is then used in a complex series of LLM training algorithms that adjust the large number of numerical values (known as parameters which include weights) in the LLM, that define the connections and relationships between the nodes in the LLM. By adjusting these weights, the LLM can "learn" and better predict correct outputs based on input data. These numerical parameters enable the LLM, after the training process, to generate better output data in response to input prompts. The process of training of an LLM represents a complete transformation into a form that is entirely unrecognizable from the original training data.

The transformativeness of Meta's use also extends to the post-training and fine-tuning processes used with the Meta Language Models. Plaintiffs have not alleged that their works were used as data in any post-training and fine-tuning processes for any Meta Language Model, but nevertheless, post-training and fine-tuning processes similarly involve a highly transformative use of the data used in those processes, both in terms of purpose and expression. The data used in post-training and fine-tuning is used to fine tune model parameters to improve the performance, quality, and behavior of the models and their responses. For example, in the post-training stage, "the model

is tuned to follow instructions, align with human preferences, and improve specific capabilities (for example, coding and reasoning)." The Llama 3 Herd of Models, p.1.  In the post-training and fine-tuning processes (which will be discussed in more detail in expert discovery), post-training data is likewise used in a series of complex LLM training algorithms that further tailor the model parameters to improve the quality of responses and the ability of the model to perform various tasks. Post-training and fine-tuning processes also generally involve an amount of data that constitutes a fraction of the amount of data used in pre-training the model.  Additionally, and for the same reasons, the transformativeness of Meta's use also extends to research and evaluations (including ablation experiments) to assess the behavior and performance of the Meta Language Models.  Plaintiffs likewise have not alleged that their works were used as data for research or evaluation of Meta Language Model, but nevertheless, the data used in these processes serves the transformative purpose of studying and improving model behavior, and furthering the research and development of the Meta Language Models.

As a further indication of the transformative nature, and the fact that the training process does not simply make a copy of the input dataset, the training process is so computationally complex that it requires an enormous amount of computing power.  *See e.g.*, Meta_Kadrey_00000001-00000077, at 4 ("When training a 65B-parameter model, our code processes around 380 tokens/sec/GPU on 2048 A100 GPU with 80GB of RAM. This means that training over our dataset containing 1.4T tokens takes approximately 21 days.").

Aside from its highly transformative nature, Meta's alleged use also has substantial non-commercial, nonprofit, and educational (including research) purposes.  Meta is investing billions of dollars in research and development of state-of-the-art LLM technology that it is then making available to the public.  In particular, the training of the Meta Language Models resulted in Meta's release of Llama 1, Llama 2, CodeLlama, and Llama 3, 3.1, and 3.2 to the open source community.  These LLMs were provided openly to the public, pursuant to an open license that permits developers, researchers, and institutions (with the exception of licensees with more than 700 million monthly active users) to use and modify the Llama models free of charge.  *See e.g.*, Meta_Kadrey_00000160-00000162,                    Meta_Kadrey_00093275-00093284,

Meta_Kadrey_00093658-00093760. The open release of Llama has resulted in the Llama models being downloaded hundreds of millions of times by researchers and developers from around the world and has catalyzed development of new and improved AI tools and technologies. *See e.g.*, Meta_Kadrey_00092978-00093308, Meta_Kadrey_00062157. The open and public release of Llama has allowed the public to access highly capable LLM technologies that would otherwise be available only to large organizations and/or at considerable expense. More broadly, Meta's investment and open release is contributing to the U.S. economy, the emergence of a new and important industry, and the U.S.'s global leadership of that industry over geopolitical competitors. In that regard, Meta has agreed to permit members of the Five Eyes intelligence alliance, namely, the United States, Canada, UK, Australia, and New Zealand, to use the Meta Language Models. *See* e.g., Meta_Kadrey_00213585.

Plaintiffs' allegedly infringed works were published prior to Meta's alleged use of those works. And Meta's use of large volumes of texts was necessary to extract data regarding, e.g., word frequencies, grammar, and syntax from those works to generate new content. This information constitutes either facts and ideas, which are not protectable by copyright, or is otherwise unrelated to the purpose of copyright protection. Furthermore, given that training the Meta Language Models requires terabytes of text, that greater volumes of text tends to improve model performance on objective benchmarks measuring reasoning and knowledge of facts, and the formats in which the text is available, it was reasonable for Meta to utilize copies of entire works (as opposed to portions thereof), in particular given Meta's efforts to develop the models in a manner that minimizes the likelihood that training data can be reproduced as model output. For example, books data comprised only approximately 4.5% of tokens used to train Llama 1 and only 4.4% of tokens used to train Llama 2.

