**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butterick.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

(additional counsel included below)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al., *Individual and Representative Plaintiffs*, v. META PLATFORMS, INC., *Defendant.* | Case No. 3:23-cv-03417-VC<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE THIRD AMENDED CONSOLIDATED COMPLAINT** |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 9, 2025, at 10:00 a.m., or as soon thereafter as the parties may be heard, Plaintiffs will and hereby do move for leave to file a Third Amended Consolidated Complaint ("TACC") pursuant to Fed. R. Civ. P. 15(a)(2).

Plaintiffs seek an order granting their Motion for Leave to File the TACC to add additional causes of action based on the new evidence produced in discovery in recent weeks, and also to update the allegations to reflect newer iterations of Meta's Llama models that have been developed since the date Plaintiffs filed prior iterations of their Complaint.

Plaintiffs' Motion is based on this Notice of Motion and Motion, all pleadings and papers in this action, and any oral argument of counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

Meta and its employees have provided recent testimony and documents—some as recent as the last few days—that not only corroborate and bolster Plaintiffs' copyright infringement claim, but provide the factual bases this Court determined earlier to be wanting in connection with a Digital Millennium Copyright Act ("DMCA") claim. *See* 17 U.S.C. § 1201 *et seq.* These new facts also support the addition of a claim under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. Through the proposed TACC, Plaintiffs seek to (a) conform the operative pleading to the evidence adduced to date, (b) provide a fuller picture of Meta's copyright infringement, and (c) add two additional claims for relief, the prosecution of which will not require an alteration of the schedule or additional discovery beyond what is needed for the copyright infringement claim.[1]

*First,* the proposed amendments include references to all versions of Meta's Llama models and all pirated datasets Meta used for its Llama models (as training datasets, for use in fine-tuning or otherwise). Stating in 2023, when Meta has been in steep competition to quickly improve the performance, uses, and commercial prospects of its Llama "herd," Meta availed itself of a broad array of pirated sources. At the same time, the market for training data continues to develop.

*Second,* and as relevant both to willful infringement and a claim this Court earlier permitted Plaintiffs to re-plead, it is now clear that Meta illegally stripped Copyright Management Information ("CMI") from Plaintiffs' asserted works used to train its Llama Models in order to facilitate and conceal widespread copyright infringement. And Meta has been *itself participating* in torrent sharing, uploading the very same hacked data containing Plaintiffs' works that it unlawfully downloaded, stripped, and then used for commercial gain. Indeed, Meta, through a corporate representative who testified on November 20, 2024, has now admitted under oath to uploading (aka "seeding") pirated files containing Plaintiffs' works on "torrent" sites. That admission, uncovered just days ago, supports the addition of a claim under CDAFA. It also now

---

[1] For efficiency, the proposed TACC also lists Christopher Farnsworth as a proposed class representative, and his counsel as proposed Class Counsel.

crystalizes claims alleging the "distribution" of pirated material, including such material that Meta stripped of CMI, and thus buttresses Plaintiffs' copyright and DMCA claims.

The addition of new facts serves to conform the pleading to the evidence. The new claims could not have been added sooner because they rest on the recently unearthed evidence (including evidence that Meta previously concealed). They also are brought in good faith and not for purposes of delay. Thus, Plaintiffs' motion should be granted.

I.      **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." In considering a motion for leave to file an amended complaint, courts examine several factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Optrics Inc. v. Barracuda Networks Inc.*, 2020 WL 8680000, at *2 (N.D. Cal. June 11, 2020). "In exercising [its] discretion, a court must be guided by the underlying principle of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Rule 15(a) is "to be applied with extreme liberality." *Brown v. Google LLC*, 2022 WL 2289057, at *1 (N.D. Cal. Mar. 18, 2022) (Gonzalez Rogers, J.) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a **presumption** under Rule 15(a) in favor of granting leave to amend." *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). (emphasis in original). The party opposing amendment bears the burden of showing why leave to amend should not be granted. *See id.*

**II.      ARGUMENT**

The five *Foman* factors weigh strongly in favor of granting Plaintiffs' leave to amend here.

