Pages 1 - 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge Presiding

RICHARD KADREY, et al.,           )
                                  )
 Individual and Representative    )
          Plaintiffs,             )
                                  )
  VS.                             )    NO. 3:23-cv-03417-VC
                                  )
META PLATFORMS, INC., a           )
Delaware corporation,             )
                                  )
          Defendant.              )
_____ )

                          San Francisco, California
                          Thursday, January 9, 2025

                    __TRANSCRIPT OF PROCEEDINGS__

__APPEARANCES__:

For Individual and Representative Plaintiffs:
                    BOIES SCHILLER FLEXNER LLP
                    44 Montgomery Street - 41st Floor
                    San Francisco, California  94104
               BY:  **MAXWELL V. PRITT, ATTORNEY AT LAW**
                    **JOSHUA MICHELANGELO STEIN, ATTORNEY AT LAW**

                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                    Embarcadero Center West
                    275 Battery Street - 29th Floor
                    San Francisco, California  94111
               BY:  **DANIEL M. HUTCHINSON, ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Stenographically Reported By:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Stenographic Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Individual and Representative Plaintiffs:
                         JOSEPH SAVERI LAW FIRM
 3                       601 California Street - Suite 1505
                         San Francisco, California  94108
 4             BY:   MARGAUX POUEYMIROU, ATTORNEY AT LAW

 5   For Defendant:
                         COOLEY LLP
 6                       Three Embarcadero Center - 20th Floor
                         San Francisco, California  94111
 7             BY:   KATHLEEN R. HARTNETT, ATTORNEY AT LAW

 8                       COOLEY LLP
                         3175 Hanover Street
 9                       Palo Alto, California   94304
               BY:   JUDD D. LAUTER, ATTORNEY AT LAW
10                   MARK WEINSTEIN, ATTORNEY AT LAW

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **<u>Thursday - January 9, 2025</u>**                                    **<u>10:03 a.m.</u>** |
| 2 | **<u>P R O C E E D I N G S</u>** |
| 3 | ---oOo--- |
| 4 | **THE COURTROOM DEPUTY:**  Now Calling Civil Case 23-3417. |
| 5 | Kadrey, et al. vs. Meta Platforms, Inc. |
| 6 | Will counsel please come forward and state your |
| 7 | appearances for the record, starting with the plaintiff. |
| 8 | **MR. PRITT:**  Good morning, Your Honor, and thank you. |
| 9 | My name is Maxwell Pritt, Boise Schiller Flexner, on behalf of |
| 10 | the named plaintiffs and the putative class. |
| 11 | **THE COURT:**  Good morning. |
| 12 | **MR. STEIN:**  Good morning.  Joshua Michelangelo Stein |
| 13 | from Boise Schiller Flexner also on behalf of plaintiffs. |
| 14 | **THE COURT:**  Hi. |
| 15 | **MR. HUTCHINSON:**  Daniel Hutchinson of Lieff Cabraser |
| 16 | Heimann & Bernstein also for the plaintiffs. |
| 17 | **THE COURT:**  Hi. |
| 18 | **MS. POUEYMIROU:**  Margaux Poueymirou of Joseph Saveri |
| 19 | Law Firm also for plaintiffs. |
| 20 | **THE COURT:**  Hi. |
| 21 | **MS. HARTNETT:**  Good morning, Your Honor.  Kathleen |
| 22 | Hartnett from Cooley on behalf of defendant Meta Platforms. |
| 23 | **THE COURT:**  Good morning.  It sounds like you have a |
| 24 | cold. |
| 25 | **MS. HARTNETT:**  I'm working through it. |

1          **MR. LAUTER:** Good morning. Judd Lauter also at

2     Cooley LLP on behalf of defendant Meta Platforms.

3          **THE COURT:** Good morning.

4          **MR. WEINSTEIN:** Mark Weinstein also from the Cooley

5     firm and also for the defendant.

6          **THE COURT:** Hi.

7     Okay. So on the motion for leave to amend the complaint,

8     let me start with Meta.

9     I don't think we need to talk about futility. I think it

10    seems like there's probably a pretty good argument that the

11    CDAFA claim is preempted, but we could deal with that on a

12    motion to dismiss. Not a big deal.

13    It's less clear about whether the other claim would be

14    preempted. I mean, I'm maybe a little skeptical about the

15    merits of the claim, but I -- again, we could deal with that on

16    a motion to dismiss. And, you know, you talk about -- to the

17    extent that you're arguing that having to litigate and

18    adjudicate a motion to dismiss would delay matters, I don't

19    agree with that. We can all take care of that pretty quickly.

