**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class.*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>   *Individual and Representative Plaintiffs*,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>   *Defendant.* | Case No. 3:23-cv-03417-VC<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE [DKT. 366]** |

## MOTION

Plaintiffs move under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and N.D. Cal. Local Rule 72-2 for relief from a non-dispositive pretrial order of a Magistrate Judge. Plaintiffs respectfully object to and ask the Court to set aside portions of the Discovery Order at Dkt. No. 366 issued by Magistrate Judge Thomas S. Hixson on January 2, 2025, as set forth in the accompanying Memorandum of Points and Authorities ("Memo"). In addition to this Motion and the Memo, the Motion is based on the relevant underlying briefing, the Proposed Order for this Motion, the records and docket in this matter, and any oral argument the Court may hear. In accordance with paragraph 48 of the Court's Standing Order for Civil Cases, Plaintiffs would proffer an attorney who has seven years or less of experience to argue the majority of this motion for relief.

Dated: January 15, 2025

By: /s/ *Maxwell V. Pritt*
       Maxwell V. Pritt

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and
Representative Plaintiffs and the Proposed Class.*

## MEMORANDUM OF POINTS AND AUTHORITIES

On January 2, 2025, Judge Hixson ruled on several discovery letter briefs (the "Order"). *See* Dkt. 366. Plaintiffs respectfully object to, and the Court should reverse, four parts of the Order.

### I. The Order Erroneously Denied Reopening Key Depositions Based On Meta's 12/13 Production.

Two hours before fact discovery closed, Meta produced over 2,000 documents, including some of the most damning evidence to date: admissions from employees that LibGen is a pirated database and instructions to use it anyway, and admissions that Meta torrented tens of millions of pirated works despite knowing it was illegal (the "12/13 Documents"). Much of this last-minute discovery contradicts prior deposition testimony of Meta witnesses, and the documents were apparently withheld for months even though many of them include the same speakers, key terms, and subjects as documents produced months ago: "Meta does not deny the June and September collection dates" for many of the 12/13 Documents, which were nevertheless only produced on the last day of fact discovery. *See* Order at 5. The paradigmatic ground for a further deposition is "when new information comes to light that creates the need for further questioning." *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 436 (D. Nev. 2023) (cleaned up). That's exactly what happened here.

The Order erred in denying additional deposition time to question select witnesses about these late-produced documents. The Order first *correctly* states, "[I]f Plaintiffs asked for these documents early in discovery, but Meta withheld them until the last day of fact discovery, then Plaintiffs have a good argument to reopen these depositions." Order at 4. But it then errs by concluding "these documents [were not] responsive to the original RFPs." *Id.* at 5. Many of the 12/13 Documents *are* plainly responsive to Plaintiffs' early RFPs about Llama training data and Meta's efforts to license data from copyright holders. Dkt. 354 at 5. For example, one 12/13 Document states: "███████████████████████████████████████████████████████████████████" Pritt Decl., Ex. C at -135. This statement is obviously

responsive to Plaintiffs' RFP 45,[1] issued at the very beginning of fact discovery. Another example: in one of the 12/13 Documents, a Meta employee discussed that she had "▮▮▮▮▮▮▮▮▮▮▮▮" a major textbook publisher. Pritt Decl., Ex. A at -171. Subsequent messages openly discuss licensing efforts and weigh the tradeoffs of using pirated textbooks and other copyrighted works from LibGen instead, including a statement that "▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* That document was withheld for months despite its obvious responsiveness to RFP 45. Meta collected both above-referenced documents *in June*.

In any event, the discovery of new facts that contradict prior deposition testimony is sufficient grounds to reopen depositions. *See Vincent v. Mortman*, 2006 WL 726680, at *1 (D. Conn. Mar. 17, 2006) ("courts frequently permit a deposition to be reopened where . . . new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition") (cleaned up). The 12/13 Documents belie Meta witnesses' massive failure of recollection about the IP that Meta stole. These documents show those very witnesses were intimately involved in that unlawful conduct. Mark Zuckerberg, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 354-3. One of the 12/13 Documents, however, states the decision to use LibGen occurred "[a]fter a prior escalation to MZ[.]"[2] Pritt Decl., Ex. B at -699. Similarly, another Meta witness testified she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 354-2. However, the 12/13 Documents show she was the recipient of the memo describing LibGen as "a dataset we know to be pirated." Pritt Decl., Ex. B at -702. These new documents justify reopening the requested depositions so that Plaintiffs can ask the implicated witnesses about them.

