COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
TERESA MICHAUD (296329)
(tmichaud@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*[Full Listing on Signature Page]*
*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*, <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., a Delaware corporation; <br><br> Defendant. | Case No. 3:23-cv-03417-VC-TSH <br><br> **DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED CONSOLIDATED COMPLAINT** <br><br> Hearing Date: January 9, 2025 at 10:00 a.m. |

**TABLE OF CONTENTS**

**Page**

I.  RELEVANT BACKGROUND ................................................................................................ 2
   A.  Plaintiffs' Original Complaint, Dismissal, And Prior Amendments....................... 2
   B.  Discovery Has Long Disclosed The Basis For The Allegedly "New" Theories. .................................................................................................................. 2
   C.  Plaintiffs Did Not Disclose Potential Amendment When Seeking An Extension. ................................................................................................................ 4
II. PLAINTIFFS MUST MEET THE REQUIREMENTS OF BOTH RULES 15 AND 16 AND CANNOT. ................................................................................................... 5
   A.  Plaintiffs Unduly Delayed Seeking Leave To Amend. ........................................... 6
   B.  Plaintiffs' Amendment Would Upend The Case Schedule And Prejudice Meta. ........................................................................................................................ 8
   C.  Plaintiffs' Proposed Amendment Is Futile. ........................................................... 10
   D.  The Timing of Plaintiffs' Motion Does Not Reflect Good Faith. ......................... 15
III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) .................................................................................................. 13

*Atlantic Recording Corp. v. Howell*,
  554 F.Supp.2d 976 (D. Ariz. 2008) ........................................................................................... 15

*Brownlee v. 12745 Moorpark LLC*,
  No. 2014 WL 4978441 (C.D. Cal. Oct. 3, 2014) .................................................................... 6, 8

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ...................................................................................... 14

*Davis v. Pinterest, Inc.*,
  2020 WL 6342936 (N.D. Cal. Oct. 29, 2020) ........................................................................... 10

*Design Data Corp. v. Unigate Enterprise, Inc.*,
  2014 WL 4477244 (N.D. Cal. Sep. 11, 2014) ............................................................................ 5

*Doe v. Meta Platforms, Inc.*,
  690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) ......................................................................... 14

*Fallay v. San Francisco City & Cnty.*,
  2016 WL 888901 (N.D. Cal. Mar. 8, 2016) .............................................................................. 10

*Griggs v. Pace American Group, Inc.*,
  170 F.3d 877 (9th Cir. 1999) ..................................................................................................... 15

*Grosso v. Miramax Film Corp.*,
  383 F.3d 965 (9th Cir. 2004) ..................................................................................................... 13

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................................... 13

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ................................................................................................... 5, 8

*Lockheed Martin Corp. v. Network Sols., Inc.*,
  194 F.3d 980 (9th Cir. 1999) ....................................................................................................... 8

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) .................................................................................................. 12

*Raw Story Media, Inc. v. OpenAI Inc.*,
  Dkt. 117, No. 24-cv-1514 (S.D.N.Y. Nov. 7, 2024) ................................................................. 11

# TABLE OF AUTHORITIES
(continued)

Page

*Riding Films, Inc. v. White*,
    2014 WL 3900236 (S.D. Ohio Aug. 11, 2014) .................................................................. 13

*Rodarte v. Alameda Cty.*,
    2015 WL 5440788 (N.D. Cal. Sept. 15, 2015) ................................................................... 5

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ...................................................................................................... 11

*U.S. v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ........................................................................................... 13

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) ............................................................................................. 6

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ........................................................................................... 6

**Statutes**

17 U.S.C.
    § 102
    § 103 ................................................................................................................................ 12
    § 106 ................................................................................................................................ 12
    § 1202(b)(1) ........................................................................................................ 2, 6, 10, 11

Cal. Penal Code
    § 502(c)(2) ................................................................................................................. 12, 13
    § 502(e)(1) ....................................................................................................................... 13

Copyright Act ............................................................................................................... *passim*

Digital Millennium Copyright Act ............................................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure
    12(b)(6) ............................................................................................................................ 10
    15 ............................................................................................................................. 5, 6, 14
    15(a)(2) .............................................................................................................................. 5
    15(b)(2) ............................................................................................................................ 14
    16(b) ................................................................................................................................... 5
    16 ................................................................................................................................... 5, 6
    30(b)(6) .............................................................................................................................. 9

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

META'S OPPOSITION TO MOTION FOR LEAVE
TO FILE THIRD AMENDED COMPLAINT

Plaintiffs' Motion for Leave to File Third Amended Consolidated Complaint ("TACC") (Dkt. 300) ("Motion"), should be denied. Fact discovery closes in **two days**. Yet, on the eve of Thanksgiving and without prior notice, Plaintiffs filed a motion to amend their operative complaint to add **two new claims** that would drastically change the nature of this case. Plaintiffs' eleventh-hour gambit is based on a false and inflammatory premise: that "[t]he new claims could not have been added sooner because they rest on the recently unearthed evidence (including evidence that Meta previously concealed)." Mot. at 2. Meta has not "concealed" anything; discovery produced by Meta **months ago** revealed the allegedly "new" facts.[1] But rather than alert the Court to the need for potential amendment when Plaintiffs moved to modify the case schedule in September, Plaintiffs waited until the last minute to seek leave to amend. This delay is unjustified.[2]

Plaintiffs also are wrong that allowing them to amend now will not prejudice Meta or disturb the case schedule. The present Motion will not even be heard until early January 2025—weeks after the fact discovery cutoff and the day before expert reports are due. Meta has a right to defend itself. Not only would Meta need to undertake further fact discovery on the issues Plaintiffs seek to add—which, to date, have been only a tangential and incomplete part of fact discovery—but Meta would need to significantly augment its expert and summary judgment strategy. Thus, if Plaintiffs were permitted to amend now, that would require reopening fact discovery, moving the expert discovery deadlines, and, in turn, moving the summary judgment deadlines. Effectively, Plaintiffs' late amendment would give it the much longer extension of the case schedule that they previously sought (Dkt. 193) and did not receive (Dkt. 211). This, too, is unjustified.

