# WOODHOUSE EXHIBIT 4

# EXHIBIT 3

# Dkt 334-6

# FILED UNDER SEAL

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 3 of 17

12/5/2024        Richard Kadrey, et al. v. Meta Platforms, Inc.    Sy Choudhury 30(b)(6)
                    Highly Confidential - Subject to Protective Order

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

_____

RICHARD KADREY, et al.,         )
                                )
         Individual and         )
         Representative         )
         Plaintiffs,            )
                                )
v.                              )   Case No. 3:23-cv-03417-VC
                                )
META PLATFORMS, INC.,           )
                                )
         Defendant.             )
_____)

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

Videotaped Deposition of meta Platforms, Inc.

by and through its corporate designee

SY CHOUDHURY

San Francisco, California

Thursday, December 5, 2024

Reported Stenographically by

Michael P. Hensley, RDR, CSR No. 14114

_____

DIGITAL EVIDENCE GROUP

1730 M. Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

12/5/2024   Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
Highly Confidential - Subject to Protective Order

Page 17

1    A.   We've had, I'll say, various notable data
2    points within that.  One of the -- one of the
3    earlier data points was when we worked for REI
4    research team for a dataset of -- I think it was
5    some -- some scientific text as well as visual
6    imagery from ▮▮▮▮▮▮▮▮▮▮▮ for a deal that we did
7    with -- to support one of the FAIR projects.
8         I think that was in 2022, late 2022.
9         In early 2023, this is another data
10   point where we looked at and explored licensing many
11   types of data for LLMs.  This included everything
12   from fiction book data, scientific textbook data,
13   normal textbook data, images, videos.  It was very
14   early days in us exploring what is available in the
15   market and also what our product or engineering team
16   really looked to utilize.
17   Q.   Well, let's just keep going with those
18   data points, then.  And would the next data point be
19   April 7th, 2023, when there was a decision to stop
20   licensing -- the licensing process for acquiring
21   text data for LLMs -- or, sorry, the pause?
22        ATTORNEY HARTNETT:  Object to form.

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 5 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                      Highly Confidential - Subject to Protective Order

Page 18

1          THE WITNESS:  Yeah.  So in early April
2   there was a pause on licensing certain categories of
3   data that included the text data -- some of the text
4   data categories.
5   BY ATTORNEY PRITT:
6       Q.   And what text categories did that include?
7       A.   That included fiction books, nonfiction
8   books, and coding.
9       Q.   Any other categories?
10      A.   No.  Those are the three that we decided
11  to pause on.
12      Q.   And what are the data categories that
13  you -- that Meta decided not to pause on in early
14  April 2023?
15      A.   While we did not have an explicit
16  discussion or decision to not pause, the data
17  categories that -- the other data categories that we
18  were continuing to explore included images, videos,
19  and 3D objects.
20      Q.   And why did Meta decide to pause its
21  licensing process for acquiring fiction books,
22  nonfiction books, and coding data for its LLMs in

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 6 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                        Highly Confidential - Subject to Protective Order

Page 19

1  early April 2023?

2             ATTORNEY HARTNETT:  And I would just

3  object to the extent that you need to respond with

4  attorney-client privilege, please exclude that from

5  your answer.  If you can respond without reference

6  to that, you can answer.

7             THE WITNESS:  There was a meeting I had

8  with my boss, Marc Shedroff, and our attorney,

9  Natascha Parks, and the content of the meeting is

10 under attorney-client privilege.

11            All I can say is that we considered and

12 discussed a variety of factors and agreed that the

13 decision would be to pause on those three

14 categories.

15 BY ATTORNEY PRITT:

16    Q.   Now, were there any business reasons for

17 deciding to pause the licensing process for

18 acquiring fiction books, nonfiction books, and

19 coding data for use in Meta's LLMs, at that time?

20            ATTORNEY HARTNETT:  And I would just have

21 the same objection and instruction.  You can answer

22 if there's a nonprivileged information you can

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 7 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                            Highly Confidential - Subject to Protective Order

Page 20

1   provide.

2            THE WITNESS:  There's only privileged

3   information in that meeting, and so I'm not able to

4   talk further about that.

5   BY ATTORNEY PRITT:

6       Q.   Okay.  So to clarify, it's Meta's

7   testimony that there were no business reasons for

8   deciding to pause the licensing process for

9   acquiring fiction books, nonfiction books, and

10  coding data for use in Meta's LLMs in early

11  April 2023; is that correct?

12           ATTORNEY HARTNETT:  Objection to the form.

13           Misstates his testimony.

14           I -- if you can answer as to whether there

15  are business reasons that don't entail conveying

16  legal advice, you may answer.  If not, I instruct

17  you not to answer.

18           THE WITNESS:  The -- although this is not

19  comprehensive, the coding and textbook categories do

20  not -- do not apply to the one, I'll say, business

21  reason.

