COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
TERESA MICHAUD (296329)
(tmichaud@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone:    (650) 815-4131

*[Full Listing on Signature Page]*

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>                                   Defendant. | Case No. 3:23-cv-03417-VC-TSH<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSE TO COURT'S ORDER OF JANUARY 28, 2025 [DKT. 410]** |

Pursuant to the Court's January 28, 2025 Order (Dkt. 410), Defendant Meta Platforms, Inc. ("Meta") responds to Plaintiffs' motion for relief (Dkt. 397) from Judge Hixson's January 2, 2025 Order (Dkt. 366), limited to issues 1 and 4. Plaintiffs' motion should be denied.

**Legal Standard.** Plaintiffs do not acknowledge or satisfy the applicable legal standard: whether Judge Hixson's order is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). "This standard is highly deferential—the district judge may not simply substitute his or her judgment for that of the magistrate judge." *Campbell v. City of Milpitas*, 2014 WL 5077135, at *1 (N.D. Cal. Oct. 9, 2014) (cleaned up). Likewise, a magistrate judge's factual determinations may not be set aside unless the Court "is left with a definite and firm conviction that a mistake has been committed." *EEOC v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014) (cleaned up).

**Issue 1: Judge Hixson did not clearly err in refusing to reopen depositions.** Plaintiffs concede they have no basis to reopen depositions absent a showing of improper withholding. Mot. at 1. They simply dispute Judge Hixson's factual finding—owed deference by this Court—that "Plaintiffs have not demonstrated that Meta inappropriately delayed produc[tion]." Dkt. 366 at 5. Judge Hixson made this finding based on his careful review of the record before him. Plaintiffs' reliance on meritless arguments not presented to Judge Hixson is improper and should be rejected.

As an initial matter, and contrary to Plaintiffs' repeated false allegations, there was no eleventh-hour "document dump" by Meta. December 13, 2024 was the close of fact discovery, and Meta diligently completed its production by that date. Plaintiffs also completed their productions by that date, producing thousands of documents at or near discovery cutoff (in many cases long after depositions). *See* Dkt. 354-6 (chart of Plaintiffs' productions). All along, Plaintiffs were fully on notice that, in light of the Court-ordered extension of discovery (Dkt. 211), Meta would be continuing its collection and production of documents until the new discovery cutoff. Plaintiffs served numerous RFPs requesting documents about matters such as licensing and torrenting in the final stages of discovery on Sept. 30, Oct. 8 and Oct. 18. Meta diligently collected and produced documents responsive to Plaintiffs' new RFPs, re-reviewed documents that were not responsive to previous requests served by Plaintiffs in view of those new RFPs; collected and produced documents associated with new Court-ordered custodians (Dkt. 212) and collected and produced

documents subject to discovery Orders from the Court (e.g., Dkt. 288, Dkt. 315). Moreover, Meta consistently made rolling document productions throughout fact discovery, including 10 productions in November and 5 productions in December. These actions confirm that Meta worked diligently to comply with its discovery obligations.

With one exception, Plaintiffs' motion on Issue 1 does not even attempt to show that any of the documents Meta produced at or near the discovery cutoff are responsive to any of Plaintiffs' earlier served RFPs. The only exception is Plaintiffs' argument regarding RFP 45 (Dkt. 397 at 1– 2)—an argument not presented to Judge Hixson (*see* Dkt. 354) and thus, that may not be considered now. *See, e.g.*, *Symantec Corp. v. Zscaler, Inc.*, 2019 WL 8331428, at *2 n.1 (N.D. Cal. 2019).[1]

In any case, Plaintiffs' RFP 45 argument is wrong: the documents cited by Plaintiffs are not covered by RFP 45. Plaintiffs told the Court in November that RFP 45 called for "documents related to any process, program, or method by which Meta sought to filter out copyrighted data from Llama training datasets," Dkt. 267 at 20—not documents about licensing generally. The two documents cited by Plaintiffs have nothing to do with filtering data for Llama training datasets. Exhibit A is a chat thread discussing upcoming work and task assignments, a reference to content discussions with a publisher, and the author's observations about LibGen. Exhibit C is also a chat thread that discusses upcoming work and the authors' personal opinions about LibGen and licensing. Neither of these Exhibits concerns filtering data. While Plaintiffs complain about the collection dates of the documents, Meta ran searches for documents based on broad ESI search terms, which resulted in a large universe of documents, which were then reviewed for production based on the RFPs that Plaintiffs had issued at the time (then, it was RFPs served in December 2023, February 2024 and April 2024). Dkt. 354 at 3–4. Simply because a document was collected does not make it responsive.

