

February 8, 2025

**VIA ECF**

Hon. Vince Chhabria
450 Golden Gate Avenue
17th Floor, Courtroom 4
San Francisco, CA 94102

                Re: *Kadrey, et al. v. Meta Platforms, Inc.*, Case No. 3:23-cv-03417-VC

Dear Judge Chhabria:

      Meta filed two letters yesterday afternoon: one responding to the Court's order that Meta submit documents *in camera* for Step Two of the Court's crime-fraud determination, Dkt. 422; and the other identifying—almost two months after fact discovery closed—18,000 documents it collected but failed to review or produce, claiming they were "inadvertent[ly] sequest[ered]," Dkt. 420. Plaintiffs learned of these stunning developments only when and how the Court did—by Meta's filing the letters on the docket. Indeed, two days after Meta says it first learned of this massive discovery failure, Plaintiffs still have not heard from them on these issues. Meta's discovery breaches strike at the core of this case and, despite Meta's tepid assertion to the contrary, threaten to upend the Court's long-standing case management schedule. More critically, they cast doubt on material assertions Meta repeatedly made to Plaintiffs and this Court throughout the discovery period.

      Plaintiffs agree with Meta that a status conference is a good start. At minimum, however, based on facts already known, Plaintiffs respectfully submit the Court should: (1) order Meta to produce the entirety of the 18,000 documents immediately under Federal Rule of Evidence 502(d) and the Court's inherent authority;[1] and (2) permit Plaintiffs to take discovery into the allegations in their newly amended complaint of Meta's illegal piracy of tens of millions of copyrighted works using peer-to-peer networks now that Meta has unilaterally re-opened defensive fact discovery. This is particularly important because it wasn't until a month ***after*** the deadline to serve new discovery that Meta first produced documents and testimony showing it torrented and seeded pirated works, and relied even more heavily on these practices in connection with Llama 4, all while Meta simultaneously argued to the Court that the pirated databases Meta used (including LibGen) and Llama 4 were not relevant or at issue in this case to prevent discovery into them.

      Depending on the facts that emerge from Meta's discovery breaches, Plaintiffs reserve all rights to seek further relief under Rule 37 and the Court's inherent power to cure the prejudice that Plaintiffs will now suffer (which Plaintiffs begin to outline below). Indeed, further remedies are warranted given that this massive discovery failure has come to light almost two months after the close of extended fact discovery, near the end of expert discovery after all of Plaintiffs' expert

---

[1] *See* Lueck and Arenz, *Fed. R. Evid. 502(d) and Compelled Quick Peek Prods.*, 10 SEDONA CONF. J. 229 (2009). Alternatively, Meta should be ordered to produce all non-privileged documents without reviewing for relevance.



February 8, 2025
Page 2

reports were already served, and barely one month before Plaintiffs' deadline to move for summary judgment.

I. **Plaintiffs' Crime-Fraud Showing and Meta's Reversal of Privilege Assertions (Dkt. 422).**

Meta's letter raises further concerns about Meta's approach to asserting privilege to withhold discovery in this case, including supporting some contentions that Plaintiffs raised previously. Meta's submission also cites to *In re Napster* while both misrepresenting its holding and ignoring the elephant in the room: Napster's widespread, illegal piracy of copyrighted material *earned* itself an injunction, a massive fine, and a shut-down order. Not to mention all the Napster users that were prosecuted. Yet Meta continues to feign ignorance about the severity of the unprecedented scale of its own IP piracy (*tens of millions* of copyrighted works). There is nothing "novel" about piracy using peer-to-peer networks. *See* Nov. 9, 2023 Hrg. Tr., Dkt. 53, at 48:9-18:

> THE COURT: I mean, isn't that like the Napster case? I don't remember. It was so long ago.
>
> MR. GHAJAR: Napster, you remember -- Napster was a website that allowed for infringement of millions of songs, and people were sharing songs. They were copying the songs themselves and then sharing them with others. That's what made that -- yeah. That's what made that platform problematic. So it was the copying for themselves, and then sharing it with their friends, and then with people in other countries that they didn't know.

After briefing Plaintiffs' crime-fraud challenge before both Judge Hixson and this Court, *see* Dkts. 355 and 412, Meta only now acknowledges that it wrongly claimed privilege, in part or in whole, over *almost one quarter* (more than 23%) of the documents that the Court ordered Meta to submit *in camera*. Dkt. 422 at 1.[2] Meta has claimed privilege over *thousands* of other documents in this case. If this sample is anywhere close to representative, there may well be hundreds of additional documents that Meta wrongly withheld, in whole or in part, as privileged. Because Meta is now revisiting its *in camera* production anyway, Meta should, at minimum, be required to submit to the Court for *in camera* review the seven additional documents Plaintiffs identified in Dkt. 418. As Plaintiffs explained in that letter, the contents of these documents also appear to show attorney involvement in crime, fraud, or unlawful conduct. In addition, Plaintiffs respectfully request that the Court consider appointing a special master to review Meta's privilege assertions in full.

