# EXHIBIT B

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 2 of 9

12/5/2024         Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                     Highly Confidential - Subject to Protective Order

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

_____

RICHARD KADREY, et al.,        )
                               )
          Individual and       )
          Representative       )
          Plaintiffs,          )
                               )
v.                             )   Case No. 3:23-cv-03417-VC
                               )
META PLATFORMS, INC.,           )
                               )
          Defendant.           )
_____)

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **
Videotaped Deposition of meta Platforms, Inc.
by and through its corporate designee
SY CHOUDHURY
San Francisco, California
Thursday, December 5, 2024

Reported Stenographically by
Michael P. Hensley, RDR, CSR No. 14114

_____

DIGITAL EVIDENCE GROUP
1730 M. Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 3 of 9

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                        Highly Confidential - Subject to Protective Order

Page 18

1          THE WITNESS:  Yeah.  So in early April
2   there was a pause on licensing certain categories of
3   data that included the text data -- some of the text
4   data categories.
5   BY ATTORNEY PRITT:
6       Q.   And what text categories did that include?
7       A.   That included fiction books, nonfiction
8   books, and coding.
9       Q.   Any other categories?
10      A.   No.  Those are the three that we decided
11  to pause on.
12      Q.   And what are the data categories that
13  you -- that Meta decided not to pause on in early
14  April 2023?
15      A.   While we did not have an explicit
16  discussion or decision to not pause, the data
17  categories that -- the other data categories that we
18  were continuing to explore included images, videos,
19  and 3D objects.
20      Q.   And why did Meta decide to pause its
21  licensing process for acquiring fiction books,
22  nonfiction books, and coding data for its LLMs in

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 4 of 9

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                        Highly Confidential - Subject to Protective Order

Page 19

1   early April 2023?

2               ATTORNEY HARTNETT:  And I would just

3   object to the extent that you need to respond with

4   attorney-client privilege, please exclude that from

5   your answer.  If you can respond without reference

6   to that, you can answer.

7               THE WITNESS:  There was a meeting I had

8   with my boss, Marc Shedroff, and our attorney,

9   Natascha Parks, and the content of the meeting is

10  under attorney-client privilege.

11              All I can say is that we considered and

12  discussed a variety of factors and agreed that the

13  decision would be to pause on those three

14  categories.

15  BY ATTORNEY PRITT:

16      Q.   Now, were there any business reasons for

17  deciding to pause the licensing process for

18  acquiring fiction books, nonfiction books, and

19  coding data for use in Meta's LLMs, at that time?

20              ATTORNEY HARTNETT:  And I would just have

21  the same objection and instruction.  You can answer

22  if there's a nonprivileged information you can

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 5 of 9

12/5/2024        Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                 Highly Confidential - Subject to Protective Order

Page 20

1   provide.

2            THE WITNESS:  There's only privileged

3   information in that meeting, and so I'm not able to

4   talk further about that.

5   BY ATTORNEY PRITT:

6       Q.   Okay.  So to clarify, it's Meta's

7   testimony that there were no business reasons for

8   deciding to pause the licensing process for

9   acquiring fiction books, nonfiction books, and

10  coding data for use in Meta's LLMs in early

11  April 2023; is that correct?

12           ATTORNEY HARTNETT:  Objection to the form.

13           Misstates his testimony.

14           I -- if you can answer as to whether there

15  are business reasons that don't entail conveying

16  legal advice, you may answer.  If not, I instruct

17  you not to answer.

18           THE WITNESS:  The -- although this is not

19  comprehensive, the coding and textbook categories do

20  not -- do not apply to the one, I'll say, business

21  reason.

