December 20, 2024

***E-Filed***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 23-cv-03417-VC (TSH)

Dear Judge Hixson:

      The parties jointly submit this letter brief concerning Plaintiffs' request to reopen depositions of certain Meta fact witnesses. The parties met and conferred on December 17, 2024, but were unable to reach a resolution.

I.    PLAINTIFFS' STATEMENT

Just two hours before the close of fact discovery, around 10 P.M. on Friday, December 13, Meta produced **2,404 documents** totaling almost **21 GB of data**. Although Plaintiffs are still analyzing this massive, eleventh hour document dump, the subset Plaintiffs *have* reviewed shows that Meta held back key documents until the very end of discovery. The production contains internal communications showing that Meta knew LibGen and other shadow datasets contain pirated works but decided to illegally download and use them anyway—a decision that was escalated to Meta's CEO, Mark Zuckerberg. *See, e.g.*, Meta_Kadrey_000211699. This is astonishing because, on December 17, Mr. Zuckerberg testified under oath that he knew nothing about Meta's use of LibGen. Ex. C.

As Plaintiffs scrambled to process and begin reviewing Meta's new production, a disturbing fact appeared in the document metadata. According to the "File Paths" of these newly produced documents, it appears hundreds were collected by Meta as early as *June* 2024, and hundreds more in *September* 2024. Yet Meta withheld them until the last hours of fact discovery. In the six months it apparently took Meta to advance from document collection to production, Plaintiffs deposed nearly 20 witnesses—all the while, Meta knew these critical documents existed and withheld them. This gamesmanship was especially pernicious given Meta witnesses' massive failures of recollection—repeated testimony professing ignorance of LibGen's contents, even though these new communications show those same witnesses directly acknowledged that LibGen contains pirated works. While Plaintiffs are mindful that fact discovery recently concluded, Meta's production of this massive pile of "hot" documents on the last night of fact discovery creates extraordinary prejudice that warrants at least some additional examination of certain key witnesses.

**A.    Meta's 12/13 Production Warrants Further Depositions of Key Witnesses.**

Rule 26(b)(2)(C) sets forth the factors for reopening depositions: (i) whether the discovery sought is unreasonably cumulative or duplicative; (ii) whether the party seeking the discovery has had ample opportunity to obtain the discovery in the action; and (iii) whether the discovery is relevant and nonprivileged. The quintessential cause for a further deposition is "when new information comes to light that creates the need for further questioning." *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 436 (D. Nev. 2023); *see also Vincent v. Mortman*, 2006 WL 726680, at *1 (D. Conn. Mar. 17, 2006) (explaining "courts frequently permit a deposition to be reopened where . . . new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition") (cleaned up); *Kannan v. Apple Inc.*, 2019 WL 4668112, at *3 (N.D. Cal. Sept. 25, 2019) (reopening deposition where "Apple has made a showing that some documents it sought in discovery in advance of [witness's] deposition were not timely produced" and the witness "may have withheld an unknown quantity of documents on grounds of privilege").

*Meta's 12/13 production includes hundreds of key documents that Meta collected in June and September*. These highly probative documents implicate at least the following fact witnesses, who were deposed *after* the documents were collected but before they were produced: Melanie Kambadur; Sergey Edunov; Joelle Pineau; Eleonora Presani; and Nikolay Bashlykov. The newly-produced documents reflect statements made by these witnesses or, at minimum, were housed in their custodial files. Plaintiffs provide examples for each witness (there are many more):[1]

---

[1] Plaintiffs do not attach the cited documents due to the Court's exhibit type limitations for letter briefs. Plaintiffs can submit those documents upon request; their contents are probative of the relief requested.

- Melanie Kambadur testified she didn't know whether LibGen contains copyrighted books. Ex. A. But Ms. Kambadur wrote in a WorkChat that using LibGen "could be quite controversial." Meta_Kadrey_00211273. She also is the custodian of a Meta document that describes LibGen as "a dataset we know to be pirated" and states Mark Zuckerberg approved LibGen for Llama training. Meta_Kadrey_00211699 at -699, -702. Meta collected both documents in June 2024 but did not produce them until December 13.

- Sergey Edunov wrote in a WorkChat, "the problem is that people don't realize that if we license one single book, we won't be able to lean into fair use strategy. So we will have to drop all of the libgen and books datasets." Meta_Kadrey_00209134. Meta collected this document in June 2024 but did not produce it until December 13.

