December 20, 2024

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  *Kadrey et al. v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC-TSH

Dear Judge Hixson:

      The parties jointly submit this letter brief on Plaintiffs' crime-fraud challenge to Meta's claims of attorney-client privilege in redacted and withheld documents identified in Meta's Third Privilege Log (Email), Third Privilege Log (Non-Email), and Fourth Privilege Log served on December 13 and 16.  The parties met and conferred on December 17 but were unable to reach a resolution.

## I. PLAINTIFFS' POSITION

Two hours before the close of fact discovery on December 13, 2024, Meta produced its third set of privilege logs. Meta also produced a fourth privilege log on December 16. These logs reveal that Meta has redacted or withheld almost 2,000 documents since early October. Plaintiffs separately challenge whether many of these documents are privileged at all, but even assuming they are, many are communications with counsel in furtherance of copyright infringement, DMCA violations, and CDAFA violations and therefore must be produced under the crime-fraud doctrine.

### A. The Crime-Fraud Doctrine.

Attorney-client communications lose protection "when the client consults the attorney to further the commission of a crime or fraud." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). A party can invoke the crime-fraud exception where it shows (1) "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme" and (2) communications are "in furtherance of" and "sufficiently related to" the illegality. *Id.* at 380–81. Courts in this Circuit routinely apply the exception even in cases where no crime or fraud is directly alleged in the plaintiffs' claims. *See, e.g.*, *In re Animation Workers Antitrust Litig.*, 2016 WL 8198907, at *3 (N.D. Cal. Mar. 23, 2016) (applying the crime-fraud exception to a civil antitrust claim). The test for crime-fraud asks only if there is "reasonable cause to believe that the attorney's services were utilized . . . in furtherance of the ongoing unlawful scheme." *In re Grand Jury*, 87 F.3d at 381 (quotations omitted). And the standard for *in camera* review is even lower. It requires only "a *minimal showing* that the crime-fraud exception *could* apply." *E.g.*, *United States v. Christensen*, 828 F.3d 763, 800 (9th Cir. 2015) (emphasis added).

Further, application of crime-fraud doesn't require that the in-house counsel involved be aware that their "advice may further an illegal purpose." *United States v. Laurins*, 857 F.2d 529, 540 (9th Cir. 1988). Rather, the client's intent to violate the law and reliance on counsel in furtherance of doing so is sufficient to overcome privilege. *See In re Grand Jury*, 87 F.3d at 381.[1]

### B. Meta's In-House Counsel Engaged In and Advised Meta On Its Illegal Activity.

Meta torrented (downloaded and distributed) copyrighted works in pirated datasets (violating CDAFA), stripped works of CMI to conceal their copyrighted status (violating the DMCA), and used them to train Llama (violating the Copyright Act). Meta engaged its in-house counsel to approve, conceal, and justify this illegal scheme. An NYT article produced earlier in discovery, entitled "How Tech Giants Cut Corners to Harvest Data for A.I.," describes significant in-house counsel involvement in Meta's copyright infringement scheme. Dkt. 262-8. As the Times explained, "some of the company's business development leaders, engineers and lawyers met nearly daily [and] talked about how they had summarized books, essays and other works from the internet without permission and discussed sucking up more, even if that meant facing lawsuits." *Id.* at 8. Recordings of internal Meta meetings made clear that in-house counsel was not only aware that Meta was using copyrighted data, but that they were involved in planning how to do so.

Meta attempts to withhold infected communications under the guise of privilege, including:

---

[1] Meta's fair use defense is not relevant to the crime-fraud inquiry. Its argument that this was fair use after the fact cannot negate a *prima facie* showing of crime-fraud. If the mere fact that Meta raised a defense to Plaintiffs' claim was sufficient to defeat the crime-fraud exception, then the exception would be overwhelmed. Any abuse of the attorney-client relationship could be concealed simply by raising a defense.

1

- **Meta_Kadrey_00211699**. This document contains admissions that Meta knew that LibGen was pirated (i.e., illegal) and expresses concern over what will happen if regulators learn Meta is training Llama on pirated data. The "Legal Risk" section is entirely redacted.

- **Meta_Kadrey_00218543**. This document appears to be notes from a January 2023 meeting that Mark Zuckerberg attended. It is heavily redacted, including a large section titled "Legal Escalations." Immediately after that section the document states "[Zuckerberg] wants to move this stuff forward," and "we need to find a way to unblock all this."

