COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
TERESA MICHAUD (296329)
(tmichaud@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone:    (650) 815-4131

*[Full Listing on Signature Page]*

Counsel for Defendant Meta Platforms, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br><br>   Individual and Representative Plaintiffs,<br><br>   v.<br><br>META PLATFORMS, INC., a Delaware corporation;<br><br>                                      Defendant. | Case No. 3:23-cv-03417-VC-TSH<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT (RULES 12(B)(1) AND 12(B)(6))**<br><br>Date:    February 27, 2025<br>Time:    10:00 a.m.<br>Dept:    Courtroom 4 – 17th Floor<br>Judge:   Vince Chhabria<br><br>Trial Date: None<br>Date Action Filed: July 7, 2023 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. PLAINTIFFS' SECTION 1202(B)(1) CLAIM FAILS AS A MATTER OF LAW ........... 2
    A. Plaintiffs Lack Article III and Statutory Standing ................................................. 2
    B. Plaintiffs Also Fail to State a Claim under §1202(b)(1) ......................................... 4
III. PLAINTIFFS' CDAFA CLAIM FAILS AS A MATTER OF LAW ................................. 6
    A. The Copyright Act Preempts Plaintiffs' CDAFA Claim ....................................... 6
    B. The Notice Requirement Under Fed. R. Civ. P. Rule 5.1 Is Inapplicable .............. 8
    C. The TAC Fails to State a Claim Under Section 502(c)(2) .................................... 9
IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) ............................................................................................... 7

*Andersen v. Stability AI Ltd.*,
2024 WL 3823234 ................................................................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 5

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
2024 WL 3522196 (N.D. Cal. July 23, 2024) ........................................................................ 4

*Biden v. Ziegler*,
737 F. Supp. 3d 958 (C.D. Cal. 2024) ............................................................................. 9, 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................... 4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................................. 10

*Capitol Audio Access, Inc. v. Umemoto*,
980 F. Supp. 2d 1154 (E.D. Cal. 2013) ................................................................................. 7

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ................................................................................. 7

*Doe I v. Google LLC*,
741 F. Supp. 3d (N.D. Cal. 2024) .......................................................................................... 9

*Douglas v. ReconTrust Co., N.A.*,
2012 WL 5470360 (W.D. Wash. 2012) ................................................................................. 9

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........................................................................................... 3, 10

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sep. 23, 2024) ....................................................................... 9

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc.*,
958 F.2d 896 (9th Cir. 1992) ................................................................................................. 7

*Hidden Empire Holdings v. Angelone*,
2022 WL 17080131 (C.D. Cal. Sep. 30, 2022) ...................................................................... 7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ................................................................................................ 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
  2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) .................................................................. 2

*Knudsen Corp v. Nevada State Dairy Comm'n*,
  676 F.2d 374 (9th Cir. 1982) ........................................................................................... 8

*Laws v. Sony Music Entm't, Inc.*,
  448 F.3d 1134 (9th Cir. 2006) ......................................................................................... 7

*Locklin v. StriVectin Operating Co.*,
  2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ................................................................... 3

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ......................................................................................... 6

*McClung v. AddShopper, Inc.*,
  2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .................................................................... 3

*Opperman v. Path, Inc*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................................... 7, 8

*Raw Story Media, Inc. v. OpenAI, Inc.*,
  2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024) ................................................................... 2

*Rodriguez v. Google LLC*,
  2025 WL 50425 (N.D. Cal. Jan. 7, 2025) ...................................................................... 10

*Skau v. JBS Carriers, Inc.*,
  2019 WL 4597516 (W.D. Wash. Sept. 23, 2019) ........................................................ 8, 9

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ........................................................................................... 4

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
  524 F. Supp. 2d 1184 (C.D. Cal. 2007) ........................................................................... 2

*The Intercept Media v. OpenAI*,
  No. 24-cv-1515, Dkt. 122 (S.D.N.Y. Nov. 21, 2024) ..................................................... 2

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
  2020 WL 6395442 (D. Ariz. Nov. 2, 2020) ..................................................................... 9

