March 5, 2025

*E-Filed*

The Honorable Judge Vince Chhabria
450 Golden Gate Avenue
17th Floor, Courtroom 4
San Francisco, CA 94102

Dear Judge Chhabria,

At the hearing on February 27, 2025, the Court directed the Parties to file proposals for additional discovery in light of the documents Defendant Meta Platforms, Inc. ("Meta") produced several weeks after the close of fact discovery set forth in the Court's case management order (the "Sequestered Documents"). These documents contain material that Plaintiffs did not possess previously and that would have informed Plaintiffs' fact and expert discovery had it been timely produced. To remedy the prejudice of the late productions, Plaintiffs propose limited additional discovery, which is significantly narrower than the discovery Plaintiffs proposed initially before the February 27 hearing and the discovery Plaintiffs requested in the parties' January 20, 2025 scheduling proposals, Dkt. 405 at 6-7.

I. **Plaintiffs' Requests**

1. **Leave to Serve the Choffnes Rebuttal Report.** Because the Sequestered Documents contain new evidence related to Meta's use of peer-to-peer networks and torrenting, and because Meta's own torrenting expert issued a 57-page rebuttal report on February 10 that introduced a plethora of brand-new facts and evidence about Meta's torrenting (including interviews of Meta employees who were never deposed), Plaintiffs seek the Court's leave to serve the nine-page rebuttal report of Professor David Choffnes, attached as **Exhibit A.** Plaintiffs provided Meta with Professor Choffnes's rebuttal report on February 26, 2025.

2. **One Rule 30(b)(6) Deposition.** This single, seven-hour 30(b)(6) deposition of a corporate representative of Meta's choice will cover three specific topics brought to light by newly discovered facts in the Sequestered Documents: (1) Meta's 2023 and 2024 decisions to use LibGen and Anna's Archive rather than purchase or license copyrighted works; (2) Meta's uploading of data during the torrenting process; and (3) Meta's initial Fall 2022 download of LibGen.

3. **One Request for Production.** This single RFP, attached as **Exhibit B**, seeks information sufficient to show Meta's configurations and billing records for the torrent clients it used, which will indicate whether and how much data Meta uploaded during the torrenting process. Because the Sequestered Documents show at least some data was "seeded" (uploaded), Plaintiffs request documents showing which data was uploaded and how much was shared. The extent of Meta's uploading is critical to development of a full record on these issues.

4. **One Targeted Search.** This search[1] targets evidence of Meta's torrenting, including uploading, of copyrighted textual works from online databases of pirated works. Plaintiffs request this search include the work email and Workplace Chat of four additional individuals that the Sequestered Documents show were integral in torrenting from LibGen and Anna's Archive.[2]

## II. Rationale

### A. The Choffnes Rebuttal Report

Plaintiffs respectfully request the Court's leave to serve a limited-scope expert report on torrenting. The Sequestered Documents contain evidence of torrenting that Plaintiffs did not have access to at the close of fact discovery. Specifically, this new evidence shows Meta was likely to have uploaded copyrighted works during the seeding and leeching phases and establishes important facts related to the timeline of Meta's torrenting. This new evidence thus goes to the claims in this case.

For example, one of the Sequestered Documents is a WorkChat discussion between Melanie Kambadur and Todor Mihaylov ▮▮▮. In another sequestered chat, Mihaylov shared a Quora link about the "probability of getting arrested for using torrents." Meta_Kadrey_00235448. When Kambadur and Mihaylov were deposed in September 2024, Plaintiffs were not yet aware that Meta torrented LibGen or Anna's Archive, let alone that these witnesses had expressed legal and ethical concerns about doing so. In fact, in deposition, they testified to practically the opposite.[3] Of particular relevance, the Sequestered Documents contain statements that show Meta employees knew ▮▮▮. Notwithstanding this risk, Meta engineers ▮▮▮.



The Choffnes Report cites to many of these brand-new documents, which were unavailable to Plaintiffs' other experts when they tendered their opening and rebuttal reports.

Meta's own torrenting expert report, which Meta served in rebuttal to Plaintiffs' source code expert report, reinforces Plaintiffs' request to serve the Choffnes report. On February 10, Meta served a rebuttal report from Barbara Frederiksen-Cross that is squarely focused on torrenting. The report goes far beyond the scope of Plaintiffs' opening expert Jonathan Krein,

---

[1] (torrent* OR torent* OR leech*) AND (libgen OR "library genesis" OR lib-genesis OR library-genesis OR anna* OR AA OR "internet archive" OR IA OR z-lib! OR z lib! OR zlib OR z-library OR book! OR data OR cop* OR file*)

[2] Those four individuals are Todor Mihaylov, Marie-Anne Lachaux, Xiaolan Wang, and Frank Zhang.

