# EXHIBIT B

**Stameshkin, Liz**

| | |
|---|---|
| **From:** | Nada Djordjevic <ndjordjevic@dicellolevitt.com> |
| **Sent:** | Tuesday, February 25, 2025 11:03 AM |
| **To:** | Morton, Phillip; Lauter, Judd; Dunning, Angela L.; z/Meta-Kadrey |
| **Cc:** | Llama C-Counsel; Maxwell Pritt; Jschuffenhauer@bsfllp.com; Madeline Hills |
| **Subject:** | Kadrey v. Meta - Late Productions |

**[External]**

Counsel,

As previously mentioned, in light of Meta's untimely productions—both as to our ongoing and unanswered questions about the asserted sequestration and the key information and individuals in the documents produced—Plaintiffs request that Meta stipulate to the following discovery, if permitted by Judge Chhabria, to run concurrently with the summary judgment briefing schedule.  For depositions, we request the following:  a 4 hour 30(b)(6) of Meta regarding the 18K documents and WPChat discovery; a 3 hour deposition of Lighthouse on the alleged sequestration of WPChats; further depositions of 3.5 hours of Todor Mihaylov, Ahmad Al-Dahle, Nikolay Bashlykov, and Melanie Kambadur; further 2.5-hour depositions of Joelle Pineau and Mark Zuckerberg; and 4-hour depositions of Xiolan Wang, Xavier Martinet, and Jort Gemmeke, plus their custodial documents.  We also ask that Meta respond to some of the discovery requests we served in mid-January, specifically SROG 27 and RFPs 137-151, 154-158, 162, 163, 164, 167, 169, and 172, though we reserve the right to modify the requests slightly.  Further, we ask that Meta agree that Plaintiffs may serve a rebuttal report to Ms. Frederickson-Cross's report on torrenting.  Finally, we ask that Meta reimburse Plaintiffs' attorneys' fees and costs in connection with its late production and resulting discovery.  Plaintiffs reserve the right to seek further relief.

Please let us know if Meta will agree to these requests.

Sincerely,

Nada



Nada Djordjevic

**DICELLO LEVITT LLP**

312.214.7900

This transmission may contain privileged and confidential information meant for the intended recipient only. If you have received this email in error, please notify the sender and permanently delete this email and any attachments.

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC  20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

*[Additional counsel included below]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Richard Kadrey, et al.,<br><br>            *Individual and Representative Plaintiffs*,<br><br>       v.<br><br>Meta Platforms, Inc.,<br><br>                        *Defendant*. | Case No. 3:23-cv-03417-VC<br><br>**PLAINTIFFS' SEVENTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC.** |

1  In accordance with Federal Rules of Civil Procedure 26 and 34, Plaintiffs, by and through their

2  undersigned attorneys, hereby request that Defendant Meta produce for inspection and copying, within

3  twenty-one days of service, the documents and things described below, in accordance with the following

4  definitions and instructions. Plaintiffs request that Defendant Meta produce documents and other things

5  described below electronically or at the offices of Boies Schiller Flexner, LLP, 44 Montgomery Street, 41st

6  Floor, San Francisco, CA 94104.

7  **DEFINITIONS**

8  As used herein, the following words, terms, and phrases—whether singular or plural, or in an

9  alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or

10 made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase.

11 No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form:

12 1.    "Agreements" means any oral or written contract, arrangement or understanding, whether

13 formal or information, between two or more Persons, including all drafts, versions, modifications,

14 amendments, attachments, exhibits, and appendices thereof.

15 2.    "All," "Or," and "And" should be understood to include and encompass "any"; "or" should

16 be understood to include and encompass "and"; and "and" should be understood to include and encompass

17 "or."

18 3.    "Communications" means oral or written communications of any kind, communicated

19 directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations,

20 negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences,

21 memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or

22 direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams

23 messages), memoranda, documents, writings, or other forms of communications. The term

24 "Communications" includes instances where one party disseminates information that the other party

25 receives but does not respond to.

26 4.    "Complaint" refers to the operative complaint at the time documents are produced in

27 response to these requests. At the time of service, the currently operative Complaint is Plaintiffs' Third

28 Amended Consolidated Complaint. Dkt. No. 395-11.

5.    "Concerning," whether capitalized or not, refers to and includes "constituting," "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically or factually dealing with the matter described in the request in which the term appears.

6.    "Data" means content, files, information, metadata, software, or any other digital material, including Documents.

7.    "Defendant" means Defendant Meta Platforms, Inc.

8.    "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;

- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;

- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Identify" as it pertains to Persons means to describe each Person by name, residence address, residence telephone number, occupation, title, business address, and business telephone number. The term "Identify" as pertains to Documents means to state, to the extent known, the date the Document bears, if any; the title of the Document; the author(s) of the Document; the recipient(s) of the Document and the present location(s) or custodian of the Document.

10. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

11. "Llama Model(s)" means all instances, iterations, versions, updates, or modifications of the Meta's AI model known as "LLaMa" or "Llama" and any other AI models developed or in development by Meta. This includes, but is not limited to, the original version, experimental versions, subsequent versions, updates, or refinements made to the underlying algorithms, parameters, or architecture.

12. "Llama 1" means the series of language models originally styled "LLaMA" and released by Meta in February 2023, as well as precursor models and variant models.

13. "Llama 2" means the series of language models of the same name released by Meta in July 2023, as well as precursor models and variant models.

14. "Llama 3" means the series of language models of the same name released by Meta in April 2024, as well as precursor models and variant models.

15. "Llama 4" means the series of language models of the same name that are currently under development by Meta, as well as precursor models and variant models.

16. "Llama 5" means the series of language models of the same name that are currently under development by Meta, as well as precursor models and variant models.

17. "Meta" means Meta Platforms, Inc., and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

18. "OCR" means optical character recognition.

19. "Online Database(s)" means the type of databases described in paragraphs 43 and 44 of the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, and The Pile. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

20. "Person" means any natural person or any business, legal, or governmental entity or association.

21. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

22. "Torrent Client(s)" means a network or application designed for sharing computer data that was used by Meta to obtain data from any Online Database, including but not limited to BitTorrent.

23. "You" or "Your" refers to Meta, including its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership acting under its direction, and any other person or entity acting on its behalf or under its control..

## **INSTRUCTIONS**

1. Please separately respond to each item by stating (a) you will produce, (b) you are presently unable to produce, or (c) you object to production.

2. Unless superseded by a mutually-agreed-upon stipulation, the following provisions shall generally govern the production format and procedure for Hard Copy Documents and images:

    a. All Documents originating in hardcopy format will be produced as black-and-white or color (if originally in color), single-page, 300 dpi Group IV tagged image file format ("TIFF") images, with OCR text and related path provided in document level text files.

b. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The Producing Party will use reasonable efforts to unitize documents correctly.

c. Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

d. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/Metadata load file (.DAT), pursuant to any agreement to be made by the Parties or in accordance with any Stipulated Order Regarding ESI Protocol and Production of ESI and Paper Documents ("ESI Protocol") to be entered by the Parties.

e. YOU will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates-stamp order.

3. Unless superseded by a mutually-agreed-upon stipulation regarding the production of ESI, All Documents shall be produced in accordance with the specifications below except for source code, which may be produced in accordance with the specifications below.

a. Where technically feasible, emails shall be produced in TIFF format. TIFFs shall be produced as true color, single-page Group IV TIFF in 8½ X 11-inch page size images at a resolution of at least 300 DPI with the quality setting of 75% or higher.

b. When producing documents in TIFF format, the image files shall be produced along with Concordance/Opticon image load files, linking the images to the corresponding document that indicate the beginning and ending of each document, showing the Bates number of each page and the appropriate unitization of the documents.

c. Each image file of an electronic document will be created directly from the original electronic document. Image files shall show all text and images that would be visible in the original electronic format (Native Format), including redlines and speaker notes.

d. All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF

image(s)), and such text files shall contain the full text extraction. To the extent technically feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

e.  All documents shall be produced in their original language. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

f.  Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

g.  Microsoft Word Documents (or similar) (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced as a single color PDF file for each Document, containing all images for that document, and should be imaged in a manner that captures track changes and comments. To the extent Plaintiffs believes the converted image format distorts, omits, or causes information to be improperly displayed, Plaintiffs may request the Document in Native Format and the Parties shall meet and confer to attempt to resolve the problem(s).

h.  In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

i.  The following ESI shall be produced in native file format:

    i.  Excel files;

    ii.  Text message files;

    iii.  Presentation files (e.g., PowerPoint);

    iv.  Personal databases (MS Access);

    v.  Audio/video files;

vi.  Web pages;

vii.  Animations;

viii.  Source code.

j.  To the extent responsive Text Messages are being produced, they will be produced in a reasonable usable format. YOU will disclose its production format of Text Messages to the Plaintiffs prior to the production of Text Messages. Plaintiffs retain their rights to meet and confer on the production format to address any concerns.

k.  The Parties reserve the right to request production of other ESI types in Native Format, for example, that documents be produced in Microsoft Word, in addition to TIFF images. The Parties agree to meet and confer regarding such requests.

l.  PowerPoint or other presentation files should be produced in Native Format as (e.g., as .PPT files). PowerPoint presentations shall also be produced in full-slide image format, along with speaker notes (which should follow the full images of the slides) with related searchable text, Metadata, and bibliographic information.

m.  In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production.

n.  ESI shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, notes, tracked changes, and comments. Any Party seeking a deviation from this provision must provide notice to other Parties and the Parties agree to meet and confer regarding such requests.

o.  The Parties will meet and confer about objective coding fields and Metadata that will be produced for all ESI—including ESI produced in TIFF or Native Format, and any such Metadata will be produced in accordance with the Parties' agreement or in accordance with any ESI Protocol to be agreed upon by the Parties.

p.  Any Document produced in native format, will be produced according to the following specifications:

i.   A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "BATES000001_HighlyConfidential.xls"

ii.  The native format Documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a Bates number.

iii. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the native file. For any native format documents that cannot be imaged or where the image is produced as a separate document, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and confidential designation, if any, of the corresponding file.

iv.  In order to preserve the integrity of any file produced in Native Format, no Bates number, confidentiality designation or internal tracking number should be added to the body of the Native Format document unless otherwise agreed to between the Producing Party and the Receiving Party during any meet and confer related to the production of that Native Format document.

v.   Plaintiffs may also request that You produce additional file types of electronic Documents in Native Format where converted image formats distort or otherwise cause information to be improperly displayed. The Parties shall meet and confer regarding such requests in good faith and cooperation.

4.    These Requests for Productions should be deemed continuing such that if Your directors, officers, employees, agents, representatives or any person acting on Your behalf, subsequently discover or

obtain possession, custody, or control of any document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional documents become available.

5.     If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all documents describing or referencing: (1) the contents of the lost or destroyed document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

6.     If You object to any item or category of item, Your response shall (a) identify with particularity each document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

7.     If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2) the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

8.     In responding to these Requests for Production, You are to include Documents (1) obtained from witnesses who gave information to any governmental agency or investigatory body, including Congress; (2) that constitute, refer or relate to summaries of testimony or other statements in connection

with any governmental agency or investigatory body proceeding or investigation, including before Congress; or (3) obtained on Your behalf in preparation for testimony or interviews before any governmental agency or investigatory body, including Congress.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 137

All Documents and Communications related to Meta's seeding of Data torrented from Online Databases.

### REQUEST FOR PRODUCTION NO. 138

All Documents and Communications related to Meta's efforts to minimize seeding of Data torrented from Online Databases.

### REQUEST FOR PRODUCTION NO. 139

All Data from Online Databases acquired by Meta via Torrent Client or torrent protocols, including filename, size, and any other metadata.

### REQUEST FOR PRODUCTION NO. 140

All Data seeded by Meta to Online Databases, including filename, size, and any other metadata.

### REQUEST FOR PRODUCTION NO. 141

All Documents and Communications custodially housed in Nikolay Bashlykov's Meta-issued and personal computer(s), devices, and web hosting services related to torrenting and seeding of Data from Online Databases.

### REQUEST FOR PRODUCTION NO. 142

All Documents and Communications related to the use of any Torrent Client to obtain any Data from Online Databases, including but not limited to internal approvals, risk assessments, investigations, media or press strategies and communications, mitigation plans, remedial actions, and compliance reviews.

### REQUEST FOR PRODUCTION NO. 143

All Documents and Communications related to the installation, usage, or configuration of any Torrent Client to obtain any Data from Online Databases, including but not limited to application logs, server logs, network traffic reflecting torrent downloads or seeding, descriptor files, configuration files or equivalent settings registries, and bandwidth logs.

### REQUEST FOR PRODUCTION NO. 144

All Documents and Communications related to the locations or methods of storing or hosting Data from Online Databases obtained through torrenting, including but not limited to local servers, virtual

11

servers, cloud-based storage such as Amazon Web Services (AWS), or any other third-party data hosting services.

**REQUEST FOR PRODUCTION NO. 145**

All Documents and Communications related to the decision not to involve Meta's Data Infrastructure (DI) team in the acquisition, storage, downloading, or handling of Data from Online Databases.

**REQUEST FOR PRODUCTION NO. 146**

All Documents and Communications related to the development and use of any mode, setting, or process used to conceal YOUR torrenting or seeding of any Data from Online Databases, including but not limited to the decision to collect any such Data in "Stealth Mode."

**REQUEST FOR PRODUCTION NO. 147**

All Documents and Communications related to the use of "fairspark." *See* Meta_Kadrey_00108336.

**REQUEST FOR PRODUCTION NO. 148**

All Documents and Communications related to any machines, devices, or servers YOU used to torrent or seed any Data from Online Databases, including but not limited to "Port 80."

**REQUEST FOR PRODUCTION NO. 149**

All Documents and Communications related to Data YOU torrented or seeded from Online Databases, including but not limited to download logs, data processing records, and usage reports.

**REQUEST FOR PRODUCTION NO. 150**

All Documents and Communications related to Data synced to S3, including but not limited to synchronization logs, data integrity checks, and access control records. *See* Meta_Kadrey_00108336.

**REQUEST FOR PRODUCTION NO. 151**

All Documents and Communications related to the use of "PySpark" or any other tools used to download or re-download Data from any Online Database, including but not limited to Data identified in RFP 149 or any torrent networks, and any revisions or updates to the code.

**REQUEST FOR PRODUCTION NO. 152**

All Documents and Communications regarding the deduplication of Llama training data containing copyrighted material or books that was downloaded, acquired, or stored by YOU, including but not limited to deduplication algorithms, implementation notes, and performance metrics.

**REQUEST FOR PRODUCTION NO. 153**

All Documents and Communications related to the creation or finetuning of datasets that include any copyrighted material or books that were used or intended to be used for training Llama 4, Llama 5, and any other models in development, including pre-training, post-training, and fine-tuning datasets.

**REQUEST FOR PRODUCTION NO. 154**

All copies of the datasets that were used or intended to be used for training Llama Models, including all copies of all pre-training, post-training, and fine-tuning datasets.

**REQUEST FOR PRODUCTION NO. 155**

All copies of datasets that include any copyrighted material or books that YOU used during post-training to fine-tune or align any Llama Model to not output or regurgitate copyrighted material.

**REQUEST FOR PRODUCTION NO. 156**

All copies of datasets that include any copyrighted material or books that YOU used to test or study any Llama Model's tendency to memorize training data and/or to prevent any Llama Model from memorizing training data containing copyrighted material or books, including the datasets referenced in YOUR MME source code repository that include copyrighted material or books.

**REQUEST FOR PRODUCTION NO. 157**

All Documents and Communications related to the use of any other software or tools not previously identified that were used to download, re-download, or manage Data from any Online Database, including but not limited to torrent networks, and any associated technical documentation.

**REQUEST FOR PRODUCTION NO. 158**

All Documents and Communications related to the synchronization of Data obtained from any Online Database to any cloud storage services, including but not limited to AWS S3, and any associated data management policies and access control records.

**REQUEST FOR PRODUCTION NO. 159**

All Documents and Communications related to the identification, handling, and resolution of any legal or compliance issues arising from the use of Data from Online Databases for training Llama Models, including any internal or external communications, risk assessments, and mitigation plans.

**REQUEST FOR PRODUCTION NO. 160**

All Documents and Communications related to any internal or external audits, reviews, or assessments of Meta's data acquisition practices, including but not limited to the use of Torrent Clients, Online Databases, and cloud storage services, and any associated findings and recommendations.

**REQUEST FOR PRODUCTION NO. 161**

All Documents and Communications related to any efforts to anonymize, obfuscate, encrypt, or otherwise conceal the source of Data obtained for use in training Llama Models, including but not limited to the removal of copyright management information (CMI), and any associated technical documentation and implementation notes.

**REQUEST FOR PRODUCTION NO. 162**

All Documents and Communications related to any internal or external communications, including emails, memos, and meeting minutes, discussing the ethical, legal, or compliance implications of using pirated or "external" data for training Llama models, and any associated risk assessments and mitigation plans.

**REQUEST FOR PRODUCTION NO. 163**

All Documents and Communications related to any requirements, planning, setup, configuration, and operation of the Torrent Client software, including work requests, support tickets, and other records of actions taken to request, setup, configure or operate any Torrent Client software.

**REQUEST FOR PRODUCTION NO. 164**

All logs created by the network systems controlled by Meta or received by Meta from any service provider through which the Data acquired from Online Databases via Torrent Client software was transmitted.

**REQUEST FOR PRODUCTION NO. 165**

All network descriptions, maps, and visual diagrams of the network within which Meta operated its Torrent Clients.

**REQUEST FOR PRODUCTION NO. 166**

All service billing information for the systems within which the Torrent Clients operated.

**REQUEST FOR PRODUCTION NO. 167**

All Documents and Communications related to the decision-making process for selecting specific Torrent Client software, including any evaluations, comparisons, or assessments of different Torrent Clients.

**REQUEST FOR PRODUCTION NO. 168**

All Documents and Communications related to security measures or protocols implemented to protect Data acquired via torrent protocol, including but not limited to encryption, access controls, and monitoring.

**REQUEST FOR PRODUCTION NO. 169**

All Documents and Communications related to incidents, issues, or problems encountered during the use of Torrent Clients, including troubleshooting steps, resolutions, and any impact assessments.

**REQUEST FOR PRODUCTION NO. 170**

All Documents and Communications related to audits, reviews, or assessments conducted on the use of Torrent Clients for Data acquisition, including any findings, recommendations, and follow-up actions.

**REQUEST FOR PRODUCTION NO. 171**

All Documents and Communications related to any data integrity checks, validation processes, quality assurance measures, and data deduplication processes applied to the Data from any Online Database acquired via Torrent Client, including any algorithms, implementation notes, and performance metrics.

**REQUEST FOR PRODUCTION NO. 172**

All Documents and Communications related to any data storage solutions used to store the Data acquired from Online Databases via Torrent Client, including any local servers, virtual servers, cloud-based storage, and any associated data management policies and access control records.


Dated: January 16, 2025                    By:    _____*/s/ Maxwell V. Pritt*_____
                                                              Maxwell V. Pritt


**LIEFF CABRASER HEIMANN &**            **BOIES SCHILLER FLEXNER LLP**
**BERNSTEIN, LLP**                                    David Boies (*pro hac vice*)
Elizabeth J. Cabraser (SBN 083151)         333 Main Street
Daniel M. Hutchinson (SBN 239458)        Armonk, NY 10504
Reilly T. Stoler (SBN 310761)                   (914) 749-8200
275 Battery Street, 29th Floor                   dboies@bsfllp.com

San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
rstoler@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500
rgeman@lchb.com

Kenneth S. Byrd (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
kbyrd@lchb.com
bsugar@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Margaux Poueymirou (SBN 356000)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
mpoueymirou@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406 Los
Angeles, CA 90027
(323) 968-2632
mb@butterricklaw.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC  20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and
Representative Plaintiffs and the Proposed
Class*

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dsraite@dicellolevitt.com

**COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, am employed by Boies Schiller Flexner, LLP. My business address is 1401 New York Avenue NW, Washington, DC 20005. I am over the age of eighteen and not a party to this action.

On January 16, 2025, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFFS' SEVENTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC.**

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 16, 2025.

/s/ *Jay Schuffenhauer*
Jay Schuffenhauer

1

## SERVICE LIST

2
Bobby A. Ghajar
Colette Ghazarian
3
**COOLEY LLP**
1333 2nd Street, Suite 400
4
Santa Monica, CA 90401
Email: bghajar@cooley.com
5
         cghazarian@cooley.com
6
7
Kathleen R. Hartnett
**COOLEY LLP**
8
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
9
Email: khartnett@cooley.com

10
Judd D. Lauter
Elizabeth Lee Stameshkin
11
Juan Pablo Gonzalez
**COOLEY LLP**
12
3175 Hanover Street
Palo Alto, CA 94304
13
Email: jlauter@cooley.com
14
         lstameshkin@cooley.com
         jgonzalez@cooley.com
15

16
Cole Augustus Poppell
Phillip Edward Morton
17
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
18
Washington, DC 20004-2400
(202) 776-2317
19
Fax: (202) 842-7899
Email: cpoppell@cooley.com
20
         pmorton@cooley.com
21

22
Angela L. Dunning
**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**
23
1841 Page Mill Road
Palo Alto, CA 94304-1254
24
Email: adunning@cgsh.com
25

26
*Counsel for Defendant Meta Platforms, Inc.*

27

28

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

*[Additional counsel included below]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Richard Kadrey, et al., | Case No. 3:23-cv-03417-VC |
| *Individual and Representative Plaintiffs*, | **PLAINTIFFS' FOURTH SET OF INTERROGATORIES TO DEFENDANT META** |
| v. | |
| Meta Platforms, Inc., | |
| *Defendant*. | |

Case No. 3:23-cv-03417-VC

PLAINTIFFS' FOURTH SET OF INTERROGATORIES TO DEFENDANT META PLATFORMS, INC.

In accordance with Federal Rules of Civil Procedure Rules 26 and 33, Plaintiffs, by and through their undersigned attorneys, hereby request that Defendant Meta Platforms, Inc. respond to the following Fourth Set of Interrogatories separately and fully, in writing and under oath, within eighteen (18) days of service hereof, in accordance with the following definitions and instructions.

## **DEFINITIONS**

As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form:

1. "All," "or," and "and" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

2. "ASSERTED WORK(S)" means the works listed in Exhibit A to the Complaint, Dkt. No. 395-11 at 27-73.

3. "CMI" or "Copyright Management Information" means information indicating a Work's copyrighted status, INCLUDING but not limited to "©," "ISBN," "All rights reserved," Digital Rights Management (DRM) Notices, and publisher identifiers.

4. "CONCERNING," "REFERRING," "RELATING" or "REFLECTING" are used interchangeably and shall mean constituting, evidencing, supporting, regarding, mentioning, reflecting, concerning, relating to, referring to, pertaining to, alluding to, responding to, proving, discussing, assessing, disproving, connected with, commenting on, about, showing, describing, and/or logically or factually dealing with the matter described in the request in which the term appears.

5. "DATA" means content, files, information, metadata, software, or any other digital material, INCLUDING DOCUMENTS.

6. "DESCRIBE" means to provide a detailed narrative statement or description of the specific facts o r matters to which an Interrogatory refers, INCLUDING, but not limited to, an identification of all Persons, Communications, acts, transactions, events, agreements, recommendations,

quantification of values, and DOCUMENTS used, that are necessary or desirable to support such statement or make the description complete. DESCRIBE INCLUDES "IDENTIFY."

7.    "DOCUMENT(S)" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

a.    The originals, drafts and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;

b.    Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and all drafts, alterations, modifications, changes or amendments of any of the foregoing;

c.    Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;

d.    All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such

as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones;

    e.    Any computer programming code or file, including, but not limited to, source code, scripts, code packages, coding tools, and models.

8.    "IDENTIFY" (and variations thereof) means the following:

    a.    With respect to a natural PERSON, provide the PERSON's: (i) full name; (ii) current or last known home address; (iii) current or last known business address; (iv) current or last known email address; (v) current or last known occupation, employer and business position or title; and (vi) current or last known telephone number.

    b.    With respect to an entity which is not a natural PERSON, provide: (i) the full name of the entity; (ii) the type of entity (e.g., corporation, partnership, sole proprietorship, association); (iii) the name, address and telephone number of its principal place of business; (iv) all names under which it is doing, or has ever done, business; (v) the names of the contact PERSON; and (vi) the date or interval when such entity stood in the capacity referenced by the interrogatory.

    c.    With respect to an event or action, (i) provide the date of the event or action; (ii) state the PERSON(s) present or involved; (iii) state the place or places where the event or action took place.

    d.    With respect to a DOCUMENT, (i) state the originator, author, addressee, recipient; (ii) DESCRIBE the contents; (iii) state the date of the DOCUMENT; (iv) the title and/or filename of the DOCUMENT, INCLUDING in the case of torrent files, the magnet link; and (v) IDENTIFY all Persons with knowledge of any of the foregoing.

    e.    With respect to a fact, means to (i) DESCRIBE the fact; (ii) state when it became known to META; (iii) IDENTIFY the source from which META learned the fact; and (iv) IDENTIFY the DOCUMENTS that record, show or refer to the fact.

9.     "INCLUDING" and "INCLUDES" are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "Including" and "Includes" shall be construed as if followed by the phrase "but not limited to."

10.     "LLAMA MODEL(S)" means all instances, iterations, versions, updates, or modifications of the META's AI model known as "LLaMa" or "Llama" and any other AI models developed or in development by META. This INCLUDES, but is not limited to, the original version, experimental versions, subsequent versions, updates, or refinements made to the underlying algorithms, parameters, or architecture.

11.     "LLAMA 4" means the series of language models of the same name that are currently under development by META, as well as precursor models and variant models.

12.     "LLAMA 5" means the series of language models of the same name that are currently under development by META, as well as precursor models and variant models.

13.     "META" means Meta Platforms, Inc., and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other PERSON or entity acting on its behalf or under its control.

14.     "MITIGATIONS" means measures and practices implemented to prevent copyright infringement and ensure adherence to copyright laws, and measures and practices implemented to prevent LLAMA MODELS from outputting copyrighted content.

15.     "ONLINE DATABASE(S)" means the type of databases described in paragraphs 43 and 44 of the Complaint (Dkt. No. 395-11) and those identified in Meta_Kadrey_00185698—online databases that contain copyrighted material or books, INCLUDING but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, and The Pile. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

16.     "PERSON" means any natural person or any business, legal, or governmental entity or association.

17.     "SERVICE PROVIDER" means any operator of a non-META network, cloud or off-site data center, or other vendor, through which or on which DATA acquired via TORRENT CLIENT software, application, or platform was transmitted or stored.

18.     "TRAIN" or "TRAINING" refers to any process or method used to develop, improve, or refine a machine-learning model. This INCLUDES, but is not limited to, feeding DATA into a model, adjusting algorithms, optimizing parameters, and testing, validating, and updating models. It also INCLUDES the selection, preparation, and use of datasets or databases, the execution of supervised, unsupervised, or reinforcement learning techniques, and any pre-processing steps, model tuning, cross-validation, and performance evaluations.

19.     "TORRENT CLIENT(S)" means a network or application designed for sharing computer DATA that was used by META to obtain DATA from any ONLINE DATABASE, INCLUDING but not limited to BitTorrent and other peer-to-peer torrent file sharing protocols. BitTorrent should not be construed to refer to only the BitTorrent software client, but also to refer to the peer-to-peer file-sharing protocol.

20.     "YOU" or "YOUR" refers to META.

## INSTRUCTIONS

Solely for the purpose of these interrogatories, the following instructions shall apply:

1.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these interrogatories shall be deemed to be continuing in nature so that, if YOU, YOUR directors, officers, employees, agents, representatives or any PERSON acting on YOUR behalf, subsequently discover or become aware of information that is responsive to these Interrogatories, YOU shall make such information available to Plaintiffs within seven (7) days of discovering or becoming aware of such information.

2.     Unless otherwise noted herein, the relevant time period of these interrogatories shall be January 1, 2000, to the present (the "Relevant Period").

3.     Each interrogatory shall be answered separately and completely in writing under oath. YOUR response is to be signed and verified by the PERSON making it, and the objections signed by the attorney making them, as required by Federal Rules of Civil Procedure 33(b).

4.      Each interrogatory shall be answered fully unless it is objected to in good faith, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable. If only a part of an interrogatory is objectionable, the remainder of the interrogatory shall be answered. If an objection is made to an interrogatory or to a part of an interrogatory, the specific ground for the objection shall be set forth clearly. If YOU object based on a purported ambiguity in construing an interrogatory, or a word, phrase, or clause contained within it, or an instruction or definition, such objection shall not serve as a basis for refusing to answer; YOU must set forth in YOUR answer the allegedly ambiguous language and the construction chosen or used to provide a complete response.

5.      If YOU answer any interrogatory by reference to business records pursuant to Federal Rules of Civil Procedure Rule 33, and as the term "business record" is defined under the Federal Rules of Evidence, YOU shall produce the business records and IDENTIFY any such DOCUMENTS by bates number, as well as the name of the employee certifying the DOCUMENTS as business records for purposes of responding to the Interrogatory.

6.      If the interrogatory cannot be answered completely, it shall be answered to the extent possible. If YOU do not have personal knowledge sufficient to respond fully to an interrogatory, YOU shall so state, but shall make a reasonable and good faith effort to obtain the information by inquiry to other natural or legal PERSONS or organizations. If YOU are otherwise unable to answer any interrogatory, the reasons for YOUR inability to answer shall be separately stated in detail for each interrogatory.

7.      If any answer to an interrogatory, or part thereof, is withheld on a claim of privilege, attorney work-product, or otherwise protected from discovery, YOU are requested to comply with the requirements of Federal Rule of Civil Procedure 26(b)(5) as to each communication, DOCUMENT, thing, or piece of information for which a claim of privilege or protection from discovery is made.  For any information withheld on the ground that it is privileged, attorney work-product, or otherwise protected from discovery, IDENTIFY the information or DOCUMENT, DESCRIBE its subject matter and date, IDENTIFY all authors and all recipients (INCLUDING copied and blind copied recipients), and specify the basis for the claimed privilege or other grounds of exclusion. For each interrogatory response

withheld on the basis of privilege, state whether the information requested has ever been provided to any governmental entity or any other party other than META. For each interrogatory response withheld on the basis of attorney work-product, IDENTIFY the litigation in connection with which the information was obtained and/or prepared.

8.      YOUR answer to each interrogatory shall IDENTIFY each individual who supplied information for or participated in the preparation of Your answers to these interrogatories, and each DOCUMENT to which You referred or upon which You relied in the preparation of YOUR answers to these Interrogatories.

9.      These interrogatories are continuing in nature and YOUR responses to them are to be promptly supplemented or amended if, after the time of YOUR initial responses, YOU learn that any response is or has become in some material respect incomplete or incorrect, pursuant to Federal Rule of Civil Procedure 26(e).

10.      To be clear, each interrogatory seeks information from all predecessors, successors, subsidiaries, departments, divisions, and/or affiliates of META.

## INTERROGATORIES

### INTERROGATORY NO. 26:

DESCRIBE the DATA that YOU obtained RELATING to LLAMA 4 and LLAMA 5, INCLUDING, to the extent that DATA was acquired, downloaded, obtained or otherwise derived from ONLINE DATABASES, a list of all such databases and, for each, the dates on which DATA was obtained; how much DATA was obtained; whether DATA was seeded or otherwise shared with or made available to third parties, and if so, by whom and how much; the number of copies of DATA made; how the DATA has been used to TRAIN any LLAMA MODEL; and the percentage of the TRAINING DATA derived from each ONLINE DATABASE.

### INTERROGATORY NO. 27:

For all DATA, INCLUDING each ASSERTED WORK, acquired via TORRENT CLIENTS, IDENTIFY all SERVICE PROVIDERS through which or on which DATA acquired via TORRENT CLIENT software, application, or platform was transmitted or stored, and DESCRIBE by title, filename, amount or percentage downloaded, number of downloads, and recipient (by username, IP address, and

other identifiers maintained by META) the DATA distributed, downloaded, and/or seeded by META; the name of the ONLINE DATABASE that the DATA was derived from, downloaded from, or believed to have originated from; the amount of DATA that Meta seeded; and YOUR efforts, if any, to minimize seeding of such DATA.

**INTERROGATORY NO. 28:**

DESCRIBE all policies and procedures related to IDENTIFYING, assessing, vetting, and selecting sources of DATA for any LLAMA MODEL, INCLUDING but not limited to any policies and procedures RELATING to the means and methods of acquiring DATA, or seeding or distributing DATA, such as acquiring or seeding DATA via TORRENT CLIENTS.

**INTERROGATORY NO. 29:**

DESCRIBE all actions that YOU took REGARDING the removal of any text and CMI from DATA, INCLUDING each ASSERTED WORK, in connection with the development of YOUR LLAMA MODELS, INCLUDING actions that were manual or automated via scripts.

**INTERROGATORY NO. 30:**

DESCRIBE all copyright and intellectual property MITIGATIONS that YOU employed RELATING to the development and TRAINING of YOUR LLAMA MODELS, INCLUDING efforts to limit LLAMA MODEL outputs that showed signs of regurgitation of copyrighted material.

Dated: January 19, 2025                    By:    _/s/ Maxwell V. Pritt_
                                                          Maxwell V. Pritt

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
Reilly T. Stoler (SBN 310761)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
rstoler@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

New York, NY 10013
(212) 355-9500
rgeman@lchb.com

Kenneth S. Byrd (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
kbyrd@lchb.com
bsugar@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Margaux Poueymirou (SBN 356000)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
mpoueymirou@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butericklaw.com

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC  20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and
Representative Plaintiffs and the Proposed
Class*

(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dsraite@dicellolevitt.com

**COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

1

## <u>CERTIFICATE OF SERVICE</u>

2          I, the undersigned, am employed by Boies Schiller Flexner, LLP. My business address is 1401

3  New York Avenue NW, Washington, DC 20005. I am over the age of eighteen and not a party to this

4  action.

5          On January 19, 2025, I caused the following documents to be served by email upon the parties

6  listed on the attached Service List:

7      •   **PLAINTIFFS' FOURTH SET OF INTERROGATORIES TO DEFENDANT META
           PLATFORMS, INC.**
8

9          I declare under penalty of perjury that the foregoing is true and correct. Executed January 19,

10  2025.

11                                                    /s/ *Jay Schuffenhauer*
                                                       Jay Schuffenhauer
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST

Bobby A. Ghajar
Colette Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Email: bghajar@cooley.com
    cghazarian@cooley.com

Kathleen R. Hartnett
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Email: khartnett@cooley.com

Judd D. Lauter
Elizabeth Lee Stameshkin
Juan Pablo Gonzalez
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Email: jlauter@cooley.com
    lstameshkin@cooley.com
    jgonzalez@cooley.com

Cole Augustus Poppell
Phillip Edward Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 776-2317
Fax: (202) 842-7899
Email: cpoppell@cooley.com
    pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**
1841 Page Mill Road
Palo Alto, CA 94304-1254
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*