March 14, 2025

*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Kadrey, et al v. Meta Platforms, Inc.; Case No. 3:23-cv-03417-VC*

Dear Magistrate Judge Hixson:

Plaintiffs to the above-captioned action ("Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta") submit this letter brief regarding whether the court should compel discovery of factual materials Plaintiffs contend were considered by Meta's rebuttal expert Christopher Bakewell. The parties exchanged email correspondence on February 10, 12, 14, 18, 19, 20, 23; Plaintiffs requested the materials during Mr. Bakewell's deposition; and the parties met and conferred on February 28, 2025; and exchanged further email correspondence on March 3, 5, 7, 11, 12, and 13, but were unable to resolve the relevant issues.

**Plaintiffs' Position**

Meta's rebuttal expert Christopher Bakewell conducted fact gathering interviews of Sy Choudhury, Amrish Acharya, Dr. Ungar, and Dr. Sinkinson; had his staff take contemporaneous notes; reviewed the notes for accuracy; and revised them as needed. Transcript of the 2/21/2025 Deposition of Christopher Bakewell ("Bakewell Trans."), at 110:16-111:3, 124:15-125:4, 128:7-21, 130:3-11, 134:10-20, 141:17-142:2, 143:5-11, 150:9-151:4.[1] Mr. Bakewell relied heavily on the information obtained from the interviews in his rebuttal report.[2] Yet the interview notes were absent from the list of materials he was provided, and they were not produced as materials he considered even after Plaintiffs specifically asked for them. Meta claims the notes are not discoverable because (a) they were taken by Mr. Bakewell's team and he did not consider the notes themselves, and (b) the notes are a draft report and not discoverable pursuant to Federal Rule of Civil Procedure 26(b)(4)(B)). Meta is wrong on both counts and should be compelled to produce the interview notes, and present Mr. Bakewell for an additional 2-3 hours of deposition.

A party is required to produce all "facts or data considered by [a designated expert witness] in forming" their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[I]n federal court ... an expert witness must produce all data she has considered in reaching her conclusions."). This disclosure obligation is "'interpreted broadly' to encompass 'any material considered by the expert, from whatever source, that contains factual ingredients.'" *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 (9th Cir. 2014) (quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (2010 amendments)). Because Mr. Bakewell considered the interview notes in forming his opinions, they must be produced.

Meta argues the notes are not discoverable because Mr. Bakewell relied on the interviews themselves, not the notes. The court rejected a similar argument in *Mosaic Potash Carlsbad, Inc. v. Intrepid Potash, Inc.* ("*Mosaic*"), 2019 WL 2766912, at *2 (D.N.M. July 2, 2019). There, defendant argued it did not need to produce notes of conversations between its expert and an employee because the expert "only considered the *conversations* … when preparing her report, not the *notes of those conversations*." *Id*. The court disagreed, finding that "[a]ny memorialization of factual information discussed in those conversations is discoverable." *Id*.

Here, it is also clear that Mr. Bakewell considered both the interviews and the interview notes. Mr. Bakewell testified that during the interviews he and his team had a document open that they could work in collaboratively in real time; that it was their practice to type the interview notes directly into the document; and that Mr. Bakewell's further practice was to then review the notes shortly thereafter to check them for accuracy and add to them as needed. Bakewell Trans., at 110:16-111:3, 128:7-21 ("Q. So – so who – who took notes at that meeting? A. So our practice is to get information in the report. I think really anybody could do that the way that our system works. Q. I see. So people were actually memorializing in realtime aspects of the discussion. … A. … That's what our practice is."), 130:3-11 ("Q. So, no, you did not personally take notes? … A. No. I looked back at the report not long after the discussions to ensure that they were

---

[1] The relevant excerpts from the Bakewell Trans. are attached as **Exhibit A**.

[2] Mr. Bakewell cites to his interview with Dr. Ungar 52 times (footnotes 80, 83, 106-107, 114, 176-177, 179, 181-183, 207-208, 246, 262, 292, 295-296, 298, 300, 305, 314-315, 332-335, 339-342, 347, 350-351, 383, 386, 392, 395, 407, 414, 417, 422, 424-425, 429, 445, 487, 575, 630, and 644); with Mr. Choudhury 12 times (footnotes 383, 414-416, 422, 445, 486-487, 528, 530, 532, 560); with Mr. Acharya 5 times (footnotes 555, 611, 626-628); and with Dr. Sinkinson 3 times (footnotes 357, 363-364).

1

consistent. What was in there was consistent with my memory and added stuff in accordance with my memory."), 134:10-20, 141:17-142:2, 142:6-143:2, 143:5-11, 150:9-151:4.

Asking his team to type the factual information gleaned from the interviews into a draft of his report does not transform the notes themselves into a draft report shielded from discovery. *Wenk v. O'Reilly*, 2014 WL 1121920, at *6 (S.D. Ohio Mar. 20, 2014) ("there is a substantial risk in interpreting the concept of 'draft report' too broadly;" and "[h]aving to turn over notes taken by an expert which did not result from or reflect any attorney-driven communications does not implicate the work product doctrine."); *Deangelis v. Corzine*, 2016 WL 93862, at *3 n.5 (S.D.N.Y. Jan. 7, 2016) ("It is the substance of the document and the circumstances of its creation, not its label, that dictate whether it is, in fact, a draft."). Neither does using the collaborative "draft" to provide Mr. Bakewell with the notes. *Nat. Res. Def. Council, Inc. v. Illinois Power Res. Generating, LLC*, 2018 WL 3414319, at *3 (C.D. Ill. July 13, 2018) (expert "must produce notes … and other such documentation that underlies his or her expert opinions," and staff communicating the interview notes to the expert did not make them work product).

"There is widespread consensus that notes of experts … will not be protected from discovery 'as draft reports.'" *Pennenvironment & Sierra Club v. PPG Indus., Inc.*, 2014 WL 12589147, at *2 (W.D. Pa. Oct. 7, 2014) (collecting cases). *See e.g.*, *Soukhaphonh v. Hot Topics, Inc.*, 2017 WL 6888243, at *4 (C.D. Cal. May 23, 2017) (documents reflecting expert's interviews); *Windowizards, Inc. v. Charter Oak Fire Ins. Co.*, 2015 WL 1402352, at *2 (E.D. Pa. Mar. 26, 2015) (expert's notes "are not protected draft reports under Rule 26(b)(4)(B)"); *Wenk*, 2014 WL 1121920, at *4 (expert notes "are not work product … such notes typically contain 'factual ingredients' and are therefore included in the type of 'facts or data' an expert has considered in formulating opinions and therefore must disclose."); *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 513 (N.D. Cal. 2012), *aff'd sub nom*, *Republic of Ecuador v. Mackay* ("*Mackay*"), 742 F.3d 860 (9th Cir. 2014) (notes "must be disclosed as they are not protected as draft reports and are not independently protected as work product."); *Dongguk Univ. v. Yale Univ.*, 2011 WL 1935865, at *1 (D. Conn. May 19, 2011) ("as a general matter, an expert's notes are not protected by 26(b)(4)(B) or (C).").

"[M]aterials containing 'factual ingredients' are discoverable, while opinion work product is not." *Mackay*, 742 F.3d at 870. True draft reports are protected from disclosure "to guard against the dissemination of attorney work product and facilitate the communication process between attorney and expert." *Pennenvironment,* 2014 WL 12589147, at *2; *see also Wenk*, 2014 WL 1121920, at *4. There is no such risk here. Meta's counsel did not speak during or otherwise actively participate in the interviews or notetaking. Bakewell Trans. 127:17, 128:2-4 ("And to answer your second question, yes, counsel was present. They didn't really say anything, but they were present."), 132:22-133:11, 144:1-5 (Q. Did counsel actively participate in that interview or was it more they were just there? A. They didn't – I don't remember him saying anything.").

Other courts asked to decide whether expert notes were a form of a draft expert report or discoverable facts and data have ordered an in camera review, and conducted a fact-dependent inquiry into the nature of the documents. *See, e.g.*, *Mosaic*, 2019 WL 2766912, at *3; *Wenk*, 2014 WL 1121920, at *5–6; *Salazar v. Ryan*, 2017 WL 2633522, at *3 (D. Ariz. June 19, 2017) ("at least some of the *information* obtained from [expert's] witness interviews, and memorialized in his notes, was most likely gathered … for the purpose of inclusion in his expert report. … in this sense, [his] contemporaneous notes are no different from raw data generated during testing, and would thus be discoverable as a means of providing the basis of [expert's] opinion.").

**Meta's Position**

Without any timely served or pending discovery request, Plaintiffs demand that Mr. Bakewell obtain and produce notes containing the mental impressions of his team, which he neither reviewed or considered. Plaintiffs' motion has no basis in fact or law and should be denied.

**Mr. Bakewell Took No Notes and Did Not Review Any Notes Taken By His Team**. Plaintiffs are seeking notes from Mr. Bakewell related to interviews conducted with two Meta employees (Mr. Acharya and Mr. Choudhury) and two Meta expert witnesses (Dr. Ungar and Dr. Sinkinson). Mr. Bakewell spoke to the Meta employees to get some context on matters discussed in their depositions. Similarly, Mr. Bakewell spoke with the experts to ask questions about the opinions they included in their expert reports. These interviews were a small subset of the information Mr. Bakewell considered in forming his opinions.

Mr. Bakewell was clear in his deposition that he did not take any notes of these conversations and did not consider notes taken by others in forming his opinions. When Plaintiffs questioned Mr. Bakewell about his practices regarding note-taking during one of the interviews, he confirmed that he did not take any notes. Rather, his team worked with Mr. Bakewell to draft portions of the report in view of the conversations and Mr. Bakewell made sure that any summary description was consistent with his memory of the interview:

> Q. Were you yourself one of the people who was taking notes in that first meeting with Dr. Sinkinson?
> A. I was more focused on learning and listening.
> Q. So, no, you did not personally take notes?
> A. I don't think that I took notes. . . . . No. I looked back at the report not long after the discussions to ensure that they were consistent. What was in there was consistent with my memory and added stuff in accordance with my memory.

Bakewell Tr. 129:20-130:11

Although Plaintiffs did not ask Mr. Bakewell if he took notes for any interview other than Dr. Sinkinson, Meta's counsel has confirmed with Mr. Bakewell that he did not take notes during the interviews of Mr. Acharya, Dr. Sinkinson or Dr. Ungar.

Plaintiffs also questioned Mr. Bakewell about the note-taking practices of persons on his team. Mr. Bakewell made clear that the practice of his team is to "get the information in the [draft] report." Bakewell Tr. at 134:10-15 ("Q. Okay. And do you know if they put the notes directly in the then existing draft of the report or in a separate document?" (objection omitted) "A. I couldn't know. Our practice is to get the information in the report."). Mr. Bakewell testified that he did not know whether other people on his team took notes of the interviews:

> Q. And which of the three [team members] took notes in the sense of writing things down based on what Sinkinson said in the draft? (objection omitted)
> A. I couldn't possibly know that.
> Q. Okay. So sort of everybody had their -- is this directionally correct, everybody had the report open and people were typing or not at their discretion? It wasn't like somebody was tasked with doing that versus someone else? (objection omitted)
> A. I wouldn't know that because I don't sit there and monitor people like that. I was more focused on what was being discussed.

Bakewell Tr. 130:12-131:3.

3

Meta's counsel has confirmed with Mr. Bakewell that he did not review or consider any notes that may have been prepared by his team in preparation of his expert report. Meta's counsel further confirmed with Mr. Bakewell's team that distinct from the draft report, a few sets of notes were created by team members during the interviews of Mr. Choudhury, Mr. Acharya and Dr. Ungar,[3] but are embedded in otherwise work product protected documents and were not shared with Mr. Bakewell. These notes were not transcripts or verbatim recitations of the interviews, but were merely informal mental impressions sketched out by a few team members. Mr. Bakewell's team confirmed that they did not create any separate notes for Dr. Sinkinson.

**Materials Not Considered By Mr. Bakewell Are Not Covered by Rule 26 and Are Not The Subject of Any Discovery Request**. Plaintiffs have not served any discovery request (e.g., a subpoena) directed to Mr. Bakewell or his firm requesting the materials sought in Plaintiffs' motion. Plaintiffs cite various cases – mostly from outside of the Ninth Circuit – and most of them involved a motion to compel in connection with a subpoena or discovery request. *See, e.g.*, *Mosaic*, 2019 WL 2766912 (D.N.M.) (subpoena); *Wenk v. O'Reilly*, 2014 WL 1121920 (S.D. Ohio) (discovery requests); *Deangelis v. Corzine*, 2015 WL 93862, at *5 (S.D.N.Y.) (subpoena); *NRDC, Inc. v. Illinois Power*, 2018 WL 3414319, at *1 (C.D. Ill.) (document requests); *see also Soukhaphonh v. Hot Topic, Inc.*, 2017 WL 6888243 (C.D. Cal.) (stating that party not responsible for collecting documents in expert firm's possession).

Because Plaintiffs served no subpoena or other discovery requests to Mr. Bakewell or his firm, the only legal basis for production is Fed. R. Civ. P. 26(a)(2), but that rule only requires testifying experts to provide, among other information, "the facts or data *considered* by [expert] witness in forming" their opinions. Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Because the materials sought by Plaintiffs were not considered by Mr. Bakewell, as discussed above, they are not subject to production under Rule 26. Plaintiffs cite no case holding that notes created by and containing the mental impressions of an expert's team members – that the expert specifically did not consider – fall within the scope of Rule 26.

**Plaintiffs' Cases Do Not Support Production of Materials Not Considered by the Expert.** Plaintiffs' cited cases stand for the unremarkable proposition that materials *actually considered* by the expert, such as notes personally taken, written, or reviewed *by the expert*, may be discoverable.[4] Plaintiffs do not point to any case finding that notes taken by others that were not actually considered by the expert in rendering their opinions are discoverable. Indeed, even if such notes *were* communicated to Mr. Bakewell (which they were not), district courts (including in this district) have expressly found that expert-staff communications are protected from production under Rule 26. *See, e.g.*, *In re App. of Rep. of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012) (finding internal communications between expert and staff are expressly protected as work product); *Wyatt B. v. Kotek*, 2024 WL 1574471, at *2 (D. Or. Apr. 11, 2024) ("The Court concurs

---

[3] To compromise, Meta offered to produce copies of the factual content (redacting any work product content) documented by Mr. Bakewell's team members during the interviews to avoid Plaintiffs burdening the Court, provided that Plaintiffs withdraw their demands for a deposition and this letter brief. Plaintiffs rejected Meta's offer, demanding that Meta produce the notes first and Plaintiffs would request more materials and deposition time from the Court at their option.

[4] When Plaintiffs requested notes of interviews personally drafted by another Meta expert, Ms. Frederiksen-Cross, Meta – as a courtesy – produced those to Plaintiffs without objection.

[with *In re Ecuador*] and so declines to order production of the internal communications between [the expert] and her assistants, as those communications are protected work product.").

Plaintiffs' reliance on *Mosaic* is misplaced, as it only ordered that interview notes *taken by the expert* be reviewed *in camera* in a motion to enforce a subpoena to the expert. *Mosaic*, 2019 WL 2766912, at *2. The court in *Mosaic* never ordered production of the notes; it issued another opinion nine days later (not cited by Plaintiffs) denying the motion to compel because the *in camera* review confirmed that the notes in question contained protected work product. *Mosaic Potash Carlsbad, Inc. v. Intrepid Potash, Inc.*, 2019 WL 3037100, at *2 (D.N.M. July 11, 2019).

To the extent Mr. Bakewell's team contemporaneously memorialized facts learned in interviews in his draft expert report, Plaintiffs do not cite any cases disapproving of that practice or requiring that those portions of the draft expert report be produced. Plaintiffs cite *Illinois Power*, but the court there expressly held "that the Rule 26(b)(4)(B)-(C) privilege extends to expert-staff communications that constitute drafts of the expert report, or portions thereof[.]" *Illinois Power*, 2018 WL 3414319, at *3. *Deangelis* denied a motion to compel production of summaries of facts prepared by the expert's team inserted into a draft expert report. *Deangelis*, 2016 WL 93862, at *5 ("In each case, it seems clear that, when he requested the documents, [the expert] anticipated that those documents would form a part of the report he was drafting."). Plaintiffs also cite *Wenk*, which ordered an *in camera* review of "notes taken by an expert," not draft expert reports or notes taken by others that were not considered by the expert. *Wenk*, 2014 WL 1121920, at *6-7.

**No Additional Deposition is Necessary or Appropriate.** Without citing any authority, Plaintiffs seek an additional "2-3 hours of deposition" with no limitation on subject matter. Plaintiffs already took a 6 hour deposition of Mr. Bakewell regarding his expert report and have shown no good cause to get a boundless "do-over" up to 50% of the length of his prior deposition.

Plaintiffs' motion should be denied in its entirety.

**Plaintiffs' Reply**

Meta acknowledges the notes "contemporaneously memorialized facts learned in interviews." It doesn't matter that the notes were plugged into a draft report. Bakewell's own testimony shows that he "considered" them. He and his team had a document they worked in collaboratively; it was their practice to type interview notes directly into the document in real time; and Bakewell would then review the notes to check for accuracy and add to them as needed. Tr. 110:16-111:3, 128:7-21 (Q. I see. So people were actually memorializing in realtime aspects of the discussion. … A. … That's what our practice is."), 130:3-11 ("A. No. I looked back at the report not long after the discussions to ensure that they were consistent. … and added stuff in accordance with my memory."). By "looking back" "to ensure that they were consistent," and "add[ing] stuff in accordance with my memory," Bakewell considered the notes. *Wenk*, 2014 WL 1121920, at *5 ("[d]efendants' assertion that the notes made by [expert] constituted a 'draft' of his expert report means that they were considered by him in formulating his opinion.").[5] Further, the deposition request is appropriate. Plaintiffs still don't know what the notes contain. If they contradict Bakewell's conclusions, it would certainly be probative. Any additional deposition time would be limited to the contents of the notes and how they intersect with conclusions in Bakewell's report.

---

[5] Plaintiffs were open to Meta's offer to produce redacted notes, but only if they were provided sufficiently ahead of L.R. 37-3's deadline such that Plaintiffs could review the notes and determine if further relief was needed. Plaintiffs did not receive the notes and this brief followed.

By:  /s/ *Phillip Morton*

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email: bghajar@cooley.com
          cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
Email: mweinstein@cooley.com
          lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile:  (415) 693-2222
Email: khartnett@cooley.com
          jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304

By:  /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com
jischiller@bsfllp.com

*Interim Lead Counsel for Plaintiffs*

6

Telephone: (650) 815-4121
Facsimile:  (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2025                                        BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt

*Attorneys for Plaintiffs*