# GHAJAR EXHIBIT 34

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

_____
RICHARD KADREY, et al.,       )
                              )
       Individual and         )
       Representative         )
       Plaintiffs,            )
                              )
v.                            )   Case No. 3:23-cv-03417-VC
                              )
META PLATFORMS, INC.,         )
                              )
       Defendant.             )
_____   )


** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **
Videotaped Deposition of SY CHOUDHURY
San Francisco, California
Tuesday, January 14, 2025


Reported Stenographically by
Michael P. Hensley, RDR, CSR No. 14114
_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

Page 22

1   a follow-up because it happened earlier.
2       Q.   Okay.
3       A.   Shall I call it the earlier meeting?  I'll
4   call it the earlier meeting because that's probably
5   a better description.
6       Q.   Okay.  You seem to be suggesting there's
7   some connection between the two meetings; is that
8   correct?
9       A.   There is a connection in the two meetings
10  because as -- as, you know, workstreams happen,
11  there was -- there is discussion at different
12  levels, and in that the earlier meeting -- why don't
13  I call it that, which is more factual -- there was
14  also discussion on -- at least there was discussion
15  on pros and cons of continuing the licensing
16  outreach.
17      Q.   Right.  So that's the same subject of the
18  meeting that you then had with the same three
19  people?
20      A.   It -- it could have been more, but it --
21  that's -- that one topic was discussed.
22      Q.   Okay.  And what were you told about what
23  was discussed at that earlier meeting in April 2023
24  about the pros and cons of continuing licensing
25  outreach?

1    A.    I think that there was nothing that we
2  didn't discuss in this in my meeting that was
3  significantly different.  You know, the -- my
4  understanding was it was the same considerations
5  where we as a company learned that most if not all
6  the fiction publishers did not have the rights --
7  the worldwide rights to license the copyrights.
8         If they did have some rights, they were
9  regional.  This was actually kind of a learning to
10 all of us, and this was discussed in the previous
11 meeting, the earlier meeting as well.  Also just the
12 status that we weren't getting a lot of engagement
13 from the publishers in general and -- nor a lot of
14 data points on proposals, like, almost like an RFP.
15         So the same topics were discussed because,
16 you know, as -- yeah, the same topics were
17 discussed.
18    Q.    Mm-hmm.  And so what are all of the topics
19 that were discussed?
20    A.    I just mentioned them.
21    Q.    Well, you mentioned two.  What are the
22 other topics?
23    A.    Those were -- the main topics were the
24 lack of worldwide copyright ability for most of the
25 companies we had engaged with.  Number two, where

Page 24

```
 1   there was copyright -- sorry, the ability to
 2   license, it was regional.  Third, we weren't getting
 3   any pricing proposals except for, I think, one.  One
 4   publisher.  I don't recall now.  I think I've spoken
 5   to it before but it's Wiley or one of the bigger
 6   publishers.  I forget the name.
 7             And then last, yeah, we weren't getting a
 8   lot of engagement from many of the publishers in
 9   general; right?  We were -- we'd reach out and get
10   no responses.
11             So those were the four topics.
12        Q.   When you say "topics," are those the same
13   as what you referred to as pros and cons?
14        A.   Yes.  Yeah.
15        Q.   Okay.  Are there any -- are those pros or
16   cons?
17        A.   Those were, you know -- when I say "pros
18   and cons," it's kind of the consideration status.  I
19   think they're both pros and cons.  Sometimes if we
20   wanted to do -- if there was a way to do a regional
21   copyright license, maybe that's a pro; right?
22        Q.   Mm-hmm.
23        A.   So --
24             Of course we needed a worldwide
25   copyright -- we needed a worldwide license in order
```

Page 25

1   to engage.
2       Q.   Mm-hmm.  All right.  Are you aware that
3   not a single document that's been produced or any
4   testimony in this case has suggested that you ever
5   asked any publisher about a worldwide copyright
6   ability for text training data?
7            ATTORNEY HARTNETT:  Objection to the form.
8            THE WITNESS:  I'm not aware of that, but
9   we definitely asked for that.
10  BY ATTORNEY PRITT:
11      Q.   Well, how did you ask for that?
12      A.   My team, when they engaged with them,
13  asked for that.  It's standard methodology to ask
14  for world -- not just worldwide rights.  We don't --
15  our products and technologies are used worldwide;
16  and so it's -- the reason why it's not written down
17  is because it's in -- it's in kind of standard BD
18  engagement model.
19      Q.   Oh, so it's implicit to you?
20           ATTORNEY HARTNETT:  Objection to the form.
21           THE WITNESS:  We wouldn't -- it's not
22  implicit.  We wouldn't do a -- I don't think we
23  would do a license for something that's regional.
24  We have not, that I know of, for some of the other
25  engagements that we do.

Page 61

```
 1                CERTIFICATE OF SHORTHAND REPORTER
 2
 3        I, Michael P. Hensley, Registered Diplomate
 4   Reporter for the State of California, CSR No. 14114,
 5   the officer before whom the foregoing deposition was
 6   taken, do hereby certify that the foregoing
 7   transcript is a true and correct record of the
 8   testimony given; that said testimony was taken by me
 9   stenographically and thereafter reduced to
10   typewriting under my direction; that reading and
11   signing was not requested; and that I am neither
12   counsel for, related to, nor employed by any of the
13   parties to this case and have no interest, financial
14   or otherwise, in its outcome.
15
16
17
18                      [signature]
19
20                      Michael P. Hensley, CSR, RDR
21
22
23
24
25
```