# EXHIBIT D

# GHAJAR EXHIBIT 7

# FILED UNDER SEAL

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4    -------------------------------:
 5    RICHARD KADREY, et al.,        :
 6        Individual and             :
 7      Representative Plaintiffs,   :
 8            vs.                    : Case No.:
 9    META PLATFORMS, INC.,          : 3:23-cv-03417-VC
10    a Delaware corporation;        :
11              Defendant.           :
      -------------------------------:
12
13       VIDEOTAPED DEPOSITION OF MATTHEW C. KLAM
14         Cleary Gottlieb Steen & Hamilton, LLP
15              Tuesday, December 10, 2024
16                    9:40 a.m.
17
18    Reported by:
19    Robert M. Jakupciak, RPR
20    JOB No. SF-7030273
21
22    PAGES 1 - 381
```

Page 1

| | | |
|---|---|---|
| 1 | So the idea that a piece of work is | 11:40:36 |
| 2 | protected under fair use because it's | 11:40:39 |
| 3 | transformative, fair use protects that new | 11:40:41 |
| 4 | work, and if a piece is not transformative, | 11:40:46 |
| 5 | it's deemed derivative and it's not protected | 11:40:50 |
| 6 | under fair use.  That's what I took away from | 11:40:53 |
| 7 | that whole conversation about or attempt to | 11:40:56 |
| 8 | learn about fair use. | 11:41:00 |
| 9 | Q. Okay.  Would you agree that Meta AI | 11:41:02 |
| 10 | is capable of generating a variety of content | 11:41:11 |
| 11 | that has nothing to do with your books? | 11:41:19 |
| 12 | A. Yes. | 11:41:23 |
| 13 | Q. Would you agree with me that Meta | 11:41:26 |
| 14 | AI serves a purpose different from that of your | 11:41:31 |
| 15 | books? | 11:41:40 |
| 16 | MR. RATHUR:  Objection to form. | 11:41:43 |
| 17 | A. Yeah.  Sometimes they do other | 11:41:47 |
| 18 | stuff, yes. | 11:41:49 |
| 19 | Q. Would you agree with me that Meta | 11:41:51 |
| 20 | AI serves, has functionality that is different | 11:41:53 |
| 21 | from your books? | 11:41:59 |
| 22 | A. Yes. | 11:42:03 |

Page 101

```
 1              REPORTER'S CERTIFICATE
 2
 3              I, ROBERT M. JAKUPCIAK, an RPR and
 4    Notary Public within and for the District of
 5    Columbia do hereby certify:
 6              That the witness whose deposition is
 7    hereinbefore set forth, was duly sworn and that
 8    the within transcript is a true record of the
 9    testimony given by such witness.
10              I further certify that I am not
11    related to any of these parties to this action
12    by blood or marriage and that I am in no way
13    interested in the outcome of this matter.
14              IN WITNESS WHEREOF, I have hereunto
15    set my hand this 20th day of December, 2024.
16
17              [signature]
18              ROBERT M. JAKUPCIAK, an RPR and
19              Notary Public
20
21    My Commission Expires:
22    February 28, 2029
```

Page 377

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4
 5    RICHARD KADREY, et al.,                )
 6             Individual and                )
 7          Representative Plaintiffs,)
 8            vs.                            )Case No.
 9    META PLATFORMS, INC., a                )3:23-cv-03417-VC
10    Delaware corporation,                  )
11               Defendant.                  )
12    _____)
13
14              C O N F I D E N T I A L
15
16       VIDEOTAPED DEPOSITION OF SARAH SILVERMAN
17                Los Angeles, California
18              Thursday, October 10, 2024
19                      VOLUME I
20
21    Stenographically Reported by:
22    RENEE D. ZEPEZAUER, RPR, CRR, CSR No. 6275
23    JOB No. 6944934
24
25    PAGES 1 - 330
```

Page 1

CONFIDENTIAL

1    question.                                                        06:17:02

2           THE WITNESS:  This case is a copyright

3    infringement case.  My copyright was infringed.  Period.

4    BY MS. DUNNING:

5        Q    Would you agree that making an AI model that       06:17:23

6    can generate content unrelated to your book serves a

7    purpose different from your book itself?

8           MR. ZIRPOLI:  Object to the form of the

9    question.

10          THE WITNESS:  I don't understand your question.      06:17:41

11   Oh, that them stealing, but they stole for the greater

12   good because they are not going to make any money from

13   their AI model.  Come on.  If you were representing me,

14   you would be completely -- okay.

15          MS. DUNNING:  Can you read back my question,         06:18:00

16   please.

17          (Record read.)

18          THE WITNESS:  I think that question is beyond

19   irrelevant because what this book does, it does do

20   something for the AI model or they wouldn't have stolen    06:18:24

21   it.  There are things in it that I don't know.  Maybe

22   modern language, poetic license, things that aren't

23   necessarily in -- myriad public domain books they could

24   have used.  It must add some kind of value.  For me to

25   know that value is irrelevant.  But they took it, and      06:18:45

Page 319

Case 3:23-cv-03417-VC   Document 566-4   Filed 04/25/25   Page 8 of 14
CONFIDENTIAL

```
1    they knew it was wrong.  They knew it was a copyright,    06:18:49
2    and they didn't get anything on the written page.  So
3    clearly they saw value in it.
4            MS. DUNNING:  I'll move to strike the answer.
5            MR. ZIRPOLI:  That's denied.                       06:19:02
6            MS. DUNNING:  The question -- you're not the
7    judge.
8            MR. ZIRPOLI:  You don't get to move to strike.
9            THE WITNESS:  I deny it.
10           MS. DUNNING:  I'm going to move to strike the      06:19:07
11   answer.
12           MR. ZIRPOLI:  Denied.
13           THE WITNESS:  I bet.
14   BY MS. DUNNING:
15       Q   My question is whether -- let's ask the            06:19:11
16   question one more time, if you would.
17           MR. ZIRPOLI:  The question has been asked and
18   answered now twice.
19           THE WITNESS:  This time with pizzaz.  She can't
20   write that.  That's not fair.                              06:19:18
21           (Record read.)
22           THE WITNESS:  I see why you're going -- for the
23   transformative thing.
24           MR. ZIRPOLI:  Object to the form of the
25   question.                                                  06:19:47
```

Page 320

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | THE WITNESS: I disagree. | 06:19:50 |
| 2 | BY MS. DUNNING: | |
| 3 | Q    Why do you disagree? | |
| 4 | A    Just to be a dick. | |
| 5 | Q    Is there any other reason you disagree? | 06:19:58 |
| 6 | A    I guess because I've answered this question a | |
| 7 | myriad of times and you didn't like the answer so you | |
| 8 | move to strike it. | |
| 9 | It's not about the output.  If the output might | |
| 10 | not be this book, but without this book it wouldn't have | 06:20:16 |
| 11 | the out-book, and all the other books for which the | |
| 12 | copyright was breached by your client knowingly. | |
| 13 | Q    Have you ever talked to anyone at HarperCollins | |
| 14 | about licensing your book for AI training? | |
| 15 | A    No.  I haven't talked to them since I wrote the | 06:20:33 |
| 16 | book. | |
| 17 | Q    Have you ever talked to your agent about | |
| 18 | licensing your work for AI training? | |
| 19 | A    Again, no. | |
| 20 | Q    Have you ever talked to your business partner | 06:20:46 |
| 21 | Mr. Leventhal about licensing your work for AI training? | |
| 22 | A    I've talked to nobody, especially not Meta or | |
| 23 | ChatGPT which really is the shitty -- the shitty fact, | |
| 24 | the reason why we're here. | |
| 25 | Q    Have you ever talked to your agents at UTA | 06:21:06 |

