UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 23-cv-03417-VC<br><br>**ORDER GRANTING META'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE PLAINTIFFS' DMCA CLAIM**<br><br>Re: Dkt. No. 501 |

    Meta's motion for partial summary judgment is granted as to the plaintiffs' claim under the Digital Millennium Copyright Act. This order assumes the reader's familiarity with the facts, governing legal standards, arguments made by the parties, and the previous order in this case.

    The plaintiffs' DMCA claim fails because, as held in the previous order, Meta's copying must be deemed fair use as a matter of law based on the evidence presented at summary judgment. The plaintiffs' DMCA claim is brought under 17 U.S.C. § 1202(b)(1). As relevant here, that provision prohibits the intentional removal of copyright management information by one who knows or has reason to know that the removal will "induce, enable, facilitate, or conceal an infringement of any right under this title." Meanwhile, the Copyright Act provides that anything that is a fair use "is not an infringement of copyright." 17 U.S.C. § 107; *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152–53 (9th Cir. 2016). So because Meta's copying was not an infringement, its removal of CMI could not have furthered an act of infringement.[1]

---

[1] As the previous order noted, it did not address whether Meta distributed any of the plaintiffs' books, or whether any such distribution could be fair use. But even if Meta did distribute the plaintiffs' books and that distribution is not fair use, the plaintiffs' DMCA claim would fail. The only theory underlying the DMCA claim that survived Meta's motion to dismiss was that Meta

Reading § 1202(b) to not apply where the underlying act of infringement is a fair use also makes sense for two nontextual reasons. First, this reading is more consistent with the overall purpose and structure of copyright law. It does not make sense that Congress would have wanted to exempt secondary users who make a fair use from infringement liability, only to open them back up to DMCA liability if they removed some boilerplate in doing so. Second, § 1202 can also give rise to criminal liability where the CMI removal is willful and done for commercial purposes with actual (rather than constructive) knowledge that it will further an act of infringement. 17 U.S.C. §§ 1202(b), 1204(a). It is inconceivable that criminal liability would attach to an act that was done in furtherance of a noninfringing fair use.

The plaintiffs disagree. In support, they cite to *Murphy v. Millennium Radio Group*, 2015 WL 419884, at *4–5 (D.N.J. Jan. 30, 2015). *Murphy* held that a claim under § 1202(b) could still be brought where CMI was removed in furtherance of a fair use. *Murphy* reached its conclusion for three reasons, none of which is persuasive. First, because § 1202 doesn't explicitly include a "strict resulting infringement requirement." *Id.* at *5. It's true that the statute doesn't say that CMI removal has to actually result in infringement to give rise to a DMCA claim. But in the fair use context, the issue isn't just whether the infringement has been consummated—it's that the defendant's conduct, even if completed, is not infringement. Second, because § 1202(b) provides for liability for enabling infringement, which *Murphy* called a "passive" form of knowing assistance whose prohibition would be inconsistent with a strict infringement requirement. It's not clear that "enabling" is necessarily passive; enabling infringement could entail, for instance, disabling software security systems that would otherwise prevent copying. *See Atari Games Corp. v. Nintendo of America, Inc.*, 975 F.2d 832, 836 (Fed. Cir. 1992) (a pre-DMCA case). That

---

knew or should have known that removing CMI from the plaintiffs' books would conceal infringement by making Llama less likely to regurgitate CMI and thus indicate that it was trained on copyrighted material. Even assuming that, but for Meta's CMI removal, Llama would generate CMI and so reveal that it was trained on copyrighted material, there is no evidence in the record that this would in any way reveal that the copyrighted material on which it was trained was also redistributed to other computer systems via a torrenting network. Nor did the plaintiffs make any allegation to this effect.

isn't especially passive. Regardless, that § 1202(b) extends liability to one with limited involvement in a wrongful act doesn't mean it was intended to extend liability to one who has limited involvement in an act that is not wrongful at all (and in fact encouraged by the law). Third and finally, because one could intend to abet an infringement without an infringement actually occurring. But this is in tension with Ninth Circuit precedent holding that an infringement cannot have been willful where the infringer reasonably believed that they were making a fair use. *E.g.*, *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012). If a reasonable belief in fair use is enough to vitiate intent, it would seem that an actual fair use should also be (at least where the secondary user also subjectively believed they were making fair use). In other words, in the Ninth Circuit, one can't intend to abet an infringement where they intend to abet something they think is—and that actually is—fair use.

**IT IS SO ORDERED.**

Dated: June 27, 2025

VINCE CHHABRIA
United States District Judge