1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Vince Chhabria, District Judge

4

5  RICHARD KADREY, et al.,        )
                                  )
6            Plaintiffs,          )
                                  )
7  vs.                            )   No. C 23-03417-VC
                                  )
8  META PLATFORMS, INC.,          )
                                  )
9            Defendant.           )
   _____)

10

11                               San Francisco, California
                                 Friday, July 11, 2025
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 10:52 - 11:23 = 31 MINUTES
14

15 APPEARANCES:

16 For Plaintiffs:
                                 Boies Schiller Flexner
17                               1401 New York Avenue,
                                  Northwest
18                               Washington, D.C. 20005
                        BY:  JESSE M. PANUCCIO, ESQ.
19
                                 Bois Schiller Flexner LLP
20                               44 Montgomery Street
                                 41st Floor
21                               San Francisco, California
                                  94104
22                      BY:  JOSHUA M. STEIN, ESQ.

23

24         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25

```
                                                                    2
 1  For Plaintiffs:
                              Joseph Saveri Law Firm, LLP
 2                            601 California Street
                              Suite 1505
 3                            San Francisco, California
                                94108
 4                        BY: MARGAUX POUEYMIROU, ESQ.

 5                            Cafferty Clobes Meriwether &
                                Sprengel, LLP
 6                            135 South LaSalle Street
                              Suite 3210
 7                            Chicago, Illinois 60603
                          BY: MOHAMMED RATHUR, ESQ.
 8
                              DiCello Levitt LLP
 9                            10 North Dearborn Street
                              Sixth Floor
10                            Chicago, Illinois 60602
                          BY: NADA DJORDJEVIC, ESQ.
11
                              Lieff Cabraser Heimann &
12                              Bernstein, LLP
                              250 Hudson Street
13                            Eighth Floor
                              New York, New York 10013
14                        BY: RACHEL GEMAN, ESQ.

15                            Lieff Cabraser Heimann &
                                Bernstein, LLP
16                            Embarcadero Center West
                              275 Battery Street
17                            29th Floor
                              San Francisco, California
18                              94111
                          BY: DANIEL M. HUTCHINSON, ESQ.
19
    For Defendant:
20                            Cooley LLP
                              1333 2nd Street
21                            Suite 400
                              Santa Monica, California 90401
22                        BY: BOBBY A. GHAJAR, ESQ.

23              (APPEARANCES CONTINUED ON NEXT PAGE)

24

25
```

1  For Defendant:

2                             Cleary Gottlieb Steen &
                              Hamilton, LLP
                            1841 Page Mill Road

3                             Suite 250
                            Palo Alto, California 94304

4                   BY:  ANGELA DUNNING, ESQ.

5                             Cooley LLP
                            3175 Hanover Street

6                             Palo Alto, California 94304
                  BY:  MARK WEINSTEIN, ESQ.

7

8  Transcribed by:             Echo Reporting, Inc.
                            Contracted Court Reporter/
                            Transcriber

9                             echoreporting@yahoo.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1 <u>Friday, July 11, 2025</u>                                    <u>10:52 a.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                                --oOo--

4          THE CLERK:  Now calling Civil Case 23-3417,

5 Kadrey, et al., versus Meta Platforms, Inc.

6      Counsel, please state your appearances for the record,

7 starting with the Plaintiff.

8          MR. PANUCCIO (via Zoom):  Good morning.  Jesse

9 Panuccio of Boies Schiller for Plaintiffs.

10          THE COURT:  Okay.

11          MR. STEIN (via Zoom):  Good morning.  Joshua

12 Michelangelo Stein for the Plaintiffs.

13          THE COURT:  Hi.

14          MS. POUEYMIROU (via Zoom):  Good morning.  Margaux

15 Poueymirou for the Plaintiffs.

16          THE COURT:  Hello.

17          MR. RATHUR (via Zoom):  Good morning.  Mohammed

18 Rathur for the Plaintiffs.

19          THE COURT:  Hi.

20          MS. DJORDJEVIC (via Zoom):  Good morning.  Nada

21 Djordjevic for the Plaintiffs.

22          THE COURT:  Hi.

23          UNIDENTIFIED SPEAKER:  Good morning.

24          MS. GEMAN (via Zoom):  Good morning.  Rachel Geman

25 for Plaintiffs.

