*E-Filed*

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 23-cv-03417-VC

Dear Judge Hixson:

Plaintiffs in the above-captioned action and Defendant Meta Platforms, Inc. ("Meta") jointly submit this letter brief regarding Meta's clawback and privilege assertions over a newly produced document. The parties met and conferred on Wednesday, September 5, but were unable to reach a resolution.

I.    PLAINTIFFS' POSITION

Following this Court's recent discovery order, Dkt. 616, Meta produced a printout from a compliance tool within Meta's "ML Hub" entitled "AIDC_Anna's_Archive_Compliance" (the "Document"). The AIDC tool is defined in another Meta document as "a unified experience for all data used in AI workflows," including evaluations and mitigations.[1] Meta_Kadrey_00160923. The Document is heavily redacted. When Plaintiffs met and conferred with Meta, Plaintiffs pointed to a relevant line of text surrounded by redactions as evidence the redactions were improper. Meta then clawed back that line of text—text that cannot possibly constitute legal advice. More broadly, the *entirety* of the Document is business-related and is not privileged. The Court should review the Document *in camera* and order its production to Plaintiffs, or at minimum reject Meta's clawback.

**A.  *In camera* review is proper including because the Document is not privileged.**

When a producing party claws back a document, Rule 26(b)(5)(B) provides that the receiving party may "promptly present the information to the court under seal for a determination of the claim." Privilege is "narrowly and strictly construed, and [Meta] bears the burden of proving that it applies." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019) (quotation omitted). In addition, a dual-purpose communication "can only have a single 'primary' purpose," *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2022), and "[i]f the document was prepared for purposes of simultaneous review by legal and nonlegal personnel, it ***cannot*** be said that the primary purpose of the document is to secure legal advice," *United States v. Chevron Corp.*, 1996 WL 264769, at *3 (N.D. Cal. Mar. 13, 1996) (quotation omitted and emphasis added).

Here, the issue of privilege over Meta's mitigations is familiar territory: this Court already held the privilege may protect why certain mitigations were implemented, but not what the mitigations are. Dkt. 389. The AIDC dashboard is a non-privileged compliance tool, and courts regularly hold that compliance efforts—even where informed by legal advice—are not all privileged. *E.g.*, *Epic Games, Inc. v. Apple Inc.*, 2024 WL 4947269, at *1 (N.D. Cal. Dec. 2, 2024); *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 661 (D. Idaho 2018) ("A corporation's legal compliance policy that serves as a reference or instructional guide to corporate employees is primarily a 'business' policy rather than a 'legal' policy, even if based on the advice of counsel."). According to other documents, the AIDC tool "enables responsible and compliant use of data . . . by keeping track of and enforcing lineage, data mitigation and curation metadata, privacy and legal policies." Meta_Kadrey_00160923. The primary purpose of a widely accessible tool used by, and directed to, business and technical personnel throughout the company is plainly not to secure or give legal advice. The clawed back section in particular is part of an update by David McAneny, a "Contingent Worker" (contractor), who might have conveyed the "what" from in-house counsel about certain dataset issues, but likely could not have conveyed the "why" that could be legal advice.[2] As one court put it, "legal advice" is "advice that can be rendered only by consulting legal authorities," as opposed to business advice or analysis "that can be given by a non-lawyer." *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 322 (S.D.N.Y. 2020) (cleaned up; overruling privilege for

---

[1] Meta's counsel confirmed that the ML Hub is an undisclosed non-custodial data source that Meta did not search.

[2] Meta also did not redact updates from Mr. McAneny about "download considerations" and "scraping notes" for another dataset (ClueCorpus2020) in the AIDC tool. Meta_Kadrey_00238241. In addition, the Document redacts an update from another contractor, Tyler Robbins, who—along with Fatima Jafri and Alisa Hall—appears nowhere in Meta's other productions or several privilege logs throughout this case. And no deponent mentioned any of them.

clawbacks).

