# EXHIBIT C

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

_____

RICHARD KADREY, et al.,      )
                             )
       Individual and        )
       Representative        )
       Plaintiffs,           )
                             )
v.                           )   Case No. 3:23-cv-03417-VC
                             )
META PLATFORMS, INC.,        )
                             )
       Defendant.            )
_____)

** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **

Videotaped Deposition of SERGEY EDUNOV

San Francisco, California

Wednesday, November 6, 2024

Reported Stenographically by

Michael P. Hensley, RDR, CSR No. 14114

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

1  in any for Llama 3.
2  BY ATTORNEY STEIN:
3      Q.   And how about for Llama 4?
4           ATTORNEY MORTON:  Object to form.
5           THE WITNESS:  Yeah, again, very hard for
6  me to tell since for Llama 4 specifically I'm
7  focusing on the pretraining team; so my work is
8  mostly around, like, getting the things going and
9  running.  So I don't necessarily -- a part of the
10 decision-making process here.
11 BY ATTORNEY STEIN:
12     Q.   Were you ever involved in discussions
13 about the legal risks of using copyrighted material?
14          ATTORNEY MORTON:  Object to form.  You can
15 answer that yes or no.  Don't reveal any privileged
16 communications.
17          THE WITNESS:  Outside of the discussions
18 with our legal counsel, no, I don't think so.
19 BY ATTORNEY STEIN:
20     Q.   But the answer's "Yes"?  You were involved
21 in those discussions?
22     A.   So --

Page 370

1           ATTORNEY MORTON:  Caution you not to
2    reveal any privileged communications.
3           THE WITNESS:  So the way the process work,
4    we have this SRT system where we submit requests for
5    any data approval -- approved, including data for
6    intern papers, not -- or any other publications for
7    that matter.  And during that review process, I am
8    involved in discussions.
9    BY ATTORNEY STEIN:
10       Q.  And you relied on the outcome of that
11   review process?
12       A.  I do rely on the outcome of that review
13   process all the time.
14       Q.  Did anyone on your team ever raise
15   concerns directly to you about the use of
16   copyrighted material?
17          ATTORNEY MORTON:  Object to form.
18          THE WITNESS:  Nothing that I remember.
19   BY ATTORNEY STEIN:
20       Q.  Were you involved in any internal reviews
21   or audits related to the training datasets?
22          ATTORNEY MORTON:  Object to form.

Page 371

1          THE WITNESS:  Any internal -- what kind of
2    audits do you mean?  Like for legal team?
3    BY ATTORNEY STEIN:
4        Q.   Yes.
5        A.   With the legal team, I was involved in the
6    analysis of one of the datasets, yes.
7        Q.   Which dataset was that?
8              ATTORNEY MORTON:  Objection.  I'm going to
9    instruct the witness not to answer on the basis of
10   privilege.
11   BY ATTORNEY STEIN:
12       Q.   How would you typically communicate with
13   the legal department about the use of copyrighted
14   material?
15       A.   We typically use our SRT tool for the
16   majority of communications.  At least I do.  That's
17   my main channel.
18       Q.   And what steps did you take to ensure
19   compliance with copyright law in your role?
20             ATTORNEY MORTON:  Objection to form.
21             And caution you not to reveal any
22   privileged communications.

Page 372

1        THE WITNESS:  Yeah.  That is not part of
2   my job.  I follow instructions from our legal team.
3   BY ATTORNEY STEIN:
4        Q.   Do you know how Meta attained the Books3
5   dataset?
6        A.   No.  I'm not aware of it.
7        Q.   Can you describe the role of Books3 in the
8   training of Llama 1?
9             ATTORNEY MORTON:  Object to form.
10            THE WITNESS:  I was not involved in Llama
11  1.
12  BY ATTORNEY STEIN:
13       Q.   Can you describe same with respect to
14  Llama 2?
15            ATTORNEY MORTON:  Object to form.
16            THE WITNESS:  Books3 was part of the
17  training data.
18  BY ATTORNEY STEIN:
19       Q.   And what was --
20            Was the -- was that dataset -- the Books3
21  dataset -- involved in any experiments?
22            ATTORNEY MORTON:  Object to form.

Page 383

1              CERTIFICATE OF SHORTHAND REPORTER

2

3         I, Michael P. Hensley, Registered Diplomate

4    Reporter for the State of California, CSR No. 14114,

5    the officer before whom the foregoing deposition was

6    taken, do hereby certify that the foregoing

7    transcript is a true and correct record of the

8    testimony given; that said testimony was taken by me

9    stenographically and thereafter reduced to

10   typewriting under my direction; that reading and

11   signing was requested; and that I am neither counsel

12   for, related to, nor employed by any of the parties

13   to this case and have no interest, financial or

14   otherwise, in its outcome.

15

16

17

18

19

20                       *signature*

21                       Michael P. Hensley, CSR, RDR

22