# EXHIBIT H

1   COOLEY LLP
    BOBBY GHAJAR (198719)
2   (bghajar@cooley.com)
    COLETTE GHAZARIAN (322235)
3   (cghazarian@cooley.com)
    1333 2nd Street, Suite 400
4   Santa Monica, California 90401
    Telephone:    (310) 883-6400
5
    COOLEY LLP
6   MARK WEINSTEIN (193043)
    (mweinstein@cooley.com)
7   KATHLEEN HARTNETT (314267)
    (khartnett@cooley.com)
8   JUDD LAUTER (290945)
    (jlauter@cooley.com)
9   ELIZABETH L. STAMESHKIN (260865)
    (lstameshkin@cooley.com)
10  3175 Hanover Street
    Palo Alto, CA  94304-1130
11  Telephone:    (650) 843-5000

12  CLEARY GOTTLIEB STEEN & HAMILTON LLP
    ANGELA L. DUNNING (212047)
13  (adunning@cgsh.com)
    1841 Page Mill Road, Suite 250
14  Palo Alto, CA 94304
    Telephone:    (650) 815-4131
15
    *[Full Listing on Signature Page]*
16
    *Counsel for Defendant Meta Platforms, Inc.*
17

18              **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20  RICHARD KADREY, et al.,                        Case No. 3:23-cv-03417-VC

21      Individual and Representative Plaintiffs,   **DEFENDANT META PLATFORMS, INC.'S
                                                    FURTHER SUPPLEMENTAL AND AMENDED**
22      v.                                          **RESPONSES AND OBJECTIONS TO
                                                    PLAINTIFFS' SECOND SET OF**
23  META PLATFORMS, INC., a Delaware               **INTERROGATORIES**
    corporation;
24
                              Defendant.
25                                                  Trial Date:
                                                    Date Action Filed: July 7, 2023
26

27

28

COOLEY LLP
ATTORNEYS AT LAW

**PROPOUNDING PARTY:**  **PLAINTIFFS RICHARD KADREY, SARAH SILVERMAN, CHRISTOPHER GOLDEN, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, JACQUELINE WOODSON, LYSA TERKEURST, AND CHRISTOPHER FARNSWORTH**

**RESPONDING PARTY:**  **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER: ONE**  **SECOND**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") responds as follows to Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth's ("Plaintiffs") Second Set of Interrogatories ("Interrogatories").

## I.    RESPONSES TO ALL INTERROGATORIES

**1.**    Meta's responses to these Interrogatories are made to the best of Meta's current employees' present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation.  Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.**    To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the parties' stipulated protective order governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL

- ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction (ECF No. 90, the "Protective Order").

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions:

**1.** Meta objects to all defined terms to the extent that they are not utilized in Plaintiffs Second Set of Interrogatories.

**2.** Meta objects to the definition of "Agreements" as overbroad and unduly burdensome to the extent that it encompasses oral contracts, arrangements, or understandings, including those that are informal. Meta further objects to the definition of "Agreements" as vague, ambiguous, and unintelligible as to the term "modifications" to the extent it is intended to mean something distinct from "versions" or "amendments." Meta will construe "Agreements" to mean written contracts, including drafts, versions, amendments, exhibits, and appendices thereof.

**3.** Meta objects to the definition of "Communications" to the extent it is inconsistent with and otherwise seeks to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the Stipulated Protocol regarding Electronic Discovery ("ESI Order"). Meta will produce Documents, including Communications, pursuant to the terms of the ESI Order, and any agreement to produce such Documents is explicitly in view of the terms of the ESI Order. To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate. Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiffs.

4.    Meta objects to the definition of "Complaint" which refers to an outdated complaint that has since been replaced by the Corrected Second Consolidated Amended Complaint (ECF No. 133). Meta will construe "Complaint" to refer to the Corrected Second Consolidated Amended Complaint.

