UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, District Judge

KADREY, et al.,                    )
                                   )
          Plaintiffs,              )
                                   )
vs.                                )   No. C 23-03417-VC
                                   )   Related Case
META PLATFORMS, INC.,              )   No. C 25-09579-VC
                                   )
          Defendant.               )
_____)

                                   San Francisco, California
                                   Friday, December 19, 2025

 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 10:40 - 11:30 = 50 MINUTES

APPEARANCES:

For Plaintiffs:
                         Boies, Schiller & Flexner, LLP
                         1401 New York Avenue,
                           Northwest
                         Washington, D.C. 20005
                    BY:  JESSE M. PANUCCIO, ESQ.

                         Bois Schiller Flexner LLP
                         44 Montgomery Street
                         41st Floor
                         San Francisco, California
                           94104
                    BY:  MAXWELL V. PRITT, ESQ.


          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

*Echo Reporting, Inc.*

2

For Plaintiffs:

                    Joseph Saveri Law Firm, LLP
                    601 California Street
                    Suite 1000
                    San Francisco, California
                      94108
                 BY:  CHRISTOPHER K. L. YOUNG, ESQ.

                    DiCello Levitt LLP
                    10 North Dearborn Street
                    Sixth Floor
                    Chicago, Illinois 60602
                 BY:  JAMES A. ULWICK, ESQ.

                    Lieff Cabraser Heimann &
                      Bernstein, LLP
                    250 Hudson Street
                    Eighth Floor
                    New York, New York 10013
                 BY:  RACHEL GEMAN, ESQ.

                    Lieff Cabraser Heimann &
                      Bernstein, LLP
                    Embarcadero Center West
                    275 Battery Street
                    29th Floor
                    San Francisco, California
                      94111
                 BY:  DANIEL M. HUTCHINSON, ESQ.

                    Hueston Hennigan
                 BY:  LEE LINDERMAN

For Defendant:

                    Cooley LLP
                    1333 2nd Street
                    Suite 400
                    Santa Monica, California 90401
                 BY:  BOBBY A. GHAJAR, ESQ.

                    Cleary Gottlieb Steen &
                      Hamilton, LLP
                    1841 Page Mill Road
                    Suite 250
                    Palo Alto, California 94304
                 BY:  ANGELA DUNNING, ESQ.

          (APPEARANCES CONTINUED ON NEXT PAGE)

3

For Defendant:
                              Dunn Isaacson Rhee LLP
                              401 9th Street NW
                              Washington DC, DC 20004
                         BY:  KAREN L. DUNN, ESQ.
                              KYLE N. SMITH, ESQ.

                              Cooley LLP
                              3 Embarcadero Center
                              Floor 20
                              San Francisco, California
                                94111
                         BY:  KATHLEEN R. HARTNETT, ESQ.

Transcribed by:               Echo Reporting, Inc.
                              Contracted Court Reporter/
                              Transcriber
                              echoreporting@yahoo.com

4

Friday, December 19, 2025                          10:40 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Now calling civil cases 23-3417, Kadrey, et al. versus Meta Platforms, Inc., and 25-9579, Entrepreneur Media, LLC versus Meta Platforms, Inc.

Will Counsel please state your appearances for the record, starting with the Plaintiff for Kadrey.

MR. PRITT (via Zoom):  Thank you very much.  For Boies Schiller and Flexner, you have myself, Maxwell Pritt, and Jesse Panuccio.  And also for the Kadrey Plaintiffs, from Lieff Cabraser Heimann and Bernstein, you have Rachel Geman and Daniel Hutchinson.  Good morning, your Honor.

THE COURT:  Well --

MR. PRITT:  Thank you.

MR. YOUNG (via Zoom):  Good morning, your Honor. Christopher Young, Joseph Saveri Law Firm, for the Plaintiffs, Kadrey Plaintiffs.

THE COURT:  Hi.

MR. ULWICK (via Zoom):  Good morning, your Honor. James Ulwick from DiCello Levitt LLP on behalf of the Kadrey Plaintiffs.

THE COURT:  I'm sorry, I couldn't hear you.

MR. ULWICK:  Sorry.  James Ulwick on behalf of the Kadrey Plaintiffs from the firm DiCello Levitt LLP.  It's

5

nice to meet you.

THE COURT:  Hi.

MS. HARTNETT (via Zoom):  Hi, your Honor.  It's Kathleen Hartnett from Cooley on behalf of Meta for both cases.

THE COURT:  Hi.

MS. DUNN (via Zoom):  Hi, your Honor.  It's Karen Dunn on behalf of Meta for both cases as well.  And with me is my colleague Kyle Smith.

THE COURT:  Welcome to the party.

MS. DUNN:  Thank You.  Happy to be here.

MR. GHAJAR (via Zoom):  Good morning, your Honor.  Bobby Ghajar from Cooley, also on behalf of Meta Platforms.

THE COURT:  Hi.

MS. DUNNING (via Zoom):  Good morning, your Honor.  Angela Dunning from Cleary, also on behalf of Meta Platforms.

THE COURT:  Hello.

MR. LINDERMAN (via Zoom):  Good morning, your Honor.  Lee Linderman from Hueston Hennigan on behalf of Entrepreneur Media.

THE COURT:  Good morning.

MR. LINDERMAN:  Good morning.

