**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

*(additional counsel included below)*

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
(323) 968-2632
mb@butticklaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al., <br><br> *Individual and Representative Plaintiffs*, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> *Defendant.* | Case No. 3:23-cv-03417-VC <br><br> **PLAINTIFFS' ADMINISTRATIVE MOTION FOR CLASS DISCOVERY AND CLASS CERTIFICATION BRIEFING SCHEDULE** |

The remaining issue in this case—Defendant Meta Platforms, Inc.'s ("Meta's") unprecedented peer-to-peer file sharing of pirated copyrighted works[1]—is distinct from the question of whether Meta's Generative AI training violates copyrights. But it is equally important, as "[p]iracy and counterfeiting of copyrighted material, the theft of intellectual property, is now a major white collar crime."[2] Piracy "rob[s] authors and copyright owners of the incentive to create and distribute the works that have made America's creative industries the envy of the world."[3] Through a simple change to its BitTorrent network configurations, Meta could have acquired all of the copyrighted works it torrented from "notorious" online markets for piracy[4] without making available or copying and distributing any of it to others. But it ignored this option. The simple question now before the Court is whether Meta's avoidable making available, copying, and distribution of mass quantities of pirated copyrighted material constitutes copyright infringement.

Rule 23 requires a class certification determination "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Consistent with other large copyright actions, including *Napster* and *Anthropic*, this Court should permit concurrent briefing of summary judgment and class certification to efficiently address common issues of infringement and damages in connection with Meta's torrenting. Adjudicating the legality of Meta's torrenting conduct now is crucial for class members injured by Meta's piracy and will help ensure that AI companies follow the law in acquiring data. Given the importance of this issue and the massive scale of Meta's torrenting—

---

[1] "'Piracy is the term used for unauthorized duplication of original commercial products.'" *Anderson v. Nidorf*, 26 F.3d 100, 101 n.1 (9th Cir. 1994) (quoting Piracy and Counterfeiting Amendments Act of 1982, S. Rep. No. 97–274, 1981 WL 21376, at *3 (1982)).

[2] Piracy and Counterfeiting Amendments Act of 1982, 1981 WL 21376, at *3.

[3] Statement of Marybeth Peters, The Register of Copyrights, Before the Subcomm. on Intellectual Property, Comm. on the Judiciary, Piracy of Intellectual Property (May 25, 2005), https://www.copyright.gov/docs/regstat052505.html (describing piracy as "organized crime").

[4] 2023 Review of Notorious Markets for Counterfeiting and Piracy, Office of the U.S. Trade Representative, available at https://ustr.gov/sites/default/files/2024%20Review%20of%20Notorious%20Markets%20of%20Counterfeiting%20and%20Piracy%20(final).pdf at pp. 27, 30 (identifying LibGen, Sci-Hub, and mirror sites like Anna's Archive as notorious markets for piracy targeted by federal authorities and courts); *see, e.g.*, Dkt. 654-15 (stating internally that "sites such as LibGen [] contain pirated content" and Sci-Hub is a "pirate web site[]"; citing the USTR's 2023 Review of Notorious Markets; and stating that "[t]he fact that we [Meta] train on pirated sites such as Anna's Archive is likely to be viewed negatively by policymakers, rightsholders, and other stakeholders").

---

and the fact that class fact discovery is already virtually complete—Plaintiffs respectfully request leave to complete discovery (including experts) and schedule briefing on Plaintiffs' motion for class certification concurrently with the existing case management schedule at Dkts. 660 at 3, 666.

**I.    Concurrent Briefing Is Efficient and Does Not Implicate the Reasons the Court, In Another Context, Deferred Rule 23 Proceedings Until After Prior Rule 56 Briefing.**

    **A.    Courts routinely order concurrent briefing, including in copyright cases.**

Judicial economy favors briefing liability and class certification concurrently. *See Wright v. Schock,* 742 F.2d 541, 543 (9th Cir. 1984) ("Rule 23(c)(1) call[s] for a class determination 'as soon as practicable.'"). For example, in *Bartz v. Anthropic PBC*, the AI copyright case that was previously before Judge Alsup, the parties briefed summary judgment and class certification nearly concurrently, resulting in the court's finding that the plaintiffs' piracy-related claims[5] were "enforceable most efficiently here by class action." 791 F. Supp. 3d 1038, 1063 (N.D. Cal. 2025); *see In re Napster, Inc. Copyright Litig.*, Case No. 00-md-01369-MHP, Dkt. 599; *see also Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012) ("Simultaneously filing motions for summary judgment and class certification is certainly acceptable."). Where, as here, Plaintiffs have developed a robust factual record on the remaining issues to be tried and can brief class certification without altering the case schedule, it would be appropriate to allow concurrent briefing. Plaintiffs therefore ask that the Court adopt the schedule in the attached proposed order.

