DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
KYLE N. SMITH (*pro hac vice*)
(ksmith@dirllp.com)
401 9th Street, NW
Washington, DC 20004
Telephone:     (202) 240-2900

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:     (310) 883-6400

KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*[Full Listing on Signature Page]*

Counsel for Defendant Meta Platforms, Inc.

# UNITED STATES DISTRICT COURTz

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br><br>Individual and Representative Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:23-cv-03417-VC-TSH<br><br>**Defendant Meta Platforms, Inc.'s Opposition to Plaintiff Motion for Leave to File Fourth Amended Consolidated Complaint; Motion to Stay and Opposition to Plaintiffs' Administrative Motion for Class Discovery and Class Certification Briefing Schedule** |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................... 1

    A.  The Motion for Leave to Amend Should Be Denied. .............................................. 2

        1.  Relevant Background. ................................................................................ 2

        2.  The Proposed Amendments. ...................................................................... 4

        3.  Federal Rules of Civil Procedure 15 and 16 Both Apply ............................ 4

        4.  Plaintiffs Unduly Delayed Seeking the Proposed Amendment, Which Would Disrupt the Case Schedule and Prejudice Meta ................... 5

        5.  Plaintiffs' Proposed Contributory Infringement Amendment Is Futile ......................................................................................................... 9

II.  KADREY SHOULD BE STAYED WHILE DISCOVERY TAKES PLACE IN ENTREPRENEUR. ..................................................................................................... 10

III.  CLASS DISCOVERY SHOULD NOT OPEN AND CLASS CERTIFICATION BRIEFING SHOULD NOT OCCUR CONCURRENTLY WITH SUMMARY JUDGMENT. .............................................................................................................. 12

IV.  CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CMAX, Inc. v. Hall*,
   300 F.2d 265 ............................................................................................................................ 11

*Design Data Corp. v. Unigate Enter., Inc.*,
   2014 WL 4477244 (N.D. Cal. Sep. 11, 2014) ......................................................................... 5

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2021) ............................................................................................... 14

*Entrepreneur Media v. Meta*,
   3:25-cv-09579-VC, Dkt. 37-1 ................................................................................................ 11

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ................................................................................................... 4

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ................................................................................................. 10

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) ................................................................................................... 5

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ............................................................................................... 10

*Texaco, Inc. v. Ponsoldt*,
   939 F.2d 794 (9th Cir. 1991) ................................................................................................... 5

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 16(b) ................................................................................................................. 4, 5

Fed. R. Civ. P. 15(a) ................................................................................................................. 4, 5

## I. INTRODUCTION

Defendant Meta Platforms, Inc. ("Meta") hereby: (1) opposes Plaintiffs' Motion for Leave to File Fourth Amended Consolidated Complaint ("FACC") (Dkt. 659); (2) requests that this Court stay further proceedings in *Kadrey* while discovery is ongoing in the related case of *Entrepreneur Media, LLC v. Meta Platforms, Inc.*; and (3) opposes Plaintiffs' Motion to Open Class Discovery (Dkt. 668).

Plaintiffs' latest motion for leave to amend—transparently prompted by Entrepreneur Media's assertion of a contributory copyright infringement claim—should be denied because the new proposed amendments are unduly delayed, would prejudice Meta by further disrupting the case schedule and expanding discovery yet again to address the new claims, and are futile. Critically, all of Plaintiffs' proposed amendments could have been, but were not, offered as part of their November 27, 2024, motion for leave to file a *Third* Amended Consolidated Complaint ("TACC") (Dkt. 300), which the Court granted on January 13, 2025 (Dkt. 389), and pursuant to which the parties have proceeded toward completion of discovery over the past year.

Plaintiffs are wrong that their amendment will not require more discovery and will not disrupt the case schedule.[1] First, Meta will need to conduct discovery into the new allegations of third-party infringement and Meta's supposed material support thereof; and further discovery of the additional so-called "loan-out" corporate plaintiffs. Then, to the extent Plaintiffs' claims survive summary judgment and the Court permits class discovery, further expansive discovery will be needed to address a putative class that extends far beyond the scope of the Plaintiffs' infringement claims. Plaintiffs also seek to add a "piracy expert" in light of their proposed amendment, and Meta would thus need to retain a new opposing expert, which would be difficult to accomplish on the present schedule.

