**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
(323) 968-2632
mb@butiericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

(*additional counsel included below*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al., *Individual and Representative Plaintiffs*, v. META PLATFORMS, INC., *Defendant*. | Case No. 3:23-cv-03417-VC **PLAINTIFFS' REPLY TO MOTION FOR LEAVE TO AMEND COMPLAINT AND OPPOSITION TO META'S MOTION TO STAY** |

Because of this lawsuit, it is now publicly known that Meta—one of the largest technology companies in the world—deliberately made available and distributed *millions* of copyrighted works it copied via BitTorrent to third parties without compensating the owners of those works. This aspect of Meta's peer-to-peer file sharing was not necessary for the company to train its large language models ("LLMs"). Instead of limiting itself to what it claims was fair use for AI training, Meta decided to "move fast and break things"—and, in so doing, engaged in one of the largest acts of copyright piracy in U.S. history. This massive piracy is the present focus of this case, and it has nothing to do with the Court's prior fair-use analysis regarding Meta's AI training and output. Yet it is as consequential to the creative community in this country and to the evolving AI industry. To stay this case now at the eleventh hour, as Meta proposes, would severely prejudice Plaintiffs (who seek both time-sensitive injunctive relief and damages) and the putative class they represent. Meta therefore has not met the high bar to obtain such a stay, and this case should proceed to judgment.

Meta also seeks to prevent Plaintiffs from amending their complaint to conform to evidence Plaintiffs uncovered only after the close of fact discovery through the Court's limited re-opening of discovery into Meta's torrenting. Contrary to Meta's assertion, the amended class definition narrows rather than expands the class by requiring proof of copyright registration, clarifying the copyrighted works at issue are limited to certain written works, and limiting those works to ones Meta actually copied, made available, or distributed. Dkt. 659-13 ("Proposed FACC") ¶ 128. Further, permitting Plaintiffs to add a contributory infringement claim would be neither prejudicial nor untimely, as any purported "delay" was the result of Meta's belated disclosure of new and highly relevant evidence—including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—necessary to support a plausible contributory infringement claim. Applying the liberal standard for amendment, the Court should therefore grant Plaintiffs' motion to amend.

Meta also opposes Plaintiffs' request to open class discovery and permit summary judgment briefing to run concurrently with class certification. But Plaintiffs' request alleviates the

PLS' REPLY TO MOT. FOR LEAVE TO AMEND AND OPP. TO MOT. TO STAY
CASE NO. 3:23-cv-03417-VC

very same concerns Meta raises in seeking a stay and opposing Plaintiffs' amendment. In fact, there is no real inefficiency or prejudice here, as the remaining claims are straightforward—the detailed evidence of Meta's peer-to-peer file sharing Plaintiffs will present on summary judgment is the same evidence that will demonstrate just how common the issues are for each class member.

In short, Plaintiffs seek to present focused claims that resolve significant issues expeditiously. This resolution is poised to benefit millions of putative class members and the entire publishing industry, while simultaneously establishing important guidelines for the AI industry in acquiring copyrighted works. In the interests of justice, the Court should grant Plaintiffs' motions.

### 1. Staying the *Kadrey* Case Would Be Unjust and Is Unnecessary

The parties agreed to have the Court set, and the Court did set, a summary-judgment briefing schedule for "plaintiffs' separate claim that Meta unlawfully distributed their protected works during the torrenting process." Dkt. 598 at 40.[1] Meta now seeks to backtrack from that agreement with a drastic stay of Plaintiffs' entire case. There is, however, no basis for such relief.

The Supreme Court has long cautioned that only in "rare circumstances" should a litigant "be compelled to stand aside" to allow another party to "settle[] the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). *Landis* dictates that the party moving for a stay must advance a "clear case of hardship or inequity" where "there is even a fair possibility that the stay . . . will work damage to someone else." *Id.* Meta's half-hearted request for a stay fails to identify a single "hardship" or "inequity" that rises above the standard corporate litigation reality of having to litigate two actions concurrently. The requirements of simultaneous litigation—or in Meta's words, "duplicative discovery," "serial expert discovery," and "repetitive summary judgement briefing"—do not factor strongly in the stay analysis. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, 2007 WL 672521, at *2 (N.D. Cal. Feb. 26,

---

[1] Meta agrees this includes Plaintiffs' claims that Meta's torrenting of Plaintiffs' works included unlawfully making available those works and copying them too. *See* Dkt. 670 ("Meta Br.") at 4.

2007) (holding that "the hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay"). Regardless, all of Meta's claimed "hardships" are meritless.

