**Pages 1 - 64**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

RICHARD KADREY, et al.,          )
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )     **NO. C 23-03417 VC**
                                 )
META PLATFORMS, INC.,            )
                                 )
          Defendants.            )
_____     )
                        San Francisco, California
                        Thursday, February 5, 2026

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

<u>APPEARANCES</u>:

For Plaintiffs:

                    BOIES, SCHILLER & FLEXNER LLP
                    1401 New York Avenue
                    Washington, D.C.  20005
             BY:    **JESSE PANUCCIO, ATTORNEY AT LAW**
                    **ANNABEL WEINBACH, ATTORNEY AT LAW**

                    BOIES, SCHILLER & FLEXNER LLP
                    44 Montgomery Street - 41st Floor
                    San Francisco, California  94104
             BY:    **MAXWELL V. PRITT, ATTORNEY AT LAW**
                    **MARGAUX POUEYMIROU, ATTORNEY AT LAW**

                    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                    275 Battery Street - 29th Floor
                    San Francisco, California  94111
             BY:    **DANIEL M. HUTCHINSON, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

**APPEARANCES:**  (continued)

For Plaintiffs:

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
250 Hudson Street - 8th Floor
New York, New York  10013
BY:  **RACHEL GEMAN, ATTORNEY AT LAW**

For Defendant:

COOLEY LLP
3175 Hanover Street
Palo Alto, California   94304
BY:  **KATHLEEN HARTNETT, ATTORNEY AT LAW**

COOLEY LLP
1333 2nd Street - Suite 400
Santa Monica, California   90401
BY:  **BOBBY GHAJAR, ATTORNEY AT LAW**

COOLEY LLP
1299 Pennsylvania Avenue, NW - Suite 700
Washington, D.C.  20004
BY:  **PHILLIP MORTON, ATTORNEY AT LAW**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road - Suite 250
Palo Alto, California  94304
BY:  **ANGELA DUNNING, ATTORNEY AT LAW**

DUNN ISAACSON RHEE LLP
401 9th Street, NW
Washington, D.C.  20004
BY:  **KAREN L. DUNN, ATTORNEY AT LAW**
**KYLE N. SMITH, ATTORNEY AT LAW**
**CHRISTINE RAY, ATTORNEY AT LAW**

PAUL WEISS RIFKIND WHARTON & GARRISON
535 Mission Street - 24th Floor
San Francisco, California  94105
BY:  **ANNA STAPLETON, ATTORNEY AT LAW**

**Thursday - February 5, 2026**                    **10:04 a.m.**

**P R O C E E D I N G S**

**---000---**

**THE CLERK:**  Now calling civil case 23-3414, Kadrey, et al. versus Meta Platforms Inc.

Will Counsel please come forward and state your appearances for the record starting with the Plaintiff.

**THE COURT:**  The crowd of lawyers gets larger every day, every hearing.

**MR. PANUCCIO:**  Good morning, Your Honor, Jesse Panuccio with Boies Schiller for the Plaintiffs.  With me at counsel table are Maxwell Pritt, Margaux Poueymirou, Rachel Geman, Daniel Hutchinson and Annabel Weinbach.

**THE COURT:**  Hi, everybody.

**MS. HARTNETT:**  Good morning, Your Honor, Kathleen Hartnett with Cooley with a -- slightly couple more people.  We have Phil Morton from Cooley, Karen Dunn from Dunn Isaacson Rhee.  We have Kyle Smith, also from Dunn Isaacson Rhee, and we have Christine Ray also from Dunn Isaacson Rhee, and then Angela Dunning from Cleary, Bobby Ghajar from Cooley; and last but not least, Anna Stapleton from Paul Weiss.

**THE COURT:**  Definitely not least.  Okay.  Let me start with the Plaintiffs.  The first thing I'm going to say is I need you to be candid with me about what has gone on and what is going on, and I didn't really find a lot of candor in your

motion to amend the complaint and add the contributory negligence claim.

So, this is your chance to be candid. And the first question is: What -- why are you trying to add a contributory negligence claim? I mean, you have this -- you have this distribution -- contributory infringement claim, sorry. You have this distribution claim. And it is -- as far as I can tell, you are attacking the same conduct in the distribution claim that you would be attacking in the contributory infringement claim.

And so, what do -- why do you need a contributory infringement claim in this case? What does it give you that the distribution claim does not give you? Does it give you the opportunity to recover greater damages? Is there some, you know, concern that the distribution claim doesn't fit -- doesn't map onto the facts as well as the -- the contributory infringement claim does? What -- what is going on?

Why -- why all of the sudden are you seeking to add this -- you know, the idea that contributory infringement crystalized, that's the part that I was referring to when I said you weren't being candid in your briefs.

So, I would like you to sort of be candid to me now about why you are trying to add this claim.

MR. PANUCCIO: Thank you, Your Honor, I appreciate that and I appreciate the Court being forthright with us about

its concerns.  Let me try to answer both questions.  What I'm hearing in the Court's questions are both a substantive question and then a timing question.  So, I will take them in that order if I may.

On the substance why contributory infringement when we already have what we would call the uploading claim, I think the answer is, Well, that partially depends on what Meta is going to say and what the Court ultimately says about the uploading.  You know, they may have some arguments around -- and I think we have seen previews of this -- well, you know, can you fully identify, you know, a full act of infringement through distribution based on how torrenting works and how the files are split up and all of that.  So --

THE COURT:  But can you tell me a little more about, sort of the difference there might be as it relates to what you just said?

MR. PANUCCIO:  Well --

THE COURT:  I mean, between the distribution claim and the contributory infringement claim?

MR. PANUCCIO:  So, for example -- and let me be clear, these are not our arguments -- but if they try to make some argument about the way torrenting works and the way a work is broken up into little bits of data and, you know, no full work is transmitted at the same time from the same user, well, one thing we can say is, look, either way -- and we think we have

answers to that on the technology, to be clear -- but we can say, well, look even if you are committing contributing pieces to someone else's infringement, that would be contributory infringement as well.

So, it is a belt and suspenders claim, Your Honor, but it is clear from the facts that have now emerged, that there was contributory infringement.

THE COURT:  Well, but what you just described -- I mean, the process of uploading and the process of it being broken up into little bits before it's sent out, I mean, that was all there when -- when you amended -- when you added the distribution claim to your third amended complaint; right.

MR. PANUCCIO:  Respectfully, no, Your Honor.  The timeline on this -- and we can walk through it in great detail -- but the only thing we knew prior to the third amendment was a fleeting admission in the 30(b)(6) just before that amendment, that there had been some torrenting.  But the actual mechanics of that torrenting and the extent of it -- Meta actually denied there was torrenting for a long time. Then it came out in that deposition -- the first document production on that issue wasn't until after the amendment, and then -- and this is laid out in our --

THE COURT:  You are saying that you didn't have the ability to understand that uploading while torrenting involved breaking it up into little pieces and sending it out.  You

didn't -- that was not readily apparent?

MR. PANUCCIO:  Well, we didn't have anywhere near the --

THE COURT:  Because I bet if we looked back at the record, it was like -- like, everybody understood how leaching and seeding worked back then.  What's different is you didn't know how much of it occurred; right.  You didn't learn until later just how much torrenting occurred.  But on the issue of breaking it up into little pieces when it's distributed, I mean, that was -- I think that was apparent from the get-go.

MR. PANUCCIO:  Well, two things I will say about that, Your Honor.  One is -- just so the timing is clear -- the 30(b)(6) deponent was on November 20th, 2024.  That was the -- that's three weeks before the initial close of fact discovery.  That was the first time in all that discovery that had happened beforehand, that anyone from Meta said anything about torrenting; and it was in a 30(b)(6) and it was just an admission that there had been some torrenting.

We amended seven days later on November 27th, 2024, but the discovery into these issues all happened in the last year since then.  And it has been extensive.

And then the other thing I would note --

THE COURT:  Well, but, I mean, you are not really answering my question.  What I'm saying is I understand that, but once you learned that there was torrenting and once you

learned that -- once you learned that the torrenting process included the uploading of data during the downloading process, I mean, I thought -- I thought we all understood at that point what that meant, which is that it's broken up into little pieces and sent out --

MR. PANUCCIO:  We didn't --

THE COURT:  -- on the torrenting.

MR. PANUCCIO:  I'm sorry.  I didn't mean to cut you off.

THE COURT:  It's okay.

MR. PANUCCIO:  We didn't know what was torrented, if Plaintiffs' works were in the torrenting yet.  We didn't know the scope of it.

