DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
JESSICA PHILLIPS (*pro hac vice*)
(jphillips@dirllp.com)
KYLE N. SMITH (*pro hac vice*)
(ksmith@dirllp.com)
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 240-2900

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:    (310) 883-6400

KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone:    (650) 815-4131

*[Full Listing on Signature Page]*

*Counsel for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>                        Defendant. | Case No. 3:23-cv-03417-VC-TSH<br><br>**DEFENDANT META PLATFORMS, INC.'S FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE PER DKT. 675**<br><br>Judge:    Vince Chhabria<br>Trial Date: None<br>Date Action Filed: July 7, 2023 |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

    A.    PLAINTIFFS' PROPOSED AMENDMENT SHOULD BE DENIED
          BASED ON THE COURT'S FINDING OF INEXCUSABLE DELAY. ............. 3

    B.    CLASS CERTIFICATION RISKS ABSENT CLASS MEMBERS BEING
          BARRED FROM PURSUING NON-DISTRIBUTION CLAIMS AND
          RISKS RESTRICTING ANY SUBSEQUENT STATUTORY DAMAGES
          CLAIMS. ................................................................................................. 6

        1.    Granting Class Certification Would Bar Absent Class Members
              From Subsequently Asserting Non-Distribution Copyright Claims. ......... 6

        2.    Granting Class Certification Would Restrict the Availability of
              Statutory Damages in a Theoretical Future Case. ................................... 11

    C.    META'S ONE-WAY INTERVENTION WAIVER WAS BASED ON
          MERITS LITIGATION PRECEDING CLASS LITIGATION. ......................... 12

    D.    THE KADREY AND ENTREPRENEUR EXPERT AND SUMMARY
          JUDGMENT SCHEDULES SHOULD BE ALIGNED BUT NO
          ADDITIONAL NEW DISCOVERY SHOULD OCCUR IN KADREY. ............. 14

III.  CONCLUSION ................................................................................................. 14

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. City of Beverly Hills,*
  911 F.2d 367 (9th Cir. 1990) ............................................................................. 4

*Ascon Properties, Inc. v. Mobil Oil Co.,*
  866 F.2d 1149 (9th Cir. 1989) ........................................................................... 5

*Authors Guild, Inc. v. Google Inc.,*
  721 F.3d 132 (2d Cir. 2013) ............................................................................ 13

*Baumann v. Chase Inv. Servs. Corp.,*
  747 F.3d 1117 (9th Cir. 2014) ..................................................................... 7, 10

*Brown v. Ticor Title Ins. Co.,*
  982 F.2d 386 (9th Cir. 1992) ............................................................................. 7

*Cancilla v. Ecolab Inc.,*
  No. 12-cv-3001, 2014 WL 2943237 (N.D. Cal. June 30, 2014) (Breyer, J.) .......... 8

*Clark v. Bear Stearns & Co.,*
  966 F.2d 1318 (9th Cir. 1992) ........................................................................... 7

*Cooper v. Fed. Reserve Bank of Richmond,*
  467 U.S. 867 (1984) ......................................................................................... 7

*DCD Programs, Ltd. v. Leighton,*
  833 F.2d 183 (9th Cir. 1987) ............................................................................. 4

*Desire, LLC v. Manna Textiles, Inc.,*
  986 F.3d 1253 (9th Cir. 2021) ..................................................................... 11, 12

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003) ........................................................................... 10

*Hollis v. Santa Barbara Cty. Sheriff's Dep't.,*
  No. 20-cv-2168, 2021 WL 4798652 (C.D. Cal. July 12, 2021) ............................ 8

*Int'l Union of Operating Engineers–Employers Constr. Indus. Pension, Welfare
  and Training Trust Funds v. Karr,*
  994 F.2d 1426 (9th Cir. 1993) ........................................................................... 7

*Johnson v. Mammoth Recreations, Inc.,*
  975 F.2d 604 (9th Cir. 1992) ............................................................................. 3

*Kamal v. Eden Creamery, LLC*,
   88 F.4th 1268 (9th Cir. 2023) ............................................................................................ 4

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) .............................................................................................. 5

*Krueger v. Wyeth, Inc.*,
   No. 03CV2496 JLS (AJB), 2008 WL 481956 (S.D. Cal. Feb. 19, 2008) .............................. 10

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   658 F.3d 936 (9th Cir. 2011) ............................................................................................ 12

*Media Rights Techs., Inc. v. Microsoft Corp.*,
   922 F.3d 1014 (9th Cir. 2019) ....................................................................................... 8, 9

*Mpoyo v. Litton Electro-Optical Sys.*,
   430 F.3d 985 (9th Cir. 2005) .............................................................................................. 8

