UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No.  23-cv-03417-VC<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT; DENYING MOTION FOR CLASS DISCOVERY**<br><br>Re: Dkt. No. 658, 668 |

It's almost always easy to decide a motion to amend a complaint. This one is quite difficult. The lawsuit—a proposed class action against Meta for copyright infringement relating to its use of protected works to train its AI models—was filed almost three years ago. And the named plaintiffs have already filed four versions of their complaint. Now, they seek to file a fifth. Primarily, they wish to add a claim for contributory infringement, based on the allegation that when Meta was downloading copyrighted works from shadow libraries using BitTorrent, it simultaneously uploaded those works onto the torrenting network, thus enabling other members of the network to infringe the plaintiffs' rights in the copyrighted works.

One reason this motion is so vexing is that the plaintiffs could have added this claim the last time they sought to amend their complaint back in November 2024 (roughly a year and a half ago). At that time, the plaintiffs moved to add a "distribution" claim—that is, a claim that when Meta was downloading copyrighted works from shadow libraries using BitTorrent, it simultaneously uploaded those works onto the torrenting network in a way that constituted direct

copyright infringement. In other words, the plaintiffs seek now to add a new legal claim based on factual allegations they already added the last time around.

The lawyers for the named plaintiffs have no excuse for neglecting to add a contributory infringement claim based on these allegations back in November 2024. But it apparently didn't dawn on them to do so until they saw a new-but-related lawsuit against Meta by Entrepreneur Media, Inc. That lawsuit similarly alleges direct copyright infringement relating to AI training, and it includes a claim for contributory infringement based on Meta's alleged uploading of Entrepreneur Media's copyrighted works onto torrenting networks. It has further dawned on plaintiffs' counsel in this case that Meta might have a defense to the distribution claim based on the mechanics of torrenting that may not apply to the contributory infringement claim.

Counsel's failure to think of this issue back in November 2024 is bad enough. What makes it worse is the excuse counsel offers for waiting until now. Counsel asserts that "[a]s discovery has unfolded—including the most consequential evidence of Meta's torrenting activities produced just weeks ago—Plaintiffs' understanding of the nature of Meta's use of peer-to-peer file sharing has crystallized." Motion (Dkt. No. 658) at 1. Counsel continues: "While earlier evidence (produced months after the close of fact discovery) showed that Meta distributed pirated content to BitTorrent peers in 2024, Meta's newly produced evidence provides a level of detail that was previously missing in this case regarding Meta's uploading and distribution activity while torrenting the Asserted Works and many others." *Id.* at 1–2. This is a bunch of doubletalk. If it were really true that counsel couldn't have added a contributory infringement claim in November 2024 because Meta had failed to produce the discovery necessary to support it, the same would be true of the distribution claim that counsel *did* add back then. Rather than blaming Meta for producing discovery late, the plaintiffs' lawyers should have been candid with the Court, explaining that they missed an issue in a case of first impression and asking for permission to correct it because doing so would serve the interests of the proposed class without interfering with the case schedule or otherwise unfairly prejudicing Meta.

Counsel's lame excuse for failing to add the contributory infringement claim in November 2024 is part of an ongoing pattern. It appears that counsel's strategy throughout this litigation (and particularly since the Boies Schiller firm came in and took the lead) has been to distract from its own mistakes (and there have been many) by bashing Meta. Take, for example, one of the arguments counsel makes in support of the motion to amend. Counsel invokes Meta's recent assertion of a "fair use" defense to the distribution claim as a reason to add the contributory infringement claim. Counsel asserts that since the plaintiffs added their distribution claim in November 2024, Meta "never once suggested it would assert a fair use defense to the [distribution] claims . . . . Indeed, even in its supplemental brief regarding the remaining case schedule, Meta failed to mention, much less assert, a fair-use defense . . . . Yet, at 10:49 p.m. this past Friday, February 27, Meta served a supplemental interrogatory response on its fair use defense." Supplemental Letter (Dkt. No. 690) at 1. In truth, Meta disclosed several months ago—to plaintiffs' counsel and to the Court—that it was considering asserting a fair use defense based on its current understanding of the plaintiffs' distribution allegations.

The issue of when Meta disclosed that it would assert a fair use defense to the distribution claim is irrelevant to whether the plaintiffs should be allowed to add a contributory infringement claim. So there was no need for plaintiffs' counsel to complain about Meta's handling of this issue, much less to make false statements about it. But the lawyers for the plaintiffs (again, particularly the lawyers from Boies Schiller) seem unable to help themselves. They seem so intent on bashing Meta that they are unable to exercise proper judgment about how to represent the interests of their clients and the proposed class members.

By now, the reader might be thinking, "Wait a minute, you started off saying that the motion to amend the complaint was difficult. It seems like an easy deny to me." One complicating factor is that denying the motion to add the contributory infringement claim could potentially harm the interests of the proposed class members. Understanding this requires a look back at the proceedings that have already taken place, and a look forward to the proceedings that may take place in the future.

