DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
JESSICA E. PHILLIPS (*pro hac vice*)
(jphillips@dirllp.com)
KYLE N. SMITH (*pro hac vice*)
(ksmith@dirllp.com)
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN
& HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
ANNA STAPLETON (337686)
(astapleton@paulweiss.com)
535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5188

*Counsel for Defendant Meta Platforms, Inc.*

COOLEY LLP
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
3 Embarcadero Center 20th Floor
San Francisco, California 94111
Telephone: (415) 693-2000

MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN
(260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

PHILLIP MORTON (*pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>Individual and Representative Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:23-cv-03417-VC<br><br>**DEFENDANT META PLATFORMS INC.'S ANSWER TO FOURTH AMENDED CONSOLIDATED COMPLAINT** |

Defendant Meta Platforms, Inc. ("Meta"), by and through counsel, hereby responds to the Fourth Amended Consolidated Complaint ("FACC") filed by Plaintiffs Richard Kadrey, Sarah Silverman, Eleven Eleven O'Clock Corporation, Christopher Golden, Daring Greatly Corporation, Ta-Nehisi Coates, BCP Literary, Inc., Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth (together, "Plaintiffs").  Unless specifically admitted, Meta denies each of the allegations in the FACC.

## I.  OVERVIEW[1]

1.      Meta admits that it has created a series of large language models ("LLMs") under the name Llama; that it has invested billions of dollars to develop its generative AI offerings; that, beginning with Llama 2, it has incorporated technology based on Llama into its other products including Facebook, WhatsApp, Instagram, and Ray-Ban's Meta Glasses; and that Meta released Llama open source.  Except as expressly admitted, Meta denies the allegations in paragraph 1.

2.      Meta admits that LLMs can create text outputs in response to user prompts.  Meta declines to adopt the definition of "Llama," which purports to cover LLMs at "any stage of their developmental life cycle."  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 2, and on that basis denies the same.

3.      Meta admits that some LLMs have been trained using training datasets composed of large amounts of text data and that data can be used to pretrain and finetune LLMs, to assess the general knowledge and expressive abilities of models, and as a means of testing LLMs' memorization.  As paragraph 3 pertains generally to LLMs and not any particular LLM of Meta, Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 3, and on that basis denies the same.

---

[1] Meta includes the headings as listed in the FACC for convenience only, and denies any allegations therein.

META'S ANSWER TO FACC
3:23-CV-03417-VC

4.      Meta admits that some LLMs have been trained using training data and were able to generate outputs after training.  Meta further admits that it used books data, among other forms of data, as training data for its LLMs.  To the extent paragraph 4 pertains generally to LLMs and not any particular LLM of Meta, Meta lacks knowledge and information sufficient to form a belief as to the truth of those allegations set forth in paragraph 4, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 4.

5.      Meta admits that Plaintiffs purport to be authors of books, that they purport to own the copyrights in the books they published, and that Meta did not seek or obtain permission from Plaintiffs to train its Llama models using datasets that included books Plaintiffs claim in this action to have authored. Meta admits that it contacted certain publishers, internally discussed licensing certain types of data to train its Llama models, and ultimately decided to train the Llama models using publicly available data. Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations relating to Plaintiffs and Class members set forth in paragraph 5, and on that basis denies the same.  Except as expressly admitted, Meta denies the allegations in paragraph 5.

6.      Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6, and on that basis denies the same.

7.      Meta admits that certain of its employees commented regarding the use of data sourced from certain websites to train its LLMs and that other lawsuits have been brought by authors against developers of LLMs alleging copyright infringement.  Except as expressly admitted, Meta denies the allegations in paragraph 7.

8.      Meta denies the allegations in paragraph 8.

9.      Meta admits that substantially all of the text of some of Plaintiffs' books appear in the training datasets it used to train one or more versions of Llama.  Except as expressly admitted, Meta denies the allegations in paragraph 9.

## II.  JURISDICTION & VENUE

10.     The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Meta admits that this action purports to arise under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, *et seq.*, and that the Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, provided that standing and other requirements are met.  Except as expressly admitted, Meta denies the allegations set forth in paragraph 10.

