**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**CAFFERTY CLOBES MERIWETHER &**
**SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
(323) 968-2632
mb@butgericklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

*(additional counsel included below)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>*Individual and Representative Plaintiffs*,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>*Defendant.* | Case No. 3:23-cv-03417-VC<br><br>**PLAINTIFFS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE, PER DKT. 675 [CORRECTED]** |

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................................1

ARGUMENT......................................................................................................................................3

I.      THE COURT SHOULD PERMIT PLAINTIFFS TO AMEND THE COMPLAINT............3

II.     CLASS CERTIFICATION POSES NO UNIQUE RISKS TO FUTURE CLAIMS..............6

   A.   Res Judicata Poses No Barrier to Class Certification............................................................6

      1. Res Judicata Would Not Bar Class Members from Pursuing Non-Certified Market-
         Dilution Infringement Claims Based on AI Training Infringement......................................7

      2. Res Judicata Would Not Bar Absent Class Members from Bringing Future Claims Like
         Those Named Plaintiffs Lost at Partial Summary Judgment................................................8

      3. Any Concern of Preclusion of a Future Contributory Infringement Claim Favors
         Amendment...........................................................................................................................10

      4. The One-Award-Per-Work Rule Eliminates the Practical Danger of Res Judicata As To
         Absent Class Members.........................................................................................................11

   B.   Meta's Speculations on Adequacy and Typicality Are Unfounded.....................................12

   C.   Meta's Speculation on the Strength of Certification is Unfounded.....................................13

III.    THE COURT SHOULD REJECT META'S RENEWED REQUEST FOR A STAY...........14

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND
CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                          **Page(s)**

*Allen v. Bayshore Mall*,
   2013 WL 6441504 (N.D. Cal. Dec. 9, 2013)............................................................................ 5

*A&M Recs., Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) .............................................................................................. 13

*Atonio v. Wards Cove Packing Co., Inc.*,
   810 F.2d 1477 (9th Cir. 1987) .............................................................................................. 13

*Ascon Properties, Inc. v. Mobil Oil Co.*,
   866 F.2d 1149 (9th Cir. 1989) ................................................................................................ 5

*Bartz v. Anthropic PBC.*,
   787 F. Supp. 1007 (N.D. Cal. 2025)...................................................................................... 13

*Bartz v. Anthropic PBC.*,
   791 F. Supp. 3d 1038 (N.D. Cal. 2025).................................................................................. 13

*Baumann v. Chase Inv. Servs. Corp.*,
   747 F.3d 1117 (9th Cir. 2014) ................................................................................................ 8

*Becherer v. Merrill Lynch, Inc.*,
   193 F.3d 415 (6th Cir. 1999)............................................................................................... 1, 7

*B.P. v. Balwani*,
   2021 WL 4077008 (9th Cir. Sept. 8, 2021)........................................................................... 12

*Cancilla v. Ecolab Inc.*,
   2014 WL 2943237 (N.D. Cal. June 30, 2014) ......................................................................... 8

*China Agritech v. Resh*,
   584 U.S. 732 (2018)................................................................................................................. 6

*Comm. Concerning Cmty. Improvement v. City of Modesto*,
   2010 WL 3397421 (E.D. Cal. Aug. 27, 2010) ....................................................................... 10

*Cooper v. Federal Reserve Bank of Richmond*,
   467 U.S. 867 (1984)................................................................................................................. 2

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987)................................................................................................... 3

*Design Data Corp. v. Unigate Enter., Inc.*,
   2014 WL 4477244 (N.D. Cal. Sept. 11, 2014) ........................................................................ 3

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2021)................................................................................................. 11

*Dhillon v. Princess Cruise Lines, Ltd.*,
   2023 WL 5696529 (9th Cir. Sept. 5, 2023)............................................................................. 3

*Elohim EPF USA, Inc. v. 162 D & Y Corp.*,

707 F. Supp. 3d 372 (S.D.N.Y. 2023). ......................................................................*11*

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)........................................................................ *3, 4*

*Gillette v. Uber Techs.*,
  2015 WL 4931793 (N.D. Cal. Aug. 18, 2015)............................................... *5*

*Gunnels v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ....................................................................... *13*

*Hawthorne v. Umpqua Bank*,
  2014 WL 295499 (N.D. Cal. Jan. 26, 2014)................................................ *4*

*Herrera v. Cnty. of San Benito*,
  2025 WL 2323350 (N.D. Cal. Aug. 11, 2025)............................................. *6*

*Hollis v. Santa Barbara Cty. Sheriff's Dep't.*,
  2021 WL 4798652 (C.D. Cal. July 12, 2021)............................................. *8*

*Howard v. City of Coos Bay*,
  871 F.3d 1032 (9th Cir. 2017)..................................................................... *8*

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992)...................................................................... *3*

*In re Accellion, Inc. Data Breach Litigation*,
  2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ........................................... *12*

*In re College NIL Litigation*,
  2023 WL 8372787 (N.D. Cal. Nov. 3, 2023)............................................... *12*

*In re Napster, Inc. Copyright Litigation.*,
  2005 WL 1287611 (N.D. Cal. June 1, 2005). .............................................. *13*

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
  715 F.3d 716 (9th Cir. 2013)....................................................................... *4*

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994)....................................................................... *5*

*Lions Gate Films Inc. v. Saleh*,
  2016 WL 6822748 (C.D. Cal. Mar. 24, 2016)............................................ *11*

*Medimpact Healthcare Sys., Inc. v. Iqvia Inc.*,
  2021 WL 5605216 (S.D. Cal. Aug. 19, 2021) ............................................ *9*

