# APPENDIX A

**Timeline of Uploading-Related Discovery**

1. **November 20, 2024:** Meta 30(b)(6) deponent reveals for the first time—three weeks before the close of fact discovery and several weeks after the deadline to serve written discovery—that Meta torrented files from Library Genesis ("LibGen") in 2023, and that torrenting includes "some . . . sharing of the Torrent file while you're downloading." Dkt. 301-7 at 8. But he also testified that Meta "minimized seeding the files . . . [t]o the lowest possible setting[.]" *Id.* at 9. At this time, Meta **had not disclosed** any of the mass torrenting of LibGen that it did in 2022 or any of the mass torrenting it did through Anna's Archive just earlier that year.[1]

2. **November 27, 2024:** Plaintiffs move for leave to file Third Amended Consolidated Complaint ("TACC") to add causes of action under the DMCA and CDAFA, and to add allegations concerning the newly discovered torrenting of LibGen by Meta in 2023.

3. **December 13, 2024:** Meta makes a document dump on the last day of discovery that reveals it mass torrented pirated copyrighted works through Anna's Archive earlier that year.

4. **December 20, 2024:** Judge Hixson denies document discovery on torrenting and 30(b)(6) testimony on seeding.
   a. "*The Court does not see how torrenting is responsive to this RFP, which is about the processing of data, not its acquisition.* As noted below, the Court does think torrenting is relevant to the case, but it is not responsive to the RFP Plaintiffs moved to compel on." Dkt. 351 at 2 (public refiling at Dkt. 401) (emphasis added).
   b. Meta did not disclose it torrented copyrighted works from notorious online marketplaces for piracy and IP infringement until well after the Court's deadline to serve written discovery. Plaintiffs therefore were only able to pursue torrenting-related discovery via 30(b)(6) topics. *See id.* at 6 ("*[T]he Court does not see that seeding falls within any of Plaintiffs' 30(b)(6) deposition topics. The Court also does not see how details about seeding are relevant to the claims in the existing pleadings.* Accordingly, Plaintiffs' motion to compel is DENIED.") (emphasis added).

5. **January 13, 2025:** The Court grants Plaintiffs' motion for leave to amend and sustains Plaintiffs' Rule 72 objection to the 30(b)(6) portion of Judge Hixson's December 20th order.

---

[1] Given the voluminous nature of the discovery described herein, Plaintiffs do not attach supporting exhibits but will do so at the Court's request.

a. "The earlier reference to torrenting [in a single document produced by Meta] indicated that Meta was *not* torrenting. And although the plaintiffs may have had information regarding Meta's alleged use of LibGen and removal of CMI earlier than November, they did not unduly delay by waiting to move for leave to amend 'until they had sufficient evidence . . . upon which they could base claims of wrongful conduct.' *DCD Programs, Ltd. v. Leighton*, 833 F.2d 182, 187 (9th Cir. 1987). In any event, 'delay, by itself, is insufficient to justify denial of leave to amend.' *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023)." Dkt. 389 at 1 (emphasis in original).

b. "The plaintiffs' request for 30(b)(6) testimony on seeding (as stated in the joint letter brief, ECF No. 338-11) is granted. . . because that testimony suggests that seeding is a necessary part of torrenting (or at least of Meta's alleged torrenting), *seeding also necessarily falls within the 30(b)(6) topics that encompass torrenting.* Moreover, evidence about seeding is relevant to the existing claim because it is potentially relevant to the plaintiffs' assertion of willful infringement or to Meta's fair use defense." Dkt. 389 at 2 (emphasis added).

6. **January 20, 2025:** After the Court's order granting Plaintiffs leave to amend, both parties submit competing proposals for discovery on Meta's torrenting and uploading. Dkt. 405. Plaintiffs' proposal includes re-opening fact discovery for a short period and a torrenting expert. Meta proposed no discovery at all. The Court chose Meta's proposal. Dkt. 406.

7. **February 7-12, 2025:** Meta discloses its vendor inadvertently sequestered 18,000 records during the discovery period, and it produces 1,348 records, including key documents such as:
    a. The first statements showing knowledge of the heightened legal risk of torrenting relative to direct download from notorious online marketplaces for piracy and IP infringement;
    b. Explicit mention of seeding in connection with Meta's peer-to-peer file sharing of pirated works; and
    c. Discussion of the "legal tradeoffs" of torrenting LibGen as opposed to licensing books.

