May 1, 2026

**_E-Filed_**

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC

Dear Judge Hixson:

      The Parties respectfully submit this joint letter brief regarding a dispute over whether Meta should be compelled to produce certain documents under the crime-fraud exception to the attorney-client privilege. The parties met and conferred on March 31 and April 15, 2026, but were unable to reach resolution.

## I.    PLAINTIFFS' POSITION

The Court previously held the crime-fraud exception could apply to Meta's unauthorized distribution of copyrighted material. Dkt. 416 at 1. Although the Court declined to apply the crime-fraud exception to communications Plaintiffs challenged that concerned Meta's acquisition and use of copyrighted works from shadow libraries, those communications did not (to Plaintiffs' knowledge) concern the *distribution* of copyrighted material. Since that time, however, Meta has produced such communications, specifically in connection with its torrenting from Anna's Archive. Anna's Archive, previously known as the "Pirate Library Mirror," is a search engine for shadow libraries that "deliberately violat[es] the copyright law in most countries," including the United States.[1] It hosts over 63 million stolen books, among other copyrighted works.[2] Judge Rakoff recently described it as engaging in "horrendous acts of piracy" that are among the worst the court has ever seen. Elliot Weld, *Rakoff Says $300M Piracy Case Among Worst He's Seen*, Law360 (Apr. 14, 2026); *see also Atlantic Recording Corp. v. Anna's Archive*, No. 26-cv-00002 (S.D.N.Y.), Dkt. 41 (enjoining Anna's Archive and awarding default judgment to plaintiffs of around $325 million in statutory damages, including $150,000 for willful infringement per work).

These recently-produced communications reveal: (1) Meta planned to torrent pirated copyrighted works from Anna's Archive knowing that doing so would distribute copyrighted material; (2) Meta employees consulted with in-house counsel after the employee tasked with torrenting Anna's Archive told superiors he was uncomfortable doing so because it would involve distributing copyrighted material, which was "not very legal"; and (3) Meta nonetheless proceeded to torrent and distribute copyrighted material to other file-sharing peers. Specifically, newly produced and redacted Ex. A shows Meta knew its torrenting from Anna's Archive would involve illegal distribution of copyrighted material. And redacted Ex. E and three withheld communications (Log Nos. 197, 254 & 257) suggest Meta's in-house counsel nonetheless approved this torrenting. Because the withheld communications are sufficiently related to and in furtherance of Meta's unauthorized distribution of copyrighted material, Meta cannot shield them from production by asserting privilege. Plaintiffs thus respectfully request that the Court review these documents *in camera* and determine whether they should be produced under the crime-fraud exception.

### A.    Background

In December 2024, Plaintiffs challenged and sought *in camera* review of some of Meta's privilege assertions under the crime-fraud exception. Dkt. 358-13. Your Honor denied the request (Dkt. 366), Plaintiffs objected (Dkt. 397), and Judge Chhabria sustained the objection, holding: "At a minimum, the plaintiffs have shown that the crime-fraud exception could apply to Meta's alleged distribution (by seeding) of copyrighted material, and that *in camera* review might reveal evidence to establish that it does. Review might also reveal evidence that related to willfulness more generally." Dkt. 416. During its review under the crime-fraud exception, the Court issued an order that Meta should "revisit [nine documents] and [] consider whether all of the material withheld and redacted from these documents is truly privileged." Dkt. 455. Meta resubmitted some of these documents with narrowed redactions, Dkt. 458, including a January 5, 2024 communication from Meta engineering manager Melanie Kambadur to Meta data engineer Jelmer Van Der Linde that Kambadur "started a thread" with "our legal team." Ex. D. At a hearing the next day, Judge Chhabria said he "reviewed all of the documents submitted in camera and [he] did not see any evidence of Meta using its lawyers to facilitate a crime, so the crime fraud issue is over." Dkt. 466, Feb. 27, 2025 Hr'g Tr. at 17:22–18:1. The Court did not issue any further order.

