[Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*, | |
| Individual and Representative Plaintiffs, | Case No. 3:23-cv-03417-VC |
| v. | **JOINT CASE MANAGEMENT STATEMENT** |
| META PLATFORMS, INC., a Delaware corporation; | |
| Defendant. | |

Pursuant to Civ. L.R. 16-9(a) and Dkt. No. 711, Plaintiffs Richard Kadrey, Sarah Silverman, Eleven Eleven O' Clock Corporation, Christopher Golden, Daring Greatly Corporation, Ta-Nehisi Coates, BCP Literary, Inc., Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Jacqueline Woodson, Lysa TerKeurst, and Christopher Farnsworth (collectively, "Plaintiffs"); and Defendant Meta Platforms, Inc. ("Meta") (together, the "Parties"), by and through their respective counsel, hereby submit this Joint Case Management Statement in advance of the Case Management Conference scheduled in this Court for May 22, 2026.

### A. Jurisdiction

This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331. Meta does not challenge personal jurisdiction. No parties remain to be served.

### B. Facts and Legal Issues

#### 1. Facts

The Court is familiar with the general facts of this case. Following the Court's summary judgment orders (Dkt. 598, 601), the parties have focused on Plaintiffs' claims that Meta reproduced, made available, and distributed copyrighted written works without their owners' permission, and that such activities constitute copyright infringement. Meta denies Plaintiffs' allegations.

#### 2. Legal Issues

On March 25, 2026, the Court issued an order granting Plaintiffs' Motion for Leave to File a Fourth Amended Consolidated Complaint. Dkt. 700. Plaintiffs filed their Fourth Amended Consolidated Complaint on April 1, 2026 (Dkt. 702), and Meta filed its Answer on April 15, 2026 (Dkt. 714).

***Plaintiffs' Statement***

*a. Remaining Claims*

Meta directly infringed the Asserted Works by (1) making them available to others without permission via peer-to-peer file sharing on known pirate websites, (2) reproducing their content in

the course of distributing that content to other file sharers, and (3) distributing that content to those third parties. *See Entrepreneur Media, LLC v. Meta Platforms, Inc.*, Case No. 25-cv-09579-VC, Dkt. 55 (Mar. 30, 2026) ("Torrenting is simply a further variant on the peer-to-peer theme.") (cleaned up); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022) (Chhabria, J.) ("it is obvious . . . that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use"). Meta also contributorily infringed the Asserted Works by materially contributing to and inducing its file-sharing peers to download the works, including by providing the means of those users' infringement, and without taking measures to prevent that infringement. Further, Meta contributed material resources to online piracy markets LibGen and Anna's Archive in part by subsidizing their data transfer costs. The related, remaining issues in the case are:

1. Whether Meta infringed the Asserted Works under 17 U.S.C. § 106, by (1) making them available to others without permission via peer-to-peer file sharing on known pirate websites, (2) reproducing their content in the course of distributing that content to other file sharers, (3) distributing that content to those third parties, and (4) contributing to (a) the direct infringement by those third parties, and (b) the infringement by pirate websites;

2. Whether Meta's conduct was knowing or willful, 17 U.S.C. § 106;

3. Whether any or all of Meta's conduct constitutes fair use under 17 U.S.C. § 107;

4. Whether Plaintiffs may certify a class and/or subclass(es) under Federal Rule of Civil Procedure 23.

### b.  Class's Training-Based Claims

Plaintiffs appreciate the Court's attention to questions surrounding the tolling of the statute of limitations for absent class members' training-based claims adjudicated by the Court on summary judgment. *See* Dkt. 700 at 5 n.1. Plaintiffs' counsel believes there are strong arguments that the statute of limitations remains tolled for absent class members' claims, particularly given

Meta's waiver of one-way intervention.[1] In an abundance of caution, however, Plaintiffs asked Meta whether it would enter into a tolling agreement for the previously adjudicated claims. Meta declined. Plaintiffs' counsel was therefore preparing to file a new putative class action, with other class representatives, asserting the claims this Court previously adjudicated (but not those it has yet to adjudicate). In the interim, another putative class action was filed against Meta with overlapping claims and an overlapping class definition. *See* Dkt. 1, *Elsevier Inc., et al. v. Meta Platforms, Inc. and Mark Zuckerberg*, Case No. 26-cv-3689 (S.D.N.Y. filed May 5, 2026) ¶¶ 9, 10 (alleging that Meta engaged in unauthorized copying, and that "[t]hose substitutes . . . includ[e] verbatim and near-verbatim copies, replacement chapters of academic textbooks, summaries and alternative versions of famous novels and journal articles"), ¶ 7 ("Defendants willfully sidestepped this licensing regime in developing and training Llama."); *compare id.* ¶ 167 (class definition) *with* Dkt. 702 ¶ 128. Plaintiffs thus believe there is no dispute that the statute of limitations is tolled. *See supra* n. 7.

