**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

*(additional counsel included below)*

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@butupricklaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al., <br><br> *Individual and Representative Plaintiffs*, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> *Defendant.* | Case No. 3:23-cv-03417-VC <br><br> **PLAINTIFFS' MOTION TO CERTIFY PARTIAL SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)** |

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

NOTICE OF MOTION AND MOTION ....................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

    I.       BACKGROUND ................................................................................... 3

           A.     *Kadrey v. Meta*.................................................................... 3

           B.     *Bartz v. Anthropic* ............................................................. 4

    II.      LEGAL STANDARD........................................................................... 6

    III.    ARGUMENT........................................................................................ 7

           A.     Whether Acquisition-by-Piracy is Excused by a Later "Ultimate Use" Is a Controlling Question of Law........................................................ 7

           B.     The Summary Judgment Order Presents Novel Questions about Fair Use and Emerging Generative AI Technologies on which There Is Already a Split in Authority ........................................................ 8

           C.     An Appeal Will Materially Advance This Case (and the Related Cases Against Meta) .................................................................. 11

           D.     A Decision by the Ninth Circuit on the Initial Acquisition Issue Would Provide Essential Guidance in Related Cases and Promote Clarity for Copyright Holders and the AI Industry................................. 11

## **TABLES OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*American Geophysical Union v. Texaco Inc.*,
    60 F.3d 913 (2d Cir. 1994)................................................................................................ 1

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023)................................................................................................ 3, 4, 5

*Asis Internet Servs. v. Active Response Grp.*,
    2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ......................................................... 10

*Atari Games Corp. v. Nintendo of Am. Inc.*,
    975 F.2d 832 (Fed. Cir. 1992)..................................................................................... 9

*Bartz v. Anthropic PBC*,
    787 F. Supp. 3d 1007 (N.D. Cal. 2025) ............................................................. *passim*

*Bartz v. Anthropic PBC*,
    791 F. Supp. 3d 1038 (N.D. Cal. 2025) ...................................................................... 6

*Canela v. Costco Wholesale Corp.*,
    2018 WL 3008532 (N.D. Cal. June 15, 2018) ........................................................... 10

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ...................................................................................... 8

*Desire, LLC v. Manna Textiles, Inc.*,
    986 F.3d 1253 (9th Cir. 2021) .................................................................................... 2

*Doe v. Github, Inc.*,
    2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ........................................................... 2

*Finder v. Leprino Foods Co.*,
    2016 WL 4095833 (E.D. Cal. Aug. 1, 2016)............................................................. 11

*Geo Grp., Inc. v. Menocal*,
    146 S. Ct. 774 (2026)................................................................................................. 8

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ..................................................................................... 6

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) ................................................................................. 6, 7

*In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*,
    399 F. Supp. 2d 320 (S.D.N.Y. 2005)...................................................................... 12

*Krangel v. Crown*,
791 F. Supp. 1436 (S.D. Cal. 1992) ..................................................................................... 6, 11

*Leite v. Crane Co.*,
2012 WL 1982535 (D. Haw. May 31, 2012) .......................................................................... 12

*Lenz v. Universal Music Corp.*,
815 F.3d 1145 (9th Cir. 2016) ................................................................................................ 2

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ................................................................................................................ 8

*Morrison-Knudsen Co., Inc. v. Archer*,
655 F.2d 962 (9th Cir. 1981) .................................................................................................. 7

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .............................................................................................. 6, 7

*Rollins v. Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) .................................................................. 10, 11

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ................................................................................................ 11

*Swint v. Chambers Cnty. Com'n*,
514 U.S. 35 (1995) ............................................................................................................... 6, 7

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
2025 WL 1488015 (D. Del. May 23, 2025) ........................................................................... 1

*United States ex rel Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*,
370 F. Supp. 2d 993 (N.D. Cal. 2005) ................................................................................... 7

*Wang v. Zymergen Inc.*,
759 F. Supp. 3d 1002 (N.D. Cal. 2024) ............................................................................... 10

## Statutes

17 U.S.C. § 107 ............................................................................................................... 1, 3, 8

17 U.S.C. § 1202 .................................................................................................................... 2

28 U.S.C. § 1292(b) ....................................................................................................... *passim*

