DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone:     (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

COOLEY LLP
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

MARK WEINSTEIN (193043)
(mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304
Telephone:    (650) 843-5000

PHILLIP MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, *et al.*, <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., a Delaware corporation, <br><br> Defendant. | Case No. 3:23-cv-03417-VC-TSH <br><br> **DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY PARTIAL SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

   A.   Plaintiffs Fail to Identify a "Controlling Question of Law" ..................... 3

   B.   Plaintiffs Also Fail to Show Substantial Ground for Difference of Opinion ........... 6

   C.   Plaintiffs Also Fail to Show that Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation. ............................... 8

III.  CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashmore v. N.E. Petroleum Div. of Cargill, Inc.*,
855 F. Supp. 438 (D. Me. 1994) .................................................................................. 10

*Atari Games Corp. v. Nintendo of Am. Inc.*,
975 F.2d 832 (Fed. Cir. 1992) ................................................................................... 6, 7

*Bada Int'l, Inc. v. ChungHo Nais, Co.*,
No. 13-SA-CV-01110-JVS-ANx, 2014 WL 12965998 (C.D. Cal. Aug. 5,
2014) ............................................................................................................................ 3

*Bartz v. Anthropic PBC*,
787 F.Supp.3d 1007 (N.D. Cal. 2025) ................................................................. *passim*

*Bartz v. Anthropic PBC*,
No. 24-cv-05417 WHA, 2025 WL 2308091 (N.D. Cal. Aug. 11, 2025) .............. 1, 5

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ................................................................................................. 2, 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07–5944 SC, 2013 WL 567281 (N.D. Cal. Feb. 13, 2013) ............................ 2, 10

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ........................................................................ 3, 8, 10, 11

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................................... 3, 6

*Dunn v. Chattanooga Pub. Co.*,
No. 1:12-cv-252, 2013 WL 587493 (E.D. Tenn. Feb. 14, 2013) ............................... 9

*Elsevier, Inc., v. Meta Platforms, Inc.*,
No. 1:26-cv-3689 (S.D.N.Y.) ............................................................................... 10, 11

*Getz v. Boeing Co.*,
No. C 07–06396 CW, 2009 WL 3765506 (N.D. Cal. June 16, 2009) ........................ 6

*Gitson v. Trader Joe's Co.*,
63 F.Supp.3d 1114 (N.D. Cal. 2014) (Chhabria, J.) .................................................. 8

*Hobbs v. Meta Platforms, Inc.*,
No. 1:26-cv-4314 (S.D.N.Y) ............................................................................... 10, 11

*Keskinen v. Lush Handmade Cosmetics, LLC*,
No. 2:24-cv-8860-HDV-SK, 2025 WL 2019931 (C.D. Cal. June 24, 2025) ............. 3

*In re Powerschool Holdings, Inc.*,
No. MDL No. 3149, 2026 WL 1507833 (S.D. Cal. May 29, 2026) ........................... 8

COOLEY LLP
ATTORNEYS AT LAW

**META PLATFORMS, INC.'S OPPOSITION
TO MOTION FOR § 1292(B) CERTIFICATION
3:23-CV-03417-VC-TSH**

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
923 F. Supp. 1231 (N.D. Cal. 1995) ...................................................................................... 7

*Spears v. Wash. Mut. Bank FA*,
No. C 08-00868 RMW, 2010 WL 54755 (N.D. Cal. Jan. 8, 2010) .................................. 2, 6, 9

*Tsyn v. Wells Fargo Advisors, LLC*,
No.14-cv-02552-LB, 2016 WL 1718139 (N.D. Cal. Apr. 29, 2016) ....................................... 6

*Wallis v. Centennial Ins. Co.*,
No. CIV-08-02558-WBS GGH, 2012 WL 1552766 (E.D. Cal. May 1, 2012) ........................ 9

*Wang v. Zymergen Inc.*,
759 F.Supp.3d 1002 (N.D. Cal. 2024) .................................................................................... 6

**Statutes**

28 U.S.C.
§ 1292(b) ..............................................................................................................*passim*
§ 1404(a) .............................................................................................................................. 11

COOLEY LLP
ATTORNEYS AT LAW

**META PLATFORMS, INC.'S OPPOSITION
TO MOTION FOR § 1292(B) CERTIFICATION
3:23-CV-03417-VC-TSH**

## I.      INTRODUCTION

To obtain appellate certification under 28 U.S.C. § 1292(b), Plaintiffs must satisfy all three statutory requirements: a controlling question of law, a substantial ground for difference of opinion, and showing that an interlocutory appeal may materially advance the ultimate termination of the litigation.  They satisfy none.

