**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue #406
Los Angeles, CA 90027
(323) 968-2632
mb@but'tericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

*(additional counsel included below)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD KADREY, et al.,<br><br>*Individual and Representative Plaintiffs,*<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>*Defendant.* | Case No. 3:23-cv-03417-VC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY PARTIAL SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)** |

## I.    INTRODUCTION

This Court has twice recognized the divergence between its opinion and Judge Alsup's opinion on whether AI companies may download copyrighted works from illicit libraries of pirated material and claim fair use because of an ultimate use for AI training. Achieving a uniform, binding answer to that question is incredibly important both for copyright holders and the AI industry. While an appeal from a final judgment once seemed like an efficient path of obtaining that answer given the imminence of summary judgment proceeding on Plaintiffs' uploading claims, the case schedule no longer supports that premise. An interlocutory appeal will thus serve the interests of justice and preserve judicial and party resources. The Court should certify the order under 28 U.S.C. § 1292(b).

Meta once supported an interlocutory appeal of the Court's summary judgment order. But it no longer does according to its opposition to the instant motion. Yet the few reasons Meta offers for its newfound opposition are easily dispatched.

First, Meta's primary argument is to attack a strawman by contending that Plaintiffs seek appellate review of whether "downloading of 'pirated' works is categorically ineligible for the fair use defense under copyright law." Opp. at 1. But the Question Presented is whether unauthorized acquisition and reproduction of copyrighted works from shadow libraries is excused by the *specific* downstream use at issue here—namely, the training of commercial artificial intelligence. It is only by attacking this strawman that Meta can say the question is "pedestrian" and "not the result of a novel legal determination." Opp. at 1, 11. The actual issue—the relationship between piracy and AI-development—is entirely novel and incredibly important. Indeed, Meta elsewhere has characterized the underlying issues as raising "novel legal questions[.]" Dkt. 412 at 5. And Anthropic—another developer of AI—sought certification of this question in *Bartz*, arguing it "presents a novel and important legal issue dividing the courts[.]" Ex. A at 7, 8.

Second, Meta notes that, in *Bartz*, Judge Alsup—after announcing his opinion that AI training does not excuse piracy—found that he "need not decide th[e] case on that rule." *Bartz v.*

*Anthropic PBC*, 787 F. Supp. 3d 1007, 1025-26 (N.D. Cal. 2025). Meta also claims there are factual differences between this case and *Bartz*. But neither of those arguments erase the "rule" expressed in *Bartz*—a legal conclusion that this Court has already recognized is "*contra*" its own. Dkt. 598 at 21. Tellingly, Meta entirely ignores this Court's own characterization of the split between its opinion and *Bartz* on the very issue Plaintiffs seek to certify. And that substantial difference of opinion (or even the potential for it) on a controlling question of law is all that § 1292(b) requires.

Third, Meta is wrong that resolution of this question by the Ninth Circuit will not materially advance this litigation. If the Ninth Circuit agrees with Plaintiffs (and *Bartz*) and reverses, that will be dispositive of Plaintiffs' infringement claim as it pertains to the downloading/reproduction claim. It will likewise be dispositive of those same claims advanced in the related cases. As Meta previously recognized: "It would be highly inefficient to litigate a distribution claim through summary judgment, class certification and potentially trial, only for the parties and the Court to face the prospect of new class certification briefing and a second trial on remand[.]" Dkt. 605 at 6.

## II.   ARGUMENT

### A.  The Question Presented Is Controlling In *This* Case (and the Related Cases)

Section 1292(b) requires a "controlling question of law." Meta's opposition spends 2.5 pages arguing Judge Alsup did "not decide th[e] [*Bartz*] case on th[e] rule," articulated in the *Bartz* order, that "piracy of otherwise available copies is inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use and immediately discarded." *Bartz*, 787 F. Supp. 3d at 1025-26. But whether the "rule" announced in *Bartz*—that is, the court's opinion on a question of law—ultimately controlled *that* case is immaterial. What matters is whether the "question of law" presented for certification *in this case* is controlling *in this case. See, e.g., In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) ("all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court"). Meta does not contest, and therefore concedes, that the question presented is controlling here. If Meta's piracy is not excused by its downstream AI

---

training, then Plaintiffs will prevail on their "downloading" infringement claims because Meta has not shown, and could not show, that taking books for free instead of buying them is fair use. The same is true for plaintiffs in the related cases, who assert those same claims.

