[Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br><br>Individual and Representative Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation;<br><br>Defendant. | Case No. 3:23-cv-03417-VC<br><br>**JOINT DISCOVERY STATUS REPORT** |

Pursuant to the Court's Order at Dkt. 814, the parties respectfully submit this joint discovery status report.

**A. Pending Joint Letter Briefs**

Joint Letter Brief Re: Command History Files and ML Hub: On July 31, 2026, the parties submitted a joint letter brief (Dkt. 785) regarding Plaintiffs' motion to compel Meta to comply with the Court's orders to (1) produce the command history for the servers and virtual machines that Meta used to torrent copyrighted works, and (2) to search Meta's ML Hub or make it available for inspection. Plaintiffs understand that the related plaintiffs also seek these command history files. The Court heard argument on the joint letter brief during the August 19 discovery hearing.

**B. Forthcoming Joint Letter Brief**

Forthcoming Letter Brief Re: Privilege Claims: Over the past several months, the parties have met and conferred regarding a number of Meta's privilege and work product claims in privilege logs served in connection with Meta's productions after the close of fact discovery. The Parties have further narrowed the scope of their disputes since the last discovery conference, which necessitated further time for briefing than contemplated in the Parties' August 4 Status Report (Dkt. 794). Plaintiffs served their portion on a joint letter brief on Meta on August 14. The Parties previously advised the Court they would be filing the joint letter brief no later than Monday, August 24, but Meta has requested additional time and has not yet served its portion of the joint letter brief to Plaintiffs.

**C. Ongoing Discovery Issues to Address at the Hearing**

***Plaintiffs' Statement***

*Rule 30(b)(6) Deposition: Untimely and Improper Scope Objections.* As discussed during the last discovery hearing, Judge Chhabria granted Plaintiffs leave to take a 30(b)(6) deposition on specified topics as part of the relief sought in their October 2025 Administrative Motion for Limited Additional Discovery to address voluminous belated discovery from Meta. *See* Dkts. 654 (Motion), 654-21 (Rule 30(b)(6) deposition notice), and 647 (Order). Meta had an opportunity to object to Plaintiffs' noticed topics in its Opposition to Plaintiffs' Administrative Motion (Dkt. 637), and at

the November 12 motion hearing before Judge Chhabria. Judge Chhabria granted Plaintiffs' request—including the Rule 30(b)(6) topics. Following the Court's order, Meta designated James Beldock as its 30(b)(6) witness. Plaintiffs noticed the deposition for February 13 but later agreed to postpone the deposition at Meta's request to allow for coordination with the EM and 3C plaintiffs. The deposition was rescheduled for August 28.

On August 18, Plaintiffs sent Meta a list of subtopics to assist in its preparation of Mr. Beldock. Meta did not object. Given the breadth of recent productions, Plaintiffs compiled these subtopics after Meta indicated it would appreciate greater granularity. Plaintiffs also filed those subtopics, and the notice, with the Court attached to the Parties August 18 Discovery Status Report. *See* Dkt. 812-2. Again, Meta did not object, nor did it raise any issues related to the noticed topics or the subtopics at the August 19 discovery hearing. In fact, Meta asked for even more guidance on Topic 1 and Plaintiffs provided Meta a list of the specific documents they intended to question Mr. Beldock on. However, late in the evening on August 26, less than two days before the scheduled deposition, and *after* Mr. Beldock has begun testifying in the related cases, Meta served written objections to Plaintiffs' noticed topics. *See* Ex. A. Meta's written objections to Plaintiffs' 30(b)(6) notice, served 10 months after the Court granted Plaintiffs' motion (Dkt. 647), were not timely or proper. *See Guinnane v. Dobbins*, 479 F. Supp. 3d 989, 995 (D. Mont. 2020) (imposing sanctions where defendant was given topics in April but served objections the day before the deposition in July).

