September 29, 2026

***E-Filed***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC

Dear Judge Hixson:

The Parties respectfully submit this joint letter brief regarding select documents from the AI Data Catalog ("AIDC") that Meta has redacted based on attorney-client privilege. The parties have met and conferred repeatedly since April 2026, and while they resolved disputes over certain withheld and redacted documents, they were unable to reach resolution on these documents. The parties continue to meet and confer regarding certain other privilege claims asserted by Meta, and Meta has agreed to withdraw and narrow certain redactions to documents not implicated by this joint letter brief. If any dispute remains after Meta re-produces those documents, the parties will endeavor to raise them expeditiously with the Court.

## I. Plaintiffs' Position

Plaintiffs request that the Court review *in camera* certain redacted documents[1] from Meta's AI Data Catalog ("AIDC") and overrule Meta's claims of attorney-client privilege over the redacted content. Plaintiffs also request that the Court reconsider its Order at Dkt. 627 in light of new evidence of widespread access to and dissemination of that redacted content throughout Meta. *See, e.g.*, *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 4076319, at *2 (N.D. Cal. Aug. 18, 2014) (granting reconsideration of discovery order related to scope of privilege waiver and noting "[a] district court has inherent jurisdiction to modify, alter, or revoke a prior order"); *Lopes v. Vieira*, 719 F. Supp. 2d 1199, 1208 (E.D. Cal. 2010) (granting reconsideration of privilege ruling).

In September 2025, Plaintiffs challenged Meta's privilege claims over parts of the single document (Ex. A) Meta had produced at that time from its AI Data Catalog ("AIDC"). *See* Dkt. 624. This Court upheld claims over "updates" inputted by inhouse counsel and rejected the rest. *See* Dkt. 627. Plaintiffs later obtained discovery into the AIDC, *see* Dkts. 635 (Motion), 647 (Order), and Meta has now produced several hundred AIDC pages for various datasets, including additional pages for Anna's Archive and other pirate websites from which Meta torrented tens of millions of copyrighted works. Meta redacted content in some of these AIDC pages on the grounds of attorney-client privilege. Some redactions appear similar to updates the Court previously reviewed *in camera*, while others appear to be high-level approval status or do not indicate who provided the content. Documents Meta produced also show it continued to torrent (and distribute) from Anna's Archive *after* updates in the document the Court previously reviewed. *Compare* Ex. B with Dkt. 647 (rejecting crime-fraud challenge on the grounds that Meta's torrenting had ended).

The privilege is "undermined" and cannot be sustained with "widespread dissemination [of the content] . . . throughout the organization . . . ." *FTC v. Amazon.com, Inc.*, 2026 WL 1965082, at *4 (W.D. Wash. July 7, 2026); *see also Melendres v. Arpaio*, 2015 WL 13649412, at *3 (D. Ariz. Apr. 2, 2015) ("circulation of information to persons who are not essential to the transmittal of the legal counsel vitiates the privilege"); *Cohen v. Trump*, 2015 WL 3617124, at *15 (S.D. Cal. June 9, 2015) ("[A] communication loses its protection if . . . disseminated beyond the group of corporate employees who have a need to know in the scope of their corporate responsibilities.").

Since the Court's order at Dkt. 627, Meta has produced records revealing that Meta's ML Hub, which at the time of the redacted updates included the AIDC, was used by over *16,000* employees. Ex. C ("ML Hub is used by over 16K monthly active users across various PG [Product Group] teams and the AI infra organization"). In addition to the many thousands of employees who could access and view the contents of the AIDC, the AIDC has more than 4,200 monthly active users, including more than 3,700 users *outside* of Meta's AI organization, Meta Superintelligence Labs ("MSL"). Ex. D. Another document explains that the AIDC was intended to be a "generally available" platform "open to all users across [M]eta[.]" Ex. E. Indeed, Meta's Rule 30(b)(6) witness on the AIDC and its content testified he did "not know the precise number" of employees who could access or view AIDC pages, or whether Meta tracks who can and does access any given AIDC content. Ex. F at 272:24-274:16. He could not even testify there were any such access restrictions, only speculate there *could* be restrictions. *See id.*[2] But even if the redacted updates in the AIDC had been accessible and disseminated to only employees in Meta's AI organization (it was not), any privilege still would be vitiated because Meta cannot show that most of those employees actually *needed to know* the redacted content, rather than simply whether the dataset review occurred and whether the dataset was approved (which, as discussed *infra*, is not legal advice). Accordingly, the Court should order Meta to unredact the purportedly privileged ADIC updates.

