October 6, 2026

***E-Filed***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC

Dear Judge Hixson:

The Parties respectfully submit this joint letter brief regarding certain disputes related to the recent Rule 30(b)(6) deposition of James Beldock. The first issue relates to Meta's objections to the scope of the topics. The second issue relates to the adequacy of Mr. Beldock's preparation. The parties met and conferred on August 27, 2026, and included this issue in their September 1, 2026 Joint Status Report. Dkt. 823 at 1-9. The Court subsequently ordered the parties to file a joint letter brief concerning the dispute by October 6, 2026. Dkt. 846. The parties then conferred again over the objections in the joint letter brief but were unable to resolve their status.

## I. PLAINTIFFS' POSITION

Plaintiffs seek three additional hours of Rule 30(b)(6) deposition time to question an adequately prepared designee on topics within the scope of their Rule 30(b)(6) deposition notice.

In November 2025, after Meta produced voluminous torrenting-related discovery following the Court's order granting partial summary judgment to Meta (Dkt. 598), Judge Chhabria granted Plaintiffs' administrative motion for leave to take limited additional discovery related to those belated productions. *See* Dkts. 654 (Motion) and 647 (Order). As part of that motion, the Court granted Plaintiffs' request to take a 30(b)(6) deposition on topics attached to Plaintiffs' motion. *See* Dkt. 654-21; Ex. A. Meta designated James Beldock as its 30(b)(6) witness, and the deposition was rescheduled for August 28.[1] In the interim, Meta produced thousands of additional documents—ranging from source code and software configurations to work chats—that discuss its torrenting from shadow libraries and fall squarely within the scope of Plaintiffs' noticed topics, in particular: "Meta's uploading, distribution, and/or making available of copyrighted works via its torrenting of the same"[2] (Topic 1), and the related policies and approval processes for using shadow libraries as data sources (Topic 3). Two days before the scheduled deposition—which is the sole opportunity Plaintiffs have had since March 2025 to question a corporate deponent about facts relevant to their uploading claims—Meta served untimely and improper written objections to Plaintiffs' noticed topics.[3] *See* Ex. C.

***Scope Objections.*** During the deposition, Meta's counsel also made numerous improper scope objections—objecting even to questions that included "torrenting" in their plain language. Meta's scope objections impaired Plaintiffs' ability to seek binding corporate testimony. Where Mr. Beldock was able to answer questions over counsel's scope objections, for example, it is unclear whether that testimony is binding corporate testimony or is properly treated as Mr. Beldock's 30(b)(1) testimony. Meta's counsel appeared to foreshadow this issue, instructing Mr. Beldock:

> *When I make these objections, you can still answer the question. I'm just putting on the record that I think the question is outside the scope. You can answer.* ***We would argue later as to whether that's an individual answer or a corporate answer.***

Ex. D at 12:9-15. That question remains unresolved for the 27 scope objections listed in Appendix A. This Court previously held that a Meta 30(b)(6) witness's lack of knowledge and awareness—even without a scope objection—indicated lack of preparation rather than being a lack of knowledge or awareness imputed to Meta. Dkt. 701 at 2-3 (stating Michael Clark's 30(b)(6)

---

[1] Plaintiffs originally noticed the deposition for February 13 but the parties later mutually agreed to postpone the deposition (at Meta's request) to allow for coordination with related cases.

[2] Notably, in Plaintiffs' last 30(b0(6) deposition on torrenting, Meta took the position that uploading during the leeching phase was not relevant to the case and did not prepare its corporate deponent to testify about "leeching"—notwithstanding that the vast majority of data Meta distributed was during the leeching phase.

