[Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

RICHARD KADREY, *et al.*,

Individual and Representative Plaintiffs,

v.

META PLATFORMS, INC., a Delaware corporation;

Defendant.

Case No. 3:23-cv-03417-VC

**JOINT DISCOVERY STATUS REPORT**

Pursuant to the Court's Order at Dkt. 845, the parties respectfully submit this joint discovery status report.

## I. Pending Joint Letter Briefs

### a. ***Joint Letter Brief Re: AIDC Privilege Redactions***

On October 29, the parties submitted a joint letter brief (Dkt. 847) regarding Plaintiffs' motion, which Entrepreneur Media and the 3Cs joined, challenging Meta's redaction of certain pages of Meta's AI Data Catalog ("AIDC") that Meta claims are subject to the attorney-client privilege.

### b. ***Joint Letter Brief Re: Beldock Rule 30(b)(6) Deposition***

Pursuant to this Court's order at Dkt. 846 and contemporaneously with this Status Report, the Parties are filing a joint letter brief concerning Meta's objections to Plaintiffs' 30(b)(6) topics and Kadrey's allegations about the 30(b)(6) witness's lack of preparation regarding certain of those topics at his recent Rule 30(b)(6) deposition. The Parties also included this issue in their September 1 Status Report (Dkt. 823).

## II. Ongoing Discovery Issues On Which the Parties Continue to Meet and Confer

### a. ***Compliance with Order Re: Command History Files***:

*Plaintiffs' Statement*: This Court has now twice ordered Meta to produce command history files: first, in March 2025, *see* Dkt. 470, and second, on September 11, pursuant to Plaintiffs' recent motion to compel. *See* Dkt. 785 (Joint Letter Brief); Dkt. 831 (Order).

Devices: On September 30, Meta made a production and indicated in its production letter that "The produced files contain information relating to command invocations relating to the torrent downloads by Mr. Roller and Ms. Wang." But the production contained AWS instance-state logs for Stephen Roller and Xiaolan Wang (two of Meta's several torrenters), not the command history files the Court ordered. After Plaintiffs followed up, Meta said yesterday (October 5) that it previously produced command history files from devices of some Meta employees and has collected additional files from Nikolay Bashlyov's devices and "will produce those shortly." *See* Attachment A. Meta also said it "believe[s] that will address the production of command history

files from the computers of persons directly involved in torrenting activities." To that end, Plaintiffs asked Meta to confirm it has searched and produced, or will produce in short order, all command history files from *all* of the laptops and computers, *and* their backups, for each of the several employees involved in Meta's various torrenting episodes. For example, to date, Meta has produced no command history files in connection with the torrenting that Guillame Lample (or someone at his direction) performed in Spring 2023, and Meta has not produced any command history files for Peter Albert.

Servers: More problematic is Meta's statement yesterday (in Attach. A) that it "is continuing to search for any such files subject to the Court's order that ***may*** have been created ***and exist*** on server systems that are ***reasonably accessible***" (emphasis added). To be clear, Meta has produced ***no*** server command history files to date. This is despite a roadmap for locating such files that Plaintiffs provided Meta back in June 2026. *See* Attachment B. With respect to Meta's statement yesterday, first, Judge Chhabria's order and this Court's order does not include a "reasonable accessible" limitation. Second, command history files necessarily *would* have been created—indeed, they are created by default and are readily accessible in the "home" directory of every server (and backup of those directories); there is no "may have been created." Finally, whether the server files still "exist" depends on whether Meta deleted them and/or whether they remain on any backups of the relevant servers.[1] Given that Meta's largest torrenting occurred in Spring 2024, a year after this litigation began, and Judge Chhabria ordered these files produced in March 2025, Plaintiffs are entitled to know whether (and when) Meta deleted its server command history files for its several torrenting episodes.

