October 7, 2026

***By ECF***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
250 Golden Gate Avenue
San Francisco, CA 94102

Re:
*Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (TSH);
*Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 3:25-cv-09579-VC (TSH);
*Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*, No. 3:26-cv-02333-VC (TSH);
*Cambronne Inc. v. Meta Platforms, Inc.*, No. 3:26-cv-03725-VC (TSH);
*Cognella, Inc. v. Meta Platforms, Inc.*, No. 3:26-cv-04053-VC (TSH)

Dear Judge Hixson:

Plaintiffs and Non-Party Fox Corp. ("Fox") respectfully submit this joint letter brief regarding a discovery dispute over an AI training license agreement and related negotiation materials between Fox and Defendant Meta Platforms, Inc. ("Meta").

Fox seeks a protective order regarding its negotiations with Meta regarding an AI training license agreement and the agreement itself, which Meta produced in response to Plaintiffs' RFP to Meta seeking third-party license materials. Plaintiffs and Fox have met and conferred multiple times since July, including most recently on September 16, 2026, but were unable to reach resolution.

**Fox's Position**

Plaintiffs insist they are entitled to the confidential and competitively sensitive terms of Fox's AI training license to Meta and their negotiations regarding the same. As this Court held just weeks ago in denying Plaintiffs' demands for third party licensing materials from OpenAI and Anthropic, the existence of a market for licensing AI-training content is not relevant as a matter of law under Judge Chhabria's summary judgment ruling in *Kadrey*. Nor can Plaintiffs salvage the relevancy of these materials by pointing to willfulness or statutory damages: the Fox-Meta license terms shed no light on whether Meta knew or recklessly disregarded the possibility that its use of Plaintiffs' books was infringing, and the price paid for Fox's multimedia content provides no measure of any expenses Meta allegedly saved by not licensing Plaintiffs' works.

**I. Background**

Fox and Meta have a license agreement under which Fox provides Meta certain multimedia content for use in training AI models. Declaration of Susan Shelton Vigon ("Vigon Decl.") ¶ 2. The license does not pertain to books or similar content. *Id.* The agreement is confidential and requires Meta to notify Fox of any disclosure demand to allow Fox to seek a protective order. *Id.* ¶ 3. The amount paid for the license and the scope of licensed material are highly competitively sensitive. *Id.* ¶ 4. Fox is actively negotiating other license agreements and disclosure of the terms of its agreement with Meta would threaten substantial and immediate harm to those ongoing negotiations. *Id.*

Pursuant to the agreement, Meta informed Fox that Plaintiffs had served requests for production seeking the license agreement and related negotiations. Ex. A at 8–11 (*Entrepreneur* RFPs 28–29). In Fox's view—recently confirmed by this Court—these documents are not relevant to Plaintiffs' claims. However, in the spirit of compromise and to avoid unnecessary litigation, Fox negotiated with Plaintiffs and Meta in good faith and reached an agreement to produce redacted versions of the license agreement and related documents to protect the fee amount and other competitively sensitive terms, subject to mutual reservation of rights and further conferral. Fox understands that the redacted documents have been produced to Plaintiffs, and Fox does not object to Plaintiffs keeping and using the redacted documents in this litigation.

Unfortunately, Meta (not Fox) inadvertently produced to Plaintiffs an unredacted version of the license agreement. When Meta discovered this error, Meta and Fox each promptly contacted Plaintiffs to notify them of the inadvertent production and to request that Plaintiffs destroy the document. Plaintiffs "sequestered" the inadvertently produced document, but refused both requests to destroy it, confirming Fox's fears about the risk of inadvertent disclosure. After Fox informed Plaintiffs it would move for a protective order, Plaintiffs notified Fox they also intend to seek unredacted copies of Fox and Meta's negotiation communications and related documents. Fox has since learned that Meta also inadvertently produced unredacted versions of the other materials, including negotiation communications and drafts of the license agreement.

**II. Argument**

Fox respectfully requests that the Court enter a protective order: (1) directing Plaintiffs to destroy the inadvertently produced documents, which are not relevant as a matter of law and should

never have been produced, and (2) relieving Fox and Meta of any further obligation to disclose or produce materials relating to their license agreement.

