United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KADREY, et al., Plaintiffs, v. META PLATFORMS, INC., Defendant. | **DISCOVERY ORDER** Case No. 23-cv-03417-VC (TSH) Re: Dkt. Nos. 847, 852, 856, 858 |
| ENTREPRENEUR MEDIA, LLC, Plaintiff, v. META PLATFORMS, INC., Defendant. | Case No. 25-cv-09579-VC (TSH) Re: Dkt. Nos. 154, 155, 170, 172 |
| CHICKEN SOUP FOR THE SOUL, LLC, Plaintiff, v. META PLATFORMS INC., Defendant. | Case No. 26-cv-02333-VC (TSH) Re: Dkt. Nos. 138, 159 |

United States District Court
Northern District of California

| | |
|---|---|
| CAMBRONNE INC., et al.,<br>Plaintiffs,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 26-cv-03725-VC (TSH)<br><br>Re: Dkt. No. 279 |
| COGNELLA, INC.,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 26-cv-04053-VC (TSH)<br><br>Re: Dkt. No. 139 |

The parties have raised a number of discovery disputes. The Court addresses them as follows.

**A. Kadrey (23-3417), ECF No. 847**

Plaintiffs ask the Court to review *in camera* certain redacted documents from Meta's AI Data Catalog. ECF No. 847. The documents are listed in Appendix A, ECF No. 847-1. EM and the Three Cs join in this request. ECF Nos. 849, 850. The Court finds that *in camera* review is warranted. Accordingly, the Court **ORDERS** Meta to submit these documents for *in camera* review within seven days. Meta shall submit them in hard copy with the portions that are claimed to be privileged highlighted.

**B. Kadrey (23-3417), ECF No. 852**

Plaintiffs move to compel three additional hours of Rule 30(b)(6) deposition time. They raise two issues: scope and preparation. In Appendix A, they list the objections and answers that are the subject of this motion. ECF No. 852-1; ECF No. 861-1.

**1. Scope**

For 25 of the listed 27 items, Meta objected that the question was outside the scope of the witness's Rule 30(b)(6) designation. If Meta's scope objection is sustained, then the witness's testimony in response to those questions was not on behalf of the company. If it's overruled, it's

United States District Court
Northern District of California

company testimony. Plaintiffs seek an order striking the scope objections as improper and imputing the witness's testimony to Meta as a corporation. Alternatively, to the extent the witness's testimony is not attributable to Meta, and the Court construes his lack of knowledge or awareness as unpreparedness, Plaintiffs seek additional time to question an adequately prepared 30(b)(6) designee.

As to the primary relief Plaintiffs seek, the Court agrees with Meta that ruling on the merits of the objection that was asserted during the deposition is improper at this time, and indeed, that this is not really a discovery dispute at all. "An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. Proc. 30(c)(2). Later, when a litigant attempts to admit the deposition testimony, "an objection may be made at a hearing or trial to the admission of any deposition testimony," Fed. R. Civ. Proc. 32(b). Generally speaking, an objection to the deponent's competence or to the relevance or materiality of the testimony "is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time." Fed. R. Civ. Proc. 32(d)(3)(A). By contrast, objections to most other errors or irregularities are waived if "not timely made during the deposition." *Id*. (d)(3)(B). The structure of Rule 32 makes clear that most objections that are made during a deposition are to be ruled on when the testimony is offered in evidence.

Please bear in mind that the overwhelming majority of deposition testimony is never used for anything. This is just as true for Rule 30(b)(6) testimony as for any other testimony. The Court declines Plaintiffs' invitation to rule on the merits of objections asserted during a deposition independent of any effort to admit the testimony in evidence. That is a potentially boundless project and is inconsistent with Rule 32.

Plaintiffs' alternative request ("to the extent the witness's testimony is not attributable to Meta, and the Court construes his lack of knowledge or awareness as unpreparedness, Plaintiffs seek additional time to question an adequately prepared 30(b)(6) designee.") does not make sense. If the witness's testimony is not attributable to Meta, that would mean the scope objection is valid, so lack of preparation would not be a problem.

