[*counsel on signature page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICHARD KADREY, *et al.*,<br>Plaintiffs,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 3:23-cv-03417-VC<br>**JOINT CASE MANAGEMENT STATEMENT**<br>Judge: Hon. Vince Chhabria |
| ENTREPRENEUR MEDIA, LLC,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 3:25-cv-09579-VC<br>**JOINT CASE MANAGEMENT STATEMENT**<br>Judge: Hon. Vince Chhabria |
| COGNELLA, INC.,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant.<br>CAMBRONNE, INC. *et al.*,<br>Plaintiffs,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 3:26-cv-04053-VC<br>**JOINT CASE MANAGEMENT STATEMENT**<br>Judge: Hon. Vince Chhabria<br>Case No. 3:26-cv-03725-VC<br>**JOINT CASE MANAGEMENT STATEMENT**<br>Judge: Hon. Vince Chhabria |

CHICKEN SOUP FOR THE SOUL, LLC,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-02333-VC

**JOINT CASE MANAGEMENT STATEMENT**

Judge: Hon. Vince Chhabria

Pursuant to N.D. Cal. Civil Local Rule 16-9(a), Plaintiffs Richard Kadrey, Sarah Silverman, Christopher Golden, Jacqueline Woodson, Andrew Sean Greer, Rachel Louise Snyder, David Henry Hwang, Ta-Nehisi Coates, Laura Lippman, Matthew Klam, Junot Díaz, Lysa TerKeurst and Christopher Farnsworth, Eleven Eleven O' Clock Corporation, BCP Literary, Inc., and Daring Greatly Corporation (collectively, "Kadrey"), Entrepreneur Media, LLC ("Entrepreneur"), Chicken Soup for the Soul, LLC ("Chicken Soup"), Cambronne, Inc., Matthew Sacks, Jane Adams, Philip Shishkin, and Lisa Barretta (collectively, "Cambronne"), Cognella, Inc. ("Cognella," together with "Chicken Soup" and "Cambronne," the "Three C's") and Defendant Meta Platforms, Inc. ("Meta") (together, the "Parties"), by and through their respective undersigned counsel, hereby submit this Joint Case Management Statement in advance of the Case Management Conference scheduled for October 29, 2026.

Pursuant to the Court's inquiry at the September 25, 2026 Case Management Conference, as well as the Court's October 14, 2026 Order, the Parties write to propose a sequencing of the cases for trial.

*First*, as set forth in the Court's October 14 Order, Meta and Entrepreneur will prepare for trial on May 3, 2027.

*Second*, in the event of a settlement of the *Entrepreneur* case before the trial, the Parties propose that the sequencing of cases for trial follows the order in which the cases were filed. In

other words, if the *Entrepreneur* case settles in advance of May 3, 2027, the *Cambronne* case—which was the first-filed case among the so-called "Three C" matters—would proceed to trial on May 3. If the *Cambronne* case settles in advance of May 3, 2027, *Chicken Soup* would proceed to trial on May 3; and if *Chicken Soup* settles beforehand, *Cognella* would proceed to trial on that date.

*Third*, Meta's lead trial counsel wishes to express her profuse thanks to the Court for its consideration of her conflicting trial schedule. The new trial date of May 3, 2027, eliminates that conflict. One small issue remains: The pretrial conference now scheduled for April 20, 2027, conflicts with a different jury trial for Meta's lead trial counsel—specifically *Conduent State Healthcare, LLC v. AIG Specialty Insurance Company*, No. N18C-12-074 (Del. Super. Ct.), which is scheduled for presentation of evidence through April 20, 2027. At this point, Meta suggests that it advise the Court in early 2027 whether this conflict still exists and request a solution then. In the alternative, if the Court prefers to address this issue now, Meta respectfully suggests moving the date of the pretrial conference to April 26 or 27, 2027, with all parties adhering to the pretrial submission deadlines based on the original April 20, 2027, date so that the Court has sufficient time to consider any pretrial filings before the pretrial conference. Meta's lead trial counsel again apologizes for inconveniencing the Court.

