November 3, 2026

***E-Filed***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC
*Entrepreneur Media, LLC v. Meta Platforms, Inc.*; Case No. 3:25-cv-09579-VC
*Cognella, Inc. v. Meta Platforms, Inc.*; Case No. 3:26-cv-04053-VC
*Cambronne, Inc. v. Meta Platforms, Inc.*; Case No. 3:26-cv-03725-VC
*Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*; Case No. 3:26-cv-02333-VC

Dear Judge Hixson:

The Parties respectfully submit this joint letter brief related to certain documents Meta has fully withheld or redacted based on attorney-client privilege since the close of fact discovery in *Kadrey*, Plaintiffs' argument that Meta has waived privilege over two subjects, and two Meta clawbacks. The Parties have met and conferred repeatedly since April 2026, and while they resolved disputes over certain documents, they were unable to reach resolution on the remaining issues addressed herein.

## I. PLAINTIFFS' POSITION

Plaintiffs respectfully request that the Court review *in camera* 14 documents—12 that Meta has partially redacted based on attorney-client privilege and two that it recently clawed back in full after Plaintiffs quoted it in this brief (the "Challenged Documents"). *See* Ex. 1. None of these documents' log entries contain an identified attorney (except one clawback that identifies two in-house counsel as the "legal source"), nor do they involve attorneys on their face. And none of the documents appear to contain requests for, or the provision of, legal advice. Instead, they concern non-attorneys opining on potential legal-related issues or risks, and discussions about non-legal business/compliance issues and corporate decision-making or policies. Plaintiffs also submit that Meta has waived any attorney-client privilege over (1) its approvals (and disapprovals) for Books3, LibGen, and Anna's Archive, and (2) its basis for those decisions, including the decision to justify those actions as fair use. Plaintiffs request the Court order Meta to produce all of the communications and documents that it is withholding or has redacted that reference these subjects.

**Background and Two Recent Meta Clawbacks.** Plaintiffs first raised concerns about certain of Meta's privilege log entries on April 27, 2026. *See* Ex. 2.[1] The parties conferred for months on a document-by-document basis, and Plaintiffs eventually served their portion of a joint letter brief on August 14. Rather than providing their portion, Meta responded on September 1 and offered to revisit some of the challenged claims. After Meta finally starting re-producing some of the challenged documents on October 5, Plaintiffs provided their portion of a revised joint letter brief covering certain remaining disputes on October 14. Two days later, Meta clawed back one of Plaintiffs' exhibits, including a key portion of **Log 146** (on top of pre-existing redactions) that the parties have been specifically conferring about since April.[2] Then, two days after that, Meta clawed back the entirety of another document, META_EM_CCC_K_03085838, which was not redacted and Plaintiffs had quoted as an example of Meta's selective disclosures. When a producing party claws back documents, Rule 26(b)(5)(B) provides that any party may "promptly present the information to the court under seal for a determination of the claim." Under the plain language of Rule 26(b)(5)(B), no *prima facie* showing is required, and *in camera* review is the default. Plaintiffs thus request the court review META_EM_CCC_K_03085838 *in camera*.

**Category #1 (Non-Attorney Discussions About the Law)**: Meta continues to redact non-attorney discussions of the potential legality or illegality of Meta's activities, including torrenting and uploading copyrighted works. But non-attorney communications, even when related to potential legal issues or possible future attorney-client privileged communications, are *not* privileged. *See*, *e.g.*, *In re Novalpina Cap. Partners IGP S.a.r.l.*, 773 F. Supp. 3d 1058, 1066 (D. Or. 2025) (non-attorney communications are privileged only "if they are seeking or relaying

---

[1] These privilege logs were served in connection with discovery after the December 2024 cutoff.

[2] With respect to **Log 146** (Ex. 3), Meta reversed its clawback when it served its portion of this brief, again producing the text "legal…approved it [LibGen] in the end," while keeping the surrounding context—on the same subject—redacted. This alone reveals Meta's purported line drawing around "legal's" approvals is a fiction and constitutes subject matter waiver on the discrete issue of Meta's shadow library approvals, as discussed below. Further, assuming arguendo that the fact of whether "legal" approved a given dataset is primarily legal advice (it is not), Meta provides no support for its newfound assertion that references to whether "legal" approved a dataset at a given time was ***not*** co-extensive with whether the dataset was thus approved by Meta.

confidential information on behalf of an attorney"); *Illumina Inc. v. BGI Genomics Co*., 2021 WL 2662074, at *4 (N.D. Cal. June 29, 2021) ("A businessperson's statement that the company needs to assess legal risk as part of its SWOT analysis is not privileged."); *In re OpenAI Copyright Infringement Litig.*, 802 F. Supp. 3d 688, 696 (S.D.N.Y. 2025) ("privilege cannot be based on the mere discussion of potential legal issues between non-attorney employees"); *Charleston Medical Therapeutics, Inc. v. AstraZeneca Pharmaceuticals LP*, 2015 WL 12805686, at *2 (D.S.C. 2015) ("communications between two non-attorney employees that reference or even discuss legal issues are not inherently privileged; only communications with attorneys for the purpose of seeking legal advice are privileged").

