November 25, 2026

***E-Filed***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Kadrey, et al v. Meta Platforms, Inc.*; Case No. 3:23-cv-03417-VC
*Entrepreneur Media, LLC v. Meta Platforms, Inc.*; Case No. 3:25-cv-09579-VC
*Cognella, Inc. v. Meta Platforms, Inc.*; Case No. 3:26-cv-04053-VC
*Cambronne, Inc. v. Meta Platforms, Inc.*; Case No. 3:26-cv-03725-VC
*Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*; Case No. 3:26-cv-02333-VC

Dear Judge Hixson:

The Parties respectfully submit this joint letter brief regarding whether the attorney-client privilege applies to certain documents Meta clawed back in full or in part after the September 4, 2026 close of discovery. The Parties have met and conferred, and while they resolved disputes over certain documents, they were unable to reach resolution on the remaining issues addressed herein.

Pursuant to Section 13 of the Amended Protective Order (Dkt. No. 777), Meta will separately submit for in camera review unredacted copies of the challenged documents that it clawed back.

Also, upon request, Plaintiffs can deliver a hard copy binder of the brief and exhibits to the Court.

## I. Plaintiffs' Position

Plaintiffs respectfully request that the Court review *in camera* 26 documents clawed back by Meta on the grounds of attorney-client privilege[1] pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) and § 13.3 of the *Kadrey* Amended Protective Order, Dkt. 777. The challenges fall roughly into two categories: (1) non-lawyers referring to Meta's legal department's approval or disapproval of LibGen (and other shadow libraries), or other non-privileged facts referring to "legal"; and (2) mostly non-lawyer documents and communications whose primary purpose concern business decisions or policies, not the request or provision of any specific legal advice.

**Category 1: Whether or not Meta in-house counsel approved LibGen at different times is not legal advice.** This Court previously rejected Meta's privilege claims over questions "about an action Meta took, not about why Meta took it." *Kadrey*, Dkt. 389 at 3. Yet Meta still claims the fact of whether its legal team approved data sources like Books3 and LibGen at various times—not *why* they did so—can be withheld as privileged. Like this Court, others "perceive[] a difference between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice." *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999). Mere references to "legal's" dataset approvals (and mitigations they imposed) "does not transform th[e] discussion into [a privileged one]." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2020 WL 7865915, at *2 (N.D. Ill. Mar. 30, 2020); *see*, *e.g.*, *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2009 WL 4641707, at *3 (E.D. Pa. Dec. 7, 2009) (same, re: lawyer's "looks good" response); *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, at *15 (S.D.N.Y. Aug. 28, 2008) (same, re: lawyer's "approval of a denial of coverage"). That is because "legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct," *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007), not the mere fact that "legal" approved or prohibited the conduct, particularly where, like here, Meta integrated legal teams into its dataset approval process. *See U.S. v. Chevron Texaco Corp.*, 241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002) ("Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys.").