The ordinary market for Plaintiffs' works is the market for people to purchase and read the books and, possibly, to create derivative works from those books, such as for audio books and film and television adaptations. The Meta Language Models and their outputs do not serve as a market substitute for the Plaintiffs' asserted works, do not compete with those works, and do not harm the value of Plaintiffs' asserted works. Plaintiffs have produced no evidence to the contrary, such as

evidence of lost sales or other financial harm.  To the contrary, plaintiffs have admitted that they are not aware of any such harm.  *See e.g.*, T. Coates 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (admitting, subject to objections, that Plaintiff is unaware of lost sales due to alleged infringement); J. Díaz 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); C. Golden 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); A. Greer 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); D. Hwang 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); R. Kadrey 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); M. Klam 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); L. Lippman 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); S. Silverman 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); R. Snyder 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); J. Woodson 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); L. TerKeurst 9/12/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (similar); A. Greer 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 16 (admitting, subject to objections, that Plaintiff's book sales have not decreased due to the alleged use of Plaintiff's Asserted Works to train large language models); L. TerKeurst 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 16 (similar); T. Coates 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (admitting, subject to objections, that Plaintiff is unaware of lost licensing opportunities due to alleged infringement); J. Díaz 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); C. Golden 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); A. Greer 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); D. Hwang 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); R. Kadrey 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); M. Klam 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); L. Lippman 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); S. Silverman 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); R. Snyder 9/19/2024 Resps. & Objs. to

Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); J. Woodson 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); L. TerKeurst 9/12/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); T. Coates 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (admitting, subject to objections, that Plaintiff is unaware of (1) persons reading text generated by Meta's Llama models as a substitute for Plaintiff's Asserted Works as described in RFA 22, and (2) documentary evidence of persons reading text generated by Meta's Llama models as substitute for Plaintiff's Asserted Works as described in RFA 23); J. Diaz 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); C. Golden 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); A. Greer 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); D. Hwang 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); R. Kadrey 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); M. Klam 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); L. Lippman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); S. Silverman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); R. Snyder 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); J. Woodson 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); L. TerKeurst 8/21/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (similar); D. Hwang 9/16/2024 Dep. 254:7–13 (Mr. Hwang testifying that he did not know whether he had experienced any financial loss as a result of the alleged training of the Meta Language Models on his asserted works); D. Hwang 9/16/2024 Dep. 290:10–17, 291:22–292:4 (Mr. Hwang testifying that he was not aware of any lost sales of his asserted works due to the alleged infringement in the complaint); R. Kadrey 9/25/2024 Dep. 223:23–224:1 (Mr. Kadrey testifying that he was unaware of any injury other than purported harm of not receiving compensation from Meta); R. Kadrey 9/25/2024 Dep. 222:6–9 (Mr. Kadrey testifying that he was not aware of any lost sales of his asserted works due to the alleged infringement in the complaint); L. Lippman 9/17/2024 Dep. 339:3–10 (Ms. Lippman testifying that she is unaware of any financial harm that she has suffered as a result of conduct by

Meta alleged in the Complaint); A. Greer 9/24/2024 Dep. 120:21–121:10 (Mr. Greer testifying that he is unaware of any lost book sales or lost licensing opportunities as a result of Meta's alleged infringement of his works, or whether it is possible that book sales have actually increased due to his participation in this lawsuit); S. Silverman 10/10/2024 Dep. 204:12–205:7, 296:10–297:2 (Ms. Silverman testifying that she is unaware of any evidence to suggest someone did not buy her book because they could generate a summary on a Meta AI tool, evidence of lost sales or lost licensing opportunities due to Meta's conduct, or any instance in which another person did not seek to license her book because of Meta's actions); T. Coates 11/21/2024 Dep. 123:19–125:25 (Mr. Coates testifying that he is unaware of any lost sales or lost licensing opportunities due to Meta's LLMs); J. Díaz 11/20/2024 Dep. 337:22–339:6, 340:21–350:16 (Mr. Díaz testifying that he is unaware of any decrease in sales of his books or any monetary harm suffered due to Meta's use of his books to train its Llama models) ; R. Snyder 12/11/2024 Rough Drft. Dep. 249:22–250:1, 250:14 251:1–253:5, 259:19–23 (Ms. Snyder testifying that she is unaware of any evidence of lost sales or lost licensing opportunities as a result of Meta's conduct alleged in the Complaint); J. Woodson 9/30/2024 Dep. 383:14–20, 389:5–20  (Ms. Woodson testifying that she is unaware of any lost licensing opportunities, loss of income, or lost sales as a result of Meta's conduct alleged in the Complaint); M. Klam 12/10/2024 Rough Drft. Dep. 325:21–326:3, 328:6-10, 330:13–16 (Mr. Klam testifying that he is unaware of any evidence that he lost sales of his asserted works or lost licensing opportunities as a result of Meta's conduct alleged in the Complaint); C. Farnsworth 12/4/2024 Rough Drft. Dep. 138:20–139:8 (Mr. Farnsworth testifying that he could not point to any specific lost opportunity he suffered due to Meta's release of its Llama model).