**A.     Recent Discovery Yields Strong Evidence Not Only of Willful Copyright Infringement, but also of DMCA and CDAFA Violations.**

**1. DMCA**

Plaintiffs' recent discovery efforts have yielded information directly supporting a renewed DMCA claim, which is included in the proposed TACC. Specifically, the newly discovered evidence forming the basis of Plaintiffs' proposed amendments include documents that show (1) one or more of the shadow datasets that Meta used to train Llama contained the CMI associated with the Infringed Works; (2) Meta knew these shadow datasets included copyrighted works without the permission of the copyright holders; and (3) Meta removed the CMI from the Infringed Works as part of Meta's process to use the Infringed Works for training Llama.

On November 9, 2024, Meta produced a document in which Meta employee Nikolay Bashlykov admitted that Meta removed "copyright" information from the "Libgen dataset." Stein Decl., Ex. 1, Meta_Kadrey_00128273 at 00128274. The "Libgen dataset" is a shadow, or pirated, dataset that contains works by such large publishers as Cengage Learning, Macmillan Learning, McGraw Hill, and Pearson Education (who all sued to block piracy by LibGen).[2]

Also on November 9, Meta produced a document admitting that it "*remov[ed] all the copyright paragraphs* from beginning and the end of the paper," ostensibly referring to work done to strip copyright material from science journal articles. Stein Decl., Ex. 2, Meta_Kadrey_00101613 at 00101615 (emphasis added). Meta also removed "source metadata" from Llama training data that resulted in the removal of CMI such as the © marker. Stein Decl., Ex. 3, 9/19/24 Mihalov Dep. Tr. at 131:12–13, and Meta's corporate representative confirmed on November 20 that Meta may have removed "unhashed source metadata" (i.e., copyright information that had not been anonymized or removed) in order to "hide its data mix," an explanation that holds little water given the fact that much of its data mix was already public (*see*

---

[2] Ashley Belanger, *Most Notorious Illegal Shadow Library Sued by Textbook Publishers*, ARS TECHNICA (Sept. 7, 2023), https://arstechnica.com/tech-policy/2023/09/most-notorious-illegal-shadow-library-sued-by-textbook-publishers/.

Stein Decl., Ex. 4, Meta_Kadrey 00000078). Stein Decl., Ex. 5, 11/20/24 Clark 30(b)(6) Dep. Tr. at 315:6–8 (questioning corporate witness about Meta document stating "unhashed source metadata" was "not acceptable from an IP-brand safety leakage perspective"). Meta's corporate representative also admitted that Meta's removal of CMI may have "facilitated" the training of Llama, *id.* at 314:10–12, thereby assisting the copyright infringement at the center of this case and resulting in conduct that clearly violates the DMCA.

This discovery suggests that Meta strips CMI not just for training purposes, but also to conceal its copyright infringement, because stripping copyrighted works' CMI prevents Llama from outputting copyright information that might alert Llama users and the public to Meta's infringement. To further minimize the risks that Llama users or the public, including Plaintiffs and the putative class of copyright owners in this case, might learn that Meta infringed on copyrights, Meta's programmers included "supervised samples" of data when fine-tuning Llama to ensure Llama's output would include less incriminating answers when answering prompts regarding the source of Meta's AI training data. *See* Proposed TACC ¶¶ 92–94. This newly discovered information directly supports Plaintiffs' renewed DMCA claim and supporting allegations.

### 2. CDAFA

Recent discovery has also yielded information supporting a claim against Meta under CDAFA. CDAFA creates liability for anyone who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network." Cal. Penal Code. § 502(c)(2). In just the last few days, Plaintiffs have uncovered evidence that Meta torrented pirated datasets of copyrighted works to train the Llama models—in other words, knowing copying of computer data without Plaintiffs' permission. A torrent is a "protocol . . . that is used to distribute a large computer file (such as of digitized music or video) that has been segmented in small pieces between a large number of peer-to-peer users."[3] *See* Stein Decl., Ex. 6, 11/13/24 Clark Depo Tr. at 163:4–13 ("A

---

[3] *Torrent*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/torrent (last visited Nov. 25, 2024).

torrent is a way of storing data and *sharing data* in a distributed fashion across the internet . . . It's self-healing, so if one piece of it goes down, pieces of the whole thing are *distributed all over*.") (emphasis added).