20    So I don't think we need to talk about that.

21    I don't particularly feel the need to discuss, you know,

22    the issue of delay and whether they could have brought this

23    earlier. I don't think that -- I don't think that we need to

24    discuss the issue of whether they're foreclosed from adding a

25    DMCA claim now based on the ruling on the prior motion to

1    dismiss.  I think your argument's clearly wrong about that.

2        I guess the one thing I want to explore and learn from you

3    on is what -- just how much additional discovery would really

4    need to take place if this -- if these claims were added.

5        And, you know, you had some stuff about needing to depose

6    the plaintiffs about it or asking the plaintiffs about it and

7    how this harmed them and stuff.  I mean, that seemed like kind

8    of a throw-away.  I mean, the only -- the only thing I was

9    really curious about was, like:  Just how much do you really

10   need to change your expert presentation and how much would it

11   change the lead up between -- you know, the ramp up from now

12   until summary judgment, which is in May?  Is that right?

13            **MS. HARTNETT:**  Yes, Your Honor.

14            **THE COURT:**  Okay.  That's the thing I'm most

15   interested in hearing about.

16            **MS. HARTNETT:**  I appreciate the guidance.

17       I also just wanted to briefly speak at the outset to your

18   order yesterday.  We received your order obviously on sealing,

19   and we wanted just to say we appreciate it and respect it.  We

20   understand the Court is a public forum, and we will take your

21   guidance and ensure that our filings conform to those -- to

22   your guidance.  So thank you.

23       We also just wanted to tell you that in preparing for this

24   hearing today, we actually -- there was not a vehicle for us to

25   respond to those other filings.  There's not a response called

1    for.

2        I was prepared to tell the Court that Meta understood that

3    it would be hard to have this hearing in the public forum

4    without discussing topics like torrenting and seeding, and that

5    we were prepared to speak about that publicly.  I just want to

6    make a record of that so you understand where my client is

7    coming from and that we do respect your order.

8        THE COURT:  Okay.  And so on that, are there -- are

9    there a bunch -- are there any pending sealing requests in

10   front of Judge Hixson that might need to be redone with the

11   guidance that you now have from me on sealing?

12       MS. HARTNETT:  Potentially, Your Honor.  I can check

13   with the team to see.  We're a few days behind on some of them.

14   There was just an order yesterday from Judge Hixson, for

15   example, so we will -- we can conform those to Your Honor's

16   guidance.

17       THE COURT:  I mean, I don't know.  You can sort of

18   deal with Judge Hixson on that --

19       MS. HARTNETT:  Understood.

20       THE COURT:  -- right?  But just to let you know, I

21   sent him an e-mail -- I sent him my order, and I said, "If you

22   want me to, I can just order them to redo any sealing requests

23   that are pending in front of you so that you don't have to sift

24   through them."  Right?  Because I'm sure that your sealing

25   requests in front of Judge Hixson, I haven't looked at them,

1    but I'm sure they're just as grossly overbroad as the ones that

2    you submitted to me.

3            **MS. HARTNETT:**  I'm not -- we can take a look at

4    everything and make sure it aligns with your order, Your Honor.

5        And just for the record also, which databases are used to

6    generate the LM and train the LM is something that, I think,

7    all the companies consider to be commercially sensitive.  So

8    that is the ultimate basis of why most of this was sealed in

9    the first place.  There was also discussion about the

10    methodology and more specifics, which led to some of the

11    additional sealing.

12        I appreciate your guidance -- we appreciate your guidance,

13    which we didn't have previously, but that is the good faith

14    basis that we had relied on to seal it in the first place.

15            **THE COURT:**  Yeah.  And I don't need to get into a big

16    argument with you about it, but just merely the companies

17    considering something commercially sensitive, you know, in the

18    abstract is not adequate.  Like, there has to be real reasoning

19    behind that.

20        And, number two, even if something might be legitimately

21    commercially sensitive, it might need to be disclosed because

22    it's so central to the case.  And it seems to me that, you

23    know, this stuff that we're talking about now is quite central

24    to the case and needs to be disclosed.

25            **MS. HARTNETT:**  And we appreciate the guidance

1    sincerely.  Thank you for it.

2          **THE COURT:**  Okay.