---

[1] "All Documents and Communications Concerning any licensing, accreditation, or attribution mechanism, or similar tool for crediting, compensating, or seeking consent from owners of copyrighted works that were used to train the Meta Language Models."

[2] While this document was produced Friday night before Mr. Zuckerberg's Tuesday deposition scheduled in Kauai, Mr. Zuckerberg wasn't listed as a custodian, and for that reason, it was not identified as a candidate for expedited partial review that Plaintiffs conducted over the weekend.

### II. The Order Erroneously Denied Plaintiffs' Request that Meta Produce Torrenting and Seeding Data.

The Order denied Plaintiffs' motion to compel production of torrenting data, including Meta's BitTorrent client, application logs, and peer lists. Order at 6-7. This data will evidence how much content Meta torrented from shadow libraries and how much it seeded to third parties as a host of this stolen IP. The Order held these items are not responsive to Plaintiffs' RFPs, but that was plain error.[3] RFP 119, for example, seeks data "relating to the processing of copyrighted material used in training Llama Models." Dkt. 356-1 at 12, 14-15. And torrenting (breaking files into small pieces and distributing them across multiple users in a peer-to-peer network) and seeding (sharing data pieces with other users) *are* data processing methods. *See*, *e.g.*, *ME2 Prods., Inc. v. Bayu*, 2017 WL 5165487, at *1-2 (D. Nev. Nov. 7, 2017) (describing BitTorrent protocol); *New Sensations, Inc. v. Does 1-426*, 2012 WL 4675281, at *2 (N.D. Cal. Oct. 1, 2012) (same).

### III. The Order Erroneously Denied Plaintiffs' Request for Llama 4 and 5 Training Datasets.

The Order erred in denying Plaintiffs' request for the datasets of copyrighted works Meta obtained (and copies it made) in connection with Meta's in-development models, Llamas 4 and 5, even though the Court held they're relevant. *See* Dkt. 279 at 4; Dkt. 315 at 7. According to the Order, the Llama 4 and 5 training datasets are not responsive to any of Plaintiffs' RFPs. Order at 7. Not so. This data is responsive to RFPs 6-12 and 81 ("All Documents and Communications related to the decision to use Shadow Datasets for training Llama Models"). Meta's copies of these datasets are highly relevant to Plaintiffs' claims, particularly because Meta's illegal torrenting expanded massively to include tens of millions of additional copyrighted works from additional pirated databases for use with Llamas 4 and 5. The Court should order Meta to produce this data.

### IV. The Order's Application of the Crime-Fraud Doctrine Is Clearly Erroneous.

The Order characterizes Plaintiffs as asking the Court "to decide this lawsuit . . . on the merits, without a trial[.]" Order at 6. But that analysis would eviscerate the crime-fraud doctrine.

---

[3] Because discovery into the new allegations in Plaintiffs' Third Amended Consolidated Complaint would also include this data Plaintiffs seek, Plaintiffs can issue new discovery on these topics if the Court prefers.

Because crime-fraud serves as an exception to a party's privilege claims, it necessarily applies prior to a merits adjudication. *Cf. Eastman v. Thompson*, 636 F. Supp. 3d 1078, 1090 (C.D. Cal. 2022); *see also Doe 15 v. Indyke*, No. 24-cv-01204, Dkt. 278 (S.D.N.Y. Nov. 13, 2024) ("This order [finding crime-fraud applied] does not constitute a finding that any documents ordered disclosed proves any actionable conduct in this case or will be admissible at trial."). The exception also applies in "hotly disputed" cases (*see* Order at 6) where the alleged crime-fraud involves the same conduct as the substantive claims. *See, e.g., In re Animation Workers Antitrust Litig.,* 2016 WL 8198907, at *3 (N.D. Cal. Mar. 23, 2016) (applying crime-fraud to civil antitrust claim); *Lewis v. Delta Airlines, Inc.,* 2015 WL 9460124, at *4 (D. Nev. Dec. 23, 2015) (same for ADA claim).[4]

Specifically, the crime-fraud exception applies with (1) "a *prima facie* showing that [attorney-client] communications were in furtherance of an intended or present illegality" and (2) "reasonable cause to believe that the attorney's services were utilized . . . in furtherance of the ongoing unlawful scheme." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (quotations omitted). This showing is readily met here. Plaintiffs submit extensive evidence that:

- Meta, with the involvement of in-house counsel, decided to obtain copyrighted works without permission from online databases of copyrighted works that "we know to be pirated, such as LibGen," Pritt Decl., Ex. B at -701, and despite knowing that the strategy was of tenuous legality, *see* Pritt Decl., Ex. C at -135 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- Meta torrented at least *tens of millions* of copyrighted works, which also required "'seeding' the files – i.e., sharing the content outside," Pritt Decl., Ex. D at -856, Pritt Decl., Ex. E at 350:3-4 (Meta "modified the config setting so that the smallest amount of seeding possible could occur"), while trying to conceal its actions. Pritt Decl., Ex. F at -336 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- Meta had attorney-client communications furthering this unlawful activity.

This evidence—largely via heavily redacted documents—is detailed in **App'x A**. For example, Meta redacted for privilege a reply to a Meta employee who wrote that "torrenting from a corporate

---

[4] Conversely, the crime-fraud exception also applies where the alleged crime or fraud is *not* a cause of action in the case. *E.g., Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (S.D.N.Y. 2013) ("the crime or fraud for which the client used the attorney's services need not be the subject of the underlying lawsuit").

laptop doesn't feel right 😂." Pritt Decl., Ex. G at -224.[5] However it is done, torrenting pirated works is flagrantly illegal.[6] And the magnitude of Meta's unlawful torrenting scheme is astonishing: just last spring, Meta torrented at least ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ Pritt Decl., Ex. H.[7] Meta also previously torrented **80.6 terabytes** of data from LibGen (Sci-Mag). Pritt Decl., Ex. D at -791; Pritt Decl., Ex. I at 131:21-22. Vastly smaller acts of data piracy—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—have resulted in Judges referring the conduct to the U.S. Attorneys' office for criminal investigation. *Compare with Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-00939-WHA, Dkt. 433 at 2, 3 (N.D. Cal. May 15, 2017) ("Waymo has also sufficiently shown, for purposes of the instant motion, that the 14,000-plus purloined files [9.7 gigabytes] likely contain at least some trade secrets.") (no emphasis); Dkt. 428 (referral). Further, Meta's in-house counsel drove decisions around using pirated databases. Time and again in depositions, Meta witnesses pointed directly to the legal department when asked about Meta's approval of the sources used for training data. *See* **App'x B.**

Plaintiffs have far exceeded the "*minimal* showing that the crime-fraud exception *could* apply." *U.S. v. Christensen*, 828 F.3d 763, 800 (9th Cir. 2015) (emphasis added). Consequently, Plaintiffs request that the Court review *in camera* the challenged documents identified in Exhibit J to the Pritt Declaration. *See In re Grand Jury Investigation*, 810 F.3d 1110, 1114 (9th Cir. 2016).

---

[5] Meta is also fully withholding on the basis of privilege documents with file names such as, ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Pritt Decl., Ex. J at 5, Third Email Log Nos. 270, 654-56 (ellipses in original).

[6] *E.g., U.S. v. Vaulin*, 2017 WL 3334861, at *1 (N.D. Ill. Aug. 4, 2017) (criminal copyright liability for operating BitTorrent platform); *see also Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1192 (9th Cir. 2016) ("Rapid peer-to-peer file sharing has enabled mass piracy of books, films, music, and other copyrighted materials.").

[7] Meta's fair use defense to its *use* of this stolen IP in training Llama, while already baseless, also cannot exculpate Meta for its unlawful torrenting of pirated works (including the Asserted Works). *See, e.g., Glacier Films, Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (rejecting, as not "a close and difficult case," defendant's argument that torrenting a copyrighted movie was fair use); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022) ("[I]t is obvious, for example, that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use.").

Dated: January 15, 2025

By:  /s/ *Maxwell V. Pritt*
      Maxwell V. Pritt

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
Reilly T. Stoler (SBN 310761)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
rstoler@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**JOSEPH SAVERI LAW FIRM LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Margaux Poueymirou (SBN 356000)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com
mpoueymirou@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class.*

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dsraite@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

**COWAN DEBAETS ABRAMS & SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
CeCe M. Cole
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER**
CASE NO. 3:23-cv-03417-VC