Finally, the Motion should be denied as futile because Plaintiffs' proposed new causes of action fail to state claims upon which relief may be granted. **First**, Plaintiffs' proposed DMCA claim was already dismissed with prejudice and cannot be resuscitated now. In any case, Plaintiffs' conclusory theory—that by allegedly removing CMI, along with many other types of repetitive

---

[1] The Motion continues Plaintiffs' pattern of baselessly seeking to blame Meta for their own delays and lack of diligence. This is not acceptable, as the Court has repeatedly recognized. *See, e.g.*, 10/4/24 Tr. at 17 (Dkt. 219) (noting Plaintiffs' "false assertion—that Meta is stonewalling you").

[2] In addition to proposing to mount two new causes of action against Meta, Plaintiffs' proposed complaint would add additional allegations regarding the existing copyright infringement claim. *See* Mot. at 1, 8–9. As explained below, there is no need for any such "conforming" amendment.

content, to improve its AI training process, Meta thereby enabled and concealed copyright infringement—is implausible and does not state a DMCA claim.  **Second**, Plaintiffs' proposed CDAFA claim is preempted by the Copyright Act and, regardless, fails to state a claim.  **Third**, there is no need or basis for Plaintiffs' claimed "conforming" amendments.  In particular, Plaintiffs should not be permitted to transform their existing Copyright Act claim—alleging copying in the training process—into a claim about alleged distribution by torrent.  The Motion should be denied.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Original Complaint, Dismissal, And Prior Amendments.

Plaintiffs filed their original complaint on July 7, 2023.  Dkt. 1.  Among other things, they alleged a DMCA claim for "intentionally remov[ing] CMI from the Plaintiffs' Infringed Works in violation of 17 U.S.C. § 1202(b)(1)."  *Id.* ¶ 49 (Count III).  At the motion to dismiss hearing, the Court noted that "maybe" Plaintiffs could state a DMCA claim by alleging that an AI model *reproduced* their works without the CMI included.  *See* 11/9/23 Tr. at 21 (Dkt. 52); *id.* at 23 (stating that the DMCA theory "could . . . make sense" if "a user made a query for Sarah Silverman's book, and Sarah Silverman's book was reproduced without the CMI").  However, Plaintiffs did not allege that theory.  *Id.* at 26.  The Court also balked at the notion that "stripping [the CMI] *within the [AI] model*" would "be a violation of the statute."  *Id.* at 22 (emphasis added).

On November 20, 2023, the Court dismissed the DMCA claim, explaining that "[t]here are no facts to support the allegation that LLaMA ever distributed the plaintiffs' books, much less did so 'without their CMI.'"  Dkt. 56 at 3.  The Court granted leave to amend, *id.* at 4, but when Plaintiffs filed the First Consolidated Amended Complaint on December 11, 2023, they did not renew the DMCA claim.  Dkt. 64.  Nor did they seek leave to re-add the DMCA claim, or mount a CDAFA claim, in the Plaintiffs' Second Consolidated Amended Complaint, filed on August 29, 2024, Dkt. 122—over nine months after fact discovery began and a month after the allegedly "new" facts were already produced, *see* Dkt. 43 (minute entry); § I.B below.

### B. Discovery Has Long Disclosed The Basis For The Allegedly "New" Theories.

In advance of the original fact discovery cutoff of September 30, 2024, *see* Dkt. 87, Meta met the July 15, 2024 deadline for substantial completion of document production.  Dkt. 149 at 3-

4. Among the Meta documents produced on July 15, 2024—*i.e.*, nearly **five months ago**—was a lengthy document entitled "LibGen dataset" that largely disclosed the facts that Plaintiffs now falsely claim as "new" and recently uncovered.[3] Among other things, the "LibGen dataset" document shows that Meta had "collected" the LibGen dataset for use in training its AI models, and that in preparing that dataset for use in training certain of Meta's Llama models, Meta had removed various types of repetitive data, including but not limited to "rows containing copyright in the first and last 25% of the book," including "[r]ows containing any of these words: ['ISBN', 'Copyright', '©', 'All rights reserved', 'DOI']." Ex. 7 to Stein Decl. at Meta_Kadrey_00089798. The "LibGen dataset" document also depicts an example of such "rows containing copyright." *See id.* at Meta_Kadrey_00089799–800. In addition, it discusses potential modes of downloading LibGen, including "torrents," and the related issue of "seeding." *Id.* at Meta_Kadrey_00089856.