22           I'd like to point out that the -- in the

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 8 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                   Highly Confidential - Subject to Protective Order

Page 21

1  fiction category, we quickly learned from the
2  business development team that most of the
3  publishers we were talking to, they themselves were
4  representing that they did not have, actually, the
5  rights to license the data to us.  And so it would
6  take a long time to engage with all their authors.
7  BY ATTORNEY PRITT:
8      Q.   So was timing and the ability to obtain
9  licenses for the use of fiction books to use as data
10 for Meta's LLMs a business reason for why Meta
11 decided to pause it's licensing efforts for those
12 books in early April 2023?
13     A.   It was one of the considerations, yes.
14     Q.   Were there any other business
15 considerations for deciding to pause licensing
16 efforts for fiction books to use as data for Meta's
17 LLMs in early April 2023?
18          ATTORNEY HARTNETT:  And you could answer
19 to the extent it doesn't reveal attorney-client
20 privileged advice.
21     A.   I would say yes in all three of the
22 categories that I've mentioned.  Another business

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 9 of 17

12/5/2024        Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
Highly Confidential - Subject to Protective Order

Page 22

1   reason is the very slow uptake in engagement and
2   interest from the different content partners that we
3   had reached out to or tried to reach out to, to
4   actually engage in a meaningful conversation.
5             So that was another reason, which has
6   nothing to do with speed.  It's just volume and
7   willingness to engage.
8             There were some that we, of course, had
9   good productive conversations with, but it was very
10  few.
11       Q.   And which partners that you're referring
12  to were unwilling to engage?
13       A.   We -- we send out slew of emails to --
14  slew of companies:  ▇▇▇ and -- I mean there was a
15  whole list.
16            I don't recall the entire list, but I
17  remember we had made a long list from initially
18  scouring the Internet of top publishers, et cetera,
19  and we didn't get contact and feedback from -- from
20  a lot of our cold call outreaches to try to
21  establish contact.
22            There were a few, like ▇▇▇▇, that did,

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 10 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                     Highly Confidential - Subject to Protective Order

Page 23

1   you know, engage, but not many.
2        Q.   Are you aware of any other licensing
3   efforts where Meta decided to stop pursuing licenses
4   because it didn't get contact and feedback from cold
5   call outreaches?
6        A.   You know, when we've done or we attempted
7   to do deals in the past for FAIR, where we've not
8   been able to achieve a deal in the same manner.  And
9   so it's -- it does happen.
10            It's not just in this space, but it's work
11  stream by work stream, and it's usually related to a
12  category that -- of companies you're going after.
13       Q.   Sorry.  I don't understand the answer.
14            Are you aware of any other licensing
15  efforts where Meta decided to stop pursuing licenses
16  because it didn't get contact and feedback from cold
17  outreach?
18       A.   I am aware of licensing efforts such, for
19  example, we tried to license 3D worlds from
20  different game engine and game manufacturers for our
21  AI research team.  And in the same way that I'm
22  describing here for fiction and textbook data, we

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 11 of 17

12/5/2024        Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
Highly Confidential - Subject to Protective Order

Page 24

1   got very little engagement to even have a
2   conversation.
3       Q.   And did Meta decide to pause its licensing
4   efforts for 3D worlds?
5       A.   Yes.  We decided to pause the efforts
6   after that.
7       Q.   And did Meta use an alternative source of
8   data rather than licensing it?
9       A.   We decided to -- in that case, we decided
10  to build our own solution.
11      Q.   And when Meta decided to pause its
12  licensing efforts for nonfiction and fiction books
13  and code, did Meta decide to write its own books and
14  code to use as data for its LLMs?
15      A.   I don't know the answer to that.
16  Engineering would know the answer to that.
17      Q.   Are there any business reasons other than
18  the two you have listed for why Meta decided to
19  pause its licensing efforts for nonfiction and
20  fiction books and code in early April 2023?
21      A.   At this time, I can't think of any.
22      Q.   Okay.

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 12 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                         Highly Confidential - Subject to Protective Order

Page 26

1   of licensing that data for use in its LLMs?
2       A.   That's correct.
3       Q.   And when we're referring to the April 2023
4   data point, did the engineering and product teams
5   ask the business development team to stop its
6   licensing efforts for fiction and nonfiction books
7   and code for use in Meta's LLMs?
8       A.   No.  That decision was -- had engineering
9   and products's input, but that was part of the
10  meeting that I'm telling -- that I mentioned that
11  was attorney-client privileged.
12      Q.   And what was engineering and products's
13  input?
14      A.   I was not aware of what -- they did not
15  provide that input to me.  They provided that input
16  directly to Marc Shedroff, my boss.
17      Q.   Did he tell you what that input was?
18      A.   That is under attorney-client privilege as
19  we had that discussion there.
20      Q.   Is Marc Shedroff a lawyer?
21      A.   No.
22      Q.   Okay.  So I'm going to ask again.  What

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 13 of 17

12/5/2024        Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                          Highly Confidential - Subject to Protective Order