Plaintiffs are also wrong that depositions should be reopened to address alleged "contradict[ions]" between deposition testimony and later-produced documents. To begin, Plaintiffs' out-of-district case about reopening depositions (Dkt. 397 at 2) is inapposite here, where

---

[1] As Judge Hixson explained, Plaintiffs did not even generally "make the argument that they asked for these documents early in discovery" and they also did "not deny" Meta's argument "that these documents were responsive only to the later served RFPs." Dkt. 366 at 5.

the Court—seeking to avoid a "train wreck"—ordered the parties to "expeditiously proceed with depositions with the documents they already have and [*not*] wait until they get more documents." Dkt. 230 at 3.[2]  Plaintiffs also fail to substantiate their rhetoric about a "massive failure of recollection" by Meta witnesses, citing only two claimed contradictions, Dkt. 397 at 2, neither of which is in fact a contradiction, a failure of recollection, or any basis to reopen depositions.

Plaintiffs claim a contradiction between (1) Mr. Zuckerberg's deposition testimony that he did not think he had heard of the LibGen dataset prior to his deposition preparation and (2) a document—neither written by nor sent to Mr. Zuckerberg—requesting approval to use LibGen for a research model not at issue in this case, and referencing a "prior escalation to MZ" and that "GenAI has been approved to use LibGen for Llama 3 (with VP sponsor requiring to accept full risk) with a number of agreed upon mitigations."  Dkt. 397 at 2.  Mr. Zuckerberg's stated unfamiliarity with the name "LibGen" until his deposition preparation does not contradict the document, which does not specify *what* specifically was "escalated" to Mr. Zuckerberg, *how* it was escalated, or *when*.  Indeed, Mr. Zuckerberg was shown other documents discussing "LibGen" in his deposition and they did not refresh his recollection.  *E.g.*, Resp. Ex. 1 at 112:6-113:5 (discussing Ex. 6).  Moreover, and importantly, Plaintiffs concede that Meta produced this document before Mr. Zuckerberg's deposition. Dkt. 397 at 2 n.2.  Yet Plaintiffs chose not to use it with him, instead extensively deploying the document in a brief filed with the Court the next day.  Dkt. 346 at 1 & Ex. A.  Plaintiffs exhausted every minute of allotted time with Mr. Zuckerberg, had multiple attorneys present at his deposition (who printed exhibits onsite during the deposition), and should not be allowed more time due to their own decision not to examine him on produced documents.[3]

Finally, Plaintiffs provide *no* justification for additional deposition time with Ms. Kambadur, Dr. Presani, Dr. Pineau, Mr. Edunov or Mr. Bashlykov.  Tellingly, Plaintiffs' motion is

---

[2] Meta did just that, promptly deposing all Plaintiffs only to have several Plaintiffs produce more documents *after* their depositions than before, including many critical ones.  Dkt. 354-6.

[3] Notably, days *before* Mr. Zuckerberg's deposition, Plaintiffs threatened an emergency motion regarding the deposition based on the allegedly late production of the allegedly "most relevant" documents.  *See* Dkt. 354 at 4–5 & Ex. D.  Thus, it appears that Plaintiffs intended to move for more time with Mr. Zuckerberg, regardless.  *See id.*  Given that Plaintiffs used the document in a brief filed the day after Mr. Zuckerberg's deposition, Plaintiffs never represent to the Court they were not aware of the document before the deposition.

silent on any alleged errors in Judge Hixson's decision to deny reopening the depositions of these individuals. Nor do Plaintiffs explain **what** deposition questions they would ask regarding the small handful of documents cited in their letter brief to Judge Hixson. *See* Dkt. 354 at 1-2.

- Plaintiffs chose to depose Ms. Kambadur on September 17 and Dr. Presani on September 26—***before*** Plaintiffs served their final wave of discovery requests and ***before*** Dr. Presani's designation as a document custodian.

- Plaintiffs chose to depose Mr. Edunov on November 6, ***before*** Meta's responses to Plaintiffs' final wave of discovery were due.

- Plaintiffs chose to depose Dr. Pineau on November 6, ***also before*** Meta's responses to Plaintiffs' final wave of discovery were due, and her testimony does not contradict the documents cited, which Plaintiff cites for statements made by other Meta personnel, not Dr. Pineau.

- Plaintiffs have deposed Mr. Bashlykov for over 10 hours, including extensive questioning on documents about torrenting issues. Plaintiffs' underlying letter brief cites a single document about Mr. Bashlykov's feelings about torrenting. But Plaintiffs already questioned him about his feelings during his deposition.