---

[2] Nowhere has Meta addressed the many privilege invocations its counsel made in most of its fact witnesses' depositions to refuse to answer questions concerning Meta's decision-making and use of pirated online databases, or shadow libraries, to illegally torrent (and distribute) copyrighted works instead of licensing them. *See* Dkt. 417, App'x B. Those privilege claims alone support this Court applying the crime-fraud exception to order Meta witnesses to answer questions about these issues, irrespective of the documentary evidence.



February 8, 2025
Page 3

Finally, the Court should deny Meta's request for additional briefing. For one thing, Meta misrepresents *In re Napster*'s holding. That decision just holds that a party asserting privilege must be given an opportunity to present evidence relevant to the privilege before a court orders production under the crime-fraud exception. 479 F.3d 1078, 1098 (9th Cir. 2007). But Meta *already* had that opportunity, *twice*—first before Judge Hixson, Dkt. 355, and then again before this Court, Dkt. 412. *In re Napster* also addressed the inapposite situation where no *in camera* review occurred at all: the parties simply briefed the crime-fraud issue and the district court ordered production without reviewing any of the implicated documents. *See id.* at 1086-87 (district court decided motion to compel on the papers and compelled production of all privileged communications subject to the crime-fraud exception); *see also Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6137634, at *6 (C.D. Cal. Aug. 23, 2018) ("in an adversarial process, such as this, there is no direct support for a party claiming privilege to present further argument on an *ex parte* basis with regard to assertedly privileged documents which the Court has ordered produced") (cleaned up). There is no support in the case law for a third round of briefing on the crime-fraud exception, and Meta's insinuation that the Court cannot make an educated Step Two determination based on the contents of the documents and deposition testimony should be rejected.

II.  **Meta's Massive Discovery Failure and Misrepresentations In Discovery (Dkt. 420).**

Meta, one of the world's largest technology companies, for the first time yesterday blamed its discovery vendor for purportedly misplacing an enormous corpus of potentially responsive documents. This unreviewed "tranche" of 18,000 documents is *over one third the size* of all documents that Meta produced in this case (about 45,000) and is even larger than the *total number of documents* Meta produced when it first claimed "substantial completion" in July 2024 (about 17,000).[3]

Meta represents it will review all 18,000 of these documents and make productions by February 14—seven calendar days from the filing of its letter. That *must* be impossible, however. Why? Because Meta repeatedly said so to successfully oppose Plaintiffs' discovery requests for additional or modified search terms, additional custodians, etc., even seeking (and getting) fees awarded—while also asserting there was ***zero*** evidence of Meta failing to comply with its discovery obligations. These prior assertions to the Court and to Plaintiffs are called into serious question. For example:

---

[3] While Meta attempts to downplay the prejudice to Plaintiffs by suggesting that, had this error not occurred, it would have produced these documents on the last day of fact discovery (like it did with thousands of other documents), Meta fails to say *when* it collected these documents, or really anything about them. It also fails to acknowledge that even if these documents were responsive only to Plaintiffs' last set of requests for production in early October, Meta began producing documents in response to those requests in early November, before many of the depositions of Meta witnesses took place. The prejudice is obvious and material.



February 8, 2025
Page 4

- **Meta's counsel claimed it takes two weeks to produce documents from a single custodian, and only if Meta prioritizes that production over all its other cases.**

    - Sept. 25, 2024 Hr'g Tr. at 17:10-15 (Meta counsel): "I understand from the team that the—and from the client—that the minimum amount of time, if Meta were to prioritize the document production in this case above all other matters, and to put all available resources to it, would be a minimum of two weeks to produce documents for even one custodian."

    - Sept. 30, 2024 Affidavit (Meta counsel), Dkt. 190-8: "Once that [collection of custodial documents and uploading by the vendor] happens, Meta's attorneys must apply search terms to the custodial files followed by a substantive review for responsiveness, and a second level review for privilege. Once all of that is completed, in most cases, at least an additional 48 hours are required to perform a quality control check and process any responsive, non-privileged documents for production; and at least an additional seven to ten days is necessary to complete a privilege log, depending on the volume of privileged materials redacted or withheld. It previously took Meta more than eight weeks to collect, review, and produce documents for the 10 custodians it identified [referring to the "substantial completion" of 17,000 custodial and non-custodial documents], and this did not include privilege logging."

    - Oct. 1, 2024 Joint Letter Brief, Dkt. 190 (Meta): "In this case, given the involvement of attorneys on novel issues of privacy, regulation, IP, and a myriad of other legal issues [*see* crime-fraud briefing], there was and is a high volume of privileged communication – a review process that itself took hundreds of hours and cannot be solved by merely adding more attorneys, which would increase the risk of mistakes."

- **Meta successfully opposed Plaintiffs' requests for additional discovery despite the paucity of Meta's productions, calling Plaintiffs' assertions "unsubstantiated speculation."**

    - Nov. 1, 2024 Opposition to Motion to Modify Case Schedule, Dkt. 250 at 2: "Meta has done nothing wrong and has complied with all deadlines. It has been working around the clock to reach reasonable compromises to avoid unnecessary motion practice, coordinate and prepare for dozens of depositions around the world, and review tens of thousands of documents from new custodians and in response to new document requests. In contrast, Plaintiffs missed a Court-ordered deadline and now seek, baselessly, to blame Meta."