22           I'd like to point out that the -- in the

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 6 of 9

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                        Highly Confidential - Subject to Protective Order

Page 26

1    of licensing that data for use in its LLMs?
2         A.   That's correct.
3         Q.   And when we're referring to the April 2023
4    data point, did the engineering and product teams
5    ask the business development team to stop its
6    licensing efforts for fiction and nonfiction books
7    and code for use in Meta's LLMs?
8         A.   No.  That decision was -- had engineering
9    and products's input, but that was part of the
10   meeting that I'm telling -- that I mentioned that
11   was attorney-client privileged.
12        Q.   And what was engineering and products's
13   input?
14        A.   I was not aware of what -- they did not
15   provide that input to me.  They provided that input
16   directly to Marc Shedroff, my boss.
17        Q.   Did he tell you what that input was?
18        A.   That is under attorney-client privilege as
19   we had that discussion there.
20        Q.   Is Marc Shedroff a lawyer?
21        A.   No.
22        Q.   Okay.  So I'm going to ask again.  What

Case 3:23-cv-03417-VC  Document 436-2  Filed 02/14/25  Page 7 of 9

12/5/2024         Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
Highly Confidential - Subject to Protective Order

Page 27

1   did Marc Shedroff tell you was engineering and

2   product -- the engineering and product teams's

3   input?

4         ATTORNEY HARTNETT:  And I would just ask

5   the witness, to the extent that Mr. Shedroff learned

6   that in a meeting with the engineering team and

7   counsel, and the extent that there was

8   attorney-client privilege involved in how

9   Mr. Shedroff conveyed that to you, you can exclude

10  that from your answer.

11        If you know information that Mr. Shedroff

12  had from the engineering team that is not covered by

13  attorney-client privilege, you can answer with that.

14        THE WITNESS:  My understanding was that

15  Mr. Shedroff was in a meeting with -- with attorneys

16  and asking for their advice and also with -- with

17  attorney-client privilege.

18  BY ATTORNEY PRITT:

19     Q.   So is your testimony that the input that

20  Mr. Shedroff received from the engineering and

21  product teams related to the April 2023 decision to

22  pause licensing, there was -- that input was legal

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 8 of 9

12/5/2024          Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                   Highly Confidential - Subject to Protective Order

Page 28

1   advice?

2           ATTORNEY HARTNETT:  Objection to the form.

3           I think it misstates his testimony.

4           To the extent he's in a -- he's conveying

5   information that he learned from his boss that was

6   part of a privileged conversation between his boss,

7   counsel, and the engineers.

8           Our position is that he has to figure out

9   whether or not he is conveying information that

10  Mr. Shedroff learned from the engineers separate

11  from the legal advice that was being given in that

12  meeting.

13          So I'm asking him to try and separate that

14  and convey anything that was not infused with legal

15  advice.  And you can answer.

16          THE WITNESS:  The meetings that Mark had

17  was -- with engineers was infused with legal advice.

18  And when we -- Mark and myself and Natasha were

19  discussing all the pros and cons, we -- and all the

20  facets before we made the decision that was also

21  with discussing both the, as we talked about, the

22  business and the legal aspects of a decision before

Case 3:23-cv-03417-VC   Document 436-2   Filed 02/14/25   Page 9 of 9

12/5/2024           Richard Kadrey, et al. v. Meta Platforms, Inc.   Sy Choudhury 30(b)(6)
                    Highly Confidential - Subject to Protective Order

Page 29

1    we decided to pause.

2    BY ATTORNEY PRITT:

3        Q.   Okay.  So I just want to get clear on the

4    record.  Your understanding is that the engineering

5    and product teams input into the decision whether or

6    not to pause licensing efforts in April 2023 that

7    we've discussed, all of that involved legal advice?

8             ATTORNEY HARTNETT:  Objection to the form.

9             You should testify only based on what you

10   know, but you should testify on what you know.

11   BY ATTORNEY PRITT:

12       Q.   Correct.  I asked for your understanding.

13       A.   Sorry?

14       Q.   I asked for your understanding.

15       A.   Yeah.  My understanding is that when Marc

16   had the discussion with engineering and product,

17   that also included legal and legal advice, yes.

18       Q.   Okay.  But you're also testifying on

19   behalf of Meta at this time; so it Meta's position

20   that the input provided by the product and

21   engineering teams into the decision to pause

22   licensing efforts in April 2023 is completely