- Joelle Pineau testified she didn't "know the specifics" about LibGen and didn't remember employees expressing concern about using pirated datasets. Ex. B. But Ms. Pineau was the addressed recipient of the internal memo that described LibGen as "a dataset we know to be pirated." Meta_Kadrey_00211699. She also is custodian of a WorkChat where Eleonora Presani wrote, "I feel that using pirated material should be beyond our ethical threshold." Meta_Kadrey_00218170 at -171. Meta collected these documents in June 2024 but did not produce them until December 13.

- Eleonora Presani, for her part, sent the above-referenced WorkChat, along with another one where she wrote that other AI teams were "using libgen to train their model, which is completely illegal." Meta_Kadrey_00218893. Meta collected that document in September 2024 but did not produce it until December 13.

- Nikolay Bashlykov wrote in a WorkChat that he was "not sure we can use meta's IPs to load through torrents pirate content," and that "torrenting [LibGen] from a corporate laptop doesn't feel right," but then did it anyway. Meta_Kadrey_00204223. Meta collected that document in September 2024 but did not produce it until December 13. Meta also continues to argue to this Court that the evidence it torrented is merely "alleged." Dkt. No. 329 at 2.

Finally, while Mr. Zuckerberg was deposed four days after Meta's document production, there was not enough time to review and vet the entire 2,404-document production in preparation for his deposition in Kauai. At his deposition, Mr. Zuckerberg claimed to have no knowledge of LibGen or involvement in its use. Ex. C. Plaintiffs now know, however, that a newly produced document directly states that the decision to use LibGen as training data occurred immediately "after a prior escalation to MZ." Meta_Kadrey_000211699. That document was collected in *June*.

In sum, Meta's 12/13 production contains some of Meta's most damning documents: admissions from employees that LibGen is a pirated source of copyrighted works, instructions to use it anyway, admissions that Meta torrented pirated datasets and that it knew it was illegal to do so, and that Mark Zuckerberg endorsed all of it. Meta sandbagged by sitting on these documents until the final day of fact discovery. It is hard to conceive of better "cause" to reopen depositions.

### B.  Requested Relief

Plaintiffs request an order compelling the following witnesses to each sit for two additional hours of 30(b)(1) testimony: Melanie Kambadur; Sergey Edunov; Joelle Pineau; Eleonora Presani; Nikolay Bashlykov. Plaintiffs also request one additional hour with Mark Zuckerberg. Plaintiffs are mindful that discovery has closed, *see* Dkt. No. 209, and will file an administrative motion before Judge Chhabria requesting leave to conduct any further depositions ordered by this Court.

## II.    META'S STATEMENT

This brief continues an ongoing pattern of baseless finger-pointing by Plaintiffs to justify discovery beyond that authorized by the Court. To be clear, there was no eleventh-hour document "dump" by Meta. Friday was the close of fact discovery, and Meta—unsurprisingly—completed its production on that date. Plaintiffs did the same, producing many of their documents at or near the end of the fact discovery period, and *after* their depositions.[2] All along, Plaintiffs were fully on notice that Meta was diligently continuing its collection and production of documents from new Court-ordered custodians (Dkt. 212), in response to Plaintiffs' new RFPs and numerous requests in meet and confers, and in response to recent Court Orders requiring supplementation and/or additional document collections (Dkt. 288 (Nov. 25, 2024); Dkt. 315 (Dec. 6, 2024)). This is not "sandbagging"; Meta was complying with discovery obligations and court orders. Any request for additional deposition time based on recent document productions is improper and unjustified.

Plaintiffs incorrectly argue that Meta held back certain documents that should have been produced earlier, and thus would have been available for the six depositions they now seek to reopen. This is unfounded and ignores the timing of Plaintiffs' own requests and the Court's orders. Plaintiffs' *first* wave of requests, which were served by April, were relatively narrow. Meta conducted a reasonable search, collected from potentially relevant custodians, and then reviewed and responded to *those specific requests* in advance of the July substantial document completion deadline and the original September 30 fact discovery cut-off. Plaintiffs then sought to extend discovery and Meta responded to a *second* wave of broader RFPs over the last few months: **September 30** (Meta Resp. to Pltfs' RFPs 76-78, 4th Set); **November 8** (Meta Resp. to Pltfs' RFPs 79-130, 5th Set); **November 18** (Meta Resp. to Pltfs' RFPs 131-136, 6th set). On October 4, the Court also granted Plaintiffs' request to add five (5) ESI custodians and ordered Meta to produce documents from those custodians. (Dkt. 212). As Meta explained, this process took over 8 weeks to complete for its original custodians (Dkt. 190 at 8; Dkt. 190-8 ¶¶ 2-4). Plaintiffs never challenged that production timetable. Meta's production over the last several weeks, culminating in its December 13 production, reflects those custodial searches and its updated productions in response to Plaintiffs' 4th through 6th set of RFPs.