- **Meta_Kadrey_00204235.** Jelmer Van Der Linde states "I'm a bit confused about what happened with libgen." The next sentence is redacted. Two messages later, he says Melanie Kambadur suggested "we should use the same approach as done with Libgen. However, I can't say I'm particularly comfortable with it from a legal or ethical point of view right now[.]" In **Meta_Kadrey_211852,** Van Der Linde admits, between redacted messages, that Bashlykov said that he torrented the scimag data and downloaded the rest of LibGen.

- **Meta_Kadrey_00209314.** In this email chain with the subject line "FW: [A/C Priv] LibGen Approval for OneLLM," a Meta employee states that she wants to "flag an issue that's going to be significantly gnarly." Then the next seven pages are entirely redacted.

- **Meta_Kadrey_00218170.** Joelle Pineau responds to Eleonora Presani's statement that "using pirated material should be beyond our ethical threshold." Ms. Pineau then asks, "You think it's problematic to use even for this phase?" followed by a redacted sentence.

- **Meta_Kadrey_00204223**. In this chain, Nikolay Bashlykov expresses concern about using Meta IP addresses "to load through torrents pirate content." He says "torrenting from a corporate laptop doesn't feel right 🏊." A response from David Esiobu is then redacted.

- **Meta_Kadrey_00204218**. This document details Meta's CMI removal process: "Nikolay Bashlykov finished processing libgen and removed —0.4- 1% of out-of-distribution documents. Filtered examples include copyright lines[.]" Other updates are then redacted.

- **Meta_Kadrey_00204235.** After one redacted message, Van Der Linde says "code seems to suggest you at least tried torrenting[.]"

- **Meta_Kadrey_00232034.** This conversation involving Zuckerberg contains significant redactions on the topic of data acquisition and expressly mentions the in-house legal team.

The documents show a clear pattern of attorney involvement in an illegal scheme to torrent and use pirated, copyrighted data. Moreover, while Plaintiffs cannot meaningfully assess the content of fully withheld documents, many of the file names and subject lines in Meta's new logs are equally incriminating. For example, four log entries literally have the file name "Zucchini Training... - **as far as I know this is all illegal** ..." Ex. A, Log Nos. 270, 654-56. When asked about the piracy these documents show Meta and its counsel engaged in, Zuckerberg testified that such activity raised "lots of red flags," and has a "negative connotation." Ex. B. Indeed.

### C. Request for *In Camera* Review.

Plaintiffs respectfully request that the Court conduct an *in camera* review of the sampling of documents in **Exhibit A** that Plaintiffs submit are subject to the crime-fraud exception, and then order Meta to (i) produce those documents without redaction and (ii) review its remaining logged documents for any others similarly withheld or redacted, and then produce them without redaction.

## II.    META'S POSITION

Plaintiffs' motion is based on the outrageous and baseless accusation that Meta employees' consultation with in-house counsel on complex and novel issues of copyright law is not privileged because it was intended to further a crime. Plaintiffs make this assertion notwithstanding that no court has yet adjudicated whether such conduct even amounts to *civil* copyright infringement, and despite Meta's fair use defense, which is the central issue to be decided in this case.[2] Indeed, Plaintiffs seek to short circuit a decision on the merits altogether, by having this Court decide, in the context of a discovery dispute, that Meta's conduct was *criminal*, which would be required in order to grant Plaintiffs' request and find that Meta somehow *knew* this when it sought legal advice on these matters.  No court has ever applied the crime-fraud exception in circumstances like these, and for good reason. The attorney client privilege is intended to foster open communication with lawyers on tough legal questions. That Meta did so here shows conscientiousness, not criminality. Plaintiffs' contrary arguments on rank conjecture do not entitle them to privileged communications or even *in camera* review.

To invoke the crime-fraud exception, Plaintiffs must first show that Meta was engaged in or planning a criminal scheme. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007). And even were they to meet that prong (which they do not), they "must [also] demonstrate that the attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing illegality.'" *Id*. In view of the "irreparable consequences of disclosure," *id.*, "hard cases should be resolved in favor of the privilege . . . " *See United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999).

**Plaintiffs have identified no crime or fraud.** As an initial matter, of Plaintiffs' four theories of alleged criminal conduct in their motion, three (DMCA, CDAFA, distribution) are the subject of ***proposed*** amendments to Plaintiffs' complaint. ECF 300-11. None of these theories presently exist in the case, and all fail for the reasons set forth in Meta's opposition. ECF 329.