*Ticketmaster v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................................................................... 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................................................... 3

*United States v. Zadeh*,
  820 F.3d 746 (5th Cir. 2016) ........................................................................................... 8

COOLEY LLP
ATTORNEYS AT LAW

iii

DEFENDANT META PLATFORMS, INC.'S
REPLY ISO MTD THE TAC
3:23-CV-03417-VC-TSH

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*West v. Ronquillo-Morgan*,
   526 F. Supp. 3d 737 (C.D. Cal. 2020) .................................................................................. 10

*X Corp. v. Bright Data, Ltd.*,
   733 F. Supp. 3d 832 (N.D. Cal. 2024) .................................................................................... 8

**Statutes**

17 U.S.C.
   § 106(3) .................................................................................................................................. 7
   § 1202 ........................................................................................................................ 2, 3, 4, 5
   § 1202(b) ............................................................................................................................ 3, 4
   § 1202(b)(1) ............................................................................................................. 1, 2, 4, 10
   § 1203(c)(2) ........................................................................................................................... 3

Penal Code § 502(c)(2) ................................................................................................................ 9

WIPO Copyright Treaty, art. 12(1) ............................................................................................. 2

WIPO Performances and Phonograms Treaty, art. 19 ................................................................ 2

**Other Authorities**

4 Nimmer on Copyright § 12A.08 (2019) ................................................................................... 2

Fed. R. Civ. P. 5.1 .................................................................................................................... 8, 9

H.R. Rep. No. 105-551 ................................................................................................................ 2

Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 COLUM. SCI. & TECH. L. REV. 97, 146
   (2012) .................................................................................................................................... 2

U.S. Const. Art. III .................................................................................................................. 2, 3

## I. INTRODUCTION

Meta's Motion established that Plaintiffs lack standing and cannot state a claim for violation of Section 1202(b)(1) of the DMCA or the CDAFA. Focused on "torrenting," which is a widely-used protocol to download large files, Plaintiffs push a narrative that ignores evidence in their possession, including a detailed expert report, showing that Meta took precautions not to "seed" any downloaded files. Plaintiffs, thus, plead no facts to show that Meta seeded Plaintiffs' books – a claim that Meta will address at summary judgment. For now, the Court should dismiss Plaintiffs' unprecedented and untenable application of both Section 1202(b)(1) and the CDAFA to the allegations in the TAC.

Mere removal of redundant information from training data, including copyright management information ("CMI") in the form of boilerplate legal disclaimers or the copyright symbol, is not a violation of Section 1202(b)(1) of the DMCA. To survive dismissal, Plaintiffs were required to plausibly plead facts showing that Meta removed CMI with knowledge or reason to know that it would "induce, enable, facilitate, or conceal" infringement of Plaintiffs' copyrighted works. They still cannot so – despite exhaustive discovery – because their allegations don't add up. They cannot show that CMI removal enabled or concealed infringement by third parties (no such infringement is even alleged). They also do not allege any facts showing that CMI removal enabled or concealed any infringement by Meta, whose public disclosure of Llama's training data prompted this copyright infringement suit. Separately, their Opposition confirms that Plaintiffs cannot allege a concrete or particularized injury caused by the supposed violation of Section 1202(b)(1), warranting dismissal with prejudice for lack of standing.

The CDAFA claim is equally defective: under Plaintiffs' framing, one could bring a CDAFA claim for *any* infringement of copyrighted works downloaded from the internet, from merely printing an image from a public Google search, to downloading large files through other means. The statute simply does not cover the conduct Plaintiffs challenge here. Instead, as the Opposition confirms, the facts underlying Plaintiffs' CDAFA claim are coextensive with their claim for copyright infringement – both solely target Meta's alleged copying of their books to train AI models. Plaintiffs' CDAFA *claim* (not the entire statute) is preempted and must be dismissed.