[3] During his September 2024 deposition, Mr. Mihaylov testified that he ▮▮▮. Mihyalov Dep. Tr. 80:10-20. Similarly, Ms. Kambadur answered ▮▮▮. Kambadur Dep. Tr. 69:9-11.

██████████████████████████████████████████████████████████████ Frederiksen-Cross relied on interviews with Meta employees who were never deposed and who Meta never listed in its Initial Disclosures. It also introduces brand-new factual information for the first time, including the contents of Meta's torrented datasets. Frederiksen-Cross also makes claims about the likelihood of seeding. Accordingly, in light of the expansive scope of the Frederiksen-Cross report and the new Sequestered Documents related to torrenting, Plaintiffs request leave to submit a short, nine-page rebuttal report from Professor David Choffnes that interprets the newly produced torrenting evidence.

### B. The Rule 30(b)(6) Deposition

Aside from evidence related to torrenting, the Sequestered Documents also contain revelations about Meta's initial torrenting of LibGen in 2022 and then its decision in 2023 to approve the use of LibGen (and eventually, Anna's Archive in 2024) in lieu of purchasing or licensing. For months, Plaintiffs have been trying to piece together what happened surrounding these decisions. One of the Documents is a message containing meeting notes that say plainly ████████████████████████████████████████████████████████████████ Another Document shows Kambadur instructing employees to ████████████████████████████ ████████████████████████████████ These are the first documents that directly link Meta's decision to stop its licensing efforts with the decision to instead torrent the works from LibGen. Until now, Plaintiffs have only had attenuated, circumstantial evidence of this decision. The limited information Plaintiffs did have regarding the approval of LibGen was produced on the very last day of fact discovery. Plaintiffs' proposed 30(b)(6) Deposition Topic 1 addresses precisely this issue.

Proposed 30(b)(6) Topics 2 and 3 address issues that Meta's representative was unprepared to testify about during the court-ordered deposition on torrenting and seeding, which occurred on Monday. Technically, "seeding" only refers to uploading that occurs after a torrent download is finished. The term for uploading that occurs simultaneously with downloading is called "leeching." Dkt. 426 at n.6. When Plaintiffs' counsel questioned Meta's witness ████████████ ████████████████████████████████████████████████████████████████████ That mid-downloading "leeching" information is just as relevant as any "seeding" that occurred post-downloading—it goes to the ultimate question of what Meta uploaded in connection with the torrenting process.

### C. The RFP

As discussed *supra*, the data Meta uploaded during the course of its torrenting has become a critical question in this case. While the Frederiksen-Cross rebuttal report introduces much new information on Meta's torrenting, including information not provided in fact discovery, it does not provide any concrete information on the amount of data that Meta uploaded. Instead, the report ████████████████████████████████████████████████████████████████████████ ████████████████████████████

This speculation can be resolved with a single RFP. As shown in Exhibit B, Plaintiffs request that Meta provide documents sufficient to show Meta's torrenting configurations; certain

commonly available metadata regarding download and upload volume; and Amazon Web Services ("AWS") invoices and data transfer logs. The relevance of the first two categories is self-apparent. The third category is relevant because Meta hosted its torrenting on AWS platforms, and AWS bills its users based on, among other things, the amount of data uploaded out of AWS. If the invoices spiked around the periods that Meta was torrenting (the initial LibGen copying in 2022, and then the torrenting in April 2023 and in April-June 2024), it will provide additional evidence that uploading occurred.

### D. The Targeted Search

Plaintiffs' proposed search targets evidence of torrenting from shadow libraries. And the Sequestered Documents make clear that the four additional Meta employees Plaintiffs identify were highly involved in Meta's torrenting. First, Todor Mihaylov is the Meta employee who warned torrenting LibGen is illegal. *See* Meta_Kadrey_00235448. Second, Marie-Anne Lachaux is identified as the employee █████████████████████████████████████████ █████████████████████████. Third, Xiaolan Wang was identified on Monday by Meta's corporate representative as the person ███████████████████████████████████████████ █████████████████████. Ex. C at 8:3–10. Wang was also ████████████████████ ████████ but was never deposed or listed on Meta's initial disclosures. Finally, Frank Zhang is the person who ████████████████████████████████████████████████████████ █████████████████████████████████████████.

\* \* \*

Finally, Plaintiffs understand the Court ordered a baseball-style arbitration process for additional discovery in connection with the Sequestered Documents by which it would select one proposal in full. Even if the Court decides to select Meta's fact discovery proposal, however, Plaintiffs respectfully request that the Court consider granting leave for Plaintiffs to serve the Choffnes Rebuttal Report. That nine-page report was provided to Meta on February 26, and, as discussed above, it responds to new facts and evidence, and new expert opinion, introduced in Meta's February 10 torrenting report that Plaintiffs have had no other opportunity to address or to rebut.

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt