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby certify:
 3              That the foregoing proceedings were taken
 4    before me at the time and place herein set forth; that any
 5    witnesses in the foregoing proceedings, prior to
 6    testifying, were administered an oath; that a record of
 7    the proceedings was made by me using machine shorthand
 8    which was thereafter transcribed under my direction; that
 9    the foregoing transcript is a true record of the testimony
10    given; that if the foregoing proceedings were reported
11    stenographically remote from the witness and parties, the
12    transcript of the proceedings reflects the record that I
13    could hear and understand to the best of my ability.
14              Further, that if the foregoing pertains to
15    the original transcript of a deposition in a Federal
16    Case, before completion of the proceedings, review of
17    the transcript [ X ] was [  ] was not requested.
18              I further certify I am neither financially
19    interested in the action nor a relative or employee of any
20    attorney or any party to this action.
21              IN WITNESS WHEREOF, I have this date
22    subscribed my name this 24th day of October, 2024.
23
24              RENEE DiMENNO ZEPEZAUER
25              CSR #6275, RPR, CRR
```

Page 326

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN FRANCISCO DIVISION
 4     - - - - - - - - - - - - - - -+
 5     RICHARD KADREY, et al,        |
 6              Plaintiffs,          | Case Number:
 7        vs.                        | 3:23-cv-03417-VC
 8     META PLATFORMS, INC., a       |
 9     Delaware corporation,         |
10              Defendant.           |
11     - - - - - - - - - - - - - - -+
12
13
14          Confidential Videotaped Deposition of
15                   RACHEL LOUISE SNYDER
16             Wednesday, December 11, 2024
17                      at 9:42 a.m.
18                  in Washington, D.C.
19
20
21     Reported by:
22     Laurie Donovan, RPR, CRR, CLR
23     JOB 7030288
24
25     PAGES 1 - 285

                                                    Page 1
```

```
 1   think it did have something to do with -- I mean it's
 2   not, obviously not topically connected to what I'm
 3   writing about, but, you know, in terms of a human
 4   being doing the work and then creating their own
 5   thing, then it seems kind of the same, although I
 6   don't know if recipes are copyrightable or not.
 7        Q    So I'm not asking about Ina Garten.  I'm
 8   just asking about your book.
 9             So you -- would you agree with me that an AI
10   model that can generate recipes serves a completely
11   different purpose for your book, No Visual [sic]
12   Bruises?
13        A    No Visible Bruises, yes.  Visual?
14        Q    Let me ask the question again.  Would you
15   agree that an AI model that can generate recipes
16   serves a completely different purpose from your book,
17   No Visible Bruises?
18        A    Yes.
19        Q    And an AI model that can generate restaurant
20   recommendations serves a completely different purpose
21   from that of your book, right?
22        A    Yes.
23        Q    An AI model that is used by doctors to
24   generate notes of patient visits serves a completely
25   different purpose from that of your book, right?
```

Page 123

1     A    Yes.
2     Q    Why did you write No Visible Bruises?
3     A    Because I realized that we had deep
4  misunderstandings of the scope of domestic violence,
5  the treatment of domestic violence, the, the ripple
6  effect or spillover effect of domestic violence into
7  our communities -- yeah, we just didn't -- and the
8  media was not -- still is not in some ways accurately
9  representing what domestic violence truly is or how we
10 can address it.
11    Q    And were you hoping that your book, No
12 Visible Bruises, would bring attention to these issues
13 and help inform people about them?
14    A    Yes, I was, although I was also keenly aware
15 that I'm, you know, living in a country that has 400
16 years of not caring about domestic violence, so I very
17 much was like how do I get people to read a book about
18 a subject that they probably are not at all interested
19 in.
20         Well, it comes down to how I write from one
21 sentence to the next and how gripping I can make that,
22 and how, how I can make narrative tension drive the
23 reader to continue turning pages.
24         That's probably more of an answer than you
25 need, but yeah.

Page 124

```
1       CERTIFICATE OF SHORTHAND REPORTER -- NOTARY PUBLIC
2
3            I, Laurie Donovan, Registered Professional
4       Reporter, Certified Realtime Reporter, and notary
5       public for the District of Columbia, the officer
6       before whom the foregoing deposition was taken,
7       do hereby certify that the foregoing transcript
8       is a true and correct record of the testimony
9       given; that said testimony was taken by me
10      stenographically and thereafter reduced to
11      typewriting under my supervision; and that I am
12      neither counsel for, related to, nor employed by
13      any of the parties to this case and have no
14      interest, financial or otherwise, in its outcome.
15           IN WITNESS WHEREOF, I have hereunto set my
16      hand and affixed my notarial seal this 24th day
17      of December 2024.
18
19      My commission expires:  July 14, 2027
20
21
22      _____
23         LAURIE DONOVAN
24         NOTARY PUBLIC IN AND FOR
25         THE DISTRICT OF COLUMBIA
```

Page 281