5

1          THE COURT:  Good morning.

2          MR. HUTCHINSON (via Zoom):  Good morning, your

3  Honor.  Daniel Hutchinson, Lieff, Cabraser, Heimann and

4  Bernstein, for the Plaintiffs.

5          THE COURT:  Hi.

6          MR. SAVERI (via Zoom):  Good morning.  Joseph

7  Saveri for the Plaintiffs.

8          THE COURT:  Good morning.

9          MR. GHAJAR (via Zoom):  I think we're up next.

10 Good morning, your Honor.  Bobby Ghajar, Cooley, on behalf

11 of the Defendant.

12          THE COURT:  Hi.

13          MS. DUNNING (via Zoom):  Angela Dunning from

14 Cleary on behalf of Meta.  Good morning, your Honor.

15          THE COURT:  Hi.

16          MR. WEINSTEIN (via Zoom):  Mark Weinstein from

17 Cooley for the Defendant.

18          THE COURT:  Hi.

19     Okay.  So I got the case management statement, I guess.

20 I don't know who's speaking for the Plaintiffs, but I was a

21 little bit -- I was having a hard time understanding what

22 you were saying, and I was having a hard time understanding

23 what you think is left of the case, and what you think is

24 not left of the case.  So, you know -- and there's talk

25 about -- there was talk about supplemental briefing.

6

1  Supplemental briefing on what?  There's no motion pending.

2  So, usually, when you have supplemental briefing, it's on a

3  motion that's pending, and there's currently no motion

4  pending.

5      So I guess I'm confused and a little concerned about

6  whether we have some sort of disconnect regarding what is

7  left of this case and what's not left of this case.  Does

8  anybody want to -- Plaintiffs' side want to clarify that?

9          MR. PANUCCIO:  Thank you, your Honor.  I'll be

10 speaking for Plaintiffs this morning.  Again, Jesse

11 Panuccio.

12     I think our understanding of what's left, of course,

13 flows from the Court's order, and specifically looking at

14 the last page of the order, says that:

15          "Meta is entitled to judgment on its

16          fair use defense to the claim that

17          copying these Plaintiffs' books for use

18          as LLM trading data" -- "for use as LLM

19          training data" -- "was infringement."

20     I think what the Court recognized in footnote four is

21 that the use for seeding and leeching activity, or leeching

22 and seeding, in that order, where it's made violation to

23 others to pirate, was not addressed in the order.  So we

24 think that activity, and whether it infringed copyrights, is

25 left.  Whether we call it --

1        THE COURT:  In other -- hold on a second.  So,

2  just to be clear, what you are saying is that -- and so it

3  sounds like we may have the same understanding of what's

4  left and what's not left.  What you're saying is that you

5  seek to hold Meta liable for uploading data -- uploading the

6  books for others to use, for others to access?

7        MR. PANUCCIO:  Yes, your Honor.  I want to be

8  somewhat careful about terminology, because of the way

9  torrenting works.  So I think I'd say "leeching and

10  seeding," which can involve uploading, but there's --

11  experts might quibble with me about exactly how I use that.

12  But the point is, I think the Court's order carved out that

13  activity, and said the Court wasn't addressing it at that

14  time, but we allege that that activity infringed copyrights.

15      And so, your Honor, I don't want to quibble about --

16        THE COURT:  The activity that -- to be clear, make

17  sure we're on the same page, the activity that caused the

18  books -- or allegedly caused the books to become available

19  to others, that's the activity for which you are seeking to

20  hold Meta liable going forward?

21        MR. PANUCCIO:  Yes.  We think that's what's left,

22  given the Court's order.  Of course, we're seeking other

23  conduct that the Court has said it disposed of that.