As far as Plaintiffs can tell, Meta in-house counsel did not render *any* legal advice about Anna's Archive in the Document. Instead, the Document discusses only business and compliance actions Meta employees took *after* Anna's Archive was already approved to take and use. The Document was created on June 27, 2024, *see* page -298, *after* Meta's torrenting of Anna's Archive had ended. *See* Ex. B, Clark 30(b)(6) Tr. 52:2-6 (torrenting of Anna's Archive "completed in June of 2024"). This makes sense—as earlier discovery revealed, Meta's legal approval for training datasets occurred via an internal process referred to as its Single Review Tool ("SRT"). *See* Ex. C, Edunov Tr. 371:12-17 ("We typically use our SRT tool for the majority of communications [with inhouse counsel about the use of copyrighted material]."); Meta_Kadrey_00052774, at -780 ("SRT covers legal, policy & IP review including dataset."). Privilege should not descend like a giant fog bank over an entirely separate *compliance* tool spearheaded by, and for review by, non-attorneys.

### B. In the alternative, the Document is discoverable under the crime-fraud exception.

Even if the Court finds Meta carries its burden to establish the Document's primary purpose is legal, the Court should order its production because the privilege cannot shield communications about torrenting and mass distribution of known pirated content. Judge Chhabria already held that "the crime-fraud exception could apply to Meta's alleged distribution (by seeding) of copyrighted material," Dkt. 416 at 1, and knowing distribution of copyrighted works can constitute criminal copyright infringement. *See* Sen. Hearing 108-920, Before Comm. on the Judiciary (2003) (former Register of Copyrights testifying "the law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement . . . It can also be a crime and the perpetrators of such a crime are subject to fines and jail time"); *Bartz v. Anthropic*, No. 24-cv-5417, MSJ Hrg. Tr. 58:13-15 (Alsup, J.: "if you download from a pirate site a copy of somebody's book, standing alone, you could go to prison for that too"). Judge Chhabria has also held, like every other court in the Ninth Circuit and throughout the country, that "it is obvious . . . downloading and distributing copyrighted [content] via peer-to-peer systems does not constitute fair use." *In re DMCA §512(h) Subpoena to Twitter*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022). And in a similar action, Judge Alsup recently issued an order to show cause why the defendant should not produce all purportedly privileged documents on this issue. *See* Dkt. 273, Order re Defenses Based on Advice of Counsel, *Bartz v. Anthropic*, 24-cv-5417 (N.D. Cal. July 24, 2025).

While Judge Chhabria has so far declined to find crime-fraud waiver with respect to *other* documents,[3] this Document goes further. The record developed after the prior briefing shows Meta distributed over 40 TB of pirated content to third parties while torrenting Anna's Archive in 2024. *See* Dkt. 562-50 n.56. The Document facially bears on communication about Meta's torrenting of known pirated content, and it additionally appears to contradict Meta's 30(b)(6) testimony that torrenting was neither approved nor disapproved[4]—additional cause to believe in-house counsel was consulted "in furtherance of the ongoing unlawful scheme." *In re Grand Jury,* 87 F.3d at 381.

---

[3] Judge Chhabria ruled from the bench that he "did not see any evidence of Meta using its lawyers to facilitate a crime, so the crime fraud issue is over." 2/26/25 Hrg. Tr. 17:24-18:1. But the Ninth Circuit only requires a *relationship* between communications and the client's unlawful act. *In re Grand Jury Proceedings*, 87 F.3d 377, 382 (9th Cir. 1996) (crime-fraud does not require attorney to "have participated, even unwittingly, in the client's criminal activity").

[4] *Compare with* Clark 30(b)(6) Tr. 53:23–54:2 ("[t]here is no approval or disapproval that I am aware of for torrenting" in connection with Anna's Archive) and 68:17-18 ("I am not aware of any policy that Meta has around torrenting.").