5.    Meta objects to the definitions of "Llama 1," "Llama 2," and "Llama 3" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to these definitions as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning large language models ("LLMs") that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to these definitions to the extent that they purport to require Meta to produce documents or information concerning LLMs that are not relevant to any party's claims or defenses. For purposes of these responses, Meta construes the term "Llama 1" to refer to the LLM released by Meta as Llama on February 24, 2023, the term "Llama 2" to refer to the LLM released by Meta under that name on July 18, 2023, and the term "Llama 3" to refer to the LLM released by Meta under that name on April 18, 2024, July 23, 2024, and September 25, 2024.

6.    Meta objects to the definition of "Meta" as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents or information concerning any "owners" regardless of shareholder interest and shareholders with an ownership of in Meta of greater than 5%. Meta will construe "Meta" or "You" to mean Meta Platforms, Inc.

7.    Meta objects to the definition of "Meta Language Models" as vague and ambiguous as to the undefined terms "precursor models" and "variant models." Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Meta to produce documents concerning LLMs that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. For the same reason, Meta objects to this definition to the extent that it purports to require Meta to produce documents that are not relevant to any party's claims or

defenses.  Meta will construe "Meta Language Models" to mean the models within the Llama family of LLMs that have been publicly released by Meta, namely, Llama 1, Llama 2, Code Llama, and Llama 3 (as those terms are construed above).

**8.**     Meta objects to the definition of "Relevant Period" as vague, ambiguous, and unintelligible, as it is defined circularly to mean "all times relevant to… the Complaint."  Meta will construe the Relevant Period to mean January 1, 2022 to the present.

**9.**     Meta objects to the definition of "Training Data" as vague, ambiguous, and unintelligible as to the term "other material," which is indefinite and undefined.  Meta further objects to the definition of "Training Data" as vague and ambiguous as to the phrase "considered for use," which, read literally, would encompass any dataset considered by any Meta employee, regardless of the seriousness of such consideration and whether or not that consideration was ever acted upon.  Meta further objects to this definition to the extent it purports to include datasets (or "considered" datasets) that include content to which Plaintiffs have made no claim of ownership and which are not the subject of any allegations of copyright infringement by Plaintiffs.  Meta will construe "Training Data" to mean the "Books3" textual dataset used to train the Meta Language Models (as construed above).

**10.**     Meta objects to the definition of "You" and "Your" as overbroad, unduly burdensome, and nonsensical, insofar as it refers to "the specific Defendant(s) producing documents in response to these Requests."  There is only one defendant in this case, Meta, and this response is to the Interrogatories, not any document requests.  Meta further objects to this definition to the extent it seeks to impose upon Meta an obligation to investigate information or documents outside of its possession, custody, or control.  For purposes of these responses, Meta construes the terms "You" and "Your" coextensively with Meta (as construed above).

**11.**     Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.  Meta will supplement or amend its responses to these Interrogatories in accordance with Meta's obligations under Rule 26(e).

12.    Meta objects to Instruction 2, which defines the "Relevant Period" as January 1, 2000 to the present.  Such definition is overbroad, unduly burdensome, and disproportionate to the needs of the case because it both precedes the existence of Facebook (and therefore Meta) by several years, and the development of the Meta Language Models by decades.  For the same reason, the definition of "Relevant Period," as applied to the Interrogatories, would encompass information that is irrelevant to the parties' claims and defenses.  The Instruction is also inconsistent with the definition of "Relevant Period" provided on page 3 of the Interrogatories and is therefore vague and ambiguous.  Meta will construe the Relevant Period to mean January 1, 2022 to the present.

13.    Meta objects to Instruction 4 (referring to Fed. R. Civ. P. Rule 33(d)) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.

14.    Meta objects to Instruction 6 (outlining additional obligations for allegedly incomplete responses) to the extent that it purports to require Meta to investigate information outside of its possession, custody, or control.

15.    Meta objects to Instruction 8 (outlining additional obligations for any privilege objection) on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable and undue burden and expense.

16.    Meta objects to Instruction 9 (outlining additional obligations for any work product objection) on the ground that it purports to require more of Meta than any obligation imposed by law, and would itself require disclosure of information protected by attorney-client privilege and/or attorney work product doctrine.

17.    Meta objects to Instruction 10 (building in a separate question for each Interrogatory) on the ground that it purports to require more of Meta than any obligation imposed by law, seeks disclosure of information protected by attorney-client privilege and/or attorney work product doctrine, and seeks to circumvent Plaintiffs' interrogatory limit.