THE COURT:  Is that it?  Is that everyone?  Okay.  All right.  So it is pretty rare that I will be reading

6

a case management statement the night before CMCs and start laughing out loud, but I did that in this case. And the -- I -- the point where I started laughing out loud is where I saw the proposal from the Kadrey Plaintiffs and Meta that the new case, the Entrepreneur Media case, should be delayed while the Kadrey case proceeds. There are -- have been so many problems with the Kadrey case, so many holes in the case of the Kadrey Plaintiffs, incomplete record, problems developing the record. I -- there are going to be major problems at class certification, I can assure you, based on what has transpired thus far in the case. And Entrepreneur Media has a right to pursue its case, and it would not be fair to Entrepreneur Media to be held hostage to all of the problems in the Kadrey Plaintiffs case.

Furthermore, you know, this is obviously an important issue that needs to get resolved. It's never going to get -- you know, just the general issue of AI/machine learning copyright infringement, it's never going to get resolved until it goes up to the appellate courts. And, you know, I think everybody involved on both sides of the issue have a strong interest in getting the issue resolved as soon as possible. And it is much more likely that the Entrepreneur Media case is going to get up to the appellate courts before the Kadrey case. And so I would think that, if anything, the -- if any case needs to be slowed down or held up, it

would be the Kadrey case, to allow the Entrepreneur Media case to move forward at a reasonable clip.

So my inclination -- very strong -- very, very strong inclination is to adopt the schedule proposed by the Entrepreneur Media Plaintiffs to get this case adjudicated. It's not a class action.  We don't have class certification proceedings to worry about.  A ton of discovery has already been produced in the Kadrey case that can simply be produced in the Entrepreneur Media case.  And then there'll need to be some supplemental discovery, obviously.  But I think that -- you know, the -- you know, the -- I read the complaint, the Entrepreneur Media case is teeing up properly the fourth factor which the Kadrey Plaintiffs did not tee up properly. I don't see why we shouldn't just adopt the schedule that the Entrepreneur Media Plaintiffs proposed, and then have a discussion if we need to about whether to slow down the Kadrey case.  So I guess that is -- those comments are primarily for Meta to respond to.

MS. DUNN:  Your Honor, I can start on the scheduling issue, and Ms. Hartnett will jump in should anything relevant to the -- you know, everything that's happened in Kadrey that I missed.  So I want to be cognizant of that.

THE COURT:  Ms. Dunn, did you -- have you come in kind of to take the lead on the Entrepreneur Media case, or

8

are you -- like, what's your -- what -- why are you here all of a sudden?

MS. DUNN:  Excellent question, your Honor.  I'm here on both cases, and we're co-counsel with Cooley on both and with Ms. Dunning on both cases.  So we're in for the whole kit and caboodle.  But I do want to recognize that there's been a lot of water under the dam that I haven't been here for.  So I just want to say that at the outset, and I understand that.  And so there -- we've split up this hearing between myself and Ms. Hartnett.

THE COURT:  Great.

MS. HARTNETT:  And, your Honor, I was going to speak to Kadrey, and Ms. Dunn was going to take the lead on Entrepreneur, and we sort of had kind of started from the presumption that I might go first, but she should go first now in light of --

THE COURT:  You guys can jump in, interrupt each other, do whatever you want.

MS. HARTNETT:  It's going to be -- it'll be great.  Okay.

Go ahead, Karen.

MS. DUNN:  Thanks.  So there are two issues that are immediately apparent in response to what the Court has said.  So, first of all, the Kadrey record is still under development, and so there's an issue where if the

Entrepreneur case proceeds, there will have to be additional -- potentially additional things that are produced to the Kadrey Plaintiffs.  On the flip side of that coin, the Entrepreneur Plaintiffs are entitled to some subset, not everything, of the discovery.  That has already happened.  That has to be discussed and portioned out.  But as long as the Kadrey record is still being developed, it's impossible to nail that down.  So I do think -- we should have presented this a little bit differently in the CMC statement, which is, what we are proposing is not a stay of Entrepreneur.  It's more of a phased approach to Entrepreneur, so that we don't have more disruption owing to the Kadrey case that would disrupt both cases.  So --

THE COURT:  I think it's a given that there is going to be more disruption in the Kadrey case.  I mean, the Kadrey case is probably going to be here longer than I'm going to be on the bench, the way things are going.  And I understand what you're saying, but I am firmly of the view that if there's going to be a delay in one case, it -- if there's going to be any delay in one case, it's going to be the Kadrey case.  And --

MS. DUNN:  Understood, your Honor.

THE COURT:  -- if we need to put things on hold in the Kadrey case while we work up the Entrepreneur Media case, so be it.  And I hear what you're saying, that, you

10

know, it sort of creates this inconvenience in the Kadrey case because the record isn't fully developed, the -- you know, there -- you're finishing up on that.  And then there's going to be this issue of how can the Kadrey Plaintiffs use the materials that are, you know, presented in the Entrepreneur Media case, to the extent that there's anything new?  And my response to that is we'll cross that bridge when we get to it, and we're going to focus primarily on the Entrepreneur Media case.

MS. DUNN:  Okay.  I think we understand what the Court is communicating, which sounds a lot more like a stay of Kadrey in favor of letting Entrepreneur proceed --

THE COURT:  Possibly.  I mean, we can talk about that.  But I don't -- I do not think it would be fair to the Entrepreneur Media Plaintiffs to sort of interfere -- for the Kadrey case to interfere with their ability to move forward promptly.