    **B.    There are common issues of law and fact regarding the remaining issues.**

<u>Infringement and Damages</u>: For the last year, Plaintiffs have been developing a robust record of Meta's piracy—both with respect to their Asserted Works and to all class plaintiffs. This torrenting-related fact discovery should soon be complete and is as relevant to Plaintiffs' liability case as it is to class certification. The evidence on which Plaintiffs will rely to establish that Meta

---

[5] In *Bartz,* the plaintiffs moved to certify two classes: (1) a pirated books class for the legal or beneficial owners of copyrighted books that Anthropic downloaded from Books3, LibGen, or Pirate Library Mirror; and (2) a training class for the legal or beneficial owners of copyrighted works that Anthropic bought and scanned for LLM training. The Court did not need to consider the training class because of a summary judgment ruling adverse to plaintiffs. *Id.* at 1059. The piracy class did not involve uploading like here, but both the *Bartz* piracy class and the proposed class in this case concern only procuring and use of pirated copyrighted works, not LLM training.

infringed their copyrights is the same evidence that will be used to establish commonality and typicality for the putative class they seek to represent. Plaintiffs will rely on the common evidence of Meta's torrenting practices to show that Meta uniformly made available, copied, and distributed class members' works without permission. *See*, *e.g.*, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *9 (C.D. Cal. May 27, 2015) (finding common questions "that the Court can address and resolve as to the entire class members in 'one stroke' because class members argue that Sirius XM engaged in the same exploitative conduct against them"); *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *12 (certifying class); *Bartz*, 791 F. Supp. 3d at 1045 (certifying class of legal or beneficial copyright owners based on AI defendant's book piracy, and holding "[t]his civil action exemplifies the classic litigation that should be certified as a representative action"). The same holds true for damages. If Plaintiffs elect statutory damages, they are calculated through basic arithmetic: multiplying the number of copyrighted works Meta torrented by the statutory penalty. *See* 17 U.S.C. § 504(c); *see also In re Napster*, 2005 WL 1287611, at *12 (N.D. Cal. June 1, 2005) (certifying copyright holder class pre-damage election).

Fair Use: At the outset of this case, Meta waived the one-way intervention rule and the Court ordered summary judgment to proceed before class certification to address the fair use defense as it relates to LLM training. Dkt. 87 at 2. The Court resolved that issue, so there is no longer a need to delay class certification. Dkt. 598 at 39–40. Plaintiffs' claims involving Meta's making available, copying, and distributing pirated copyrighted material remain, however. *See id.* at 15 n.4. For these claims, Meta only recently indicated on a meet-and-confer that it *might* raise a fair use defense, notwithstanding that it did not do so during discovery, *see* Dkt. 661 at 4, 5; Decl. of Maxwell Pritt ("Pritt Decl."), Ex. 1, and demurred recently when questioned by the Court. *See* Dkt. 649, Nov. 10, 2025 Hr'g Tr. at 39:11-13 ("I think that you know whether you're planning on raising a fair use defense to their distribution claim or not."). But even if the Court allowed Meta to raise such a defense now, the evidence on which Plaintiffs would rely to refute Meta's fair use argument is also common to all absent class members. *Cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("when 'one or more of the central issues . . . are common to the class and

can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members'"). That evidence will show that Meta could have obtained the copyrighted works it pirated without making them available or copying and distributing copyrighted material; that Meta's peer-to-peer file sharing was the antithesis of "transformative"; and that Meta's conduct harmed the established market for the sale of books and other publications, making this a simple case of direct substitution. *See, e.g.*, *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014–17 (9th Cir. 2001), *as amended* (Apr. 3, 2001) (uploading and downloading music files from Napster's platform to "get for free something [peer-to-peer users] would ordinarily have to buy" is not fair use); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022) ("it is obvious, for example, that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use"); Danaher, Brett, *et al.*, *The Effect of Piracy Website Blocking on Consumer Behavior*, MGMT. INFO. SYS. QUARTERLY (June 1, 2020), at 21, 30–31 (examining the negative impact of piracy on legal sales).