---

[1] Despite telling this Court that only limited additional discovery is needed, contemporaneous with this briefing Plaintiffs have been demanding yet more discovery from Meta, including additional custodial document searches and computer searches far beyond anything ordered by the Court and beyond what Meta has voluntarily agreed to provide. Plaintiffs' non-stop discovery demands confirm that their proposed schedule is unrealistic, and further support granting Meta's motion to stay the *Kadrey* matter and to deny Plaintiffs' motion for class discovery and class certification briefing.

To simplify matters for the parties and the Court, the *Kadrey* case should be stayed in its entirety now, while Entrepreneur conducts fact discovery into the same issues. Alternatively, to the extent the Court would like the parties to continue the pending fact discovery in *Kadrey*, aside from conducting depositions of a few common witnesses on distribution issues as specified below, the Court should stay *Kadrey* as of February 27, when the ongoing document and written discovery is anticipated to be completed. Either option will allow the additional discovery[2] that will be conducted in *Entrepreneur* to proceed in an orderly manner and conserve the Court's resources before addressing summary judgment or class issues in *Kadrey*.

Finally, Plaintiffs' motion to open class discovery should be denied. Just a month ago, Plaintiffs represented to this Court that "[t]he Parties anticipate that *after* the summary judgment phase concludes there will be class-related discovery to provide an adequate record for the consideration of class certification." Dkt. 661 at 8 (Joint CMC Statement, emphasis added). There is no good reason to deviate from that sequencing now—particularly given that, as the Court recently observed, Plaintiffs have lost on their core training claim and now press only an uncertain distribution claim, making certification in this case highly unlikely. *See* 12/19/25 Tr. at 29–31. Moreover, Plaintiffs' new proposed class definition extends far beyond the claims that Plaintiffs brought in this case (books used to train Meta's Llama models) to include "any book, article, journal, or other written work" that was "reproduced" in connection with any Meta LLM.[3] Such a significant expansion at this stage of the case will require substantial additional discovery. Plaintiffs' notion that class discovery can be quickly completed is based on unfounded assumptions and is wrong, and there is simply no need for it to occur now.

**A.   The Motion for Leave to Amend Should Be Denied.**

**1.   Relevant Background.**

On November 27, 2024, Plaintiffs moved for leave to file the TACC (Dkt. 300), which the Court granted on January 13, 2025 (Dkt. 389). The TACC added a direct copyright infringement

---

[2] Relevant discovery from *Kadrey* will be shared in *Entrepreneur*, thus streamlining discovery in that action to the greatest extent possible.
[3] While the *Kadrey* Plaintiffs have not explained the basis for modifying their class definition beyond books to explicitly cover "article[s]," "journal[s]," or other "written work[s]," it appears they may be attempting to capture non-book works like the ones at issue in *Entrepreneur*.

claim based on alleged distribution via torrenting, as well as claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") and the DMCA.  Dkt. 300.  According to Plaintiffs, the core supposed revelation justifying the TACC was that "Meta has been *itself participating* in torrent sharing, uploading the very same hacked data containing Plaintiffs' works that it unlawfully downloaded," thus, according to Plaintiffs, "crystal[lizing] claims alleging the 'distribution' of pirated material."  *Id.* at 1–2 (emphasis in original).  Paragraph 101 of the TACC thus added, as part of Plaintiffs' claim for "Direct Copyright Infringement," that "[d]uring the download process of LibGen and other shadow libraries, which has occurred on numerous occasions, Meta also operated as a distributor of the pirated works, thereby further facilitating widespread copyright infringement."  Dkt. 407.

The TACC did not add any additional named plaintiffs or assert a claim for contributory copyright infringement.  The TACC did, however, seek to unduly expand the class definition beyond the Llama models, to which Meta objected and reserved its rights for class certification.  Dkt. 329 at 15 (Meta's Opposition to Dkt. 300); Dkt. 485 at 14 n.3 (Meta's Answer to the TACC, objecting to class definition, including the attempted revision in the TACC).

Notably, at the hearing on Plaintiffs' motion for leave to file the TACC, Plaintiffs' counsel stated (in the context of the request to add a CDAFA claim) that it was *"not copyright infringement"* to "knowingly us[e] your own computer hardware, and other bandwidth resources to participate in the illegal peer-to-peer file sharing networks of pirated data," 02/27/25 Tr. at 12 (emphasis added)—precisely the basis for Plaintiffs' now-proposed (and meritless) contributory infringement claim.