The Court has already indicated Entrepreneur Media will inherit the hard-fought and costly discovery Plaintiffs obtained from Meta. And Meta concedes discovery of its episodic mass torrenting between 2022 and 2024 should be complete within the next several weeks. *See* Dkt. 661 at 7. This discovery has not been restricted to Meta's torrenting of Plaintiffs' works but includes *all* works Meta torrented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See generally* Dkt. 659-2; Choffnes Reply Decl. ¶ 4. Plaintiffs' discovery thus encompasses all torrenting-related evidence potentially relevant to Entrepreneur Media, so it is unclear what additional torrenting discovery Entrepreneur Media would seek from Meta that could require later supplementation of Plaintiffs' (and Meta's) expert report or summary judgment briefing, as Meta suggests. *See* Meta Br. at 14.

Permitting Plaintiffs to complete discovery, meanwhile, will benefit all parties by streamlining the distribution, copying, and making available claims common to both actions. Entrepreneur Media will be able to use this discovery for its expert report, with a focus on Meta's infringement of its own copyrights. That Meta will have to separately respond to these arguments does not bear on the *Kadrey* plaintiffs' case, nor does it present a "hardship" that justifies the extraordinary request for a stay. And the outcome of summary judgment on the *Kadrey* plaintiffs' uploading claims will only further streamline some of the issues in Entrepreneur Media's lawsuit.

On the other hand, a stay would clearly "work damage" to the *Kadrey* plaintiffs for several reasons. *Landis*, 299 U.S. at 255. First, Plaintiffs are only weeks away from submitting their torrenting expert report that synthesizes the last nine months' worth of discovery. That report will demonstrate Meta unlawfully uploaded (*i.e.,* made available, copied, and distributed) the Asserted Works. Staying Plaintiffs' case now or after completion of fact discovery to then "revisit" the case when fact discovery in *Entrepreneur* is "nearly complete," Meta Br. at 11, will needlessly delay resolution of ripe issues that affect millions of rights holders to some indefinite future time. *See Landis*, 299 U.S. at 255 (it is an abuse of discretion to enter a "stay of indefinite duration in the

absence of a pressing need"); *Dependable Highway Exp., Inc. v. Navigators Ins.,* 498 F.3d 1059, 1067 (9th Cir. 2007) (district court "committ[ed] an error" when it was "unclear when the stay might lift"). Indeed, the *Entrepreneur* action could necessitate extensions to the fact discovery deadline recently set in that case to the extent Entrepreneur Media attempts to substantiate its market dilution theories through discovery the *Kadrey* plaintiffs were denied.[2] Regardless, Meta has not cited—nor have Plaintiffs located—a single case where any part of a putative class action was stayed in favor of allowing a later-filed absent class member's case to proceed.

The damage resulting from a stay would be particularly acute here because it would delay classwide injunctive relief to stop Meta's ongoing piracy of Plaintiffs,' and proposed Class Members,' works. Dkt. 407 ("TACC") ¶ 11. Courts in the Ninth Circuit have recognized that requests for "injunctive relief weighs more heavily against granting a stay than the potential harm to a plaintiff seeking only monetary relief." *See, e.g., D.C. v. Cnty. of San Diego*, 2017 WL 1365693, at *2 (S.D. Cal. Apr. 14, 2017); *Aldapa v. Fowler Packing Co., Inc.*, 2016 WL 6124216, at *1 (E.D. Cal. Oct. 20, 2016) (same). Should Plaintiffs prevail on the merits and class certification, they will obtain injunctive relief meaningful to a class of potentially millions of rights holders. A ruling from this Court hopefully would also curtail the disturbing trend of U.S. companies increasingly supporting shadow libraries like Anna's Archive. *See Nazemian v. Nvidia Corp.,* No. 24-cv-01454-JST, Dkt. 235 (Amend. Compl.) ¶ 57 (alleging "NVIDIA management gave 'the green light'" to pay to download works directly from "Anna's Archive, [] days after being warned by Anna's Archive of the illegal nature of their collections"); *cf.* Proposed FACC ¶¶

---

[2] Entrepreneur Media seeks to advance a market dilution theory on which this Court held Plaintiffs "presented no meaningful evidence." Dkt. 598 at 35, 40 While Plaintiffs respectfully submit the record did contain evidence sufficient to establish a question of material fact under that theory, *see, e.g., id.* at 33-34, Plaintiffs also pursued discovery on market dilution, specifically regarding Llama's ability to output works comparable to Plaintiffs', but Judge Hixson denied that discovery on relevance grounds. Dkt. 288 at 3 (denying RFP 59, seeking "Documents and Communications Concerning the ability of any Meta Language Model to output fictional works"). Although Judge Hixson did not explain his rationale for denying that discovery, he presumably relied on Meta's argument that Llama output was not relevant because this Court "dismissed Plaintiffs' claims relating to the output of the Llama models." Dkt. 267 at 30 (citing Dkt. 56).