THE COURT:  But what you just said to me was a potential difference between a distribution claim and a contributory infringement claim was that maybe there's a defense -- maybe they win -- they have a potential of winning on the distribution claim because when you are uploading the works by a torrenting, you are breaking them up into little pieces.  And so, it is not a distribution of a full work; but, you know, they could still be liable for contributory negligence.

That conversation, it seems to me, could have been had in late 2024 once you learned that torrenting was occurring.  And I'm trying to understand why that's -- why that's wrong.  And

you haven't answered that question yet.

MR. PANUCCIO:  Let me see -- I'm trying to.  Let me see if I can take another run at it.  So, two things I want to say about this.  One is that contributory infringement has an element that direct infringement does not, which is materiality.  So, you have to materially contribute.

So, without knowing exactly what was torrented, whether Plaintiffs' works were in that torrented -- in that torrent, it would be harder to plead the materiality element.

THE COURT:  But without -- it would be equally hard to plead the distribution claim without knowing that the Plaintiffs' works were included in the torrenting.

MR. PANUCCIO:  Well, and at that time, Your Honor, we were -- we were focused on that claim.

THE COURT:  So, if the reason you didn't add a contributory infringement claim is because you weren't yet sure that the Plaintiffs' works were torrented, then that would have also been a reason to hold off on adding a distribution claim, but you added the distribution claim.

So, you obviously weren't concerned about the question of whether your clients' works were torrented when you amended the complaint.

MR. PANUCCIO:  Well, there is materiality element that exists with contributory infringement, Your Honor, but let me just say this also --

**THE COURT:** What does that -- tell me more about what you mean by that.

**MR. PANUCCIO:** Well, it has got to be a material contribution to the --

**THE COURT:** Right. But that has nothing to do with whether your clients' works were uploaded or not; right? So, what is the -- I don't understand the import of the materiality element as it relates to the difference between contributory infringement and distribution.

**MR. PANUCCIO:** Well, I think it would be a reason to hold off on the contributory claim to make sure -- to make sure you have the evidence to meet materiality.

**THE COURT:** And what would the evidence be to meet materiality?

**MR. PANUCCIO:** The -- understanding how the torrent worked, how much was contributed to the downloading of others in their infringement.

**THE COURT:** Why wouldn't that matter equally to the --

**MR. PANUCCIO:** Well, it does -- I'm sorry.

**THE COURT:** -- to the distribution claim?

**MR. PANUCCIO:** It all matters, Your Honor. I guess, what I would say is this: I don't know of any law that says as soon as you can get a scintilla of evidence and get, you know, past Rule 11 on any issue, that is exactly when you need to drop it in the case.

**THE COURT:** Of course not but I'm -- that's not what I'm asking you. What I'm asking you is: What is it about the difference between the contributory infringement claim and the distribution claim that caused you to hold off on the former but not the latter?

**MR. PANUCCIO:** I guess I would say this --

**THE COURT:** I'm still not understanding.

**MR. PANUCCIO:** -- Your Honor, in all candor, these facts developed substantially in the past year. Our understanding of what happened is far -- far greater today than it was at that time when the only thing we had was Meta saying seven days before amendment there was torrenting. And now that we understand the full scope of those facts, this is a claim that Plaintiffs have; and -- for reasons I stated --

**THE COURT:** But -- so, you said "in all candor," and then you didn't ask my question -- answer my question about what's the difference between the contributory infringement claim and the distribution claim.

So, in all candor, is it just that your team didn't think about it and your team didn't think about it until you saw the Entrepreneur Media complaint?

**MR. PANUCCIO:** Well, let me address that, Your Honor, because I know Meta said that in its brief. I think that has that backwards. The Entrepreneur Media complaint --

**THE COURT:** Why don't you give me a reason why -- why

it would make sense to add a distribution claim but not a contributory infringement claim other than we didn't think of it.

**MR. PANUCCIO:**  Well, it's not that we didn't think of it, Your Honor.  It's that at that time when it was the first admission after a year or more of discovery that there was any torrenting at all and all the parties were focused on direct infringement, that was the focus at the time.  But a lot has happened since then and a lot has emerged.  Very significant evidence has emerged.

**THE COURT:**  I agree with you that a lot of evidence has emerged, but why does that make it -- how does that justify not bringing a contributory infringement claim at the time that you added your distribution claim?

You are speaking in slogans.  A lot of evidence has emerged.  The issue has crystallized.  None of that means anything.

I want to know the real reason why it would be justifiable to add a distribution claim and not a contributory infringement claim at that time.  What was missing?

**MR. PANUCCIO:**  Well --

**THE COURT:**  Are you saying that previously there was only a little bit of evidence of contributory infringement and now there is a lot of evidence of contributory infringement?

**MR. PANUCCIO:**  Well, if you look at the materiality

element, which is different between the two claims, yes, now there is full scope evidence of what went on here, so we can satisfy that element.  But I will say, Your Honor --

**THE COURT:**  How -- what do you need to show to satisfy that element?

**MR. PANUCCIO:**  You need to show that the accused party materially infringed -- materially contributed to the infringement of a third party.

**THE COURT:**  Well, you are alleging that they distributed the works to third parties.

**MR. PANUCCIO:**  Yes.

**THE COURT:**  In the third amended complaint, you allege that they distributed the works to the third parties and so that the third parties could download those works.  That sounds like materially contributing to infringement.

So, the allegations that were contained in the third amended complaint are already -- are already what you just described that -- as a revelation that you later uncovered.

**MR. PANUCCIO:**  Let me say this -- because I don't want to -- it was theoretically possible, I suppose, at that time to plead it; but I don't think the law requires a plaintiff to make every amendment as soon as there is -- you know, the possibility of doing so.  So, having --

**THE COURT:**  But the law has rules about plaintiffs coming forward at the eleventh hour to try to add claims that

they didn't think to add earlier.  And unless you can give me a reason -- a facially valid reason -- why you didn't add the contributory infringement claim when you filed your third amended complaint, I'm going to operate on the assumption that you just didn't think about it; that you just didn't think to assert a contributory infringement claim until you saw it in Entrepreneur Media's complaint.

**MR. PANUCCIO:**  Well, Your Honor, that last part I think is not right because the Entrepreneur Media complaint, if you look at the allegations in it, it works off of the discovery that we received and then filed with the Court in various motions since the third amended complaint.  I mean, that's where its allegations come from.

So, if we are going to say the trigger is Entrepreneur Media, that claim is not rooted in what happened on November 20th, 2024.  It's --

**THE COURT:**  Forget about Entrepreneur Media then. Like I said, I'm going to operate on the assumption that you just didn't think of it until you filed the fourth amended -- proposed fourth amended complaint unless you can give me a reasonable explanation why you would add a distribution claim and not add a contributory infringement claim at the same time.

You haven't given me that -- another explanation yet. Now, we can talk about:  Oh, my God, we made a mistake.  You know, please forgive us.  Allow us to file an amended

complaint.  I mean, I would still consider that.

**MR. PANUCCIO:**  Uh-huh.

**THE COURT:**  But unless you give me a facially plausible reason why you -- why a lawyer would sit there in late 2024 and make a rational decision to add a distribution claim but not a contributory infringement claim -- unless you can explain that to me, I'm going to operate on the assumption that you just didn't think of it; that you made a mistake, and you are now trying to fix that mistake, and then we can -- you know, I can analyze it from there but --

**MR. PANUCCIO:**  Your Honor --

**THE COURT:**  Do you want to take one more crack --

**MR. PANUCCIO:**  I will take one more crack.

**THE COURT:**  -- at explaining why a lawyer sitting there in late 2024 would add a direct -- knowing what they knew in late 2024, early 2025, would add a direct -- a distribution claim but not a contributory infringement claim.

**MR. PANUCCIO:**  And the best explanation I can give you, Your Honor, is that at the time the case was focused on these direct infringement claims, the evidence of any torrenting at all was brand new.  We rushed to get the amendment in before the close of discovery and included allegations of direct infringement; but our understanding of that issue has evolved greatly.  And so, you know, I'm happy to say, Your Honor, that it was theoretically possible to add it

at the time and we didn't.  But given all of the facts that have emerged and the lack of prejudice from adding -- because I don't think any new discovery is necessary.  It's all -- we have already collected and I have been promised that we will get -- we have already collected a lot of torrenting evidence.  Meta has promised in its briefing papers it will finish its productions by February 28th.  It will be the same evidence.