*O'Brien v. Sky Chefs, Inc.*,
   670 F.2d 864 (9th Cir. 1982), *overruled on other grounds by Atonio v. Wards
   Cove Packing Co., Inc.*, 810 F.2d 1477 (9th Cir. 1987) ...................................................... 10

*Piatt v. Money Store*,
   819 Fed.Appx. 477 (9th Cir. 2020) (unpublished) ......................................................... 7, 10

*Royal Insurance Company v. Southwest Marine*,
   194 F.3d 1009 (9th Cir. 1999) ............................................................................................ 4

*Save Bull Trout v. Williams*,
   51 F.4th 1101 (9th Cir. 2022) ............................................................................................. 9

*Schneider v. YouTube LLC*,
   674 F. Supp. 3d 704 (N.D. Cal. 2023) ............................................................................... 11

*In re Teflon Prods. Liab. Litig.*,
   254 F.R.D. 354 (S.D. Iowa 2008) ...................................................................................... 10

*Thompson v. Am. Tobacco Co.*,
   189 F.R.D. 544 (D. Minn. 1999) ....................................................................................... 10

*United States v. Liquidators of European Federal Credit Bank*,
   630 F.3d 1139 (9th Cir. 2011) ............................................................................................ 8

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) .............................................................................................. 4

**Statutes**

17 U.S.C. § 504(c)(1) ......................................................................................................... 11

Cooley LLP
Attorneys at Law

iii

Def. Meta's Further
Briefing Per Dkt. 675
3:23-cv-03417-VC-TSH

**Other Authorities**

Fed. R. Civ. P. 15 ............................................................................................................. 1, 4, 5

Fed. R. Civ. P. 16 ................................................................................................................. 1, 3

Fed. R. Civ. P. 23 ............................................................................................................... 11, 13

Fed. R. Civ. P. 30(b)(6) ........................................................................................................... 14

# I.    INTRODUCTION

Defendant Meta Platforms, Inc. respectfully submits this brief in response to the Court's request for further briefing and a proposed case schedule at the February 5, 2026 hearing.  *See* Dkt. 675 (minute entry for 2/5/26 hearing); Dkt. 680 (2/5/26 Tr.).

This brief addresses the following two questions posed by the Court:  (1) whether the Court's finding that Plaintiffs inexcusably delayed seeking leave to file a Fourth Amended Complaint bars their proposed amendment, even if the Court aligns the expert and summary deadlines in this case with those in *Entrepreneur*, which would allow Meta time to take additional discovery on any new amendments (2/5/26 Tr. at 59); and (2) whether members of Plaintiffs' proposed class would be barred from pursuing a training claim (which Plaintiffs have already lost on summary judgment) and a contributory infringement claim (on which amendment may be denied) after judgment is entered (*id.* at 59-60).  This brief places answers to these questions in context and addresses the Court's request for a proposed schedule.

With respect to the first question, the Court's finding of inexcusable delay alone bars Plaintiffs' proposed amendment because Rule 16, not Rule 15, applies to Plaintiffs' motion, and under Rule 16 a lack of diligence is dispositive.  And even if Rule 15 applied, amendment should be denied because Plaintiffs' inexcusable delay and repeated prior amendments are sufficient to deny leave to amend.  Meta also would be prejudiced by any amendment, even if it were permitted to take discovery, because the Ninth Circuit recognized that the undertaking of such additional discovery is itself prejudicial.  As a result, no amendment should be permitted.  Finally, if the Court allows Plaintiffs' amendment, Plaintiffs should be held to their unequivocal representation that they need no new discovery (other than potentially a single piracy expert report),[1] with discovery on the new amendments being limited to discovery that *Meta* pursues on the new claims and parties.

---

[1] Plaintiffs stated in their Motion for Leave that they "do not intend to seek new fact discovery on their amended claim and seek leave only to add one additional expert to provide testimony on the online piracy ecosystem."  Dkt. 658 at 2.  Notably, Plaintiffs made a similar assertion in their Motion for Leave for the Third Amended Complaint.  Dkt. 300 at 6-7 ("If the claims are added, Plaintiffs will not seek to initiate any additional discovery.").  As the Court is aware, Plaintiffs sought extensive discovery after the Third Amended Complaint was allowed.