Near the outset of the case, Meta agreed to structure the litigation so that cross-motions for summary judgment as to the named plaintiffs would be adjudicated before class certification. This gave Meta the opportunity to defeat the lawsuit on summary judgment without having to expend considerable resources on class certification discovery. But it also meant that if Meta defeated the named plaintiffs at summary judgment, the ruling would not bind the proposed class members. On the flip side, it meant that if the named plaintiffs obtained summary judgment and subsequently obtained class certification, proposed class members would know, when deciding whether to opt out of the class, that they had essentially already won. This is a concept sometimes referred to as "one-way intervention." Meta agreed to waive any objections relating to the one-way intervention problem.

Understanding that procedural background, it's worth recalling that there are at least three copyright claims an absent class member could assert against Meta. The first is a direct infringement claim based on Meta's decision to copy protected works for the purpose of training its AI models—call it a "training claim." The second is a direct infringement claim based on Meta's alleged uploading of protected works during the process of downloading the works using BitTorrent—a "distribution claim." And the third is a contributory infringement claim based on facilitating copyright infringement by third parties by uploading protected works onto the torrenting network.

As to the first claim, the Court ruled against the named plaintiffs at summary judgment, finding that they had failed to produce evidence that could counter Meta's fair use defense. But as the Court explained, the reason Meta won that argument was not that copying protected works to train AI models actually is fair use. It won because the named plaintiffs' counsel had not marshaled any meaningful evidence on the most important fair use factor—whether Meta's copying had harmed, or was likely to harm, the market for the plaintiffs' works. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1036–37 (N.D. Cal. 2025).

As to the second claim, the parties have yet to file cross-motions for summary judgment. If the Court rules for the named plaintiffs, or if the Court denies both sides' motions on the

grounds that a genuine factual dispute exists, the named plaintiffs will move for class certification.

Now imagine the following series of events. First, the Court denies the motion to add the third claim—the contributory infringement claim. Second, the Court rules on cross-motions for summary judgment that the distribution claim must go to trial. Third, the Court grants the named plaintiffs' motion for class certification on the distribution claim. And fourth, the jury rules in favor of Meta, perhaps because the facts show that Meta's conduct did not constitute copyright infringement, or perhaps because class counsel is so busy bashing Meta at trial that it forgets to submit enough evidence in support of a key element.

If the above-described series of events occurred, there is a serious concern that the interests of the absent class members would be harmed, through no fault of their own. Having lost on the distribution claim, there is a possibility that they would be precluded from bringing a contributory infringement claim in subsequent litigation. Obviously, if an individual plaintiff litigated a distribution claim to judgment, that plaintiff would be precluded from subsequently asserting a contributory infringement claim on the same facts. There is at least some risk that this res judicata principle would apply in the class action context for absent class members who didn't opt out. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390–92 (9th Cir. 1992); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014). And of course, there's a good chance that absent class members would not be aware or sophisticated enough to understand that they'd be foreclosing the opportunity to bring a potentially stronger claim by not opting out.[1]

---

[1] It seems far less likely that absent class members would be precluded from subsequently bringing training claims, even if a class were certified on the distribution claim and judgment were entered for Meta on that claim following trial. The training claim will always be subject to a fair use defense. And the most important of the fair use factors—market harm—will often be highly fact-dependent, such that training claims would likely be individualized and therefore not precluded by a judgment against the class on the distribution claim. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 880–81 (1984). But this brings to mind another question about the first claim that plaintiffs' counsel was probably too busy bashing Meta to think about. Normally, the statute of limitations is tolled for the potential class members while a proposed class action is pending. But what about the situation where summary judgment is

Accordingly, the failure of plaintiffs' counsel to appreciate the need to add a contributory infringement claim back in November 2024 could do serious harm to the proposed class members. This is one factor in favor of allowing the named plaintiffs to file yet another amended complaint. Regardless of who ultimately wins this case, it is in the interest of the proposed class members to have all available claims addressed in the litigation.

Two additional related factors weigh in favor of allowing the plaintiffs to add the contributory infringement claim: the litigation schedule and the presence of the Entrepreneur Media case (which, by the way, is not a proposed class action). Meta has requested that the schedule in this case be pushed back so that expert discovery can proceed on the same schedule as in the Entrepreneur Media case. That request is granted. And of course, in the Entrepreneur Media case, there is already a contributory infringement claim. Moreover, this Court has already ruled that discovery in the two cases will be shared. The upshot is that, regardless of whether the plaintiffs are allowed to add the contributory infringement claim here, Meta will be required to litigate the contributory infringement claim, and on the schedule that has already been set. Which means that plaintiffs' counsel has lucked into a situation where Meta will not be meaningfully prejudiced by the failure to add a contributory infringement claim back in November 2024.

For all these reasons, the plaintiffs' motion to add a contributory infringement claim is reluctantly granted.

The request to amend the class definition, update the distribution claim, and add three loan-out companies as named plaintiffs is granted as well. This too will not unfairly prejudice Meta, which will have every opportunity to attack these updated allegations at the summary judgment and class certification stages. And class discovery has not opened yet, so allowing the amendment to the class definition will not require the parties to re-do anything.

Speaking of which, the plaintiffs' related motion to open class discovery is denied. Plaintiffs' counsel already has enough to focus on. Class discovery will be opened if the named

---

granted for the defendant as to the named plaintiffs on a particular claim before class certification? Does tolling continue for that claim?

plaintiffs can get past summary judgment on the distribution and contributory infringement claims.

**IT IS SO ORDERED.**

Dated: March 25, 2026

VINCE CHHABRIA
United States District Judge