11.     The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Meta admits that this Court has personal jurisdiction over it with respect to the instant action and that venue is proper in this judicial district.  Except as expressly admitted, Meta denies the allegations in paragraph 11.

12.     The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Meta admits that assignment of this case to the San Francisco Division is proper, and that Meta is headquartered in San Mateo County.  Except as expressly admitted, Meta denies the allegations in paragraph 12.

## III.  PARTIES

### A.  Plaintiffs

13.     Meta admits that Plaintiff Richard Kadrey has written books and purports to own registered copyrights in multiple works, including *Sandman Slim*. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Kadrey lives, and on that basis denies the same.  Except as expressly admitted, Meta denies the allegations in paragraph 13, including any implication of the validity of Mr. Kadrey's claimed copyrights.

14.     Meta admits that Plaintiff Sarah Silverman is a performer and purports to own a registered copyright in *The Bedwetter*. Meta lacks knowledge or information sufficient to form a belief as to where

Ms. Silverman lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 14, including any implication of the validity of Ms. Silverman's claimed copyright.

15. Meta lacks knowledge or information sufficient to form a belief as to paragraph 15, and on that basis denies the same.

16. Meta admits that Plaintiff Christopher Golden has written books. Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations to whether Mr. Golden owns registered copyrights in each of his works and as to where Mr. Golden lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 16, including any implication of the validity of Mr. Golden's claimed copyrights.

17. Meta lacks knowledge or information sufficient to form a belief as to paragraph 17, and on that basis denies the same.

18. Paragraph 18 contains no allegations, and therefore no response is required.

19. Meta admits that Plaintiff Ta-Nehisi Coates has written books. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Coates lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 19.

20. Meta lacks knowledge or information sufficient to form a belief as to paragraph 20, and on that basis denies the same.

21. Meta admits that Plaintiff Junot Diaz has written books and purports to own registered copyrights in multiple works, including *Drown*. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Diaz lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 21, including any implication of the validity of Mr. Diaz's claimed copyrights.

22.    Meta admits that Plaintiff Andrew Sean Greer has written books and purports to own registered copyrights in multiple works, including *The Confessions of Max Tivoli*. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Greer lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 22, including any implication of the validity of Mr. Greer's claimed copyrights.

23.    Meta admits that Plaintiff David Henry Hwang has written plays and screenplays and purports to own registered copyrights in multiple works, including *M. Butterfly*. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Hwang lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 23, including any implication of the validity of Mr. Hwang's claimed copyrights.

24.    Meta admits that Plaintiff Matthew Klam has written books and purports to own registered copyrights in multiple works, including *Who is Rich?*. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Klam lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 24, including any implication of the validity of Mr. Klam's claimed copyrights.

25.    Meta admits that Plaintiff Laura Lippman has written books and purports to own registered copyrights in multiple works, including *After I'm Gone*. Meta lacks knowledge or information sufficient to form a belief as to where Ms. Lippman lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 25, including any implication of the validity of Ms. Lippman's claimed copyrights.

26.    Meta admits that Plaintiff Rachel Louise Snyder has written books and purports to own registered copyrights in multiple works, including *No Visible Bruises: What We Don't Know About Domestic Violence Can Kill Us*. Meta lacks knowledge or information sufficient to form a belief as to

where Ms. Snyder lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 26, including any implication of the validity of Ms. Snyder's claimed copyrights.

27.     Meta admits that Plaintiff Lysa TerKeurst has written books and purports to own registered copyrights in multiple works, including *Embraced*. Meta lacks knowledge or information sufficient to form a belief as to where Ms. TerKeurst lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 27, including any implication of the validity of Ms. TerKeurst's claimed copyrights.

28.     Meta admits that Plaintiff Jacqueline Woodson has written books and purports to own registered copyrights in multiple works, including *Brown Girl Dreaming*. Meta lacks knowledge and information sufficient to form a belief as to where Ms. Woodson lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 28, including any implication of the validity of Ms. Woodson's claimed copyrights.