*McConnell v. Gen. Tel. Co. of Cal.*,
  814 F.2d 1311, 1315-16 (9th Cir. 1987) ..................................................... *7*

*Nash v. Horizon Freight Sys., Inc.*,
  2020 WL 7640878 (N.D. Cal. Dec. 23, 2020)............................................. *12*

*Newton v. Am. Debt Servs.*,
  2013 WL 5592620 (N.D. Cal. Oct. 10, 2013............................................... *6*

*O'Brien v. Sky Chefs, Inc.*,
670 F.2d 864 (9th Cir. 1982) ......................................................................................... *13*

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)......................................................................................... *14*

*Piatt v. Money Store*,
819 Fed.Appx. 477 (9th Cir. 2020)................................................................................... *8*

*Reimer v. Snohomish Cnty. Fire Dist. No. 1*,
853 F. App'x 59 (9th Cir. 2021)........................................................................................ *4*

*Rodriguez v. Taco Bell Corp.*,
2013 WL 5877788 (E.D. Cal. Oct. 30, 2013) ....................................................................... *13*

*Royal Ins. Co. of America v. Southwest Marine*,
194 F.3d 1009 (9th Cir. 1999)........................................................................................... *4*

*Schneider v. YouTube, LLC*,
674 F. Supp. 3d 704 (N.D. Cal. 2023) .............................................................................. *13*

*Schwarzschild v. Tse*,
69 F.3d 293 (9th Cir. 1995)............................................................................................... *9*

*Sloane v. Karma Enters., Inc.*,
2009 WL 10672982 (C.D. Cal. Apr. 13, 2009)................................................................... *14*

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) ............................................................................................... *1, 6, 7*

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*,
708 F.3d 1109 (9th Cir. 2013)............................................................................................ *5*

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
2019 WL 95927 (N.D. Cal. Jan. 3, 2019)............................................................................ *5*

*United States. v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........................................................................................... *2*

*Valerio v. Boise Cascade Corp.*,
80 F.R.D. 626 (N.D. Cal. 1978)......................................................................................... *8*

*Wizards of the Coast LLC v. Cryptozoic Entm't LLC*,
309 F.R.D. 645 (W.D. Wash. 2015). ................................................................................ *6*

*Wright v. Schock*,
742 F.2d 541 (9th Cir. 1984)............................................................................................. *9*

## Statutes

17 U.S.C. § 504 ........................................................................................................... *9*

## Rules

Federal Rule of Civil Procedure 15.......................................................................... *2, 3, 5, 6*

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND
CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

Federal Rule of Civil Procedure 23 ........................................................................................ *8, 10*

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

As the Court recognized at the last hearing, the question still to be resolved in this case is highly consequential for copyright holders and the AI industry. While this Court held that training on copyrighted works can be fair use absent market dilution, the contours of permissible practices for sourcing those works remain to be defined. And this is the case to do it. Plaintiffs are aware of no other case with as much evidence as exists here of torrenting copyright works from notorious online markets for piracy. Meta's productions in the last several months unequivocally reveal that Meta unnecessarily and repeatedly engaged in massive data piracy by *uploading* over *80 terabytes* of copyrighted material as part of its torrenting process and enabling a vast web of intellectual property theft that affects millions of copyright holders to this day. That class of rightsholders deserves, and can obtain, redress for that historic injury right now, in this well-advanced litigation.

Indeed, Meta has now produced directories identifying potential class members and logs detailing Meta's torrenting and uploading activity with a level of granularity that shows Meta's distribution of Plaintiffs' works (and many millions more). These are the sort of "[c]ommon issues and evidence [that] heavily *predominate*," as Judge Alsup held in certifying a piracy class in *Bartz v. Anthropic PBC*. 791 F. Supp. 3d 1038, 1062 (N.D. Cal. 2025) (emphasis in original); *see also id.* at 1064 ("There is no serious prospect that these claims can be addressed through individual actions."). And the numerous emails and Workplace Chats of Meta employees joking about pirating from illegal websites and fretting about getting caught confirm Meta was no "innocent infringer." It actively engaged in (and may still be engaging in) the very digital piracy Congress aimed to deter when, through The Digital Theft Deterrence and Copyright Damages Improvement Act, it increased the maximum statutory damages for willful infringement to $150,000 per work.

As for the Court's thoughtful concern about res judicata, it could only potentially arise if Plaintiffs prevail (or do not lose) at summary judgment. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties."). And even then, there is little risk a class member would not be able to bring an infringement claim based on "the details," Dkt. 598 at 1, of that class member's asserted market dilution. First, such plaintiffs would either have an opt-out right or otherwise could not be bound. *See Becherer v.*

*Merrill Lynch, Inc.*, 193 F.3d 415 (6th Cir. 1999). Second, adjudication of classwide claims does not bar class members from later pursuing unadjudicated claims that include individual details, *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 878-81 (1984), such as the market-dilution claim as articulated by this Court, *see* Dkt. 598 at 1-2 (noting biographies of the same person would have different market dilution), 28 ("not all copyrighted works would have their markets diluted equally by AI-generated competitors"). Third, this Court's prior summary judgement ruling on Plaintiffs' AI training-based infringement claims was also only binding on the 13 named Plaintiffs given Meta's waiver of one-way intervention. A post-certification decision on Plaintiffs' uploading-related claims should not disturb the limited preclusive effect of that decision.