8. **February 27, 2025:** The Court states at a hearing concerning Meta's inadvertent sequestration and belated productions that while it "made a decision about no further discovery" after granting Plaintiffs leave to amend, #6 *supra*, "it was a close question." 2/27/25 Hr'g Tr. at 40:12-13. The Court orders the parties to submit competing "baseball arbitration" discovery proposals to address Meta's belated production of sequestered documents.

9. **March 5-7, 2025:** The parties submit their court-ordered competing baseball arbitration proposals (Dkts. 467, 470) and the Court selects Plaintiffs' proposal, which was limited to:

   a. A torrenting expert report;

   b. One 30(b)(6) deposition including a topic on Meta's uploading in torrenting;

   c. One sufficient-to-show RFP on Meta's configurations and billing records for its torrent clients; and

   d. A limited torrenting-related search run over four new custodians (in addition to the original ones).

10. **April 1, 2025:** Meta serves a *second* Rebuttal Report from Barbara Frederickson-Cross (BFC) that identifies the first time affirmative evidence that Meta uploaded content it downloaded from notorious online piracy markets via torrenting using *six dedicated virtual computers*. BFC calculates Meta uploaded 40.42 TB of copyrighted content it torrented from piracy markets in 2024. The report **does not disclose** or account for Meta's 2022 torrenting from LibGen, and BFC later testifies she wasn't aware of that torrenting.

11. **April 2, 2025:** Meta included in its 30(b)(6) deponent's deposition binder a summary document prepared by counsel and used to educate the witness that purported to walk through at a high level Meta's torrenting in 2022, 2023, and 2024. That document reveals **for the first time** that Meta torrented files from LibGen's Fiction and Non-Fiction databases, both of which contain Plaintiffs' works, in 2022. Meta's witness testifies Meta only used *six servers* to torrent Anna's Archive in 2024 and that Meta *did not* torrent any files from LibGen Fiction in 2024. Plaintiffs learn months later **that testimony is wrong**.

    a. While Meta disclosed for the first time on April 2, 2025, that it torrented from LibGen in 2022, its disclosure was far from complete, as Plaintiffs learn many months later that Meta torrented many more terabytes of pirated works from LibGen in 2022 (which Counsel for Meta informs the Court in a filing at Dkt. 653).

12. **April 2025:** Meta produces AWS usage logs for the six dedicated servers it disclosed for the first time at the April 2nd 30(b)(6) deposition that show daily upload and download amounts.

13. **April 29, 2025** (two days before the 5/1/25 summary judgment hearing): Meta produces what it represents are all logs associated with its 2022 torrenting from LibGen Fiction and Non-Fiction.

14. **July 2025:** The Court holds a case management conference, during which it orders that Plaintiffs may brief prior, unresolved discovery disputes over the court-ordered baseball arbitration discovery—namely, additional AWS records and running Plaintiffs' search string against Meta's original custodians' files. Dkt. 500. Judge Hixson grants Plaintiffs' request in part and orders Meta to run the search string for Meta's original custodians.

15. **Late-August to mid-October 2025:** Judge Hixson's discovery order (and a subsequent order granting in part a privilege motion Plaintiffs brought following Meta's production in late August) leads to the production by Meta over the course of several weeks of, *inter alia*,

    a. AI Dataset Collection ("AIDC")/ML Hub screenshots that reveal **for the first time** Meta's "single source of truth" repository for "data discovery, sourcing, management, evaluation and governance," including Meta's de-duplicated pirated datasets and the approval history for those datasets that both recognize the websites are notorious online piracy marketplaces and state their torrenting was blocked at one point. Meta **never disclosed** the ML Hub or AIDC as noncustodial sources.
    b. Additional logs of Meta's torrenting of LibGen in 2022.
    c. Files that reveal **for the first time** Meta also torrented from LibGen Fiction in 2024.
    d. Records for over **12,000 virtual computers, at least 300 of which were** used for Meta's 2024 torrenting.

16. **October 17-24, 2025:** Meta informs Plaintiffs it will produce additional files relating to its 2022 LibGen torrenting and security alerts relating to its 2024 torrenting. Meta also confirms **for the first time** that it located additional logs for its torrenting of more than 80 TB of data.

17. **October 27, 2025:** Meta informs Plaintiffs it has located evidence of its torrenting of LibGen Non-Fiction between May 29 and June 2, 2024, and will produce associated records. (This comes only after Plaintiffs spent many weeks requesting discovery into this torrenting.)