---

[1] *Anna's Blog, Introducing the Pirate Library Mirror: Preserving 7TB of books (that are not in Libgen)*, ANNA'S ARCHIVE (Jul. 1, 2022), https://annas-archive.gl/blog/blog-introducing.html.
[2] *Anna's Blog, How to Run a Shadow Library: Operations at Anna's Archive*, ANNA'S ARCHIVE (Mar. 19, 2023), https://annas-archive.gl/blog/how-to-run-a-shadow-library.html; Homepage, ANNA'S ARCHIVE, https://annas-archive.gl/ (last visited Apr. 21, 2026).

One year later, on February 27, 2026, Meta produced a document dated January 4, 2024, in which Van Der Linde expressed concern to Meta technical lead manager Kenneth Heafield over Meta's plan, which he was tasked to carry out, to "specifically target[] copyrighted material" from Anna's Archive because "1) this is a website that exists just to mirror websites that get legally taken down for hosting vast amounts of copyrighted material. 2) [it] has put in a lot of effort not to get scraped, but can be torrented. 3) torrenting (which I'm assuming will mean seeding while download is in progress) copyrighted material is not very legal either." Ex. A. Heafield responded, "I don't think [Meta] legal would approve of seeding the torrent," *i.e.*, distributing copyrighted material to other file-sharing peers, and suggested Van Der Linde "approach it as asking who to talk to about the legal [redacted]." *Id.* Another newly produced communication (removing a prior redaction) shows that, on the next day, Van Der Linde followed Heafield's suggestion and wrote to Kambadur that he was "feeling quite uncomfortable with this task." Ex. B. The rest is redacted.

Exhibit A and newly-unredacted text in Ex. D reveal the "thread" Kambadur started "with our legal" team relates to the issues Van Der Linde raised in Ex. A, including the distribution of copyrighted material through torrenting. In addition, Meta served a privilege log on February 27, 2026, identifying three withheld attorney-client communications (App'x A) that Meta later identified as the "thread" Kambadur referenced in Ex. D. Further, in newly produced Ex. E, dated January 8, 2024, Heafield follows up with Van Der Linde about the issues he raised in Ex. A, and Van Der Linde responds, "We asked legal. They said [redacted two lines of text]." Van Der Linde nonetheless refused to torrent from Anna's Archive, saying he did "not agree with any of this." Ex. E. Following his refusal, Meta assigned the task to torrent Anna's Archive to Viktor Kerkez, *see* Ex. F (Meta_Kadrey_00211854), and later to Xiaolan Wang, who ***distributed over 70 terabytes*** of copyrighted material while torrenting millions of books. Dkt. 659-2, Choffnes Decl. ¶¶ 5-6; *see*, *e.g.*, Ex. G (Meta_Kadrey_00237186) at -267-280 (torrenting progress notes for Anna's Archive).

While Meta has withheld the attorney-client communications initiated by Kambadur after Van Der Linde reached out about Meta's plan to torrent copyrighted material from Anna's Archive, the context strongly suggests Meta's legal team approved the torrenting notwithstanding knowledge that doing so would involve the unauthorized distribution of copyrighted material to third parties.

## B. The Crime-Fraud Exception

This Court previously held the knowing distribution of copyrighted works can constitute criminal copyright infringement,[3] and thus "the crime-fraud exception could apply to Meta's alleged distribution (by seeding) of copyrighted material." Dkt. 416 at 1.[4] And this Court has held no fair use defense applies to distribution of copyrighted material via torrenting. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022) (Chhabria, J.) ("it is obvious . . . that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use"); *see also Entrepreneur Media v. Meta*, 2026 WL 898253, at *1 (N.D. Cal. Mar. 30, 2026) ("Torrenting is simply a further variant on the peer-to-peer theme.") (cleaned up).

Privileged communications lose protection "when the client consults the attorney to further the commission of a crime or fraud." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). A party may invoke this crime-fraud exception where it shows (1) "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme," and (2) the communications at issue are "in furtherance of" and "sufficiently related to"

---

[3] *See also, e.g.*, Sen. Hearing 108-920, Before Comm. on the Judiciary (2003), https://www. copyright .gov/docs/regstat090903.html (former Register of Copyrights: "the law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement . . . . It can also be a crime and the perpetrators . . . subject to fines and jail time.").