Meta argues below that Plaintiffs ask the Court for an advisory opinion on the issue of tolling. Plaintiffs do not. Rather, Plaintiffs are simply acknowledging and responding to statements by the Court in its recent order. To the extent the Court considers the authority the parties identify, however, Plaintiffs note that Meta's cases involved situations that, unlike here, involved the dismissal of all claims and do not address the question of whether the statute of limitations is tolled where some claims are dismissed and others remain. In contrast, this case retains "its class action character" because claims remain as to all putative class members. *See Porter*, 2017 WL 6379525, at *6.

**_Meta's Statement_**

      a.     *Remaining Claims*

---

[1] *See*, *e.g.*, *Porter v. Southern Nevada Adult Mental Health Services*, 2017 WL 6379525, at *6 (D. Nev. Dec. 13, 2017)*, aff'd,* 788 F. App'x 525 (9th Cir. 2019) ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied' or until a case is otherwise stripped of its class action character."); *In re Snap Inc. Securities Litig.*, 334 F.R.D. 209, 223 (C.D. Cal. 2019) (permitting post-statute-of-limitations substitution of named plaintiff in part because "class certification has never been addressed on the merits").

Following the Court's summary judgment orders (Dkt. 598, 601), and after the grant of Plaintiffs' Motion for Leave to File a Fourth Amended Complaint, the remaining legal issues presented in this case arise out of Meta's alleged torrenting of Plaintiffs' copyrighted written works without their authorization, which Plaintiffs allege resulted in those works being uploaded, distributed, and/or made available to third parties.  The key remaining legal issues are:

1.      Whether Meta directly infringed Plaintiffs' copyrighted written works;

2.      Whether Meta's alleged conduct was willful;

3.      Whether Meta is liable for contributory infringement based on the alleged direct infringement of Plaintiffs' copyrighted written works by one or more third parties;

4.      Whether Meta's liability for any alleged infringement is eliminated or reduced by applicable affirmative defenses, including fair use under 17 U.S.C. § 107; and

5.      Whether a class may properly be certified under Rule 23 of the Federal Rules of Civil Procedure.

b.      *Meta's Response to Plaintiffs' Assertions About Statute of Limitations Tolling*

Plaintiffs incorrectly argue above that the statute of limitations for absent class members' training-based claims remains tolled, notwithstanding the Court's orders from last year granting summary judgment against the named Plaintiffs' copyright reproduction and DMCA claims.  It is not clear why Plaintiffs are making this argument here, as the applicability of a statute of limitations defense and tolling in a hypothetical future case would be a matter to be taken up, if necessary, by the court presiding over that future case.  The Court should reject Plaintiffs' apparent invitation to issue an advisory opinion on the applicability of tolling in a hypothetical future suit.  *See In re Brockett*, No. C 06-1423 SI, 2006 WL 1329675, at *1 (N.D. Cal. May 15, 2006) (district court lacked jurisdiction to issue advisory opinion on statute of limitations applicability in a future case). In any event, Plaintiffs cite no authority that tolling continued for absent class members' copyright reproduction and DMCA claims after the Court's summary judgment orders.  It did not. *See, e.g.*, *Henson v. Fidelity Nat. Fin. Inc.*, No. 2:14–cv–01240–ODW(RZx), 2014 WL 1246222, at *1 (C.D. Cal. Mar. 21, 2014) ("[A] former putative class member may not rely on *American Pipe* tolling for

**JOINT CASE MANAGEMENT STATEMENT**
**CASE NO. 3:23-CV-03417-VC**

the period commencing after a trial court dismisses the previous putative class action."); *Collins v. Village of Palatine, Illinois*, 875 F.3d 839, 840 (7th Cir. 2017) ("[T]olling stops immediately when a class-action suit is dismissed—with or without prejudice—before the class is certified."). Any class action tolling for copyright reproduction and DMCA claims resulting from the filing and pendency of the *Kadrey* action, therefore, ended upon entry of the Court's summary judgment orders in June 2025. (Dkt. Nos. 598, 601.)

### C. Anticipated Motions

***Plaintiffs' Statement***

Given the now-anticipated timeline of this case and related cases filed in recent weeks and months, Plaintiffs seek the Court's guidance on a potential motion to certify an interlocutory appeal to the Ninth Circuit to address the intra-district split between this Court's prior summary-judgment order and the summary judgment order in *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal.).

After the Court issued its summary-judgment order in June 2025, Meta favored an interlocutory appeal. Dkt. 605 at 5-7. Plaintiffs opposed at that time because, among other reasons, they anticipated a final resolution in short order. *See id.* at 2. After considering both arguments, the Court explained its view that "the best way to manage this case is to get it all adjudicated, and then, once judgment is entered, whoever loses on what issue can appeal." July 11, 2025 Hr'g Tr. at 14:18-20. The Court subsequently entered a case schedule with summary judgment to be heard in February 2026. Dkt. 623.