## Secondary Sources

2 The Law of Copyright § 15:154
*Mass digitizing of copyrighted works—Generative artificial intelligence* ............................... 10

3 Entertainment Law 3d § 24:16
  *Copyright and AI training—Divergent fair use analyses in
  Bartz v. Anthropic and Kadrey v. Meta* .................................................................. 10

Barbara Bruni, *Training on Trial: Insights from Bartz and Kadrey,*
  73 J. OF COPYRIGHT SOCIETY 263 (2026) ................................................................ 10

Edward Lee, *Fair Use and the Origin of AI Training*,
  63 HOU. L. REV. 105 (2025) ............................................................................... 9, 10

## Other Authorities

U.S. Copyright Office, Copyright and Artificial Intelligence:
  Part Three: Generative AI Training,
  A Report of the Register of Copyrights (May 2025) .................................................. 9

## Miscellaneous

Anna's Archive Blog,
  available at: https://web.archive.org/web/20260101132635/https://annas-archive.org/blog/ai-
  copyright.html. ...................................................................................................... 9

Copyright Alliance, F*ederal Court AI Cases Involving Copyright Claims*,
  available at: https://copyrightalliance.org/artificial-intelligence-copyright/court-cases/ ......... 13

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on July 16, 2026, at 10:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Vince Chhabria, District Judge, U.S. District Court for the Northern District of California, in Courtroom 3 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs Richard Kadrey, Sarah Silverman, Junot Diaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Lysa TerKeurst, Jacqueline Woodson, and Christopher Farnsworth (collectively, "Plaintiffs") will and hereby do move this Court for an order to certify the Court's June 25, 2025 order (Dkt. 598) denying Plaintiffs' motion for partial summary judgment and granting Defendant Meta Platforms, Inc.'s cross-motion for partial summary judgment for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the following issue:

> Under 17 U.S.C. § 107 and *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023), where a company downloads copyrighted works from an illicit Internet repository of pirated works (known as a "shadow library"), does that reproduction constitute a fair use based on the company's ultimate use of the works in connection with training of artificial intelligence? [1]

Plaintiffs' Motion to Certify Interlocutory Appeal ("Motion") is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, all pleadings and papers in this action, and oral argument of counsel. Meta advised that it "maintains its prior position that it does not agree to the Plaintiffs' request. Meta intends to file a response to Plaintiffs' motion and to the extent Meta opposes the requested relief, Meta will explain the basis for its opposition in that response."

---

[1] Plaintiffs reserve the right to appeal, after final judgment, the Court's other summary judgment holdings, including that (i) "market dilution" (or "indirect substitution") is the only viable market harm under fair-use factor four, even when the piracy created a pure market substitution, Dkt. 598 at 4-5, 33; (ii) there was no genuine dispute of material fact of such market dilution, *id.*; and (iii) 17 U.S.C. § 1202(b) does not apply where "the underlying act of infringement is a fair use," Dkt. 601 at 2.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court's order denying Plaintiffs' motion for partial summary judgment and granting Meta's cross-motion ("Order") addresses a critical issue of copyright law raised in dozens of pending cases nationwide: whether AI companies may download copyrighted works from "shadow libraries" of pirated works and claim "fair use" by pointing downstream to an ultimate (or even potential) use for AI training. This is a pivotal question of law that no court of appeals has addressed and about which there are substantial grounds for differences of opinion. Indeed, as this Court has recognized, the only two orders to address this question so far—in this case and in *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025) ("*Bartz*")—reached opposite conclusions. *See* May 22, 2026 Hr'g Tr. at 20:18-24. And since those decisions issued last summer, eighteen lawsuits (and counting) have brought shadow-library claims that turn on this same question of law.

The practical stakes for both rightsholders and AI companies are enormous: AI companies have copied and ingested millions of copyrighted texts to build large language models, and some— like Meta—have obtained these copyrighted works by reproducing them from illicit repositories built on the systemic piracy of intellectual property instead of purchasing or licensing them. Whether this acquisition practice constitutes a fair use under 17 U.S.C. § 107 is a multi-billion-dollar question that will shape AI and intellectual-property practices and the future of shadow libraries. As this Court rightly noted, appellate resolution of this issue is both important and inevitable: "[T]he general issue of AI/machine learning copyright infringement, it's never going to get resolved until it goes up to the appellate courts. . . . [E]verybody on both sides of the issues ha[s] a strong interest in getting the issue resolved as soon as possible." Dec. 19, 2025 Hr'g Tr. at 6:15-22.