The question that Plaintiffs claim justifies interlocutory appellate review is whether downloading of "pirated" works is categorically ineligible for the fair use defense under copyright law.  This issue does not warrant interlocutory certification under § 1292(b).  The Court's conclusion that fair use applies to Meta's downloads was not the result of a novel legal determination, but the Court's application of established copyright law to the specific and undisputed facts of this case—a case-specific inquiry that § 1292(b) does not reach.

The centerpiece of Plaintiffs' motion is an alleged legal conflict with Judge Alsup's decision in *Bartz v. Anthropic*—a conflict that is illusory and manufactured through selective quotation. Plaintiffs quote *Bartz* for a proposition that copying from shadow libraries is "inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use" (Dkt. 741, at 5), while omitting the very next sentence of the opinion: "This order need not decide this case on that rule." *Bartz v. Anthropic PBC*, 787 F.Supp.3d 1007, 1026 (N.D. Cal. 2025).  Judge Alsup instead denied Anthropic's motion for summary judgment based on unique facts with no counterpart here—Anthropic had allegedly constructed a "general-purpose" central library of "all the books in the world," and retained it for non-transformative uses beyond AI training.  That two district courts reached different fair use outcomes on materially different facts is not a legal conflict evidencing a "controlling question of law," but rather the result of the fair use doctrine operating as it should.  And when a motion for § 1292(b) certification was later presented to Judge Alsup in *Bartz*, he denied it by emphasizing the specific factual record that led to that decision.  *See Bartz v. Anthropic PBC*, No. 24-cv-05417 WHA, 2025 WL 2308091, at *3 (N.D. Cal. Aug. 11, 2025)

*Bartz* thus never relied on the bright-line rule Plaintiffs attribute to it, *i.e.*, that copyrighted works downloaded from Internet repositories are *per se* ineligible for fair use even if later used for transformative purposes.  And for good reason, as fair use "calls for case-by-case analysis" that "is

not to be simplified with bright-line rules." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Whether copies downloaded from Internet repositories qualify as fair use is inherently case-dependent and not the type of controlling question of law § 1292(b) requires.

Nor would an immediate appeal of the summary judgment order materially advance the ultimate termination of this litigation. Plaintiffs waited nearly a full year to seek certification, which is itself a reason to deny the motion because "a district judge should not grant an inexcusably dilatory request," *Spears v. Wash. Mut. Bank FA*, No. C 08-00868 RMW, 2010 WL 54755, at *1 (N.D. Cal. Jan. 8, 2010) (denying § 1292(b) motion as untimely based on two and a half month delay). Plaintiffs assert that circumstances have changed since the Court's order, but in truth, they have changed in a way that makes § 1292(b) appeal less appropriate than it would have been a year ago. Plaintiffs have not requested a stay of the remaining claims in this case, which will (along with the claims in the four related cases filed after the Court's order) press forward in this Court regardless of what happens before the Ninth Circuit, creating a risk of piecemeal, overlapping appeals—including a potential collision between any pending § 1292(b) proceeding and the comprehensive § 1291 appeal filed after entry of final judgment. Moreover, the § 1292(b) appeal envisioned by Plaintiffs would, at most, address a sliver of the summary judgment order on an issue that might have little to no relevance by the time of Ninth Circuit's decision, in light of intervening developments such as class certification proceedings here and differences in the factual records developed in the related cases. As for Plaintiffs' argument that appellate clarity may improve the prospects for settlement, courts have doubted whether this is even a valid § 1292(b) consideration because resolution of a disputed issue in any case could make settlement more probable. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07–5944 SC, 2013 WL 567281, at *4 (N.D. Cal. Feb. 13, 2013). Even on its own terms, Plaintiffs' settlement theory assumes a favorable outcome on appeal, ignores that settlement value in a class action turns primarily on certification prospects (as to which this Court has expressed doubts), and rests on a chain of speculation that § 1292(b) does not permit.