**B. There Is a Substantial Ground for Difference of Opinion on the Question Presented**

The Court may find a substantial ground for difference of opinion exists because *either* (i) there is a "novel and difficult question[] of first impression," *or* (ii) courts are already "in dispute." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Both grounds are satisfied here.

**1.** As explained in the Motion (at 8-9), the first basis is met because the intersection of *new* AI technology and copyright presents *new* questions, including as to AI companies' methods of acquiring vast amounts of data, including copyrighted works, for the development and training of AI models. Meta itself notes (Opp. at 1-2) that fair use is context dependent, such that the entirely new technology at issue here presents issues that courts must address for the first time. Indeed, outside the context of its opposition to this Motion, Meta has contended that its own legal advice about piracy from shadow libraries "involve[d] attorney advice concerning novel legal questions[.]" Dkt. 412 at 5. Likewise, another prominent AI developer, Anthropic, argued in *Bartz* that the question presented here should be certified because it "presents a novel and important legal issue dividing the courts," and that "acceptance or rejection of [plaintiffs'] arguments could well shape the outcome in this entire line of industry-defining cases." Ex. A at 7, 13.[1]

Although Meta, in addressing prong 1, entirely ignores (and thus concedes) the novelty/difficulty ground, it contends elsewhere in its Opposition (at 1, 11) that the question presented is not novel. Meta can do so, however, only by misrepresenting the issue Plaintiffs seek

---

[1] Meta contends that Judge Alsup effectively denied Anthropic's motion for interlocutory certification in the order denying a stay, Opp. at 1, 5, but that order (and the related docket entry) did not so hold and did not address the § 1292(b) standard, instead focusing on the practical realities of a trial four months away. *See Bartz v. Anthropic PBC*, 2025 WL 2308091, at *3 (N.D. Cal. Aug. 11, 2025).

to certify as "whether downloading of 'pirated' works is categorically ineligible for the fair use defense under copyright law." Opp. at 1; *see also id.* at 7 (same misrepresentation). But the Motion states the certifiable question as "whether *AI companies* may download copyrighted works from 'shadow libraries' of pirated works and claim 'fair use' by pointing downstream to an ultimate (or even potential) use *for AI training*." Mot. at 1 (emphasis added). Meta, while conceding that context matters for fair use, ignores the context of this case.

**2.** As the Motion also explains, the second reason to find a substantial ground for difference of opinion is that this Court and the *Bartz* court diverged in answering the question presented. Meta spends pages twisting *Bartz* to bolster its contention that the two courts did not address the same issue, but that argument fails by merely examining the relevant passages side-by-side:

| *Kadrey v. Meta*, Dkt. 598 at 21 | *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025 (N.D. Cal. 2025) |
|---|---|
| The last issue relating to the character of Meta's use (and thus the first factor) is the relationship between Meta's downloading of the plaintiffs' books and Meta's use of the books to train Llama. To the extent the plaintiffs suggest that the former must be considered wholly separately from the latter, they are wrong. To be sure, Meta's downloading is a different use from any copying done in the course of LLM training. But that downloading must still be considered in light of its ultimate, highly transformative purpose: training Llama. *See Authors Guild v. Google, Inc.* (*Google Books*), 804 F.3d 202, 216–18 (2d Cir. 2015) (considering the creation of digital copies of books in light of the secondary user's overall purpose of creating a searchable database); *cf. Warho*l, 598 U.S. at 533 (noting that different uses must be considered separately, but that "the same copying may be fair when used for one purpose but not another"); *contra* Order on Fair Use at 18, *Bartz*, No. 24-cv-5417. Because Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books. | [T]he person who purchases the textbook owes no further accounting for keeping the copy. But the person who copies the textbook from a pirate site has infringed already, full stop.<br><br>This order further rejects Anthropic's assumption that the use of the copies for a central library can be excused as fair use merely because some will eventually be used to train LLMs. This order doubts that any accused infringer could ever meet its burden of explaining why downloading source copies from pirate sites that it could have purchased or otherwise accessed lawfully was itself reasonably necessary to any subsequent fair use. There is no decision holding or requiring that pirating a book that could have been bought at a bookstore was reasonably necessary to writing a book review, conducting research on facts in the book, or creating an LLM. Such piracy of otherwise available copies is inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use and immediately discarded. |