The Parties proceeded with the deposition, but Meta's counsel made numerous improper scope objections in accordance with Meta's untimely objections served two days prior. Meta's scope objections impaired Plaintiffs' ability to seek binding corporate testimony and made it unclear whether Mr. Beldock was testifying on Meta's behalf or based only on his personal knowledge (or lack thereof). In addition, even where Mr. Beldock was able to answer questions over counsel's scope objections, it is unclear whether the Court will treat that testimony as Meta's 30(b)(6) testimony, or Mr. Beldock's 30(b)(1) testimony, as this Court previously that a Meta 30(b)(6) witness's lack of knowledge and awareness—even without a scope objection—indicated

lack of preparation rather than being a lack of knowledge or awareness imputed to Meta. Dkt. 701 (Discover Order) at 2-3 (stating Michael Clark's 30(b)(6) testimony that "[t]here is no approval or disapproval that I am aware of for torrenting" from Anna's Archive indicated lack of preparation). Thus, where Mr. Beldock responded to questions noting that he did not know the answers, it is unclear if his responses mean that Meta does not know, or simply that Mr. Beldock was not adequately prepared. *See, e.g.,* Ex. B, 8/28/26 Beldock Rough Dep. Tr. at 66:16-20 (Q. Was Meta concerned about the risk of distribution when Roller was torrenting from Libgen? A. I don't know."); *id.* at 101:5-12 ("Q. Is it Meta's position today that Bashlykov did not know in 2023 how to modify Libtorrent to prevent uploading when he was torrenting? . . . A. Whether he knew, I couldn't tell you.").

Accordingly, Plaintiffs seek an order striking counsel's improper and belated scope objections and imputing Mr. Beldock's testimony to Meta as a corporation. *See BBK Tobacco & Foods LLP v. Skunk Inc.*, 2020 WL 13878711, at *1 (D. Ariz. May 19, 2020) ("if the duly noticed 30(b)(6) deponent was asked, 'Do you make balloons?' and answered 'I don't know' – 'I don't know' is the binding answer on the company. . . . [T]he hypothetical company would likely not be permitted on summary judgment or at trial to offer evidence that contradicts or supplements the company's final, binding answer from the 30(b)(6) deposition that it does not know if it produces balloons."). Alternatively, to the extent that Mr. Beldock's testimony is *not* attributable to Meta, and the Court will construe his lack of knowledge or awareness as instead being simply unprepared, Plaintiffs seek limited additional time to question an adequately prepared 30(b)(6) designee.[1]

Meta does not address the improper scope objections cited above and instead submits that "[w]hether or not Plaintiffs' questions fell within the scope of the noticed topics must be evaluated on a question-by-question basis." Plaintiffs are prepared to submit further briefing, including a comprehensive list of over 50 scope objections Meta raised in relation to questions that involve

[11] The fact that Mr. Beldock testified for an additional two days prior—pursuant to both Rules 30(b)(1) and 30(b)(6)—in the EM and 3C cases is irrelevant to Plaintiffs' request for additional time to question an adequately prepared witness on *Plaintiffs*' noticed topics—which are distinct from the other plaintiffs.'

either torrenting or piracy or both—questions clearly encompassed by Topic 1 (torrenting) and Topic 3 (approvals for pirated data).