The updates are also business compliance communications, not primarily communications

[1] 2/27/26 Log Nos. 159, 160, 165-66, 178-84, 188-89, 208-10; 8/29/2025 Log No. 4 (App'x A).
[2] Plaintiffs requested additional 30(b)(6) deposition time on this and other topics regarding the AIDC due to inadequate preparation in their 9/1/26 discovery status report. *See* Dkt. 823 at 1-5.

of legal analysis and advice. Meta itself recently said in another filing that "decisions about the use of datasets at Meta were often the result of consensus amongst teams and not a specific decision dictated by a particular individual." *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-9579, Dkt. 154 at 4. But as Chief Judge Gonzalez Rogers recently told Meta, "Lawyers who give business advice cannot shield business advice, even when it involves risk, under the claim of attorney-client privilege." Ex. F, *California v. Meta Platforms, Inc*., No. 23-cv-5448, Trial Tr. Vol. 4 at 646:1-4. Further, many of the redacted AIDC documents produced after the Court's order at Dkt. 627 contain different redacted content than the updates the Court reviewed in Ex. A. These redactions separately warrant *in camera* review. For example, Log No. 159 (Ex. H) displays an "overview" rather than "compliance" tab, it contains a "PXFN Review" section and—unlike the document the Court previously reviewed—there is no indication an lawyer made the entry. This is especially true because PXFN—Meta's "privacy cross-functional" team—includes non-lawyers.[3]

Finally, Meta has also redacted the mere *status* of approvals—e.g. "Approved"—by in-house legal teams that are part of Meta's dataset approval process. These redactions are improper. This Court already overruled Meta's privilege assertion in Ex. A over a statement that torrenting of Anna's Archive was "blocked" at one point by Legal, holding that update "was just implementing a business compliance policy." *See* Dkts. 624, 627 at 2. Other courts likewise "perceive[] a difference between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice." *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999). Distinguishing between the provision of actual legal analysis, on one hand, and an effective "thumbs up" on the other, is a line courts draw regularly. *See*, *e.g.*, *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2009 WL 4641707, at *3 (E.D. Pa. Dec. 7, 2009) (attorney's "looks good" response is not privileged); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2020 WL 7865915, at *2 (N.D. Ill. Mar. 30, 2020) ("reference to a 'Legal approved response' does not transform this discussion into [a privileged one]"); *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, at *15 (S.D.N.Y. Aug. 28, 2008) ("document reflecting [attorney's] approval of a denial of coverage" is not privileged). Meta cannot withhold business compliance decisions—such as approvals for datasets and methods of acquisition—just by including "IP Legal" and "Product Counsel" in its compliance process. *See In re Meta Pixel Healthcare Litig*., 2024 U.S. Dist. LEXIS 121478, at *17 (N.D. Cal. June 18, 2024) ("copying an attorney on an email communication and labeling it "a/c priv" does not make the communication privileged[.]"). Accordingly, the Court should order Meta to unredact the dataset approval status fields in the challenged AIDC documents.

## II. META'S POSITION

Plaintiffs' renewed attack on Meta's privilege redactions for AI Data Catalog (AIDC) documents should be rejected again.

Kadrey's first argument is based on the assertion that MLHub, which is distinct from AIDC, is available to a large number of individuals within Meta. But as Meta previously explained, the tools available within MLHub are subject to tool-specific access controls. (ECF 785-5, ¶ 8.) Accordingly, simply because a Meta employee has access to MLHub does not mean that they can access all of the tools or information available within MLHub. (Ex. I (Lindsay Decl. re AIDC), ¶ 3). But more fundamentally, ML Hub is ***not*** the same thing as AIDC. ML Hub is an internal Meta website that links to various tools that predominantly serve machine learning use cases in Meta's broader business, including advertising and content recommendations rather than the generative AI models at issue in this case. (*Id.*, ¶ 3.) AIDC, on the other hand, is a catalog of information about particular datasets that Meta has used or considered using for research, development, and training of its generative AI models, with pages organized around particular datasets. (*Id.,* ¶ 4) These pages include fields about the dataset including (among other things)