[3] As a courtesy, to assist Meta with its preparation of Mr. Beldock, On August 18, Plaintiffs sent Meta a list of subtopics to assist in its preparation of Mr. Beldock. *See* Ex. B. Meta did not object to those subtopics. Further, on August 26, Plaintiffs sent a list of specific documents on which they intended to question Mr. Beldock.

testimony that "[t]here is no approval or disapproval that I am aware of for torrenting" from Anna's Archive indicated lack of preparation). Thus, where Mr. Beldock responded to questions noting that he did not know the answers, it is unclear if his responses mean that Meta does not know the requested information, or simply that Mr. Beldock was not adequately prepared. *See, e.g.,* Ex. D at 70:13-17(Q. Was Meta concerned about the risk of distribution when Roller was torrenting from Libgen? A. I don't know.")[4]; *id.* at 104:23-105:5 ("Q. Is it Meta's position today that Bashlykov did not know in 2023 how to modify Libtorrent to prevent uploading when he was torrenting? . . . A. Whether he knew, I couldn't tell you.").

Accordingly, Plaintiffs seek an order striking counsel's improper and belated scope objections and imputing Mr. Beldock's testimony to Meta as a corporation. *See BBK Tobacco & Foods LLP v. Skunk Inc.*, 2020 WL 13878711, at *1 (D. Ariz. May 19, 2020) ("if the duly noticed 30(b)(6) deponent was asked, 'Do you make balloons?' and answered 'I don't know' – 'I don't know' is the binding answer on the company. . . . [T]he hypothetical company would likely not be permitted on summary judgment or at trial to offer evidence that contradicts or supplements the company's final, binding answer from the 30(b)(6) deposition that it does not know if it produces balloons."). Alternatively, to the extent that Mr. Beldock's testimony is *not* attributable to Meta, and the Court will construe his lack of knowledge or awareness as simply unpreparedness, Plaintiffs seek limited additional time to question an adequately prepared 30(b)(6) designee.

Meta, in its Joint Status Report submission submits that "[w]hether or not Plaintiffs' questions fell within the scope of the noticed topics must be evaluated on a question-by-question basis." Dkt. 823 at 3. Accordingly, Plaintiffs attach Appendix A to streamline the Court's review of Meta's objections. Appendix A lists each question to which Meta made an improper scope objection, along with the Topic to which it falls within. The full deposition transcript, with relevant questions and objections highlighted, is attached as Exhibit D.

***Lack of Preparation on AIDC Topics***. Mr. Beldock was not adequately prepared to testify about certain AIDC topics, namely Topics 6-8. *See* Ex. A at 1. For example, Mr. Beldock was unambiguously unprepared concerning the approved usages for which a dataset can be approved for in the AIDC (Topic 6). *See* Ex. D at 290:4-9 (Q. "[Y]ou are not prepared to tell me what all the different potential approved usages are for datasets in the AIDC? A. I am not prepared to tell you that sitting here today."). Topic 6 covers "All 'approved usages' or 'usages' related to Library Genesis, Anna's Archive, Z-Library, Internet Archive or Duxiu" and cites the specific AIDC documents that use those terms. Ex. A. Further, Mr. Beldock did not know whether information from the FAIR Dataset Catalog was transferred or onboarded into AIDC (Topic 7). *See id.* at 270:2-5. He was likewise unprepared to testify about what the "download" field in the AIDC indicates (Topic 8). *See id.* at 300:22-301:3 ("Q. Does -- is this referring to re-downloading the dataset or just getting a copy of the dataset that already exists? A. That's a good question. . . . I don't know for sure."). Plaintiffs thus request limited additional 30(b)(6) deposition time limited to these topics. *See Guinnane v. Dobbins*, 479 F. Supp. 3d 989, 995 (D. Mont. 2020) (ordering defendant "to produce one or more thoroughly educated and prepared designee(s)" where witness was unprepared).

---

[4] Mr. Beldock's inability to answer this question is particularly striking given Meta disclosed Mr. Roller's torrenting in a letter to the Court just days after it granted Plaintiffs' 30(b)(6) deposition request. *See* Dkt. 653.