Accordingly, Plaintiffs request that the Court direct Meta to search for and to produce all command history files from all computers and all backups for the following torrenters: Wang, Roller, Lample (including any employee torrenting at his direction), Bashlykov, Albert, and Kerkez. Plaintiffs also request that the Court direct Meta to withdraw any "reasonably accessible"

---

[1] For example, some Meta employees torrented on AWS servers, but even if those servers were decommissioned at some point, backups of server directories should have been created and can be searched.

limitation it is imposing on searching its servers and backups for the relevant command history files; search for and produce all relevant command history files including the searches provided by Plaintiffs in June 2026; and inform Plaintiffs in writing whether Meta deleted (by overwriting it or otherwise) any command history files for any of its torrenting episodes, and when. Plaintiffs request that the Court order Meta to provide these files and information no later than Friday, October 16, 2026.

*Meta's Statement*: Kadrey's complaints about Meta's compliance with the Court's order of September 11, 2026 (ECF 831) are unwarranted. With respect to individual user devices, Meta had already searched Mr. Lample, Mr. Roller, Mr. Kerkez, and Ms. Wang's available user devices and backups for command history files and produced the files it found. Meta is also nearing completion of the search for and production of similar files for Mr. Bashlykov. Meta will also conduct a search relating to Mr. Albert, who was first requested by Plaintiffs in an email to Meta received today. Plaintiffs above also complain that Meta has not produced command history files for torrenting activities by former Meta employee Mr. Lample that occurred nearly four years ago. Meta has produced the command history files that were found on Mr. Lample's work computer, and if others are found in Meta's continued searches of server records, Meta will produce them.

Searches for these types of files take time to run down given the variety of computing environments and third-party cloud computing systems that were employed, by different individuals (including former employees), to perform separate torrent downloads during various periods between October 2022 and Spring 2024. Meta made a production on September 30 of log files relating to AWS downloads performed by Mr. Roller and Ms. Wang. Meta to date has not located "command history files" (as narrowly described by Plaintiffs) for the AWS torrent downloads, but Meta nevertheless searched other existing files to see if they may contain equivalent information. The files that Meta produced on September 30 contain, among other things, textual strings that show command invocations (i.e. textual commands used to initiate torrent downloads through AWS) by Mr. Roller and Ms. Wang. While not titled "command history files," these files

contain the type of information that would be captured in a command history file, and thus erring on the side of production, Meta produced those files in response to the Court's order of September 11.

Including the searches discussed above, Meta is continuing its search for command history files associated with other server systems and will produce any it locates pursuant to its search. Plaintiffs' request for "discovery-on-discovery" should be denied. The Court's order requires Meta to produce responsive documents; it does not require a detailed interrogatory-type response explaining why particular documents could not be located, as this exceeds what the order contemplates.

b. ***Compliance with Order Re: ML Hub***:

*Plaintiffs' Statement*: Similar to the issue discussed above, the Court has twice ordered Meta to search and produce the ML Hub: first, in November 2025 (Dkt. 635), and second, on September 11, pursuant to Plaintiffs' recent motion to compel. *See* Dkt. 785 (Joint Letter Brief); Dkt. 831 (Order). Plaintiffs asked Meta the next day (September 11) when and where (and how) the ML Hub could be made available for inspection so the Parties could identify dates and make arrangements. Meta's counsel responded four days later that they were "working on these matters with our client." Plaintiffs again followed up on September 21, having heard nothing further from Meta. Then, on October 1, Meta's counsel for the first time told one of Plaintiff's counsel on a phone call that Meta proposed making the ML Hub available for inspection *via Zoom*, with Meta "screensharing" the ML Hub and navigating according to Plaintiffs' requests. Meta did not provide this proposal (with many additional proposed limitations on Plaintiffs' inspection) in writing until today at 10:16 AM. *See* Attachment C. It plainly is not compliant with Judge Chhabria's and this Court's orders that Meta *actually* make the ML Hub available for inspection. Instead, it proposes a "Zoom inspection" with "Meta's outside counsel" acting as intermediary for a "2 hour time period, which will be limited to two Kadrey outside counsel and one Kadrey expert," with only "reasonably necessary" additional follow-up inspection(s). Meta also proposes, *inter alia*, restricting Plaintiffs' review of tools like AIDC that were part of the ML Hub but have since been migrated from it—but Plaintiffs

should have access to everything that was part of the ML Hub at least as of the date of Judge Chhabria's order. Indeed, the only potential inspection limitation this Court ordered was "to work out a process to resolve that issue [Meta's assertion that there could potentially be privileged information in the ML Hub]." Dkt. 831 at 3 n.1. But Plaintiffs attempted to meet and confer as directed by the Court immediately after the Court's September 11 order, while Meta did not respond for weeks.[2] Plaintiffs respectfully submit the ship has sailed for Meta to continue to inhibit Plaintiffs' inspection.