Plaintiffs' demand is squarely controlled and foreclosed by the Court's September 10 order. Three Cs Plaintiffs moved to compel book-related licensing negotiations from Anthropic and OpenAI, arguing they would show "what rightsholders were asked to give, what developers were willing to pay." *Cognella*, ECF No. 101 at 3. The Court denied the motion, explaining: "Judge Chhabria has already ruled that the alleged licensing market[,] . . . and whether it exists, is legally irrelevant." *Cognella*, ECF No. 108 at 5. This Court quoted extensively from Judge Chhabria's *Kadrey* ruling, which held that "this market is not one that the plaintiffs are legally entitled to monopolize." *Id.* (quoting *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025); citing *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1032 (N.D. Cal. 2025)).[1] The materials Plaintiffs now demand are the same as those sought from Anthropic and OpenAI in every relevant respect. Although license agreements themselves were not at issue in that order (because OpenAI and Anthropic had agreed to produce them), the analysis is the same. If the licensing market is legally irrelevant, there is no basis for distinguishing license agreements from related negotiation communications.

With the only facially apparent pathway to relevance legally foreclosed by this Court's order, Plaintiffs pivot to arguing that the materials are relevant to willfulness and damages. They are not. The agreement and negotiations concern different works in different media formats (not books) with different copyright owners, and have no relevance whatsoever to Meta's alleged use of "shadow-library repositories" and "torrenting software" to download Plaintiffs' materials. *Cognella* Compl. ¶ 94. The materials do not shed light on Meta's state of mind with regard to "the copyright holder's rights" at issue in these cases—i.e., whether Meta acted with knowledge or reckless disregard that its alleged downloading and use of Plaintiffs' works was infringing. *See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (citation omitted). Nor does Meta's decision to obtain a license for Fox content establish that Meta believed a license was legally required for the uses alleged here. Plaintiffs' attempts to repackage the legally irrelevant licensing-market theory fail.

Nor could the price term for Fox's multimedia content bear on the amount Meta saved by not licensing Plaintiffs' works for purposes of statutory damages. As Plaintiffs themselves have pointed out, books are not interchangeable with other content. *See, e.g.*, *Cognella* Compl. ¶ 63 (alleging Meta employees acknowledged "it was 'really important for [Meta] to get books data ASAP,'" and "the 'best resources" for training "'are definitely books'"). Indeed, both cases cited by Plaintiffs pertain to the infringer's prior licenses of the same media form (and in neither case did the defendant contest willfulness). *See Controversy Music v. Shiferaw*, No. C03–5254 MJJ, 2003 WL 22048519, at *2–3 (N.D. Cal. July 7, 2003) (prior settlement and license agreement for unauthorized performance of ASCAP songs evidence of willfulness against jazz club owner in subsequent suit accusing owner of further unauthorized performance of ASCAP songs; default

---

[1] Three Cs Plaintiffs expressly declined to seek relief from the Court's ruling "that evidence of a licensing market is 'legally irrelevant.'" Motion for Relief, *Cognella*, ECF No. 126 at 1 n.1. Judge Chhabria recently denied the motion for relief from other aspects of this Court's order, stating the order was "certainly correct." 9/25/26 CMC Tr. 4:22–25, 9:1–5.

judgment entered); *United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977) (prior licensing of motion pictures evidence of willfulness of infringement of motion picture copyrights; willfulness not challenged).

Fox respectfully requests that the Court enter a protective order relieving Meta and Fox of any further obligation to produce the unredacted licensing agreement or related licensing negotiation documents. A protective order is appropriate notwithstanding Plaintiffs' agreement to maintain the documents under an AEO designation because the risk of inadvertent production—which has already occurred multiple times in this case—presents an acute threat of competitive harm to Fox if the agreement or its terms were disclosed publicly. Vigon Decl. ¶ 4. For the same reason, Fox further requests the Court direct Plaintiffs to destroy the inadvertently produced unredacted documents. *See In re Telescopes Antitrust Litig.*, No. 20-cv-03642-EJD (VKD), 2022 WL 3590342, at *4 (N.D. Cal. Aug. 22, 2022) (ordering party to "destroy" inadvertently produced documents that were non-privileged but irrelevant and which contained "private and sensitive information"); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery may be "more limited to protect third parties from . . . disclosure of confidential documents" (citation omitted)).

**Plaintiffs' Position**

The documents at issue are *Meta* documents; Fox hasn't been asked to produce anything at all. Meta slated them for production by following the normal ESI discovery process agreed to in this case for identifying and producing responsive documents. No one contends the documents are privileged. To the contrary, Meta would have produced them months ago had Fox not expressed concerns, met and conferred, and ultimately decided to seek a protective order. Meta has never objected to their relevance or proportionality. The relevance objection Fox presses here belongs to the producing party, and Meta has not made it.