**2. Preparation**

Separate from scope, Plaintiffs complain that the witness was not sufficiently prepared to testify on topics 6-8 in the deposition notice. Those topics are:

> **Topic 6**: All "approved usages" or "usages" related to Library Genesis, Anna's Archive, ZLibrary, Internet Archive or Duxiu. *See, e.g.*, Meta_Kadrey_00238408, Meta_Kadrey_00238396., Meta_Kadrey_00238373.
>
> **Topic 7**: Thee origin and timing of updates, changes, and content in Meta_Kadrey_00238408 and all other AIDC dashboards related to Library Genesis, Anna's Archive, Z-Library, Internet Archive, or Duxiu.
>
> **Topic 8:** The terms, fields, and content of the AIDC dashboards for any and all AIDC dashboards related to Library Genesis, Anna's Archive, Z-Library, Internet Archive, and Duxiu.

Plaintiffs point to three questions they say the witness should have been prepared to answer but was not. However, topics 6-8 are broad topics, and this is too paltry a showing that he was not sufficiently prepared.

**3. Conclusion**

Plaintiffs' motion to compel is **DENIED**.

**C. Kadrey (23-3417), ECF No. 848**

In ECF No. 859, Meta asks the Court to strike ECF No. 853-1, thereby mooting Plaintiffs' motion to seal. The Court agrees this is proper. ECF No. 853-1 is **STRICKEN** from the record, and the motion to seal at ECF No. 853 is **DENIED** as moot.

**D. Kadrey (23-3417), ECF No. 856; Entrepreneur Media (25-9579), ECF No. 172; Chicken Soup (26-2333), ECF No. 159; Cambronne (26-3725), ECF No. 279; Cognella (26-4053), ECF No. 139**

Non-party Fox Corp. has a license agreement with Meta under which Fox provides Meta certain multimedia content for use in AI training models. The license does not pertain to books or similar content. The agreement is confidential and requires Meta to notify Fox of any disclosure demand to allow Fox to seek a protective order. The amount paid for the license and the scope of licensed material are highly competitively sensitive. Fox is actively negotiating other license agreements, and disclosure of the terms of its agreement with Meta would threaten substantial and immediate harm to those ongoing negotiations. 23-3417 ECF No. 856-1 (Vigon Declaration).

Pursuant to the agreement, Meta informed Fox that Plaintiffs had served requests for production seeking the license agreement and related negotiations. Fox negotiated with Plaintiffs and Meta and reached an agreement to produce redacted versions of the license agreement and related documents to protect the fee and other competitively sensitive terms, subject to a mutual reservation of rights. The redacted documents have been produced, and Fox does not object to Plaintiffs keeping and using the redacted documents in this litigation.

However, Meta inadvertently produced to Plaintiffs an unredacted version of the license agreement. Fox has since learned that Meta also inadvertently produced unredacted versions of the other materials, including negotiation communications and drafts of the license agreement. Fox now moves for a protective order (1) directing Plaintiffs to destroy the inadvertently produced documents, and (2) relieving Fox and Meta of any further obligation to disclose or produce materials relating to their license agreement. On page 4 of the letter brief, Fox clarifies that it wants the protective order to relieve Meta and Fox of any further obligation to produce the "unredacted" license agreement or related negotiation documents.

The parties vigorously dispute the relevance of the materials at issue, including whether the Court's September 10, 2026 order (26-2333, ECF No. 131) denying the Three Cs' motion to compel against OpenAI and Anthropic controls. However, the Court does not think that relevance is the most important issue. After all, Fox does not dispute that Plaintiffs may have the redacted versions of the documents at issue. Instead, assuming relevance, the issue is the potential competitive harm to Fox from a further inadvertent disclosure (by Plaintiffs), weighed against the importance of the unredacted information to Plaintiffs.