Should the Court have any questions about the sequencing or timing of trial or the pretrial conference, the Parties will be prepared to address them at the upcoming Case Management Conference.

<u>Plaintiffs' Position</u>:

Plaintiffs respectfully raise the following matters for the Court: (1) the forthcoming amended complaints of Entrepreneur and the Three C's conforming the pleadings to the works at issue; (2) the status of discovery before Judge Hixson, including outstanding privilege disputes; (3) Plaintiffs' requests that the Court order Meta to produce additional documents and

communications, including its torrenting expert's prior reports and testimony, the "ML Books" folder and other hyperlinked documents, and all command history files; and (4) a former Meta employee's recent testimony about Meta's acquisition of the Books3 dataset.

***Amendment to Conform Entrepreneur's Complaint.*** Entrepreneur will file its amended complaint by November 6, 2026, the deadline previously discussed with the Court. (Aug. 14, 2026 Tr. at 14:4–7, 14:13–14, 14:21.) The amended complaint is expected to identify more than 400 additional books and more than 140 additional magazine issues that Meta torrented, used for training, or crawled. These works were identified in Meta's interrogatory responses and related search results, which Meta served and provided between August 4 and September 30, 2026, as well as in the October 2, 2026, opening report of Plaintiffs' torrenting expert, Dr. David Choffnes. (*Entrepreneur*, Dkt. No. 155 at 1–2; Dkt. No. 170 at 1–3 & n.2.)

Entrepreneur respectfully requests that the Court confirm that Entrepreneur may file its amended complaint on or before November 6, 2026, without a separate motion for leave to amend. Entrepreneur does not anticipate that the amendment will require additional discovery. It has produced all author and writer agreements in its possession and does not anticipate further productions concerning these works, other than possibly certificates of registration.

Contrary to Meta's assertions, most of the works Entrepreneur will add are not new to Meta, but rather appear in schedules Entrepreneur served in August, in Meta's own discovery responses, and/or in Dr. Choffnes's opening report. On August 12, 2026, Entrepreneur served schedules of over 300 books it intends to assert and of more than 200 additional books, most of which Meta had not yet searched for in its training data. (*Entrepreneur*, Dkt. No. 120 at 6.) Meta's own interrogatory responses identify over 300 Entrepreneur books; its magazine text-matching results, which it did not provide until September 30, 2026, identify additional Entrepreneur magazine issues in the data crawled by Meta; and Dr. Choffnes's opening report identifies more than 400 Entrepreneur books in the shadow-library collections Meta torrented. (Choffnes Rpt. ¶ 10 & n.3.)

Because only Meta knows which works it acquired and used to train its models, Entrepreneur's final list necessarily depends on Meta's disclosures.

***Amendments to Conform the Three C's Complaints.*** The Three C's respectfully request that the Court confirm the timing and procedure for the Three C's to amend their complaints to conform to the proof.

***Entrepreneur's Written Discovery.*** Meta has committed to serving verified supplemental responses to Entrepreneur's outstanding interrogatories, and Entrepreneur looks forward to receiving Meta's complete responses. On October 19, 2026, Judge Hixson granted Entrepreneur's motion to compel as to Interrogatory No. 22 and in part as to Interrogatory No. 23, and directed Entrepreneur and Meta to file a status report on Interrogatory Nos. 12 and 19 by October 26, 2026. (*Entrepreneur*, Dkt. No. 176 at 6–8.) In the joint status report, Entrepreneur asked Judge Hixson to order Meta to serve verified supplemental responses by the dates Meta has agreed to—*i.e.*, October 30, 2026, for Interrogatory No. 19 and November 6, 2026, for Interrogatory Nos. 12, 22, and 23—and to grant Entrepreneur leave to raise any issues after those responses are served. (*Entrepreneur*, Dkt. No. 178.) As Meta points out below, Judge Hixson issued an order earlier today, directing Entrepreneur and Meta to file a further joint discovery letter brief concerning any remaining disputes over these interrogatories by November 17, 2026, or otherwise notify the Court that no disputes remain. (*Entrepreneur*, Dkt. No. 179.)