**Log 5**[3] (Ex. 4) is a redacted document reflecting a non-attorney sharing a collaborative "Legal Risks" document with other non-attorneys. The only redactions are messages from two non-attorneys. Meta has argued the document was compiled for in-house counsel, but not that the redactions reflect legal advice, and Meta would not confirm it was ever sent to counsel. **Log 74** (Ex. 5) involves a non-attorney stating "we should check with legal [redacted]" amid discussion of lawsuits against Anna's Archive. Non-attorneys suggesting *maybe* talking to in-house counsel about something is not an attorney-client communication, let alone one that primarily concerns seeking or giving legal advice. **Log 16** (Ex. 6) involves a non-attorney telling other non-attorneys "we should really push legal to [redacted]." Again, non-attorneys discussing a possible course of action—and potentially the need to later seek input from in-house counsel—is not the same as seeking or giving legal advice. **Log 121** (Ex. 7) is also a non-attorney discussion about the legality of torrenting books. In particular, the non-attorneys mention maybe "contact[ing] the lawyers" and the need to "make an srt [legal review] task," but there is no actual attorney-client communication involved and they are not discussing the substance of any legal advice from a lawyer. **2/12/25 Log 115** (Ex. 8) involves redacted discussion of "improved IP avoidance tuning" and memorization measurements, and a non-attorney states: "We should probably also tee up a PXFN review." This is not a communication with in-house counsel. Further, Meta's PXFN team includes non-attorneys and is a business and compliance function at Meta, so regardless it does not primarily concern legal advice. **2/12/25 Log 222** (Ex. 9) includes large sections of redacted text without any indication that the subject matter is primarily legal advice. Rather, it contains non-attorneys discussing a deadline to select datasets for Llama 3. That business/technical issue is not rendered privileged merely because Meta claims it was also sent to in-house counsel that Meta involves in its processes. Indeed, Meta recently produced similar non-attorney business discussions about the use of Anna's Archive and LibGen with Llama 4, given company-imposed deadlines. *See* Ex. 10 at -819. Finally, **Log 97**[4] (Ex. 11) includes redactions over discussion about "pushing" non-attorney Sean [Bell] to "[redacted] legal [redacted]." A non-lawyer talking about pushing another non-lawyer to urge legal to do or not do something is not a request for legal advice and is not privileged. Other examples of documents in this category include Logs 115 (Ex. 12), 118 (Ex. 13), and 3/21/25 Log 14 (Ex. 14).

**Category #3 (High-Level Approvals/Business Decisions):** At least one document on Meta's privilege log appears to reflect only high-level decisions involving in-house counsel that Meta adopted as business decisions, such as approvals and "blocking" of content, rather than any actual legal advice. *See* **Log 146** (Ex. 3). This Court previously rejected similar privilege assertions by Meta, holding Meta's *actions*—as opposed to legal analysis and advice that informed them—

[3] Unless otherwise specified, references to log entries refer to Meta's 2/27/26 Privilege Log.
[4] Plaintiffs challenge only the second redaction in Log 97.

are not privileged. *See* Dkt. 627 at 2 (no privilege over redactions that "do[] not contain legal advice or a request for legal advice" but instead "was just implementing a business compliance policy"); Dkt. 389 at 3 (rejecting privilege over questions "about an action Meta took, not about why Meta took it"). Similarly, "[c]ourts have perceived a difference between an opaque reference to an attorney's advice"—e.g., getting a thumbs up (or down)—"and disclosure that illuminates the facts and analysis underlying that advice." *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999). *See also In re Dealer Mgmt. Sys. Antitrust Litig.*, 2020 WL 7865915, at *2 (N.D. Ill. Mar. 30, 2020) ("reference to a 'Legal approved response' does not transform this discussion into [a privileged one]"); *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, at *15 (S.D.N.Y. Aug. 28, 2008) ("document reflecting [attorney] approval of a denial of coverage" is not privileged).

Here, as above, mere references to a legal department's or team's approval or disapproval are not privileged. Further undercutting Meta's privilege assertions, a recently-produced document from one of the Meta employees who downloaded and torrented copyrighted works from LibGen describes the company's decision to pirate works instead of buying or licensing them as a "business decision." Ex. 15.

**Category #5 (Subject Matter Waiver):** Meta has selectively disclosed communications about (1) its approvals and disapprovals relating to pirated datasets, and (2) the basis for those decisions, including its reliance on fair use to justify its copying of pirated works. Meta should not be permitted to withhold less favorable communications about those issues, and the Court should order their production. "[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *see also Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996) (the "principal purpose [of the waiver doctrine] is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable").