Take Ex. 2, for example. There, two Meta non-lawyers say in September 2022 they "need" Books3, and while "it might not be 100% legal, [ ] we should be fine. It's not like LibGen." Then "the lawyers said [small redaction]." Given the date, presumably the redaction refers to the lawyers' then-disapproval of LibGen (Ex. 3) or earlier prohibition on Books3/Bibliotik (Ex. 4). Indeed, Ex. 3 itself comes from a document Meta clawed back *in full* that presumably contains similar non-privileged information about other datasets Meta approved or prohibited. *See* Ex. 1 (PRIV096427). Exhibits 5 & 6 similarly have redactions at that same time (September 2022) where non-lawyers are chatting about the use of The Pile, which contains Books3 (and a dataset called arxiv, Ex. 6 at -13). Other non-lawyer documents similarly appear to be redacted just because they comment on "utiliz[ing] proprietary data and book corpora" (Ex. 7), "Legal + Approvals" (Ex. 8), processing of Anna's Archive files (Ex. 9), or simply whether "someone in legal confirm[ed] that" (Ex. 10). Another is a nonlawyer telling another nonlawyer she heard [redacted] from another nonlawyer and asking for a link to "the SRT" (i.e. legal review). *See* Ex. 11. And Meta redacted the "Legal Status" of "Approvals" for datasets including Books3 and LibGen, among others, in a "Dataset Tracker" tab in an Excel, along with a "Legal Status" column in a tab titled "Other possible datasets." *See* Ex. 12; *see also* Ex. 13 (redacting "Legal Approval" columns in three tabs whose labels include "Data Proposal"). Other documents Meta clawed back in full but confirmed they fall within this category. *See* Ex. 1 (PRIV096437 & PRIV096387: non-lawyer chats, and PRIV096447). Indeed, PRIV096447 is a screenshot from two other non-lawyer chats that show it is "follow-up[] . . . about libgen" (Ex. 14) "about why and how we use it and how we g[o]t clearance for it" (Ex. 15). And the dates in PRIV096387 make clear it's about the same thing. Finally, while Ex. 16 tags inhouse counsel and references legal, it involves "unblock[ing]" and

[1] This is a fraction of more than 500 documents Meta clawed back in the past two months alone.

approvals. But as discussed below, "[l]awyers who give business advice cannot shield [that] advice, even when it involves risk, under the claim of attorney-client privilege." *In re: Social Media Adolescent Addiction Litig.,* No. 23-cv-05448-YGR, Aug. 20, 2026 Trial Tr. 645:24-646:6.

**Category 2: Meta cannot withhold business advice and risks, even if it's from an in-house lawyer or labeled "legal" internally.** This Court, like the Chief Judge, has rejected attempts by Meta to withhold as privileged non-lawyer and company lawyer communications alike that "do[] not contain legal advice or a request for legal advice" but instead "just implement[] a business compliance policy." *Kadrey*, Dkt. 627 at 2. That includes "business analysis and recommendation for how to comply with a legal requirement," *Epic Games v. Apple*, 2024 WL 4947269, at *1 (N.D. Cal. Dec. 3, 2024), as well as "[a] businessperson's statement that the company needs to assess legal risk as part of its" decision making, *Illumina Inc. v. BGI Genomics Co*., 2021 WL 2662074, at *4 (N.D. Cal. June 29, 2021). *See also Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2699971, at *6 (N.D. Cal. Mar. 29, 2023) (no privilege over comments that mentioned legal risk).

Take Ex. 17: Meta redacts a "Legal Risk" section from a non-lawyer—but nothing suggests the section, let alone all of it, concerns (let alone primarily) legal advice, as opposed to a non-privileged business assessment of legal risk or non-lawyer discussion of potential legal issues. *See In re OpenAI MDL*, 802 F.Supp.3d 688, 696 (S.D.N.Y. 2025) ("privilege cannot be based on the mere discussion of potential legal issues between non-attorney employees"). Similarly, Meta redacts part of a "risks" section at the end of a non-attorney memo about processing Anna's Archive (Ex. 18) and some non-lawyers chatting about memorization and data (Ex. 19). Meta also justifies its redactions to Ex. 20 by asserting it was drafted by a lawyer, but it's a memo titled "LLM Datasets Considerations" that addresses "Goals" from a Meta executive ("Ahmad") for acquiring "long form writing [like books] as fast as possible" with comments by non-lawyers—a prime example of Meta attempting to shield business advice involving inhouse counsel under a claim of privilege. Meta also originally produced PRIV023443 and PRIV000112 with redactions and then clawed them back in full—PRIV023443 on the grounds that it involved "privilege review" by inhouse counsel. But that does not show it has any actual legal advice, let alone why any such advice cannot be redacted. And PRIV000112 is "talking points for meetings" about Meta's books scanning project (Vellum), a business project to replace pirated datasets. *See* Exs. 21, 22. Then there's Ex. 23, an Excel with redactions for "final" approvals and "general disposition" for shadow library datasets but not other datasets, along with redacting the entirety of columns like "IP Product Legal Notes" (in the "copy of all datasets" tabs). Again, however, the mere fact that information comes from "IP Product Legal" or any other in-house counsel is not a privilege barometer—only primarily legal advice can be withheld and redacted. Finally, Meta appears to redact parts of other documents that seem to reflect no legal advice (or request for it) whatsoever, like non-lawyer recurring meeting notes for the GenAI LLM team that have input from other non-lawyers (Ex. 24); one of several "Data Milestones" rows in a business document on "NextGen Data Strategy" (Ex. 25); and some Excel fields in a column titled "Non-privacy gaps" for certain shadow libraries rows in a tab named "CCSR notes and findings," which apparently just redact mitigations given the first unredacted entry in that same column (*see* Ex. 26).