Moreover, there was no market for licensing Plaintiffs' literary books as training data for LLMs at the time Meta first Llama 1 or at the time Plaintiffs' filed their lawsuit, and there is no such market today.  Plaintiffs have admitted as much in discovery.  Moreover, testimony from Meta's witnesses, including, by way of example, from Sy Choudhury, and Alex Boesenberg, indicate that there has not been, and is not a market for licensing books for AI training.  *See e.g.*, S. Choudhury 12/5/2024 Dep. 20:6-22:21, 65:10-21;  A. Boesenberg 11/18/2024 Dep. 381:14-22.  Moreover, any particular book has no independent value as training data and/or is

interchangeable with countless other books. In any case, such a market would be for a transformative use. It would also be impractical, if not impossible, for companies developing LLMs to attempt to negotiate licenses with each individual book rights holder for various reasons, including but not limited to the amount of time and cost necessary to do so would have precluded development of the models in the first instance, in particular given the time and costs relative to the de minimis value of individual works to the development of the models. In support, Meta intends to rely on Plaintiffs' discovery responses and testimony, expert reports and testimony, percipient witness testimony, as well as documents produced in this litigation

**INTERROGATORY NO. 17:**

If You or any of Your employees and/or agents intend to assert the advice of counsel defense, state any and all facts upon which You or any of your employees and/or agents intend to rely on for that contention.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 17:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the reference to "Your employees and/or agents" with respect to any defense in this case, as no Meta employees or agents are parties to this case.

Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25 Interrogatories under Rule 33(a)(1).

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta does not intend to assert the advice of counsel defense in this case.

1    Dated: December 13, 2024                     COOLEY LLP

2                                                 By:  _/s/ Judd Lauter_

3                                                      Bobby Ghajar
                                                       Mark Weinstein
4                                                      Kathleen Hartnett
                                                       Phillip Morton
5                                                      Judd Lauter
                                                       Elizabeth L. Stameshkin
6                                                      Matthew Brigham
                                                       Colette Ghazarian
7                                                      Juan Pablo Gonzalez
                                                       Cole A. Poppell

8                                                      LEX LUMINA PLLC
9                                                      Mark A. Lemley

10                                                     CLEARY GOTTLIEB STEEN &
                                                       HAMILTON LLP
11                                                     Angela L. Dunning

12                                                     Attorneys for Defendant
                                                       META PLATFORMS, INC.
13    *Full Counsel List*

14    COOLEY LLP
      PHILLIP MORTON *(pro hac vice)*
15    (pmorton@cooley.com)
      COLE A. POPPELL *(pro hac vice)*
16    (cpoppell@cooley.com)
      1299 Pennsylvania Avenue, NW, Suite 700
17    Washington, DC 20004-2400
      Telephone:    (202) 842-7800
18
      COOLEY LLP
19    MATTHEW BRIGHAM (191428)
      (mbrigham@cooley.com)
20    JUAN PABLO GONZALEZ (334470)
      (jgonzalez@cooley.com)
21    3175 Hanover Street
      Palo Alto, CA  94304-1130
22    Telephone:    (650) 843-5000

23    LEX LUMINA PLLC
      MARK A. LEMLEY (155830)
24    (mlemley@lex-lumina.com)
      745 Fifth Avenue, Suite 500
25    New York, NY 10151
      Telephone:    (646) 898-2055

26

27

28

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the State of California.  I am employed in Los Angeles County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is Cooley LLP, 355 South Grand Avenue, Suite 900, Los Angeles, CA  90071.  On the date set forth below I served the documents described below in the manner described below:

- **DEFENDANT META PLATFORMS, INC.'S FURTHER SUPPLEMENTAL AND AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

Executed on December 13, 2024, at Los Angeles, California.

/s/Jerry Gonzalez

Jerry Gonzalez

COOLEY LLP
ATTORNEYS AT LAW

1

PROOF OF SERVICE
3:23-CV-03417-VC

| | | |
|---|---|---|
| 1 | | **SERVICE LIST** |

Joseph R. Saveri
Cadio Zirpoli
Christopher K.L. Young
Holden Benon
Louis Andrew Kessler
Aaron Cera
Margaux Poueymirou
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, CA 94108
Email: jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
lkessler@saverilawfirm.com
acera@saverilawfirm.com
mpoueymirou@saverilawfirm.com

Matthew Butterick
MATTHEW BUTTERICK,
ATTORNEY AT LAW
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Email: mb@buttericklaw.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed Rathur
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Email: bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Joshua I. Schiller
Maxwell Vaughn Pritt
BOIES SCHILLER FLEXNER
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Email: jischiller@bsfllp.com
mpritt@bsfllp.com

David Boies (*pro hac vice*)
BOIES SCHILLER FLEXNER
333 Main Street
Armonk, NY  10504
Email: dboies@bsfllp.com