In most cases, and in this case too, users who download via torrent also must *upload the same files* they are downloading to avoid being banned or forbidden from the site offering the torrent as a "leech." *See* Joseph M. Eno, *What Motivates Illegal File Sharing? Empirical and Theoretical Approaches*, 69 N.Y.U. ANN. SURV. AM. L. 587, 591 (2013) ("Colloquially, uploaders are known as 'seeders,' downloaders are 'downloaders,' and active client participants are 'peers.' Those who download more than they upload are called, pejoratively, 'leechers.'"). Just last week, Meta's corporate representative admitted that Meta not only downloaded the illegally created dataset known as LibGen but it also *uploaded* it via torrent:

> Meta: That's what we did and the library that we used [was called] Lib Torrent for downloading LibGen, [Meta employee] Bashlykov configured the configure setting so the smallest amount of seeding could occur.
>
> Plaintiffs' Counsel: What does that mean?
>
> Meta: When you use a Torrent protocol, part of the configuration on how Torrents work is, you [ ] can only download as long as you offer to participate in the Torrent network in some way and seeding means up to open up *some . . . sharin*g of the Torrent file while you're downloading.
>
> Stein Decl., Ex. 5, 11/20/24 Clark 30(b)(6) Depo Tr. at 349:22-350:12 (emphasis added).

In other words, in downloading LibGen and the hundreds/thousands of pirated copyrighted works it contains for use in training Llama, Meta acted as a "leech," as such a downloader is known in the torrent community, so that it could "download as much as possible from the torrent network but to let the least amount to be shared back." *Id.* at 344:1–6. Given Meta's incredible computing resources,[4] Meta's decision to "leech" the torrent reflects its knowledge that it was acting illegally

---

[4] *See, e.g.*, Paresh Dave & Will Knight, *Meta's Next Llama AI Models Are Training on a GPU Cluster 'Bigger Than Anything' Else*, WIRED (Oct. 30, 2024), https://www.wired.com/story/meta-llama-ai-gpu-training/ (Meta's CEO stated during an October 30, 2024 investor call that Meta is training Llama 4 on a cluster of GPUs that is "bigger than anything else that I've seen reported for what others are doing"); Jonathan Vanian, *Mark Zuckerberg Indicates Meta Is Spending Billions on Nvidia AI Chips*,

and its desire to conceal its conduct, because the more illicit data it uploaded to the rest of the hacker community, the more likely its conduct would be discovered by others. Indeed, that uploading occurred notwithstanding serious legality doubts from the very person who did the downloading. Stein Decl., Ex. 7, Meta_Kadrey_00089791 at 00089856 (Bashlykov: "using torrents would entail 'seeding' the files – i.e. sharing the content outside, this could be legally not OK"). But senior executives such as Meta's head of Generative AI, Ahmad Ah-Dahle, nonetheless "cleared the path," Stein Decl., Ex. 8, Meta_Kadrey_00048149 at 00048152, for Meta to use LibGen and other illicit sources, so that's what Meta did. This torrenting activity turned Meta itself into a distributor of the very same pirated copyrighted material that it was also downloading for use in its commercially available AI models. Recently produced documents tell the same story. *See*, *e.g.*, Stein Decl., Ex. 9, Meta_Kadrey_00101679 (produced 11/9/2024) (Meta employees Xiaolan Wang and Bashlykov discussing how to share "torrent files for the downloading jobs," with Bashlykov stating, "I think I took the torrent jobs from the libgen webpage").

### B. Plaintiffs' Amendments Do Not Unduly Prejudice Meta.

Meta does not face undue prejudice from Plaintiffs' introduction of their new claims. In analyzing whether a defendant would suffer prejudice, courts examine "whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). In the specific context of amending a complaint late in fact discovery, courts consider (1) whether the amendments will necessitate reopening discovery; (2) whether new parties will be added; and (3) whether the new allegations add claims based on different legal theories or require proof of different facts. *See In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1109 (N.D. Cal. 2003); *Netbula, LLC v. Bindview Dev. Corp.*, 2007 WL 2221070, at *4 (N.D. Cal. Aug. 2, 2007).

None of these disruptive features are present here. First, Plaintiffs seek to amend their Complaint as a result of recent discovery, not to obtain it. Plaintiffs are mindful of the existing case management schedule. If the claims are added, Plaintiffs will not seek to initiate any

---

CNBC (Jan. 18, 2024), https://www.cnbc.com/2024/01/18/mark-zuckerberg-indicates-meta-is-spending-billions-on-nvidia-ai-chips.html.

additional discovery. Indeed, these claims are premised entirely on documents already produced and/or that will be produced anyway and deposition testimony already provided by Meta. *See Synchronoss Techs., Inc. v. Dropbox Inc.*, 2019 WL 95927, at *3 (N.D. Cal. Jan. 3, 2019) (permitting defendant to amend answer to add unclean hands defense after close of fact discovery because refuting the new defense did not require additional discovery). Second, no new litigation parties will be added.[5] And finally, the amendments are based on Meta's own documents and testimony, and thus, are based on facts Meta already has knowledge of.