3          **MS. HARTNETT:**  So to your specific question about

4    discovery, I appreciate your point that taking further

5    discovery of plaintiffs is probably the least of the issues.

6    The real issue, and there's two separate issues here, one is

7    for the DMCA, the alleged CMI stripping.  Currently the record

8    before on discovery, that was on the edges of what was being

9    discovered, but it was part of the process of ingesting the

10   material.  The record shows that those strings of data were

11   actually removed because it was repetitive data; and along with

12   other types of repetitive data, it was removed.  So that would

13   be our argument.  They'll argue that that's a nefarious act.

14         **THE COURT:**  Right.

15         **MS. HARTNETT:**  What needs to be developed further

16   would be to make sure that we had -- again, was on the edge of

17   testimony being given, but we would have further witness

18   testimony to substantiate our perspective, which is that that

19   was not a nefarious act, that was not something that actually

20   led to the model more likely to cover up alleged copyright

21   infringement --

22         **THE COURT:**  Right.

23         **MS. HARTNETT:**  -- but was instead toward model

24   performance.

25         **THE COURT:**  Could I ask you about that?  I mean, I

1    understand what you're saying, but the concept of it being a

2    nefarious act, I mean, I totally understand your position that

3    it's not and that there are legitimate reasons for doing it.  I

4    totally get that, but the concept of it -- of it being a

5    nefarious act, the issue of the intent behind it strikes me as

6    fairly relevant to the claim that exists in the case now and

7    the fair use issue.

8         **MS. HARTNETT:**  I believe it was on the edge of --

9    like, that's why it was part -- one of many topics.  So, for

10   example, in some of the documents it lists the several

11   different types of data that would be scrubbed before something

12   would go into training and then it was into the whole training

13   process.  But in terms of whether there was a specific

14   allegation and, you know, under that part of the DMCA, you have

15   to show both intent to remove but also knowledge that it was

16   going to lead to an infringement or --

17        **THE COURT:**  Right.

18        **MS. HARTNETT:**  -- exacerbation.  That was not really

19   explored in any depth.

20        It's true that this is all within Meta's knowledge.  Like,

21   we have witnesses that could put in declarations to

22   substantiate both that and, when we get to seeding, that all

23   the measures Meta took to actually limit or prevent seeding

24   from happening.  So that is stuff that we would want to put

25   before the Court.

1    If they're fine with us just doing that through

2    declarations without ever having that tested at deposition,

3    that's one thing; but I would assume that they would not be

4    okay with us taking witnesses that have sat for deposition but

5    never got into the specifics of these two issues in the depth

6    that they would be getting into them if they were claims.  Just

7    if they're willing to forego deposing them, that's one thing.

8        If their position is going to be, no, Meta can't go and

9    make statements all about its good intent for taking off the

10   copyright repetitive information and all the measures that we

11   took to actually prevent seeding for the nonbooks dataset

12   currently in the record, all that's in the record is that

13   they --

14            THE COURT:  Like scientific articles or something?

15            MS. HARTNETT:  Right.  Part of the -- part of LibGen

16   that was so large that it wasn't working through a normal

17   download, not because it was copyrighted but because of the

18   size.

19       So those are all, you know, again, to both intent but also

20   more broadly to whether there's actually been a violation of an

21   intent and knowledge requirement in the DMCA and also for the

22   CDAFA or a distribution count of the Copyright Act; right?  The

23   seeding is kind of both a CDAFA claim and it's -- also they put

24   in a new aspect of their copyright claim.  We would want to

25   fully develop the record on our actual actions and intent.

1    **THE COURT:**  But why wouldn't you -- I guess the

2    question I'm asking is:  Why wouldn't you want to fully develop

3    the record on that even if it was just the existing copyright

4    claim and even if we were just focusing on the -- you know, the

5    fair-use issue?

6    I mean, it seems like it -- you know, to the extent

7    they're arguing that the removal of the, you know, copyright

8    language -- is that the right way to say it?  Copyright

9    language?

10    **MS. HARTNETT:**  I think that's fine.  It's the kind of

11    the pro forma stuff that's in the beginning of books.

12    **THE COURT:**  Yeah.  To the extent that they are

13    contending that it was nefarious -- part of a nefarious plot to

14    remove that repetitive copyright language, that seems relevant

15    to the fair use -- you know, the issues of intent and sort of

16    what was going on; you know, what Facebook's motives were, what

17    Meta's motives were.  So it seems relevant enough to the

18    fair-use issue that you would want to develop the record on

19    that.