By the time Plaintiffs augmented their counsel team and filed the October 1, 2024 motion to extend the case schedule (Dkt. 193), Plaintiffs had taken depositions of three Meta witnesses and took another the day before the October 4, 2024 hearing on the motion to extend. These four depositions **two to three months ago** all included questioning about the allegedly "new" topics:

> ***Melanie Kambadur (9/17/24)***: This deposition included questioning regarding Meta's use of alleged "shadow librar[ies]" and "Libgen" to train the Llama models, Hartnett Decl., ¶ 6 & Ex. D (9/17/24 Kambadur Tr. at 66–72), as well as questioning about whether Meta "remove[s]" "copyright information" from its training data, *id.* at 71–72; *id.* at 316.
>
> ***Todor Mihaylov (9/19/24)***: This deposition included, as Plaintiffs concede, a discussion of removing "'source metadata' from Llama training data that resulted in the removal of CMI such as the © marker." Mot. at 3 (quoting Mihaylov deposition). Plaintiffs questioned Mr. Mihaylov about the "LibGen dataset" document described above (Exhibit 26 in this deposition), including about "removing codes that are containing copyright in the first or the last 20 percent—25 percent of the book." Hartnett Decl., ¶ 5 & Ex. C (9/19/24 Mihaylov Tr. at 129–31, and 156–57).
>
> ***Eleonora Presani (9/26/24)***: This deposition extensively covered Meta's acquisition and use of the Libgen dataset, with dozens of references to Libgen throughout the deposition, as well as questioning regarding alleged data "piracy." *See id.*, ¶ 7.

---

[3] Plaintiffs attached a version of this document that was produced on August 15, 2024. *See* Ex. 7 to Stein Decl. (Meta_Kadrey_00089791); Hartnett Decl., ¶ 2 (explaining production date). But that document also was produced from another Meta source on July 15, 2024. *See id.* ¶ 3 & Ex. A (Meta_Kadrey_00065244); *id.* ¶ 3 (explaining production date). This document was used by Plaintiffs extensively in Meta employee Todor Mihaylov's deposition on September 19, 2024. *See id.* ¶ 4 & Ex. B (Ex. 26 from the Mihaylov deposition is Meta_Kadrey_00065244).

COOLEY LLP
ATTORNEYS AT LAW

***Ahmad Al-Dahle* (10/3/24)**: Regarding Libgen, Plaintiffs' Motion references a workplace chat message sent by Mr. Al-Dahle (Mot. at 6, referencing Ex. 8 to Stein Decl., document beginning Meta_Kadrey_00048149), which was produced on July 15, 2024. Hartnett Decl., ¶ 8. This deposition involved questioning about Libgen and "shadow" libraries. *Id.*, Ex. E.

In addition to having all of this information available to them **for months**, Plaintiffs apparently had gelled their "new" theories weeks before filing the Motion. On **October 23, 2024**, over a month before filing the Motion, Plaintiffs sent a letter to Meta claiming a variety of issues with Meta's privilege log, including a meritless allegation that the "crime/fraud exception" applies. Dkt. 262-3 at 13-16 (Ex. B to 11/8/24 Letter Brief). That letter was premised on the "new" theories that Plaintiffs now seek to add to the complaint (and the documents and deposition testimony cited above). Among other things, Plaintiffs (baselessly) alleged that discovery had shown "a scheme to violate, inter alia, criminal copyright laws and the Digital Millennium Copyright Act," *id.* at 14, including by "download[ing] from LibGen" and "seeding torrents," *id.* at 15. Plaintiffs then filed a meritless, belated motion making these arguments, on November 8, 2024. Dkt. 262 at 9–11.

In short, as of **July 15, 2024,** Meta's document production revealed the core premises of the Motion, and Plaintiffs *knew* this, as reflected by their depositions, letters, and filings.

### C. Plaintiffs Did Not Disclose Potential Amendment When Seeking An Extension.

Plaintiffs moved for an extension of the case schedule on September 6, 2024, Dkt. 129, and the Court allowed a 14-day extension to complete depositions, Dkt. 163. At the September 20, 2024 hearing on that motion—nearly **three months ago**—Plaintiffs' counsel represented that "we're contemplating an amendment, and we'd like to do that soon," "based in part on depositions this week"; that counsel "[did]n't want anybody to be surprised by it"; and that "maybe we just make that motion as soon as we can and take it up." 9/20/24 Hr'g Tr. at 46 (Dkt. 177). Plaintiffs' counsel stated that the potential amendment had to do with "which databases were pirated, taken," meaning that "the case looks to be bigger than we pled." *Id.* at 5. No motion to amend materialized.

Plaintiffs added counsel and on October 1, 2024 again moved for an extension, seeking to extend fact discovery to January 24, 2025 (and as a backup, until December 13, 2024). Dkt. 193 at 2-3. That motion proposed an **October 11, 2024** deadline for filing a "motion for leave to amend complaint." *Id.* at 2. It also confirmed Plaintiffs' awareness of the supposedly "new" issues they

are now claiming as a basis for amendment. *See, e.g.*, *id.* at 3 (referencing "documents that Meta obtained from the totality of shadow libraries and online sources" and a Meta employee allegedly "responsible for downloading and analyzing the massive LibGen datasets"); *id.* at 5 (referencing "Meta's decision to use unlicensed, copyrighted material from shadow libraries and torrent systems"). Plaintiffs' reply again referenced LibGen and "other shadow libraries." Dkt. 204 at 3.