Page 27

1   did Marc Shedroff tell you was engineering and
2   product -- the engineering and product teams's
3   input?
4           ATTORNEY HARTNETT:  And I would just ask
5   the witness, to the extent that Mr. Shedroff learned
6   that in a meeting with the engineering team and
7   counsel, and the extent that there was
8   attorney-client privilege involved in how
9   Mr. Shedroff conveyed that to you, you can exclude
10  that from your answer.
11          If you know information that Mr. Shedroff
12  had from the engineering team that is not covered by
13  attorney-client privilege, you can answer with that.
14          THE WITNESS:  My understanding was that
15  Mr. Shedroff was in a meeting with -- with attorneys
16  and asking for their advice and also with -- with
17  attorney-client privilege.
18  BY ATTORNEY PRITT:
19      Q.  So is your testimony that the input that
20  Mr. Shedroff received from the engineering and
21  product teams related to the April 2023 decision to
22  pause licensing, there was -- that input was legal

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 14 of 17

12/5/2024        Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                 Highly Confidential - Subject to Protective Order

Page 28

1    advice?

2              ATTORNEY HARTNETT:  Objection to the form.

3              I think it misstates his testimony.

4              To the extent he's in a -- he's conveying

5    information that he learned from his boss that was

6    part of a privileged conversation between his boss,

7    counsel, and the engineers.

8              Our position is that he has to figure out

9    whether or not he is conveying information that

10   Mr. Shedroff learned from the engineers separate

11   from the legal advice that was being given in that

12   meeting.

13             So I'm asking him to try and separate that

14   and convey anything that was not infused with legal

15   advice.  And you can answer.

16             THE WITNESS:  The meetings that Mark had

17   was -- with engineers was infused with legal advice.

18   And when we -- Mark and myself and Natasha were

19   discussing all the pros and cons, we -- and all the

20   facets before we made the decision that was also

21   with discussing both the, as we talked about, the

22   business and the legal aspects of a decision before

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 15 of 17

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                   Highly Confidential - Subject to Protective Order

Page 29

1   we decided to pause.
2   BY ATTORNEY PRITT:
3        Q.   Okay.  So I just want to get clear on the
4   record.  Your understanding is that the engineering
5   and product teams input into the decision whether or
6   not to pause licensing efforts in April 2023 that
7   we've discussed, all of that involved legal advice?
8             ATTORNEY HARTNETT:  Objection to the form.
9             You should testify only based on what you
10  know, but you should testify on what you know.
11  BY ATTORNEY PRITT:
12       Q.   Correct.  I asked for your understanding.
13       A.   Sorry?
14       Q.   I asked for your understanding.
15       A.   Yeah.  My understanding is that when Marc
16  had the discussion with engineering and product,
17  that also included legal and legal advice, yes.
18       Q.   Okay.  But you're also testifying on
19  behalf of Meta at this time; so it Meta's position
20  that the input provided by the product and
21  engineering teams into the decision to pause
22  licensing efforts in April 2023 is completely

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 16 of 17

12/5/2024            Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                     Highly Confidential - Subject to Protective Order

Page 30

```
 1   covered by the attorney-client privilege?
 2       A.   Yes.
 3       Q.   Okay.
 4            ATTORNEY HARTNETT:  I would just say
 5   for -- this is with respect to his topic, by the
 6   way, which is topic number 8.
 7            ATTORNEY PRITT:  Mm-hmm.
 8            ATTORNEY HARTNETT:  So his topic is not --
 9   anyways, I think we stand by what he just said, but
10   he's talking about it from his perspective as the
11   person that was receiving information from his boss
12   and making decision about the licensing efforts.
13            ATTORNEY PRITT:  As Meta's corporate
14   representative for topic 8 as we have described it
15   in today's deposition.
16            ATTORNEY HARTNETT:  Correct.
17            ATTORNEY PRITT:  Thanks.
18            Okay.
19   BY ATTORNEY PRITT:
20       Q.   In connection with the licensing process
21   that you've described, did Meta discuss the types of
22   data that it wanted to obtain for use with its LLMs?
```

Case 3:23-cv-03417-VC   Document 409-9   Filed 01/23/25   Page 17 of 17

12/5/2024   Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
Highly Confidential - Subject to Protective Order

Page 82

```
 1              CERTIFICATE OF SHORTHAND REPORTER

 2

 3        I, Michael P. Hensley, Registered Diplomate

 4   Reporter for the State of California, CSR No. 14114,

 5   the officer before whom the foregoing deposition was

 6   taken, do hereby certify that the foregoing

 7   transcript is a true and correct record of the

 8   testimony given; that said testimony was taken by me

 9   stenographically and thereafter reduced to

10   typewriting under my direction; that reading and

11   signing was not requested; and that I am neither

12   counsel for, related to, nor employed by any of the

13   parties to this case and have no interest, financial

14   or otherwise, in its outcome.

15

16

17

18                     _____

19                           Michael P. Hensley, CSR, RDR

20

21

22
```