In short, the parties proceeded as Magistrate Judge Hixson directed, with both sides taking depositions before document productions were complete. Meta diligently produced documents on a rolling basis throughout the expedited discovery period. Plaintiffs chose when they took depositions and when they served discovery requests. They should not be permitted to reopen depositions now, particularly given that they have shown no clear error in Judge Hixson's rejection of their arguments.

**Issue 4: Judge Hixson correctly rejected Plaintiffs' crime-fraud argument.** To begin, Plaintiffs have attached over 10 pages of unauthorized briefing on this issue. *See* Appendices A, B (Dkts. 398-3, 398-4). These materials—in particular the "significance" arguments in Appendix A—violate the local rules, *see* Civil L.R. 72-2(b), and should be disregarded.

In any event, Judge Hixson properly rejected Plaintiffs' arguments and did not "eviscerate the crime-fraud doctrine." Dkt. 397 at 3. The question before Judge Hixson was whether Plaintiffs had made a prima facie showing that Meta had engaged in a crime that was furthered by its lawyers. *See* Dkt. 355 at 3. To that end, Judge Hixson correctly concluded that Plaintiffs' motion "seems to get things out of order." Dkt. 366 at 6. Plaintiffs argue a "crime-fraud" based on Meta's "obtain[ing] copyrighted works without permission from online databases of copyrighted works,"

and allegedly "torrenting" and "seeding" such works. Dkt. 397 at 4–5. But those are the central allegations underlying Plaintiffs' copyright claims and are inextricably bound up with the merits of those claims and Meta's fair use defense. *See* Dkt. 122 ¶ 73 (Third Amended Complaint, alleging, use of "copyrighted materials for training that Meta had previously determined to be legally problematic"); Dkt. 300 (motion alleging these theories). Under these circumstances, Plaintiffs cannot make the requisite showing that Meta was engaged in or planning a criminal scheme, let alone that the attorney-client communications at issue furthered it. Dkt. 355 at 3.[4]

Indeed, Plaintiffs could not even justify having Judge Hixson conduct an *in camera* review of the privileged materials at issue because their characterization of those materials was inaccurate or misleading. *See* Dkt. 355 at 5. Many of the communications flagged by Plaintiffs as suspicious have nothing to do with issues in dispute (*id.*); and to the extent documents indicate Meta consulted with lawyers on the issues presented by this case, that shows ***conscientiousness***, not a crime. The attorney-client privilege is intended to foster open communication with lawyers on difficult legal questions. Critically, to date, no court or other authority has deemed illegal the conduct that Plaintiffs brand as a crime or fraud: gathering data from the internet for training AI models, including through the use of the BitTorrent protocol (a lawful and widely used technology for downloading large files); removing copyright and other repetitive information from data prior to AI training to improve model performance; and/or training AI models on copyrighted data.[5] None of Plaintiffs' cases involve attorney advice concerning novel legal questions or disputed factual issues, as opposed to clear violations. *See* Dkt. 397 at 4–5. And Plaintiffs are simply wrong that Meta's fair use defense does not apply to the allegedly "unlawful torrenting of pirated works." *Id.*[6]

As Judge Hixson correctly put it, "[i]n a case like this where liability is hotly disputed, the Court is not willing to embrace a crime-fraud theory that requires the Court to decide the contested merits of the case in order to rule on a discovery motion." Dkt. 366 at 6. There was no clear error in his ruling rejecting Plaintiffs' attempts to invade privilege.

---

[4] As the Ninth Circuit has made clear, "hard cases should be resolved in favor of the privilege." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999).
[5] Plaintiffs mischaracterize a limited record on the issue of seeding, which has not yet been addressed in the additional discovery previously allowed by the court or by experts.
[6] Meta will address seeding/distribution and demonstrate its fair use at summary judgment.

Dated: January 30, 2025

COOLEY LLP

By: /s/ Phillip Morton
Bobby Ghajar
Mark Weinstein
Kathleen Hartnett
Teresa Michaud
Phillip Morton
Judd Lauter
Liz Stameshkin
Matthew Brigham
Colette Ghazarian
Juan Pablo Gonzalez
Cole A. Poppell

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning

Attorneys for Defendant
META PLATFORMS, INC.

*Full Counsel List*

COOLEY LLP
PHILLIP MORTON *(pro hac vice)*
(pmorton@cooley.com)
COLE A. POPPELL *(pro hac vice)*
(cpoppell@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:    (202) 842-7800

COOLEY LLP
MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
JUAN PABLO GONZALEZ (334470)
(jgonzalez@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

COOLEY LLP
ATTORNEYS AT LAW

DEF. META'S RESPONSE TO COURT'S
ORDER OF JANUARY 28, 2025 [DKT. 410]
3:23-CV-03417-VC-TSH