    - Nov. 8, 2024 Joint Letter Brief, Dkt. 267 at 5: "Plaintiffs premise their demand for a massive expansion of discovery on the unsubstantiated speculation that Meta's document production is not 'big' enough, assuming—incorrectly—that there must be more documents addressing the narrow set of issues at play in this case.



February 8, 2025
Page 5

> Tellingly, Plaintiffs do not identify a single RFP with a deficient response or any category of documents allegedly missing in Meta's production."

- o Jan. 20, 2025 Meta Position re Case Schedule, Dkt. 405 at 9: "Despite these representations, Plaintiffs now seek nearly 70 more hours of deposition testimony and voluminous written discovery (much of which does not even relate to their new claims), as well as a new expert report they said they did not need. . . . This was a classic bait and switch, designed to prejudice Meta and inevitably derail this Court's long-planned MSJ schedule."

- o Jan. 30, 2025 Response to Rule 72 Motion, Dkt. 412 at 1: "As an initial matter, and contrary to Plaintiffs' repeated false allegations, there was no eleventh-hour 'document dump' by Meta. December 13, 2024 was the close of fact discovery, and Meta diligently completed its production by that date."

- o Jan. 30, 2025 Response to Rule 72 Motion, Dkt. 412 at 4: "In short, the parties proceeded as Magistrate Judge Hixson directed, with both sides taking depositions before document productions were complete. Meta diligently produced documents on a rolling basis throughout the expedited discovery period. Plaintiffs chose when they took depositions and when they served discovery requests."

In short, Meta falsely and repeatedly represented to Plaintiffs and to the Court (both Judge Hixson and this Court) that it would take many weeks to perform the discovery Plaintiffs sought, and accused *Plaintiffs* of crying wolf, only to reveal yesterday that the wolf was Meta all along. Meta's tactics and apparently false representations allowed it to successfully oppose significant discovery by asserting burden that may not have existed, and by trying to weaponize Plaintiffs' efforts to remedy gaps by effectively accusing Plaintiffs of delay when in fact Meta was holding back discovery.

This Court already remarked that "Meta and its counsel are starting to travel down a familiar road" in this case, Dkt. 373 at 2, referring to Meta's discovery violations in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 904 (N.D. Cal. 2023) ("All the while, Facebook and [its outside counsel] had the audacity to accuse the plaintiffs' lawyers of delaying the case, and to assert that the plaintiffs' reasonable efforts to obtain obviously relevant discovery were frivolous. It's almost as if Facebook and [its counsel] spent the better part of three years trying to gaslight their opponents, not to mention the Court."). While Plaintiffs do not lightly invoke the seriousness of Meta's discovery breaches, it's now impossible to miss the pattern in its improper tactics.

Further, Plaintiffs note that despite repeatedly being told by Meta that their additional discovery requests are too late and too prejudicial, Meta is now unilaterally reopening defensive fact discovery and apparently has the resources to review and produce a massive corpus of documents in just one week. If Meta can do this, it could easily have managed the additional, highly relevant discovery Plaintiffs sought in the wake of the Court granting their Motion for Leave to File a Third Amended Consolidated Complaint. *See* Dkt. 405 at 7. This includes answering Plaintiffs' torrenting, seeding, and Llama 4-focused discovery requests that Plaintiffs sent Meta



February 8, 2025
Page 6

weeks ago before the Court adopted Meta's proposed amended case schedule. This discovery is needed—while Meta continued to argue late into fact discovery (and well after the deadline to serve additional discovery requests) that "[t]here is nothing about Meta's efforts with respect to Llama 4 that make any fact in dispute more or less likely," Dkt. 267 at 12, it later turned out that Meta trained that very model by torrenting massive quantities of copyrighted works. Dkt. 417-11 (April 2024 Meta WorkChat showing a minimum of *81.7 TB* torrented from Anna's Archive for Llama 4).

      In summary: Plaintiffs want to move this case forward expeditiously. But Meta's representation that dumping a supplemental production of up to 18,000 documents onto Plaintiffs—almost two months after fact discovery closed, near the end of expert discovery, and one month before Plaintiffs' summary judgment deadline—will only "minimally disrupt[]" the progress of this case defies common sense. Even if Meta meets its February 14 production deadline despite its prior representations, expert depositions already will have started—not to mention that all expert reports (opening and rebuttal) will have been served. This would create a potential mess of supplemental expert reports and motions to reopen depositions, much of which would need to occur during or after the current MSJ briefing period. A status conference is needed to sort out this mess and to determine what remedies are needed to cure this significant prejudice and keep this case on track.

      */s/ Maxwell V. Pritt*
      Maxwell V. Pritt
      Boies Schiller Flexner LLP
      *Interim Lead Counsel for Plaintiffs*