To respond to these requests, Meta, *inter alia,* re-reviewed the previously collected documents and conducted additional searches (including for the new custodians). Thus, to the extent the document metadata has a June capture date, this was because the document was collected, but not responsive to Plaintiffs' earlier narrower requests. And to the extent the document has a September capture date but was not produced until more recently, this is simply due to the time it takes to review and produce documents, which Meta made clear to Plaintiffs. (Dkt. 190-8.) Meta did not deliberately hold back relevant materials but instead reviewed and produced documents based on Plaintiffs'

---

[2] Indeed, contrary to the Court's scheduling order, many Plaintiffs produced the *majority* of their document productions after their depositions. See Ex. F (table illustrating Plaintiffs productions pre- and post-deposition). And on several occasions, Plaintiffs produced **thousands** of pages of documents the **day before** their depositions, yet Meta and its smaller team of outside lawyers expedited review and went forward with their depositions. As just one example, Mr. Farnsworth produced over 1,400 of his 1,449 documents a few business days before his deposition, yet Meta did the work and took his deposition as scheduled. No depositions should be reopened, but if the Court entertains Plaintiffs' unjustified requests to reopen, then by the same logic all 13 Plaintiffs' depositions would need to be reopened too.

newly served requests. In addition, over the past two months the parties engaged in various meet and confers about existing RFP responses and the Court issued several discovery orders. *See, e.g.* Dkt. 288. As a result, previously preserved and collected documents were re-reviewed for responsiveness as discovery parameters changed. Meta then diligently worked to produce these newly responsive documents in rolling productions before the close of discovery.[3]

In short, there is no basis for Plaintiffs to complain that they did not have documents in time for depositions, when they delayed serving RFPs calling for those documents and took those depositions, as the Court ordered, with full knowledge that document productions were ongoing. *See* Dkt. 231 ("The Court therefore needs to ensure that Plaintiffs expeditiously proceed with depositions with the documents they already have and don't wait until they get more documents.").

**There is no justification for additional time with Ms. Kambadur, Dr. Presani, Mr. Bashlykov, and Mr. Edunov**. Plaintiffs' demand for more deposition time with the following witnesses rings particularly hollow given the timing of the depositions and Plaintiffs' second wave of RFPs: Kambadur (September 17); Presani (September 26); Edunov (November 6); Pineau (November 6); and Bashlykov (December 5-6). At Plaintiffs' election, the Kambadur and Presani depositions occurred ***before*** Plaintiffs even served the second wave of RFPs. Plaintiffs also chose to take Presani's deposition ***before*** Presani was even added as a custodian (and asked Presani questions about the same language they now try to use to justify a new deposition). The remaining three depositions occurred during the windows specifically requested by Plaintiffs and in the midst of Plaintiffs' second wave of RFPs (in some cases before Meta's responses were even due).[4]

If Plaintiffs wanted to use certain documents with a witness, they should have either asked for the documents sooner or asked to depose the witnesses later in the discovery process. Meta diligently searched for and produced documents as requests were made, and it could not accelerate the timetable required for ESI review and production. In all events, Plaintiffs have provided no valid basis for deposition time with these 5 witnesses, particularly when they already have had a full 7 hours with 25 fact witnesses and over 16 hours of 30(b)(6) testimony, and were able to explore the very subjects, including licensing and LibGen, they now want cumulative testimony on.

**There is no justification for additional time with Mr. Zuckerberg.** Plaintiffs' request for more time with Mr. Zuckerberg—which Plaintiffs were determined to seek since even before his deposition—is a blatant effort to harass him and violate the parties' agreement. To avoid motion practice, the parties agreed to certain conditions including 4.5 hours on the record. Plaintiffs used the ***entire*** 4.5 hours and completed his deposition on December 17. They strategically chose not to use certain documents at his deposition. Plaintiffs are not entitled to more time with him.

Notably, three days before the deposition (December 15), Plaintiffs complained about the documents they received from Mr. Zuckerberg's custodial file on December 13. They claimed that "some of the documents" "***appear to be the most relevant produced in discovery*** thus far," and threatened to file a motion if Meta did not agree to postpone or extend the deposition. Ex. D (emphasis added). Meta investigated and responded to Plaintiffs' baseless accusations, explaining

---

[3] For example, Meta produced rolling productions of documents on October 2 and 7; November 1, 4, 8, 11, 12, 15, 18, 19, 25, and 29; and December 2, 4, 11, 12, and 13.