Plaintiffs' remaining theory—that Meta "used [copyrighted works] to train Llama"—is not a theory of a crime or a fraud. Criminal copyright infringement requires proof both that infringement occurred and that it was willful. 17 U.S.C. § 506. Meta has raised a defense of fair use, which if successful would negate Plaintiffs' claims. But even if Meta's defense fails, a reasonable belief that copying is fair use defeats allegations of willfulness. *See Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1142 & n. 2 (N.D. Cal. 2005) (citing *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381(6th Cir. 1996) (holding that willfulness did not occur where defendants' belief that their copying constituted fair use was reasonable in light of the unsettled area of law)); *see also, VHT, Inc. v. Zillow Grp., Inc.,* 918 F.3d 723, 748 (9th Cir. 2019) ("[The] alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing."). *See also, Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957-58 (9th Cir. 2001)("[T]he term 'willful' refers to conduct that occurs 'with knowledge that the defendant's conduct constitutes copyright infringement.'"); *see also* 4 *Nimmer on Copyright* § 14.04[B][3], at 14-53 (Dec. 2000).

Nowhere have Plaintiffs alleged, nor could they, that Meta did not reasonably believe that

---

[2] Plaintiffs, citing no authority, assert that fair use "is not relevant to the crime-fraud inquiry." *Supra* note 1, at 1.  This is false, for the reasons discussed below.

its downloading and use of certain datasets for AI training is fair use–an issue that is being tested in multiple lawsuits across the U.S. Critically, to date *no* court or other authority has issued an opinion regarding the legality of the conduct that Plaintiffs brand as a crime or fraud: gathering data from the internet for training AI models, including through torrenting; removing copyright information (along with many other categories of repetitive information) from data prior to AI training to improve model performance; and/or training AI models on copyrighted data. To the contrary, this Court and the U.S. Copyright Office[3] have recognized that whether fair use applies to the conduct alleged in this case is a novel question. Plaintiffs certainly have not established such use was not fair. Indeed, even the New York Times article that Plaintiffs cite as supposed support for their crime-fraud allegation describes Meta's genuine belief that its use of copyrighted works is fair. Accordingly, Meta employees' efforts to work with counsel to navigate these issues can in no way be viewed as furthering any unlawful scheme.

Thus, this Court should reject Plaintiffs' effort to invoke the crime-fraud exception because there is no crime or fraud. *See United States v. Zolin*, 491 U.S. 554, 563 (1989) ("[T]he purpose of the crime-fraud exception… [is] to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime."); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) ("The communication condemned and unprotected by the attorney-client privilege is advice that is illicit because it gives direction for the commission of future fraud or crime. The advice must relate to future illicit conduct by the client; it is the *causa pro causa*, the advice that leads to the deed.").

**Meta's advice was not sought in furtherance of any crime.** Furthermore, the crime-fraud exception "applies only when there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) (citing *In re Grand Jury Proceedings,* 87 F.3d at 381). As explained, there was no crime or fraud, and the inquiry ends there. But even assuming the existence of a crime or a fraud—which there was not—there is zero evidence supporting the notion that Meta employees sought or received legal advice in furtherance of a crime or a fraud.

Put another way, Meta did not know and could not have known that the conduct alleged was a fraud or a crime where no court has ever held that such conduct amounts even to ***civil*** copyright infringement. Indeed, what Plaintiffs describe as a purported "criminal" scheme here is exactly what the Second Circuit found to constitute fair use in *Authors Guild v. Google, Inc*., 804 F.3d 202, 229 (2d Cir. 2015). Plaintiffs cite to no case justifying their position that Meta's fair use defense is not applicable. (ECF 262, at 9 n.9.) Here, a finding of fair use would wholly negate a finding of copyright infringement. 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . is not an infringement of copyright."). And fair use is the central issue in this case.

In cases like this, where there is an open question regarding the legality of the conduct at issue, Meta did what all clients should do: it sought guidance from its lawyers. Meta should not be punished for doing so, and this basic tenet that underlies the privilege afforded such discussions should be zealously protected. *See Haines*, 975 F.2d at 90 (citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2017 (1970) and *Chore-Time Equip., Inc v. Big*

---

[3] "Perlmutter told lawmakers fair use is 'the most controversial of all the areas that we're addressing" in a forthcoming report. Ivan Moreno, *Copyright Chief: Fair Use A Tough Issue In Upcoming AI Report*, LAW360 (Nov. 13, 2024), https://www.law360.com/articles/2258152/copyright-chief-fair-use-a-tough-issue-in-upcoming-ai-report.