## II. PLAINTIFFS' SECTION 1202(B)(1) CLAIM FAILS AS A MATTER OF LAW

### A. Plaintiffs Lack Article III and Statutory Standing

Plaintiffs do not dispute that the TAC includes only a single, conclusory allegation that they have suffered an unspecified injury as a result of Meta's alleged CMI removal. TAC ¶ 109. In an attempt to cure this defect, they impute the allegations of harm from their copyright infringement claim to the DMCA claim, and conflate the *remedy* of unjust enrichment with an *injury* capable of conferring standing. For the reasons discussed below, both arguments fail.

Plaintiffs argue that the "concrete" injury they have suffered is "the same right copyright holders enjoy, and it's the same injury copyright infringement creates." Opp. at 3. This exact argument was rejected by the court in *Raw Story* because copyright infringement and Section 1202 protect different interests. *Raw Story Media, Inc. v. OpenAI, Inc.*, 2024 WL 4711729, at *3 (S.D.N.Y. Nov. 7, 2024).[1] In particular, the "legislative history of the DMCA indicates that the Act's purpose was not to guard against property-based injury. Rather, it was to 'ensure the integrity of the electronic marketplace by preventing fraud and misinformation,' and to bring the United States into compliance with its obligations to do so under the World Intellectual Property Organization (WIPO) Copyright Treaty, art. 12(1) ('Obligations concerning Rights Management Information') and WIPO Performances and Phonograms Treaty, art. 19 (same)." *Id.* (citing H.R. Rep. No. 105-551, at 10-11). This is reflected in numerous district court decisions and legal scholarship recognizing Section 1202 as addressing attribution-related harms. *See, e.g., Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (explaining that CMI is intended to "assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership.") (quoting 4 NIMMER ON COPYRIGHT § 12A.08 (2019)); *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1199 (C.D. Cal. 2007) (same); Russell W. Jacobs, *Copyright Fraud in the Internet Age*, 13 COLUM. SCI. & TECH. L. REV. 97, 146 (2012) ("CMI protections [are] analogous to a limited right of integrity or attribution"). Plaintiffs needed to plead an attribution-based injury, but did not do so.

---

[1] Plaintiffs cite to *The Intercept Media v. OpenAI*, No. 24-cv-1515, Dkt. 122 (S.D.N.Y. Nov. 21, 2024) for having reached the opposite conclusion on similar facts. However, the court's order denying OpenAI's motion to dismiss is unaccompanied by any legal analysis.

*Even if* Plaintiffs were correct that, for standing purposes, injuries from violations of Section 1202(b) are akin to copyright infringement, the TAC is still devoid of factual allegations connecting Meta's actions to any such injury. Plaintiffs speculate that "Meta stripped CMI to ensure that Plaintiffs and others can't query its models to determine whether they were trained on certain copyrighted works (or reveal obvious evidence of the same, such as a © symbol)." Opp. at 7. They know this is false based on the factual record. Nonetheless, the TAC contains no allegations that anyone has ever attempted such a query, or that any answers given by Llama in response would have been different *but for* the removal of CMI, let alone that such removal induced or facilitated infringement, or concealed from Plaintiffs that Meta used their works to train its models. To the contrary, Plaintiffs' original Complaint was premised on Meta's public disclosure in its Llama 1 paper that it had used the "Books3" dataset. Dkt. 1 ¶¶ 23–30; *see also* TAC ¶¶ 37, 39–42, 46. Plaintiffs also received extensive disclosures on the training data used for later models in discovery. *See e.g.*, Dkt. 267-12 (August discovery responses identifying training datasets). Plaintiffs' theory that Meta removed CMI to conceal that it used their works to train Llama is nonsensical and contradicted by the record.