24        THE COURT:  Right.  So, okay.  I understand that.

25  I mean, I was confused about -- you're saying, "This is all

8

1  one claim, this is all one claim," and I just -- that,

2  combined with your suggestion that supplemental briefing be

3  filed, right, that we do supplemental briefing, sent me into

4  a state of confusion, because, again, there's nothing to do

5  supplemental briefing on, because, with respect to your

6  claim that Meta infringed by copying the works to train

7  LLaMA, right, I ruled against you.

8      And so that claim -- and that is a different claim.  It

9  doesn't -- you put it all under the umbrella of one claim in

10  your complaint, but that's a different claim from the claim

11  that Meta violated the copyright laws by making these books

12  available to other people.

13          MR. PANUCCIO:  I think that's largely correct,

14  your Honor, from our perspective.  I would just add one

15  point there, which is that, if we're talking about the

16  leeching and seeding phases, there are reproductions that

17  occur within that, and so you could have a violation of the

18  right of reproduction, even in those phases, even though

19  those --

20          THE COURT:  As part of the mechanics associated

21  with making the books vague and ambiguous to other people?

22          MR. PANUCCIO:  Precisely, your Honor.  So I

23  just --

24          THE COURT:  I get -- I understand that.

25          MR. PANUCCIO:  Great.  And I think some of the

9

1    quibbling between the sides was when they were saying,

2    "Well, you know, your right of reproduction is done."  We're

3    saying, "No.  The leeching and seeding phases may implicate

4    the right of reproduction, and we don't think the Court

5    addressed that.  We don't think" --

6         THE COURT:  But I think probably what they were

7    saying -- and, obviously, Mr. Ghajar can speak for himself,

8    but I think the concern was that what you were writing made

9    it seem like you thought that the -- you know, the fair use

10   question that was adjudicated previously was, like, still at

11   issue or something, right, because you were talking about

12   supplemental briefing, and you're talking about how it's all

13   intertwined and it's all part of one claim, and I don't

14   think that's right.

15       I think the proper way to think of it -- like, you

16   know, it often happens that Plaintiff lawyers will say,

17   "Count one, copyright infringement," and there will be

18   allegations of different types of conduct, and, effectively,

19   they're different claims.

20       Even if you all put them under the umbrella of count

21   one, they're different claims, and I think that that is the

22   case here, right, or that's the best way to understand it

23   here, is that the -- you know, the -- not that the leeching

24   and seeding is irrelevant to the fair use issue that was

25   already adjudicated.

10

1       It could have been relevant, as discussed in the

2   ruling, but you also have the separate claim that is based

3   on the allegation that Meta made the works available to

4   other people, and it may be that there could be a

5   reproduction aspect of that, you know, as part of the

6   mechanics of making it available to other people, but it's

7   distinct from the question of whether Meta violated the

8   copyright laws by copying the works for training purposes.

9       So I just wanted to make sure we're clear about that,

10  and that we're not -- none of this is going to involve

11  revisiting the ruling that was already issued.

12          MR. PANUCCIO:  We're not asking to revisit the

13  Court's holding or what was in the order already, your

14  Honor, and in terms of supplemental, I, you know, again,

15  don't mean to introduce confusion on that.  There was some

16  discussion at various points, maybe, at the hearing, about

17  exactly what was in the prior briefing, and so I think we

18  also say in the statement, if the Court prefers to just call

19  it another round of summary judgment briefing, or

20  believes --

21          THE COURT:  It's a different --

22          MR. PANUCCIO:  -- that's where we are, we're fine

23  with that.

24          THE COURT:  Like I said, it's best understood as a

25  different claim, and, you know, you didn't move for summary

11

1  judgment on that claim, and they didn't move for summary

2  judgment.  Well, you moved for it.  You moved for summary

3  judgment all across the board, on the ground that

4  downloading from a shadow library is, per se, copyright

5  infringement, but they didn't move on your claim that it was

6  relating to the -- relates to the uploading, or the making

7  the works available to other people, and, presumably, they

8  want to move on that claim at some point, and you probably

9  do, too.