## II.    META'S POSITION

Attempting to invade the attorney-client privilege for at least the third time in this case, Plaintiffs repeat the same flawed arguments that this Court and Judge Chhabria have already rejected and should reject again for several reasons. First, Plaintiffs misunderstand the purpose of the challenged document and specifically the redacted portions, which reflect Meta in-house counsel's legal advice to the business regarding the use of the Anna's Archive dataset for purposes of AI model training, an adjudicated fair use that cannot support application of the crime-fraud exception. Second, Plaintiffs' crime-fraud arguments are belied by the timeline and the surrounding non-privileged (and non-redacted) portion of the document, which demonstrate the propriety of Meta's privilege redactions. The Court should reject Plaintiffs' requests for *in camera* review and production of the challenged document unredacted, and order Plaintiffs to destroy any copies of the clawed back version of the document or notes that remain in their possession.

**The Redacted Portions of the Challenged AIDC Document Are Requests for and Communications of Legal Advice Regarding Use of a Dataset.** Plaintiffs challenge the limited redactions in a single document voluntarily produced by Meta to resolve disputes ahead of the most recent discovery letter brief.[5] Dkt. 615. The challenged document reflects the information included in the "Compliance" tab of Meta's internal "AI Data Catalog" (AIDC) tool,[6] specifically for the Anna's Archive dataset. The process for tracking and communicating among specific team members about dataset review, including Meta's in-house legal team, moved from previous tools, such as the SRT referenced by Plaintiffs, into AIDC. Access to the AIDC tool is controlled and limited to personnel at Meta that have a need to access information about dataset approvals.

The redacted portions of the challenged document reflect communications between non-legal personnel (*i.e.*, David McAneny) and legal personnel (Luc Dahlin, Fatima Jafri, Alisa Hall and Tyler Robbins[7]) requesting and providing legal advice regarding the use of the Anna's Archive dataset for AI model training. Notably, Judge Chhabria already ruled that as to the named Plaintiffs' claims, Meta's downloading and training of AI models using datasets like Anna's Archive constitutes fair use. Dkt. 598.

Meta properly asserts privilege over the portion of the document input by Mr. McAneny, including the clawed back portion, as it discloses information he provided to attorneys to solicit legal advice about using Anna's Archive for AI model training. *United States ex rel. Schmuckley v. Rite Aid Corp.*, No. 2:12-CV-01699-KJM-JDP, 2023 WL 425841, at *2 (E.D. Cal. Jan. 26, 2023) (privilege applies to non-attorney employee communications as to matters within the scope of their duties where employee is aware the purpose is for attorney to provide legal advice to corporation) (citing *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1492 (9th Cir. 1989)). In other words, Mr. McAneny provided information needed for counsel to evaluate the legal risk of using Anna's Archive for AI training. Indeed, the request for legal advice is clear in the unredacted portion of

---

[5] The challenged document was not addressed in the letter brief or the subject of the Court's recent discovery order. *See* Dkt 616.  The document was not identified in response to a custodial search.  Rather, it was hyperlinked from a document that Meta previously produced in response to a request from Plaintiffs.

[6] Plaintiffs' assertion that the ML Hub is an "undisclosed non-custodial data source that Meta did not search" is wrong. Meta collected and produced the challenged document from the AIDC portion of ML Hub.  Moreover, their claim that "MLHub" was "undisclosed" is belied the documents cited by Plaintiffs in this brief, as they include extensive discussions of AIDC and refer to MLHub. Meta_Kadrey_00160930 ("AI Data Catalog 2024H1 Roadmap").

[7] Luc Dahlin is an IP counsel, Ms. Jafri is a product counsel, Ms. Hall was a product counsel, and Mr. Robbins is an attorney seconded from a law firm to Meta to provide legal advice, each supporting Meta's AI teams.

the document, as Mr. McAneny updated "Review Status" for this dataset to "LEGAL_REVIEW".

Following Mr. McAneny's updates for "LEGAL_REVIEW," three different in-house counsel at Meta - Mr. Dahlin, Mr. Robbins, and Ms. Jafri - provided their legal risk assessment in the AIDC tool about using the Anna's Archive dataset for model training. In addition to the information provided by Mr. McAneny, Meta also redacted the portion of the document reflecting counsel's risk assessment. Other privileged and non-privileged communications about the request to use Anna's Archive continued to be exchanged in the AIDC tool through the end of July 2024. The ultimate approval of the dataset for use and restrictions on use of the dataset, including mitigations required for usage, were not redacted for privilege. Meta also did not redact portions of the communications and assessment from non-legal personnel, such as the policy team.