18.    Meta objects to Instruction 11 (purporting to require responses for "all predecessors, successors, subsidiaries … divisions and/or affiliates of Meta"), on the ground that it purports to require more of Meta than any obligation imposed by law, and would subject Meta to unreasonable

1   and undue burden and expense.  Meta further objects to Instruction 11 to the extent that it purports

2   to require Meta to investigate information outside of its possession, custody, or control.  As such

3   the Instruction if overly broad, as well.   Subject to any objections applicable to a particular

4   Interrogatory, Meta will conduct a reasonable, proportionate search for non-privileged, relevant,

5   responsive information within its possession, custody, or control.

6       **19.**     In responding to all Interrogatories, Meta will comply with the requirements of the

7   Federal Rules of Evidence and Federal Rule of Civil Procedure 26.

8   **III.    OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES**

9   **INTERROGATORY NO. 16:**

10      State all facts on which you base Your contention that Your conduct constitutes fair use (17

11  U.S.C. § 107).

12  **FIRST AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

13      Meta incorporates by reference its objections and definitions above.

14      Meta objects to this Interrogatory as vague and ambiguous as to the phrase "Your conduct,"

15  which is undefined and could refer to any conduct.  Meta will construe this Interrogatory to seek

16  information concerning Meta's claim of fair use in connection with the conduct alleged in the

17  Complaint (as construed above).

18      Meta objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate

19  to the needs of the case to the extent it seeks information that Meta does not intend to rely on to

20  support a claim of fair use and calls for a lengthy narrative with regard to twelve different plaintiffs

21  and more than forty works.

22      Meta objects to this Interrogatory to the extent it prematurely calls for expert testimony or

23  identification of facts yet to be disclosed by Plaintiffs, and to the extent that it requires Meta to

24  respond to legal arguments or theories not yet disclosed by Plaintiffs.

25      Finally, Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25

26  Interrogatories under Rule 33(a)(1).

27      Subject to and without waiving the foregoing objections, and pursuant to the terms of the

28  Protective Order, Meta responds as follows:

COOLEY LLP
ATTORNEYS AT LAW

The alleged use of Plaintiffs' asserted works, to the extent it is shown to have occurred, is highly transformative in nature, because it adds something new, with a further purpose or different character, altering those works with considerable new expression, meaning, or message. To the extent Plaintiffs' works were used to train the Meta Language Models, the purpose was transformative both in terms of <u>purpose</u> and <u>expression</u>. With respect to <u>purpose</u>, Plaintiffs' works were allegedly used as data to train the models. In other words, the works were allegedly a part of a corpus of text (specifically, terabytes of text from a variety of sources), from which the models built complex statistical representations of language derived from the patterns, structures, and relationships between words within the corpus. This enables the models to predict the next word in a sequence, and thereby provide useful responses to any manner of input prompts. Such use of textual material serves a fundamentally different purpose from the original texts on which the Meta Language Models were trained. *See e.g.*, Meta_Kadrey_00000001-00000077, Meta_Kadrey_00000078-00000104, Meta_Kadrey_00000224-00000248, Meta_Kadrey_00093669- Meta_Kadrey_00093760.

The text corpus used to train the Meta Language Models includes a large amount of textual materials, and to the extent Plaintiffs' works were used to train those models, they would constitute a tiny fraction of the textual training dataset (both individually and collectively). The purpose of the models, and the use of text datasets, is to create new, original textual output, not to reproduce the content of the datasets with which it was trained. This is demonstrated by, among other things, Meta's efforts to minimize the models' ability to memorize and/or output training data verbatim (*see e.g.*, Meta_Kadrey_00000277) and the wide variety of uses that have been made of the models. *See e.g.*, Meta_Kadrey_00092978-00093308, Meta_Kadrey_00062157. Indeed, all Plaintiffs have admitted that they are not aware of any output from any Meta Language Model that replicates any protected expression in their at-issue books. *See e.g.*, T. Coates 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (admitting, subject to objections, that Plaintiff is "personally unaware of any text generated by any of Meta's Llama models that infringes [Plaintiff's] ASSERTED WORKS."); J. Díaz 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); C. Golden 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to