MS. DUNN:  Okay.  Taking then the Entrepreneur schedule and recognizing that we should continue to discuss the first issue about how this would mechanically work, given the existence of the Kadrey Plaintiffs, the Entrepreneur schedule has at least two apparent unrealistic aspects that I would like to call the Court's attention to. And we understand the desire to move ahead, and we're not trying to obstruct that, but there are two immediate

11

problems.

The first and very obvious problem is that the deadline for dispositive briefing and potential hearing in their proposal is December 23rd with a trial date of January 12th.

THE COURT:  That's a problem, yeah.

MS. DUNN:  That seems -- I mean, unless the Court is desiring to spend its holiday season in a totally miserable way, this seems not remotely workable.

The second issue that we see is the fact discovery cutoff of September 25th, 2026.  And the reason that is problematic is that this market dilution theory is novel.  It's complicated.  As somebody who's done a lot of antitrust, once you get into issues of market, there are very complicated causation issues, there's complicated definition issues.  There's enormous complexity here.  And then once you layer on the issues of data and technological complexity that will be relevant to this case, this is not a reasonable deadline.  So I think we are very amenable to getting with the Entrepreneur Plaintiffs and, you know, meeting and conferring on what might be a reasonable schedule, but this -- especially in light of your Honor's express desire to move forward Entrepreneur, you know, as Kadrey maybe gets held up, that seems like something the parties should talk about.  But the schedule as put forward, we would request that the Court not enter it because it is

12

not going to be realistic.

THE COURT:  Okay.  Could I ask you one other question?  Could you give me some examples of things produced in the Kadrey case that the Entrepreneur Media Plaintiffs should not be entitled to?

MS. DUNN:  Yeah.  So there's quite a lot of discovery in the Kadrey case, although obviously Ms. Hartnett will correct me since she's been here the whole way along, that have to do with the named Plaintiffs in that case.  These cases, as your Honor knows better than I do, I'm sure, have a lot to do -- and especially given what you said about class, have to do --

THE COURT:  Can I interrupt you for a second?

MS. DUNN:  Yeah.

THE COURT:  Certainly, I don't think that the Entrepreneur Media Plaintiffs have any need for anything relating to the named Plaintiffs in Kadrey.

And I'm guessing that Mr. Linderman would not disagree with that.

MR. LINDERMAN:  Correct, your Honor.

THE COURT:  Okay.  So what else?

MS. DUNN:  In general, I will say -- and I'll let Ms. Hartnett pick this up because she was here for the discovery, but there's a lot of federal law that is counter to the idea that you should just flip discovery without

having a meet and confer.  So all we're saying at this conference is we are committed to and understand the need for having a meet and confer, so that we can segment out whatever categories --

THE COURT:  Okay.  But do you have any other examples of categories?  I understand you just got into --

MS. DUNN:  Yeah, I did just get here, but I do think there -- the issues related to market harm, as your Honor already pointed out, this is -- was litigated in an entirely different way, or at least in what seems to be a different way.

THE COURT:  Well, there's virtually nothing in the record in Kadrey on market harm, so I don't know.  I mean, that's just something that the Plaintiff -- the Entrepreneur Media Plaintiffs will need more discovery about, and they can start seeking that now.  I mean, they -- by the way, discovery is open as of today in this case.  And the -- you know, there's nothing preventing the Entrepreneur Media Plaintiffs from seeking discovery on market harm now because there was nothing meaningful in the record in the Kadrey case on that.

MS. DUNN:  I mean, there are many issues that obviously bear on market harm, so I think we'll have to see as we go along.  But I -- you know, I -- your Honor is correct, I was not here.  We also require discovery in this

14

new case, so that we'll be --

THE COURT:  And you can move forward today on that, yeah.

MS. DUNN:  Obviously, we were going to come and ask for the motion to dismiss to be resolved, but it seems that the Court has already decided that that's not --

THE COURT:  I've read the complaint.

MS. DUNN:  -- so I understand.

THE COURT:  I've read the complaint.  I'm familiar with these issues, and discovery can go forward now.

MS. DUNN:  Understood.  So I think what we're asking the Court really is just for the ability to meet and confer with Entrepreneur Plaintiffs now that we know that that case will be prioritized in time and that discovery is open today.

THE COURT:  Okay.  And so I guess what I would contemplate is -- certainly, you are correct that, you know, December 23rd for filing dispositive motion or a hearing on dispositive motions -- December 23rd for a hearing on dispositive motions and trial on -- or the pre-trial conference on January 5th and the trial of -- on January 12th of 2027 is not going to work for a variety of reasons, right?  We -- you know, you -- the reason we usually schedule a summary judgment hearing, you know, approximately three months before trial is that there is tons of pre-trial

15

work that you all need --

MS. DUNN:  Right.

THE COURT:  -- to do in advance of the pre-trial conference, and it's good to get an answer on summary judgment before you have to start doing that work.  And I think this is a particularly complicated case, right?

MS. DUNN:  Yeah.

THE COURT:  And there's going to be a lot of expert stuff.  And so I -- it -- I think it makes sense to have three months between the summary judgment hearing and the final pre-trial conference, and then two weeks between the final pre-trial conference and the trial.