  **C.**  **Addressing piracy on a classwide basis is important to class members and the public.**

  That AI companies play a critical role in the resurgence of online piracy is clear. As Anna's Archive blogged: "Not too long ago, 'shadow-libraries' were dying. . . . Then came AI. . . . We have given high-speed access to about 30 companies. Most of them are LLM companies." https://annas-archive.org/blog/ai-copyright.html. Notably, shadow libraries have begun to commercialize pirated data, offering paid subscriptions for premium access and encouraging data miners to upload and seed pirated data as an end run around government enforcement and court injunctions. This Court now has the opportunity to stop companies like Meta from perpetrating large-scale copyright violations and receiving an unfair competitive advantage from "obvious[ly]" illegal torrenting. *E.g.*, *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 879.

**II.**  **The Limited Remaining Discovery Can Be Completed Before Briefing Commences.**

  Plaintiffs have already developed a record of Meta's torrenting through hard-fought

---

discovery. Pritt Decl. ¶3. Classwide evidence shows Meta made hundreds of terabytes of copyrighted works available, and copied and distributed dozens of terabytes of that material, to third parties, *see* Dkt. 658-1 ¶6, and Plaintiffs will rely on such common evidence to prove their remaining claims. Once Meta completes its outstanding productions, the sole remaining class-specific fact discovery Plaintiffs seek from Meta will be the list of works it torrented from the Sci-Mag portion of LibGen in 2023.[6] This limited discovery imposes minimal burden on Meta and will permit Plaintiffs to demonstrate Meta's common treatment of proposed class members' works via torrenting. *See Perez v. Safelite Grp. Inc.*, 553 F. App'x 667 (9th Cir. 2014) (finding plaintiff met burden that "discovery is likely to substantiate class allegations by showing" plaintiffs' experiences "are common to those" in proposed class); *Nguyen v. Baxter Healthcare Corp.,* 275 F.R.D. 503, 506 (C.D. Cal. 2011) ("Supreme Court and Ninth Circuit precedent supports the right of class counsel [] to conduct pre-certification discovery, [when] a *prima facie* case has been pled and has survived a motion to dismiss."). Plaintiffs will rely on objective criteria through public copyright records and Meta's own data to satisfy Rule 23(b)(3)'s requirement that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir. 2017) (addressing Rule 23 factors and rejecting ascertainability requirement). Given that damages are mere arithmetic, existing experts will cover the extent of expert discovery needed for Plaintiffs' class certification motion.[7]

Therefore, merits and class discovery should proceed in tandem because they significantly overlap and judicial economy will be served by avoiding potentially duplicative discovery. *See True Health Chiropractic Inc v. McKesson Corp.,* 2015 WL 273188, at *2 (N.D. Cal. Jan. 20, 2015) (denying motion to bifurcate discovery in part because the "line between 'class certification discovery' on the one hand, and 'pure merits' discovery on the other, can be difficult to discern"). For these reasons, Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed schedule.

---

[6] Meta has yet to produce its de-duplicated datasets for all the shadow libraries at issue, but Plaintiffs already requested, and this Court ordered, their production as they are "associated files" with the search terms Meta is running in its AI Dataset Collection. Dkts. 635 at 5 & 647.

[7] Plaintiffs' pending motion for leave to amend the complaint seeks leave to disclose an additional expert and report to assist the factfinder concerning online piracy markets and harms.

Dated: January 6, 2026

By: /s/ Maxwell V. Pritt

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

Kenneth S. Byrd (*pro hac vice*)
Betsy A. Sugar (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
kbyrd@lchb.com
bsugar@lchb.com

**JOSEPH SAVERI LAW FIRM LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)

601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800

jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
(323) 968-2632
mb@butericklaw.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com

**COWAN DEBAETS ABRAMS & SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
CeCe M. Cole
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*