After the Court granted Plaintiffs leave to file the TACC in January 2025, discovery concerning Meta's alleged torrenting/distribution proceeded pursuant to that complaint, including discovery authorized by the Court's "baseball arbitration" order in March 2025 (Dkt. 470), and subsequent Court orders, including the Court's November 13, 2025 Order (Dkt. 647) granting Plaintiffs' October 29, 2025 motion for additional torrenting/distribution-related discovery (Dkt. 635).  Notably, neither Plaintiffs' October 2025 motion for additional discovery nor their comments at the November 10, 2025, hearing on that motion disclosed *any* intent to seek further amendment

of the TACC. Rather, it was not until a December 1, 2025, meet and confer that Plaintiffs announced their intent to seek leave to file the FACC.

Plaintiffs' late and unexpected attempt to file the FACC was apparently inspired by the *Entrepreneur Media* lawsuit filed on November 6, 2025, which included a claim for contributory infringement based on Meta's alleged torrenting. Both the *Kadrey* TACC and the *Entrepreneur Media* complaint contain allegations of direct infringement via distribution by torrent, but neither the TACC nor any previous complaint in *Kadrey* allege contributory copyright infringement. The *Kadrey* Plaintiffs now seek to add such a claim through their proposed FACC.

### 2. The Proposed Amendments.

Plaintiffs propose four key amendments to the TACC in the FACC:

- Adding a cause of action (Count IV) for contributory copyright infringement based on Meta's allegedly aiding third-parties' downloading of torrented files that Meta allegedly uploaded, which Plaintiffs contend "is based on the same underlying factual conduct as their remaining direct infringement claim," Mot. at 8;

- Supposedly "[u]pdat[ing]" Plaintiffs' direct infringement claims, Mot. at 1 n.1, even though the TACC already encompasses Plaintiffs' "making available" and "copying incidental to distribution" theories of liability by their own admission, *see* 11/10/25 Tr. at 14–15;

- Adding three so-called "loan-out" corporate plaintiffs as named Plaintiffs, *see* Mot. at 1 n.1, even though those companies have not been subject to party discovery and the problems with Plaintiffs' standing are entirely within the Plaintiffs own control, clear from the record, and have been known to Plaintiffs for over a year, if not more; and

- Further expanding the class definition from the already overbroad definition proposed in the TACC, Mot. at 1, so as to decouple the class definition from the alleged torrenting-related claims in the case that were directed to books and development of Llama.

### 3. Federal Rules of Civil Procedure 15 and 16 Both Apply.

Federal Rule of Civil Procedure 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The "good cause" requirement "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  The Rule 16 standard applies where, as here, a motion to amend would require revision of the case schedule, even where there is no court-ordered deadline to amend the pleadings.  *See Design Data Corp. v. Unigate Enter., Inc.*, 2014 WL 4477244, at *2 (N.D. Cal. Sep. 11, 2014) (Rule 16 applies where motion to amend would "upend the trial schedule").  As explained below, discovery regarding Plaintiffs' proposed amendments cannot be completed pursuant to the currently operative deadlines for expert discovery (Dkts. 660, 666), and thus Rule 16—and its "good cause" standard—applies here, and cannot be met.

"Although Federal Rule of Civil Procedure 15(a) provides that leave to amend 'shall be freely given when justice so requires,' it 'is not to be granted automatically.'"  *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2) and *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)).  A "court considers the following five factors to assess whether to grant leave to amend: '(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint.'"  *Western States*, 715 F.3d at 738 (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).  Here, as explained below, all of these factors counsel against granting leave yet again.

**4.   Plaintiffs Unduly Delayed Seeking the Proposed Amendment, Which Would Disrupt the Case Schedule and Prejudice Meta.**

As Plaintiffs essentially concede, they could have—but did not—seek their requested amendments over a year ago when they sought leave to file the TACC.  This undue delay, which will disrupt the case schedule and unfairly prejudice Meta, is dispositive against their requested amendments.  *See, e.g.*, *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (affirming denial of motion for leave to amend complaint to add contributory trademark dilution claim because it would be prejudicial to reopen discovery and delay proceedings to seek discovery on the claim when Plaintiff had been considering claim for three months before the stipulated deadline and waited several months after that deadline to move); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991) (affirming denial of motion for leave to amend where Plaintiff waited a year after discovering facts relied upon in the amendment).