122, 123. Of course, Plaintiffs would also be harmed by delaying resolution of their claims when they are in the home stretch, and after enduring Meta's demanding discovery.

Finally, a stay will not "simplif[y] . . . issues, proof, and questions of law." *Lockyer*, 398 F.3d at 1102. To be sure, there are some overlapping issues and common evidence across the two cases, but there is no clear "simplification" that would be served by staying this case. The best Meta can muster is a speculative reference to "potential inefficiencies." Meta Br. at 10. But Meta obviously does not lack the resources to litigate both cases; they can proceed simultaneously and be litigated efficiently. *See, e.g.*, *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1150 (E.D. Cal. 2018) (denying stay where some claims overlapped with prior class actions but "other claims . . . have nothing to do with either class action"). And, notably, Entrepreneur Media does not support Meta's request to stay this case either. *See* Poueymirou Declaration ¶ 2.

2. **The Court Should Grant Plaintiffs' Proposed Amendments To Revise the Class Definition and Add Three Loan-Out Plaintiffs and a Contributory Infringement Claim**

Meta's arguments against amendment focus on delay, but "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *U.S. v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). Meta attempts to escape this rule by tying all its prejudice arguments to "disruption" caused by delay, but neither "delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). In any event, any "new discovery" from three loan-out companies[3] and Plaintiffs' contributory infringement claim "amounts to little more than the ordinary burdens of defending a lawsuit, which are insufficient to justify denying leave to amend." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 653 (W.D. Wash. 2015); *see also Aten Int'l Co. v. Emine*

---

[3] Meta says it will need "party" discovery from these companies, Meta Br. at 8, but Meta already obtained their documents and deposed the named plaintiffs who own them, mitigating the need for additional discovery. *See* Dkt. 658 ("Pl. Mot.") at 7. Regardless, any such discovery would be straightforward and could be conducted expeditiously. Moreover, Plaintiffs do not intend to put forth any of the three loan-out companies as proposed class representatives, which obviates the need for any class discovery from them.

*Tech. Co.,* 2010 WL 1462110, at *4 (C.D. Cal. Apr. 12, 2010) (same). Further, courts routinely find any burden of additional discovery is not undue where "discovery taken to date is relevant to the added claims, as evidenced in part by Plaintiff bringing [a] motion [to amend] after learning new facts during and after discovery." *Herrera v. Cnty. of San Benito*, 2025 WL 2323350, at *5 (N.D. Cal. Aug. 11, 2025) (collecting cases).

### a. Plaintiffs should be permitted to narrow the existing class definition.

Plaintiffs seek to amend the current class definition to conform the definition to the evidence produced to date regarding Meta's torrenting conduct (while still including and preserving for appeal the class definition on Plaintiffs' AI training claim). Tellingly, Meta makes no attempt to contest or distinguish the many cases holding that "courts should freely give" leave to amend class definitions for clarification, to conform to evidence, and "to facilitate decision on the merits." *See* Pl. Mot. at 2-3 & 11 (citing cases). Meta concedes, as it must, that Plaintiffs' claims for direct copyright infringement via torrenting are part of the case. Meta Br. at 7. The class definition should be coextensive with the torrenting evidence and legal claims at issue in this case.

Contrary to Meta's assertion, the amended class definition *reduces* the class size, primarily by limiting it to registered copyright owners who registered within five years of first publication (which, pursuant to 17 U.S.C. § 410(c), constitutes "*prima facie* evidence of the validity of the copyright and of the facts stated in the certificate"), and did so before being uploaded, offered, or made accessible to third parties, and/or downloaded or otherwise copied by Meta, or within three months of first publication (which, pursuant 17 U.S.C. § 412, permits statutory damages). The registration requirement also reduces the class size by limiting the definition to owners of registered works, where the operative definition includes unregistered works. This change also improves manageability. The contours of this registration requirement align with the registration requirement for the certified class in *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1051 (N.D. Cal. 2025), and comports with this aspect of the original class definition in one of the consolidated cases, *Farnsworth v. Meta Platforms Inc.*, No. 24-cv-6893, Dkt. 1 ¶ 55 (Oct. 1, 2024). Further,

limiting the class to specific types of works that Meta torrented[4] focuses the class definition on the works Meta "uploaded, offered, or otherwise made accessible to others, and/or downloaded via BitTorrent," Proposed FACC ¶ 128, as opposed to those broadly "used by Meta." TACC ¶ 115.