So, Your Honor, I'm happy to say, we would ask the Court for the indulgence to add this claim; but I also want to say, look, this is not the hill we need to die on about the amendment.  You know, the most important thing I want to get across today is that the case should move forward, I think.  And I do want to address that if I may.

So, I understand where the Court is at on this.  And I will candidly say, was it theoretically possible at that time to add a claim?  I think it was, but the law says you don't have to add all your amendments when you have the first scintilla, you know, just get over the Rule 11 hump.

So, that's where we are, Your Honor.  I'm trying to be as candid as I can about it.  This is a massive case with a lot of moving parts.  The discovery, as the Court knows better than anyone, has been in fits and starts and been a struggle from both sides and positions have changed as we have moved along.

I mean, just, for example, there was a time when Meta was saying, We should appeal the ruling that they won to the Court

of Appeals; and now they say the whole case should be stayed. So, parties are evolving in their positions as things come to light.

And that's where we are.  We are asking for the Court's indulgence on this.  If the Court doesn't go there, we are happy to move along to the other issues as well.

**THE COURT:**  Okay.  I'm not going to stay the case. The question is whether -- the question is just what sort of schedule will we adopt in the case or whether we will tweak -- I don't remember what the dates are as we sit here.  We can talk about that, but I'm not going to stay the case.  I don't think that it would be appropriate --

**MR. PANUCCIO:**  Thank you.

**THE COURT:**  -- or fair to the Plaintiffs to stay the case, you know, to sort of clear the way for the second case to move forward.  I have already made clear the second case, Entrepreneur Media, is not going to be delayed in any way because of the existence of the first case; but I don't think it would be fair to stay the first case.

**MR. PANUCCIO:**  Thank you.

**THE COURT:**  So, the request to stay is denied.

**MR. PANUCCIO:**  Thank you, Your Honor.

**THE COURT:**  Let me ask you a question -- I mean, this relates in part to scheduling and in part to the issue of class discovery opening up.

What happens -- let's say we get to class certification -- let's say, I deny the motion to amend the complaint to add the contributory infringement claim, and I have already ruled in favor -- against the named Plaintiffs on the infringement claim as it relates to the training of the -- of the models, use of their works to train the models; right.

**MR. PANUCCIO:**  You are saying the prior ruling is what you are referring to?

**THE COURT:**  Yeah.

**MR. PANUCCIO:**  Yes.

**THE COURT:**  And then we get to class certification and you are asking to -- you are seeking to certify a class of -- you are asking to see -- to certify a class to pursue a distribution claim, right, on behalf of the class.

A contributory infringement claim would not be pursued on behalf of that class because I denied the motion to add the contributory infringement claim, and an infringement claim based on using the works to train the models would not be part -- would not be pursued on behalf of the class, right, because I have already ruled against the named Plaintiffs on that claim.

So, there are sort of three potential ways for the class to hold Meta liable for its conduct in using protected works in connection with training its models, and two of those are out, right, the class only gets one of the three.  That is -- that

makes me very uncomfortable.

So, and it makes me wonder if it would be appropriate to certify that class as opposed to, you know, waiting for a class that can assert all three claims or waiting for Plaintiffs who can assert all three claims on behalf of a class.

And, you know, your request to open up class discovery and to have summary judgment and class certification proceed on the same track has got me thinking about all of that; right.  And so, I was wondering if you could address that.

**MR. PANUCCIO:**  Those are really good questions, Your Honor.  Let me say three things in response to that.

So, first, these are important substantive issues that I think would be best addressed in actual class certification briefing, which is why we want to open it up; but let me at least try to give a preview of that.

**THE COURT:**  Right.  I mean, obviously that makes sense; but I feel like it is helpful -- when deciding what the schedule is going to be and whether to open up class certification discovery now or later, how to sequence it all, these questions I think are relevant to that decision.

**MR. PANUCCIO:**  Yes, absolutely.  And let me see if I can give a preview of what we might say and what I think might be helpful to the Court.

So, one -- at least when I've been thinking about this, it has been helpful for me to think about, well, what if we had

done it the other way -- which sometimes happens in cases where the Court will say, Let's do class cert in an early practicable time and then I will get to summary judgment.

And then what would we have had?  We would have had to take the Court's framework, these three questions that are traveling together; right.  Let's call it the training infringement, we call it uploading infringement -- I believe the Court and I had this conversation -- within the uploading you can actually have three -- you have downloading within uploading.  You have distribution.  You have making available.

But so, we have our training claim, our uploading claim and contributory infringement.  It is possible if the Court certified a class --

**THE COURT:**  Assuming you had included those claims in your complaint before class certification, and assuming you had included those claims in your motion for class certification.

**MR. PANUCCIO:**  Right.  But just taking the Court's framework that was just stated in the question, so, you have these three theories of liability if they were trailing, if they were in there, okay.  So, then the Court -- we do summary judgment on everything, and the Court says the same ruling that Your Honor issued about the training, whatever would happen with contributory infringement, whatever would happen with direct --

**THE COURT:**  Deny summary judgment on the uploading

claim and deny summary judgment on contributory infringement.

MR. PANUCCIO: Or grant -- whatever the Court's ruling substantively would be on liability for any one of those three, the class at the end when we get to judgment would be in a position of having to take to the Court of Appeals -- where, you know, all these cases are going to head eventually -- whatever set of rights it is left with and not with the Court's ruling or maybe Meta would be taking it to the Court of Appeals.

My point is at the end of the day, all of this stuff is in the case and how you sequence it, it is still going to be in the case. The theories are there or not there. We might be appealing different procedural or substantive rulings on those issues; but either way, the class or the Defendants have to deal with those issues one way or another.

THE COURT: Okay. But -- okay, so let's say that I -- in this scenario let's say that I certified a class on the uploading claim, as you call it, the distribution claim, and let's say that Meta wins on that claim at summary judgment or at trial. And perhaps the reason Meta wins is that, it is not distribution because they are broken up into little bits when they are uploaded, right, but it still could be contributory negligence but that claim is out. And it could very well still be infringement by using the works to train the models. But, of course, that is out -- that was already out.

So, then what -- so, then is the class precluded -- are the class members precluded from later bringing an action based on the training or based on contributory infringement?

MR. PANUCCIO:  Well, I think the answer is no, Your Honor.  And I have to think through that -- part of it would depend on -- well, let me say two things.  First, I want to be very clear.  When I gave an example of what Meta might argue, I don't want to see it in that argument later, that Counsel for Plaintiffs said this is a good argument.  It is not.  We don't think it is good but --

THE COURT:  I understand.

MR. PANUCCIO:  I guess it would depend on exactly how the Court's rulings come down.  I mean, I think our position would be that -- you know, everything that is encompassed in the Court's ruling -- denial of -- on the merits of certain claims, denial of class cert for -- you know, narrowing the class only, for example, to the uploading claims, I mean, all of that will get litigated at the Court of Appeals.

I guess the answer is hard to say standing here because it would depend on what gets appealed, what the Court of Appeals says, what's still open.  I mean, on all of these works, you can recover once; right.  So, you only need one winning theory to recover.  So, in some sense the question could be academic because if we have a winning theory on uploading, then the Plaintiffs will recover.  The class will recover and there are

no claims to be --

**THE COURT:** That's why my hypothetical was imagine Meta wins on uploading, right, and does that preclude class members from later bringing an action for the training, copyright infringement through training the model with their works or contributory infringement, which might not suffer from the same defect as the jury found with the uploading claim?

**MR. PANUCCIO:** I think it would depend partially on the class definition and partially on how the Court rules. I think that's a complicated question. I respectfully would rather brief that and look at some case law before I commit one way or the other.

**THE COURT:** Well, I mean, I don't know the answer either but it is an issue that I think -- that I'm worried about because I have an independent duty to the absent class members; right. And the decisions we make now about how to proceed with the case could affect the absent class members if the class is ultimately certified. So, I have to think about these questions now, right, because the law tells us that, you know, we can't necessarily always assume that the lawyers for the lead Plaintiffs will adequately consider the interests of the absent class members.

So, I don't know the answer. I mean, I know the law of res judicata issue and issue preclusion is that you are precluded from bringing any claim that you brought or could

have brought in the prior proceeding; right.

So, we know for sure that at the end of this litigation -- if it plays out, you know, in accordance with the hypothetical scenario I gave, we know that the named Plaintiffs would be barred from bringing any action based on training the models or any action asserting contributory infringement.  But what about the class members?  I don't know.  Would res judicata bar them from bringing those claims?  If so, I think the answer is, I would have to deny class certification.