With respect to the second question, the best reading of the caselaw is that if the Court were to certify the proposed class and the class case proceeds to judgment, then under fundamental principles of claim preclusion, class members would be barred from bringing claims for infringement based on training or for contributory copyright infringement. Accordingly, the judgment in this litigation as to named Plaintiffs would bind any certified class as to *all* claims that could have been brought (or were brought) in this litigation, including the already-defeated reproduction claim. In addition, under the Copyright Act, a copyright owner is entitled to a single award of statutory damages per *work* infringed, irrespective of the number of copies made or distributed or how many exclusive rights under Section 106 are violated. If the named Plaintiffs' remaining distribution claim survives summary judgment, and a class were thereafter certified, class members would be limited to the single statutory damage award for that claim (which could potentially be lower than it might otherwise have been had reproduction remained in the case) and could not thereafter pursue or recover an additional, separate statutory damages award for alleged training or contributory infringement in future litigation. Given these serious adverse consequences for putative class members of any class certification order limited to distribution (or even including both distribution and contributory infringement, but not training), the Court has correctly observed that there will be weighty barriers to class certification in this matter.

And that is in addition to the other major obstacles to certification here, including the lack of commonality, typicality, or predominance (given that each Plaintiff's and class member's work would require its own probabilistic analysis of distribution under Plaintiffs' claimed theory of liability), and the inadequacy of class counsel. As a result, Meta respectfully submits that any order of class certification is highly unlikely, and, moreover, would involve questions that need not be reached if Meta prevails on the merits of Plaintiffs' distribution claim at summary judgment. Thus, there is no good reason to allow class discovery to occur now.

Finally, Meta agreed to waive its objection to the rule against one-way intervention—allowing the merits of Plaintiffs' claims to be resolved first—because that allowed for the efficiency of not conducting class discovery and certification proceedings unless (and until) Plaintiffs' claims survive summary judgment. *See* Judge Chhabria's Civil Standing Order, Para. 52. Meta

respectfully submits that it would be deprived of the benefits of its waiver if class discovery and certification briefing now proceed concurrently with the merits. The proposal to align the expert and summary judgment deadlines in *Kadrey* and *Entrepreneur* makes sense as a matter of economy and efficiency; it also does not prejudice Plaintiffs as there are no allegations of ongoing distribution, and thus all that is at stake is potential money damages with respect to conduct from years past. If any class discovery or briefing is allowed, Plaintiffs should be held to their clear representation that "the sole remaining class-specific fact discovery Plaintiffs seek from Meta will be the list of works it torrented from the Sci-Mag portion of LibGen in 2023." Dkt. 668 at 5.[2]

## II.    ARGUMENT

### A.    PLAINTIFFS' PROPOSED AMENDMENT SHOULD BE DENIED BASED ON THE COURT'S FINDING OF INEXCUSABLE DELAY.

At the February 5, 2026 hearing, the Court made a finding that Plaintiffs' delay in seeking leave to file the Fourth Amended Complaint was inexcusable. 2/5/26 Tr. at 62 ("I'm finding here today that the delay was inexcusable."). That finding is sufficient to bar Plaintiffs' proposed amendment. As Meta explained in its opposition brief (Dkt. 670), Rule 16 applies to Plaintiffs' motion because the proposed amendment—if accepted—would necessarily require further modification of the case schedule, including because Meta would require discovery regarding the amendments. *See* Dkt. 670 at 4-5 (citing *Design Data Corp. v. Unigate Enter., Inc*., No. 12-cv-04131 WHO, 2014 WL 4477244 (N.D. Cal. Sept. 11, 2014)). Rule 16 requires a showing of "good cause," which "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, *the inquiry should end*." *Id.* (emphasis added). The Court's finding of inexcusable delay means that Plaintiffs were not diligent and thus that no good cause exists to allow the amendment, which should be denied.

---

[2] Meta notes that Plaintiffs' motion for class discovery misstates the current scope of fact discovery and Meta's agreements to produce, and Meta reserves all rights to object to Plaintiffs' misdescription of the state of fact discovery. If class discovery is permitted, Plaintiffs should be limited to the one category of information their motion asks for (*see* Dkt. 668 at 5), whereas Meta must be permitted the full scope of class discovery relevant to this matter.

In any case, even if Rule 15 governed, the Court should deny leave to amend in light of Plaintiffs' inexcusable delay—notwithstanding that Meta would be able to take discovery on the new claims if expert and summary judgment briefing in *Kadrey* and *Entrepreneur* are aligned on the current *Entrepreneur* case schedule. This is because even though "delay, by itself, is insufficient to justify denial of leave to amend," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987), factors beyond mere delay support a denial of leave to amend here.