29.     Meta admits that Plaintiff Christopher Farnsworth has written books and purports to own registered copyrights in multiple works, including *The President's Vampire*. Meta lacks knowledge or information sufficient to form a belief as to where Mr. Farnsworth lives, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 29, including any implication of the validity of Mr. Farnsworth's claimed copyrights.

30.     Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30, or as to the content of Exhibit A, and on that basis denies the same.

**B.  Defendant**

31.     Meta admits the allegations in paragraph 31.

## IV.  AGENTS AND CO-CONSPIRATORS

32.     Meta denies the allegations in paragraph 32.

33.     Meta denies the allegations in paragraph 33.

## V.  FACTUAL ALLEGATIONS

34.    Meta admits that it creates, markets, and sells software and hardware technology products, and that its software and services include Facebook, Instagram, WhatsApp, and Horizon Worlds, among others.  Meta admits that it has an artificial intelligence research group that conducts research on artificial intelligence technologies.  Meta also admits that it has created and distributed the Llama 1, Llama 2, Llama 3, and Llama 4 artificial intelligence software products.  Except as expressly admitted, Meta denies the allegations in paragraph 34.

35.    Meta admits that "artificial intelligence" is commonly abbreviated "AI."  As paragraph 35 pertains generally to AI and not any particular AI technologies of Meta, Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 35, and on that basis denies the same.  Except as expressly admitted, Meta denies the allegations in paragraph 35.

36.    Meta admits that it publicly released the initial version of Llama in February 2023, and that it has adopted the capitalization convention "Llama" in addition to "LLaMA."  Meta further admits that it uses the name "Llama" to refer to Llama 1, Llama 2, Llama 3, and Llama 4, each of which is an example of AI software.  Except as expressly admitted, Meta denies the allegations in paragraph 36.

37.    Meta admits that the corpus of material used to train an LLM has been referred to as a 'training dataset,' that some LLMs have been trained using training datasets composed of large amounts of text data, and that some LLMs are designed to emit naturalistic text.  As paragraph 37 pertains generally to LLMs and not any particular LLM of Meta, Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 37, and on that basis denies the same.

38.    The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Meta admits that it did not seek or obtain permission from

Plaintiffs to train Llama using datasets that included books Plaintiffs claim to have authored.  Meta denies that its use of copyrighted works to train Llama required consent, credit, or compensation.  Meta further admits that, in connection with the research, development, and training of its Llama models, it used portions of datasets and created internal collections of data that were not publicly released or distributed, that include books. Except as expressly admitted, Meta denies the allegations in Paragraph 38.

39.    Meta admits that Llama 1 was trained prior to its public release in February 2023.  Except as expressly admitted, Meta denies the allegations in paragraph 39.

40.    Meta admits the allegations in paragraph 40. To the extent the allegations set forth in this paragraph purport to characterize or summarize the paper cited in Footnote 1 and located at https://arxiv.org/pdf/2302.13971.pdf, the document speaks for itself.

41.    The allegations in paragraph 41 pertain generically to "open sourcing" and do not refer to any particular open source model or open source license adopted by Meta; as such, Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41, and on that basis denies the same.

42.    Meta admits the Llama 1 Paper discusses the Llama 1 training dataset, noting the size of the training data and where some of the training data comes from, and refers to the referenced Paper for information that it does and does not include.  Meta further refers to the Paper itself for its contents.  Except as expressly admitted, Meta denies the allegations in paragraph 42.

43.    To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the document cited in Footnote 2 and located at https://arxiv.org/pdf/2101.00027.pdf (the "EleutherAI Paper"), the document speaks for itself.  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 43, and on that basis denies the same.

META'S ANSWER TO FACC
3:23-CV-03417-VC

44.     To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the EleutherAI Paper, the document speaks for itself.  Meta denies that the EleutherAI Paper indicates that Books3 comprises 108 gigabytes of data and that it is the third largest component of the Pile by size.  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 44, and on that basis denies the same.

45.     To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the EleutherAI Paper, the document speaks for itself.

46.     Meta admits that some of the datasets referenced in paragraph 43 are available via websites and/or torrents.  The remaining allegations in this paragraph either state a legal conclusion to which no response is required, or Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46, and on that basis denies the same.