Additionally, the Court asked whether inexcusable delay mandates denial of Plaintiffs' motion for leave to amend. Governing law says no. The Ninth Circuit has repeatedly held a district court "abuse[s] its discretion by relying on undue delay" alone to deny amendment. *E.g.*, *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also* Dkt. 389 at 1 (applying Rule 15 and recognizing the same in granting leave to amend in this case). And Meta fails to advance any viable prejudice "that would justify the denial of leave to amend in combination with undue delay." *United Healthcare*, 848 F.3d at 1184. Meta itself seeks modifications to the case schedule that can readily accommodate any additional discovery warranted by the proposed amendments, particularly given that direct and contributory infringement largely rise and fall under the same facts, as Meta now concedes (at 9). Plus, the Court already stated that it will modify the schedule for coordination of further discovery into Meta's uploading with the *Entrepreneur* case. That case already has a contributory infringement claim, so Meta will litigate the issue either way.

Finally, two notes on the schedule. First, Meta's proposal for a six-month pause in this case is merely a motion for reconsideration of the stay request the Court just denied. It should be denied again for the same reasons. Second, Plaintiffs merely proposed class discovery and concurrent briefing in the interests of efficiency and expediency. But to the extent the Court prefers the parties continue to focus their efforts on completing fact discovery and proceeding to summary judgment on Meta's uploading before class discovery and briefing, Plaintiffs are amenable to that approach.

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND
CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

## ARGUMENT

### I.    THE COURT SHOULD PERMIT PLAINTIFFS TO AMEND THE COMPLAINT

The Court asked the parties to brief whether inexcusable delay requires denial of Plaintiffs' amendment or whether the Court may "give [Plaintiffs'] grace." 2/5/26 Tr. at 59. The law is unambiguous that such grace is not only permissible but warranted. Rule 16's good-cause standard argued by Meta is inapplicable, and inexcusable (or "undue") delay without a finding of actual prejudice or bad faith is insufficient to deny leave to amend under Rule 15. Meta has not shown cognizable prejudice. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (party opposing amendment "bears the burden of showing prejudice") (quotation marks omitted).

**A.** Meta first argues (at 8) that Plaintiffs have not shown "good cause" under Rule 16. But it is "an error of law" to apply "Rule 16's 'good cause' standard to [a] motion for leave to file [an] amended complaint" where, as here, "the court's scheduling order d[oes] not contain a deadline for amending the pleadings." *Dhillon v. Princess Cruise Lines, Ltd.*, 2023 WL 5696529, at *2 (9th Cir. Sept. 5, 2023). That's presumably why this Court applied Rule 15 and not Rule 16 last time. Dkt. 389 at 1. Meta's case citations do not compel a different conclusion this time around. In *Johnson v. Mammoth Recreations, Inc.,* the Ninth Circuit applied Rule 16 only because the plaintiff moved to amend *after* a cutoff for amendments in the scheduling order. 975 F.2d 604, 606, 608 (9th Cir. 1992). Similarly, *Design Data Corp. v. Unigate Enter., Inc.,* 2014 WL 4477244 (N.D. Cal. Sept. 11, 2014), involved a motion to amend that threatened to "upend the trial schedule" already set in that action. *Id.* at *2. As even Meta conceded months ago, there is no deadline to amend the pleadings here, *see* Dkt. 329 at 5, nor has any trial schedule been set. And given that all operative deadlines are in flux as the parties and this Court diligently hash out the specifics of a schedule to permit this case and *Entrepreneur* to coordinate discovery on Meta's torrenting and uploading, 2/5/26 Tr. at 58-59, modification to the case schedule will occur irrespective of any amendments.

**B.** Meta's arguments under Rule 15 fare no better. "Prejudice is the touchstone of the inquiry under rule 15(a)," *Eminence Cap.,* 316 F.3d 1048, 1052, and "[u]ndue delay by itself is insufficient to justify denying leave to amend," *United Healthcare*, 848 F.3d at 1184; *see also DCD*

3

*Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Hawthorne v. Umpqua Bank*, 2014 WL 295499, at *2 (N.D. Cal. Jan. 26, 2014) ("Plaintiffs' delay, ***though unexcused***, is not sufficient grounds to deny their motion to amend.") (emphasis added). Courts thus permit amendment even if plaintiffs were on notice of relevant facts during prior amendments. *See United Healthcare*, 848 F.3d at 1184 (district court "abused its discretion by relying on undue delay" where plaintiff "was aware of the purportedly 'new' allegations" long before amendment). In *Hawthorne,* putative class plaintiffs "delayed unduly" because they "were aware of the facts . . . long before the amendment was offered" and "the additional allegations supplement others already contained within" prior complaints. 2014 WL 295499, at *2. But Judge Tigar permitted amendment anyway because mere effect on defendants' "litigation strategy" was insufficient to deny amendment. *Id*. at *3; *see also Eminence Cap.*, 316 F.3d. at 1053 (abuse of discretion to deny leave to amend to plead "additional theories not previously alleged" even though plaintiffs previously had "three 'bites at the apple'").

Instead of focusing on prejudice, Meta rehashes that the delay is "undue" or "inexcusable," arguing (at 9-10) that the prior amendment coupled with Plaintiffs' knowledge of facts relevant to newly proposed amendments warrant denial. But Meta's caselaw is inapposite. *In re Western States Wholesale Natural Gas Antitrust Litigation* involved a plaintiff who sought leave to amend after summary judgment to allege a damages theory known to plaintiff "since the inception of the suit." 715 F.3d 716, 728, 738 (9th Cir. 2013). Similarly, and also unlike here, the proposed amendment in *Royal Ins. Co. of America v. Southwest Marine* came only "after the district court dismissed [plaintiff's] claims on summary judgment," and plaintiff "did nothing more than reassert an old theory of liability based on previously-known facts" the plaintiff knew "from the inception of the lawsuit." 194 F.3d 1009, 1013, 1017 (9th Cir. 1999). That is a far cry from this case, where discovery on Meta's uploading is continuing and summary judgment briefing has not commenced.