18. **November 13, 2025:** The Court grants Plaintiffs' motion for leave to obtain additional limited discovery. Dkts. 635, 647. That limited discovery based on the recently-produced evidence covers:

    a. One deposition of a Meta employee—Xiaolan Wang (never deposed)—who torrented from Anna's Archive in 2024, and one 30(b)(6) on Meta's torrenting and its AIDC content.

    b.  RFAs to address the factual mechanics of how Meta conducted its torrenting of Anna's Archive.

    c.  Searches of the AIDC/ML Hub.

    d.  2022 torrenting logs and searches of the devices and servers used by the individuals Meta said torrented in 2022 (because Meta still claimed to have no additional 2022 torrenting logs despite records indicating Meta torrented much more).

19. **November 2025:** Meta **for the first time** produces logs that indicate the start time, end time, and how much was downloaded each minute with Meta's 2024 torrenting through Anna's Archive.

20. **November 19, 2025:** Meta's outside counsel file a letter (Dkt. 653) stating they "just identified [another potential episode of Meta's torrenting of pirated works] in the course of reviewing materials" pursuant to the Court's 11/13/25 order granting Plaintiffs' administrative motion, and therefore needed to correct the record "given [the] representations" at the 11/10/25 hearing "regarding Meta's lack of awareness of any further torrenting related to AI training that had not previously been disclosed to Plaintiffs." At that hearing, Meta sought to deny Plaintiffs from obtaining further discovery by representing it "actually [has] made not just reasonable, but, like, exhaustive efforts to find what was torrented so they can have it"; and that "it's not as if there's a whole new group of people at issue. 11/10/25 Hr'g Tr. at 29:14-34:21. There's [a] discrete universe of Lample, of Bashlykov, of Ms. Wang. And we've really tried to bottom that out." *Id.* "We had the Lample download, and they believe – they speculate – that there is more than what he actually ended up torrenting. But the records are what they are. . . [I]s there someone else out there that we think have reason to believe, in the AI world, did this? And no. The answer's no. . . . We're trying to give them everything we can to show what people in the AI group -- really just three people -- torrented." *Id.* **This was incorrect.**

    a.  Meta's recent productions reveal that another Meta employee, Stephen Roller, torrented between 40-70 TB of copyrighted works from LibGen, distributing approximately 14 TB of that copyrighted content to other peers. Mr. Roller testified in December 2024 that he could not recall that he or his team used LibGen, and he could not recall if he or anyone else downloaded anything from LibGen other than a single torrent from (or 0.03% of) LibGen. Dep. Tr. at 248:6-8; 257:6-7 ("I don't recall downloading Libgen during my time at Meta."). Mr. Roller, who is now a former Meta employee, was represented by Meta's counsel at that deposition. Plaintiffs have subpoenaed Mr. Roller for a second deposition after Meta advised Plaintiff they did not object. Now, Mr. Roller's new counsel at

Quinn Emmanuel is objecting to the subpoena because it was not part of the Court's 11/13/25 order (after different counsel Mr. Roller first retained did not object).

21. **January 20, 2026:** Over two months later, Meta begins producing discovery responsive to the Court's 11/13/25 order.  These documents reveal **for the first time** that, *inter alia*:

   a. Additional torrenting of LibGen in 2022;
   b. At least one additional employee who appears to have been involved in torrenting in 2023;
   c. A Meta team attempted to deny approval to torrent LibGen and Anna's Archive in 2024;
   d. Additional terms Meta used to hide pirated files, including "wikibooks" and "BFG";
   e. Meta sent tens of millions of pirated copyrighted works to third-party vendor Mathpix and paid Mathpix millions of dollars to OCR/process pirated works.

   Meta still has not produced any additional files from its AI Dataset Collection or the ML Hub.

22. **Saturday, Jan. 31, 2026:** Meta discloses **for the first time** that it deleted *9 terabytes* of data from LibGen Fiction and Non-Fiction **one week after** Plaintiffs filed the complaint in this case (7/7/23). To date, Meta has produced just two documents concerning this deletion, which reveal it was done at the request of Meta employee Nikolay Bashlykov. Mr. Basyhlykov, who was also a 30(b)(6) witness, did not disclose this during his 2024 deposition. Meta has refused to make Mr. Bashlykov available for a second deposition.