[4] S*ee generally* 1 Attorney-Client Priv. in the U.S. § 8:6 ("Evidence of a client's illegal purposes is seldom explicit or the sole motive for consulting an attorney. It does not have to be. So long as the opponent of the privilege claim can show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful, a prima facie case is established.").

the alleged illegality. *Id.* at 380-81. Once Plaintiffs have made a *prima facie* case that the exception may apply (as the Court previously found here), the court "must examine the individual documents themselves to determine that the specific attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of the intended, or present, continuing illegality.'" *See In re Grand Jury Investigation*, 810 F.3d 1110, 1114 (9th Cir. 2016).

In applying the crime-fraud exception, courts do not make a merits determination about the alleged crime. *See, e.g., In re Animation Workers Antitrust Litig.*, 2016 WL 8198907, at *3 (N.D. Cal. Mar. 23, 2016) ("[P]iercing the privilege . . . does not require or reflect a merits decision."). Thus, the exception "may apply . . . even if the client is ultimately found not to be guilty"; it "does not reflect a finding that a client acted wrongfully." *Id.* at n.18 (internal quotation marks omitted).

## C. The withheld communications were related to and in furtherance of an alleged crime.

Whether the crime-fraud exception applies to the challenged communications turns on whether there is a sufficient nexus between them and the alleged illegal act, which here is Meta's direct participation in an unauthorized file-sharing system (torrent protocols) that included Meta's unauthorized uploading of copyrighted material. *See Eastman v. Thompson*, 636 F. Supp. 3d 1078, 1090 (C.D. Cal. 2022) ("The crime-fraud exception applies when (1) a client consults an attorney for advice that will serve them in the commission of a fraud or crime, and (2) the communications are sufficiently related to and were made in furtherance of the crime.") (cleaned up); *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, 2009 WL 102816, at *3 (N.D. Cal. Jan. 14, 2009) ("the crime-fraud exception is triggered by the nexus between the illegality and the particular privileged communication"); *see also* Restatement (Third) of the Law Governing Lawyers § 82 (2000) (the "privilege does not apply to a communication occurring when a client: (a) consults a lawyer for the purpose, later accomplished, of obtaining assistance to engage in a crime or fraud or aiding a third person to do so, or (b) regardless of the client's purpose at the time of consultation, uses the lawyer's advice or other services to engage in or assist a crime or fraud").

While Judge Chhabria previously stated he "did not see any evidence of Meta using its lawyers to facilitate a crime" when examining *different* documents (Dkt. 466, Feb. 27, 2025 Hr'g Tr. at 17:24-25), the Ninth Circuit has also consistently held "[t]he crime-fraud exception does ***not*** require that the attorney have participated, even unwittingly, in the client's criminal activity." *In re Grand Jury Proc.*, 87 F.3d 377, 382 (9th Cir. 1996) (emphasis added). Thus, "a communication between client and attorney can be 'in furtherance of' the client's criminal conduct even if the attorney does nothing after the communication to assist the client's commission of a crime, and even though the communication turns out not to help (and perhaps even to hinder) the client's completion of a crime." *Id.* Courts have routinely held that communications discussing the legality of an alleged criminal act fall within the crime-fraud exception. *See, e.g., United States v. Oettinger*, 1992 U.S. Dist. LEXIS 21087, at *6 (N.D. Cal. Sept. 2, 1992) (a letter that "purportedly describes the 'legality and legitimacy of the [fraudulent] loan transaction'" satisfied the exception).

Here, Ex. A reveals that Van Der Linde raised with others at Meta that the "problem" with Meta's plan to "scrape Anna's [A]rchive" was it meant "torrenting"—including "seeding while download[ing] is in progress"—"copyrighted material." Van Der Linde said this was not "very legal." *See also id.* ("[T]his is specifically targeting copyrighted material. And while we're not re-uploading it (aside from the torrenting bit), using it is as is is [sic] very very dark gray area. Legally, ethically"). One of Van Der Linde's superiors similarly responded that "this does seem further than what I've seen" and said he did not "think legal would approve of seeding the torrent." *Id.*

Plaintiffs now know, because of Ex. A, that Ex. D was Van Der Linde's escalation of the issue of torrenting copyrighted material with distribution to third parties, and that Kambadur in turn involved Meta's legal department. *See* App'x A. Plaintiffs also now know, because of Ex. E, that Van Der Linde refused to carry out the torrenting after Meta, including its legal team, nonetheless approved moving forward with it. Indeed, Meta then torrented millions of copyrighted works from Anna's Archive while distributing over 70 terabytes of copyrighted material to others *See, e.g.*, Ex. H, Meta_Kadrey_00238408 (Anna's Archive); Dkt. 659-2 ¶¶ 5-6 (Choffnes Decl.