The Court recently continued the case deadlines in this action to align with those in *Entrepreneur Media*, with summary judgment now set to be heard in February 2027. So the Parties met and conferred again about the possibility of an interlocutory appeal. Meta indicated it no longer supports such an appeal. Conversely, given the significantly changed circumstances, Plaintiffs now believe a certified appeal under 28 U.S.C. § 1292(b) will best advance the interests of justice and the putative class, as well as other rightsholder plaintiffs in cases pending in this Court and many others.

First, as indicated above, the changed case schedule—with summary judgment on torrenting not being briefed until 2027—presents a significantly different time horizon than existed in July 2025. Indeed, several newly filed and related actions raise the prospect of further enlargements of the case schedule.

Second, the new cases also seek to litigate similar claims against Meta involving its unauthorized reproductions and uses of copyrighted works, including the unauthorized downloading of copyrighted works from pirate websites. Highly relevant to each of those cases, therefore, is the question of how "ultimate use" factors into the fair use analysis. This Court's summary judgment order came to a different conclusion on that question than another court in this District. *Compare Bartz*, 787 F. Supp. 3d at 1029 (holding that "the person who copies the textbook from a pirate site has infringed already, full stop," and "reject[ing] Anthropic's assumption that the use of the copies for a central library can be excused as fair use merely because some will eventually be used to train LLMs"), *with* Dkt. 598 at 21 (holding, "*contra*" *Bartz*, that "[b]ecause Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books" from pirate websites). Certifying this legal issue to the Ninth Circuit now, rather than after summary adjudication in 2027 (or later) on Plaintiffs' remaining claims and presumably the new individual suits against Meta, would conserve judicial resources and provide guidance to the Court and others in this District and across the country that are grappling with this same question. Indeed, in this District alone, there are over 40 pending cases that present the issue of whether it is fair use to acquire copyrighted works without their owners' permission for later use with generative AI models.[2]

As before, § 1292(b) certification remains in the Court's sound discretion, and Plaintiffs are prepared to discuss the issue with the Court at the upcoming conference if the Court believes that would be useful.

---

[2] *See* Paige McKirahan, AI Litigation Trends: Rapid Growth and Emerging Patterns, JD SUPRA, (April 24, 2026) https://www.jdsupra.com/legalnews/ai-litigation-trends-rapid-growth-and-2263076/.

**JOINT CASE MANAGEMENT STATEMENT**
**CASE NO. 3:23-CV-03417-VC**

*Rule 72 Objection to Nondispositive Order*. Plaintiffs previously moved for relief from Judge Hixson's order at Dkt. 627 denying Plaintiffs' challenge under the crime-fraud exception to a redacted document concerning the approvals for Meta's torrenting and use of copyrighted works from Anna's Archive. *See* Dkt. 630. The Court ordered the Parties to confer and submit a stipulation for briefing the motion after further discovery was completed. *See* Dkt. 634. The Parties have not yet done so, as discovery into Meta's torrenting from Anna's Archive continues. In addition, on May 1, 2026, Plaintiffs challenged in a joint letter brief additional redactions and fully withheld attorney-client communications in connection with concerns raised by a Meta employee who was tasked with acquiring copyrighted works from Anna's Archive that Meta's plan to do so would also mean distributing copyrighted material. *See* Dkt. 721. Judge Hixson has not yet issued a ruling on that challenge.

*Motions for Summary Judgment.* Plaintiffs anticipate that the Parties will move for summary judgment in accordance with the summary judgment briefing deadlines set by the Court on March 26, 2026.

## Meta's Statement

Meta anticipates motions for summary judgment in accordance with the Court's schedule. Meta also anticipates seeking leave to serve discovery directed to the new claims and allegations set forth in the Fourth Amended Complaint, as discussed in more detail in the discovery section below.

*Meta's Position on Appellate Certification Under 28 U.S.C. § 1292(b)*

Plaintiffs' request should be denied, as subsequent developments in the case have made certification inefficient and inappropriate at this time. Plaintiffs correctly note that Meta argued for appellate certification 28 U.S.C. § 1292(b) at the July 2025 Case Management Conference, but at that time, *Kadrey* was the only matter pending before this Court alleging copyright infringement based on the research, development, and training of Meta's Llama models. There are now four other pending cases before this Court alleging similar copyright infringement claims (*Entrepreneur Media* (No. 3:25-cv-09579), *Chicken Soup for the Soul* (No. 3:26-cv-02333), *Cambronne* (No.

3:26-cv-03725), and *Cognella* (No. 3:26-cv-04053)), which present substantially similar issues of copyright infringement and fair use.  These four cases will move forward regardless of what happens in *Kadrey*.  An interlocutory appeal by Plaintiffs here would thus be an inefficient use of judicial resources, and require that substantially similar issues of copyright infringement and fair use be litigated simultaneously before the Ninth Circuit in *Kadrey* and before this Court on the four other pending cases.  As the Court may recall, Plaintiffs vehemently opposed certification under § 1292(b) at the July 2025 Case Management Conference, arguing that "a piecemeal appeal would be inefficient, illogical, and prejudicial to Plaintiffs."  (Dkt. No. 605 (07/08/2025 CMC Statement), 3:3-7.)  The efficiency considerations highlighted by Plaintiffs last year are more compelling today than they were 10 months ago, and Plaintiffs have not provided a persuasive explanation for their change in position.