Recognizing the need for uniformity and clarity, courts have permitted § 1292(b) interlocutory appeals following the resolution of an important fair use issue. *See*, *e.g.*, *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 914 (2d Cir. 1994); *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 2025 WL 1488015, at *1 (D. Del. May 23, 2025); *Lenz v. Universal*

*Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016). Indeed, the Ninth Circuit has already agreed to resolve, on an interlocutory basis, issues that will govern the intersection of IP law and the AI industry, accepting Judge Tigar's certification (over the AI companies' oppositions) of whether §§ 1202(b)(1) and (b)(3) of the DMCA impose an identicality requirement. *See Doe v. Github, Inc., et al.*, Nos. 24-6136, 24-7700 (9th Cir.); 2024 WL 4336532, at *1 (N.D. Cal. Sept. 27, 2024) (certification order).

Certification of the question presented for immediate appellate review will materially advance this case, eliminating the significant risk of inconsistent outcomes, including for AI companies facing suits in different courts in the Ninth Circuit. An appellate decision will provide clarity that will streamline proceedings, narrow issues, and facilitate resolution, both here and across the growing body of related copyright infringement litigation in this District and throughout the country.

Circumstances have changed since the parties and the Court previously discussed interlocutory review. The path to final judgment on all claims in this action has materially lengthened, with case deadlines now occurring in tandem with much later filed actions. Relatedly, shadow-library claims are again pending against Meta both in this Court (in the later filed and related individual actions) and in the Southern District of New York (in two recently-filed putative class actions).

While Meta initially sought an immediate appeal, Dkt. 605 at 6, it now takes the position that such an appeal is "inefficient and inappropriate" because the related actions against it "will move forward regardless of what happens in *Kadrey*." Dkt. 732 at 7-8. But those plaintiffs also assert shadow-library claims (based on Meta's downloading from the same websites at issue in this case), rendering appellate resolution of the question presented here, if certified, equally applicable to them. And if those plaintiffs elect statutory damages, then a reversal by the Ninth Circuit is potentially dispositive of their copyright infringement claims, too. *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir. 2021) (holding copyright infringement plaintiffs are limited to one award of statutory damages "for all infringements of a single work").

Furthermore, even assuming there are no extensions in *Entrepreneur Media* (and this case), the Ninth Circuit could hear argument before or near to the summary judgment hearings in this Court. The parties and the Court could then decide whether and to what extent to await summary judgment adjudication.

Accordingly, in the interest of judicial economy and prompt resolution of a controlling legal question, Plaintiffs respectfully request certification of the following question for interlocutory appeal:

> Under 17 U.S.C. § 107 and *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023), where a company downloads copyrighted works through an illicit Internet repository of pirated works (known as a "shadow library"), does that reproduction constitute a fair use based on the company's ultimate use of the works in connection with training of artificial intelligence?

## I.    BACKGROUND

### A.  *Kadrey v. Meta*

Plaintiffs filed this action in July 2023, alleging that Meta directly infringed their copyrights in connection with the training of Meta's large language models, known as Llama. Dkt. 1. Discovery eventually revealed that Meta acquired Plaintiffs' copyrighted works by torrenting them, which involved, *inter alia,* downloading the works from repositories that misappropriated the works, known as "shadow libraries." In March 2025, the parties filed cross-motions for summary judgment on, *inter alia*, Plaintiffs' claims stemming from Meta's downloading of Plaintiffs' works from shadow libraries. Dkts. 472, 489.[2] On June 25, 2025, the Court denied Plaintiffs' partial summary judgment motion and granted partial summary judgment to Meta. Dkt. 598.

The Court held that Meta's use of Plaintiffs' works to train its Llama models was fair use. Dkt. 598. Based on this holding, the Court further held that Meta's prior *acquisition* of works from shadow libraries was also fair use because the "ultimate use" was for AI training. *Id.* at 21. The

---

[2] Plaintiffs' copyright infringement claims relating to Meta's *uploading* during torrenting of Plaintiffs' works were not adjudicated at that time. *See* Dkt. 598 at 15 n.4 ("the record on Meta's alleged distribution is incomplete, making summary judgment on that issue improper at this point in the case").