Finally, Plaintiffs' motion cannot be reconciled with the actual appeal the motion envisions. Plaintiffs invoke the historic significance of AI copyright issues and the urgent need for appellate

guidance on transformative legal questions.  But the narrow question they propose to appeal about downloading digital copies from Internet repositories is one of the more straightforward and unremarkable issues resolved by the Court's order.  The genuinely novel issues in this case, including this Court's market dilution theory under the fourth fair use factor, are ones Plaintiffs have expressly "reserved" only for a later appeal after final judgment.  (Dkt. 741, at page v., n.1 (Notice of Motion)).  Section 1292(b) does not exist to send easy questions from a court order to the Ninth Circuit through a piecemeal appeal, while parking the harder and more significant ones from that same order for a later day.  Plaintiffs' motion should be denied.

## II.    ARGUMENT

Appellate certification of the summary judgment order under § 1292(b) requires that Plaintiffs show (1) the existence of "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and that (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  Plaintiffs have satisfied none of them.

### A.    Plaintiffs Fail to Identify a "Controlling Question of Law"

The Ninth Circuit has directed that § 1292(b) "be applied sparingly and only in exceptional cases, and that the 'controlling question of law' requirement be interpreted in such a way to implement this policy." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981).  A controlling question "must be a 'pure question of law, not a mixed question of law and fact or an application of law to a particular set of facts.'" *Keskinen v. Lush Handmade Cosmetics, LLC*, No. 2:24-cv-8860-HDV-SK, 2025 WL 2019931, at *3 (C.D. Cal. June 24, 2025) (quoting *Bada Int'l, Inc. v. ChungHo Nais, Co.*, No. 13-SA-CV-01110-JVS-ANx, 2014 WL 12965998 (C.D. Cal. Aug. 5, 2014)).  This prong requires that the district court "examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633.

Plaintiffs' motion rests almost entirely on the order denying summary judgment in *Bartz*, issued two days before this Court's ruling.  They argue that decision placed that court in direct legal

conflict with this Court by adopting a categorical rule that fair use can never apply to works downloaded from so-called "shadow libraries." A closer look at *Bartz* exposes the falsity of this premise. The *Bartz* decision turned on facts specific to that case that are not present here. Most importantly, based on the summary judgment record and having drawn all ambiguities and inferences in favor of the plaintiffs, and having accepted the plaintiffs' version of the facts, Judge Alsup concluded that Anthropic downloaded the plaintiffs' books to create a "general-purpose" central library of "all books in the world," which was intended for a broader range of uses beyond LLM training. *See Bartz*, 787 F.Supp.3d at 1014, 1025–26, 1034. Here, by contrast, Plaintiffs' books were downloaded and used solely in connection with the research, development, and training of Meta's AI models. (Dkt. 598 ("MSJ Order"), at 21-22.)

The selective quotation of *Bartz* at the core of Plaintiffs' argument illustrates the problem. Plaintiffs quote and lean heavily on Judge Alsup's statement that "[s]uch piracy of otherwise available copies is inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use and immediately discarded." (Dkt. 741, at 5 (quoting *Bartz*, 787 F.Supp.3d at 1025)). They omit the very next sentence of Judge Alsup's order: "**[T]his order need not decide this case on that rule**." *Bartz*, 787 F.Supp.3d at 1026 (emphasis added). Judge Alsup then explained why: "Anthropic did not use these copies only for training its LLM. Indeed, it retained pirated copies even after deciding it would not use them or copies from them for training its LLMs ever again. They were acquired and retained, as a central library of all the books in the world." *Id.* "Building a central library of works to be available for any number of further uses," the court emphasized, "was itself the use for which Anthropic acquired these copies." *Id*.

This central library was the key to Judge Alsup's rejection of Anthropic's motion for summary judgment of fair use for copies downloaded from Internet repositories. The *Bartz* decision discusses the central library dozens of times, including in every section in which it applies the fair use doctrine to the digital copies Anthropic downloaded from Internet repositories. *See Bartz*, 787 F.Supp.3d at 1014-15, 1019-22, 1025-27, 1029, 1033-34. The concluding summary in *Bartz* makes the point explicitly: "[W]e will have a trial on the pirated copies used to create Anthropic's central library and the resulting damages, actual or statutory (including for

willfulness)." *Id*. at 1034.