Moreover, Meta entirely ignores that this Court has twice acknowledged the obvious disagreement between the two courts. This Court said in its summary judgment order that it was concluding—

**"contra … *Bartz*"**—that "[b]ecause Meta's ultimate use … was transformative, so too was Meta's downloading." Dkt. 598 at 21. And at a recent hearing, this Court further explained the point, observing: "[I]t would be nice to get some answers from the Ninth Circuit, ***particularly on the issue that Judge Alsup and I disagreed on, namely, the question of whether . . . downloading stuff from the shadow libraries is automatically copyright infringement even if you're downloading it for a fair use*.**" May 22, 2026 Hr'g Tr. at 20:19-24 (emphasis added). Meta has no answer for what this Court and many commentators (Mot. at 9-10) have acknowledged: a substantial ground for difference of opinion has already manifested in the first two cases to address the issue.

Meta makes much of the fact that the *Bartz* summary judgment order—after announcing its legal conclusion in the long passage quoted above—says "this order need not decide this case on that rule" because "Anthropic . . . retained pirated copies even after deciding it would not use them or copies from them for training its LLMs ever again." Opp. at 4. Anthropic and its lawyers, however, certainly thought the rule announced by the *Bartz* court could be controlling. Here is how they described it:

> Although the Court stated that it "need not decide this case on th[e] rule" that an initial acquisition of copyrighted work from an unauthorized source is "inherently" infringing, that "rule" will weigh heavily on further proceedings in this case. Indeed, if the Court ultimately adopts that rule, then Anthropic's fair use defense could fail even if Anthropic disproves the notion of a "general-purpose library" (as it believes it will upon more fulsome development of an evidentiary record). That prospect suffices to make the legal issue "controlling."

Ex. A at 14-15. And Meta ignores the *Bartz* court's own explanation of its opinion in a subsequent order granting class certification: "Anthropic is liable for all pirated copies r*egardless of whether they were used for training*[.]" *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1061 (N.D. Cal. 2025) (emphasis added). Again, this is why this Court has twice recognized the differing conclusions reached in its summary judgment order and the *Bartz* order.

In any event, even if the "rule" announced in *Bartz* was not controlling there, that does not change the fact that the *Bartz* court announced an opinion on the legal question presented for

certification here. And that disagreement, whether dispositive in *Bartz* or not, is "[o]ne of the best indications that there are substantial grounds for disagreement on a question of law." *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014).[2] District courts in the Ninth Circuit routinely certify questions under § 1292(b) where the divergent opinion was not controlling in the other case. *See*, *e.g.*, *Padilla v. United States Immigr. & Customs Enf't*, 2024 WL 1049898, at *2 (W.D. Wash. Mar. 11, 2024) ("[A]lthough the cases on which Defendants rely do not squarely address the jurisdictional issues the Court here analyzed, the cases highlight the possibility that fair-minded jurists may disagree with the Court's conclusion on these similar issues."); *City of Calimesa v. Everest Reinsurance Co.*, 2025 WL 3691825, at *4 (C.D. Cal. Sept. 26, 2025) (noting that another court's observation "in dicta" "illustrate[d] there is a substantial ground for difference of opinion"); *Bluetooth SIG, Inc. v. FCA US LLC*, 2021 WL 1922975, at *3 (W.D. Wash. May 13, 2021) (same).[3]