Even the examples Meta cites below fall within the scope of Plaintiffs' noticed topics. Because Meta appears to be claiming "fair use" over its redistribution of pirated data to anonymous third parties, Plaintiffs' questions about whether this redistribution harmed the book market for Plaintiffs' works falls squarely in the scope of Topic 1. Ex. B at 247:13-20. So, too, were all of counsel's questions regarding piracy and the approval process for acquiring data from shadow libraries—a process driven by concerns about piracy. *See* Topic 3. Meanwhile, questions about Meta's knowledge of whether Anthropic (or any frontier lab) similarly opted to torrent and redistribute pirated data from shadow libraries, *id.* at 217:5-12, fall within both Topics 1 and 3. These questions pertain to torrenting and the approval process for acquiring pirated data for potential AI training. Notably, Meta's AIDC documents indicate that OpenAI's decision not to use data from LibGen because it appeared on the U.S. Trade Representatives "notorious markets" list was material to Meta's approval decisions regarding pirated data. With respect to counsel's questioning about her doctoral thesis, it was used as a hypothetical to explore Meta's policies on torrenting copyrighted versus noncopyrighted data (to the extent any exist). Meta omits that counsel specifically asked whether Meta agreed that she could have torrented and *redistributed* the copyrighted works on which her thesis relied. *Id.* at 7:4-9. Finally, with respect to the questioning about deduplication, that line of questioning focused on whether Meta could have configured its BitTorrent software to only torrent non-duplicate copies of Plaintiffs' Asserted Works thereby minimizing the number of duplicate copies of Plaintiffs' Asserted Works that Meta torrented and uploaded only to later delete as part of the company's deduplication efforts. *Id.* at 193:19-22. Asking whether Meta could have deduplicated pirated data at the point of acquisition via torrenting configurations falls squarely within the scope of Topic 1.

In light of the foregoing, Plaintiffs seek clarification and guidance from the Court on the scope of Mr. Beldock's testimony that can be attributed to Meta. To the extent this Court agrees that Meta's scope objections were improper or that Mr. Beldock's "I don't knows" indicated a lack

of preparation, Plaintiffs seek limited additional time with an adequately prepared 30(b)(6) designee.

Rule 30(b)(6) Deposition: Lack of Preparation on AIDC Topics. In addition to the issues discussed above, Mr. Beldock was not adequately prepared to testify about certain of the AIDC topics, namely Topics 6-8. *See* Ex. C at 1. For example, Mr. Beldock was unambiguously unprepared concerning the approved usages for which a dataset can be approved for in the AIDC (Topic 6). *See* Ex. B at 284:22-286:1 (Q. But sitting here today you are not prepared to tell me what all the different potential approved usages are for datasets in the AIDC? A. I am not prepared to tell you that sitting here today."). Meta's contention that Plaintiffs' AIDC questions functioned as a "memory test" does not withstand scrutiny. Topic 6 is "All 'approved usages' or 'usages' related to Library Genesis, Anna's Archive, Z-Library, Internet Archive or Duxiu" and cites the specific AIDC documents that use those terms. Ex. C. Further, Mr. Beldock did not know whether information from the FAIR Dataset Catalog was transferred or onboarded into AIDC (Topic 7). *See id.* at 265:23-266:1. He was likewise unprepared to testify about what the "download" field in the AIDC indicates (Topic 8). *See id.* at 296:16-22 ("Q. Does -- is this referring to re-downloading the dataset or just getting a copy of the dataset that already exists? A. That's a good question. . . . I don't know for sure."). Plaintiffs thus request limited additional 30(b)(6) deposition time limited to these topics. Plaintiffs disagree with Meta's suggestion that interrogatories are the appropriate remedy for Mr. Beldock's lack of preparation. The appropriate remedy for an unprepared 30(b)(6) witness is additional time. *See Guinnane*, 479 F. Supp. 3d at 995-96 (ordering defendant "to produce one or more thoroughly educated and prepared designee(s)" where witness was unprepared). However, Plaintiffs are not opposed to interrogatories provided that they encompass reasonable follow-up questions within the scope of the noticed topics.

***Meta's Statement:***

***Plaintiffs' Complaints re Scope Objections***: There is no basis for Plaintiffs' request for a blanket order overruling all of Meta's scope objections made during the Rule 30(b)(6) deposition

of James Beldock. Whether or not Plaintiffs' questions fell within the scope of the noticed topics must be evaluated on a question-by-question basis, particularly given the numerous instances in which Plaintiffs exceeded any reasonable scope of the noticed topics, discussed below. And as explained in the next section, Meta's written Rule 30(b)(6) objections were served after it became clear that Plaintiffs had a fundamentally different view of the reasonable scope of the noticed topics, but those objections are moot and irrelevant at this point because the deposition went forward, the witness testified that he never saw the objections and did not limit his preparation for the Rule 30(b)(6) deposition based on those objections. (Ex. B, Tr. 259-261.)