---

[3] Indeed, Meta's 30(b)(6) witness on the AIDC could not even identify whether AIDC updates came from inhouse counsel because he testified much of the content in the AIDC was transferred into AIDC from a pre-existing "dataset review tracking spreadsheet." Ex. F at 295:6-296:4.

information about lineage, quality, retention and handling, mitigations that may be required for using the dataset, access control requirements for the dataset data, and legal and privacy assessments and approvals, allowing Meta AI engineers, researchers, and other stakeholders to access information about datasets through a central data source. (*Id.*, ¶ 4-5.) AIDC maintains an audit trail tracking contributions and changes to AIDC pages over time, and access to AIDC pages is governed by access control lists.[4] (*Id.*, ¶¶ 4-6.)

Plaintiffs do not contend that any of the specifically challenged AIDC documents were ever disseminated to individuals outside Meta, or even to persons within Meta who did not have a need to know about their content. The relevant legal issue is not the number of employees that might have theoretically been able to access privileged material, but whether they had a "need to know the content of the communication in order to perform [their] job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication." *Garvey v. Hulu, LLC*, 2015 WL 294850, at *2 (N.D. Cal. Jan. 21, 2015) (citation omitted). This standard is met here because, as noted, AIDC pages are intended to be accessed by AI researchers, engineers, and other stakeholders who need to access the information to use a dataset in the course of their work. (Ex. I., ¶¶ 4-6.) AIDC pages are not disseminated automatically to Meta employees in the AI group, but are instead individually accessed by employees who are doing work that requires information about that specific dataset, such as evaluating potential use, understanding restrictions on its use, or reviewing its current approval status. (*Id.*, ¶ 5.) The possibility that a larger number of people could have accessed AIDC for their work does not destroy the confidentiality of those materials for the purposes of the attorney-client privilege. *Garvey*, 2015 WL 294850 at *3 ("Confidentiality is not destroyed by the possibility that other [company] employees, not directly participating in the [subject] tickets, could have accessed those documents over the JIRA system."); *see also Planned Parenthood v. Center for Medical Progress*, 2019 WL 1950377, at *8 (N.D. Cal. May 1, 2019) (refusing to order *in camera* review of an email actually disseminated when the privilege challenge was merely based on "the sheer number of individuals with whom [the communications] were shared."). Plaintiffs rely on an out-of-context document that they claim shows thousands of people were accessing AIDC, but it does not show that any of those people had access to the specific challenged AIDC documents (nor that any of those people actually accessed those documents). Indeed, the specific challenged AIDC pages were subject to access controls to allow access to people in organizations with a need to know.[5] (Ex. I., ¶ 6.)

---

[4] Plaintiffs' assertions about the deposition testimony of a Meta Rule 30(b)(6) witness should be disregarded, as that 30(b)(6) witness was designated on "the origin and timing of updates, changes and content" and "the terms, fields and content" of a specific set of AIDC pages. *See* Dkt. 635, Ex. P (30(b)(6) Topics 7 and 8). Nothing in those topics called for the witness to be prepared to testify about the number of people with access to AIDC or its access control policies.

[5] In reply, Plaintiffs cite to a February 27, 2024 AIDC development document that predates the challenged AIDC entries by over four months. Ex. K. This document notes an issue with applying AIDC's intended access control lists (ACLs) to a pre-existing data table. *Id.* While Plaintiffs claim this shows AIDC had no access controls, they're incorrect–the second page of the document discusses a proposal to fix the access control list issues using a solution that had already been built. *Id.* ("We already built a dataset registration data infra in the same XDB (ACL-ed) with the existing models that support the demo tool. . . . We need to expand that to cover the existing AIDC experience.") This document shows that engineers were in fact building AIDC with access controls, consistent with Mr. Lindsay's declaration. Plaintiffs also add Ex. L, which says nothing one way or the other about access controls in AIDC or who AIDC is accessible to. Plaintiffs' addition of Ex. M further supports Meta because it shows that ACLs were in place on AIDC, that dataset information was not intended to be shared outside groups with a need to know like GenAI, and Meta was investigating a technical issue with the ACL not working as intended. Ex. M. Moreover, Mr. Lindsay's declaration is consistent, as it acknowledges that the AIDC landing page may be accessible to Meta employees, but information about specific datasets is intended to