## II. META'S POSITION

***Plaintiffs' Scope Arguments Are Premature and Incorrect*:** As Meta explained in the most recent Joint Discovery Status Report (ECF 823, at 5-8), the Rule 30(b)(6) deposition of Mr. Beldock was replete with lines of inquiry that exceeded any generous reading of the Topics (Ex. A). Meta's scope objections were proper, and in any case, the witness was permitted to answer.

As a threshold matter, the Court should not address—let alone resolve—scope objections now. Whether Mr. Beldock's responses constitute corporate testimony under Rule 30(b)(6), or testimony in his personal capacity, is an issue best left for the trial judge to decide against the backdrop of concrete use of specific testimony at trial or summary judgment. Rule 32(b) supports this sequencing: it generally reserves objections to the use of deposition testimony for "the hearing or trial" where it will be offered, and there is no reason to treat 30(b)(6) scope objections differently. This sequencing reflects the reality that much of the deposition testimony generated in civil cases is never offered at trial. Litigating scope objections years before trial (if any) wastes the Court's and the parties' resources—particularly where, as here, there is no reason for urgency.

Plaintiffs say they want scope issues resolved to know whether 30(b)(6) testimony is "binding" on Meta, but this rationale fundamentally misunderstands the nature of corporate testimony under the rule. The Ninth Circuit has explained that 30(b)(6) testimony "does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes," and the corporation "is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (citation omitted). Plaintiffs do not argue that Mr. Beldock was inadequately prepared except with respect to a limited number of AIDC-related topics, and as separately addressed below, they are wrong about those. In any case, nothing prevents Plaintiffs from using the testimony, to the extent relevant and admissible, in motions, trial, or otherwise.

But if the Court addresses the scope objections, they should be sustained. Most of Plaintiffs' arguments pertain to Topic 1, "Meta's uploading, distribution, and/or making available of copyrighted works via its torrenting of the same." (Ex. A, at 1:7-8.) On its face[5], this topic is directed to a single issue – Meta's alleged transmission (using synonyms of upload, distribute, and make available) of copyrighted works during torrenting. Plaintiffs also cite Topic 3, "Meta's blocking and un-blocking/approvals in connection with Library Genesis and/or Anna's Archive, including approval for Anna's Archive and torrenting of content from Library Genesis, Z-Library, Internet Archive, and Duxiu," which in turn cites two specific Meta AIDC documents where the "blocking" of torrents is specifically mentioned. (*Id.*, 1:13-35 (citing Ex E, at Meta_Kadrey_00238408 ("full downloadable datasets are accessible via torrent, which is blocked") and Ex. G at Meta_Kadrey_00238396 (same)). Of the 27 questions in Plaintiffs' **Appendix A**, 24 drew scope objections, and each objection was proper for the reasons set forth below.

Many of Plaintiffs' questions were simply invitations to moralize about the ethics of downloading and using datasets, not to elicit facts within the noticed Topics. Question 1, for example, was part of a line of questions attempting to elicit an official Meta position on the

---

[5] Plaintiffs Appendix A includes misleading descriptions of the deposition topics. For example, in the "Topic(s) and Explanation" for Question 1, Plaintiffs assert that Topic 1 "covers torrenting generally, including the distribution of copyrighted works via the same, which constitutes piracy." App. A at 1. For Question 2, Plaintiffs further generalize Topic 1 as "covers torrenting." *Id.* As discussed above, Topic 1 is substantially narrower.

meaning of the word "piracy" in the abstract. (Ex. D, 8:20-12:20.)[6] Questions 2 and 3 sought moral judgments about whether it was "okay" to use Libgen and torrenting, built around a "personal anecdote" involving counsel's pre-law school doctoral thesis on 19th century European literature. (*Id*., 10:9-17:22.) Question 17 asked about a Meta policy on self-identified "pirated" works; questions 18 and 19 asked about government enforcement actions against certain websites; question 20 was about a policy to minimize duplicate downloads (a question about downloading, not uploading); question 21 asked whether nonparty Anthropic also torrented; and question 22 asked about alleged market harm to Plaintiffs' works. None of these questions fall within even a generous interpretation of the Topics. The scope objections were proper and should be sustained.