The Court's orders to search or make the ML Hub available for inspection plainly does not include Meta's outside counsel acting as intermediary or Meta otherwise inhibiting the inspection such as by limiting it to a screenshare via Zoom or two-hour windows. Because Meta has not complied with the Court's orders—now two of them—Plaintiffs request that the Court order Meta to provide the location at which it will make the ML Hub available by this Friday, October 9, and to order Meta to make the ML Hub available on dates and times thereafter that work for Plaintiffs and their experts.

*Meta's Statement*: Plaintiffs provide an incomplete history of the communications between Kadrey and Meta regarding the ML Hub inspection. Meta made clear to Kadrey on September 21 that it was determining the logistics of the requested ML Hub review. Meta had never previously had an inspection of this live production system and needed time to determine how it could structure the review to ensure that its live production systems and data are protected, to ensure that Kadrey's counsel does not exceed the boundaries of the ordered search and inspect other Meta internal systems, and to ensure that privileged information is not inappropriately obtained or sought by Kadrey's counsel. Meta discussed those issues with Kadrey's counsel on October 1 and she was receptive to the offer as a first step in the inspection process; Meta then followed up with more

[2] Meta still has not explained what possible privileged information could be present in the ML Hub, which as exhibits to the pending AIDC briefing explain is accessible to numerous Meta employees. Plaintiffs nonetheless are willing to consent to a FRE 502(d) order covering information in the ML Hub, if any, that Meta identifies as privileged during or after Plaintiffs' inspection.

specifics in writing today (*see* Attachment C) after receiving a request from the same Kadrey counsel yesterday asking for a written explanation.

Meta continues to maintain that ML Hub does not contain information that is relevant to this case, as it is used by machine learning researchers that work on products like advertising and recommendations, not generative AI models. Moreover, given it is a live production system, there is significant risk, inadvertent or otherwise, that Kadrey's counsel and/or expert could disrupt its operation if they are allowed to engage in an unsupervised and unconstrained inspection.

Meta's proposal offers a structured way for Kadrey to engage in its inspection of ML Hub while respecting Meta's concerns about privilege and that Kadrey would attempt to search other information on a live Meta production system that is not within the scope of the Court's order. Kadrey did not even attempt to meet and confer with Meta about the written proposal before rejecting it in the written statement above. Moreover, Kadrey does not even identify what is objectionable about Meta's proposed procedure or make any proposal of an alternative that respects Meta's legitimate business and privilege concerns.

Kadrey also does not accurately characterize Meta's proposal. Meta was clear in its proposal that Kadrey can request additional inspections. If Kadrey wants to review for more than two hours in the initial inspection, Meta will accommodate that. Meta proposed a two-hour initial inspection to maximize the available times to conduct this inspection as soon as reasonably possible. Meta also made clear that Kadrey can ask to review anything that is hosted on the ML Hub website, subject to a procedure governing privilege issues. Meta also made clear that Kadrey can request production of information from ML Hub if it identifies information that it wants produced.

Regarding AIDC, Meta already conducted the searches requested by Kadrey of the materials in AIDC pursuant to the Court's order. There is no basis for any continued searching of AIDC, which is now separate from ML Hub, particularly because the system includes information that Meta maintains is privileged, Dkt. 847, and that the Court has previously upheld as privileged. Dkt. 627. Kadrey's suggestion that Meta needs to effectively "turn back the clock" to

how ML Hub existed previously is impractical, unnecessary, and not required by the Court's order. This is a live production system that is in active use by Meta engineering teams.