As set forth below, these documents, including the price and related terms in the license agreement and Meta-Fox correspondence, are probative of willfulness and statutory damages—issues the September 10 order did not address. Fox's assertion of "an acute threat of competitive harm" is unsubstantiated; Fox identifies no specific negotiation that disclosure to Plaintiffs' outside counsel in this case would compromise, and does not explain why AEO treatment is inadequate. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (party seeking protection must show specific prejudice or harm for each document). The Court's existing Protective Orders (*see, e.g.*, Case No. 3:26-cv-04053-VC ECF No. 35 (May 27, 2026)) cover and are adequate to address all of Fox's business confidentiality concerns. Discovery in this district could not happen if non-parties could thwart party productions by asserting concerns premised on presumed Protective Order violations.

## I. The Meta-Fox license agreement and related documents meet the standard of relevance for purposes of discovery—on multiple issues.

Relevance for discovery is different from relevance at summary judgment. Discoverable information includes "any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). Fox does not even purport to apply this standard. The request is also proportional: it concerns a single agreement and the communications that produced it, which the producing party has already collected, reviewed, and designated. Fed. R. Civ. P. 26(b)(1).

Fox has agreed that Plaintiffs may keep and use the redacted agreement and related documents in this litigation. Whatever reservation accompanied that compromise, its effect is to confine the dispute to the redacted price and commercial terms. Those terms have independent relevance—they show what Meta saved by not licensing Plaintiffs' works, a recognized statutory-damages factor—and whether AEO designation adequately protects them is a question on which Fox bears the burden and has offered nothing.

Moreover, Meta's licensing of Fox content is relevant to willfulness and damages. That Meta paid to license training data from Fox bears upon its familiarity with the practice of licensing and supports Plaintiffs' argument that Meta knew or should have known it should have obtained permission and negotiated licenses with Plaintiffs (willfulness). *See, e.g.*, *United States v. Drebin*, 557 F.2d 1316, 1323-24 (9th Cir. 1977) (evidence of willfulness "overwhelming" where defendants "had been licensed by several motion picture studios for nontheatrical distribution of their films and were familiar with the practice of licensing").

With respect to damages, Plaintiffs seek statutory damages, and within the statutory range, the award will be informed by a willfulness finding as well as by the infringers' profits and "expenses saved," which will include license savings. *Controversy Music v. Shiferaw*, No. C03–5254 MJJ, 2003 WL 22048519, at *2 (N.D. Cal. July 7, 2003). What Meta actually paid to license AI training content bears directly on what Meta saved by not licensing Plaintiffs' works. The jury will be allowed to consider, and will want to know, if Meta saved just a few pennies, or substantial sums, by pirating the Plaintiff's works.

This is not the licensing-market theory in new dress. The Court's September 10 order and *Kadrey* Summary Judgment Order address whether harm to a licensing market weighs against fair use under factor four. Damages arise only once fair use has been rejected, and Judge Chhabria identified licensing as the consequence of that rejection: where training is not fair use, developers "will need only to pay rightsholders for licenses for that training." *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1059 (N.D. Cal. 2025). Whether a licensing market is one Plaintiffs may monopolize is a factor four question. What Meta saved by not paying for licenses is a remedial one.

Plaintiffs do not ask the Court to revisit its September 10 ruling on licensing-market evidence under factor four, and they do not rely on that theory here.[2] But the fair-use defense Meta asserts is a fact-bound multifactor test in which no one factor is intended to have conclusive weight, and Judge Chhabria was careful to limit his *Kadrey* decision to not just its facts, but to the record before him. *Kadrey* at 1036–37 (N.D. Cal. 2025). Fox's arguments ignore the restraint evident in *Kadrey*. This new case therefore calls for a thorough investigation and a detailed record.

In any event, documents need not be independently admissible, or able to prove a relevant fact all by themselves, to be discoverable. They need only bear on some issue in the case. The redacted portions of the license agreement and negotiations at issue bear upon willfulness and

[2] Plaintiffs respectfully preserve their position that, in light of factual and legal developments since *Kadrey*, evidence of the market for licensing works for AI training is relevant under factor four, a question they will present to Judge Chhabria on a full record. *See, e.g.*, *Thompson Reuters Enters. V. Ross Intel. Inc.*, Case No. 25-2153, Dkt. 214, at *26 (3d Cir. September 30, 2026).

statutory damages, wholly apart from factor four. This is enough for discoverability. Fed. R. Civ. P. 26(b)(1).

## II. The negotiation communications and drafts are relevant for reasons the September 10 order did not reach.

The Court's September 10 order addressed non-party negotiations that never produced an agreement, offered as evidence of a licensing market under factor four. The materials here differ in three respects. They are Meta's own communications, admissible against it. Fed. R. Evid. 801(d)(2). They concern a license Meta actually executed. And Plaintiffs argue for them based on willfulness and statutory damages, not factor four.