There is no reason to doubt that Plaintiffs' counsel are careful people, and presumably their support staff, document vendors, and so on, are as well. But these related cases involve huge amounts of discovery and many, many filings. People are human and sometimes make mistakes. Thus, despite the existence of protective orders in this litigation, there is therefore some risk of inadvertent disclosure. Fox knows that only too well, as Meta inadvertently produced unredacted versions that it didn't mean to produce. The fact that Fox is in active negotiations for other license agreements, and that the inadvertent disclosure of the unredacted documents would cause it

United States District Court
Northern District of California

competitive harm, means that Plaintiffs should not have these unredacted documents unless there is a very good reason.

There isn't. The price term and other competitively sensitive terms in an agreement with a different copyright holder concerning a different media format are too distant from the facts of these cases to be important. Recall that discovery has to be both relevant and proportional to the needs of the case, and the latter inquiry includes "the importance of the discovery in resolving the issues," Fed. R. Civ. Proc. 26(b)(1), which here is missing. The potential competitive harm to Fox is also a burden it should not have to endure. Fed. R. Civ. Proc. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from . . . undue burden").

Accordingly, Fox's motion is **GRANTED**. The Court **ORDERS** Plaintiffs to destroy the inadvertently produced documents. The Court relieves Fox and Meta of any obligation to produce the unredacted licensing agreement or unredacted licensing negotiation documents.

**E. Entrepreneur Media (25-9579), ECF Nos. 154, 170**

EM moves to compel on rogs 22 and 23.

**1. Rog 22**

Rog 22 asks: "IDENTIFY each natural person who made, authorized, or approved any decision to obtain or download any Shadow Library Dataset containing Plaintiff's Works." EM has three requests concerning this rog: "(i) an answer to Interrogatory No. 22 as drafted, including as to the decision to obtain or download each dataset; (ii) for each person identified, that person's approximate dates of involvement and which decision he or she made, authorized, or approved, as to which dataset; and (iii) identification of the natural persons who approved the LibGen acquisition within FAIR and the persons who approved resuming the Anna's Archive download, or a statement under oath that Meta has identified none."

The first request is appropriate. Meta's response wanders away from the rog. For Llama 1 and 2, Meta says it has not identified particular individuals who "formally" made or approved decisions to "acquire or use" books. The rog isn't limited to formal decisions. The Court is willing to accept that "acquire" is a synonym for "obtain," but the rog does not ask about "use." The rog response goes on to talk mostly about use. For Llama 3, there is a reference to acquiring

data from Libgen, but the response is again mostly about use, not obtaining or downloading, which is what the rog asks about. For Llama 4, Meta's response is again mostly about use. However, rog 22 is about the natural persons who made, authorized or approved any decision to obtain or download the shadow libraries containing EM's works. This is the question Meta must answer.

Meta complains that it did not necessarily have a single decisionmaker and that decisions were often collaborative or the result of team consensus. However, the rog does not presume that Meta had a single decisionmaker; it asks about all the decisonmakers. If a decision is fairly attributable to a group or a team, everyone in the group or team who participated in making that decision is responsive to this rog.

The second request is also proper. It simply connects the subject of the rog with the definition EM provided of "identify." The third request is proper as well, as this information is responsive to the rog but was not provided.

Accordingly, EM's motion to compel on rog 22 is **GRANTED**.

**2. Rog 23**

This rog asks: "IDENTIFY each natural person who made, authorized, or approved any decision to obtain, download, upload, or distribute any Shadow Library Dataset, or any works contained therein, by means of the BitTorrent or other peer-to-peer protocol." EM seeks an order compelling Meta to (i) identify each person who participated in the discussion preceding Mr. Bashlykov's torrenting, each person who approved proceeding by torrent, and each person who directed or approved Ms. Wang's April 2024 download; (ii) state whether it searched Messrs. Roller's and Lample's custodial materials and inquired of their supervisors; and (iii) identify each person who made, authorized or approved the decision whether or how to seed, or to mitigate seeding, when Meta obtained LibGen Scimag and Anna's Archive content by BitTorrent.