***Privilege Disputes.*** Entrepreneur, the Three C's, and Meta are conferring on challenges to Meta's privilege logs under the stipulated schedule and will present any remaining disputes to Judge Hixson by November 13, 2026. (*Entrepreneur*, Dkt. No. 159.)

Additionally, the *Kadrey* Plaintiffs' joint discovery letter brief concerning Meta's AI Data Catalog redactions, which Entrepreneur and the Three C's joined, is pending. (*Kadrey*, Dkt. Nos. 847, 849, 850.) The *Kadrey* Plaintiffs expect to file a second privilege letter brief this week, which Entrepreneur and the Three C's may join. The *Kadrey* Plaintiffs, joined by Entrepreneur and the

Three C's, also expect to file a letter brief challenging Meta's recent clawbacks after the Parties meet and confer.

***Prior Reports and Testimony of Meta's Torrenting Expert.*** The *Kadrey* Plaintiffs, joined by Entrepreneur and the Three C's, request that the Court order Meta to produce all prior expert reports and deposition transcripts of Meta's torrenting expert, Barbara Frederiksen-Cross, that involve BitTorrent technology, including but not limited to her report and testimony in *In re OpenAI, Inc. Copyright Infringement Litigation*, No. 25-md-03143-SHS-OTW (S.D.N.Y.) ("*OpenAI*"). Ms. Frederiksen-Cross has served as a testifying expert for rightsholders like Plaintiffs in other cases alleging that defendants committed copyright infringement by downloading and uploading copyrighted works without authorization via BitTorrent. Based on the expert reports and/or testimony Plaintiffs have found on public dockets, Ms. Frederiksen-Cross has taken positions that are in direct tension with those taken in this action, and thus Plaintiffs have a reasonable basis for asking the Court to compel the production of relevant past expert testimony.

For example, Meta served an opening report from Ms. Frederiksen-Cross on October 2, 2026. In her report, she suggests that torrenting from shadow libraries without uploading is difficult or impossible, stating, for example, that "even applying 'simple' measures to prevent uploads could inhibit or delay any download[.]" (Frederiksen-Cross Report ¶ 85.) But recent summary judgment filings in *OpenAI* show that OpenAI did exactly that and was able to "prevent . . . sharing books back to other users while it downloaded" LibGen Fiction in a matter of days. (*See OpenAI*, Dkt. No. 1987 ¶¶ 192–224.) Notably, Ms. Frederiksen-Cross is OpenAI's torrenting expert, offering testimony in support of OpenAI to "address technical issues relevant to the acquisition of LibGen, source code, and torrenting protocols." (*OpenAI*, Dkt. No. 2131.)

Ms. Frederiksen-Cross's prior reports and testimony involving BitTorrent technology thus bear directly on the reliability of the opinions that she is now offering in this case, including whether

she has offered inconsistent opinions on the feasibility of torrenting while limiting or preventing uploading. Plaintiffs thus respectfully request that the Court order Meta to produce them promptly.

***"ML Books" Folder and Other Hyperlinked Documents.*** The *Kadrey* Plaintiffs, joined by Entrepreneur and the Three C's, request that the Court order Meta to produce documents linked to in Meta's produced documents, including documents from a Google Drive folder titled "ML Books" and ones that relate to a Meta book club that used copyrighted books possibly acquired from shadow libraries.[1] In one of these documents, a Meta employee shared a "pirated book" with another employee and stated, "i know for vellum sake this is prob very ironic." (META_EM_CCC_K_00955800.) When asked whether the book was pirated, the employee sent a link to the "ML Books" folder. (*Id.*) The employee who received the pirated book told another colleague, "bro she tryna get me fired," and that he "may need her to delete those messages." (META_EM_CCC_K_00955792.) Fair use is assessed separately for each use of a copyrighted work, so whether Meta employees used books obtained from shadow libraries for purposes other than model training (*i.e.*, for a book club) bears on Meta's defense. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023). Plaintiffs request that the Court order Meta to promptly produce the hyperlinked documents and records Plaintiffs have identified—including the "ML Books" folder's metadata, backups, version history, subfolders, and contents—and reserve the right to seek additional discovery into Meta's use of pirated books for its book club.