**Meta's Selective Disclosure of Approval Decisions.** Meta recently produced a screenshot showing it originally did not approve LibGen. *See* Ex. 16 (re: "libgen," "Decision: Not to be used since this dataset includes copies of books from publishers which we don't have the license to use, but are in current talks to purchase these licenses"). Meta has also now produced documents that reflect "legal's" subsequent approval of LibGen and Books3. *See* Ex. 17 at -322 ("After talking with Legal (Ahuva), she requested the team to send you an email for approval. Llama 3 is approved for usage . . . ."); Ex. 18 ("[b]ecause there is no license associated with this dataset [Bibliotik, from which Books3 is derived]," legal "recommended we avoid this dataset for now."). Yet, in other documents, Meta redacts analogous communications concerning the same subject matter. The redacted content in **Log 146** (Ex. 3) appears to concern Meta's successive decisions on LibGen.[5] In another document, an employee says "we need this Books3 corpus," with another non-lawyer "agree[ing] we need this thing" but "the lawyers had said [redacted]." Ex. 19. Meta cannot

[5] As discussed above, Meta recently clawed back additional context surrounding the redaction that Plaintiffs have been challenging for months. While this newly clawed-back context is not privileged and Meta's clawback is also improper for the reasons set forth above, the clawback has prevented Plaintiffs from discussing the content and its evidence of waiver.

selectively withhold references to its (shifting) approvals for Books3, LibGen, and Anna's Archive in some documents while disclosing them in others, regardless of whether they involve "legal."

**Meta's Selective Disclosure of the Basis for Its Approval Decisions.** In addition to the approval decisions themselves, Meta has also selectively disclosed the underlying basis or rationale for them, thereby waiving any attorney-client privilege over that subject too. Meta has produced some documents reflecting its decisions to justify its pivot from not approving acquiring and copying pirated copyrighted works to later approving them as fair use. *See* Ex. 20 ("For Anna's archive, which is our main source of books, we just downloaded them and use the data under fair use."). Meta also has now selectively injected its decision to later pivot *back* to again not approving those shadow libraries and relying on fair use, recently producing a slide deck calling them "Unsafe" and "Not okay" based on Judge Alsup's fair use decision in *Bartz v. Anthropic*, and citing that decision as the basis for "Project Vellum," a large-scale purchase and scan program. *See* Ex. 21 (e.g. at 5, asking "Why book scanning?" and disclosing the reasons, including *Bartz* holdings and that Meta has "decided that we will no longer use Unsafe book datasets").[6] Yet, in **3/21/25 Log 16** (Ex. 22 at -568), Meta produced only the statement, "Today, we rely on fair use as a defense to copyright claims where we are making copies/training models in the US,"[7] while redacting the rest of that paragraph and everything else in the same "IP Background" section.[8] Similarly, Meta has withheld information concerning the rationale(s) for pivoting back to not approving shadow libraries and relying on fair use. *See* Exs. 23 (Kambadur 7/14/26 Dep. Tr. 139:8-22: refusing to answer why Meta began buying and scanning books instead of continuing with piracy), 24 (Wang 8/10/26 Dep. Tr. 194:15-195:9: same).[9]

Meta's "injection of protected information into the litigation in a selective, misleading and unfair manner" is exactly the kind of disclosure that this Court held would waive the attorney-client privilege. *See* Dkt. 701 at 3. The Court should hold so now. Plaintiffs request that the Court order Meta to produce all of the communications and documents it is withholding or has redacted that refence (1) Meta's approvals (and disapprovals) for Books3, LibGen, and Anna's Archive; and (2) Meta's basis for those decisions, including its decision to justify those actions as fair use.

## II. META'S POSITION

---

[6] Meta's other recent clawback, META_EM_CCC_K_03085838, reflects the same subject matter, further illustrating Meta's selective and inconsistent assertions of privilege over the rationale underlying Meta's decision to halt its use of pirated works and shift to Project Vellum.

[7] Meta has argued this tracks its public assertions of fair use, but that is irrelevant to the waiver analysis. *See Electro Sci. Indus. v. Gen. Scanning*, Inc., 175 F.R.D. 539, 543 (N.D. Cal. 1997) ("[T]he fact that a party takes a position in a pleading that is consistent with advice that party received in confidence from its attorney is irrelevant to waiver analysis. Waiver analysis focuses on the disclosure of the content of specific communications between counsel and client—and a pleading would not effect a waiver unless the pleading disclosed specific lawyer-client communications, even if the substance of the pleading tracked what a lawyer had confidentially advised the client.").

[8] Meta later produced an entirely unredacted version of this document, which it has clawed back. Meta also recently clawed back other documents that are encompassed by the relief sought.