## II. META'S POSITION

The Kadrey Plaintiffs[2] again seek to challenge Meta's privilege calls, this time for a set of documents which were properly clawed back under a Rule 502(d) order.[3] Plaintiffs repeat the

[2] While Entrepreneur Media and the C-Plaintiffs purport to join this briefing, they played no active role in the parties' meet and confers regarding these challenges, and appear to be part of this briefing because Meta raised concerns about Kadrey's standing to challenge these documents.

[3] It is unclear why Plaintiffs raise the number of documents Meta has clawed back under Rule 502(d). Meta has produced more than 2.6 million documents to date, and claims privilege (in full or in part) over less than 4% of these. To the extent Plaintiffs are implying Meta has not executed

same arguments as their previous motions, once again suggesting that advice provided by Meta's in-house legal counsel regarding dataset reviews is not privileged, and that redacting statements reflecting legal advice from business communications is inappropriate. The Court has rejected both of these arguments before and should do so here as well.

Plaintiffs' challenges are meritless. Meta has, once again, surgically redacted privileged communications when appropriate and is withholding only one of the challenged documents in full. During the pendency of this motion, in an effort to compromise with Plaintiffs and their unrelenting privilege challenges, Meta agreed to downgrade several privilege calls to narrow down the disputes that needed to be presented to the Court. Rather than accepting Meta's efforts to streamline the disputes, Plaintiffs seek to use Meta's narrowing offensively, keeping arguments in the brief about documents no longer at issue[4] and asserting that Meta's compromises under a 502(d) order somehow constitute a waiver. The Court should again reject Plaintiffs serial privilege challenges and deny Plaintiffs' motion.

**Legal Advice Regarding Dataset Usage**

Plaintiffs suggest that the ***legal team's advice*** regarding use of a model is not privileged, because providing this advice (in the form of legal approval) is an "action," citing to the Court's prior order at ECF No. 389 at 3. But the cited order found that certain actions Meta took in training its model - in that case, what "prompts the 'model was trained not to engage in'" - were not privileged. *Id.* That is completely distinct from legal advice provided by counsel. Plaintiffs' interpretation turns privilege on its head, as providing any form of legal advice is an "action" under Plaintiffs' view.

For example, Plaintiffs point to a document titled "Zucchini Training Data," whose primary purpose is seeking legal counsel's advice and input regarding dataset usage. The majority of the document comprises a table, including two columns labeled in part "Legal Analysis" which contain legal advice regarding datasets. While Meta believes that withholding the document in full would be justified, Meta has now agreed to produce a redacted version, attached as Ex. A.[5]

Plaintiffs' other complaints are similarly misguided. Meta has redacted statements from in-house counsel providing legal advice or statements regarding specific questions seeking legal advice. (Ex. 2 (redacting legal advice "the lawyers said"); Ex. 5 (redacting a question proposed to seek legal advice from counsel); Ex. 6 (redacting information reflecting legal advice regarding datasets); Ex. 7 (redacting legal advice regarding a dataset previously provided by an attorney); Ex. 8 (redacting a summary of ongoing legal advice discussions attributed to attorneys); Ex. 9 (reflecting ongoing discussions with legal containing legal advice); Exs. 10 and 11 (reflecting legal advice from counsel); Ex. 27 (reflecting legal advice from counsel provided to Melanie Kambadur, who served as a liaison to Legal (ECF 695-8 ¶¶ 3-5.)).