Jesse Panuccio (*pro hac vice*)
BOIES SCHILLER FLEXNER
1401 New York Ave. NW
Washington, DC  20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
DiCELLO LEVITT LLP
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
DiCELLO LEVITT LLP
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
julwick@dicellolevitt.com
ndjordjevic@dicellolevitt.com

David A. Straite (*pro hac vice*)
DiCELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

COOLEY LLP
ATTORNEYS AT LAW

**PROOF OF SERVICE**
**3:23-CV-03417-VC**

1    Elizabeth J. Cabraser
2    Daniel M. Hutchinson
     Reilly T. Stoler
3    LIEFF CABRASER HEIMANN &
     BERNSTEIN, LLP
4    275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339
5    Telephone: (415) 956-1000
     Email: ecabraser@lchb.com
6           dhutchinson@lchb.com
            rstoler@lchb.com
7
     Rachel Geman
8    LIEFF CABRASER HEIMANN &
     BERNSTEIN, LLP
9    250 Hudson Street, 8th Floor
     New York, New York 10013-1413
10   Telephone: (212) 355-9500
     Email: rgeman@lchb.com
11

Nancy Evelyn Wolff
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 340-6334
Fax: (310) 492-4394
Email: NWolff@cdas.com

Scott J. Sholder
CeCe M. Cole
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Email: ssholder@cdas.com
       ccole@cdas.com

12

*Attorneys for Plaintiff Christopher Farnsworth
and Representative Plaintiffs and the Proposed
Class*

13   *Attorneys for Plaintiff Christopher Farnsworth
14   and Representative Plaintiffs and the Proposed
     Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW

**PROOF OF SERVICE**
**3:23-CV-03417-VC**

1  COOLEY LLP
   BOBBY GHAJAR (198719)
2  (bghajar@cooley.com)
   COLETTE GHAZARIAN (322235)
3  (cghazarian@cooley.com)
   1333 2nd Street, Suite 400
4  Santa Monica, California 90401
   Telephone:     (310) 883-6400
5
   MARK WEINSTEIN (193043)
6  (mweinstein@cooley.com)
   KATHLEEN HARTNETT (314267)
7  (khartnett@cooley.com)
   JUDD LAUTER (290945)
8  (jlauter@cooley.com)
   ELIZABETH L. STAMESHKIN (260865)
9  (lstameshkin@cooley.com)
   3175 Hanover Street
10 Palo Alto, CA  94304-1130
   Telephone:     (650) 843-5000
11
   LEX LUMINA PLLC
12 MARK A. LEMLEY (155830)
   (mlemley@lex-lumina.com)
13 745 Fifth Avenue, Suite 500
   New York, NY 10151
14 Telephone: (646) 898-2055

15 CLEARY GOTTLIEB STEEN & HAMILTON LLP
   ANGELA L. DUNNING (212047)
16 (adunning@cgsh.com)
   1841 Page Mill Road, Suite 250
17 Palo Alto, CA 94304
   Telephone: (650) 815-4131

18 *Counsel for Defendant Meta Platforms, Inc.*

19               **UNITED STATES DISTRICT COURT**

20              **NORTHERN DISTRICT OF CALIFORNIA**

21
   RICHARD KADREY, et al.,                  Lead Case No. 3:23-cv-03417-VC
22                                           Related Case No. 4:23-cv-06663
        Individual and Representative Plaintiffs,
23                                           **DEFENDANT META PLATFORMS, INC.'S**
        v.                                   **FIRST SUPPLEMENTAL RESPONSES AND**
24                                           **OBJECTIONS TO PLAINTIFFS' THIRD SET**
   META PLATFORMS, INC., a Delaware          **OF INTERROGATORIES**
25 corporation;
26                                Defendant.
27
28

<table>
<tr><td><strong>PROPOUNDING PARTY:</strong></td><td><strong>PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH</strong></td></tr>
<tr><td><strong>RESPONDING PARTY:</strong></td><td><strong>DEFENDANT META PLATFORMS, INC.</strong></td></tr>
<tr><td><strong>SET NUMBER: ONE</strong></td><td><strong>THIRD</strong></td></tr>
</table>

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's ("Plaintiffs") Third Set of Interrogatories ("Interrogatories").

## I.    RESPONSES TO ALL INTERROGATORIES

**1.**    Meta's responses to these Interrogatories are made to the best of Meta's current employees' present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation.  Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including any such information or documents obtained in discovery herein.

**2.**    To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the parties' stipulated protective order governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction (ECF No. 90, the "Protective Order").

**3.**    Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Interrogatory, Meta makes the following objections to Plaintiffs' Instructions and Definitions:

**1.**    Meta objects to all defined terms to the extent that they are not utilized in Plaintiffs' Second Set of Interrogatories.