In circumstances like this one, where the introduction of new claims was made in good faith and prejudice is minimal, courts have granted motions to amend the complaint far into, and even after, the fact discovery period. *See Leines v. Homeland Vinyl Prods., Inc.*, 2020 WL 6044037, at *3–5 (E.D. Cal. Oct. 13, 2020) (granting leave to amend complaint after the close of fact discovery where added claims did not appear to be brought in bad faith); *Hansen Beverage Co. v. Nat'l Beverage Corp.*, 2007 WL 9747720, at *2 (C.D. Cal. Feb. 12, 2007) (finding marginal prejudice in allowing amendment of complaint a few weeks before fact discovery cut-off); *Poe v. Northwestern Mut. Life Ins. Co.*, 2023 WL 4155379, at *2 (C.D. Cal. Jan. 20, 2023) (granting motion to amend complaint to define a broader proposed class when information relevant to the class definition was learned during a deposition conducted deep into fact discovery).

### C. Plaintiffs Did Not Delay in Moving for Leave to Amend.

When evaluating undue delay, courts consider the length of time between discovery of the need to amend and the date the amendment was filed. *See Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quotations omitted). However, the key development warranting leave to amend is when new facts are discovered and promptly raised with the court, *see, e.g.*, *Watson v. Ford Motor Co.*, 2018 WL 3869563, at *2 (N.D. Cal. Aug. 15, 2018) (six-month delay was not "undue" because, among other factors, the amending party "only

---

[5] Mr. Farnsworth was already added to this case, and already produced discovery.

recently learned that [a new party] had not been named"), and the proposed amendment does not simply "reassert an old theory of liability based on previously-known facts," *Royal Ins. Co*, 194 F.3d at 1017. Here, Plaintiffs discovered new facts giving rise to and supporting their new causes of action during the past few weeks, including key evidence *obtained only this past week*.

Finally, the recent addition of Plaintiffs' new interim lead counsel and new additional class counsel militates against undue delay. Courts have addressed this very situation, finding, for example, that even a five-month delay between discovery of new facts and seeking leave to file an amended complaint was not undue "under the circumstances of this case" because, among other reasons, "Plaintiff's newly retained counsel filed the motion only two months after joining this case." *Poe.*, 2023 WL 4155379 at *5. This mirrors the facts here, where Plaintiffs are moving for leave to add their DMCA and CDAFA claims two months after new counsel was retained.

### D. Plaintiffs Request Their First Substantive Amendment to the Complaint.

Plaintiffs have not previously amended their complaint to introduce new substantive claims. Plaintiffs' First Amended Complaint updated Plaintiffs' causes of action to remove dismissed claims and also accounted for the intervening consolidation of the *Chabon* action. Dkt. Nos. 66, 69. Plaintiffs' Second Amended Complaint merely updated the set of named plaintiffs. Dkt. No. 122-1. The current Motion therefore is Plaintiffs' first attempt to re-plead a claim that was previously dismissed without prejudice. Thus, there has been no prior failure to cure deficiencies by previous proposed amendments, and the Court should freely grant leave to amend.

### E. The Proposed Amendments Are Not Futile.

Finally, Plaintiffs' proposed amendments are not futile. The facts relevant to copyright infringement merely reflect the factual record. The legal claims raise additional theories of liability. *Cf. Gardner v. Martino*, 563 F.3d 981, 991–92 (9th Cir. 2009) (futile amendments are those that offer no new sets of facts or legal theories, or fail to state cognizable claims).

#### 1. Amendments to Conform to Proof

The proposed TACC aligns the Complaint more closely with the evidence. First, Plaintiffs propose revisions clarifying that their allegations encompass "all versions of Llama in any stage of their development and lifecycle." Proposed TACC ¶ 2. This revision is necessary because Meta

continues to develop and release new Llama models. At the time Plaintiffs filed their original complaint in July 2023, only Llama 1 had been released. Since then, five additional iterations of Llama have been released, and at least two more are currently in development. Judge Hixson has ruled that developmental Llama models are relevant to this case, Dkt. No. 279 at 4, and Plaintiffs assert ongoing class allegations through the present day. Re-defining "Llama" to encompass the entire family of language models eliminates the problem of identifying a constantly moving target of versions. It also ensures the complaint will not contain stale allegations by the time this proceeding reaches class certification and trial.