20    I mean, certainly if you were imagining yourself in front

21    of a jury and sort of talking about fair use, you know, you

22    would want -- I would think you would have ample motivation to

23    sort of disprove any assertion that the removal of this

24    language was nefarious.

25    **MS. HARTNETT:**  Your Honor, I take your point, and I

1    think it's slightly different for this in the seeding, but

2    even -- let's just stick with the copyright information first.

3    That has been the topic of some deposition testimony that

4    was -- you know, we put before you in our opposition.  It's

5    been out there that this is something that happens for months

6    in the case.  It just hasn't been a focus, I would say, of

7    discovery.  They don't have a 30(b)(6) topic on that.  We

8    didn't, you know, focus on that.

9         So if we were to actually come before you on summary

10   judgment or go to a jury in terms of what discovery we would

11   want, we would want our witnesses to be as robust as possible,

12   and not even -- aside from whatever they think is useful for

13   fair use in showing our fairness or lack thereof, we would want

14   to show that this was a repetitive action done in good faith by

15   our engineers to make the machine -- make the model work

16   better, not to violate the DMCA.

17        So I think we would have conducted discovery -- they

18   probably would have conducted discovery differently.  We

19   certainly would have been able to just make sure we had made a

20   full disclosure of that.

21        And then the expert piece is important just in terms of

22   just being able to show that the model was actually -- by doing

23   that, we did, in fact, improve functioning and it wasn't in a

24   way to sort of put a cloud around or obstruct the emission of

25   information that would lead someone to figure out whether or

1    not copyright information was being, you know, used.

2         So I think that -- I think -- and they put this in a

3    footnote, if Meta wants more discovery, they're not going to

4    oppose it.

5              **THE COURT:**  Right.

6         **MS. HARTNETT:**  I hoped that we would not have to

7    amend.  If Your Honor is inclined to allow the amendment, we

8    would just ask for the modest extension of discovery needed so

9    that we would not be in a situation of them later saying, "Oh,

10   you put in this lengthy declaration explaining all the reasons

11   why your" --

12        **THE COURT:**  Right.  But it strikes me -- I know that

13   it would be hard work, but it strikes me that we wouldn't need

14   to alter the summary judgment schedule for that to happen.

15        Or let me put that a slightly different way.  It strikes

16   me that we wouldn't need to push back the summary judgment

17   hearing to make -- to allow that to happen, and maybe that you

18   need to tweak the schedule leading up to the summary judgment

19   hearing.

20        But in terms of delay -- further delaying adjudication of

21   this matter, you know, it will be hard work to add some more

22   discovery into the mix, but I don't -- it seems doable to me.

23        **MS. HARTNETT:**  Oh, I appreciate your confidence.  I

24   mean, everyone I'm sure is -- we had a breakneck pace, and this

25   does go back -- and I appreciate you don't want to hear the

1    equity part, but this is something everyone was full steam

2    ahead, and that goes for plaintiffs' counsel, that goes for us

3    in the weeks leading up to the close of discovery.

4        I mean, we did put in our paper this could -- if this were

5    to be something that had been a focus earlier, it could have

6    been and it was not; and so, you know, we'll make whatever

7    works work.  But I think the key point from our perspective is

8    that if you're going to allow the claim, we would want to have

9    an expert be able to explain.  The expert reports are due

10   tomorrow.

11       **THE COURT:**  Yeah.

12       **MS. HARTNETT:**  So we would --

13       **THE COURT:**  It seems to me some tweaks could be made

14   to the schedule or you could have an -- be allowed an

15   additional expert to come in later on this issue, or something

16   like that.  I mean, that strikes me as doable.

17       **MS. HARTNETT:**  Yeah, I think that that -- I mean, and

18   I -- let me connect with my colleagues here who have been

19   toiling away on the expert reports too so I just want to make

20   accurate representations to the Court.

21       **THE COURT:**  Yeah.

22       **MS. HARTNETT:**  But the key piece here is we would like

23   to be able to defend ourselves.

24       And on the seeding piece, I really, again, would request

25   that you -- we've submitted our opposition to the discovery

1  motion on seeding.

2          **THE COURT:**  Yeah.