On October 4, 2024, the Court "reluctantly granted" an extension of the fact discovery until December 13, 2024 and the summary judgment hearing until May 1, 2025, and ordered the parties to "meet and confer about ***all*** surrounding dates and submit a stipulation…." Dkt. 211 (emphasis added). The parties proposed a schedule, Dkt. 227, which the Court adopted, Dkt. 238, and which does ***not*** provide for a motion to amend. In the parties' conferral, Plaintiffs initially proposed an October 18 deadline for "Motion for Leave to Amend Complaint," Dkt. 244-6 (Ex. E to Pritt Decl.), but the parties did not agree on that deadline, and it was never proposed to or adopted by the Court.

In sum, Plaintiffs have contemplated amendment for months yet failed to notify the Court of their potential amendment when providing a schedule for "all surrounding dates." Dkt. 211. They then waited another two months to file this Motion on the eve of the close of fact discovery.

## II. PLAINTIFFS MUST MEET THE REQUIREMENTS OF BOTH RULES 15 AND 16 AND CANNOT.

Federal Rule of Civil Procedure 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The "good cause" requirement of Rule 16 "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Courts, including in this district, apply the Rule 16 standard where, as here, a motion to amend would require revision of the case schedule, even where there is no court-ordered deadline to amend the pleadings. *See Design Data Corp. v. Unigate Enter., Inc.*, 2014 WL 4477244, at *2 (N.D. Cal. Sep. 11, 2014) (applying Rule 16 standard where motion to amend would "upend the trial schedule").

Plaintiffs also must "demonstrate that [the] motion is also proper under Rule 15." *Rodarte v. Alameda Cty.*, 2015 WL 5440788, at *2 (N.D. Cal. Sept. 15, 2015). Leave of court is required for Plaintiffs' amendment, *see* Fed. R. Civ. P. 15(a)(2), and five factors guide the Court's discretion: (1) undue delay, (2) prejudice to the opposing party, (3) futility of amendment, (4) whether plaintiff

has previously amended, and (5) bad faith.  *See, e.g.*, *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (affirming denial of leave to amend).

### A. Plaintiffs Unduly Delayed Seeking Leave To Amend.

Relevant to both the Rule 15 and 16 inquiries is the belated nature of Plaintiffs' request and their false contentions that they could not have sought leave sooner.  Plaintiffs claim to have "discovered new facts giving rise to and supporting their new causes of action during the past few weeks, including key evidence *obtained only this past week*." Mot. at 8 (emphasis in original).  This contention withers under scrutiny.  There is no "new" evidence excusing the delay.

As explained above, Plaintiffs represented to the Court at a September 20 hearing that they were "contemplating an amendment, and we'd like to do that **soon**," "based in part on depositions **this week**." 9/20/24 Hr'g Tr. at 46 (Dkt. 177) (emphasis added).  And shortly after new counsel appeared, Plaintiffs proposed in an October 1 court filing that they would be prepared to file any motion to amend by **October 11.**  Dkt. 193 at 2.  Yet, Plaintiffs then withheld moving to amend for over two months.  Additionally, Plaintiffs did not propose a deadline for moving to amend as part of the parties' stipulation regarding "all surrounding dates," Dkt. 211, once the Court extended the case schedule.  *See* Dkts. 227, 238.  *That* was the time for Plaintiffs to alert the Court and Meta that they would be moving to amend—not 11 business days before the close of fact discovery.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of leave to amend where plaintiff sought to add two new claims five days before discovery cutoff); *see also Brownlee v. 12745 Moorpark LLC*, 2014 WL 4978441, at *2 (C.D. Cal. Oct. 3, 2014) (denying motion to supplement complaint brought 10 days before discovery cutoff after four-month delay).

Nor is Plaintiffs' sandbagging justified by any "new" evidence.  Plaintiffs have long had discovery from Meta regarding the purported factual basis for their Motion.  Indeed, they even made the inflammatory and meritless claim of a "crime/fraud" based on these supposedly "new" facts in a letter sent to Meta **over a month before** their eleventh-hour motion to amend.  *See* Dkt. 262; Dkt. 262-3.  Plaintiffs' lack of diligence weighs heavily against allowing amendment.

***First***, regarding their attempt to replead a violation of § 1202(b)(1) of the DMCA, Plaintiffs cite (Mot. at 3) two documents produced by Meta on November 9, 2024 purportedly referring to

removal of copyright material from training data, as well as deposition testimony from November 20, 2024 that Meta may have removed "unhashed source metadata." Mot. at 3–4. But Plaintiffs already had this information *for months*. Indeed, one of the two alleged "November 9" documents cited by Plaintiffs' Motion (Ex. 2 to Stein Decl.) are comments on a Google Doc that were already produced on **September 16, 2024**.[4] Moreover, as explained above, on **July 15, 2024**, Meta produced the lengthy "LibGen dataset" document, which states that Meta had downloaded the LibGen dataset for use in training, and that Meta then had removed various types of repetitive data." Ex. 7 to Stein Decl. at Meta_Kadrey_00089798. Plaintiffs' Motion even relies on this document, *see* Mot. at 6 (citing Ex. 7 to Stein Decl.) but fails to disclose that it was produced *five months ago*. Plaintiffs also questioned Meta witness Todor Mihaylov about this document during his September 19, 2024 deposition, *see supra* n.2, making clear that Plaintiffs not only had this document since July but that they were aware of it. *See also id.* at 3 (relying on same).[5]