[4] Ms. Pineau and Mr. Bashlykov were deposed in Montreal and London, respectively, where they live and work. Setting aside that the request is unjustified, it would be logistically prohibitive to reopen these internationally based witness depositions given the holidays and expert deadlines.

that of the 1,436 total custodial documents for Mr. Zuckerberg produced in discovery, only 144 documents were produced on December 13. Meta objected to any further deposition and reiterated that the production "can and should be addressed as Plaintiffs' counsel sees fit at Mr. Zuckerberg's deposition tomorrow." *Id.*

Then, the day before Mr. Zuckerberg's deposition, Plaintiffs made another unspecified threat that the production "may also prompt a request for additional deposition time of Mr. Zuckerberg." Ex. E. And on the parties' meet and confer on December 17—just minutes after Mr. Zuckerberg's deposition completed, Plaintiffs told Meta they would be requesting an additional hour with Mr. Zuckerberg. Plaintiffs then sent this motion, and its detailed discussion (and mischaracterization) of Meta_Kadrey_000211699, **less than 24 hours** after Mr. Zuckerberg's deposition.

The record belies any notion that Plaintiffs found the document they now claim justifies more time with Mr. Zuckerberg only *after* the deposition. To the contrary, Plaintiffs intended to ask for more time regardless and did not take diligent steps to use the document they cite (and/or other documents about which they complain). Moreover, the document does not state what Plaintiffs allege; it was not drafted or sent to Mr. Zuckerberg; and it does not support the nefarious conclusions Plaintiffs seek to draw from it. Plaintiffs used their time with Mr. Zuckerberg as they chose—at times, asking the same questions over and over, and questioning him throughout on *others'* documents, not documents that were sent to or received by him. No additional time is warranted, let alone based on a single document that Plaintiffs had and chose not to use.

### III.   PLAINTIFFS' REPLY

Meta attempts to explain why it waited six months to produce some of the most relevant documents) in the entire case: apparently, they simply "weren't responsive" to Plaintiffs' initial RFPs. Yet if Meta withheld *these* documents because they "weren't responsive," that is the worst possible explanation. It means a Meta attorney reviewed these documents long ago (which plainly hit on Meta's original search terms, as shown in Dkt. No. 321-2), but conveniently decided that all the outright admissions about how "LibGen is a pirated dataset" were not responsive to *any* of Plaintiffs' *50* original RFPs, including, but not limited to, RFPs about "The Training Data" for Llamas 1-3 and RFPs about any efforts to license training data from copyright holders.

Regardless of whether Meta intentionally withheld these documents, Plaintiffs' request for additional deposition time with the listed witnesses is still warranted. These documents do not merely add color to the deposition testimony. Instead, they reflect repeated instances where answers in deposition were directly contradicted by documents. That is why Plaintiffs request further deposition time. And that includes Mr. Zuckerberg, who should be questioned, as Meta's CEO, about *his personal decision* to approve the torrenting of a pirated dataset using company computers. As it stands, because no other document (and, conspicuously, not a single witness) speaks to Mr. Zuckerberg's personal approval to use this hacked data set, it is especially important that he be questioned about that document. The document directly implicates him, but was not in his custodial files. Plaintiffs did review the new Zuckerberg custodial documents in time for his deposition, but this document was not one of them—it was one of the 2,300 other new documents.

As to any of Plaintiffs' document productions that occurred after the corresponding plaintiffs were deposed, Meta misses the point. Plaintiffs acknowledge the inevitability that some documents would be produced after their depositions. The problem, again, is that Meta's late-produced documents are the most probative documents in the entire case; were collected months before the depositions; and directly contradict the witnesses' sworn testimony.

By:   /s/ *Bobby Ghajar*

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email: bghajar@cooley.com
       cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
Email: mweinstein@cooley.com
       lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile:  (415) 693-2222
Email: khartnett@cooley.com
       jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304

By:   /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com
jischiller@bsfllp.com

*Interim Lead Counsel for Plaintiffs*

6

Telephone: (650) 815-4121
Facsimile:  (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 20, 2024                              BOIES SCHILLER FLEXNER LLP

                                                      */s/ Maxwell V. Pritt*
                                                      Maxwell V. Pritt
                                                      Reed Forbush
                                                      Jay Schuffenhauer

                                                      *Attorneys for Plaintiffs*