*Dutchman, Inc.*, 255 F. Supp. 1020, 1021 (W.D. Mich. 1966) ("attorney-client privilege is so sacred… the courts must, within their limits, guard it jealously.")).

**Plaintiffs' Request for *In Camera* Review Should be Denied.** An *in camera* review of privileged documents "is an intrusion which must be justified." *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992). The challenging party must present a factual basis sufficient to support a reasonable, good faith belief that an *in camera* inspection may reveal evidence that the materials are not privileged. *Id.* at 1075 (discussing *Zolin*, 491 U.S. at 569-72). In particular, the law requires more than a "suspicion" that privileged communications were in furtherance of a crime. *In re Grand Jury Proc.*, 87 F.3d at 381. Yet, at most, that is all that Plaintiffs offer: comments that, facially, have no relationship to issues in dispute (Meta_Kadrey_00232034; Meta_Kadrey_00218543); an explanation of the "gnarly" issue of releasing two models simultaneously, which is unredacted (Meta_Kadrey_00209314); redactions in lengthy documents disconnected from the segments that Plaintiffs contend are relevant (Meta_Kadrey_00204218); lay opinion of two Meta employees about the propriety of certain datasets (Ex. A, Log Nos. 270, 654-56; Meta_Kadrey_00218170); a legal risk assessment (Meta_Kadrey_00211699); and conduct that had already occurred (Meta_Kadrey_00204235). None of these raises a suspicion of attorney conduct in furtherance of a crime or a fraud, and thus none justifies *in camera* review.

### III. PLAINTIFFS' REPLY

**Illegality is enough for the crime-fraud doctrine to apply.** Meta's first argument is that there are no crimes or fraud alleged here, so the doctrine cannot apply. False. As Plaintiffs already explained, *illegal* acts can rise to the level of crime-fraud; the underlying acts need not be criminal. *See In re Animation Workers Antitrust Litig.*, 2016 WL 8198907, at *3 (N.D. Cal. Mar. 23, 2016) (applying crime-fraud exception to a civil claim); *Lewis v. Delta Air Lines, Inc.*, No. 2:14-cv-01683, 2015 WL 9460124, at *4 (D. Nev. Dec. 23, 2015) (same). Overwhelming evidence calls into question any "reasonable" belief that the "copying" in this case—torrenting massive quantities of pirated works from illegal datasets—was not willful infringement. The NYT article, in addition to scores of documents produced in the eleventh-hour cited in a parallel discovery letter, show this.

**Meta committed crimes.** Of course, the other issue for Meta is that even apart from willful infringement, ***torrenting*** copyrighted works is itself criminal. *See United States v. Vaulin*, 2017 WL 3334861, at *1 (N.D. Ill. Aug. 4, 2017). Meta does not dispute that it did this, nor could it, and there is barely a dispute about whether Meta's lawyers knew about it: numerous examples of privilege redactions follow overt discussions about illegal torrenting. Glaringly, Meta does not cite, nor could Plaintiffs locate on a diligent search, a *single case* in which the "fair use" doctrine applied to such blatant (and illegal) data piracy. Indeed, some of the "proprietors" of the shadow libraries that Meta *also* downloaded and distributed are under criminal indictment. *See* Indictment, *United States v. Napolsky et al.,* No. 22-CR-525 (E.D.N.Y. Nov. 16, 2022), ECF No. 4 (involving "Z-lib", which Meta torrented in massive volumes, *see* Meta_Kadrey_00107954 (noting at least 25.7 TB was torrented)). Plaintiffs have more than made their *prima facie* showing.

***In camera* review is warranted.** The Court should make its own judgment of whether the evidence Plaintiffs present is sufficiently probative as to warrant this review. Here, if fully withheld communications with subject titles like, "**as far as I know this is all illegal** ..." are not sufficient to warrant *in camera* review, then Plaintiffs are unsure if *any* privilege log entry for a withheld document could ever warrant this review.

By:  /s/ *Bobby Ghajar*

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email: bghajar@cooley.com
      cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
Email: mweinstein@cooley.com
      lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile:  (415) 693-2222
Email: khartnett@cooley.com
      jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4121

By:  /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jischiller@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Plaintiffs*

Facsimile:  (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 20, 2024                                BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt
Reed Forbush
Jay Schuffenhauer

Attorneys for Plaintiffs