Plaintiffs' alternative argument, that they have alleged an injury akin to **unjust enrichment**, also fails. First, Plaintiffs do not allege that Meta unjustly benefitted *as a result* of its purported Section 1202 violation, nor could they. As noted above, removing CMI did not enable or conceal any conduct Plaintiffs were not already aware of. Second, Plaintiffs conflate unjust enrichment, which is a remedy (*see* Opp. at 3, quoting 17 U.S.C. § 1203(c)(2)), with injury, but these are distinct concepts. *See Locklin v. StriVectin Operating Co.*, 2022 WL 867248, at *3 (N.D. Cal. Mar. 23, 2022) (Chhabria, J.) ("no standalone claim for 'unjust enrichment' in California") (citation omitted). As the Supreme Court explained in *TransUnion LLC v. Ramirez*, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue …." 594 U.S. 413, 426–27 (2021) (emphasis in original). Plaintiffs' reliance on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599-600 (9th Cir. 2020) is, thus, misplaced, as the "the Article III analysis in [the unjust enrichment] section of [that decision] has been superseded by *TransUnion*[.]" *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2, n. 2 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.).

### B.  Plaintiffs Also Fail to State a Claim under §1202(b)(1)

The TAC lacks any plausible allegations that Meta knew or had reasonable grounds to know that removing CMI from training data would "induce, enable, facilitate, or conceal an infringement of" *Plaintiffs' books*. 17 U.S.C. § 1202(b). *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018). Instead of addressing this facial defect, Plaintiffs falsely accuse Meta of obfuscation and misleading the Court. These tactics fail.

*First*, Plaintiffs do not respond to the observation in Meta's Motion that they did not plead facts showing that Meta knew or had reason to know that removal of CMI "would induce, enable, facilitate, or conceal … the copyright infringement *of others*." Mot. at 14 (citing TAC ¶ 108) (emphasis added). Accordingly, this defect is conceded. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 122 (N.D. Cal. 2020) (failure "to address arguments… constitutes abandonment").

*Second*, Plaintiffs argue that the Motion both ignores allegations that CMI removal was intended "to enable and facilitate infringement" by *Meta* (TAC ¶ 105), and concedes that CMI removal "facilitates" infringement by making training easier. Opp. at 6. Neither is true. Nowhere do Plaintiffs allege that CMI removal *enabled* (*i.e.*, made possible) Meta's alleged infringement, nor could they. The premise of Plaintiffs' DMCA claim is that Meta removed Plaintiffs' CMI *after* it had already infringed their works by downloading them. CMI removal could not have "enabled or facilitated" this conduct.[2] Moreover, although they loosely characterize CMI removal as "facilitating" Meta's "use" of training data by making it easier for models to "ingest" (*see* TAC at ¶ 88, 90), improving the utility of training data is not the same thing as making it easier to *copy* (i.e., to infringe). There is no allegation of the latter. Thus, Plaintiffs have not plausibly alleged that Meta's CMI removal enabled or facilitated *infringement*, let alone that it was undertaken with culpable scienter. *See Stevens,* 899 F.3d at 675 (Section 1202 requires a defendant to know or have a reasonable basis to know that CMI removal "*will* aid infringement") (emphasis in original).[3]

---

[2] To the extent Plaintiffs now argue that removal of CMI supposedly made it easier for Meta to create additional training copies of Plaintiffs' books after it downloaded them, this, too, is illogical. Obviously, removal of a few lines of text from a large file doesn't make it easier to reproduce.

[3] The decisions cited by Plaintiffs (Opp. at 8) are inapposite. In each, the plaintiffs pleaded facts plausibly showing that the defendant possessed the relevant mental state. For example, *Beijing Meishe Network Technology Co. v. TikTok Inc.* concerned allegations that the defendant "removed CMI from source code that it then distributed" *under its own name*, which is consistent with