10      So, anyway, do I have it right, Mr. Ghajar?  Is that --

11  is my understanding consistent with your understanding of

12  what is left of this case, or is left to be done?

13          MR. GHAJAR:  It is, and my colleague, Ms. Dunning,

14  will address some of these points in greater detail, but I

15  think the semantics issues that we've been discussing, your

16  Honor, need to be ironed out now.

17      We understand that they have a claim for distribution,

18  but we also understand that, under Ninth Circuit law, there

19  is no standalone claim, and, indeed, under Section 106, your

20  Honor, there's no enumerated copyright that one has for

21  making available.  There's a right to reproduction.  There's

22  a right to create a derivative work.  There's a right to

23  control distribution.  I don't know --

24          THE COURT:  Was there anything about this "making

25  available" thing?  I've never -- I had never heard of that

12

1  before until I saw reference to it in the case management

2  statement, but let me just ask you, just to make sure,

3  again, that we're all on the same page.

4      To the extent that the mechanics of making the works

5  available to others also involved reproducing the works,

6  presumably, they -- you're calling it a "distribution

7  claim," but I assume that there would be nothing wrong with

8  them arguing that that also violated their clients' right to

9  control reproduction.  I imagine, as a matter of damages, it

10 wouldn't matter, right?

11     I mean, it's just -- it's one activity, and they seem

12 like they want to say that not only is this distribution,

13 you know, unlawful distribution, but it's also the unlawful

14 reproduction that, I guess, is like a necessary part of the

15 distribution, and if they want to argue that, like, who

16 cares?  Like, why does that matter?

17         MR. GHAJAR:  It's a new argument, your Honor.  I'm

18 going to react to it in real time.  I'm not sure that how --

19 I'm not sure how, assuming distribution occurred -- and your

20 Honor knows that we dispute that, in fact, distribution of

21 Plaintiffs' works occurred -- that there is some

22 reproduction happening, unless we're just talking about the

23 mechanics of the Internet and the way things are sent around

24 digitally, but that occurs any time there's digital

25 distribution.

13

1      So I do get hung up on the semantics, and I don't think

2  that, in every case where there's a work distributed on

3  line, there is also a reproduction claim, and so --

4             THE COURT:  Okay.  But on -- but, with regard to

5  that, right, we can deal with that when they file their

6  motion for summary judgment, right?  I mean, I was just

7  worried that they were trying to argue that somehow what --

8  the upcoming motion for summary judgment was intertwined

9  with, you know, the ruling that was already issued, such

10  that there should be supplemental briefing, and perhaps a

11  revisiting of the ruling that was already issued.

12      That's the main thing that I was worried about coming

13  into this, but the stuff that we're talking about seems like

14  stuff that we can deal with when the summary judgment motion

15  is adjudicated, right?

16             MR. GHAJAR:  Assuming your Honor desires to

17  proceed with a summary judgment on what we're calling the

18  "distribution claim," and not stay that claim and certify

19  the remaining --

20             THE COURT:  So that you can appeal the -- my

21  ruling?

22             MR. GHAJAR:  Well, we were considering --

23             THE COURT:  I've never heard a -- I've never heard

24  somebody who received a favorable ruling from me make a

25  suggestion that I should certify it for appeal and stay the

14

1  rest of the case.

2          MR. GHAJAR:  Well, we -- ultimately, your Honor

3  has discretion, under Pitukos (phonetic) --

4          THE COURT:  Yes, I know, but why are you

5  suggesting that?

6          MR. GHAJAR:  Well, we're suggesting that the Court

7  should certify for appeal, and that Plaintiffs should take

8  the appeal, and if it doesn't do that, it's going to promote

9  gross inefficiencies and delay, when --

10          THE COURT:  You want me to force the Plaintiffs to

11  appeal by entering partial judgment, so that you can go up

12  to the Ninth Circuit and --

13          MR. GHAJAR:  We think that that makes the most

14  sense.  The rule, as we read it, your Honor, doesn't require

15  any party to request Rule 54.