**Plaintiffs' "Primary Purpose" Argument Is Wrong and Should Be Rejected Again.** In December, this Court correctly rejected Plaintiffs' argument that the "primary purpose" test should be measured against a document as a whole, and that the attorney-client privilege cannot apply when only a portion of a challenged document contains legal advice. Dkt. 351 at 3. Nevertheless, Plaintiffs recycle this flawed argument, arguing that because both non-legal and legal personnel contributed information, the primary purpose of the document could not be to secure legal advice.

Plaintiffs are wrong about the facts and the law. Contrary to Plaintiffs' arguments, the redacted portions do not relate to the company's "compliance" policy – they are the specific requests for and provision of legal advice about use of the Anna's Archive dataset for training AI models. Dkt. 351 at 3 ("Thus, despite the overall nature of the document, the client may assert the attorney-client privilege over isolated sentences or paragraphs within a document.") (*quoting United States v. Chevron Corp.*, 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996)). Meta properly left unredacted portions of the challenged document that reflect the approved uses of the dataset and requirements for its use. Plaintiffs' speculation that the AIDC tool is a "non-privileged compliance tool" or a "widely accessible tool" is wrong and has no support in the factual record.

**Plaintiffs Present No Legitimate Basis to Invoke the Crime-Fraud Exception**. When Plaintiffs previously asserted that the crime-fraud exception could apply to "Meta's alleged distribution (by seeding) of copyrighted material" (Dkt 416), Judge Chhabria reviewed more than 50 documents *in camera* and emphatically concluded that he "did not see any evidence of Meta using its lawyers to facilitate a crime, so the crime fraud issue is over." 2025-02-26 Tr. (Dkt. 466), 17:24-18:1. Nothing in the challenged document undermines the correctness of that ruling.

Plaintiffs' crime-fraud argument fails because the challenged document concerns the *use* of the Anna's Archive dataset for AI model training, which cannot support a crime-fraud exception. Judge Chhabria already ruled that Meta's use of Anna's Archive for AI training was fair use as to the named Plaintiffs, reasoning "[b]ecause Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books." Dkt. 598 at 21.[8]

Plaintiffs speculate the redacted portions sought in-house counsel input on a "scheme" involving the "torrenting and mass distribution of known pirated content" - part of the same alleged "scheme"

---

[8] Plaintiffs cite to several statements from the *Bartz* case, neither of which are pertinent here. First, Judge Alsup's comment in the *Bartz* MSJ hearing is not applicable here, as Judge Chhabria already ruled that Meta's downloading was fair use as to the Plaintiffs. Dkt. 598 at 21. Second, Judge Alsup did not issue a "show cause" order to "produce all purportedly privileged documents" about torrenting. The cited order instead set a deadline for the defendant in that case to produce documents supporting an advice-of-counsel defense. *Bartz v. Anthropic*, No. 24-cv-5417, Dkt. 273 (N.D. Cal. July 24, 2025). The advice of counsel issue in *Bartz* is not relevant to the issues presented here.

discussed in their prior briefing on this issue.  (*See* Dkt. 397 at 4.) There is no basis for this speculation.  This theory also makes no sense because, as Plaintiffs admit above, the challenged document was created "*after* Meta's torrenting of Anna's Archive had ended."[9] Thus, any attorney advice in the document cannot fall into the crime-fraud exception as it "applies only when there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the *ongoing* unlawful scheme.'" *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) (citing *In re Grand Jury*, 87 F.3d at 381) (emphasis added); *see also, e.g.*, *Magnetar Techs. Corp. v. Six Flags*, 886 F. Supp. 2d 466, 488 (D. Del. 2012) ("the crime-fraud exception only applies to communications which occur before or during the crime, not communications made after the fact").