RFA No. 24 (same); A. Greer 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); D. Hwang 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); R. Kadrey 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); M. Klam 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); L. Lippman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); S. Silverman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); R. Snyder 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); J. Woodson 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 24 (same); C. Golden 9/17/2024 Dep. 260:6–261:13 (Mr. Golden testifying that the present lawsuit is not about what comes out of Meta's large language models); A. Greer 9/24/2024 79:21–80:3 (Mr. Greer testifying that his claims concern the use of his works to train large language models); D. Hwang 9/16/2024 Dep. 252:23–253:6 (Mr. Hwang testifying that the operative complaint does not allege that the Meta Language models create any output that is similar to any of his books or plays); L. TerKeurst 9/23/2024 Dep. 226:20–25, 229:5–12 (Ms. TerKeurst testifying that she was not aware of any text generated by the Meta Language Models that was substantially similar that of her asserted works); J. Woodson Dep. 328:23–329:4 (Ms. Woodson testifying that she is not aware of any output from any Meta LLM in which any of her characters appeared.); S. Silverman 10/10/2024 Dep. 42:5–8 (Q: "[D]oes it matter if Meta's models never output any language from your book?"  A: "It doesn't matter at all."); *id.* 156:25–157:2 ("It doesn't matter what he does with it or what output comes from it.  It's not right."); *id.* 321:9–11 ("It's not about the output.  If the output might not be this book, but without this book it wouldn't have the out-book [SIC] . . . ."); T. Coates 11/21/2024 Dep. 52:22–53:11 (Mr. Coates testifying that he has not personally created or witnessed someone create output from Meta's AI model that replicates or regurgitates portions of his books); M. Klam Rough Drft. Dep. 38:11–16, 234:5–11  (Mr. Klam testifying that he is unaware of any instance in which any Meta AI tool has output verbatim text from any of his books and cannot identify any language he has written in any of his books that was reproduced in the output of Meta's AI model); R. Snyder Rough Drft. Dep. 36:2–4 (Ms. Snyder testifying that she has never seen any output generated by a Meta AI model that copies any language of hers); *cf.* D. Hwang 9/16/2024 Dep.

363:6–15 (Mr. Hwang testifying that he did not believe when he filed suit that the Meta Language Models could create works that were substantially similar to his works); L. Lippman 9/17/2024 Dep. 311:16–312:1 (Ms. Lippman testifying that she is aware that the current version of the Complaint does not allege that Meta's generative AI tools create any output that is substantially similar to her books); A. Greer 9/24/2024 Dep. 28:17–20 (same); J. Díaz 11/20/2024 Dep. 216:4–13 (same)

The transformative nature also extends to <u>expression</u>.  The pre-training process involves a number of steps that fundamentally transform the input dataset text in order to facilitate training of the large language model ("LLM"), which Meta will further describe in further detail in connection with expert discovery.  At a high-level, the pre-training process includes a "tokenization" step in which the data in training datasets is broken down and encoded into a series of values known as "tokens" which are used to create numerical vector representations that the LLM training algorithms can understand.  (*See e.g.*, Meta_Kadrey_00000078-00000104, Section 2.1 ("Tokenizer"); Meta_Kadrey_00000001-00000077, at 6 ("Tokenizer").)  The input data is then used in a complex series of LLM training algorithms that adjust the large number of numerical values (known as parameters which include weights) in the LLM, that define the connections and relationships between the nodes in the LLM.  By adjusting these weights, the LLM can "learn" and better predict correct outputs based on input data.  These numerical parameters enable the LLM, after the training process, to generate better output data in response to input prompts.  The process of training of an LLM represents a complete transformation into a form that is entirely unrecognizable from the original training data.