I also think that -- I would be willing, you know, from my standpoint, after you all meet and confer, if it makes sense -- I don't know how to respond to your comment, Ms. Dunn, about the fact discovery cutoff, right?  I mean, I've told you that discovery can open now, both sides can begin conducting discovery now, the Plaintiffs can begin conducting discovery -- doing discovery on market harm now. There is going to be a very strong presumption in favor of Meta being required to turn over discovery from the Kadrey case to the Plaintiffs in the Entrepreneur Media case, and there has to be a really good reason not to do so.  And, obviously, there is a really good reason not to turn over discovery about the named Plaintiffs in Kadrey to the

16

Entrepreneur Media Plaintiffs, right?  And there may be other categories, but there is -- you know, there's a very strong presumption in favor of disclosure of that discovery to the Entrepreneur Media Plaintiffs, and I believe that it should be done.  I -- if it weren't for the holidays, I would say I believe that it should be -- all of that should be decided in 14 days.  I'll say that all of it should be decided in 28 days.

MS. DUNN:  Thank you, your Honor.  We appreciate that, and we have heard the Court on what you're saying.

I do think we will find that the September deadline is highly unrealistic, just given --

THE COURT:  Okay.  And I'll let you all -- I'll let you all meet and confer about that and submit either a proposed -- a new joint proposed schedule consistent with the guidance that I've offered or competing proposed schedules.

MS. DUNN:  Understood.

THE COURT:  And we can go from there.  But I -- you know, it doesn't seem like the trial needs to be much later than what the Plaintiffs are currently proposing.  It may be that you need to tweak the fact discovery cutoff and the trial needs to be pushed back a little bit, but it seems like it's -- it can be in the ballpark of what the Plaintiffs are proposing.

So anything -- so that'll be the -- that'll be the directive, right?  That you should meet and confer, you should submit proposed schedule or competing proposed schedules in the Entrepreneur Media case.  When should the deadline be for that?  I don't want to be messing up anybody's holidays or anything.

MS. DUNN:  I mean, I'm interested to know what the Entrepreneur Media Plaintiffs think.  I do think we would like some time in the new year to meet and confer, certainly.

THE COURT:  Why don't we say that competing proposed schedules are due -- or joint proposed schedules or competing proposed schedules are due January 8th?

MR. LINDERMAN:  That works for us, your Honor.

MS. DUNN:  That works for us as well.

THE COURT:  Mr. Linderman, anything else from you? I sort of -- I didn't -- I know we're going to hear from the Kadrey Plaintiffs in a moment, and we need to have a discussion about how the Kadrey case is going to be handled in light of this, but any -- from your perspective, anything more right now to discuss?

MR. LINDERMAN:  No.  I think -- your Honor, I think you hit all the points that we were planning to make. And, you know, I just, like, would point out that the September fact discovery cutoff, the point would be that

18

we're getting a lot of their discovery already.  So we're not trying to recreate the wheel.  We just have some targeted stuff on factor four in particular.  So I think it is realistic.  And -- yeah, I think everything that you've said, we have nothing else, so we appreciate it, your Honor.

THE COURT:  Okay.  Well, yeah, you all can -- you all can hopefully work through the dates in light of the guidance that I've given.

Okay.  So then, in light of that, Ms. -- in light of all that, Ms. Dunn or Ms. Hartnett, what is your perspective on how we should be handling the Kadrey case?

MS. HARTNETT:  Thank you, your Honor.  It's very helpful to get the guidance on how you're seeing it.

I think, from our perspective, just given -- and we can update you where we are in Kadrey.  As you can see, we already had put a stipulation in to ask for 10 more weeks because of some of the -- we had made a disclosure after a recent hearing before your Honor that we had found one more instance of torrenting.  We had disclosed that.  We're participating voluntarily and providing them additional discovery.  That's what's leading to the 10 weeks.

We have another motion to amend the complaint, which is actually creating some other issues there to -- I think it's a -- well, they can speak to it themselves, but a sort of potential attempt to re-broaden after we kind of had thought

19

we were narrowed back to distribution.  And that's going to require a briefing.  We put in a stipulation just yesterday to at least get a little bit more time for the briefing on that over the holidays, but I -- just hearing what you're saying now, I'm trying to process this in real time.  I actually respectfully submit it would be helpful to at least stay the Kadrey matter for some time if we're going to be actively working on the market dilution aspect of Entrepreneur.  The one thing I'm just -- want to make sure your Honor is aware of, that is like an individual plaintiff seeking to basically redo that part of the case differently.  So we appreciate that's one piece of what Entrepreneur is.  There is a distribution claim in that case as we read the complaint, and so the one thing -- I think we just want to be mindful of making sure that we're not duplicating and creating issues with just the distribution related discovery, because that now is the Kadrey Plaintiffs' focus.  So I think, from our perspective, we would actually prefer to have one case going forward and not have the distribution tail of -- not a tail, but -- I don't mean to be pejorative, but that aspect of Entrepreneur which is not the main aspect but a part of it just turn into a bonanza when we really should be focused on just getting the training claim right.

THE COURT:  Yeah.  I mean, what I was wondering is whether we should press ahead.  And I haven't seen your stip

20

yet, but I did hear that you submitted a further stip to kind of push back.  So the idea is you -- you know, you found one more example of torrenting, you -- discovery is being done around that.  And then I ordered further discovery.  I granted the Plaintiffs' request for further discovery a little bit ago, and you just -- so what are you asking to push back?  Like --

MS. HARTNETT:  Well -- yeah, so just setting aside the Entrepreneur for a minute --

THE COURT:  Yeah.