<u>Contributory Copyright Infringement</u>.  Plaintiffs do not dispute that they could have included a contributory copyright infringement claim in the TACC.  Indeed, nearly a year before the *Entrepreneur* complaint apparently inspired the new proposed contributory infringement claim in *Kadrey*, Plaintiffs specifically discussed this same theory with the Court in the context of the TACC, arguing that it was "not copyright infringement" to, "when you're torrenting," "knowingly us[e] your own computer hardware, and other bandwidth resources to participate in the illegal peer-to-peer file sharing networks of pirated data."  02/27/25 Tr. at 12:12-13:21.  It was only after Entrepreneur pled a contributory infringement claim in November 2025 that Plaintiffs did an about-face and attempted to add such a claim here.  This effort comes far too late.

Plaintiffs, recognizing the untimeliness of their proposed amendment, claim that "Plaintiffs' understanding of the facts sufficient to support a contributory copyright infringement claim finally started to crystallize in September 2025 after Meta produced a new set of AWS usage logs."  Mot. at 8.  This argument wilts under scrutiny.  First, Plaintiffs themselves concede that the essential factual basis for their pre-existing distribution claim and new contributory infringement claim are one and the same.  *Id.* at 7 (arguing that "Plaintiffs' contributory infringement claim is based on the same underlying factual conduct as their remaining direct infringement claim—Meta's torrenting of the Asserted Works").  As Plaintiffs admit, both theories are premised on Meta's use of torrents to download text data containing Plaintiffs' works, and Meta's alleged making available or uploading of that data as it was being downloaded.

Second, the logs cited by Plaintiffs as supposedly excusing their belated amendment, provide—at most—supplemental detail regarding the *timing* and *extent* of Meta's use of torrents; none of those details form a *basis* for Plaintiffs' new claim.  For example, the September 2025 AWS usage logs show the same type of information contained in other, similar AWS usage logs that were produced in April and May 2025 for a related torrent download, as confirmed by Plaintiffs' expert, Dr. Choffnes, in his declaration.  *See* Choffnes Decl. ¶ 5 (table, reciting that April and September usage logs both "show daily upload and download amounts").  Plaintiffs further admit that Meta had also previously produced information indicating when certain torrent downloads completed.  Mot. at 4 n.4.  And while Plaintiffs characterize EMR logs produced in

November as making Dr. Choffnes's assessments more "accurate," Plaintiffs make no argument that the logs were *necessary* (they were not) to attempt to plead contributory infringement. Mot. at 5. In short, even if recently-produced discovery further supports a claim for contributory infringement, this discovery was not necessary for them to attempt to plead the claim in the first place for the same reason it was unnecessary for them to plead their distribution claim.

If permitted, Plaintiffs' new contributory infringement claim will further expand the scope of discovery, without which Meta would be substantially prejudiced. First, Plaintiffs claim that the only additional discovery they would need would be an additional expert who would provide "testimony on the online piracy ecosystem." Mot. at 2. As the Court is aware, Plaintiffs have not abided by their prior commitments to seek no new discovery after obtaining leave to file the TACC and continue to seek yet more new discovery to this day. *Compare* Dkt. 301 at 6 (Motion for Leave for TACC) ("If the claims are added, Plaintiffs will not seek to initiate any additional discovery.") *with* Dkt. 405, Attachment A (proposed additional discovery); Dkt. 635 (Motion for Additional Discovery). Plaintiffs do not explain what this piracy expert might testify to beyond a vague assertion about an unspecified "full scope of harm" allegedly caused by Meta's torrenting activities. In all likelihood, this piracy expert would offer theories regarding torrenting that could have (and should have) been in Plaintiffs' expert reports a year ago. While it is unclear how Plaintiffs' piracy expert would be relevant to any of Plaintiffs' claims, Meta would likely need to offer its own expert in response and depending on what Plaintiffs' new expert asserts, Meta may need more discovery to rebut it. Meta must also be permitted to probe the factual basis of Plaintiffs' contributory infringement claims through discovery, including additional written discovery (e.g., contention interrogatories) and possibly third-party discovery about the supposed benefits and support that were allegedly provided to so-called "shadow libraries." FACC, ¶¶ 122-23.

<u>"Updating" Direct Infringement Allegations.</u> Meta does not dispute that Plaintiffs' meritless "making available" theory of distribution and "copying incidental to distribution" theories are already encompassed by the TACC, as Plaintiffs themselves have told the Court. *See* 11/10/25 Tr. at 14–15. No amendment is required for them to pursue these claims.