### b. Plaintiffs' contributory infringement claim should be added to the Complaint.

Meta argues that Plaintiffs should have added their contributory infringement claim when they uncovered a minimum amount of information "necessary" to make a claim, which according to Meta was when Plaintiffs last moved for leave to amend in November 2024. Meta is wrong on both counts. First, that is not the standard for amendment. *See, e.g.*, *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2009 WL 10677178, at *2 (N.D. Cal. May 4, 2009) (granting leave to amend where plaintiff was "in a position to raise its new allegation earlier" but defendant "cited no authority to support the view that a party is required . . . to add a new allegation as soon as it comes into possession of information sufficient to . . . make the allegation"). Indeed, Judge Tigar just granted leave to add a contributory infringement claim in an analogous AI class case notwithstanding that plaintiffs were first on notice of evidence supporting the claim a year prior. *Nazemian*, No. 24-cv-01454-JST, Dkt. 232 at 7; *see also Alexsam, Inc. v. Green Dot Corp*, 2017 WL 1370690, at *5 (C.D. Cal. Apr. 10, 2017) (granting leave to amend when plaintiff received new evidence supporting claim despite having previously made allegations of similar misconduct).

Second, and notwithstanding Meta's unsupported assertion otherwise, *see* Meta Br. at 1, 6, Plaintiffs plainly could not have brought their contributory infringement claim in the operative complaint.[5] Contributory infringement attaches only when a party "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Erickson Products, Inc. v. Kast*, 921 F.3d 822, 831 (9th Cir. 2019) (quotations omitted). All Plaintiffs learned

---

[4] Meta misreads the revised definition to set up a straw man argument. *See* Meta Br. at 9 n.4. The requirement that the processes described occur "via BitTorrent" applies to the entire list of actions, not just downloading.

[5] Meta misinterprets a discussion at the hearing on Plaintiffs' prior motion for leave to amend, *see* Meta Br. at 3, 6, in which Plaintiffs discussed Meta's accessing, and contribution of bandwidth resources to, the BitTorrent network for CADAFA, not Meta's actions forming the basis of the contributory infringement claim. *Compare* 02/27/25 Hr'g Tr. at 12:12-13:21 *with* Proposed FACC ¶¶ 120-22. Relevant here is that Plaintiffs did not discover until more recently the scale and extent to which Meta uploaded their works.

in November 2024 was that Meta torrented ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ and thus presumably uploaded some amount of those works. At the same time, Meta fully disclaimed any knowledge that it had torrented and fought discovery into its uploading of pirated works (which it continued to fight ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on which Plaintiffs' forthcoming expert report focuses. Indeed, Meta does not dispute Dr. Choffnes's discussion of the timing of Meta's production of torrenting and uploading evidence—to wit, that Meta did not produce *any* torrenting logs files until ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Dkt. 659-2 ¶¶ 5-6, 9. It was not until ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that Plaintiffs received discovery that finally revealed how many of the Asserted Works were included in each torrent payload and the amount of torrented data Meta uploaded to BitTorrent peers, including in connection with Meta's torrenting of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It is only through these more recent productions, including Meta's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of torrenting logs, *id.* ¶¶ 5-8, that Plaintiffs could plausibly plead Meta uploaded the Asserted Works via BitTorrent, that Meta knew it was making them available and distributing them, and that Meta's contribution to others' infringement was material.[6]

Finally, Meta's arguments regarding prejudice and futility are likewise unavailing. Meta does not identify any reason why the dates proposed by Plaintiffs, *see* Dkt. 668-3, do not provide adequate time to prepare short expert reports focused on online piracy. And contrary to Meta's assertions, additional discovery beyond that is unwarranted given that proof of distribution is self-evident proof of harm. *See* Dkt. 598 at 35 (citing *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 192-93 (2d Cir. 2024)). Plaintiffs also do *not* need to "plead the required actual knowledge of the specific acts of infringement, or specify 'which … titles were infringed, who infringed them, [and] when the infringement occurred.'" Meta Br. at 10 (brackets in original,

---

[6] The history of fits and starts in Meta's productions also belie Meta's puzzling assertion that Plaintiffs—who uncovered and pursued discovery that only recently revealed all the elements of their contributory infringement claim are met—were prompted by Entrepreneur Media's complaint (which itself is based on Plaintiffs' work).