**MR. PANUCCIO:**  Let me see if I can get at this.

**THE COURT:**  That wouldn't be totally unfair to the class members, and the named Plaintiffs would not be adequate representatives of the class members.

**MR. PANUCCIO:**  Let me say three things, if I may, in response to that, Your Honor.  So, one is none of us have briefed this yet; and I think these are important questions that would benefit from research and briefing and then maybe argument.

Two, you know, one of the reasons we brought the motion to start class certification briefing was we were trying to respond to what we thought were the signals from the Court in the last hearing and recent hearings that said -- sort of said, you know, it is time to bring this home; let's get to a judgment; these are important issues.

So, you know, when we looked at the issue, we thought, you

know, the liability discovery is really overlapping in many ways with the class discovery.  So, we can get -- start to get these issues teed up.  But if the Court would prefer -- one option here is get the class briefing on file -- get the summary judgment liability briefing on file.  Go ahead with the summary judgment decision.  And then, you know, that may inform what the Court wants to do with class certification.

And we would be open to that as well, Your Honor.  I mean, we are trying to more effectively streamline this to get to judgment.

And the last thing I want to say -- and I think this may be implicit in the Court's order on the stay -- you know, there has been a lot of focus on this case leading up to that first round of summary judgment on the copyright infringement and AI training -- the actual training.  And, of course, that is very important to rights holders -- and both Your Honor's rulings and other rulings that are emerging are going to form the law on that.

But I do want to say what's left in this case is no small thing.  I mean, the remaining claim is not the tail wagging the dog because the Court ruled, okay, if you download these files from pirate marketplaces and you use them for training in the absence of evidence of market dilution from output, that's a fair use.  That's a very significant ruling.  That's a leading ruling --

**THE COURT:**  Yeah.

**MR. PANUCCIO:**  -- leading ruling in the country.

**THE COURT:**  Maybe it will turn out to be wrong.

**MR. PANUCCIO:**  Maybe -- I mean, we are all going to argue it.  And who knows where it ends up.  Maybe it will be the nine that decide that.  Maybe it will be the Court of Appeals.  But there is something else.  Okay, so let's say that becomes the law.  Well, how the technology companies go about doing that is equally important.

And what the evidence has emerged -- what Meta did is that they said, okay, we are --

**THE COURT:**  I agree.  I totally agree with you.

**MR. PANUCCIO:**  Right.  And so -- and we have a claim for injunctive relief.  And so, what this Court rules on that side of it will be equally seismic and important.  And so, that's why, you know, we just think it's -- so, I would say that's why the case needs to keep going; but also that is why certifying a class on that question would not be immaterial or unimportant.

I mean, that question alone to our Plaintiffs as individuals but to the whole class of rights holders is extremely important.  Because if you are going to do this stuff, you know, and infringe or affect copyrights in that way, how you do it and whether you help other people do it for non-AI training purposes is critical to rights holders.

**THE COURT:**  I totally agree.  And, you know, it is not a question of whether it would be appropriate to certify the class or whether certification of a class would be appropriate to the copyright holders.

It is just a question of how we go about it, right, and how we decide whether to certify a class.  And, as I said, I'm very concerned about the idea of certifying a class that has available to it only one of three potential theories of liability; right.

And, you know, part of that depends on -- you know, maybe -- if it turns out that the class members would remain free to bring infringement claims based on training the models or contributory infringement claims at a later time, then maybe it is less of a big deal; but I could still imagine it being important, you know, and potentially detrimental to the class if it only had one -- you know, if it only had one of three theories of liability available.

You know, it would have tendency to cause people to stay on the sidelines and wait to see how that theory plays out before pursuing the other theories.  And it may -- you know, people are confused about the meaning of judgments and verdicts, and maybe it will mislead people into thinking that they have lost on everything.  So, I'm really concerned about these issues.

**MR. PANUCCIO:**  Two points, Your Honor.  One, so maybe

the best way to proceed is to take away the theoretical and see where the Court comes out on the liability issue, and then it would be known whether the class would have that claim -- you know, already determined that there is liability --

THE COURT:  On the distribution claim?

MR. PANUCCIO:  Right, on the uploading claim.  But, again, we could do the briefing.  In other words, the Court can accept the briefing and just say:  Okay, let me have your summary judgment briefing.  Let me have your class cert briefing.  Brief all these issues about res judicata as well, and then I'm going to hold the hearing on summary judgment.

And if I go with Meta on everything, then maybe I don't even reach -- maybe the Court doesn't even reach class certification, et cetera.  But if you decide for us, then we have some questions we need to work through.

Now, I will say, as my second point, it's not clear to me again that if we had done this in reverse order -- and the Court had certified a class that could bring both training and uploading claims and then the Court issued its summary judgment ruling -- in other words, I still think you could certify a class -- even though the court said "I don't think that's a valid claim," the Court isn't going to change its mind on that, so whether it is a --

THE COURT:  I would have at least seriously explored decertifying the class on the claim that relates to training

the language models; right.  I would have seriously explored --
as I was dealing with summary judgment and I was looking at the
arguments made at summary judgment and the record that was
developed at summary judgment, I would have said "these named
Plaintiffs did not develop an adequate record on this question;
and so, they were not adequately representing the class and I'm
decertifying the class."

Now, I don't know if I would be allowed to do that; but it
would be something that I would at least seriously explore.

**MR. PANUCCIO:**  I understand that, Your Honor.  I think
hearing all this and where the Court's mind is on this or where
the Court's questions are, I do think the best approach here
is -- there's research that needs to be done on these
questions.  I understand they are complicated.

So, I would say I still think it's most efficient to start
briefing these issues.  How the Court stages its decision on
that, I think could proceed the way I said, which is let's
figure out the liability, and that may resolve one way or the
other.

Because if the Court accepts -- and I think it does --
that this question is still critically important, then that's
still very important for a class of rights holders.  And we are
here, and we are the ones who have developed all of this
evidence.

I think all the other cases around the country now are

sort of -- you know, you see these claims popping up.  They are sort of based on what's happened in this path breaking case.

So, I think we would be content to get the briefing done and then have the liability hearing and then deal with the class issues.

**THE COURT:**  So, then under that scenario you just laid out, what's the benefit of getting the briefing done?  Is it just we will be ready to -- I will be ready to rule on class certification sooner?  Is there any other benefit?

**MR. PANUCCIO:**  I think that's a benefit.  I mean, potentially the Court could rule concurrently, for example, if you find liability; and then I think the benefits -- well, one benefit would be, remember, we have an injunctive claim.  And, you know, accepting the premise that how Meta goes about acquiring this data and what it does with it is incredibly important to the rights holders community.

Yes, getting to that decision if the Court, for example, is going to issue an injunction that you can't do it that way, that's incredibly important, not just to our named Plaintiffs but to everyone because it is everyone that's affected by this torrenting activity.  All --

**THE COURT:**  So, you are planning on moving for summary judgment on the uploading claim as well?

**MR. PANUCCIO:**  Yeah, the claim that's remaining, Your Honor, yes.

**THE COURT:** There are going to be cross motions for summary judgment on that?

**MR. PANUCCIO:** Well, let me just -- yes, we are, Your Honor, yes.

**THE COURT:** Okay. Maybe I should hear from Meta.

**MR. PANUCCIO:** Thank you, Your Honor.

**MS. HARTNETT:** Thank you, Your Honor. If I may -- this is Kathleen Hartnett from Cooley -- just quickly address some of the motion to amend issues, and then I will move onto the scheduling conversation. Appreciate the guidance that you are providing.

It is just false that the notion of bits and bites of data were not part of the case back in the motion to amend. In the Plaintiffs' November 27th, 2024, brief seeking leave to add the third -- to amend to submit a third amended complaint, they said on page 4 that Plaintiffs uncovered evidence that Meta torrented datasets. And then they go on to say "a torrent is a protocol that's used to distribute a large computer file that has been segmented in small parts between a large number of peer-to-peer users," citing deposition testimony. So, that's just not true.

Second, on the point of was this conceivably within the -- and, again, I don't want to overly -- the point is that they presented this to the Court as a CDAFA claim, and it is under that ambit. And then as the Court may know -- and we put this

in our brief -- at the hearing on the motion to amend, they were asked:  Wait a second, isn't this preempted, you know, by the copyright laws as copyright infringement?

And the answer from Plaintiffs' Counsel is no, the conduct of using your resources to allegedly help someone else's infringement is not copyright infringement.  That's CDAFA.  So, that was already a known theory that they chose to express through the CDAFA at the time and not through a contributory infringement claim.