The Ninth Circuit considers five factors in assessing leave to amend under Rule 15: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (cleaned up). In *Western States*, the Ninth Circuit affirmed a denial of leave to amend in a class action based on undue delay when, as here, the plaintiff ***also*** had a previous opportunity to amend its complaint but failed to present its proposed new claim at that time—without any reference to prejudice, futility, or bad faith. *See* 715 F.3d at 738 (affirming denial that "relied heavily on the fifth factor," previous amendment); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Likewise, in *Royal Insurance Company v. Southwest Marine*, 194 F.3d 1009 (9th Cir. 1999), the Ninth Circuit affirmed a denial of leave to amend based on undue delay and previous opportunities to amend (without any reference to prejudice, futility, or bad faith). As *Western States* explained, in *Royal Insurance* the Ninth Circuit "relied on the fact that Royal Insurance had knowledge of the relevant facts from the inception of the lawsuit, and also the fact that Royal had twice before amended its complaint, to hold that the district court did not abuse its discretion by denying Royal's motion for leave to file a third amended complaint." *Western States*, 715 F.3d at 739; *see also Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1278-79 (9th Cir. 2023) (explaining that the Ninth Circuit has held that "even under Rule 15's liberal standard, late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action" (cleaned up)).

Here, Plaintiffs previously sought (in November 2024, Dkt. 300) and obtained (in January 2025, Dkt. 389), leave to file a Third Amended Complaint, which, among other things, added a Copyright Act distribution claim based on Meta's alleged torrenting.  In the motion they filed at that time, Plaintiffs argued that Meta's downloading used a torrent protocol that "segment[s]" a large file "in small pieces between a large number of peer-to-peer users," and that typically "users who download via torrent also must upload the same files they are downloading to avoid being banned or forbidden from the site offering the torrent as a 'leech.'"  Dkt. 395, at 5-6.  Although they could have at that time, Plaintiffs did not then seek leave to add a claim for contributory infringement based on Meta's alleged facilitation of uploading by others—an omission thoroughly addressed at the February 5, 2026 hearing.  Nor did they seek to add the three "loan-out" companies they now propose adding as plaintiffs, a lapse for which there is no excuse whatsoever: those entities are related to several named Plaintiffs (though have not themselves yet been subjected to party discovery) and their purported interest in the works was always known to Plaintiffs. And although Plaintiffs' new proposed class definition remains too broad and imprecise, Plaintiffs tellingly offer no reason why they could not have offered it earlier.  In short, all of Plaintiffs' proposed amendments were (1) inexcusably delayed and (2) could have been added as part of prior amendments but were not.  Under these circumstances, denial of leave to amend is appropriate under Rule 15.

Finally, even if Meta were able to take discovery on the new claims if the *Kadrey* schedule is aligned with *Entrepreneur*, Meta will still suffer prejudice under Rule 15 that further justifies denying amendment.  That is so because "[t]o put [defendant] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would cause undue prejudice."  *Ascon Properties, Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1161 (9th Cir. 1989) (cleaned up); *see also Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) ("The parties have engaged in voluminous and protracted discovery....Expense, delay, and wear and tear on individuals and companies count toward prejudice.").[3]  The proposed amendments would require additional

---

[3] Meta's opposition to Plaintiffs' motion for leave to amend did not argue "bad faith" but did note that Plaintiffs' amendment appeared to be prompted by *Entrepreneur*'s recent pleading, rather than

written discovery, new depositions, and Meta is likely to require additional expert testimony to address the new claims.

## B. CLASS CERTIFICATION RISKS ABSENT CLASS MEMBERS BEING BARRED FROM PURSUING NON-DISTRIBUTION CLAIMS AND RISKS RESTRICTING ANY SUBSEQUENT STATUTORY DAMAGES CLAIMS.

### 1. Granting Class Certification Would Bar Absent Class Members From Subsequently Asserting Non-Distribution Copyright Claims.

The Court has raised an important question relevant to Plaintiffs' motion to open class discovery and establish a class certification briefing schedule:  if the Court were to certify a class based on Plaintiffs' lone remaining distribution claim, would a judgment on that claim preclude class members from bringing future copyright actions based on downloading and training on Plaintiffs' works (the claim the named Plaintiffs already lost) or a claim for contributory copyright infringement regarding the alleged distribution (the claim that Plaintiffs belatedly seek to add now)?  Meta respectfully submits that the answer is "yes" under well-established principles of *res judicata*.  And even if there were uncertainty about this answer, the mere possibility that *res judicata* might be deemed to apply as to the previously-defeated or foregone claims weighs against class certification based on lack of adequacy and lack of typicality.  Accordingly, there is no compelling reason to open class discovery and establish a class certification briefing schedule at this time.  Rather, consistent with the current case order, and Meta's settled expectations in waiving the one-way intervention rule, the Court should first adjudicate summary judgment on distribution, and at that point can consider whether there is any possibility the named Plaintiffs could be adequate or typical representatives of the class (and  satisfy other class certification requirements including adequacy of class representatives).[4]

_____

recent developments in *Kadrey*.  *See* Dkt. 670 at 6.  Meta respectfully submits that Plaintiffs' steadfast refusal to acknowledge this reason for the timing of their amendment, *see* Dkt. 673 at 8 n.6, and their shifting explanations at the February 5, 2026 hearing, some of which were demonstrably false, *see* 2026/02/05 Tr. at 5-17, 31-32, further support denial of leave to amend.