47.     Meta declines to adopt Plaintiffs' alleged definition of "shadow libraries." Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47, and on that basis denies the same.

48.     To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the webpage cited in Footnote 3 and located at https://twitter.com/theshawwn/status/1320282149329784833, the webpage speaks for itself.  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 48, and on that basis denies the same.

49.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is deemed required, Meta denies that it infringed Plaintiffs' alleged copyrights.[2]

---

[2] On June 25, 2025, this Court found that Meta was "entitled to summary judgment on its fair use defense to the claim that copying these plaintiffs' books for use as LLM training data was infringement." ECF No. 598 at 40.

Meta admits that substantially all of the text from some of Plaintiffs' books appear in the Books3 dataset; that it used data from LibGen, Z-Lib, Sci-Hub, Common Crawl, and data collected using its web crawler Spidermate to train one or more of its Llama models; that it put certain URLs on a blocklist to not be scraped; and that some of its employees expressed their opinions regarding the use of data sourced from certain websites to train its LLMs. As to any remaining allegations in paragraph 49 regarding Meta, except as expressly admitted, Meta denies those allegations. Meta declines to adopt the definition of "Infringed Works," which calls for a legal conclusion. Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 49, and on that basis denies the same.

50. To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the webpage cited in Footnote 4 and located at https://news.ycombinator.com/item?id=36197731, the webpage speaks for itself. Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 50, and on that basis denies the same.

51. Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 51, and on that basis denies the same.

52. Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 52, and on that basis denies the same.

53. Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 53, and on that basis denies the same.

54. Meta admits that the Llama 1 Paper states that the dataset used to train Llama 1 was publicly available. The remaining allegations in this paragraph 54 state legal conclusions to which no response is required. To the extent a response is deemed required, Meta admits that a work in the public domain in the United States is not protected by copyright in the United States, and that a work that is

publicly available may be protected by copyright. Except as expressly admitted, Meta denies the allegations in paragraph 54.

55.     The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed required, Meta admits that is aware of the conceptual distinction between works in the "public domain" and works that are "publicly available." Except as expressly admitted, Meta denies the allegations in paragraph 55.

56.     Meta denies that it is misleading to describe Books3 as "publicly available." Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 56, and on that basis denies the same.

57.     Meta denies the allegations in paragraph 57.

58.     Meta admits that Tim Dettmers was a part-time AI researcher at Meta and that, in November 2020, he initiated a conversation on EleutherAI's public Discord server regarding use of The Pile as training data for generative AI. Except as expressly admitted, Meta denies the allegations in paragraph 58.

59.     Meta admits the allegations in paragraph 59.

60.     Meta admits the allegations in paragraph 60.

61.     Meta admits the allegations in paragraph 61.

62.     Meta admits the allegations in paragraph 62.

63.     Meta admits the allegations in paragraph 63.

64.     Meta admits the allegations in paragraph 64.

65.     Paragraph 65 contains no allegations, and therefore no response is required.

66.     Meta admits the allegations in paragraph 66.

67.     Paragraph 67 contains no allegations, and therefore no response is required.

68.     Meta admits the allegations in paragraph 68.

69.     Meta admits the allegations in paragraph 69.

70.     Paragraph 70 contains no allegations, and therefore no response is required.

71.     Paragraph 71 contains no allegations, and therefore no response is required.

72.     Paragraph 72 contains no allegations, and therefore no response is required.

73.     Meta admits that in or around August 2023, EleutherAI removed from public view the conversations referenced in Paragraphs 58–64, 66, 68, and 69 from its Discord server.  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 73, and on that basis denies the same.

74.     Meta admits the allegations in paragraph 74.

75.     Meta admits that it distributed Llama 1 to certain people and entities, and that the names of those people and entities were not disclosed.  Except as expressly admitted, Meta denies the allegations in paragraph 75.

76.     Meta denies the allegations in paragraph 76.

77.     Meta admits that it has used web crawlers, including its own web crawler named SpiderMate, to download data available on websites for training its LLMs.  Except as expressly admitted, Meta denies the allegations in paragraph 77.

78.     Meta admits the allegations in paragraph 78, except that it denies any suggestion that it had a role in the leak referenced in paragraph 78.