Meta also argues (at 4) that courts can consider "whether plaintiff has previously amended his complaint" in denying amendment. But the Ninth Circuit does not focus merely on prior amendments, but on "*repeated failure to cure deficiencies* by amendments previously allowed." *United Healthcare*, 848 F.3d at 1183 (emphasis added); *see also Reimer v. Snohomish Cnty. Fire*

4

*Dist. No. 1*, 853 F. App'x 59, 61 (9th Cir. 2021); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Here, all that can be said is that adding a contributory infringement claim for uploading was possible for the prior amendment, not repeat amendments. And, even then, many of the specific facts now alleged in the proposed amendment were not available to Plaintiffs at that time. Indeed, just prior to the last amendment, Meta's corporate deponent *denied* widespread seeding of files, *see* Dkt. 301-7 at 9 (11/20/24 Clark 30(b)(6) Dep. Tr.), and Plaintiffs' proposed amendments rely heavily on very different facts Plaintiffs have discovered since then (and that continue to develop through Meta's ongoing productions). Far from not seeding or uploading at all, Meta's recent productions reveal that it actually distributed well over *80 terabytes* of pirated works, an unprecedented level of digital piracy. *See*, *e.g.*, Dkt. 659-2.

As for prejudice (as opposed to just delay), Meta says little. It invokes (at 5-6) the burden of concurrently litigating two actions and the expense of unspecified additional discovery. But this Court already recognized, Dkt. 389 at 1-2, that "expenditure of time and money in litigation to defend a claim does not constitute prejudice within the meaning of Rule 15." *Gillette v. Uber Techs.*, 2015 WL 4931793, at *4 (N.D. Cal. Aug. 18, 2015); *see also Synchronoss Techs., Inc. v. Dropbox Inc.*, 2019 WL 95927, at *3 (N.D. Cal. Jan. 3, 2019) (granting amendment after close of discovery because "the mere need for additional discovery, by itself, does not constitute sufficient prejudice under Rule 15 to withhold leave to amend"); *Allen v. Bayshore Mall*, 2013 WL 6441504, at *4 (N.D. Cal. Dec. 9, 2013) ("Defendants' assertion of prejudice based on a need for further, unspecified discovery . . . is unperceived.").[1] Moreover, Meta agrees the direct and contributory infringement claims "are two sides of the same coin," 2/5/26. Tr. at 35:22-23, so any discovery for the latter would be minimal. *See Allen*, 2013 WL 6441504, at *4 (no prejudice where "basic fact pattern will remain the same" and "[a]ll that is being added is another legal string to the same old

---

[1] Meta cites *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) and *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), for the proposition that increased litigation expense is cognizable prejudice. But neither case holds litigation expense is sufficient to sustain a finding of prejudice for purposes of Rule 15, and both cases are inapposite. *Ascon* held that *four of the five* Rule 15 factors, including bad faith, were "apparent from the record," and there the plaintiff was attempting to replead a claim the district court previously dismissed. 866 F.2d at 1160-61. And *Kaplan* involved an attempt to add allegations concerning statements in documents quoted in the *original complaint* only two months before trial and after fact discovery was complete. 49 F.3d at 1370. Both are a far cry from this case.

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

bow") (quotations omitted)); *Herrera v. Cnty. of San Benito*, 2025 WL 2323350, at \*5 (N.D. Cal. Aug. 11, 2025) (no prejudice where new claims do "not appear to advance different legal theories and require proof of different facts"). In short, Meta's alleged prejudice is "little more than the ordinary burdens of defending a lawsuit, which are insufficient to justify denying leave to amend." *E.g.*, *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 653 (W.D. Wash. 2015).

Plaintiffs, on the other hand, *will* be prejudiced if their motion to amend is denied. *See Newton v. Am. Debt Servs.*, 2013 WL 5592620, at \*15 (N.D. Cal. Oct. 10, 2013) ("Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment."). The full story of Meta's torrenting and uploading did not come to light through a single watershed moment. Rather, it has evolved over the last 10 months and Meta's 34 document productions since the prior amendment. *See* Appendix A. Notwithstanding that Plaintiffs could have plausibly alleged contributory infringement before, the allegations today are far more robust due to Plaintiffs' dogged discovery efforts. More importantly, permitting Plaintiffs to add a contributory infringement claim now will operate as a "belt and suspenders" response to Meta's evolving defenses to its mass uploading and distribution of pirated works. In Meta's recent briefing, it has—finally—articulated a "bits" defense to its infringing conduct—i.e., that Plaintiffs cannot prove distribution by virtue of how BitTorrent technology itself works. While that argument is meritless, the Supreme Court has contemplated similar scenarios and favored amendment to protect class interests. *See China Agritech v. Resh*, 584 U.S. 732, 740 n.2 (2018) ("as class discovery proceeds and weaknesses . . . come to light, the lead complaint might be amended").

Therefore, applying Rule 15 as required—liberally and in the interest of justice—Plaintiffs respectfully request the Court's grace for leave to file their amended complaint, at Dkt. 659-13.