4

outlining evidence of Meta's 2024 Anna's Archive torrenting). These facts not only meet the low bar for *in camera* review, *see United States v. Chen*, 99 F.3d 1496, 1502-03 (9th Cir. 1996), but show the communications are both "sufficiently related to" and made "in furtherance of" Meta's unauthorized peer-to-peer sharing of copyrighted material. *See, e.g.,* S*killz Platform Inc. v. AviaGames Inc.*, 2023 WL 8040871, at \*5-6 (N.D. Cal. Nov. 20, 2023) (Freeman, J.) (among others, emails that "solicit[ed] and discuss[ed] topics relevant to the misrepresentation" and emails that "discuss[] the legality of certain practices with counsel" were "sufficiently related to and in furtherance of the alleged fraud" and must be produced). The crime-fraud exception thus applies, and the Court should order Meta to produce Exs. A & E and Log Nos. 197, 254, and 257 in full.

## II.    META'S POSITION[5]

Plaintiffs' speculative, serial challenges to Meta's attorney-client privilege should be rejected.  Though not acknowledged by Plaintiffs above, a little over one month ago this Court conducted an *in camera* review of Ex. A and Privilege Log Nos. 197, 254 and 257 and sustained Meta's privilege claims in full.  Dkt. 695 (letter brief requesting *in camera* review); Dkt. 701 (ordering *in camera* review); Dkt. 705 (order sustaining Meta's privilege claims on Exs. A and Privilege Log Nos. 197, 254 and 257).  Plaintiffs also discussed Ex. E in that same letter brief, but raised no concerns about its privileged status. *See* Dkt. 695 at 2, 5 n. 8.

Having lost this latest privilege challenge, Plaintiffs regress to their old, rejected playbook of claiming that communications between Meta's employees and in-house counsel on complex and novel copyright law issues were intended to further an alleged crime.  Plaintiffs seek a second *in camera* review of the same privileged documents previously addressed in the March 20, 2026 letter brief (Dkt. 695), but this time based on the crime-fraud exception.  Because Plaintiffs have again failed to establish the elements of crime-fraud, their motion should be denied.

## The Court Should Reject Plaintiffs' Speculative and Improper Assertion of Crime-Fraud

This Court and Judge Chhabria have repeatedly found that Meta's privilege claims were justified and rejected Plaintiffs' serial crime-fraud challenges.  Dkt. 351 (finding "no indication that Meta is abusing the privilege"); Dkt. 366.  Indeed, more than a year ago, Judge Chhabria rejected Plaintiffs' first attempt to breach Meta's attorney-client privilege through a baseless crime-fraud argument, finding no evidence "of Meta using its lawyers to facilitate a crime," Dkt. 466 (02/27/2025 Hearing Tr.), 17:24-25.  Plaintiffs claim they now identify different documents not previously considered by Judge Chhabria, but their current crime-fraud argument suffers from the same factual and legal deficiencies as the one he rejected over a year ago.

Plaintiffs bear the burden of demonstrating that the crime-fraud exception applies, by a preponderance of the evidence.  *In re Napster, Inc.*, 479 F.3d 1078, 1094-95 (9th Cir. 2007) (evaluating crime-fraud exception in case involving investor accused of fraudulently structuring a transaction to avoid liability), *abrogated on other grounds Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).  As Plaintiffs acknowledge, the crime-fraud exception does not merely require a relationship between the privileged communications and the alleged unlawful conduct; Plaintiffs must also show that the communications were "made '*in furtherance of* [the] intended, or present, continuing illegality.'"  *Id.* at 1090 (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 382-83 (9th Cir. 1996)) (emphasis and alterations in *Napster*).