*Meta's Statement on Pending Privilege Motions*

The parties have stipulated that additional briefing on Plaintiffs' Rule 72 objections set forth in its Motion for Relief (Dkt. No. 630) should be held in abeyance pending an update from the Parties.  (Dkt. No. 660 at 2.)  Magistrate Judge Hixson has not yet ruled on Plaintiffs' additional privilege challenges filed at Dkt. No. 721.

### D.  Amendments to Pleadings

The Fourth Amended Consolidated Complaint is the current operative Complaint. *See* Dkt. No. 702.

### E.  Evidence Preservation

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in the action.

### *Plaintiffs' Statement*

Plaintiffs believe evidence preservation issues exist that are relevant to Meta's torrenting activity.

*First*, Meta disclosed on January 31, 2026, that shortly after Plaintiffs filed the complaint in this case, its employee Nikolay Bashlykov (who torrented from LibGen in 2023) directed the deletion of directories that appear to relate to LibGen torrenting by former Meta employee Guillame Lample. Meta has not located or produced complete records of Mr. Lample's torrenting. Records suggest Meta was unable to access these directories after Mr. Lample left Meta in Spring 2023, and Meta has stated the files were deleted to free up space on its H2 (computing) clusters. Additionally, Meta has said that it cannot locate two of Mr. Bashlykov's directories that reference LibGen and are mentioned in the BitTorrent code that Mr. Bashlykov used for torrenting. T Meta has declined Plaintiffs' requests for further discovery into these deletions, including a deposition of Mr. Bashlykov.

*Second*, because Meta has not located compete records of Mr. Lample's and/or his team's torrenting, Plaintiffs requested records relating to Meta's bandwidth usage for its H2 servers, which Mr. Lample used for torrenting. Those servers are hosted by one of Meta's vendors, Penguin Computing, Inc. Plaintiffs' expert believes Penguin Computing would track network usage charges (for, *e.g.*, billing), which would assist expert analysis of Mr. Lample's torrenting. Meta has represented that Penguin Computing did not locate usage/billing records, but Meta has declined to inquire further with Penguin Computing about whether such records were deleted or whether there are other records. This discovery is relevant to the Parties' expert work on torrenting, as it enables the Parties to identify how much data Meta potentially uploaded to other users of pirate websites.

*Third*, Meta has advised that virtual machines, and their corresponding hard drives, that were used for large parts of Meta's 2024 torrenting activity no longer exist. As a result, Meta is unable to fully respond to RFAs that would directly identify which content was torrented on these servers. In addition, Meta has not been able to produce records regarding which servers were used for torrenting activity in their "FairSpark" cluster, which contains tens of thousands of virtual servers.

### Meta's Statement

**JOINT CASE MANAGEMENT STATEMENT**
**CASE NO. 3:23-CV-03417-VC**

Meta does not agree with Plaintiffs' assertions above, many of which concern discovery issues that are premature, remain the subject of ongoing discussions between counsel, and have not reached any impasse warranting the Court's intervention. In any event, these extraneous matters are not pertinent to the issues properly before the Court at the upcoming interim case management conference. Meta will be available to address Plaintiffs' assertions above at the case management conference should the Court wish to discuss them.

### F.  Initial Disclosures

The Parties exchanged initial disclosures on December 1, 2023, pursuant to Rule 26(a)(1)(A), and periodically supplemented their initial disclosures prior to the close of fact discovery in December 2024. Since that time, Plaintiffs filed their Third and Fourth Amended Consolidated Complaints, but discovery has never been re-opened and thus the Parties have not supplemented their disclosures.[3] Plaintiffs thus request that the Court set a deadline for the Parties to do so. Meta does not object to setting a deadline for further supplementing initial disclosures.

### G.  Discovery

#### 1.  Fact Discovery

Fact discovery ended on December 13, 2024. After the Court granted Plaintiffs' motion for leave to amend the complaint in January 2025, the Court denied Plaintiffs' request for a limited re-opening of discovery and granted Meta's request for discovery that Meta sought as a result of Plaintiffs' amendments. Dkt. 389. In February 2025, Meta disclosed and produced documents that had been sequestered during the discovery period, and the Court ordered the Parties to submit competing "baseball arbitration" discovery proposals to address that sequestration. Dkt. 461. The Court adopted Plaintiffs' proposal, which sought limited torrenting discovery, and the parties proceeded with summary judgment briefing. In June 2025, the Court granted summary judgment to Meta in part but held that "the record on Meta's alleged distribution is incomplete, making summary judgment on that issue improper at this point in the case." Dkt. 598 at 15 n.4. The Court

---

[3] The Court denied Plaintiffs' request for a limited re-opening of discovery after the Third Amended Consolidated Complaint was filed in January 2025, and the Court did not set a fact discovery deadline in its recent order aligning case deadlines with *Entrepreneur Media's*.