Court explained:

> The last issue . . . is the relationship between Meta's downloading of the plaintiffs' books and Meta's use of the books to train Llama. To the extent the plaintiffs suggest that the former must be considered wholly separately from the latter, they are wrong. To be sure, Meta's downloading is a different use from any copying done in the course of LLM training. But that downloading must still be considered in light of its ultimate, highly transformative purpose: training Llama. . . . Because Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books.

*Id.* This Court noted the Supreme Court's holding in *Warhol* that "the same copying may be fair when used for one purpose but not another," *id.* (quoting *Warhol*, 598 U.S. at 533), but concluded that one act of reproduction (in training) effectively excused the other (in downloading from shadow libraries).

After the Order, Plaintiffs uploading claims remained for adjudication. The Court set a summary judgment schedule for those claims, with opening briefs due in November 2025, and a hearing in February 2026. Dkt. 623. Subsequent factual revelations, including those that led to Plaintiffs' administrative motion in October 2025, and additional productions that followed, necessitated further extensions of the case schedule, pushing the summary judgment hearing into July 2026. *See* Dkts. 628, 641, 647, 660. And, most recently, the Court granted Meta's request "that the schedule in this case be pushed back so that expert discovery can proceed on the same schedule as in the *Entrepreneur Media* case." Dkt. 700 at 6. Assuming that *Entrepreneur Media*, No. 25-cv-9579 (N.D. Cal.), proceeds on its initial case schedule without any extensions, expert discovery will close on November 20, 2026, with summary judgment hearings set for February 25, 2027. *See id.*, Dkt. 40.

**B.  *Bartz v. Anthropic***

Two days before this Court issued its Order, Judge Alsup ruled on nearly identical legal issues in *Bartz*. There, AI company Anthropic faced copyright-infringement claims from book authors who, like Plaintiffs, argued that Anthropic's acquisition of copyrighted works from a shadow library (called Library Genesis) was direct copyright infringement and could not be excused by a fair-use defense. *See Bartz*, No. 24-cv-5417-WHA (N.D. Cal.), Dkt. 158 at 14. Judge Alsup agreed with the *Bartz* plaintiffs and rejected Anthropic's fair-use defense as to its acquisition

of their works from Library Genesis, disagreeing with this Court on whether a transformative ultimate use renders other uses fair. *See Bartz*, at 1033. Specifically, *Bartz* held that Anthropic's downloading and retention of copyrighted works from a shadow library was a *different* use—which this Court also held, *see* Order at 21 ("To be sure, Meta's downloading is a different use from any copying done in the course of LLM training.")—and had a *different* purpose from training large language models, thereby undermining a finding of fair use. *Bartz* at 1033 ("The downloaded pirated copies used to build a central library were not justified by a fair use."). *Bartz* noted the fair use factors "presuppose a 'use.' So, at the threshold, a court must decide whether a 'copyrighted [work] has been used in multiple ways,' then evaluate each." *Id.* at 1020 (quoting *Warhol*, 598 U.S. at 533). *Bartz* thus analyzed each act of copying separately, applying each of the fair use factors to each of Anthropic's three "uses." *Id.* ("This order addresses each of the four factors in turn, pointing out how each applies to the training copies and to the purchased and pirated library copies.").

In rejecting Anthropic's fair-use-excuses-piracy theory (the same theory advocated by Meta, which one employee described as "the lets-use-data-that-should-not-be-public-so-we-don't-have-to-pay-for-it approach," Dkt. 721-6), the *Bartz* court disagreed that "ultimate use" could render the unauthorized acquisition or downloading of copyrighted works from shadow libraries a fair use:

> [T]he person who copies the textbook from a pirate site has infringed already, full stop. This order further rejects Anthropic's assumption that the use of the copies for a central library can be excused as fair use merely because some will eventually be used to train LLMs. . . . This order doubts that any accused infringer could ever meet its burden of explaining why downloading source copies from pirate sites *that it could have purchased or otherwise accessed lawfully* was itself reasonably necessary to any subsequent fair use. There is no decision holding or requiring that pirating a book that could have been bought at a bookstore was reasonably necessary to writing a book review, conducting research on facts in the book, or creating an LLM. Such piracy of otherwise available copies is inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use and immediately discarded.