This point was further amplified in Judge Alsup's subsequent order denying Anthropic's motion for appellate certification under § 1292(b), which clarified that factual issues – not resolution of discrete legal questions – drove the denial of summary judgment. *See Bartz*, 2025 WL 2308091, at *3. Judge Alsup explained that he denied Anthropic's motion for summary judgment "because Anthropic had presented a one-sided and sanitized version of how the works were downloaded into its collection, further copied, and in fact used." *Id.* The court observed that the evidentiary record of how Anthropic used the works was unclear, but that the summary judgment record nevertheless "supported that Anthropic had downloaded pirate libraries to build its own library for various further uses, only one being to make further copies for training LLMs." *Id.* (internal citations omitted). The court made clear that "Anthropic w[ould] have every opportunity to perfect its affirmative defense at trial, presenting evidence for the jury to find the underlying facts needed for the judge to decide fair use in its favor (or not)." *Id.*

*Bartz* thus never adopted and applied the bright-line rule Plaintiffs attribute to it, *i.e.*, that copies downloaded from Internet repositories are *per se* ineligible for fair use as a matter of law even if later used for a transformative purpose. Any such rule would have been inconsistent with Supreme Court precedent eschewing such bright-line rules. *See, e.g.*, *Campbell*, 510 U.S. at 577 ("The [fair use] task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis."). This is perhaps why Judge Alsup expressly declined to "decide th[e] case" on any such rule, *Bartz*, 787 F.Supp.3d at 1026, and instead denied summary judgment based on the case-specific evidence that Anthropic retained and used the downloaded works for non-transformative purposes.

Importantly, that case-specific evidence is entirely absent here. There was no evidence (or allegation) that Meta created any "general-purpose central library" of books for uses unrelated to AI research and development. As the Court observed in its order, Meta offered unrebutted evidence that Plaintiffs' books were downloaded and used solely in connection with the research, development, and training of Meta's AI models. (MSJ Order, at 21-22.)

COOLEY LLP
ATTORNEYS AT LAW

META PLATFORMS, INC.'S OPPOSITION
TO MOTION FOR § 1292(B) CERTIFICATION
3:23-CV-03417-VC-TSH

**B.    Plaintiffs Also Fail to Show Substantial Ground for Difference of Opinion**

Even if Plaintiffs had identified a controlling question of law based on the *Bartz* decision (which they have not), they have not identified a substantial ground for difference of opinion.  "A substantial ground for difference of opinion is not established by a party's strong disagreement with the court's ruling; the party seeking an appeal must make some greater showing." *Getz v. Boeing Co.*, No. C 07–06396 CW, 2009 WL 3765506, at *2 (N.D. Cal. June 16, 2009).  Courts in this district have repeatedly explained that "it would not warrant a § 1292(b) appeal simply because another district court reached a different decision in a broadly similar case." *Tsyn v. Wells Fargo Advisors, LLC*, No.14-cv-02552-LB, 2016 WL 1718139, at *4 (N.D. Cal. Apr. 29, 2016); *see also, e.g.*, *Wang v. Zymergen Inc.*, 759 F.Supp.3d 1002, 1011 (N.D. Cal. 2024) ("A split on an issue among district courts is rarely substantial enough on its own to justify interlocutory appeal."); *Spears*, 2010 WL 54755, at *3 ("[T]hat one district court came to a different conclusion on the same issue is insufficient to establish a substantial ground for difference of opinion."); *Getz*, 2009 WL 3765506, at *3 (same).  "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633.

Plaintiffs' inability to show a substantial ground for difference of opinion flows directly from their mischaracterization of *Bartz*.  Because *Bartz* did not adopt the bright-line rule Plaintiffs attribute to it, there is no genuine conflict for the Ninth Circuit to address, let alone resolve.  What Plaintiffs mischaracterize as a legal difference between *Bartz* and the ruling here was actually just a difference in the underlying material facts: Anthropic created and retained a general-purpose library for multiple non-transformative uses; Meta did not.  Different facts produce different fair use outcomes.  That is not a conflict worthy of immediate circuit-level attention—it is the fair use doctrine operating in the way it is supposed to.  This Court's holding that "[b]ecause Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books," (MSJ Order at 21), was not only consistent with established copyright law, but on the particular facts of this case, not a close question.

The only other judicial authority Plaintiffs cite to attempt to show a substantial ground for difference of opinion is *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 843 (Fed. Cir.