Finally, Meta spends most of its brief contending that there are factual differences between Anthropic's piracy and Meta's. For example, Meta argues "Anthropic created and retained a general-purpose library for multiple non-transformative uses; Meta did not." Opp. at 6. Meta is

---

[2] In all events, the Ninth Circuit does not require a split of authority for purposes of § 1292(b), much less that a split be based on the ultimate ground of decision in each case:

> A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, *not merely where they have already disagreed*. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (emphasis added).

[3] The cases Meta cites stand only for the uncontroversial proposition that a disagreement alone is not sufficient to grant certification under § 1292(b), which has additional requirements. In *Wang*, for example, none of the three prongs were satisfied. *See Wang v. Zymergen Inc.*, 759 F.Supp.3d 1002, 1012-15 (N.D. Cal. 2024). And in *Tysn*, the court did not discuss the other § 1292(b) factors and noted there was nothing "exceptional" about the case or issue. *See Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 1718139, at *4 (N.D. Cal. Apr. 29, 2016).

wrong about the facts,[4] but even if there were material factual differences, the two courts stated opposite *legal* rules, demonstrating a clear difference of opinion on a controlling question of law in this case. And Meta's argument flatly ignores the *Bartz* court's conclusion that Anthropic was liable for downloading the plaintiffs' works "regardless of whether they were used for training" LLMs. 791 F. Supp. 3d at 1061.

**3.** Meta suggests that a separate issue related to Meta's AI training and the Court's view of indirect substitution (or "market dilution") under fair use Factor 4 is a stronger candidate for interlocutory appeal than the question Plaintiffs seek to certify. Plaintiffs disagree, but if the Ninth Circuit is interested in addressing whether indirect substitution is the only viable theory of market harm in connection with AI training, then it can address that issue in its discretion. *See Bassidji v. Goe*, 413 F.3d 928, 935 (9th Cir. 2005) ("When reviewing a district court order certified under 28 U.S.C. § 1292(b), our jurisdiction is not limited to deciding the precise question the district court

---

[4] Like Anthropic, Meta downloaded some copyrighted works from shadow libraries and used them for purposes other than AI training. *See* Dkt 598 at 21-22; Dkt. 568-17 at 4 (discussing Meta's use of "libgen to benchmark the performances based on the amount of data, and use that to decide which licenses to buy"); *see also* Dkt. 567-23 at 2 (Meta concluding that the "upside from using [libgen fiction] is negligible," so it did "not include these datasets in the final training"). And Meta both downloaded multiple copies of LibGen and multiple copies of the same works in torrenting from LibGen, meaning many of the copies of works it downloaded were never trained on. *See* Dkts. 562-30; 568-19; 568-1 (showing multiple copies of Libgen were made by multiple teams at Meta); Dkt. 562-7 ¶ 215 (Meta's expert explaining "Meta was able to identify near duplicate documents and remove documents with a high level of similarity"); Dkt. 568-25 (LibGen de-duplication stats). Meta also retains the works it downloaded (before and after any training) in an "AI Data Catalog"—i.e., an internal "library"—and those works can be "mirrored"—i.e., copied/checked out. Dkt. 654-7 at 13; *see* Dkt. 654-8 at 2 (Meta stating its AI Data Catalog is the "single source of truth for data discovery, sourcing, management, evaluation, and governance").

Meta also ignores that whether there was "evidence that Anthropic acquired books 'to create a central, general-purpose library' separate from the use of those books for LLM training," was still being litigated in *Bartz*. Ex. A at 3, 5; *see Bartz*, 2025 WL 2308091, at *3 (N.D. Cal. Aug. 11, 2025) (order denying motion to stay). As Anthropic argued, "[i]f the Ninth Circuit were to adopt Anthropic's view that the ultimate purpose of developing the LLM is what matters, then it would be legally irrelevant whether Anthropic took the supposed initial step of assembling a 'central library' of data or the later step of retaining copies that may later be needed for further training." Ex. A at 13.