Most of the Rule 30(b)(6) deposition focused on Topic 1, which sought testimony about "*Meta's uploading, distribution and/or making available of copyrighted works via its torrenting of the same*." Mr. Beldock was well-prepared for his deposition (which went the full seven hours), for which he prepared by reviewing extensive documentation relating to Meta's alleged upload of content and by interviewing seven other Meta employees to further investigate the topic. And although Topic 1 is broadly phrased, it focuses specifically on Meta's alleged uploading of content during torrenting.

But Plaintiffs' counsel repeatedly exceeded the scope of this topic (and all other topics) throughout the examination. For example, the very first substantive question asked to the witness was "[h]ave you ever in your life pirated books" (Ex. B, Tr. 4:19), which was followed by an extended examination in which Plaintiffs attempted to get the witness to commit to an official definition on behalf of Meta of the word "pirated" (*id.*, 5:1-6:6). The examining attorney then shared a "personal anecdote" involving her pre-law school doctoral thesis on 19th Century British and French writers, and asked the witness if it would have been okay if she had downloaded the books analyzed in her thesis instead of paying for them (*id.*, 6:8-8:20). These topics do not fall

within any reasonable scope of the noticed topics, but that was just the beginning of the deposition. The transcript is replete with additional examples of beyond-the-scope questioning including whether non-party Anthropic also torrented data from Libgen and Anna's Archive (*id.*, 217:5-12), whether the online repositories at issue in this case were the subject of government enforcement actions (*id.*, 154:3-23), whether Meta provided input to regulators in the EU about alleged pirate websites (*id.*, 20:4-22:14), whether Meta's alleged uploading of copyrighted works harmed the market for those works (*id.*, 247:13-20), whether Plaintiffs should be entitled to compensation for the alleged distribution (*id.*, 249:15-25), an extended discussion of de-duplication of works in the training data, including whether it is a copyright mitigation at Meta (*id.*, 187:5-192:17), among many other out-of-scope topics that have nothing to do with Meta's alleged uploading of content. These are just a few examples; Meta is prepared to provide the full transcript and further briefing identifying many other lines of inquiry that fell outside the scope of the topics. And even the examples Plaintiffs highlight above, Mr. Beldock was asked to testify about matters not pertinent to the actual alleged upload of copyrighted content in Topic 1, including the mental state and knowledge of a current employee (Mr. Bashlykov) that Plaintiffs deposed for two days earlier in this case (and who was also recently deposed by the EM/3C plaintiffs). Nevertheless, in each of those instances Meta's counsel placed appropriate scope objections on the record without obstructing the deposition, allowing the witness to answer the questions to the best of his ability in his personal capacity.

Plaintiffs above state that "it is unclear whether the Court will treat that testimony as Meta's 30(b)(6) testimony, or Mr. Beldock's 30(b)(1) testimony," but this issue can only be addressed on a question-by-question basis by comparing the language of topics with the particular question, and the Court's prior discovery order (Dkt. 701) does not address this question. There is no basis for Plaintiffs' blanket request to impute all of Mr. Beldock's testimony to Meta, particularly given the

lines of inquiry that did not fall within even a generous reading of the Rule 30(b)(6) topics. Nor is there a basis for any additional deposition time. Mr. Beldock testified for three consecutive days last week totaling 20+ hours, including for two days as a Rule 30(b)(6) and 30(b)(1) witness in the related Entrepreneur/3C cases – testimony which has been shared with the *Kadrey* Plaintiffs. Allowing the *Kadrey* Plaintiffs more Rule 30(b)(6) time will merely enable them to take up even more time of a Meta corporate representative with additional beyond-the-scope lines of examination having no reasonable relationship to the noticed topics, or Plaintiffs' remaining copyright distribution claim in this action.