Second, Plaintiffs again rehash their "primary purpose" privilege argument, this time framing the eight challenged AIDC documents as merely "business communications." The Court has already rejected this argument twice, including specifically as to one of the same AIDC documents challenged here. Dkt. 351 at 3; Dkt. 627. The other challenged documents have similar content and redactions for different datasets as those previously addressed in the Court's Order at Dkt. 627. Indeed, the Court observed, with reference to that AIDC document, that "[t]here is nothing wrong with Meta claiming privilege over portions of this document." Dkt. 627 at 1. Heeding this Court's rulings in Dkt. 627, Meta surgically redacted each of the challenged AIDC documents to limit any redactions to specific communications that contain legal advice, while leaving the remainder of the document unredacted.

Plaintiffs' citation to a pending letter brief regarding an interrogatory response in the *Entrepreneur* matter is inapposite, as that addresses the fact that for some dataset decisions at Meta that pre-dated AIDC (not the specific decisions documented in AIDC for the datasets at issue here), there were circumstances where Meta could not always pinpoint specific individuals who approved a particular dataset acquisition or use. *Entrepreneur*, Dkt. 154 at 4.

Regarding the PXFN Review, Plaintiffs provide no basis for claiming that an *in camera* review is necessary for these redactions. The redacted portions of Exhibit H clearly include privileged content from a lawyer, as the sections are labeled "IP Legal" and "Product Counsel," and reflect substantially the same content entered by lawyers Alisa Hall and Luc Dahlin in the redacted portions of Ex. A. Notably, Meta did not redact the "Privacy" portion of the PXFN Review, as that was not a privileged communication.[6] Ex. H at 2.

Finally, Plaintiffs' attempts to delve into the details of any potential "approvals" by Meta's in-house attorneys should be rejected. First, Plaintiffs' argument starts from the false premise that the Court's earlier ruling on AIDC documents addressed "a statement that torrenting of Anna's Archive was 'blocked' at one point by Legal." The document addressed by the Court in Dkt. 627, attached here as Ex. A, includes no such statement, and the Court made no such finding. Second, the final "business compliance" approval status is already unredacted in the challenged AIDC documents. *See* Ex. A at 1 ("Final Decision" is marked "Passed" and "Approved Usages" are identified); *see also* Ex. H at 2 ("Final Decision" is marked "Passed"). Plaintiffs' motion asks to probe deeper into the communications underlying these approvals, seeking to determine the specific "approval" status that may be attributed to IP Legal and to Product Counsel. This would reveal more information about the underlying privileged communications because it would reveal the specific legal advice provided separately by IP Legal and Product Counsel. The cases cited by Plaintiffs do not support Plaintiffs' demands here, as they address generic statements like a "green light" or a "looks good" attributed to broad approvals by counsel of an overall course of action, not the underlying "approvals" and analysis of legal subject matter specialists. *Libbey*, 197 F.R.D. at 346 (no waiver of privilege when non-attorney stated they received "green light" from legal); *Avandia*, 2009 WL 4641707, at *3 (statement from attorney that non-privileged document "looks good" was not privileged); *AIU*, 2008 WL 4067437, at App. A, Entry 119 (attorney approval of business document denying insurance coverage not privileged); *In re Dealer Mgmt*., 2020 WL 7865915, at *2 (no privilege over non-attorney copying attorney on "Legal approved response").

---

be restricted. Ex. I at 6. Finally, the suggestion that ACL's did not exist until later in 2024 is belied by Ex. N, showing ACL's on AIDC contemporaneous with the challenged AIDC entries.

[6] Plaintiffs' assertion in a footnote that Meta's 30(b)(6)'s witness "could not even identify whether AIDC updates came from inhouse counsel" is misleading. *See supra* n.3. The cited testimony was not addressing any whether information was provided by in-house counsel. The witness was asked whether he knew that every statement in an AIDC entry authored by David McAneny, statements that are not redacted or subject to a claim of privilege, were copied and pasted from another document. Ex. F at 295:6-296:6. In the document at issue, privilege is not claimed over text associated with Mr. McAneny. Ex. J (Meta_Kadrey_238408, at 413-414).