Questions 6, 8, 13, 14 and 16 concern an entirely different download technique—"direct download" – that does ***not*** involve torrenting at all. (Dkt. No. 494 (Bashlykov Decl.), ¶ 4.) If Plaintiffs wanted testimony about Meta's consideration and use of alternatives to torrenting, they could have noticed a topic on that subject – but they did not. Questions 5, 6, 7, 11, and 15 fare no better; they sought the personal beliefs or knowledge possessed by particular individuals during the 2022-2023 timeframe, including two former employees (Roller and Albert) and a current employee (Bashlykov) already deposed for two days in this case. No Topic encompassed this information.

The remaining questions with scope objections in Appendix A (*i.e.* 4, 9, 10, 12, 25, 26), relate to approvals – but Plaintiffs blur a critical distinction between two different approvals: (1) approval to download and use a dataset for AI research training, and (2) approval to use BitTorrent as the means of downloading it. Only approvals in category (2) are within scope and relevant here. The Court already held that Meta's download of these datasets was fair use. *See Kadrey v. Meta Platforms*, 788 F. Supp. 3d 1026, 1048 (N.D. Cal. 2025) ("Because Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books."). The witness testified without scope objections about the torrent blocking in the documents cited in Topic 3, and Meta policies on the use of torrents. (Ex. D, 234:23-237:10, 237:19-239:1.)

But the Appendix A questions about approvals do not concern torrenting—they concern general use of the dataset. The discussion surrounding question 4 in fact was framed as approval "[n]ot of the torrenting, but of the – of using LibGen as a data source." (Ex. D, 62:19-20.) Questions 10, 12, 25, and 26 likewise concerned use of the datasets generally, not use of torrenting to acquire them. The remaining question in this category (Question 9) was a compound question covering both acquisition and torrenting, warranting form and scope objections. In each instance, Meta's scope objection was proper, yet the witness was still permitted to answer.

***Mr. Beldock Was Sufficiently Prepared on Topics 6-8 (AIDC)***: As courts have recognized, "[b]road topics of inquiry do 'not give rise to an obligation to prepare a witness to answer every conceivable detailed question relating to the topic.'" *United States v. J-M Mfg. Co*., 2017 WL 9511730, at *4 (C.D. Cal. Aug. 7, 2017) (citation omitted). Mr. Beldock gave extensive testimony about AIDC. (Ex. D, 266:1-269:15, 233:24-234:22.) The fact that Plaintiffs identify only a small number of questions during a full seven-hour Rule 30(b)(6) deposition does not establish a lack of sufficient preparation, or provide any basis for additional deposition time. *See Greer v. Electronic Arts, Inc*., 2012 WL 6131031, at *2 (N.D. Cal. Dec. 10, 2012) (refusing to order additional Rule 30(b)(6) despite witness's inability to answer 40 questions, noting that "a witness cannot be faulted for not knowing every fact that could possibly come within the scope of a particular topic, and many of the questions do not even appear to fall within any of the topics.").

Topic 6 covers "all 'approved usages' or 'usages' related to Library Genesis, Anna's Archive, Z-Library, Internet Archive or Duxiu," but then cites directly to three documents,

[6] The witness nevertheless testified later (with no scope objections) about a particular use of "pirated" in a specific AIDC document cited in the Topics. (Ex. D, 239:11-240:17.)

Meta_Kadrey_00238408, –396, and –373 , where the quoted "usages" field appears. (Ex. A, 1:21-23.) The witness testified about the field in the document he was shown, which lists only "exploration" and "training." (Ex. D, 271:8-272:22, 289:5-290:3; *see also* Exs. E, F, G.) In the testimony Plaintiffs cite, the witness could not say with certainty whether additional approved usages existed beyond the two listed in that document. But Topic 6 refers specifically to the cited documents, not to other, non-displayed usages.