Kadrey should proceed with the offered Zoom inspection so that the parties can move this issue forward. To the extent any disputes remain following the Zoom inspection, the parties can address those issues in a joint letter brief.

c. ***Meta's Privilege Claims***:

*Plaintiffs' Statement*: In April, Plaintiffs sent Meta a list of privilege log entries they intended to challenge and submit for *in camera* review. The Parties met and conferred for several months and were able to narrow the number of documents in dispute to 54. On August 5, the Court granted the Parties' motion for a page enlargement for their joint letter brief, and on August 14, Plaintiffs served their portion of the joint letter brief on Meta.

Meta did not provide their portion of the letter brief but instead emailed Plaintiffs on September 1 outlining its intent to reproduce 32 of the 54 challenged documents without redaction or with fewer redactions.[3] Plaintiffs await that reproduction, which Meta stated today (October 6) that is has now made, and plan to evaluate the reproduced documents to determine whether Meta's narrowed redactions resolve the parties' disputes or whether they require the Court's intervention.

*Meta's Statement*: Meta made an initial production of these promised documents on October 5. Meta separately has entered into a stipulation with Plaintiffs under 502(d), and will promptly produce the remaining set. This issue is otherwise resolved from Meta's perspective.

d. ***Meta's Recent Clawbacks***:

*Plaintiffs' Statement*: In addition to the privilege disputes discussed above, Meta has recently clawed back nearly 200 inadvertently produced documents, including 139 on October 3, that it contends are privileged. Plaintiffs are still assessing these clawbacks but intend to present some to the Court for determination of Meta's assertions of attorney-client privilege under Rule 26(b)(5)(B).

---

[3] The AIDC Joint Letter Brief discussed above covers a subset of the documents over which Meta did not agree to narrow or remove its redactions.

*Meta's Statement*: Meta will review and respond when the Kadrey Plaintiffs send over this information.

e. ***Hyperlink Requests***

*Plaintiffs' Statement*: On September 12, Plaintiffs sent Meta a list of targeted requests for several hyperlinked documents that appear particularly relevant in Meta's recent document productions. Meta responded on September 14 that it was looking into Plaintiffs' request and would "respond in due course." Plaintiffs sent a follow-up email on September 15, in which they updated their list of requests by removing three documents they located in subsequent Meta productions. Plaintiffs followed up this morning. Meta has not responded to Plaintiffs since its September 14 email.

*Meta's Statement*: Meta has to date produced or logged all documents requested by Plaintiffs in its September 12 email, except for three - two of which Meta is investigating, and one of which is to a public webpage that is not owned by Meta. Plaintiffs sent a further email this morning, October 6, which requested additional hyperlinks for the first time, including from documents produced in July 2024, more than two years ago in the Kadrey matter. Meta will investigate those additional requests, as stated in its email in response to Plaintiffs October 6 email. Meta disagrees that Plaintiffs' hyperlink requests either were targeted or that these documents appear "particularly relevant" to Plaintiffs' remaining claims and defenses, but has generally attempted to work with Plaintiff on such requests to avoid burdening the Court with disputes even though discovery is closed for Kadrey.

f. ***Deposition Document Requests***

*Plaintiffs' Statement*: During the depositions of James Beldock and Xiaolan Wang, the deponents testified about certain data tables and tracker spreadsheets related to the metadata from shadow libraries and the AIDC, respectively. Plaintiffs requested those documents at the depositions and via email on September 10, and again on September 12 and September 15. Meta responded that it was looking into these requests on September 14, but it has not subsequently responded.

*Meta's Statement*: Kadrey mischaracterizes the nature of the documents they requested during the depositions of Mr. Beldock and Ms. Wang. Moreover, these are new document requests and discovery is closed. Meta has already produced some of the requested information, but believes any further production is inappropriate in view of discovery being closed.

g. ***Production of Prior Frederiksen-Cross Reports***

*Plaintiffs' Statement*: On October 2, Meta served an Opening Expert Report from its torrenting expert Barbara Frederiksen-Cross that lists cases in which she has previously offered expert testimony. Plaintiffs thus have now asked Meta to produce prior expert reports and deposition transcripts of Barbara Frederiksen-Cross, Meta's torrenting expert, limited to (1) the past four years, and (2) where Ms. Frederiksen-Cross offered opinions involving BitTorrent technologies.