First, willfulness. Because Plaintiffs seek statutory damages, willfulness is not a side issue: it determines whether the ceiling is $30,000 or $150,000 per work. 17 U.S.C. § 504(c)(1)-(2). Fox asserts that Meta's decision to license Fox content does not show Meta believed a license was legally required. That is a contested fact about Meta's state of mind, and Meta's contemporaneous communications about why it sought the license, what rights it insisted on, and what intellectual-property warranties and indemnities it demanded are the most direct evidence of it. Willfulness turns on the defendant's knowledge or reckless disregard, *Erickson*, 921 F.3d at 833; Fox cannot assert the answer to that question while withholding the evidence that would test it.

Second, the communications explain what the price bought. Fox stresses that the license covers "multimedia content," not books. What Meta paid—and therefore what it saved by not paying Plaintiffs—cannot be understood without knowing what the fee covered: the volume and type of content, the scope and duration of permitted use, and any exclusivity. Plaintiffs seek only the portions of the drafts and correspondence that address those terms.

Third, Plaintiffs will narrow the request. Plaintiffs seek (i) the executed agreement in unredacted form and (ii) only those drafts and communications that address price or pricing methodology, the scope of licensed content and use, exclusivity, or intellectual-property warranties and indemnities. All would remain designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY. In addition, Plaintiffs will agree that Fox's price and payment terms may be disclosed only to Outside Counsel of Record and testifying experts, and that Fox will receive the same advance notice of, and opportunity to object to, any expert who will see them that the Protective Order affords a Designating Party. If the Court has any doubt, Plaintiffs do not object to *in camera* review of the negotiation materials before production.

## III. Fox's remaining arguments lack merit.

Fox repeatedly cites to this Court's decision in relation to the OpenAI and Anthropic subpoenas, but these citations miss the point. OpenAI and Anthropic *produced* their consummated training licenses without issue, and challenged only the production of negotiation-related documents where no agreement was reached. Plaintiffs chose not to challenge this Court's ruling that those non-party documents are not discoverable in view of the record, including the documents Plaintiffs received, but only to note their disagreement. But those third-party documents did not directly involve Meta. See Section 2, *supra*. Plaintiffs have not sought them from Fox by subpoena and the considerations here are different. Fox asks for Meta to be "relieved from any further obligation" to produce related documents, but no such obligation has been imposed on Fox, nor would one be if this Court denies this relief.

The only argument Fox has any standing to make here is its claim of business confidentiality. That argument fails because the Protective Order governing the treatment of confidential documents in this case adequately protects Fox confidentiality. The Plaintiffs are following the sequestration process that the parties follow along with the Protective Order and ESI protocols agreed to in this case pending resolution of this dispute. If resolved in their favor, Plaintiffs' counsel will continue to respect the documents' confidentiality and Attorneys' Eyes Only designation and adhere to the Protective Order.

Fox's destruction request should be denied in any event. The documents are not privileged, and the clawback provisions of the Protective Order and ESI Order are directed at privileged and protected material. Plaintiffs have done what those orders require pending resolution: sequestered the documents and refrained from using them. *Telescopes* is not to the contrary. There, the court ordered destruction of material it found irrelevant and that contained "private and sensitive information." 2022 WL 3590342, at *4. Fox's commercial terms are relevant, and they are adequately protected by an AEO designation. If the Court grants Fox relief in any part, continued sequestration or return—not destruction—is the appropriate remedy.

**Conclusion**

Plaintiffs do not ask the Court to revisit its September 10 ruling, much less *Kadrey*. They ask only that Meta's own executed license, and the communications that explain its price and scope, be produced for the willfulness and statutory-damages issues that ruling did not reach. They are relevant to willfulness and statutory damages, and the existing Protective Order provides sufficient protection for the confidential information they contain.

Dated: October 7, 2026

Respectfully submitted,

*/s/ Juliana M. Yee*
Malcolm A. Heinicke
Juliana M. Yee
Connor W. Hoge
MUNGER, TOLLES & OLSON
*Attorneys for Fox Corp.*

/s/ *Elizabeth Brannen*
Elizabeth Brannen
STRIS & MAHER LLP
*Attorneys for Plaintiffs (Cambronne, Chicken Soup, Cognella)*

/s/ *Lee Linderman*
Lee Linderman
HUESTON HENNIGAN LLP
*Attorneys for Plaintiff (Entrepreneur Media, LLC)*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Juliana M. Yee, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of October, 2026, at Salt Lake City, Utah.

/s/ *Juliana M. Yee*
Juliana M. Yee