The Court **GRANTS** EM's motion to compel **IN PART**. The Court grants the first and third requests because that information is responsive to the rog and was not provided. The Court denies the second request because the rog did not ask for that information. As above, this rog does not presume the existence of a single decisionmaker; it asks about all of them.

**F. Entrepreneur Media (25-9579), ECF Nos. 155, 170**

**1. Rog 19**

The Court **ORDERS** the parties to file a status report within seven days stating whether this rog remains in dispute.

**2. Rog 12**

The Court **ORDERS** the parties to file a status report within seven days stating whether this rog remains in dispute.

**G. Chicken Soup (26-2333), ECF No. 138[1]**

The Three Cs move to compel on rogs 2-7, 13 and 15.

**1. Rog 2**

In response to rog 2, Meta has identified the works it obtained from Common Crawl. Plaintiffs take issue with the portion of Meta's response claiming that it is technically infeasible to identify the works obtained through SpiderMate. However, Plaintiffs do not present any argument or explanation that this search is technically feasible. Indeed, Plaintiffs do not discuss the issue at all. This is not persuasive, and the Court **DENIES** the motion to compel as to rog 2.

**2. Rog 3**

For rog 3, Plaintiffs complain that Meta did not say "when and how" it obtained their works. However, Meta's responses do appear to answer that question, even though they do it through incorporation by reference of other rog responses. Plaintiffs also say that Meta's responses do not address web scraping, but the responses do discuss Common Crawl. It is true that Meta does not answer rog 3 as to SpiderMate, but Meta's response to rog 2 explains why. The motion to compel is **DENIED** as to rog 3.

**3. Rog 4**

Plaintiffs' section of the letter brief does not mention any deficiencies with rog 4, so the motion to compel is **DENIED** as to rog 4.

[1] Though all Three Cs move to compel, the motion was filed only in 26-2333.



United States District Court
Northern District of California

United States District Court
Northern District of California

**4. Rog 5**

Meta limited its responses to its publicly released models (Llamas 1-4), and Plaintiffs say Meta should be forced to answer as to every model, whether or not it was public. The Court agrees with Meta that requiring it to answer this rog for every internal iteration of a model is not proportional to the needs of the case. The motion to compel is **DENIED** as to rog 5.

**5. Rog 6**

A rog is allowed to ask about the application of law to fact, Fed. R. Civ. Proc. 33(a)(2), and that's what this one does. It asks about the removal of copyright management information. In its response, Meta is not allowed to change that to "repetitive text." The Court **GRANTS** Plaintiffs' motion to compel and **ORDERS** Meta to answer rog 6 in terms of the removal of copyright management information.

**6. Rog 7**

Meta provides a lot of information in response to rog 7, but it is true that its responses do not state what, if anything, it did with Plaintiffs' works that were downloaded but not used for model training at all. This is relevant and discoverable information. Accordingly, the Court **GRANTS** Plaintiffs' motion to compel on rog 7 **IN PART** and **ORDERS** Meta to provide this information.

**7. Rog 13**

Plaintiffs' complaint is that Meta limited its response to its publicly released models. As with rog 5, the Court does not think that answering this rog for every internal iteration of a model is proportional to the needs of the case. Accordingly, Plaintiffs' motion to compel is **DENIED** as to rog 13.

**8. Rog 15**

Plaintiffs identify two claimed defects in Meta's responses to rog 15. First, they say the rog is about the deletion of nine terabits of shadow library data "on or after" July 13, 2023, but Meta only answered as to the deletion "on" July 13. Second, the rog asks how that data was acquired, and Meta doesn't say.

On the second point, Meta says it can supplement to make clear how the data was acquired.

As to the first point, the rog does not ask about deletion generally but about one specific deletion event, and Meta's response says it happened on (or "on or about") July 13, 2023, which is a sufficient response. Accordingly, the Court **GRANTS** Plaintiffs' motion to compel **IN PART** and **ORDERS** Meta to supplement its responses to explain how the data was acquired.

**IT IS SO ORDERED.**

Dated: October 19, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California