***Command History Files.*** The *Kadrey* Plaintiffs, joined by Entrepreneur and the Three C's, request that the Court order Meta to comply with the Court's March 2025 order and Judge Hixson's recent order requiring Meta to produce all command history files associated with its torrenting from

---

[1] *See, e.g.*, Meta_Kadrey_00039263; META_EM_CCC_K_00955800; META_EM_CCC_K_00122820; META_EM_CCC_K_01475323; META_EM_CCC_K_01922042; META_EM_CCC_K_02904024; META_EM_CCC_K_03074939; META_EM_CCC_K_03257781.

shadow libraries, and to identify whether Meta deleted any such files (by overwriting them or otherwise), and when.

In March 2025, the Court adopted the *Kadrey* Plaintiffs' "baseball arbitration" proposal for certain additional limited discovery. (*Kadrey*, Dkt. Nos. 467 (proposal), 470 (order).) It included a single request for production seeking "Documents sufficient to show the installation, usage, configuration, and operation of Torrent Clients to obtain Data from" shadow libraries, with "Documents" defined to include "command line history logs (including the .bash_history file in the user home directories of servers used for downloading data)." (*Kadrey*, Dkt. No. 467-2.) Command history files show, among other things, which software configurations Meta used to torrent and which .torrent files—and thus which copyrighted works—Meta targeted for torrenting.

Meta did not produce any command history files until one appeared in search-term results after the Court ordered Meta to run certain terms in connection with the *Kadrey* Plaintiffs' October 2025 administrative motion. After the issue was raised with Meta, it produced some, but refused to search for and produce all, command history files. The *Kadrey* Plaintiffs and Meta briefed this dispute before Judge Hixson in July (*Kadrey*, Dkt. No. 785), and he ordered Meta to comply in full with this Court's March 2025 order and produce all command history records (*Kadrey*, Dkt. No. 831). Meta still has not produced them all; critically, it still has not produced *any* command history files from any of the servers that it used during its multiple torrenting periods. (*See Kadrey*, Dkt. No. 854 at 2–3.) Plaintiffs therefore request that the Court order Meta again to promptly produce all torrenting command history files, including from all of the servers (and backups) that Meta used to torrent from shadow libraries, and order Meta to identify whether it deleted any such files and when.

***Former Meta Employee's Testimony About Books3.*** Last Friday, former Meta employee, Stephen Roller, admitted to torrenting and knowingly distributing Books3 (a dataset containing 196,000 pirated books including numerous asserted works in this case) during the same time he

was employed at Meta. He also testified that he deleted this dataset about a year ago—possibly after he was subpoenaed for the second time in this case—"[d]ue to all this litigation," as "it seem[ed] contentious to have copies of The Pile [which includes Books3]." (Roller Dep. Tr. 108:14–17.) Mr. Roller did not recall the precise date he acquired Books3, but he acknowledged the dataset was created in 2020, that he worked at Meta between 2017–2023, and that he was not employed by any other company during this time. (Roller Dep. Tr. 17:14–15; 61:16–20; 62:13–15.) He also testified that Meta had multiple copies of Books3. (*See, e.g.*, Roller Dep. Tr. 50:21–22 (stating that "Meta had **copies** of Books3 by the time" he left FAIR).) Indeed, he identified two other individuals who had likely acquired their own copies of Books3: research scientists Jacob Xu and Susan Zhang. (Roller Dep. Tr. 50:21–22; 66:8–67:23; 82:19–83:19.)