[9] Plaintiffs do not know which of Meta's withheld and redacted documents concern this subject matter because Meta's privilege descriptions are *ipse dixit* and do not identify specific subjects.

Plaintiffs' latest attempt to challenge Meta's privilege claims should be rejected. Plaintiffs raise meritless challenges to a handful of entries on Meta's privilege logs, challenge Meta's clawbacks of two documents, and separately argue for a broad waiver of attorney client privilege with no basis in law to do so.

**Category #1**: Plaintiffs challenge five entries on Meta's February 27, 2026 Privilege Log as comprising "non-attorney discussions about the law." However, each of these entries discusses specific legal advice provided by attorneys, specific questions to ask attorneys, and/or information needed by attorneys to facilitate the provision of additional legal advice. All of these are properly covered by the attorney-client privilege, and the redactions Meta applied are appropriate and supported.

*Log Entry 5* (Meta_Kadrey_00243528, Ex. 4): As the Court may recall, in connection with an earlier failed privilege challenge (ECF 705), Ms. Melanie Kambadur previously provided a declaration explaining that as part of her responsibilities at Meta, she often acted as a liaison between attorneys and members of the FAIR and GenAI teams. (ECF 695-8 ¶¶ 3-5.) Here, Ms. Kambadur shares a link to a document referred to as a "legal risks doc" with other members of her team, stating: "Another set of ***questions*** came up in this legal risks doc." (Ex. 4 at 243528 (emphasis added).) The linked document has been withheld as privileged, as it contains legal advice from a Meta attorney, Ahuva Goldstand, and was logged in Meta's October 7, 2024 Non-Email Privilege Log as Entry 312. The redacted portion of Ms. Kambadur's statements at 10:05:49 PST repeat specific questions from Ms. Goldstand. The remaining redacted portions of this text discuss these specific questions from Ms. Goldstand.

*Log Entry 74* (Meta_Kadrey_00255097, Ex. 5) and *Log Entry 16* (Meta_Kadrey_00243570, Ex. 6): The redactions in these documents comprise specific questions that the team intends to present to Meta's Legal team. "Communications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege." *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) (upholding privilege on documents where party showed "intention to seek legal advice" on certain matters); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) ("internal communications that reflect matters about which the client intends to seek legal advice are protected" as these are "comparable to notes a client would make to prepare for a meeting with a lawyer"). Here, the intention to seek legal advice is clear from the unredacted portions of these challenged documents.

*Log Entry 121* (Meta_Kadrey_00254958, Ex. 7): Plaintiffs incorrectly characterize this document as a "non-attorney discussion about the legality of torrenting books." Rather, the non-attorneys are explicitly referring to advice provided by Meta's Legal department regarding use of a dataset. Such communications are privileged, and appropriately redacted.

*Log Entry 97* (Meta_Kadrey_00255135, Ex. 11): For Exhibit 11, Plaintiffs challenge only the second redaction in this document. However, both redactions reflect ongoing communications between Sean Bell and Meta's Legal department. The second redaction, where Mr. Frank Zhang explains that he was "pushing Sean" with respect to a "legal" issue, both reflects the contents of Mr. Bell's ongoing discussions with lawyers, and also demonstrates an intent to seek legal advice (which, as explained above, is privileged).

*Log Entry 115* (Meta_Kadrey_00254939, Ex. 12), *Log Entry 118* (Meta_EM_CCC_K_03252179, Ex. 13): In Exhibit 12, Mr. Stephen Roller recounts advice obtained from Meta's Legal department

to Mr. Andrew Poulton. Similarly, in Exhibit 13, Mr. Roller discusses ongoing communications with Meta's Legal department with Ms. Mary Williamson. This information is privileged.

Plaintiffs also challenge two entries on Meta's February 12, 2025 Privilege Log and one entry on Meta's March 21, 2025 Privilege Log as also comprising "non-attorney discussions about the law." These challenges were first identified by Plaintiffs more than a year after service of this log. Any challenges to this log are untimely; Plaintiffs' challenges here are also meritless.

*2/12/25 Log Entry 115* (Meta_Kadrey_00235737, Ex. 8) and *2/12/25 Log Entry 222* (Meta_Kadrey_00235483, Ex. 9): In Exhibit 8, Ms. Kambadur's redacted statements reflect ongoing communications between her and Meta's Legal department, and an intent to have additional communications with them, including Ms. Ahuva Goldstand, a Meta attorney. The unredacted communications - such as setting up a "PXFN review" - further demonstrate the intent to discuss specific issues with Legal. Similarly, in Exhibit 9, Ms. Kambadur provides information relating to her ongoing communications with Meta's Legal department. As explained above, Ms. Kambadur acted as a liaison between attorneys and members of the FAIR and GenAI teams. (ECF 695-8 ¶¶ 3-5.)