Plaintiffs also speculate inaccurately about the contents of the clawed back materials,[6] and at times present these speculations to the Court in a misleading way. For example, Plaintiffs claim that "PRIV096447 is a screenshot from two other non-lawyer chats that show it is "follow-up[] . . . about libgen." This phrasing suggests that Meta is withholding a screenshot of a non-lawyer chat (Ex. 14, 15), but the screenshot is of a chat *with* attorney Michael Friedrichs where Mr. Friedrichs

---

care in its privilege determinations, they first are incorrect, and second, such argument is irrelevant to the analysis here.

[4] This includes Exhibits 12, 13, 16, 18, 24, and 25.

[5] The portion of this document that includes the material screenshotted in Exhibit 3, meanwhile, does not have columns labeled as "Legal Analysis." Meta's updated version of this document does not redact the content from Exhibit 3.

[6] Plaintiffs are not permitted to use the clawed back materials for any purpose during this briefing, so Meta presumes they are not accessing these materials, and thus speculating as to their contents.

is conveying legal advice (*see* Ex. 14 at 1728748). Meta has produced a redacted version of PRIV096447 and its duplicates to demonstrate the chat is from an attorney. (Ex. C.)

Overall, Meta has carefully separated in-house counsel's legal advice, which Meta withheld and/or redacted, from non-privileged information, which it has produced. The non-privileged information includes general processes for reviewing datasets, the fact that reviews took place, final business decisions about dataset use (as opposed to advice by attorneys), and how the datasets were actually used. This is consistent with Plaintiffs' cited case law. None of Plaintiffs' cited cases involve attorneys providing similar advice to Meta's attorneys here. For example, Plaintiffs suggest that *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2020 WL 7865915, at *2 (N.D. Ill. Mar. 30, 2020) dealt with issues similar to legal providing advice regarding dataset approvals. However, this case dealt with a non-attorney referring to using a "Legal approved response" in corresponding with unhappy customers, not the underlying *approval* communications by "Legal" itself. *Id.*

The Court should reject Plaintiffs' challenges to Meta's clawbacks discussed in this section.

**<u>Targeted Redactions of Legal Advice in Documents</u>**

Plaintiffs once again suggest that Meta is improperly using privilege to redact information regarding "business" decisions. But the challenged documents here contain and reflect legal advice.

For example, Plaintiffs speculate about Exhibit 17, a draft email by a non-attorney. The email contains a redacted section titled "Legal Risk" which reflects legal advice. Judge Chhabria reviewed *in camera* multiple versions of this document produced in *Kadrey* containing this same redacted portion, and these documents were not ordered produced. Ex. B (*in camera* review index re Dkt. 416, Entries 5-15). When the parties met and conferred regarding this brief, Plaintiffs suggested that Judge Chhabria only reviewed these documents for whether they were subject to the "crime/fraud" exception, and not as to whether they were privileged. However, to determine whether such an exception applies would require a review to determine if the document was privileged in the first place. *See also* ECF No. 455 (order discussing privilege status of certain of these documents submitted for *in camera* review). Rather than accept that Judge Chhabria has already reviewed this redaction, Plaintiffs seek to relitigate issues that were resolved more than 18 months ago.