**2.**    Meta objects to the definition of "Communications" to the extent it is inconsistent with and otherwise seeks to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the Stipulated Protocol regarding Electronic Discovery ("ESI Order"). Meta will produce Documents, including Communications, pursuant to the terms of the ESI Order, and any agreement to produce such Documents is explicitly in view of the terms of the ESI Order. To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate. Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiffs.

**3.**    Meta objects to the definition of "Describe" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense. Meta also objects to the definition of "Describe" as vague, ambiguous, and unintelligible as to the phrase "desirable to support such statement or make the description complete." Meta construes "Describe" to mean provide a detailed narrative statement or description of specific facts.

**4.**    Meta objects to the definition of "Llama Models" as vague and ambiguous as to the terms and phrases "other AI models," "instances," "iterations," "versions," "updates," "modifications," "original version," "experimental versions," "subsequent versions," and

"refinements to the underlying algorithm, parameters, or architecture," as applied to Llama and "any other AI models developed or in development by Meta." Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to this definition to the extent that it purports to require Meta to produce documents that are not relevant to any party's claims or defenses. Meta construes "Llama Models" to mean the models within the Llama family of LLMs publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3.

**5.** Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning LLMs that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses. For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLMs released by Meta under that name on April 18, 2024, July 23, 2024, and September 25, 2024.

**6.** Meta objects to the definition of "Meta" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents outside of its possession, custody, or control. Meta construes "Meta" or "You" to mean Meta Platforms, Inc.

**7.** Meta objects to the definition of "Relevant Period" as vague, ambiguous, and unintelligible, as it is defined circularly to mean "all times relevant to … the Complaint." Meta construes the Relevant Period to mean January 1, 2022 to the present.

**8.** Meta objects to the definition of "Shadow Dataset(s)" as vague and ambiguous as to the phrasing "the type of databases described in paragraph 37 of the Complaint—databases including but not limited to . . ." and "encompass all versions, updates, augmentations, or modifications of such databases." Without any admission with respect to their content or nature, Meta construes the term "Shadow Dataset(s)" as used in the Requests and the term "Third Party Datasets" synonymously to refer to the third party datasets that are commonly referred to as Books3, Z-Library (aka B-ok), Library Genesis, Bibliotik, Anna's Archive, and The Pile.

**9.** Meta objects to the definition of "SRT" to the extent it characterizes Meta's SRT platform as being used to track "business" issues. Meta construes "SRT" to refer to Meta's SRT platform.

**10.** Meta objects to the definitions of "Train" and "Training" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent these terms refer to processes other than pretraining or post-training processes. Meta construes "Train" and "Training" to refer to pretraining and post-training processes.

**11.** Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense. Meta will supplement or amend its responses to these Interrogatories in accordance with Meta's obligations under Rule 26(e).

**12.** Meta objects to Instruction 2, which defines the "Relevant Period" as January 1, 2000 to the present. Such definition is overbroad, unduly burdensome, and disproportionate to the needs of the case because it both precedes the existence of Facebook (and therefore Meta) by several years, and the development of the Meta Language Models by decades. For the same reason, the definition of "Relevant Period," as applied to the Interrogatories, would encompass information that is irrelevant to the parties' claims and defenses. The Instruction is also inconsistent with the definition of "Relevant Period" provided on page 3 of the Interrogatories and is therefore vague and ambiguous. Meta construes the Relevant Period to mean January 1, 2022 to the present.

**13.** Meta objects to Instruction 5 (referring to Fed. R. Civ. P. Rule 33(d)) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject

Cooley LLP
Attorneys at Law

4

Meta's First Supp. Resp & Obj's to
Pltffs' Third Set of Rogs
3:23-cv-03417-VC

Meta to unreasonable and undue burden and expense.

**14.** Meta objects to Instruction 6 (outlining additional obligations for allegedly incomplete responses) to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control.

**15.** Meta objects to Instruction 7 (outlining additional obligations for any privilege objection or work product objection) on the ground that it purports to require more of Meta than any obligation imposed by law, would subject Meta to unreasonable and undue burden and expense, and would itself require disclosure of information protected by attorney-client privilege and/or attorney work product doctrine.

**16.** Meta objects to Instruction 8 (building in a separate question for each Interrogatory) on the ground that it purports to require more of Meta than any obligation imposed by law, seeks disclosure of information protected by attorney-client privilege and/or attorney work product doctrine, and seeks to circumvent Plaintiffs' interrogatory limit.

**17.** Meta objects to Instruction 10 (purporting to require responses for "all predecessors, successors, subsidiaries … divisions and/or affiliates of Meta"), on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.  Meta further objects to Instruction 11 to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control.  As such, the Instruction is overly broad as well.  Subject to any objections applicable to a particular Interrogatory, Meta will conduct a reasonable, proportionate search for non-privileged, relevant, responsive information within its possession, custody, or control.