Second, the TACC clarifies that Meta downloaded Plaintiffs' copyrighted works from a multitude of "shadow libraries," not just Books3. *E.g.*, Proposed TACC ¶¶ 46, 86–94. The evidence supporting these allegations is contained within the TACC itself as well as this Motion. In short, at the time Plaintiffs filed their Complaint, they were only aware that Meta trained Llama on the Books3 database for Llama 1. Since then, discovery has revealed that Meta used many other shadow libraries to train Llama as well. These amendments not only align the Complaint to Meta's actual conduct, but they also provide support for the DMCA and CDAFA claims, which are based on conduct involving shadow libraries apart from and far beyond Books3.

### 2. DMCA and CDAFA

Plaintiffs' TACC addresses the Court's earlier reasons for dismissing their DMCA claim and adds specific allegations identifying when, how, and why Meta removed CMI from the Infringed Works based on recently discovered evidence. *See* Proposed TACC ¶¶ 86–94. Specifically, Plaintiffs identify the programs Meta used to remove rows of data from the beginning or end of asserted works along with the types of CMI Meta removed, including examples of such data. The allegations also include comparisons of three copyrighted works authored by Plaintiffs contained in the pirated Books3 dataset versus the versions contained in Meta's training dataset—in all three instances, Meta violated the DMCA by stripping CMI from its dataset. *Id*. Additionally, Plaintiffs allege that Meta held internal discussions about the need to strip CMI and other steps it took to conceal from Llama users that Meta had infringed copyrights. *Id*. Because the TACC states

a viable DMCA claim against Meta, the proposed amendment is not futile and should be permitted. *See* Order, *The Intercept Media, Inc. v. OpenAI, Inc.*, No. 1:24-cv-01515 (S.D.N.Y. Nov. 21, 2024), ECF No. 122 (Rakoff, J.) (permitting a claim under 17 U.S.C. § 1202(b)(1) to proceed past the motion-to-dismiss stage where Plaintiffs alleged that defendant removed copyright management information and included them in training sets to train ChatGPT).

Plaintiffs' CDAFA claim also is not futile. Meta's unauthorized access to or fraudulent attainment of data by way of "torrenting," as detailed above, constitutes a CDAFA violation. *See West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 745–46 (C.D. Cal. 2020) (CDAFA liability can attach even without circumventing technical or code-based barriers) (citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016)).[6] That can be true of data obtained on computers other than plaintiffs'. *E.g.*, *Biden v. Ziegler*, 2024 WL 3498786, at *9 (C.D. Cal. June 20, 2024) (explaining CDAFA does not "require[] a defendant to access a computer or device belonging to, or controlled by, Plaintiff"); *Doe I v. Google LLC*, 2024 WL 3490744, at *1 (N.D. Cal. July 22, 2024) ("The plaintiffs are twelve people proceeding anonymously who allege that Google unlawfully tracks, collects, and monetizes their private health information through source code that is 'secretly embedded' on their health care providers' websites."); *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024) ("Plaintiffs' claims are premised on the allegation that Google violated their privacy rights by obtaining and storing, without plaintiffs' knowledge or consent, sensitive personal information from the Flo App via the Google software developer kit (SDK).").

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs leave to file the proposed Third Amended Consolidated Complaint.

---

[6] Meta may assert the claim is preempted by copyright law, but the focus on unauthorized access to plaintiffs' and class members' texts gives the CDAFA statute an "extra element" that makes it "qualitatively different" from copyright law. *See*, *e.g.*, *Altera Corp. v. Clear Logic*, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005) (finding no preemption on basis that laws with an "extra element" that is "qualitatively different from those protected under the Copyright Act" are "not preempted by the Copyright Act"); *see also Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004).

Dated: November 27, 2024

By: /s/ *Joshua M. Stein*
       Joshua M. Stein

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (State Bar No. 083151)
Daniel M. Hutchinson (State Bar No. 239458)
Reilly T. Stoler (State Bar No. 310761)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
rstoler@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dsraite@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*