3          **MS. HARTNETT:**  It really was not the focus.  It was

4  not an express topic.  It was something that did come out as

5  things progressed, and we have not yet been able to make the

6  record on that in particular.  I think there is a pretty good

7  record so far, but could be better and we need an expert on the

8  CMI.

9          On the seeding, the evidence -- they're taking a snippet

10  from Mr. Clark's deposition, which I was present at, where he

11  said that you usually would see the torrent, and they want to

12  have that be an admission that we were seeding every time

13  anyone torrented if they did, and that's not true.

14          And Mr. Bashlykov was a different witness who was prepared

15  to talk about the measures he took to prevent the seeding; and

16  also that he was, in the end, only taking part of the library

17  at issue via torrent.

18          So those are things where that just was not a focus of the

19  parties, and we understand -- without arguing the discovery

20  motion that you may not want to argue, just that that would --

21  that should be something that is more fully developed for

22  Your Honor to be able to determine whether there was a

23  nefarious active distribution or whether there were actually --

24          **THE COURT:**  What -- on the discovery side, what would

25  need to be done to flesh that out?

1          **MS. HARTNETT:**  I think there would need to be, again,

2     witnesses on our side laying the factual basis for what

3     datasets were obtained via that method, if any.  I mean,

4     there's at least one.  And then there would need to be expert

5     testimony that would help show why the measures that Meta took

6     to minimize or prevent the seeding actually were effective.  So

7     that would be all toward the point of showing that we were not

8     a distributor in any meaningful way, and then also to show that

9     the odds of the plaintiffs' books -- or the actual fact of the

10    plaintiff's works being part of any of that was not the case.

11          **THE COURT:**  One other question just came to my mind.

12    Is there any of this discovery that you're talking about -- if

13    the -- if the DMCA claim were added but the CDAFA claim were

14    not added, would it change anything?  Or is there enough

15    overlap between those two claims that basically the additional

16    discovery you would have to do would be the same?

17          **MS. HARTNETT:**  It would be different.  I think that

18    the -- I believe -- and -- I think that if we were just talking

19    about the CMI, that would be more limited because that actually

20    was more -- something covered in discovery to date more

21    thoroughly.  I think that -- although, again, not -- it was at

22    the edge.

23         The seeding I think would be more voluminous because we'd

24    have to get into basically the factual basis and the expert

25    report, which I understand would be a significant endeavor to

```
 1   show that the measures that --

 2          THE COURT:  Well, I'm guessing they would argue that

 3   the seeding is relevant to their DMCA claim also.

 4          MS. HARTNETT:  They're actually -- they can obviously

 5   argue for themselves.  I think that the key point, though, is

 6   that the amendment does two things in addition to adding the

 7   CDAFA claim and to adding the DMCA claim.  It adds a

 8   distribution aspect to the Copyright Act claim, which we

 9   believe is -- if anything, it's a Copyright Act claim, not --

10   you know, it's preempted; that we would need to be able to take

11   the seeding discovery too.

12          THE COURT:  Okay.

13          MS. HARTNETT:  And Judge Hixson did -- I mean, I know

14   Your Honor is the ultimate authority on this, but Judge Hixson

15   did in one of his discovery orders --

16          THE COURT:  Yeah, I don't think I agree with that.

17   You're going to say that he said the seeding wasn't relevant?

18          MS. HARTNETT:  Yeah, but I think that -- okay.  Even

19   if you disagree, that wasn't --

20          THE COURT:  I don't think that's right.

21          MS. HARTNETT:  -- that just wasn't how the parties

22   litigated the case.  I mean, we can have a dispute about

23   whether the 30(b)(6) witness should have done more on that, but

24   then we should -- the answer would be to have more discovery,

25   not to make us defend the case without being able to make a
```

1    record that we actually didn't do anything wrong.

2            THE COURT:  Fair.  Yeah.  Okay.

3            MS. HARTNETT:  So I think at the end of the day, we --

4    just we'd like an opportunity to conduct the discovery we need

5    to defend ourselves if these claims were to go forward.

6            THE COURT:  Okay.

7        All right.  Any response from the plaintiffs?

8            MR. PRITT:  Yes, Your Honor.  Maxwell Pritt on behalf

9    of the plaintiffs and the putative class.  It's great to see

10   you.  Alex Holtzman sends his regards.

11       We provided you some materials and your clerk some

12   materials that I think will be elucidating in light of

13   Ms. Hartnett's remarks this morning.

14       But I just want to start by saying, in the last month of

15   discovery in this case, it has evolved from one of copyright

16   infringement and fair use into one of staggering computer

17   crimes, the use of peer-to-peer networks to take and share

18   online tens of millions of copyrighted literary works by one of

19   the world's largest companies.