**Second**, as to the newly proposed CDAFA claim, Plaintiffs contend that they only recently "uncovered evidence that Meta torrented pirated datasets of copyrighted works to train the Llama models," including LibGen, Mot. at 4, and that in downloading those datasets, Meta allegedly "seeded" torrents. Mot. at 5. But Plaintiffs knew of Meta's downloading and use of LibGen and other alleged "shadow libraries" since at least **mid-July 2024**, when Meta produced the "LibGen dataset" document discussed above (attached as Ex. 7 to Stein Decl.). That document expressly discusses torrents and seeding.[6] Likewise, Meta's use of LibGen is discussed in another document produced on August 15, 2024. *See* Ex. 8 to Stein Decl. As Plaintiffs themselves concede, the "[r]ecently produced documents *tell the same story*" about the claimed basis for their proposed CDAFA claim as documents that already were produced far earlier. Mot. at 6 (emphasis added).

In short, Plaintiffs are wrong that it was Meta's "recent testimony and documents . . . that

---

[4] On September 16, 2024, Meta produced a document (Meta_Kadrey_00093346), which has the comments later produced as Ex. B to the Stein Decl. Hartnett Decl., ¶ 10 & Ex. F.
[5] Meta's September 16, 2024 production also included a document entitled "Data Review: libgen-fiction-books" (beginning at Meta_Kadrey 00093349), which includes a comment stating that "[c]urrently we are removing all the copyright paragraphs from the beginning and end of the document," and a document entitled "Fair-Use Lib: 400B+ New Clean (+325B more to come)" (beginning at Meta_Kadrey 00093383), which describes the removal of "copyright sections" as part of "General post-processing steps/filtering." Hartnett Decl., ¶¶ 11 & Exs. G, H.
[6] To be clear, Meta rejects the notion that it has "distributed" LibGen.

1  . . . provide the factual bases" for their proposed amendment. Mot. at 1. Plaintiffs have had the
2  supposed "factual bases" for those claims *for over five months,* yet they waited until the last minute
3  to seek to amend. Thus, because Plaintiffs have failed to show good cause, diligence, and lack of
4  undue delay, the Motion should be denied. *See, e.g.*, *Brownlee*, 2014 WL 4978441, at *3.

5  **B.     Plaintiffs' Amendment Would Upend The Case Schedule And Prejudice Meta.**

6  Plaintiffs seek to avoid the inevitable delay and prejudice that would be caused by their
7  amendment by claiming that the Court can simply freeze discovery where it stands. *See* Mot. at 1,
8  6–7. This would prevent Meta from defending itself and would be impermissible. Plaintiffs'
9  Motion, if granted, would upend the case schedule and prejudice Meta.

10  Notably, the Motion will not even be heard until January 9, 2025—weeks ***after*** fact
11  discovery ends and the day before the parties' opening expert reports are due, Dkt. 238. "A need
12  to reopen discovery and therefore delay the proceedings supports a district court's finding of
13  prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network*
14  *Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see* Mot. at 6–7 (acknowledging same). Meta would
15  be unfairly prejudiced by ***any*** reopening of discovery at this point—particularly in light of
16  Plaintiffs' conduct to date, which has already necessitated two extensions of the fact discovery
17  deadline, *see* Dkts. 163, 211. Relatedly, Meta also would be deeply prejudiced if Plaintiffs' Motion
18  is granted without allowing Meta further discovery—as it has a right to develop evidence and
19  defend itself against Plaintiffs' new DMCA and CDAFA claims, were they permitted. *See Johnson*,
20  975 F.2d at 609 ("the existence or degree of prejudice to the party opposing the modification might
21  supply additional reasons to deny a motion"). In short, prejudice weighs heavily against Plaintiffs.

22  ***First***, Meta has a right to develop its ***own*** evidence in defense of Plaintiffs' proposed new
23  claims, and discovery would need to be reopened for Meta to do so. For over the last year, Meta's
24  document production and deposition testimony has been focused on the core issue presented by the
25  operative complaint—whether Meta's training of its Llama models on datasets including Plaintiffs'
26  works is fair use—not supposed (long dismissed) DMCA or (entirely new) CDAFA or
27  "distribution" claims. Plaintiffs' existing written discovery requests at most tangentially relate to
28  these new claims. Likewise, Meta's discovery responses and document production, though at times

touching on these issues, are not focused on them. The same is true of Meta's existing deposition testimony, including Plaintiffs' existing Rule 30(b)(6) topics: although there has been some testimony from Meta witnesses regarding the removal of copyright-related information from data sets and torrenting—which Plaintiffs now seek to misrepresent—those issues have not been the focus of discovery or Meta's defense. Plaintiffs cannot be permitted to freeze discovery in place without allowing Meta the right to fully develop a defense against the belated new claims were they allowed. Meta expects that its defense would show, among other things, that Meta: (1) does not remove copyright-related information from training data for **any** nefarious purpose, including to advance or conceal infringement, but as part of broader technical processes to remove repetitive information (i.e., copyright notices that appear in many documents) from training data, and (2) has not downloaded any data—let alone Plaintiffs' works—in circumvention of websites' restrictions on such downloading or so as to "distribute" any works.