***Third***, as the Opposition clarifies, Plaintiffs' concealment theory is premised on allegations that Meta removed CMI from training data to prevent others from querying its models about what they were trained on. Opp. at 7. But this still makes no sense. Plaintiffs do not, and cannot, allege that but for the CMI removal, Llama would have revealed this information. They do not allege that anyone ever entered such a query, or what comes out when they do, even though Plaintiffs and their experts have had access to Meta's open source models for 18 months. Plaintiffs' conjecture aside, they also do not (and cannot) allege that CMI removal somehow stymied *them* from learning what Meta used to train. Again, the original complaint (including a DMCA claim for CMI removal) was premised on Meta's voluntary disclosure of its use of Books3 (Dkt. 1; TAC ¶ 39); and by the time Meta allegedly started using other datasets, the parties were already deep in discovery during which Meta produced the at-issue datasets and source code to Plaintiffs. TAC ¶¶ 84, 87-88; Dkt. 267 at 30-32 (explaining the timeline of Meta's production of books-related datasets to Plaintiffs). Against this backdrop, it is implausible that Meta removed CMI from training data with intent to "conceal" from Plaintiffs the alleged infringement that Plaintiffs had *already sued Meta over*.

Plaintiffs offer no substantive response. Instead, they deflect from the TAC's incoherence and lack of supporting factual detail by making false accusations about Meta's conduct in discovery – none of which help them state a plausible claim. Opp. at 9. First, they point out that Judge Hixson ordered Meta to produce additional documents concerning CMI removal, if any, on December 20, after fact discovery closed. *Id*. at 7. Never mind that they received extensive discovery concerning Meta's dataset processing long before December 20, including the scripts used for the alleged CMI removal, as well as the documents and testimony cited by Plaintiffs in that motion to compel (Dkt. 301-7) and in their motion for leave to file the TAC (Dkt. 395 at 3-4). Plaintiffs even represented on *November 27, 2024* that "prosecution of [the Section 1202 claim] will not require … additional discovery beyond what is needed for the copyright infringement claim." Dkt. 395 at 1. They cannot now tactically retreat from their prior representations to the Court. Elsewhere, Plaintiffs falsely

---

culpable scienter. 2024 WL 3522196, at *8 (N.D. Cal. July 23, 2024). Plaintiffs do not plausibly allege culpable scienter here because the allegations in the TAC are contradictory or otherwise implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content [allowing] … reasonable inference [of liability].")

accuse Meta of having "fought to shield [] datasets from production," and only produced them "after Court intervention." Opp. at 9. But the datasets used to train Llama 1 and 2 were among the first materials Meta produced in discovery in May 2024 (*see* Dkt. 267 at 30), and it produced other books-related datasets used for more recent Llama models in August 2024. *Id*. at 30-32. None of this was precipitated by Court order and, in fact, Plaintiffs' motion to compel as to additional datasets was *denied*. Dkt. 288 at 5. These arguments cannot save their untenable claim from dismissal.

### III.   PLAINTIFFS' CDAFA CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' Opposition similarly exposes the deficiencies in their CDAFA claim. Their framing of the claim as one "grounded in Meta's *illegal acquisition* of Plaintiffs' copyrighted works" (Opp. at 9) underscores that it is merely copyright infringement by another name and is therefore preempted, as courts have consistently held in like circumstances. Mot. at 12. Significantly, Plaintiffs do not cite to a single case in which a court allowed a CDAFA claim on facts similar to those alleged here. Instead, Plaintiffs rely on inapt and distinguishable case law in a failed attempt to shoehorn their copyright infringement allegations under the CDAFA.

#### A.   The Copyright Act Preempts Plaintiffs' CDAFA Claim

Plaintiffs' Opposition attempts to distinguish Meta's *acquisition* of Plaintiffs' works from its alleged *reproduction* (i.e. copying) of those works, to argue that their CDAFA claim concerns different subject matter and conduct. Opp. at 9. But this is a distinction without a difference. Meta allegedly "acquired" Plaintiffs' copyrighted books by making digital copies of them from the Internet (TAC ¶¶ 86–87), conduct that falls squarely within the purview of the Copyright Act.

***First***, Plaintiffs acknowledge that the "data" at-issue in their CDAFA claims is their copyrighted works (Opp. at 9), effectively conceding that "the subject matter of the [CDAFA] claim falls within the subject matter of copyright[.]" *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (cleaned up). Because the same copyrighted works underlie both claims, the first part of the preemption test is satisfied. *Id*.