16          THE COURT:  I'm not doing that.  I think that it

17  would be I don't think that would be a good way to manage

18  this case.  I think that the best way to manage this case is

19  to get it all adjudicated, and then, once judgment is

20  entered, whoever loses on what issue can appeal.

21          MR. GHAJAR:  My colleague, Ms. Dunning, wants to

22  address some of the concerns we have about that, and I will

23  then address, if the Court is willing to entertain summary

24  judgment on cross-motions, what a schedule might look like,

25  and I also want to --

15

1          THE COURT:  Okay.

2          MR. GHAJAR:  I'd also like to address --

3          THE COURT:  Why don't we go ahead and set that

4  schedule now.  What do you want to -- what do you propose?

5          MR. GHAJAR:  Well, first, we don't believe that

6  they're entitled to any more expert reports.  I'll remind

7  the Court, your Honor had the proposal to do the baseball

8  arbitration, and it was all or nothing.  So we put in a

9  proposal, they did, and through that proposal, they were

10  able to serve Mr. Choffnes's (phonetic) report.  Through

11  that proposal, they were able to get the discovery that they

12  now say they want to do additional expert reports regarding.

13  We think that would be unfair.

14     I can get into more detail.  We could even put a brief

15  on that.  But, your Honor, it was all or nothing.  They

16  asked for that discovery.  They got it, and now they can't

17  say, "Well, we want to do yet another do-over with Mr.

18  Choffnes."  I'll also remind the Court this would be their

19  third --

20          THE COURT:  Well, why not?  I mean, they got new

21  discovery.  They contend that it's relevant to this issue

22  that we're teeing up.  They weren't able to get the

23  discovery before.  We can go back and argue whose fault it

24  was that they weren't able to get the discovery before, but,

25  again, these are important issues, and they need to be

16

1  adjudicated on a full record to the extent possible.  Of

2  course, I don't have full control over that, but what's the

3  big deal about allowing a supplemental expert report from

4  this witness?

5          MR. GHAJAR:  I'll answer the question two ways.

6  We've already had four expert reports on torrenting, four

7  days of expert depositions from three different experts.  We

8  would say enough is enough.

9      The concern is, if you allow another report, they're

10 going to take a third bit of the apple and come up with some

11 other theory, when they've had two chances to do that.  Your

12 Honor is aware that there's a diligence issue here.  They

13 argue good cause, but, in the Ninth Circuit, under the

14 Johnson v. Mammoth case, good cause concerns the diligence

15 of the moving party, and I think it's important here that

16 it's on Plaintiffs.

17     They didn't diligently prosecute this avenue of the

18 case.  They never asked for this material in discovery.

19 Judge Hixson said so.  And when they moved to amend their

20 complaint, although that was months ago, your Honor -- it

21 seems like a lifetime ago -- they told your Honor they

22 wouldn't need any additional discovery.  So this --

23          THE COURT:  Seems like only just yesterday.  So --

24 but, again, you know, my job -- and I know it's annoying

25 when judges do this, but I kind of am stepping back and

17

1  thinking about it in the grand scheme of things, right?

2      And in the grand scheme of things, if, you know,

3  there's one more expert report, and, you know -- and if you

4  want to take their -- his deposition again, you can take it,

5  or not, if you think it's not necessary, and if you want to

6  do a rebuttal, you can do that, or not, if you think it's

7  not necessary, and it may be some slight delay in getting

8  this next summary judgment motion adjudicated, but, in the

9  grand scheme of things, I don't think it's all that big of a

10 deal, and my preference in a case that's important like this

11 is to, you know, do my best to make sure that I have a full

12 record.

13     So give me your schedule on the assumption that I'm

14 going to let them do a supplemental report.

15        MR. GHAJAR:  I hear you.  One note on that, since

16 you're going to allow them to do that.  We would want -- I

17 would ask for two things, one, that such report be limited

18 to the later-produced torrenting material, an analysis of

19 those materials, and not some new theory of distribution,

20 and, second, we would absolutely want to have the ability to

21 do a rebuttal report, as your Honor just contemplated, and a

22 deposition.