**Plaintiffs Have Not Made the Necessary Showing for an *In Camera* Review.** Plaintiffs cite no authority supporting their request for an *in camera* review and make no attempt to meet the required factual showing. Before a court can exercise its discretion to engage in an *in camera* review, the moving party must establish facts to support a good faith, reasonable belief that *in camera* review of the materials may reveal evidence to establish the claim that the crime fraud exception applies. *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2022) (*citing U.S. v. Zolin*, 491 U.S. 554, 572 (1989)). Plaintiffs' request for *in camera* review should be denied because Plaintiffs offer nothing but unsupported speculation that the privilege is purportedly shielding "communications about torrenting and mass distribution of known pirated content." *Yphantides v. County of San Diego*, 2022 WL 3362271, at \*10 (S.D. Cal. Aug 15, 2022). Moreover, as discussed above, Plaintiffs cannot even claim a "suspicion" that the privileged communications were in furtherance of an alleged crime when the activities Plaintiffs claim constitute the alleged crime concluded before the advice at-issue. Plaintiffs' request for an *in camera* review should be denied.

## III.    PLAINTIFFS' REPLY

Meta ignores entirely the text of Rule 26(b)(5)(B)—it doesn't reference or require a *prima facie* showing. Meta also fails to rebut the Document's mixed purpose and cannot show the Document— which was only produced "voluntarily" via Court order, Dkt. 616—has the "single" primary purpose of communicating legal advice. Meta also ignores that privilege only applies "to discrete and segregable portions of the withheld documents **unless** those documents were prepared for simultaneous review by both legal and nonlegal personnel," which the Document was. *Chevron*, 1996 WL 444597, at \*3 (italics in original). Record documents confirm the AIDC was created for internal "customers," Meta_Kadrey_00057223, not for requesting or conveying legal advice.[10] Further, while Meta asserts a non-attorney fielded "requests for and provision of legal advice," conflating "LEGAL_REVIEW" by in-house product and IP counsel with "legal advice," Plaintiffs asked Mr. Clark if the person who "reviews these datasets that come in through AIDC [is] an attorney,"[11] and he said **no**, it "is a privacy reviewer." Ex. D, Clark Tr. 289:4-290:19. Meta also says AIDC access is "limited," without explaining who does and does not have access, even when asked at a M&C. Finally, Meta cites the Court's MSJ opinion to rebut crime-fraud. But the Court did **not** hold that distributing copyrighted works without authorization **to others** via torrenting is fair use. *See* Dkt. 598 at 15, n.4 & 21 n.8. Indeed, Meta has not even mentioned, let alone asserted, a fair use defense to its torrenting in discovery. Dkt. 445-1 at 54-63 (Meta response to ROG #16).

---

[9] Nothing in the Document contradicts the cited 30(b)(6) testimony of Mr. Clark.

[10] Meta's reliance on *Schmuckley* is unavailing, much as when it did so in *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 325970, at \*5 (N.D. Cal. Jan. 29, 2025) (PHK rejecting Meta clawback, in part).

[11] Meta did not disclose either the ML Hub or the AIDC as a non-custodial source as required under the ESI Order, Dkt. 101 at §§6-7, and it has confirmed it never *specifically* searched these sources for responsive documents or data.

By:  /s/ *Phillip Morton*

Bobby A. Ghajar
Colette A. Ghazarian
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email: bghajar@cooley.com
        cghazarian@cooley.com

Mark R. Weinstein
Elizabeth L. Stameshkin
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
Email: mweinstein@cooley.com
        lstameshkin@cooley.com

Kathleen R. Hartnett
Judd D. Lauter
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2071
Facsimile:  (415) 693-2222
Email: khartnett@cooley.com
        jlauter@cooley.com

Phillip Morton
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
Email: pmorton@cooley.com

Angela L. Dunning
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304

By:  /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com
jischiller@bsfllp.com

*Interim Lead Counsel for Plaintiffs*

Telephone: (650) 815-4121
Facsimile:  (650) 849-7400
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 16, 2025                                        BOIES SCHILLER FLEXNER LLP


                                                                */s/ Maxwell V. Pritt*
                                                                Maxwell V. Pritt

                                                                *Attorney for Plaintiffs*