The transformativeness of Meta's use also extends to the post-training and fine-tuning processes used with the Meta Language Models.  Plaintiffs have not alleged that their works were used as data in any post-training and fine-tuning processes for any Meta Language Model, but nevertheless, post-training and fine-tuning processes similarly involve a highly transformative use of the data used in those processes, both in terms of purpose and expression.  The data used in post-training and fine-tuning is used to fine tune model parameters to improve the performance, quality, and behavior of the models and their responses.  For example, in the post-training stage, "the model

1  is tuned to follow instructions, align with human preferences, and improve specific capabilities (for

2  example, coding and reasoning)." The Llama 3 Herd of Models, p.1.  In the post-training and fine-

3  tuning processes (which will be discussed in more detail in expert discovery), post-training data is

4  likewise used in a series of complex LLM training algorithms that further tailor the model

5  parameters to improve the quality of responses and the ability of the model to perform various

6  tasks.  Post-training and fine-tuning processes also generally involve an amount of data that

7  constitutes a fraction of the amount of data used in pre-training the model.  Additionally, and for

8  the same reasons, the transformativeness of Meta's use also extends to research and evaluations

9  (including ablation experiments) to assess the behavior and performance of the Meta Language

10 Models.  Plaintiffs likewise have not alleged that their works were used as data for research or

11 evaluation of Meta Language Model, but nevertheless, the data used in these processes serves the

12 transformative purpose of studying and improving model behavior, and furthering the research and

13 development of the Meta Language Models.

14      As a further indication of the transformative nature, and the fact that the training process

15 does not simply make a copy of the input dataset, the training process is so computationally

16 complex that it requires an enormous amount of computing power. *See e.g.*,

17 Meta_Kadrey_00000001-00000077, at 4 ("When training a 65B-parameter model, our code

18 processes around 380 tokens/sec/GPU on 2048 A100 GPU with 80GB of RAM. This means that

19 training over our dataset containing 1.4T tokens takes approximately 21 days.").

20      Aside from its highly transformative nature, Meta's alleged use also has substantial non-

21 commercial, nonprofit, and educational (including research) purposes.  Meta is investing billions

22 of dollars in research and development of state-of-the-art LLM technology that it is then making

23 available to the public.  In particular, the training of the Meta Language Models resulted in Meta's

24 release of Llama 1, Llama 2, CodeLlama, and Llama 3, 3.1, and 3.2 to the open source

25 community.  These LLMs were provided openly to the public, pursuant to an open license that

26 permits developers, researchers, and institutions (with the exception of licensees with more than

27 700 million monthly active users) to use and modify the Llama models free of charge. *See e.g.*,

28 Meta_Kadrey_00000160-00000162,                    Meta_Kadrey_00093275-00093284,

1    Meta_Kadrey_00093658-00093760.  The open release of Llama has resulted in the Llama models

2    being downloaded hundreds of millions of times by researchers and developers from around the

3    world and has catalyzed development of new and improved AI tools and technologies.  *See e.g.*,

4    Meta_Kadrey_00092978-00093308, Meta_Kadrey_00062157.  The open and public release of

5    Llama has allowed the public to access highly capable LLM technologies that would otherwise be

6    available only to large organizations and/or at considerable expense.  More broadly, Meta's

7    investment and open release is contributing to the U.S. economy, the emergence of a new and

8    important industry, and the U.S.'s global leadership of that industry over geopolitical

9    competitors.  In that regard, Meta has agreed to permit members of the Five Eyes intelligence

10   alliance, namely, the United States, Canada, UK, Australia, and New Zealand, to use the Meta

11   Language Models.  *See* e.g., Meta_Kadrey_00213585.

12        Plaintiffs' allegedly infringed works were published prior to Meta's alleged use of those

13   works.  And Meta's use of large volumes of texts was necessary to extract data regarding, e.g.,

14   word frequencies, grammar, and syntax from those works to generate new content.  This

15   information constitutes either facts and ideas, which are not protectable by copyright, or is

16   otherwise unrelated to the purpose of copyright protection.  Furthermore, given that training the

17   Meta Language Models requires terabytes of text, that greater volumes of text tends to improve

18   model performance on objective benchmarks measuring reasoning and knowledge of facts, and the

19   formats in which the text is available, it was reasonable for Meta to utilize copies of entire works

20   (as opposed to portions thereof), in particular given Meta's efforts to develop the models in a

21   manner that minimizes the likelihood that training data can be reproduced as model output.  For

22   example, books data comprised only approximately 4.5% of tokens used to train Llama 1 and only

23   4.4% of tokens used to train Llama 2.