MS. HARTNETT:  -- what we were currently agreeing with, with the Plaintiffs and Kadrey, was that we had essentially a 10-week extension.  So it would lead to summary judgment briefing being completed in early July and a mid-July summary judgment hearing.  And the reason for that was not that -- we just agreed voluntarily to do some additional e-mail review and computer review and a -- and some other sources in light of this, just to make sure we're not missing another needle in a haystack.  So essentially that's what we were working with them on.

THE COURT:  And then -- but how does that -- and the -- is the idea that even if I grant the motion to amend the complaint -- and I haven't read the motion to amend the complaint yet, but -- or if there's an opposition, I haven't read the opposition.  But when is that teed up for?  When is

21

that hearing supposed to take place?

MS. HARTNETT:  Currently January 15th.

THE COURT:  Okay.

MS. HARTNETT:  And it does raise -- I mean, we don't -- I don't want to get ahead of it and argue that here before you've read it, but I mean there are -- what they're adding is a claim for contributory copyright infringement.

THE COURT:  I saw that, yeah.

MS. HARTNETT:  Yeah.  And then they -- they've -- you know, kind of -- it's the -- they're kind of shoring up the making available theory.  They do seem to be possibly talking about other uses, so there's a little bit of vague language that we're not sure what it means in terms of are we trying to broaden again beyond distribution?  And then the class definition has yet again been broadened.  So there are some serious issues there that we want to address.  But I think the main point is I'm just -- I -- there is a concern -- I think just because so much focus there is on distribution, of just kind of how to make sure that we're not duplicating effort by dealing with all of the requests from the Plaintiffs and Kadrey.  But at the same time, Entrepreneur does have that as part of its case.  And so just how to kind of do that in a more methodical manner, which was why -- assuming that your Honor was going to say, "Keep going full steam ahead with Kadrey," the notion had

22

been, "Okay.  Let's not have Entrepreneur.  Let's try to do this efficiently."  And so I'm kind of just flipping it around now.  To the extent Entrepreneur is going to be doing it efficiently, maybe we let them try to do that, and then we see where we are, and then, you know, there -- no doubt they'll develop evidence about distribution appropriately and Entrepreneur.

THE COURT:  Yeah.  I mean, what I'm pondering now, and, you know, I don't think that any decision needs to be made on this today.  And it may be that more thinking needs to be done about how to handle the Kadrey case.  I'm very confident in everything I said about Entrepreneur Media.  I'm kind of thinking out loud now about how to handle Kadrey.  But my instinct is telling me that there would be value in at least plowing ahead on Kadrey to the point of sort of finally completing discovery in that case, right?  I'm not sure about that, but I -- sort of, my gut is saying let's -- you know, we're kind of -- we -- we're near the finish line, I think, although of course the finish line keeps moving back, right?  And let's just put discovery to bed in the Kadrey case and then talk about whether, you know, any of the other proceedings should be -- any of the subsequent proceedings should be stayed.  But -- and maybe part of that is like how -- if -- you know, there's this motion to amend the complaint.  And if the motion to amend

23

the complaint is granted, what cans of worms are going to be opened as a result of that, and is it going to require even further discovery, and is it going to push things back even further?  And then are -- you know, are we going to be in this sort of nightmare scenario where we're trying to move the Entrepreneur Media case forward at a reasonable clip consistent with Entrepreneur Media's rights while -- you know, are we going to be able to do that while we're -- continue to be bollixed up in all the problems in Kadrey?

MS. HARTNETT:  Your Honor, and we can -- again, I don't want to dominate this, but I actually do think that that -- as we're kind of reflecting on what you're saying, I do think that's a realistic issue that we are going to strongly oppose the motion to amend, because we do think it opens a can of worms, especially the new contributory theory is going to figure out, okay, who are these direct infringers out there?  What were the mechanisms by which Meta allegedly did this?  There's the class definition stuff, there's other things.  And so -- but it's really this new theory, I think, that is really going to require us actually to take discovery too if it survives, and we can -- so I guess -- at a minimum, I would want to let us put in something to explain why, reflecting on what you're now proposing for Entrepreneur, that we think it makes most sense to stay Kadrey.  And even -- I mean, we can get the

24

motion to amend, you know, before you too, but I just -- it really does open a can of worms and issues that you may not need to have to even decide, depending on how the distribution claim plays out in Entrepreneur.  They're essentially an opt out, you know, from the -- what Kadrey is trying to do on the distribution side of things.

THE COURT:  Right.  Should I -- I mean, I guess one thing is I should grant your stip that you've reached with the Kadrey Plaintiffs, just so that -- we know that at least that amount of delay is going to be needed.  And I don't -- and we don't want to be messing up your holidays, right?  So I think I should grant that stip, and then probably the rest of it, and I know that the Kadrey Plaintiffs haven't had a chance to speak yet today, and we'll hear from them, but I wonder if the rest of it should be sorted out in connection with the adjudication of this motion to amend the complaint.

MS. HARTNETT:  Yes.  I mean, that was on my -- top of my list to make sure we just -- we would ask that the Court enter the stip at a minimum today, just the 660 -- docket 660, because that gives us the -- moves the deadlines.

THE COURT:  I'll do that.

MS. HARTNETT:  And then there's also docket 660 -- I believe 662 is the stip on the motion for leave to amend

25

briefing schedule.

THE COURT: Okay. Well, let's talk about that.