<u>New Corporate Plaintiffs</u>.  Plaintiffs have provided no explanation why the three new proposed Plaintiffs could not have been included in the TACC (or earlier versions of the complaint) because there is none.  Plaintiffs knew about the potential relevance of these so-called "loan-out" companies well before seeking leave to file the TACC, and Plaintiffs identify no basis for waiting over a year to seek to add these new corporate plaintiffs.  Notably, Meta raised the standing issues *as early as September 2024*, yet Plaintiffs did nothing to attempt to address the issue until now.  09/20/2024 Tr. 42:4-7 ("Plaintiffs need to own the copyrights, they need the right to sue on the copyrights… And we believe that that could be an issue with the Plaintiffs here").  Indeed, some of the same Plaintiff authors *opted-out* of the prior summary judgment motion, likely because of standing issues.  Dkt. 472 at vii n.1; *see also* Dkt. 489 at 14 n.6.

Plaintiffs are wrong that these "loan out" entities were "already subject to discovery by Meta," Mot. at 1 n.1.  None of these companies have been subject to party discovery in this action.  These new corporate plaintiffs—potentially comprised of multiple members, not just previously named Plaintiffs—would be independently subject to party document discovery, including production of financials, agreements involving any transfer or licensing of rights of works to these companies, and would additionally need to sit for 30(b)(6) depositions.  All of this new discovery would disrupt the case schedule and its absence would prejudice Meta.

<u>Class Definition</u>.  As Meta has previously explained, the TACC's class definition is overbroad and unwarranted because it seeks to expand the case beyond conduct related to Meta's Llama models (the subject of all of the complaints in this case, including the TACC) to *any* "LLM training, research, or development" at Meta.  *See* Dkt. 329 at 15; Dkt. 485 at 14 n.3.  The FACC's proposed class definition (FACC ¶ 128) seeks to broaden the class definition even further by decoupling torrented works from whether they were reproduced "in connection with [Meta's] LLMs."

> All legal or beneficial owners of **any book, article, journal, or other written work** that Meta uploaded, offered or otherwise made accessible to others, and/or downloaded via BitTorrent; or otherwise reproduced **in connection with its LLM(s)**, between July 7, 2020 and the present (the "Class Period"); and that was registered with the United States Copyright Office (i) within five years of the work's first publication and (ii) before being

uploaded, offered, or made accessible to third parties, and/or downloaded or otherwise copied by Meta, or within three months of first publication.

Dkt. 659-14 at ¶ 128 (Proposed FACC) (emphasis added). Indeed, as written, the class definition does not even require that the works have been torrented (the only remaining claims in suit)–it purports to sweep into its ambit any work that Meta ever "uploaded" or "offered" or "made accessible" or "reproduced" *or* "downloaded via BitTorrent" in connection with any of its LLMs.[4]

Plaintiffs' case and the focus of discovery to date, as confirmed by allegations in both the TACC and proposed FACC, was specifically tied to "Infringed Works" which are defined as "the copyrighted books that Meta copied and used without permission to train Llama, regardless of where or how Meta downloaded or otherwise accessed the books." TACC ¶¶ 46, 96-102; FACC ¶¶ 49, 99-106. Contrary to Plaintiffs' claims that little new discovery would be needed, Plaintiffs' new class definition implicates a much broader set of written works beyond books and potentially implicates LLMs well beyond the Llama models that have been the focus of Plaintiffs' claims. If allowed, the *Kadrey* Plaintiffs' new class definition may require many months of additional fact and expert discovery, not the abbreviated period proposed by Plaintiffs. *See infra* § III. There continues to be no basis to expand this case and unnecessarily expand discovery with a proposed class definition broader than the copyrighted books torrented in connection with training Meta's Llama models.

### 5. Plaintiffs' Proposed Contributory Infringement Amendment Is Futile

The futility of Plaintiffs' proposed amendment further warrants denial. Even though Plaintiffs claim to have "developed a robust factual record" on Meta's alleged copyright infringement by distribution (Dkt. 668 at 2), and claim to need no additional discovery, the proposed FACC does not identify *any* completed act of third-party direct infringement—a prerequisite to secondary liability. Plaintiffs further fail to plead more than "generalized knowledge . . . of the possibility of infringement," which is insufficient to survive a motion to dismiss.

---

[4] As an example of the dramatic overbreadth, if Meta bought a physical copy of a book at a bookstore to support its LLM development efforts and then "offered" to donate it to a public library, it would fall within this proposed class definition even though that conduct has nothing to do with the issues remaining in this case.