changing "or" to "and"; quotations omitted). Instead, "the knowledge requirement include[s] both those with *actual knowledge* and those who *have reason to know*," *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (emphasis in original), and no court has required the kind of granularity Meta claims is required here—including the case Meta cites. *See Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (holding DMCA notices were insufficient because they omitted *all* requisite information). Plaintiffs plead more than enough to satisfy the pleading standard, *see* Proposed FACC ¶¶ 120-22, but even if they do not, that is best saved for dispositive motion practice. *See*, *e.g.*, *Henderson v. Muniz*, 2018 WL 6331008, at *3 (N.D. Cal. Dec. 4, 2018).

### 3. Concurrent class briefing will allow the case to proceed efficiently.

Permitting class discovery and concurrent class certification and summary judgment briefing is the most efficient way to bring this case to judgment. Plaintiffs will rely on the same evidence of torrenting to establish Meta's liability as to their works as the works owned by the others they seek to represent, because "the claims of every member of the class are uniformly premised upon the uploading . . . of a copyrighted work." *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. June 1, 2005); *see also Bartz*, 791 F. Supp. 3d at 1062 (finding predominance for class from downloading works from two shadow libraries). Indeed, torrenting is *by design* the antithesis of "individualized" conduct: Meta's infringing conduct here happened *en masse* and via common computers, common file-sharing technology, common employees, and common data files or logs—most of which has now been produced. Choffnes Reply Decl. ¶¶ 4-6.

Nor does Meta's ironic argument that proof it torrented more copies of some works than others undermine the viability of Plaintiffs' forthcoming certification motion. First, differences in damages do not defeat class certification. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *In re Napster*, 2005 WL 1287611, at *7 (finding common issues predominate even when "actual damages ultimately requires a work-by-work inquiry"). Second, Plaintiffs also seek injunctive relief. Proposed FACC at ¶ 128. Third, if Plaintiffs elect statutory

damages, these damages would be uniform, because damages are awarded on a "per-work" basis. Meta's argument that statutory damages require establishing actual damages ignores Ninth Circuit law that "[a] plaintiff may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.'" *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194-95 (9th Cir. 2001) (upholding jury's award of $72,000 in statutory damages per work regardless of evidence of actual damages, especially considering the defendant's ongoing infringement through much of the litigation). Even for actual damages, common sources of proof would demonstrate this harm because Meta's distribution is direct substitution in the marketplace. *See In re Napster*, 2005 WL 1287611, at *7; *see also Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1271-72 (9th Cir. 2021) ("[A] statutory damages award may account for the infringer's 'expenses saved, and profits earned,' 'the revenue lost by the copyright holder,' and 'the deterrent effect on the infringer and third parties' *among other factors.*" (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)) (emphasis added).

Tellingly, Meta fails again to state whether it will assert a fair use defense to its peer-to-peer file sharing, but even if it is permitted to advance such a defense at this stage, it would not be an impediment to concurrent proceedings, in part because Meta's uploading via BitTorrent is a form of uniform, direct substitution harming the established market for the sale of books and other publications. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-17 (9th Cir. 2001), *as amended* (Apr. 3, 2001) (distributing and downloading music from Napster's platform is not fair use). In other words, all caselaw to date suggests any "fair use" defense on these facts will fail.

## CONCLUSION

Plaintiffs respectfully request the Court deny Meta's request for a stay and grant Plaintiffs' requested relief, including entering the schedule with class discovery and briefing at Dkt. 668-3.

**PLS' REPLY TO MOT. FOR LEAVE TO AMEND AND OPP. TO MOT. TO STAY**
CASE NO. 3:23-cv-03417-VC
10

Dated: January 21, 2026

By: */s/ Maxwell V. Pritt*
     Maxwell V. Pritt

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (State Bar No. 083151)
Daniel M. Hutchinson (State Bar No. 239458)
Jallé H. Dafa (SBN 290637)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

Kenneth S. Byrd (pro hac vice)
Betsy A. Sugar (pro hac vice)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
kbyrd@lchb.com
bsugar@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Louis Andrew Kessler (SBN 243703)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
lkessler@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dstraite@dicellolevitt.com

**COWAN DEBAETS ABRAMS & SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com

**CERTIFICATE OF SERVICE**

  I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any party or counsel of record who is not a registered participant of the Court's ECF system.


Dated: January 21, 2026                         */s/ Maxwell V. Pritt*
                     Maxwell V. Pritt