I think the other part of this I would just like to make clear to the Court is that it's -- the contributory infringement claim is actually a distribution claim plus.  So, it would be the same underlying motion of a direct infringement -- whether it be of a full file, our view of it; whether it be portions are enough -- that would be the direct underlying distribution; and then it would be plus the material assistance, plus something more for contributory.

So, to your point --

**THE COURT:**  Right, but I still don't understand that, the plus material assistance.  I mean, if you are distributing a work for somebody to download and you know that they are going to download it, that sounds like material assistance. So, how much of a plus is it really?

**MS. HARTNETT:**  We would have to -- so, the main point, though, is that it is something more and we have cases that we

would brief further if we got to a motion to dismiss on that point.

THE COURT:  But as it relates to these facts, how does the materiality element change anything?

MS. HARTNETT:  Well, the notion is somehow that this is so voluminous, Meta was doing that it materially helped these sites do what they were doing.

THE COURT:  But that's not -- I mean, one of the things I did before this hearing was look at the jury instructions for contributory infringement, and it's not about how much -- how much contributory infringement you are engaging in.  It is about whether you are engaging in contributory infringement.

And if it is just one person who I enable to upload -- sorry -- one person who I enable to download the book, right, my act of torrenting it in a way where I'm up -- simultaneously uploading it is material -- I don't see how it couldn't be material assistance.

MS. HARTNETT:  We appreciate your thought, and the point is they have argued that the volume does matter.

THE COURT:  They have argued that but I don't think -- I think that argument doesn't make any sense.

MS. HARTNETT:  That still doesn't --

THE COURT:  They are making that argument in furtherance of trying to identify a reason why they didn't

bring a contributory infringement claim before when I'm going to operate on the assumption that they just didn't think about it.

**MS. HARTNETT:**  Understood.  I think the main point I'm making, though, is the underlying thing you need to be contributing to is actually a completed direct infringement by a known party.

**THE COURT:**  Right.

**MS. HARTNETT:**  And so, our point is simple the notion that somehow contributory would give them an easier path to liability is not true.  They would need an underlying act of direct infringement plus maybe a light plus -- if Your Honor's view of the law is what holds, a light plus -- but they need something more than just the underlying infringement.  So, it is not credible to say that was added for the purpose of an easier path to liability.  That's mainly the point I'm making.

**THE COURT:**  Well, I think it could be that it was added -- they thought about it later; right.  They saw the Entrepreneur Media complaint.  And they are like, oh, contributory negligence -- sorry -- contributory infringement; and they sort of realized that there could be a vulnerability to the distribution claim that would not exist for the contributory infringement claim.  The vulnerability being the one that Mr. Panuccio identified, right, that if you are breaking it up into little bits and putting it out there into a

network, that that is not distribution of a full work but it still could very well be contributory infringement.

MS. HARTNETT:  And that's where I think we would disagree.  We can brief it further later.  You still need -- if we got to the point of having that claim, you would still need an underlying direct infringement.  And so, we actually would submit that the upload of a piece of something --

THE COURT:  Underlying direct infringement by the person who downloaded it.

MS. HARTNETT:  Correct.

THE COURT:  But, you know that someone is downloading it.  Are you saying that the person -- like, obviously that's the purpose of uploading it is so people can download it.

MS. HARTNETT:  A piece of it.  Whether there would be a specific person that received enough, that's the whole point of the way they are trying to show the case.

THE COURT:  That would apply both to distribution and contributory infringement; right.

MS. HARTNETT:  That's my only point is that, like, whatever the standard is going to be for what counts as a full distribution or a full upload for purposes of an underlying infringement, it will be the same -- they are two sides of the same coin.  It is a plus to add the contributory infringement. So, I'm just today saying that's actually not a reason to add that is somehow it's going to be --

**THE COURT:** Is there any difference in damages?

**MS. HARTNETT:** Not to my knowledge.

**THE COURT:** Okay.

**MS. HARTNETT:** But that wasn't briefed. Anyway, I don't want to belabor the point, but I really do think -- again, just to make the record straight, this is what the case was about. And then beyond the November point -- this is months and months and months after the baseball arbitration discovery and other developments, which provided the fuller color that they have cited as partially the reason -- so, even if it wasn't something that the Court would say November had to be the drop-dead deadline, that's not the only question. The question is: Was this timely and would it prejudice the case.

I don't know if you have -- there is one other note on the Entrepreneur complaint, it is bare bones. We have been litigating that. That will be before you so I don't need to argue that right now, but that doesn't have abundant detail from this case in it.

**THE COURT:** Is it -- I can't remember. Is that a proposed class action?

**MS. HARTNETT:** It is not.

The one other thing I wanted to flag for you -- and then I can maybe move to the discussion of the schedule. We have had some thoughts on it appreciating you may not want to stay everything completely -- is there is another case called

*Carreyrou*.  I'm not sure if it's come to Your Honor's attention.

THE COURT:  No.

MS. HARTNETT:  So, there is a case that has been filed by *Carreyrou* and some other individual Plaintiffs that were essentially, like, opt-outs from the *Anthropic* case; and they brought a separate claim now against Meta and five other tech companies alleging Copyright Act infringement in the training piece, so not the distribution piece.  That's currently before Judge Thompson, and we are expecting to have a motion to sever because we think it was improper joinder.  And then we will at that point file a motion for relatedness to you because it is together with five other cases.  We haven't done that yet. That is not a class action, but we wanted you to have it on your radar.

THE COURT:  It is not a class action?

MS. HARTNETT:  It isn't.

THE COURT:  So, the idea is those would be severed; and the Microsoft part would go to SDNY and the *Anthropic* part would go to whoever has that now.  Is it Judge Gonzalez Rogers?

MS. HARTNETT:  It is actually -- it is Judge Martinez-Olguin after Judge Alsup's retirement.

Anyway, so, I think that point means there may be a larger collection of folks here at some point.  In terms of what to do next in light of that and the fact that we have the aggressive

schedule in Entrepreneur, I think our view would be if the amendment is denied -- because we do think there is some discovery we want to take on the material.  I appreciate your view on the law but the points about how much contribution there was, they also were proposing to add three new Plaintiffs that we haven't taken discovery of.

So, assuming amendment were denied, what we would recommend would be to have us complete the discovery we were doing on the factual front by February 27th, a Friday, which is what we are aiming for.  But rather than having the expert reports filed right away, which is what the schedule is currently in this case, have them line-up with the Entrepreneur case in the fall.  So, that would be September expert reports and we would have summary judgment then.

And the reason why we think that would make sense is because Your Honor would have before it -- I think we don't want to be in the position of our experts opining on this record when Entrepreneur is going to further develop the record likely on both the question of factor 4 for the training but also on distribution potentially.  And then we can have, like, an expert report that's fully informed in the fall rather than kind of doing a round of expert discovery with the Kadrey Plaintiffs and then doing it again with Entrepreneur in the fall.

THE COURT:  So, the Entrepreneur does assert

contributory infringement as well as a claim based on just the use of the works for training the models?

MS. HARTNETT:  It has all three of the aspects that you were talking about.

THE COURT:  All three theories of liability?

MS. HARTNETT:  Correct.  And we do think that they -- the other one -- and I don't want to get too much in the weeds but we really have given this some thought -- there are two depositions that are currently scheduled to complete the fact discovery for our case, for Kadrey.  We would propose having those coordinated with Entrepreneur because they are going to probably want to take those depos too.  Right now they say they are not yet -- they are not here to speak to it -- but I can represent they say they feel like they need more time with our discovery to be able to participate in those depos if they agree to do so.

So there is a four-hour deposition of Shuwan Huang, one of the engineers, that's scheduled for February 20th; and then we have a 30(b)(6) that's scheduled for next Friday.  So, I think what we would propose would be to allow -- basically have Kadrey be done with their fact discovery on the 27th subject to them participating in coordinated depositions with Entrepreneur for those two witnesses.

And then get everybody on the same track to do expert discovery, which would be here before we know it, in September

and then summary judgment.

And the reason why we don't think class should happen now -- first of all, we did consent to the one-way intervention objection kind of on the premise that we wouldn't be doing class cert at the same time; that we would be focused on that -- we do have some of the concerns that you expressed too about how this would shuffle out in terms of us being able to get a full release and clarity on the -- our liabilities if they are purporting to try to represent a class of people that includes people that are on claims they have already lost on.