[4] If the remaining distribution claim survives summary judgment, the Court can evaluate whether Plaintiffs ought to ask the Court to certify a class, and thereafter disseminate notice to class members.  Notice to the class would presumably need to explicitly inform class members of the prospect that they will be bound as to any claim that could have been brought, effectively binding them to the Court's earlier ruling against Plaintiffs on the reproduction claim and Plaintiffs' failure

1    As the Supreme Court has held, "[t]here is of course no dispute that under elementary

2    principles of prior adjudication a judgment in a properly entertained class action is binding on class

3    members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867,

4    874 (1984). "Basic principles of res judicata (merger and bar or claim preclusion) and collateral

5    estoppel (issue preclusion) apply." *Id.*; *see also Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390

6    (9th Cir. 1992) ("A lawsuit involving the same parties and based upon the same cause of action as

7    asserted in a previous case is barred under the doctrine of *res judicata*." (applying *res judicata* in

8    class action context)).

9    Critically, these "[b]asic principles of res judicata," *Cooper*, 467 U.S. at 874, are not limited

10   to the particular claims that were actually litigated in a first action. As the Ninth Circuit has

11   explained (in a non-class action case), "res judicata bars not only all claims that were actually

12   litigated, but also all claims that 'could have been asserted' in the prior action." *Int'l Union of

13   Operating Engineers–Employers Constr. Indus. Pension, Welfare and Training Trust Funds v.

14   Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) (citing *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th

15   Cir. 1986)); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992) ("Res judicata bars

16   all grounds for recovery which could have been asserted, whether they were or not, in a prior suit

17   between the same parties on the same cause of action."). This principle applies equally in the

18   context of class actions. *See, e.g., Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th

19   Cir. 2014) (contrasting class action cases against Private Attorney General Action (PAGA) cases

20   by noting that "Federal Rules ensure that members of the class receiving notice and declining to

21   opt out are bound by a judgment" and explaining that "*[c]lass action judgments are also preclusive

22   as to all claims the class could have brought*") (emphasis added)); *Piatt v. Money Store*, 819

23   Fed.Appx. 477, 479-80 (9th Cir. 2020) (unpublished) (noting that "'[b]asic principles of res judicata

24   ... apply' with equal force in the class action context," quoting *Cooper*, and holding that *res judicata*

25   from adverse jury verdict in first class action barred new claims under a different theory in second

26   action because claims in second action were "related to the same set of facts" and "could have been

27

28   to timely allege a contributory infringement claim. It is hard to envision why such a notice should
     issue given that it would advise the absent class members of the potential to be forever barred on
     reproduction and contributory infringement claims.

conveniently tried together in the [first] action"); *Cancilla v. Ecolab Inc.*, No. 12-cv-3001, 2014 WL 2943237 (N.D. Cal. June 30, 2014) (Breyer, J.) (holding that *res judicata* resulting from previous class action settlement barred individual claims by employees that were not brought in the prior class action because such claims could have been brought); *Hollis v. Santa Barbara Cty. Sheriff's Dep't.*, No. 20-cv-2168, 2021 WL 4798652, at *2 (C.D. Cal. July 12, 2021) ("Thus, an individual who was a member of a certified class that resulted in a settlement will have his or her claims that were, *or that could have been*, raised in that class action barred by operation of *res judicata*." (italics in original)).

In determining whether a claim "could have been brought" and would thus be precluded under *res judicata*, the Ninth Circuit applies a "transaction test" to determine whether the suits "share a common nucleus of operative fact." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id*. This test is applied "pragmatically," and is "most concerned with the facts or events from which the alleged harms arose." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1027 (9th Cir. 2019). For example, in *Media Rights*, the Ninth Circuit held that a judgment in a prior patent infringement suit barred a subsequent copyright infringement suit relating to the same technology. Although the two suits rested on different legal theories, the court found that there was a common nucleus because both the patent and copyright claims arose from the defendant's allegedly wrongful use of technology it obtained from the plaintiff to create its own product. *Id*. at 1027-28.