79.     Meta admits that a representative of Meta submitted a takedown notice to Github in March 2023 concerning the publication of a tool that helped individuals access leaked model weights for Llama 1.  That notice included a representation that Meta owned rights in the subject of the notice.  Except as expressly admitted, Meta denies the allegations in paragraph 79.

META'S ANSWER TO FACC
3:23-CV-03417-VC

80.    Meta admits that portions of Books3, among many other materials, were used as training data for Llama 2 prior to its public release in July 2023.  Except as expressly admitted, Meta denies the allegations in paragraph 80.

81.    To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the document cited in Footnote 5 and located at https://arxiv.org/pdf/2307.09288.pdf (the "Llama 2 Paper"), the document speaks for itself.

82.    To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the webpage cited in Footnote 6 and previously located at https://ai.meta.com/llama/faq/, the webpage speaks for itself.  Meta admits that it has made Llama 2 available under a license different from the license applicable to Llama 1, and the terms of those licenses speak for themselves.  Except as expressly admitted, Meta denies the allegations in paragraph 82.

83.    To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of Meta's October 26, 2023 Form 10-Q, such document speaks for itself.  Meta denies the remaining allegations in paragraph 83.

84.    To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the Llama 2 Paper, the document speaks for itself.  Meta denies the Plaintiffs' characterization of the paper and the remaining allegations in paragraph 84.

85.    Meta denies the allegations in paragraph 85.

86.    Meta admits that it trained Llama 1, Llama 2, and Llama 3 using data that was included in Books3.  Meta further admits that versions of Llama 4 were released in April 2025, which were trained using data that was included in Books3.  Except as expressly admitted, Meta denies the allegations in paragraph 86.

87.     Meta admits that it released versions of Llama 3 in April 2024 and versions of Llama 4 in April 2025.  Meta further admits that it is working on other generative AI offerings.  Except as expressly admitted, Meta denies the allegations in paragraph 87.

88.     Meta admits that substantially all of the text of some of Plaintiffs' books appears in the training data used to train one or more versions of its Llama models.  Except as expressly admitted, Meta denies the allegations in paragraph 88.

89.     Meta admits that data from LibGen was downloaded in or about October 2022, prior to the release of Llama 1 and Llama 2.  Meta further admits that data from LibGen was used as training data for Llama 3.  Except as expressly admitted, Meta denies the allegations in paragraph 89.

90.     Meta admits that it initiated a download of data from LibGen in or around April 2023, which included downloads via both direct download and bit torrent protocol.  Except as expressly admitted, Meta denies the allegations in paragraph 90.

91.     Meta admits that it created a script to remove repetitive text from the training data for its Llama models.  Except as expressly admitted, Meta denies the allegations in paragraph 91.

92.     Meta admits that a script was created to remove repetitive text from training data for its Llama models, and further admits that this program was designed to remove lines that contain the word 'copyright.'  Except as expressly admitted, Meta denies the allegations in paragraph 92.

93.     Meta admits that it removes repetitive text from training data, in part, to reduce memorization risk.  Except as expressly admitted, Meta denies the allegations in paragraph 93.

94.     Meta lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 94, and on that basis denies the same.

95.     Meta admits that in or around June 2023, Meta engineers discussed Llama's answers to prompts asking about the model's training, and that discussion included a screenshot showing the prompt

and answer quoted in this paragraph.  Except as expressly admitted, Meta denies the allegations in paragraph 95.

96.    Meta admits that a Llama model at some point generated the output quoted in this paragraph.  Except as expressly admitted, Meta denies the allegations in paragraph 96.

97.    Meta admits that it implemented "supervised samples" of data into Llama's fine-tuning. Except as expressly admitted, Meta denies the allegations in paragraph 97.

98.    Meta denies the allegations in paragraph 98.

## VI.   CLAIMS FOR RELIEF

### Direct Copyright Infringement

### 17 U.S.C. § 101 et seq.

99.    Meta incorporates by reference its responses to paragraphs 1 through 98 above as though fully set forth herein.

100.    Meta admits that Plaintiffs purport to own registered copyrights in the works at issue in this action.  Except as expressly admitted, Meta denies the allegations in paragraph 100, including any implication of the validity of Plaintiffs' claimed copyrights.