## II.     CLASS CERTIFICATION POSES NO UNIQUE RISKS TO FUTURE CLAIMS

### A.   RES JUDICATA POSES NO BARRIER TO CLASS CERTIFICATION

As the Supreme Court has held (in a case Meta did not cite), "[n]either a proposed class action nor a rejected class action may bind nonparties." *Smith v. Bayer Corp.*, 564 U.S. 299, 315

(2011). Res judicata thus could only be potentially implicated if Plaintiffs prevail (or do not lose) at summary judgment. And as this is a proposed nationwide class, claims will survive if the law of *any court* supports them, not just the Ninth Circuit.[2] As explained below, even if an uploading class is certified, its members likely would still be able to bring an AI training claim based on market dilution (and a contributory-infringement claim if Plaintiffs' amendment is not permitted).

### 1.   Res Judicata Would Not Bar Class Members from Pursuing Non-Certified Market-Dilution Infringement Claims Based on AI Training Infringement

Class members that exercise opt-out rights or never had the opportunity "are bound by the district court's judgment . . . only to the extent of the issues that were litigated as to that certified class." *Becherer v. Merrill Lynch, Inc.*, 193 F.3d 415, 418, 422 (6th Cir. 1999) (en banc); *see also supra*, text accompanying n. 2 (explaining why Sixth Circuit law applies). Thus, any putative class member who might prefer to pursue a (single) recovery only if a training-based claim is also live would have that option.

Class members likely would be protected even absent opting out. In *Cooper v. Federal Reserve Bank of Richmond*, the Supreme Court unanimously held res judicata does *not* bar members of a class that litigated a common pattern-or-practice discrimination claim from later bringing individual claims for discrimination that turn on different facts. 467 U.S. at 878-81. So, too, here. This Court held a copyright holder has a viable claim for AI training-based infringement if the rightsholder can show market dilution through "indirect substitution," Dkt. 598 at 25-26, an inquiry that varies by the "details" of each work, *id.* at 1-2 (noting "some types of works" present "murkier" questions), 28 ("not all copyrighted works would have their markets diluted equally by AI-generated competitors").[3] Under *Cooper*, absent class members thus would not be precluded

---

[2] Preclusion, of course, must ultimately be left to the judgment of a future court and thus cannot be adjudicated now one way or the other. *See*, *e.g.*, *Smith*, 564 U.S. at 307 (holding that a "court does not usually get to dictate . . . the preclusion consequences of its own judgment"); *McConnell v. Gen. Tel. Co. of Cal.*, 814 F.2d 1311, 1315-16 (9th Cir. 1987) (explaining that "[t]he potential for res judicata . . . is only speculative, at best . . . . [u]ntil such time as these doctrines are applied to the parties, this matter is not ripe for consideration by this court").

[3] Plaintiffs continue to respectfully disagree that a training-based infringement claim is so limited, but because the Court rejected Plaintiffs' theory prior to class certification, absent class members cannot be bound by that ruling. *See Smith*, 564 U.S. at 315.

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

from bringing claims that turn on such details rather than issues that are common to an uploading class.

Applying the foregoing principles here means that a class judgment on uploading (based either on uploading only or uploading and contributory infringement) would, at most, only bar a successive action alleging the same claim(s).[4] Nothing in the caselaw cited above (or by Meta)[5] suggests a later court could or would apply res judicata to bar absent class members' non-certified claims on training and market dilution simply because the uploading claim was *certified* here and proceeded to judgment. Further, while claim preclusion theoretically can arise via settlement, parties can mitigate such risks in the scope of release, and the amount of the settlement would be the subject of an arm's length negotiation that accounts for released and unreleased claims. *See Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 648 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981) (noting the "procedural safeguards" under Rule 23 to protect absent class members in settlement).  Indeed, the recent settlement of a pirated books class in *Bartz* posed no such risks.[6]

### 2. Res Judicata Would Not Bar Absent Class Members from Bringing Future Claims Like Those Named Plaintiffs Lost at Partial Summary Judgment

Absent class members would not be precluded from bringing claims against Meta for an additional reason. Where a defendant, like Meta, waives one-way intervention and a case proceeds

---

[4] Additionally, res judicata does not bar claims that "accrue after the filing of the operative complaint." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017). Thus, any classwide judgment would not preclude claims arising out of conduct post-dating filing the operative complaint, including claims involving works Meta used in other models or products.

[5] Meta's claim that *res judicata* applies with equal force in the class context is unsupported by the cases it cites. Two focus on the preclusive effect of settlements. *See Cancilla v. Ecolab Inc.*, 2014 WL 2943237, at *7 (N.D. Cal. June 30, 2014) (a "settlement's broad release of liability may have preclusive effect"); *Hollis v. Santa Barbara Cty. Sheriff's Dep't.*, 2021 WL 4798652, at *2 (C.D. Cal. July 12, 2021) ("Thus, an individual who was a member of a certified class that resulted in a settlement will have his or her claims that were, or that could have been, raised in that class action barred by operation of res judicata."). Meanwhile, *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014), was not a class action and solely and incorrectly cited *Cooper* for dicta that class action judgments can preclude future class claims that could have been brought. *Id.* at 1123. And *Piatt v. Money Store*, 819 Fed. Appx. 477, 479-80 (9th Cir. 2020), did not involve a judgment rendered prior to class cert but a successive class action that was nearly identical to the previous class case. *Id.* at 479-80 ("In both actions, class members sought to recover damages based on attorneys' fees improperly charged to borrowers by the same defendants under the same or similar loan documents, including on the basis that attorneys' fees were shared with a non-attorney entity.") Notably, while Meta argues courts use a "transaction test" to determine the contours of estoppel, it cites to non-class cases for the analysis.