With respect to the "in furtherance of" requirement, the Ninth Circuit has explained that "the crime-fraud exception applies only to documents and communications that were ***themselves***

_____

[5] Plaintiffs' reply portion below added six exhibits that were not provided with their opening section, to which Meta has not had any opportunity to respond.  These exhibits are not responsive to Meta's arguments and should have been included with Plaintiffs' opening section.  In any case, Meta is prepared to submit a further response addressing these new materials should the Court find it helpful.

in furtherance of illegal or fraudulent conduct." *In re Grand Jury Investigation*, 231 Fed. Appx. 692, 695 (9th Cir. 2007) (emphasis added) (unpublished) (citing *United States v. Bauer*, 132 F.3d 504, 509-10 (9th Cir. 1997)).  As the Third Circuit further elaborated, the legal advice "must advance, or the client must intend the advice to advance, the client's criminal or fraudulent purpose." *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014).  "The advice cannot merely relate to the crime or fraud." *Id.*

> If the attorney merely informs the client of the criminality of a proposed action, the crime-fraud exception does not apply. For example, consider the situation where a client, intending to undertake an illegal course of action, consults a first attorney, tells the attorney the proposed course of action, and the attorney advises that the course of action is illegal. The client, dissatisfied with the first attorney's answer, then consults a second attorney. The client tells the attorney the same proposed course of action, but this attorney says yes, that course of action is legal. *Both of these consultations would remain privileged, because the attorneys merely opined on the lawfulness of a particular course of conduct, and this advice cannot be used "in furtherance" of the crime.*

*Id.* (emphasis added).  To be subject to the crime-fraud exception, in other words, privileged communications cannot simply opine on the legality of proposed conduct; they must directly contribute to the client's unlawful conduct or be used in carrying it out.  *See, e.g.*, *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) ("Under the crime-fraud exception, communications are not privileged when the client 'consults an attorney for *advice that will serve him in the commission of a fraud' or crime.*") (emphasis added; citation omitted); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) ("The communication condemned and unprotected by the attorney-client privilege is advice that is illicit because it gives direction for the commission of future fraud or crime. The advice must relate to future illicit conduct by the client; it is the *causa pro causa*, the advice that leads to the deed.") (italics in original); *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) ("[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud… Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud.") (emphasis in original).

This strict "in furtherance of" requirement ensures that the crime-fraud exception does not swallow the attorney-client privilege.  If the crime-fraud exception applied whenever a client merely seeks and obtains legal advice about the legality of a proposed course of conduct, as Plaintiffs argue above, it would entirely eviscerate the attorney-client privilege.  *See United States v. Chen*, 99 F.3d 1495, 1500 (9th Cir. 1996) ("Much of what lawyers actually do for a living consists of helping their clients comply with the law.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981)).  The "in furtherance of" prong has been satisfied, for example, when legal advice was used to create false legal documents that were used to obstruct an official proceeding, *Eastman v. Thompson*, 636 F. Supp. 3d 1078, 1090-92 (C.D. Cal. 2022), to create attorney opinion letters for financial institutions that contained fraudulent misrepresentations about the client's business, *Skillz Platform Inc v. AviaGames, Inc.*, No. 21-cv-02436-BLF, 2023 WL 8040871, at *5-6 (N.D. Cal. Nov. 20, 2023), to execute fraudulent transfers to conceal assets from creditors, *Carbajal v. Hayes Management Service, Inc.*, No. 4:19-cv-00287-BLW, 2022 WL 2869205, at *17-18 (D. Idaho July 21, 2022), or to cover up criminal and fraudulent activity, *United States v. Oettinger*, No. CR-92-0058 WHO, 1992 U.S. Dist. LEXIS 21087, at *5-6 (N.D. Cal. Sept. 2, 1992).  Plaintiffs identify no conduct here that even remotely resembles the types of scenarios in which legal advice was found to have been "in furtherance of" illegal activity.