subsequently ordered the parties to "present joint discovery letter briefing to Judge Hixson on outstanding discovery disputes," Dkt. 614 at 2, and, on September 2, 2025, the Court set new expert and summary judgment deadlines, with summary judgment to be heard in February 2026, Dkt. 623. Those deadlines were extended in September 2025, Dkt. 626, and then again in November 2025, Dkt. 641, and December 2025, Dkt. 660. Also, in October 2025, Plaintiffs filed an administrative motion for certain specified discovery into Meta's torrenting, which the Court granted. Dkts. 635, 647. Meta has since agreed to provide some additional discovery, and while the Parties continue to meet and confer over certain discovery requests, the Parties have reached an impasse on others.

On March 25, 2026, the Court granted Plaintiffs leave to file a Fourth Amended Consolidated Complaint and also granted Meta's request to align the expert discovery and summary judgment briefing deadlines in this case with those in *Entrepreneur Media*. Dkt. 700 at 6.

***Plaintiffs' Statement***

The Court ordered that fact discovery in this case and in *Entrepreneur Media* must be shared (with the exception of discovery taken of plaintiffs), *see* Dkt. 700 at 6, and it ordered the Parties to coordinate discovery.[4] The Court did not, however, enter a deadline for fact discovery in this case aligned with the deadline in *Entrepreneur Media*. Plaintiffs thus request the Court's guidance on the completion and coordination of discovery on the remaining and overlapping claims with the related actions. The original discovery period in this case closed in December 2024. The claims remaining in this case, however, were added that period, with the Third Amended Consolidated Complaint filed in January 2025 and the Fourth Amended Consolidated Complaint filed last month. The Court denied Plaintiffs' request for a limited re-opening of discovery in January 2025, Dkt. 406; *see also* Feb. 27, 2025 Hr'g Tr. at 40:12-13 (stating "I made a decision about no further discovery, I thought it was a close question then"), and thus discovery into the claims has been conducted only via the Court's baseball arbitration order and administration motion practice. Absent the entry of a deadline for fact discovery aligned with *Entrepreneur Media*, the

---

[4] The *Kadrey* plaintiffs and Entrepreneur Media sent Meta a proposed a stipulation on discovery coordination on April 24, 2026, which is attached as Plaintiffs' Appendix 2. Meta has not yet responded.

**JOINT CASE MANAGEMENT STATEMENT**
                **CASE NO. 3:23-CV-03417-VC**

Parties must continue to seek the Court's approval via administrative motion practice for (1) any further discovery on the remaining claims, and (2) to participate in discovery sought by Entrepreneur Media (or other plaintiffs) on overlapping claims. For example, Meta disclosed in November 2025 that one of its former employees, Stephen Roller, torrented LibGen Fiction and Non-Fiction, including the Asserted Works. Plaintiffs subsequently sought to depose Mr. Roller, but while Meta advised Plaintiffs it does not object, it declined to stipulate to a proposed order authorizing Plaintiffs to subpoena Mr. Roller, and Mr. Roller's counsel has refused to produce Mr. Roller for a deposition absent a court order because there is no discovery period. Similarly, Meta has declined discovery into its deletion of LibGen directories after the initiation of this lawsuit; absent a discovery period aligned with Entrepreneur Media's, Plaintiffs must seek a court order for that discovery too. The same goes for several other discovery requests on which the Parties have reached impasse, as set forth in Plaintiffs' Appendix 1. Moreover, absent the entry of a fact discovery deadline aligned with Entrepreneur Media (and/or the other related actions), what happens, for example, when Entrepreneur Media deposes a witness who is relevant to the overlapping claims in this case? Must Plaintiffs file an administrative motion for leave to question each witness? If Plaintiffs are unable to participate in such discovery, then Plaintiffs believe Meta should not be permitted to use that discovery in connection with Plaintiffs' claims.

Meta states below that it will pursue additional discovery in this case, including new document requests, ROGs, and RFAs, but proposes doing so via administrative motion practice rather than a discovery period aligned with Entrepreneur Media (and the related actions). Meta does not explain how requiring the Parties to conduct the remaining discovery in this case on claims that overlap with the related action will lead to any efficiencies or reduce the burdens imposed on the Court. For reasons including those set forth above, Plaintiffs respectfully submit it will not do so. And setting a fact discovery deadline aligned with Entrepreneur Media's will not lead to any re-do or do-over of discovery in this case—any additional discovery will concern only the remaining and overlapping claims, and applicable FRCP limitations still apply, requiring the Parties to make the requisite showing to Judge Hixson to seek certain additional discovery (e.g., interrogatories,

depositions). Plaintiffs are committed to completing discovery into the remaining claims in this case and compiling a complete and fulsome record on those claims for the Court's consideration and adjudication.[5]