787 F. Supp. 3d at 1025.

This Court acknowledged its disagreement with *Bartz* on this issue, holding—"contra" *Bartz*—that "[b]ecause Meta's ultimate use of the plaintiffs' books was transformative, so too was

Meta's downloading of those books" from shadow libraries. Order at 21. In a subsequent order certifying a "piracy" class under Rule 23(b)(3), the *Bartz* court reaffirmed its holding on the question presented: "Anthropic is liable for all pirated copies regardless of whether they were used for training[.]" 791 F. Supp. 3d 1038, 1061 (N.D. Cal. 2025). And as this Court recently remarked:

> It would be -- you know, it would be nice to get some answers from the Ninth Circuit, particularly on the issue that Judge Alsup and I disagreed on, namely, the question of whether, you know, downloading stuff from the shadow libraries is automatically copyright infringement even if you're downloading it for a fair use.

May 22, 2026 Hr'g Tr. at 20:18-24. Given the split in authority between this Court's summary judgment Order and the *Bartz* orders, Anthropic moved to certify the question for interlocutory appeal. But the parties settled before the court ruled on the motion. *See Bartz*, No. 24-cv-5417, Dkt. 241 (Anthropic's Motion for Order Permitting Interlocutory Appeal); Dkt. 354 (Notice of Settlement).

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal (1) where there is "a controlling question of law," (2) upon which there is "substantial ground for difference of opinion," and (3) "an immediate appeal . . . may materially advance the ultimate termination of the litigation." The purpose of the rule is to provide "for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v. Chambers Cnty. Com'n*, 514 U.S. 35, 46 (1995).

A question of law is controlling if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). A substantial ground for difference of opinion exists where "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions[.]" *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). And interlocutory review may materially advance termination of a case when appellate "resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (quotations omitted). If

each § 1292(b) factor is satisfied, then "the appropriate procedure for the district court is to certify its order for interlocutory appeal[.]" *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 966 (9th Cir. 1981).

## III.   ARGUMENT

This case presents exactly the type of "pivotal and debatable" issue that warrants certification of the Order for interlocutory appeal. *Swint*, 514 U.S. at 46. First, the question that Plaintiffs seek to certify—whether a specific use of a copyrighted work should be analyzed in light of the defendant's later "ultimate use" of that work—is a controlling question that bears directly on Meta's ultimate liability. Second, there is a substantial ground for difference of opinion, demonstrated by both (i) the novel, cutting-edge issue presented, and (ii) the existing split in authority within this District. Third, an immediate interlocutory appeal would materially affect the outcome of this litigation and similar cases currently pending within the Ninth Circuit.

### A.   Whether Acquisition-by-Piracy is Excused by a Later "Ultimate Use" Is a Controlling Question of Law

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. Here, Meta does not dispute (and, in a summary judgment context, could not dispute) that it knowingly acquired Plaintiffs' copyrighted works (and many others) from shadow libraries for potential use as AI training data, and that it did so without purchasing the works or otherwise obtaining permission from copyright owners to acquire or use the works. Whether that reproduction is infringement (as Plaintiffs contend) or is a fair use (as Meta contends) is a question that goes directly to "the heart of the case." *United States ex rel Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1005 (N.D. Cal. 2005). More precisely, at the heart of the case is whether Meta must try to justify its initial, unauthorized reproduction in the context of the pure market substitution of stealing rather than buying Plaintiffs' copyrighted works, or whether Meta can elide that inquiry altogether by embedding its fair-use defense in subsequent, separate copying and use of the works (in training AI). While a controlling question need not "have a final, dispositive effect on the litigation," *Reese*, 643 F.3d at 688, the

certified question presented here could be dispositive of Meta's liability (at least as it relates to Plaintiffs' "downloading" claims).