1992), which they invoke in a footnote for what they call the "long-established general principle" that "[t]o invoke the fair use exception, an individual must possess an authorized copy of a literary work." (Dkt. 741, at 9 n.5.) *Atari* was the same authority Plaintiffs relied upon in their summary judgment motion, and this Court correctly rejected it because *Atari* "overread the cases on which it relied for its statement about the need to start with an authorized copy." (MSJ Order, at 19 (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc*., 923 F. Supp. 1231, 1244 n.14 (N.D. Cal. 1995)). The "authorized copy" statement cited by Plaintiffs has not been adopted by the Ninth Circuit or any other circuit in the more than three decades since *Atari* was decided.

Plaintiffs also cite a ***pre***-publication Copyright Office report from May 2025 on AI training, but that report undercuts their position and is hardly precedential. The section Plaintiffs cite states only that knowing use of a pirated dataset "should weigh against fair use <u>without being determinative</u>," a statement immediately followed by a footnote citing cases, including some in which courts found fair use notwithstanding defendants' use of unauthorized initial copies. (*Copyright and Artificial Intelligence, Part 3: Generative AI Training*, U.S. Copyright Office Pre-Publication Report, p.52 <https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-3-Generative-AI-Training-Report-Pre-Publication-Version.pdf>) (emphasis added).) The report thus does not support Plaintiffs' argument that use of a "pirated dataset" is categorically ineligible for fair use even when those works are used for a transformative purpose. The report further confirms that fair use of a "pirated dataset" is not the type of determinative legal issue for which § 1292(b) certification may be appropriate.

Plaintiffs also quote a portion of a sentence from Edward Lee, *Fair Use and the Origin of AI Training*, 63 Hou. L. Rev. 104 (2025),[1] that "Judge Alsup took a categorical approach, treating the acquisition of pirated books as virtually *per se* infringing." (Dkt. 741, at 10 (quoting Lee, at 222).) But the full sentence from Professor Lee's article actually says: "In short, <u>in denying fair use as to this library-building</u>, Judge Alsup took a categorical approach, treating the acquisition of

---

[1] A copy of Professor Lee's article is available at <https://houstonlawreview.org/article/147422-fair-use-and-the-origin-of-ai-training> (last visited June 16, 2026). Although other commentators and scholars have written about *Bartz* and *Kadrey* (*see* Dkt. 741, at 10), their observations do not change the underlying facts in the two cases or provide any support for Plaintiffs' motion.

pirated books as virtually *per se* infringing." (Lee, at 222 (emphasis added).) The sentence immediately before that explains that Judge Alsup had "suggested, <u>without deciding</u>," that Anthropic's fair use defense would have failed "even if Anthropic had downloaded the pirated books without storing them in a permanent library." (*Id.* (emphasis added).) In fact, another section of Professor Lee's article not cited by Plaintiffs correctly characterizes this categorical approach as "dicta." (*Id.* at 178 ("Judge Alsup even suggested in dicta that such use is categorically infringing, no matter if immediately used to train AI models without establishing a permanent library.").) Professor Lee's article underscores how Plaintiffs have misinterpreted *Bartz*, and further undermines Plaintiffs' argument that a substantial ground for difference of opinion exists with how this Court applied fair use to downloaded copies.

### C. Plaintiffs Also Fail to Show that Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation.

Plaintiffs' failure to satisfy the third factor under § 1292(b) is independently dispositive. As this Court has observed, "[w]hen litigation will be conducted in substantially the same manner regardless of [the appellate court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Gitson v. Trader Joe's Co.*, 63 F.Supp.3d 1114, 1117 (N.D. Cal. 2014) (Chhabria, J.) (citation omitted). "The 'materially advance' inquiry asks whether appellate resolution would meaningfully shorten the path to final judgment, consistent with § 1292(b)'s purpose of avoiding 'protracted and expensive litigation.'" *In re Powerschool Holdings, Inc.*, No. MDL No. 3149, 2026 WL 1507833, at *5 (S.D. Cal. May 29, 2026) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026). An immediate appeal here would not shorten the path to final judgment.