---

certified . . . we may address any issue fairly included within the order we are reviewing.") (simplified).[5]

### C. An Appeal Would Advance the Termination of the Litigation by Streamlining Issues and Conserving Judicial and Party Resources

Meta has no basis for asserting that an interlocutory appeal would "take years." The median time from notice of appeal to opinion for a civil appeal in the Ninth Circuit is 13.8 months.[6] And, here, the appeal would involve a single legal issue that the parties could brief and argue on an efficient timeline. In addition, even if the Ninth Circuit's decision is not rendered for a year, that will still likely occur before resolution of the several cases now pending in this Court—especially based on the status of discovery in the related cases. As of now, there are approximately ten weeks left before the September fact discovery cutoff and, to the best of Plaintiffs' knowledge, none of the individual plaintiffs have begun scheduling or taking depositions. In last week's Case Management Statement filed in the *Entrepreneur Media* case (which shares a case schedule with this case), Entrepreneur Media foreshadowed that extensions to the case schedule may be necessary: "Given the September 4, 2026 fact-discovery cutoff and the September 18, 2026 opening-expert report deadline, Entrepreneur notes that Meta's production of case-specific documents began one day before the date of this filing, approximately ten weeks before the close of fact discovery." Case No. 25-cv-09579, Dkt. 74. In addition, Meta is seeking to transfer two more cases with similar claims to this Court. *See Elsevier, Inc. v. Meta Platforms, Inc.*, No. 26-cv-3689 (S.D.N.Y.), Dkts. 58, 60 at 7 n.3.

But even assuming there are no extensions, it is highly possible that an appeal would be resolved around the same time that summary judgment is adjudicated here. And if an appeal is still pending after summary judgment is briefed and argued in this Court, Meta is free to request a stay then. Regardless of how this procedurally complex case might play out over the next many months

---

[5] Meta's speculation about piecemeal appeals is also something the Court of Appeals can consider.

[6] *See* https://www.uscourts.gov/sites/default/files/document/jb_b4a_0930.2025.pdf.

(or possibly years), Plaintiffs submit that an appeal on this novel and controlling issue will almost certainly streamline future proceedings and provide helpful guidance to this Court and others adjudicating related issues in an emerging area of law.

In July 2025 Meta stated: "It would be highly inefficient to litigate a distribution claim through summary judgment, class certification and potentially trial, only for the parties and the Court to face the prospect of new class certification briefing and a second trial on remand. . . there is a significant risk that if the Court proceeds to trial on infringement, willfulness, and damages on the distribution claim, any verdict on such claim would be impacted if the reproduction claim is revived on appeal." Dkt. 605 at 6-7. Meta also stated: "[W]e're suggesting that the Court should certify for appeal, and that Plaintiffs should take the appeal, and if it doesn't do that, it's going to promote gross inefficiencies and delay[.]" July 11, 2025 Hr'g Tr. 14:6-9. While the case schedule at the time would have minimized those concerns (summary judgment on the uploading-related claims would have been heard this *past* February), they are now unavoidable as the number of cases dealing with the same issue before this Court and elsewhere have multiplied, and the corresponding case schedule has enlarged significantly.

## III.   CONCLUSION

For the foregoing reasons and those stated in the Motion, Plaintiffs respectfully request that the Court enter an order certifying an interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: June 29, 2026

By:   */s/ Maxwell V. Pritt*
        Maxwell V. Pritt

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Elizabeth J. Cabraser (State Bar No. 083151)
Daniel M. Hutchinson (State Bar No. 239458)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com

Rachel Geman (*pro hac vice*)
Sean A. Petterson (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com
spetterson@lchb.com

Betsy A. Sugar (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
bsugar@lchb.com

**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and
Representative Plaintiffs and the Proposed
Class*

(323) 968-2632
mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

**COWAN DEBAETS ABRAMS &
SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com