***Plaintiffs' Complaints re Written Rule 30(b)(6) Objections***: Meta's written Rule 30(b)(6) objections, as noted above, were served after it became clear through discussions with Plaintiffs' counsel that Plaintiffs intended to use the deposition to ask questions beyond the scope of the noticed topics – a concern that was borne out during the deposition itself. Meta's written objections to the Rule 30(b)(6) deposition notice are at this point a distraction and moot, because the deposition went forward and Meta did not instruct the witness not to answer any question on the basis of disputes about scope. The witness further testified that he had never even seen the objections, and when asked about Topic 1 specifically, he testified that he prepared for the topic as written in the original notice. (Ex. B, 259-261.) Plaintiffs' counsel then elected not to ask Mr. Beldock about the other topics, but Meta is prepared to submit a declaration from Mr. Beldock confirming that the objections (which he never saw) played no part in his investigation and preparation with respect to any of the Rule 30(b)(6) topics. And as noted above, the transcript of the deposition makes clear that the written objections (as well as the oral objections made during the deposition) did not deter Plaintiffs from asking whatever they wanted, regardless of the frequent lack of relationship between their questions and the noticed topics.

***<u>Plaintiffs' Complaints re Rule 30(b)(6) AIDC Topics:</u>*** Nor is there a basis for an additional deposition on AIDC-related topics. As courts have recognized, "[b]road topics of inquiry do 'not give rise to an obligation to prepare a witness to answer every conceivable detailed question relating to the topic.'" *United States v. J-M Mfg. Co.*, 2017 WL 9511730, at *4 (C.D. Cal. Aug. 7, 2017) (citation omitted). Mr. Beldock gave extensive testimony about AIDC, a complex database system involving numerous fields of information, and Plaintiffs' questions were less an inquiry into his knowledge and more as a memorization test. The fact that Plaintiffs can identify a very small number of questions that he could not fully answer does not establish a lack of sufficient preparation, or provide a basis for additional deposition time. *See Greer v. Electronic Arts, Inc.*, 2012 WL 6131031, at *2 (N.D. Cal. Dec. 10, 2012) (refusing to order additional Rule 30(b)(6) witness despite witness's inability to answer 40 questions). And even if there was some basis for Plaintiffs' complaints (and there is none), the better and more efficient course of action would be to convert the few questions Mr. Beldock was not able to definitively answer about AIDC, to the extent they fall within the scope of the Rule 30(b)(6) topics, into written interrogatories. Additional deposition time is unwarranted.

### D. Ongoing Issues on Which the Parties Continue to Meet and Confer

*<u>Filelist Stipulation & Torrenting Discovery</u>*: The Parties have been negotiating an agreement concerning the treatment of file and directory listings in connection with torrented files. The Parties are close to finalizing this stipulation and hopeful it will be resolved without the need for court intervention.

*<u>Kerkez EMR Log Search</u>*: Plaintiffs requested that, in connection with Meta's search and productions related to torrenting activities of another Meta employees, Viktor Kerkez, Meta confirm it has conducted a search for "torrent" in EMR logs between December 2023 and March 2024 (inclusive). The 3C and EM plaintiffs have joined in this request to Meta. Meta has provided a response to Plaintiffs' email, and the parties continue to discuss these issues.

*Directory Listings*: Plaintiffs requested that Meta confirm it has or will produce all files from the directory "cluster-terraform/j-1QUAQQR0LX0VC/containers/application_1696428021602_10756/container_e01_1696428021602_10756_01_000036." The 3C and EM plaintiffs have joined in this request to Meta. Meta has confirmed to Plaintiffs that it has produced all files from this directory.

*De-Designation of IP Address*: Plaintiffs have requested that Meta downgrade the confidentiality designation of a single IP address. The 3C and EM plaintiffs have joined in this request to Meta. Meta is evaluating this request.

Dated: September 1, 2026

By: */s/ Phillip Morton*

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004 Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
cghazarian@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN &**

Respectfully submitted,

By: */s/ Margaux Poueymirou*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**HAMILTON LLP**
Angela Dunning
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

ECF ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that counsel for Meta concurs in the filing of this document.

/s/ *Margaux Poueymirou*