## III. Plaintiffs' Reply

Meta has not met its burden to show the challenged AIDC updates are privileged. The content Meta seeks to withhold was disclosed to ***all*** Meta employees, not just those who had a "need to know" it, and the Court should order Meta to produce the AIDC pages without redaction.

First, with respect to Meta's assertion that "access to AIDC pages is governed by access control lists," Meta points to conclusory statements (and inadmissible hearsay at ¶ 5, lines 13-18) in a declaration from Meta employee Shaun Lindsay (Ex. I). But those assertions are directly contradicted by documents—including from Mr. Lindsay's custodial files—that Meta has produced and that are contemporaneous with the challenged AIDC updates from mid-2024. For example, a 2024 document from Mr. Lindsay's files expressly addresses the "problem" with the AIDC that "the database is ***not*** ACL-ed [Access Control Limited]. . . . which ***allows Everyone to access for almost all action***[.]" Ex. K (emphasis added) (noting Meta can "Probably no[t]" restrict access). Other Meta documents discussing the AIDC also suggest it is accessible generally and make no mention of any access controls. *See* Ex. L. Further, Meta's assertion in footnote 4 that it may have added unidentified ACLs to unidentified parts of the AIDC before the challenged updates is not only unsupported, but Meta's own documents show that even when it did add unspecified ACLs later in 2024, they didn't restrict anything: "our ACLs are broken," so although "rows for GenAI are supposed to be hidden" as of December 2024, "AIDC is open to the company[.]" Ex. M. Meta has not provided any credible or admissible evidence that ACLs were implemented to restrict the disclosure of the challenged updates, let alone when they were entered and to whom.

Second, even if Meta had identified who accessed the AIDC pages at issue (it has not), Meta has also failed to meet its burden by failing to establish that these unknown persons—both their numbers and identities—"needed to know" any of the purported legal advice therein. To the contrary, Meta's declarant concedes that even today the challenged updates are disclosed to Meta's FAIR and MSL organizations. Ex. I at ¶ 6. As the Ninth Circuit held in 2020, because "the attorney-client privilege 'is designed to protect confidentiality'… ***any disclosure outside the magic circle is inconsistent with the privilege***[.]" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120 (9th Cir. 2020) (emphasis added); *see also Stevens v. Corelogic, Inc*, 2016 WL 397936, at *5 (S.D. Cal. Feb. 2, 2016) (rejecting privilege where "legal compliance policies are written for, and made available to, all CoreLogic employees"). Disclosure of the challenged updates to "Everyone" at Meta (Ex. K), or even currently to Meta's many thousands of FAIR and MSL personnel, is plainly "outside the magic circle," and therefore Meta's claims of privilege cannot be sustained.

Meta cites Judge Beeler's 2015 order in *Garvey,* but there the defendant established that only seven employees received the challenged tickets, and they used them to "carry out their work" and make "informed," "effective decisions" about the task at hand, and who "sought or discussed the legal advice" at issue. 2015 WL 294850, at *3. Here, in contrast, Meta has not shown that all of Meta's employees (i.e. "Everyone") who could access to the challenged AIDC pages, or that the people who actually accessed them—again, a number that's still unknown—needed the withheld legal advice to carry out their work or make informed decisions. And Meta's own documents similarly suggest a substantial number of employees who did access the AIDC had no need to access legal advice in order to carry out their work. *See* Ex. D (3,700 active users *outside* the AI organization). This situation is also distinct from Meta's other case, *Planned Parenthood*, where the *sole* basis for the challenge was "the sheer number of individuals with whom [communications] were shared," but not its "necessity." 2019 WL 1950377, at *8. Here, in contrast, it plainly was not necessary to disclose the challenged ADIC updates to "Everyone" at Meta, without any restriction.

Finally, Meta also fails to meet its burden because it does not make any showing that the challenged AIDC updates were not just "copied and pasted from another spreadsheet to AIDC" like other updates in these AIDC pages. *See* Ex. F at 295:6-296:4. Thus, the fact that lawyers inputted the content in Product Counsel and IP Legal fields is not probative of its privileged status.

Dated: September 29, 2026

By: */s/ Phillip E. Morton*

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC
20004 Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
cghazarian@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW,
Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

Respectfully submitted,

By: */s/ Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela Dunning
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated:

BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt

*Attorney for Plaintiffs*