Topic 7 is directed to the origin and timing of updates, changes and content in Meta_Kadrey_00238408 and "all other AIDC dashboards" for the at-issue datasets. As noted, the witness testified at length about AIDC. (Ex. D, 266:1-269:15, 233:24-234:22.) Plaintiffs complain that the witness did not know about a separate, non-AIDC catalog (the FAIR Dataset Catalog), but Topic 7 is expressly limited to AIDC. Plaintiffs never noticed a topic covering other data tracking systems, or whether or how data moved from non-AIDC systems into AIDC.

Topic 8 covers "[t]he terms, fields, and content of the AIDC dashboards for any and all AIDC dashboards related to Library Genesis, Anna's Archive, Z-Library, Internet Archive, and Duxiu." (Ex. A, 1:27-28.) The AIDC documents comprise dozens of distinct fields. (Ex. E, F, G.) Plaintiffs complain about a single "download" field, as to which the witness offered his best interpretation. (Ex. D, 299:22-300:3.) That does not establish a lack of preparation.

Finally, even if Plaintiffs had a valid complaint (they do not), as the information at issue is exceedingly limited and highly granular, the more efficient course—to the extent any of it falls within the Topics—would be to convert the in-scope questions into targeted interrogatories, not more deposition time. Additional deposition time would be wasteful and unwarranted in view of the nearly 300 hours of deposition time taken of Meta witnesses in all of the related actions.

**III. Plaintiffs' Reply.** Meta's reliance on Rule 32(b) is misplaced as it governs "Using Depositions *in Court Proceedings*" (emphasis added), not the adequacy of 30(b)(6) preparation or the scope of 30(b)(6) topics. Plaintiffs are entitled to know whether Meta produced a witness knowledgeable on the noticed (and court-ordered) topics, and if that testimony (including, e.g., "I don't knows," "I'm not awares") will be attributed to Meta at summary judgment, rather than "bad deposition preparation." Dkt. 701 at 3 (Hixson, J.). This is especially true because Plaintiffs will not have an opportunity to call a Rule 30(b)(6) witness at trial since it is a discovery tool, not a trial tool. Further, Beldock's deposition represents one of only two the *Kadrey* plaintiffs have obtained leave to take since the Court's June 2025 Summary Judgment Order. Plaintiffs have no other opportunities—via Rule 30(b)(6) or otherwise—to take discovery on these central facts relevant to their uploading claims and any fair use defense Meta may assert with respect to them.

Meta's claims on the substance of their objections fare no better. Topic 3 is not limited to torrenting approvals but "Meta's blocking and un-blocking/approvals ***in connection with*** Library Genesis and/or Anna's Archive, ***including*** approval for Anna's Archive ***and*** torrenting of content from" certain shadow libraries. Ex. A (emphasis added). Questions 4, 9, 10, and 12 concern *who* provided the approval for one of the listed datasets, and Questions 25 and 26 concern *what* these datasets were approved for: all are squarely within scope. *See* App. A. Finally, Meta's legal concerns about torrenting drove at least one engineer to directly download millions of books from LibGen. Questions 6, 8, 13, 14 and 16 thus fall squarely within Topics 1 and 3 as they concern Meta's approval for torrenting alternatives in the context of concerns about the risks of torrenting.

With respect to Beldock's lack of preparation on the AIDC, Topic 7, among other things, expressly includes the *origin* of AIDC updates. That is exactly what Question 23 asks about. And Topic 6 covers "All 'approved usages,'" again, exactly what Question 25 asks. And the inability to answer such basic questions naturally inhibited follow-up questions within the topics' bounds.

Dated: October 6, 2026

Respectfully submitted,

By: /s/ Phillip E. Morton

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC
20004 Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
cghazarian@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW,
Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

By: /s/ Maxwell V. Pritt

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela Dunning
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 6, 2026

BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt

*Attorney for Plaintiffs*