*Meta's Statement*: Kadrey sent this request last night. Meta does not have possession, custody or control of Ms. Frederiken-Cross's documents from other cases. Moreover, the Court rejected this very same type of information when it was sought by the Three C's from third party OpenAI. Case No. 3:26-cv-02333-VC, Dkt. No. 131 at 6-7 (denying request for "All expert reports. . . [and] testimony … prepared by, for, reviewed by, considered by, relied upon by, submitted by, or attributed to Barbara Frederiksen-Cross in In Re: OpenAI, Inc. Copyright Infringement Litigation, 1:25-md03143, (S.D.N.Y.)" because "[t]he Court does not see the utility of rummaging around in the MDL for the items requested in 6."). Judge Chhabria affirmed this Order finding that this Court was "certainly correct" in its Order. 2026-09-25 Hearing Tr. at 9:1-5; *see also id.* at 4:22-25.

h. ***Roller Deposition Subpoena***

*Plaintiffs' Statement*: The Court granted Plaintiffs' request to cross-notice the deposition of third party, former Meta employee Stephen Roller, who was disclosed in November 2025 to have torrented from LibGen. *See* Dkt. 653. On September 18, the Court granted the 3C plaintiffs' motion to authorize alternative service on Mr. Roller. *See* Case No. 3:26-cv-02333, Dkt. 146. Mr. Roller's attorney accepted service and has been corresponding with counsel for the 3Cs via email. Mr.

Roller's counsel recently offered October 23 for his deposition but apparently has conditioned it on the 3Cs agreeing to pay his fees and costs, and to unspecified time and scope restrictions. *See* Attach. D. The *Kadrey* plaintiffs do not agree to time or scope restrictions on their questioning of Mr. Roller.

*Meta's Statement*: Kadrey and the Three C's have not informed Meta about the scheduling of the deposition or any potential time or scope restrictions. Meta takes no position on these issues until it learns more information.

***i. Scheduling Kadrey's 30(b)(6) Deponents for the Newly Added Plaintiffs.***

*Meta's Statement:* On August 16, 2026, after the Court granted Meta's motion for leave to serve written discovery on all Plaintiffs and to take depositions of the new loan out company plaintiffs (ECF No. 806), Meta wrote to Plaintiffs' counsel asking for deposition dates. Plaintiffs responded on August 21, declining to provide dates until Meta specified deposition "topics" and after they responded to Meta's new written discovery requests. Meta recently received the loan out companies' discovery responses, along with small document productions in the past couple of weeks. On September 29th, Meta then emailed the Plaintiffs again to schedule the depositions, asking who, other than the individual plaintiffs who set up the loan outs (Coates, Silverman, and Golden), would provide deposition testimony and told them that, generally, the deposition would cover the loan out companies' claims in the complaint. Yesterday, October 5th, Plaintiffs declined to provide dates until they formally received 30(b)(6) deposition notices with topics and they decide whether they believe the depositions may be cumulative of the individual depositions Meta took nearly two years ago – before the loan out companies were added to the case. Meta is preparing Rule 30(b)(6) notices. Meta may need the Court's assistance to get Plaintiffs to provide dates.

*Plaintiffs' Statement*: The parties are continuing to meet and confer regarding three depositions of the new plaintiffs added to the Fourth Amended Complaint. Plaintiffs requested that Meta provide the specific Rule 30(b)(6) topics that it intends to question each corporate plaintiff on. Once Plaintiffs receive Meta's proposed topics, Plaintiffs will confer in good faith about the

matters for examination, including to ensure that the topics of examination are not unreasonably cumulative or duplicative. Meta's demand for deposition dates is premature as it is prior to providing its Rule 30(b)(6) topics with the reasonable particularity the rule requires and prior to conferring in good faith about the matters of examination.

Dated: October 6, 2026

By: */s/ Phillip E. Morton*

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC
20004 Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
cghazarian@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Respectfully submitted,

By: */s/ Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela Dunning
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

ECF ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that counsel for Meta concurs in the filing of this document.

/s/ *Maxwell V. Pritt*