That Meta had multiple copies of Books3 with at least one copy acquired via torrenting was news to Plaintiffs. Indeed, as recently as Meta's August 24, 2026 Responses and Objections to Entrepreneur Media's Fifth Set of Interrogatories, Meta stated that it "d[id] not believe it obtained [Books3] via BitTorrent or other peer-to-peer protocol." Given Mr. Roller's testimony, Plaintiffs intend to seek clarification from Meta on its various acquisitions of the Books3 dataset, including how many copies Meta acquired and the methods through which Meta acquired them. If Plaintiffs are unable to resolve this issue with Meta, they intend to seek relief from the Court.

<u>Meta's Position:</u>

***Amendment to Conform Entrepreneur's and the Three C's Complaints.***

Meta has not been provided with any proposed amended complaint or list of works that Entrepreneur or the Three C's intend to add in their respective proposed amended complaints. Without that information, Meta cannot determine whether to object to any of the proposed amendments, or whether any of the representations above that no new discovery would be required are accurate. Given the November 6 deadline, the Court should order Entrepreneur and the Three C's to provide their proposed amended complaints, lists of asserted works, and to the

extent not already produced, all materials establishing that Entrepreneur and the Three C's possess the right to assert infringement of the proposed asserted works and copies of copyright registrations for all of the proposed asserted works. Meta requests that the Court order Entrepreneur and the Three C's to provide this information by Friday, October 30 to ensure the parties have sufficient time to meet and confer ahead of the November 6 deadline.

***Entrepreneur's Written Discovery.***

Judge Hixson has addressed this issue via an order issued today, ordering the parties to either file a joint letter brief or a notice of no disputes by November 17. (Dkt. No. 179)

***Privilege Disputes.***

As noted, there are certain privilege issues that the parties are conferring about or that are being addressed with Judge Hixson. As Meta is raising in the briefing with Judge Hixson, Meta disputes that certain of these disputes are properly raised by Kadrey, as they relate to documents produced pursuant to discovery requests from EM and the Three C's.

***Prior Reports and Testimony of Meta's Torrenting Expert.***

The Court should reject Plaintiffs efforts to seek expert reports and testimony from unrelated matters that do not involve Meta. First, Judge Hixson already rejected the Three C's efforts to seek this information from third party OpenAI. Case No. 3:26-cv-02333-VC, Dkt. No. 131 at 6-7 (denying request for "All expert reports. . . [and] testimony … prepared by, for, reviewed by, considered by, relied upon by, submitted by, or attributed to Barbara Frederiksen-Cross in In Re: OpenAI, Inc. Copyright Infringement Litigation, 1:25-md03143, (S.D.N.Y.)" because "[t]he Court does not see the utility of rummaging around in the MDL for the items requested in 6."). The Three C's did not object to this portion of Judge Hixson's Discovery Order, so that ruling is final.

Second, Meta does not have possession, custody or control of expert reports and deposition transcripts from Ms. Frederiksen-Cross's expert testimony in cases that did not involve

Meta.[2] Moreover, those expert reports and deposition transcripts would likely be the subject of (1) protective orders entered into those cases and (2) potential contractual confidentiality obligations that Ms. Frederiksen-Cross may have with the non-Meta parties that retained her in those matters. In fact, Ms. Frederiksen-Cross's expert work in the OpenAI matter was filed under seal in that matter because it contained confidential information, under the Protective Order in that litigation, of OpenAI and other third-parties. *OpenAI*, Dkt. No. 1703 (Letter Motion to Seal seeking to seal Frederickson-Cross report and explaining that "These materials contain or reflect Protected Discovery Materials designated by OpenAI or other parties (and third-parties)"; *see also* Dkt. 2131-1 (excerpts of Frederiksen-Cross report filed under seal). Thus, production of those reports and transcripts from unrelated cases would appear to implicate the confidential information of numerous third parties, including OpenAI, and those parties would need to be heard to address any confidentiality or relevance concerns they may have.

Third, Plaintiffs' purported relevance arguments fail, as they have not shown that there were any inconsistent statements by Ms. Frederiksen-Cross. The cited paragraphs from the MSJ papers in the OpenAI case do not reference Ms. Frederiksen-Cross, and the statement quoted above from the OpenAI summary judgment papers is a statement citing a declaration of Plaintiffs' expert, Dr. Choffnes. *OpenAI*, Dkt. No. 1987 ¶¶ 192–224) (citing Choffnes Decl. Ex. A ¶¶ 127, 129). Nothing in that quoted text is attributed to Ms. Frederiksen-Cross.