*3/21/25 Log Entry 14* (Meta_Kadrey_00237329, Ex. 14): Finally, in Exhibit L, Meta has surgically redacted portions of a chat where Mr. Guillaume Lample refers to specific communications with Meta's legal department. Such communications are privileged.

**Category #3:** Plaintiffs next challenge a single document as purporting to reflect only "high-level approvals/business decisions," (Log Entry 146, Meta_Kadrey_00243515, Ex. 3). However, the unredacted portion of the text demonstrates that Mr. Simon Vandenhende was explaining that "there's been a lot of discussions with legal" and then refers to specific information from those discussions. The redacted portions do not refer to merely the outcomes of "high-level approvals" or "business decisions," but rather to specific guidance from Meta's Legal department. Such communications are privileged.

**Category #5: Waiver**: Finally, Plaintiffs groundlessly contend that Meta waived its privilege with respect to "(1) its approvals and disapprovals relating to pirated datasets, and (2) the basis for those decisions, including its reliance on fair use to justify its copying of pirated works." Plaintiffs cite to a variety of documents to argue that Meta has been "selectively" providing information regarding its approvals of datasets and its reliance on fair use to suggest that the Court find Meta has waived privilege as to its attorney client communications on these topics. This argument fails because the unredacted statements in Meta's documents, upon which Plaintiffs rely to assert waiver, are not privileged. "Disclosure of a non-privileged communication cannot, by definition, waive privilege with respect to privileged communications." *Abbott Labs. v. Andrx Pharms*, 2006 WL 2092377, at *4 (N.D. Ill. July 25, 2006).

For example, Plaintiffs cite an unredacted sentence in Log Entry 16 from Meta's March 21, 2025 Privilege Log (Ex. 22), that "[t]oday, we rely on fair use as a defense to copyright claims where we are making copies/training models in the US." (Ex. 22, at -568.) But Meta's reliance on a fair use defense is not privileged. In fact, by September 2023, more than two months ***before*** this document, Meta had already publicly stated in this case that use of texts to train its Llama models was "quintessential fair use." (Meta Motion to Dismiss, ECF 23, at 2.) The other document cited by Plaintiffs referring to "fair use" (Ex. 20) is more than 10 months after Meta's motion to dismiss and more than six months after Meta filed its answer asserting fair use as an affirmative defense. (ECF 72.) But putting timing issues aside, as noted, the mere fact that Meta is relying on fair use

is broadly known publicly and not privileged, so generic unredacted references to "fair use" in documents produced by Meta cannot effectuate a privilege waiver.

Plaintiffs' case law does not help them. In *Electro Sci. Indus. v. Gen. Scanning*, Inc., 175 F.R.D. 539, 543 (N.D. Cal. 1997), an alleged patent infringer issued a press release stating that it had received advice of counsel that the patents-in-suit were invalid based on prior art not cited to the patent office. *Id.* at 542. The press release in that case, in other words, "voluntarily disclosed an important, substantive component of a *communication* from counsel," and further disclosed "that the lawyer had advised the client, in presumptive confidence," of that invalidity position. *Id.* at 543 (emphasis in original). Plaintiffs here point to no comparable public statements by Meta.

Nor is there any merit to Plaintiffs' attempt to manufacture a purported inconsistency in how Meta has produced or redacted statements relating to "approvals." This argument misapprehends the nature of the privilege inquiry; each statement must be evaluated on its own merits, based on who was involved in the communication and its subject matter. Context matters, and it is entirely appropriate that some statements about a broad topic such as dataset approvals will be privileged while others are not. Disclosure of the non-privileged communications about such a topic, obviously, cannot waive privilege as to the privileged ones. *See, e.g., Dodge v. Gomes*, 2020 WL 6874878, at *2 (W.D. Wash. Nov. 23, 2020) (holding that disclosure in discovery of non-privileged documents about an investigation did not waive privilege as to privileged documents about that investigation, as "disclosure of non-privileged documents does not result in waiver."). For example, as demonstrated below, Meta has ***not*** claimed privilege over communications about ultimate dataset approvals that also reflect input from non-legal business and policy teams. But with respect to ***specific legal reviews*** of particular issues by Meta's in-house lawyers, these reflect legal advice that was sought and obtained from counsel on a particular issue, and thus are privileged. Plaintiffs' broadside, unsupported assertion that redactions about approvals were applied "selectively" across statements that are not comparable to each other does not establish, let alone show, a subject matter waiver. To the contrary, Meta's particularized invocation of privilege is consistent with the nuanced and case-by-case assessment that the attorney-client privilege demands.