Setting aside Exhibit 17, Plaintiffs' other challenged documents in this category reflect or contain legal advice. (*See* Ex. 19 (reflecting legal advice underlying mitigations), Ex. 20 (author is attorney Mo Metanat, with redactions reflecting legal advice and ongoing requests for legal advice from counsel).) With respect to PRIV000112, this document contains legal advice and analysis relating to Project Vellum throughout, and was collected from an attorney, Rob Arcamona, who is listed as the legal source in Meta's most recent privilege log in this case. While Plaintiffs portray Project Vellum as a "business project," pointing to a document not drafted by an attorney (ECF No. 884 at 9.) Plaintiffs ignore that documents produced throughout the case regarding Project Vellum demonstrate that considerable legal advice from attorneys, including outside counsel, was provided as the project was developed and implemented. Meanwhile, Exhibit 23's redacted columns, such as "IP Product Legal," provide legal advice in a form consistent with legal advice provided in AIDC review documents by attorneys, which this Court has previously reviewed and found to be privileged. (ECF No. 627.) And the sole redacted column in Exhibit 26 similarly reflects legal advice regarding datasets.

Plaintiffs' cited case law does not provide any further support for their position. Meta's claims of privilege do not comprise "a business analysis of ways to comply with a legal requirement," *Epic Games v. Apple* 2024 WL 4947269, at *1 (N.D. Cal. Dec. 3, 2024), but rather reflect the legal advice itself. Likewise, Meta's redacted legal advice from counsel regarding risk analyses do not comprise "[a] businessperson's statement that the company needs to assess legal risk," but rather

comprise the precise "assessment of legal risk" this Court found missing in *Illumina Inc. v. BGI Genomics Co*., 2021 WL 2662074, at *4 (N.D. Cal. June 29, 2021). And *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2699971, at *6 (N.D. Cal. Mar. 29, 2023), which Plaintiffs assert found "no privilege over comments that mentioned legal risk," does not actually use the phrase "legal risk," let alone announce a broad principle that comments mentioning such risk would somehow be not privileged.

Once again, Plaintiffs' remaining challenges are meritless. The Court should deny Plaintiffs' motion.

## III. PLAINTIFFS' REPLY

Meta's claim that it "surgically redacted privileged communications when appropriate" is at odds with its reversal on *eight* of the at-issue documents just since receiving Plaintiffs' opening portion,[7] and production of redacted versions of PRIV023443 (which had different redactions before it was clawed back), PRIV096437 (Ex. 27), and PRIV096447 (Ex. 28) after receiving Plaintiffs' initial reply.[8] The Court should reject the rest of Meta's still-shifting, inconsistent privilege claims. To start, Meta now argues that "advice" in the "form of a legal approval" relating to Books3 and shadow libraries are privileged, yet it has disclosed many references to its legal approvals, so even if such references could constitute privileged "advice" (they do not, for reasons discussed above), the privilege has been waived. *See Kadrey*, Dkt. 884 at 4. Indeed, Meta withdraws some clawbacks over the very "form of a legal approval" it still claims is privileged "advice" in other documents. *See* (now-unredacted) Exs. 13 ("Legal Approval" columns), 12 ("Legal Status" columns), and 23 (e.g., column O in "All Datasets" tab). And while Meta now produces PRIV064143 (Ex. 28) in redacted form, it does not redact the "Legal Analysis" column for datasets "Not To Be Used" like LibGen (Ex. A at 15-16), but redacts the same column for approved datasets like Books3 (*id.* at 3). Meta cites no case that supports legal approval decisions are privileged, provides no declarations to support its new claim that such decisions were interim and not "final business decisions about datasets," and ignores most of the cases Plaintiffs cite (*see supra*, p. 1) rejecting privilege claims over references to inhouse legal approvals or disapprovals.