**18.** In responding to all Interrogatories, Meta will comply with the requirements of the Federal Rules of Evidence and Federal Rule of Civil Procedure 26.

## III.    OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES

### INTERROGATORY NO. 19:

Describe the total revenue You have received and forecast or otherwise expect you will receive from the distribution or use of Llama Models since the start of their development, including by way of any direct sales, licensing fees, or other financial or in-kind benefits.

1    **RESPONSE TO INTERROGATORY NO. 19:**

2        Meta incorporates by reference its objections and definitions above.

3        Meta objects to this Interrogatory as vague and ambiguous as to the term "distribution" and

4    the phrasing "since the start of their development" (as it relates to actual revenues), "direct sales,"

5    and "other financial or in-kind benefits." Meta construes this Interrogatory as seeking information

6    concerning Meta's actual and projected revenue associated with the Llama Models (as construed

7    above).

8        Meta objects to this Interrogatory on the ground that it is overbroad, unduly burdensome,

9    and disproportionate to the needs of the case and seeks information that is not relevant to the parties'

10    claims and defenses.

11        Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule

12    33(a)(1).  Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets

13    of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25

14    total.  Nonetheless, and without waiver of its objections, Meta provided its responses to the prior

15    interrogatories or is in the process of supplementing them. Without leave of Court, Plaintiffs served

16    additional interrogatories exceeding the limit.  By answering interrogatories "19-25," Meta does

17    not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

18        Subject to and without waiving the foregoing objections, and pursuant to the terms of the

19    Protective Order and the ESI , Meta responds as follows:

20        Pursuant to Rule 33(d), Meta refers Plaintiffs to the following documents:

21        Meta_Kadrey_00089020,    Meta_Kadrey_00092364,    and    Meta_Kadrey_00093345,

22    Meta_Kadrey_00093571.

23        In response to Plaintiffs' Fifth Set of Requests for Production of Documents, Meta has

24    conducted an additional search for non-privileged documents in its possession, custody, or control

25    sufficient to show Meta's actual and/or projected revenue associated with the Llama Models (as

26    construed above), if any.  Meta will amend its response to this Interrogatory to identify such

27    documents, if any, after they have been produced.

28    **<u>Meta's First Supplemental Response to Interrogatory No. 19:</u>**

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

- ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ██████████████████████████, ██████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████

- ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████

████████████████████████████████████████    ██████

███████████████████████

Meta further identifies Meta_Kadrey_00156462, which reflects updated financial forecasts, including revenues, associated with Meta's generative AI initiatives.

**INTERROGATORY NO. 20:**

Describe any partnerships or collaborations related to the Llama Models You have entered with third parties that have resulted in financial benefits, including the details of such arrangements, such as financial terms, revenue or in-kind benefits received in relation to them.

**RESPONSE TO INTERROGATORY NO. 20:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the phrases "partnerships or collaborations," "financial benefits," and "in-kind benefits." Meta construes this Request as

seeking documents concerning revenues generated by Meta from its agreements with third parties concerning use of the Llama Models (as construed above).

Meta objects to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses.

Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule 33(a)(1).  Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25 total.  Nonetheless, and without waiver of its objections, Meta provided its responses to the prior interrogatories or is in the process of supplementing them.   Without leave of Court, Plaintiffs served additional interrogatories exceeding the limit.  By answering interrogatories "19-25," Meta does not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order and the ESI , Meta responds as follows:

**This response is designated as Confidential under the Protective Order.**

**Meta's First Supplemental Response to Interrogatory No. 20:**

Meta identifies Meta_Kadrey_00212903, Meta_Kadrey_00213257, Meta_Kadrey_00212679, Meta_Kadrey_00212864, and Meta_Kadrey_00212689 as Meta's collaboration agreement with Amazon; Meta_Kadrey_00212710, Meta_Kadrey_00213055, and Meta_Kadrey_00213435 as Meta's collaboration agreement with Google; and Meta_Kadrey_00213281, Meta_Kadrey_00213303, as Meta's collaboration agreement with Microsoft.

**This response is designated as Confidential under the Protective Order.**



**INTERROGATORY NO. 21:**

Identify all Person(s) involved in the decision to use Shadow Datasets to train Llama Models.

**RESPONSE TO INTERROGATORY NO. 21:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the phrase "involved in," which could refer to anyone who had any role in use of such datasets. Meta construes this Interrogatory as seeking the identities of any individuals who had a direct role in the approval of Meta's use of such datasets.

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning individuals whom had no significant involvement in approving use of a particular dataset.

Meta objects to this Interrogatory to the extent that it seeks information that is not within Meta's possession, custody, or control.

Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule 33(a)(1). Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets

of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25 total.  Nonetheless, and without waiver of its objections, Meta provided its responses to the prior interrogatories or is in the process of supplementing them.    Without leave of Court, Plaintiffs served additional interrogatories exceeding the limit.  By answering interrogatories "19-25," Meta does not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responds as follows:

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

**INTERROGATORY NO. 22:**

Describe any efforts You have made to obtain licenses or any similar permissions to use Shadow Datasets, or the works contained therein, to train Llama Models.