20           THE COURT:  Well, I mean, I don't know if now is the

21   time -- there's no jury in the courtroom.  Okay?  And, you

22   know, I don't know if you actually have evidence to back up

23   what you just said.

24           MR. PRITT:  Great.

25           THE COURT:  So can we -- can we just sort of limit

1  ourselves to sort of legal argument and try to avoid the

2  dramatization?

3      **MR. PRITT:**  Well, I'd love to get into that because it

4  goes to exactly what Ms. Hartnett was saying.

5      If you look at the slides in front of you, if you're

6  interested, Ms. Hartnett just said we don't know what datasets

7  were torrented or what method was used and what datasets.  We

8  certainly do.

9      If you look at Slide 12, they explain.  This is in April

10 of 2024.  In the opposition, all Meta and Cooley talks about is

11 torrenting of Scimag from LibGen, which was done in 2023.  This

12 document I think Ms. Hartnett wants to object because it was

13 not in the briefing.  She stood up.

14     **MS. HARTNETT:**  Thank you, Mr. Pritt.

15     I did just want to object for the record that much of this

16 and most of it is not stuff that has been briefed to us, and so

17 for the record, we object to the use of material that wasn't in

18 the motion or the reply brief.

19     **THE COURT:**  Yeah.  Okay.  But, in any event, this

20 talks about downloading but it doesn't talk about seeding.

21     **MR. PRITT:**  Well, it does mention seeding, but it does

22 talk about torrenting and it talks about torrenting from

23 pirated datasets.  There's another document that we've included

24 that does talk about that and talks about not wanting to use

25 the Facebook infrastructure in order to do it so that they can

1    hide it.

2         If you look at Docket -- sorry -- document, which is in

3    the back, it is Meta-Kadrey 108336, in April 2024, the same

4    time as --

5              **THE COURT:**  What?  Sorry.

6              **MR. PRITT:**  It's towards the back.  It's 108336.

7              **THE COURT:**  Toward the back of what?

8              **MR. PRITT:**  Of the packet that you have, not the

9    slides.  It's right before -- you know, it's the first document

10   after the slides I think.

11             **THE COURT:**  Okay.

12             **MR. PRITT:**  That document, if you look down at David

13   Esiobu from April 2nd, this is a chat, work chat, he says [as

14   read]:

15             "Can you clarify why we can't use FB infra for this

16        again?"

17        And he says [as read]:

18             "Avoid risk of tracing" --

19             **THE COURT:**  I don't -- oh, it's on the other side.

20             **MR. PRITT:**  Yeah, sorry.  I double-sided it.

21             **THE COURT:**  Okay.

22             **MR. PRITT:**  April 2nd, kind of middle of the page, it

23   says [as read]:

24             "Why can't we use the FP infra for this?"

25        He says [as read]:

1          "Avoid risk of tracing back.  The seeder is from FB

2      server."

3      And then even below at the very last two, Mr. Frank Zhang

4  says [as read]:

5          "Get DI" -- which is data infrastructure, a group

6      within Meta -- "support on the downloading getting this

7      effort in stealth mode."

8      And the next one is [as read]:

9          "There's an explicit decision to not involve DI.  We

10     want to get AA" -- which is Anna's Archive -- "ingesting

11     done in stealth mode within our group."

12         **THE COURT:**  So can I interrupt you for a second?

13         **MR. PRITT:**  Yes.

14         **THE COURT:**  Look, there -- it is -- I don't have an

15 opinion either way about the stuff you're showing me.  I don't

16 have the ability to examine it in context.