**Second**, Plaintiffs' proposed new DMCA and CDAFA claims would require Meta to significantly augment its present expert strategy. Meta has been working with experts for months to prepare expert reports currently due on January 10, 2025. *See* Dkt. 238. Those expert reports are focused on what this case has been about since the Court's dismissal order over a year ago: whether Meta's use of datasets allegedly containing Plaintiffs' works for training Meta's Llama models involves reproduction and constitutes fair use. *See* Dkt. 156. Were Plaintiffs' new claims permitted, Meta would need to engage additional experts and/or add to the work of its existing experts. Among other expert questions include: for the DMCA claim, the technical details of how, why, and when "copyright information" is "removed" in Meta's training process, and the impact, if any, on the training process, functioning of the model, and Plaintiffs; and, for the CDAFA claim, the technical details of how datasets have been downloaded by Meta, whether "seeding" happened, and if so, how, when, where, for what purpose, and to what effect, among other technical issues.

**Third**, Meta is entitled to take discovery regarding these new theories. Among other things, Meta has a right to question Plaintiffs about what harm, if any, they claim based upon these new allegations; their own use of "torrenting" to download files; and their own views and practices with respect to the removal of "copyright information" (including for training AI). Meta has not

propounded written discovery to Plaintiffs on these issues because they not been part of the case since discovery opened. Nearly all of Plaintiffs' depositions were taken by the time of Plaintiffs' Motion. Third-party discovery may also be necessary, including with respect to the CDAFA claim insofar as Meta allegedly "accessed" third-party systems and files. Because Meta has not had a fair opportunity to take either written or deposition discovery from Plaintiffs or third parties regarding the proposed new claims, discovery would need to reopen were Plaintiffs' belated Motion granted.

**Fourth**, if the Court does not conclude from the present briefing that the new claims are futile, Meta would file a Rule 12(b)(6) motion as to those claims, which would not be heard until March—further warranting denial of Plaintiffs' motion. *See Davis v. Pinterest, Inc.*, 2020 WL 6342936, at *2 (N.D. Cal. Oct. 29, 2020) (denying leave to amend where adding a new cause of action would likely prompt a renewed motion to dismiss). And while no new claim should survive, if they did, Meta would need to file an answer and additional affirmative defenses. Then, after building an additional factual and expert record, Meta would need to file a separate summary judgment motion as to those claim(s)—pushing the current deadlines by months.

Because Plaintiffs' proposed amendment would necessitate reopening discovery and extending it into next year—a gambit that Plaintiffs previously attempted and the Court rejected, *see* Dkts. 193, 211—as well as new expert work, motion practice, affirmative defenses, and moving all case deadlines, thereby prejudicing Meta, which has acted diligently, it should be denied.

### C. Plaintiffs' Proposed Amendment Is Futile.

#### 1. The Proposed DMCA § 1202(b)(1) Claim Is Futile.

Plaintiffs' proposed DMCA claim fails for at least three reasons.

**First**, Plaintiffs' DMCA claim under § 1202(b)(1) has been dismissed with prejudice and thus no longer can be pursued. As explained above, Plaintiffs' original complaint included a claim under § 1202(b)(1), Dkt. 1, ¶ 49, which this Court dismissed, with leave to amend, Dkt. 56 at 3–4. Plaintiffs chose not to amend, and the claim thus has been dismissed with prejudice. *See, e.g.*, *Fallay v. S.F. City & Cnty.*, 2016 WL 888901, at *3 (N.D. Cal. Mar. 8, 2016) (dismissing claim with prejudice after plaintiff was given opportunity to amend and failed to do so).

**Second**, if not precluded, Plaintiffs' proposed § 1202(b)(1) claim does not cure the

deficiencies that doomed it originally. To state a claim under § 1202(b)(1), Plaintiffs must plausibly allege that Meta "intentionally remov[ed] or alter[ed]" CMI while "***knowing***, or . . . having reasonable grounds to know, that ***it will induce, enable, facilitate, or conceal an infringement*** of any right under this title." 17 U.S.C. § 1202(b)(1) (emphasis added). Plaintiffs allege no facts supporting a violation of this provision. Instead, they rely upon wholly conclusory allegations that Meta's alleged removal of CMI in the training process "enables" and "conceals" Meta's alleged infringement by "'cleaning' [the training data] for easier 'ingestion' and also to reduce the chance that the models will memorize this data." *See* Proposed TACC, ¶¶ 103–109; *see id.* ¶¶ 88–91. This allegation is not only conclusory, but it makes no sense: if a model expels allegedly infringing text, that would be obvious by using the model, regardless of whether CMI is expelled too.[7] Notably, Plaintiffs are ***not*** alleging as a basis for their DMCA claim what the Court previously contemplated: that an AI model reproduced their works without the CMI included. *See* 11/9/23 Tr. at 21 and 23 (Dkt. 52). And the Court already observed that Plaintiffs failed to support the notion that "strip[ping] [the CMI] ***within the [AI] model***" would "be a violation of the statute." *Id.* at 22 (emphasis added). Plaintiffs unsurprisingly cite no support for their interpretation of the statute other than an unreasoned summary order in pending litigation against OpenAI. (Mot. at 10.)

***Third***, Plaintiffs lack standing to pursue their proposed DMCA claim. As the Court explained in *Raw Story Media, Inc. v. OpenAI Inc.*, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024), a §1202(b)(1) claim should be dismissed for lack of standing where, as here, there is no cognizable harm alleged other than the statutory violation, because "the mere removal of identifying information from a copyrighted work—absent dissemination"—lacks "any historical or common-law analogue." *Id.* at *4 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Because Plaintiffs allege no dissemination of a copyrighted work without CMI, or any other cognizable harm, they lack standing to pursue their § 1202(b)(1) claim.