***Second***, Meta's alleged "acquisition" of Plaintiffs' copyrighted works is not "qualitatively different" from its reproduction of those works. The CDAFA section of the TAC replaces the terms "downloaded" and "made [] copies" with "accessed and used" (TAC ¶¶ 98, 111), but wordsmithing

aside, both are premised solely on Meta's alleged copying of Plaintiffs' copyrighted works without consent. *See* Opp. at 10. To the extent the CDAFA claim is also premised on speculation that Meta distributed their works while torrenting (TAC ¶ 101), "distribution," like "reproduction," is an enumerated exclusive right under the Copyright Act. 17 U.S.C. § 106(3). Thus, "the underlying nature of" Plaintiffs' CDAFA claim is "part and parcel of [their] copyright claim." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006).

Contrary to Plaintiffs' mischaracterization (Opp. at 11), courts have ***not*** sustained CDAFA and copyright claims premised on the same conduct. For instance, in *Hidden Empire Holdings, LLC v. Angelone*, the CDAFA claim was based on defendants' denying access to plaintiffs' email, social media, and website accounts, while the copyright claim arose from infringement of a video game. 2022 WL 17080131, at *7, *12 (C.D. Cal. Sep. 30, 2022). In *DocMagic, Inc. v. Ellie Mae, Inc.*, the conduct supporting the CDAFA claim ("use of other parties' license keys and 'pre-textual' log-in credentials" to access Ellie Mae servers) was distinct from that forming the basis for the copyright claim (unauthorized copying/distribution of software). 745 F. Supp. 2d 1119, 1151 (N.D. Cal. 2010). And in *Ticketmaster, LLC v. Prestige Entertainment West, Inc.*, the CDAFA claim concerned use of prohibited bots to purchase tickets from Ticketmaster, while the copyright claim was based on unauthorized downloading of copyrighted webpages and code to develop those bots. 315 F. Supp. 3d 1147, 1161-62, 1176 (C.D. Cal. 2018). These cases involved conduct distinct from copyright infringement, did not even address preemption, and do not help Plaintiffs avoid it here.[4]

Plaintiffs also cite cases *outside* of the CDAFA context to evade preemption (Opp. at 12), but the parties have been down this road before. *See* Dkt. 40 at 10 (distinguishing *Altera* and *Rasmussen*).[5] *Opperman v. Path, Inc*, 84 F. Supp. 3d 962 (N.D. Cal. 2015), is likewise no help to

---

[4] As anticipated and explained in Meta's Motion (at p. 13), *Capitol Audio Access, Inc. v. Umemoto* (Opp. at 11) is distinguishable because that case involved unauthorized access to payment- and password-protected portions of the *plaintiff's* website "in direct contravention of the User License and User Agreement." 980 F. Supp. 2d 1154, 1156 (E.D. Cal. 2013) (citation omitted). It was not premised, as Plaintiffs' CDAFA claim is here, solely on the copying of copyrighted content.

[5] *Altera Corp. v. Clear Logic, Inc.* addressed whether the plaintiff's contractual right to control the use of information generated by users of its software was preempted, 424 F.3d 1079, 1090–91 (9th Cir. 2005), and *G.S. Rasmussen & Assoc.., Inc. v. Kalitta Flying Service, Inc.* concerned a state law conversion claim regarding unauthorized use of an FAA-issued certificate (not subject to copyright protection), 958 F.2d 896, 904 (9th Cir. 1992). The allegations here are readily distinguishable.

1   Plaintiffs.  *Opperman* involved a conventional CDAFA claim targeting unauthorized access to
2   plaintiffs' address book information, by apps installed on their phones, and there was no copyright
3   claim (or preemption) because, unlike here, the data at issue admittedly did not fall within the scope
4   of copyright protection.  *Id.* at 972, 989.  The CDAFA claim here is preempted.