23        THE COURT:  That all sounds reasonable.  I assume

24 the Plaintiff would agree to that.

25        MR. PANUCCIO:  We're okay with that, your Honor,

18

1  but I have one -- just one additional note on this, and we

2  appreciate where the Court is headed with this.

3      The one additional note which we put in our statement

4  in the case management is the Court may recall, or may not,

5  that at Docket 500, the Court responded to what we said at

6  Docket Entry 487, page five, which is that Meta actually has

7  still not fully complied with the order granting our

8  proposal under the baseball arbitration.

9      There are a few very significant pieces of evidence and

10 discovery that they've not yet produced.  What the Court

11 said at Docket Entry 500 is, in the midst of the last round

12 of summary judgment briefing, it was not going to deal with

13 it at that time.  We could file a Rule 56(d) on that,

14 depending on how the case goes forward.

15     So, aside from the expert report, your Honor, that

16 would be the one other thing we would say is important for

17 the Court to have before it a complete record, adjudicate

18 this important aspect of the case fully.

19         MR. GHAJAR:  Your Honor, I'm not aware of any

20 information to which they're entitled that they asked for

21 that we haven't produced.  I would like more clarity on

22 that.  We certainly do not want to -- you're contemplating a

23 limited exception to the idea or notion that the record is

24 closed to allow for potential expert reports.  I don't -- I

25 hear Mr. Panuccio suggesting that there may be additional

19

1  document discovery, and we've been through that several

2  times before.

3      Our position is that there is no outstanding documents

4  to which they're entitled.  If there is such an issue, I

5  might suggest to the Court that either, A, you indicate that

6  discovery is closed for that purpose, or, B, refer the

7  matter to Judge Hixson to quickly adjudicate.

8          THE COURT:  Yes.  I mean, what I'm ordering now is

9  that they can have -- they can file a supplemental expert

10  report.  It's limited to the later-produced material.  You

11  can file a rebuttal expert report.  You can take this

12  expert's deposition.  They can take your rebuttal expert's

13  deposition.  And so that -- and if there is a dispute about

14  further discovery, it can go before Judge Hixson.

15      And so, in light of all of that, what schedule would

16  you like to set?

17          MR. GHAJAR:  So, your Honor, as I was gaming it

18  out in preparation for the hearing, I read Plaintiffs'

19  portion of submission indicating that they are prepared to

20  make a disclosure of Mr. Choffnes' limited report in the

21  next three weeks.  We would need, if that's the case -- I'll

22  let Mr. Panuccio indicate when that could occur.  It sounds

23  like at the beginning of August.  We would ask for four

24  weeks to analyze that report.  We don't know what Mr.

25  Choffnes is going to say.  It takes some time to analyze

20

1 those issues so that we --

2          THE COURT:  That's fine.

3          MR. GHAJAR:  Okay.  Thank you.  And then two

4 weeks, a two-week window to conduct those depositions,

5 assuming we wish to --

6          THE COURT:  That's fine.

7          MR. GHAJAR:  Okay.  Thereafter, if Plaintiffs are

8 going to move for summary judgment, I'd allow Mr. -- I'd let

9 Mr. Panuccio indicate when they're prepared to do so.  Your

10 Honor has a four-brief schedule.  We could follow the time

11 table and spacing that your Honor suggested for the

12 underlying fair use summary judgment motion.  In other

13 words, they file several weeks later.  A month later, we

14 file our second brief, and so on.

15          THE COURT:  Yes.  I mean, all of that sounds fine

16 to me.

17          MR. PANUCCIO:  Your Honor, would you like us to

18 meet and confer on specific dates for all of that?

19          THE COURT:  Sure.

20          MR. PANUCCIO:  Okay.  I just -- on the fly --

21          THE COURT:  Why don't you submit a stipulation

22 within seven days --

23          MR. PANUCCIO:  Very good, your Honor.

24          THE COURT:  -- or competing proposed schedules.

25          MR. GHAJAR:  On briefing, your Honor, yes?

1          THE COURT:  Yes.

2          MR. GHAJAR:  Thank you.

3          THE COURT:  Okay.  Is there anything else, then,

4   that we should be discussing?  Did I miss anything in the

5   case management statement that we need to discuss?