24        The ordinary market for Plaintiffs' works is the market for people to purchase and read the

25   books and, possibly, to create derivative works from those books, such as for audio books and film

26   and television adaptations.  The Meta Language Models and their outputs do not serve as a market

27   substitute for the Plaintiffs' asserted works, do not compete with those works, and do not harm the

28   value of Plaintiffs' asserted works.  Plaintiffs have produced no evidence to the contrary, such as

evidence of lost sales or other financial harm.  To the contrary, plaintiffs have admitted that they are not aware of any such harm.  *See e.g.*, T. Coates 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (admitting, subject to objections, that Plaintiff is unaware of lost sales due to alleged infringement); J. Díaz 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); C. Golden 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); A. Greer 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); D. Hwang 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); R. Kadrey 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); M. Klam 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); L. Lippman 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); S. Silverman 8/28/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); R. Snyder 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); J. Woodson 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (same); L. TerKeurst 9/12/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 15 (similar); A. Greer 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 16 (admitting, subject to objections, that Plaintiff's book sales have not decreased due to the alleged use of Plaintiff's Asserted Works to train large language models); L. TerKeurst 9/6/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 16 (similar); T. Coates 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (admitting, subject to objections, that Plaintiff is unaware of lost licensing opportunities due to alleged infringement); J. Díaz 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); C. Golden 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); A. Greer 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); D. Hwang 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); R. Kadrey 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); M. Klam 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); L. Lippman 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); S. Silverman 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); R. Snyder 9/19/2024 Resps. & Objs. to

Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); J. Woodson 9/19/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); L. TerKeurst 9/12/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA No. 18 (same); T. Coates 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (admitting, subject to objections, that Plaintiff is unaware of (1) persons reading text generated by Meta's Llama models as a substitute for Plaintiff's Asserted Works as described in RFA 22, and (2) documentary evidence of persons reading text generated by Meta's Llama models as substitute for Plaintiff's Asserted Works as described in RFA 23); J. Diaz 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); C. Golden 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); A. Greer 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); D. Hwang 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); R. Kadrey 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); M. Klam 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); L. Lippman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); S. Silverman 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); R. Snyder 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); J. Woodson 7/22/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (same); L. TerKeurst 8/21/2024 Resps. & Objs. to Meta's 2nd Set of RFAs, Resp. to RFA Nos. 22 and 23 (similar); D. Hwang 9/16/2024 Dep. 254:7–13 (Mr. Hwang testifying that he did not know whether he had experienced any financial loss as a result of the alleged training of the Meta Language Models on his asserted works); D. Hwang 9/16/2024 Dep. 290:10–17, 291:22–292:4 (Mr. Hwang testifying that he was not aware of any lost sales of his asserted works due to the alleged infringement in the complaint); R. Kadrey 9/25/2024 Dep. 223:23–224:1 (Mr. Kadrey testifying that he was unaware of any injury other than purported harm of not receiving compensation from Meta); R. Kadrey 9/25/2024 Dep. 222:6–9 (Mr. Kadrey testifying that he was not aware of any lost sales of his asserted works due to the alleged infringement in the complaint); L. Lippman 9/17/2024 Dep. 339:3–10 (Ms. Lippman testifying that she is unaware of any financial harm that she has suffered as a result of conduct by