MS. HARTNETT: But we should talk about that now, because I think what you're saying may change that a bit too, but --

THE COURT: Yeah. Yeah, so -- you -- so, right now, there's a motion for leave to amend that's been filed. You haven't filed a response yet. And you have a stip about the deadlines for that. But I have this big criminal trade secret trial starting on January 8th. And it's going to -- it's going to be one -- I mean, a lot of times, we can walk and chew gum at the same time, but this trial is going to be really challenging and time consuming. And so I'm just trying to think of -- you know, and then you all need time also to absorb what's happened here today and figure out what arguments you're going to make and -- about how to handle the Kadrey case in light of what's happened here today. And so I'm wondering if -- you know how much I hate delaying things, but I'm wondering if we should -- you know, I've sort of granted your stip about, you know, pushing back the deadlines in Kadrey. I'll do that today, and I'm wondering if we should have a hearing on the motion to -- motion for leave to amend, which also might be a motion to -- for a stay or a motion for -- you know, to -- a temporary stay or a partial stay or something. I don't know. If we -

26

- maybe we should have a hearing on all that stuff in February sometime.

MS. HARTNETT:  Your Honor, we think that would make a lot of sense and would allow -- I do think we should be permitted to -- and thank you for, you know, allowing it. But if you do, just a motion for a stay to be put in before we kind of -- and maybe have that all heard together in some orderly fashion without rushing it to January 15th.

THE COURT:  Okay.  And then the -- obviously, the Entrepreneur Media Plaintiffs may -- you know, can file something in connection with that as well if they feel they have a horse in the race.

MS. DUNN:  Yeah.  So --

MS. HARTNETT:  Why don't you speak to that?

MS. DUNN:  I was going to say -- I mean, I do think continuing with the Kadrey -- well, just to take a step back, I know I'm new here, but the fact that there is a motion for a fourth amended complaint feels like a good inflection point to consider a real stay, especially given what your Honor has said about the Entrepreneur schedule. And I think that the Entrepreneur Plaintiffs can speak for themselves, but it seems like that would be in their interest too.  So I do think you can count, your Honor, on -- you know, if this -- if we don't get to a conclusion today, but I -- we will move for a stay because it's going

27

to make it possible for us to do everything that the Court has already said that it expects for us to do.

THE COURT:  Okay.  All right.

Mr. Pritt, any comments on all of this stuff?

MR. PRITT:  Yes, thank you for the opportunity, your Honor.

Respectfully, the Kadrey Plaintiffs believe the peer-to-peer file sharing infringement and piracy is just as important as your Honor's (indiscernible) issues that the Entrepreneur Media Plaintiff will be pursuing.  If anything, in our representation of the putative class, under Rule 23, we believe it would be extremely prejudicial, given the time and effort we've put into this case, to stay or delay this case.  And if anything, given that it will be on your Honor's CJR report come this summer and Meta continues to need additional time to complete the record as to torrenting, based on what we have proposed to your Honor, which now puts open expert reports out until the end of February, there's no reason that class discovery cannot occur at the exact same time right now, because class discovery in this context is extremely limited.  What's now left in this case is the narrow issues of peer-to-peer file sharing infringement.  What has been retrieved from these online piracy marketplaces, it's the same issues that were litigated in practically a month before Judge Alsup.  That -

28

- if you then look at the schedule, given that the summary judgment hearing isn't until July 16th, there's absolutely no reason that you can't hear, if your Honor wishes, class classification at that exact same time.  That would enable almost an additional month of class discovery, to the extent Meta needs it, in addition to where the open expert reports are.  This is docket --

THE COURT:  What's your class definition?

MR. PRITT:  Our class definition are the legal and beneficial owners of copyrights registered with the US Copyright Office within five years for any works that were made available, distributed, or torrented using BitTorrent from these online repositories.

THE COURT:  So any copyright holder?

MR. PRITT:  Sorry, in a literary work.

THE COURT:  In a literary work.  Okay.

MR. PRITT:  (Indiscernible) the exact definition, I don't have the -- it's not the literary work because that includes things like code under the Copyright Office.  It's limited to books, articles, and publications.  So, in other words, the content that was torrented from these shadow libraries.

THE COURT:  Okay.

MR. PRITT:  And -- sorry.

THE COURT:  Could I ask another question?

29

MR. PRITT:  Yes.

THE COURT:  Let's say I am an author.  Let's say I'm an author of mystery novels, and I'm not a named plaintiff in your case.  Why would I ever want to join your class?  I mean, I could bring my own lawsuit or my own class action where I assert the infringement theory that you lost on, right?  And it -- you know, include evidence -- meaningful evidence relating to factor four, and I can have a claim relating to torrenting, and I could bring it myself, I could bring it on behalf of a proposed class.  Why would I join -- why would I want to join your class, given that you've already lost on one of these key issues?

MR. HUTCHINSON:  Can I speak to that, your Honor?  Daniel Hutchinson.

THE COURT:  The key issue in the case.

MR. HUTCHINSON:  Yeah.  Daniel Hutchinson of Lieff Cabraser, your Honor, and I'm happy to address that and speak to your Honor.