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).  Nor do Plaintiffs plead the required "actual knowledge of the specific acts of infringement," or specify "which … titles were infringed, who infringed them, [and] when the infringement occurred."  *Id.* at 1072-73 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)).  All of this is fatal to their proposed claim.

## II.   *KADREY* SHOULD BE STAYED WHILE DISCOVERY TAKES PLACE IN *ENTREPRENEUR*.

The Court should stay *Kadrey* while the *Entrepreneur Media* matter proceeds through discovery.  *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").  Such a stay would maximize efficiency in both the *Kadrey* and *Entrepreneur* matters because (1) *Entrepreneur* can seek streamlined additional discovery (if any) on distribution issues during the pendency of the stay to get that case ready for summary judgment sooner, (2) it avoids the potential for serial expert discovery (and potential supplementation) in both matters on substantially the same distribution issues, and (3) it minimizes any potential inefficiencies for the parties and the Court that may arise if expert discovery and summary judgment are addressed in *Kadrey* before *Entrepreneur* even completes discovery on the same conduct.

Alternatively, to the extent the Court wants to complete the last remaining fact discovery in *Kadrey* before entering a stay, the Court should enter a stay in *Kadrey* as of February 27, 2026 (the current deadline for opening expert reports), with a specific exception for coordinated depositions discussed below.  Prior to this stay becoming effective, Meta would finish up the remaining document and written discovery the Court allowed the *Kadrey* Plaintiffs to pursue in its November 13, 2025 Order, along with other discovery that Meta has volunteered to provide to the Plaintiffs.  During the pendency of the stay, subject to the Court's November 13 Order, the *Kadrey* Plaintiffs would be permitted to engage in coordinated deposition discovery with Entrepreneur of (1) Ms. Xiaolan Wang and (2) Meta's 30(b)(6) representative regarding the topics the *Kadrey* Plaintiffs requested in Dkt. 635 Ex. P to supplement the record in advance of their summary judgment motion on distribution-related issues.  This would ensure that there are not duplicative depositions of any

individual witness or on any 30(b)(6) topic in the short time period before *Entrepreneur* fact discovery closes. When *Entrepreneur* has neared the completion of fact discovery on the distribution claim, the *Kadrey* plaintiffs, Meta, and the Court can revisit whether it would be efficient and appropriate to proceed with any further proceedings in *Kadrey*, or to continue the stay while the *Entrepreneur* case proceeds through summary judgment.

The three factors that the Court should weigh when considering a potential stay of *Kadrey* are: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). All three factors weigh in favor of entering a procedural stay of *Kadrey* pending completion of discovery in *Entrepreneur*.

Regarding the first factor, the *Kadrey* plaintiffs will suffer no harm pending a stay while Entrepreneur Media further develops the record on its distribution claim. Plaintiffs' claims are based on actions that occurred years ago, so there is no ongoing alleged harm to Plaintiffs that must be mitigated. All that Plaintiffs seek at this point is monetary compensation, the availability of which would not be affected by entry of a stay. Regarding the second factor, Meta will suffer substantial hardship if Meta has to engage in duplicative discovery, conduct serial expert discovery on substantially the same distribution issues, and repetitive summary judgment briefing on distribution issues in *Kadrey* and *Entrepreneur*. This will avoid the potential of repetitive supplementation of expert discovery and summary judgment briefing in *Kadrey* due to developments or positions taken by the parties in *Entrepreneur*. Third, staying *Kadrey* will contribute to the orderly course of justice as it will allow the Court to focus on the *Entrepreneur* case, which is addressing a larger set of issues beyond the *Kadrey* Plaintiffs' lone remaining distribution claim, instead of expending yet more resources on the *Kadrey* matter. When fact discovery is nearly complete in the *Entrepreneur* matter[5], the stay of *Kadrey* can be revisited to

---

[5] In *Entrepreneur Media*, a case management conference was proposed for August 7, 2026, approximately one month before the close of fact discovery in that matter. *Entrepreneur Media v.*

determine whether it would be appropriate to proceed with expert discovery and summary judgment in *Kadrey* as well.

### III. CLASS DISCOVERY SHOULD NOT OPEN AND CLASS CERTIFICATION BRIEFING SHOULD NOT OCCUR CONCURRENTLY WITH SUMMARY JUDGMENT.