So, we think the right orderly thing to do would be -- and the Entrepreneur is going to be super busy.  Get that done.  Get everybody on the same expert track.  Have summary judgment early next year and then --

**THE COURT:**  But if -- especially if we are going to be delaying summary judgment in the Kadrey case, what would be wrong then with Mr. Panuccio's proposal of proceeding sort of along the same track with class certification briefing, and then I rule first on summary judgment and then rule later -- later rule on class certification, just if for no other reason to avoid further delay in the case?

**MS. HARTNETT:**  Well, I think it is not ripe right now because we haven't actually done class discovery.

And so, I think their brief and their premise would be, oh, we can just kind of brief this now and we don't need more.

They actually say in their brief that their claim is based on this notion that Meta uniformly made available, copied and distributed members' works.  That's actually not the case.

There were three different episodes -- main episodes of torrenting that have been alleged.  And for each of those, there's different numbers of the Plaintiffs' files in there. So, it is actually going to require an extensive expert analysis, not just to figure out the theory of liability with is it enough to have a probability of a distribution but also, like, which individual Plaintiffs, you know, were or weren't part of this; and is there actually adequate representation.

So, we would respectfully submit there would be -- we are not going to over do it but, like, there is considerable class discovery and expert work that would have to happen before you could actually have briefing on that issue.  That's why all these cases like *Anthropic* had class discovery before they had class cert briefing.  So, we just --

THE COURT:  Right.  I mean, I'm not -- sorry, I wasn't suggesting there would be any further class discovery before class cert briefing.

MS. HARTNETT:  Oh, okay.

THE COURT:  I was just saying why -- why wouldn't we -- if we are going to be delaying summary judgment in Kadrey by that long -- given how long the case has already dragged on -- we could mitigate the effects of that delay that you are

proposing for summary judgment by opening class certification discovery and doing class certification briefing sort of simultaneously or, like, immediately after summary judgment.

**MS. HARTNETT:**  I had understood the proposal to be moving straight to class cert briefing, which we would -- sorry.

**THE COURT:**  And maybe I misunderstood the proposal, but in my head I was thinking that we would open up class cert discovery and then do the briefing.

**MS. HARTNETT:**  Your Honor, I do think it would be worth briefing that -- sorry.  I do think it would be worth briefing that.  The effect on the potential class of having them --

**THE COURT:**  Did you tell her to slow down?

**MS. HARTNETT:**  Yet again.

**THE COURT:**  It's useless.  Don't bother.

**MS. HARTNETT:**  Sorry, I have a lot to say.  I think that it would be helpful to brief that point to you first.  I do think it could end up being just a waste of resources particularly if Your Honor -- as it's predicting -- somebody comes in to try to do a full class right now, they only could be seeking to represent the distribution group if you deny amendment.  And, therefore, it would be kind of partial class discovery that could end up being wasted effort especially, A, if we win on summary judgment; B, some other development

happens where there is fuller class discovery.  So, we actually --

THE COURT:  Let me just clarify.  Mr. Panuccio, without giving me argument, is that what you are proposing is opening up class discovery and doing class cert briefing or were you proposing just doing class cert briefing?

MR. PANUCCIO:  Thank you, Your Honor.  I think we would do both, but I think the -- I think in our view --

THE COURT:  What you are proposing in your motion.

MR. PANUCCIO:  Opening up class certification discovery and then class cert briefing.  But in our view because there is so much overlap between, you know, if Meta fully completes the liability discovery, class discovery may have some cleanup issues around it; but we don't think it needs to be particularly long.

THE COURT:  Okay.  So, they are contemplating opening up class cert discovery.  And I know you dispute the assertion that it would just be a little --

MS. HARTNETT:  Also, they have said they need very little.  And so, I'm just picturing -- I think that's really our concern, Your Honor.  We are trying our best to now meet the demands of the Entrepreneur case.  We will do that.  But if it is just -- it can turn into a huge -- another huge endeavor with a lot of tangents that aren't productive, and I think that's our main concern of having that happen.

So, if there is some free-for-all class discovery versus the purportedly limited discovery they claim to have needed to try to get you to allow it, I guess I would at least request that we be able to brief it further the effect of, like, whether they would actually be able to -- I think their class definition currently, for example, purports to include not just the distribution claim but the other theories.  That's the -- the amended one, they also purport to go beyond Llama.

So, I think it would just be helpful for Your Honor to probably have a little more sense of what the impact would be. I really do think it would be a potentially wasted effort if at the end of the day the odds of certification are --

**THE COURT:**  Do you have any thoughts about that question, about this issue of the Plaintiffs -- the named Plaintiffs filing a motion to certify a class that would only be able to pursue one of the three potential theories of liability relating to the use of copyrighted works for training large language models?

Like, would the class -- would the class members be able to turn around and bring another case -- the absent class members -- based on the training theory or the contributory infringement theory?

**MS. HARTNETT:**  I think I would want to consult further with my team.  I know there is just the issue -- usually this is resolved --

THE COURT:  You didn't look it up on AI when I asked the question to Mr. --

MS. HARTNETT:  I don't do my research that way.  No, I think the question would be normally in a settlement -- a class action settlement, you end up if it is a narrower scope of what's being -- it would be in the scope of the release, and it would get resolved that way if it were actually to go to judgment.

THE COURT:  Certainly I would never approve a settlement -- unless the law precluded me from carving it out, I would never approve a settlement that did not give class members the ability to pursue the two theories that the Plaintiffs didn't adequately pursue; right.

MS. HARTNETT:  Well, I think -- again, I don't want to get ahead of the actual class cert briefing -- but to the extent --

THE COURT:  But all of this stuff is relevant to the type of schedule we adopt, I think.

MS. HARTNETT:  By their account, the class cert discovery would be relatively truncated.  I think it could just happen after the summary judgment and that really could save everyone time and effort given the risk here; that there might not even be a class to certify for adequacy reasons if there was an amendment that was made -- was, you know, denied for being too late, whatever the other issues might be.

There is going to be actual serious issues of commonalty with respect to the distribution class given how the -- it wasn't one big distribution one day.  It was lots of -- a few different events.

And so, I do think there were -- we don't want to get ahead of things here -- but I think the point is that under their account, it is going to be able to be completed quickly. We should be able to get through summary judgment in both cases.  It is going to be a lot of work to get that done.

And then if we have a live claim, they can at that point take the quick discovery if they want to have a class certified.  We did agree to one-way intervention not applying here under your practice on the premise that we would be doing merits first.  I know --

**THE COURT:**  And we will.

**MS. HARTNETT:**  I know.

**THE COURT:**  You know, there would certainly be a merits ruling first.  I'm just asking in light of all the delays, like --

**MS. HARTNETT:**  No.  I appreciate we are also asking to put a few months before the expert report but I just think in the matter of -- like, the same rationale underlying your general practice would apply here.  And, again, I just -- you have seen how this has gone.  We have tried our best and we are continuing to do that and try to meet the February 27th

deadline.

But the idea of having class discovery for a third of a case happening at the same time that we are trying to really get discovery done in Entrepreneur sounds like that may not be the most efficient use of time particularly if we end up with *Carreyrou* before the Court too.

THE COURT:  Well, you know, the group of lawyers you have grows every time you come in here.  Can't you just --

MS. HARTNETT:  I think we have hit the end of the bench, so I think we are --

THE COURT:  When did you say these depositions were?

MS. HARTNETT:  One is next Friday, the 13th and one is the following Friday, the 20th.

THE COURT:  And what about the class -- talk to me about the class composition.  As I sit here, I'm not remembering how the current proposed class composition differs from the amended complaints -- the proposed amended complaints proposed class composition.

MS. HARTNETT:  So, you mean for the new proposal?

THE COURT:  Yeah, what we have now versus what they want it to be.

MS. HARTNETT:  Well, right now what we have was they have -- so, we have had all persons or entities -- this is the third amended complaint.

THE COURT:  Yeah.

**MS. HARTNETT:** -- domiciled in the U.S. that own a copyright in any works -- so, not limited to books or written works.  Now they have tried -- that is one change -- that was -- or that was used by Meta in the process of LLM training including but not limited to the training of the Llama models.

So, the thing they did with the third amendment was they broadened it beyond Llama, which we thought was not -- we reserved our rights on that.  And now what they are trying to do is expand that to more expressly include the distribution, but it still includes any otherwise reproduced in connection with LLM.

So, essentially what I think they are trying to do in the fourth amended complaint is to have it be written works, uploaded, offered, made accessible or otherwise reproduced; so, kind of a reproduction plus distribution class.  And then they do add some limitations aligning with the *Anthropic* settlement about registration.