Applying these principles here, if the Court were to certify the putative class and enter judgment for that class, a potential future claim by a class member for (1) copyright infringement based on LLM training or (2) contributory copyright infringement based on torrenting would be precluded under *res judicata*. With respect to the training claim, it is not only one that "could have been brought" in this action, but it was ***actually brought*** by the named Plaintiffs as the core initial claim in the case (and then defeated at summary judgment). *See United States v. Liquidators of European Federal Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011) ("Importantly, in most res

judicata cases, the inquiry about the 'same transactional nucleus of facts' *is the same inquiry* as whether the claim could have been brought in the previous action." (italics in original)).  The training and distribution claims involve identical parties and the same works, and both arise out of Plaintiffs' allegations that Meta infringed their exclusive rights in connection with obtaining and using their works as training data for Meta's Llama models.  Moreover, the *downloading* of Plaintiffs' books was part of the training claim found to be a fair use (Dkt. 598, at 21), and Plaintiffs' distribution claim is based on Meta allegedly *uploading* those same books as they were being downloaded.  These claims thus are inextricably intertwined and "form a convenient trial unit that discloses a cohesive narrative," *Media Rights*, 922 F.3d at 1028.  Likewise, Plaintiffs' belated contributory infringement claim (on which amendment should be denied) is the flip side of their distribution claim and thus is plainly part of the same transactional nucleus.  Indeed, as Plaintiffs themselves argued in seeking to amend, "Plaintiffs' contributory infringement claim is based on the same underlying factual conduct as their remaining direct infringement claim—Meta's torrenting of the Asserted Works."  Dkt. 659 at 6.[5]

This outcome comports with the policies that underlie *res judicata*—"protect[ing] against the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (citation omitted).  It would contravene the purposes of *res judicata* if, following any judgment in this action for a certified class on the distribution claim, another action could be brought by others within that class for infringement of the same works based on the factually-interconnected training and contributory infringement claims.  This would represent an enormous waste of judicial and party resources—one that can and should be avoided by eventually denying class certification here.

---

[5] To be clear, Meta is not arguing that preclusion of a future training or contributory infringement claim by absent class members stems from the Court's fair use summary judgment order.  The point is that if Plaintiffs proceed to seek and receive class certification, and then judgment is entered, that judgment would preclude the class members from bringing a training claim or a claim for contributory copyright infringement based on principles of *res judicata*.

Cooley LLP
Attorneys at Law

To that end, case law recognizes that class certification can and should be denied for lack of adequacy where, as here, the class representatives (including based on the actions of Plaintiffs' counsel) cannot fully represent the interests of the putative class. For example, in *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864 (9th Cir. 1982), *overruled on other grounds by Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477 (9th Cir. 1987), the Ninth Circuit approved decertification of an employment class action in order to avoid potentially harmful *res judicata* effects on the class, where the named plaintiffs' failure to adduce evidence "may have been due to inadequate representation of the class interests rather than to absence of classwide discrimination." *Id.* at 869. In fact, courts can refuse class certification based merely on a risk of potential *res judicata* effects. *See, e.g.*, *Krueger v. Wyeth, Inc.*, No. 03CV2496 JLS (AJB), 2008 WL 481956, at *3 (S.D. Cal. Feb. 19, 2008) (collecting authorities and denying certification based on lack of adequacy, observing that "other courts agree that the existence of claim splitting constitutes a compelling reason to deny class certification").[6]

Likewise, here, the named Plaintiffs' failure to produce evidence of market harm under the fourth fair use factor (leading to the summary judgment ruling against them on their training claim), and their unjustifiably late effort to amend to add a contributory infringement claim, cannot be permitted to bind a potential class to a judgment that would preclude class members from bringing any non-distribution claims. Additionally, if the Court certifies a class and the case proceeds to trial on the distribution claim and Meta is found not liable, the resulting judgment will bar class

---

[6] *See also In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 368 (S.D. Iowa 2008) ("[A]ny *possibility* that a subsequent court could determine that claims for personal injury and medical monitoring were barred by *res judicata* prevents the named plaintiffs' interests from being fully aligned with those of the class.") (emphasis in original); *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 551 (D. Minn. 1999) (rejecting class certification based on the risk that "a subsequent court may very well find that" abandoned claims "should have been litigated in this lawsuit"). While there is limited out-of-circuit authority suggesting the possibility that ordinary principles of *res judicata*, and the bar on claim-splitting, might not always apply with respect to absent class members who seek to litigate in a subsequent case claims that the named plaintiffs lost or abandoned before certification—*see Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003)—the Ninth Circuit has not embraced that line of reasoning. *Baumann*, 747 F.3d at 1123; *Piatt*, 819 Fed.Appx. at 479-80 (9th Cir. 2020) (unpublished). Additionally, as reflected in cases such as *Krueger*, *In re Teflon*, and *Thompson*, district courts have repeatedly refused to certify claims where the named plaintiffs failed to adequately litigate a key claim because of the prospect that *res judicata* would bar future assertions of that claim by absent class members.

members from pursuing not only that claim in a future suit, but claims for infringement based on training and contributory infringement.