101.    Meta admits that it made copies of portions of the Books3, LibGen, Z-Lib, and Sci-Hub datasets, among many other materials, to research, evaluate, and train its Llama models.  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 101, and on that basis denies the same.

102.    Meta admits that it did not seek or obtain permission from Plaintiffs to train its Llama models using datasets that included books Plaintiffs claim in this action to have authored. Meta further admits that it used BitTorrent to download certain portions of publicly available datasets that it used in the research, development, training, and evaluation of its Llama models. Except as expressly admitted, Meta denies the allegations in paragraph 102.

103.    Meta admits that it did not seek or obtain permission from Plaintiffs to train its Llama models using datasets that included books Plaintiffs claim in this action to have authored.  Except as expressly admitted, Meta denies the allegations in paragraph 103.[3]

104.    Meta admits that it did not seek or obtain permission from Plaintiffs to train its Llama models using datasets that included books Plaintiffs claim in this action to have authored. Except as expressly admitted, Meta denies the allegations in paragraph 104.

105.    Meta denies the allegations in paragraph 105.

106.    Meta denies the allegations in paragraph 106.

### Removal of Copyright Management Information[4]

### 17 U.S.C. § 1202(b)(1)

107.    Meta incorporates by reference its responses to paragraphs 1 through 106 above as though fully set forth herein.

108.    Meta admits that it removed repetitive data contained in the Llama models' training datasets.  Except as expressly admitted, Meta denies the allegations in paragraph 108.

109.    Meta denies the allegations in paragraph 109.

110.    Meta denies the allegations in paragraph 110.

111.    Meta denies the allegations in paragraph 111.

112.    Meta denies the allegations in paragraph 112.

113.    Meta denies the allegations in paragraph 113.

### Violation of California Penal Code § 502[5]

---

[3] Plaintiffs have expressly confirmed that this paragraph is not intended to assert that Meta created any derivative works or is liable for "derivative infringement" (ECF No. 71 at 14-15), a claim that was dismissed by the Court.
[4] On June 27, 2025, the Court found that Plaintiffs' DMCA claim, brought under 17 U.S.C. § 1202(b)(1), failed because Meta's conduct was "deemed fair use as a matter of law." ECF No. 601 at 1.
[5]  On March 7, 2025, the Court dismissed Plaintiffs' CDAFA claim "without leave to amend because it is preempted." ECF 471 at 2.

**(CDAFA)**

114.    The Court dismissed Plaintiffs' claim for violation of California Penal Code § 502 (Dkt. 471), therefore no response to paragraph 114 is required.

115.    The Court dismissed Plaintiffs' claim for violation of California Penal Code § 502 (Dkt. 471), therefore no response to paragraph 115 is required.

116.    The Court dismissed Plaintiffs' claim for violation of California Penal Code § 502 (Dkt. 471), therefore no response to paragraph 116 is required.

117.    The Court dismissed Plaintiffs' claim for violation of California Penal Code § 502 (Dkt. 471), therefore no response to paragraph 117 is required.

118.    The Court dismissed Plaintiffs' claim for violation of California Penal Code § 502 (Dkt. 471), therefore no response to paragraph 118 is required.

## Contributory Copyright Infringement

## 17 U.S.C. § 501 and Federal Common Law

119.    Meta incorporates by reference its responses to paragraphs 1 through 118 above as though fully set forth herein.

120.    Meta admits that it did not seek or obtain permission from Plaintiffs to train its Llama models using datasets that included books Plaintiffs claim in this action to have authored. Meta further admits that it used BitTorrent to download certain portions of publicly available datasets that it used in the research, development, training, and evaluation of its Llama models. Meta lacks knowledge or information sufficient to form a belief as to the alleged actions of third parties, and on that basis denies the same. Except as expressly admitted, Meta denies the allegations in paragraph 120.