[6] The settlement included a narrowly tailored release limited to past claims arising out of torrenting, scanning, and training; it did not extend to future conduct or output claims, preserving future claims for training or piracy arising out of new models.

to summary judgment prior to class certification, "[t]he judgment will not be res judicata as to other individual plaintiffs or other members of *any class that may be certified*." *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) (emphasis added); *see also Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) ("when defendants obtain summary judgment before the class has been properly certified . . . the defendants . . . assume the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members" (quotations omitted)); Dkt. 598 at 5 ("This is not a class action, so the ruling only affects the rights of these thirteen authors— not the countless others whose works Meta used to train its models."). Meta avoided class certification on training, but the tradeoff was a judgment that does not preclude absent class members. If certification of a *separate* claim changed that calculus, a defendant could simply elect one-way intervention, move for summary judgement on some but not all of the putative class claims, and after obtaining a favorable decision, strategically use that ruling to defeat certification on the claims yet to be addressed. Meta cites no caselaw that supports such an untenable outcome.

Further, even if a court adopted Meta's "transaction" test, as opposed to the Ninth Circuit's four-factor test for claim preclusion, it is pure speculation how res judicata might apply to future claims. First, the works Meta torrented do not fully overlap with the works Meta later used to train, and Meta's torrenting and training occurred at different points in time. *See Medimpact Healthcare Sys. v. Iqvia Inc.*, 2021 WL 5605216, at *6 (S.D. Cal. Aug. 19, 2021) ("Where two claims are grounded in different conduct, different subject and different times, they do not share a common nucleus of operative facts.") (quotations omitted). Relatedly, the data Meta torrented and uploaded from LibGen in 2022 was shelved for being too risky to use as training data. Then, approximately eight months later, Meta re-acquired the same data (and more) to train Llama 3. To deny certification to members of an uploading class to protect them from the preclusive reach of that decision in relation to training claims they could not bring in the first place would be nonsensical. Second, Plaintiffs' uploading claim implicates highly technical evidence relevant to BitTorrent technology that has nothing to do with AI training or market dilution such that it could form a "cohesive trial unit." Third, an AI training claim predicated on a market-dilution theory would rest

9

on entirely different facts and theories of harm regarding Llama models' AI-generated outputs and the impact of AI-generated writing on different book markets, which this Court recognized might raise challenging issues in the Rule 23 context. *See* Dkt. 598 at 28 ("not all copyrighted works would have their markets diluted equally by AI-generated competitors"); 2/5/2026 Tr. 48:18-49:5.

In addition to a new class action, absent class members also remain free to pursue individual claims as private litigants. As discussed above, the Supreme Court unanimously held that class action judgments do not bar future, individual claims. In *Cooper*, the individual discrimination claims were not barred by an earlier (but related) class judgment because they presented issues unique to the plaintiffs' individualized injuries, 467 U.S. at 873-74, much like the issues likely implicated in a hypothetical future AI training claim based on this Court's market-dilution theory. This rule makes good sense: it would be fundamentally unfair for a class action to bar future claims that could never have been brought in a class action at all. The market-dilution theory the Court embraced in its summary judgment order, Dkt. 598 at 28-33, creates questions of commonality and predominance that are not present with Meta's uploading and distribution of pirated copyrighted works. Indeed, the Court recognized that "not all copyrighted works would have their markets diluted equally by AI-generated competitors." *Id.* at 28. It thus is no surprise that the *Entrepreneur* case, which seeks to recover under that theory, is *not* a proposed class case.

### 3. Any Concern of Preclusion of a Future Contributory Infringement Claim Favors Amendment

Ignoring the limitations on the application of res judicata in the class context discussed above and assuming, *arguendo*, a court applied Meta's "transaction" test, then whether certification on Plaintiffs' uploading claim might prevent absent class members from bringing a future contributory infringement claim (if the Court denies amendment) is a closer question. But to the extent that the Court is concerned about prejudice to future contributory infringement plaintiffs, the Court could simply extend grace and permit amendment. *See Comm. Concerning Cmty. Improvement v. City of Modesto*, 2010 WL 3397421, at \*5 (E.D. Cal. Aug. 27, 2010) ("prejudice to plaintiffs outweigh[s] prejudice to" defendants where "[a]bsent the amendment, the

10

claims would not be adjudicated."). In any event, the statutory scheme of awarding a single statutory damages award per work would, in itself, likely eliminate any prejudicial impact to absent class members who did not opt out and were later found to be precluded from bringing this claim.

### 4. The One-Award-Per-Work Rule Eliminates the Practical Danger of Res Judicata As To Absent Class Members

Meta surprisingly contends (at 11) that if this Court certifies an uploading-only class, absent class members will be "prejudiced by the unavailability of additional statutory damages." But no party can pursue multiple statutory damages awards in relation to a single work, irrespective of how many infringements are in play. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir. 2021) ("The number of awards available under [the Copyright Act] depends not on the number of separate infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers.") (quotation omitted). Nor does Meta cite any caselaw for its claim that three theories over one will result in a higher statutory damages award against Meta. To the contrary, in *Elohim EPF USA, Inc. v. 162 D & Y Corp.*, the court assessed damages of $3,500 per work against all defendants, notwithstanding that some committed only direct infringement and others were liable for both direct and contributory infringement. 707 F. Supp. 3d 372, 404-05 (S.D.N.Y. 2023). The Ninth Circuit's model factor-driven jury instructions for copyright statutory damages likewise make no mention of the number or types of infringements by a defendant like Meta. *See* 9th Cir. Model Jury Instructions § 17.37.