Plaintiffs speculate that Meta's in-house lawyers must have been consulted about torrenting and the potential for distribution of copyrighted works, and that the in-house lawyers "approved the torrenting notwithstanding knowledge that doing so would involve the unauthorized distribution of copyrighted material to third parties." *See supra*.  Even assuming for purposes of

argument that the privileged documents supported these assertions, Plaintiffs would have shown nothing more than Meta having obtained legal advice about the legality of a contemplated course of conduct, which is insufficient as a matter of law to show that legal advice was used "in furtherance of" that activity. Plaintiffs do not allege, for example, that Meta's engineers used advice obtained from in-house lawyers "to shape the contours of conduct intended to escape the reaches of the law." *In re Grand Jury Subpoena*, 745 F.3d at 693.

Meta is obviously handicapped in further responding to Plaintiffs' arguments, as discussing the substance of privileged documents in a public filing would destroy the very privilege Meta seeks to preserve. Meta respectfully invites the Court to review the privileged materials *in camera* again if it feels the need to do so. The communications will confirm that there is no basis for Plaintiffs' latest crime-fraud argument, including its assertion that the communications were "in furtherance of" allegedly unlawful conduct relating to distribution while downloading via BitTorrent.[6]

## The Court Cannot Resolve the Merits of Plaintiffs' Copyright Distribution Claim on a Discovery Motion

Plaintiffs' crime-fraud argument also fails because Plaintiffs have failed to make the required threshold showing that Meta "was engaged in or planning a criminal or fraudulent scheme," *Napster*, 479 F.3d at 1090, at the time legal advice was sought.[7] In rejecting a previous crime-fraud challenge by Plaintiffs, this Court correctly expressed concerns about the ability to resolve complex merits and liability issues in the context of a discovery motion:

> The Court has serious concerns about a discovery motion that basically asks the undersigned magistrate judge to decide this lawsuit (including proposed additions to this lawsuit) on the merits, without a trial, in favor of the Plaintiffs. That seems to get things out of order. In a case like this where liability is hotly disputed, the Court is not willing to embrace a crime-fraud theory that requires the Court to decide the contested merits of the case in order to rule on a discovery motion.

Dkt. 366 at 6. The Court's reluctance to wade into novel issues of copyright liability was entirely warranted. Plaintiffs' previous crime-fraud assertion was based in large part on allegations that "Meta, with the involvement of in-house counsel, decided to obtain copyrighted works without permission from online databases," Dkt. 397 at 4. But several months after that earlier crime-fraud challenge was rejected by this Court, Judge Chhabria held on summary judgment that Meta's downloading Plaintiffs' works from online databases—the supposed "crime" on which Plaintiffs based their previous crime-fraud challenge—was part of Meta's transformative fair use. Dkt. 598 at 21 ("To be sure, Meta's downloading is a different use from any copying done in the course of

---

[6] Meta believes the Court can reject Plaintiffs' crime-fraud arguments outright based on its *in camera* review of the documents. But in the event the Court chooses to conduct an *in camera* review of the documents at issue and believes further explanation of those documents might be helpful to evaluate particular issues relating to the crime-fraud exception, Meta stands ready to provide a supplemental *in camera* submission.

[7] Plaintiffs cite *In re Animation Workers Antitrust Litig.*, No. 5:14-cv-04062-LHK, 2016 WL 8198907 (N.D. Cal. Mar. 23, 2016), for the proposition that courts do not make merits determinations about the alleged crime or fraud in applying the crime-fraud exception. But under the Ninth Circuit's *In re Napster* decision, the party seeking disclosure of privileged documents bears the burden of establishing, by a preponderance of the evidence, a *prima facie* showing of the alleged crime or fraud. 479 F.3d at 1095-96. In fact, a subsequent decision in *Animation Workers* not cited by Plaintiffs, decided one week later by the same judge, denied the motion to pierce the privilege on crime-fraud grounds because the evidence did "not establish a Section 1 violation by a preponderance of the evidence," *In re Animation Workers Antitrust Litig.*, No. 5:14-cv-04062-LHK, 2016 WL 8198906, at *2 (N.D. Cal. Mar. 30, 2016).

LLM training. But that downloading must still be considered in light of its ultimate, highly transformative purpose: training Llama. Because Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books.") (cleaned up and citations omitted).