Meta also proposes below that the Court limit its order that discovery in this case and Entrepreneur Media must be shared to only discovery taken in Entrepreneur Media (and other later-filed actions) that concerns the remaining claims in this case. Plaintiffs respectfully submit that such a lopsided approach is unworkable. *First*, contrary to Meta's assertion, it would increase, not reduce, potential motion practice into whether certain discovery concerns the remaining claims given the overlap between the cases. The Parties, for example, would only be able to address disputes concerning the relevance of discovery in the related actions that is not shared with Plaintiffs after it is filed publicly in those cases, potentially after dispositive motion practice. *Second*, withholding discovery from Plaintiffs on claims in the related actions that were also litigated in this case would prevent Plaintiffs from assessing the extent to which Meta did not produce evidence responsive to Plaintiffs' discovery requests,  if any, not, as Meta contends below, the result of "strategic and discovery decisions" by Plaintiffs or "different discovery" by other plaintiffs on other claims. *Third*, many facts relevant to the remaining claims in this case are also relevant to claims adjudicated on summary judgment and being litigated in the related actions— e.g., Meta's reproductions by downloading and torrenting copyrighted works from pirate websites. If the purpose and goals of sharing discovery between the related cases is to decrease the burden on the Parties and the Court while promoting the creation of fulsome records on the claims this Court is asked to adjudicate, then attempting to split and apportion the discovery shared between the cases on their overlapping claims does not further those goals.

---

[5] Meta cites statements by Plaintiffs when they moved for leave to amend to add the remaining claims that discovery was largely complete. Plaintiffs were mistaken. Discovery produced via the Court's baseball arbitration order and Plaintiffs' October 2025 administrative motion, as well as the factual assertions Meta recently made in its supplemental fair use interrogatory response, show that the discovery record is not yet complete on the remaining claims and defenses in this case.

Finally, Plaintiffs take no position on Meta's request to extend discovery sharing and coordination protocols to the other three recently related individual actions that assert overlapping claims.

***Meta's Statement***

Similar to Part E above, Plaintiffs have included an Appendix 1 containing extensive commentary about issues not pertinent to the upcoming interim case management conference. Meta does not agree with Plaintiffs' assertions and positions, many of which also concern discovery matters that are premature, remain the subject of ongoing discussions between counsel, and have not reached any impasse warranting the Court's intervention. In any event, Meta will be available to address Plaintiffs' assertions at the case management conference should the Court wish to discuss them.

Meta respectfully requests the Court's guidance on three issues.

First, Meta requests guidance on the Court's statement from its order granting Plaintiffs leave to file the Fourth Amended Complaint that "discovery in the two cases [*i.e. Kadrey* and *Entrepreneur Media*] will be shared." (Dkt. 700, 6.) With respect to sharing of discovery from *Entrepreneur Media* (or other later-filed related cases) with the Plaintiffs in *Kadrey*, Meta respectfully requests that the sharing be limited to discovery obtained in the later filed, related actions to the extent that discovery is relevant to the *Kadrey* Plaintiffs' only remaining claims, *i.e.* direct and contributory infringement based on Meta's alleged distribution of copyrighted material during the download via torrenting. If the Court were to require sharing of <u>all</u> discovery produced by Meta in the later filed, related actions, Meta is concerned about the potential for substantial motion practice from the *Kadrey* Plaintiffs seeking to reopen and relitigate issues resolved by the Court's summary judgment orders from last year. This is clear from Plaintiffs' statement above that they believe (long after discovery on the training-based claims has ended and after Plaintiffs failed to adduce evidence to avoid summary judgment on those claims) they are entitled to "asses[s] the extent to which Meta did not produce relevant and responsive evidence in this case." (See supra.) This argument ignores the fact that the discovery record on Plaintiffs' failed training-based

claims was the result of the strategic and discovery decisions made by Plaintiffs. In the event different discovery is later produced in Entrepreneur Media (or other related cases) relating to training-based claims because, for example, the plaintiffs in those cases made different decisions and sought different categories of documents, identified different custodians, or deposed different witnesses, Plaintiffs here are not entitled to those materials. Accordingly, discovery produced by Meta in Entrepreneur Media (or other related cases) should only be shared with the Plaintiffs in Kadrey to the extent it pertains to the claims remaining in this case.

Second, regarding the proposed discovery sharing agreement involving the *Kadrey* and *Entrepreneur Media* cases, given the Court's relation of the *Cambronne*, *Chicken Soup*, and *Cognella* cases, Meta respectfully submits that it would be most efficient for the agreement to be expanded to address those related matters. Meta will continue to meet and confer with the *Kadrey*, *Entrepreneur Media*, *Cambronne*, *Chicken Soup*, and *Cognella* plaintiffs on a discovery sharing agreement.

Third, Meta requests the Court's guidance on the *Kadrey* Plaintiffs' continuing demands for more discovery. In seeking their amendment to add a contributory infringement claim, Plaintiffs made clear that they "do not intend to seek new fact discovery on their amended claim." (Dkt. No. 658 at 2.) Moreover, Plaintiffs told this Court last fall that they only sought "narrowly-tailored discovery" on the then pending distribution claim, which this Court allowed Plaintiffs to pursue. (Dkt. No. 635 at 1; Dkt. No. 647.)