**B.  The Summary Judgment Order Presents Novel Questions about Fair Use and Emerging Generative AI Technologies on which There Is Already a Split in Authority**

A substantial ground for difference of opinion exists concerning whether and to what extent 17 U.S.C. § 107 applies to a defendant's unauthorized commercial copying of copyrighted works from shadow libraries both because (1) "novel and difficult questions of first impression are presented," and (2) courts are already "in dispute" on those questions. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)*; see also Geo Grp., Inc. v. Menocal*, 146 S. Ct. 774, 786 n.5 (2026) (under § 1292(b), "a district court may find that the special difficulty and importance of an otherwise unappealable order counsels in favor of immediate review"); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-111 (2009) ("The preconditions for § 1292(b) review . . . are most likely to be satisfied when a . . . ruling involves a new legal question or is of special consequence[.]").

*First*, as this Court already recognized, because AI is a new and rapidly expanding technology, the intersection of "AI/machine learning" and "copyright infringement" presents "important" and novel questions. Dec. 19, 2025 Hr'g Tr. at 6:15-22; *see also* May 22, 2026 Hr'g Tr. at 20:18-24. This is particularly true for AI companies' methods of acquiring vast amounts of data to power AI models. Whether acquisition-by-piracy is permissible because of a downstream fair use is a critical question to answer uniformly and promptly because, in the absence of a clear rule, Meta and other AI companies will likely continue to use shadow libraries to take copyrighted works without permission, and to store and use those pirated works, which in turn will promote additional piracy by those shadow libraries and their users. That feedback loop is having a major effect on the ability of rightsholders and law enforcement to shut down these illicit repositories, which were once on the brink of collapse. As one notorious shadow library, Anna's Archive,

explained:

> Not too long ago, "shadow libraries" were dying. . . . Then came AI. Virtually all major companies building LLMs contacted us to train on our data. . . . We have given high-speed access to about 30 companies. Most of them are LLM companies, and some are data brokers, who will resell our collection.[3]

This Court was thus correct in observing that "everybody on both sides of the issues ha[s] a strong interest in getting the issue resolved as soon as possible," and "it's never going to get resolved until it goes up to the appellate courts." Dec. 19, 2025 Hr'g Tr. at 6:15-22. Likewise, the Ninth Circuit has recognized that emergent legal questions at the intersection of AI and copyright are worthy of interlocutory appeal. *See Doe v. Github, Inc., et al.*, Nos. 24-6136, 24-7700 (9th Cir.).

*Second*, "the first two district court decisions involving the training of generative AI models" have already produced an intra-district (and thus intra-circuit) split on the issue.[4] As discussed above, *Bartz* rejected "Anthropic's assumption that the use of the [pirated] copies for a central library can be excused as fair use merely because some will eventually be used to train LLMs." *Bartz* at 1025. Likewise, the U.S. Copyright Office, in addressing generative AI copyright issues, has stated its view that "[c]opyright owners have a right to control access to their works, even if someone seeks to obtain them in order to make a fair use. Gaining unlawful access therefore bears on the character of the use." U.S. Copyright Office, Copyright and Artificial Intelligence: Part Three: Generative AI Training, A Report of the Register of Copyrights (May 2025), available at: https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-3-Generative-AI-Training-Report-Pre-Publication-Version.pdf.[5] By contrast, in the summary judgment Order, this Court held, "contra" *Bartz*, that, "[b]ecause Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books" from pirate websites. Dkt. 598 at

---

[3] Anna's Archive Blog, available at: https://web.archive.org/web/20260101132635/https://annas-archive.org/blog/ai-copyright.html.

[4] *See*, *e.g.*, Edward Lee, *Fair Use and the Origin of AI Training*, 63 HOU. L. REV. 105, 176 (2025).

[5] *Bartz* and the USCO's position are consistent with the Federal Circuit's long-established general principle that the fair use defense is unavailable to copyright defendants who acquire an unauthorized initial copy. *See Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992) ("To invoke the fair use exception, an individual must possess an authorized copy of a literary work.").