Ninth Circuit interlocutory appeals can take years to resolve, and an extended delay is even more likely if, assuming Plaintiffs are to be believed, their appeal would present "a pivotal question of law that no court of appeals has addressed," in which "[t]he practical stakes for both rightsholders and AI companies are enormous." (Dkt. 741, at 1.) This delay is exacerbated by the fact that Plaintiffs inexplicably waited almost a full year before requesting certification of the summary judgment order under § 1292(b), and they have not asked for a stay of the remaining claims in this

case (or the related cases) pending any interlocutory appeal.[2] Plaintiffs' delay is reason alone to deny their motion because a district court "should not grant an inexcusably dilatory request" for certification under § 1292(b).  *Spears*, 2010 WL 54755, at *1-2 (denying certification under § 1292(b) as untimely where moving party waited two and a half months before seeking certification); *see also Wallis v. Centennial Ins. Co.*, No. CIV-08-02558-WBS GGH, 2012 WL 1552766, at *2 (E.D. Cal. May 1, 2012) (denying certification under § 1292(b) where defendants "provided no reason for their three month delay in seeking certification").

The remaining claims in this case and in the related cases will advance regardless of what happens before the Ninth Circuit.  Plaintiffs' inexcusable delay in seeking certification makes it more likely that the district court cases could reach trial, final judgment, and even the early stages of Ninth Circuit review under § 1291 while Plaintiffs' proposed piecemeal § 1292(b) appeal is still pending.  And even if the § 1292(b) appeal is resolved before trial in this or the other related cases, the Ninth Circuit will at best have issued a ruling on a narrow slice of the summary judgment order.  That ruling may, by that time, have marginal relevance given intervening developments on class certification in this case, and differences in the factual records developed in the related cases.

Plaintiffs assert that certification would advance termination of the litigation by increasing the prospects of settlement, and that this suffices under the third factor.  (Dkt. 741, at 11.)  But as one court observed, "it is unclear whether this is a proper consideration in the § 1292(b) context." *Dunn v. Chattanooga Pub. Co.*, No. 1:12-cv-252, 2013 WL 587493, at *2 (E.D. Tenn. Feb. 14, 2013) (citing cases).  After all, in virtually any case involving a disputed question, a losing party could argue that an appellate ruling in its favor could clarify the legal landscape and thereby

---

[2] Prior to the July 2025 Case Management Conference, Plaintiffs had initially taken the position that they wanted an interlocutory appeal of the summary judgment and a stay of the remainder of the case pending that appeal.  (Dkt. 605, at 5.)  At that time, *Kadrey* was the only matter pending before this Court alleging copyright infringement based on Meta's Llama models, so even though Plaintiffs later retreated from their initial position (*id.*), Meta argued that an interlocutory appeal made sense so long as the remaining claims were stayed to avoid duplicative and potentially conflicting class certification and trial proceedings and under the single statutory damages rule. (*Id.* at 5-7.)  But there are now four related cases before this Court alleging similar copyright infringement claims, and Plaintiffs have abandoned their previous position that the remaining claims in this litigation should be stayed pending an interlocutory appeal.  An interlocutory appeal today would thus introduce new complexities and inefficiencies to this case, and would make even less sense given the other related cases pending before this Court.

improve the odds of a negotiated resolution. *See Cathode,* 2013 WL 567281, at *4 ("Defendants' argument that an altered settlement posture counsels granting the appeal is unconvincing, since appeal would almost always modify parties' settlement postures in any given case."); *Ashmore v. N.E. Petroleum Div. of Cargill, Inc.,* 855 F. Supp. 438, 440 n.3 (D. Me. 1994) ("Resolution of nearly any disputed issue of law will to a greater or lesser extent, make settlement more probable."). If this were sufficient to satisfy the "materially advance" prong, it would contravene the Ninth Circuit's directive "that section 1292(b) is to be applied sparingly and only in exceptional cases." *In re Cement Antitrust Litig.,* 673 F.2d at 1027.

And even accepting that settlement promotion is a cognizable consideration under § 1292(b)—which it is not—Plaintiffs' theory depends on a speculative chain of events that their arguments do not support. Plaintiffs' argument requires that (1) the Ninth Circuit rule in their favor, (2) that such a ruling clarify the law in a way that meaningfully shifts both sides' assessments of the litigation, and (3) that this shift materialize before the remaining claims press forward to trial and final judgment on their own. And if the Ninth Circuit affirms this Court's ruling—which in Meta's view is the far more likely outcome—the interlocutory appeal would have consumed years of party and judicial resources while providing no countervailing benefit. This waste of resources is further exacerbated by the exceptionally narrow and piecemeal nature of the § 1292(b) appeal that Plaintiffs envision, as discussed further below.