***"ML Books" Folder and Other Hyperlinked Documents.***

Throughout this matter, Meta worked with Plaintiffs to address reasonable requests for relevant and responsive hyperlinked documents identified in materials Meta produced. However, at some point discovery must end. Here, Plaintiffs' argument focuses on hyperlinks from two

---

[2] Ms. Frederiksen-Cross has only provided expert testimony for Meta on torrenting related issues in these related matters. Kadrey, Entrepreneur and the Three C's already have her prior expert reports and testimony from those matters.

documents - META_EM_CCC_K_00955800 and META_EM_CCC_K_00955792 - which were produced August 17, 2026. Plaintiffs first requested these hyperlinks on October 9, 2026 - more than a month after discovery closed, and over three weeks after the deadline to raise discovery disputes. L.R. 37-3. These requests, along with Plaintiffs' requests for additional links from the documents listed in the footnote, are simply too late. All of the identified documents were produced before the close of fact discovery, including one that was produced in July 2024 in the Kadrey matter, nearly 2.5 years ago. As a courtesy, Meta has agreed to produce specific hyperlinks requested from two of the documents in the footnote (Meta_EM_CCC_K_00122820 and META_EM_CCC_K_02904024), as the request was less untimely than the requests received on October 9. The hyperlinks requested in two of the footnoted documents were previously logged as privileged (META_EM_CCC_K_03074939 and META_EM_CCC_K_03257781).

Regarding Plaintiffs' assertions about "ML Books" that were raised for the first time to Meta via this status report, Meta is investigating Plaintiffs' assertions and will confer with Plaintiffs when Meta has more information to share. Meta notes this issue could have been raised much earlier as the cited documents were produced on August 17, 2026, several weeks before fact discovery closed.

***Command History Files.***

Kadrey mischaracterizes the facts about this issue. On September 11, 2026, Judge Hixson issued an order on Kadrey's July 31, 2026 letter brief that addressed a dispute between Kadrey and Meta over the production of "command history files." Even before that Order, Meta had voluntarily produced a significant number of command history files to Kadrey. Following the entry of Judge Hixson's Order, Meta has been diligently searching for and producing on a rolling basis additional command history files as it identifies them. Kadrey's assertion that Meta has not produced responsive materials from servers associated with torrenting is incorrect, as Meta has produced substantial quantities of logs that detail the commands that were run on those servers. Meta is

diligently continuing its searches through backups of computers and server files and will continue to produce responsive materials promptly as they are discovered on a rolling basis.

Kadrey's request that Meta explain any alleged deletion of command history files was not part of the relief sought in Kadrey's July 31, 2026 letter brief (Dkt. No. 785) and was not part of any relief ordered by Judge Hixson (Dkt. 831). Nor is there any factual basis for Plaintiffs to assert that any command history files were "deleted." The Court should not entertain Kadrey's untimely request to amend its discovery motion or Judge Hixson's discovery order.

Finally, to the extent Entrepreneur and the Three C's join this request, it is untimely, as they did not move to compel any of this information or seek to join Kadrey's July 31 letter brief prior to the discovery motion deadline.

***Former Meta Employee's Testimony About Books3.***

This status report is the first time that Plaintiffs have raised these alleged concerns with Meta, which are not supported by Mr. Roller's deposition testimony. As requested by Plaintiffs, Meta will confer with them regarding their assertions. Mr. Roller testified that he did not know when he downloaded a copy of the "The Pile" via torrent, and did not testify that his download of the "The Pile" was for Meta or at Meta, noting it could have been for himself or for another employer. Nothing in Mr. Roller's testimony established that Mr. Roller's download of The Pile was ever in Meta's files. Mr. Roller also did not testify it was "likely" that Meta downloaded multiple copies of Books3, as he said he did not know if more than one copy was downloaded. Roller Tr. (Rough) 29:14-18. Contrary to Plaintiffs' assertions above, Mr. Roller also testified that he did not know whether Susan Zhang or Jacob Xu downloaded Books3. Roller Tr. (Rough) 32:19-21 ("Q. Do you know whether Susan Zhang also acquired Books3? A. I don't."); 33:18-19 ("Q. Okay. What about Jacob Xu? A. I don't recall Jacob Xu acquiring Books3.") Mr. Roller's uncertainty about all of these questions is not surprising, as he has not worked at Meta since January 2023, and has been employed by three different companies working on AI products