Plaintiffs' cited documents confirm the lack of any waiver. For example, in Exhibit 17 (Meta_Kadrey_00209314), Meta did not redact communications regarding business processes - such as an attorney asking that the team approach Ms. Pineau (the Vice President in charge of FAIR at the time) for approval to use a dataset. Meta similarly did not redact non-legal considerations regarding dataset approvals from this document (such as policy risks, or necessary mitigations) or the various types of approval Ms. Pineau could provide. Rather, Meta redacted solely the "Legal Risks" section, which provided advice from Legal regarding this dataset. This demonstrates Meta's careful, surgical approach to its privilege claims. Similarly, Exhibit 19 redacts only the information provided by the "lawyers" - not information regarding an overall business approval decision.

Further, Exhibits 16, 18, and 21 have no clear indications on their face that the information cited therein was provided by attorneys; absent such indications, Meta did not withhold their contents. With respect to Exhibits 16 and 18, Meta initially withheld these documents as privileged but ultimately agreed to produce them after multiple meet and confers with Plaintiffs. Having demanded production on the ground that these documents were not privileged, Plaintiffs now reverse course and contradict their prior position, arguing that the documents do contain legal advice and Meta has therefore waived privilege over their subject matter. But Plaintiffs' waiver

argument ignores the procedural posture of these productions. Meta produced these documents on October 5, 2026 at the request of Plaintiffs, in an effort to reduce privilege disputes - not to make "selective" disclosures. Meta also did so in reliance on the 502(d) protections of the Parties' Amended Protective Order, which explicitly states that the production of attorney-client privileged information - "inadvertent or otherwise" - is not a waiver of the privilege in this case or any others. Meta's production of these documents, over which it does not claim privilege and as a compromise with Plaintiffs, waives no privilege or protection. It is remarkable that Plaintiffs now rely on documents they themselves demanded, produced with a 502(d) order in place, to assert that Meta *intentionally* waived privilege. As Meta is not asserting privilege over these documents, their production does not effectuate any waiver.[10] With respect to Exhibit 21, Meta investigated the slide in question and confirmed that it was authored by a non-attorney relying on publicly available information, not on legal advice.

Finally, the "doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness," *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996), and there is nothing unfair about upholding Meta's privilege claims here. Meta is not relying on an "advice of counsel" defense in this matter, and this is not a case in which Meta has attempted to use the privilege as both a sword and shield by "injection of protected information into the litigation in a selective, misleading and unfair manner." (ECF No. 701 at 3, rejecting prior waiver argument by Plaintiffs in part because Plaintiffs "are missing a sword.") As noted, because the statements upon which Plaintiffs rely to show waiver are not even privileged, Plaintiffs cannot claim that Meta has selectively invoked the attorney-client privilege. Plaintiffs' request for a finding of waiver should be denied.

**Plaintiffs' Clawback Challenges:**

Plaintiffs challenge several recent clawbacks by Meta.

First, Plaintiffs challenge Meta's clawback of META_EM_CCC_K_03085838. As a threshold matter, Kadrey Plaintiffs lack standing to challenge this clawback. This document was produced on September 4, 2026, as part of Meta's productions to Entrepreneur Media and the 3C-Plaintiff cases in response to discovery propounded in those cases. A copy of the document was provided to the Kadrey Plaintiffs only by virtue of the Court's order directing Meta to share discovery across the related cases. (ECF No. 736, 41:12-15.) The Court also made clear that the Kadrey Plaintiffs were not permitted to serve additional discovery or participate in depositions absent express Court order. (*Id.* 31:11-14.) Under Rule 37, only the "party seeking discovery," *i.e.*, in this case Entrepreneur Media or the 3C-Plaintiffs, has standing to move to compel with respect to this document. *See* Fed. R. Civ. P. 37(a)(3)(B); *see also Loop AI Labs v. Gatti*, 2016 WL 4474584 at *8 (N.D. Cal. Aug. 25, 2016) ("under Rule 37(a) ... a party lacks standing to move to compel answers to a different party's discovery requests"); *Progressive Speciality Ins. v. Tiffin Motor Homes*, 2019 WL 956794, at *1 (D. Idaho Feb. 27, 2019) (denying motion to compel on requests

[10] This is in contrast to the "purposeful decision to disclose otherwise privileged materials" in Plaintiffs' cited case, *Thomas*, 690 F. Supp. 3d at 961, where the plaintiffs disclosed a report by an attorney and relied on it in their defense. Plaintiffs' other cited case, *In re Pac. Pictures Corp.*, 679 F.3d at 1129, concerns the selective waiver of materials provided in full to the government in response to a grand jury subpoena, and later over which the producing party claimed privilege in a civil litigation. This is similarly inapplicable to the facts here, where Meta has attempted to make careful privilege calls based on the specific contents and context of each document.

propounded by another party because "[b]oth the Ninth Circuit and the plain language of Rule 37 make clear that only the 'party seeking discovery' has standing to move to compel compliance with a discovery request.") (citing *Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997)). The Kadrey Plaintiffs thus lack standing to move to compel this document.