Regarding PRIV096447, Meta says the previously-withheld (and now redacted) screenshot is a chat with an inhouse lawyer, so Plaintiffs presented it in a "misleading" way. But Meta did not list an attorney in the participant fields of its privilege log entry. *See* Ex. 1. Indeed, Meta's entries do not even contain a description or asserted basis for the privilege claims.[9] In any event, Meta provides no evidence—for this or any document—to substantiate that any of the content that it is withholding from discovery is primarily legal advice (or a specific request for it). *See* Ex. 1. It is Meta's burden to do so, not Plaintiffs' or the Court's job to guess. And with respect to Ex. 17, Judge Chhabria did not hold the redacted content was privileged (because that was not the issue litigated), only that he "did not see any evidence of Meta using its lawyers to facilitate a crime." *Kadrey*, Dkt. 466 at 17:22-25. Regardless, Meta later produced it unredacted and Rule 26(b)(5)(b) authorizes this Court to review the clawback. Finally, Meta has likewise already waived the legal basis for Project Vellum, *see Kadrey*, Dkt. 884 at 5; 884-21, which it says is the basis for withholding PRIV000112.

---

[7] Exhibits 16, 18, 24, and 25 are omitted from this filing as they are no longer in dispute. Plaintiffs note that Meta's changes of position with respect to the at-issue privilege claims during the briefing process has significantly frustrated Plaintiffs' efforts to efficiently present these issues to the Court.

[8] Plaintiffs no longer challenge PRIV023443 but do challenge Ex. 27, as it concerns non-lawyers discussing "the state of libgen" and whether it "could be ok for prod[uction]," and Ex. 28.

[9] Meta argues that other protective orders exempt it from complying with Rule 26(b)(5)(A)(ii), but the *Kadrey* protective order (Dkt. 777) contains no such provision and thus Rule 26 applies.

Dated: November 25, 2026

By: /s/ *Maxwell V. Pritt*

BOIES SCHILLER FLEXNER LLP
David Boies (*pro hac vice*)
1 North Lexington Avenue, 17th Floor
White Plains, NY 10601
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Counsel for Richard Kadrey, et al.*

By: /s/ *Lee Linderman*

HUESTON HENNIGAN LLP
Moez M. Kaba (SBN 257456)
Michael M. Purpura (SBN 338216)
Lee Linderman (SBN 280743)
Stephanie Xiao (SBN 340141)
Taiyee Chien (*pro hac vice*)

By: /s/ *Phillip E. Morton*

DUNN ISAACSON RHEE LLP
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
401 9th Street NW
Washington, DC 20004
kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

COOLEY LLP
Mark R. Weinstein (SBN 193043)
Elizabeth Lee Stameshkin (SBN 260865)
3175 Hanover Street
Palo Alto, CA 94304
mweinstein@cooley.com
lstameshkin@cooley.com

COOLEY LLP
Bobby A. Ghajar (SBN 198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
bghajar@cooley.com

COOLEY LLP
Phillip E. Morton (*pro hac vice*)
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
pmorton@cooley.com

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning (SBN 212047)
151 University Avenue
Palo Alto, CA 94301-1632
(650) 815-4131
adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

NEWMEYER & DILLION LLP
Michael B. McClellan (SBN 241570)
Benjamin P. Pugh (SBN 202025)
Jason L. Morris (SBN 295271)
Harlye S. Carlton (SBN 261641)

*Counsel for Plaintiff Entrepreneur Media, LLC*

By: /s/ *Lauren E. Martin*

STRIS & MAHER LLP
Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
John Stokes (SBN 310847)
jstokes@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703

Christopher M. Rigali (*pro hac vice*)
crigali@stris.com
Jacqueline Sahlberg (*pro hac vice*)
jsahlberg@stris.com
1717 K St NW Ste 900
Washington, DC 20006

FREEDMAN NORMAND FRIEDLAND LLP
Devin (Velvel) Freedman (*pro hac vice* forthcoming)
vel@fnf.law
Kyle Roche (*pro hac vice* forthcoming)
kroche@fnf.law
Alex Potter (*pro hac vice* forthcoming)
apotter@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017

*Counsel for Plaintiffs Chicken Soup for the Soul, LLC, and Cognella, Inc., and the Cambronne Plaintiffs*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 25, 2026

BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell v. Pritt*
Maxwell V. Pritt

*Attorney for Plaintiffs*