**RESPONSE TO INTERROGATORY NO. 22:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the term "works" and the phrases "similar permissions" and "the works contained therein." Meta construes this Interrogatory as seeking information concerning Meta's efforts, if any, to obtain licenses or other consent to use the Third Party Datasets as training data for the Llama Models (as construed above).

Meta objects to this Interrogatory to the extent it implicitly assumes that licenses or permission are required for use of the Third Party Datasets to train the Llama Models (as construed above).

Meta objects to this Interrogatory because, on its face, it does not exclude legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in particular to the extent that the subject matter of the Interrogatory encompasses internal deliberations between or among Meta attorneys concerning actual or contemplated contract provisions.

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning licenses or consent to use works other than literary works as training data for the Llama Models (as construed above).

Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule 33(a)(1). Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25 total. Nonetheless, and without waiver of its objections, Meta provided its responses to the prior interrogatories or is in the process of supplementing them. Without leave of Court, Plaintiffs served additional interrogatories exceeding the limit. By answering interrogatories "19-25," Meta does not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

Subject to and without waiving the foregoing objections, and pursuant to the terms of the

Protective Order, Meta responds as follows:

**This response is designated as Confidential under the Protective Order.**

███████████████████████████████████████████████

████████████████████████████████████████████████

██

**INTERROGATORY NO. 23:**

Identify all sources from which You have obtained Shadow Datasets.

**RESPONSE TO INTERROGATORY NO. 23:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory to the extent that it seeks information that is not within Meta's possession, custody, or control.

Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case and seeks information that is not relevant to the parties' claims and defenses, in particular to the extent it seeks information concerning datasets that were not used to train the Llama Models (as construed above) and the identity of every source from which a given dataset may have been obtained at any time.

Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule 33(a)(1). Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25 total. Nonetheless, and without waiver of its objections, Meta provided its responses to the prior interrogatories or is in the process of supplementing them. Without leave of Court, Plaintiffs served additional interrogatories exceeding the limit. By answering interrogatories "19-25," Meta does not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

Subject to and without waiving the foregoing objections, and pursuant to the terms of the Protective Order, Meta responds as follows:

**This response is designated as Highly Confidential – Attorney's Eyes Only under the Protective Order.**

████████████████████████████████████████████████

1

2

3

4

5 **INTERROGATORY NO. 24:**

6    Identify all individuals, including current and former employees, who work or have worked

7 on securing licenses for data or material You have used, have planned to use, or plan to use to train

8 Llama Models.

9 **RESPONSE TO INTERROGATORY NO. 24:**

10    Meta incorporates by reference its objections and definitions above.

11    Meta objects to this Interrogatory as vague and ambiguous as to the phrasing "who worked

12 on securing," which could encompass any number of individuals who lack material knowledge of

13 Meta's data licensing efforts.  Meta also objects to the terms "data" and "material" as vague,

14 ambiguous, indefinite, overbroad, and disproportionate to the needs of the case, in particular to the

15 extent it refers to training data other than text.  Meta construes this Interrogatory as seeking

16 information concerning the identities of Meta employees who were directly involved in and had

17 responsibility for securing licenses, if any, for text data to train the Llama Models (as construed

18 above).

19    Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

20 to the needs of the case and seeks information that is not relevant to the parties' claims and defenses.

21    Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule

22 33(a)(1).  Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets

23 of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25

24 total.  Nonetheless, and without waiver of its objections, Meta provided its responses to the prior

25 interrogatories or is in the process of supplementing them.   Without leave of Court, Plaintiffs

26 served additional interrogatories exceeding the limit.  By answering interrogatories "19-25," Meta

27 does not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

28    Subject to and without waiving the foregoing objections, and pursuant to the terms of the

Protective Order, Meta identifies the following Meta employees as having been directly involved in and having responsibility for securing licenses, if any, for text data to train the Llama Models:

**This response is designated as Confidential under the Protective Order.**

- ███████████████
- █████████
- ███████████
- ████████
- █████████
- █████████
- █████████
- █████████
- ██████████
- █████████
- ███████████
- ██████████
- █████████████
- ████████
- ████████
- █████████████
- ████████

**INTERROGATORY NO. 25:**

Identify all Meta employees who communicated with third parties—including Microsoft Corporation, OpenAI, Eleuther AI, Anthropic, Dell Inc., Cloudflare, Inc. and Qualcomm—regarding data used to train Llama Models.