17     There are oftentimes where, you know, nefarious sounding

18 words are used for non-nefarious purposes.  I don't know

19 whether that was the case here or not.  I have no way of

20 telling, but none of it is really responsive to the questions

21 that I -- to the issues that I made clear at the beginning of

22 the hearing that I wanted to discuss --

23         **MR. PRITT:**  Well --

24         **THE COURT:**  -- which is -- you heard my discussion

25 with Ms. Hartnett.  You heard that I didn't want to talk about

```
 1   futility.  You heard that I didn't want to talk about delay in
 2   discovery or whether you came too late with these requests.
 3        What I want to hear about is what -- you know, what is
 4   the -- what is the extent of additional discovery that's needed
 5   on these claims if I allow you to amend and can it get done
 6   within the time frame that we've set for adjudication of the
 7   summary judgment motion.
 8             MR. PRITT:  Thank you, Your Honor.  And I was
 9   intending to respond --
10             THE COURT:  Then get to it now.
11             MR. PRITT:  -- directly to evidence of torrenting and
12   CMI stripping.
13        When it comes to CMI stripping, Judge Hixson held that
14   that was relevant, Docket 351 at 3, his December 20th order,
15   and ordered Meta to produce all documents and communications
16   from all of the custodians relevant to that.  They then
17   produced six documents.  So that has been done.  There is
18   nothing else.  There was -- it was covered in the topics, and
19   we asked their 30(b)(6) about it.  If they had --
20             THE COURT:  So are you taking the position that there
21   should be no further discovery on that?
22             MR. PRITT:  I'm taking the position --
23             THE COURT:  Or are you -- you know, what --
24   Ms. Hartnett has said:  Look, we want to be able to fully
25   defend ourselves on this.  We want to be able to present an
```

1    additional expert on the stripping of the copyright

2    information.  I've said to her:  I think you can probably do

3    that within the time that we've set for adjudication of this

4    summary judgment motion.

5        So my question to you is:  Are you -- what position are

6    you taking?  Are you taking the position that there must not be

7    any further discovery?  Are you taking the position that there

8    can be further discovery and Ms. Hartnett can have her

9    additional expert on this and we can get it done within the

10    time that we've set to adjudicate this motion?  What is your

11    position on the questions that I was asking Ms. Hartnett?

12        **MR. PRITT:**  It's the same as stated in our motion and

13    reply.  We have no objection to any additional discovery that

14    Meta wants to take.  We would be interested to know what

15    additional CMI stripping discovery they think is out there that

16    has not been produced already.

17        Torrenting --

18        **THE COURT:**  Well, she sort of articulated it; right?

19    She said -- I don't think she said that there was any

20    additional discovery to produce.  I think that she said that

21    she wants to have an expert on the topic to address the

22    allegations that you're making that she contends are new and

23    you contend aren't new, and I don't really care whether they're

24    new or not.

25        **MR. PRITT:**  Yeah.  And our expert already will be

addressing that in his opening brief due tomorrow; but if they

need additional time, that's fine.

    I will say, you know, you mentioned nefarious, that's not

an element of a DMCA claim, and certainly the documents in the

slides that I showed --

        **THE COURT:**  Well, isn't good faith relevant?

        **MR. PRITT:**  Well, there's a -- if you apply a double

scienter standard, which is a big if because not all Courts do,

then the second element does look to why they were doing that;

and we have documents, including in the slides, that show they

were doing it to prevent IP leakage.  That means to prevent the

copyrighted information from going with stuff.  So when you're

a user or the public, you don't understand where Meta was

getting that.  You don't understand that it was copyrighted

material.  That, we would submit, is already sufficient.

        **THE COURT:**  It's not obvious to me that that's what IP

leakage means.  I mean, it seems like it could mean that we

don't -- we want to -- we're doing this, you know, in part to

make sure that copyrighted stuff doesn't get reproduced, but I

don't know.  You know, again, I'll have plenty of time to learn

all about that.

        **MR. PRITT:**  Understood, Your Honor.

    On torrenting, Judge Hixson also held that that was

relevant.  Meta produced their search terms November 25th that

included torrent.  It was quite a limited search, but it did

```
 1   include torrent.
 2        With seeding, we already have Rule 72 motions in front of
 3   you -- or objection currently on that.  As to 30(b)(6), there
 4   will unfortunately be a Rule 72 objection next week as to
 5   requests --
 6             THE COURT:  What's Rule 72?
 7             MR. PRITT:  The objections to Judge Hixson's orders.
 8             THE COURT:  Oh, okay.
 9             MR. PRITT:  So there will be objections next week with
10   respect to document requests because we have asked for the
11   BitTorrent clients, the application logs, and the server logs,
12   which would, in fact, show the quantity of the documents being
13   seeded.  But, you know, even if you went out and asked Llama
14   itself what happens when you seed a Zlib, it tells you when you
15   are -- when you're torrenting it, you are seeding it back to a
16   pirated dataset.  And, again, we have a slide showing this
17   is -- we're talking about tens of millions of works, almost a
18   petabyte of data, which is extraordinary.  And that's just what
19   we know of from April 2023.
20        Certainly there are -- there's only one custodian on those
21   April 23 documents that show the downloading through torrent
22   and peer-to-peer systems of -- this is in connection with
23   Llama 4.  There's only one document custodian on that.  There
24   are four other people, including someone completely new, who is
25   involved in handling the torrenting and seeding, and so we
```

1    certainly would love to have discovery and have that person

2    added.