---

[7] Plaintiffs' position, if accepted, puts Meta in a lose-lose situation. Either CMI is removed to prevent certain outputs, or the model may create output that Plaintiffs then say violate their rights.

### 2. The Proposed CDAFA Claim Is Futile Because It Is Preempted and, Separately, Because It Fails to State a Claim.

*First*, as the Motion presages, the CDAFA claim is preempted. *See* Mot. at 10 n.6. Courts use a two-part test to assess whether a state law claim is preempted by the Copyright Act. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017). First, the court asks "whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id.* (cleaned up). The court next asks "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.* (cleaned up). "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Id.* at 1019 (cleaned up).

Under these standards, Plaintiffs' proposed CDAFA claim is clearly preempted. Plaintiffs' CDAFA claim is based on the statute's prohibition against "[k]nowingly access[ing] and without permission tak[ing], cop[ying], or mak[ing] use of any data from a computer, computer system, or computer network[.]" Cal. Penal Code § 502(c)(2). Plaintiffs allege a violation of this provision based on Meta's alleged "obtaining pirated, unlicensed, hacked, downloaded, and/or scraped versions of the Infringed Works via bit torrent protocols for use to train Llama models and by sharing, distributing, and/or uploading the same works in the process." Proposed TACC, ¶ 111; *see id.* ¶¶ 43, 87, 110–14. In other words, Plaintiffs allege that Meta obtained their Infringed Works—*i.e.*, their "data"—from unauthorized websites. This is nothing more than a reframing of their core Copyright Act claim: that Plaintiffs "never authorized Meta to make copies of their Infringed Works," "distribute copies," or "ma[k]e copies of the Infringed Works during the training process to develop Llama[.]" *Id.* ¶¶ 99–100. Notably, Plaintiffs concede that the "data" underlying their proposed CDAFA claim *are* the allegedly "Infringed Works," *id.* ¶ 111, defined as "the copyrighted books that Meta copied and used without permission to train Llama, regardless of where or how Meta downloaded or otherwise *accessed* the books," *id.* ¶ 46 (emphasis added).

Plaintiffs try to avoid preemption by arguing that "the focus on unauthorized access to plaintiffs'. . . texts gives the CDAFA statute an 'extra element' that makes it 'qualitatively

different' from copyright law." Mot. at 10 (citations omitted). However, the cases cited by Plaintiffs for that argument involve situations—unlike here—where the Plaintiffs alleged a right of access **other than** under the Copyright Act. For example, in *Altera Corp. v. Clear Logic, Inc.*, "[t]he right at issue" was not "reproduction of the software," but a contractual right to "use of the bitstream." 424 F.3d 1079, 1089 (9th Cir. 2005). *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004), also involved a separate contractual right. Here, however, Plaintiffs object to Meta allegedly downloading (*i.e.*, copying) and "seeding" (*i.e.*, distributing) their works without their authorization. Thus, on the facts at issue, Plaintiffs' CDAFA "access" claim is simply an attempted reframing of Plaintiffs' "copying" and "distribution" claim. It is therefore preempted.

**Separately,** Plaintiffs fail to state a plausible claim under § 502(c)(2) of the CDAFA. That provision imposes liability if one "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). What makes the access unlawful is that a person "without permission takes, copies, or makes use of" data on the computer. *U.S. v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). Here, however, Plaintiffs allege that Meta used torrenting to obtain datasets that were ***publicly available***. Thus, Plaintiffs' proposed claim is not based on allegedly unlawful computer ***access***, but on their objection to the inclusion of their works in those datasets (which Meta did not create) in the first place. This fails to sufficiently allege that Meta violated the CDAFA. *Cf. Riding Films, Inc. v. White*, 2014 WL 3900236, at *5 (S.D. Ohio Aug. 11, 2014) (under the federal equivalent to the CDAFA, Plaintiff did not sufficiently allege torrenting "without authorization," where "Plaintiff did not need authorization to access files that were made public through Defendants' use of publicly-shared folders"). Were Plaintiffs' view the law, then any unauthorized copying of material available on the internet would be a violation—a plainly absurd interpretation.

Finally, Plaintiffs' CDAFA claim is futile because Plaintiffs have not alleged the requisite damage or loss. The CDAFA "contemplates some damage to the computer system, network, program, or data[.]" *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023); *see also* Cal. Penal Code § 502(e)(1). Plaintiffs allege, in conclusory fashion, that they "have been harmed in an amount to be determined at trial, including but not limited to lost royalties,

1  reputational damages, and other consequential losses." Proposed TACC, ¶ 114. Although this
2  conclusory allegation of "damages" conflicts with Plaintiffs' admissions in discovery that they lack
3  any documentary evidence of injury or loss attributable to Meta's training (Hartnett Decl., Ex. H
4  (selected admissions)), here, Plaintiffs do not allege any damage to their data, and "loss of the right
5  to control their own data, the loss of the value of their data, and the loss of the right to protection
6  of the data," are not types of loss covered by the CDAFA. *See Cottle v. Plaid Inc.*, 536 F. Supp.
7  3d 461, 488 (N.D. Cal. 2021); *see also Doe v. Meta Platforms, Inc.,* 690 F.Supp.3d 1064, 1081-83
8  (N.D. Cal. Sept. 7, 2023) (finding allegations that protected information was diminished in value
9  did not qualify as damage or loss under CDAFA). Plaintiffs' CDAFA claim fails on this basis, too.