### B.   The Notice Requirement Under Fed. R. Civ. P. Rule 5.1 Is Inapplicable

Rule 5.1 applies where a party calls into "question the constitutionality" of a state statute. It is head scratching that Plaintiffs would cite Rule 5.1 here (Opp. at 12), as Meta does not challenge the constitutionality of CDAFA, or even seek a ruling that the *statute* is preempted.  Instead, Meta's motion established that *Plaintiffs' specific claim under the CDAFA* is preempted by copyright law. Rule 5.1 does not speak to this scenario, and States need not weigh in on every wayward plaintiff's decision to plead state law claims expressly reserved for adjudication under federal causes of action.

Numerous courts, including this one, have dismissed state law claims as preempted by the Copyright Act without requiring Rule 5.1 notice.  *E.g.*, ECF 56 at 3 (finding copyright preemption *in this case*); *X Corp. v. Bright Data, Ltd.*, 733 F. Supp. 3d 832, 853 (N.D. Cal. 2024) (dismissing as preempted claim for breach of terms premised on scraping from public website because "the extent to which public data may be freely copied from social media platforms . . . should generally be governed by the Copyright Act"); *Andersen v. Stability AI Ltd.*, 2024 WL 3823234, at *10 (dismissing unjust enrichment claim as preempted).  Not surprisingly, Plaintiffs do not cite a single case in which a court has refused to find copyright preemption of a state statutory claim for lack of Rule 5.1 notice.  Instead, Plaintiffs cite cases considering conflict preemption arguments outside of the copyright context, none of which supports a finding that Rule 5.1 notice was required here.

Even in the unrelated context of the cases cited by Plaintiffs, courts hold that Rule 5.1 is not triggered on a federal preemption argument because "preemption in this context is not a constitutional issue"; "although preemption has its doctrinal base in the Constitution, the question is largely one of determining the compatibility of a state and federal statutory scheme."  *Skau v. JBS Carriers, Inc.*, 2019 WL 4597516, at *1 (W.D. Wash. Sept. 23, 2019) (quoting *Knudsen Corp v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982)); *see also United States v. Zadeh*, 820 F.3d 746, 754-55 (5th Cir. 2016) (state interests protected by Rule 5.1 are "not as sharply

defined" where a federal court is not asked to "strike down a state law completely," but merely to hold that it does not apply in a given circumstance). Plaintiffs' misguided attempt to avoid copyright preemption based on an invented and unsupported reading of Rule 5.1 must be rejected.[6]

### C. The TAC Fails to State a Claim Under Section 502(c)(2)

The same distinctions on which Plaintiffs rely to argue that the CDAFA claim is not preempted only reinforce that it is otherwise legally untenable. Plaintiffs concede that CDAFA is an "anti-intrusion" statute, not a misappropriation statute. *See* Opp. at 9 (quoting *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022). Yet the TAC fails to allege any "intrusion" upon Plaintiffs, their computer systems, or their data. Plaintiffs have and claim no ownership or control (or even use) of the third-party platforms, websites, accounts, and datasets that Meta allegedly accessed. The only "possessory interest" Plaintiffs argue they have in the content Meta downloaded is their copyright rights. *See supra* III.A. *Frasco v. Flo Health, Inc.*, 2024 WL 4280933 (N.D. Cal. Sep. 23, 2024) is inapposite. Opp. at 13. There, the plaintiffs alleged that Google collected "their private health information" from an app to which *the plaintiffs* provided their information and to which Google had back-door access through a software developer kit. 2024 WL 4280933, at *1. Here, Plaintiffs do not allege that Meta employed technological measures to obtain any data *from Plaintiffs* or that the data was subject to any access restrictions. They allege only that Meta downloaded the data from a "well-known online repository" that was publicly available via torrents.[7] TAC ¶¶ 86–87. *Doe I v. Google LLC* is similarly unhelpful to Plaintiffs; there, the court dismissed the CDAFA claim for lack of standing because the plaintiffs failed to allege sufficient loss. 741 F. Supp. 3d, 828, 836, 846–47 (N.D. Cal. 2024).[8]

---

[6] Plaintiffs' cited cases are inapt. This case is not like *ThermoLife International LLC v. NeoGenis Labs Inc.*, where a litigant is "rais[ing] a preemption challenge to a state statute" (and even then was merely encouraged to provide notice). 2020 WL 6395442 at *15 (D. Ariz. Nov. 2, 2020). Likewise, in *Douglas v. ReconTrust Co., N.A.*, the court granted a motion to dismiss on the merits, remarking: "putting [Rule 5.1] aside, a court should avoid questions of constitutional dimension where other legal grounds will resolve a controversy." 2012 WL 5470360, at *4 (W.D. Wash. 2012). Notably, the same judge who decided *Douglas* later held in *Skau* that Rule 5.1 is **not** implicated in preemption cases. 2019 WL 4597516, at *1.