6          MR. GHAJAR:  I wanted -- if your Honor is willing

7   to hear it, Ms. Dunning was going to address concerns we

8   have over inefficiency.  It sounds like your Honor is

9   willing to allow the distribution to claim to proceed at its

10  own pace, but there are some concerns we have that we'd at

11  least like you to hear and consider.  Would you entertain a

12  few minutes of --

13          THE COURT:  Sure.

14          MR. GHAJAR:  Thank you.

15          MS. DUNNING:  Thank you, your Honor.  I promise

16  I'll be brief, because I understand you've got an idea of

17  how you want this to go.

18      You know, our main concern had to do with the risk of

19  duplicative proceedings on class certification and trial,

20  and so, obviously, if this case proceeds to summary judgment

21  and Meta wins, which we'll take, then there is no risk of

22  duplication here, and everything can go up and be heard on

23  appeal at the same time, but, in the event that something

24  were to survive summary judgment, there would remain a

25  significant risk of duplication of effort.

1      The class -- it would make no sense, for instance, in

2  our view, for class certification to be briefed and rules

3  on, where there would plainly be an overlapping of issues,

4  and we think the class certification would make no sense

5  here on distribution, for a variety of reasons, anyway, but

6  compounded would be the sort of harm and prejudice and

7  inefficiency of actually adjudicating this through a trial,

8  whereas your Honor has already pointed out there would be

9  significant overlap of witnesses and evidence, and there

10  could be a single verdict with respect to any statutory

11  damages award.

12      And so, if what Plaintiffs are potentially envisioning

13  is a situation in which they could proceed to adjudicate the

14  distribution claim, only to appeal the training-based

15  reproduction claim, and then seek a do-over on any verdict

16  on distribution if something is revived on appeal.  That

17  would be, we think, fundamentally unfair and inefficient,

18  and so that's the main concern.

19           THE COURT:  If -- in the event that all -- that it

20  plays out that way, right, and you're assuming that, like,

21  10 particular things will happen in a particular way to get

22  us to that point, you're right that that would -- it would

23  be sort of unfortunate, because it would be inefficient.  It

24  would have been more efficient to adjudicate it all at once,

25  right?

1    But, aside from the inefficiency, which is not a small

2    deal, right -- I mean, we like to try to avoid inefficiency

3    whenever we can, but, aside from that, I mean, there's no --

4    it's not actually, like, prejudicing anybody's rights or

5    anything, is it?

6        MS. DUNNING:  I do think it would be prejudicial,

7    in the sense that it's effectively reserving a potential

8    opportunity to retry a claim that they are choosing to go

9    forward now and require Meta to adjudicate, but, your Honor,

10   I think the way we deal with --

11       THE COURT:  Why would it -- why would they be able

12   to retry that?  I mean, if summary -- if I rule that this --

13   what we were calling -- using shorthand and calling the

14   "distribution claim" -- if I rule that that has to go to

15   trial, and if I rule that the class should be certified, you

16   know, despite a number of concerns that I would have about

17   that, including adequacy of representation, and then they

18   were to lose at trial, and then the Ninth Circuit were to

19   reverse the training ruling, and then that were to go

20   forward, and a class certified on that, and that were to go

21   to trial, I mean, that's different conduct for which Meta

22   could potentially be held liable, right?  I mean, I don't

23   see that as -- other than the unfortunate inefficiency

24   that's created by this, I don't see anybody's rights being

25   prejudiced in any way.

24

1          MS. DUNNING:  So let me give you a -- I
2  appreciate, your Honor, that we are trying to game this out
3  a little bit, and we were trying to do that to help the
4  Court and figure out the best way to proceed here, but, in
5  the event, for instance, that there is a -- in the event
6  that there is a verdict, for instance, in Plaintiffs' favor
7  on the distribution claim, which involves some 11 Plaintiffs
8  and 40 works, and they're unsatisfied with that verdict for
9  some reason, one could see, if the training-based fair use
10 determination is disturbed on appeal, an argument that they
11 should have been able to present to the jury that the use
12 Meta made was not for a fair use purpose.