Meta alleged in the Complaint); A. Greer 9/24/2024 Dep. 120:21–121:10 (Mr. Greer testifying that he is unaware of any lost book sales or lost licensing opportunities as a result of Meta's alleged infringement of his works, or whether it is possible that book sales have actually increased due to his participation in this lawsuit); S. Silverman 10/10/2024 Dep. 204:12–205:7, 296:10–297:2 (Ms. Silverman testifying that she is unaware of any evidence to suggest someone did not buy her book because they could generate a summary on a Meta AI tool, evidence of lost sales or lost licensing opportunities due to Meta's conduct, or any instance in which another person did not seek to license her book because of Meta's actions); T. Coates 11/21/2024 Dep. 123:19–125:25 (Mr. Coates testifying that he is unaware of any lost sales or lost licensing opportunities due to Meta's LLMs); J. Díaz 11/20/2024 Dep. 337:22–339:6, 340:21–350:16 (Mr. Díaz testifying that he is unaware of any decrease in sales of his books or any monetary harm suffered due to Meta's use of his books to train its Llama models) ; R. Snyder 12/11/2024 Rough Drft. Dep. 249:22–250:1, 250:14 251:1–253:5, 259:19–23 (Ms. Snyder testifying that she is unaware of any evidence of lost sales or lost licensing opportunities as a result of Meta's conduct alleged in the Complaint); J. Woodson 9/30/2024 Dep. 383:14–20, 389:5–20  (Ms. Woodson testifying that she is unaware of any lost licensing opportunities, loss of income, or lost sales as a result of Meta's conduct alleged in the Complaint); M. Klam 12/10/2024 Rough Drft. Dep. 325:21–326:3, 328:6-10, 330:13–16 (Mr. Klam testifying that he is unaware of any evidence that he lost sales of his asserted works or lost licensing opportunities as a result of Meta's conduct alleged in the Complaint); C. Farnsworth 12/4/2024 Rough Drft. Dep. 138:20–139:8 (Mr. Farnsworth testifying that he could not point to any specific lost opportunity he suffered due to Meta's release of its Llama model).

Moreover, there was no market for licensing Plaintiffs' literary books as training data for LLMs at the time Meta first Llama 1 or at the time Plaintiffs' filed their lawsuit, and there is no such market today.  Plaintiffs have admitted as much in discovery.  Moreover, testimony from Meta's witnesses, including, by way of example, from Sy Choudhury, and Alex Boesenberg, indicate that there has not been, and is not a market for licensing books for AI training.  *See e.g.*, S. Choudhury 12/5/2024 Dep. 20:6-22:21, 65:10-21; A. Boesenberg 11/18/2024 Dep. 381:14-22.  Moreover, any particular book has no independent value as training data and/or is

interchangeable with countless other books. In any case, such a market would be for a transformative use. It would also be impractical, if not impossible, for companies developing LLMs to attempt to negotiate licenses with each individual book rights holder for various reasons, including but not limited to the amount of time and cost necessary to do so would have precluded development of the models in the first instance, in particular given the time and costs relative to the de minimis value of individual works to the development of the models. In support, Meta intends to rely on Plaintiffs' discovery responses and testimony, expert reports and testimony, percipient witness testimony, as well as documents produced in this litigation

**INTERROGATORY NO. 17:**

If You or any of Your employees and/or agents intend to assert the advice of counsel defense, state any and all facts upon which You or any of your employees and/or agents intend to rely on for that contention.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 17:**

Meta incorporates by reference its objections and definitions above.

Meta objects to this Interrogatory as vague and ambiguous as to the reference to "Your employees and/or agents" with respect to any defense in this case, as no Meta employees or agents are parties to this case.

Meta objects to this Interrogatory because it exceeds Plaintiffs' limit of 25 Interrogatories under Rule 33(a)(1).

Subject to and without waiving the foregoing objections, Meta responds as follows: Meta does not intend to assert the advice of counsel defense in this case.

Dated: December 13, 2024

COOLEY LLP

By: _/s/ Judd Lauter_
  Bobby Ghajar
  Mark Weinstein
  Kathleen Hartnett
  Phillip Morton
  Judd Lauter
  Elizabeth L. Stameshkin
  Matthew Brigham
  Colette Ghazarian
  Juan Pablo Gonzalez
  Cole A. Poppell

  LEX LUMINA PLLC
  Mark A. Lemley

  CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
  Angela L. Dunning

  Attorneys for Defendant
  META PLATFORMS, INC.