With regard to that question, we will be ready to try these claims under the schedule that your Honor proposed, putting forth a trial in early January 2027.  I can say that with confidence because Ms. Geman and I at Lieff Cabraser prepared to try a very similar case against Anthropic with a trial date of December 1st before Judge Alsup.  In this case and in the Anthropic case, the Plaintiffs' Counsel, the

30

class Counsel, developed the evidence through dogged determination to figure out these piracy claims and these distribution claims. These were not claims that were at issue. These were not claims that were part of the original complaint, admittedly, because they were found through the determination of the Boies Schiller firm, with my firm working shoulder to shoulder with them to discover this and find out what's there. This is the same claim, the distribution claim, the piracy claim, that would have been at issue in trial before Judge Alsup as well too. And so we have a proven track record of working up these claims, of getting them ready for trial and preparing them to be successful. That is why we got the successful result in the Anthropic case, because --

THE COURT: But -- right. But I guess that doesn't -- that's not totally responsive to my question, and I guess it might be that I'm missing something, but there's a claim that the Plaintiffs already lost on in the Kadrey case, right? And it's an important claim. And so if I -- if I'm a mystery author who had my stuff downloaded by Meta for training its -- you know, its AI products, why would I want to join your class as opposed to having my own?

MR. HUTCHINSON: Well, each class member has the option to do that. That -- that's the point of a class --

THE COURT: Right. But I'm just -- in terms of,

31

like, sort of deciding how important it is to go forward with your case, I mean you've already lost, like, the main claim in the case, and I just -- I'm not -- and now you're saying it's really important to go forward with class certification on this torrenting claim, and I'm just not sure -- I guess I'm not sure why.  I mean, I know that you could make some money off of it, right?  But it -- you know, I don't even know -- you know, I don't -- putting aside whether you're, you know, well qualified to handle the case -- I trust that you are -- I just don't -- I'm trying to figure out what interest any plaintiff would have -- any prospective plaintiff would have in joining your class as opposed to joining somebody else's class where they haven't already lost the primary copyright infringement claim.

MR. PRITT:  Your Honor, if I may.  Setting aside our appellate issues, respectfully, we do believe that the remaining piracy and peer-to-peer infringement is extremely important in this case, things that come -- came up during the course of our investigation and discovery in a (indiscernible).  There's only one statutory damages award per work, so to the extent a plaintiff is seeking statutory damages, based on the evidence we have of the piracy of their works or the torrenting and distribution, there is really no fair use defense.  I mean, we still -- Meta still suggests that it will raise some fair use defense, but it is

32

very clear in the case law that peer-to-peer file sharing and distribution does not have a fair use defense.  And so the only issue is an evidentiary one.  Now, if the plaintiff has a book that was torrented, it's going to be the exact same work that Meta then used later, so you cannot recover damages for that.  So we would go to trial, have -- you know, show the torrenting, deal with any fair use defense that Meta wants to try and raise at summary judgment, and be done.  And then the plaintiff can elect, if they want statutory damages, to get it through our class.  If they don't want that and they want to pursue damages other than statutory damages, they, of course, have that right, and we encourage them to do so.

THE COURT:  Why are you only now moving to amend the complaint to add a distribution claim?  I mean, wasn't it apparent that you had a -- not a distribution claim, sorry, a contributory infringement claim.  Wasn't it apparent that you may have had a contributory infringement claim back when we were doing summary judgment on the -- you know, on the primary infringement claim?

MR. PRITT:  At that point, if your Honor will recall, torrenting wasn't disclosed until November, and we still had no evidence of what we'll call seeding or leaching uploading.  And Meta fought that until January after the close of fact discovery on seeding, you ordered that they

33

had to produce.  Then it was leaching.  They said -- then that was produced.  And then the first actual tranche of documents or evidence that we had as to actual uploading wasn't even produced until -- if you recall, it was shortly before the summary judgment hearing.  And that's why your Honor said, "No, we're going to push this issue off and decide it later because we're still getting" --

THE COURT:  But shortly before the summary judgment hearing, you did receive evidence that Meta was uploading your clients' works.

MR. PRITT:  That was the 2022 torrenting.  Our clients' works were included in those -- because that was LibGen nonfiction, I believe -- except we did not have the logs that we received in just the last few weeks that show the actual time with which the torrents that were being downloaded were actually starting and stopping being uploaded.  So now we have concrete evidence that supports a contributory infringement claim.  And this contributory infringement claim --

THE COURT:  But when did you -- when did you -- I mean -- I think that all you needed to know to know whether you had a contributory infringement claim was whether Meta, as part of the torrenting process, uploaded your clients' works.

MR. PRITT:  You don't -- it's -- respectfully,

34

it's not as simple as that because you never have direct evidence like that when it comes to using BitTorrent. You only have the circumstantial evidence that shows that your work wasn't included in a torrent file that was uploaded by Meta.

THE COURT: But by that point, don't you have a contributory infringement claim? I mean, if you have -- if you have every reason to believe that your clients' work was included in a database that was uploaded via torrenting.

MR. PRITT: It is possible that we could have brought a claim without having the scope of evidence and the records we have now that show concretely that they were included. We did not do that because, at that point, it was -- you know, the very first evidence of upload of our works that the Plaintiffs' expert disputed wasn't until maybe the summer of -- you know, this past summer when our expert analyzed it, but he submitted a declaration explaining exactly when we received the different tranches of evidence and why that supported our contributory infringement claim, which is a claim that this Court will already have to deal with, with the evidence we have collected with respect to the Entrepreneur case, because they also have one, although that is based purely on -- at least as it's alleged, purely on Meta's contribution of bandwidth, which you recall had been discussed earlier in the case.