Plaintiffs' request for immediate class discovery and certification briefing (Dkt. 668) should be rejected, at least until after summary judgment on the *Kadrey* Plaintiffs' distribution claim is adjudicated.

Only a month ago, Plaintiffs told this Court that "[t]he Parties anticipate that *after* the summary judgment phase concludes there will be class-related discovery to provide an adequate record for the consideration of class certification." Dkt. 661 at 8 (Joint CMC Statement, emphasis added). However, Plaintiffs now demand to abruptly start an abbreviated class discovery phase and proceed to class certification briefing in tandem with summary judgment briefing. Plaintiffs offer no justification for their sudden reversal in position, and nothing has occurred that justifies Plaintiffs' sudden demands for urgency. Indeed, as the Court recently observed, Plaintiffs' case presents a poor vehicle for a class action, 12/19/25 Tr. at 29–31, including because (1) the claim related to copying copyrighted works and training LLMs using those works has been resolved on the merits against Plaintiffs and (2) the fate of Plaintiffs' lone remaining distribution claim is uncertain at best given that Plaintiffs' infringement theories are based on probabilities, not specific acts of distribution of a Plaintiff work.

Moreover, and critically, Plaintiffs' proposal to truncate and complete class discovery on the current schedule entirely ignores the substantial fact and expert discovery that would need to be done as part of class discovery on all of the required elements for class certification. The instant motion will be heard on February 5, which would leave, at most, only 5 weeks for all class discovery and opening reports for class expert discovery. Dkt. 668-3 at 2 (Plaintiffs' proposed schedule). The necessary fact discovery would be expansive in light of Plaintiffs' proposed class definition, which includes not just books but "any book, article, journal, or other written work"---a scope that

---

*Meta*, 3:25-cv-09579-VC, Dkt. 37-1 at 2.  A CMC in *Kadrey* could be conducted with the *Entrepreneur* CMC.

extends far beyond the fact and expert discovery previously conducted in this case.[6] And while Plaintiffs are now on record that they believe they need little additional class discovery, Plaintiffs ignore the fact that *Meta* will need to conduct its own class discovery. Meta had no opportunity to conduct discovery of the named Plaintiffs into any purported harm the Plaintiffs have suffered from the alleged distribution, as the distribution claim was not part of this case until after fact discovery closed in December 2024. Supplemental depositions and additional written discovery of each of the named Plaintiffs on distribution issues thus would need to take place. Moreover, no fact discovery record has been developed to support Plaintiffs' speculative allegations that "AI companies play a critical role in the resurgence of online piracy," how those allegations tie into any of Meta's accused torrenting activities or how Plaintiffs (or the putative class) have allegedly been harmed. Meta will need the opportunity to probe these new allegations as well.

The fact and expert record is also not sufficiently developed to allow the Court to make a determination whether the putative class's remaining distribution claim meets the commonality, typicality, and other requirements for class certification. It is simply incorrect that—as Plaintiffs baldly assert—"Meta uniformly made available, copied, and distributed class members' works without permission" as asserted by Plaintiffs. Dkt 668 at 3. To the contrary, for each work at issue, there would need to be an individualized assessment because the alleged instances of torrenting each involved substantially different factual circumstances affecting the alleged probability of distribution, which undermines any claims by plaintiffs that the remaining distribution claim satisfies the commonality and typicality requirements necessary for class certification.

For instance, Plaintiffs' distribution allegations relate to separate downloading events that occurred in 2022, 2023, and 2024, each of which were configured and conducted by different people. Each of those downloading events involved different datasets, each having a distinct set of works. Some datasets included very few of the Plaintiffs' collected works, others contained multiple copies of particular Plaintiff works. Moreover, each of the downloaded torrents in the datasets are different sizes and/or contain different numbers of works. Compounding the

---

[6] Fact discovery would similarly be expansive under Plaintiffs' proposed class definition in the TACC, as that class definition effectively covers every copyrighted work used by Meta for LLM training. TACC ¶ 115.

complexity, the downloads were performed using several different computing environments that had different software configurations and different performance capabilities. These differences, among others, contributed to downloads of particular torrents each taking different periods of time to complete, with some finishing in relatively short periods of time (hours to a few days) and others taking much longer to complete (a week or more). The differences in download times directly impact the probability that any particular work was potentially uploaded to a peer on the network, which is the crux of Plaintiffs' distribution claim. The complexity of this analysis will only multiply when the works of the broader putative class are considered.