**THE COURT:**  Okay.  I would think that as it relates to the claim for copyright infringement during the training of the models, that that would be a grossly overbroad class because, as discussed in my ruling, like, there are major differences between these fiction writers and other types of creators.  There are even differences between fiction writers.  And, you know, there's Sarah Silverman, who wrote a memoir, and all of that stuff; right.

I would think that the class definition would need to be a lot more limited for that claim. But for the distribution and contributory infringement claims, I'm not sure any of that stuff -- any of those differences matter. Do you have a reaction to that?

**MS. HARTNETT:** Our sense -- I mean, we don't want to -- we think something more appropriate -- and I think we had this in our paper -- would be if it is remaining in the case, it should be some class about distributing works via torrent in conjunction with Meta's development of Llama. That would be the right idea if that were to be --

**THE COURT:** But as far as what types of works, you agree it wouldn't really matter because it is about distribution of copyright protections.

**MS. HARTNETT:** No. I think all discovery in this case has been about written works or books. So, that would not be subject to discovery. And just for the record, I'm not agreeing that would be an appropriate class. It's just more that that would be at least tailored to what's left in the case in an effort to get certification.

**THE COURT:** Right. Okay. That makes sense. Okay. Anything else -- any other thoughts or --

**MS. HARTNETT:** No. I mean, we are happy to submit a proposed schedule or something concrete to help gel the deadlines because we were looking ourselves. They are coming

soon.

**THE COURT:** Yeah, why don't you -- why don't you submit -- well, let's talk about what you will submit after I hear from Mr. Panuccio, the last word.

**MS. HARTNETT:** Understood.

**MR. PANUCCIO:** Thank you, Your Honor, I want to make just a few points in rebuttal.

First, I will just repeat something I said in my opening which is on the amendment issue, the case law -- and we outline in our briefs -- is that delay alone is not enough.  You have to have delay plus prejudice, and I want to point out I don't think Meta has made a showing of prejudice and here is why -- I would like to make three points on that.

First, even as we stand here today, Meta is still disclosing hugely important new evidence on torrenting.  Just to give the Court a preview -- and it happened after our briefing -- on Saturday, just this past Saturday, we got a letter from Meta that said for the first time that -- well, let me step back.  You may remember the last hearing -- I looked back at the transcript -- what Meta said was they worked very hard to disclose everything to us.  And they used the term "we have bottomed it out and there are only three Meta employees who were ever involved in torrenting and ever torrented." That's what they told us at the last hearing.

Since then we have learned two things.  One, there

actually were at least two additional Meta employees who were engaged in torrenting.  That was disclosed for the first time in recent days.

And, two, on Saturday they told us up to nine terabytes of torrented files or torrenting related files were deleted by a Meta employee after the filing of this complaint.  We just learned that.

So, for Meta to say that they have prejudice from an amendment when they are still, even at this late date, disclosing to us hugely relevant torrenting evidence of potential spoliation, of additional employees, I think those two things don't track.

Two, on the Entrepreneur Media point, my friend said, you know, we are going to have all this new discovery with Entrepreneur.  I want to focus in on the claim we still have. The claim we are litigating here is the uploading claim.  That involves the evidence of torrenting.

We have requested -- and Meta has said it will produce by the end of February and we will take them at their word -- all of the evidence related to torrenting.  So, that would include necessarily Entrepreneur's, you know, lone company claim.  If they have Entrepreneur's works, it is going to be included in that.  And the Court has already said Entrepreneur will get all of the discovery we have on the uploading issue.

So, it is not clear what the inefficiency is that they are

pointing to that they would have to deal with both at once because presumably if we take them at their word, they are producing to us everything.

THE COURT:  Well, and that makes sense as to document production, I think.  But what about these depositions that Ms. Hartnett is talking about?

MR. PANUCCIO:  The upcoming depositions?

THE COURT:  Yeah.

MR. PANUCCIO:  And I'm sorry.  Just, the issue?

THE COURT:  The idea that Entrepreneur Media -- you know, the idea is that Entrepreneur Media would participate in those depositions and they would count for the Entrepreneur Media case if the lawyers in Entrepreneur Media are given a little bit more time to get up to speed with the discovery they are receiving.

MR. PANUCCIO:  Well, I think we can -- I think we can work with those lawyers.  And if we are going to submit briefings after this on what the best schedule, we can figure that out.  I mean, I think there is a reasonable -- I certainly don't think it takes until the fall -- which, I believe, is what my friend was suggesting -- that we sort of finish our discovery -- I mean, it was sort of like a backdoor motion for stay.

THE COURT:  I don't know if she was suggesting delaying those depositions to the fall.  I think she was --

**MS. HARTNETT:** No.

**THE COURT:** I think she was suggesting delaying expert reports to the fall if I remember correctly.

**MR. PANUCCIO:** Yeah, I mean, I don't think we need to push it that long. I mean, we can certainly meet and confer on a reasonable schedule, Your Honor, and we can include Entrepreneur on that. I don't think we need to delay that long on these things to get this done efficiently especially since, again, Entrepreneur is going to travel under what we have done already and can be brought up to speed on that pretty quickly.

**THE COURT:** Okay. Anything else?

**MR. PANUCCIO:** Yes, I just want to note -- and I think this came out -- that our motion to amend -- the Court has been focused on the contributory infringement claim. There are other things in the motion to amend, and I just want to make sure whichever way the Court goes on the contributory infringement, the others are --

**THE COURT:** The stuff about conforming it to the class composition and *Anthropic*. Is that what you are talking about?

**MR. PANUCCIO:** Yeah. So, there were really four amendments essentially. There is the claim for contributory infringement. There is the class definition.

And on that, either way, you are going to get to it -- a class definition because you either do it in class cert briefing or you can do it in the complaint, but that's -- we

were cleaning it up now.  There is the loan-out companies, and then there is just some additional allegations to conform to the evidence that has come out on uploading since the last amendment.

THE COURT:  That last part isn't really necessary, though, is it?  I mean, if you only had that, you wouldn't be moving to amend the complaint, would you?

MR. PANUCCIO:  I think that's probably right, Your Honor, but given that we were doing it, you know, we think it adds important -- it adds to the complaint; but I think that's right.  If it were only that, we probably wouldn't have moved.

And then the last thing I wanted to add is if everything is getting pushed back anyway -- if that's what ultimately comes out of this -- then Meta's claim to prejudice truly falls away because they will have time -- we don't think they need additional discovery.  If they say they do, they will have the time to do that.

So, if what's being contemplated here is we are not going to finish at the end of February -- and that is going to be pushed out -- then it's really hard to see what Meta's claim to prejudice is other than the standard prejudice that every corporate defendant -- the standard burden that every corporate defendant has, which is to have to litigate more than one case and issues at once; but the cases are pretty uniform that that

is not prejudice that overcomes the right to amend.

**THE COURT:**  Okay.  Here is the -- go ahead.

**MS. HARTNETT:**  Sorry.  I just wanted to make two quick responses.

**THE COURT:**  I'm not going to issue a definitive ruling.  I was going to give you my tentative thinking and then give you a chance to file one more set of briefs.  But, go ahead.

**MS. HARTNETT:**  Just on the loan-out because we had focused on the contributory part of the amendment --

**THE COURT:**  Part of the what?

**MS. HARTNETT:**  The loan-outs are the companies that the authors use -- they have added three loan-out Plaintiffs -- they seek to add three -- those were all known to them from the fact discovery in the fall of 2024.

**THE COURT:**  I have no doubt.

**MS. HARTNETT:**  We haven't actually -- we have had some incidental discovery of those loan-outs in the course of the Plaintiffs' deposition.  We have not directed discovery directly at the loan-outs.  So, we would need discovery on those if they were added, and that would actually create some issues of do they have standing; do the Plaintiffs they are associated with have standing; who is the rights.  Those are actually important questions.  And a couple of those didn't move for summary judgment probably for that reason.

So, we actually would need discovery and don't think that should be allowed for the same reasons the contributory shouldn't. There hasn't been spoliation. I am just not going to engage in this now until we get to a point of if there's actually a conflict. We are meeting our obligations. We have voluntarily chosen to produce more documents to them, and we will continue to do that through February 27th.

And on the point about whether we are just trying to foot drag, that's not actually the point. It is actually to have coordinated expert discovery, which would actually be efficient for everybody including the Court.

**THE COURT:** I think the -- you know, the idea that if -- coordinated expert discovery makes a lot of sense, I think. It seems to me that one very reasonable ruling is motion to amend the complaint is denied. You could have thought of this a long, long time ago -- all of this stuff a long time ago. You didn't, and it's -- you are done now.