Finally, beyond adequacy, Plaintiffs are also highly unlikely to be able to establish commonality, typicality, or predominance under Rule 23. *See Schneider v. YouTube LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023) ("It has been said that 'copyright claims are poor candidates for class-action treatment,' and for good reason.") (quoting *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65 (S.D.N.Y. 2013)). As Meta's opposition to the motion for class discovery explained, under Plaintiffs' proposed approach to distribution liability, there would need to be—for each work at issue—an individualized probabilistic assessment of distribution, including with respect to the number of times a work appeared in a given download, the size of the download, and the duration of the download (among other factors). Dkt. 670 at 13-14. Accordingly, given class certification is so unlikely, there is no good reason to deviate and allow class discovery or briefing now. Notably, such discovery and briefing may never be required if Meta prevails on the merits, avoiding the thorny certification issues altogether.

### 2. Granting Class Certification Would Restrict the Availability of Statutory Damages in a Theoretical Future Case.

Even if the putative class members could overcome the *res judicata* bar just discussed, they would be prejudiced by the unavailability of additional statutory damages. That is so because under Section 504 of the Copyright Act, a plaintiff can recover only a single award of statutory damages "***for all infringements involved in the action, with respect to any one work***." 17 U.S.C. § 504(c)(1) (emphasis added); *see* H.R. Rep. No. 1476, 94th Cong., 2d Sess. at 162 (1976) ("A single infringer of a single work is liable for a single amount [of statutory damages], no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series"). This is yet another reason why class certification on distribution will be highly unlikely, and thus why there is no compelling imperative for class discovery or certification briefing now.

As the Ninth Circuit explained in *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253 (9th Cir. 2021), Congress specifically limited a Copyright Act plaintiff to a single award of statutory

damages per work "no matter how many infringements an individual defendant . . . committed." *Id.* at 1271; *see also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011) ("[W]hen statutory damages are assessed against one defendant... each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work.") (citation omitted).  Applied to a theoretical proposed class here, a class member could recover only a single award of statutory damages for each book, regardless of how many alleged infringements are at issue—copying during downloading, copying during LLM research, development, and training, distribution, and contributory infringement.  And, assuming a class based on the lone remaining distribution claim were certified, those class members would be limited to statutory damages based on the alleged distribution—not other conduct that has been dismissed from or was never part of this case.

Thus, if the Court were to certify a class based on the remaining distribution claim and the case resulted in an award of statutory damages, unnamed class members would be precluded under Section 504(c) from obtaining any further statutory damages against Meta in a subsequent suit asserting a copyright training claim or a claim for contributory copyright infringement—assuming that such a claim could even be maintained (which it could not, per the discussion above).  Meta has located no authority holding that Section 504(c)'s prohibition can be circumvented by splitting a series of closely-related copyright infringement claims into multiple suits against the same defendant—and unsurprisingly so, given the *res judicata* bar discussed in the prior subsection.

## C.    META'S ONE-WAY INTERVENTION WAIVER WAS BASED ON MERITS LITIGATION PRECEDING CLASS LITIGATION.

Meta's agreement to waive the objection to the rule against one-way intervention was specifically premised on ensuring that the parties would not engage in potentially unnecessary and wasteful class discovery and certification briefing while concurrently addressing the merits of Plaintiffs' claims in summary judgment. *See* Dkt. 71 at 12 ("Meta further believes that consideration of class certification issues would be inappropriate until after the Court rules on certain dispositive motions on merits issues . . . . [t]his approach is also consistent with the Court's Standing Order . . . and Meta believes that adopting such an approach will be more efficient for the

parties and the Court."); *see also Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 134 (2d Cir. 2013) (holding that class certification was premature because resolution of fair use defense could inform or even moot Rule 23 class certification analysis). Indeed, Meta's decision to waive one-way intervention was informed by and in reliance on the Court's clear statements that the Court would not open the "class certification discovery floodgates" until summary judgment was resolved. Dkt. 85 (2024-01-12 CMC Hearing Tr.) at 11:9-13 ("THE COURT: . . . in cases where the Defendant is willing to waive the one-way intervention objection . . . I have found that in most cases it makes sense to do cross-motions for summary judgment first before opening the class certification discovery floodgates"); Judge Chhabria's Civil Standing Order (June 27, 2025), Para. 52 ("The Court is of the view that [waiver of the objection against one-way intervention] will often save a great deal of time and money and is therefore often in the defendant's interest, but it requires the defendant's consent"). If Meta had understood that its one-way intervention waiver would be set aside to allow summary judgment and class certification discovery to proceed concurrently, Meta likely would have made a different decision about waiver. Dkt. 85 (2024-01-12 CMC Hearing Tr.) at 5:13-21 ("[W]e read your standing order … we're the ones proposing this structure because we believe that the benefits of hearing summary judgment before class cert outweighs … the issues and concerns … with the one-way intervention rule.").

There is no prejudice to Plaintiffs by continuing to abide by the bargain made at the beginning of the suit to waive one-way intervention. The remaining distribution claim (and proposed contributory infringement claim) are premised on alleged conduct that started over three years ago and concluded well over a year ago. As Plaintiffs well know from Meta's continuing voluntary discovery (more than a year after the close of fact discovery), Meta is not engaged in any alleged ongoing distribution of Plaintiffs' works via torrent or otherwise. Thus, there is no ongoing conduct that Plaintiffs could possibly seek to enjoin. All that remains at stake in the event Plaintiffs prevail and a class is certified is Plaintiffs' claims to statutory damages (and potentially class counsel's compensation).

Finally, if any class discovery or certification briefing is permitted to move forward, Plaintiffs must be held to their representation to the Court that "the sole remaining class-specific

fact discovery Plaintiffs seek from Meta will be the list of works it torrented from the Sci-Mag portion of LibGen in 2023." Dkt. 668 at 5. Beyond that "limited discovery," no further class discovery by Plaintiffs should occur. Allowing Plaintiffs to flood Meta with other class discovery demands would be contrary to Plaintiffs' representations to the Court and also effectively abrogate the entire premise of Meta's waiver of one-way intervention, which was to avoid the time and expense of class certification discovery before summary judgment is resolved. Moreover, despite repeated claims to the Court that Plaintiffs need no additional discovery on distribution, Plaintiffs told Meta in a meet and confer shortly before filing this brief that they will seek three more months of fact discovery on distribution related issues. Of course, in the event any class certification discovery does occur, Meta should be afforded a full and fair opportunity to seek all of the discovery it needs to oppose any motion for class certification that Plaintiffs may bring.

### D. THE *KADREY* AND *ENTREPRENEUR* EXPERT AND SUMMARY JUDGMENT SCHEDULES SHOULD BE ALIGNED BUT NO ADDITIONAL NEW DISCOVERY SHOULD OCCUR IN *KADREY*.

Meta's proposed case schedule is attached as Appendix A. As Meta proposed at the Court's February 5 hearing, the Court should align expert discovery and summary judgment proceedings in *Kadrey* with those in *Entrepreneur*. Also as discussed at the hearing, the document discovery that Meta is producing pursuant to the Court's Order at Dkt. 647 and other document discovery Meta has been voluntarily providing should conclude by Friday, February 27. Fact discovery otherwise should remain closed in *Kadrey*, and class discovery should not open. Under Meta's proposed schedule, the coming months will not be wasted as to either *Entrepreneur* or *Kadrey*, because to the extent Entrepreneur obtains additional discovery on distribution from Meta, Meta will timely share that discovery with counsel in *Kadrey* so they have access to the same record as *Entrepreneur* for expert and summary judgment purposes. Additionally, as agreed upon at the hearing, the Rule 30(b)(6) deposition and the four-hour deposition of Ms. Xiaolan Wang that the Court allowed Plaintiffs to pursue in Dkt. 647 will be coordinated with depositions in *Entrepreneur*.

### III. CONCLUSION

The Court should deny the Motion to Amend; it should deny Plaintiffs' motion to open class discovery; and it should adopt the schedule proposed below in Appendix A, which aligns the

schedule in this case and *Entrepreneur* and sets a deadline for the remaining fact discovery in *Kadrey* (other than two depositions to be coordinated with *Entrepreneur*).

Dated: February 13, 2026                    COOLEY LLP

                                   By: */s/ Kathleen Hartnett*
                                        Kathleen Hartnett

                                        Attorneys for Defendant
                                        META PLATFORMS, INC.
                                        .

*Full Counsel List*

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
JESSICA PHILLIPS (*pro hac vice*)
(jphillips@dirllp.com)
KYLE N. SMITH (pro hac vice)
(ksmith@dirllp.com)
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 240-2900

COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400

COOLEY LLP
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
JUDD LAUTER (290945)
(jlauter@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000

COOLEY LLP
PHILLIP MORTON (*pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, Ca 94304
Telephone: (650) 815-4131

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
KANNON K. SHANMUGAM (*pro hac vice*)
(kshanmugam@paulweiss.com)
2001 K Street, NW
Washington, Dc 20006
Telephone: (202) 223-7300

Attorneys For Defendant
META PLATFORMS, INC.