121.    Meta admits that it did not seek or obtain permission from Plaintiffs to train its Llama models using datasets that included books Plaintiffs claim in this action to have authored and that Meta used BitTorrent to download certain portions of publicly available datasets that it used in the research,

development, training, and evaluation of its Llama models.  Meta further admits that, during the course of its downloading of certain portions of publicly available datasets via BitTorrent, some data was uploaded. Meta lacks knowledge or information sufficient to form a belief as to the allegations pertaining to third parties, and on that basis denies the same.  Except as expressly admitted, Meta denies the allegations in paragraph 121.

122.    Meta admits that it used BitTorrent to download certain portions of publicly available datasets that it used in the research, development, training, and evaluation of its Llama models.  Meta further admits that it incurred charges for cloud services utilized by the Meta generative AI group in 2024. Meta lacks knowledge or information sufficient to form a belief as to the allegations pertaining to third parties and on that basis denies the same.  Except as expressly admitted, Meta denies the remaining allegations in Paragraph 122 pertaining to Meta.

123.    To the extent the allegations set forth in this paragraph purport to summarize or characterize the contents of the webpage cited in Footnote 7 and located at https://arxiv.org/pdf/2302.13971.pdf, the webpage speaks for itself.  Meta denies that its actions provided any material or beneficial support to Anna's Archive or other alleged "shadow library providers."  Meta further denies that it torrented more than 236 terabytes from Anna's Archive in 2024. Meta lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 123 and on that basis denies the same.

124.    Meta denies the allegations in paragraph 124 pertaining to Meta.  Meta lacks knowledge or information sufficient to form a belief as to the alleged actions of third parties and on that basis denies the same.

125.    Meta denies the allegations in paragraph 125.

126.    The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Meta denies the allegations in paragraph 126.

127.    The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Meta denies the allegations in paragraph 127.

## VII.   CLASS ALLEGATIONS

### A.  Class Definition[6]

128.    The allegations in paragraph 128 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies that this action is suitable for class treatment under Rule 23.

129.    The allegations in paragraph 129 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies that this action is suitable for class treatment under Rule 23.

### B.   Numerosity

130.    The allegations in paragraph 130 state legal conclusions or arguments to which no response is required.   To the extent a response is deemed required, Meta denies that it possesses information concerning the exact number of members of Plaintiffs' putative class.  Meta lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 130, and on that basis denies the same.

### C.   Typicality

131.    The allegations in paragraph 131 state legal conclusions or arguments to which no response is required. To the extent a response is deemed required, Meta denies the allegations in paragraph 131.

### D.   Adequacy

---

[6] Meta reserves all rights to challenge every aspect of the Class Definition.  Meta objects to the revised Class Definition.

META'S ANSWER TO FACC
3:23-CV-03417-VC

132.     The allegations in paragraph 132 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies the allegations in paragraph 132.

**E.   Commonality and Predominance**

133.     The allegations in paragraph 133 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies that this action is suitable for class treatment under Rule 23.

134.     The allegations in paragraph 134 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies the allegations in paragraph 134.

**F.   Other Class Considerations**

135.     The allegations in paragraph 135 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies the allegations in paragraph 135.

136.     The allegations in paragraph 136 state legal conclusions or arguments to which no response is required.  To the extent a response is deemed required, Meta denies the allegations in paragraph 136.

## VIII.   DEMAND FOR JUDGMENT

Meta denies that this action may be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure as alleged in the FACC.  Meta denies that Plaintiffs and the proposed Class are entitled to relief whatsoever, including but not limited to the relief sought in the section of the FACC titled "Demand for Judgment."  To the extent that this section contains any allegations, Meta denies the same.

## <u>AFFIRMATIVE DEFENSES</u>

Meta asserts that Plaintiffs' claims are barred, in whole or in part, by the defenses set forth herein.

By setting forth these defenses, Meta does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs.  Meta reserves the right to plead any and all defenses that may be evident or revealed after investigation and discovery in this matter.

### FIRST AFFIRMATIVE DEFENSE

To the extent that Meta made any unauthorized copies of Plaintiffs' registered copyrighted works in connection with the training and development of its LLMs, or otherwise exercised any rights provided for under 17 U.S.C. § 106, such uses constitute fair use under 17 U.S.C. § 107.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs allege infringement with respect to millions of literary works that were allegedly included as part of the training datasets used to train Meta's Llama models, including Books3, LibGen, Z-Lib, and Internet Archive.  To the extent the accused datasets include works in the public domain, unregistered works, works to which copyright protection has been abandoned, works that lack requisite originality, works that are not subject to copyright protection under the doctrines of merger, *scènes à faire* or under 17 U.S.C. § 102(b) or otherwise unprotectable under the law, or works that are subject to misuse, unclean hands, laches, estoppel or other equitable defenses, or works that were not properly registered or renewed, provided improper notice, and/or did not comply with registration requirements and/or with other necessary formalities, Meta reserves its right to defend against Plaintiffs' claims on any or all of these grounds.

### THIRD AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred for lack of standing to the extent certain of the Plaintiffs do not own the copyright or do not own one or more of the rights afforded under 17 U.S.C. § 106 for some or all of the works, did not suffer sufficient cognizable injury to confer Article III standing, and/or otherwise lack standing to assert the claims herein.

### FOURTH AFFIRMATIVE DEFENSE

Any allegation that Meta created a derivative work fails to state a claim and the Court already dismissed such allegations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claim for removal of copyright management information is barred because Meta did not know or have reasonable grounds to know that its actions would induce, enable, facilitate, or conceal an infringement; its actions did not induce, enable, facilitate, or conceal an infringement; and Plaintiffs lack concrete injury proximately caused by any such action and, therefore, lack standing to assert that claim.

## SIXTH AFFIRMATIVE DEFENSE

To the extent Meta uploaded, shared, or distributed portions of copyrighted works in the context of downloading training datasets via bit torrent, any such distribution was *de minimis* and did not result in the transfer of an identifiable or usable copy of any copyrighted work.

## SEVENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred under the doctrine of unclean hands, to the extent that Plaintiffs have copied and used the copyrighted works of others without permission in the promotion of their business and/or their asserted works.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek excessive statutory damages under their claims that are disproportional to the alleged legal violations, such damages are barred by the Due Process Clause of the Fifth Amendment.

Dated: April 15, 2026

Kathleen Hartnett (314267)
Bobby Ghajar (198719)
**COOLEY LLP**
3 Embarcadero Center 20th Floor
San Francisco, California 94111
Telephone: (415) 693-2000
Email: khartnett@cooley.com
Email: bghajar@cooley.com

MARK WEINSTEIN (193043)
Elizabeth Stameshkin (260865)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Email: mweinstein@cooley.com
Email: lstameshkin@cooley.com

Phillip Morton (*pro hac vice*)
**COOLEY LLP**
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

**DUNN ISAACSON RHEE LLP**

BY: /S/ *KAREN L. DUNN*
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
Email: jphillips@dirllp.com
Email: ksmith@dirllp.com

Angela L. Dunning (212047)
**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

Anna Stapleton (337686)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5188
Email: astapleton@paulweiss.com

*Counsel for Defendant Meta Platforms, Inc.*

**<u>DEMAND FOR TRIAL BY JURY</u>**

Meta hereby demands a trial by jury on all claims, counterclaims, defenses, and issues in this action so triable.

Dated: April 15, 2026

Kathleen Hartnett (314267)
Bobby Ghajar (198719)
**COOLEY LLP**
3 Embarcadero Center 20th Floor
San Francisco, California 94111
Telephone: (415) 693-2000
Email: khartnett@cooley.com
Email: bghajar@cooley.com

Mark Weinstein (193043)
Elizabeth Stameshkin (260865)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Email: mweinstein@cooley.com
Email: lstameshkin@cooley.com

Phillip Morton (*pro hac vice*)
**COOLEY LLP**
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

**DUNN ISAACSON RHEE LLP**

By: /s/ *KAREN L. DUNN*
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
Email: jphillips@dirllp.com
Email: ksmith@dirllp.com

Angela L. Dunning (212047)
**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

Anna Stapleton (337686)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street
San Francisco, CA 94105
Telephone: (628) 432-5188
Email: astapleton@paulweiss.com

*Counsel for Defendant Meta Platforms, Inc.*