Instead—and importantly here—statutory damages can only be increased to the maximum award on a finding of willfulness. 17 U.S.C. § 504(c)(2); *see also, e.g., Lions Gate Films Inc. v. Saleh*, 2016 WL 6822748 (C.D. Cal. Mar. 24, 2016) (awarding statutory maximum for willful infringement). In this case, the strongest evidence of willfulness will be Meta's intentional—and repeated—decision to unnecessarily upload millions of pirated copyrighted works to others via BitTorrent while simultaneously discussing its illegality and how to avoid getting caught. *See* Dkt. 586-3 (using virtual computers to "avoid[] risk of tracing back the seeder is from [Facebook] server"). Where, as here, Plaintiffs can squarely show Meta's uploading was willful, class members

are already entitled to the maximum statutory damages award per work ($150,000) irrespective of how many other theories of liability are available. And even if a jury were to award something less, there is nothing to suggest having more infringements in the case would change that outcome.

### B. Meta's Speculations on Adequacy and Typicality Are Unfounded

Courts routinely certify classes where plaintiffs lose some claims on dispositive motions, and even where they never bring related claims. In *Bartz*, for example, Anthropic won summary judgment on its fair-use defense on training claims but lost on piracy. 787 F. Supp. 3d 1007, 1034 (N.D. Cal. 2025). The court then certified a piracy class, appointing certain plaintiffs who lost on their training claim as class representatives. *Bartz*, 791 F. Supp. 3d at 1048-50;[7] s*ee also Nash v. Horizon Freight Sys., Inc.*, 2020 WL 7640878, at *3 (N.D. Cal. Dec. 23, 2020) (Chhabria, J.) (certifying class on surviving claims after granting defendant partial summary judgment on others).

The fact that a certified class does not include every possible theory does not render a named plaintiff—or class counsel—inadequate. Courts routinely deny adequacy challenges to class plaintiffs predicated on a failure to pursue all available claims. *See*, *e.g.*, *In re College NIL Litig.*, 2023 WL 8372787, *7 (N.D. Cal. Nov. 3, 2023) (rejecting argument that named plaintiffs were inadequate for "abandon[ing] certain claims that they could have asserted," and recognizing this was "not a proper ground for denying certification" because "[a]ny members of the proposed damages classes who wish to pursue the claims that Plaintiffs have abandoned for strategic reasons will have the opportunity to exclude themselves and file their own lawsuits"); *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *10 (N.D. Cal. Sept. 30, 2025) ("The fact that Plaintiffs declined to pursue some theories of recovery does not make them inadequate."). Likewise, in *B.P. v. Balwani*, the Ninth Circuit held that "[t]he district court did not err by concluding that plaintiffs dropped their emotional distress and subsequent medical treatment claims for the strategic benefit of the entire class, and there is no conflict of interest." 2021 WL 4077008, at *1 (9th Cir. Sept. 8,

---

[7] *Bartz* is also an instructive example of notice and opt-out rights and preserving class members' rights to pursue alternate claims. Shortly after Judge Alsup's order certifying a litigation class, the plaintiffs prepared and submitted a proposed Class Notice Plan to comply with the court's instructions for "rigorous notice process," including a comprehensive per-work list of the copyrighted works at issue. *Bartz* Dkt. 244 at 10, 30, Dkt. 317. Even with that extremely fulsome Class Notice, and an extension of the opt out period, less than 0.4% of the class chose to opt out.

**PLS' FURTHER BRIEFING RE MOTION FOR LEAVE, MOTION FOR CLASS DISCOVERY AND CERTIFICATION BRIEFING, AND PROPOSED SCHEDULE**
CASE NO. 3:23-cv-03417-VC

2021). Similarly, here, Plaintiffs pursued a copyright infringement claim based on allegations of classwide harm in the market for AI training data. While this Court was unpersuaded, Plaintiffs (and their counsel) are not inadequate for advancing a readily certifiable theory of market harm that is currently being advanced by every other putative AI training class case across the country.[8]

### C. Meta's Speculation on the Strength of Certification is Unfounded

Uploading is a paradigmatic copyright case for class certification because it implicates common evidence, common legal questions, and simple market substitution that mitigates any viable fair use defense. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016-17 (9th Cir. 2001), *as amended* (Apr. 3, 2001) (describing substitutive effect of P2P file sharing), *cf.* 2/5/26 Tr. 48:18-49:44 ("[F]or the distribution and contributory infringement claims, I'm not sure . . . any of those differences [between types of writers] matter" for class certification). As the court noted in the factually analogous *Napster* class certification decision, "the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work by Napster users. This shared factual predicate in turn gives rise to a host of common legal issues concerning [the defendant's] involvement in the operation of the Napster network." *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. June 1, 2005). While Meta insinuates (at 11) that certification is unlikely because Plaintiffs will rely on an "individualized probabilistic assessment" of Meta's distribution of class works, that is incorrect as a factual and legal matter.[9]

Meta has produced directories of nearly all torrented works, and corresponding uploading and data transfer logs capturing details of the torrent files uploaded. With this evidence, Plaintiffs

---

[8] Meta's citations do not compel a different result. Meta argues (at 10) that *O'Brien v. Sky Chefs, Inc.* approved decertification "in order to avoid potentially harmful res judicata effects on the class," when in fact the court just mentions res judicata in holding the district court did not err in decertifying a class prior to granting summary judgment to the defendant. 670 F.2d 864, 869 (9th Cir. 1982), *overruled on other grounds by Atonio v. Wards Cove Packing Co.*, Inc., 810 F.2d 1477 (9th Cir. 1987). Meta's out-of-district authority (at 10 n.6) fares no better as it focuses on claim-splitting, but class actions are a "recognized exception[] to the rule against claim-splitting." *Gunnels v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003); *see also Rodriguez v. Taco Bell Corp.*, 2013 WL 5877788, at *3 (E.D. Cal. Oct. 30, 2013).

[9] Meta's reliance (at 11) on *Schneider v. YouTube, LLC,* 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023), to support its argument that copyright claims are not suited for class treatment is misplaced and in fact only underscores the strength of Plaintiffs' uploading claim. In *Schneider*, Judge Donato denied class certification because there were individualized questions as to whether the video uploaded to YouTube was *substantially similar* to the asserted work to constitute infringement. *Id.* By contrast, here, Meta made and distributed the *identical* content of the copyrighted works it pirated.

13

will prove actual distribution through identifying all works in torrent files Meta distributed to others and can certify a class of rightsholders accordingly. Moreover, the allegedly "probabilistic" nature of the evidence is wholly irrelevant because Meta's "making available" of Plaintiffs' works in the context of using BitTorrent is sufficient proof of actual distribution. And even without recognizing the making-available right, as an evidentiary matter, all the works a peer-to-peer file sharing defendant like Meta makes available while torrenting are "deemed distributed" when there is sufficient circumstantial evidence of infringing conduct. Either option is well-supported in the Ninth Circuit. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007) (holding "deemed distribution rule" did not apply to defendant where "it d[id] not have a collection of stored full-size [copyrighted works that] it makes available to the public"); *see also Sloane v. Karma Enters., Inc.*, 2009 WL 10672982, at *7 (C.D. Cal. Apr. 13, 2009) ("Although evidence that a defendant offered a copyrighted work to the public is not by itself sufficient to sustain a claim for copyright infringement, it can, in conjunction with other circumstantial evidence, support an inference that the copy was likely transferred to a member of the public.") (citation omitted).

## III.   THE COURT SHOULD REJECT META'S RENEWED REQUEST FOR A STAY

The Court already held it will not stay this case while the *Entrepreneur* action proceeds. 2/5/2026 Tr. 17:7. Yet Meta again asks (at 14) for a six-month delay in the *Kadrey* schedule to allow Entrepreneur to "obtain[] additional discovery on distribution from Meta." This would be entirely inefficient. Though Meta, in *Kadrey*, has promised to produce all torrenting-related discovery by the end of February, there is still much left it must provide, including, *e.g.*, full information about (1) Meta's AI Dataset Collection, the "single source of truth for data discovery, sourcing, management, evaluation, and governance," Dkt. 645-8, including the torrented pirated files and datasets, none of which Meta has produced since the Court ordered it three months ago, Dkts. 654 at 2-3, 5, 647; and (2) Meta's recent disclosures that (i) Meta *deleted 9 terabytes* of pirated copyrighted works (*i.e.*, evidence) *during* this litigation, and (ii) some Meta employees unsuccessfully attempted to stop Meta's torrenting from Anna's Archive and Library Gensis in 2024. Rather than expeditiously provide this important discovery, Meta, in the wake of these case-

shaking disclosures, is attempting to cut discovery off by imposing a back door stay. Meta also makes no argument as to why it can't conduct class discovery while *Entrepreneur* proceeds apace.

Further, Meta's position that only Entrepreneur should conduct discovery into Meta's torrenting and uploading while cutting off Plaintiffs' ability to finish such discovery is inexplicable and prejudicial, especially given that the Court has already favored efficient information-sharing between *Kadrey* and *Entrepreneur*. The most efficient way to coordinate the remaining discovery with Entrepreneur into Meta's conduct at issue in the actions' overlapping claims is to permit plaintiffs in both cases to complete that discovery and then permit the parties to proceed to expert discovery and summary judgment on their respective schedules. This should be simple if, as Meta told the Court, it has "really tried to bottom . . . out" all its torrenting discovery. 11/10/25 Tr. 30:8.

Moreover, given the advanced stage of *Kadrey* compared to *Entrepreneur*, and importantly the fact-intensive discovery Entrepreneur will need to conduct into Meta's training on its works and market dilution, Meta's proposal (at 14) to "align expert discovery and summary judgment proceedings" is similarly inefficient and prejudicial. Under the current schedule in *Entrepreneur*, summary judgment on the market-dilution claim will not be heard until February ***2027***. But *Kadrey*'s uploading claim will be ripe for summary judgment long before that, assuming Meta expeditiously produces everything it has "bottom[ed] … out."  Thus, there is no efficiency to be gained by forcing the *Kadrey* Plaintiffs and Entrepreneur to conduct expert discovery and summary judgment simultaneously. The schedules that Plaintiffs propose in Appendix B (with concurrent class discovery and briefing) and Appendix C (without concurrent class practice) provides ample time for the parties to coordinate the remaining discovery into Meta's torrenting and uploading, while allowing Entrepreneur to continue to litigate its other claims as the parties here proceed to expert discovery and summary judgment.[10] This schedule also allows the Court to adjudicate Meta's uploading prior to summary judgment in *Entrepreneur*, which will streamline proceedings there.

---

[10] Again, Plaintiffs have no objection if the Court prefers to complete summary judgment before the parties engage in class practice.

15

Dated: February 21, 2026

By:    /s/ *Maxwell V. Pritt*
      Maxwell V. Pritt

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (State Bar No. 083151)
Daniel M. Hutchinson (State Bar No. 239458)
Jallé H. Dafa (SBN 290637)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

Kenneth S. Byrd (pro hac vice)
Betsy A. Sugar (pro hac vice)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
kbyrd@lchb.com
bsugar@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Louis Andrew Kessler (SBN 243703)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
lkessler@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

16

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butticklaw.com

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dstraite@dicellolevitt.com

**COWAN DEBAETS ABRAMS &
SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

17