The crime-fraud exception is most appropriately applied in cases where the allegedly illegal conduct is straightforward, the wrongful intent clear, and the attorney-client relationship was clearly conscripted to further that obvious illegality. This is not such a case. The conduct at issue here involves the alleged distribution of Plaintiffs' works while they were being downloaded via BitTorrent. Plaintiffs' allegations are fiercely contested, and Plaintiffs themselves told the Court that they will need to rely on a "statistical analysis" to establish that distribution of their works occurred in the first instance. Dkt. 649 (11/14/2025 Hearing Tr.), 16:10-21. Plaintiffs' distribution claim was the subject of a previous round of complex technical expert discovery, in which Meta's expert opined that it was unlikely that any of Plaintiffs' works had been distributed during the torrent download. *See, e.g.*, Dkt. 492, ¶¶ 17-29; Dkt 543-6, ¶¶ 13-19. The parties are far from finished with expert discovery on this issue, with another round of expert discovery set to commence on September 18, 2026, with service of a new round of opening reports. In short, a case in which even a predicate act of distribution under 17 U.S.C. § 106(3) cannot be demonstrated without complex and technical expert testimony is not a case in which the crime-fraud exception should be applied.

Additionally, even if Plaintiffs had made a *prima facie* showing of alleged distribution of their works (which they have not), Meta is also asserting a fair use defense against Plaintiffs' distribution claim, as recently acknowledged by Judge Chhabria. Dkt. 700 at 3; *see also* Dkt 690-2 at 15-16 (Meta's interrogatory response on fair use as it relates to the distribution claim). A successful fair use defense would defeat Plaintiffs' claims of civil copyright infringement and thus any assertion of criminal copyright infringement, 17 U.S.C. § 506, negating any assertion by Plaintiffs that Meta's in-house counsel provided advice that was used in furtherance of the commission of an alleged crime or fraud.

* * * * *

The Court should reject Plaintiffs' latest improper attempt to invade Meta's attorney-client privilege. The Court already conducted an *in camera* review of nearly all of the challenged documents approximately one month ago and sustained all of Meta's privilege claims. The Court's further review of those privileged documents will refute Plaintiffs' assertion that the communications with Meta's in-house attorneys were used in furtherance of any alleged unlawful conduct relating to distribution while downloading via BitTorrent.

### III.   PLAINTIFFS' REPLY

Unauthorized peer-to-peer (P2P) file sharing does not involve "complex and novel copyright law issues." Congress declared piracy "of copyrighted material" a "major white collar crime" over four decades ago, 1981 WL 21376, at *4; the Supreme Court (in *Grokster*) and Ninth Circuit (in *Napster*) declared P2P file sharing of copyrighted material unlawful over two decades ago; and this Court already held willful distribution satisfies the first crime-fraud prong, *supra* at 3.[8] Nor is Meta's distribution only alleged: Meta admits that it distributed "some data" while torrenting (Dkt. 714 ¶121; *see generally* Ex. I) from "pirate web sites" (Ex. H at 5-6) and that it did not change its torrent settings to prevent distribution (Ex. I at 13-15); and Meta's expert testified that Meta uploaded copyrighted material and could have changed settings to prevent such distribution (Ex. J, Dkt. 543-7 ¶60 & 28-29 n. 56). That Meta "fiercely contest[s]" whether it distributed the *entirety* of a given work (that's not what default torrent protocols track) and its ultimate liability in *this* case is beside the point; the alleged crime-fraud only requires a *prima facie*

---

[8] The briefing at Dkt. 695 didn't concern the crime-fraud *exception*, which was reserved at 2 n.4.

showing that Meta engaged in unauthorized P2P file sharing of copyrighted material. Moreover, "[i]t is irrelevant whether the scheme was ultimately successful." *E.g.*, *Eastman*, 636 F. Supp. 3d at 1089.

Meta invokes the Third Circuit's second-prong test, but *this* Circuit applies the "some relationship" test, which the challenged communications—Meta seeking and obtaining in-house counsel's OK to continue its plan to torrent (including "re-uploading") copyrighted material— satisfy. *See*, *e.g.*, 1 A-C Priv. in the U.S. § 8:14 (explaining the "Third Circuit specifically rejected the 'related to' standard" and requires "the legal advice must give direction for the commission of future fraud or crime," while the Ninth Circuit "has required only that there be some relationship between the communications and the illegality") (cleaned up). Indeed, Meta does *not* dispute the communications are related to the alleged crime-fraud but instead argues they reflect "legal advice about the legality of a contemplated course of conduct." Except it was *not* "contemplated"—Meta got "official approval for anna's arxiv (bigger libgen)" months earlier (Ex. K at -291) and already tasked Van Der Linde to "Help us download Anna's arxiv" (Ex. L at -271). When he later raised concerns with the plan's file sharing, his superiors involved in-house counsel and then Meta continued with its plan using other, non-objecting employees and external servers to "avoid[] risk of tracing back the seeder/downloader are from [Meta] servers." Ex. M. That *is* Meta "consult[ing] an attorney for advice that will serve" it "in furtherance of" alleged crime-fraud, *In re Grand Jury Inv.*, 810 F.3d at 1113, whether the advice was sought to overrule Van Der Linde or so Meta otherwise could proceed. *See Napster*, 479 F.3d at 1090 ("it is the client's knowledge and intent that are relevant").[9] And even if that was not sufficient for the exception to apply (it is), Meta's 30(b)(6) witness invoked privilege when asked if "counsel provided guidance on best practices for torrenting," Ex. N, suggesting legal also advised on *how* to torrent, furthering the alleged illegality.

Finally, the Court already rejected Meta's second argument, *supra* at 7-8, when it sustained the objection to Dkt. 366 at 6 and held the "exception could apply to Meta's alleged distribution (by seeding) of copyrighted material" and willfulness. Dkt. 416 at 1. This is no less true now than it was then, particularly as these challenged communications are focused on that alleged activity.

---

[9] Contrary to Meta's assertion, the exception has been applied (in this District) broadly to documents that "describe[] the 'legality and legitimacy of [an allegedly fraudulent] loan transaction,'" *Oettinger*, 1992 U.S. Dist. LEXIS 21087, at *6, and that "establish [a] framework for [] Opinion Letters and solicit and discuss topics relevant to the [alleged] misrepresentation" therein, *Skillz*, 2023 WL 8040871, at *5. Those courts' holdings did not "eviscerate" the privilege.

Dated:  May 1, 2026                          Respectfully submitted,


By:  /s/ *Phillip Morton*                    By:  /s/ *Maxwell V. Pritt*

Bobby A. Ghajar                              BOIES SCHILLER FLEXNER LLP
Colette Ani Ghazarian                        David Boies (*pro hac vice*)
COOLEY LLP                                   333 Main Street
1333 2nd Street, Suite 400                   Armonk, NY 10504
Santa Monica, CA 90401                       (914) 749-8200
Telephone: (310) 883-6400                    dboies@bsfllp.com
Facsimile: (310) 883-6500
Email: bghajar@cooley.com                    Maxwell V. Pritt (SBN 253155)
cghazarian@cooley.com                        Joshua M. Stein (SBN 298856)
                                             Margaux Poueymirou (SBN 356000)
Mark R. Weinstein                            44 Montgomery Street, 41st Floor
Matthew Brigham                              San Francisco, CA  94104
Elizabeth Lee Stameshkin                     (415) 293-6800
COOLEY LLP                                   mpritt@bsfllp.com
3175 Hanover Street                          jstein@bsfllp.com
Palo Alto, CA 94304                          mpoueymirou@bsfllp.com
Telephone: 650-843-5000
Facsimile: 650-849-7400                      Jesse Panuccio (*pro hac vice*)
Email: mweinstein@cooley.com                 1401 New York Ave, NW
Email: mbrigham@cooley.com                   Washington, DC  20005
Email: lstameshkin@cooley.com                (202) 237-2727
                                             jpanuccio@bsfllp.com
Kathleen R. Hartnett
Judd D. Lauter                               *Counsel for Individual and Representative*
COOLEY LLP                                   *Plaintiffs and the Proposed Class*
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip Morton
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite
700 Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: pmorton@cooley.com

Angela Dunning
CLEARY GOTTLIEB STEEN &

10

HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

## ECF ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that counsel for Meta concurs in the filing of this document.


/s/        *Maxwell V. Pritt*