Aside from the specific discovery ordered by the Court, Meta voluntarily agreed to allow substantial additional discovery including voluntarily adding six additional document custodians, conducting rolling searches on an ever-evolving set of search terms proposed by Plaintiffs, conducting additional searches of computers, backups and other computing resources requested by Plaintiffs, and following up on numerous additional requests and questions from the *Kadrey* Plaintiffs, all in an effort to ensure the Court and the parties have the fullest record on these torrenting issues that Meta can reasonably provide.

Meta will continue to work with Plaintiffs on the various open discovery issues that relate

to the discovery voluntarily provided by Meta and/or ordered by the Court to date.  But Plaintiffs have now made clear that they have no intention to stop requesting additional discovery, including seeking discovery they should have sought long ago.  Accordingly, Meta respectfully requests that new discovery sought by Plaintiffs be permitted, if at all, on a case by case basis pursuant to motion practice.  At this stage—nearly three years into this action, and almost a year and a half after the close of fact discovery—any additional discovery sought by Plaintiffs should be permitted only upon a showing of good cause, including a showing by Plaintiffs that they were diligent in pursuing this discovery.

<u>Additional Discovery Needed by Meta in View of Fourth Amended Complaint</u>

Meta intends to seek limited, tailored discovery as to the evidentiary basis of Plaintiffs' contributory infringement claims, and regarding the three, newly added loan out companies – claims and plaintiffs for which Meta did not previously have the opportunity to seek discovery. The limited discovery regarding Plaintiffs' contributory infringement claims will include interrogatories, requests for admission, and document requests regarding, generally, Plaintiffs' evidence that third parties received, downloaded, or otherwise used Plaintiffs' alleged works through torrenting by Meta.

### 2. Expert Discovery

***Plaintiffs' Statement***

Plaintiffs have retained and disclosed an additional expert, Professor Michael D. Smith, Ph.D., to provide testimony related to digital piracy, as it set forth in their motion to amend Dkt. 658 at 2.

***Meta's Statement***

Meta reserves all rights to designate additional expert(s) as necessary to defend against Plaintiffs' claims and rebut any new theories or reports proffered by Plaintiffs.

### H. Class Actions

The Parties have reviewed the Procedural Guidance for Class Action Settlements.

### I. Related Cases

The following cases are related to and have been consolidated in this proceeding:

- *Chabon et al. v. Meta Platforms, Inc.*, No. 3:23-cv-04663-VC
- *Huckabee et al. v. Meta Platforms, Inc. et al.*, No. 3:23-cv-06663-VC
- *Farnsworth et al. v. Meta Platforms, Inc.*, No. 3:24-cv-06893-VC

The following case has been related, but not consolidated, with this action:

- *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 3:25-cv-09579-VC
- *Chicken Soup for the Soul, LLC v. Meta Platforms Inc.*, No. 3:26-cv-02333-VC
- *Cambronne v. Meta Platforms, Inc.*, No. 5:26-cv-03725-PCP
- *Cognella, Inc.* v. Meta Platforms, Inc., No. 3:26-cv-04053-JST

**J.  Relief**

*Plaintiffs' Statement*

Plaintiffs seek judgment against the Meta and in favor of the proposed class, as well as the following relief: (a) the certification of the proposed class, the appointment of Plaintiffs' counsel as class counsel, the designation of class representatives, and a notice program under Rule 23; (b) an order holding that Meta engaged in direct and contributory copyright infringement in violation the Copyright Act, 17 U.S.C. § 106(1) & (3), and that such infringement was willful; (c) an order requiring Meta to pay Plaintiffs' and the Class's statutory damages in an amount up to the maximum provided by law, pursuant to 17 U.S.C. § 504(c); , including prejudgment and/or postjudgment interest thereon as permitted by law; (d) an order permanently enjoining Meta from engaging in its alleged infringing conduct; (e) an order requiring that Meta destroy under the Court's supervision all infringing copies of Plaintiffs' and the Class's copyrighted works in its possession, custody or control pursuant to 17 U.S.C. § 503(b); and (f) an order awarding Plaintiffs' and the Class's costs, expenses, and attorneys' fees, as permitted by law.

*Meta's Statement*

Meta denies that certification of any class is appropriate or that Plaintiffs are entitled to any relief in this action. Meta reserves the right to seek recovery of its costs and attorneys' fees as permitted by law.

### K.  Settlement and ADR

The Parties have complied with ADR L-R 3.5. Plaintiffs and the Class always remain open to settlement discussions. Meta does not believe settlement discussions would be productive at this time.

### L.  Other References

This case is not suitable for reference to binding arbitration. As noted above, a putative class action was filed recently in the U.S. District Court for the Southern District of New York (*Elsevier Inc. et al. v. Meta Platforms, Inc. and Mark Zuckerberg,* No. No. 1:26-cv-03689-PKC (S.D.N.Y. filed May 5, 2026)), which asserts claims that overlap with the claims remaining in this case, and with the training-based claims originally asserted in this case for which summary judgment was granted.  Meta's time to respond to the Complaint in that action has not run, and no substantive or procedural motions have been filed in the matter as yet.  Meta will adhere to any procedures the Court may find helpful or appropriate in providing updates as the proceedings in that very-recently-filed action develop. If necessary, Meta can submit a notice of pendency of other action pursuant to Local Rule 3-13 regarding the *Elsevier* lawsuit.

### M. Narrowing of Issues

The Parties do not believe narrowing of the issues in dispute is practical or feasible at this time.

### N.  Scheduling

The Court ordered that the schedule in this case will be aligned with *Entrepreneur Media.* Dkt. 700. The current schedule is as follows:

| Event | Deadline |
|---|---|
| Opening Reports Due | September 18, 2026 |
| Rebuttal Reports Due | October 16, 2026 |
| Reply Reports Due | October 30, 2026 |
| Close of Expert Discovery | November 20, 2026 |

| Summary Judgment Brief 1 Due (Plaintiffs Brief) | December 11, 2026 |
|---|---|
| Summary Judgment Brief 2 (Defendant Brief) | January 11, 2027 |
| Summary Judgment Brief 3 (Plaintiffs Brief) | January 29, 2027 |
| Summary Judgment Brief 4 (Defendants Brief) | February 12, 2027 |
| Hearing on Dispositive Motions | February 25, 2027, at 10 a.m. |

***Plaintiffs' Statement***

As discussed *supra*, § G(1), the case schedule does not include a deadline for fact discovery, so Plaintiffs seek the Court's guidance on the completion and coordination of discovery on their remaining and overlapping claims with *Entrepreneur Media* and any of the other actions that are related.

If the Court grants summary judgment to Plaintiffs and/or denies Meta summary judgment, Plaintiffs request that the Court enter a schedule for class discovery, including fact and expert discovery.

***Meta's Statement***

Meta intends to file a motion seeking limited, tailored fact discovery by Meta regarding Plaintiffs' contributory infringement claims and the additional new parties allowed in the Fourth Amended Complaint.  Given Plaintiffs' prior representations that no new discovery would be sought, Meta does not agree that discovery should be opened for Plaintiffs to serve additional discovery, and any discovery should be limited to discovery for which Plaintiffs show good cause and receive Court approval, and discovery by Meta necessitated by the Fourth Amended Complaint, as discussed above.

**O. Trial**

Plaintiffs have requested a trial by jury on all claims allowed. The parties believe it is premature to determine the length of trial until the scope of issues to be tried is finalized.

**P. Disclosure of Non-Party Interested Entities or Persons**

The Parties filed their Certificates of Interested Entities or Persons under Civil Local Rule 3-15.

**Q. Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**R. Other**

*Plaintiffs' Statement*

In its recent order granting Plaintiffs leave to file the Fourth Amended Consolidated Complaint, the Court criticized interim lead counsel, Boies Schiller Flexner ("BSF"). BSF acknowledges the criticism and wishes to assure the Court that the firm—along with able co-counsel—is devoting considerable resources and careful thought to litigating this pathbreaking case on behalf of Plaintiffs and the putative class. Our goal throughout discovery has been to create a record that will permit the Court to decide some of the most important copyright issues to arise in a generation. With respect to the Court's concern that we have been unnecessarily or unfairly critical of Meta or its counsel, we want to assure the Court that we intended no disrespect to Meta, its counsel, or the Court, and we will be very mindful of the Court's admonition going forward.

Dated: May 15, 2026                              Respectfully submitted,

By: */s/ Karen L. Dunn*                          By: */s/ Maxwell V. Pritt*

**DUNN ISAACSON RHEE LLP**                       **BOIES SCHILLER FLEXNER LLP**
Karen L. Dunn (pro hac vice)                     David Boies (*pro hac vice*)
Jessica E. Phillips (pro hac vice)               333 Main Street
Kyle N. Smith (pro hac vice)                     Armonk, NY 10504
401 9th Street NW Washington, DC                 (914) 749-8200
20004 Telephone: (202) 240-2900                  dboies@bsfllp.com
Email: kdunn@dirllp.com
jphillips@dirllp.com                             Maxwell V. Pritt (SBN 253155)
ksmith@dirllp.com                                Joshua M. Stein (SBN 298856)
                                                 Margaux Poueymirou (SBN 356000)
**COOLEY LLP**                                   44 Montgomery Street, 41st Floor
                                                 San Francisco, CA  94104

Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
cghazarian@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela Dunning
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC  20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual*
*and Representative Plaintiffs and the Proposed Class*

**JOINT CASE MANAGEMENT STATEMENT**
**CASE NO. 3:23-CV-03417-VC**

ECF ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that counsel for Meta concurs in the filing of this document.

/s/ *Maxwell V. Pritt*

**JOINT CASE MANAGEMENT STATEMENT**
**CASE NO. 3:23-CV-03417-VC**