21. This is a significant split, and—because of the importance of the issue—the divergent holdings have been widely noted by copyright scholars. *See, e.g.,* Lee, *Fair Use and the Origin of AI Training*, 63 HOU. L. REV. at 104 ("Judge Alsup took a categorical approach, treating the acquisition of pirated books as virtually *per se* infringing. By contrast, Judge Chhabria took a flexible approach."); Barbara Bruni, *Training on Trial: Insights from Bartz and Kadrey,* 73 J. OF COPYRIGHT SOCIETY 263, 264-65 (2026) ("The courts diverged . . . on their treatment of pirated works within the training corpus."); 3 Entertainment Law 3d § 24:16 *Copyright and AI training—Divergent fair use analyses in Bartz v. Anthropic and Kadrey v. Meta* ("Judge Alsup . . . rejected Anthropic's argument that an ultimate transformative use excuses all intermediate copying steps. In *Kadrey*, Judge Chhabria took a more unified view to the analysis[.]"); 2 The Law of Copyright § 15:154 *Mass digitizing of copyrighted works—Generative artificial intelligence* ("they disagreed whether it mattered that the copies used for training were purchased or copied from unauthorized sources").

That "courts have, in fact, disagreed" is "[o]ne of the best indications that there are substantial grounds for disagreement on a question of law." *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014). Indeed, courts in this District regularly certify issues that create an intra-district split. *See*, *e.g.*, *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008) (granting certification, where "[t]he standing requirement is being interpreted for the first time in district courts, and there is a[n] intra-district split"); *Rollins*, 2014 WL 6693891, at *3 (same, noting that "two district courts have decided this issue explicitly in conflict with this Court's decision"); *Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at *2 (N.D. Cal. June 15, 2018) (same, where "courts within this circuit have split on whether a plaintiff has standing to pursue PAGA claims without satisfying Rule 23 requirements"). [6]

---

[6] This Court has observed that a "split on an issue among district courts is rarely substantial enough on its own to justify interlocutory appeal[.]" *Wang v. Zymergen Inc.*, 759 F. Supp. 3d 1002, 1011 (N.D. Cal. 2024).  Here, the intra-district split on an issue is not the only justification for certifying an interlocutory appeal. The salience of the question presented across pending cases, and within this rapidly growing industry, makes the continued existence of intra-district splits highly undesirable.

**C. An Appeal Will Materially Advance This Case (and the Related Cases Against Meta)**

This case, filed in July 2023, is far more advanced than any other copyright case pending against Meta or other GenAI companies. It would serve the interests of Plaintiffs, the putative class, and Meta to have an appellate decision on the potentially dispositive issue of whether ultimate use excuses unauthorized acquisition through downloading from pirated repositories. And because Meta states it will raise a fair-use defense to Plaintiffs' uploading claims, guidance from the Ninth Circuit on the intersection of AI and fair-use might provide helpful direction on that issue, too.

Here, the Court's certification of an interlocutory appeal would particularly "advance termination of litigation," including "by increasing odds of settlement." *Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *5 (E.D. Cal. Aug. 1, 2016). Courts have acknowledged efficiency benefits from interlocutory appeals in the context of "class action cases, where litigants would be able to more accurately predict their odds of success, scope of potential liability, and a fair estimate of the case's value." *Id*. Because "almost all class actions are settled," uncertainty over a key claim's status "may delay settlement[.]" *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (Posner, J.). "That is enough to satisfy the 'may materially advance' clause of section 1292(b)[.]'" *Id.*; *see also Rollins*, 2014 WL 6693891, at *4 ("By addressing the questions now, the Court saves time and expense. If the Ninth Circuit reverses, the parties can turn to these issues sooner rather than later. And if the Court of Appeals affirms, the case can proceed on the issues that remain with greater certainty. Such certainty could even encourage a negotiated settlement, which would not just materially but completely advance the termination of this litigation.").

**D. A Decision by the Ninth Circuit on the Initial Acquisition Issue Would Provide Essential Guidance in Related Cases and Promote Clarity for Copyright Holders and the AI Industry**

In considering whether to grant certification, courts also give great weight to whether appeal might advance resolution of issues in other cases. *See, e.g.*, *Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992) ("Certification for appeal may also materially advance the conclusion

of other cases involving this same legal issue."); *Leite v. Crane Co.*, 2012 WL 1982535, at \*7 (D. Haw. May 31, 2012) (noting "resolution of the issue would materially advance the termination of not only the present case, but also other cases pending before the court"); *In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, 399 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) (noting the court should consider whether the "certified issue has precedential value for a large number of cases").

Even before this Court issued the Order, it noted the importance of this case—not just for the parties, but for other similarly situated defendants and authors. *See* Oct. 4, 2024 Hr'g Tr. at 25:13-19 ("[I]t is an important case that needs to—you know, we need a ruling. And, you know, it implicates not just Meta but all these other companies and all these other authors."). Because the *Bartz* case settled, no appellate court has weighed in on the shadow library downloading claim on which the *Bartz* plaintiffs prevailed. And because Plaintiffs in this case have other copyright claims that remain pending, it is unlikely final judgment will be entered in the near term. Accordingly, interlocutory appeal in this case provides the most efficient mechanism to present the issue to the Ninth Circuit.

In the ten months since this Court's Order, six additional cases have been filed against Meta alleging copyright infringement based on, *inter alia*, Meta's data acquisition practices and development of its Llama models. *See*, *e.g.*, *Entrepreneur Media*; *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*, No. 26-cv-2333-VC (N.D. Cal.); *Cognella Inc. v. Meta Platforms, Inc.*, No. 26-cv-4053-VC (N.D. Cal.); *Cambronne v. Meta Platforms Inc.*, No. 26-cv-3725-VC (N.D. Cal.); *Elsevier, Inc.*, *et al., v. Meta Platforms, Inc.*, *et al.*, No. 26-cv-3689 (S.D.N.Y.); *Hobbs et al. v. Meta Platforms, Inc.*, *et al.*, No. 26-cv-4314 (S.D.N.Y). Meta has acknowledged that "*Entrepreneur*, *Chicken Soup*, and *Cambronne* plaintiffs are essentially preemptive opt outs from *Kadrey*'s putative class action." Dkt. 726. And the *Elsevier* and *Hobbs* cases are strikingly similar putative class actions, raising many of the same claims as the *Kadrey* plaintiffs and similar class definitions.

Many other cases have been filed alleging similar claims against other AI companies— many of which involve the same claims and legal theories that are presented here and that could

be addressed by an interlocutory appeal here. *See, e.g., In re Google Generative AI Copyright Litig.*, No. 23-cv-3440-EKL (N.D. Cal.); *Concord Music Grp. v. Anthropic PBC*, No. 24-cv-3811-EKL (N.D. Cal.); *Nazemian v. NVIDIA Corp.*, No. 24-cv-1454-JST (N.D. Cal.); *In Re Mosaic LLM Litigation*, No. 24-cv-1451-CRB (N.D. Cal.)*; Hendrix v. Apple Inc.*, No. 25-cv-7558-YGR (N.D. Cal.); *Tanzer v. Adobe Inc.*, No. 26-cv-4712-HSG (N.D. Cal.); *Chicken Soup for the Soul, LLC v. Anthropic PBC*, 26-cv-4218-HSG (N.D. Cal.); *see also* Copyright Alliance, F*ederal Court AI Cases Involving Copyright Claims*, available at: https://copyrightalliance.org/artificial-intelligence-copyright/court-cases/. A ruling from the Ninth Circuit would provide much-needed clarity to the putative class and to the *millions* of litigants and absent class members whose rights are at stake.

*   *   *

The question of whether Meta's ultimate use of copyrighted works in connection with AI training excuses Meta's unauthorized acquisition of those works from shadow libraries is a novel and highly consequential issue, and one that has already been the subject of disagreement among courts in this District. A decision by the Ninth Circuit on this issue will not only be pivotal to this case and others, but it will have far-reaching effects that shape the contours of generative AI data acquisition practices and the intellectual property rights of millions. All of these factors counsel in favor of certifying the summary judgment Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: June 8, 2026

By: /s/ *Maxwell V. Pritt*
Maxwell V. Pritt

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (State Bar No. 083151)
Daniel M. Hutchinson (State Bar No. 239458)
Jallé H. Dafa (SBN 290637)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com

Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

Kenneth S. Byrd (pro hac vice)
Betsy A. Sugar (pro hac vice)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
kbyrd@lchb.com
bsugar@lchb.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Louis Andrew Kessler (SBN 243703)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
lkessler@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dstraite@dicellolevitt.com

**COWAN DEBAETS ABRAMS &
SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*