The class action context makes Plaintiffs' settlement theory even harder to sustain. Settlement value in a putative class action turns primarily on certification prospects, not on the resolution of a narrow merits question. This Court has not certified a class on any of Plaintiffs' claims and has signaled potential doubts that it will. (Dkt. 680 (02/05/2026 Hearing Tr.), at 19:2-5, 23:13-24:9, 27:5-9, 28:4-29:7.) An immediate appeal of the summary judgment order could thus provide a detour from—rather than a path toward—the ultimate termination of this litigation.[3]

---

[3] Even if there was a basis for eventual class certification, it is also unclear if <u>this action</u> would be the appropriate vehicle for it, as this Court has questioned whether it would be preferable for certification to await the filing of another class action asserting copyright infringement claims based on LLM training. (Dkt. 680 (02/05/2026 Hearing Tr.) at 19:2-5.) As Plaintiffs acknowledge, there are two other pending putative class actions against Meta, *Elsevier, Inc., v. Meta Platforms, Inc.,* No. 1:26-cv-3689 (S.D.N.Y.) and *Hobbs v. Meta Platforms, Inc.,* No. 1:26-cv-4314 (S.D.N.Y), which Plaintiffs state "rais[e] many of the same claims as the *Kadrey* plaintiffs and similar class

Plaintiffs' motion is laden with rhetoric about the historic significance of the AI copyright questions this case presents and the need for appellate guidance on these transformative legal issues. But the actual appeal they have proposed is something else entirely.  The question Plaintiffs seek to bring to the Ninth Circuit—whether downloading works from Internet repositories can be fair use if the works are used for an ultimately transformative purpose—is among the more straightforward questions this litigation has generated.  It turns on the application of settled fair use principles to a specific set of facts, and does not implicate the novel and genuinely consequential legal questions that Plaintiffs themselves suggest make this case so important.

In a footnote, Plaintiffs announce that they "reserve the right to appeal, <u>after final judgment</u>, the Court's other summary judgment holdings," including the Court's market dilution theory under the fourth fair use factor.  (Dkt. 741, at page v n.1 (Notice of Motion) (emphasis added).)  That theory—articulated by this Court and now being pursued in related cases before this Court as well as in numerous other generative AI copyright actions pending against other companies—is the kind of novel legal development that could warrant attention on appeal.  But Plaintiffs are ***not*** seeking to discuss it in their proposed appeal, presumably because they offered no evidence whatsoever to support it at summary judgment.  Plaintiffs want to park that issue (and every other issue in the summary judgment order) for a later day, while asking this Court to send to the Ninth Circuit the more pedestrian question relating to how a particular category of digital copies was obtained.  Section 1292(b) was intended to "avoid protracted and expensive litigation," *In re Cement Antitrust Litig.*, 673 F.2d at 1026, not to convert a single summary judgment order into serial appellate proceedings, with the most significant issues being postponed until later appeals following final judgment.

## III.    CONCLUSION

Plaintiffs' motion satisfies none of § 1292(b)'s three requirements.  Plaintiffs' purported "controlling question of law" is a fact-specific application of a fair use doctrine.  Plaintiffs have not

definitions." (Dkt. 741, at 12.)  Meta has told the New York court in the *Elsevier* case that it intends to seek transfer to the Northern District of California under the first-to-file rule and 28 U.S.C. § 1404(a), and that court has set a briefing schedule for Meta to file a motion seeking that relief.  The *Hobbs* case was more recently-filed and Meta has not yet made an appearance.

demonstrated a substantial ground for difference of opinion, only two district courts reaching different fair use outcomes on materially different facts.  And an immediate appeal would not materially advance termination of this litigation, as it would produce the piecemeal, overlapping proceedings § 1292(b) was designed to prevent, compounded by Plaintiffs' unexplained year-long delay and their decision not to seek any stay of the remaining claims.

The Ninth Circuit has directed that § 1292(b) be applied sparingly and only in exceptional cases.  This is not one of them.  The motion should be denied.

Dated: June 22, 2026                                    COOLEY LLP


By: /s/ Phillip E. Morton
         Phillip E. Morton

Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Bobby A. Ghajar
COOLEY LLP
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
Telephone: 415-693-2000
Email: khartnett@cooley.com
bghajar@cooley.com

Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Phillip Morton (pro hac vice)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com