since leaving Meta. Regarding Mr. Roller deleting a copy of the Pile about one year ago (more than two years after leaving Meta), his testimony was clear that he personally decided to delete this copy that was located on his personal computer because he "didn't need it, so [he'd] rather not have it." .Roller Tr. (Rough) 105:4-8.

Dated: October 27, 2026

By: /s/ *Maxwell V. Pritt*

BOIES SCHILLER FLEXNER LLP
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
Jay Schuffenhauer (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com
jschuffenhauer@bsfllp.com

Joshua I. Schiller (SBN 330653)
David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
jischiller@bsfllp.com
dsimons@bsfllp.com

*Counsel for Richard Kadrey, et al.*

By: /s/ *Moez M. Kaba*

HUESTON HENNIGAN LLP
Moez M. Kaba (SBN 257456)
Michael M. Purpura (SBN 338216)
Lee Linderman (SBN 280743)
Stephanie Xiao (SBN 340141)
Taiyee Chien (*pro hac vice*)
523 West 6th Street, Suite 400

By: /s/ *Phillip E. Morton*

DUNN ISAACSON RHEE LLP
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
401 9th Street NW
Washington, DC 20004
kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

COOLEY LLP
Mark R. Weinstein (SBN 193043)
Elizabeth Lee Stameshkin (SBN 260865)
3175 Hanover Street
Palo Alto, CA 94304
mweinstein@cooley.com
lstameshkin@cooley.com

COOLEY LLP
Bobby A. Ghajar (SBN 198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
bghajar@cooley.com

COOLEY LLP
Phillip E. Morton (*pro hac vice*)
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
pmorton@cooley.com

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning (SBN 212047)
151 University Avenue
Palo Alto, CA 94301-1632
(650) 815-4131
adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

Los Angeles, CA 90014
(213) 788-4340
mkaba@hueston.com
mpurpura@hueston.com
llinderman@hueston.com
sxiao@hueston.com
tchien@hueston.com

NEWMEYER & DILLION LLP
Michael B. McClellan (SBN 241570)
Benjamin P. Pugh (SBN 202025)
Jason L. Morris (SBN 295271)
Harlye S. Carlton (SBN 261641)
895 Dove Street, Second Floor
Newport Beach, CA 92660
(949) 854-7000
michael.mcclellan@ndlf.com
benjamin.pugh@ndlf.com
jason.morris@ndlf.com
harlye.carlton@ndlf.com

*Counsel for Plaintiff Entrepreneur Media, LLC*

By: /s/ *Lauren Martin*

STRIS & MAHER LLP
Elizabeth Brannen (SBN 226234)
John Stokes (SBN 310847)
Lauren Martin (SBN 294367)
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
ebrannen@stris.com
jstokes@stris.com
lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW Ste 900
Washington, DC 20006
crigali@stris.com
jsahlberg@stris.com

FREEDMAN NORMAND FRIEDLAND LLP
Devin (Velvel) Freedman (*pro hac vice* forthcoming)
vel@fnf.law
Kyle Roche (*pro hac vice* forthcoming)
kroche@fnf.law
Alex Potter (*pro hac vice* forthcoming)

apotter@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017

*Counsel for Plaintiffs Chicken Soup for the Soul, LLC, and Cognella, Inc., and the Cambronne Plaintiffs*

**ECF ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I hereby attest that counsel for the Parties in the above-captioned matters concur in the filing of this document.

*/s/ Lee Linderman*