But even on the merits, and with respect to Entrepreneur Media and the C-Plaintiffs' belated joinder to the Kadrey Plaintiffs' brief on reply after Meta raised this standing issue,[11] the clawback should be upheld. Plaintiffs incorrectly assert that "[t]he primary purpose of this document is not legal advice and it cannot be withheld in its entirety, and any privilege over Meta's approvals for pirated data, and the bases for those decisions, has been waived[.]"[12] As discussed above, Meta has not waived privilege over its approvals and the document, entitled "-A-C priv[13]- AIR1580 Rights Manager scanning for training," contains legal advice from Meta in-house attorneys, including Lucas Dahlin and Mo Metanat. Meta promptly clawed back this document when it became aware of its inadvertent production. Meta's privilege log for this document is attached as Ex. A.[14] The Court should deny Plaintiffs' challenge to this document as it is clearly privileged.

Plaintiffs also challenge Meta's clawback of META_EM_CCC_K_03252420. That document is a duplicate of Ex. 28 (Meta_Kadrey_00254971), which was produced to Plaintiffs with redactions for privilege and logged on Meta's Feb. 2026 privilege log in *Kadrey*. This duplicate was inadvertently produced without the redactions applied to Ex. 28; Meta has since logged those redactions on November 2, 2026. Rather than notifying Meta to the obvious inconsistency between the two copies, Plaintiffs chose to rely on the unredacted, privileged material in this brief. Upon receipt of Plaintiffs' reply, Meta promptly clawed this document back. The redacted portions reflect advice of counsel and are properly redacted.

With respect to Log Entry 146 (Meta_Kadrey_00243515, Ex. 3), Meta is willing to drop its clawback and redaction of a small additional portion of Log Entry 146 to avoid burdening the Court over a small number of words. Meta's lack of redaction of these words is not intended as any kind of waiver as to legal advice relating to approvals of datasets, including interim decisions by Meta's Legal department (as contrasted with ultimate approval decisions by the business).

## III. PLAINTIFFS' REPLY

---

[11] Moreover, apart from documents recently clawed back, Plaintiffs in the Entrepreneur Media and C matters waived any ability to challenge documents produced and logged prior to September 4, 2026. Meta assumes that they are joining this brief only in this section due to this waiver.

[12] Although inaccurate, Plaintiffs' description of this clawed-back document is concerning, as it suggests that Plaintiffs are continuing to review and rely on the contents of the document notwithstanding the Protective Order's strict prohibition against doing so. (ECF No. 777 § 13.2.)

[13] Plaintiffs' suggestion that Meta's use of "AC Priv" should be ignored citing only irrelevant hearsay from an unrelated matter should be ignored. Moreover, the existence of any "AC Priv" (or similar) indicator on a document was not dispositive in Meta's privilege determinations.

[14] Plaintiffs complain that Meta's privilege log is non-compliant, but disregard that fact that Meta's privilege log complies with the E-Discovery Order entered in the Entrepreneur Media and C-Plaintiff cases. (E.g., ECF No. 60 §8(c) (permitting metadata privilege logs).) The requirement that Meta share discovery from these matters with the Kadrey Plaintiffs does not require Meta to create additional privilege logs beyond those provided to the Entrepreneur Media and C-Plaintiffs.

***Clawbacks***. Meta now drops its clawback over a portion of **Log 146**. *See supra*, n.2. With respect to the second clawback, META_EM_CCC_K_03085838 (logged as PRIV096495), Meta's log contains no asserted basis for the privilege claim, violating Rule 26(b)(5)(A)-(B). Meta nonetheless says the document has legal advice from in-house counsel, but even if Meta carried its burden to show any such advice was primarily legal (as opposed to business input, which it appears to be since the title suggests it is business guidance/policy like other "AIR" records), Meta provides no basis to fully withhold the document. Further, Meta's labelling of "A-C priv" should carry no weight given recent filings in this District revealing Meta in-house counsel approved "swag" hats that say "a/c priv," apparently mocking the widespread use of the designation to shield non-privileged information from discovery. *See* Ex. 25. Finally, days after Plaintiffs served this Reply, Meta clawed back a *third* exhibit that Plaintiffs cited (META_EM_CCC_K_03252420), which Plaintiffs now must also request be reviewed *in camera*. Meta has not logged the document but the redactions appear to concern "legal's" (i.e. Meta's) shadow library approvals.

***Dataset Approvals and Subject Matter Waiver***. The Court should reject Meta's attempt to withhold from discovery the "what" of "legal's" approvals of shadow libraries, *see* Dkt. 389 at 3, by now calling "legal's" approval of datasets "interim" without any support. Meta's attempt to shield analogous references to decisions by "legal" was recently criticized by the Chief Judge in the *In re Social Media* MDL where, after a court-ordered privilege review, Meta filed previously withheld documents that include employee statements such as "Legal is trying to block or redesign [a] study," and "legal will not approve a longitudinal study of any kind." *See* Ex. 26 at 15, 19.

On subject matter waiver, in addition to **Log 146** (Ex. 3) discussed above, Meta ignores Ex. 21, which documents the legal rationale for its decision to move away from relying on fair use for shadow libraries it once approved, citing *Bartz*. Meta also says it isn't sure whether the screenshots in Exhibits 16 and 18 refer to legal's approvals for Bibliotik/Books3 and LibGen, yet Meta recently clawed back in full the document Ex. 16 comes from. *See* Ex. 27. Similarly, Ex. 18 is a screenshot from Ex. 28, in which Meta employees are discussing the new approval for Books3/Bibliotik in SRT (a legal review platform, *see* Dkt. 105-2 ¶5), while Meta appears to be withholding other "legal" approvals relating to Books3/Bibliotik. Further, the Court should reject Meta's argument that the Court's FRE 502(d) Order (Dkt. 777 ¶13.1) permits selective disclosure. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("Rule 502 does not . . . enable parties to agree to a selective waiver of the privilege[.]") (quotation omitted); *Thomas v. Marshall Pub. Schs.*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) (rejecting "Defendant's flagrant[] overread[ing] [of] Rule 502(d)" where the protective order had the same "inadvertent or otherwise" text).

***Other Documents***. With respect to Plaintiffs' other challenges, Meta's descriptions of the documents are not evidentiary support for the privilege claims. Further, Meta says the redacted content in **Log 5** includes "specific questions from [inhouse counsel]." But factual questions to non-lawyers are not inherently privileged. *See, e.g., Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 868 (N.D. Cal. 2019) (attorney-directed instruction to "gather facts and prepare a spreadsheet that contained information necessary for [attorney] to provide legal advice" not privileged). Similarly, **Log 115** appears to discuss legal's awareness of certain facts, not relay legal advice. Meta has made no showing that the *primary* purpose of any redacted content is to seek or convey substantive legal advice. Plaintiffs thus request the Court conduct *in camera* review and reject redactions that seek to "shield business advice even when it involves risk[.]" Ex. 29, *In re Social Media* MDL, No. 23-cv-05448-YGR, Aug. 20, 2026 Trial Tr. 645:24-646:6.

Dated: November 3, 2026

By: /s/ *Maxwell V. Pritt*

BOIES SCHILLER FLEXNER LLP
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Counsel for Richard Kadrey, et al.*

By: /s/ *Lee Linderman*

HUESTON HENNIGAN LLP
Moez M. Kaba (SBN 257456)
Michael M. Purpura (SBN 338216)
Lee Linderman (SBN 280743)
Stephanie Xiao (SBN 340141)
Taiyee Chien (*pro hac vice*)

NEWMEYER & DILLION LLP

By: /s/ *Phillip E. Morton*

DUNN ISAACSON RHEE LLP
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
401 9th Street NW
Washington, DC 20004
kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

COOLEY LLP
Mark R. Weinstein (SBN 193043)
Elizabeth Lee Stameshkin (SBN 260865)
3175 Hanover Street
Palo Alto, CA 94304
mweinstein@cooley.com
lstameshkin@cooley.com

COOLEY LLP
Bobby A. Ghajar (SBN 198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
bghajar@cooley.com

COOLEY LLP
Phillip E. Morton (*pro hac vice*)
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
pmorton@cooley.com

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning (SBN 212047)
151 University Avenue
Palo Alto, CA 94301-1632
(650) 815-4131
adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

Michael B. McClellan (SBN 241570)
Benjamin P. Pugh (SBN 202025)
Jason L. Morris (SBN 295271)
Harlye S. Carlton (SBN 261641)

*Counsel for Plaintiff Entrepreneur Media, LLC*

By: /s/ *Lauren E. Martin*

STRIS & MAHER LLP
Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
John Stokes (SBN 310847)
jstokes@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703

Christopher M. Rigali (*pro hac vice*)
crigali@stris.com
Jacqueline Sahlberg (*pro hac vice*)
jsahlberg@stris.com
1717 K St NW Ste 900
Washington, DC 20006

FREEDMAN NORMAND FRIEDLAND LLP
Devin (Velvel) Freedman (*pro hac vice* forthcoming)
vel@fnf.law
Kyle Roche (*pro hac vice* forthcoming)
kroche@fnf.law
Alex Potter (*pro hac vice* forthcoming)
apotter@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017

*Counsel for Plaintiffs Chicken Soup for the Soul, LLC, and Cognella, Inc., and the Cambronne Plaintiffs*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 3, 2026

BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt

*Attorney for Plaintiffs*