**RESPONSE TO INTERROGATORY NO. 25:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague, ambiguous, indefinite, overbroad, and disproportionate to the needs of the case as to the term "third parties." Meta construes this term in

1   the context of this Interrogatory to mean Microsoft Corporation, OpenAI, Eleuther AI, Anthropic,

2   Dell Inc., Cloudflare, Inc. and Qualcomm.

3        Meta also objects to the term "data" as vague, ambiguous, indefinite, overbroad, and

4   disproportionate to the needs of the case, in particular to the extent it refers to training data other

5   than text.  Meta construes this Interrogatory as seeking information concerning the identities of

6   Meta employees who were directly involved in and had responsibility for securing licenses, if

7   any, for text data to train the Llama Models (as construed above).  Meta construes the term "data"

8   to mean text data.

9        Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

10  to the needs of the case and seeks information that is not relevant to the parties' claims and

11  defenses.

12       Meta objects to this Request as improperly seeking discovery on discovery.

13       Meta objects to this Interrogatory as exceeding the limit of 25 Interrogatories under Rule

14  33(a)(1).  Meta informed Plaintiffs in connection with its objections to their Plaintiffs' prior sets

15  of Interrogatories that those interrogatories included numerous discrete subparts, far exceeding 25

16  total.  Nonetheless, and without waiver of its objections, Meta provided its responses to the prior

17  interrogatories or is in the process of supplementing them.   Without leave of Court, Plaintiffs

18  served additional interrogatories exceeding the limit.  By answering interrogatories "19-25," Meta

19  does not waive its rights or objections as to Plaintiffs' violation of Rule 33(a)(1).

20       Subject to and without waiving the foregoing objections, and pursuant to the terms of the

21  Protective Order, Meta responds as follows:

22       Meta is presently unaware of any Meta employees who communicated with Microsoft

23  Corporation, OpenAI, Eleuther AI, Anthropic, Dell Inc., Cloudflare, Inc. and Qualcomm

24  regarding text training data used to train the Llama Models. Meta is aware that Mr. Dettmers

25  communicated with EleutherAI about training data for a model unrelated to the Llama Models.

26  However, Meta is in the process of completing a reasonable investigation concerning the subject

27  matter of this Interrogatory and will, if necessary, supplement its response in due course.

28       **Meta's First Supplemental Response to Interrogatory No. 25:**

**This response is designated as Confidential under the Protective Order.**

Dated: December 13, 2024

COOLEY LLP

By: _/s/ Judd Lauter_

Bobby Ghajar
Mark Weinstein
Kathleen Hartnett
Judd Lauter
Liz Stameshkin
Colette Ghazarian

LEX LUMINA PLLC
Mark A. Lemley

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
Angela L. Dunning

Attorneys for Defendant
META PLATFORMS, INC.

1    **PROOF OF SERVICE**

2          I am a citizen of the United States and a resident of the State of California.  I am employed

3    in Los Angeles County, State of California, in the office of a member of the bar of this Court, at

4    whose direction the service was made.  I am over the age of eighteen years, and not a party to the

5    within action.   My business address is Cooley LLP, 355 South Grand Avenue, Suite 900, Los

6    Angeles, CA  90071.  On the date set forth below I served the documents described below in the

7    manner described below:

8          •      **DEFENDANT META PLATFORMS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND
                  OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES**

9
            ☒      (BY ELECTRONIC MAIL) I am personally and readily familiar with the business
10                practice of Cooley LLP for the preparation and processing of documents in
                  portable document format (PDF) for e-mailing, and I caused said documents to be
11                prepared in PDF and then served by electronic mail to the parties listed below.

12   on the following part(ies) in this action:

13         Executed on December 13, 2024, at Los Angeles, California.

14

15                                           _/s/Jerry Gonzalez_____

16                                           Jerry Gonzalez

17

18

19

20

21

22

23

24

25

26

27                                  **SERVICE LIST**

28

COOLEY LLP
ATTORNEYS AT LAW

                                          1

Joseph R. Saveri
Cadio Zirpoli
Christopher K.L. Young
Holden Benon
Louis Andrew Kessler
Aaron Cera
Margaux Poueymirou
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Email: jsaveri@saverilawfirm.com
        czirpoli@saverilawfirm.com
        cyoung@saverilawfirm.com
        hbenon@saverilawfirm.com
        lkessler@saverilawfirm.com
        acera@saverilawfirm.com
        mpoueymirou@saverilawfirm.com

Matthew Butterick
**MATTHEW BUTTERICK,**
**ATTORNEY AT LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Email: mb@butterricklaw.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed Rathur
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Email: bclobes@caffertyclobes.com
        asweatman@caffertyclobes.com
        mrathur@caffertyclobes.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Joshua I. Schiller, Esq.
Maxwell Vaughn Pritt, Esq.
**BOIES SCHILLE FLEXNER**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jischiller@bsfllp.com
        mpritt@bsfllp.com

David Boise, Esq. (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER**
1401 New York Ave. NW
Washington, DC 20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
        julwick@dicellolevitt.com
        ndjordjevic@dicellolevitt.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*