3        So, you know, when I represent a plaintiff, I'm never

4    going to say no to discovery, and we're willing to work with

5    Meta on whatever it would like in terms of a deadline.  I mean,

6    I was playing around with the existing schedule and came up

7    with some ways to do it if you did want to keep the summary

8    judgment hearing on May 1st.

9        **THE COURT:**  We're keeping the summary judgment hearing

10   on May 1st.

11       **MR. PRITT:**  Great.

12       **THE COURT:**  So let me ask a couple of questions about

13   the discovery stuff that -- and Meta filed its response

14   yesterday.  I haven't looked at this stuff as closely yet as

15   I've looked at the motion for leave to amend the complaint; but

16   regarding the block list, just I think this should be -- can be

17   a one-word answer -- do the plaintiffs have the block list?

18       **MS. HARTNETT:**  Yes.

19       **MR. PRITT:**  The block list is a document like this

20   that has the headings redacted so that we cannot tell what any

21   of this means.  So I would say no to that answer.

22       **THE COURT:**  Okay.  Is that the document that the

23   plaintiffs have or --

24       **MS. HARTNETT:**  There were more than one version of it.

25   There's a code version of it too, I believe, but --

1      **THE COURT:**  So let me just --

2      **MS. HARTNETT:**  -- we never met and conferred with them

3  about an objection to that.

4      **THE COURT:**  Right.  So I assume you don't think

5  there's anything wrong with the plaintiffs having the block

6  list; and that if for some reason they have not -- and I know

7  that there's been lots of discovery and lots of documents and

8  all of that and it's hard to keep track of everything, but if

9  for some reason they -- if they're unaware of something that

10  they've received that gives them the block list, great.

11      If for some reason the versions they've gotten are --

12  somehow exclude information from them that help -- that

13  preclude them from deciphering the block list, I assume you

14  have no objection to providing them a sort of completed version

15  of the block list.

16      **MS. HARTNETT:**  We would be happy to meet and confer.

17      **THE COURT:**  So I'll --

18      **MS. HARTNETT:**  The only issue is there were some

19  privilege questions about the reason for certain things being

20  on or off --

21      **THE COURT:**  Right.

22      **MS. HARTNETT:**  -- and that would be a privilege

23  objection.

24      **THE COURT:**  Right.  But the block list or sort of any

25  mitigations -- right? -- the fact of the mitigation is not

1   privileged --

2        **MS. HARTNETT:**  Correct.

3        **THE COURT:**  -- is not protected.  The reasons for the

4   mitigation might be protected.

5        **MS. HARTNETT:**  Precisely.

6        **THE COURT:**  Okay.  And we had -- so -- all right.  Let

7   me see.  Was there any -- were there any other questions that I

8   had?

9        **MR. PRITT:**  Your Honor, while you're thinking about

10  that, I would just note, in terms of their response on the

11  Rule 72 that you received last night, they spend a good deal of

12  time trying to suggest that one of their 30(b)(6) witnesses was

13  prepared to address sealing.

14       **THE COURT:**  I'm going to let you take additional

15  depositions -- I'm going to let you have additional deposition

16  time on that.

17       **MR. PRITT:**  Okay.  Yeah, okay.  Thank you.  I just

18  wanted to -- Judge Hixson found that they were not prepared,

19  and they didn't tell you that.

20       **THE COURT:**  Okay.  Give me a second.  Like I said,

21  I've spent less time on this, so I just want to see if I had

22  any other questions.

23                      (Pause in proceedings.)

24       **THE COURT:**  Okay.  I think that's it.

25    Is there anything else that anybody wants to say?

1          **MS. HARTNETT:**  No, Your Honor.  Thank you.

2      **THE COURT:**  Okay.  Thank you.

3      **MR. PRITT:**  Thank you, Your Honor.

4          (Proceedings adjourned at 10:36 a.m.)

5                    ---oOo---

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Sunday, January 12, 2025

8

9

10

11    _____

12            Kelly Shainline, CSR No. 13476, RPR, CRR
                      U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25