### 3. There Is No Basis Or Need For A "Conforming" Amendment.

Plaintiffs claim that their proposed amendments, other than adding two new causes of action, merely "conform the operative pleading to the evidence adduced to date" and "provide a fuller picture of Meta's copyright infringement." Mot. at 1; *see id.* at 8–9. But Plaintiffs cite no authority requiring or authorizing such amendment, and the portion of Rule 15 concerning conforming amendments pertains aligning with the ***trial*** evidence—a situation not presented here. *See* Fed. R. Civ. P. 15(b)(2). In any case, the two issues—other than "distribution," *see infra*—that Plaintiffs seek to address regarding their existing claim are to include all versions of Llama, *see* Mot. at 8–9, and to "clarif[y] that Meta downloaded Plaintiffs' copyrighted works from a multitude of 'shadow libraries,' not just Books3," *id.* at 9. These issues already are in the case and there is no need for amendment. *See* Mot. at 9 (acknowledging that "Judge Hixson has ruled that developmental Llama models are relevant to this case"); 9/20/24 Tr. at 47–48 (Dkt. 177) (the Court, questioning why amendment would be necessary for datasets other than Books3 to be in this case).

Plaintiffs also seek to sneak in as a "conforming" amendment a significant expansion of the existing Copyright Act claim. *See* Ex. B to Mot. (redlining claim); Mot. at 1–2 (claiming that recent evidence "crystalizes claims alleging the 'distribution' of pirated material," thus "buttress[ing] Plaintiffs' copyright" claim, but not identifying a revision of the Copyright Act claim). This furtive effort should be rejected. For the last year, Plaintiffs' Copyright Act claim has been about whether alleged copying in the training process constitutes infringement; Plaintiffs now seek to transform

this claim into a theory of distribution via torrent. This is not a "conforming" amendment, but an entirely new theory of liability against which Meta is entitled to seek and obtain additional discovery do defend itself. And that theory, as pled, fails as a matter of law. Plaintiffs make nothing more than a conclusory allegation of "distribution" based on torrenting, without identifying the works allegedly torrented or whether or how the "distribution" occurred. In any event, merely making a file available for download on the internet is not unlawful distribution under the Copyright Act. *See, e.g. Atl. Recording Corp. v. Howell*, 554 F.Supp.2d 976, 981-82 (D. Ariz. 2008).

Among other unannounced changes, Plaintiffs would rewrite the Class definition to go well beyond the Llama Models that have been the focus of the litigation (proposed TACC, ¶ 115), and to encompass not just alleged use of Plaintiffs' works "as training data" but use for "training, **research, or development**." *Id.* (emphasis added). These last-minute, material changes vastly expand the case, and are unjustified, untimely, and inappropriate.

### D. The Timing of Plaintiffs' Motion Does Not Reflect Good Faith.

Meta respectfully submits that Plaintiffs' eleventh-hour attempted amendment lacks good faith. Bad faith exists when "the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999). As explained above, Plaintiffs have had the core information underlying their proposed amendment since at least July 15, 2024—**nearly five months ago**. But rather than forthrightly acknowledge that point, Plaintiffs have misrepresented their amendment as animated by emergent issues. Plaintiffs also have failed to acknowledge the reality that adding the claims they seek to maintain would upend the case schedule and severely prejudice Meta. Further, Plaintiffs failed to obtain a deadline for amendment in the context of the latest round of scheduling negotiations and filings, instead waiting until the night before Thanksgiving, shortly before the close of fact discovery to unveil their Motion. Finally, Plaintiffs essentially now seek the longer extension of discovery the Court previously rejected, *see* Dkts. 193, 211. These circumstances are inconsistent with good faith, particularly given the Court's repeated admonitions. *E.g.*, Dkt. 211.

### III. CONCLUSION

For all of these reasons, the Court should deny Plaintiffs' Motion.

| | | |
|---|---|---|
| 1 | Dated: December 11, 2024 | COOLEY LLP |
| 2 | | |
| 3 | | By: */s/ Kathleen Hartnett*<br>*/s/ Bobby Ghajar* |
| 4 | | Bobby Ghajar<br>Kathleen Hartnett |
| 5 | | Mark Weinstein<br>Philip Morton |
| 6 | | LEX LUMINA PLLC<br>Mark A. Lemley |
| 7 | | |
| 8 | | CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>Angela L. Dunning |
| 9 | | |
| 10 | | Attorneys for Defendant<br>META PLATFORMS, INC. |

*Full Counsel List*

COOLEY LLP
PHILLIP MORTON *(pro hac vice)*
(pmorton@cooley.com)
COLE A. POPPELL (pro hac vice)
(cpoppell@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:    (202) 842-7800

COOLEY LLP
MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
JUAN PABLO GONZALEZ (334470)
(jgonzalez@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

LEX LUMINA PLLC
MARK A. LEMLEY (155830)
(mlemley@lex-lumina.com)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone:    (646) 898-2055

311695785 v6

COOLEY LLP
ATTORNEYS AT LAW

16

META'S OPPOSITION TO MOTION FOR LEAVE
TO FILE THIRD AMENDED COMPLAINT