[7] Contrary to Plaintiffs' assertion, there is nothing "independently illegal" about torrenting on its own. Opp. at 10. Torrenting is merely a means of enabling users to download (*i.e.*, copy) files.

[8] As Meta explained (Mot. at 14), *Biden v. Ziegler*, 737 F. Supp. 3d 958 (C.D. Cal. 2024) is readily distinguishable. It was undisputed that the plaintiff owned and controlled the set of files at issue,

While CDAFA may not require *circumventing* technical barriers, some barrier to access is always contemplated. In *West v. Ronquillo-Morgan*, for instance, the defendant obtained the plaintiff's log-in information for her social media accounts and devices; they were not freely accessible. 526 F. Supp. 3d 737, 739 (C.D. Cal. 2020). Any other interpretation would be impermissibly broad. Indeed, if Plaintiffs' theory were accepted, then anyone who prints or downloads any copyrighted image or text from any public website without the copyright holder's permission would violate CDAFA. That is not what the statute was designed to prevent, and Plaintiffs' inability to cite any case applying CDAFA to similar facts is, thus, not surprising.

Finally, Plaintiffs' attempt to articulate injury only serves to underscore that the CDAFA claim is preempted. The only "harm" they describe is lost revenue from book licensing (Opp. at 14), which is the same harm they assert in support of their copyright claim (TAC ¶ 101). Further, the "investigative costs" they claim as "consequential losses" – to "determine how Meta acquired their copyrighted works, where Meta [allegedly] shared that data, and how it used that data for itself" – are asserted in support of their *copyright* claim. Opp. at 15. And Plaintiffs' cited cases are unavailing. Each involved personal data – not intellectual property – that the claimants created while using defendants' platforms. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (browsing histories); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 920 (N.D. Cal. 2023) (same); *Rodriguez v. Google LLC*, 2025 WL 50425, at *1 (N.D. Cal. Jan. 7, 2025) (search activity). Here, in contrast, Meta allegedly accessed and downloaded datasets that Plaintiffs did not create, containing the text of published books that anyone can read in a public library, from public websites Plaintiffs do not operate or own. Moreover, Plaintiffs could not have spent money to "investigate or verify whether [their] . . . data was or was not altered, damaged, or deleted" because the "data" was not theirs to begin with, and their copyrighted works remain distinct and intact. *See* CACI No. 1814. Thus, Plaintiffs have not plausibly alleged a violation of CDAFA.

### IV.   CONCLUSION

Plaintiffs' DMCA Section 1202(b)(1) and CDAFA claims should be dismissed with prejudice.

---

and the plaintiff alleged that the defendants "*used his passwords to access password-protected files* and ignored prelitigation demands to cease and desist[]." *Id*. at 976 (emphasis added).

Dated: February 18, 2025

COOLEY LLP

By: _____
Bobby Ghajar
Kathleen Hartnett
Mark Weinstein
Phillip Morton
Judd Lauter
Liz Stameshkin
Matthew Brigham
Colette Ghazarian

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Angela L. Dunning

Attorneys for Defendant
META PLATFORMS, INC.

*Full Counsel List*

COOLEY LLP
PHILLIP MORTON *(pro hac vice)*
(pmorton@cooley.com)
COLE A. POPPELL *(pro hac vice)*
(cpoppell@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:   (202) 842-7800

COOLEY LLP
MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
JUAN PABLO GONZALEZ (334470)
(jgonzalez@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000