13     That will be part of the trial even on a distribution
14 claim, that the reason Meta undertook this activity was for
15 what it believed to be an appropriate purpose, and that it
16 was found as much.  So, if Plaintiffs are willing to agree
17 now that they are not going to seek to disturb any verdict,
18 then that would resolve the issue, but I think maybe the --

19          THE COURT:  Could I ask you, is this like a really
20 long an convoluted way of saying that you actually don't
21 like my ruling in your favor, and you would like it to go up
22 to the Ninth Circuit as soon as possible?

23          MS. DUNNING:  Absolutely not, your Honor.  We re
24 looking only at what remains of this case, and the most
25 efficient way to resolve it.  I think we're just concerned

1  that this is -- if summary judgment is not granted in Meta's

2  favor with respect to the distribution claim, and that claim

3  needs to be adjudicated, we are trying to avoid a scenario

4  in which we have to do everything over.

5      But I think the way to deal with that, your Honor,

6  is -- there's no reason we can't go through summary

7  judgment, as your Honor has ordered, and then perhaps we can

8  reassess at that point, if something survives, whether, at

9  that point, it makes sense to hold that piece in abeyance or

10  not, depending on the proceedings more broadly.

11      I mean, obviously, we think that your Honor's opinion

12  with respect to fair use is of critical importance to the

13  industry, and so --

14          THE COURT:  Okay.  We're going to plow ahead on

15  summary judgment.  At any time, I'm happy to hear arguments

16  about case management and how to proceed, and make sure

17  things are being done in as efficient a way as possible and

18  all of that stuff, but we're going to plow ahead now with

19  summary judgment on this claim relating to distribution, and

20  I'll look forward to receiving your proposed schedule for

21  that.

22      And anything else we can do for you all right now?

23          MR. PANUCCIO:  Yes, your Honor, just one

24  clarification.  On the meet-and-confer, and then putting in

25  either a joint or competing proposals, I think we would plan

26

1   to put before Judge Hixson the 56(d), flowing out of Docket

2   500.  So that might affect the timing of the expert report.

3   I just wanted to see if that timing could be part of our

4   proposal.  I don't think we fixed dates here, so I just

5   wanted to clarify that, your Honor.

6          THE COURT:  (No response.)

7          MS. DUNNING:  Judge?

8          THE COURT:  Hi.  I froze, or my Zoom -- my whole

9   thing froze.

10          MR. PANUCCIO:  I was going to say, I hope it

11   wasn't something I said, your Honor.

12          THE COURT:  Probably was, but you said, "In the

13   stipulation, we would plan to," or something like that, and

14   then I lost you after that.

15          MR. PANUCCIO:  Yes.  I'm sorry, your Honor.  Let

16   me just repeat that.

17      So I was just asking for clarification, because we

18   talked about putting in either joint or competing proposals

19   for the summary judgment dates, but from -- flowing from the

20   order at Docket 500, we are going to put before the

21   magistrate judge a 56(d) motion on these limited issues that

22   we flagged that led to that order.  So that might affect the

23   timing of the expert report, so I just wanted to see if we

24   were putting in a proposal for everything, the timing of --

25          THE COURT:  If you want to tee that up in front of

27

1  the magistrate judge, you want to just get that resolved

2  first, and then submit a stipulated schedule --

3          MR. PANUCCIO:  That would be great, your Honor.

4  Thank you.

5          THE COURT:  That's fine.

6      Okay.  That sounds good.  Thank you very much.

7          MR. PANUCCIO:  Thank you, your Honor.

8          MS. DUNNING:  Thank you, your Honor.

9      (Proceedings recessed at 11:23 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

<u>CERTIFICATE OF TRANSCRIBER</u>

     I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

                    Echo Reporting, Inc., Transcriber

                       Wednesday, July 16, 2025

*Echo Reporting, Inc.*