*Full Counsel List*

COOLEY LLP
PHILLIP MORTON *(pro hac vice)*
(pmorton@cooley.com)
COLE A. POPPELL *(pro hac vice)*
(cpoppell@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:    (202) 842-7800

COOLEY LLP
MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
JUAN PABLO GONZALEZ (334470)
(jgonzalez@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000

LEX LUMINA PLLC
MARK A. LEMLEY (155830)
(mlemley@lex-lumina.com)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone:    (646) 898-2055

## PROOF OF SERVICE

I am a citizen of the United States and a resident of the State of California.  I am employed in Los Angeles County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is Cooley LLP, 355 South Grand Avenue, Suite 900, Los Angeles, CA  90071.  On the date set forth below I served the documents described below in the manner described below:

- **DEFENDANT META PLATFORMS, INC.'S FURTHER SUPPLEMENTAL AND AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

Executed on December 13, 2024, at Los Angeles, California.

*/s/Jerry Gonzalez*

Jerry Gonzalez

1

**SERVICE LIST**

2

Joseph R. Saveri

3
Cadio Zirpoli
Christopher K.L. Young

4
Holden Benon
Louis Andrew Kessler

5
Aaron Cera
Margaux Poueymirou

6
JOSEPH SAVERI LAW FIRM, LLP

7
601 California Street, Suite 1000
San Francisco, CA 94108

8
Email: jsaveri@saverilawfirm.com

9
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com

10
hbenon@saverilawfirm.com
lkessler@saverilawfirm.com

11
acera@saverilawfirm.com
mpoueymirou@saverilawfirm.com

12

13
Matthew Butterick
MATTHEW BUTTERICK,
ATTORNEY AT LAW

14
1920 Hillhurst Avenue, #406

15
Los Angeles, CA 90027
Email: mb@butericklaw.com

16
*Attorneys for Individual and Representative*

17
*Plaintiffs and the Proposed Class*

18
Bryan L. Clobes (*pro hac vice*)

19
Alexander J. Sweatman (*pro hac vice*)
Mohammed Rathur

20
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP

21
135 South LaSalle Street, Suite 3210
Chicago, IL 60603

22
Email: bclobes@caffertyclobes.com

23
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

24
*Attorneys for Individual and Representative*

25
*Plaintiffs and the Proposed Class*

26

27

28

Joshua I. Schiller
Maxwell Vaughn Pritt
BOIES SCHILLER FLEXNER
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Email: jischiller@bsfllp.com
mpritt@bsfllp.com

David Boies (*pro hac vice*)
BOIES SCHILLER FLEXNER
333 Main Street
Armonk, NY 10504
Email: dboies@bsfllp.com

Jesse Panuccio (*pro hac vice*)
BOIES SCHILLER FLEXNER
1401 New York Ave. NW
Washington, DC 20005
Email: jpanuccio@bsfllp.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Proposed Class*

Brian O'Mara
DiCELLO LEVITT LLP
4747 Executive Drive, Suite 240
San Diego, CA 92121
Email: BrianO@dicellolevitt.com

Amy Keller (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
DiCELLO LEVITT LLP
10 North Dearborn St., Sixth Floor
Chicago, IL 60602
Email: akeller@dicellolevitt.com
julwick@dicellolevitt.com
ndjordjevic@dicellolevitt.com

David A. Straite (*pro hac vice*)
DiCELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: dstraite@dicellolevitt.com

*Attorneys for Plaintiff Lysa TerKeurst*

1  Elizabeth J. Cabraser
2  Daniel M. Hutchinson
   Reilly T. Stoler
3  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
4  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
5  Telephone: (415) 956-1000
6  Email: ecabraser@lchb.com
           dhutchinson@lchb.com
7          rstoler@lchb.com

8  Rachel Geman
   LIEFF CABRASER HEIMANN &
9  BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
10 New York, New York 10013-1413
   Telephone: (212) 355-9500
11 Email: rgeman@lchb.com

12

13 *Attorneys for Plaintiff Christopher Farnsworth*
   *and Representative Plaintiffs and the Proposed*
14 *Class*

Nancy Evelyn Wolff
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 340-6334
Fax: (310) 492-4394
Email: NWolff@cdas.com

Scott J. Sholder
CeCe M. Cole
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Email: ssholder@cdas.com
        ccole@cdas.com

*Attorneys for Plaintiff Christopher Farnsworth*
*and Representative Plaintiffs and the Proposed*
*Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28