35

THE COURT: Okay. Well, I think the answer to all of this is we have a motion for leave -- I'm granting your stip, extending the schedule. We have a motion for leave to amend the complaint. Sounds like we may have a motion to stay the case. And we'll have a long discussion about it and sort it all out, and it'll be in person in February. And --

MR. PRITT: To the -- can I ask, your Honor, to the extent -- given that there is a lot of overlap in the class discovery, including what we are currently seeking, is it worth discussing or having further briefing on whether or not class discovery should occur now, so that we can have the summary judgment hearing and class certification hearing --

THE COURT: If you want to -- if you want to file a motion along those lines to be heard in February as well, that's totally fine.

MR. PRITT: Okay. Thank you, your Honor.

THE COURT: So let's plan on Thursday, February 5th, at 10:00 a.m.

Oh, we have -- I'm seeing an evidentiary hearing on there, Bhavna. Do you know what that is? Is that one of the immigration TRO/preliminary injunction issues?

THE CLERK: Yes.

THE COURT: Okay. That'll be -- we can -- those

36

usually go away.  And if it doesn't, we can move it up or whatever.  So, yeah, we'll do Thursday the 5th at 10:00 a.m.

MR. PRITT:  Thank you, your Honor.

THE COURT:  Okay.  Anything else to discuss right now?  Oh, I do recall reading that in the Entrepreneur Media case, the parties said they were amenable to a settlement conference with a magistrate judge.  I'm happy to refer you if you -- if -- I don't force people to go do settlement conferences, but it sounds like you were amenable to that, and it sounds like perhaps you wanted that.  So I'm happy to refer you.  The -- I guess the two questions are -- or three questions are, when should it be, should the Kadrey Plaintiffs be participating -- referred also, and is there any particular magistrate judge you would like to request?

MR. LINDERMAN:  Well, your Honor, you know, Entrepreneur, I think our preference would be a private mediation.  I know that we put in the joint CMC that we would be open to a magistrate settlement conference.  I don't think that that is something that we had given a ton of thought to insofar as we hadn't yet met and conferred under the ADR protocol prior to Meta serving their anticipated motion to dismiss, their responsive pleading.  And so --

THE COURT:  Well, why don't you just -- then why don't -- as part of your meet and confer process about the

schedule, why don't you confer about that too?  And if you want anything from us regarding ADR, if you want to set -- me to set a deadline for -- to complete private mediation, if you want a referral to a magistrate judge, just -- or if you want nothing, just -- that's all fine, just let me know.

MR. LINDERMAN:  Perfect.  That works.

MS. DUNN:  Thank you, your Honor.  Happy to meet and confer on that.

One last question.  Given the February 5th hearing and the need to digest what happened here today, is it possible to get a date of January 16th for our response to the motion for leave to amend plus discussion of stay?

THE COURT:  Well, I think what I would be inclined to do -- so you're saying you would want to file your brief on that -- on both things on that day?

MS. DUNN:  Yeah.  We have a response that we still have not yet put in.  And given that your Honor has set the hearing for February 5th, we're hoping to be able to --

THE COURT:  Yeah.  Could you -- can I ask you to get it in by, like, February 11th?

MS. HARTNETT:  January.

THE COURT:  I mean -- sorry, I was looking at the wrong month.  What did -- what date --

MS. HARTNETT:  Your Honor, we currently are -- our op is -- we were proposing under the docket 662 that it be

38

due on the 2nd because of the -- we were trying to keep the January 5th hearing date, I think moving it out.

THE COURT:  What about January 12th?

MS. HARTNETT:  I think that would work well for us, and we appreciate it.

THE COURT:  Okay.

MS. DUNN:  Thank you.

MR. PRITT:  Your Honor, just so I'm clear -- this is Max Pritt for the Kadrey Plaintiffs -- January 12th is now the deadline for Meta's opposition to the motion for leave and the deadline for any motion to stay by Meta?

THE COURT:  Yes.

MR. PRITT:  Okay.

THE COURT:  And if you want to file a request to open class certification discovery, you can file that by the 12th also.

MR. PRITT:  Understood.  Thank you.

THE COURT:  And -- actually, you know what, take it back.  I'm going to have you -- I'm going to have you file that earlier.

MR. PRITT:  Yes.

THE COURT:  If you want to file a request to open class certification discovery, I'm going to have you file that by January 6th.

MR. PRITT:  Okay.

39

THE COURT:  And then Meta's brief is due on the 12th, and that can be -- can relate to all three issues, right?  The stay issue, the class discovery issue, and amended complaint issue.  And then the Plaintiffs' response on all of that stuff can be due on the 21st of January.

MR. PRITT:  Thank you, your Honor.

And just so -- in case it's helpful for your -- if you're doing an ECF order, there -- there's two stipulations pending.  It's docket 660, which is the case management deadlines, and then you've just ordered -- and I think you've just resolved the other stipulation.

THE COURT:  Right.  Okay.  Yeah, we'll deal with that today.

All right.  Anything else we can do for you all right now?

MR. PRITT:  No, thank you, your Honor.

THE COURT:  All right.  We'll turn --

MS. HARTNETT:  Not from us.

THE COURT:  -- to the next eight case management conferences we have on calendar.

MS. DUNN:  Thank you, your Honor.

THE COURT:  Thanks.

(Proceedings adjourned at 11:30 a.m.)

40

CERTIFICATE OF TRANSCRIBER


I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Tuesday, December 23, 2025