Plaintiffs also assert that damages calculations would be simple "*[i]f* Plaintiffs elect statutory damages," but notably Plaintiffs have not made that election. Nor have any facts been developed to help the trier-of-fact assess what statutory damages should be in the context of the putative class. And to the extent Plaintiffs seek actual damages as opposed to statutory damages, Plaintiffs have offered *no* factual evidence or expert testimony supporting actual damages specific to any distribution claim. And even if Plaintiffs were to later elect statutory damages, Ninth Circuit law is clear that "[s]tatutory damages are intended as a substitute for profits or actual damage, and should not provide copyright owners a windfall." *Desire, LLC v. Manna Textiles, Inc*., 986 F.3d 1253, 1271 (9th Cir. 2021) (cleaned up; citation omitted). Accordingly, one of the factors used to assess statutory damages includes "the revenue lost by the copyright holder[.]" *Id*. at 1271-72 (quoting *Bryant v. Media Right Prods., Inc*., 603 F.3d 135, 144 (2d Cir. 2010)). Any attempt by Plaintiffs to show such lost revenue will create numerous individualized issues because of Plaintiffs' ever-changing class definitions, which attempt to sweep in trade books (both fiction and non-fiction), academic books, journal articles, and numerous other categories of written works that operate under distinct revenue and pricing models and distribution systems. The Court's summary judgment order on fair use observed, for example, that the potential for market harm from alleged infringement may depend upon the nature of the work (*e.g.* fiction vs. non-fiction), as well as its genre or particular author. Dkt. 498, at 29. These work-specific factors will only be further compounded by Plaintiffs' attempt to include vast categories of other types of written works into their class definition, that extend far beyond the type of books represented by the named Plaintiffs.

Moreover, Plaintiffs cannot credibly claim there is any ongoing harm resulting from Meta's accused torrenting activities that would necessitate accelerating class certification proceedings because the torrenting activities at issue were discrete events that occurred (and concluded) between more than one and three years ago.

### IV. CONCLUSION

Justice does not require permitting Plaintiffs to amend for a fourth time; to the contrary, it requires denial of that request. Nor should class discovery or certification briefing be permitted at the juncture. Rather, the Court should stay this matter pending completion of discovery in *Entrepreneur*.

Dated: January 12, 2026                         COOLEY LLP

                                                By: */s/ Kathleen Hartnett*
                                                    Kathleen Hartnett

                                                    Attorneys for Defendant
                                                    META PLATFORMS, INC.

| | |
|---|---|
| *Full Counsel List* | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| DUNN ISAACSON RHEE LLP | ANGELA L. DUNNING (212047) |
| KAREN L. DUNN (*pro hac vice*) | (adunning@cgsh.com) |
| (kdunn@dirllp.com) | 1841 Page Mill Road, Suite 250 |
| KYLE N. SMITH (pro hac vice) | Palo Alto, Ca 94304 |
| (ksmith@dirllp.com) | Telephone:   (650) 815-4131 |
| 401 9th Street, NW | |
| Washington, DC 20004 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| Telephone:   (202) 240-2900 | KANNON K. SHANMUGAM (*pro hac vice*) |
| COOLEY LLP | (kshanmugam@paulweiss.com) |
| BOBBY GHAJAR (198719) | 2001 K Street, NW |
| (bghajar@cooley.com) | Washington, Dc 20006 |
| 1333 2nd Street, Suite 400 | Telephone:   (202) 223-7300 |
| Santa Monica, CA 90401 | |
| Telephone:   (310) 883-6400 | Attorneys For Defendant META PLATFORMS, INC. |
| COOLEY LLP | |
| MARK WEINSTEIN (193043) | |
| (mweinstein@cooley.com) | |
| KATHLEEN HARTNETT (314267) | |
| (khartnett@cooley.com) | |
| JUDD LAUTER (290945) | |
| (jlauter@cooley.com) | |
| ELIZABETH L. STAMESHKIN (260865) | |
| (lstameshkin@cooley.com) | |
| 3175 Hanover Street | |
| Palo Alto, CA  94304 | |
| Telephone:   (650) 843-5000 | |
| COOLEY LLP | |
| PHILLIP MORTON (*pro hac vice*) | |
| (pmorton@cooley.com) | |
| 1299 Pennsylvania Avenue, NW, Suite 700 | |
| Washington, DC 20004-2400 | |
| Telephone:   (202) 842-7800 | |