And, you know, whatever result you get in this case is the result you are going to get. If it means class certification is going to be denied, fine. If it means you are proceeding on a flawed infringement theory relating to the uploading, fine. You are just done; right. That would be an entirely reasonable ruling at this point in the case.

On the other hand, you know, I think your proposal of coordinating the expert stuff makes a lot of sense. And to be

perfectly candid, particularly because of the number of the deficiencies in the Kadrey Plaintiffs' presentation in this case up until now, it makes a lot of sense to sort of coordinate everything going forward to make sure we have a full record on these issues.

But once we have made -- if we make the decision to push stuff back and coordinate, then the case for not allowing them to amend their complaint to add contributory infringement and to, you know, conform the class composition to the *Anthropic* case and all of that stuff becomes weaker, I think.

**MS. HARTNETT:**  Your Honor, I think -- so, on the conforming amendment for the class, that will just get decided when you have a class certification brief.

**THE COURT:**  Yeah.

**MS. HARTNETT:**  So, that kind of falls out --

**THE COURT:**  Yeah, that's fair.

**MS. HARTNETT:**  It's really a question of should they be able to add a late claim?  Should they be able to add three loan-outs that they should have added a year ago?

I think from our perspective, this has created a lot of extra work that could have been avoided in terms of just getting the right pleading the first time.

We would respectfully submit that it actually would be a reasonable decision to deny the motion to amend.  Let them take the final two depos with Entrepreneur.  Let Entrepreneur do its

discovery, which may involve additional distribution discovery than what these Plaintiffs have sought.  We will try -- we hope not.  It is possible.  And then have everyone do expert reports based on their record in the fall.  You will have everything before you.

And we really do believe that the class cert discovery would ultimately be a waste of party and judicial resources because it's going to be a third of a case that shouldn't be certified.

**THE COURT:**  Well, that sort of depends; right.  I mean, that depends on the consequences of class certification for the absent class members as it relates to the two theories that aren't part of the case.

**MS. HARTNETT:**  Which we would like to -- I don't want to give an inaccurate answer on that.  I have thoughts but I don't know if they are correct.

**THE COURT:**  Okay.  So, here is my -- here is my tentative view sort of coming out of this hearing:  My tentative view is that we should delay things as Meta has proposed including those two depositions to allow -- I have to say, I'm a little bit annoyed that Entrepreneur Media is not here.  Obviously this discussion affects them.  They were aware of this hearing, and I'm a little annoyed and a lot surprised that they are not here to participate in the discussion.

But in any event, I think it makes a lot of sense to delay

things a little bit in this case to allow all of the expert stuff to proceed on the same track in the two cases and possibly even the three cases, right, because there may be a third one coming.  And that includes the two depositions.

On the issue of opening up -- on the issue of allowing them to amend the complaint, frankly, I'm kind of undecided; and I think the issue is if the -- you know, if we are going to have this delay that we are talking about, which seems to make sense, like, does that substantially diminish the prejudice that Meta would suffer from this excusable delay in seeking to amend the complaint?

I think the delay is inexcusable.  That I can tell you. And if so -- if the law says that when the delay is inexcusable, then that means they are not allowed to amend, then that is the end of the matter.

If instead, you know, the law says that I can give them grace despite their inexcusable delay, then maybe it does make sense to allow them to amend their complaint in at least part of the way they've proposed given that we are already going to have this delay.

And then I'm undecided on opening up class certification discovery, and I think that part of it depends on what are the consequences for the class, the absent class members, of proceeding without one of the key theories or potentially two of the key theories of copyright infringement.

And, as I said, if the proposed class members are foreclosed from pursuing -- you know, would be foreclosed by a judgment in this case from pursuing the other theories of copyright infringement, I think that is reason alone to deny class certification. And so, it might even be appropriate for Meta to file a motion to deny class certification although those are disfavored, and I almost always deny those out of hand.

So, what I would like to do is get briefing on that in time for me to decide what the schedule is going to be, which means before these -- when is the first deposition, the 15th, you said?

MS. HARTNETT: Next Friday, the 13th.

THE COURT: Next Friday. Is that like un -- I don't know. You guys got a lot of lawyers. You can probably do it.

MS. HARTNETT: It is the deponent's schedule. I think that was his availability date. It was a 30(b)(6). That's the reason why that one is on the 13th.

THE COURT: So, the 13th. And when is the next deposition?

MS. HARTNETT: The 20th.

THE COURT: The 20th.

MR. PANUCCIO: May I offer something, Your Honor?

THE COURT: Yeah.

MR. PANUCCIO: You know, I think in the course of this

hearing, the Court has rightly raised important questions and issues, some of which are in the briefing we -- the parties submitted already and some of which are not fully briefed yet; these issues about the intersection between class certification and rights of the class.

And I think as the Court recognized earlier, the schedule intertwines with that. You know, the Court already denied the stay but what we are kind of getting is a little bit of a backdoor stay because what they are saying -- and this was in their papers -- well, just let them finish the discovery and put the case on ice until we finish with Entrepreneur.

So, what I would ask -- and it sounds like the Court is inviting some briefing -- that we do try to take all of these questions that were raised today and give considered answers with case law research, you know, in a supplemental brief or in a new brief. We can meet and confer a bit on scheduling and then get that to the Court because I do think that the Court has raised a few questions that just fairly I don't think either side briefed in what's before the Court right now.

**THE COURT:** Right. So, how does that -- that's fine but how does that affect the depositions that are coming up in a week?

**MR. PANUCCIO:** Well --

(Pause in proceedings.)

**MR. PANUCCIO:** So, Your Honor, I think we would be

okay moving the deposition because, as I mentioned, we are still getting productions that are relevant to the deposition. So, I think if we gave some relief on that, we get considered, careful briefing by both sides.  And then go from there. Again, these questions are important enough that I think some writing would inform both us and the Court.

THE COURT:  Okay.

MS. HARTNETT:  Your Honor, sorry, just to make sure I understand the scope -- because I actually think the real unanswered question is just the effect of a class cert order -- and would the -- you know, would the class members be bound on the other two claims if those claims don't go forward?  That seemed to be the question at issue.  And so, I just -- I'm a little concerned about re-arguing things that we actually do think we briefed fully.

THE COURT:  Well, so, I think the other thing that would be worth discussing at a minimum is, all right, they have had their chance to explain why the delay was excusable, and I'm finding here today that the delay was inexcusable.

So, in light of the fact that the delay was inexcusable, how does that -- and in light of the fact that we will be pushing -- will likely be pushing back the schedule anyway, right, how does that affect the analysis of whether I should grant the motion to file an amended complaint?

MS. HARTNETT:  That makes sense, Your Honor.  Thank

you.

THE COURT:  And then, you know, anything else you want to say, you know, about the relationship between this case and the Entrepreneur Media case and this potential new case and how it affects scheduling, you are welcome to say that -- to talk about that as well.

MR. PANUCCIO:  I presume we would, as part of all this then, the sum at the end would be, and so, therefore here are our scheduling joint proposals.

THE COURT:  Yeah.

MR. PANUCCIO:  Yeah, right.

THE COURT:  And so, so why don't we have -- and I think it is always better to do sequential rather than simultaneous briefing.  So, why don't we have the -- Meta file its brief on the 13th.  Would that be okay?

MS. HARTNETT:  Yes.

THE COURT:  And then the Plaintiffs can file theirs on the 20th.

MR. PANUCCIO:  Thank you, Your Honor.

THE COURT:  Since you don't have those depositions on those days anymore.

MR. PANUCCIO:  Thank you, Your Honor.

MS. HARTNETT:  Just so Your Honor has it, the new case is 25-CV-10857.  It's *Carreyrou*, C-A-R-R-E-Y --

THE COURT:  What is the Plaintiff?

**MS. HARTNETT:** John Carreyrou.  It is an author.

**THE COURT:** Okay.

**MS. HARTNETT:** C-A-R-R-E-Y-R-O-U.

**THE COURT:** Okay.

**MS. HARTNETT:** Are we able to submit a reply or --

**THE COURT:** No.  I think that's -- I will ask for one if I need one.

**MS. HARTNETT:** Okay.

**THE COURT:** I think that's probably all I will need.  Okay.  Is there anything else we should be discussing?

**MR. PANUCCIO:** Thank you.  That's all, Your Honor, from us.

**THE COURT:** Okay, thank you.

**MS. HARTNETT:** Thank you.

**THE CLERK:** Court is in recess.

(Proceedings adjourned at 11:26 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   February 8, 2026

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter